# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CASE NO. 20-CV-954-UA-JLW

|  |  |
|---|---|
| FARHAD AZIMA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| NICHOLAS DEL ROSSO and VITAL | ) |
| MANAGEMENT SERVICES, INC., | ) |
|  | ) |
| Defendants. | ) |

## [CORRECTED] DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENAS BEFORE RULE 26(f) CONFERENCE

Pursuant to Local Rule 7.3, Defendants Nicholas Del Rosso and Vital Management Services, Inc. ("VMS"), hereby oppose Plaintiff Farhad Azima's Motion for Leave to Serve Third-Party Subpoenas Before Rule 26(f) Conference [Dkt. No. 7] (the "Motion") for the reasons set forth below.

## INTRODUCTION

On May 22, 2020, the plaintiff in this putative hacking action, Farhad Azima, was found by the High Court of England and Wales to have committed a serious fraud against the Ras Al Khaimah Investment Authority (RAKIA), an instrumentality of the Emirate of Ras Al Khaimah, United Arab Emirates.

As a result, he was ordered to pay a judgment of at least $8.3 million in damages, interest, and costs. This lawsuit is a reckless attempt to reinvent Azima's failed hacking claims to collaterally attack RAKIA's fraud judgment.

As part of his strategy in responding to the U.K. fraud case against him, Azima launched baseless allegations that RAKIA was responsible for hacking his data in order to prevent RAKIA from using the hacked material (which evidenced the wide-ranging fraud committed by Azima against RAKIA) against him in court. He first pursued those hacking claims in 2016 in the District Court for the District of Columbia, but his suit there was dismissed: the D.C. Circuit held that his claim had to be litigated in England. Azima asserted, as a defense and counterclaim in RAKIA's suit against him in England, the same allegations that he had been hacked. After almost four years of litigation and a three-week trial, the Court found that Azima had failed to prove his hacking allegations, and entered judgment for RAKIA. The individual defendant in this action, Nick Del Rosso, was a witness in that trial in the U.K., subject to cross examination by Azima on the topic of these hacking allegations. In rejecting Azima's hacking allegations, the court found Del Rosso's testimony to be "uncontroversial."

Azima's new Complaint here once again raises the same alleged hacking incident. Azima contends that Del Rosso and his company, Defendant Vital Management Services, Inc., were engaged by RAKIA's legal advisors, the

Case 1:20-cv-00954-UA-JLW   Document 23   Filed 11/13/20   Page 2 of 21

global law firm Dechert LLP, and that they undertook the exact same hacking activity that Azima has already unsuccessfully sued over in both the U.S. and England. For reasons that will be laid out in Defendants' forthcoming motion to dismiss, Azima's complaint will be subject to dismissal. With this background in mind, Azima's request for early discovery is inappropriate and should be denied.

## SUMMARY OF ARGUMENT

Through this Motion, Azima seeks to take broad, early discovery from eight non-party witnesses, predicated on his repeatedly litigated and rejected hacking claims. [Dkt. No. 7.] The Motion is unjustified, and should be rejected for several reasons, including the following:

First, as evidenced by the very authorities Azima cites, early third-party discovery is typically allowed in this Court only in relation to a pending request for a preliminary injunction where the exigent circumstances mean that the movant requires limited emergency discovery. Here, there is no emergency relief requested. To the contrary, there is no emergency at all: Azima's claims are stale, and have already been litigated through trial.

Second, Azima offers nothing to substantiate his conclusory accusations of improper spoliation, and several parties from whom he seeks premature discovery were already involved, and provided evidence, in the English Proceedings. Indeed, the incredible scope of Azima's proposed discovery appears to be

Case 1:20-cv-00954-UA-JLW   Document 23   Filed 11/13/20   Page 3 of 21

an improper attempt to conduct post-judgment discovery for use in the English Proceedings.

Finally, Azima's request for expedited discovery is particularly inappropriate given that Defendants will file a comprehensive motion to dismiss the Complaint. [Dkt. No. 18.] That motion's pendency will provide grounds to stay even normal discovery timelines. In short, Azima's Motion should be denied.

## BACKGROUND

### I. Azima Defrauded RAKIA and Was Ordered to Pay $8.3 Million.

Plaintiff Azima, a Missouri businessman, was previously in business with RAKIA through a joint venture. As the English Court found following the proceedings described below, during the course of their business relationship Azima repeatedly enriched himself through fraud. (*See* Declaration of Brandon S. Neuman in Support of Defendants' Opposition to Plaintiff's Motion for Leave to Serve Third-Party Subpoenas Before Rule 26(f) Conference ("Neuman Decl."), Ex. 1). Azima bribed RAKIA's then-CEO to sign a sham referral agreement under which Azima received a wrongful commission (*id.* ¶¶ 181, 196); grossly overstated his joint venture contributions so that RAKIA would overpay for its interest (*id.* ¶¶ 215, 218, 220.5); and then fraudulently induced RAKIA to sign a settlement agreement (*id.* ¶¶ 120, 131, 140–43, 154). (*See also id.* ¶¶ 176–77, 189.)

4

RAKIA sued Azima in September 2016 in the High Court of Justice Business and Property Courts of England and Wales to hold him accountable for his numerous frauds. *See RAKIA v. Azima*, Case No. HC-2016-002798 (referred to herein as the "English Proceedings"). Azima responded by filing suit in federal court in D.C., asserting hacking claims against RAKIA nearly identical to those alleged here. *Azima v. RAKIA*, No. 16-CV-1948 (KBJ), Dkt. No. 1 (Sep. 30, 2016) ("D.C. Dkt."). Just like here, Azima asserted that through "various agents," RAKIA "repeatedly hacked into Azima's computers" using "spear-phishing emails," and "stole his emails and other electronic data." D.C. Dkt. No. 28 at ¶¶ 1–2, 18–25, 26, 33 (May 16, 2017); *see* Complaint of Farhad Azima ("Compl.") [Dkt. No. 1] ¶¶ 1, 6–7, 17, 76, 82. And, as here, Azima alleged that RAKIA's agents disseminated negative information about him and published his hacked data online. *Id.* ¶¶ 33, 37–41; *cf.* Compl. 19–23. The district court initially denied dismissal, and RAKIA appealed. *Azima v. RAKIA*, No. 16-cv-1948, 2018 WL 7982473, at *1 (D.D.C. Nov. 5, 2018).

A.    **Azima Seeks Early Discovery in his D.C. Lawsuit, Which is Denied.**

In July 2018, while RAKIA's appeal was pending, Azima petitioned the district court for leave to serve expedited discovery. *Id.* There—more than two years ago—Azima argued, as he does again on this Motion, that the issuance of subpoenas was urgently necessary to "preserve evidence." *Id.* The court

5

denied the motion for lack of jurisdiction in light of the pending appeal. *Id.* at *5.

The D.C. Circuit then held that Azima's complaint should have been dismissed on *forum non conveniens* grounds because Azima was bound by a forum selection clause in his settlement agreement with RAKIA. *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 880 (D.C. Cir. 2019). Following that ruling, Azima conceded to the English Court that his hacking claim should proceed in England and asserted a hacking counterclaim against RAKIA in the English Proceedings. (Neuman Decl. Ex. 5 at ¶ 62.) Once again, as in this action, Azima accused RAKIA of being responsible for the hacking of his data.

## B. The English Court Rejects Azima's Hacking Claims and Enters Judgment Against Azima for Serious Fraud and Deceit.

By the end of trial in England, Azima had accused eight different people—notably, Del Rosso was not one of them—of being involved in the alleged hacking. (Neuman Decl. Ex. 6 at ¶173.i; Neuman Decl. Ex. 7 at ¶¶ 48, 51, 57, 68, 154, 209–10.)

As part of the almost four-year litigation and disclosure process, Del Rosso provided documents, a witness statement, and testimony subject to cross-examination in the English Proceedings. The English Court characterized Del Rosso's evidence as "uncontroversial." (Neuman Decl. Ex. 1 at ¶ 69.) Azima himself, in his closing submissions, specifically acknowledged that Del

6

Rosso's "involvement in the matters of interest is limited." (Neuman Decl. Ex. 7 at ¶ 20.) The English Court also recognized several fatal defects in Azima's hacking defense, including the "inherent improbability" that various witnesses were "conspiring together to conceal RAKIA's role in the hacking." (Neuman Decl. Ex. 1 ¶ 378.5.)

RAKIA prevailed. The court awarded RAKIA more than $8.3 million in damages, interest, and costs, factually rejected Azima's hacking allegations, and dismissed Azima's hacking counterclaim. (*Id.* at ¶¶ 379, 381–82; Neuman Decl. Ex. 3 at ¶¶ 1, 7, 8.) The court held that Azima had defrauded RAKIA, including by entering "a sham [referral agreement] intended to conceal misappropriation of funds by Mr Azima," paying bribes, and engaging in bad-faith conduct in order to make "a dishonest profit." (Neuman Decl. Ex. 1 at ¶¶ 159, 181, 189, 241; Neuman Decl. Ex. 2 at ¶¶ 21–22 (affirming prior decision).) Azima's appeal is scheduled for hearing in March 2021.

## II.    Azima Threatens Defendants and Files Yet Another Suit Raising the Same Hacking Allegations.

With his appeal underway in the U.K., Azima's counsel wrote to Del Rosso on October 13, 2020 to demand Del Rosso's "cooperation" and threaten litigation if Del Rosso refused, attaching a draft of the complaint. (Neuman Decl. Ex. 8.) The letter further sought to secure Del Rosso's silence, warning

7

that any cooperation with Azima would "not be valuable" if Del Rosso "disclose[d] the attached draft complaint, this letter, or any information regarding our offer of settlement with anyone other than a lawyer if you choose to consult with one." *Id.* When Del Rosso did not capitulate, Azima filed the unverified Complaint [Dkt. No. 1] just days before he was required to post the bond of more than $8 million that was required in order for his U.K. appeal to proceed. (Neuman Decl. Ex. 4 at 1.)

Azima's Complaint again asserts his hacking allegations, now claiming that at Dechert's direction, Defendants "oversaw and directed the hacking of Plaintiff" by third parties for use in the English Proceedings and then lied about doing so in court. Compl. ¶¶ 1–3, 6, 14, 33–36. Defendants categorically deny these allegations, and have informed Azima that they will move to dismiss the Complaint. [Dkt. No. 18.]

## III. Six Days Into this Suit, Azima Seeks To Subpoena Eight Non-Parties.

On October 21, 2020, six days after filing the Complaint, Azima filed this Motion for leave to serve early third-party discovery. [Dkt. No. 7.] Azima seeks permission to serve subpoenas on eight third parties, including a law firm, a public relations firm, financial institutions and others. (Mot. 2–3; Dkt. Nos. 7-1–7-8.) The proposed subpoenas seek production by November 30, 2020 of a wide variety of communications and documents for a nearly seven-year period,

8

from January 1, 2014 through the present. [Dkt. Nos. 7-1 to 7-8 at 2, 5.] It would target the global law firm Dechert, which served as RAKIA's litigation counsel in the D.C. proceedings, and a number of witnesses who testified in the English Proceedings.

Azima's stated basis for the Motion is a purported concern that the targeted non-party witnesses will destroy documents. In support, however, he offers no evidence—no supporting declarations, and no documents. Instead he submits only a bare seven-page brief, which advances the same unsubstantiated hacking and disclosure conspiracy theories set out in the Complaint. [Dkt. No. 8.] The assertions set forth in the brief are not established fact on this Motion and should be rejected for that reason, but they are in any event contradicted by the English Court's findings against Azima. For example, Azima contends specifically that the testimony in the English Proceedings showed that one public relations firm, and one individual employee of RAKIA, each destroyed emails about Azima (Mot. 3), but the English Court specifically found otherwise as to each (Neuman Decl. Ex. 1 at ¶ 321 ("[t]here was no evidence of deliberate document destruction, much less of any instruction by RAKIA to destroy relevant documents."); *id.* at ¶ 76 ("I accept Mr Buchanan's evidence . . . and conclude that he had not deliberately destroyed any emails.").) These are just examples, not an exhaustive refutation of the Motion's unsupported assertions; the ultimate point is that the English Court already rejected

9

Azima's claims of spoliation, and this Court should not accept Azima's evidence-free assertions on this Motion.

The parties conducted a telephonic meet and confer regarding the Motion on October 26, 2020. Azima's counsel refused to agree to a courtesy extension of the time to file this Opposition (although counsel quickly agreed to an extension to the time to respond to the Complaint), and once again urged Defendants to disclose information about their confidential work related to the English Proceedings, which Azima alleges was undertaken at the direction of RAKIA's litigation counsel. Candidly disclosing their efforts to coerce Defendants into revealing confidences, Azima's counsel again suggested that the suit could be resolved if Defendants would simply cooperate, stating that "information was much more valuable than money." (Neuman Decl. ¶ 10.) Azima's counsel also refused to share any further information or evidence supporting their allegations with Defendants. (*Id.*)

Defendants now file this Opposition, and respectfully ask the Court to deny Azima's motion for premature third-party discovery.

## ARGUMENT

## I.   Azima Has Not Established Good Cause for Expedited Discovery.

### A.   Standard for Granting Expedited Discovery

Early discovery will be allowed only upon a showing of good cause (Mot. 4), where "unusual circumstances exist." *Lewis v. Alamance Cty. Dep't of Soc.*

*Servs.*, No. 1-15-CV-298, 2015 WL 2124211, at *1, *3 (M.D.N.C. May 6, 2015) (denying expedited discovery). Parties have no entitlement to take early discovery, and discovery typically does not commence at least "until the parties have conducted an initial pretrial conference and established a plan for such discovery." *Id.* at *1; *accord* Fed. R. Civ. P. 26(d)(1); M.D.N.C.L.R. 26.1(a) (absent contrary order, "commencement of discovery in each case will be in accordance with the initial pretrial order once entered by the Court"). Rather than favoring early discovery, the Local Rules recognize that "there may be a good reason to delay the start of discovery" while deciding a dispositive motion, M.D.N.C.L.R. 26.1(a) n.1, and this Court regularly stays discovery in those circumstances. *E.g.*, *Warner v. Midland Funding, LLC*, No. 1:18CV727, 2019 WL 8560152, at *2–*3 (M.D.N.C. Mar. 18, 2019) (granting stay); *see also Tilley v. United States*, 270 F. Supp. 2d 731, 734–35 (M.D.N.C. 2003), *aff'd*, 85 F. App'x 333 (4th Cir. 2004) (granting protective order).

In determining whether good cause exists to deviate from ordinary practice, courts generally consider: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005) (denying motion for expedited discovery). Courts within this Circuit also

11

consider whether the moving party has established that he will be irreparably harmed in the absence of expedited discovery. *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) (denying motion for expedited discovery). As explained below, each one of these factors—which Azima does not address—weighs against allowing the requested discovery. Azima's Motion should be denied.

### B. There Should Be No Expedited Discovery Because No Preliminary Injunction or Other Emergency is Pending.

The first factor, whether a motion for a preliminary injunction is pending, is usually dispositive. *See In re Fannie Mae Derivative Litig.*, 227 F.R.D. at 143. Azima cites three cases allowing (limited) early discovery, and in all of these the pendency of a preliminary injunction motion was what drove the court to allow the discovery. (Mot. 4.)[1] By contrast, early discovery is routinely denied even where a plaintiff intends to move for emergency relief but has not yet done so.[2] Here, no motion for a preliminary injunction is pending, none is

---

[1] *See Democracy N. Carolina v. N. Carolina State Bd. of Elections*, No. 20-cv-457, 2020 WL 4288103, at *4, *17 (M.D.N.C. July 27, 2020) (expedited discovery allowed to help decide "preliminary injunction . . . on a full and complete record"); *Teamworks Innovations, Inc. v. Starbucks Corp.*, No. 19-cv-1240, 2020 WL 406360, at *3–*7 (M.D.N.C. Jan. 24, 2020) (same); *JTH Tax, Inc. v. M & M Income Tax Serv., Inc.*, No. 13-cv-265, 2013 WL 460316, at *2–*3 (D.S.C. Feb. 6, 2013) (same).

[2] *See, e.g., Dimension Data N. Am., Inc.*, 226 F.R.D. at 531–32; *see also Carter v. Ozoeneh*, No. 08-cv-614, 2009 WL 1383307, at *3 (W.D.N.C. May 14,

12

threatened, and none could conceivably be warranted since the subject matter of the action is a stale alleged hacking incident from years ago as to which Azima has already had his day in court and on which his claims have been rejected. The lack of any pending motion for a preliminary injunction by itself dictates that expedited discovery should be denied.

## C. There Should Be No Expedited Discovery Because Azima's Discovery Requests Are Overbroad.

Under the second factor, early discovery will be denied if the proposed requests are overbroad, because the purpose of early discovery is to probe limited, emergency issues.[3] Here, Azima's requests are not tailored to any preliminary issue, and they are extraordinarily broad.

---

2009) (denying motion for expedited discovery partially on grounds that plaintiff had not filed motion for preliminary injunction); *United Healthcare Servs., Inc. v. Richards*, No. CIV.3:09-CV-215RJCDC, 2009 WL 4825184, at *1–*2 (W.D.N.C. Dec. 2, 2009) (same); *In re Fannie Mae Derivative Litig.*, 227 F.R.D. at 143 (denying motion for expedited discovery at early stage of case).

[3] *E.g.*, *Rivers v. United States*, No. 6:18-CV-00061, 2020 WL 1469475, at *1 (W.D. Va. Jan. 24, 2020) ("*Rivers I*") (denying expedited discovery on grounds of overbreadth and plaintiff's failure to establish good cause), *reconsideration denied*, No. 6:18-CV-00061, 2020 WL 6021465 (W.D. Va. Oct. 9, 2020) ("*Rivers II*"); *Campbell All. Grp., Inc. v. Forrest*, No. 5:15-CV-667-D, 2016 WL 11257351, at *1 (E.D.N.C. Feb. 25, 2016) (discovery was "not narrowly tailored to the issues relating specifically to the injunctive relief sought"); *United Healthcare Servs., Inc*, 2009 WL 4825184, at *1 (proposed discovery was not "narrowly tailored" to preliminary issues); *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, No. WMN-09-CV-2499, 2009 WL 3746690, at *2 (D. Md. Nov. 2, 2009) (denying expedited discovery where the requested discovery was not "narrowly tailored" to obtain relevant information); *Dimension Data N. Am.,*

13

Azima proposes issuing subpoenas to eight different non-parties, most of whom are not identified or referenced in the Complaint, and he does not even try to explain why many of them are relevant to his claims. The proposed subpoenas' scope is also overbroad. Five of them seek, for a seven year period, "[a]ll documents and communications" relating to Azima and a number of Azima's named and unnamed "associates." [Dkt. Nos. 7-2 to 7-6 at 8.] From two financial institutions, without laying any factual foundation for his inquiry, Azima seeks seven years of confidential financial records showing Defendants' financial transactions. [Dkt. Nos. 7-7 & 7-8 at 8–9.] Azima does not show that he is entitled to these materials nor does he tailor his requests to any purported issues in this case. *See Campbell All. Grp., Inc.*, 2016 WL 11257351, at *1 (denying "13 broad requests" as not narrowly tailored to preliminary issues). The large number of targets, unbounded scope and time period, and failure to tie what is requested to issues requiring early resolution call for rejection of the request.

---

*Inc.*, 226 F.R.D. at 532 (denying motion for expedited discovery in part due to overbreadth of discovery requests).

**D. There Should Be No Expedited Discovery Because Azima Has Not Established Irreparable Harm, and His Purpose for Requesting Expedited Discovery Is Improper.**

Where a plaintiff requests expedited discovery to "circumvent the normal litigation process" or achieve another improper purpose, the discovery should be denied. *In re Fannie Mae Derivative Litig.*, 227 F.R.D. at 143. To protect against that, a party seeking expedited discovery must show irreparable harm. *E.g.*, *Campbell All. Grp., Inc.*, 2016 WL 11257351, at *1; *Dimension Data N. Am., Inc.*, 226 F.R.D. at 532. Particularly relevant here, courts have denied discovery because a plaintiff's "generalized allegations" of harm were unsupported by evidence, *United Healthcare Servs., Inc. v. Richards*, 2009 WL 4825184, at *2, and because a plaintiff's "speculative belief that [plaintiff] risks losing access to unidentified information is not evidence," *Rivers I*, 2020 WL 1469475, at *1.

As in *United Healthcare Services*, Azima submits no evidence (and the allegations of his unverified Complaint are not taken as true on this Motion). His suggestion that there has been a pattern of improper document destruction in relation to the matters at issue in this case (Mot. at 5) has already been adjudicated and rejected by the English Court. *See supra* Part I.B. And his other arguments are baseless: he claims that there is a risk of document destruction because his allegations in this civil case are of "criminal" conduct (Mot. 4), but that does not follow, and his unsubstantiated allegations are not

15

facts. And since he acknowledges that the risk of losing evidence is easily mitigated by putting the targets on "notice" (Mot. at 4-5), then the problem lies in his power to cure. Indeed, Azima has already shown that he is capable of doing so by sending preservation notices in this litigation.

More generally, courts have routinely held that mere allegations that allowing discovery to proceed "in the normal course of the legal proceedings . . . will provide the Defendants with time to alter, dispose, or destroy records" are not sufficient to establish good cause justifying expedited discovery. *Simpson Performance Prod., Inc. v. Wagoner*, 133 F. Supp. 3d 1130, 1140 (N.D. Ind. 2015) (improper spoliation was not "reasonably likely to occur").[4]

Here, however, the problem is worse than that, because Azima's Motion is not merely unsupported, but in fact is an effort to pursue discovery for an improper purpose. In his written and oral communications, Azima's counsel has shown that Azima's purpose in bringing this suit is not to obtain a remedy for a legal wrong, but to use the threat of litigation to exert pressure on Defendants to get "information" that he can use in his ongoing legal battles elsewhere. (Neuman Decl. ¶ 10; *see also* Neuman Decl. Ex. 8.) This Motion is the

---

[4] *See also, e.g.*, *Rivers II*, No. 6:18-CV-00061, 2020 WL 6021465, at *2 (denying motion for reconsideration of request for expedited discovery based on speculative possibility of destruction of evidence or future unavailability of third parties).

16

same: by all appearances, the reason Azima has brought this Motion—and for his urgency in pursuing the Motion—is that he wants this discovery, not for this litigation, but to use to support his appeal in England. This further weighs against granting his Motion.

### E. Expedited Discovery Would Be Unnecessarily Burdensome for Defendants, Third Parties, and the Court.

The fourth factor to be weighed is "the burden on the defendants to comply with the requests." *In re Fannie Mae Derivative Litig.*, 227 F.R.D. at 143. Here, where Defendants will file a motion to dismiss, it would waste the time and resources of the parties and the Court, and of the non-party discovery targets, to allow the discovery to proceed now. That is especially true because, as Azima himself anticipates, "several subpoenaed parties may oppose the subpoenas by claiming the documents are protected." (Mot. 5.) Allowing the discovery will thus impose heavy burdens on multiple non-parties and open up complex motion practice that will consume the time of this Court and is an attempt to circumvent the litigation process in the English Proceedings. All of that may be avoided if Defendants' motion to dismiss is granted.

It is for exactly this reason that the Local Rules anticipate delaying discovery where a dispositive motion, such as a motion to dismiss, is pending. M.D.N.C.L.R. 26.1(a) n.1 (dispositive motion filed in lieu of answer may offer "good reason" to delay the start of discovery); *see Warner*, 2019 WL 8560152,

17

at *2–*3 (granting stay pending motion to dismiss to avoid potential waste and where there was no prejudice to plaintiff because case had been pending for only one year). The same principle applies here, and counsels against granting Azima's premature Motion.

## F. Discovery Should Not Be Expedited Because the Request Was Made Six Days After the Complaint Was Filed.

Finally, the last factor—degree of prematurity—weighs against Azima's motion. Azima's Motion was filed just six days after he filed his action, [Dkt. Nos. 1, 7], and "could not have been filed any further in advance of the typical discovery process." *Wilcox Indus. Corp. v. Hansen*, 279 F.R.D. 64, 71 (D.N.H. 2012); *see also In re Fannie Mae Derivative Litig.*, 227 F.R.D. at 143 (denying expedited discovery at early stage of case). This factor counsels against granting expedited discovery.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Azima's request for expedited discovery.

Respectfully submitted this 13th day of November, 2020.

**SHANAHAN LAW GROUP, PLLC**

By:    */s/ Brandon S. Neuman*
        Kieran J. Shanahan, NCSB#13329
        Brandon S. Neuman, NCSB#33590
        Jeffrey M. Kelly, NCSB#47269
        Nathaniel J. Pencook, NCSB#52339
        128 E. Hargett Street, Suite 300
        Raleigh, North Carolina 27601
        Telephone: (919) 856-9494
        Facsimile: (919) 856-9499
        kieran@shanahanlawgroup.com
        bneuman@shanahanlawgroup.com
        jkelly@shanahanlawgroup.com
        npencook@shanahanlawgroup.com
        *Counsel for Defendants*

19

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying response brief contains 4,088 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the response brief does not exceed the 6,250 word limitation.

Respectfully submitted, this the 13th day of November, 2020.

**SHANAHAN LAW GROUP, PLLC**

By: _/s/ Brandon S. Neuman_

Kieran J. Shanahan, NCSB#13329
Brandon S. Neuman, NCSB#33590
Jeffrey M. Kelly, NCSB#47269
Nathaniel J. Pencook, NCSB#52339
128 E. Hargett Street, Suite 300
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
Facsimile: (919) 856-9499
kieran@shanahanlawgroup.com
bneuman@shanahanlawgroup.com
jkelly@shanahanlawgroup.com
npencook@shanahanlawgroup.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2020, I electronically filed the foregoing **[Corrected] Defendants' Response in Opposition to Plaintiff's Motion for Leave to Serve Third-Party Subpoenas Before Rule 26(f) Conference** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathan.townsend@wbd-us.com
ripley.rand@wbd-us.com
chris.jones@wbd-us.com

Calvin Lee
Ian Herbert
Brian Hill
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
bhill@milchev.com
kbehre@milchev.com

**SHANAHAN LAW GROUP, PLLC**

By:     */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB#13329
Brandon S. Neuman, NCSB#33590
Jeffrey M. Kelly, NCSB#47269
Nathaniel J. Pencook, NCSB#52339
128 E. Hargett Street, Suite 300
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
Facsimile: (919) 856-9499
kieran@shanahanlawgroup.com
bneuman@shanahanlawgroup.com
jkelly@shanahanlawgroup.com
npencook@shanahanlawgroup.com
*Counsel for Defendants*