UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>　　Defendants. | **REPLY BRIEF OF PLAINTIFF FARHAD AZIMA IN SUPPORT OF MOTION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENAS** |

## INTRODUCTION

Plaintiff Farhad Azima respectfully submits this reply in support of his Motion for Leave to Serve Third-Party Subpoenas (ECF No. 7) ("Motion"). In his Motion, Plaintiff seeks leave to serve eight narrowly tailored subpoenas to ensure that critical evidence is not lost or destroyed before discovery begins. Plaintiff has established good cause to grant the Motion. The need to serve subpoenas now is plain: Given the relevant time frame, the nature of the allegations, the risk that document retention policies may soon allow for the destruction of evidence, and the history of spoliation by related parties, service of subpoenas is required to ensure that relevant evidence is properly preserved. None of the subject subpoenas are directed to the Defendants and early service poses no burden on the Defendants.

Indeed, one proposed subpoena recipient, Bank of America, has stated that it will not preserve records relating to payments Defendants made to the hackers without a subpoena. *See* Herbert Decl. ¶ 2, Exhibit 1. Because Bank of America has set a deadline

1

as early as this Friday, November 20 for receipt of a subpoena in order to ensure that relevant documents are not destroyed pursuant to its retention policy, we urge the Court to rule promptly on this Motion.

The Defendants' Response in Opposition to Plaintiff's Motion (ECF No. 21) ("Response") seeks to distract the Court with references to cases in other jurisdictions that involve different parties and claims. Defendants' effort to confuse and obfuscate was such that they attached more than 500 irrelevant pages to their Response.[1] Worse yet, Defendants include several erroneous and misleading statements that misrepresent the positions and findings of other courts, and violate the Rules by disclosing the parties' settlement discussions. The Court should ignore these distractions and grant Plaintiff's Motion.

### Defendants violated the Federal Rules of Evidence by disclosing settlement discussions.

Defendants flout the Federal Rules of Evidence in their Response by (1) citing, attaching as an exhibit, and relying upon correspondence labeled as confidential settlement discussions protected by FRE 408; and (2) purporting to describe confidential oral settlement discussions.

For reasons that are unclear, Defendants violated FRE 408 in order to bring attention to the fact that the parties engaged in discussions regarding Defendants' assistance in confirming the involvement of other bad actors already known to Plaintiff. Nevertheless, Defendants have mischaracterized these cooperation discussions. Defendants raised

---

[1] *See* L.R. 7(c) ("Bulky or voluminous materials should not be submitted . . . unless such materials are essential," and "[t]he Court may order any pleading or paper stricken if filed in violation of this Rule.").

potential cooperation against their co-conspirators, and such discussions are appropriate. *See* Herbert Decl. ¶ 7.

**Defendants' focus on other cases is largely irrelevant to the pending Motion.**

Defendants are a U.S. resident and U.S. company, sued in their home district for tortious and criminal conduct in the U.S. The first 10 pages of Defendants' Response purport to provide "background" about different cases in different jurisdictions with different parties and different causes of action. Most of the "background" focuses on a commercial dispute in the U.K. in which Defendants are not parties. If anything, the judgment in that case supports the applications at issue here, as described below. Defendants claim that Plaintiff's Motion is somehow a "collateral attack" on the U.K. case, but they never suggest how that could be the case.

Defendants also describe a lawsuit brought by Mr. Azima against Ras Al Khaimah Investment Authority ("RAKIA") in the U.S. District Court for the District of Columbia. Defendants' description of this lawsuit is also inaccurate. United States District Court Judge Ketanji Brown Jackson ruled that Mr. Azima had alleged a *plausible* connection between his hacking and the commercial relationship Mr. Azima had with RAKIA, Herbert Decl. ¶ 3, Exhibit 2 (Memorandum and Opinion, Mar. 30, 2018), and the D.C. Circuit did not disturb this ruling, *see Azima v. RAK Investment Authority*, 926 F.3d 870, 877-79 (D.C. Cir. 2019). Ultimately, the D.C. Circuit did not consider the merits of Mr. Azima's claims but determined that jurisdiction over the claims against the foreign defendants was more appropriate in the U.K.

3

Case 1:20-cv-00954-UA-JLW   Document 24   Filed 11/18/20   Page 3 of 14

Defendants' Response also contains multiple errors and inaccuracies, and the list below is illustrative of the liberties the Defendants have taken in their description of this case and other cases.

- Defendants claim that the U.K. court found that Mr. Azima failed to prove his hacking allegations against RAKIA. Response at 2. But the U.K. court found that he was hacked and that RAKIA's story for how it obtained Mr. Azima's stolen data was "not true" and that "the true facts as to how RAKIA came to know about the hacked material have not been disclosed." ECF No. 22, Exhibit 1 at ¶ 355. Furthermore, the U.K. court held that Stuart Page, one of the proposed subpoena recipients and a key witness to RAKIA's story, gave testimony that was "both internally inconsistent and at odds with the contemporary documents" and found that "it would be unsafe to rely on any evidence from Mr Page that was not corroborated by some other source." *Id*. at ¶ 64. Mr. Del Rosso was also a key component of RAKIA's story, which the U.K. court found to be untrue. Since the U.K. trial, new facts have come to light showing that Mr. Del Rosso instructed CyberRoot to hack Mr. Azima and disseminate his stolen data. *See* ECF No. 1 ¶¶ 1-6. Those new facts, which are the basis for the Complaint, have never been explored by any court.

- The U.K. Court also notably held that Mr. Gerrard, a partner at proposed subpoena recipient Dechert LLP and the person who hired Defendants, "deliberately minimized" important aspects of the factual narrative in his testimony. *Id*. at ¶ 271. Moreover, after the judgment was handed down, Gerrard recanted his trial testimony regarding the alleged mistreatment of another individual. The Court of Appeals in the U.K. granted Mr. Azima permission to appeal, finding that Mr. Azima's appeal "has a real prospect of success" and may "justify a re-trial." ECF No. 22, Exhibit 4.

- Contrary to Defendants' claim that the U.K. court "rejected Azima's claims of spoliation," Response at 9, the U.K. case included several undisputed instances of spoliation of documents in possession of Defendants' co-conspirators. Whether intentional or not, James Buchanan, another key witness for RAKIA, deleted "a substantial number of emails" just weeks after the U.K. and D.C. lawsuits were filed. ECF No. 22, Exhibit 1 at ¶¶ 74, 321.

**Attempted hacking of both law firms representing Plaintiff occurred immediately after filing demonstrates the need to preserve evidence.**

The precarious state of electronically-stored evidence in this hacking case is further illustrated by the attempted hacking of both undersigned law firms within days of the

4

Complaint being filed. Both law firms received numerous phishing attempts. While it is unclear to Plaintiff at this point whether Defendants or his co-conspirators were involved in these hacking attempts, the fact that coordinated hacking attempts against both firms representing Plaintiff in this case occurred just days after the filing of the Complaint creates an the inference that the phishing attempts are related to this lawsuit; it also shows why immediately issuing subpoenas and collecting and preserving of data are important to prevent the destruction or alteration of evidence in this case. Where efforts have been made to invade counsel's computer systems, one can reasonably assume that evidence being held by third parties is similarly at risk. The prudent course of conduct is to allow subpoenas to be served to secure the data and evidence as expeditiously as possible.

## LEGAL ARGUMENT

"Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema*, 118 F. App'x. 740, 744 (4th Cir. 2005). *See also Slate v. Byrd*, 2012 WL 12991290, at *1 n.2 (M.D.N.C. Nov. 7, 2012); *Hicks v. Houston Baptist University*, 2019 WL 7599886, at *3 n.4 (E.D.N.C. Nov. 12, 2019). Defendants claim no personal right or privilege in the information sought by the proposed subpoenas.

### I. Defendants have established good cause for the issuance of the eight subpoenas.

The Court may grant leave to serve subpoenas before the initial pretrial order if the Court determines that good cause exists to issue the subpoenas. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see*

5

*also* ECF No. 8 at 4; ECF No. 21 at 10.  Though courts have identified various factors relevant to the cases before them, "good cause" is only the requirement in Rule 16.  Each of the factors the Defendants identified are addressed below, and it is clear that good cause exists to issue the subpoenas in this case.

A party may object to the issuance of subpoenas that seek irrelevant information.  *See*, *e.g.*, *Allen v. Pacific Coast Feather Co.*, 2012 WL 1120040 (E.D.N.C. Apr. 3, 2012).  Defendants do not seriously challenge the relevance of the requested subpoenas, which is clear and is set out in Plaintiff's Motion.  *See* ECF No. 8 at 2-3 (describing the relevance of each of the proposed recipients).  To summarize:

- Upon information and belief, Defendants' bank, Bank of America, transferred funds to CyberRoot Risk Advisory Private Limited, the hacking company hired by Defendants to conduct the hacking.  ECF No. 8 at 2.  Defendants concede that this proposed subpoena request is for "confidential financial records showing Defendants' financial transactions," which confirms the relevance of these records.  ECF No. 21 at 14.
- CyberRoot's bank, Kotak Mahindra Bank, received at least some of those funds.  ECF No. 1 ¶ 5.
- Dechert LLP, through partner Neil Gerrard, hired Defendants to hack Mr. Azima.  ECF No. 1 at ¶ 1, 13.  Between 2014 and 2019, Defendants communicated with lawyers from Dechert LLP on a "very regular basis."  *Id*. ¶ 13.
- Stuart Page was also hired to investigate Mr. Azima, *id*. ¶ 2, and Mr. Del Rosso testified that he was familiar with Mr. Page.  As described above, the U.K. court found that Mr. Page gave testimony that was not true.  ECF No. 22 Ex. 1 ¶ 64.
- KARV Communications Inc. ("KARV") is a communications firm that was also hired by Dechert LLP in 2014 to assist in the investigation and campaign against Mr. Azima.  *See*, *e.g.*, ECF No. 22, Exhibit 7 at ¶ 106; ECF No. 22, Exhibit 1 at ¶ 37.
- Andrew Frank is the founder and president of KARV, and Amir Handjani is a senior advisor at KARV.  Mr. Handjani was involved in conversations about the decision to target Mr. Azima, and Mr. Frank was also involved in meetings with Mr. Gerrard regarding the investigation of Mr. Azima.  *See*, *e.g.*, ECF No. 22, Exhibit 1 at ¶¶ 279, 283, 288, 301, 305.

6

- Northern Technologies, Inc. ("NTi"), is a computer company that was hired by Mr. Del Rosso to assist with the handling of Mr. Azima's stolen data. Herbert Decl. ¶ 4, Exhibit 3 (Witness statement of N. Del Rosso).

These facts and allegations clearly show that each potential subpoena recipient is likely to have documents relevant to the claims at issue. Thus, the issue before the Court is not whether the subpoenas should issue, but when. There is good cause for the subpoenas to issue immediately.

### II. A pending preliminary injunction is not a requirement for granting leave to file subpoenas.

Defendants suggest that leave to file subpoenas is granted only in the context of preliminary injunction requests. But a preliminary injunction motion is not required to expedite discovery. *See*, *e.g.*, *Edward v. Genuine Title, LLC*, 2015 WL 8915564, at *4, (D. Md. Dec. 15, 2015) (granting expedited discovery because documents were "either destroyed or slated for destruction" or posed "unique discovery challenges"); *OTC Solutions LLC v. John Does 1-50*, No. 1:10CV500, 2011 WL 4747900 (M.D.N.C. Oct. 5, 2011). Here, the purpose of the expedited discovery is to ensure the preservation of evidence for trial.

### III. Plaintiff's requests are not overly broad.

Defendants also claim that Plaintiff's subpoena requests are overbroad. If the requests are overbroad, the third parties are perfectly capable of raising that issue.

The subpoenas are properly tailored. For the banks, the subpoenas seek specific records regarding payments to Defendants for their role in the hacking of Mr. Azima and payments by Defendants to the hackers. For the Defendants' co-conspirators, the requests relate to communications about Mr. Azima or his associates. There is no reason to think that Bank of America, Kotak Mahindra Bank, KARV Communications, Andrew Frank,

7

Amir Handjani, Stuart Page, or Northern Technologies, Inc., will have an overly burdensome number of communications about the Defendants, Mr. Azima, or his associates.[2]

### IV. Mr. Azima has demonstrated the risk of potential spoliation.

The risk of potential spoliation is clear. The events giving rise to the Complaint began in 2014. Given the age of the data sought, document retention policies may have already or soon permit the destruction of relevant documents. For example, Bank of America retains copies of account statements for seven years and suspicious activity reports for five years, putting relevant records on the verge of destruction. *See* ECF No. 8 at 4-5. Yet by letter dated November 6, 2020 (but not received until November 17, 2020), Bank of America responded to Plaintiff's preservation notice, saying, "You need to serve a subpoena within the next 15 days for the records to be preserved beyond our standard retention period." *See* Herbert Decl. ¶ 2, Exhibit 1. If the 15 days began to run on November 6, that deadline would be November 20th – this Friday. Moreover, spoliation by agents of RAKIA was undisputed in the U.K. proceeding (the only dispute was whether the document destruction was willful). *See* ECF No. 22, Exhibit 1 at ¶¶ 74, 321; ECF No. 22, Exhibit 7 at ¶ 108. Mr. Azima seeks to ensure that the same spoliation problems don't occur here. The criminal nature of the allegations of this case, and the continued risk of hacking previously described, only increase the risk of spoliation, whether intentional or

---

[2] Defendants also allege that the requests are for an "unbounded scope and time period," but the conspiracy against Mr. Azima began in 2014, *see* ECF No. 8 at 1, and none of the subpoenas seek documents from prior to 2014.

unintentional. Without question, the most effective (and perhaps the only) way to avoid spoliation here is for this Court to grant leave to serve subpoenas.3

"[S]tatus as a non-party significantly increases the risk that evidence may be lost." *In re Smith Barney Transfer Agent Litigation*, 2012 WL 1438241, at *3 (S.D.N.Y. Apr. 25, 2012); *see also Andra Group, LP v. JDA Software Group, Inc.*, 2015 WL 12731762, *15 (N.D. Tex. Dec. 9, 2015) ("Absent some special relationship . . . the general rule is that there is no duty to preserve possible evidence for another party . . .").

Plaintiff sent each potential subpoena recipient a litigation hold notice. Only two of the potential subpoena recipients – Bank of America and Dechert LLP – have even responded to Plaintiff's preservation demand.4 As noted above, Bank of America refused to preserve beyond its normal document retention policy. While Dechert LLP agreed in the abstract to preserve documents, unless and until a subpoena is issued, there won't be a court-mandated dialogue about what needs to be preserved and produced. Compliance with a subpoena will minimize the risk of potential nefarious efforts by third parties to access and destroy documents and will avoid unduly delaying the discovery process.

---

3 Defendants' citation of *Rivers v. United States*, No. 6:18-cv-00061, 2020 WL 1469475 (Jan. 24, 2020), is inapposite. In that case, Plaintiff sought leave to serve subpoenas on "known and unknown third-parties," including government agencies, "employees of the Defendants, and parties of interest to the Defendants or the matter all-together." *Id.* at *1. Here, Plaintiff seeks specific relevant information and articulates a reasonable risk of spoliation.

4 Defendants also received a preservation demand and have not responded.

9

### V. The purpose of the request for expedited discovery favor granting the request.

Defendants' claim that the documents being sought may be relevant to some other proceeding justifies denial of this Motion. But because the requested discovery is relevant to Plaintiff's claims in this action, the "mere fact that it may be used in other litigation" is no basis to deny the request. *See Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

### VI. The subpoenas impose no burden on Defendants and a low burden on seven of the eight potential recipients.

Defendants claim that the subpoenas "would be unnecessarily burdensome" to Defendants. But since the burden of responding to a subpoena lies with the subpoena recipients, there is no burden on Defendants. For the banks, any burden is likely to be extremely low, since all they need to do is query their banking records for the payments at issue. As discussed above, other than Dechert LLP, the burden on Defendants' alleged co-conspirators is likely to be low as well because the subpoenas simply request limited communications and documents related to Mr. Azima.

Finally, Defendants argue that they intend to file a motion to dismiss and suggest that Plaintiff's Motion should not be granted because they may seek a delay in discovery. While premature, Plaintiff will oppose any effort to delay discovery in this matter, and Defendants' effort to avoid service of subpoenas, avoid protection of evidence, and avoid spoliation when the same can be achieved at no cost to them is telling. Defendants' previewed effort to stay discovery could greatly increase the risks of spoliation.

## CONCLUSION

For the foregoing reasons, there is good cause for leave to serve subpoenas, and Plaintiff requests that the Court grant the Motion.

This, the 18th day of November, 2020.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Ripley Rand
Ripley Rand
North Carolina Bar No. 22275
Christopher W. Jones
North Carolina Bar No. 27625
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email: chris.jones@wbd-us.com
ripley.rand@wbd-us.com

**MILLER & CHEVALIER CHARTERED**

/s/ Kirby D. Behre
Kirby D. Behre
Brian A. Hill
Tim O'Toole
Ian Herbert
Calvin Lee
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com

*Counsel for Plaintiff*

11

## **CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that the foregoing document complies with the type-volume limitations of L.R. 7.3(d)(1) and contains 3,113 words, excluding those portions of the document exempted by the rule.

This, the 18th day of November, 2020.

/s/ Ripley Rand
Ripley Rand

12

Case 1:20-cv-00954-UA-JLW   Document 24   Filed 11/18/20   Page 12 of 14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>　　Defendants. | **CERTIFICATE OF SERVICE** |

　　I hereby certify that I electronically filed the foregoing Notice of Appearance with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

　　Kieran J. Shanahan, Esq.
　　Brandon S. Neuman, Esq.
　　Jeffrey M. Kelly, Esq.
　　Nathaniel J. Pencook, Esq.
　　128 E. Hargett Street, Suite 300
　　Raleigh, North Carolina 27601
　　Telephone: (919) 856-9494
　　Facsimile: (919) 856-9499
　　kieran@shanahanlawgroup.com
　　bneuman@shanahanlawgroup.com
　　jkelly@shanahanlawgroup.com
　　npencook@shanahanlawgroup.com

*[The remainder of this page was left blank intentionally.]*

This, the 18th day of November, 2020.

                               **WOMBLE BOND DICKINSON (US) LLP**

                               /s/ Ripley Rand
                               Ripley Rand
                               North Carolina State Bar No. 22275
                               555 Fayetteville Street, Suite 1100
                               Raleigh, NC 27601
                               Telephone:     (919) 755-8125
                               Facsimile:     (919) 755-6752
                               Email:         Ripley.Rand@wbd-us.com

                               *Counsel for Plaintiff*