# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CASE NO. 20-CV-954-UA-JLW

|  |  |
|---|---|
| FARHAD AZIMA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| NICHOLAS DEL ROSSO and VITAL | ) |
| MANAGEMENT SERVICES, INC., | ) |
|  | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

## Table of Contents

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................. 2

I.    Azima's Claims Are Time-Barred. ............................................. 2

    A.    Azima Fails to Allege Fraudulent Concealment. ........................ 2

    B.    The Limitations Periods Have Expired. .................................. 6

II.   The English Proceedings Preclude Azima's Claims. ......................... 7

    A.    Azima's Preliminary Arguments Are Meritless. .......................... 7

    B.    Azima's Action Is Barred By Claim Preclusion. .......................... 8

    C.    Azima's Action Is Barred by Issue Preclusion. ........................... 9

III.  Azima Fails To State Claims Under Federal Law. ......................... 10

IV.   Azima Fails To State Claims Under North Carolina Law. .................. 12

CONCLUSION ............................................................................. 15

i

# Table of Authorities

**Cases**

*Amaya v. Bregman,*
  186 F. Supp. 3d 1280 (D.N.M. 2016)........................................................ 11

*Bausch v. Philatelic Leasing, Ltd.,*
  34 F.3d 1066 (4th Cir. 1994)....................................................................4

*Belmont Partners, LLC v. Mina Mar Grp., Inc.,*
  741 F. Supp. 2d 743 (W.D. Va. 2010)......................................................7

*Bridgetree, Inc. v. Red F Marketing LLC,*
  2013 WL 443698 (W.D.N.C. Feb. 5, 2013)............................................ 13

*Brit. Midland Airways Ltd. v. Int'l Travel, Inc.,*
  497 F.2d 869 (9th Cir. 1974).....................................................................7

*Ctr. Law & Consulting, LLC v. Axiom Res. Mgmt., Inc.,*
  456 F. Supp. 3d 765 (E.D. Va. 2020)..................................................... 11

*Dishner v. Goneau,*
  2017 WL 397878 (N.C. Super. Ct. Jan. 30, 2017) .................................. 14

*In re Dublin Secs., Inc.,*
  133 F.3d 377, 381 (6th Cir. 1997)............................................................8

*Exclaim Mktg., LLC v. DirecTV, LLC,*
  134 F. Supp. 3d 1011 (E.D.N.C. 2015) .................................................. 14

*Ferro v. Vol Vo Penta of the Americas, LLC,*
  2017 WL 3710071 (E.D.N.C. Aug. 28, 2017) ..........................................2

*Food Lion, Inc. v. Capital Cities/ABC, Inc.,*
  194 F.3d 505 (4th Cir. 1999)................................................................. 14

*Foreman v. U.S. Bank Nat'l Ass'n,*
  2008 WL 4287948 (M.D.N.C. Sept. 16, 2008).........................................8

*Hance v. First Citizens Bank & Tr. Co.*,
     242 N.C. App. 251 (2015)...............................................................................6

*Harnett v. Billman*,
     800 F.2d 1308 (4th Cir. 1986)................................................................ 7, 8

*Heska Corp. v. Qorvo US, Inc.*,
     2020 WL 5821078 (M.D.N.C. Sept. 30, 2020).......................................... 13

*Huff v. Spaw*,
     794 F.3d 543 (6th Cir. 2015)...................................................................... 10

*Lubrizol Corp. v. Exxon Corp.*,
     871 F.2d 1279 (5th Cir. 1989)......................................................................9

*Luis v. Zang*,
     833 F.3d 619 (6th Cir. 2016)....................................................................... 12

*Maxwell v. Remington Arms Co., LLC*,
     2014 WL 5808795 (M.D.N.C. Nov. 7, 2014).............................................. 14

*Mullinax v. Radian Guar., Inc.*,
     311 F. Supp. 2d 474 (M.D.N.C. 2004) ..................................................... 3, 5

*Pena v. A. Anderson Scott Mortg. Grp., Inc.*,
     692 F. Supp. 2d 102 (D.D.C. 2010)...............................................................4

*Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*,
     828 F.2d 211 (4th Cir. 1987)................................................................. 3, 4, 5

*Pony Express Records, Inc. v. Springsteen*,
     163 F. Supp. 2d 465 (D.N.J. 2001) ............................................................ 10

*Smith v. Lerner, Sampson & Rothfuss, L.P.A.*,
     658 F. App'x 268 (6th Cir. 2016) .................................................................5

*Stephens v. Bank of Am. Home Loans, Inc.*,
     2017 WL 4322816 (E.D.N.C. Sept. 28, 2017) ..............................................2

*Sterling Title Co. v. Martin*,
     266 N.C. App. 593 (2019)............................................................................ 13

iii

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
    71 F.3d 119 (4th Cir. 1995)............................................................2

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    271 F. Supp. 3d 835 (E.D. Va. 2017)........................................ 12

*Strategic Mgmt. Decisions LLC v. Sales Performance Int'l, LLC*,
    2017 WL 3425930 (N.C. Super. Ct. Aug. 7, 2017)...................... 13

*Tillet v. Onslow Memorial Hospital, Inc.*,
    215 N.C. App. 382 (2011)............................................................ 14

*United States v. Szymuszkiewicz*,
    622 F.3d 701 (7th Cir. 2010)....................................................... 11

*White v. Thompson*,
    364 N.C. 47 (2010) ..................................................................... 14

*Wilkerson v. Christian*,
    2008 WL 483445 (M.D.N.C. Feb. 19, 2008) ..................................4

*Yancey v. Remington Arms Co., LLC*,
    2013 WL 5462205 (M.D.N.C. Sept. 30, 2013)................................3

*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*,
    963 F. Supp. 2d 289 (S.D.N.Y. 2013) ........................................ 10

## Statutes and Rules

N.C. Gen. Stat. § 14-458.......................................................................6

Fed. R. Civ. P. 9(b) ...................................................................... 1, 2

Case 1:20-cv-00954-UA-JLW   Document 39   Filed 01/25/21   Page 5 of 22

# INTRODUCTION[1]

Azima concedes, as he must, that his claims are untimely counting from September 2016 when he knew he was hacked and sued RAKIA. Dkt. No. 34 ("Opp.") 3 & n.1. That ends this case. Azima tries to avoid dismissal by claiming "fraudulent concealment," but he pleads no facts suggesting that Defendants concealed anything, let alone particularized facts as required by Rule 9(b). His allegations that an unidentified person modified an internet link in 2018 and 2019 are irrelevant: he does not claim that modifying a link is tortious, so those acts do not affect the date on which his claims accrued; and he does not allege facts suggesting that Defendants had anything to do with this modification. Azima is thus left with an accrual date no later than September 2016.

Separately, Azima's claims are precluded because he has already lost, in English Proceedings litigated through trial, on his claim that RAKIA's agents are responsible for hacking him. The English Judgment is final, the pendency of an appeal is legally irrelevant, the English Court's factual findings are on point and impossible to reconcile with the Complaint's allegations, and Azima's own allegations, taken as true, show that RAKIA and Defendants were in privity.

---

[1] Abbreviations are the same as in Defendants' motion. Dkt. No. 32.

1

Finally, Azima's causes of action each fail for the reasons set forth in the opening brief, and Azima's opposition does nothing to overcome their deficiencies. After nearly four years of litigation including a three week trial in England, Azima puts forth only barebones allegations and is unable to plead plausible claims. For these reasons, the Court should dismiss.

## ARGUMENT

### I. Azima's Claims Are Time-Barred.

#### A. Azima Fails to Allege Fraudulent Concealment.

Azima concedes that he must meet Rule 9(b)'s heightened pleading standard to invoke the extraordinary tolling remedy of fraudulent concealment. Opp. 5. He also concedes that, to do so, he must allege with particularity, first, that Defendants "fraudulently concealed facts that are the basis of [his] claim," and second, that he "failed to discover those facts within the statutory period" despite "exercis[ing] due diligence."[2] *Stephens v. Bank of Am. Home Loans, Inc.*, 2017 WL 4322816, at *3 (E.D.N.C. Sept. 28, 2017) (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)); Opp. 4. Particularity under Rule 9(b) means that a plaintiff must

---

[2] North Carolina law is similar. *See, e.g., Ferro v. Vol Vo Penta of the Americas, LLC*, 2017 WL 3710071, at *4 (E.D.N.C. Aug. 28, 2017), *aff'd*, 731 F. App'x 208 (4th Cir. 2018).

"provide the details necessary to determine how, when, and in what manner" the defendant engaged in fraudulent concealment. *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 488 (M.D.N.C. 2004) (quotation marks omitted). Where a plaintiff fails to provide "the required particulars of who made the statements, to whom the statements were made, and where the statements were made," together with "reasonable and detrimental reliance," motions to dismiss should be granted. *Yancey v. Remington Arms Co., LLC*, 2013 WL 5462205, at *6 (M.D.N.C. Sept. 30, 2013) (quotation marks omitted). Azima offers only conclusory pleading, not particularized facts, on both points, thus, he has not pleaded fraudulent concealment.

As to concealment, Azima does not contest that by September 2016, he not only knew he had been hacked, but had already asserted hacking claims in a prior action in which he alleged that RAKIA and its agents were responsible. Opp. 3; Ex. 4. His primary argument is that he did not know specifically of Defendants' putative involvement in the hack because Defendant Del Rosso was at first silent and then, in a witness statement and later in trial testimony in 2020, denied being involved.

Neither is enough. *See Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir. 1987). Denying liability does not

constitute fraudulent concealment. *See id.* Nor does silence. *See Pena v. A. Anderson Scott Mortg. Grp., Inc.*, 692 F. Supp. 2d 102, 108 (D.D.C. 2010). And even if that were not the rule, Azima's timeline is nonsensical. By the time of the 2020 testimony to which he points, Azima's limitations periods had expired. A claim of fraudulent concealment requires that the plaintiff "refrain[ed] from filing suit … because of the defendant's false representation or concealment of material facts." *Wilkerson v. Christian*, 2008 WL 483445, at *7 (M.D.N.C. Feb. 19, 2008) (quotation marks omitted). His failure to file suit before 2020 cannot be traced to testimony in the English Proceedings. Nor can it be traced to emails that Azima received in discovery in the English Proceedings, which he now claims laid a "false 'paper trail.'" Opp. 5.

Nothing else in the Complaint offers the required particulars showing that Defendants "fraudulently concealed facts which are the basis of [the] claim." *Pocahontas*, 828 F.2d at 218. All Azima offers are boilerplate, "general allegations of concealment," by Defendants, which are insufficient. *Bausch v. Philatelic Leasing, Ltd.*, 1994 WL 446758, at *7 (4th Cir. 1994) (quotation marks omitted). While he references concealment by alleged co-conspirators, he fails to offer particularized facts showing "how, when, and in what manner,"

4

*Mullinax*, 311 F. Supp. 2d at 489, any alleged co-conspirator fraudulently concealed Defendants' involvement, *see* Opp. 4, 5; Compl. ¶¶ 7–8, 34–35. Indeed, he fails to adequately allege a conspiracy at all. *See infra* § IV.

As to Azima's own diligence, his vague claim that he discovered Defendants' purported role in the hacking "following an investigation," Compl. ¶ 127, does nothing to satisfy the requirement that he show, again with particularity, the who-what-where-when-how of his own diligent inquiry into his long-known claim. To the contrary, it undercuts it. Azima does not detail his earlier inquiry at all, and his allegation that he was able to pin the hacking on Defendants through "an investigation" in 2020—taken as true, and absent any allegation of newly available information then—shows that with earlier investigation he could have timely brought this claim. *Pocahontas*, 828 F.2d at 218. This is especially so because, having used his "theory" of hacking by RAKIA agents "defensively … years prior to bringing this suit," he cannot now "successfully claim that Defendants' fraudulent concealment prevented him from discovering the theory." *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 274 (6th Cir. 2016).

Azima fails to plead with particularity either deception or his own diligence, so his claims are time barred.

5

**B.     The Limitations Periods Have Expired.**

Azima concedes that the limitations period begins "from the date of the final tortious act needed to state an element of the offense." Opp. 6. He also admits that his computer trespass claim, which has a one-year limitations period, is time-barred under this test. Opp. 6; N.C. Gen. Stat. § 14-458(c). His remaining claims have expired too.[3]

Azima points to allegations that in 2018 and 2019, someone modified web links pointing to his allegedly hacked data, but does not allege any facts to support (because he cannot) that Defendants had anything to do with this modification, so these 2018 and 2019 changes are irrelevant. *See* Opp. 6; Compl. ¶¶ 24, 26, 49, 93, 98. Azima anyway does not even try to suggest that a change to a web link is a tortious act at all, let alone the "final tortious act" for any of his claims, and he himself sued for the hacking in September 2016, before these web links were changed. Mot. 7–9.

---

[3] Citing no authority, Azima suggests that his identity-theft and personal-information claims accrued only when he "learned of the Defendants' role." Opp. 7. That is not the law. *See Hance v. First Citizens Bank & Tr. Co.*, 242 N.C. App. 251, at \*4–\*6 (2015) (applying fraudulent-concealment analysis to identity theft claim).

6

Azima's two cited cases are far off point. They involve the continuing-violation doctrine for certain statutory harassment claims, under which an employee's harassment claim may accrue when the employee ultimately resigns. *See* Opp. 6. Legally, Azima points to no similar doctrine for any of his claims, and factually, he identifies no pattern analogous to workplace harassment here, nor to any act of his, similar to an employee's resignation, that should trigger his limitations period.

## II.   The English Proceedings Preclude Azima's Claims.

### A.   Azima's Preliminary Arguments Are Meritless.

The English Judgment easily satisfies the criteria for comity, *see Belmont Partners, LLC v. Mina Mar Grp., Inc.*, 741 F. Supp. 2d 743, 750 (W.D. Va. 2010), and "comity should not be refused" given that "English procedure comports with our standards of due process," *Brit. Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974) (quotation marks omitted). Azima cites no authority otherwise. Nor does fraudulent concealment protect him from preclusion. His fraudulent concealment arguments have no merit generally for the reasons just stated, but to defeat preclusion, the bar would be even higher: as the case Azima cites illustrates, he would have to specifically show, *inter alia*, that Defendants' concealment "caused the plaintiff to fail to include a claim in a former action." *Harnett v. Billman*, 800 F.2d 1308, 1313

7

(4th Cir. 1986). Azima does not even try to point to specific acts of concealment that caused him not to include Defendants when he asserted his earlier claims.

## B. Azima's Action Is Barred By Claim Preclusion.

Azima first argues that there is "no prior final judgment" in England, Opp. 9, but that is false. His principal case—which *found* preclusion—confirms that preclusion attaches, as here, when there is nothing further "to be judicially determined … in the trial court." *Foreman v. U.S. Bank Nat'l Ass'n*, 2008 WL 4287948, at *2 (M.D.N.C. Sept. 16, 2008) (quotation marks omitted). Azima implies that this Court should hesitate to give full weight to the English Judgment, but the pendency of an appeal does not diminish the preclusive effect of a judgment. *See* Mot. 11 (citing *In re Dublin Secs., Inc.*, 133 F.3d 377, 381 (6th Cir. 1997)).

Azima next argues that the claims against Defendants in this case could not have been brought in the English Proceedings because that was a "breach of contract case," while this case involves tort claims. Opp. 10–11. This is belied by the fact that Azima asserted allegations against RAKIA agents during the English Proceedings and was permitted to (and did) bring non-breach of contract counterclaims. But that makes no difference to claim preclusion: claims arising from a common set of facts, as these undisputedly do, are precluded "even if" they involve "different [legal] theories." *Harnett*, 800 F.2d at 1314.

8

Azima baselessly argues that his hacking counterclaim was "never resolved on the merits." Opp. 11. That is false. The English Court found that RAKIA, directly or through its agents, was not responsible for the hacking, and entered judgment against Azima on his hacking counterclaim. *See* Ex. 3 ¶ 8. In a further judgment, the English Court reiterated that it previously "found that RAKIA was not responsible for the hacking or for the posting of the websites with links to the hacked data and that it was not liable for conspiracy," and held that all of the allegations in Azima's hacking counterclaim were "*res judicata.*" Supplemental Declaration of Brandon S. Neuman in Further Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), Ex. 6 ¶ 20. Azima also does not dispute that *res judicata* bars a follow-on suit against the particular agents involved in conduct that forms the basis of the first suit against the principal. *See* Mot. 13.

Finally, Azima now questions whether RAKIA and Defendants "were in privity," Opp. 11, but his Complaint's central theory is that Defendants worked "on behalf of [RAKIA]," Compl. ¶ 1. An agent is the quintessential privy, *see Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989), so Azima's own Complaint establishes this element of preclusion.

## C. Azima's Action Is Barred by Issue Preclusion.

Azima's issue preclusion arguments are equally baseless. Azima asserts

without elaboration that English law applies "a different legal standard." Opp. 12. But Azima is precluded as to a factual issue: as just noted, the English Court found that RAKIA and its agents were not responsible for the hacking. *See Pony Express Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 473–76 (D.N.J. 2001) (preclusion by English factual findings). Azima's only case, *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, is off point because there the earlier lawsuit did not resolve the factual issue. 963 F. Supp. 2d 289, 295 (S.D.N.Y. 2013). Azima's contention that the English Court "never considered" the issues in the Complaint, Opp. 12, is patently wrong, because Azima specifically alleged there that RAKIA acted through agents, and that seven of RAKIA's witnesses had conspired together to present a false case, and the Court rejected those allegations. Ex. 1 ¶¶ 36, 374, 379, 381–82. And his contention that the English Proceedings denied him a full and fair opportunity to litigate these issues merely because "English discovery rules" are different, Opp. 13, has no support in law. Azima thus offers nothing meaningful to avoid issue preclusion, and his factual claims here are barred.

## III.   Azima Fails To State Claims Under Federal Law.

**ECPA.** Azima concedes that ECPA does not apply extraterritorially. Opp. 14. And as Azima's case, *Huff v. Spaw*, explains, what matters is not whether the "communications traveled through [the] United States," but

"where [the defendant] used a device to acquire" them. 794 F.3d 543, 547 (6th Cir. 2015). Azima alleges his data was intercepted by devices in India. Mot. 16–17; Compl. ¶¶ 2–3, 16, 19–22, 49.

Separately, while Azima insists he has alleged "primary liability" by Defendants, his actual claim is that Defendants were part of a "plan" to "target" Azima, which is a theory of secondary liability.[4] *See, e.g.*, *Amaya v. Bregman*, 186 F. Supp. 3d 1280, 1293 (D.N.M. 2016). And, as the opening brief explained, Congress changed ECPA to eliminate secondary liability. Mot. 17. The two contrary, out-of-Circuit decisions Azima cites, Opp. 15, are against the vast weight of authority, and are incorrect.

Finally, Azima confuses "persistent" or "real-time" access to stored data with the contemporaneous interception of communications required for an ECPA claim. In Azima's cases, Opp. 16, unlike here, the defendant captured emails in transit. *See United States v. Szymuszkiewicz*, 622 F.3d 701, 705 (7th Cir. 2010) (auto-forwarding sufficiently contemporaneous); *Ctr. Law & Consulting, LLC v. Axiom Res. Mgmt., Inc.*, 456 F. Supp. 3d 765, 770 (E.D. Va.

---

[4] Azima's Footnote 3 relies on factual allegations outside of the Complaint and should be disregarded; regardless, the conduct he newly points to— emailing a link to and traveling with data—was from 2016 and is time-barred, and standing alone without other sufficient factual allegations is not tortious in itself.

11

2020) (emails "'automatically intercepted' at … transmission"); *Luis v. Zang*, 833 F.3d 619, 631–32 (6th Cir. 2016) (similar). This case is instead precisely like the no-interception cases Defendants cited, which Azima ignores. Mot. 18–19.

**Federal Trade Secret Misappropriation.** Azima concedes that the DTSA requires primary liability. Opp. 17. He fails to distinguish *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842–43 (E.D. Va. 2017), and expressly relies on allegations just like those rejected in *Steves*—that Defendants hired CyberRoot to undertake the alleged misappropriation. *See* Compl. ¶¶ 29–30.

Azima's descriptions of the alleged trade secrets are likewise too vague and conclusory, as is his claimed nexus with interstate commerce. *See* Mot. 21–22. And his reliance on pre-DTSA caselaw is misguided. Opp. 17–18. He concedes that his pre-DTSA allegations are not actionable, and offers no facts to support his vague claim that Defendants "continued to misappropriate Azima's data" in 2018 and 2019. Opp. 18 (citing Compl. ¶¶ 6, 16, 24, 26).

## IV. Azima Fails To State Claims Under North Carolina Law.

**Computer Trespass.** Azima concedes that Defendants themselves did not "use" his "computer or computer network without authority," Opp. 18, as this claim requires, Mot. 22.

12

**Conversion.** Azima ignores the North Carolina decisions, Mot. 23, holding that copying data, without deprivation, is not conversion, Opp. 18–19. His principal cited case, *Bridgetree, Inc. v. Red F Marketing LLC,* 2013 WL 443698, at *10 (W.D.N.C. Feb. 5, 2013), is an outlier and contrary to the weight of authority. *E.g., Strategic Mgmt. Decisions LLC v. Sales Performance Int'l, LLC*, 2017 WL 3425930, at *3 (N.C. Super. Ct. Aug. 7, 2017) (collecting cases).

**Identity Theft.** Azima's fact-free allegation that Defendants used his information to impersonate him, Opp. 19; Compl. ¶ 87, should be disregarded as purely conclusory, and fails to state a claim, *see* Mot. 23.

**Publication of Personal Information.** Azima admits he failed to object to disclosure of his personal information prior to the English Proceedings, Opp. 19, which defeats this claim, Mot. 23–24.

**TSPA.** Azima concedes by silence that there is no "aiding and abetting" liability for trade secrets violations, which is fatal to this claim. Opp. 19–20; Mot. 24. His opposition does not remedy his failure to identify any trade secrets with "sufficient particularity." *Cf. Heska Corp. v. Qorvo US, Inc.*, 2020 WL 5821078, at *9 (M.D.N.C. Sept. 30, 2020) (plaintiff "specifically identifie[d]" versions and components). His bare references to customer lists are not enough. *See Sterling Title Co. v. Martin*, 266 N.C. App. 593, 602 (2019).

13

**UDTPA.** The UDTPA applies narrowly to "protect the consuming public" and does not cover "all wrongs in a business setting." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 519 (4th Cir. 1999); *see also White v. Thompson*, 364 N.C. 47, 51 (2010). Azima identifies no nexus with consumers nor any business "relationship" with Defendants related to his claim. *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1021 (E.D.N.C. 2015); *Food Lion Inc.*, 194 F.3d at 520. And his vague assertions of harm do not suffice under the UDTPA. *See Maxwell v. Remington Arms Co., LLC*, 2014 WL 5808795, at *6 (M.D.N.C. Nov. 7, 2014).

**Privacy Invasion.** Fatally, Azima admits any alleged intrusion was performed by third parties, not Defendants. Opp. 22–23. He fails to distinguish *Dishner v. Goneau*, 2017 WL 397878, at *6 (N.C. Super. Ct. Jan. 30, 2017); and *Tillet v. Onslow Memorial Hospital, Inc.*, which involved viewing a homicide autopsy, is off point factually and because the court there dismissed the privacy claim. 215 N.C. App. 382, 386 (2011).

**Civil Conspiracy.** Azima concedes that if his other claims fail, so does his conspiracy claim. Opp. 23. He anyway fails to allege facts suggesting that Defendants were responsible for acts by CyberRoot and concedes that no allegations connect Defendants to BellTroX.

14

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' motion to dismiss the Complaint with prejudice.


Respectfully submitted this 25th day of January, 2021.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**


By:      */s/ Brandon S. Neuman*
    Kieran J. Shanahan, NCSB# 13329
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    Nathaniel J. Pencook, NCSB# 52339
    Glenlake One
    4140 Parklake Avenue, Suite 200
    Raleigh, North Carolina, 27612
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    kieran.shanahan@nelsonmullins.com
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    *Counsel for Defendants*

15

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 3,123 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 3,125 word limitation.

Respectfully submitted this 25th day of January, 2021.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:    */s/ Brandon S. Neuman*

Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January 2021, I electronically filed the foregoing **Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss Pursuant to Rule 12(b)(6)** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathan.townsend@wbd-us.com
ripley.rand@wbd-us.com
chris.jones@wbd-us.com

Calvin Lee
Ian Herbert
Brian Hill
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
bhill@milchev.com
kbehre@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: _____ */s/ Brandon S. Neuman* _____
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

17