UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-cv-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>　　Defendants. | **BRIEF OF PLAINTIFF FARHAD AZIMA IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO ORDER AND RECOMMENDATION** |

The Order and Recommendation filed on August 9, 2021 (ECF No. 54) recommended allowing four counts from the Complaint of Plaintiff Farhad Azima ("Azima") to proceed to discovery, and Defendants Nicholas Del Rosso and Vital Management Services, Inc. ("Defendants") have objected to the recommendation on each of those four counts.[1] Defendants' limited argument is that those four counts should be dismissed at the pleadings stage on statute of limitations grounds, and that the trade secrets claims should also be dismissed for failure to state a claim. Defendants' arguments lack merit. For the reasons described below and in his Objection filed earlier (ECF No. 56), Azima opposes Defendants' Objection to the Recommendation. Defendants' Motion to Dismiss should be denied in its entirety and the Complaint should be allowed to proceed.

---

[1] As Azima has shown in his own objection to the Recommendation, ECF No. 56, all of Azima's claims should survive Defendants' Motion to Dismiss.

1

# ARGUMENT

## I. **Plaintiff's Claims Should Not Be Dismissed on Statute of Limitations Grounds**.

The Magistrate Judge correctly recommended against dismissing nine of Azima's claims on statute of limitations grounds: Counts I and II (Wiretap Act); Count III (federal misappropriation of trade secrets); Count VI (identity theft); Count VII (publication of personal information); Count VIII (state trade secrets); Count IX (unfair and deceptive trade practices); Count X (civil conspiracy); and Count XI (invasion of privacy).[2] Defendants' statute of limitations argument is flawed because they ask the Court to look outside the Complaint to determine when the statutes of limitation started to run by asking the Court to take judicial notice of a 2016 lawsuit filed by Azima against RAKIA that was limited to conduct in or before 2016. The Magistrate Judge correctly recognized that dismissal based on an affirmative defense (such as a statute of limitations) at this stage of the proceedings is rare and is appropriate only when all the facts necessary to establish the affirmative defense appear on the face of the Complaint itself.

Defendants' statute of limitations argument also fails because, even if looking outside the Complaint would have been proper, Defendants have still not established a statute of limitations affirmative defense. Even if the 2016 lawsuit were properly subject

---

[2] Though the Magistrate Judge correctly recommended against dismissing each of these counts under statutes of limitations, the judge incorrectly recommended dismissing Counts I, II, VI, VII, IX, and XI on other grounds. Azima has objected to these recommendations. *See* ECF No. 56. The Magistrate Judge also incorrectly recommended dismissal of Azima's state law computer trespass (Count IV) and conversion (Count V) claims under statutes of limitations. Azima objected to the recommendation to dismiss these state law claims, which were tolled under the doctrine of equitable estoppel. *See* ECF No. 56 at 10-15.
2

to judicial notice at this stage, the most that the 2016 lawsuit can show is when Azima learned he had a claim against RAKIA for a hacking that occurred during or before 2016. It cannot show when Azima learned he had *these* different claims – for Wiretap Act violations, trade secrets law violations, and state law claims – against *these* different Defendants. That is especially true for ongoing conduct, such as the 2018 and 2019 conduct alleged in the Complaint that post-dates the 2016 lawsuit. And taking judicial notice of Azima's 2016 lawsuit against RAKIA cannot resolve issues about whether any statute of limitations should be tolled because Defendants fraudulently concealed their involvement in the tortious conduct. For these reasons, it was appropriate for the Magistrate Judge to decline to take judicial notice of the 2016 lawsuit and to recommend against dismissal of Azima's claims on statute of limitations grounds.

> A. <u>Courts Look to the Face of the Complaint When Considering Dismissal Under an Affirmative Defense</u>.

The Magistrate Judge applied the appropriate legal standard in the Fourth Circuit in finding that all facts necessary to dismiss a complaint based on an affirmative defense such as a statute of limitations must appear "on the face of the complaint." ECF No. 54 at 6-9. Recognizing that a Rule 12(b)(6) motion "tests the sufficiency of the complaint," the Fourth Circuit has long disfavored dismissal on statute of limitations grounds in a Rule 12(b)(6) context. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (holding that dismissal on statute of limitations grounds in Rule 12(b)(6) context is only possible where "all facts necessary to the affirmative defense clearly appear *on the face of the complaint*.") (cleaned up); *see also Superior Performers, Inc. v. Phelps*, 154 F. Supp. 3d 237, 243 (M.D.N.C. 2016) ("An affirmative defense will be reached on a motion to dismiss

in the relatively rare circumstances when all facts necessary to the affirmative defense clearly appear on the face of the complaint.") (cleaned up).

Defendants cite two Fourth Circuit cases in arguing that judicial notice has some limited value in the Rule 12(b)(6) context compared to the face of the Complaint. *See* ECF No. 57 at 12. In both cases, the Fourth Circuit only permitted judicial notice in the res judicata context because "the res judicata defense *raise[d] no disputed issue of fact.*" *Q Intern. Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) (emphasis added); *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (same). In contrast, Defendants' statute of limitations defense raises multiple factual questions inappropriate for Rule 12(b)(6) dismissal, such as the date of accrual, whether the tort involved continuing conduct, whether Defendants fraudulently concealed their involvement in the illegal conduct, and when the illegal conduct ceased. *See Waugh v. Elan Fin. Serv.*, No. CV 3:17-4378, 2018 WL 2976430, at *5 (S.D.W. Va. Jun. 13, 2018) (noting that, when the Court cannot determine from reviewing the complaint when the illegal conduct stopped, it is not clear from the face of the complaint whether the statute of limitations has run and dismissal on statute of limitations grounds is inappropriate). When the affirmative defense requires resolution of competing factual theories, dismissal is inappropriate and courts should allow discovery to resolve open factual questions rather than rely upon extrinsic documents to read inferences into the Complaint. *Id.; see also, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.").

4

B.  The 2016 Lawsuit Does Not Provide a Basis for Dismissing Azima's Complaint

Even if the Court took judicial notice of the 2016 lawsuit, the allegations in that lawsuit do not form a sufficient basis to dismiss Azima's Complaint on statute of limitations grounds. Defendants ask the Court to take judicial notice of the 2016 lawsuit without explaining what the Court should notice: the existence of the lawsuit itself, the facts alleged, the ultimate disposition of the case, or something else? Defendants also do not explain why judicial notice should result in the dismissal of this Complaint. Azima filed the 2016 lawsuit against a different defendant for different causes of action. Nothing in the 2016 lawsuit shows that Azima knew or should have known about Defendants' illegal conduct in 2016, the fact that his communications were intercepted on an ongoing basis, or the fact that his trade secrets were stolen. Nor does the 2016 lawsuit say anything about Defendants' conduct after 2016, including the 2018 and 2019 conduct alleged in this case.

When examining a motion to dismiss, courts "accept as true all well-pleaded allegations." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). If the Court takes judicial notice of another lawsuit, the Court must construe any judicially noticeable fact in the light most favorable to Azima. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[W]hen a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs"); *Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d 530, 549 (M.D.N.C. 2018) ("[A] court may consider facts and documents subject to judicial notice, provided that the court construe such facts in the light most favorable to the non-moving party."); *Humane*

5

*Soc'y of the United States v. Hanor Co. of Wisconsin, LLC*, No. 4:15-CV-109-FL, 2016 WL 3435192, at *4 (E.D.N.C. Jun. 17, 2016) ("Even where the court may judicially notice a fact as part of a public record, it must interpret those facts in the light most favorable for plaintiff . . . . [I]t may not use judicial notice to draw inferences from the contents of such documents, especially where those inferences are hostile to plaintiff."); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 426 (2d Cir. 2008) ("While we have no quarrel with the District Court's decision to take judicial notice of what information was 'out there,' we do disagree with its conclusion that the total mix of information before it was sufficient to rule, as a matter of law, that an investor of ordinary intelligence was on inquiry notice of The Hartford's allegedly fraudulent conduct by July 2001.").

If the Court were to consider the 2016 lawsuit, it would still be inappropriate to dismiss the Complaint on statute of limitations grounds for several reasons. First, nothing in the 2016 lawsuit suggests that Azima was aware of Defendants' conduct in 2016; instead, Azima alleges in his Complaint that he "did not learn of the role played by Del Rosso and Vital until recently," "following an investigation." ECF No. 1 ¶¶ 36, 127. As the Magistrate Judge correctly noted, because the Complaint alleges that Azima did not learn of Defendants' role until 2020, the statutes of limitation did not begin to run on Azima's identity theft (Count VI) and publication of personal information (Count VII) claims until then. ECF No. 54 at 9-10 (noting that the statutes of limitation did not begin to accrue on these counts until Azima discovered or reasonably should have discovered the identity of the wrongdoers). The 2016 lawsuit also does not provide information about when Azima knew that his communications were being intercepted on an ongoing basis or

6

that his trade secrets were acquired, disclosed, and used by Del Rosso, which are necessary facts for Azima's Wiretap Act (Counts I and II) and trade secrets (Counts III and VIII) causes of action. *See* ECF No. 54 at 8.

Second, the Complaint alleges multiple violations by Defendants independent of and long after the filing of the 2016 lawsuit. The Complaint alleged that Defendants disclosed and used Azima's hacked data in 2018 and 2019. ECF No. 1 ¶¶ 24, 26. Each disclosure in 2018 and 2019 was a separate violation of the Wiretap Act (Counts I and II), federal law against trade secret misappropriation (Count III), North Carolina's Trade Secret Protection Act (Count VIII), state law against unfair and deceptive trade practices (Count IX), civil conspiracy (Count X), and invasion of privacy (Count XI) claims. Thus, the statutes of limitation did not begin to run on those claims until at least 2018 or 2019, when the conduct occurred. Judicial notice of the 2016 lawsuit could not have provided any information relevant to the statutes of limitation for Defendants' later conduct. *See* ECF No. 54 at 8-9 (noting that, because the different causes of action "are subject to various distinct accrual rules," Azima's Complaint cannot be dismissed at this stage).

Third, the Complaint also alleged that Defendants took multiple steps to fraudulently conceal their involvement in hacking Azima. Defendants and their co-conspirators began by using phishing emails to conceal the identity of the sender and trick Azima into providing his passwords. ECF No. 1 ¶¶ 6, 16-17. Such emails are inherently self-concealing fraudulent activity. *Cf. State of N.Y. v. Hendrickson Bros, Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988) ("[P]assing off of a sham article as one that is genuine is an inherently self-concealing fraud") (cited by *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535,

7

553 (4th Cir. 2019)). Following the hack, Defendants and their co-conspirators continued their deception and sought to lay a false trail by fabricating emails supporting a story that RAKIA had innocently discovered Azima's hacked materials (a story that the UK court later found was "not true" and "was both internally inconsistent and inconsistent with the contemporaneous documents"). ECF No. 1 ¶¶ 7, 34-35. During the UK trial, Defendant Del Rosso also denied under oath any involvement in the hack in his witness statement and trial testimony, which he knew that Azima would read and rely upon. ECF No. 1 ¶ 36. Nothing about the 2016 lawsuit undermines Azima's core facts demonstrating that Defendants concealed their hack of Azima and disclosure of his stolen data, and the allegations in the Complaint show that Defendants should be estopped from arguing that Azima's Complaint should be dismissed on statute of limitations grounds. *See Supermarket of Marlington, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) ("The purpose of the fraudulent concealment tolling doctrine is to prevent a defendant from concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until [the defendant] could plead the statute of limitations to protect it.") (cleaned up). For these reasons (and as set forth in more detail in Azima's Objection to the Magistrate Judge's Recommendation), the Complaint pleads allegations that estop Defendants from raising statute of limitations defenses at this stage. *See* ECF No. 56 at 10-15.[3]

---

[3] Azima's Objection focused on the two counts that the Magistrate Judge recommended dismissing, but North Carolina's doctrine of equitable estoppel would apply to all the state law counts, and a similar doctrine prevents Defendants from arguing statutes of limitations for the federal law counts. ECF No. 34 at 4-6 (explaining the federal doctrine of fraudulent concealment and the North Carolina doctrine of equitable estoppel).

Finally, if the Court accepts Defendants' argument that judicial notice is appropriate "at any stage of the proceeding," *see* ECF No. 57 at 7, the Court should then also take judicial notice of the public record referred to in Azima's previous filings to get the "total mix of information" about this case. *See Staehr*, 547 F.3d at 426. The Court should take judicial notice of Del Rosso's first witness statement in the UK trial, which shows the first time Azima learned that Del Rosso provided Azima's hacked data to Neil Gerrard and Dechert LLP. ECF No. 25-3. And the Court should take judicial notice that, during the pendency of the motion to dismiss, Del Rosso admitted to paying CyberRoot but raised an unresolved factual dispute over why Del Rosso paid CyberRoot. ECF No. 41; ECF No. 47.[4] These facts alone show that Defendants violated the Wiretap Act and trade secrets counts that Azima could not have been aware of in 2016. Though the Court need not notice any of these facts to deny Defendants' motion to dismiss, it would be particularly inappropriate to notice certain facts and make adverse inferences against Azima while refusing to notice other facts that support the allegations in the Complaint. *See Humane Soc'y of the United States*, 2016 WL 3435192, at *4.

## II. <u>The Complaint Stated Claims for Misappropriation of Trade Secrets</u>.

The Magistrate Judge correctly recommended against dismissal of Azima's federal and state claims for misappropriation of trade secrets (Count III and Count VIII) because Azima alleged that Defendants misappropriated his trade secrets. ECF No. 54 at 23. Defendants incorrectly characterize Azima's trade secrets claims as allegations of mere

---

[4] Del Rosso also filed a sworn witness statement admitting to paying CyberRoot but raising this factual dispute.

9

secondary or conspiracy liability. ECF No. 57 at 18. Defendants also cite no authority to support their contention that Azima's allegations were insufficient to plead primary liability as to his trade secrets claim. *Id.*

As the Magistrate Judge correctly explained, Congress defined misappropriation of trade secrets in part as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." ECF No. 54 at 23 (citing 18 U.S.C. § 1839(5)(A)); *see also* 18 U.S.C. § 1836(b)(1) (authorizing the owner of a trade secret that has been "misappropriated" to bring a civil cause of action). Misappropriation also occurs when one discloses or uses another's trade secret without express or implied consent and the person knew or had reason to know that the knowledge was improperly acquired. 18 U.S.C. § 1839(5)(B); *Heska Corp. v. Qorvo US, Inc.*, No. 1:19-CV-1108, 2020 WL 5821078, at *7 (M.D.N.C. Sept. 30, 2020). Similarly, under North Carolina law, "misappropriation" means "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent." N.C. Gen. Stat. § 66-152 (1981). The Complaint alleges that Defendants acquired, disclosed, and used Azima's trade secrets, as well as that Defendants knew or should have known that the trade secrets were acquired improperly without authorization.

The Complaint alleges that Azima's stolen data—including his trade secrets—was "provided to Del Rosso," ECF No. 1 ¶ 19, "published online and used by Defendants," *id.* ¶ 1, "obtained" by Defendants, *id.* ¶ 18, and posted on WeTransfer sites in 2018 and 2019, *id.* ¶¶ 24, 26. The Complaint also alleges that Defendants "intentionally disclosed" Azima's data, knowing and having reason to know that the information was obtained

through interception, *id*. ¶¶ 48, 55-56, and that Defendants "improperly disclosed and misappropriated Azima's trade secrets without consent or authorization." *Id*. ¶ 71. These allegations are more than sufficient to support a claim that Defendants misappropriated Azima's trade secrets by acquiring, disclosing, and using them. Moreover, Defendant Del Rosso admitted in a sworn witness statement filed in the UK court that he disclosed Azima's stolen data, including trade secrets, by emailing links to the intercepted data and personally delivering a thumb drive containing the intercepted data to Neil Gerrard of Dechert LLP. *See* ECF No. 25-3 ¶¶ 10, 14, 16; *see also* ECF No. 34 at 15 n.3. These admissions also support Azima's claims that Defendants acquired, disclosed, and used Azima's trade secrets in violation of federal and state law.

Finally, Defendants' argument that the Complaint did not adequately plead that Defendants knew or had reason to know that the trade secret was acquired by improper means, *see* ECF No. 57 at 18, is facially inaccurate. The Complaint contains several explicit allegations that Defendants had reason to know that Azima's data was obtained through hacking. *See* ECF No. 1 ¶¶ 45, 48, 52, 55, 57. In addition, Azima's allegations that Defendants directed the hacking and paid CyberRoot more than $1 million to carry it out, *id*. ¶¶ 5-7, 29, also clearly support the allegation that Defendants knew the trade secrets were acquired by improper means.

Because Azima alleged that Defendants acquired, used, and disclosed Azima's trade secrets that they knew to be ill-gotten, the Magistrate Judge properly concluded that the Complaint adequately alleges violations of federal and state trade secrets law.

**CONCLUSION**

For the foregoing reasons, Azima respectfully requests that the Court reject Defendants' objections and deny Defendants' motion to dismiss in its entirety.

This, the 7th day of September, 2021.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina Bar No. 22275
Christopher W. Jones
North Carolina Bar No. 27625
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email: ripley.rand@wbd-us.com
       chris.jones@wbd-us.com

**MILLER & CHEVALIER CHARTERED**

*/s/ Kirby D. Behre*
Kirby D. Behre (*pro hac vice*)
Brian A. Hill (*pro hac vice*)
Tim O'Toole (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com

*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

I certify under LR 7.3(d)(1) that the body of this brief, headings, and footnotes together contain 6250 words or fewer, as reported by the word count feature in Microsoft Word.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Ripley Rand*
Ripley Rand
North Carolina Bar No. 22275
Christopher W. Jones
North Carolina Bar No. 27625
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email: chris.jones@wbd-us.com
ripley.rand@wbd-us.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-CV-954**

| | |
|---|---|
| FARHAD AZIMA, <br><br> Plaintiff, <br><br> v. <br><br> NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC., <br><br> Defendants. | **CERTIFICATE OF SERVICE** |

  I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

  Kieran J. Shanahan, Esq.
  Brandon S. Neuman, Esq.
  Jeffrey M. Kelly, Esq.
  Nathaniel J. Pencook, Esq.
  GlenLake One
  4140 Parklake Avenue - Suite 200
  Raleigh, NC 27612
  kieran.shanahan@nelsonmullins.com
  brandon.neuman@nelsonmullins.com
  jeff.kelly@nelsonmullins.com
  nate.pencook@nelsonmullins.com
  Telephone: 919.329.3800
  Facsimile: 919.329.3799

This, the 7th day of September, 2021.

                                 **WOMBLE BOND DICKINSON (US) LLP**

                                 /s/ *Ripley Rand*
                                 Ripley Rand
                                 North Carolina State Bar No. 22275
                                 555 Fayetteville Street, Suite 1100
                                 Raleigh, NC 27601
                                 Telephone:   (919) 755-8125
                                 Facsimile:    (919) 755-6752
                                 Email:       ripley.rand@wbd-us.com

                                 *Counsel for Plaintiff*