UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-cv-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **EMERGENCY MOTION FOR LEAVE TO FILE SUPPLEMENTAL INFORMATION RELATED TO OBJECTION TO RECOMMENDED RULING AND FOR LEAVE TO COMMENCE DISCOVERY IN LIGHT OF NEWLY DISCOVERED EVIDENCE** |

Plaintiff Farhad Azima ("Azima") respectfully requests leave of the Court to file supplemental information related to the Court's review of the Order and Recommendation of United States Magistrate Judge Joe L. Webster in this matter (ECF No. 54) in light of newly discovered evidence. Azima also respectfully renews his request to start discovery in this matter. Though he has sought similar relief in the past, changed circumstances have created an exigency that requires immediate inquiry through discovery and Court involvement.

In short, Azima's counsel have recently received documentary proof of efforts during the pendency of this lawsuit by Defendants Nicholas Del Rosso and Vital Management Services, Inc. ("Defendants") to hide the truth, create false evidence, and to interfere with the administration of justice in this case. Del Rosso's efforts apparently include directly pressuring witnesses and the creation of a fraudulent, backdated contract to create a cover story for payments made by Defendants to Aditya Jain ("Jain"), who

1

2685819.4

Defendants hired to hack Azima. *See* ECF No. 1 ¶ 2. After Azima filed this lawsuit and sought leave from this Court to issue third-party subpoenas that would have revealed that Defendants paid Jain, Defendants executed the fabricated contract (backdating it to make it appear that the agreement was in place before Azima filed the Complaint).

In briefing and objections filed with the Court, Azima described the known actions that Defendants had taken to conceal their role in the hacking from Azima, including phishing emails that concealed the identity of the sender, fraudulently creating emails from 2016 that provided a false explanation that the Defendants and their co-conspirators had innocently discovered Azima's stolen data, and false testimony in the UK. The recently discovered text messages are further evidence of the steps Defendants have taken – and continued to take after this lawsuit was filed – to fraudulently conceal their misconduct. Accordingly, these messages further support Azima's arguments that it would be inappropriate to dismiss any claims on statute of limitations grounds.

Moreover, as Judge Webster recognized in his Order and Recommendation, the Court has broad discretion regarding the timing and scope of discovery and may exercise its judgment in balancing factors relevant to the expeditious and comprehensive disposition of its cases. *See* ECF No. 54; ECF No. 30. It is now clear that Defendants have engaged, and may continue to engage, in obstructive conduct in order to prevent the truth from being revealed by this lawsuit. Azima therefore respectfully requests that the Court permit discovery to commence immediately to avoid the likelihood that documents relevant to this case are altered, fabricated, or destroyed by Defendants or their confederates.

**Factual Background**

Azima filed this Complaint on October 15, 2020. ECF No. 1. Shortly thereafter, Azima filed a Motion for Leave to Serve Third-Party Subpoenas on October 21, 2020, in part "to ensure that relevant evidence is not lost or destroyed." *See* ECF No. 8. In that motion, Azima raised concerns that "[s]everal witnesses for RAKIA regarding the hacking admitted to failing to preserve documents, and in some cases conceded that they deliberately did not retain relevant documents." *Id.* at 3. Azima sought subpoenas to a number of third parties, including banks for Defendants and the hackers. *Id.*

Just two weeks after Azima filed that motion, Del Rosso contacted Jain as evidenced through recently discovered text messages. In these messages, Del Rosso expressed concern because Del Rosso's bank statements included payments to Jain. *See* Exh. 1 at 10. Del Rosso and Jain agreed to create a fraudulent contract to concoct an innocent explanation for the payments. *Id.* at 11-16. The messages further reveal that Del Rosso suspected that Jain was cooperating with Azima's lawyers and pressured Jain not to provide information to Azima's lawyers. *Id.*

The text messages show that, starting in at least August 2020 (approximately one month before Azima filed his Complaint), Del Rosso feared he would be sued for hacking and took steps to cover his tracks. *Id.* at 3-4. Del Rosso also suspected that Jain was cooperating with Azima and sought to silence him. *Id.* On August 29, 2020, Del Rosso accused Jain of working with Azima's UK law firm, Burlingtons. *Id.* at 1 Del Rosso told Jain that he had information that Jain was "Point[ing] finger[s]" at other RAKIA co-conspirators. Del Rosso said that, if true, Jain should stop accusing others. *Id.* Del Rosso

3

then told Jain: "Hope this is not correct. We should talk." *Id.* Del Rosso then called Jain and spoke with him over the phone. *Id.* at 2.

On September 11, 2020, Del Rosso accused Jain of "interference in the Azima case [in the UK]" and warned that they both could be "dragged into" the Azima hacking lawsuit. *Id.* at 3-6. Del Rosso expressed fear of being sued for the hacking, saying that Azima's team "seem to have information" that could "make lawyers and others think there is possibly something to follow." *Id.* at 4. Jain responded by offering to "investigate aggressively." *Id.* Jain said he would "target someone" and asked if Del Rosso had any "direction" about who to target. *Id.* Del Rosso did not object to the idea that Jain target someone. *Id.* at 3-4.

The next day, Jain messaged Del Rosso that he had details about the "FA issue," seemingly a reference to Azima. *Id.* at 6. Del Rosso immediately called Jain to discuss, and Jain sent Del Rosso a letter before action that Azima's UK counsel had sent to Vikash Pandey, a former employee of CyberRoot. *See* Ex. 3. Del Rosso told Jain they needed to "be careful" to avoid being dragged into the Azima matter. *See* Ex. 1 at 8. Jain then appears to suggest to Del Rosso that he would engage in document destruction to cover his tracks. He attempts to reassure Del Rosso that he was "clearing everything around us carefully" with respect to the Azima matter and promised to keep Del Rosso updated. *Id.* Del Rosso did not object to this statement from Jain, impliedly supporting Jain's effort to "clear" things with respect to the Azima matter. *Id.*

Finally, the text messages show that on November 6, 2020 – just two weeks after Azima filed his motion seeking permission to subpoena Defendants' bank records – Del

Rosso messaged Jain and expressed concern that Jain's company appeared in Del Rosso's bank statements. *Id.* at 10. Del Rosso then communicated with Jain about the creation of a fraudulent contract in an effort to provide an innocent explanation for the payments to Jain. Del Rosso asked Jain: "You know your company name is in my accounts/statements? Any thoughts?" *Id.* Jain responded to Del Rosso, "can we do a contract for cyber security consulting services and we can ***do some reports to cover it up***. Also we can do contract for website building and technology consulting." *Id.* (emphasis added). Del Rosso then expressed concern that he didn't want it to "seem like we're hiding anything." *Id.* at 11. During their communication, Del Rosso asked Jain, "What do you hear on the CyberRoot guys?" *Id.* at 12. Jain replied that he hadn't "heard anything on cyber root guys." *Id.* at 12-13. The following day (a Saturday), Del Rosso followed up asking about the status of the contract. *See id.* at 14. Two days later on Monday, November 9, 2020, Jain sent Del Rosso a draft of the fraudulent contract. *See id.* On November 18, 2020, Jain sent Del Rosso a fully signed PDF of that contract, which stated that a company called Cyber Defence and Analytics would provide "red teaming and infrastructure penetration testing" for Vital. Ex. 1 at 16; Ex. 2. at 1. Though these text communications occurred in November 2020, the contract Jain sent Del Rosso was backdated to May 7, 2019, prior to Azima's filing of this Complaint. Ex. 2 at 7.

Defendants have repeatedly fought Azima's efforts to start discovery, including a subpoena to obtain Defendants' bank records, arguing in part that "Azima offers nothing to substantiate his conclusory accusations of improper spoliation." ECF No. 21 at 3. Remarkably, Defendants made this argument on November 12, 2020, in the midst of Del

5

2685819.4

Case 1:20-cv-00954-WO-JLW   Document 61   Filed 09/30/21   Page 5 of 12

Rosso's discussion with Jain regarding the creation of a backdated contract that could be used to justify payments from Del Rosso to Jain and at a time when Del Rosso appears to support Jain's offer to "clear" things with respect to Azima and these proceedings. *See* Exh. 1 at 8.

## ARGUMENT

### I. Defendants' Further Fraudulent Concealment Weighs Heavily Against Dismissal of The Complaint on Statute of Limitations Grounds.

The new, shocking evidence contained in Del Rosso's text messages and the fake, backdated contract with a hacking professional further establish an intent to fraudulently conceal the truth from Azima – and the Court – through misconduct. Del Rosso knew that his bank records contained payments to Jain, and, after receiving Azima's motion seeking those records, Del Rosso sought to fabricate a contract to explain away those payments. Del Rosso and Jain agreed to create a fraudulent contract, which could serve as false cover for the payments. Azima respectfully requests that the Court consider this new information in evaluating the Objections to the Order and Recommendation, as this evidence is highly relevant to Azima's arguments that Defendants' fraudulent concealment of their misconduct should toll all relevant statutes of limitations.

While Defendants argued that all of Azima's claims should be dismissed on statute of limitations grounds (*see* ECF No. 32 at 7), Azima has consistently argued that Defendants engaged in fraudulent concealment to mask their involvement and deny Azima the opportunity to prosecute his claims. *See* ECF No. 34 at 4; ECF No. 58 at 8 (citing ECF No. 1 ¶¶ 7, 34-35). The new text message evidence between Del Rosso and Jain and the

creation of a fabricated contract after Azima filed the Complaint reinforce Azima's allegations that Defendants have been engaging in obstructive misconduct since at least 2016.

This additional evidence of fraudulent concealment also bolsters the conclusion that Defendants should not be permitted to assert statute of limitations affirmative defenses at this early stage of the proceedings. The new evidence not only demonstrates the steps Defendants have taken to conceal the truth from Azima and the Court, but the text messages also suggest the existence of additional evidence that may undercut Defendants' affirmative defenses. The Court therefore should not dismiss any of Azima's claims based on statute of limitations grounds at this stage of the proceeding, and Azima should be allowed to develop additional evidence about Defendants' purported affirmative defenses in discovery.

## II. Defendants' Obstruction Creates Exigent Circumstances Requiring Immediate Discovery to Prevent Further Injustice.

Defendants' fabrication of a fake, backdated contract to cover up their payments to a hacking professional and communications about "clearing" things around the Azima matter (seemingly a reference to further efforts to hide truth in this case, potentially including the destruction of documents) validate Azima's concerns of spoliation of evidence and justify an immediate opening of discovery to prevent further injustice. In the Order and Recommendation, Magistrate Judge Webster recognized the importance of preserving Azima's access to evidence through discovery and permitted limited discovery to obtain bank records at risk of destruction under bank policy. *See* ECF No. 54 at 38.

Defendants' recent obstructive behavior is a compelling reason to start discovery. The Court should allow Azima to begin to develop the factual record in this case so that evidence cannot be altered, fabricated, or destroyed. Azima stands ready to subpoena the bank statements at issue in the Del Rosso-Jain communications as soon as discovery begins, as there is good reason to believe that those statements contain further evidence of Del Rosso's payments to hackers. Azima respectfully requests that the Court revisit his motion for an initial pretrial conference to immediately begin discovery and grant it.

*[The remainder of this page was left blank intentionally.]*

Finally, given the exigent circumstances at issue here, Azima respectfully requests that the Court shorten the time for any response to this Motion pursuant to Local Rule 7.3(f) to seven (7) days.

This, the 30th day of September, 2021.

        **WOMBLE BOND DICKINSON (US) LLP**

        */s/ Ripley Rand*
        Ripley Rand
        North Carolina Bar No. 22275
        Christopher W. Jones
        North Carolina Bar No. 27625
        555 Fayetteville Street, Suite 1100
        Raleigh, North Carolina 27601
        Phone: 919-755-2100
        Fax: 919-755-2150
        Email: ripley.rand@wbd-us.com
                chris.jones@wbd-us.com

        **MILLER & CHEVALIER CHARTERED**

        */s/ Kirby D. Behre*
        Kirby D. Behre (*pro hac vice*)
        Brian A. Hill (*pro hac vice*)
        Tim O'Toole (*pro hac vice*)
        Ian Herbert (*pro hac vice*)
        Calvin Lee (*pro hac vice*)
        900 16th Street, NW
        Washington, D.C. 20006
        Telephone: (202) 626-5800
        Fax: (202) 626-5801
        Email: kbehre@milchev.com

        *Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

I certify under LR 7.3(d)(1) that the body of this brief, headings, and footnotes together contain 3,125 words or fewer, as reported by the word count feature in Microsoft Word 2016.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina Bar No. 22275
Christopher W. Jones
North Carolina Bar No. 27625
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email: chris.jones@wbd-us.com
ripley.rand@wbd-us.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-CV-954

FARHAD AZIMA,

    Plaintiff,

v.

NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,

    Defendants.

**CERTIFICATE OF SERVICE**

    I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

    Kieran J. Shanahan, Esq.
    Brandon S. Neuman, Esq.
    Jeffrey M. Kelly, Esq.
    Nathaniel J. Pencook, Esq.
    GlenLake One
    4140 Parklake Avenue - Suite 200
    Raleigh, NC 27612
    kieran.shanahan@nelsonmullins.com
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    Telephone: 919.329.3800
    Facsimile: 919.329.3799

This, the 30th day of September, 2021.

          **WOMBLE BOND DICKINSON (US) LLP**

          /s/ *Ripley Rand*
          Ripley Rand
          North Carolina State Bar No. 22275
          555 Fayetteville Street, Suite 1100
          Raleigh, NC 27601
          Telephone:   (919) 755-8125
          Facsimile:    (919) 755-6752
          Email:          ripley.rand@wbd-us.com

          *Counsel for Plaintiff*