IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


FARHAD AZIMA,                      )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          1:20CV954
                                  )
NICHOLAS DEL ROSSO and            )
VITAL MANAGEMENT SERVICES,        )
INC.,                             )
                                  )
          Defendants.             )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

        This matter is before this court for review of the
Recommendation filed on August 9, 2021, by the Magistrate Judge
in accordance with 28 U.S.C. § 636(b). (Doc. 54.) In the
Recommendation, the Magistrate Judge recommends that Defendants
Nicholas Del Rosso and Vital Management Services, Inc.'s
("Defendants") Motion to Dismiss, (Doc. 31), be denied in part
as to Counts III, VIII, X, and XI of Plaintiff Farhad Azima's
("Plaintiff") Complaint but granted in part as to Plaintiff's
other seven claims. (Doc. 54.) The Recommendation was served on
the parties to this action on August 9, 2021, (Doc. 55). Both
Plaintiff and Defendants filed timely objections to the
Recommendation. (Docs. 56, 57.)

This court has appropriately reviewed the portions of the Recommendation to which objections were made and has made a de novo determination that the Magistrate Judge's Recommendation should be adopted in part and modified in part. This court finds Defendants' Motion to Dismiss as to Counts III and XI should be granted, contrary to the findings of the Recommendation. All other objections are overruled and the remainder of the Recommendation will be adopted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This court fully adopts and incorporates the Magistrate Judge's Recommendation's factual and procedural case summary. (Recommendation (Doc. 54) at 2-4.) It recommended that seven of the eleven counts in the Complaint be dismissed. (Id. at 1.) The four remaining counts that it did not recommend dismissing, (together, the "Remaining Counts"), are for trade secret misappropriation under federal law (Count III), trade secret misappropriation under North Carolina law (Count VIII), civil conspiracy under North Carolina law (Count X), and invasion of privacy under North Carolina law (Count XI). (Id. at 38.)

On August 23, 2021, Plaintiff objected to the Magistrate Judge's recommendation that seven counts of the Complaint be dismissed. (Doc. 56.) Conversely, also on August 23, 2021, Defendants objected to the recommendation that the four

- 2 -

Remaining Counts not be dismissed. (Doc. 57.) Both parties responded in opposition to the other's objection. (Docs. 58, 59.)

## II.  **STANDARD OF REVIEW**

This court is required to "make a de novo determination of those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(c). This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the [M]agistrate [J]udge. . . . or recommit the matter to the [M]agistrate [J]udge with instructions." Id.

## III. **ANALYSIS**

This court has appropriately reviewed the portions of the Recommendation to which objections were made and has made a de novo determination as to each. This court concludes that the only objection meriting written analysis is Defendants' objection that a previous complaint filed by Plaintiff ought to be considered in evaluating whether Plaintiff's claims are time-barred by the statute of limitations. All other objections are rejected, as this court's determination on those issues is in accord with the Recommendation.

## A.    Whether the 2016 D.C. Complaint Should be Considered

The Recommendation concluded that Plaintiff's September 2016 complaint filed in the United States District Court for the District of Columbia ("2016 D.C. Complaint") should not be considered in evaluating Defendants' statute of limitations affirmative defense. (Recommendation (Doc. 54) at 8-9.) In the 2016 D.C. Complaint, (Ex. 5 ("2016 D.C. Complaint") (Doc. 31-5)), Plaintiff accuses other parties — none of which are joined to this case — of orchestrating the hacking and publication of the hacked data. Thus, here, Defendants submitted the 2016 D.C. Complaint to establish that Plaintiff was sufficiently aware of this alleged wrongdoing to institute legal action by September 2016. (See Doc. 32 at 14—15, 17.) The 2016 D.C. Complaint alleges, inter alia, that:

> Based on the September 23, 2016, demand and threat letter from Defendant's counsel, and the disclosure of two websites by Defendant on September 29, 2016, it is clear that portions of the electronic data that had been hacked and misappropriated from Mr. Azima and his business associates on or about August 7, 2016, had been downloaded or transferred to remote websites known as "BitTorrent" sites and related micro-sites.

(2016 D.C. Complaint (Doc. 31-5) ¶ 18.) In the initial briefing before the Magistrate Judge, Plaintiff did not object to Defendants' proffering of the 2016 D.C. Complaint or to consideration of any of the allegations contained therein.

- 4 -

The Recommendation asserted that "for a statute-of-limitations defense to succeed at the motion to dismiss stage, 'all facts necessary to show the time bar must clearly appear on the face of the complaint.'" (Recommendation (Doc. 54) at 6 (some internal quotation marks omitted) (quoting Dickinson v. Univ. of N.C., 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015)).) Thus, because Plaintiff's complaint does not mention the 2016 D.C. Complaint, the Magistrate Judge in the Recommendation found that it should not be considered. Defendants object, stressing that Plaintiff had never disputed that the "Court may take judicial notice of his 2016 complaint." (Defs.' Partial Obj. to Order and Recommendation on Defs.' Mot. to Dismiss Pursuant to Rule 12(b)(6) ("Defs.' Obj.") (Doc. 57) at 2, 6-14.)[1] Plaintiff opposes the objection. (Pl.'s Br. in Opp'n to Defs.' Objs. to Order and Recommendation ("Pl. Opp'n Br.") (Doc. 58) at 3-4.)

This court finds Defendants' objection should be sustained and that the 2016 D.C. Complaint should be considered at the motion to dismiss stage in evaluating Defendants' statute of limitations affirmative defense. The Recommendation correctly notes that "[g]enerally, an affirmative defense that a complaint

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

is barred by a statute of limitations may not form the basis of [a] Rule 12(b)(6) dismissal unless all of the facts necessary for the defense appear on the face of the complaint." (Recommendation (Doc. 54) at 6-7 (quoting Morrison v. George E.B. Holding, No. 7:11-CV-168-BO, 2012 WL 1132787, at *3 (E.D.N.C. Apr. 4, 2012)).) However, the Recommendation neglected a key exception to that general rule repeatedly applied by courts in this circuit. See Morrison, 2012 WL 1132787, at *3; Mobley v. Estes, 1:17CV114, 2018 WL 704900, at *4 (M.D.N.C. Feb. 2, 2018). The exception holds that the general "face of the complaint" rule "[n]otwithstanding, the Court may also consider information in the public record when reviewing a motion to dismiss." Morrison, 2012 WL 1132787, at *3 (evaluating a statute of limitations affirmative defense); see also Mobley, 2018 WL 704900, at *4 (evaluating a statute of limitations affirmative defense and holding that "[g]enerally speaking, a court may not rely on extrinsic materials to adjudicate a motion to dismiss" but nevertheless "a court may properly take judicial notice of matters of public record." (citations and internal quotation marks omitted)).

While the Fourth Circuit has evidently not addressed the specific issue of whether public records may be considered by the court when evaluating a statute of limitation affirmative

- 6 -

defense at the motion to dismiss stage, other circuits have explicitly approved the practice. See, e.g., Ennenga v. Starns, 677 F.3d 766, 773-74 (7th Cir. 2012) (rejecting an argument that "the statute-of-limitations defense was not properly raised in a motion to dismiss because the defense was not plain on the face of the complaint," because "the court [properly] took judicial notice of the dates on which certain actions were taken . . . in the earlier state-court litigation — facts readily ascertainable from the public court record"); Arbogast v. Kansas, 752 F. App'x 582, 584 n.1 (10th Cir. 2018); Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425-26 (2d Cir. 2008). Moreover, the Fourth Circuit has expressly held that judicial notice of public records may be taken when evaluating motions to dismiss asserting res judicata affirmative defenses. Q Int'l Courier, Inc. v. Smoak, 441 F.3d 214, 216 (4th Cir. 2006); Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

Plaintiff argues that this Fourth Circuit precedent, such as Q International Courier, Inc. and Andrews, only allowed judicial notice of public records where the res judicata "defense raise[d] no disputed issue of fact." (Pl. Opp'n Br. (Doc. 58) at 4 (alteration in original) (emphasis removed) (internal quotation marks omitted) (quoting Q Int'l Courier, 441 F.3d at 216; Andrews, 201 F.3d at 524 n.1).) Plaintiff argues

- 7 -

that in contrast, here, Defendants' statute of limitations "affirmative defense requires resolution of competing factual theories." (Id.) Therefore, Plaintiff argues judicially noticing a public record is inappropriate. (Id.) Plaintiff cites two cases to argue that the court "should allow discovery to resolve open factual questions rather than rely upon extrinsic documents to read inferences into the Complaint." (Id. (citing Waugh v. Elan Fin. Serv., Civil Action No. 3:17-4378, 2018 WL 2976430 (S.D. W. Va. June 13, 2018), and Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018)).)

Neither case is relevant here. The first, Waugh, does not address the issue of judicial notice. The second, Khoja, is an out-of-circuit case that focuses on the risk of considering extrinsic documents in "SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." Khoja, 899 F.3d at 998 (citations omitted). Here, Plaintiff's allegations do not face a heightened pleading standard nor do Defendants urge consideration of a document which Plaintiff cannot access – rather, Defendants seek to reference a publicly available record prepared for and filed on behalf of Plaintiff.

- 8 -

Therefore, consistent with the practice of courts in this circuit, e.g., Morrison, 2012 WL 1132787, at *3; Mobley, 2018 WL 704900, at *4, this court takes notice of the 2016 D.C. Complaint in adjudicating the statute of limitations affirmative defense asserted in Defendants' Motion to Dismiss. Importantly, this court's notice does not draw any conclusions as to whether the facts alleged in the 2016 D.C. Complaint are true or false. Instead, this court simply notices the existence of those factual allegations, which include that Plaintiff had been hacked and his hacked confidential business data posted online. (E.g., 2016 D.C. Complaint (Doc. 31-5) ¶¶ 10, 18.)

## B. Whether the 2016 D.C. Complaint Establishes that the Remaining Counts are Time-Barred

The four Remaining Counts all have three-year statutes of limitations that accrue when the conduct underlying the respective count was apparent or discovered, or reasonably ought to have been apparent or discovered. (Recommendation (Doc. 54) at 7-8.) This court concludes that Plaintiff's factual allegations in the 2016 D.C. Complaint — that he had been hacked and his hacked confidential business data published online, (e.g., 2016 D.C. Complaint (Doc. 31-5) ¶¶ 10, 18) — establish that by 2016 Plaintiff had discovered the conduct underlying the Remaining Counts. Accordingly, the Remaining Counts' statutes of limitations seemingly accrued in 2016 and lapsed in 2019 — prior

- 9 -

to this case's filing in 2020. Hence, Defendants insist that the Remaining Counts must be dismissed as time-barred.

Plaintiff responds with four arguments why the Remaining Counts are not time-barred, even when the 2016 D.C. Complaint is considered. (Pl.'s Opp'n Br. (Doc. 58) at 6-9.) Three of those are unconvincing. The fourth, concerning Defendants' alleged 2018-2019 conduct, has merit. This court will address each argument in turn.

## 1.   Knowledge of Defendants' Role

First, Plaintiff argues that "nothing in the 2016 lawsuit suggests that Azima was aware of Defendants' conduct in 2016; instead, Azima alleges in his Complaint that he 'did not learn of the role played by Del Rosso and Vital until recently[.]'" (Id. at 6 (quoting Complaint ("Compl.") (Doc. 1) ¶ 36).) That is irrelevant. None of the Remaining Counts' statutes of limitations make accrual contingent on when a plaintiff discovered (or should have discovered) a perpetrator's role,[2] but rather when the misappropriation or harm itself was discovered

_____

[2] In contrast, the statutes of limitations for two counts that the Magistrate Judge recommended dismissing on other grounds — identity theft (Count VI) and publication of personal information (Count VII) — do make accrual so contingent. N.C. Gen. Stat. § 1-539.2C(c) ("Civil actions under this section must be brought within three years from the date on which the identity of the wrongdoer was discovered or reasonably should have been discovered." (emphasis added)).

(or should have been discovered). <u>See</u> 18 U.S.C. § 1836(d) (Count III); N.C. Gen. Stat. § 66-157 (Count VIII); <u>Sanders v. Gilchrist</u>, No. 3:10cv68, 2011 WL 9374866, at *2 (W.D.N.C. Mar. 22, 2011) (Count X); <u>Alexander v. City of Greensboro</u>, No. 1:09-CV-293, 2011 WL 3360644, at *13 n.21 (M.D.N.C. Aug. 3, 2011) (citing N.C. Gen. Stat. § 1-52(16)) (Count XI).

## 2. <u>Fraudulent Concealment and Equitable Estoppel</u>[3]

---

[3] After the parties had fully briefed their objections to the Recommendation, Plaintiff filed an "emergency motion" seeking leave to file supplemental evidence related to his fraudulent concealment argument. (Doc. 61.) The supplemental evidence Plaintiff seeks to file are (1) text messages allegedly sent in 2020 between Del Rosso and a Mr. Aditya Jain ("Jain"), (2) a commercial contract, and (3) a letter from Plaintiff's U.K. counsel. (Exs. 1—3 (Docs. 61-1 — 61-3).) Plaintiff also seeks leave to commence discovery early because this evidence allegedly evinces "exigent circumstances." (Doc. 61 at 7-8; <u>accord</u> Doc. 64 at 1.)

First, this court admonishes Plaintiff that "attempts to introduce new evidence after the magistrate judge has acted are disfavored." <u>Galloway v. Rajjob</u>, No. 1:20CV1033, 2021 WL 1248626, at *1 (M.D.N.C. Apr. 5, 2021) (internal quotation marks omitted) (quoting <u>Caldwell v. Jackson</u>, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010)). This court has repeatedly stated that it "is of the belief that untimely submission of evidence often serves to undermine the magistrate review process rather than illuminate the arguments already before the court." <u>Kielbania v. Indian Harbor Ins. Co.</u>, No. 1:11CV663, 2012 WL 6554081, at *1 (M.D.N.C. Dec. 14, 2012); <u>Universal Leather, LLC v. Koro AR, S.A</u>, No. 1:12CV604, 2013 WL 12327585, at *2 (M.D.N.C. Sept. 30, 2013), <u>vacated on other grounds</u>, 773 F.3d 553 (4th Cir. 2014).

Second, even if the supplemental evidence had been timely submitted, there is no exception to the rule barring consideration of extrinsic materials when adjudicating a motion to dismiss under which the supplemental evidence may be considered. None of the evidence qualifies as a public record, <u>cf., e.g.</u>, <u>Morrison</u>, 2012 WL 1132787, at *3, nor is any of it
(Footnote continued)

- 11 -

Next, Plaintiff argues that because the Complaint alleges that "Defendants took multiple steps to fraudulently conceal their involvement in hacking Azima. . . . Defendants should be [equitably] estopped from arguing that Azima's Complaint should be dismissed on statute of limitations grounds." (Pl.'s Opp'n Br. (Doc. 58) at 7-8.) Three of the Remaining Counts arise under North Carolina law (Counts VIII, X, and XI), and accordingly are subject to North Carolina tolling doctrines. (See Recommendation (Doc. 54) at 13.) To successfully toll these statutes of limitations via either equitable estoppel or fraudulent

---

authenticated, cf., e.g., Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (Documents not attached to a complaint may be considered at the motion to dismiss stage if they are "integral to the complaint and authentic." (emphasis added)). As Defendants note, Plaintiff "does not provide any sworn statements authenticating these documents, as he has done in prior filings." (Doc. 62 at 9-10 (citing Doc. 25).) In response, Plaintiff filed yet another motion for leave, seeking to file U.K. court filings, which Plaintiff seems to believe authenticate the proffered text messages. (Doc. 64.) Leave will not be granted because the U.K. filings do no such thing. Instead, they merely establish that Del Rosso exchanged texts with Jain in 2020, (Doc. 64-1 ¶ 81(c); Doc. 64-2 ¶ 81(c)); they do not establish that those text messages include the particular messages proffered by Plaintiff here, (Doc. 61-1). In lieu of averments or other support credibly verifying, inter alia, the supplemental evidence's provenance, chain of custody, and date, this court finds that it remains unauthenticated. Therefore, because the supplemental evidence cannot be considered at this juncture, leave to file it will be denied. Accordingly, this court will deny as moot Plaintiff's corresponding request for early discovery.

- 12 -

concealment[4] under North Carolina law, Plaintiff must establish that he relied on Defendants' conduct. (Id. at 14 n.4.) This court agrees with the Magistrate Judge's conclusion that Plaintiff has failed to do so. (Id. at 14-15 n.4.) Thus, neither equitable estoppel nor fraudulent concealment will toll the statutes of limitations for the three North Carolina law Remaining Counts.

The one other remaining count, Count III (misappropriation of trade secrets), arises under federal law. Hence, it is subject to federal tolling doctrines — most relevantly, fraudulent concealment and equitable estoppel.[5] See generally Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 559 (4th Cir. 2019).

---

[4] The exact elements of North Carolina fraudulent concealment are murky, but "to the extent that fraudulent concealment has been recognized by North Carolina courts as a tolling doctrine, a plaintiff must still 'allege reliance on the defendant's misrepresentations or omissions.'" (Recommendation (Doc. 54) at 14-15 n.4 (quoting Wilkerson v. Christian, No. 1:06CV00871, 2008 WL 483445, at *12 (M.D.N.C. Feb. 19, 2008)).)

[5] This court notes the existence of an additional similar tolling doctrine known as "equitable tolling." Edmonson, 922 at 551. However, unlike fraudulent concealment and equitable estoppel, equitable tolling does not require defendant misconduct. Id. at 449. Plaintiff's invocation of tolling doctrines is premised on Defendants' alleged misconduct, (Pl.'s Opp'n Br. (Doc. 58) at 7-8), and thus is more appropriately analyzed within "the domain of fraudulent concealment and equitable estoppel." Edmonson, 922 F.3d at 549 (quoting Shropshear v. Corp. Counsel of City of Chicago, 275 F.3d 593, 597 (7th Cir. 2001) (characterizing "tolling of the statute of limitations . . . on the basis of defendant misconduct" as "the domain of fraudulent concealment and equitable estoppel")).

Case 1:20-cv-00954-WO-JLW   Document 65   Filed 12/10/21   Page 13 of 25

Neither are applicable here. Fraudulent concealment has three elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." Id. at 548 (quotation marks omitted) (quoting Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 122 (4th Cir. 1995)). Plaintiff cannot establish the second element because the 2016 D.C. Complaint's factual allegations demonstrate that during the statutory period Plaintiff discovered the supposedly concealed facts undergirding Count III. To toll the statute of limitations via federal equitable estoppel, a plaintiff must establish that "failure to timely file his claim derives . . . from conduct taken by the defendant to induce the plaintiff not to timely file his claim." Id. at 549. In essence, a plaintiff must show reliance on a defendant's misconduct. As stated, supra Part III.B.1, this court agrees with the Magistrate Judge's conclusion that Plaintiff has not "alleged sufficient facts in his complaint to establish the element of reliance." (Recommendation (Doc. 54) at 15 (rejecting Plaintiff's invocation of equitable estoppel under North Carolina law).) Thus, Plaintiff has failed to establish the elements required for either fraudulent concealment or

- 14 -

equitable estoppel to toll the statute of limitations for the remaining count arising under federal law.

### 3.    **Judicial Notice of Other Public Records**

Plaintiff argues that "if the Court accepts Defendants' argument that judicial notice is appropriate" for the 2016 D.C. Complaint, "the Court should then also take judicial notice of the public record referred to in Azima's previous filings." (Pl.'s Opp'n Br. (Doc. 58) at 9.) Plaintiff insists that these additional public records defeat Defendants' statute of limitations defense because they contain facts that show "Azima could not have been aware of [Defendants' violations] in 2016." (Id.) Specifically, Plaintiff urges the court to take notice of two matters of public record.

The first is "Del Rosso's first witness statement in the UK trial." (Id.) Plaintiff argues that this is relevant because it "shows the first time Azima learned that Del Rosso provided Azima's hacked data to Neil Gerrard and Dechert LLP." (Id.) Even if that is true, it is irrelevant to Defendants' statute of limitations defense. As explained, supra Part III.B.1, accrual for the Remaining Counts' statutes of limitations is not contingent on when Plaintiff learned of Defendants' roles in the alleged wrongdoing. Rather, accrual occurs when Plaintiff discovered the wrongdoing itself. Id. Thus, the Remaining

- 15 -

Counts' statutes of limitations accrued in 2016 because the 2016 DC Complaint's allegations show Plaintiff had discovered the hacking and misappropriation by that time. Indeed, the 2016 D.C. Complaint even specifically alleges that Dechert had acquired Azima's hacked data. (E.g., 2016 D.C. Complaint (Doc. 31-5) ¶ 12.) That Plaintiff may not have uncovered Defendants' roles in that misappropriation until later, does not alter the accrual analysis. Therefore, this court declines to judicially notice Del Rosso's first U.K. trial witness statement because it is immaterial to Defendants' statute of limitations affirmative defense.

Plaintiff also urges this court to judicially notice that "during the pendency of the motion to dismiss, Del Rosso admitted to paying CyberRoot." (Pl.'s Opp'n Br. (Doc. 58) at 9.) That Del Rosso paid CyberRoot is alleged in Plaintiff's Complaint, (Compl. (Doc. 1) ¶ 5), and thus already assumed true for the purposes of evaluating Defendants' Motion to Dismiss. Therefore, even if this court were to take the notice Plaintiff urges, it would have no bearing on this court's present analysis. Hence, this court declines to notice Del Rosso's alleged admission to paying CyberRoot.

### 4. Defendants' Alleged 2018-2019 Conduct

Plaintiff further argues that Defendants' alleged 2018-2019 conduct means the Remaining Counts are not time-barred, even considering the 2016 D.C. Complaint. Plaintiff insists that "the Complaint alleges multiple violations by Defendants independent of and long after the filing of the 2016 lawsuit." (Pl.'s Opp'n Br. (Doc. 58) at 7.) Specifically, Plaintiff stresses that "[t]he Complaint alleged that Defendants disclosed and used Azima's hacked data in 2018 and 2019." (Id. (citing Compl. (Doc. 1) ¶¶ 24, 26).) Plaintiff argues that "each disclosure in 2018 and 2019 was a separate violation of the" Remaining Counts, and "[t]hus, the statutes of limitation did not begin to run on those claims until at least 2018 or 2019, when the conduct occurred." (Id.) Therefore, "[j]udicial notice of the 2016 lawsuit could not have provided any information relevant to the statutes of limitation for Defendants' later conduct." (Id.)

Defendants anticipated this argument and contend that "Azima's allegations simply do not link Defendants to the alleged 2018-19 conduct, so that conduct cannot be the basis for any claim against Defendants." (Defs.' Obj. (Doc. 57) at 18 n.6.) This court disagrees. For purposes of surviving a motion to dismiss, the Complaint sufficiently links Defendants to the 2018-2019 conduct. Critically, the Complaint alleges that

- 17 -

Del Rosso hired the Indian hacking firm CyberRoot
. . . .

. . . .

Acting at Defendants' direction, CyberRoot
created, uploaded, and transmitted multiple
unauthorized copies of Azima's data. . . . [A]t least
some of that data was provided to Del Rosso . . . .

. . . .

CyberRoot created BitTorrent links that contained
Azima's stolen data and those links were posted on the
blog sites alleging fraud by Azima. . . .

. . . .

In May and June 2018, the blog sites were
modified to include new links to WeTransfer sites that
contained copies of Azima's stolen data.

CyberRoot regularly used WeTransfer links to
transfer data to Vital. . . .

In June 2019, the links on the blog sites were
modified to include new WeTransfer links containing
some of Azima's stolen data.

(Compl. (Doc. 1) ¶¶ 16, 19, 22, 24-26.) At the motion to dismiss

stage, these allegations - construed "in the light most

favorable to the plaintiff" - more than "allow[] the court to

draw the reasonable inference that" Defendants are sufficiently

linked to the 2018-2019 conduct. (Recommendation (Doc. 54) at 4,

5, 34 (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com,

Inc., 591 F.3d 250, 255 (4th Cir. 2009), and Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009)).)

### a. Count XI (Invasion of Privacy under North Carolina Law)

However, this 2018-2019 conduct only relates to three of the four Remaining Counts. It does not relate to Count XI (invasion of privacy under North Carolina law). That invasion of privacy count is "tied to the actual hacking in 2016 (and not the subsequent dissemination of the data)." (See Recommendation (Doc. 54) at 16 n.5 (discussing Counts IV (computer trespass) and V (conversion)).) Therefore, because the 2018-2019 conduct does not relate to the invasion of privacy count and the 2016 D.C. Complaint shows that Plaintiff discovered the hacking in 2016, this court concludes that the invasion of privacy count accrued in 2016. Hence, its three-year statute of limitations lapsed in 2019, before this action was filed in 2020. Thus, Count XI must be dismissed as time-barred. This court will modify the Magistrate Judge's Recommendation that Defendants' Motion to Dismiss be denied as to Count XI and instead will grant the Motion to Dismiss as to Count XI.

### b. Count III (Misappropriation of Trade Secrets under Federal Law)

Even if the federal and state trade secret misappropriation counts (Counts III and VIII) are implicated by the 2018-2019 conduct, Defendants still maintain that dismissal is necessary. Defendants assert that "trade secrets claims accrue with the

- 19 -

original incident," (Defs.' Obj. (Doc. 57) at 18 n.6), meaning that despite the later 2018-2019 conduct, these claims accrued in 2016 when the original misappropriation was discovered. This argument is valid as to the federal misappropriation count, Count III. That count's statute of limitations holds that "a continuing misappropriation constitutes a single claim of misappropriation." 18 U.S.C. § 1836(d). This means that:

> the first discovered (or discoverable) misappropriation of a trade secret commences the limitation period . . . . [A]lthough the initial wrongful acquisition of the trade secret and each subsequent misuse are separate acts of misappropriation, a <u>claim</u> for misappropriation arises only once . . . at the time of the initial misappropriation, subject to the discovery rule.

<u>B&P Littleford, LLC v. Prescott Mach., LLC</u>, Nos. 20-1449/1451 2021 WL 3732313, at *6 (6th Cir. Aug. 24, 2021) (internal citations and quotation marks omitted); <u>see also</u> <u>In re Outsidewall Tire Litig.</u>, Nos. 1:09cv1217/1218, 2010 WL 11474981, at *2 (E.D. Va. June 29, 2010) (interpreting Virginia's misappropriation of trade secret law's statute of limitations, which has the same "continuing misappropriation" language that the federal law has, and concluding that "the limitations period for claims alleging misappropriation of a single trade secret begins to run when the plaintiff discovers or reasonably should have discovered the first act of misappropriation, even if the misappropriation continues for an extended period of time").

- 20 -

Therefore, the new links to Plaintiff's data that were posted in 2018 and 2019 constituted a "continuing misappropriation" and thus did not re-accrue the statute of limitations for the federal misappropriation of trade secrets count. Rather, that count maintained an accrual date of 2016, when Plaintiff first discovered that links to his data had been posted — as alleged in the 2016 D.C. Complaint. Hence, the count's three-year statute of limitations lapsed in 2019, and Count III must be dismissed as time-barred. Therefore, this court will modify the Magistrate Judge's Recommendation that Defendants' Motion to Dismiss be denied as to Count III and instead will grant the Motion to Dismiss as to Count III.

### c. <u>Count VIII (Misappropriation of Trade Secrets under North Carolina Law)</u>

In contrast to federal law, the North Carolina trade secret misappropriation law's statute of limitations does not include language addressing continuing misappropriations. <u>See</u> N.C. Gen. Stat. § 66-157. In lieu of such language, general North Carolina claim accrual doctrines apply. North Carolina law features a "continuing wrong" doctrine. <u>Quality Built Homes, Inc. v. Town of Carthage</u>, 371 N.C. 60, 70, 813 S.E.2d 218, 226 (2018). The North Carolina Supreme Court has described this doctrine as unexceptional and part of "the usual rules governing the operation of statutes of limitations." <u>Id</u>. North Carolina's

- 21 -

continuing wrong doctrine holds that "the applicable limitations period starts anew in the event that an allegedly unlawful act is repeated." Id. Importantly, "the continuing wrong doctrine does not restart the statute of limitations period for earlier unlawful acts, it just provides that the limitations period starts anew for subsequently committed unlawful acts of the same nature." Lau v. Constable, No. 16 CVS 4393, 2019 WL 6051554, ¶ 34 (N.C. Super. Ct. Sept. 24, 2019); see also Sample v. Roper Lumber Co., 150 N.C. 161, 166, 63 S.E. 731, 732 (1909) ("[E]very wrong invasion of plaintiffs' property amounted to a distinct, separate trespass day by day, and for any and all such trespasses coming within the three years the defendant is responsible.").

Applying this doctrine to the original misappropriation of Plaintiff's trade secrets in 2016 and the more recent misappropriations in 2018-2019, "gives rise to multiple discrete claims corresponding to each act of misappropriation, and [b]ecause each act violates the law on its own, each act separately triggers its own limitations period." Heraeus Med. GmbH v. Esschem, Inc., 927 F.3d 727, 737 (3d Cir. 2019) (internal quotation marks omitted) (concluding that because Pennsylvania's misappropriation of trade secrets law's statute of limitations lacked language addressing "continuing

misappropriations," each misappropriation started the limitations period anew). Therefore, for purposes of the North Carolina misappropriation of trade secrets count (Count VIII), the 2016, 2018, and 2019 conduct each separately triggered accrual of a respective three-year limitations period for that particular conduct. Consequently, Plaintiff's 2020 filing of this case fell outside the three-year period for the 2016 conduct, but within the three-year period for the 2018-2019 conduct. Therefore, as to the 2018-2019 conduct, Count VIII is not time-barred. Thus, this court will ultimately accept, albeit for different reasons, the Magistrate Judge's recommendation that Defendants' Motion to Dismiss Count VIII be denied.

### d. Count X (Civil Conspiracy under North Carolina Law)

The final remaining count is for civil conspiracy under North Carolina law (Count X). "A claim for conspiracy . . . cannot succeed without a successful underlying claim," Swain v. Elfland, 145 N.C. App. 383, 387, 550 S.E.2d 530, 534 (2001) (alteration in original) (quoting Jay Group, Ltd. v. Glasgow, 139 N.C. App. 595, 599, 534 S.E.2d 233, 236 (2000)). Therefore, here, the civil conspiracy claim only survives because this court has found that Count VIII (misappropriation of trade secrets under North Carolina law) remains viable, supra Part III.B.4.c. But, as "the statute of limitations for a civil

conspiracy claim is governed by the underlying claim," Lau, 2019 WL 6051554, at *8 (citation omitted), Plaintiff's dependent civil conspiracy claim is likewise limited to the 2018-2019 conduct – the only allegations that are not time-barred. Thus, this court will ultimately accept, albeit for different reasons, the Magistrate Judge's recommendation that Defendants' Motion to Dismiss Count X be denied.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Recommendation, (Doc. 54), is **ADOPTED IN PART** and **MODIFIED IN PART.** The Magistrate Judge's Recommendation to deny Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), (Doc. 31), as to Counts III and XI is **MODIFIED** and instead the Motion to Dismiss as to Counts III and XI will be granted. The remainder of the Magistrate Judge's Recommendation is **ADOPTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), (Doc. 31), is **DENIED IN PART** as to Counts VIII and X of Plaintiff's Complaint but **GRANTED IN PART** as to Counts I, II, III, IV, V, VI, VII, IX, and XI.

**IT IS FURTHER ORDERED** that Plaintiff's Emergency Motion for Leave to File Supplemental Information Related to Objection to

Recommended Ruling and for Leave to Commence Discovery in Light of Newly Discovered Evidence, (Doc. 61), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Supplemental Information Related to Defendants' Opposition to Emergency Motion for Leave to File Supplemental Information, (Doc. 64), is **DENIED**.

This the 10th day of December, 2021.

_____
United States District Judge