**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO. 20-CV-954-WO-JLW**

|                                          |     |
| ---------------------------------------- | --- |
| FARHAD AZIMA,                            | )   |
|                                          | )   |
|    Plaintiff,             | )   |
|                                          | )   |
|    v.                     | )   |
|                                          | )   |
| NICHOLAS DEL ROSSO and VITAL             | )   |
| MANAGEMENT SERVICES, INC.,               | )   |
|                                          | )   |
|    Defendants.            | )   |


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS PURSUANT TO RULE 12(b)(1)**

# TABLE OF CONTENTS

INTRODUCTION ............................................1

BACKGROUND ..............................................2

QUESTIONS PRESENTED .....................................5

STANDARD OF REVIEW ......................................5

ARGUMENT ...............................................7

I.   The Court No Longer Has Original Subject Matter
     Jurisdiction Over Azima's Claims.....................7

     A.   The Remaining Claims Fail on Their Face to Satisfy
          the Amount-in-Controversy Requirement. ..........7

     B.   The Court Should Decline Supplemental Jurisdiction
          Over the Remaining Claims ......................13

II.  Azima Lacks Article III Standing to Pursue the
     Remaining Claims....................................14

CONCLUSION .............................................17

Case 1:20-cv-00954-WO-JLW   Document 68   Filed 12/23/21   Page 2 of 21

**INTRODUCTION**

In its recent Memorandum Opinion and Order, this Court dismissed nine of Plaintiff Farhad Azima's eleven causes of action and all of his claims related to the alleged 2016 hacking of his email account. The Court's order leaves only a narrow state-law trade-secrets claim for a third party re-posting internet links to "copies" of documents in 2018 and 2019, and a related state-law civil-conspiracy claim. *See* Order, Dkt. 65 at 22–24.

Without the federal causes of action, however, and with the events at issue narrowed to 2018 and after, the Court now lacks original jurisdiction over the remaining claims. Federal question jurisdiction has been eliminated, and the remaining allegations do not meet the amount-in-controversy requirement. Azima does not allege or offer facts to suggest he was harmed by these later-in-time events at all, or even conclusorily assert $75,000 in damages from those events. Without original jurisdiction, the Court should decline to exercise supplemental jurisdiction over the remaining claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Factually, Azima also lacks Article III standing to pursue the remaining claims. In his complaint, Azima previously

1

alleged he owned the putative trade secrets at issue and that he was consequently injured by the public posting of links to that data. His recent disclosures in the related English lawsuit, however, show that Azima owns none of the putative trade secrets, depriving him of the injury-in-fact he needs to keep the last remaining fragment of this case alive.

For all of these reasons, the Court should dismiss the remainder of this action under Rule 12(b)(1) for lack of jurisdiction.

**BACKGROUND**

Plaintiff Farhad Azima is a businessman who "has owned and operated multiple aviation-related companies." Compl. ¶ 10. In the operative, now largely dismissed, complaint, he alleged that the global law firm Dechert LLP hired Defendants to, in turn, hire others to hack his email account (the "hacking" allegations). *See, e.g.*, *id.* ¶ 7. Dechert is then alleged to have used this inculpatory material to (success-fully) sue Azima for a multi-million dollar fraud in 2016. Azima alleges that his hacked data happened to include "con-fidential internal pricing lists relating to food transport for U.S. troops in Afghanistan," *id.* ¶ 18, which he claims constituted trade secrets.

2

Based on those events, Azima asserted eleven causes of action, including two federal claims under the Electronic Communications Privacy Act ("Wiretap Act") (Counts I-II) and one under the federal Defend Trade Secrets Act (Count III).

Azima further claimed that in 2018 and 2019, blog sites linking to his data were modified by an unidentified party "to include new links to WeTransfer sites that contained copies of Azima's stolen data," *id.* ¶ 24; *see id.* ¶ 26 (the "reposting" allegations), although his complaint does not identify any harm or other consequence to him from that reposting. Azima did not assert a separate cause of action arising from the reposting, but included the reposting allegations in his federal and state law trade secret claims.

On Defendants' motion to dismiss the complaint, the Court held that nine of Azima's eleven counts, including all three of the asserted federal counts, were barred for failure to state a claim or under the applicable statute of limitations. *See* Order, Dkt. 65. The Court also dismissed the remaining North Carolina trade secrets claim, and the related conspiracy claim, to the extent each was based on the hacking allegations. The Court held that these two claims could stand to

3

the extent that they arose from the alleged 2018 and 2019 reposting.

As the Court is aware, Azima is also pursuing his hacking claims against other defendants in a parallel proceeding in England. In that proceeding, Azima recently disclosed a list of the purported trade secrets at issue. *See* Decl. of Brandon Neuman ("Neuman Decl."), Ex. 1 at 23-24.[1] Sixteen categories of the putative trade secrets are expressly described as belonging to businesses identified as Shollar Bottling Company, Grand Hotel Europe, Brownies, and ALG. *Id.* Three remaining trade secrets evidently belong to a food transport business and two restaurant businesses. *Id.* Azima alleges no ownership interest in any of these businesses, nor are any of the putative trade secrets identified as belonging to him personally.

---

[1] The Court may consider this document with respect to Defendants' factual attack on Plaintiff's standing. *See Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004) (finding that a court may consider evidence outside the pleadings when considering a factual challenge to subject matter jurisdiction). This motion asserts arguments not available at the time of Defendants' prior motion to dismiss because it was the decision on the prior motion that dissolved the Court's original jurisdiction; and because the list of trade secrets was disclosed by Azima on October 15, 2021, after the prior motion was filed.

4

Based on the foregoing, Defendants bring this motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure because the face of the complaint does not allege the jurisdictional minimum for diversity jurisdiction and because factually, Azima is not the owner of the putative trade secrets at issue and thus lacks Article III standing with respect to them.  For the reasons below, the case should be dismissed.

## QUESTIONS PRESENTED

**1. Facial Attack on Diversity Jurisdiction.** The Court originally possessed federal question jurisdiction because Azima asserted three federal causes of action, but those have been dismissed.  The Court has also found that the alleged 2016 conduct is non-actionable, so that the only events at issue in Plaintiff's remaining state-law claims are the allegations from 2018 and 2019.  Plaintiff does not allege, even in a conclusory way, that he suffered $75,000 worth of harm, or any harm at all, specifically from that conduct, nor does he allege facts to support an inference that he suffered any such harm.  Should the remaining claims, therefore, be dismissed for lack of subject matter jurisdiction?

**2. Factual Attack on Standing.**  Azima's only remaining claims in this action are for putative misappropriation of trade secrets.  In his parallel action in England, Azima has itemized the purported trade secrets at issue, and they are all corporate property that, therefore, does not belong to him.  Should the case be dismissed because Azima lacks Article III standing to pursue a trade-secrets claim?

## STANDARD OF REVIEW

Defendants bring both a facial challenge to the Court's original jurisdiction and a factual challenge to Azima's standing.

5

"In a facial challenge" to subject matter jurisdiction, "the defendant contends that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," and "the plaintiff is afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Accordingly, the Court "accept[s] as true [Plaintiff's] allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face," but "do[es] not . . . apply the same presumption of truth to 'conclusory statements' and 'legal conclusions.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"In a factual challenge, the defendant argues that the jurisdictional allegations of the complaint [are] not true, providing the trial court the discretion to go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id.* (alteration in original) (internal quotation marks omitted). In responding to a factual challenge on standing, "the party invoking the court's jurisdiction cannot

simply allege a nonobvious harm, without more." *Wittman v. Personhuballah*, 578 U.S. 539, 545 (2016). Rather, "the 'party invoking federal jurisdiction bears the burden of establishing' that he has suffered an injury by submitting 'affidavit[s] or other evidence.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**ARGUMENT**

**I. The Court No Longer Has Original Subject Matter Jurisdiction Over Azima's Claims**

**A. The Remaining Claims Fail on Their Face to Satisfy the Amount-in-Controversy Requirement.**

As a result of the dismissal of the substantial bulk of this action, this Court no longer possesses original jurisdiction. The Court had federal question jurisdiction under 28 U.S.C. § 1331 over Azima's three federal causes of action, and had supplemental jurisdiction over the remaining claims to the extent they arose from the same operative facts as the federal claims. *See* Compl. ¶¶ 37-38. Plaintiff also alleged the existence of diversity jurisdiction because the parties are alleged to be diverse and because the damages amounts for his eleven claims were alleged to have exceeded $75,000 in the aggregate. *See* Compl. ¶ 39; 28 U.S.C. § 1332(a).

7

Those bases for original jurisdiction have been cut away. "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). "It is fundamental that [the] plaintiff must demonstrate the jurisdictional basis and allege the necessary amount in controversy." *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1412 (4th Cir. 1994).

The dismissal of the federal causes of action eliminates federal question jurisdiction. *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997). And the remaining allegations do not establish diversity jurisdiction for the remaining claims. The complaint lacks any express allegation that Azima was harmed by the 2018-2019 reposting, and its threadbare factual allegations do not suggest that he was so harmed. A jurisdictional pleading "need[s] [to] include . . . a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (discussing removal allegations, noting that the rules governing notices of removal track those applied to other pleadings).

8

While the Trade Secrets Protection Act allows a plaintiff to "recover actual damages that were 'caused by misappropriation,'" the plaintiff must show that "the misappropriation was a proximate cause of those damages." *360 Mortg. Grp., LLC v. Home Point Fin. Corp.*, 740 F. App'x 263, 267 (4th Cir. 2018) (emphasis omitted) (citing N.C. Gen. Stat. § 66-154(b)). In his complaint, however, Azima does not show any harm, or indeed allege any consequence to him or to Defendants, flowing from the 2018-2019 reposting of unidentified "copies" of documents. He does not allege that Defendants ever obtained any reposted "copies" of Azima's documents, let alone whether those "copies" constitute trade secrets. He does not allege that Defendants are competitors of his. He does not allege that the reposting caused a benefit to Defendants. He does not allege that any other person accessed the alleged trade secrets from the reposted links. Finally and most critically, he does not allege any lost profits flowing from the reposting.

Azima alleges that for his eleven-count action as a whole, and stretching back to 2016, the "amount in controversy exceeds $75,000, exclusive of interest and costs." Compl. ¶

39. He also, at best, vaguely suggests that Defendants benefitted from the hacking. *E.g.*, Compl. ¶ 73. These do not establish the amount in controversy with respect to the remaining claims. In addition to being conclusory, *see Beck*, 848 F.3d at 270, the assertion of the $75,000 minimum amount includes claims that are now dismissed, and includes the 2016 activity that was the most substantial part of Azima's claim and which has now been stripped from the case. Azima puts no value on his request for injunctive relief, so that similarly contributes nothing to establishing the amount in controversy.

Azima's allegations specific to his trade-secrets claims likewise do not allege the requisite damages amount. The statute allows "actual damages," which are "measured by the economic loss or the unjust enrichment caused by misappropriation of a trade secret, whichever is greater." N.C. Gen. Stat. § 66-154(b). Azima has not alleged $75,000 of damages in either category.

As to economic loss, Azima only makes the allegation that he "has suffered damages, including but [] not limited to loss of business goodwill, loss in the value of his trade secrets and confidential business information, and harm to

10

[his] business, in an amount to be proven at trial." Compl. ¶ 113. These allegations fail to meet the jurisdictional minimum, for three reasons:

- First, there is no allegation that this alleged harm exceeds $75,000. That dooms the assertion of jurisdiction, because a qualifying claim must appear on the face of the complaint. *Wiggins v. North American Equit. Life Assur.*, 644 F.2d 1014, 1016 (4th Cir. 1981) ("Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith.").

- Second, this claim of injury is not tied to the 2018-2019 reposting, but instead is alleged generally with respect to Azima's trade secrets claims. The initial alleged misappropriation of the putative trade secrets in 2016 has been dismissed, and, as noted, Azima alleges no facts suggesting that he suffered any harm from the reposting.

- Third, these allegations are vague and conclusory and thus should be disregarded. *See Beck*, 848 F.3d at 270. As noted, Azima does not allege facts to suggest that any competitor has ever acquired his alleged trade secrets or that competitive harm has resulted.

As to unjust enrichment, the complaint does not claim that the alleged reposting resulted in any benefit to Defendants. While there is a vague, information-and-belief allegation that Defendants were paid "substantial sums," Compl. ¶ 73, to carry out the hacking — including the 2016 conduct — that is not enough, for three reasons:

11

- First, it is not tied to the reposting in particular but instead linked to the alleged hacking, which has been dismissed. Azima provides no allegations as to whether Defendants benefitted financially from the alleged 2018 and 2019 link modifications, nor does he even claim that Defendants benefitted from the disclosure, as opposed to the "possession" of his trade secrets. *Id.*

- Second, Defendants are not alleged to have profited in an amount greater than $75,000 related to the reposting. The Complaint does not specify any amount of profit related to the reposting (or more broadly).

- Third, the flow of funds is alleged to have happened in 2016, before the reposting, and not as a result of it. *See* Compl. ¶¶ 28-32 (alleging payment to Defendants was received and paid on to CyberRoot, and alleging CyberRoot was paid in 2016). The statute allows recovery for unjust enrichment "caused by misappropriation," N.C. Gen. Stat. § 66-154(b), and "[e]vents that *precede* another event cannot be considered the direct result of the later occurring event." *N.C. Farm Bureau Mut. Ins. Co. v. Cox*, 263 N.C. App. 424, 449 (N.C. Ct. App. 2019). The payments are alleged to have caused the misappropriation, not the other way around.

Given that Azima fails to properly "allege the necessary amount in controversy" for the remaining claims, the Court lacks diversity jurisdiction over this action. *Feikema*, 16 F.3d at 1412.[2]

---

[2] Inasmuch as "there is not a separate civil action for civil conspiracy in North Carolina," the same analysis applies to both the trade secrets claims and the civil conspiracy claim. *Dove v. Harvey*, 608 S.E.2d 798, 800 (N.C. Ct. App. 2005).

12

**B. The Court Should Decline Supplemental Jurisdiction Over the Remaining Claims**

This Court should decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3). In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995) (similar analysis when original jurisdiction was based on diversity). Following this guidance, courts generally decline supplemental jurisdiction when the original-jurisdiction claims have been dismissed. *See Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 642 (4th Cir. 2016) (affirming dismissal of state-law claims together with federal claims).

This case should follow the normal course. The claims providing original jurisdiction were dismissed early on — not just "before trial," *see Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7, but at the pleading stage. The fact that Azima relied on time-barred claims to reach federal court in the first place also weighs against exercising supplemental jurisdiction. *Shanaghan*, 58 F.3d at 112 (instructing courts to

13

consider "whether plaintiff was consciously relying on flimsy grounds to get into federal court").

Accordingly, the Court should decline supplemental jurisdiction over the remaining claims, and should dismiss the action for lack of jurisdiction.

## II. Azima Lacks Article III Standing to Pursue the Remaining Claims

To possess Article III standing, (1) "the plaintiff must have suffered an injury in fact," (2) "there must be a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks omitted). Azima's assertion of standing fails at the first step.

Although Azima's trade secrets allegations are conclusory, his theory of injury was straightforward: he claimed ownership of the putative trade secrets at issue. For example, Azima alleged that the misappropriation caused a "loss in the value of *his* trade secrets and confidential business information" and that "conspirators, Defendants Del Rosso and Vital have unjustly benefited from their possession of *Azima's* trade secrets." Compl. ¶¶ 113-14 (emphasis added).

14

Now, however, Azima's own admissions contradict this aspect of his case. In the related English lawsuit, Azima is pursuing a Federal Defend Trade Secret Act counterclaim arising out of the same alleged hacking. As part of that proceeding, Azima has provided a list of all of the putative trade secrets that were allegedly hacked. *See* Neuman Decl., Ex. 1 at 23-24. Contrary to his complaint, this filing demonstrates that Azima owns *none* of the nineteen categories of supposed trade secrets (most of which appear to be outdated financial statements):

- Nine alleged trade secrets are identified as belonging to the "Shollar Bottling Company." *See id.* (identifying two "sales reports," two lists of "accounts payable," one "financial report," one "financial forecast," one "internal income statement," one "sales budget," and one "Due Diligence Report," all from 2012 or earlier).

- Five alleged trade secrets are identified as belonging to "Grand Hotel Europe." *See id.* (identifying one "[b]usiness case," several "head office reports," one "income statement," and two "budgets," all from 2009 or earlier).

- One trade secret is alleged to be a 2015 "pricing guide" belonging to a business named "Brownies." *See id.*

- One trade secret is alleged to be a 2014 "[t]arget list of aircrafts and clients," belonging to a business named "ALG." *See id.*

15

- Two trade secrets are alleged to be "[c]onfidential price list[s] for registered truck fleet," from 2013 or earlier, belonging to an unnamed business that "transport[ed] food for US troops in Afghanistan." *See id.*

- One trade secret is alleged to be a 2004 list of "[a]ccounts payable" belonging to an unidentified "restaurant business." *See id.*

- One trade secret is alleged to be a 2012 "daily statistics report" belonging to "Smokehouse BBQ." *See id.*

As noted, the Court may consider this new evidentiary material on this factual challenge to jurisdiction. The assertion of a factual challenge puts the burden on Azima to show standing as a factual matter. *See Wittman*, 578 U.S. at 545. He cannot meet that burden, as the list above shows, because each of his claimed trade secrets belongs not to him personally but to a business. Azima does not even allege that he has a connection to any of these businesses (or what that connection might be). Because Azima lacks ownership over the trade secrets, his remaining claims must be dismissed for lack of standing.

16

**CONCLUSION**

For the foregoing reasons, the Court should dismiss for lack of subject matter jurisdiction.


Respectfully submitted this 23rd day of December, 2021.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:   */s/  Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

17

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 3,287 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250 word limitation.

Respectfully submitted this 23rd day of December 2021.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

     I hereby certify that on this 23rd day of December 2021, I electronically filed the foregoing **Defendants' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Rule 12(b)(1)** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson(US)LLP
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601
jonathan.townsend@wbd-us.com
ripley.rand@wbd-us.com
chris.jones@wbd-us.com

Calvin Lee
Ian Herbert
Brian Hill
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
bhill@milchev.com
kbehre@milchev.com

**NELSON MULLINS RILEY &
SCARBOROUGH, LLP**

By:    */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*