# Exhibit 1

IN THE HIGH COURT OF JUSTICE                    Case No. HC-2016-002798
BUSINESS AND PROPERTY COURTS
OF ENGLAND AND WALES
BUSINESS LIST (ChD)

**Assigned to: THE HON MR JUSTICE MICHAEL GREEN**

**BETWEEN:**

RAS AL KHAIMAH INVESTMENT AUTHORITY

Claimant and Defendant to Counterclaim

-and-

FARHAD AZIMA

Defendant and Counterclaimant

-and-

STUART PAGE

First Additional Defendant to Counterclaim

-and-

DAVID NEIL GERRARD

Second Additional Defendant to Counterclaim

-and-

DECHERT LLP

Third Additional Defendant to Counterclaim

-and-

JAMES EDWARD DENISTON BUCHANAN

Fourth Additional Defendant to Counterclaim

_____

**COUNTERCLAIMANT'S RESPONSE TO THE REQUEST**

**FOR INFORMATION SERVED BY THE DEFENDANT TO THE COUNTERCLAIM**

**ON 2 SEPTEMBER 2021**

_____

Case 1:20-cv-00954-WO-JLW   Document 69-1   Filed 12/23/21   Page 2 of 25

## Under Paragraph 3(e)

Of: "*RAKIA is primarily and/or vicariously liable for the acts and omissions of the Additional Defendants pleaded below and/or has ratified them.*"

### Request 1:

1.     State, so that RAKIA may understand the nature of the case which it has to meet, in relation to each Additional Defendant the legal basis for the contention that RAKIA is "*primarily liable*" for the acts and omissions of that Additional Defendant, identifying the primary or special rule of attribution relied on and setting out Mr Azima's factual case as to why that rule applies to each such Additional Defendant.

### Response:

1.     Mr Azima's case in this regard is sufficiently pleaded in the ACC, in particular in paragraphs 31-35 and 101-111, ACC.

## Under Paragraph 35

Of: "*(a) As regards Mr Buchanan and Mr Gerrard, their knowledge and conduct in connection with the "RAK Project" is attributable to RAKIA, which is thus primarily liable. Without limitation to the foregoing, Mr Buchanan and Mr Gerrard were authorised to act as or on behalf of RAKIA, and/or acted as the directing mind and will of RAKIA. Mr Buchanan had that express authorisation under a power of attorney. It is inferred that Mr Gerrard had that authorisation under the terms of his engagement and/or in practice acted and was regarded by RAKIA (including by Mr Buchanan) as such*"

### Requests 2 and 3:

2.     Is Mr Azima's case as to RAKIA's liability for the acts and omissions of Mr Buchanan and Mr Gerrard confined to the contention that it is so liable because:

        (a)     Mr Buchanan had the express authorisation of the board of RAKIA under the terms of a power of attorney; and

Case 1:20-cv-00954-WO-JLW   Document 69-1   Filed 12/23/21   Page 3 of 25

(b)     Mr Gerrard was, as a partner in Dechert LLP, RAKIA's solicitors, authorised to act for RAKIA in accordance with the terms of Dechert LLP's retainer?

3.     If not, state so that RAKIA may understand the nature of the case which it has to meet, in relation to (a) Mr Buchanan and (b) Mr Gerrard, the legal basis for the contention that their acts and omissions are "attributable" to RAKIA, identifying the primary or special rule of attribution relied on and setting out Mr Azima's factual case as to why that rule applies to each of them.

**Response:**

2.     Mr Azima's "*case as to RAKIA's liability for the acts and omissions of Mr Buchanan and Mr Gerrard*" is not confined to the matters set out in request 2(a) and (b). As is clear from the face of the ACC, it is, by way of example only, also alleged that RAKIA is liable for the acts and omissions of Mr Buchanan and Mr Gerrard because: (i) their acts were ratified; and (ii) RAKIA is vicariously liable for their acts and omissions, because those acts and omissions were within the scope of their engagement.

3.     Mr Azima's case as to the liability of RAKIA for the acts and omissions of Mr Buchanan and Mr Gerrard is sufficiently pleaded in the ACC, in particular in paragraphs 31-35 and 101-111, ACC.

Of: "b. RAKIA has ratified their acts and omissions …"

**Request 4:**

4.     So that RAKIA may understand the nature of the case which it has to meet, state when, where and by whom acting as or on behalf of, RAKIA ratified each act or omission of the Additional Defendants relied on, setting out the full nature of Mr Azima's factual case that such ratifications took place.

**Response:**

4:

(1)     As set out in paragraph 14 ACC, the hacking was covert, and RAKIA and the Additional Defendants have conspired to cover up and conceal the true facts. As a result, the facts have continued to emerge over time.

3

(2)     Despite the covert nature of the hacking and the attempted cover up, Mr Azima has sufficiently pleaded the case on ratification in the ACC, including in particular in paragraph 35, ACC, and particularly the text in paragraph (b) omitted by RAKIA's quotation.  Mr Azima reserves his right to develop his case on ratification as further information becomes available following disclosure, and otherwise.

**Under Paragraphs 113(e)(i) and 114(a)**

Of: "*At the time of the hacking Mr Azima resided in and conducted business from Missouri.*"

**Request 5:**

5.      Provide particulars as to the "*business*" which, it is alleged, Mr Azima "*conducted…from Missouri*" stating:

   a.     Full details of the "*business*" alleged to have been conducted;

   b.     The name of any company through which such "*business*" was conducted;

   c.     The jurisdiction where any such company was incorporated or registered and the nature of Mr Azima's interest in that company;

   d.     The address of any office through which such "*business*" was conducted in Missouri; and

   e.     The jurisdictions in which customers of that "*business*" were located.

**Response:**

5:

   (1)    Throughout the relevant period, Mr Azima's business interests were wide and entrepreneurial in nature.  They had a substantial focus on activities in the aviation sector and related activities.

   (2)    At the relevant time, business was conducted through the following companies, which were organised in the jurisdictions and in which Mr Azima had the interests and role as specified below:

4

a. AAA Investments Ltd: a Gibraltar limited company, 100% owned by Mr Azima, who was a director.

b. ALG Transportation, Inc.: a Missouri corporation, 100% owned by Mr Azima, who was the chairman and CEO.

c. ALG Marine Limited (a Cayman Islands company), which was 100% owned by Mr Azima, and its wholly owned subsidiary ALG Marine MYQ Limited (a Cayman Islands company).

d. Penta Aviation LLC.: a Delaware limited liability company, 100% owned by Mr Azima, who was the managing member.

e. AZRA LLC: a Nevada limited liability company, 32.48% owned by Mr Azima, who was a member.

f. AA Leasing LLC: a Missouri limited liability company, 75% owned by Mr Azima, who was managing member.

g. Eurasia Aviation Holdings Limited: a British Virgin Islands limited company, which during the relevant period was 10% owned by Mr Azima, who was a director.

h. JFJ International Logistics LLC: a Nevada limited liability company, 33.33% owned by Mr Azima, who was a member.

i. Smokehouse BBQ, Inc.: a Missouri USA corporation, 15% owned by Mr Azima.

j. Ariane USA LLC: a Nevada limited liability company, owned 100% by Mr Azima, who was a Managing Member.

k. Valitususa LLC: a Nevada limited liability company, owned 100% by Mr Azima, who was a Managing Member.

(3) Business in Missouri was conducted from: 8080 Ward Parkway Ste 210, Kansas City, MO 64114.

(4) The customers of these businesses were located worldwide.

**Under Paragraph 113**

5

Of: "*e ii. Mr Azima's electronic devices which were hacked were physically stored in Missouri (or were ordinarily physically stored there).*

*iii. Mr Azima ordinarily accessed the data which was ultimately hacked in Missouri.*"

**Request 6:**

6.      State:

      a.      Whether the data which was obtained by hacking was taken solely from the physical memory of Mr Azima's electronic devices while those devices were located in Missouri;

      b.      If not, state the location(s) where the data was/were physically stored at the time when the data was obtained by hacking.

**Response**:

6:

      (1)      As set out in paragraph 14 ACC, the hacking was covert, and RAKIA and the Additional Defendants have conspired to cover up and conceal the true facts.

      (2)      Mr Azima is therefore not presently in a position to specify the precise location in which all his devices were at the time data was hacked from it. As noted below, three computers were located in Missouri.

Of: "*e. iv The damage suffered by Mr Azima (including the invasion of his interests in privacy) occurred internationally upon the publication of the hacked data, but was most directly suffered in Missouri because that was at the time the state in which Mr Azima permanently resided and from which he conducted business.*"

**Requests 7-9:**

7.      Give full details of all the "*damage*" allegedly suffered by Mr Azima, identifying each head of damage claimed and the alleged extent of such damage.

8.      In respect of the allegation that the "*damage…occurred internationally*", please specify all of the jurisdictions where such "*damage*" allegedly occurred.

6

9.      Give full details of the damage alleged to have been "*directly suffered*" in Missouri.

**Response:**

7.      The types of damage incurred by Mr Azima are set out in the ACC (and as further explained herein).  Without limitation to that point, such damage includes:

    a.      Damage to and loss of Mr Azima's devices.

    b.      Obtaining additional IT security and related software.

    c.      The intrusion on Mr Azima's privacy.

    d.      Damage to his business interests, including (as addressed further below) loss in the value of trade secrets, and loss of goodwill (in respect of which Mr Azima's claim is subject to the decision of the Supreme Court on his proposed appeal).

    e.      Distress and emotional harm.

8.      The extent of the damage is sufficiently set out in the ACC for RAKIA to understand the case it has to meet on applicable law, and/or is otherwise a matter for evidence.

9.      As to damage directly suffered in Missouri:

    a.      Damage to and loss of devices was incurred in Missouri, where those devices were located and/or ordinarily stored in Missouri.

    b.      The costs of additional IT security and software were incurred in Missouri, where the devices were located.

    c.      A substantial intrusion on Mr Azima's privacy was suffered in his place of residence, namely Missouri.

    d.      Mr Azima suffered distress and emotional harm in his place of residence, namely Missouri.

    e.      As to damage to Mr Azima's business interests, the pursuit of this claim is subject to the decision of the Supreme Court.  Without limitation to that point, as Mr Azima's business was operated from Missouri, damage to his business interests (including the loss of value in trade secrets, confidential information and goodwill) was incurred in Missouri.

**Under Paragraph 122(a)**

Case 1:20-cv-00954-WO-JLW   Document 69-1   Filed 12/23/21   Page 8 of 25

Of: "*The information obtained through the hacking (or a substantial part of it): [...] was private and confidential to Mr Azima…*"

**Requests 10-12:**

10.    Give full details of the "*information*" which is referred to, setting out each category of information relied on.

11.    Is it Mr Azima's case that all of the hacked data was private and confidential to him?

12.    If not:

      a.    specify the category or categories of information within the hacked data which Mr Azima alleges was/were private and confidential to him; and

      b.    identify (either by reference to categories of documents or by reference to specific individual documents) the documents within the hacked data which contained such allegedly private and confidential information.

**Response**:

10.    The quantity of information obtained through the hacking was vast: around 30GB. Some of this information was not confidential in the relevant sense. For example, emails between Mr Azima and RAKIA are not confidential as against RAKIA.

11.    Mr Azima's case is that a very substantial part of the information was confidential and that in many cases this will be obvious from the materials themselves. Further details of the information that was confidential are matters for witness evidence, on which it is not necessary or proportionate for full particulars to be provided now. Without limitation to that point, the confidential information includes:

      a.    Correspondence and other data of a personal nature, such as messages passing between Mr Azima and his family and friends;

      b.    Correspondence and other data concerning business activities held by Mr Azima or passing between Mr Azima and his employees and business associates (such as Mr Adams and Ms Azadeh);

      c.    Correspondence and other data concerning business activities with other parties, such as (but not limited to) communications with partners or proposed partners in joint business activities;

8

d.     Personal financial documents such as tax returns and bank records;

e.     Confidential and privileged communications with legal advisers.

12.    See 10 and 11.

## Under Paragraph 126

Of: "*These acts have caused serious detriment to Mr Azima.*"

## Request 13:

13.    Provide full particulars of the "*serious detriment*" allegedly caused to Mr Azima by the acts complained of setting out any specific financial losses claimed.

**Response:**

13:

    (1)    The detriment caused to Mr Azima is set out in the ACC.  Without limitation to that point, the acts pleaded at paragraphs 122-125 ACC:

        a.     Caused a substantial intrusion on Mr Azima's privacy.

        b.     Caused Mr Azima to suffer distress and emotional harm.

        e.     Damaged Mr Azima's business interests (in respect of which Mr Azima's claim is subject to the decision of the Supreme Court on his proposed appeal).

    (2)    The financial losses claimed are as set out in the ACC and herein.  For the avoidance of doubt, in addition to such claims, Mr Azima seeks the other remedies set out in the ACC.

## Under Paragraph 132

Of: "*This conspiracy caused significant harm to Mr Azima and his business interests.*"

## Requests 14 and 15:

9

14. Provide full particulars of the "*significant harm*" allegedly caused to Mr Azima setting out any specific financial losses claimed.

15. Confirm that, in light of Mr Azima's response dated 16 August 2021 to the request for further information from Mr Gerrard and Dechert LLP dated 2 August 2021 ("the **RFI Response**"), Mr Azima does not presently claim that he is entitled to recover any damages for conspiracy to injure or unlawful means conspiracy in respect of any harm allegedly caused to his *"business interests"*.

**Response**:

14. The types of damage incurred by Mr Azima are set out in the ACC (and as further explained herein). Without limitation to that point (and without prejudice to the other remedies sought in the ACC, including injunctive relief, exemplary damages and disgorgement or account of profits), such damage includes:

    a.    Damage to and loss of Mr Azima's devices.

    b.    Obtaining additional IT security and related software.

    c.    The substantial intrusion on Mr Azima's privacy.

    d.    Damage to his business interests (in respect of which it is confirmed that Mr Azima's claim is subject to the decision of the Supreme Court on his proposed appeal).

    e.    Distress and emotional harm.

15. See 14.

## Under Paragraph 142

Of: "*The Defendants added new links to Mr Azima's data multiple times and as recently as June 2019*".

## Request 16

16. Provide particulars of each "new link" referred to, providing the URL and stating, in each case, when it was added.

**Response to request 16**:

16.     Aside from the links to the Torrents (and the associated websites), "*new links*" on WeTransfer were subsequently added. The details of those which are known to Mr Azima are set out in Table 1 attached to this response.

## Under Paragraph 145

Of: "*As a result of the conspiracy and the disclosure of Azima's intercepted data, Mr Azima suffered damage.*"

**Request 17:**

17.     Provide particulars of the "*damage*" allegedly suffered by Mr Azima as a result of the disclosure of the hacked data which is relied on in support of this plea.

**Response to request 17**:

17.     The types of damage incurred by Mr Azima are set out in the ACC (and as further explained herein). Without limitation to that point (or to the other remedies claimed by Mr Azima, including injunctive relief, exemplary damages and disgorgement or account of profits), such damage includes:

    a.     Damage to and loss of Mr Azima's devices.

    b.     Obtaining additional IT security and related software.

    c.     The intrusion on Mr Azima's privacy.

    d.     Damage to his business interests, including loss in the value of trade secrets and confidential information, and loss of goodwill (in respect of which Mr Azima's claim is subject to the decision of the Supreme Court on his proposed appeal).

    e.     Distress and emotional harm.

    f.     Statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000

## Under Paragraph 146

11

Of: "*Since at least June 2019, the stolen data has continued to be publicly available on WeTransfer through links that were created on the instructions of the Defendants (or some of them), resulting in damage to Mr Azima.*"

**Request 18:**

18.     Provide details of the "links" by which the hacked data has been made publicly available on WeTransfer since at least June 2019, including:

    a.     The specific URL of each link;

    b.     The date when each link was created; and

    c.     The particular link(s) by which Mr Azima contends the hacked data remain(s) publicly available.

**Response**:

18.     The URLs and dates are set out in Table 1 attached to this response.  It is Mr Azima's case that the links at rows (c) – (m) continue to make hacked data available, as at the date of this pleading.

**Under Paragraph 148**

Of: "*Mr Azima's email accounts and computer systems stored trade secrets intended for use in interstate and foreign commerce, including but not limited to highly confidential business plans and proposals, research supporting those plans and proposals (including costs and service projections), information concerning business strategies and opportunities, and contacts for important business relationships.*"

**Requests 19-21:**

19.     Provide full particulars of each of:

    a.     the "*highly confidential business plans and proposals*";

    b.     the "*research supporting those plans and proposals*";

    c.     the "*information concerning business strategies and opportunities*"; and

d.      the "*contacts for important business relationships*",

which were allegedly stored in Mr Azima's email accounts and computer systems and which allegedly constituted "*trade secrets*" for the purposes of the Defense of Trade Secrets Act.

20.     Without prejudice to the generality of the foregoing, provide full particulars of each "*trade secret*" that Mr Azima alleges was misappropriated by the Defendants, identifying the documents within the hacked data which are alleged to have contained such "*trade secrets*".

21.     Provide full particulars of the intended "use" in interstate and foreign commerce of each of the "trade secrets" identified in the responses to requests 19 and 20.

**Response**:

19.     The quantity of information hacked from Mr Azima was very large. Exhaustive analysis of the stolen material is not straightforward.  For present purposes, Mr Azima has conducted a substantial review of the materials to identify trade secrets, the results of which are in Table 2 attached to this response, but for practical reasons it has not been possible to review the entirety of the hacked materials for these purposes at this stage.  Copies of the documents identified by that Table are in the hacked data, and further copies of those documents will be disclosed.  Mr Azima reserves the right to provide further particulars of these matters, including in relation to any documents in the hacked data containing trade secrets, which may be identified upon further review.

20.     The fact that these trade secrets were intended to be used in interstate and foreign commerce is evident from the location of the business activities in question in jurisdictions outside the United State and/or outside Missouri, and/or were engaged in trading in other states or countries.

21.     See 19 and 20.

**Under Paragraph 150**

Of: "*As a result of the conspiracy and hacking Mr Azima has suffered damage, which includes, but is not limited to, loss of business goodwill, loss in the value of his trade secrets and confidential business information, and harm to Mr Azima's business.*"

**Requests 22-23:**

22.     Confirm that, in light of the RFI Response, Mr Azima does not presently claim that he is entitled to recover any damages under the Defense of Trade Secrets Act in respect of any alleged:

    a.      "loss of business goodwill";

    b.      "*loss in the value of his trade secrets and confidential business information*"; or

    c.      "*harm*" to Mr Azima's *"business"*.

23.     Give full details of the other "*damage*," if any, Mr Azima claims to have suffered beyond "*loss of business goodwill, loss in the value of his trade secrets and confidential business information, and harm to Mr Azima's business"*.

**Response**:

22.     Mr Azima suffered damage to his business interests, including loss in the value of trade secrets and confidential information, and loss of goodwill (in respect of which it is confirmed that Mr Azima's claim is subject to the decision of the Supreme Court on his proposed appeal). For the avoidance of doubt, Mr Azima does presently claim other remedies. Specifically, Mr Azima also claims damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss. Alternatively, in lieu of damages measured by any other methods, Mr Azima claims the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriators' unauthorized disclosure or use of the trade secrets. In addition, because the trade secrets were wilfully and maliciously misappropriated, Mr Azima claims exemplary damages in an amount not more than 2 times the amount of the damages awarded (alternatively, exemplary damages as set out in the ACC and assessed as the Court sees fit). Mr Azima also claims injunctive relief.

23.     See 22.

**Under Paragraphs 153 and 154**

Of: "*As a direct consequence of the hacking, Mr Azima was forced to dispose of and replace the computers infected as part of the hacking, and his business was disrupted*"

And of: *"The Defendants thereby recklessly caused damage in violation of 18 U.S.C. §1030(a)(5)(B): and caused damage and actionable loss (as defined by 18 U.S.C. § 1030(e)(11)) to Mr Azima in violation of §1030(a)(5)(C); and are therefore liable to Mr Azima under the CFAA."*

**Requests 24-26:**

24.    Provide full particulars of each computer which Mr Azima alleges he was forced to dispose of and replace, including the brand, serial number, location of purchase, original purchase price, memory capacity, and the physical location of each computer at the time of the alleged hacking.

25.    Confirm that, in light of the RFI Response, Mr Azima does not presently claim that he is entitled to recover any damages under the Computer Fraud and Abuse Act in respect of alleged "*disrupt[ion]*" to his *"business"*.

26.    Give full details of the "*damage and actionable loss*" in respect of which Mr Azima does claim he is entitled to recover damages under §1030 of the Computer Fraud and Abuse Act.

**Response**:

24.    The computers that Mr Azima had to replace were all Apple iMac computers.  Two of these were located at the office of ALG Transportation in Kansas City, Missouri, one at Mr Azima's home in Kansas City, Missouri, and one at Mr Ray Adams' home office in Leawood, Kansas.  Information on the other points relating to the computers sought by RAKIA is a matter for evidence and provision of this information is not necessary and proportionate for RAKIA to understand the case it is to meet.

25.    Mr Azima's case is that (without prejudice to the other remedies sought in the ACC, including for disgorgement, exemplary damages and injunctive relief) he is entitled to damages for: (i) loss and damage to physical devices affected by the hacking; (ii) the cost of responding to the breaches of the Computer Fraud and Misuse Act, conducting a damage assessment and restoring any data, program, system or information, and

15

incurring related IT and software costs; (iii) impairment to the integrity or availability of data, a program, a system, or information; and (iv) damage to his business interests, including loss in the value of trade secrets and confidential information, and loss of goodwill, and losses consequential on the interruption of service occasioned by the breaches (in respect of which it is confirmed that Mr Azima's claim is subject to the decision of the Supreme Court on his proposed appeal).

26. See 24-25.

## Under Paragraph 158

Of: *"Each of the Defendants were party to the computer tampering, and are therefore jointly and severally liable to Mr Azima for compensatory damages, including expenditures reasonably and necessary incurred to verify that a system, network, or data was not altered, damaged, or deleted by the access."*

**Request 27:**

27. Particularise all damage in respect of which Mr Azima claims he is entitled to compensatory damages under the Missouri Computer Tampering Act including all expenditures referred to.

**Response**:

27. Mr Azima's case is that (without prejudice to the other remedies sought in the ACC, including for disgorgement, exemplary damages and injunctive relief) he is entitled to compensatory damages as particularised in the ACC, including for: (i) loss and damage to physical devices affected by the hacking; (ii) any expenditures reasonably and necessarily incurred by Mr Azima to verify that a computer system, computer network, computer program, computer service, or data was not altered, damaged, or deleted by the access, and incurring related IT and software costs; and (iii) damage to his business interests, including loss in the value of trade secrets and confidential information, and loss of goodwill (in respect of which Mr Azima's claim is subject to the decision of the Supreme Court on his proposed appeal).

16

## Under Paragraph 159

Of: *"b. i. ...the hacked data included secret and private subject matter..."*

### Requests 28 and 29:

28.    Give full details of the "*secret and private subject matter*" referred to; and

29.    Identify (either by reference to categories of document or by reference to specific individual documents) the documents within the hacked data which are alleged to have included such "*secret and private subject matter*"

### Response:

28.    Mr Azima refers to the responses given above, namely:

      a.    Paragraph 2 of the response to the requests 10-12 relating to paragraph 122(a), ACC.

      b.    Paragraph 1 of the response to the requests 19-21 relating to paragraph 148, ACC.

29.    See 28.

## Under Paragraph 161

Of: "*c. By being party to the hacking and dissemination of Mr Azima's data, each of the Defendants was party to...publication to a large number of persons...of private matters in which the public had no legitimate concern...*"

### Requests 30-31:

30.    Give full details of the "*private matters*" referred to; and

31.    Identify (either by reference to categories of document or by reference to specific individual documents) the documents within the hacked data which are alleged to have included such "*private matters*".

Case 1:20-cv-00954-WO-JLW   Document 69-1   Filed 12/23/21   Page 18 of 25

**Response:**

30.     Mr Azima refers to his response to requests 28 and 29, relating to paragraph 159, ACC (and the other responses referred to therein).

31.     See 30.

## Under Paragraph 162

Of: "*In consequence the Defendants are jointly and severally liable for damages for harm to his interest in privacy, for mental distress suffered through invasion of privacy, and for the specific damages caused by their disclosure*".

## Request 32:

32.     Provide, so that RAKIA may understand the nature of the case which it has to meet, full particulars of:

      a.     The "harm" to Mr Azima's privacy interest for which he claims damages.

      b.     The "mental distress" alleged to have been suffered through invasion of privacy;

      c.     The "specific damages" caused by disclosure.

**Response**:

32:

    (1)     The harm to Mr Azima's privacy interest, and the mental distress he incurred, are sufficiently pleaded and are matters for evidence in due course.  Without prejudice to that point, Mr Azima refers to the scale and nature of the breach of privacy, including with respect to material of a personal kind about Mr Azima, as pleaded at paragraph 73, ACC.

    (2)     As to the specific damages caused by the disclosure, Mr Azima claims for damage to his business, including loss in the value of trade secrets and confidential information, and loss of goodwill (in respect of which that claim is subject to the decision of the Supreme Court on his proposed appeal's claim for damage to his other business).  Mr Azima also claims punitive damages on the

18

basis that the defendants knew or had reason to know that there was a high degree of probability that the defendants' conduct would result in injury or the defendants acted with evil motive or reckless indifference to the right of Mr Azima, and the other remedies set out in the ACC.

## Under Paragraph 164

Of: "*By being party to the hacking and dissemination of Mr Azima's data, the Defendants*:

a.      *intentionally interfered with Mr Azima's business and business expectancy;*

b.      *by the employment of improper means,*

c.      *causing the severance of business relationships and loss of business expectancy;*

d.      *in circumstances in which the defendants had no legal right to interfere,*

e.      *resulting in damage as particularised below."*

## Requests 33 and 34:

33.      Confirm that, in light of the RFI Response, Mr Azima does not presently claim that he is entitled to recover any damages in respect of the tort of tortious interference with business and business expectancy.

34.      If Mr Azima does presently claim that he is entitled to recover such damages, particularise the "*damage*" in respect of which he claims he is entitled to recover such damages.

## Response:

33.      Mr Azima's claim for damages in respect of tortious interference with business and business expectancy is subject to the decision of the Supreme Court on his proposed appeal.      In addition, Mr Azima claims punitive damages because the defendants engaged in wilful misconduct or the defendants' conduct that proximately caused damages to Mr Azima was the result of actual malice, wanton conduct or oppressive conduct.  Mr Azima in addition claims the other remedies set out in the ACC.

34.      See 33.

**Under Paragraph 165(c)**

Of: "*The plaintiff (ie, Mr Azima) was thereby damaged.*"

**Request 35:**

35.     Particularise the "*damage[]*" in respect of which Mr Azima claims he is entitled to recover damages under the US law tort of conspiracy.

**Response to request 35**:

35.     The types of damage incurred by Mr Azima are set out in the ACC (and as further explained herein).  Without limitation to that point (or to the other remedies claimed in the ACC), such damage includes:

    a.     Damage to and loss of Mr Azima's devices.

    b.     Obtaining additional IT security and related software.

    c.     The substantial intrusion on Mr Azima's privacy.

    d.     Damage to his business interests, including loss in the value of trade secrets, and loss of goodwill (in respect of which it is confirmed that Mr Azima's claim is subject to the decision of the Supreme Court on his proposed appeal).

    e.     Distress and emotional harm.

    f.     Punitive damages.

**Under Paragraph 167(a)**

Of: *"…Cost of professional services required (from ZP Consultants) to investigate and mitigate the hacking, $60,000"*

**Request 36:**

36.     Provide full particulars of the "*professional services*" provided by ZP Consultants, including:

a.  The nature and date(s) of the investigation undertaken by ZP Consultants and the specific matters which were investigated;

b.  The nature and date(s) of the mitigation services provided by ZP Consultants; and

c.  The specific sums paid by Mr Azima in respect of each of those services.

**Response to request 36**:

36. As set out in the draft Re-Amended Counterclaim served on 30 September 2021, this point is not pursued.


**TIM LORD QC**

**THOMAS PLEWMAN QC**

**HUGO LEITH**

**SOPHIE BIRD**

15 October 2021


Statement of truth

I believe that the facts stated in this Amended Counterclaim and Claim against Additional Defendants are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed: _____

Date: OCT / 5,        2021

Name:        Farhad Azima

21

**Table 1: "New links" – Requests at paragraphs 16 and 18**

| | URL | Date of upload |
|---|---|---|
| a | https://we.tl/G2v9igEB4i | 27 January 2017 |
| b | https://wetransfer.com/downloads/e5cc80815dd9b6720eb3ee131a0 e3bc120170127172710/3b327c | 27 January 2017 |
| c | https://we.tl/t-g30Dv8TdFd | 3 June 2019 |
| d | https://we.tl/t-1tWa9n5ATn | 3 June 2019 |
| e | https://we.tl/t-Q2CGvGQnqm | 3 June 2019 |
| f | https://we.tl/t-BAJn5WyovV | 3 June 2019 |
| g | https://we.tl/t-NEINm1THIL | 3 June 2019 |
| h | https://we.tl/t-akjlMuZjMI | 3 June 2019 |
| i | https://we.tl/t-lK6tzwzRM0 | 3 June 2019 |
| j | https://we.tl/t-4GDkgGBOkL | 3 June 2019 |
| k | https://we.tl/t-iXVS6vaLOA | 3 June 2019 |
| l | https://we.tl/t-8S7dD5ontB | 3 June 2019 |
| m | https://we.tl/t-fTpOIyblmZ | 3 June 2019 |

Case 1:20-cv-00954-WO-JLW   Document 69-1   Filed 12/23/21   Page 23 of 25

**Table 2 – trade secrets – Requests at paragraphs 19 and 20**

**Shollar Bottling Company**

| | Description of documents | Sender / Recipient | Date |
|---|---|---|---|
| 1 | Monthly sales reports for Shollar Bottling company containing information on: quantity sold, amount of each quantity sold, % of sales, price, COGS, gross margin | Sabina Asadova / Farhad Azima, Ray Adams, P Mamed, Pirouz, G dinkaya, Rahima Asgarova | May – July 2011 |
| 2 | Daily sales reports for Shollar Bottling Company containing information on: quantity sold, amount of each quantity sold, % of sales, price, COGS, gross margin | Sabina Asadova / Farhad Azima, Ray Adams, P Mamed, Pirouz, G dinkaya, Rahima Asgarova | May – July 2011 |
| 3 | List of accounts payable (shows information as to suppliers and vendors) | Ray Adams / GM of Heavylift, Farhad Azima | October 2011 |
| 4 | List of accounts payable (shows information as to suppliers and vendors) | David Mortaz / Farhad Azima, Ray Adams | March 2012 |
| 5 | Shollar financial reports and statements including data on: costs, sales data, income statement items, balance sheet items | Ray Adams / David Mortaz, Farhad Azima, Pirouz Khanlou | March 2012 |
| 6 | Shollar 7-year financial forecast including information and projections on: income statement items (e.g. revenue), balance sheet items, cash flow, capital expenditure, debt | Ray Adams / Gunesh Inkaya, Farhad Azima | December 2010 |
| 7 | Shollar internal income statement including information on: official income, affiliated income, actual income, and budgeted income by product | Aga Hussein Rasulov / Farhad Azima | September – October 2010 |
| 8 | Estimated sales budget for Shollar including revenue and cost projections | Gunesh Inkaya / Farhad Azima | September 2010 |
| 9 | Shollar Due Diligence Report | Afsaneh Azadeh / Farhad Azima | December 2010 |

**Grand Hotel Europe**

| | Description of documents | Sender / Recipient | Date |
|---|---|---|---|
| 10 | Business case for hotel purchase including assumptions on key metrics, costs and value on exit | Ray Adams / Hermann Zochmeister, Farhad Azima, Marc Lube, Friedrich Lind, Gunesh Inkaya | May 2007 |
| 11 | Hotel head office reports, including data on: revenue by income stream, total cash income, expenses, debts, average occupancy, room rates, accounts payable and receivable (including customers and suppliers) | Zinet Semedova / Farhad Azima, Ray Adams | July 2005, September 2005, March 2006, May 2007, December 2007, February 2008, May 2008, |

| | | | July 2008, August 2008, August 2009 |
|---|---|---|---|
| 12 | Diplomat JV income statement, including data on: income, cost of sales, sales and marketing costs, general and administrative expenses, operating statistics, balance sheet and cash flow items | Ray Adams / Kevin Roth, Farhad Azima | December 2006 |
| 13 | Estimated budget for hotel for 2006, including projections on: key operating metrics e.g. breakdown of income and costs | Gunesh Inkaya / Farhad Azima | January 2006 |
| 14 | Estimated budget for hotel in 2007, including projections on: key operating metrics e.g. breakdown of income and costs; and comparison to 2006 budget and revenue | Gunesh Inkaya / Farhad Azima | January 2007 |

**Brownies**

| | Description of documents | Sender / Recipient | Date |
|---|---|---|---|
| 15 | Brownies global logistics pricing guide | Ray Adams / Philip Chen | June 2015 |

**ALG**

| | Description of documents | Sender / Recipient | Date |
|---|---|---|---|
| 17 | Target list of aircrafts and clients in the region | Anya Puzankova / Allan Baird, Farhad Azima | February 2014 |

**Other business activities**

| | Description of documents | Sender / Recipient | Date |
|---|---|---|---|
| 16 | Confidential price list for registered truck fleet being used to transport food for US troops in Afghanistan; confidential list of refrigerated truck fleet used to transport food for US troops in Afghanistan | Fadi / Mohib Naseri, Chris Turner, Farhad Azima | December 2012, January 2013 |
| 18 | Accounts payable for restaurant business | Kiran Vasant / Farhad Azima, Ray Adams | September 2004 |
| 19 | Smokehouse BBQ daily statistics report, including information on key metrics | Ray Adams / Farhad Azima, Darioush Ghasemi | December 2012 |