UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-cv-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>    Defendants. | **BRIEF OF PLAINTIFF FARHAD AZIMA IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS** |

## INTRODUCTION

Plaintiff Farhad Azima brought this case in October 2020, alleging, among other things, that Defendants procured and directed hackers in India to successfully hack Plaintiff's personal accounts, causing him substantial damage. Plaintiff's Complaint contains detailed allegations as to the identity of the hackers, whom Defendants had paid over $1 million, and made several different allegations about the damage, which included stolen trade secrets with a value in excess of $75,000. Plaintiff also alleged concrete fears about spoliation of evidence and delay by Defendants, seeking to begin fact development at the earliest opportunity. Defendants filed a comprehensive motion in December 2020 to dismiss all of Plaintiff's claims and have consistently sought to prevent discovery at every turn. On December 10, 2021, the Court denied the motion to dismiss regarding two claims: misappropriation of trade secrets and a related civil conspiracy claim.

1

2705516.4

With discovery imminent after more than a year, and while Plaintiff's motion for a pre-trial conference was and is pending (*see* ECF No. 66), Defendants filed a second motion to dismiss, this time raising challenges as to the amount in controversy and Plaintiff's standing based upon ownership of the trade secrets. To make these arguments, however, Defendants ignore allegations in the Complaint that refute their arguments, as well as controlling Supreme Court and Fourth Circuit caselaw.

The Complaint alleges that Plaintiff suffered more than $75,000 in damage in connection with the publication of his trade secrets after 2018, which the Supreme Court has repeatedly said is sufficient at the pleading stage. The Complaint also alleges that the relevant trade secrets belong to Plaintiff, as well as his companies.

Defendants' arguments are also untimely, as they could have been raised at any point during the nearly fifteen months this case has been pending. Successive, piecemeal motions to dismiss are strongly disfavored because of their potential to create unnecessary delay, especially where, as here, the successive arguments were available to Defendants at the time of their initial filing. *See* Fed. R. Civ. P. 12(g)(2) (a party generally may not file serial Rule 12 motions "raising a defense or objection that was available to the party but omitted from its earlier motion.").[1] Defendants' only subject matter jurisdiction argument

---

[1] *See, e.g., Vinson v. Koch Foods of Ala., LLC,* No. 2:12-CV-1088-MEF, 2014 WL 2589697, at *3-4 (M.D. Ala. Jun. 10, 2014) (refusing to consider new arguments in successive motion to dismiss); *Limbright v. Hofmeister,* No. 5:09-cv-107-KSF, 2010 WL 1740905, at *1-3 (E.D. Ky. Apr. 27, 2010) (same). "Simply stated, the objective of Rule 12(g) is to eliminate unnecessary delay at the pleading stage." *Smith v. Bank of the Carolinas*, No. 1:11CV1139, 2012 WL 4848993, at *7 n.9 (M.D.N.C. Oct. 11, 2012), *report and recommendation adopted*, No. 1:11CV1139, 2013 WL 2156008 (M.D.N.C.

2705516.4

is squarely foreclosed by Supreme Court precedent and the pertinent language of the Complaint, both of which Defendants fail to address in their filing. The Court should see this motion for what it is: another delay tactic to avoid discovery for additional weeks or months. This Court should reject Defendants' serial dismissal motion and direct the commencement of discovery forthwith after granting Plaintiff's pending motion to set a pre-trial conference as requested. *See* ECF No. 66.[2]

## ARGUMENT

**I.   The Court Has Original Jurisdiction Over This Matter Under 28 U.S.C. § 1332.**

In his Complaint, Plaintiff alleged two grounds for subject matter jurisdiction over this case: Federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332 "because Azima and Defendants are from different states and the amount in controversy exceeds $75,000, exclusive of interest and costs." ECF No. 1 ¶ 39. In their first motion to dismiss, Defendants did not challenge either basis for subject matter jurisdiction. Now that the Court has denied in part Defendants' first motion to dismiss, Defendants seek a second bite at the apple and belatedly argue for the first time that diversity jurisdiction does not exist because the Complaint does not establish the amount

---

May 17, 2013) (considering the motion in part because there was no indication that it was intended to delay the proceedings).

[2] While Plaintiff Azima respectively disagrees with the Court's dismissal order and reserves the right to challenge it at the appropriate time if necessary, he accepts it as the law of the case for the purpose of this filing and urges the Court to re-affirm that portion of that order that allowed the remaining claims to move forward.

in controversy.  Defendants' arguments ignore both the express allegations in the Complaint and controlling Supreme Court case law.

The governing law regarding the amount in controversy has been clear for nearly a century:

> When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith. *See*, *e.g.*, *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274, 276 (1977) ("'[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.'") (quoting *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.*, 303 U. S. 283, 288 (1938)).

*Dart Cherokee v. Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014).

Defendants' second motion to dismiss cites *Dart Cherokee* but ignores the Supreme Court's description of the proper standard in precisely the context presented here: where a court is asked to parse Plaintiff's amount-in-controversy allegations.  This omission speaks volumes, as Defendants do not dispute that Plaintiff's amount in controversy allegation was made in good faith.  Under the controlling law, this should be the end of the inquiry.  Instead, Defendants try to create a new legal standard, arguing that, now that the Court has dismissed some other claims, the amount in controversy allegations are "too conclusory" and do not specifically allege that $75,000 is in controversy as to the remaining claims.  Such an inquiry is foreclosed by the line of cases discussed above.

In addition to ignoring Supreme Court precedent, Defendants ignore the express allegations in the Complaint regarding the amount in controversy.  The Complaint alleges that "Azima's trade secrets are substantially valuable to Plaintiff, in excess of $75,000 as will be proven at trial."  ECF No. 1 ¶ 105; *see also id*. ¶ 65 (trade secrets stolen by

4

2705516.4

Case 1:20-cv-00954-WO-JLW   Document 71   Filed 01/07/22   Page 4 of 17

Defendants were "substantially valuable to Azima, in excess of $75,000, as will be proven at trial."). The Complaint alleges that the 2016 BitTorrent sites that first disclosed Plaintiff's stolen trade secrets were not publicly available, *id*. ¶ 23, and that the 2018 WeTransfer posting has continued to be publicly available, *id*. ¶ 24, 53. Thus, the Complaint adequately alleges that Plaintiff suffered over $75,000 in damages as a result of the public disclosure of trade secrets in 2018 and 2019 through postings on WeTransfer. *Id*. ¶ 23-26, 39, 49, 65, 93, 98, 105. *See also id*. ¶ 53 ("Since at least June 2018, the stolen data has continued to be publicly available on WeTransfer through links that were posted to the blog sites created by CyberRoot, resulting in more than $75,000 of statutory damages . . . as well further monetary damages in an amount to be proven at trial.").

Defendants also ignore the allegations in the Complaint that Defendants were unjustly enriched by their misconduct (including the misappropriation of Plaintiff's trade secrets). The allegations that Defendants paid "more than $1 million for the hacking of Azima and dissemination of his stolen data," *see* ECF No. 1 ¶ 5, further support the claim that Plaintiff's damages exceed $75,000. The Complaint alleges that the Defendants were paid "substantial sums," *id*. ¶ 114, and were paid "more than $1 million" by Dechert LLP, *id*. ¶ 28, and that Defendants paid CyberRoot more than $1 million, *id*. ¶ 115. The Complaint also alleges that Defendants made "significant payments to CyberRoot" during the 2018 period. *Id*. ¶¶ 98-99. Taking all inferences in favor of the Plaintiff, it defies logic for Defendants who have spent over $1 million to obtain Plaintiff's confidential information to claim that they were not unjustly enriched by at least $75,000, even if the harm is limited to the 2018 and 2019 allegations. In addition, the allegations that

Defendants paid more than $1 million to obtain Mr. Azima's stolen data creates a clear inference that the trade secrets stolen were worth significantly more than $75,000.

The collective references in the Complaint to the general jurisdictional allegation of damages over $75,000, Defendants' post-2018 trade secret misappropriation and related conduct resulting in excess of $75,000 damages, and Defendants having been unjustly enriched by at least $75,000 mean that Defendants' jurisdictional argument about the amount in controversy has no basis in fact, and should be seen simply as an additional delay tactic designed to avoid answering the Complaint and beginning discovery. In light of Supreme Court precedent, the four corners of the Complaint are more than sufficient to support jurisdiction. The Court should summarily deny the motion to dismiss on those grounds.

## II.     Plaintiff Has Article III Standing to Bring This Case.

Defendants also challenge Plaintiff's standing to bring a trade secrets lawsuit, arguing for their first time in their second motion to dismiss that their theft of Plaintiff's trade secrets from his computer does not constitute a cognizable injury to Plaintiff. Defendants again ignore the relevant law and the allegations in Plaintiff's Complaint in making this argument that they failed to make in their December 2020 motion to dismiss.

When he was on the D.C. Circuit, Justice Kavanaugh described the Supreme Court precedent about how injury-in-fact affects standing:

> A dollar of economic harm is still an injury-in-fact for standing purposes. *See Czyzewski v. Jevic Holding Corp.*, ___ U.S. ___, 137 S.Ct. 973, 983, 197 L.Ed.2d 398 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) ("The consumers' alleged economic harm

— even if only a few pennies each — is a concrete, non-speculative injury.").

*Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017).

As described above, Plaintiff repeatedly and expressly alleges in his Complaint that he suffered injury to himself from the trade secrets violations, specifically alleging that post-June 2018 disclosures caused him at least $75,000 in damages. *See* ECF No. 1 ¶¶ 53, 65 & 105. Throughout the Complaint, Plaintiff makes numerous allegations that the trade secrets were his own, expressly characterizing these secrets as "belonging to Azima and his companies." *Id*. ¶ 18; *see also id*. ¶¶ 65-68, 102-16 (referring to "Azima's trade secrets" and alleging these trade secrets are "substantially valuable to Azima" and worth in excess of $75,000). Given that these allegations are plainly sufficient to survive a motion to dismiss, Plaintiff has standing to sue based on the face of the Complaint.

Defendants appear to admit these allegations are sufficient to create standing. ECF No. 68 at 14. Nonetheless, they once again ask the Court to look outside the Complaint at the pleadings stage, and now argue that Plaintiff's trade secrets allegations are supposedly undercut by a single document filed in the English proceedings nearly three months ago, in October 2021. *Id*. at 14-15. According to Defendants, this English filing is somehow a concession that Plaintiff does not "own" the stolen trade secrets and has no standing to claim injury from their theft.

Defendants once again make arguments to this Court based on a mischaracterization of the facts. The English proceedings that are pending have one Plaintiff (Farhad Azima) who expressly claims in the English proceeding exactly the same thing he alleges here: that he has the requisite ownership interest in the trade secrets at issue and has been injured by
7

their theft. Decl. Holden ¶ 4. The English proceedings involve federal and Missouri law, not North Carolina law, and the case will not be fully adjudicated for some time. *Id.* ¶ 2.

The foreign document Defendants ask this court to analyze and consider is a response to a series of inquiries from the co-conspirators being sued in England by Plaintiff. Plaintiff's response lists some of the trade secrets that Defendants stole from Plaintiff. Defendants inaccurately describe the documents as listing "all of the putative trade secrets that were allegedly hacked," (ECF No. 68 at 15), even though the document notes that "it has not been possible to review the entirety of the hacked materials for these purposes at this stage," before discovery has commenced, and reserves the right to provide additional information about trade secrets that may be identified later. ECF No. 69-1 at 14.

This is yet another example of Defendants' efforts to mischaracterize documents to the Court. Read in its entirety, that document makes clear that Plaintiff alleges and believes that the stolen trade secrets belong to him. Because the co-conspirators also raised a question about the use of the trade secrets in interstate commerce, Plaintiff grouped the trade secrets by the business venture he was conducting in connection to the trade secrets. Decl. Holden ¶¶ 6-7. But the document does not say that the business ventures listed are the sole owners of the trade secrets; rather, the document simply describes the trade secrets that Plaintiff is alleging were misappropriated and groups those trade secrets by the relevant business venture. *Id.*[3]

---

[3] The document the Defendants cite was served in October 2021, but the first time Defendants raised it was in this successive motion to dismiss, further support that this motion is simply an additional delay tactic designed to prolong the time until Defendants have to give discovery about their misconduct.

2705516.4

The Court should reject the request for judicial notice outright, as it does not present the Court with any new facts relevant to this case, and certainly no facts that are beyond reasonable dispute. *See* Fed. R. Evid. 201(b)(2) (permitting a court to take judicial notice of facts that "can be accurately and readily determined"). The English filing is only a single document in a much larger series of pleadings that are based upon federal and Missouri law, not North Carolina law. Taken together, the pleadings in the English proceeding reveal that—there too—Mr. Azima alleges that he owns the trade secrets and has suffered damage personally.[4] Like these proceedings, the English proceedings have not even started discovery, much less made any findings on factual issues such as ownership of the trade secrets. It would be inappropriate and illogical to resolve the factual dispute in this case before Defendants have even filed an Answer by referring to a single English court document that has not to this point been considered in the English court proceeding. At this stage, the clear language of the Complaint should prevail.

---

[4] If the Court concludes that it is appropriate to take judicial notice of this document, it must then take judicial notice of the entirety of the docket in the English case, *Farhad Azima -v- RAKIA, Stuart Page, Neil Gerrard, Dechert LLP and James Buchanan,* No. HC-2016-002798 (Business and Property Courts of England and Wales). For example, Plaintiff's Re-Amended Counterclaim in the English proceeding, like the Complaint in this case, refers to "Azima's trade secrets" and alleges that the cyberattack against him was made "knowing that Azima's email accounts contained trade secrets and intending to steal them in order to harm Azima." *See* Decl. Holden at Ex. A ¶¶ 148-49; *see also id*. ¶ 150 ("As a result of the conspiracy and hacking Mr Azima has suffered damage, which includes, but is not limited to, loss of business goodwill, loss in the value of his trade secrets and confidential business information, and harm to Mr Azima's business."). In his reply in the English proceeding, Plaintiff makes clear that he is an owner of the trade secrets. *See* Decl. Holden at Ex. B ¶ 41; Decl. Holden ¶ 8. Though the reply notes that Plaintiff is owner of certain companies that may own trade secrets, he does not suggest that he does not have an ownership interest individually as well. *Id*.; Decl. Holden at Ex. B.

On a more fundamental level, Defendants misconstrue what it means to "own" trade secrets for the purposes of a legal claim. Established law demonstrates that, even under Defendants' unsupported theory, Mr. Azima has a legitimate claim of ownership of the trade secrets. It is the *secrecy* that provides the value, and Plaintiff was undoubtedly privy to and a beneficiary of the secrecy that was destroyed by Defendants' unlawful actions. As the Fourth Circuit made clear more than twenty years ago:

> While the information forming the basis of a trade secret can be transferred, as with personal property, its continuing secrecy provides the value, and any general disclosure destroys the value. As a consequence, one "owns" a trade secret when one knows of it, as long as it remains a secret. *See id.* § 11-1201(c). Thus, one who possesses non-disclosed knowledge may demand remedies as provided by the Act against those who "misappropriate" the knowledge. A misappropriation occurs when one *acquires* the secret information "by improper means" or *discloses* the secret information acquired by "improper means." Thus, the concept of a "fee simple" interest in a trade secret, or any proprietary interest, is not entirely useful in defining the elements of a misappropriation claim.

*DTM Research LLC v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001); *see also Advanced Fluid Systems v. Huber*, 958 F.3d 168, 177-78 (3d Cir. 2020) (expressly agreeing with *DTM Research* and explaining that "a *per se* ownership requirement for misappropriation claims is flawed since it takes account neither of the substantial interest that lawful possessors of the secrets have in the value of that secrecy, nor of the statutory language that creates the protection for trade secrets while saying nothing of ownership as an element of a claim for misappropriation").

Although the Fourth Circuit's decision in *DTM Research* arose in the context of the Maryland trade secrets statute, it construes the same term ("ownership" for the purposes of

2705516.4

a trade secret case) that is at issue here, and it holds that anyone who possesses undisclosed knowledge "may demand remedies" because "one owns a trade secret when one knows of it, as long as remains a secret." *See Advanced Fluid Systems*, 958 F.3d at 177-78 (in construing different trade secrets statute, relying on Fourth Circuit's "cogent explanation of why lawful possession of a trade secret can, under circumstances like this, be sufficient to maintain a misappropriation claim, even absent ownership"). The concept of fee simple ownership being difficult to apply and "not entirely useful" in this context is especially true when attempting to apply it to the hacked emails of a person who has alleged ownership of the secrets themselves.

Plaintiff's allegations here easily meet the Fourth Circuit's standard, which is presumably why Defendants omit this caselaw entirely from their filing. In both this case and in the English proceeding, Plaintiff has alleged that he had an ownership and possessory interest in this confidential information and that the secrets were known only to him and others within the sphere of confidentiality – until Defendants misappropriated these trade secrets through improper means and placed them onto the internet. ECF No. 1 ¶¶ 65-74, 101-18. The fact that the Complaint alleged that Plaintiff and his companies owned the secrets, *id*. ¶ 18, also should have been sufficient to put Defendants on notice when the Complaint was filed in October 2020 that, if they wanted to challenge the ownership concept, the time to raise that issue was in the initial motion to dismiss. That they ignored that allegation until after their motion to dismiss was denied and as discovery was imminent demonstrates that the motion is frivolous and merely an attempt at further delay.

Instead of grappling with the relevant trade secrets caselaw or the specific allegations of ownership in the Complaint, Defendants curiously ground their standing argument in *Wittman v. Personhuballah*, 578 U.S. 539 (2016), which involved an attempt by two sitting Congressmen to intervene at the Supreme Court after the Virginia Legislature declined to challenge a district court order invalidating the redistricting. The lack of relevance is obvious from the facts of the case.

The attempted intervention by the plaintiff Congressmen involved a speculative (and as the Supreme Court described it "nonobvious") standing theory under which the Congressmen alleged that withdrawal of the challenge had injured them by causing Democratic voters to move into their districts. *Id*. at 542. The Supreme Court concluded that their speculative allegations as to "nonobvious harm" did not establish an Article III injury. *Id*. at 545-46. *Wittman* does not purport to establish a general rule requiring the filing of affidavits at the pleadings stage any time a Defendant raises a challenge to standing. And *Wittman*'s exceptional rule is a far cry from this case, where Plaintiff alleges just the sort of "obvious" injury—he possessed confidential trade secrets that Defendants stole and revealed to the public—that more than suffices to allow a case to move beyond the pleadings stage. Defendants' belated standing argument lacks merit and the Court should reject it.

### III. There Is No Need For The Court To Address Supplemental Jurisdiction But The Equities Tilt Strongly In Favor Of Exercising Supplemental Jurisdiction

As Defendants concede, their argument that the Court should not exercise supplemental jurisdiction is contingent on the Court's agreement with their challenge to

original diversity jurisdiction. Plaintiff submits that this Court should not reach the issue, as Defendants' challenge to diversity jurisdiction lacks merit for the reasons mentioned above.

If the Court were to consider this issue, however, Plaintiff respectively submits that this Court should exercise its discretion in favor of hearing the matter under its supplemental jurisdiction authority. The equities here tilt strongly in favor of Plaintiff. As Defendants concede, this Complaint arises out of the same facts as the federal claims and involves serious and egregious wrongdoing on the part of Defendants. Moreover, this case has been pending for well over a year, and Plaintiff would be severely prejudiced if the Court were to dismiss his claims at this late stage after Defendants failed to raise this challenge until almost a year after the case was filed. The equities also favor Plaintiff where the end result of dismissal would be that Defendants were able to conceal their involvement in the torts committed against Plaintiff for a period of years such that it was considered to be too late for Plaintiff's claims to be brought to court. Even assuming arguendo that the other claims are barred by the statute of limitations, Defendants should not be allowed to benefit further by using that ruling to obtain the dismissal of other actionable claims arising out of the same facts.[5]

---

[5] Although Plaintiff believes there is no proper ground for dismissal of this case, to the extent that the Court concludes that dismissal is appropriate, it should provide Plaintiff with leave to amend his complaint to cure any deficiencies identified by the Court.

2705516.4

## CONCLUSION

For the foregoing reasons, Plaintiff Azima respectfully requests that the Court deny the Defendants' second motion to dismiss and direct the immediate commencement of discovery in this matter as requested. *See* ECF No. 66.

This, the 7th day of January 2022.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina Bar No. 22275
Christopher W. Jones
North Carolina Bar No. 27625
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email: ripley.rand@wbd-us.com
chris.jones@wbd-us.com

**MILLER & CHEVALIER CHARTERED**

*/s/ Kirby D. Behre*
Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Brian A. Hill (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com

*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

I certify under LR 7.3(d)(1) that the body of this brief, headings, and footnotes together contain 6,250 words or fewer, as reported by the word count feature in Microsoft Word.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Ripley Rand*
Ripley Rand
North Carolina Bar No. 22275
Christopher W. Jones
North Carolina Bar No. 27625
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email: chris.jones@wbd-us.com
ripley.rand@wbd-us.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CASE NO. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **CERTIFICATE OF SERVICE** |

    I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

    Kieran J. Shanahan, Esq.
    Brandon S. Neuman, Esq.
    Jeffrey M. Kelly, Esq.
    Nathaniel J. Pencook, Esq.
    GlenLake One
    4140 Parklake Avenue - Suite 200
    Raleigh, NC 27612
    kieran.shanahan@nelsonmullins.com
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    Telephone: 919.329.3800
    Facsimile: 919.329.3799

2705516.4

This, the 7th day of January, 2022.

**WOMBLE BOND DICKINSON (US) LLP**

<u>/s/ *Ripley Rand*</u>
Ripley Rand
North Carolina State Bar No. 22275
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone:     (919) 755-8125
Facsimile:     (919) 755-6752
Email:             Ripley.Rand@wbd-us.com

*Counsel for Plaintiff*