UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-CV-954-WO-JLW

FARHAD AZIMA,                          )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )
                                       )
NICHOLAS DEL ROSSO and VITAL           )
MANAGEMENT SERVICES, INC.,             )
                                       )
        Defendants.                    )


**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO RECONSIDER
THE PARTIAL DENIAL OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ............................................... 1

BACKGROUND ................................................. 2

    A.    The Remaining Allegations ........................ 2

    B.    The Dismissal Order .............................. 3

QUESTION PRESENTED ......................................... 5

LEGAL STANDARD ............................................. 5

ARGUMENT ................................................... 6

I.    The Court's Narrowing of the Case to the 2018-2019
    Allegations Eliminates Any Primary TSPA Violation ..... 6

CONCLUSION ................................................ 11

**INTRODUCTION**

This Court's thorough and thoughtful dismissal order narrowed this case to the allegation that in 2018 and 2019, someone posted internet links to public copies of Plaintiff Farhad Azima's hacked emails that were previously published in 2016. The Court concluded that the allegations give rise to an inference that Defendants commissioned this posting. This motion to reconsider re-raises a narrow point of law that was raised in the motion to dismiss, but which takes on case-dispositive importance because of the dismissal of the 2016 conduct.

The one remaining substantive claim in this case is brought under the North Carolina trade secrets statute, and that statute only creates a cause of action against a party that itself engages in an act of misappropriation. It does not create "secondary" liability for a party accused of aiding or abetting, but not of actually committing, the act of misappropriation.

When the 2016 conduct was still in this case, Judge Webster concluded that the distinction between primary and secondary conduct did not matter because Azima had (however thinly) alleged that Defendants had themselves received, and

so themselves misappropriated, the hacked materials.  But this Court's order of dismissal cut away the 2016 conduct.  All that remains is the 2018-2019 re-posting of public internet links.  Defendants are not accused, however, of themselves posting those links, nor are they alleged to have used those links to download the hacked materials for themselves.  The removal of the 2016 conduct from the case thus removed any allegations of primary conduct from the action.  Defendants respectfully ask the Court to reconsider this argument in light of the dismissal of the 2016 conduct from the action and to dismiss the remaining claims.

## BACKGROUND

### A.  The Remaining Allegations

Azima filed this action in October 2020 claiming principally that personal documents of his were hacked from his email account in 2016 and posted to the internet.  Dkt. 1 ("Compl.").  This Court dismissed Azima's claims to the extent based on that alleged 2016 conduct.  Dkt. 65 ("Order").

Azima also rested a part of his complaint on the alleged posting, in 2018 and 2019, of links on the internet to copies of his hacked data.  He asserted that in May and June 2018, and again in June 2019, the blog sites first created in 2016

were "modified to include new links to WeTransfer sites that contained copies of Azima's stolen data." Compl. at ¶¶ 24, 26, 49, 53, 93, 98.

Azima does not allege that Defendants themselves modified the links in 2018 and 2019 and states only that these links "were modified" or "updated." *See, e.g., id.* at ¶¶ 24, 26, 98; *see also id.* at ¶ 49. He alleges that the sites on which these links appeared had been "created by CyberRoot." *Id.* at ¶ 53. Defendants' alleged involvement in this conduct is that they "oversaw" and "directed" CyberRoot's activities, but also alleges that "CyberRoot worked with BellTrox," too. *Id.* at ¶¶ 1, 6, 49, 133.

### B. The Dismissal Order

Defendants moved to dismiss the complaint as time-barred and for failure to otherwise state a claim. Dkt. 31-33. As relevant here, Defendants argued that Azima's claims under the federal Defend Trade Secrets Act ("DTSA") and the North Carolina Trade Secrets Protection Act ("TSPA") failed because, among other reasons, there is no secondary liability under either statute. Azima had alleged that Defendants

"overs[aw]" or "direct[ed]" CyberRoot's activity but, Defendants argued, had not alleged that Defendants committed any such violations themselves.  Dkt. 32 at 20, 24.

The Court referred Defendants' motion to Magistrate Judge Webster.  Judge Webster's Recommendation recommended against dismissing the trade secrets claims because the face of the complaint did not show that the 2016 conduct was time barred.  Dkt. 54 ("Recommendation" or "O&R") at 8-9.  The Recommendation then analyzed the "secondary liability" argument and concluded that, because Azima had alleged that Defendants received some of the data from the original hacking (which took place in 2016), Azima had stated a claim that Defendants had themselves acquired the putative trade secrets.  *Id.* at 22-23.[1]

This Court largely adopted the Recommendation, but concluded that several additional claims warranted dismissal on limitations grounds.  As relevant here, the Court dismissed the North Carolina TSPA claim to the extent it relied on 2016

---

[1] The Recommendation's analysis of this issue appeared in its discussion of the federal DTSA cause of action, and was not repeated in discussing the state-law claim.

conduct. Order at 23. The Court then concluded that Plaintiff had successfully alleged that Defendants were responsible for directing the 2018 and 2019 reposting. *Id.* at 17-18. Because the TSPA claim survived in narrowed form, the Court also allowed Azima's "dependent" civil conspiracy claim to proceed, in similarly narrowed form. *Id.* at 23-24.

Defendants now move for reconsideration as to the remaining claims. For the reasons set forth below, the Court should dismiss the case in full.

## QUESTION PRESENTED

The TSPA allows a claim for primary liability against a person who personally misappropriates a trade secret, but not against aiders-and-abettors or others who are secondarily involved. This Court originally concluded that this distinction did not matter, because Defendants were accused of personally receiving trade secrets when CyberRoot allegedly acquired them in 2016. Now the Court has narrowed the case to 2018-2019, and the complaint does not allege that Defendants themselves engaged in trade-secret misappropriation in that period. Thus, should the remaining claims be dismissed because Azima does not allege primary trade-secret liability during the relevant period?

## LEGAL STANDARD

Courts have "broad[] flexibility" to revise interlocutory orders, *Carlson v. Boston Scientific Corp.*, 856 F.3d 320, 325 (4th Cir. 2017), and may "reconsider and modify" an order "at any time prior to final judgment." *See U.S. Tobacco Coop. Inc. v. Big South Wholesale of Va.*, LLC, 899 F.3d 236,

256 (4th Cir. 2018). Reconsideration may be granted, *inter alia*, to address an intervening change of law. *E.g.*, *Gunter v. Southern Health Partners Inc.*, 2021 WL 2377130, at *2 (M.D.N.C. June 10, 2021).[2]

**ARGUMENT**

## I. The Court's Narrowing of the Case to the 2018-2019 Allegations Eliminates Any Primary TSPA Violation

The North Carolina TSPA creates a cause of action against primary actors, but not against aiders and abettors. This is plain from the statutory text, and is supported by state-court precedent; by other state courts' constructions of other states' counterpart statutes; and by the consensus interpretation of the analogous federal statute, which Judge Webster adopted in his Recommendation.

The text of the TSPA creates a cause of action against a person who has "misappropriated" a plaintiff's trade secret.

---

[2] This motion is brought in light of an intervening change in the law of the case, akin to a change in the governing law. Judge Webster originally analyzed the primary/secondary distinction when the 2016 conduct was in the case. O&R at 22-23. This Court later dismissed as to the 2016 conduct. Reconsideration of the Recommendation's primary/secondary analysis is warranted in light of the dismissal order's change in the law of the case.

"Misappropriation" is defined as including "acquisition, disclosure, or use." N.C. Gen. Stat. § 66-152(1) (defining "misappropriation"); *see also id.* § 66-153. This language allows a suit against an individual who has directly misappropriated the trade secret. Nothing in the text of the statute allows a suit against any secondary actors, such as co-conspirators, procurers, or aiders and abettors.

The one North Carolina decision to address this question of which Defendants are aware is *Salon Blu, Inc. v. Salon Lofts Grp., LLC*, 2018 WL 3467901 (N.C. Super. Ct. July 16, 2018), and that case adopted this interpretation. *Id.* at *6. In *Salon Blu*, the North Carolina Business Court dismissed a plaintiff's TSPA claim against defendants who were alleged to have merely "encouraged and induced" third parties to steal trade secrets, holding that there is no "aiding and abetting" liability for trade secrets violations under the statute. *Id.*

Other state courts have similarly construed state trade-secret laws with analogous language. *See, e.g.*, *Control Module, Inc. v. Data Mgmt., Inc.*, 2007 WL 4333814, at *4 (D. Conn. Dec. 10, 2007) (Connecticut law "does not include within its definition of 'misappropriation' inducing, encouraging,

aiding, or abetting another to misappropriate a trade secret"); *Central Tr. & Inv. Co. v. SignalPoint Asset Mgmt., LLC*, 422 S.W.3d 312, 323 n.11 (Mo. 2014) (Missouri law "expressly requires acquisition, disclosure, or use," offering "no indication that 'aiding and abetting' someone else's misappropriation is enough to trigger liability").

Similarly, the federal DTSA, 18 U.S.C. § 1831 *et seq.*, uses the same words as the TSPA, and has been consistently construed in this same way. The DTSA provides a private right of action for the "acquisition" or "disclosure or use" of a trade secret. 18 U.S.C. §§ 1836, 1839(5) (defining "misappropriation"). In *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842-43 (E.D. Va. 2017), the leading decision on this question, the court construed the statute and dismissed the claims against defendants alleged to have paid third parties to steal trade secrets, holding that there is no DTSA cause of action against co-conspirators.

Judge Webster reviewed *JELD-WEN* and surveyed a raft of cases coming to the same conclusion, and observed that "the weight of authority tips against the viability of conspiracy claims based on misappropriation of trade secrets under the DTSA." O&R at 22-23 (citing cases). In a portion of the

Recommendation to which Azima did not object, Judge Webster stated that, "to the extent that Plaintiff's DTSA claim is based on the actions of co-conspirators (*see* Compl. ¶¶ 70-73), the undersigned recommends that this theory of liability not be permitted going forward."[3]  O&R at 23.

In allowing the TSPA claim to proceed, this Court reviewed the allegations in order to assess whether Azima had sufficiently alleged a link between Defendants and CyberRoot. It did not analyze, however, whether Azima alleged a direct (primary) act of misappropriation by Defendants in 2018 or 2019.  The Court instead identified the allegations that could be read to support an inference that it was CyberRoot that modified the links in that period, and that CyberRoot did so at Defendants' direction.  *See* Order at 18 (citing Compl. ¶¶ 16, 19, 22, 24-26).

---

[3] In their motion to dismiss, Defendants urged dismissal of the TSPA claim on the ground that "there is no 'aiding and abetting' liability for trade secrets violations, so Azima's allegations that Defendants directed others to misappropriate any trade secrets are insufficient."  Dkt. 32 at 24 (citing *Salon Blu, Inc.*, 2018 WL 3467901, at *6).  As noted, Judge Webster did not separately analyze this argument with respect to the TSPA.  Defendants raised this argument in their objection.  Dkt. 57 at 17-18 (citing *Salon Blu, Inc.*, 2018 WL 3467901, at *6).

Defendants seek reconsideration because, accepting those (heavily disputed) inferences as true for purposes of this motion, they are not enough to state a TSPA claim. CyberRoot's alleged re-posting of the information would give rise only to a claim for *secondary* liability, and the TSPA does not allow such a claim. *See Salon Blu, Inc.*, 2018 WL 3467901, at *6. Nowhere does Azima allege that Defendants themselves misappropriated any trade secret in 2018 or 2019.[4]

The case has been narrowed to conduct in 2018-2019. Azima failed to plausibly plead that Defendants engaged in misappropriation in 2018 and 2019. His TSPA claim, therefore

---

[4] The paragraph alleging that "CyberRoot regularly used WeTransfer links to transfer data to Vital," Compl. 25, does not allege or imply that they used that service (or any service) to transmit *Azima's* data to one another. That allegation appears intended only to support an inference that CyberRoot did the reposting because the new links were WeTransfer links. *See* Compl. 24, 26. For context, WeTransfer is a publicly accessible and widely used file-transfer service with functionality like Dropbox or Google Drive; the Court may take notice of the fact that its website reports that it has 87,000,000 active monthly users (*see* WeTransfer, http://about.wetransfer.com (last visited January 9, 2022)) – more than 8 times the population of North Carolina. Even taking as true the allegation that Defendants and CyberRoot used WeTransfer to transfer files, that commonplace fact links CyberRoot to the reposting no more than it links the reposting to any of WeTransfer's tens of millions of other users.

fails. Defendants respectfully request that the Court reconsider its prior conclusion as to the 2018-2019 portion of the TSPA and civil conspiracy claims, and dismiss the case in its entirety.[5]

## CONCLUSION

For these reasons, Azima's remaining counts should be dismissed.

Respectfully submitted this 10th day of January, 2022.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

---

[5] As the Court recognized, "[a] claim for conspiracy . . . cannot succeed without a successful underlying claim." Order at 23 (quoting *Swain v. Elfland*, 145 N.C. App. 383, 387 (2001)). If the Court dismisses TSPA claim, the civil conspiracy claim should be dismissed as well. *See Krawiec v. Manly*, 370 N.C. 602, 614-15 (2018) (dismissing trade-secrets claim and related conspiracy claim).

**WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 2,135 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250 word limitation.

Respectfully submitted this 10th day of January 2022.

          **NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January 2022, I electronically filed the foregoing **Defendants' Memorandum of Law in Support of Their Motion to Reconsider the Partial Denial of their Motion to Dismiss** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson(US) LLP
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601
jonathan.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Calvin Lee
Ian Herbert
Brian Hill
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
bhill@milchev.com
kbehre@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:  */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*