UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-CV-954-WO-JLW

FARHAD AZIMA,

        Plaintiff,

v.

NICHOLAS DEL ROSSO and VITAL
MANAGEMENT SERVICES, INC.,

        Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

**TABLE OF CONTENTS**

INTRODUCTION ..............................................1

ARGUMENT ..................................................3

I. The Complaint Cannot Survive Defendants' Facial Challenge to Subject Matter Jurisdiction..............3

   A. The Court Now Lacks Diversity Jurisdiction. ......3

   B. The Court Should Decline Supplemental Jurisdiction Over the Remaining Claims. .......................6

II. Azima Fails to Demonstrate Article III Standing to Pursue the Remaining Claims..........................7

CONCLUSION ...............................................12

**INTRODUCTION**

Defendants' Rule 12(b)(1) motion demonstrated that the Court lacks subject matter jurisdiction over this substantially-narrowed case for two independent reasons.

First, the Court has now dismissed the claims that provided original jurisdiction over the action. The complaint lacks any allegation that the amount-in-controversy exceeds $75,000 for the remaining claims; rather, it is clear that its boilerplate statements of damages relate to now-dismissed claims.

Second, Azima lacks standing because his only theory of injury, that he owned the allegedly misappropriated trade secrets, was factually untrue. Azima's own filing in his parallel English action shows that the putative trade secrets were owned by businesses, not Azima.

Azima's opposition does not resolve these dispositive issues. As to the amount in controversy, Azima points to the multiple references to $75,000 in his complaint, but all of these are tied to the dismissed 2016 conduct, the dismissed causes of action, or both. His complaint failed to offer any factual basis for concluding either that he was harmed or that Defendants benefited from the 2018-2019 reposting, so he

1

cannot meet the amount-in-controversy requirement of 28 U.S.C. § 1332.

As to standing, the law is crystal clear that Azima bears the burden of showing—with evidence, not with vague allegations—that he suffered a cognizable injury. Far from doing that, he now admits that when he asserted that the trade secrets were "his," he may have meant only that they belonged to companies or that he was merely privy to them (regardless of who owned them). His defense is instead that it does not matter if his allegation of ownership was inaccurate, because one does not have to own a trade secret to sue on it. His problem is that he relies on Maryland law for that proposition, but he is suing under North Carolina law, which is express that it only recognizes a trade-secret interest in the "owner" of the trade secret. That defeats his argument that he may sue as a mere "possessor" of a trade secret, and without evidence of ownership, he has failed to show standing to sue. This action should be dismissed for lack of jurisdiction.

2

**ARGUMENT**

**I. The Complaint Cannot Survive Defendants' Facial Challenge to Subject Matter Jurisdiction.**

**A. The Court Now Lacks Diversity Jurisdiction.**

1. Azima does not dispute that, having dismissed most of his claims, this Court must assess whether it still has jurisdiction over what remains in the case. *See Shanaghan v. Cahill*, 58 F.3d 106, 110-11 (4th Cir. 1995); *see also id.* (dismissed claims cannot count towards the amount in controversy). He also does not dispute that as the "plaintiff," he "must demonstrate the jurisdictional basis and allege the necessary amount in controversy." *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1412 (4th Cir. 1994).

Azima also agrees that *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014), supplies the relevant pleading standard. While he quibbles over which passage of *Dart* is most relevant, (Dkt. 71 ("Opp.") at 4), he does not ultimately dispute that, as *Dart* holds, his assertion of jurisdiction must be supported by a "plausible allegation" that his claim satisfies § 1332's amount-in-controversy threshold. *Dart*, 574 U.S. at 89. Plausibility, as the Court is aware, demands more than "legal conclusions," and instead requires

3

"well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

2. Azima also does not dispute that the North Carolina Trade Secrets Protection Act (TSPA) only allows recovery of "actual damages," meaning either his "economic loss" or the defendant's "unjust enrichment." Dkt. 68 ("Mot.") at 10 (citing N.C. Gen. Stat. § 66-154(b)). As one court has explained, this means he could at most recover "lost profits or the profits garnered by" a defendant. *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 238 (N.C. Ct. App. 2013). And he nowhere contends that he suffered "lost profits," so that basis for measuring damages is not in the case.

Azima instead first insists that he meets the amount-in-controversy requirement because the trade secrets at issue are personally "valuable to" him, "in excess of $75,000," (Opp. at 4-5). But he cites no law measuring a plaintiff's TSPA damages by the value he imputes to his own trade secrets, and the TSPA's text does not allow a plaintiff to claim that amount. *See, e.g.*, *GE Betz*, 231 N.C. App. at 238 (as noted, damages are either lost profits or unjust enrichment). Azima also cites paragraph 53 of the complaint claiming "statutory damages" of more than $75,000, (Opp. at 5), but the TSPA does

4

not offer "statutory damages." His claim in the cited paragraph there was expressly for "statutory damages" under the Wiretap Act, but the Court has dismissed that claim.[1]

3. As for unjust enrichment, Defendants explained that Azima does not allege that Defendants (1) profited from the 2018-2019 reposting by a third-party; (2) profited by more than $75,000 for any of the work they or others are (falsely) alleged to have done; or (3) were paid *after* the reposting, which as a matter of logic and North Carolina law means that there was no unjust enrichment *caused* by the alleged reposting.

Azima ignores and so concedes these points, but they each defeat his contention that he has alleged $75,000 resulting from the 2018-2019 reposting in particular. Indeed, far from refuting these points, his argument emphasizes his failure to allege any amount by which Defendants profited, whether from the 2018-2019 reposting or otherwise, (Opp. at 5). He cites only his allegations that Defendants were paid, but then in

---

[1] Azima's brief misleadingly replaces the complaint's reference to the Wiretap Act with ellipses, (Opp. at 5). Paragraph 53 of the complaint in fact claims "more than $75,000 of statutory damages *under 18 U.S.C. § 2520(c)(2)(B)* [*i.e.*, the Wiretap Act], and further monetary damages in an amount to be proven at trial." Compl. ¶ 53 (emphasis added).

turn paid CyberRoot, more than $1 million total (*id.*), but that does not allege that *Defendants* profited, or by how much, and it does not link any profit to the reposting.

Because Azima fails to "allege the necessary amount in controversy" for the remaining claims, the Court lacks diversity jurisdiction. *Feikema*, 16 F.3d at 1412.

### B. The Court Should Decline Supplemental Jurisdiction Over the Remaining Claims.

Without original jurisdiction, the court should dismiss this case. Azima accepts that under 28 U.S.C. § 1367(c), state law claims over which the court has no original jurisdiction should be dismissed in "the usual case." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). He claims that this case is different because it has been pending for a year, but that is typical timing for a motion to dismiss, and dismissal is anyway the ordinary result any time "before trial." *Id.* Azima's untimely federal claims were "flimsy grounds to get into federal court," *Shanaghan*, 58 F.3d at 112, and this Court should decline supplemental jurisdiction.[2]

---

[2] Azima is wrong that this motion is "untimely," (*contra* Opp. at 2). As he concedes, (*id.*), under Fed. R. Civ. P. 12(g)(2) a party may raise arguments not available earlier. He ignores that, as Defendants explained, (Mot. at 4 n.1), the amount-

6

## II. Azima Fails to Demonstrate Article III Standing to Pursue the Remaining Claims.

A. As Defendants' motion explained, in a "factual challenge" under Rule 12(b)(1), the Court considers *evidence* to determine whether standing exists. Mot. at 6-7. The Fourth Circuit has long recognized that "[a] defendant may challenge standing at the *motion-to-dismiss stage* in one of two ways: facially or factually." *Wikimedia Found. v. NSA/Central Sec. Serv.*, 857 F.3d 193, 208 (4th Cir. 2017) (emphasis added) (internal quotation marks and alterations omitted). Where the defendant "contends that the jurisdictional allegations of the complaint [are] not true," the Court has discretion to go "beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id.* (internal quotation marks omitted).

Azima disputes that he bears the burden of proving standing, (Opp. at 12), but the law is crystal clear that on a standing challenge, including under Rule 12(b)(1), "[t]he

---

in-controversy defect arises from the dismissal of most of his claims, while his factual admissions showing that he does not own his claimed trade secrets were only made in October 2021. Objections to subject matter jurisdiction can in any event be raised at any time. *See* Fed. R. Civ. P. 12(h)(3).

7

burden of proving subject matter jurisdiction on a motion to dismiss *is on the plaintiff*, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (emphasis added). The Court "may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id*

Azima does not meet his burden, and does not even try. Instead, he now admits that when he alleged that the putative trade secrets are "his" (*e.g.*, Compl. ¶¶ 113-114), he failed to acknowledge the legally critical distinction between owning the trade secret himself (which is what he alleged), and owning a company that owns a trade secret, or merely being privy to that secret as a result (which he now admits may be the case). As his own materials now admit, his position is that he has what he describes as "an ownership interest" in the trade secret, but that the "particulars of that ownership" will be developed at trial. Dkt. 72 ("Holden Decl.") at ¶ 9. By "particulars of that ownership," what he actually means is whether he "is the exclusive owner" of the trade secret,

8

merely "owns a company that holds the trade secret," or "is privy to" it.³  *Id.*

Azima would like to gloss over these distinctions, but only an "owner" of a trade secret suffers an injury by its misappropriation.  If Azima does not own them, he has no interest in them, no right to sue over them, no injury from their misappropriation, and, therefore, no standing to sue. *See infra* at 11.

B.  Even leaving aside his own admission that he does not stand behind his allegations of ownership, it was Azima's burden to prove his ownership, with evidence, in response to Defendants' factual challenge.  He has not done that.  He points to his allegations in the complaint here, (Opp. at 7), and his lawyer's description of his allegations in his English case, (*id.* at 9), but those are not evidence.  He objects

---

³ The full text of this passage reads: "Mr. Azima's position is that he *has an ownership interest in* the trade secrets and the particulars of that ownership—including whether he (i) is the exclusive owner of a trade secret; (ii) owns a company that holds the trade secret; *and/or* (iii) is *privy* to a trade secret—will be developed further at trial and in the evidence filed in advance of trial."  Holden Decl. at ¶ 9 (emphasis added).

that the Court should not take "judicial notice" of his English admissions, but Defendants submitted them as evidence, not as noticeable material, (*Contra* Opp. at 9).

He also contends that his own admissions should be disregarded because he did not intend to speak to "ownership," Holden Decl. at ¶ 7. But the document tends to show that these are corporate, not personal, records, whether or not Azima intended for his admissions in concurrent litigation to reveal additional flaws in this case. And his argument that the underlying request did not seek information about his ownership is anyway false, because the request asked for "full particulars of each '*trade secret*,'" which includes ownership. Dkt. 69-1 at ¶ 20.

C. Finally, Azima argues that ownership is not necessary for his standing because mere possession (*i.e.*, knowledge) of a trade secret owned by another is enough to confer standing. But that is under Maryland, not North Carolina, law. As the Fourth Circuit held in the case on which Azima relies, the *Maryland* trade secrets statute does not "explicitly require[] the plaintiff . . . to be the outright owner of the trade secret at issue," so that "one who possesses non-disclosed knowledge may demand remedies as provided by the Act." *DTM*

*Research, LLC v. AT&T Corp.*, 245 F.3d 327, 331-32 (4th Cir. 2001) (internal quotation marks omitted).

A legislature may "create new interests the invasion of which will confer standing." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 n.22 (1976). So it may be that a non-owner who is merely privy to a secret can sue under Maryland law because Maryland law grants an interest to, and so confers standing on, such a non-owner. But North Carolina law, under which Azima is suing, creates no such interest. It expressly grants a right of action only to "[t]he owner of a trade secret." N.C. Gen. Stat. § 66-153.

And even setting statutory differences aside, Azima fails to articulate, let alone show with evidence, how he was injured by the alleged misappropriation of trade secrets that he does not own. It cannot be that someone who is merely privy to a trade secret always suffers a concrete injury anytime the trade secret is subsequently misappropriated.

In short, nowhere in his submission does Azima supply evidence that he personally owns any trade secret that he claims Defendants misappropriated. Absent such ownership, he lacks standing to sue, and his remaining claims should be dismissed for lack of jurisdiction.

11

**CONCLUSION**

For the foregoing reasons and those stated in the opening brief, the Court should dismiss for lack of jurisdiction. Respectfully submitted this 21st day of January, 2022.

> By: /s/ *Brandon S. Neuman*
> Kieran J. Shanahan, NCSB# 13329
> Brandon S. Neuman, NCSB# 33590
> Jeffrey M. Kelly, NCSB# 47269
> Nathaniel J. Pencook, NCSB# 52339
> Glenlake One
> 4140 Parklake Avenue, Suite 200
> Raleigh, North Carolina, 27612
> Telephone: (919) 329-3800
> Facsimile: (919) 329-3799
> kieran.shanahan@nelsonmullins.com
> brandon.neuman@nelsonmullins.com
> jeff.kelly@nelsonmullins.com
> nate.pencook@nelsonmullins.com
> *Counsel for Defendants*

**WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 2,245 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 3,125 word limitation.

Respectfully submitted this 21st day of January 2022.

> **NELSON MULLINS RILEY &**
> **SCARBOROUGH, LLP**
>
> By: /s/ *Brandon S. Neuman*
> Kieran J. Shanahan, NCSB# 13329
> Brandon S. Neuman, NCSB# 33590
> Jeffrey M. Kelly, NCSB# 47269
> Nathaniel J. Pencook, NCSB# 52339
> Glenlake One
> 4140 Parklake Avenue, Suite 200
> Raleigh, North Carolina, 27612
> Telephone: (919) 329-3800
> Facsimile: (919) 329-3799
> kieran.shanahan@nelsonmullins.com
> brandon.neuman@nelsonmullins.com
> jeff.kelly@nelsonmullins.com
> nate.pencook@nelsonmullins.com
> *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of January 2022, I electronically filed the foregoing **Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss Pursuant to Rule 12(b)(1)** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson(US) LLP
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601
jonathan.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Calvin Lee
Ian Herbert
Brian Hill
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
bhill@milchev.com
kbehre@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: /s/ *Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*