IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
FARHAD AZIMA,                      )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )     1:20CV954
                                   )
NICHOLAS DEL ROSSO and             )
VITAL MANAGEMENT SERVICES,         )
INC.,                              )
                                   )
        Defendants.                )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is Defendants Nicholas Del Rosso and Vital Management Services, Inc.'s Motion to Reconsider the Partial Denial of their Motion to Dismiss. (Doc. 74.) For the reasons set forth herein, this court will deny the motion.

## I. BACKGROUND

Plaintiff Farhad Azima brought state and federal claims against Defendants, alleging that they participated in a scheme to hack and publish Plaintiff's confidential business information online. (Order & Recommendation of U.S. Mag. J. ("Recommendation") (Doc. 54) at 2–4.)[1] The instant motion arises

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

from this court's Memorandum Opinion and Order issued on December 10, 2021. (Mem. Op. & Order ("Order") (Doc. 65).) That order largely adopted the Magistrate Judge's Recommendation, (Recommendation (Doc. 54)), but concluded that several additional claims warranted dismissal on statute of limitations grounds, (Order (Doc. 65) at 19–25). The Order allowed two claims to proceed: (1) a North Carolina misappropriation of trade secrets claim arising from the 2018-2019 online posting of new links to Plaintiff's confidential business data, and (2) a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim. (Id. at 21–24.)

A month after the court issued its order, Defendants filed a motion, accompanied by a brief, asking this court to reconsider its decision and dismiss the two remaining claims. (Doc. 74; Defs.' Mem. of Law in Supp. of Mot. to Recons. Partial Den. of Mot. to Dismiss ("Defs.' Br.") (Doc. 75).) Plaintiff Farhad Azima responded in opposition, (Br. of Pl. in Opp'n to Defs.' Mot. for Recons. ("Pl.'s Br.") (Doc. 77)), and Defendants replied, (Doc. 78).

## II. STANDARD OF REVIEW

While Defendants do not specify a Federal Rule of Civil Procedure under which their motion is brought, Defendants' reconsideration motion is most appropriately analyzed under Rule

- 2 -

Case 1:20-cv-00954-WO-JLW   Document 79   Filed 03/21/22   Page 2 of 12

54(b). That rule allows for any interlocutory order to "be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b).

There are only three circumstances where a court may revise an interlocutory order under Rule 54(b): "(1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (alteration in original) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)). "However, when assessing a Rule 54(b) motion for reconsideration, these standards are not applied with the same strictness as when they are used under Rule 59(e)." Mobley v. Greensboro City Police Dep't, No. 1:17-cv-114, 2018 WL 6110997, at *2 (M.D.N.C. Nov. 21, 2018); accord Carlson, 856 F.3d at 325 ("Compared to motions to reconsider final judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light.").

"Despite this flexible approach . . . the discretion Rule 54(b) provides is not limitless." Carlson, 856 F.3d at 325. Indeed, "such discretion is 'subject to the caveat that where

litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 257 (4th Cir. 2018) (quoting Off. Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003)).

### III. ANALYSIS

#### A. The Reconsideration Motion's Propriety

Before addressing the substance of the reconsideration motion, this court will address the motion's propriety. Defendants argue that the motion is proper because there has been "an intervening change in the law of the case, akin to a change in the governing law." (Defs.' Br. (Doc. 75) at 8 n.2.) Defendants maintain that the substantive legal issue warranting reconsideration was analyzed by the Magistrate Judge "when the 2016 conduct was in the case." (Id.) Defendants contend that because this court later dismissed that conduct—thus changing the law of the case—reconsideration of the Magistrate Judge's analysis is warranted. (Id.) Plaintiff disagrees, arguing that the reconsideration motion is improper. (Pl.'s Br. (Doc. 77) at 3-4.) Plaintiff insists that "Defendants misleadingly couch their Motion for Reconsideration as a change in law of the

case," when in fact "Defendants' argument was previously raised and explicitly rejected by the Court[,] [and] [n]othing has changed since that ruling." (Id. at 3.)

This court is skeptical of the propriety of Defendants' motion. Defendants offer no authorities to support their argument that "an intervening change in the law of the case, [is] akin to a change in the governing law" and thus provides a legal foundation for a reconsideration motion. (Defs.' Br. (Doc. 75) at 8 n.2.) While it is true that reconsideration motions may be properly entertained in circumstances when there is "a change in applicable law," Carlson, 856 F.3d at 325, that most clearly occurs "when there has been an intervening change of law outside the confines of the particular case," Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478 (3d ed. Apr. 2021 update) (emphasis added) (explaining that a reconsideration motion may be proper when, inter alia, "the law has been changed by a body with greater authority on the issue [such as] a court higher in the hierarchy of a single court system, a state court developing state law that controls decision by a federal court, an administrative agency that is peculiarly responsible for elaborating a statutory scheme, or the same court sitting en banc" (footnotes omitted)).

- 5 -

In contrast, here, Defendants seek reconsideration based on an alleged change of law within the confines of a particular case. Entertaining a reconsideration motion under such circumstances seems to wade into improperly "ask[ing] the court to rethink what the Court had already thought through—rightly or wrongly." Directv, Inc. v. Hart, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (internal quotation marks omitted) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). As Plaintiff notes, this court's prior order engaged with the substantive issue Defendants raise in their reconsideration motion—the relationship between Defendants and the 2018–2019 conduct. (Pl.'s Br. (Doc. 77) at 3–4 (citing Order (Doc. 65) at 17–18).)

Nevertheless, this court is cognizant that the grounds for bringing a Rule 54(b) motion are not to be applied with the upmost "strictness," Mobley, 2018 WL 6110997, at *2; accord Hatch v. Demayo, No. 1:16CV925, 2018 WL 6003548, at *1 (M.D.N.C. Nov. 15, 2018) ("Rule 54(b) motions for reconsideration are held to a less stringent standard . . . ."), because what is of paramount importance "is to reach the correct judgment under law," Am. Canoe Ass'n, 326 F.3d at 515. Therefore, even though this court is dubious as to the propriety of Defendants' motion—

and could likely deny it on such grounds—this court will proceed to address the reconsideration motion's substantive argument.

## B.  The Reconsideration Motion's Substantive Argument

Defendants ask this court to reconsider its order and dismiss the two remaining claims. (Defs.' Br. (Doc. 75) at 13.) Defendants argue that the North Carolina trade secret misappropriation statute, known as the Trade Secret Protection Act ("TSPA"), "only creates a cause of action against a party that itself engages in an act of misappropriation. It does not create 'secondary' liability for a party accused of aiding or abetting, but not of actually committing, the act of misappropriation." (Id. at 3.) Defendants contend that while Plaintiff may have alleged primary liability as to the 2016 conduct, Plaintiff has failed to do so as to the 2018-2019 conduct. (Id. at 3-4.) Thus, "[t]he removal of the 2016 conduct from the case . . . removed any allegations of primary conduct from the action," and the North Carolina trade secret misappropriation claim—and the civil conspiracy claim that depends upon it—must be dismissed. (Id. at 4.) Plaintiff disagrees and maintains that "[t]he Complaint makes sufficient allegations that Defendants themselves acquired, disclosed, and/or used Plaintiff's trade secrets in 2018 and 2019." (Pl.'s Br. (Doc. 77) at 4.)

The TSPA states that "[t]he owner of a trade secret shall have remedy by civil action for misappropriation of his trade secret." N.C. Gen. Stat. § 66-153. The term "misappropriation" is defined as "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent." Id. § 66-152. A prima facie case under the TSPA is established by "the introduction of substantial evidence that [a] person . . . (1) [k]nows or should have known of the trade secret; and (2)[h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." Id. § 66-155.

This court agrees with Defendants that the TSPA does not allow for aiding and abetting liability. Plaintiff does not challenge this conclusion, (see Pl.'s Br. (Doc. 77)), and it is supported by North Carolina caselaw, Salon Blu, Inc. v. Salon Lofts Grp., LLC, No. 17 CVS 12778, 2018 WL 3467901, at *6 (N.C.

Super. Bus. Ct. July 16, 2018).[2] But even though aiding and abetting liability under the TSPA is foreclosed, North Carolina caselaw, see id., leaves open the door for vicarious liability under the TSPA via agency principles.[3]

Considering the caselaw, id., and the statutory definition of misappropriation, Section 66-152, this court finds Plaintiff's TSPA claim plausible. Plaintiff has pled sufficient facts regarding the 2018–2019 conduct to plausibly allege that (1) Defendants themselves misappropriated Plaintiff's trade

---

[2] In Salon Blu, several hair stylists left their employment with the plaintiff and began renting booths as independent stylists at the defendant's facility. 2018 WL 3467901, at *1–2. The stylists did not share revenue with the defendant; instead, they just paid rent for the booths. Id. The plaintiff accused the defendant of violating the TSPA by encouraging and inducing the stylists to misappropriate the plaintiff's trade secrets. Id. at *6. The North Carolina Business Court rejected that allegation as "not sufficient to allege misappropriation," and compared the TSPA to similar statutes in other states that courts had found to not allow for aiding and abetting liability. Id.

[3] The Salon Blu plaintiff had also alleged that the defendant itself misappropriated the plaintiff's trade secrets. 2018 WL 3467901, at *6. The court rejected those allegations as conclusory but did indicate that the plaintiff had sufficiently alleged that the stylists engaged in such misappropriation. See id. The court noted that those allegations against the stylists could have been vicariously attributed to the defendant if the facts alleged established that the stylists were the defendant's agents. See id. However, because none of the allegations supported the existence of an agency relationship, the claim was dismissed. Id.

secrets, and/or (2) an agency relationship[4] existed between Defendants and CyberRoot, and CyberRoot misappropriated Plaintiff's trade secrets. Plaintiff's s TSPA claim alleges that "Defendants Del Rosso and Vital improperly acquired, disclosed, or used Azima's trade secrets without consent or authorization when they instructed CyberRoot to . . . distribute [Azima's] data through . . . WeTransfer links on blogs created by CyberRoot." (Compl. (Doc. 1) ¶ 110.) Many facts in the Complaint support this. The most noteworthy will be summarized and must be construed in the light most favorable to the plaintiff. Burgess v. Goldstein, 997 F.3d 541, 562-63 (4th Cir. 2021).

Plaintiff alleges that Defendants hired CyberRoot and paid the company more than $1 million for, among other things, the dissemination of Plaintiff's trade secrets. (Compl. (Doc. 1) ¶¶ 5, 29-30.) Plaintiff asserts that at Defendants' direction, CyberRoot created internet blog sites and then disclosed Azima's trade secrets on those blogs. (Id. ¶¶ 6, 19.) Specifically, Plaintiff claims that the blogs featured links to WeTransfer sites (also set up by CyberRoot), containing Plaintiff's trade secrets. (Id. ¶ 6.) Plaintiff states that CyberRoot regularly

---

[4] The "[t]wo essential elements of an agency relationship" under North Carolina law "are: (1) the authority of the agent to act on behalf of the principal, and (2) the principal's control over the agent." State v. Weaver, 359 N.C. 246, 258, 607 S.E.2d 599, 606 (2005).

used WeTransfer links to transfer data to Vital and that some of Plaintiff's trade secrets were provided to Del Rosso. (Id. ¶¶ 19, 25.) Crucially—from a statute of limitations standpoint—in May 2018, June 2018, and June 2019, the blogs were allegedly updated with new links to WeTransfer sites that contained Plaintiff's trade secrets. (Id. ¶¶ 24, 26.) Plaintiff claims these links were posted by accounts with usernames associated with CyberRoot. (Id. ¶ 49.)

Given the aforementioned allegations, this court finds that Plaintiff has pled sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), either directly or via agency principles, for the misappropriation of Plaintiff's trade secrets in 2018–2019. Therefore, Defendants' reconsideration motion will be denied.

### C. Plaintiff's Request for Commencement of Discovery

Plaintiff requests that this court "immediately direct the commencement of discovery" because the reconsideration motion was brought in bad faith to delay the proceedings. (Pl.'s Br. (Doc. 77) at 6–7.)

This court will not direct the commencement of discovery in this Order. The issue of when discovery should begin is better addressed in adjudication of Plaintiff's pending Motion to Set

- 11 -

Case 1:20-cv-00954-WO-JLW   Document 79   Filed 03/21/22   Page 11 of 12

an Initial Pretrial Conference and to Initiate Rule 26(f) and Local Rule 16.1(f) Conferences and Reporting Process, (Doc. 66). This court also notes that there is an additional outstanding motion filed by Defendants that challenges this court's subject matter jurisdiction. (Doc. 67.)

Without expressing any opinion as to the disposition of those pending motions, this court reminds the parties that Federal Rule of Civil Procedure 11(b)(1) requires that every court filing must not be intended to "cause unnecessary delay." The instant reconsideration motion's propriety was questionable, see supra Section III.A, and while this court declines to find it was made in bad faith, all parties are reminded that the Federal Rules of Civil Procedure shall be employed by "the parties to secure the just . . . determination of every action and proceeding." Fed. R. Civ. P. 1.

## IV. CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants' Motion to Reconsider the Partial Denial of their Motion to Dismiss, (Doc. 74), is **DENIED**.

This the 21th day of March, 2022.

_____
United States District Judge