IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
FARHAD AZIMA,                      )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )    1:20CV954
                                   )
NICHOLAS DEL ROSSO and             )
VITAL MANAGEMENT SERVICES,         )
INC.,                              )
                                   )
        Defendants.                )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is Defendants Nicholas Del Rosso and Vital Management Services, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(1). (Doc. 67.) For the reasons set forth herein, this court will deny the motion.

## I. BACKGROUND

In 2020, Plaintiff Farhad Azima brought eleven state and federal claims against Defendants Nicholas Del Rosso and Vital Management Services, Inc. ("Vital"), alleging that Defendants participated in a scheme to hack and publish Plaintiff's confidential business information online. (See Compl. (Doc. 1).)[1]

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Plaintiff, a United States citizen working and living in Missouri, alleges that Defendants "oversaw and directed the hacking of Plaintiff" and "stole [his] computer data, including emails and trade secrets." (Id. ¶¶ 1, 10.) Plaintiff alleges that Defendants were hired by an international law firm, Dechert LLP, to hack Plaintiff as part of a "target[ed]" operation on behalf of the Ras Al Khaimah state investment entity ("RAKIA"). (Id. ¶¶ 2, 7, 14.) To that end, he alleges that Defendants paid an offshore hacker-for-hire company more than one million dollars to embark on a concerted spear-phishing attack against Plaintiff, resulting in the theft of Plaintiff's emails and data, as well as online publication of that stolen data. (See id. at 2, 4-6.)

Plaintiff alleges that RAKIA (not named as a party in Plaintiff's complaint) hired Defendants to hack Plaintiff in order to "weaponize that data in an attempt to ruin [Plaintiff]" and to use the stolen data as evidence in a parallel lawsuit in England. (Id. ¶¶ 2, 7.) As such, Plaintiff alleges bad faith on the part of Defendants. To demonstrate bad faith, Plaintiff alleges that Defendant Del Rosso "created a false evidentiary trail to cover up their and RAKIA's responsibility for the hacking" and alleges that the English court ruled that RAKIA "had lied about how they obtained [Plaintiff's] stolen data."

(Id. ¶¶ 7-8.) Plaintiff alleges that he has suffered "significant financial and reputational damage" from Defendants' actions. (Id. ¶ 9.) Plaintiff also provided a non-exhaustive list of allegedly-stolen information as part of the English proceeding. (See Counterclaimant's Resp. to Req. for Info. Served by Def. to Countercl. ("Request for Info.") (Doc. 69-1) at 24-25.)

Originally, Plaintiff raised three federal law claims and eight state law claims. (See Compl. (Doc. 1) ¶¶ 44-139.) The three federal law claims included: (Count I) violation of the Electronic Communications Privacy Act ("Wiretap Act"); (Count II) conspiracy to disclose communications obtained in violation of the Wiretap Act; and (Count III) misappropriation of trade secrets. (See id.) The eight state law claims included: (Count IV) computer trespass; Count (V) conversion; (Count VI) identity theft; (Count VII) publication of personal information; (Count VIII) violation of the Trade Secrets Protection Act ("TSPA"); (Count IX) violation of the Unfair and Deceptive Trade Practices Act; (Count X) civil conspiracy; and (Count XI) invasion of privacy. (See id.)

Defendants brought a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim, (see Doc. 31), which was granted in part and denied in part, (see Order & Recommendation

- 3 -

Case 1:20-cv-00954-WO-JLW   Document 80   Filed 09/28/22   Page 3 of 19

of U.S. Mag. J. ("Recommendation") (Doc. 54); Mem. Op. & Order ("Dec. 10 Order") (Doc. 65)). This court concluded that Counts I-VI, Count IX, and Count XI all warranted dismissal. (See Recommendation (Doc. 54); Dec. 10 Order (Doc. 65).) Two of Plaintiffs' claims were allowed to proceed: a North Carolina misappropriation of trade secrets claim arising from the 2018-2019 online posting of new links to Plaintiff's confidential business data (Count VIII) and a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim (Count X). (See Dec. 10 Order (Doc. 65) at 21-24.)

Now, Defendants seek dismissal of these two remaining state law claims for lack of subject matter jurisdiction under Rule 12(b)(1). (See Defs.' Mot. to Dismiss (Doc. 67).) Following Defendants' Motion, (see id.), and accompanying brief, (see Defs.' Mem. Of Law in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 68), Plaintiff responded in opposition, (see Br. of Pl. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Br.") (Doc. 71)), and Defendants replied, (see Doc. 76).

Defendants' motion to dismiss Counts VIII and X is ripe for adjudication.

## II. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction

Under Rule 12(b)(1), a plaintiff must prove by a preponderance of the evidence the existence of subject matter jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347-48 (4th Cir. 2009). A defendant may challenge subject matter jurisdiction facially or factually. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject matter jurisdiction. Id. The court then effectively affords a plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." Id.

In a factual challenge, a defendant asserts that the jurisdictional allegations are false, and the court may look beyond the complaint to resolve the disputed jurisdictional facts without converting the motion to one for summary judgment. Id. at 192-93.

### B. Standing

This court's jurisdiction is limited to "cases and controversies" under Article III of the United States

- 5 -

Case 1:20-cv-00954-WO-JLW   Document 80   Filed 09/28/22   Page 5 of 19

Constitution. Spokeo v. Robins, 578 U.S. 330, 337 (2016) (internal citations omitted). At the motion to dismiss stage, a plaintiff must plausibly allege facts showing that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. at 338. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized, and 'actual or imminent, not conjectural or hypothetical.'" Id. at 339 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

A defendant can mount a facial or a factual challenge to standing. See Hatch v. DeMayo, No. 1:16CV925, 2020 WL 5763543, at *3 (M.D.N.C. Sep. 28, 2020). In a facial challenge, a plaintiff must meet the Rule 12(b)(6) plausibility standard; the facts, as alleged in the plaintiff's complaint, are taken as true. See id. A factual challenge is when a defendant challenges the "veracity of facts underpinning subject matter jurisdiction." Id. In that case, "the presumption of truthfulness normally accorded a complaint's allegations does not apply and the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." Id. (internal citations omitted). A court must determine for itself

whether the factual underpinnings for standing exist, even going beyond the complaint's allegations.

## III. ANALYSIS

Defendants first argue that this court lacks subject matter jurisdiction over this case due to dismissal of the federal causes of action. (See Defs.' Br. (Doc. 68) at 8.) Defendants argue that this court lacks subject matter jurisdiction over the state law claims via diversity of citizenship. (See id. at 8-11.) In the alternative, Defendants argue that because the claims invoking federal question jurisdiction have been dismissed, this court should decline to exercise supplemental jurisdiction over the remaining state law claims. (See id. at 13-14.)

Second, Defendants argue that Plaintiff lacks Article III standing to bring his claims because he does not "own" the trade secrets at issue. (See id. at 14-15.)

This court concludes that it maintains subject matter jurisdiction over Plaintiff's state law claims through diversity, so it still has power to hear the case. Because it has original subject matter jurisdiction over the case, this court declines to address Defendants' argument regarding supplemental jurisdiction. Additionally, this court concludes

that Plaintiff has Article III standing. Accordingly, Defendants' motion to dismiss will be denied.

### A. <u>Subject Matter Jurisdiction</u>

Defendants contend that this court lacks subject matter jurisdiction because it lacks diversity jurisdiction over the state law claims under 28 U.S.C. § 1332. (<u>See</u> Defs.' Br. (Doc. 68) at 8-11.) Specifically, Defendants argue that Plaintiff cannot satisfy the amount-in-controversy requirement to establish diversity jurisdiction. (<u>See</u> <u>id.</u> at 10-11.)

"The judicial Power[sic] of the inferior federal courts extends only so far as Article III permits and Congress chooses to confer." <u>Navy Fed. Credit Union v. LTD Fin. Servs., LP</u>, 972 F.3d 344, 352 (4th Cir. 2020). When exercising diversity jurisdiction, Article III, § 2 of the United States Constitution "permits courts to decide 'Controversies . . . between Citizens of different States[,]' . . . . [b]ut Congress (so far) has declined to extend federal-diversity jurisdiction to this constitutional limit." <u>Id.</u> 28 U.S.C. § 1332 confers district courts with subject matter jurisdiction over a case where there is diversity of citizenship between the parties and an amount-in-controversy in excess of $75,000. 28 U.S.C. § 1332(a)(1). Diversity must be "complete," meaning "that no plaintiff may

share a citizenship with any defendant." Navy Fed. Credit Union, 972 F.3d at 352.

This court finds that the parties are diverse and that the amount-in-controversy requirement is met, so this court retains subject matter jurisdiction over Plaintiff's two remaining state law claims.

### 1. **Complete Diversity**

Plaintiff Farhad Azima is a "U.S. citizen who resides and works in Kansas City, Missouri," so Plaintiff is domiciled in Missouri for purposes of determining diversity. (Compl. (Doc. 1) ¶ 10.) Defendant Nicholas Del Rosso is domiciled in North Carolina, and Defendant Vital is a corporation with its principal place of business in North Carolina. (See id. ¶ 40.) Plaintiff and Defendants are from different states and therefore diverse. See Navy Fed. Credit Union, 972 F.3d at 352. Further, the parties do not dispute complete diversity. Thus, the complete diversity requirement for diversity jurisdiction is met.

### 2. **Amount-in-Controversy Requirement**

The amount-in-controversy requirement is also satisfied, based on the face of Plaintiff's well-pleaded complaint. "The black letter rule 'has long been to decide what the amount in controversy is from the complaint itself, unless it appears or

is in some way shown that the amount stated in the complaint is not claimed in good faith.'" Choice Hotels Intern., Inc. v. Shiv Hosp/, L.L.C., 491 F.3d 171, 176 (4th Cir. 2007); see also Burdick v. Teal, No. 1:02CV727, 2003 WL 1937118, at *1 (M.D.N.C. Apr. 22, 2003) ("[W]here the amount in controversy is clearly and unambiguously set forth in good faith on the face of the complaint, that amount should control."). Only if, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . . [then] the suit will be dismissed." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).

Based on the face of Plaintiff's complaint, he has alleged actual damages, punitive damages, and attorneys' fees that together, appear to exceed the amount-in-controversy minimum of $75,000.01. There is not a "legal certainty" that Plaintiff's claims are for less than the jurisdictional minimum requirement. See id.

The North Carolina Trade Secrets Protection Act authorizes "actual damages . . . measured by the economic loss or the unjust enrichment caused by misappropriation of a trade secret, whichever is greater," along with both "punitive damages" and "reasonable attorneys' fees" if "willful and malicious appropriation exists." N.C. Gen. Stat. § 66-154(b)-(d).

- 10 -

Additionally, statutorily permitted punitive damages may be included to determine whether the jurisdictional amount-in-controversy requirement is met, so long as there is a reasonable relationship between the actual and punitive damages awards. See Bell v. Preferred Life Assur. Soc. of Montgomery, Ala., 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint[,] each must be considered to the extent claimed in determining jurisdictional amount.); see also Trammel v. Sylvanus Group, L.L.C., ____ F. Supp. 3d ____, 2020 WL 1169969 (S.D. W. Va. Mar. 10, 2020) ("A court may also consider punitive damages, if available under the law, when determining the amount in controversy."). Attorneys' fees may also be included to determine whether the jurisdictional amount-in-controversy requirement is met. See Francis v. Allstate Ins., 709 F.3d 362, 368–369 (4th Cir. 2013).

On this specific issue, another court in this district also concluded that actual damages alleged by the plaintiff could be aggregated with treble damages and "unspecified punitive damages" to meet the amount-in-controversy requirement, ultimately finding that the court had diversity jurisdiction over the state law claims before the court. See Palacios v. Tyson Foods, Inc., No. 1:19CV741, 2019 WL 5742636, at *3 (M.D.N.C. Nov. 5, 2019). Like Palacios, this court too can

consider actual damages, punitive damages, and attorneys' fees in finding that the amount-in-controversy minimum is met.

First, Plaintiff alleges that he "derived independent actual or potential commercial value from [his allegedly stolen] trade secrets not being generally known or readily ascertainable." (Compl. (Doc. 1) ¶ 103.) Further, he alleges that "as a direct consequence [of Defendants' actions], Azima has suffered damages, including but not limited to loss of business goodwill, loss in the value of his trade secrets and confidential business information, and harm to Azima's business . . . ." (Id. ¶ 113 (cleaned up).) Finally, Plaintiff alleges that his "trade secrets are substantially valuable to Plaintiff, in excess of $75,000," specifically pertaining to Count VIII. (Id. ¶ 105.) Thus, the face of Plaintiff's complaint sets forth sufficient facts to plausibly find damages greater than the amount-in-controversy minimum.

Second, beyond actual damages, Plaintiff requests punitive damages and attorneys' fees, specifically for his TSPA claim. (See id. ¶¶ 117–18.) Plaintiff has alleged that Defendants' conduct was willful and malicious for being "part of a deliberate, clandestine strategy and conspiracy to injure Azima." (Compl. (Doc. 1) ¶ 111.) Thus, Plaintiff may even be entitled to punitive damages and attorneys' fees, beyond the

- 12 -

Case 1:20-cv-00954-WO-JLW Document 80 Filed 09/28/22 Page 12 of 19

$75,000 he has alleged as his actual damages. Actual damages greater than $75,000 (as alleged by Plaintiff), punitive damages, and attorneys' fees together all certainly exceed the jurisdictional amount-in-controversy requirement.

Thus, even though Plaintiff's federal law claims have been dismissed, this court retains subject matter jurisdiction over Plaintiff's remaining state law claims (Counts VIII and X). There is complete diversity between Plaintiff and Defendants, and Plaintiff has pleaded that his claims exceed the amount-in-controversy requirement.

**B.  Standing**

Defendants also argue, even after their earlier motion to dismiss pursuant to Rule 12(b)(6) was denied, that Plaintiff lacks standing to bring his TSPA claim because he does not personally own the trade secrets allegedly stolen. (See Defs.' Br. (Doc. 68) at 14-16.) Defendants explain that in a related English lawsuit pursuing a Federal Defend Trade Secret Act counterclaim, Plaintiff provided a list of the stolen trade secrets, but that list supposedly demonstrates that Plaintiff owns "none of the nineteen categories of . . . trade secrets" at issue. (Id. at 15.)

Defendants have presented a factual challenge to Plaintiff's standing by asserting that Plaintiff does not own

- 13 -

the trade secrets he seeks to enforce his rights over. See Hatch v. DeMayo, 2020 WL 5763543, at *3. This court disagrees and finds that Plaintiff has standing to bring suit before this court.

### 1. North Carolina Trade Secrets Protection Act

The North Carolina Trade Secrets Protection Act states that the "owner of a trade secret shall have remedy by civil action for misappropriation of his trade secret." N.C. Gen. Stat. § 66-153 (emphasis added). However, the statute does not define "owner," and there is no binding or persuasive caselaw construing "owner" in this context. That is, the ambit of "owner" under the TSPA is a question of first impression.

One North Carolina state superior court considered a similar issue where a defendant challenged a plaintiff's standing to bring a TSPA claim on the grounds that the plaintiff was merely a licensee of the trade secrets, not an owner. See SCR-Tech L.L.C. v. Evonik Energy Servs. L.L.C., No. 08 CVS 16632, 2014 WL 7534071 (N.C. Super. Dec. 31, 2014). Although the court did not construe "owner" directly, it explained that the plaintiff had an exclusive and renewable right to use the trade secrets at issue in the case. See id. at *2. Ultimately, the court found that the plaintiff had standing on its TSPA claim and denied the defendant's motion to dismiss. See id. at *3-4.

- 14 -

In the present case, Plaintiff has not asserted that he lacks ownership of the trade secrets he is protecting, so Defendant's argument goes beyond that which may be adduced at this stage of the proceedings. Further, even if Plaintiff is not the primary owner of the trade secrets, he has contended that he gains economic value from the trade secrets, much like a licensee. (See Compl. (Doc. 1) ¶¶ 102–103.) Like the licensee in SCR-Tech, this economic value is sufficient to confer standing. Relatedly, the exact nature of Plaintiff's interest and the extent of recovery pursuant the economic value of the trade secrets will be determined through discovery and trial.

### 2. **Request for Information Upon Which Defendants Rely**

Finally, the evidence Defendants rely upon to assert that Plaintiff lacks ownership of the trade secrets at issue in this case does not support their argument. Defendants point to a response to a request for information on Plaintiff's

- 15 -

Case 1:20-cv-00954-WO-JLW   Document 80   Filed 09/28/22   Page 15 of 19

counterclaim from a parallel English lawsuit.² (See Request for Info. (Doc. 69-1) at 24-25.) Defendants argue that Plaintiff lacks ownership of the trade secrets at issue specifically because Plaintiff itemizes each trade secret by the business venture each is associated with. (Defs.' Br. (Doc. 68) at 15-16.) They explain:

> Sixteen categories of the putative trade secrets are expressly described as belonging to businesses identified as Shollar Bottling Company, Grand Hotel Europe, Brownies, and ALG. Three remaining trade secrets evidently belong to a food transport business and two restaurant businesses. Azima alleges no ownership interests in any of these

---

² This court "may properly take judicial notice of [the Request for Info. (Doc. 69) as a] matter[] of public record" when reviewing Defendant's motion. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)(reviewing a Rule 12(b)(6) motion to dismiss); see also Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record."); see also Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014) (On a Rule 12(c) motion, "[o]pen to the district court's consideration were . . . matters of public record."). Indeed, "the most frequent use of judicial notice . . . is in noticing the content of court records." Colonial Penn Ins. v. Coil, 887 F.2d 1236, 1239-40 (4th Cir. 1989) (internal quotations omitted) (citing 21 Wright & Graham, Federal Practice and Procedure: Evidence § 5106 at 505 (1977) (taking judicial notice of state court records); see also Witthohn v. Fed. Ins., 164 F. App'x 395, 397 (4th Cir. 2006) ("A district court may clearly take judicial notice of [state court] public records" on a motion to dismiss.) The Fourth Circuit has even expressed approval of the practice of district courts "tak[ing] judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint." Witthohn, 164 F. App'x at 397 (citing Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

- 16 -

> businesses, nor are any of the putative trade secrets
> identified as belonging to him personally.

(Id. at 4.) This court is not convinced by Defendants' argument for several reasons.

First, itemizing the trade secrets by associated business does not demonstrate that Azima lacks ownership of the trade secret; he does not need to own the business itself to own a trade secret that is related to that business's activities. For example, a financial services consultant may develop pricing and bidding formulas to obtain the best possible merger or acquisition deal for their clients; although the deal's pricing may be specific to the client company, the pricing and bidding formula could be owned by the consultant who developed it. This is because "pricing and bidding formulas can constitute trade secrets," Asheboro Paper and Packaging, Inc. v. Dickinson, 599 F. Supp. 2d 664, 676 (M.D.N.C. 2009), and because the research and knowledge "that would give a person skilled in the art a competitive advantage" can constitute a trade secret, Glaxo Inc. v. Novopharm Ltd., 931 F. Supp. 1280, 1299 (E.D.N.C. 1996).

Second, in the English lawsuit—as in the present case—Plaintiff asserts harms to his business interests, "including loss in the value of trade secrets and confidential information." (Request for Info. (Doc. 69-1) at 14.) Plaintiff asserts ownership of the trade secrets in both cases. Nowhere in

- 17 -

the Request for Info. does Plaintiff suggest that the trade secrets belong to the associated businesses; he merely groups them by business. Defendants have added the language suggesting ownership by different parties in their brief.

Third, the same document also explains that "the quantity of information hacked from Mr Azima[sic] was very large . . . [such that] Mr Azima[sic] has conducted a substantial review of the materials to identify trade secrets . . . but for practical reasons it has not been possible to review the entirety of the hacked materials at this stage." (Id. at 14.) This shows that the list Defendants rely upon may not be exhaustive; it is possible there are other trade secrets that were also misappropriated. Discovery has not even commenced in this case, and further factfinding on Plaintiff's claims will be necessary.

Finally, even if Plaintiff does not own any of the trade secrets in this list that are associated with other businesses, the list also includes trade secrets not associated with any business. (See Request for Info. (Doc. 69-1) at 24–25.) For example, it includes a "[c]onfidential price list for registered truck fleet being used to transport food for US troops in Afghanistan . . . ." (Id. at 25.) Pricing lists are considered trade secrets. See Asheboro Paper and Packaging, 599 F. Supp. 2d at 676. This specific trade secret is not listed as being

associated with any other business, suggesting that may be owned solely by Plaintiff. (See Request for Info. (Doc. 69-1) at 24-25.)

Thus, Plaintiff has adequately demonstrated ownership of the trade secrets at issue to confer standing under the TSPA.

**IV. CONCLUSION**

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) (Doc. 67), is **DENIED**.

This the 28th day of September, 2022.

_____
United States District Judge