UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-cv-954

FARHAD AZIMA,

    Plaintiff,

v.

NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,

    Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

**(Filed Under Seal[1])**

    The Complaint in this case alleges criminal misconduct by Defendants Nicholas Del Rosso and his company Vital Management Services, Inc., against Plaintiff Farhad Azima. More than two years after this case was filed, Plaintiff served Del Rosso with a Notice of Deposition for his testimony. Defendants seek to indefinitely delay this necessary step in the litigation process due to alleged side effects from medication for the purported illness of Del Rosso. Defendants' attempts to prevent a deposition of Del Rosso appear to be part of a concerted

---

[1] Given the inclusion of medical and other personal identifying information, some of which has already been sealed by the Court, in this Response, Plaintiff will out of an abundance of caution move to file under seal this Response and the Exhibits to the Declaration that accompanies this Response.

1

effort to avoid providing any discovery in this matter. This motion should be denied.

Plaintiff has also noticed a Rule 30(b)(6) deposition for Defendant Vital, and Defendants have refused to produce a witness for that deposition as well. Defendants claim that Del Rosso is the only person capable of serving as a company representative for a Rule 30(b)(6) deposition of Defendant Vital. Consistent with their pattern of refusing to engage in meaningful discovery, Defendants have refused to produce even a single document in response to Plaintiff's first set of requests for production and have refused to adequately explain this clear violation of the Rules.

Defendants' bald claim of Del Rosso's diminished mental capacity is unpersuasive. Defendants make the conclusory claim that Del Rosso is experiencing side effects from cancer treatment that has resulted in temporary diminished mental capacity, yet diminished capacity (temporary or otherwise) is not a sufficient ground to delay his deposition. Defendants must show that sitting for a deposition would endanger Del Rosso's health, something they have not done. Defendants' only support is a conclusory letter from Del Rosso's oncologist, and Del Rosso's claims of mental impairment are largely contradicted by his oncologist (who is not a cognition expert). His oncologist does not conclude that Del Rosso is cognitively impaired, but makes the limited conclusion only that Del

Rosso's brain cognitive assessment test results "[are] not sufficient to classify him formally as cognitively impaired," but are simply below average. ECF No. 97-6 at 1. This evaluation was largely based on the oncologist's "anecdotal" views regarding Del Rosso's fitness to be deposed. Del Rosso's oncologist concedes that Del Rosso "is largely independent in his instrumental activities of daily living." Plaintiff's evidence attached to this response shows this to be accurate: Within the last two weeks, Del Rosso has been observed traveling to and attending a lengthy play in a theater in Durham, driving a car unaccompanied by others, grocery shopping on his own, and using multiple ATMs (presumably after recalling one or more financial PINs), all of which undercut his claims of incapacitation.

Defense counsel's own representations also undermine the claim that Del Rosso has diminished capacity. Since the deposition notices were served, Defendants' lawyers have confirmed that they have repeatedly interviewed their client and have relied upon information obtained during those interviews when proffering information to counsel. If Del Rosso can be interviewed by his lawyers and provide information reliable enough to be used in attempting to prevent any depositions, he is capable of sitting for a deposition.

Furthermore, neither Defendants nor Del Rosso's doctor have provided anything more than a vague timeline for when his allegedly diminished capacity

will recover, saying that Del Rosso should not sit for a deposition "for at least one to two months, and possibly up to six months." ECF No. 97 at 1. Given the seriousness of his illness, any delay here presents a greater risk that Del Rosso's condition would worsen before he is able to be deposed. Plaintiff is open to negotiating the format and circumstances of the deposition to accommodate any stamina issues Del Rosso may face, but there is no justification for preventing Del Rosso's deposition. Now is the most effective time to preserve Del Rosso's testimony.

## BACKGROUND

On November 21, 2022, Plaintiff's counsel emailed Defendants' counsel after learning that Del Rosso was being treated for cancer and that his condition was potentially life-threatening *See* ECF No. 97-1 at 3. Defendants' counsel requested a call to discuss Del Rosso's condition. *Id.* at 2.

Contrary to Defendants' account, the ensuing call did little to assuage Plaintiff's concerns. Counsel described Del Rosso's **physical** condition as very serious, saying that Del Rosso was diagnosed with multiple myeloma (an incurable terminal blood plasma-based cancer) in late 2021, that the disease had progressed quickly and affected his kidneys and bone structure, and that the illness was serious enough that Del Rosso had already been in and out of the hospital multiple times. Despite this dire recitation, counsel simultaneously

4

downplayed the possibility of Del Rosso's imminent death, saying Del Rosso was in remission after receiving an aggressive series of treatments. Rather than claim that Del Rosso's physical condition prevents his sitting for a deposition, counsel instead claims that Del Rosso should not be deposed because his mental capacity has been temporarily diminished as a result of his treatment. No information has been provided regarding the extent of this purported diminishment.

Given the obvious risk that Del Rosso will undergo further treatment and be unable to provide testimony in the future, Plaintiff issued a Notice of Deposition to Del Rosso on December 8, 2022, to preserve his testimony. *See* ECF No. 97-3.[2] During a subsequent meet and confer, Plaintiff's counsel pushed to understand why counsel for Defendants believed Del Rosso's side effects were expected to improve, and how and when. For example, Plaintiff's counsel asked Del Rosso's counsel to explain whether Del Rosso's purported memory issues were a typical side effect of the treatment and, if so, when that side effect subsided in a typical case. Plaintiff's counsel asked for a date certain within the discovery period when Del Rosso could be deposed. Del Rosso's counsel declined

---

[2] This case has been pending for more than two years, and Plaintiff has repeatedly sought to start discovery since instituting this case. At every turn, Defendants have sought to delay and otherwise opposed any discovery from taking place without ever mentioning that Del Rosso had terminal cancer that could result in the loss of critical evidence and testimony.

5

Case 1:20-cv-00954-WO-JLW   Document 105   Filed 12/30/22   Page 5 of 16

to provide answers to these questions or dates for a deposition. Instead, counsel said that Del Rosso was not in a position to be deposed and would not be for an unknown number of months. In the absence of a more concrete explanation, Plaintiff maintained the noticed deposition date, and Defendants filed their Motion for a Protective Order. *See* ECF No. 97.

## LEGAL STANDARD

"Protective orders pursuant to Rule 26(c) 'should be sparingly used and cautiously granted.'" *Armitage v. Biogen, Inc.*, No. 1:17-cv-1133, 2019 WL 79037, at *2 (M.D.N.C. Jan. 2, 2019) (cleaned up). Indeed, "[n]ot only are protective orders prohibiting depositions rarely granted, but [the moving party] has a heavy burden of demonstrating the good cause for such an order." *Id.* When considering a motion for protective order to bar a deposition based on alleged health concerns, the Court "may not abdicate its responsibility by unquestionably accepting a doctor's summary opinions." *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987). A physician must do more than simply assert that a deposition cannot go forward; instead, "[i]n seeking to prevent or delay a deposition by reason of medical grounds, the moving party has the burden of making a specific and documented factual showing that the deposition would be dangerous to the deponent's health." *Id.* at 653; *see also Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1988) (holding that a "request for extended stay of a deposition

6

requires more than a conclusory statement by a physician"); *Union First Mkt. Bank v. Bly*, No. 3:13-cv-598, 2014 WL 66834, at *5 (E.D. Va. Jan. 6, 2014) (denying motion for protective order because the party only "support[ed] his argument with the submission of three short exhibits consisting of an affidavit and two opinion letters from his primary care doctor"); *Cobra International, Inc. v. BCNY International, Inc.*, No. 05-cv-61225-, 2006 WL 8411610, at *3 (S.D. Fla. Oct. 2, 2006) ("While establishing that [the potential deponent] is indeed ill, the letter only generally describes [the deponent's] condition and fails to state whether his health would be jeopardized by submitting to a deposition.").

## ARGUMENT

### I. Defendants Have Not Shown that a Deposition Poses a Threat to Del Rosso's Health.

Del Rosso does not argue that a deposition would somehow be harmful to his health. Rather, he claims that his alleged temporary diminished capacity justifies an undefined delay. Yet diminished capacity is not a basis for delaying a deposition. Indeed, it may be a reason to expedite the deposition since his capacity could diminish further.

Defendants submitted a brief, conclusory letter from Dr. Samuel Rubenstein, Del Rosso's oncologist, which concludes that Del Rosso's treatment is "likely to impair his ability to meaningfully participate in [a] protracted deposition[]." ECF No. 97-2 at 2. The standard for determining whether to grant

the protective order, though, is not whether Del Rosso can "meaningfully participate" in a "protracted" deposition, but whether Defendants have alleged with specificity that a deposition would be "dangerous to [Del Rosso's] health." *Medlin*, 113 F.R.D. at 653.

Defendants' conclusory letter falls well below this exacting standard, and does not support Defendants' claims regarding Del Rosso's diminished capacity. The letter does not, for example, provide details regarding even basic facts: Del Rosso's treatment plan; when he started receiving treatment; when he plans to stop treatment; what dosage of medication(s) he may be receiving; over what period he is to take prescribed medication; or what the common side effects for those treatments are.[3]

Claims of memory impairment present a high bar for those seeking to avoid a deposition. *See, e.g.*, *Hardy v. UPS Ground Freight, Inc.*, No. 3:17-cv-30162-MGM, 2019 WL 13144825, at *5 (D. Mass. Oct. 7, 2019) ("Except in extreme cases, courts generally have rejected the contention that a deponent's unreliable memory resulting from an impairment is a basis on which to prohibit a deposition."). Regardless, the letter here does not reveal any specific findings as

---

[3] Plaintiff seeks an independent medical review of Del Rosso's condition. As part of this review, Plaintiff would seek to have a medical expert interview Del Rosso's physician(s). Plaintiff requested this relief from Defendants before filings this Response, but they refused to consent.

to Del Rosso's impairment; the doctor even admits that Del Rosso's brain cognitive assessment test results "[are] not sufficient to classify him formally as cognitively impaired," but based on the doctor's "anecdotal" analysis are simply below average. ECF No. 97-6 at 1. His doctor couches these vague assertions by noting (multiple times) that he is "not a neurologist or clinical expert in cognition." *Id*. at 2. While the doctor suggested that "[i]t may be reasonable to refer him for a more formal, detailed cognitive assessment to determine his ability to participate in [a deposition]," Defendants do not indicate that Del Rosso has participated in such an assessment or otherwise provide any meaningful information about his cognitive abilities.

The letter also claims that Del Rosso needs "prolonged periods of recuperation" and he may be unable "to sit still for protracted periods of time," but these alleged conditions[4] are, at best, an argument for why Del Rosso cannot sit for a "protracted" deposition without accommodations as opposed to why he cannot sit for any deposition at all. And even this argument rings hollow, since (as discussed below) Del Rosso recently attended a three-hour holiday play at a theater.

---

[4] As noted below, *see infra* at Section II, the Court should not take these representations at face value. Plaintiff has evidence indicating that Del Rosso is more mentally and physically capable than his doctor's letter indicates.

9

Plaintiff would be open to, for example, limiting the time on the record, breaking the deposition across multiple days, or holding it in a location where Del Rosso is most comfortable. Neither Defendants nor Del Rosso's doctor even attempt to address why such accommodations are not possible, something they should have done to carry their burden. *See S.E.C. v. Children's Internet, Inc.*, 06-cv-6003, 2008 WL 346419, at \*3 (N.D. Cal. Feb. 7, 2008) (holding deponent had to sit for a deposition despite "a serious medical condition" because the declaration from the deponent's doctor was "conclusory and fail[ed] to address whether a deposition with special accommodations would be possible").

## II. Del Rosso's Recent Activities Suggest He Is Competent to Testify Forthwith.

Del Rosso's recent activities raise serious questions about whether his capacity is diminished at all. Far from being bedridden, Del Rosso has been recently observed still leading an active lifestyle. He is living independently, and doing activities such as meaningfully participating in his own defense by attending meetings with his lawyers, attending holiday events, driving to accomplish multiple errands by himself, grocery shopping by himself, and accomplishing financial transactions at multiple ATMs. *See* Declaration of Randy Shepard ¶¶ 11-15. This level of activity requires Del Rosso to use the very skills that Defendants claim Del Rosso could not exercise in a deposition. For example, he had to drive his car, remember how to get to the store, think about which items

10

he needed to get while shopping, interact with others, make decisions regarding his finances, and recall and enter one or more ATM PINs at two different machines. *See id.* Del Rosso also recently went to a play in downtown Durham where he stayed for over three hours before returning home, indicating he still has physical stamina. *Id.* ¶¶ 3-8. For much of this activity he appeared to be unmasked. *Id.*, Exh. A-G. If Del Rosso has the capacity to meet with his lawyers, attend a play, drive unaccompanied several different places, shop independently, and attend to financial matters using multiple ATMs, he has the capacity to sit for a deposition, especially if offered reasonable accommodations.

### III. Plaintiff's Need to Preserve the Testimony of a Party Opponent Outweighs Defendants' Purported Concerns.

Defendants further argue that Del Rosso's testimony is not urgently needed, and that allowing "additional time for [Del Rosso's] cognitive impairments to dissipate" should outweigh Plaintiff's need to preserve his testimony. ECF No. 98 at 8. But it is unclear what, if anything, Defendants cite in support of their position that these cognitive impairments will clear up at all, or clear up before worsening due to his condition. Del Rosso's doctor only asserts that he is "not a neurologist or clinical expert in cognition," but "[b]ased on [his] ***anecdotal experience*** taking care of patients . . . [Del Rosso's] degree of cognitive dysfunction . . . typically has a protracted recovery time." ECF No. 97-6 at 2 (emphasis added). Without additional explanation or citation, the doctor

11

claims that it might take Del Rosso "six months to recover to a point that he could [be deposed]." *Id.* Del Rosso's doctor does not (and apparently cannot) explain with any medical specificity or expertise when Del Rosso might recover or the circumstances that would produce such a recovery. If anything, this militates in favor of taking the deposition now, before Del Rosso's condition deteriorates.[5]

In contrast, Plaintiff <u>needs</u> Del Rosso's testimony and is entitled to have it, and there is no guarantee Plaintiff will get it if Del Rosso's deposition is delayed. Del Rosso is the primary defendant,[6] and a central figure in the criminal wrongdoing alleged in Plaintiff's Complaint. By Defendants' own admission, Del Rosso's condition is terminal, and his doctor's unsupported "anecdotal" assurances that Del Rosso's cognition will improve at some time in the next six months is insufficient to justify delaying any testimony from Del Rosso. Moreover, as noted above, even if Del Rosso was dealing with the alleged

---

[5] Even if it is correct that Del Rosso's medical treatment – not his life-threatening illness – is causing his purported memory loss, there are no guarantees that Del Rosso's cancer will not relapse in the coming months, forcing Del Rosso into additional (or more severe) treatment that he claims is causing his memory issues.

[6] Indeed, when Plaintiff noticed a Rule 30(b)(6) deposition for the other Defendant, Vital Management Services, counsel for the Defendants said that deposition also could not go forward because Del Rosso was the "sole representative" for Vital and no one else could testify on its behalf. According to Defendants' counsel, then, if Del Rosso continues to be unable to give testimony, there is no one to speak for any Defendant in the case.

12

Case 1:20-cv-00954-WO-JLW   Document 105   Filed 12/30/22   Page 12 of 16

impairments claimed in his doctor's letter, the appropriate recourse would be to mitigate those issues through the format of the deposition (which Plaintiff has been willing to do), not to stay the deposition for an indefinite amount of time. *See Jennings*, 201 F.R.D. at 276 (allowing a deposition in judge's courtroom, where any health concerns could be taken of care of directly); *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 94 (N.D. Tex. 1994) (ordering safeguards on the deposition, including holding the deposition at the plaintiff's treatment facility).

## CONCLUSION

It is in the interests of justice that Plaintiff preserve Del Rosso's testimony at this key juncture in the litigation through a reasonably structured deposition. Del Rosso's recent activities show that he is able to testify both as a factual and as a legal matter. Denying Plaintiff the opportunity to depose Del Rosso and preserve his testimony now, without a reasonable guarantee of the ability to do so in the future, will severely prejudice Plaintiff's ability to prove his claims against Defendants.

13

This, the 30th day of December, 2022.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina Bar No. 22275
Christopher W. Jones
North Carolina Bar No. 27625
Jonathon Townsend
North Carolina State Bar No. 51751
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email: ripley.rand@wbd-us.com
chris.jones@wbd-us.com

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Brian A. Hill (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com

*Counsel for Plaintiff*

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-CV-954

FARHAD AZIMA,

    Plaintiff,

v.

NICHOLAS DEL ROSSO and
VITAL MANAGEMENT
SERVICES, INC.,

    Defendants.

**CERTIFICATE OF SERVICE**

    I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice, and sent copies of this Response and all exhibits via email, to the following attorneys:

    Brandon S. Neuman, Esq.
    Jeffrey M. Kelly, Esq.
    Nathaniel J. Pencook, Esq.
    301 Hillsborough Street
    Suite 1400
    Raleigh, NC 27603
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    Telephone: 919.329.3800
    Facsimile: 919.329.3799

15

Case 1:20-cv-00954-WO-JLW   Document 105   Filed 12/30/22   Page 15 of 16

This, the 30th day of December, 2022.

                                        **WOMBLE BOND DICKINSON (US) LLP**

                                        /s/ *Ripley Rand*

                                        Ripley Rand
                                        North Carolina State Bar No. 22275
                                        555 Fayetteville Street, Suite 1100
                                        Raleigh, NC 27601
                                        Telephone:  (919) 755-8125
                                        Facsimile:  (919) 755-6752
                                        Email:    ripley.rand@wbd-us.com

                                        *Counsel for Plaintiff*