UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>   Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>   Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

  The protective order sought by Defendant Nicholas Del Rosso ("Del Rosso") simply seeks a two (2) month delay of his deposition, to and including March 10, 2023, without prejudice to his ability to seek further extensions should they be necessary (at which time Del Rosso would provide additional information from his medical providers for this Court's consideration).[1] Such reasonable delay would allow Del Rosso to progress his recover further and provide all parties the benefit of his testimony less encumbered by the effects of his medical condition. Courteous parties would freely grant such a delay, and typically would work with opposing counsel to find a mutually-agreeable date.

  Instead, Plaintiff Farhad Azima ("Azima") has gone to incredible lengths to contradict the letter provided by Defendant Nicholas Del Rosso's ("Del Rosso")

---

[1] Counsel held an additional meet-and-confer conference regarding the deposition dates of Mr. Del Rosso and Vital Management Services, Inc. on December 30, 2022, during which the parties discussed, inter alia, setting a specific date in March for Mr. Del Rosso's deposition. On January 4, 2023, Defendants emailed Plaintiff that they would agree to set Mr. Del Rosso's deposition for March 10, 2023, even if his condition does not improve by then. A true and accurate copy of Defendants' January 4, 2023 email is attached hereto as **Exhibit A**.

oncologist, including remarkably going so far as to surveil him over a simple Motion seeking to reasonably postpone Del Rosso's deposition at his oncologist's recommendation; however, Azima ultimately fails to convincingly rebut the explanations provided by Del Rosso's oncologist as to why Del Rosso's deposition should not go forward on January 10, 2023, rather than some other reasonable amount of time later. Indeed, Azima's counsel has not offered to provide Del Rosso with another day, week, or month of time more to progress in his recovery. *See* **Exhibit B**, January 4, 2023 email from Kirby Behre to Brandon Neuman.

Azima would not be prejudiced by a 60-day delay. Not only would a deposition on this timeline still be conducted within the discovery period, but Plaintiff has already obtained testimony from Del Rosso in proceedings in the UK. There is very little risk of losing new testimony from Del Rosso regarding Azima's claims. All Del Rosso seeks—at his oncologist's recommendation—is a reasonable amount of time to allow him to progress further in his recovery before he is deposed. While Azima is permitted to conduct discovery, there is ample time within the fact discovery period in which to do so while also preventing the undue burden, embarrassment, and harassment that Del Rosso would endure if his deposition is required to occur on January 10, 2023.

## FURTHER BACKGROUND

Azima's Response Brief (ECF No. 105) describes ongoing discussions between counsel related to a 30(b)(6) Notice to Defendant Vital Management Services, Inc. and document requests to Defendants as "a concerted effort to avoid providing any

discovery in this matter." Not so. As will be addressed in a forthcoming Motion for Protective Order, Del Rosso is the only possible 30(b)(6) designee for the topics identified by Azima (many of which are objectionably overbroad), and as such, that deposition needs to be delayed for the same reasons as Del Rosso's individual deposition should be delayed. Like the deposition of Mr. Del Rosso, through the meet-and-confer process Defendants have proposed setting the 30(b)(6) deposition of Vital Management Services, Inc. for a mutually-agreeable date within two weeks of March 10, 2023. *See* **Exhibit A**. Further, Defendants sought a reasonable extension of time to respond and produce responsive documents to Azima's requests for production. (ECF No. 100). This is not a "concerted effort to avoid providing any discovery in this matter." Azima's haste to complete discovery as early as possible without regard for Del Rosso's valid health concerns—which at this point appear to be an effort to take advantage of Del Rosso's weakened state—is what has necessitated Court intervention in this dispute over deposition dates.

## ARGUMENT

In their Motion for Protective Order, Defendants demonstrated good cause supporting delaying Del Rosso's deposition date for sixty (60) days.[2] Azima's characterization of Dr. Rubenstein's letter and surveillance of Del Rosso fail to rebut the good cause that exists for this Court to exercise its broad discretion to protect Del Rosso from the undue prejudice, undue burden, harassment, and embarrassment

---

[2] During the meet-and-confer process which has taken place after Defendants filed their Motion for Protective Order, counsel for Azima stated that they thought Defendants were seeking an indefinite extension on the date of Del Rosso's deposition. Defendants, however, are not seeking an indefinite extension, but rather a reasonable delay of sixty (60) days.

3

that would result from being deposed on January 10, 2023. As detailed in set forth further herein, this Court should grant a reasonable two-month delay, resetting Del Rosso's deposition for March 10, 2023.

## I. The Letter from Dr. Rubenstein Is Not Conclusory and Supports Reasonably Postponing Mr. Del Rosso's Deposition.

On this Motion, the Court is tasked with balancing the harm and prejudice to Del Rosso if the deposition moves forward on January 10 with Azima's need to depose Del Rosso on that particular date. *See UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988). Dr. Rubenstein's letter credibly explains the harms that would befall Del Rosso in a detailed, non-conclusory fashion. Dr. Rubenstein did not simply provide a letter saying "please excuse Mr. Del Rosso from his deposition." Rather, Dr. Rubenstein provided a letter describing at great length Mr. Del Rosso's medical condition, treatment history, prognosis, and side effects which support his conclusion that Mr. Del Rosso should not be deposed at this time due to cognitive and physical side effects of his treatment that Dr. Rubenstein believes will improve over time.

Azima's Response underscores the credibility of Dr. Rubenstein's letter, despite disagreeing with his ultimate medical opinion regarding Del Rosso's ability to be deposed. Notably, Azima did not provide any analysis from a qualified medical professional disagreeing with Dr. Rubenstein's opinion or analysis. Dr. Rubenstein's letter is not filled with unsupported platitudes, but rather contains a description of his analysis and appropriate qualifying statements (including that he has observed obvious signs of, and tested Del Rosso for, cognitive impairment, despite not being a

4

neuropsychological expert). Based on his analysis and his own medical expertise, Dr. Rubenstein still recommends that Mr. Del Rosso not be deposed in the next 1-2 months.

If Del Rosso's deposition occurs on January 10, 2023, the harm to Del Rosso is not only to his medical condition, but also the undue prejudice, undue burden, harassment, and embarrassment that would result from undertaking his immediate deposition. A patient like Del Rosso suffering from cognitive impairments is likely to be unable to testify whether he recalls certain events that he may regain memory of at a later date when these conditions subside. In that circumstance, Azima is likely to seek to exclude such evidence that Del Rosso was unable to recall at his earlier deposition, which would prejudice his case based solely on the fact that Azima was unwilling to schedule Del Rosso's deposition at a reasonable time. Thus, requiring Del Rosso to be deposed on January 10, 2023 would materially prejudice his ability to defend the lawsuit. Moreover, there can be no question that these same cognitive limitations combined with his physical limitations would reasonably perceived as harassing, embarrassing, and unduly burdensome, especially when a deposition a reasonable amount of time later would alleviate these issues. In short, Del Rosso has articulated a specific harm that is supported by Dr. Rubenstein's thorough letter.

## II. Mr. Azima's Surveillance of Mr. Del Rosso Does Not Undermine the Medical Recommendation of Dr. Rubenstein.

Azima's Response attaches a declaration from Randy Shepard, a private investigator, which cherry-picks certain photos and activities Mr. Shepard observed Del Rosso engaging in on December 18 and 20. Azima's characterizations of his

5

private investigator's banal observations of Del Rosso's activities on December 18 and 20 are not persuasive and fail to provide a full picture. Azima's private investigator could not observe, for example, whether Del Rosso had trouble recalling his ATM pin number or even whether he in fact successfully recalled his pin number and withdrew cash—he merely observed that Del Rosso went to two ATMs. He does not observe what Del Rosso did on the 18th other than be driven by a "white female" to a parking deck to return some time later—not what Del Rosso did during the intervening times. Tellingly, Mr. Shepard's declaration does not (1) state how long he was surveilling Del Rosso or (2) produce a complete description of his surveillance activities. Based on the only activities that Mr. Shepard deemed worth noting in rebuttal, the resulting conclusion is that Del Rosso stays at his home to recover, save for limited, non-strenuous activities while he continues to recover. The activities Mr. Del Rosso was observed engaging in—driving to the grocery store, buying groceries, visiting the ATM, and attending a play—are not of the same kind as the deposition sought here. Such leisurely activities do not arise to the same level of cognitive or physical engagement as a confrontational deposition by a party who accuses—in a civil lawsuit—Defendants of engaging in "criminal misconduct." (*See* ECF No. 105, p. 1).[3] That Del Rosso has driven to the grocery store does not equate to his fitness to undergo a hostile deposition in this case. Thus, Mr. Shepard's declaration is of little value to this Court in determining whether Del Rosso should be forced to be deposed

---

[3] Indeed, to avoid any confusion—this is not a criminal matter. This is a narrow civil trade secret disclosure lawsuit under North Carolina law. The absurdity of Azima's accusation of "criminal misconduct" further underscores the hostility and unreasonableness of Azima's position in this matter generally and with respect to deposition scheduling in particular.

6

on January 10, 2023, but it should cause the Court to question Azima's motives in hiring a private investigator to support his effort to push for this party deposition so early in the discovery period.

### III. Mr. Azima Does Not *Need* Mr. Del Rosso's Deposition on January 10 or Any Other Time Prior to Mr. Del Rosso's Recovery.

Despite receiving evidence from Del Rosso's oncologist that Del Rosso's chances of imminent relapse are very low, Azima still presses a narrative that this deposition is necessary to preserve Del Rosso's testimony in light of his medical condition. Dr. Rubenstein's letter—and, apparently, the observations of Plaintiff's private investigator—exposes the facetiousness of Azima's concerns about Mr. Del Rosso's condition necessitating an immediate deposition to "preserve" Mr. Del Rosso's testimony. Dr. Rubenstein opines with great confidence that Mr. Del Rosso is unlikely to relapse in the near term, citing several peer-reviewed studies along with his own clinical experience to support this opinion. Azima's Response ignores this opinion and instead substitutes his own medically-unsupported concerns to fabricate a "need" to move forward on January 10.

Further, Azima's claim that Del Rosso's testimony would be forever lost is incorrect. Del Rosso has already testified to these matters in parallel proceedings in the UK. *See, e.g.*, D.E. 22-1 p.16 ¶ 69 ("Nicholas del Rosso gave evidence as to his involvement in retaining NTi to download the Hacked Material from the BitTorrent sites. His evidence was uncontroversial."). Even in the highly unlikely scenario that

7

Del Rosso is unable to testify on March 10, 2023,[4] Azima has already had an opportunity to secure testimony from Del Rosso on the only remaining issues in this case – the 2018 and 2019 alleged disclosures of Azima's alleged trade secrets. *See, e.g.*, ECF No. 65, p.17 (citing Azima's brief describing such testimony). The existence of Azima's prior opportunities to secure testimony from Defendants further undermines their argument as to need and exposes that this deposition—as with this entire Action—is an attempt by Azima to get another bite at the apple.

## CONCLUSION

Defendants' Motion seeks a two-month delay of his deposition given his efforts to recover from cancer treatments. Such a reasonable delay is well within this Court's broad discretion and would not prejudice Azima's case. Defendants' respectfully request that the Court grant this Motion, entering a Protective Order prohibiting Azima from deposing Del Rosso until March 10, 2023.

This the 4th day of January, 2023.

        **NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
301 Hillsborough St., Ste. 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

---

[4] Without prejudice to Del Rosso's ability to seek further relief as his condition merits.

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 2,059 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 3,125-word limitation.

Respectfully submitted this 4th day of January, 2023.

          **NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:   */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
301 Hillsborough St., Ste. 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2023, I electronically filed the foregoing **Defendants' Reply in Support of Motion for Protective Order** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

| | |
|---|---|
| Jonathan D. Townsend | Calvin Lee |
| Christopher W. Jones | Ian Herbert |
| Ripley Rand | Kirby D. Behre |
| Womble Bond Dickinson (US) LLP | Miller & Chevalier Chartered |
| 555 Fayetteville Street, Suite 1100 | 900 16th Street, NW |
| Raleigh, NC 27601 | Washington, D.C. 20006 |
| jonathan.townsend@wbd-us.com | clee@milchev.com |
| chris.jones@wbd-us.com | iherbert@milchev.com |
| ripley.rand@wbd-us.com | bhill@milchev.com |
| | kbehre@milchv.com |

        **NELSON MULLINS RILEY &**
               **SCARBOROUGH, LLP**

By: */s/ Brandon S. Neuman*
     Brandon S. Neuman, NCSB# 33590
     Jeffrey M. Kelly, NCSB# 47269
     Nathaniel J. Pencook, NCSB# 52339
     301 Hillsborough St., Ste. 1400
     Raleigh, North Carolina 276o3
     Telephone: (919) 329-3800
     Facsimile: (919) 329-3799
     brandon.neuman@nelsonmullins.com
     jeff.kelly@nelsonmullins.com
     nate.pencook@nelsonmullins.com
     *Counsel for Defendants*