FARHAD AZIMA,

          Plaintiff,

v.

NICHOLAS DEL ROSSO and VITAL
MANAGEMENT SERVICES, INC.,

          Defendants.

CASE NO. 1:20-cv-00954-WO-JLW

**Memorandum of Law in Support of Defendants' Emergency Motion to Quash and for Protective Order Regarding Subpoenas to First National Bank of Pennsylvania and First Citizens Bank & Trust Co.**

*Expedited Relief Requested*
*Response Date for Subpoenas – January 24, 2023*

NOW COME Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS") (collectively, "Defendants"), and, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure ("Rule(s)"), hereby submit the following brief in support of their Motion to Quash and for Protective Order Regarding Subpoenas issued by Plaintiff to First National Bank of Pennsylvania and First Citizens Bank & Trust Co.

## I. BACKGROUND

This lawsuit arises out of Plaintiff Farhad Azima's ("Plaintiff") allegations – which Defendants strenuously deny – that Defendants' engagement with an international law firm included assisting with the hacking and leaking of Plaintiff's confidential and personal business information. (D.E. 1.) Indeed, while the

allegations in the Complaint pertain to conduct on multiple continents spanning over the course of more than a decade, Plaintiff's case has been significantly narrowed as a result of the dismissal of nine of the eleven claims in the Complaint. (*See* D.E. 65).

## A. The Court limits Plaintiff's Claims to Defendants' Alleged 2018-2019 Conduct.

On December 10, 2021, in its Memorandum Opinion and Order on Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (the "12(b)(6) Opinion"), the Court granted Defendants Rule 12(b)(6) motion to the extent it sought dismissal of Counts I, II, III, IV, V, VI, VII, IX, and XI of Plaintiff's Complaint, largely on statute of limitations grounds. (D.E. 65; *see also* D.E. 54). The Court nevertheless permitted Plaintiff to pursue their North Carolina Misappropriation of Trade Secrets claim (Count VIII) and a dependent North Carolina civil conspiracy claim (Count X) (collectively, the "Remaining Claims"), but significantly limited the scope of conduct which could support the Remaining Claims. (D.E. 65, at pp.22–24).

More specifically, with respect to the North Carolina misappropriation of trade secrets claim (Count VIII), the Court concluded:

> the 2016 conduct, 2018 conduct, and 2019 conduct each separately triggered accrual of a respective three-year limitations period for that particular conduct. Consequently, Plaintiff's 2020 filing of this case fell outside the three-year period for the 2016 conduct. Therefore, as to the 2018–2019 conduct, Count VIII is not time barred.

(*Id*. at p. 23.)

Similarly, with respect to the North Carolina civil conspiracy claim (Count X), the Court concluded that this broad claim could not survive as originally pled, acknowledging that "[t]he civil conspiracy claim only survives because this court has

found that Count VIII (misappropriation of trade secrets under North Carolina law) remains viable[.]" (*Id.*) Accordingly, the Court concluded that "Plaintiff's dependent civil conspiracy claim is likewise limited to the 2018-2019 conduct – the only allegations that are not time-barred." (*Id.* at p.24).

Further, in its 12(b)(6) Opinion, the Court specifically identified the "2018-2019 conduct" to which it was referring—the allegations that Defendants conspired with CyberRoot Risk Advisory Private Limited ("CyberRoot")[1] to create new blog sites in May and June 2018 and, again, in June 2019, and that Defendants used WeTransfer to transfer Plaintiff's data. (*Id.* at pp. 17–18 (citing to the Complaint, D.E. 1, at ¶¶ 16, 19, 22, 24–26)). As such, the Court limited the subject matter and temporal scope of Plaintiff's remaining case to these allegations. (*See id.* at pp. 23–24).

More recently, the Court reiterated the narrowed scope of this lawsuit in its Memorandum Opinion and Order on Defendants Motion to Dismiss pursuant to Rule 12(b)(1), succinctly stating that only "two of Plaintiff's claims were allowed to proceed: a North Carolina misappropriation of trade secrets claim arising from the 2018-2019 online posting of new links to Plaintiff's confidential business data (Count VIII) and a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim (Count X)." (D.E. 80, at p.4).

---

[1] CyberRoot is a company based out of Gurgaon, India, and at all times relevant, CyberRoot was accredited to provide cyber security and information technology work for the Indian government.

3

Despite the narrowed scope of this case, Plaintiff has nevertheless commenced broad discovery into matters unrelated and not proportionate to the Remaining Claims.

## B. Plaintiff Seeks Broad Discovery Into Defendants' And Third Parties' Bank Records

On January 16, 2023, Defendants received notice of Plaintiff's intent to serve a third-party subpoena on First National Bank of Pennsylvania ("First National") (the "First National Subpoena") requesting:

> All documents and communications relating to accounts held in the name of, owned by, or for the benefit of Shanahan Law Group, Kieran Shanahan, Nicholas Del Rosso or Vital Management Services, Inc. This request includes transfers to and from those accounts, including but not limited to transactions between Shanahan Law Group and Vital Management Services, Inc., totaling approximately $6.2 million between June 2017 and November 2020. This request includes but is not limited to bank statements, account opening documents, communications about the accounts or with the account holders, and records of money transfers via wire, SWIFT, check, or other method.

*See* First National Subpoena, **Ex. A** to Motion.[2] Defendants' counsel, Shanahan Law Group ("SLG") and Kieran Shanahan, maintain their firm trust account at First National.

Also on January 16, 2023, Defendants received notice of Plaintiff's intent to serve a third-party subpoena on First Citizens Bank & Trust Co. ("First Citizens") (the "First Citizens Subpoena") requesting,

> All documents and communications relating to accounts held in the name of, owned by, or for the benefit of GH Holdings LLC, Kristin White Del Rosso, Nicholas Del Rosso, or Vital Management Services, Inc. This request includes transfers to and from those accounts, including but not

---

[2] The return date for the First National Subpoena is January 24, 2023.

limited to transactions between GH Holdings LLC and Vital Management Services, Inc., totaling $2.325 million between October 2018 and October 2019. This request includes but is not limited to bank statements, account opening documents, communications about the accounts or with the account holders, and records of money transfers via wire, SWIFT, check, or other method.

*See* First Citizens Subpoena, **Ex. B** to Motion.[3]

The First National Subpoena and First Citizens Subpoena (collectively, the "Subpoenas") specifically target the bank records of Mr. Del Rosso's wife and his counsel without any attempt to restrict the production of documents to materials related to the subject matter of this lawsuit. Indeed, by not limiting the First National Subpoena to the subject matter of this lawsuit, the First National Subpoena implicates a number of scope, proportionality, and confidentiality issues, but also raises a number of issues under the North Carolina Rules of Professional Conduct.

Defendants first communicated to Plaintiff via email their objections to the Subpoenas on January 18, 2023, noting the time-sensitive nature of these objections,[4] and requesting a meet-and-confer and the "Expedited Resolution" procedure outlined in Local Rule 37.1. Amongst others, the primary objections communicated to Plaintiff were the Subpoenas are overbroad, not reasonably calculated to the production of admissible evidence, not limited to documents pertaining to the issues remaining in this lawsuit, and not proportionate to the needs of the case. Moreover, Defendants pointed out that First National maintains the trust account of Shanahan Law Group

---

[3] Kristin White Del Rosso is Nicholas Del Rosso's wife, and GH Holdings LLC is her company. Of note, there was no return date specified in the copy of the First Citizens subpoena provided to Defendants in Plaintiff's Rule 45(a)(4) notice.

[4] Due to the production date on the First National Subpoena of January 24, 2023—an atypically short response time—and the lack of clarity as to the response date for the First Citizens Subpoena.

("SLG"), and any production in response to the First National Subpoena would implicate a number of attorney-client privilege issues as well as ethical concerns under the North Carolina Rules of Professional Conduct. Defendants asked for a meet and confer conference to be held on January 19, 2023.

On January 19, 2023, Plaintiff's responded via email that they are willing to meet and confer at a later date, but are *not* willing to consent to the expedited procedures outlined in Local Rule 37.1. Moreover, Plaintiff's counsel stated their position that, *inter alia*, they "do not know how to ask for a more narrow set of documents from the bank."[5] Defendants responded and asked for the meet and confer to be held on January 20, 2023 in light of the January 24, 2023 response date for the First National Subpoena. A true and accurate copy of these January 18th and 19th email communications is attached hereto as **Exhibit C**.

The Parties ultimately held the meet-and-confer conference for January 20, 2023, at which John Branch was in attendance for Defendants, and Ian Herbert, Joseph Rillotta, and Kirby Behre were in attendance for Plaintiff. In an email exchange leading up to the conference, Plaintiff's counsel requested that Defendants provide proposals as to the narrowing of the Subpoenas. In response, Defendants stated that it is not Defendants' duty to draft Plaintiff's discovery requests for him, and that the Subpoenas should be withdrawn in their entirety, after which Plaintiff

---

[5] More specifically, Plaintiff contends that the Subpoenas "relate[ ] directly to" the specific transactions referenced in the Subpoena. However, the Subpoenas by their very language are not at all limited to those specific transactions.

can reissue the Subpoenas with a narrower scope. A true and accurate copy, of this email exchange on January 20, 2023 is attached hereto as **Exhibit D**.[6]

During the meet-and-confer, Defendants reiterated their previously communicated objections with the Subpoenas. Plaintiff's counsel stated their position that Defendants do not have standing to challenge the Subpoenas, that there is no way for the bank to parse out documents related to this litigation, and that if we could propose some limiting language, they would consider it and might withdraw the subpoenas. Defendants pointed out that, absent Plaintiff's full withdrawal of the Subpoenas, and with production imminent, the only practical way forward is for Defendants to seek court intervention.

As such, Defendants now bring their Motion to quash and for Protective Order. Defendants ask the Court to enter an Order quashing the Subpoenas in their entirety, or otherwise entering a Protective Order commanding the same. In the interim, Defendants request that the Court enter an order that, to the extent First National and First Citizens respond to the subpoenas, such responses should be made to the Court and not to the Parties.

## II.     LEGAL STANDARD

### A. Rule 26

Rule 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Such orders may prescribe, among

---

[6] Portions of this email chain prior to January 20, 2022 not relevant to the Subpoenas issue were removed from this exhibit.

7

other measures, "forbidding the disclosure or discovery," or "forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters[.]" *Id.* at (c)(1)(A), (D).

Moreover, Rule 26(b)(2)(C) provides that

On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: . . . (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id.* at (b)(2)(C).

**B. Rule 45**

Pursuant to Rule 45, "[o]n timely motion, the court . . . must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Further, "[t]o protect a person subject to or affected by a subpoena, the court . . . may, on motion, quash or modify the subpoena if it requires: (i) disclosing . . . confidential . . . commercial information[.]" *Id.* at (B)(i).

"The parties and the [C]ourt have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Covil Corp. by & through Protopapas v. U.S. Fid. & Guar. Co.*, 544 F. Supp. 3d 588, 594–95 (M.D.N.C. 2021) (internal quotation and citation omitted). "District courts enjoy nearly unfettered discretion to control the timing and scope of discovery." *Id.* at 595.

8

### III.  ARGUMENT

#### A. Standing

Preliminarily, Defendants address any argument that they lack standing to challenge the Subpoenas.  Indeed, under Rule 45, "[a] motion to quash or modify a subpoena *duces tecum* may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena. *Newcomb v. Principal Mut. Life Ins. Co.*, 2008 WL 3539520, at *1 (W.D.N.C. Aug. 11, 2008) (internal quotation marks and citation omitted).

First, as previously discussed, First National maintains the trust account of SLG.  As such, any production in response to the First National Subpoena would undoubtedly create a whole host of attorney-client privilege and ethical concerns. Such concerns are sufficient to confer standing to bring a motion to quash a third-party subpoena.  *See Davis v. Reliance First Cap., LLC*, 2022 WL 17085598, at *2 (E.D.N.C. Nov. 18, 2022) (acknowledging that "[c]ourts often allow a litigant to quash a third-party subpoena that would undermine attorney-client privilege or work-product protections[.]").

Second, "a defendant has standing to challenge subpoenas under Rule 26 regardless of whether [it has] standing to bring a motion to quash under Rule 45." *Beach Mart, Inc. v. L&L Wings, Inc.*, 2015 WL 13718077, at *1 (E.D.N.C. May 5, 2015) (finding defendant had standing to challenge third-party subpoena under Rule 26) (internal quotations and citation omitted); s*ee also N. Carolina Mut. Life Ins. Co. v.*

9

*Stamford Brook Cap., LLC*, 2020 WL 13303331, at *3 (M.D.N.C. Nov. 16, 2020) (reaching the merits on defendant's motion to quash third party subpoena despite standing being "unlikely" by "interpreting his motion as one for protective order" under Rule 26(c)), *reconsideration denied*, 2020 WL 13303324 (M.D.N.C. Dec. 16, 2020).

Accordingly, to the extent Defendants lack standing to challenge the Subpoenas under Rule 45, Defendants request that the Court treat this Motion as one for protective order under Rule 26, seeking the same result by "forbidding the . . . discovery" or "forbidding inquiry into certain matters or limiting the scope of . . . discovery to certain matters[.]" *See* Fed. R. Civ. P. 26(c)(1)(A), (D); *see also Nallapaty v. Nallapati*, 2022 WL 1508885, at *4 (E.D.N.C. May 12, 2022) ("[C]ourts within the Fourth Circuit have construed a motion to quash as one for a protective order where . . . the moving party relied on Rule 26 in arguing issues such as relevance and overbreadth.").

## B. The Subpoenas Are Overbroad And Unduly Burdensome, And Not Proportionate to the Needs of the Case.

In effect, the Subpoenas command the production of "[a]ll documents and communications"—*i.e.*, the entire bank file and any communications or other documents related thereto—from 2014 to present "relating to" Defendants; Mr. Del Rosso's wife, Kristin White Del Rosso; Mrs. Del Rosso's company, GH Holdings LLC ("GH Holdings"); Defendants' lawyer, Kieran Shanahan; and Mr. Shanahan's law firm, SLG.

In regard to the scope of proper discovery, the Fourth Circuit has stated that:

10

> All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be relevant to any party's claim or defense. Relevance is not, on its own, a high bar. . . . Rule 26 therefore imposes another requirement: discovery must also be proportional to the needs of the case. Proportionality requires courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188–89 (4th Cir. 2019) (cleaned up).

Moreover, this Court has stated that "[a] subpoena imposes an undue burden on a party when it is overbroad. A subpoena is overbroad if it does not limit the documents requested to subject matter relevant to the claims or defenses." *Jiangmen Kinwai Furniture Decoration Co. v. IHFC Props., LLC*, 2015 WL 5098791, at *6 (M.D.N.C. Aug. 31, 2015) (internal quotation marks and citation omitted).

Here, Plaintiff does not make *any* effort to limit the documents and communications requested by the Subpoenas to subject matter relevant to this lawsuit or proportionate to the needs of the case—much less in light of the Court already limiting the relevant subject matter and temporal scope of the Remaining Claims "to the [alleged] 2018-2019 conduct—the only allegations that are not time barred." (D.E. 65, at p. 24).

First, the Subpoenas contain no subject matter limitation, or any language that would limit production to matters even remotely relevant to this lawsuit. Rather, they boldly command the production of *entire* banking files (and anything "relating to" those files), going all the way back to 2014, including those of persons and entities wholly unrelated to Plaintiff or his Remaining Claims. This will undoubtedly result in a production of irrelevant and confidential information.

11

Indeed, "[c]ourts have . . . recognized that production of bank records can create a high potential to disclose a whole host of irrelevant and confidential business related information." *Elsayed v. Fam. Fare LLC*, 2019 WL 8586708, at \*4 (M.D.N.C. Oct. 31, 2019) (cleaned up). Moreover, our courts are wary of subpoenas "for an entire file" and "frequently conclude[ ]" that such subpoenas are overbroad in that they are likely to include "irrelevant information." *Jiangmen Kinwai Furniture Decoration Co., LLC*, 2015 WL 5098791 at \*6 (internal quotations and citation omitted) (granting motion for protective order and quashing "unduly burdensome and unduly expansive" third-party subpoenas which "were not reasonably calculated to obtain relevant information."); *see also McNeil v. Glasco*, 2021 WL 1206588, at \*2 (E.D.N.C. Mar. 30, 2021) (limiting, by way of protective order, scope of subpoena to subject matter relevant to claims and defenses).

Second, a temporal scope of "August 1, 2014 until now"—stated in the "Instructions" section rather than in the "Documents to be Produced" section of the Subpoenas—would include a production of bank records from time periods not relevant to this lawsuit (*i.e.*, time periods well before the relevant "2018-2019 conduct"). *See Allegood v. Graham*, 2018 WL 4305766, at \*4 (E.D.N.C. Sept. 10, 2018) (modifying temporal scope of subpoena served upon PNC Bank to time period relevant to claims at issue); *see also G.H. v. Marstiller*, 2020 WL 13228155, at \*3 (N.D. Fla. Mar. 24, 2020) (granting motion for protective order limiting temporal scope of third-party subpoena that requested medical records "too distant in time to the events giving rise to [p]laintiff's claims").

12

Third, Plaintiff cannot substantiate any basis for his need of the banking records of the non-parties targeted by the Subpoena's—*i.e.*, Mrs. Del Rosso, GH Holdings, Mr. Shanahan, or SLG.  Indeed, discovery sought from nonparties is subject to a stricter standard, and "should not be drawn into the parties' dispute without some good reason, even if they have information that falls withing the scope of party discovery."  *Virginia Dep't of Corr.*, 921 F.3d at 189 ("A more demanding variant of the proportionality analysis . . . applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified.").  Much less, Plaintiff cannot substantiate why, with regard to the First National Subpoena, Plaintiff would need such a broad swath of banking records from SLG's law firm trust account, which raises a whole host of attorney-client privilege and ethical concerns.  *See supra* § III(C).

Presumably, Plaintiff's *only* reason for seeking bank records related to Mrs. Del Rosso, GH Holdings, Mr. Shanahan, or SLG is that their names (and associated transactions) appear in bank records already in Plaintiff's possession—*i.e.*, Defendants' bank records that were previously obtained by way of a November 2, 2022 subpoena on PNC Bank, served prior to the Court's entry of an initial pretrial order, and without serving a notice to Defendants pursuant to Rule 45(a)(4).[7]  Indeed, given the familial and attorney-client relationship between the aforementioned non-parties and Defendants, it should come as no surprise that Defendants' bank records reflect payments to and from the same.

---

[7] Rather, Defendants did not receive a copy of the subpoena to PNC Bank, which was sent via mail, until November 7, 2022.

Moreover, such broad subpoenas—not limited to the subject matter of this lawsuit—targeting the bank records of persons and entities unrelated to Plaintiff or his Remaining Claims—can only be characterized as an improper fishing expedition, designed to fish for information in furtherance of Plaintiff's other pending matters in other jurisdictions.[8]    *See Elsayed*, 2019 WL 8586708, at \*4 (finding plaintiff's rationale for seeking bank statements "suffer from such vagueness as to warrant the inference" that the "reason for requesting these bank statements would be to go on a fishing expedition with the hope of uncovering wrongful actions by defendants"); *Jiangmen Kinwai Furniture Decoration Co.*, 2015 WL 5098791 at \*6 ("It may well be that, within the broad categories of documents . . . , there could be something potentially relevant.  That, however, doesn't justify a fishing expedition.").  Allowing for such broad discovery into these bank records would only afford Plaintiff another opportunity to mischaracterize unrelated and otherwise lawful transactions to support his ever-changing timeline and narrative regarding the "conspiracy" to hack his data.

Therefore, for the foregoing reasons, the Subpoenas are overbroad, impose an undue burden, and are not proportional to the needs of the case.  Accordingly, the

---

[8] Plaintiff has multiple other related matters pending in other jurisdictions, including but not limited to *Azima, et al. v. Dechert LLP, et al.*, Case No. 1:22-cv-08728-PGG (S.D.N.Y. filed October 13, 2022) (the "SDNY Matter"), where discovery has yet to commence.  Indeed, on January 18, 2023, the Honorable Paul G. Gardephe stayed discovery in the S.D.N.Y. Matter "pending resolution of Defendants' motions to dismiss." *Azima, et al. v. Dechert LLP, et al.*, Case No. 1:22-cv-08728-PGG, at D.E. 104 (S.D.N.Y. Jan. 18, 2023).  Plaintiff should not be allowed to serve discovery here, seeking information unrelated to his Remaining Claims, in what appears to be an end-run around the scheduling in the SDNY Matter.

14

Court should quash the Subpoenas, or otherwise limit their scope to bank records and communications relevant to Plaintiff or his Remaining Claims.

**C. The First National Subpoena Raises Attorney-Client Privilege And Ethical Concerns**

Notwithstanding the multitude of issues raised above with regard to the Subpoenas, all which should provide a basis for the Court to quash them in their entirety, the First National Subpoena should be quashed on additional grounds. Not only is the First National Subpoena an overbroad and unrestrained fishing expedition, but it seeks all bank records of and relating to SLG's law firm trust account, likely infringing upon one of the strongest protections afforded throughout and beyond the discovery process—the attorney-client privilege. *See, generally, Upjohn Co. v. United States*, 449 U.S. 383, 389–90 (1981) (establishing that the attorney-client privilege is one born of necessity in encouraging clients to make full disclosures to their attorney).

Moreover, Rule 1.6(a) of the North Carolina Rules of Professional Conduct sets forth the mandate that a lawyer "shall not reveal information acquired during the professional relationship with a client unless the client gives informed consent. . . ." Revised Rules of Professional Conduct 1.6(a) (2022); *see also N. Carolina State Bar v. Sossomon*, 206 N.C. App. 766 (2010), *writ denied, review denied sub nom. N. Carolina State Bar v. Sossoman*, 365 N.C. 89, 706 S.E.2d 245 (2011) (reaffirming that the duty imposed by Rule 1.6 is a continuing one).

Indeed, "the attorney-client privilege *ordinarily* protects neither a client's identity nor information regarding the fee arrangements reached with that client."

15

*In re Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992) (emphasis added) (citation omitted). However, there are clearly established exceptions to this rule, such as instances where the "attorney may invoke the privilege to protect the identity of a client or information regarding a client's fee arrangements if disclosure would "convey[ ] information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client." *Id.* (quoting *Bair v. Koerner*, 279 F.2d 623, 632 (9th Cir. 1960)). Based on the overbreadth of the First National Subpoena, such disclosures are likely.

Moreover, the typical case where discovery into a law firm's trust accounts is permitted involves claims of wrongdoing by the attorney or law firm. *See, e.g.*, *Reiserer v. United States*, 479 F.3d 1160. 1165–66 (9th Cir. 2007) (finding that an examination into trust accounts of law firm was permissible as arising under claims the attorney was assisting specific clients with illegal tax acts). No such allegations against Kieran Shanahan or SLG have been brought here, and Plaintiff cannot articulate any reasonable basis warranting such an intrusion.

Accordingly, in addition the reasons previously stated with regard to both Subpoenas, the First National Subpoena should be quashed or otherwise limited such that they are devoid of attorney-client privilege or ethical concerns.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court for an Order quashing or modifying the Subpoenas, or otherwise entering a Protective Order commanding the same, and for an interim Order directing that, to the extent First

16

National or First Citizens makes a production pursuant to the Subpoenas, such production be made to the Court—not to the Parties—to be held *in camera* until the Motion is decided.

Respectfully submitted, this the 20th day of January, 2023.

**NELSON MULLINS RILEY &
SCARBOROUGH, LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Calvin Lee
Ian Herbert
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
kbehre@milchv.com

NELSON MULLINS RILEY &
SCARBOROUGH, LLP

By: */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

18

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that this brief contains 4247 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250-word limitation.

Respectfully submitted this 20th day of January, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:   */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
301 Hillsborough St., Ste. 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

## LOCAL RULE 37.1(a) CERTIFICATION

Pursuant to Local Rule 37.1(a), I hereby certify, subject to Fed. R. Civ. P. 11, and as set out more fully in this Memorandum of Law, the Parties met and conferred on this issue through multiple email exchanges as well as a teleconference on January 20, 2023, that after personal consultation and diligent attempts to resolve differences, the parties are unable to reach an accord regarding Plaintiff's subpoenas to First Citizens Bank and First National Bank of Pennsylvania.

Respectfully submitted this 20th day of January, 2023.

NELSON MULLINS RILEY &
SCARBOROUGH, LLP

By:   */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
301 Hillsborough St., Ste. 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Defendants*

20

4888-3021-6268