UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FARHAD AZIMA,<br><br>        Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>        Defendants. | CASE NO. 1:20-cv-00954-WO-JLW |

### Memorandum of Law in Support of Shanahan Law Group's Motion to Quash Plaintiff Farhad Azima's Subpoena to First National Bank of Pennsylvania

NOW COMES Movant Shanahan Law Group, PLLC ("SLG" or "Movant"), by and through undersigned counsel for itself and for the benefit of its clients (including Nicholas del Rosso ("NDR") and Vital Management Services, Inc. ("VMS") collectively "Defendants") to whom SLG has ethical duties and responsibilities, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure ("Rule(s)"), as well as the legal notions of attorney-client privilege (N.C.G.S. § 4-1 (2011), client confidentiality and Rule 1.6 of the North Carolina Rules of Professional Conduct and work product privilege, and hereby submits the following brief in support of its Motion to Quash Plaintiff Farhad Azima's ("Plaintiff") Subpoena to First National Bank of Pennsylvania ("FNB").

## I. BACKGROUND

Movant incorporates by reference the entirety of Defendants NDR and VMS's Memorandum of Law in Support of Defendants' Motion to Quash and for Protective Order [D.E. 123], including the section entitled "Background."

It is duly noted lawsuit arises out of Plaintiff's allegations – which Defendants vigorously deny – that Defendants' engagement with an international law firm included assisting with the hacking and leaking of Plaintiff's confidential and personal business information. [D.E. 1]. While Plaintiff continues to ascribe involvement in hacking to Defendants as if it were "fact" – it is not. More importantly for the instant motion, this case no longer involves hacking allegations. Indeed, while the grandiose allegations in the Plaintiff's Complaint asserts various conduct on multiple continents spanning more than a decade, this Court has significantly narrowed Plaintiff's case herein by dismissing nine of the eleven claims in the Complaint. [*See* D.E. 65].

The FNB Subpoena specifically targets the trust account and operating account bank records of SLG[1] (as well as the Defendants) without any attempt to restrict the production of documents to materials related to Plaintiff and the subject matter of what is left of the lawsuit. By not limiting the FNB Subpoena to the subject matter of the lawsuit in its current state, the Subpoena is fatally defective. Of concern is that as submitted, the Subpoena implicates a number of scope, proportionality, and

---

[1] On January 27, 2023, counsel for Plaintiff sent an email to undersigned counsel indicating it would be modifying its Subpoena to exclude the request for the personal financial information of Kieran Shanahan. See Exhibit A to Movant's Motion to Quash Plaintiff Farhad Azima's Subpoena to First National Bank of Pennsylvania.

2

confidentiality issues, as well as a number of attorney-client privilege, work product privilege and ethical issues involving SLG's duties to protect the attorney-client privilege, client confidentiality and the attorney work product privilege.

This Motion is brought to:

1. Protect SLG's clients' interests, including the attorney-client privilege, the work-product doctrine and client confidentiality pursuant to Rule 1.6 of the North Carolina Rules of Professional Conduct,; and

2. Protect and carry out SLG's obligations /duties to all of its clients, past and current clients, NDR and VMS have specifically advised SLG that they do not waive their respective attorney-client privilege or client confidentiality.

## II. LEGAL STANDARD

### A. Rule 26

Rule 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Such orders may prescribe, among other measures, "forbidding the disclosure or discovery," or "forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters[.]" *Id.* at (c)(1)(A), (D).

Moreover, Rule 26(b)(2)(C) provides that

> On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: . . . (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

3

*Id.* at (b)(2)(C).

**B. Rule 45**

Pursuant to Rule 45, "[o]n timely motion, the court . . . must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Further, "[t]o protect a person subject to or affected by a subpoena, the court . . . may, on motion, quash or modify the subpoena if it requires: (i) disclosing . . . confidential . . . commercial information[.]" *Id.* at (B)(i).

"The parties and the [C]ourt have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Covil Corp. by & through Protopapas v. U.S. Fid. & Guar. Co.*, 544 F. Supp. 3d 588, 594–95 (M.D.N.C. 2021) (internal quotation and citation omitted). "District courts enjoy nearly unfettered discretion to control the timing and scope of discovery." *Id.* at 595.

**III. ARGUMENT**

<u>Preliminary Notice of Disingenuous Mischaracterization</u>

In "Plaintiff's Response to Defendants' Motion to Quash or For Protective Order" [D.E. 126] Plaintiff goes to great lengths to paint SLG in a false light, either negligently or intentionally. Repeatedly Plaintiff describes payments from Defendants to SLG as though they were SLG income when, in point of fact, most, if not all, of the funds received from the Defendants went into the SLG trust account, not the SLG operating account. Thus, funds held in a law firm's trust account on

4

behalf of a client are not the property of that law firm. Plaintiff mislead the Court by claiming the following:

SLG "received 82 payments from Defendant totaling $6.2 million over just three years"; "at least some of those payments to Shanahan…came from…hacking related services"; and Plaintiff seeks information relating to "Shanahan the apparent beneficiary of Defendants' payments to the First National Bank"; Plaintiff even includes in a footnote in its brief which purports to analyze SLG revenue and declares: "Defendant paid Shanahan more than $6 million over a three year period." If Plaintiff truly believed that the money from Defendants went to "Shanahan," why is Plaintiff now seeking discovery requesting to know where the funds went? Why does Plaintiff need discovery on what they claim to already know?

### A. The Subpoena to FNB Is Overbroad, Unduly Burdensome and Not Proportionate to the Needs of the Case.

It appears from the Subpoena itself and from Movants "meet and confer" call with Plaintiff's counsel that Plaintiff actually seeks only documents that will reflect where the claimed $6.2 million of legitimate funds that Defendants transferred to the SLG trust account (and/or operating account) were thereafter disbursed to. Assuming this is true, the Subpoena is fatally defective, overly broad and unreasonably burdensome. As submitted, the Subpoena is an attempt by Plaintiff to do a proverbial end run around the attorney-client privilege and client confidentiality by placing an unreasonable, expensive and unduly burdensome obligation on FNB. Likewise, it precludes even the opportunity for SLG to carry out its responsibility to its clients to protect attorney-client privilege and/or client confidentiality and work product.

5

Instead of a narrowly tailored by time and scope Subpoena to FNB, Plaintiff fashioned a Subpoena that commands the production, *inter alia,* of "[a]ll documents and communications"—*i.e.*, the entire FNB bank file for the SLG Trust Account and Operating Account, including any communications or other documents related thereto for a period of nearly nine (9) years "relating to" Defendants; NDR and VMS.

Thus, as written, the Subpoena is fatally defective for being overly broad, unduly burdensome, expensive and impossible for FNB to comply with. Furthermore, as written, the document request deprives SLG of its ability to protect against disclosure of attorney-client privilege for each and every SLG client who had funds in SLG's trust account (or operating account) for nearly nine (9) years for which Plaintiff seeks documents.

The Subpoena also seeks documents and financial information from NDR and VMS which likely contains privileged information and clearly includes their confidential information which would not be subject to production. There simply is no way that FNB is in a position to determine what documents to produce based on the way the Subpoena is drafted, nor is the bank able to determine privilege or decide if something is confidential.

Movant is aware that there is already a related Motion to Quash and for Protective Order for the FNB Subpoena filed by Defendants [D.E. 122] and that said motion has been responded to by Plaintiff. Movant incorporates herein by reference said motion and the Memorandum of Law in Support of same [D.E. 123] filed by Defendants as if fully set forth herein.

In regard to the scope of proper discovery, the Fourth Circuit has stated that:

> All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be relevant to any party's claim or defense. Relevance is not, on its own, a high bar. . . . Rule 26 therefore imposes another requirement: discovery must also be proportional to the needs of the case. Proportionality requires courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188–89 (4th Cir. 2019) (cleaned up).

The challenge that Plaintiff faces is its request is just not related to the remaining two (2) claims in the lawsuit and presumes the existence of unsupported facts that have been denied. Plaintiff's remaining two (2) claims in the lawsuit are (1) that Defendants violated the North Carolina Trade Secrets Protection Act by, in 2018 and 2019, allegedly "acquir[ing], disclos[ing], or us[ing] Azima's trade secrets without consent or authorization when they instructed CyberRoot; and (2) Plaintiff's Civil Conspiracy claim, which is only viable insofar as it relates to the 2018-2019 alleged conduct on which Plaintiff's trade secret claim is based. Accordingly, discovery in this case must be reasonably calculated to lead to the production of admissible evidence regarding the Trade Secrets Allegations, mindful that discovery must be proportional to the needs of the case. Plaintiff's Subpoena is neither.

Financial transactions entered into by Defendants are only relevant to the remaining claims if they pertain to Plaintiff's allegations that Defendants paid CyberRoot to republish Plaintiff's allegedly misappropriated trade secrets. The proposed Subpoena is not reasonably calculated to lead to the production of admissible evidence regarding alleged payments to CyberRoot to republish Plaintiff's

7

trade secrets. Instead of seeking documents related to payments to CyberRoot, however, Plaintiff's position is that it is entitled to discovery of documents relating to essentially any party that engaged in a financial transaction with Defendants from August 1, 2014 through January of 2023.

Any discovery into transactions between Defendants and SLG is improper. It is undisputed that, during the relevant period of time, SLG was counsel of record to Defendants and provided Defendants with legal advice and legal services. Defendants consider their financial transactions confidential under N.C.R.P.C. 1.6, and do not consent to disclosure of such information to Plaintiff. Payments to and from a lawyers' trust account are confidential and can evidence the content of information subject to protection under the attorney-client privilege and attorney work product doctrine, such as the retainment of consulting expert witnesses.

The North Carolina State Bar considers the content of an attorney's trust account to be confidential information held by an attorney for the client's benefit. See, e.g., 27 N.C.A.C. 01D .1318 (requiring the staff and trustees of NC IOLTA to treat as confidential "all information regarding IOLTA account(s)" other than certain information regarding the status of a law firm's participation in the IOLTA program and certain policies and practices of banks regarding IOLTA accounts); 2008 F.E.O. 13 (opinion ruling that, unless affected clients expressly consent to the disclosure of their confidential information, a lawyer may allow a title insurer to audit the lawyer's real estate trust account and reconciliation reports only if certain written assurances to protect client confidences are obtained

8

from the title insurer, the audited account is only used for real estate closings, and the audit is limited to certain records and to real estate transactions insured by the title insurer). As such, the unfettered discovery sought by Plaintiff of Defendants' information at SLG's trust account at FNB should be foreclosed.

## IV. CONCLUSION

The Subpoena is fatally overbroad, unduly burdensome and not proportionate to the needs of the case or in line with the two (2) remaining counts. Compliance would be costly to FNB. The Subpoena is not limited by subject matter, imposes an overly broad obligation on FNB and would cover bank records of persons and entities unrelated to Plaintiff for nearly nine (9) years or the remaining claims in the underlying case. Further, the Subpoena seeks bank records that include SLG's trust account and operating account that likely had thousands of transactions over the nearly nine (9) year timeframe set out in the Subpoena, which raises significant privilege and ethical concerns, as well as cost considerations. Accordingly, the Subpoena is an improper attempt to seek information from Movant to which Plaintiff is not entitled and is an abuse of the discovery process.

For the foregoing reasons, Movant respectfully moves this Court for an Order quashing the FNB Subpoena, or otherwise entering a Protective Order commanding the same, and for an interim Order directing that, to the extent FNB makes a production pursuant to the Subpoena, such production should be made to the Court—not to the parties—to be held *in camera* until the Motion is decided.

9

***NOTE:*** *Counsel for Movant will be out of the country and "off the grid" beginning February 2nd, 2023 through February 12th, 2023 for a long ago planned trip. SLG is a sole practitioner firm; thus SLG has no counsel to participate in these proceedings while its sole counsel is gone. Counsel is available through February 1st, 2023 and again beginning February 13th, 2023. SLG sincerely apologizes if this causes the Court or the litigants any inconvenience.*

Respectfully submitted, this the 30th day of January, 2023.

                                        **SHANAHAN LAW GROUP, PLLC**

By:    */s/Kieran J. Shanahan*
        Kieran J. Shanahan, NCSB# 13329
        128 E. Hargett Street, Suite 300
        Raleigh, North Carolina 27601
        Telephone: (919) 856-9494
        kieran@shanahanlawgroup.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 30th day of January, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathan.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Calvin Lee
Ian Herbert
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
kbehre@milchv.com

Brandon S. Neuman
John E. Branch III
Jeffrey M. Kelly
Nathaniel J. Pencook
Nelson Mullins Riley & Scarborough, LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
brandon.neuman@nelsonmullins.com
john.branch@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com

                                                **SHANAHAN LAW GROUP, PLLC**

By:    */s/Kieran J. Shanahan*
          Kieran J. Shanahan, NCSB# 13329
          128 E. Hargett Street, Suite 300
          Raleigh, North Carolina 27601
          Telephone: (919) 856-9494
          kieran@shanahanlawgroup.com

## LOCAL RULE 37.1(a) CERTIFICATION

Pursuant to Local Rule 37.1(a), I hereby certify, subject to Fed. R. Civ. P. 11, and as set out more fully in this Memorandum, the parties met and conferred on this issue via teleconference on January 27, 2023, that after personal consultation and diligent attempts to resolve differences, the parties are unable to reach an accord regarding Plaintiff's subpoena to First National Bank of Pennsylvania. However, after the call, counsel for Plaintiff notified Movant via email that they would be modifying their Subpoena and withdrawing their request for the personal financial information of Kieran Shanahan.

Respectfully submitted this 30th day of January, 2023.

**SHANAHAN LAW GROUP, PLLC**

By:  */s/Kieran J. Shanahan*
Kieran J. Shanahan, NCSB# 13329
128 E. Hargett Street, Suite 300
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
kieran@shanahanlawgroup.com

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying memorandum does not exceed the 6,250-word limitation according to the word count feature of the word processing system used to prepare the memorandum.

Respectfully submitted this 30th day of January, 2023.

**SHANAHAN LAW GROUP, PLLC**

By: */s/Kieran J. Shanahan*
Kieran J. Shanahan, NCSB# 13329
128 E. Hargett Street, Suite 300
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
kieran@shanahanlawgroup.com