UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

FARHAD AZIMA,

    Plaintiff,

v.

NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,

    Defendants.

No. 1:20-cv-00954-WO-JLW

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY DECHERT LLP'S MOTION TO QUASH PLAINTIFF'S SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

Non-Party Dechert LLP ("Dechert"), pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure and Local Rules 7.3 and 26.1, hereby submits the following brief in support of its Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action dated December 23, 2023 (the "Subpoena").

**I.    Background**

Plaintiff Farhad Azima brought this case against Nicholas Del Rosso and Vital Management Services based on allegations that Defendants hacked his private information and released certain of his confidential business data obtained from the hacking. *See* Dkt. 1 (Complaint). Plaintiff sought leave to serve third-party subpoenas, including to Dechert, just one week after filing his Complaint. *See* Dkt. 7. This Court denied leave to serve those subpoenas, which it described as "broad in scope," even in light of all the claims and allegations then in the case. *See* Dkt. 30 at 3.

Azima originally brought eleven claims arising out of Defendants' alleged conduct; this Court significantly narrowed the scope of this action in its December 10, 2021, Memorandum Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss.  *See* Dkt. 65 at 23–24.  The Court held that nine of Plaintiff's claims were untimely, and thus the Court dismissed the claims based on the hacking allegations and allowed only two claims to survive: "a North Carolina misappropriation of trade secrets claim arising from the 2018–2019 online posting of new links to Plaintiff's confidential business data [] and a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim."  Dkt. 80 at 4 (summarizing holding of Dec. 10, 2021, Opinion).  In limiting the case to those claims, the Court also found that the only potentially actionable conduct in this action is that which allegedly occurred in 2018 and 2019, and specifically that which is related to the online release of Plaintiff's data.  *See* Dkt. 65 at 23–24.  Discovery commenced on November 16, 2022, and is scheduled to conclude on August 1, 2023.  *See* Dkt. 93 at 1–2.

Dechert is a global law firm that is not party to this suit.  It is, however, party to several other suits Plaintiff has brought across multiple jurisdictions related to the same hacking scheme alleged in this case.  *See RAKIA v. Azima*, Case. No. HC-2016-002798 (U.K. High Court of Justice 2016) (the "U.K. Proceeding"); *Azima et al. v. Dechert LLP et al.*, No. 1:22-cv-08728 (S.D.N.Y. 2022) (the "SDNY Action").  In the SDNY Action, which Plaintiff filed against eleven defendants on October 13, 2022, the parties submitted pre-motion letters regarding anticipated motions to dismiss.  The Court subsequently *sua*

*sponte* stayed all discovery until the motions are resolved. *See* SDNY Action, Dkt. 104. Discovery is ongoing in the U.K. Proceeding.

Here, Plaintiff served two third-party subpoenas on Dechert in December 2022, one month after party discovery commenced. The first (the "Documents Subpoena"), to which Dechert has submitted written responses and objections, requested an extensive set of documents related to Dechert's legal work on behalf of clients—namely, the Ras al Khaimah Investment Authority ("RAKIA") and other RAK entities—that it represented, including in multiple litigations, over and beyond the eight-year time period listed in the instructions. The second is the Subpoena presently at issue, which seeks testimony about the documents requested in the first subpoena as well as fifteen other topics related to Dechert's representation of the same—including a request for testimony about "all engagements by Dechert of RAKIA or other [related] entities from 2013 to the present." *See* Subpoena at 1–4 ("Topics"). Despite the fact that the Action has been significantly narrowed since Plaintiff's first attempt to serve a third-party subpoena on Dechert, the instant subpoenas are in some ways broader than the one this Court denied leave to serve in December 2020. *See* Dkt. 7, Ex. A; Dkt. 30.

In a letter to Plaintiff's counsel dated January 12, 2023, Dechert's counsel communicated its concerns about the unreasonable scope of the subpoenas, the privilege and work product issues they present, and the unreasonable burden inherent in imposing such sweeping discovery obligations on a non-party before meaningful party discovery has taken place. On January 19, 2023, Plaintiff's counsel responded that they intended

3

to move to compel compliance with both subpoenas. The parties had a meet-and-confer on January 23, 2023, at which Plaintiff's counsel refused to engage on any of the concerns raised by Dechert. Dechert's counsel submitted written responses and objections to the Documents Subpoena, accompanied by a letter reiterating the concerns expressed in the January 12 letter and the meet-and-confer, on January 26, 2023. In a letter to Dechert's counsel on Sunday, January 29, 2023, Plaintiff's counsel again ignored all of the scope, privilege, and burden issues and indicated its intent to file motions to compel compliance with both subpoenas if Dechert did not identify documents in Dechert's possession and Topics not subject to objections by the next day. On January 31, 2023, Dechert's counsel informed Plaintiff's counsel of Dechert's intent to file the instant Motion, and Plaintiff's counsel agreed that the parties had satisfied their meet-and-confer obligations and that the filing of this Motion would obviate the deposition pending the Court's resolution of the issues presented herein. Dechert now moves to quash the Subpoena.

## II. Legal Standard

Rule 45 governs subpoenas issued to non-parties and requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). When such steps are not taken, Rule 45 provides that a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Rule 26 further allows a court to, "for good cause, issue an order to protect a party or person from . . . undue burden or expense" by, among other measures,

"forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1).

All civil discovery, "whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1)" and must be "relevant to any party's claim or defense" and "proportional to the needs of the case." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)). "When discovery is sought from nonparties, however, its scope must be limited even more." *Id.* at 189. Thus, when assessing whether a subpoena to a non-party "subjects a person to undue burden" such that it must be quashed or modified, courts "must give the recipient's nonparty status 'special weight'" and conduct an "even more 'demanding and sensitive' inquiry" into "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Id.* (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)). This undue-burden standard applies to Rule 30(b)(6) subpoenas just as it applies to documents subpoenas. *Id.* at 193 (citing *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007)).

### III. Argument

Plaintiff's Subpoena is overbroad, unduly burdensome, and not proportionate to the needs of this Action. It seeks information about Dechert's legal work without meaningful subject matter or temporal limitations, let alone limitations reflecting the narrowed scope of this case; implicates complex issues of privilege that will, at a minimum, require an extremely burdensome review and preparation process; and

requests this information from a non-party before Plaintiff has shown (or could even know) that certain requested information cannot be obtained from the parties to this action. Any benefit to Plaintiff is thus substantially outweighed by the unreasonable burden the Subpoena would impose on non-party Dechert. The overbreadth and timing of the Subpoena, in particular, raise concerns in light of the Court's *sua sponte* order staying discovery in the SDNY Action, where Plaintiff named Dechert as a party, to say nothing of discovery and evidentiary limitations in the ongoing U.K. Proceeding. In all events, the Subpoena should be quashed for the following reasons.

### a. The Subpoena is not tethered to the scope of the surviving claims.

Plaintiff's Subpoena makes no attempt to limit its topics to conduct "relevant" or "proportional" to the two claims the Court has permitted to proceed. *See* Dkt. 65 at 23–24. As a matter of law, subpoenas are overbroad when they "lack a relevant subject matter limitation" or "seek information from entities unrelated to the claims and defenses asserted in [a] case." *Nallapaty v. Nallapati*, 2022 WL 1508885, at *5–6 (E.D.N.C. May 12, 2022); *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 2014 WL 6686727, at *4 (M.D.N.C. Nov. 26, 2014) ("A subpoena is overbroad if it does not limit the [requests] to subject matter relevant to the claims or defenses." (citation omitted)). So, too, when they "seek information outside the relevant time period." *Nallapaty*, 2022 WL 1508885, at *5. Here, Plaintiff's Subpoena fails on both counts: it demands testimony about non-party Dechert's involvement with more than ten individuals and entities, as well as numerous of their subsidiaries, agents, and affiliates (in addition to Defendants in this action and Plaintiff himself) without any time limitation

6

or indication of how all of that information relates to the online posting of Plaintiff's data in 2018 and 2019. *See* Topics. For example, it seeks testimony about "[a]ny retention, instruction, and payment" of a number of individuals and entities without any indication of how this might be related to the trade-secrets misappropriation claims. It is thus overbroad and should be quashed.

### b. The Subpoena implicates complex issues of privilege.

The Subpoena seeks this broad swath of information from a law firm, and its Topics all relate to the firm's work on behalf of its clients. On their face, the Topics cover information that is likely to be protected by the attorney-client privilege or the work-product protection, as they address Dechert's legal work for a client, its confidential communications relating thereto, and documents prepared in connection with that work and/or in anticipation of litigation. For example, among the Topics is testimony related to "Dechert's engagement of 'VMS to assist it in its representation of RAKIA,'" which clearly implicates Dechert's representation of a client. Topics, ¶ 10. Even if some of the underlying documents are not ultimately deemed to be privileged, the process of reviewing all relevant documents and assessing privilege claims in preparation for a deposition on topics as broad as those in the Subpoena will be extremely burdensome and out of proportion with the needs of this case. *See Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) (affirming quashing of subpoena to law firm that "asked for essentially every document [the firm] possessed relating to its representation of [a client]"); *cf. In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017) ("[W]hen

7

a discovery request demands production of an attorney's records in connection with representation of a client, invocation of the protections of the attorney-client privilege and work-product doctrine may be effective without requiring a detailed privilege log. Otherwise, any objection to the scope of a discovery demand would be rendered moot because interposing that objection would trigger the very burdensome obligation to prepare a privilege log that the objection would be intended to avoid.") (collecting cases).

### c. The Subpoena's requests target a non-party without having attempted to obtain the information from parties to this action.

The unreasonableness of Plaintiff's non-party Subpoena is also underscored by Plaintiff's timing in issuing it. Discovery in this case is in its early stages. See Dkt. 93. "In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (collecting cases). fYet Plaintiff has offered no explanation as to why he cannot obtain information he seeks from Defendants themselves—and if he can obtain information from Defendants, why he is seeking it from a third party. His request is thus unduly burdensome at this juncture. *Id.*; *see also Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) (granting motion to quash subpoena that imposed undue burden because plaintiff did not attempt to obtain the requested documents from defendant before seeking them from third party); *Torre v. Charter Commc'ns, Inc.*, 2020 WL 7705940, at *1 (S.D.N.Y. Dec. 28, 2020) (quashing third-party subpoena that sought information "that could and should be obtained from . . . a party to this action," noting that mere "speculation" that a party may

8

not produce the documents "is not a basis to look first to a non-party"). In the meet-and-confer process, Plaintiff refused to address this issue at all, even after we quoted and cited Fourth Circuit authority making clear Plaintiff should be required to "explain why [he] cannot obtain the same information, or comparable information that would also satisfy [his] needs, from one of the parties in the litigation." *Jordan*, 921 F.3d at 189. Ultimately, as discovery proceeds Plaintiff should be required to tailor any further request to Dechert to reflect what he has obtained from Defendants and the limited scope of the case that remains. *Id.* at 190 ("A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it.").

### IV. Conclusion

For the foregoing reasons, Dechert respectfully requests that the Court quash the Subpoena, or enter a protective order commanding the same.

Respectfully submitted this 31st day of January 2023.

Dated: January 31, 2023
　　　New York, New York

By: _____
John C. Quinn
Sean Hecker*
David Gopstein*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0833
jquinn@kaplanhecker.com
shecker@kaplanhecker.com
dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

9

/s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile:  (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*

*\*Notice of Special Appearance
  forthcoming*

# CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2023, I caused a copy of the foregoing document to be served via e-mail through the Court's ECF notification system upon the following:

Brandon S. Neuman
Jeffrey M. Kelly
John E. Branch III
Nathaniel J. Pencook
Samuel Rosenthal
Nelson Mullins Riley & Scarborough, LLP
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com

Jonathon D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Calvin Lee
Ian Herbert
Kirby D. Behre
Joseph Rillotta
Cody Marden
Brian A. Hill
Timothy P. O'Toole
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
kbehre@milchev.com
jrillotta@milchev.com
cmarden@milchev.com
bhill@milchev.com
totoole@milchev.com

By: _____
John C. Quinn
Sean Hecker*
David Gopstein*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0833
jquinn@kaplanhecker.com
shecker@kaplanhecker.com
dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

/s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile: (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*

*\*Notice of Special Appearance forthcoming*

2

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that this brief contains 2,318 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250-word limitation.

Respectfully submitted this 31st day of January, 2023.

By: _____
John C. Quinn
Sean Hecker*
David Gopstein*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0833
jquinn@kaplanhecker.com
shecker@kaplanhecker.com
dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

/s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile: (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*

*\*Notice of Special Appearance
  forthcoming*

## LOCAL RULE 37.1(a) CERTIFICATION

Pursuant to Local Rule 37.1(a), I hereby certify, subject to Fed. R. Civ. P. 11, and as set out more fully in this Memorandum of Law, that the Parties met and conferred on this issue through multiple email and letter exchanges as well as a teleconference on January 23, 2023, that was attended by Joseph Rillotta and Ian Herbert on behalf of Plaintiff and John Quinn and David Gopstein on behalf of Dechert, and that after personal consultation and diligent attempts to resolve differences, the parties are unable to reach an accord regarding Plaintiff's subpoena to Dechert LLP.

Respectfully submitted this 31st day of January, 2023.

By: _____
John C. Quinn
Sean Hecker*
David Gopstein*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0833
jquinn@kaplanhecker.com
shecker@kaplanhecker.com
dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

/s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile: (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*

*\*Notice of Special Appearance forthcoming*