UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION AND TESTIMONY FROM THIRD-PARTY DECHERT LLP** |

Dechert LLP ("Dechert") is not just any third-party recipient of a subpoena in federal litigation. Dechert is a central figure in Plaintiff Farhad Azima's claims for misappropriation of trade secrets and civil conspiracy, and Dechert is a co-conspirator of Defendants. Dechert is mentioned approximately 35 times in the Complaint in this case; Defendants refer to Dechert 25 times in their Answer. Defendants admit that Dechert hired Defendants to conduct an investigation on behalf of the Ras Al Khaimah Investment Authority ("RAKIA"). Answer ¶¶ 13, 15 (ECF No. 86). Former Dechert client RAKIA subsequently accused Dechert and Neil Gerrard, a former Dechert partner, of being "dishonest and unscrupulous former third-party advisers" regarding that work. *See* Ex. 1. Defendants also admit Dechert paid them more than $1 million for their work. *Id.* ¶¶ 27-28. In fact,

Defendants' bank records show that they received more than $35 million from Dechert's client RAKIA and related entities over a seven-year period.

In addition to Defendants' admissions, Dechert's statements in other proceedings provide ample justification for Plaintiff's document subpoena. Dechert recently stated in a U.K. court proceeding that "it holds at least some data belonging to Mr. Azima." Ex. 2 (Excerpts from Dechert's Re-Amended Defense to Counterclaim in *Ras Al Khaimah Inv. Auth. v. Farhad Azima*, [2020] EWHC 1327, Case No. HC-2016-002798). Dechert has thus admitted it possesses relevant and discoverable information.

As an international law firm with more than 900 lawyers and a large litigation department, Dechert understands its duties and obligations when responding to a properly issued federal subpoena. Yet in this case, Dechert refused to comply with a document subpoena, contending that complying in any way would be too burdensome for an international law firm. Plaintiff served the subpoena on Dechert more than six weeks ago and the return date was more than three weeks ago. Dechert has not yet produced a single document. Similarly, Dechert refuses to produce a Rule 30(b)(6) witness for deposition on any topic.

Rather than comply with its duties, Dechert hides behind vague objections that fall far short of the specificity required by the Federal Rules of Civil Procedure. Dechert cannot categorically refuse to respond to lawfully

2

issued subpoenas, and Plaintiff's attempts to meet and confer on Dechert's discovery obligations have been unsuccessful. In light of Dechert's complete refusal to comply, Plaintiff moves the Court to compel production of relevant records and to order Dechert to designate witnesses for a Rule 30(b)(6) deposition.[1]

## BACKGROUND

Dechert features prominently in Plaintiff's allegations. Starting in early 2015, Dechert partner Neil Gerrard and others agreed to attack Plaintiff Azima. *See* Compl. ¶ 14 (ECF No. 1). Gerrard and Dechert hired Defendants, in part, to target Azima and to obtain his emails and confidential data. *Id.* ¶¶ 13, 15. In this capacity, Defendant Del Rosso communicated with lawyers from Dechert on a "very regular basis." *Id.* ¶ 13.

In concert with Dechert, Defendants employed the services of hack-for-hire firms to steal and publish Mr. Azima's confidential data. *Id.* ¶¶ 16-17. Defendants, Dechert, Gerrard, and other co-conspirators gained unlawful access to Plaintiff's confidential and protected trade secrets. *Id.* ¶ 19. Acting in concert with Dechert partner Gerrard, Defendants published Plaintiff's data on BitTorrent sites. *Id.* ¶¶ 20-22. To cover their tracks, Defendants, Gerrard,

---

[1] During the parties' meet and confer regarding this motion to compel, Dechert informed Plaintiff that it intended to move to quash the Rule 30(b)(6) subpoena. That motion was filed on January 31, 2023. *See* ECF Nos. 136-37.

and others fabricated a false narrative that they innocently found Plaintiff's confidential data online. *Id.* Dechert and their agents, however, are the only ones known to have obtained data from the BitTorrent sites. *Id.* ¶ 23.

Defendants concede that that Dechert played an important role in this case. Defendants admit that (i) Dechert engaged Vital to assist Dechert in its work for RAKIA, ECF No. 86 ¶ 13; (ii) Vital assisted Dechert in retaining a company to retrieve Plaintiff's stolen data, *id.* ¶¶ 15, 27; and (iii) Dechert paid Vital more than $1 million, *id.* ¶ 28. Defendants' bank records, obtained through a third-party subpoena to PNC Bank, show that RAKIA and related entities paid Defendants significant amounts during the period relevant to this case. ECF No. 127.[2]

Two weeks ago, Dechert—a party to U.K.-based litigation regarding Plaintiff's hacking allegations—filed a document admitting for the first time that it possesses private and confidential data stolen from Plaintiff Azima. *See* Ex. 2. Dechert admitted that "it holds at least some data belonging to Mr. Azima," and agreed that that any private "data should be returned to him." *Id.* Dechert also stated that it was "unable to admit or deny Mr. Azima's allegations [that he was hacked by Dechert or Dechert's agents]." *Id.*

---

[2] Plaintiff has intentionally omitted specific details because the cited docket entry is currently sealed.

Given Dechert's clear connection to the allegations in the Complaint, Plaintiff served two subpoenas on Dechert to obtain relevant documents and testimony. A subpoena *duces tecum* was served on December 19, 2022, *see* ECF No. 140-2, and a subpoena for testimony pursuant to Fed. R. Civ. P. 30(b)(6) was served on December 23, 2022, *see* ECF No. 140-1 (collectively, the "subpoenas"). Plaintiff tailored these subpoenas to Dechert to obtain relevant and proportional information regarding Dechert's connection to Defendants' misconduct. The subpoena *duces tecum*, for example, seeks information about the admissions in Defendants' Answer relating to Dechert and about certain individuals relevant to Plaintiff's claims. *See, e.g.*, ECF No. 140-2 at Request No. 6 (seeking in part information about "Defendants' work with attorneys for Dechert on 'matters involving suspected fraud,' as admitted in paragraph 15 of Defendants' Answer.").

Dechert provided no reasonable responses to Plaintiff's subpoenas. It has not produced a single document or identified any witness(es) for deposition. Dechert's initial response was a letter stating blanket objections, vaguely claiming that that the subpoenas would impose an undue burden and that they called for disclosure of privileged information. *See* Ex. 3. Dechert did not identify specific requests or topics to which it was objecting or how those requests or topics were burdensome. Its blanket privilege claim boiled down to: "Dechert is a law firm," and therefore "the material Plaintiff is seeking . . .

5

is protected by the attorney-client privilege or work product doctrine."[3] *Id.* at 1. After Plaintiff notified Dechert that Plaintiff intended to move to compel, Dechert sent Plaintiff formal responses and objections to the subpoena *duces tecum*.[4] *See* Ex. 4. However, Dechert's position remained the same. Dechert simply converted the blanket objections in its prior letter into boilerplate objections to each of the subpoena's document requests.

As discussed below, none of Dechert's objections justify a wholesale failure to comply with Plaintiff's subpoenas. Dechert's approach is plainly insufficient, particularly for a large global law firm that is alleged to be a key player in the hacking operation that led to the theft of Plaintiff's trade secrets.

---

[3] Any privilege regarding information relevant to this action is held by RAKIA, Dechert's client. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 173 (4th Cir. 2019) ("The attorney-client privilege empowers a client—as the privilege holder—to refuse to disclose and to prevent any other person from disclosing confidential communications between him and his attorney.") (internal quotations and citations omitted). Dechert has not stated whether RAKIA is claiming privilege over the records sought. Indeed, in a filing to a U.K. court, RAKIA accused Dechert and Gerrard of being "dishonest and unscrupulous former third-party advisers who [took] steps to advance their own interests for their own gains, and at RAKIA's expense." Ex. 1.

[4] Dechert has not served responses and objections to topics identified in Plaintiff's 30(b)(6) subpoena. It instead filed a motion to quash on January 31, 2023, the day before the noticed date for Dechert's deposition. *See* ECF No. 136.

6

# ARGUMENT

## A. Dechert Cannot Justify Its Total Noncompliance.

Under the Federal Rules, failing to a comply with a subpoena is a serious and sanctionable violation. Fed. R. Civ. P. 45(g) ("The court . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."); *see also PaineWebber, Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) (fine imposed for failure to comply with deposition and document subpoenas).

It is uncontroverted that Dechert has relevant non-privileged information, including Plaintiff's stolen data; Plaintiff is entitled to it; and Dechert has refused to provide it. Fed. R. Civ. P. 26, advisory committee's note to 1983 amendment ("The purpose of discovery is to provide a mechanism for making relevant information available to the litigants."). Dechert does not – and cannot – argue that it possesses no documents or testimony relevant to the claims being litigated in this action. This case does not involve a brief, narrow association between Dechert and Defendants – Dechert's relationship with Defendants as alleged spans multiple years. Furthermore, Dechert admitted in a U.K. court filing that it "holds at least some data belonging to Mr. Azima," and that, if it is private data, "[it] should be returned to him." *See* Ex. 2 at 4. At least some of this information is non-privileged and must be produced. *See Johnson v. N.C. Dep't of Just.*, No. 16-CV-00679-FL, 2018 WL 5831997, at *13

7

(E.D.N.C. Nov. 7, 2018) ("If the objection applies to only a part of the request, it must produce responsive documents that are not subject to the objection."). Beyond Mr. Azima's own data, it is unlikely that Dechert's billing records and engagement letters are privileged—and those records are highly probative and can surely be identified and produced without any material burden. *See*, *e.g.*, *SAS Inst. Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, No. 10-CV-101, 2011 WL 6370482, at *6 (E.D.N.C. Dec. 20, 2011) ("As a general matter, the attorney-client privilege does not extend to billing records and expense reports.") (quotation marks omitted).

Dechert has nevertheless stonewalled Plaintiff with improper boilerplate objections and has not produced any documents or any witness to testify, as required. Nor has Dechert shared any justifications or contentions as to why particular sets or categories of documents are privileged or otherwise beyond the ambit of discovery; instead, Dechert refuses to engage in any meaningful discussion about these issues. The Rules do not permit Dechert to declare itself immune from discovery, or to pick and choose when it complies with lawfully issued subpoenas. Dechert's response to the subpoenas is nothing more than a delay tactic to avoid discovery about the scope of Dechert's involvement in Defendants' wrongdoing and about other information relevant to Plaintiff's claims.

8

This is not the first time Dechert has been obstructive of discovery in court proceedings. In a judgment last year in the U.K., a court found that (i) Dechert had failed to disclose relevant text messages, (ii) a sworn court filing submitted on Dechert's behalf hid the fact that Dechert partner Neil Gerrard had used 19 different electronic devices and that 11 of those had been lost or destroyed after a document preservation notice was issued (and later had to be corrected *inter alia* by a witness statement from Dechert's General Counsel), and (iii) Dechert refused discovery that had the potential to provide highly relevant evidence. *Eurasian Nat. Res. Corp. Ltd. v. Dechert LLP*, [2022] EWHC 1138 (Comm) at ¶ 248, 1471-74; *see also In re Iraq Telecom Ltd.*, No. 19-MC-175, 2021 WL 5177603, at *1 (E.D. Pa. Nov. 5, 2021) (holding that "[a]ll the documents listed in [Dechert's] privilege log, except for three, are not protected by any privilege and must be produced").

### B. Dechert's Objections Are Insufficient.

A person commanded to produce documents or tangible things in response to a subpoena may serve written objections, but the objections must be made with specificity. *See* Fed. R. Civ. P. 45(d)(2)(B); *Am. Fed'n v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015) (extending Fed. R. Civ. P. 34's specificity requirements for objections to a non-party's objections to a document subpoena).

The generally stated blanket objections articulated in Dechert's letter and repeated in its responses and objections to Plaintiff's subpoena *duces tecum* fall well below what is required by the Federal Rules of Civil Procedure.[5] For example, Dechert objects to the subpoena as burdensome but does not identify how, even though identifying the nature and scope of the burden is required under the Federal Rules of Civil Procedure. *See In re Al Sadeq*, No. 21-MC-0006, 2022 WL 825505, at *25 (M.D.N.C. Mar. 18, 2022) ("[O]ne cannot refuse discovery simply by making a boilerplate objection that it is not proportional.") (cleaned up); *Hy-Ko Prods. Co. v. Hillman Group, Inc.*, No. 5:09-MC-32, 2009 WL 3258603, at *2 (E.D.N.C. Oct. 8, 2009) ("Generally, the mere cry of burdensomeness or irrelevance without any statement in support of these objections is disfavored by the court.") (internal citations omitted). Dechert similarly objects to many of Plaintiff's requests as vague, but it fails to explain what is vague about them. Explaining the basis for a vagueness objection is also required under the Rules. *See Gold v. Kaplan*, No. 2:21-CV-03204-FLA-JDE, 2021 WL 6618643, at *7 (C.D. Cal. Dec. 2, 2021) (highlighting

---

[5] Plaintiff notes that Dechert did not serve timely responses and objections. The objections must be served before the earlier of the time specified for compliance with the subpoena or fourteen days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B). "The failure to serve written objections to a subpoena within the time specified by Rule 45(d)(2)(B) typically constitutes a waiver of such objections." *Long v. City of Concord*, No. 21-cv-201, 2022 WL 16916368, at *2 (E.D.N.C. Nov. 14, 2022) (collecting cases). Here, Plaintiff only received responses and objections to its subpoena *duces tecum* on January 26, 2023, almost two weeks after the return date listed in the subpoena.

10

that a "party objecting to discovery as vague or ambiguous has the burden to show vagueness or ambiguity . . . ."); *see also Badger v. S. Farm Bureau Life Ins. Co.*, No. 6:06-CV-637-ORL-28-KRS, 2008 WL 906561, at *2 (M.D. Fla. Apr. 2, 2008) ("An attorney responding to a document request must interpret the request reasonably and naturally . . . ."). These objections (and others like them)[6] are insufficient on their face.

Finally, Dechert initially alluded to "numerous" privilege issues, but failed to develop those into an actual objection. In its responses and objections, it refused to comply with the subpoena on the basis that the requests seek "documents from a law firm broadly relating to its work for a client." Rule 45 of the Federal Rules of Civil Procedure requires a subpoenaed party to "expressly make the claim" of privilege and "describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). Dechert has plainly not done that.

---

[6] For example, Dechert argues that Plaintiff should first obtain discovery from Defendants; however, most of the requested documents are ones that are in Dechert's possession, not necessarily Defendants' possession. Moreover, Defendants have similarly taken the position that Plaintiff should obtain the documents from Dechert. Almost two months into discovery neither Defendants nor Dechert have produced any meaningful documents. Plaintiff is entitled to discovery from both sources, particularly since they are alleged to be co-conspirators in the same unlawful scheme. *See, e.g.*, *E.E.O.C. v. New Hanover Reg'l Med. Ctr.*, No. 7:09-CV-00085-D, 2010 WL 4668957, at *2 (E.D.N.C. Nov. 9, 2010) (allowing discovery into related requests sent to both plaintiff and third-party).

# CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion to Compel and order Dechert to produce documents and appear for a Rule 30(b)(6) deposition in response to Plaintiff's subpoenas.

This, the 6th day of February, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
Christopher W. Jones
North Carolina State Bar No. 27265
Jonathon Townsend
North Carolina State Bar No. 51751
555 Fayetteville Street, Suite 1100
Raleigh, N.C. 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email:   ripley.rand@wbd-us.com
         chris.jones@wbd-us.com
         jonathon.townsend@wbd-us.com

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Joseph Rillotta (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email:   kbehre@milchev.com
         totoole@milchev.com

jrillotta@milchev.com
iherbert@milchev.com
clee@milchev.com
cmarden@milchev.com

*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

The undersigned certifies compliance with Local Rule 7.3(d) regarding length limitations. This brief contains fewer than 6,250 words. The undersigned has relied on the word count feature of Microsoft Word 365 in making this certification.

*/s/ Ripley Rand*
Ripley Rand
Counsel for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>  Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>  Defendants. | **CERTIFICATE OF SERVICE** |

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

Brandon S. Neuman, Esq.
John Branch, III, Esq.
Jeffrey M. Kelly, Esq.
Nathaniel J. Pencook, Esq.
NELSON MULLINS RILEY & SCARBOROUGH, LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
john.branch@nelsonmullins.com
Tel.: 919.329.3800
Fax.: 919.329.3799

Samuel Rosenthal, Esq.
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Tel.: 202-689-2951
Fax: 202-689-2860
sam.rosenthal@nelsonmullins.com

*Counsel for Defendants*

John Charles Quinn, Esq.
Kaplan Hecker & Fink LLP
350 Fifth Avenue
Ste. 63rd Floor
New York, NY 10118
Email: jquinn@kaplanhecker.com
Tel.: 212-763-0883
Fax.: 212-564-0883

Kearns Davis, Esq.
Daniel D. Adams, Esq.
Brooks Pierce McLendon Humphrey & Leonard LLP
PO Box 26000
Greensboro, NC 27420-6000
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com
Tel.:336-373-8850
Fax.: 336-378-1001

*Counsel for Dechert LLP*

Kieran Shanahan, Esq.
Shanahan Law Group
128 East Hargett Street, Suite 300
Raleigh, NC 27601
Tel.: 919-264-7515
Email: kieran@shanahanlawgroup.com

*Counsel for Shanahan Law Group*

16

**Error! Unknown document property name.**

This, the 6th day of February, 2023.

>WOMBLE BOND DICKINSON (US) LLP
>
>/s/ *Ripley Rand*
>Ripley Rand
>North Carolina State Bar No. 22275
>555 Fayetteville Street, Suite 1100
>Raleigh, NC 27601
>Telephone: (919) 755-8125
>Facsimile: (919) 755-6752
>Email: ripley.rand@wbd-us.com
>
>*Counsel for Plaintiff*