# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CASE NO. 1:20-cv-00954-WO-JLW

FARHAD AZIMA,

          Plaintiff,

v.

NICHOLAS DEL ROSSO and
VITAL MANAGEMENT SERVICES,
INC.,

          Defendants.

**DEFENDANTS' RESPONSE IN
OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

Pursuant to Local Rule 37.1(c), Defendants Nicholas Del Rosso and Vital Management Services, Inc. ("VMS") (collectively "Defendants"), hereby oppose Plaintiff Farhad Azima's ("Plaintiff") Motion to Compel Production of Documents (the "Motion") (D.E. 130) for the reasons set forth below.

## INTRODUCTION

In this lawsuit, the Court only permitted Plaintiff to pursue his allegations that Defendants republished Plaintiff's trade secrets in May and June 2018 and, again, in June 2019 (the "Republication Claims"). (D.E. 1, ¶¶ 16, 19, 22, 24–26). All other claims were dismissed with prejudice. (*See* D.E. 65, pp.23–24).

Rather than focus on the three months of activity identified for the Republication Claims, Plaintiff seeks disproportionate party and third-party discovery to probe nearly every transaction and commercial relationship of

1

Defendants without regard for the scope of the lawsuit set by the Court. Worse, Plaintiff appears to be distancing himself from the purported findings of an investigator, Jonas Rey, which formed the basis for Plaintiff's allegations against Defendants and was used by Plaintiff to delay the multi-million-dollar fraud judgment against him in the English Proceeding. (*See, e.g.*, D.E. 1, ¶¶ 112 & 127). That is because the story offered by Plaintiff and Rey is false.

The unusually aggressive tactics used by Plaintiff and improper motives for this lawsuit justify further protections for Defendants, and the Court should deny Plaintiff's premature Motion for several reasons:

*First*, Plaintiff should not be permitted to pursue broad and speculative discovery for the Republication Claims when he knows or should know that the factual basis for his claims against Defendants is false. According to Rey's Witness Statement – which Plaintiff has, tellingly, not introduced in this lawsuit – Rey was engaged to investigate BellTroX on July 6, 2020, and he ultimately obtained admissions of culpability from a former CyberRoot employee, Vikash Pandey, in August 2020. In reality:

- As confirmed by police investigations, Plaintiff and his agents had access to CyberRoot's bank information and were fishing for transactions with Defendants or Stuart Page in June 2020;

- Mr. Pandey denied ever speaking with Mr. Rey and rebutted his false allegations concerning him, CyberRoot, and Defendants; and

2

- Mr. Pandey confirmed that Plaintiff's agents directly communicated with him and attempted to "pressure [him] to give false testimony" in August 2020.

Therefore, Plaintiff cannot claim to innocently rely on the false accusations against Defendants that resulted from Rey's purported investigation.

*Second*, Plaintiff is pursuing his excessive discovery for an improper purpose. Plaintiff used private investigators to provide unfiled legal threats and draft pleadings to, *inter alios*, Defendants. The same private investigator who delivered an unfiled draft of the Complaint to Del Rosso also previously disclosed that Plaintiff made a deal with a non-party in 2018 to provide information gained concerning Dechert LLP ("Dechert") in litigation in exchange for money. (Del Rosso 2, Ex. A p. 4). Therefore, Plaintiff should not be permitted to conduct disproportionate discovery for other parties' benefit or for his pecuniary benefit.

*Third*, Plaintiff's Motion to Compel is facially deficient and premature because (1) Plaintiff's discovery requests exceed the scope of discovery as limited by this Court; (2) Defendants produced non-confidential documents to which there were no objections to relevancy and temporal scope; (3) Plaintiff did not meet and confer before filing his Motion as required by M.D.N.C. Local Rule 37.1(a); (4) Plaintiff received notice before filing this Motion that Defendants had not withheld any documents based on any alleged boilerplate

3

objections; and (5) Defendants did not improperly withhold a privilege log because they cannot assert or waive attorney-client privilege of third-parties.

In short, Defendants are justified in their approach to Plaintiff's excessive discovery and, to the extent any portion of Plaintiff's Motion is granted, Plaintiff should not be entitled to any costs because Defendants justifiably relied on the Court's limitation of claims and the Court's Order instructing the parties to not produce confidential information until entry of a confidentially protective order.

## **BACKGROUND**

VMS provided fraud examination services to Dechert within the scope of Dechert's representation of its clients, including the Ras al Khaimah Investment Authority ("RAKIA"). On January 30, 2020, Del Rosso testified at the trial in the English Proceeding concerning his limited involvement in assisting Dechert in retrieving data concerning Plaintiff that had been discovered online, which the Court deemed credible. (*E.g.*, D.E. 22-1, p.16 ¶ 69). During cross-examination by Plaintiff's counsel, Del Rosso disclosed that his engagement with Dechert prior to being contacted about the public data in 2016 did not relate to Plaintiff. (D.E. 132-3). Instead, his work was focused on evaluating suspected fraud against RAKIA that had taken place in India. (*Id.*).

Following the trial in the English Proceeding, Plaintiff began working with journalists at Thomson Reuters. Plaintiff engaged Tim Maltin and Maltin

4

PR to communicate with Thomson Reuters reporters, including Raphael Satter. (Ex. A, ¶ 15). On or about April 8, 2020, Satter allegedly contacted Plaintiff's U.S. counsel about a story that "touched upon Mr. Azima and the hacking of his emails." (*Id.* ¶ 14). Plaintiff worked with Satter and reviewed confidentially-sourced information "[b]etween 27 April 2020 and 17 August 2020" concerning alleged hack for hire organizations. (*Id.* ¶ 15).

## I. Citizen Lab and Thomson Reuters issue report shortly after the Approved Judgment is entered against Plaintiff.

On May 22, 2020, the Court in the English Proceeding published its Approved Judgment, recognizing that Plaintiff was liable to RAKIA for substantial fraud. (*E.g.*, D.E. 22-1 ¶ 159). The Court concluded that Azima and related parties engaged in bribery and collusion, concluding that "it is to be inferred from the fact that Dr Massaad received a bribe out of the illicit payments . . . that Mr Azima had agreed with at least Dr Massaad and probably with Mr Al Sadeq as well that the illicit payments would be made." (D.E. 22-1, ¶ 249).

Two weeks after the Approved Judgment was published, the Citizen Lab published its story about "Dark Basin," an alleged hack for hire group, on June 9, 2020. Also on June 9, 2020, Thomson Reuters published exclusive coverage of the Citizen Lab report and claimed that BellTrox Info Tech Services ("BellTroX") was involved in the hacking by Dark Basin. (*See* D.E. 1, ¶ 3).

## II. Plaintiff's agents unlawfully obtain CyberRoot bank statements.

The June 9, 2020, coverage did not mention CyberRoot. However, Plaintiff and his agents were already working to create connections to CyberRoot, Defendants, and others.

By June 23, 2020, individuals working for Plaintiff had already contacted CyberRoot's bank to obtain CyberRoot's financial information. Specifically, Omkar Tripathi, contacted a Kotak Mahindra bank employee seeking information concerning CyberRoot for the period of April 1, 2016, through March 31, 2017. (Ex. B, p.1). On June 24, 2020, Tripathi specified that he needed transactions between CyberRoot and "Vital Management Services," "Page Group," or any "USD large payments" for the period of "2016-2017." (*Id.* pp.3&4).

On June 30, 2020, Tripathi provided CyberRoot's confidential bank account and relationship number. (Ex. B, p.5). At that time, Tripathi stated "Mil jati hai stm to usi se fee mangwa kr," which roughly translates to "If it is found, I will get the fee from them." (*Id.*). On July 7, 2020, Tripathi requested CyberRoot's bank statements for the period of January 1, 2015, through December 31, 2015. (Ex. B, p.6). A report from the Indian Police discloses that CyberRoot's bank statements for the requested periods were generated on June 30, 2020, and July 1, 2020, and leaked to Tripathi by two Kotak Mahindra Bank employees. (Ex. C, p.3). Both Kotak Mahindra Bank employees involved

6

provided witness statements to the Indian Police, confessing that they were used by Tripathi to fraudulently obtain CyberRoot's bank statements. (*Id.* pp.5&6).

The bank statements that were stolen by Plaintiff's agents are the same bank statements that were filed by Haralambos Tsiattalou shortly before Plaintiff's appeal in the English Proceeding. (D.E. 42 ¶¶ 2-3 & 42-1). The theft of these bank statements, which Tsiattalou claimed were obtained by a "whistleblower," are subject to ongoing criminal proceedings in India. (*See* Exs. D & E).

## III. Pandey Rebuts the Witness Statement of Jonas Rey.

According to his witness statement, Rey is a private investigator who founded Athena Intelligence & Risk Management Sarl after working for Diligence International Limited for seven years. (*See* Ex. F-E, p.17, ¶¶ 1&2). Rey states that he was instructed by Plaintiff's counsel on July 6, 2020, to investigate whether BellTroX was involved in hacking Mr. Azima following the trial in the English Proceeding and "reports in the press regarding BellTrox alleging that it was a 'hack-for-hire group.' " (*Id.* p.18, ¶ 8).

In relevant part, Rey claims that that he was told by an unnamed "Source 1" – who, upon information and belief, is Aditya Jain – that CyberRoot was responsible for hacking Plaintiff and "Source 1" introduced him to a former CyberRoot employee, Vikash Pandey. (*Id.* p.19, ¶¶ 10-13). Rey claims that

7

Pandey confessed to being involved in the hacking of Plaintiff and that he, CyberRoot, and Defendants published and republished Plaintiff's data. (*Id.*, pp.20-23, ¶¶ 15-36). However, Pandey categorically denied the allegations in Rey's statement, and denies ever having met or spoken with Rey. (*See* Ex. F ¶¶ 32-51). Pandey has repeatedly denied having any information or belief that CyberRoot or Defendants were engaged in any illegal hacking, and specifically denied any involvement in or awareness of the hacking of Azima. (*E.g.*, *id.* ¶ 5). Instead, Pandey confirmed that Plaintiff and his agents attempted to pressure him into providing false information that would implicate CyberRoot and Defendants in this matter. (*E.g.*, Ex. G ¶ 40).

## IV. Jain and Azima's counsel attempt to convince Pandey to implicate CyberRoot.

Pandey is a former employee of CyberRoot, where he worked from approximately July 2016 until May 2020. (*Id.* ¶ 1). Contrary to the timeline stated by Rey's witness Statement, Pandey confirmed, *inter alia*:

- In August 2020, Jain called Pandey on behalf of Plaintiff to warn him that he was the primary suspect in an investigation into the alleged hacking of Plaintiff, (*id.*, ¶¶ 3-4);

- On August 28, 2020, Pandey received a demand letter from Azima's counsel, who claimed to have information that confirmed Pandey was "instrumental" to the alleged hacking and demanded Pandey's cooperation to avoid criminal and legal proceedings, (*id.*, ¶¶ 11-14);

- Beginning on August 31, 2020, Jain and Holden "pressured" Pandey to sign a Confidentiality Agreement before they would disclose their alleged evidence against him, (*id.* ¶¶ 17-20);

8

- On September 2, 2020, Pandey spoke with Jain and a member of Plaintiff's legal team, who refused to provide evidence that Pandey was involved in hacking Azima. (*Id.* ¶¶ 21-26). Instead, Pandey believed that "Holden and Jain insisted on the Confidentiality Agreement because they intended to pressure [him] to give false testimony during this call." (*Id.* ¶ 27);

- On September 4, 2020, Holden provided "Consultancy Agreements" to Pandey, which offered to pay Pandey to assist them in Plaintiff's legal proceedings, including the English Proceeding, (*id.* ¶¶ 29-32);

- The Consultancy Agreement was very lucrative, and Jain estimated that Pandey would be paid the equivalent of over $500,000 if he cooperated, (*Id.* ¶¶ 33-38); and

- Pandey refused to cooperate with Plaintiff and "understood that the proposed payments to implicate CyberRoot were intended to frame CyberRoot in the hacking of Azima." (*Id.* ¶ 40).

Pandey repeatedly and summarily denied being involved in hacking Plaintiff or providing any of the information that Plaintiff relies upon in this lawsuit and others.

## V. Consultants for the Eurasian Natural Resource Corporation contact Defendants about settlement shortly before Plaintiff files his lawsuit.

Immediately before this lawsuit was filed, Plaintiff sent a legal demand letter to Defendants. On or about October 13, 2020, Plaintiff also contacted Del Rosso through a corporate risk management consultant, Yuri Koshkin. (Ex. H ¶ 6). Koshkin provided an unfiled copy of the same draft Complaint that Plaintiff's counsel sent to Defendants. (*Id.* ¶ 6 & Ex. C). Koshkin represented

that he and Dmitri Vozianov, a consultant for the Eurasian Natural Resources Corporation, was authorized to negotiate the lawsuit that Plaintiff had threatened to file against Defendants. (*Id.*).

In previous conversations, Koshkin informed Del Rosso of Plaintiff's improper financial arrangement with Vozianov's client. (*Id.*¶¶ 3-5 & Exs. A & B).

## VI. Recent Discovery in this Matter.

Discovery in this action commenced less than three months ago. (D.E. 93, p.1).[1] The November 16, 2022, Scheduling Order recognized that "a protective order shall be entered before any confidential information is disclosed." (D.E. 93, p.3). Plaintiff attempted to withdraw his consent to a confidentiality protective order on December 16, 2022, forcing Defendants to move for the entry of a confidentiality protective order. (*See* D.E. 101; *see also* D.E. 102, pp.1-5 (describing background)). In response to Defendants' Motion for a Confidentiality Protective Order, Plaintiff renewed his consent to such protection, (D.E. 112), and that consent motion is pending with the Court.

While the parties were negotiating a confidentiality protective order, on November 22, 2023, Plaintiff served the expansive requests for production of documents at issue in this Motion. As reflected by the growing number of

---

[1] Before the Court entered a Discovery Order, Plaintiff had already served a subpoena on PNC Bank, but did not serve a notice of the same on Defendants pursuant to Rule 45(a)(4) of the Federal Rules of Civil Procedure. (*See* D.E. 123, p.13).

discovery-related motions filed, Plaintiff has refused to reasonably tailor the scope of discovery to the scope of this lawsuit – *i.e.,* the Republication Claims.

Defendants requested a twenty-day extension to respond to the request for production of documents, which Plaintiff predictably opposed. Defendants timely filed their Motion for Extension of Time on December 20, 2023, (D.E. 100), but served their written responses and objections in good faith on December 22, 2022. (D.E. 131-2). Defendants explicitly objected on the basis that, *inter alia*, the Court dismissed nearly all of Plaintiff's claim and that the remaining claim was limited to three months of alleged activity in the Republication Claims. (D.E. 80, p.4).

Additionally, Plaintiff's requests for production of documents asked Defendants to produce documents related to Dechert in the scope of lawfully representing its clients, including RAKIA, which remains at issue in multiple pending motions.

Amid several overlapping discovery disputes, on January 13, 2023, Plaintiff (1) served another unilateral notice for Del Rosso's individual deposition for February 10, 2023; and (2) sent a purported Deficiency Letter with respect to Defendants' responses and objections to Plaintiff's first set of document requests. Despite waiting approximately one month to state his position in the Deficiency Letter, Plaintiff demanded a meet and confer call no later than the next business day. (D.E. 131-4, p.7).

11

Defendants promptly responded to Plaintiff to advise that they would need time to review the purported deficiencies identified in Plaintiff's letter and provide a substantive response or appropriate corrections, if any.

On January 17, 2023, Plaintiff served on Defendants notices of subpoenas of First Citizens Bank & Trust Co. and First National Bank of Pennsylvania (collectively "Banks"), with a production date of January 26, 2023. (D.E. 122-1, 122-2). On January 18, 2023, Defendants e-mailed Plaintiff about the issues with the subpoenas for the Banks and asked to meet and confer. (D.E. 123-1). Counsel agreed to a meet-and-confer conference for January 20, 2023. (*Id.*; D.E. 123-2).

Plaintiff's Counsel attempted to bring up the Deficiency Letter during a January 20, 2023, meet-and-confer call regarding two subpoenas propounded by Plaintiff; however, Counsel for Defendants clarified that the meet-and-confer was scheduled to discuss the two subpoenas, and that a call to discuss the Deficiency Letter should be scheduled after Defendants sent their Response Letter. (D.E. 122-1, 122-2). As the parties were unable resolve the conflict regarding the two subpoenas that were the subject of the January 20, 2023 meet-and-confer call, Defendants filed their Emergency Motion to Quash and for Protective Order regarding the two subpoenas on January 20, 2023. (*See* D.E. 122, 123).

On that same day, Defendants produced non-confidential, responsive documents, but noted the ongoing process of evaluating issues related to privilege, work product, the outstanding Confidentiality Protective Order, and the scope of discovery. (D.E. 131-3). Defendants subsequently provided a detailed response to Plaintiff's Deficiency Letter on January 26, 2023. (D.E. 142-2). As noted in their Motion, Plaintiff received Defendants' Response Letter, but elected to file this Motion without attempting to meet and confer in good faith.[2]

## **ARGUMENT**

### I. **Plaintiff's Discovery Has Been Undertaken for an Improper Purpose.**

The central issue remaining in this case is whether Defendants participated in the republication of Plaintiff's data on blog sites during three months: May 2018, June 2018, and June 2019. Defendants denied these allegations, and it is evident that Plaintiff knows that the purported admissions by Pandey were not actually obtained by Rey.

Given that Plaintiff knows that Defendants did not participate in the Republication Claims, it stands to reason that Plaintiff knows that fishing into every aspect of Defendants' business and personal accounts will not yield

---

[2] Since January 23, 2023, Plaintiff has served six third-party subpoenas to directed at a range of non-parties from banks to attorneys, which seek information that is confidential and not proportionate to the scope of this lawsuit.

relevant information. Besides dramatically and unnecessarily increasing the cost of this narrow litigation, Plaintiff's aggressive and expansive discovery appears to be related to another improper purpose: obtaining confidential and privileged information concerning Dechert LLP in furtherance of a financial arrangement that he reportedly made in 2018 with a hostile former client of Dechert. (*See* Ex. H-A, p.4). Plaintiff's intention to use the information in other lawsuits that he or third parties have filed is an abuse of discovery. *See Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 204, 207 (S.D. W. Va. 2011) (denying motion to compel discovery where the plaintiff had indicated that the discovery sought "would be useful in the development of further claims" in other court proceedings and was therefore prohibited). Therefore, Plaintiff's Motion must be denied.

## II. <u>Plaintiff's Motion is Facially Deficient and Premature.</u>

While Plaintiff's pursuit of improper discovery is sufficient to immediately deny his Motion, the Motion is facially deficient and premature for several reasons, including:

(a) Plaintiff's discovery requests exceed the scope of discovery as limited by this Court;

(b) Defendants produced all non-confidential documents to which there were no objections to relevancy and temporal scope;

14

(c) Plaintiff did not meet and confer before filing his Motion as required by M.D.N.C. Local Rule 37.1(a);

(d) Plaintiff received notice before filing this Motion that Defendants had not withheld any documents based on any alleged boilerplate objections; and

(e) Plaintiff's discovery focuses on third-parties' privilege sand their criticisms concerning privilege are improper and premature.

## A. **Plaintiff's Requests 1-5 and 7-10 Exceed the Court's Limited Scope of Discovery.**

Despite the fact that nearly all of Plaintiff's Complaint was dismissed with prejudice, Plaintiff argues that he should still be able to pursue full discovery because the original Complaint "alleges a longstanding conspiracy between Del Rosso, VMS, Dechert, and others to, among other things, misappropriate Plaintiff's trade secrets" and because a broader temporal scope is "critical to Plaintiff proving the fact of (as well as the scope of) the conspiratorial agreement[.]" (DE. 131-4, p.4). Plaintiff also claims Defendants assisted "in the hacking conspiracy" when Defendants were hired by "a hack-for-hire firm, CyberRoot, to hack Plaintiff's systems." (D.E. 131, pp.7-8). All hacking claims, however, were dismissed with prejudice. (D.E. 65, pp.23-25). Plaintiff's arguments for disproportionate discovery on dismissed claims failed for several reasons.

15

*First*, Plaintiff recognizes "the Court has ordered discovery on "the operative allegations and claims contained in Plaintiff's Complaint, the denials and defenses raised in Defendants' Answer, and all other relevant matters within the scope of Fed. R. Civ. P. 26," (D.E. 131, p.10, n.3 (quoting D.E. 93)), but disregards the key term in the Court's Order: "*operative* allegations." This Court plainly identified the narrow conduct that should be permitted to continue.

The 12(b)(6) Order limited the scope of this matter to Plaintiff's specific conduct alleged in his North Carolina Misappropriation of Trade Secrets claim (Count VIII)—as well as the contingent Civil Conspiracy claim (Count X)—and to only encompass "the 2018–2019 conduct – the only allegations that are not time barred." (D.E. 65, pp.23–24). Moreover, the Court specifically identified the "2018-2019 conduct" as the allegations that Defendants conspired with CyberRoot Risk Advisory Private Limited ("Cyber Root") to create new blog sites in May 2018, June 2018, and June 2019 using WeTransfer. (*Id.* at 17–18 (citing to Complaint, ¶¶16, 19, 22, 24–26)).

The language in the 12(b)(6) Order was not a fluke. In a subsequent order, the Court succinctly stated that only "two of Plaintiff's claims were allowed to proceed: a North Carolina misappropriation of trade secrets claim arising from the 2018-2019 online posting of new links to Plaintiff's confidential business data (Count VIII) and a North Carolina civil conspiracy

16

claim contingent upon the viability of the trade secrets claim (Count X)." (D.E. 80, p.4). Defendants have continuously communicated to Plaintiff the Court has limited the relevant conduct in this case to the alleged republication of Plaintiff's data in 2018 or 2019. (*See, e.g.,* Defendants' Rule 26(f) Report, D.E. 90, p.2).

*Second*, regarding Plaintiff seeking discovery of payments over the period of 2014 through 2021 to Defendants from RAK or affiliated entities (D.E. 131-1, ¶¶1, 9), not only does the temporal scope set by this Court control, but Plaintiff has already received verified information that discredits his allegations that such payments are evidence of "prior bad acts . . . relevant to prove motive, opportunity, intent, preparation, plan, etc." (D.E. 131-4, p.5). Indeed, in August 2014, VMS was engaged by Dechert to investigate assets potentially stolen from the Government of RAK; however, as Del Rosso stated when he was cross-examined by Plaintiff's counsel during the RAKIA trial on January 30, 2020, he had worked with other lawyers at Dechert on unrelated matters involving suspected fraud. Further, Del Rosso also worked with CyberRoot as early as 2014, and Del Rosso has submitted a witness statement in the English Proceeding with RAKIA explaining that this work was not related to Plaintiff. Finally, Plaintiff knows that the allegations in the Rey witness statement that form the basis for his lawsuit are false. Thus, Plaintiff should not be allowed to engage in a fishing expedition regarding information

to which Del Rosso has already stated, under oath, does not relate to Plaintiff or Plaintiff's allegations. *See Jiangmen Kinwai Furniture Decoration Co. v. IHFC Properties, LLC*, No. 1:14-CV-689, 2015 WL 5098791, at \*3-6 (M.D.N.C. Aug. 31, 2015) (finding discovery allegedly targeting whether employees acting on behalf of the defendant also acted on behalf of other entities was grossly overbroad where employees had already provided information about employment under oath and the discovery sought posed limited relevancy to the pending matter).

*Third*, Plaintiff contends that Defendants' alleged conduct postdating 2019 is also relevant, because "[a]s is clear from ECF No. 61, around the filing of this case, Defendants destroyed evidence, instructed hackers to destroy evidence, and fabricated a contract to cover up the fact that Defendants paid an admitted hacker." (D.E. 131-4, p.5). Setting aside the questionable nature of and purpose for Plaintiff's filings, his "Emergency Motion for Leave to File Supplemental Information" was not properly supported and denied by the Court in its 12(b)(6) Order, and it is not part of this case. (D.E 65, p. 11 n.3). Indeed, Plaintiff should not be permitted to manufacture issues, especially in light of his apparent motive of to obtain confidential information for improper uses. (Ex.H-A p.4).

*Finally*, while Plaintiff contends Defendants seeking discovery outside of 2018 and 2019 validates Plaintiff's attempts to do the same, (D.E. 131, p.10

18

n.3), Defendants have a right to probe Plaintiff's allegation of an injury "on or about August 28, 2020 following an investigation," (*see* D.E. 1 ¶127), which is the alleged fact that gave rise to his Republication Claims. However, as noted above, the remaining allegations in the Republication Claims – that Defendants republished Plaintiff's data in May and June 2018 and, again, in June 2019, (D.E.1 ¶¶ 16, 19, 22, 24–26) – are based on false statements in Rey's Witness Statement. If anything, the fact that Plaintiff is relying on false allegations requires the restriction of discovery in this matter, not its expansion.

Accordingly, Plaintiff's Requests seeking documents from 2014 to the present is not reasonably calculated to lead to the production of admissible evidence regarding a purported conspiratorial agreement with CyberRoot in 2018 or 2019 regarding the republication of Plaintiff's data, which remains wholly unfounded. Further, such broad discovery into purported conspiratorial agreements with Dechert "or others" spanning back to 2014 appears to be sought for an improper purpose in furtherance of Plaintiff's claims against Dechert and "others" in separate related matters pending in other jurisdictions, including but not limited to *Azima v. Dechert LLP*, Case No. 1:22-CV-08728-PGG (S.D.N.Y.). In fact, the Court in Plaintiff's New York lawsuit stayed all discovery pending resolution of the defendants' several motions to

dismiss. (S.D.N.Y. Case No. 1:22-CV-08728-PGG, D.E. 104). As such, Plaintiff's Motion must be denied.

**B. Plaintiff Did Not Meet the Requirements of M.D.N.C. Local Rule 37.1(a).**

Pursuant to M.D.N.C. Local Rule 37.1(a), "[t]he Court will not consider motions and objections relating to discovery unless moving counsel files a certificate that after personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord." Here, Plaintiff's Counsel did not attempt to meet and confer multiple times regarding a deficient production of documents.

As an initial matter, Plaintiff incorrectly characterizes Defendants' timely filing of a motion for extension of time on December 20, 2022, as creating an obligation to meet and confer about discovery responses that were not yet due (even in the absence of the motion for extension of time). (*See* D.E. 100). Despite seeking a reasonable extension of time, Defendants still served detailed responses and objections to Plaintiff's discovery requests on December 22, 2022. Tellingly, Plaintiff did not state his position in any meaningful detail until sending his Deficiency Letter nearly a month later on January 13, 2023. And regarding January 20, 2023, counsel for the parties did have a meet-and-confer conference, but for the January 17, 2023, subpoenas for the Banks, which Plaintiff demanded production under by January 26, 2023. (*See* D.E.

20

123-1, 123-2). As Plaintiff had demanded the production of documents within six days, the two subpoenas took priority for a meet-and-confer conference over Plaintiff's belated Deficiency Letter.

Indeed, if Plaintiff had not waited until January 13, 2023, a Friday, to send his Deficiency Letter, voluntarily withdrawn their notice of deposition of VMS after this Court's January 6, 2023 Order, and had not demanded production from the Banks within six days after serving the subpoenas on January 17, 2023, the Parties could have exchanged written statements of their positions on complicated discovery issues and met-and-conferred about any remaining issues within a reasonable amount of time, as Defendants had suggested. Instead, Plaintiff prematurely filed this Motion without regard for the detailed response that he received regarding the alleged deficiencies in Defendants' discovery responses.

Accordingly, the Court should disregard Plaintiff's premature Motion in light of his failure to attempt to resolve discovery disputes in good faith prior to requiring briefing by the parties. *See* M.D.N.C. LR 26.1(b)(1) (mandating that litigants "conduct discovery in good faith and to cooperate and be courteous with each other in all phases of the discovery process.").

### C. **Defendants Produced Responsive Documents to Which There Were No Objections and Were Not Confidential.**

When the Court dismissed every claim other than the Republication Claims, it substantially reduced the scope of the case to conduct that allegedly took place in three months. It should come as no surprise that Defendants do not have records related to these false allegations that they have denied, (*see, e.g.*, Exs. F&G, D.E. 86 ¶¶ 16, 19, 22, 24-26), so objecting to Plaintiff's disproportionate discovery is hardly "stonewall[ing]." (D.E. 131, p.3 n.1).

Closely related to the fact that Plaintiff did not tailor his requests to be proportionate to the Republication Claims, (*see* D.E. 65, pp.23–24), is the fact that Plaintiff is seeking highly confidential documents related to, *inter alia*, fraud examination services provided to a law firm that would ordinarily be exempt from disclosure, (*see, e.g.*, Fed. R. Civ. P. 26(b)(3)). This Court's Scheduling Order states "[t]he parties have agreed that a protective order shall be entered before any confidential information is disclosed." (D.E. 93, p.3). As such, Defendants have not produced any confidential documents as a confidentially protective order has not been entered in this case yet, which Defendants' Counsel noted in the January 20, 2023 production. (D.E. 131-1). Despite such, Plaintiff filed this Motion, which has needlessly increased the cost of this process. Furthermore, as Plaintiff first consented to a confidentially protective order, unreasonably withdrew his consent, and then withdrew his

objection after forcing Defendants to fully brief what is ordinarily a routine issue. Any complaint about a delay in the disclosure of confidential information is a product of Plaintiff's own vexatious conduct.

Accordingly, Plaintiff's Motion must be denied as Defendants produced all responsive, non-confidential documents. Upon entry of a confidentiality protective order, Defendants will timely produce responsive, confidential documents and applicable privilege log.

### D. Defendants Did Not Withhold Production of Documents Based on the Alleged Boilerplate Objections.

As explained in Defendants January 26, 2023 Response Letter, Defendants did not withhold any production of documents based on Defendants' objections that Plaintiff characterizes as "boilerplate." (*See* D.E.142-2, p.7). Thus, this portion of Plaintiff's Motion is moot, which Plaintiff knew before filing.

Plaintiff also takes issue with the "duplicative" objections asserted by Defendants, (D.E. 131, p.9, n.3), but as explained in the January 26, 2023 Response Letter, such objections were asserted to relieve Defendants of the burden of guessing about Dechert and its clients' position on the application of work product and privilege—all of which Dechert and its clients have the authority to assert or waive, whereas Defendants do not have the right to unilaterally waive such protections. Regardless, once Defendants receive

23

Dechert and its clients' position on the application of work product and attorney-client privilege, Defendants will indicate which documents are being withheld on that basis.

Accordingly, Plaintiff's motion must be denied.

### E. **Plaintiff's arguments concerning privileges and logs are premature.**

Similar to other points, Plaintiff's position that Defendants have failed to produce a privilege log for confidential and privileged information is premature. Plaintiff's requests facially seek confidential and privileged information that Defendants are not obligated to produce in the absence of a confidentiality protective order.

To the extent Plaintiff contends Defendants "are obligated to have already made that determination and should have a privilege log prepared," (D.E. 131-4, p.7), Plaintiff did not provide any authority, and Defendants are not aware of any requirement, that Defendants produce a privilege log prior to withholding documents based on privilege. Further, while Defendants understand that they are in possession of privileged information (responsive or not), it is Dechert and its clients that have the authority to determine privilege, and Defendants cannot assert or waive Dechert's clients' privilege. *See In re NC Swine Farm Nuisance Litigation*, 5;15-CV-13-BR, 2017 WL 2313470, at *4 (E.D.N.C. May 26, 2017) ("Defendant does not have the

24

authority to waive the attorney-client privilege between [a third-party] and its counsel."). As reflected by, *inter alia*, Dechert's Motion to Quash, (D.E. 136), there are apparent and complicated issues of attorney-client privilege, which have not been waived.

Moreover, as stated in Defendants' objections to Plaintiff's requests, (*see generally* D.E. 131-2), all objections based on privilege and work product also note that those documents are also confidential. As explained above, Defendants are abiding by the Court's Scheduling Order that forbids the disclosure of confidential information until entry of a confidentiality protective order. (*See* D.E. 93, p.3). Therefore, Plaintiff's Motion must be denied.

## F. <u>Plaintiff's Request for Costs, Including Attorneys' Fees, Must Be Denied.</u>

Under Rule 37(a)(5), the Court must require the opposing party to pay the moving party's reasonable expenses if the motion is granted, including attorneys' fees, unless "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5).

To the extent any portion of Plaintiff's Motion is granted, Plaintiff should not be entitled to any costs, considering both the Court's limitation of claims

and Defendants' adherence to the Court's Scheduling Order instructing the parties to not produce confidential information until entry of a confidentially protective order.

Here, Defendants provided written responses to Plaintiff's discovery requests, produced all non-confidential documents that they did not have objections to regarding the scope of discovery, and stated that they will produce confidential documents when the Court enters a confidentiality protective order. Defendants' actions resulted from justifiably relying on the Court's repeated assertions that the case was limited to the 2018 and 2019 Republication Claims, (*see* D.E. 65, pp.17-18, 23–24; D.E. 80, p.4), and this Court's Scheduling Order instructing the parties to not produce confidential information until entry of a confidentially protective order, (D.E. 93, p.3). As such, Defendants' nondisclosure, response, and objections were substantially justified.

Additionally, as explained above, Plaintiff did not meet and confer before filing his Motion, has served a barrage of discovery requests and third-party subpoenas that are outside the Court's limited scope of discovery and provided an unreasonably short time to produce, and has otherwise failed to obtain discovery in good faith. Indeed, this Court has recognized that sanctions are appropriate against the party seeking overbroad discovery that is not reasonably calculated to obtain relevant information. *Jiangmen*, 2015 WL

26

5098791, at *8-10 (granting motion for protective order and finding the direct and circumstantial evidence indicate that the party seeking discovery was engaging in a fishing expedition instead of seeking potentially useful evidence). Therefore, sanctions are not appropriate against Defendants in light of Plaintiff's actions. Moreover, Plaintiff's real purpose in seeking such overbroad discovery is to gain information about Dechert, not to discover information that is reasonably calculated to obtain relevant information in this matter.

Thus, Plaintiff's request for costs, including reasonable attorneys' fees, must be denied.

## CONCLUSION

As counsel did not engage in a meet-and-confer conference before Plaintiff filed this Motion, the Court has the authority to disregard this Motion. Alternatively, for all the reasons above, including Plaintiff's improper discovery and refusing to abide by the Court's scope limitations in this matter, and Defendants correctly abiding by this Court's Scheduling Order forbidding the disclosure of confidential information until entry of a confidentiality protective order, Plaintiff's Motion should be denied.

Respectfully submitted, this the 9th day of February, 2023.

NELSON MULLINS RILEY &
SCARBOROUGH, LLP

By:     */s/ Brandon S. Neuman*
        Brandon S. Neuman, NCSB# 33590
        Jeffrey M. Kelly, NCSB# 47269
        John E. Branch III, NCSB# 32598
        Nathaniel Pencook, NCSB# 52339
        Sam A. Rosenthal
        301 Hillsborough Street, Suite 1400
        Raleigh, North Carolina 27603
        Telephone: (919) 329-3800
        Facsimile: (919) 329-3799
        brandon.neuman@nelsonmullins.com
        jeff.kelly@nelsonmullins.com
        john.branch@nelsonmullins.com
        nate.pencook@nelsonmullins.com
        sam.rosenthal@nelsonmullins.com
        *Counsel for Defendants*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that **Defendants' Response in Opposition to Plaintiff's Motion to Compel Production of Documents** contains 6,129 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250-word limitation.

Respectfully submitted, this the 9th day of February, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:     */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel Pencook, NCSB# 52339
Sam A. Rosenthal
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February, 2023, I electronically filed the foregoing **Defendants' Response in Opposition to Plaintiff's Motion to Compel Production of Documents** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathan.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Calvin Lee
Ian Herbert
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
bhill@milchev.com
kbehre@milchv.com

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:     */s/ Brandon S. Neuman*
        Brandon S. Neuman, NCSB# 33590
        Jeffrey M. Kelly, NCSB# 47269
        John E. Branch III, NCSB# 32598
        Nathaniel Pencook, NCSB# 52339
        Sam A. Rosenthal
        301 Hillsborough Street, Suite 1400
        Raleigh, North Carolina 27603
        Telephone: (919) 329-3800
        Facsimile: (919) 329-3799
        brandon.neuman@nelsonmullins.com
        jeff.kelly@nelsonmullins.com
        john.branch@nelsonmullins.com
        nate.pencook@nelsonmullins.com
        sam.rosenthal@nelsonmullins.com
        *Counsel for Defendants*

30