# Exhibit 1

# Filed Under Seal

```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
             Case No.: 20-CV-954
```

FARHAD AZIMA,                )
                             )
        Plaintiff,            )
                             )
    vs.                       )
                             )
NICHOLAS DEL ROSSO and VITAL )
MANAGEMENT SERVICES, INC.,    )
                             )
        Defendants.           )
_____

DEPOSITION OF NICHOLAS DEL ROSSO

Volume I

Contains Confidential Testimony

_____

2:07 P.M.

Monday, February 13, 2023

_____

By:  Lisa Taylor, RPR

1

```
                  A P P E A R A N C E S
    On behalf of the Plaintiff:
          MILLER & CHEVALIER CHARTERED
          BY:  KIRBY D. BEHRE, ESQ.
               IAN HERBERT, ESQ.
          900 16th Street NW
          Washington, DC 20006
          (202)626-5800
          kbehre@milchev.com
          iherbert@milchev.com

          WOMBLE BOND DICKINSON (US), LLP
          BY:  CHRISTOPHER W. JONES, ESQ.
          555 Fayetteville Street
          Suite 1100
          Raleigh, NC 27601
          (919)755-2100
          chris.jones@wbd-us.com

    On behalf of the Defendants:
          NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
          BY:  BRANDON S. NEUMAN, ESQ.
               JOHN BRANCH, III, ESQ.
                - (via videoconference)
               MATT GORGA, ESQ.
          301 Hillsborough Street
          Suite 1400
          Raleigh, NC 27603
          (919)329-3800
          brandon.neuman@nelsonmullins.com
          john.branch@nelsonmullins.com
          matt.gorga@nelsonmullins.com

          NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
          BY:  SAMUEL ROSENTHAL, ESQ.
          101 Constitution Ave NW
          Suite 900
          Washington, DC 20001
          (202)689-2951
          sam.rosenthal@nelsonmullins.com
```

2

DISCOVERY COURT REPORTERS    www.discoverydepo.com    1-919-424-8242
Case 1:20-cv-00954-WO-JLW   Document 163-1   Filed 02/16/23   Page 3 of 16

```
 1   2014?
 2        A.    To the best of my recollection, yes.
 3        Q.    And that agreement lasted until the
 4   summer of 2019, when The Ruler told you Dechert had
 5   been relieved of its duties; correct?
 6        A.    Correct, yes.
 7        Q.    Who did you invoice for the work that
 8   you did for Dechert during those five years?
 9        A.    Dechert, I believe.
10        Q.    And who at Dechert got the -- your
11   invoices?
12        A.    (Indiscernible due to overtalking.)
13        Q.    And how did you --
14              COURT REPORTER:  I'm sorry.  I
15        didn't -- you were talking at the same time.
16              MR. BEHRE:  Sorry.
17              COURT REPORTER:  I didn't get the
18        answer.
19              THE WITNESS:  Neil Gerrard, G-E double
20        R-A-R-D.
21   BY MR. BEHRE:
22        Q.    And how did you send those invoices to
23   Neil Gerrard?
24        A.    E-mail.
25        Q.    And did those e-mails go to his e-mail
```

90

1  address at the Dechert law firm?

2       A.    Yes.

3       Q.    And did he have an administrative

4  assistant who received those and processed those for

5  you?

6       A.    I -- I don't know what -- what

7  happened to them after I sent them.

8       Q.    Did there ever come a time when you

9  had to follow up or, as they say in the UK, chase

10 for payment of your bill?

11      A.    Well, follow up and chase, yes.

12      Q.    You did follow up and chase?

13      A.    Yes.

14      Q.    Just like most of us; right?

15      A.    Right.

16      Q.    And who did you chase when you had to

17 chase?

18      A.    Neil.

19      Q.    And was he able to assist you in

20 getting payments that might have been behind pay --

21 you know, overdue?

22      A.    I know that I got paid eventually, so

23 he must have, but I don't know what he did.

24      Q.    You're familiar with Jamie Buchanan,

25 you've already testified; right?

91

1    A.   Yes, I am the person to ask, but it
2 doesn't mean to say that I am the person who can
3 remember all of this.  I'm -- I don't know the
4 numbers now.
5    Q.   Your wife's not involved in the
6 bookkeeping or the accounting; right?
7    A.   She is not.
8    Q.   Do you have an outside accountant that
9 provides you services?
10   A.   He does my tax return, does the
11 company tax return, yes.
12   Q.   What is Gravitas International?
13        MR. NEUMAN:  Objection.  Scope.  Lacks
14   foundation.
15        THE WITNESS:  I thought it was -- I
16   thought -- what had I thought?  You'll have
17   to excuse me.
18        Gravitas International was a private
19   company owned by Jamie Buchanan.
20 BY MR. BEHRE:
21   Q.   And they're involved in the balloon
22 industry, aren't they?
23        MR. NEUMAN:  Objection.  Lacks
24   foundation.
25

98

1        and ambiguous.  Argumentative.

2                    THE WITNESS:  Yes.

3    BY MR. BEHRE:

4        Q.    But you, in fact, have e-mails that

5    are responsive to our requests; right?

6                    MR. NEUMAN:  Objection to form.  To

7             the extent you're asking for information that

8             would be privileged based on my law firm's

9             communications with Mr. Del Rosso about his

10            data, I would instruct him not to answer.

11                   MR. BEHRE:  Nobody asked him that

12            question.

13   BY MR. BEHRE:

14       Q.    But do you have e-mails that are

15   responsive to our document requests?

16                   MR. NEUMAN:  Objection to form.  Calls

17            for speculation.

18                   THE WITNESS:  I don't know.

19   BY MR. BEHRE:

20       Q.    Have you made any effort to search for

21   documents or data that is responsive to our requests

22   for documents?

23       A.    I've instructed my lawyers to do that.

24       Q.    And do you -- do you have a database

25   of information regarding Project Nariman that you

```
 1   could look at to determine whether you have anything
 2   that is responsive to our requests?
 3              MR. NEUMAN:  Objection to form.
 4              THE WITNESS:  No.
 5              MR. NEUMAN:  Calls for a legal
 6        conclusion.
 7   BY MR. BEHRE:
 8        Q.    Do you have your own copies of bank
 9   records regarding the operation of Vital?
10        A.    I'm sure that I do, yeah.
11        Q.    Do you have agreements that you
12   entered into in support of your work for Dechert and
13   RAK?
14              MR. NEUMAN:  Objection to form.
15              THE WITNESS:  Quite possibly, yes.
16   BY MR. BEHRE:
17        Q.    And do you have text message that --
18   text messages that relate to the work that you did
19   for RAK?
20              MR. NEUMAN:  Objection to form.
21              THE WITNESS:  Text messages?
22   BY MR. BEHRE:
23        Q.    Yes.
24        A.    No.
25
```

104

1    Q.   Do you have any other type of
2  messages, e-mail, Whatsapp, Signal, Confide, or
3  those types of programs?
4            MR. NEUMAN:  Objection to the scope of
5       the question.  Vague and ambiguous.  Overly
6       broad.
7            THE WITNESS:  In relation to RAK,
8       all -- all of the work I've done for RAK?
9            MR. BEHRE:  Yes.
10           THE WITNESS:  Yes, I imagine I do,
11      yep.
12 BY MR. BEHRE:
13   Q.   And do you have copies of
14 communications you had with Amir Handjani about this
15 matter?
16           MR. NEUMAN:  Objection to form.
17      Scope.  Vague and ambiguous.
18           THE WITNESS:  I don't know.  We
19      communicated on Signal when -- up until when
20      we stopped communicating.
21 BY MR. BEHRE:
22   Q.   Do you retain your Signal records?
23   A.   I don't know how to other than to
24 photograph them.
25   Q.   Well, do you still have Signal on your

105

1  BY MR. BEHRE:

2       Q.    Who hired NTi?

3       A.    NTi were hired through Chris Swecker,

4  my attorney, by VMS, Vital Management.

5       Q.    I thought you -- you or your lawyer

6  said it was on behalf of Dechert?

7       A.    (Indiscernible due to overtalking.)

8            MR. NEUMAN:  That's an objection to

9       form.  Misstates testimony.

10           THE WITNESS:  Sorry.

11           MR. BEHRE:  I couldn't hear the

12      answer.

13           THE WITNESS:  It was at Dechert's

14      instruction.

15 BY MR. BEHRE:

16      Q.    So Mr. Swecker was working at the

17 direction of Dechert?

18      A.    I was.  Mr. Swecker was my attorney,

19 and I asked him to engage NTi.

20      Q.    And who retained NTi?

21      A.    I did or my company did.

22      Q.    And did you -- do you recall

23 approximately what date you retained them?

24      A.    I can't now without the -- without the

25 e-mails that showed when I was -- I don't remember

114

```
 1   the dates.
 2        Q.    But you still have those e-mails;
 3   right?
 4        A.    Yes.
 5        Q.    And do you have a written agreement
 6   with NTi?
 7        A.    Again, I can't recall now.
 8        Q.    Does Mr. Swecker have a written
 9   agreement with NTi?
10        A.    I don't know.
11        Q.    Does Dechert have a written agreement
12   with NTi?
13        A.    It's possible.
14        Q.    Do you know?
15        A.    I don't know.
16        Q.    What precisely was the scope of your
17   work as directed by Dechert regarding NTi?
18              MR. NEUMAN:  Same objection to the
19         extent that it would divulge attorney-client
20         privileged communication between Dechert's --
21         Dechert and Mr. Del Rosso or his company in
22         relation to its representation of RAK and
23         instruct him not to answer on that basis.
24   BY MR. BEHRE:
25        Q.    And is that your representation?
```

115

1          Q.    The first one in New York.

2                MR. NEUMAN:  Lacks foundation.

3                THE WITNESS:  I don't know.  I don't

4     know.

5  BY MR. BEHRE:

6          Q.    And would you have travel records that

7     would show your travel to New York for those

8     meetings?

9          A.    Yes.

10               MR. NEUMAN:  Objection.  Form.

11 BY MR. BEHRE:

12         Q.    And would those have been billed onto

13    whoever you were sending your bills to at the time,

14    which I assume is Dechert?

15         A.    Yes.

16         Q.    Was it Dechert that you were sending

17    your bills to?

18         A.    Yes.

19               MR. NEUMAN:  Objection.  Scope.  Same

20         objection.

21               THE WITNESS:  Sorry.  I keep...

22 BY MR. BEHRE:

23         Q.    And were you being paid a monthly

24    retainer plus costs?  Is that what financial

25    arrangement was?

                                                        151

1                    MR. NEUMAN:  Objection to form.

2                    THE WITNESS:  No.  Why?  No.

3      BY MR. BEHRE:

4           Q.    You haven't taken any steps to

5      preserve the data that is in that e-mail address?

6           A.    Why would I?  No.

7                    MR. NEUMAN:  Objection to form.

8                    THE WITNESS:  No.

9      BY MR. BEHRE:

10          Q.    What about the e-mail address

11     ndr100@use.com?

12          A.    Usa.com.

13          Q.    Is that your e-mail address?

14          A.    It is, yes.

15          Q.    And do you still maintain that e-mail

16     account?

17          A.    I think so, yes.

18          Q.    And have you taken any steps to

19     preserve any data on there that might be responsive

20     to our requests in this case?

21                   MR. NEUMAN:  Same objection.

22                   THE WITNESS:  I haven't.

23     BY MR. BEHRE:

24          Q.    Have you provided any third party with

25     access, log-in information for either of these two

                                                          182

1  addresses so they could preserve it?
2              MR. NEUMAN:  Objection to form.
3              THE WITNESS:  No.
4              MR. NEUMAN:  Calls for a legal
5        conclusion.
6              THE WITNESS:  Did you say "preserve
7        it"?
8              MR. BEHRE:  Yes.
9              THE WITNESS:  No.
10  BY MR. BEHRE:
11       Q.    How about the e-mail address
12  ndr@vitalmanage.com?
13       A.    That's my e-mail address, yes.
14       Q.    Do you still use that e-mail address?
15       A.    Yes.
16       Q.    And have you taken any steps to
17  preserve that e-mail inbox, outbox, whatever?
18       A.    Yes.
19       Q.    What steps have you taken?
20             MR. NEUMAN:  Objection to the extent
21        it calls for attorney-client privileged
22        information.
23             THE WITNESS:  I'm sorry.  Should I
24        answer that?
25             MR. NEUMAN:  I don't want you to share

183

```
 1         A.    Project Nariman.  That's what you're
 2   asking about.
 3         Q.    Um-hum.  Was -- were there
 4   instructions given -- given by Dechert, including by
 5   Neil Gerrard, to not retain certain communications
 6   and documents regarding the work you were doing for
 7   Dechert?
 8         A.    There was a time when that -- and I
 9   don't know who it came from.  There was a time when
10   I was asked to return all of the data that I had
11   accumulated that had come from Dechert to Dechert.
12         Q.    And so you returned that data to
13   Dechert?
14         A.    I haven't yet.  It's on one of the
15   devices in London.
16         Q.    And who's requested the return of
17   that?  Which individual?
18         A.    I can't remember now.
19         Q.    When was that request made of you?
20         A.    It was made -- well, I don't know when
21   exactly it was made.  Probably 2019.  Because I was
22   asked to return it all at the conclusion of the
23   trial, which I never got to do.
24         Q.    And who made that request of you?
25         A.    I don't remember.
```

195

DISCOVERY COURT REPORTERS    www.discoverydepo.com    1-919-424-8242
Case 1:20-cv-00954-WO-JLW   Document 163-1   Filed 02/16/23   Page 15 of 16

C E R T I F I C A T E

I, Lisa Taylor, Registered Professional Reporter and notary public certify:

That the foregoing deposition of Nicholas Del Rosso was taken before me at the time and place therein set forth at which time the witness was put under oath by me;

That the testimony of the witness and all objections made at the time of the deposition were recorded stenographically by me and thereafter transcribed;

That the foregoing deposition is a true record of the testimony and of all objections made at the time of the deposition.

I further certify that I am neither counsel for nor related to any party to said action, nor in any way interested in the outcome thereof.

My certification as to the accuracy of this transcript, if it has been reformatted or altered from its original form in any manner, is null and void.

In witness whereof, I have subscribed my name this 16th day of February 2023.

_____
Lisa Taylor
Registered Professional Reporter
Notary Public

212

DISCOVERY COURT REPORTERS    www.discoverydepo.com    1-919-424-8242
Case 1:20-cv-00954-WO-JLW   Document 163-1   Filed 02/16/23   Page 16 of 16