## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## Case No. 20-CV-954

FARHAD AZIMA,

    Plaintiff,

    v.

NICHOLAS DEL ROSSO and VITAL
MANAGEMENT SERVICES, INC.,

    Defendants.

**PLAINTIFF'S RESPONSE TO
DEFENDANT DEL ROSSO'S
(THIRD) MOTION FOR
PROTECTIVE ORDER**

      Defendant Del Rosso has filed another frivolous and unsupported motion seeking to delay and obstruct discovery. This time, Mr. Del Rosso has moved for a Protective Order (his third motion seeking such relief) to limit the scope of his deposition. *See* ECF No. 142. But even though the scope of discovery and Mr. Del Rosso's deposition have been at issue and discussed by the parties for months, Mr. Del Rosso waited until one week before his deposition to file his motion and thus deprived the Court of sufficient time to rule on the motion after full briefing by the parties. Mr. Del Rosso and his counsel then impeded the deposition by objecting to questions on relevance grounds hundreds of times, with his counsel inappropriately instructing Mr. Del Rosso not to answer questions seeking non-privileged information. This conduct violates Federal Rules of Civil Procedure and Local Rules prohibiting counsel from instructing a witness not to answer questions except on very narrow grounds

1

2813086.8

that do not apply here. *See* Fed. R. Civ. P. 30(c)(2); Local Civ. R. 30.1. This conduct also exemplifies Defendants' ongoing strategy to obstruct and delay discovery at every turn.

Although the deposition has been temporarily suspended,[1] Defendants' contentions in their motion as to the scope of permissible discovery remain live before the Court in other motions and threaten to impede future discovery, including the deposition of Mr. Del Rosso as the Rule 30(b)(6) witness for Defendant Vital Management Services, Inc. Plaintiff respectfully requests that the Court reject Defendants' untenable position as to the scope of discovery, deny Mr. Del Rosso's motion for a protective order, and instruct Defendants to comply with Plaintiff's outstanding discovery requests forthwith.

## A. Defendant's Motion Improperly Seeks to Narrow the Scope of Discovery.

Defendant Del Rosso's efforts to limit the scope of his deposition flout the liberal rules of discovery, which "is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th

---

[1] Plaintiff will file a motion seeking an order from the Court requiring Mr. Del Rosso to answer any questions that his counsel instructed him not to answer on inappropriate grounds. *See* Fed. R. Civ. P. 30(d)(1) ("The court must allow additional time . . . if needed to fairly examine the deponent or if the deponent, another person, *or any other circumstance impedes or delays the examination*) (emphasis added).

2813086.8

Cir. 2003); *see also United States v. Duke Energy Corp.*, No. 00-CV-1262, 2012 WL 1565228, at *7 (M.D.N.C. Apr. 30, 2012) ("The Fourth Circuit has stated that 'deposition-discovery rules are to be accorded a broad and liberal treatment.'") (quoting *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977)). The Federal Rules of Civil Procedure and the Local Rules of the Middle District of North Carolina require a deponent to answer all non-privileged questions absent a court's direction limiting evidence. *See* Fed. R. Civ. P. 30(c)(1); Local Civ. R. 30.1. The Court has issued no such limitation here. Indeed, the Court's pretrial Order dictates the following scope of discovery: "[d]iscovery will be conducted on the operative allegations and claims contained in Plaintiff's Complaint, the denials and defenses raised in Defendant's Answer, and all other relevant matters within the scope of Fed. R. Civ. P. 26 . . . ." ECF No. 93 at 1-2.

Defendant Del Rosso seeks to upend that balance and again impede discovery by refusing to testify about relevant, non-privileged matters. In particular, Defendant argues that topics other than the 2018-2019 posting of Plaintiff's confidential information are outside the scope of discovery. This is a baseless contention.[2] Regardless, Mr. Del Rosso cannot refuse to answer

---

[2] Plaintiff will not relitigate this issue here but reiterates that Defendants' interpretation in this and other court filings that discovery should be limited to a matter of months during 2018-2019 is unreasonable and

2813086.8

Plaintiff's questions based on Defendants' preferences regarding the appropriate temporal scope of discovery. Relevance objections are not an appropriate basis to limit the scope of questioning at a deposition. *See, e.g.*, *Gobena v. CourierNet Inc.*, No. 20-CV-00290-RJC-DSC, 2021 WL 1917132, at *3 (W.D.N.C. Feb. 24, 2021), *report and recommendation adopted*, 2022 WL 301536 (W.D.N.C. Feb. 1, 2022) (objections that questions were "outside the scope of the Court's limited discovery Order" were "not valid"); *Ali v. WorldWide Language Res., LLC*, No. 20-CV-00638-D, 2022 WL 16727110, at *1 (E.D.N.C. Nov. 4, 2022) (noting "irrelevance" does not "lie within the protected class of objections").

Mr. Del Rosso likewise cannot avoid testifying about the services he performed at Dechert's direction simply because they "***may*** be covered by the attorney-client privilege and/or work product doctrine." *See* ECF No. 142-1 at 2-3 (emphasis added). Courts are clear that "[i]t cannot be assumed . . . that the only relevant information [a deponent] possesses is privileged." *Chevron Corp. v. Donziger*, No. 11-cv-0691 (LAK/JCF), 2013 WL 1896932, at *2 (S.D.N.Y. May 7, 2013). As the proponent of the privilege, Mr. Del Rosso has the burden to prove the privilege with more than conclusory allegations or

---

disconnected from the liberal scope of discovery articulated in Rule 26. *See, e.g.*, ECF Nos. 125, 131; *see also* Fed. R. Civ. P. 26(b)(1). The Court has already noted that bank records dating back to 2014 "may have some bearing on Plaintiff's civil conspiracy claim." *See* ECF No. 54 at 38.

4

statements and, at minimum, must support his claims with an affidavit or other admissible evidence. *See, e.g., Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71-72 (M.D.N.C. 1986) (holding that proponent of privilege did not sufficiently establish the necessary facts because the proponent relied on "counsel's conclusory allegation" that the communications were privileged, which was "clearly insufficient" to establish the attorney-client privilege); *Duke Energy*, 2012 WL 1565228, at *12 (holding that party failed to establish attorney-client privilege because the proponent only "offered affidavits with conclusory allegations"); *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 546 (E.D.N.C. 1993) (holding that proponent of the privilege had the burden to prove that "as to each country" the attorney-client privilege applied to foreign-based patent agents).

At the deposition, Plaintiff had "the right to develop the record" by seeking Mr. Del Rosso's knowledge and, "where an objection is lodged, ask[] the questions that will help determine whether the privilege is properly asserted." *Chevron*, 2013 WL 1896932, at *2; *see also United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) ("[A] claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable."); *Window World of Baton Rouge, LLC v. Window World, Inc.*, Nos. 15 CVS 1-2, 2019 WL 3995941, at *31 (N.C. Super. Ct. Aug. 16, 2019) ("[D]escribing a document as 'regarding' or 'related to' 'legal

5

2813086.8

advice' is of no more assistance to a party seeking to test a privilege claim than generally asserting that the document is protected by the attorney-client privilege."). Moreover, even if Mr. Del Rosso could establish a viable privilege claim for certain work or communications performed for Dechert, some information and documents would still be non-privileged and discoverable. *In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) ("The identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.") (cleaned up).

### B. Defendant Del Rosso and His Counsel Obstructed Plaintiff's Examination of Mr. Del Rosso During the Deposition.

Notwithstanding the fact that the Court has not issued any order limiting the scope of discovery, Defendant Del Rosso and his counsel obstructed Mr. Del Rosso's deposition with continuous objections and unfounded instructions not to answer questions. During the deposition, Mr. Del Rosso's counsel lodged objections more than 400 times in total. These objections were unjustified and often frivolous. Mr. Del Rosso's counsel, for example, frequently instructed his client not to answer questions seeking non-privileged information, *see infra* at Section 1, and raised numerous, improper relevance objections, *see infra* at Section 2. The privilege objections in particular prevented Plaintiff from obtaining relevant testimony because Mr. Del Rosso

6

2813086.8

took his counsel's conditional instructions not to answer to the extent the question called for privileged information as a direction not to answer at all, even when the question clearly called for factual information.

This is not the first time Defendants have attempted to block or stall discovery.[3] *See, e.g.*, ECF No. 163. This type of conduct is yet another example of Defendants' strategy to obstruct and delay discovery. Unless the Court steps in to rein in Defendants' strategy of obstruction, these issues will likely plague Mr. Del Rosso's Rule 30(b)(6) deposition and the rest of this case.

1.  Defendants' Counsel Repeatedly Made Invalid Objections to Questions on the Basis of Relevance.

Defendants take the untenable position that Mr. Del Rosso was "not required" to answer questions at his deposition about topics other than the 2018-2019 posting of Plaintiff's confidential information. *See* ECF No. 142-1

---

[3] Plaintiff also learned during the deposition that Mr. Del Rosso has vast quantities of relevant information that have not been produced, despite the fact that the parties are almost halfway through fact discovery. *See* ECF No. 163 at 5-6 (summarizing Mr. Del Rosso's testimony regarding unproduced relevant documents). For example, Del Rosso admitted to his and his counsel's custody and control of a laptop used by Jamie Buchanan, a representative of RAK who Del Rosso admitted to working with. According to Del Rosso, that laptop does not belong to Buchanan but to RAK. Regardless of who at one point had an ownership interest in that laptop, it clearly contains relevant information and Defendants are obligated to produce responsive documents from that laptop. Defendants' cavalier treatment of their document production obligations is simply another example of their attempts to delay this case. It should not have taken Plaintiff's deposition of a party to learn what relevant sources of information Defendants possess.

2813086.8

at 2. At his deposition, Mr. Del Rosso's counsel objected over 150 times on the basis that a question was outside the scope of discovery.[4] *See, e.g.*, Ex. 1 at 45:1-21; 55:15-19; 153:2-154:23 (Excerpts of Nicholas Del Rosso Dep. Tr. (Feb. 13, 2023) (filed under seal)). This repeated litany of unjustified objections created delay and confusion, and eroded Plaintiff's deposition time. To the extent Defendants intend to stand on these objections, Plaintiff submits that they are invalid and respectfully requests the Court to confirm that Defendants' tactics are inconsistent with their obligations under the Court's prior orders and with the broad discovery regime contemplated by the Federal Rules. *See, e.g.*, *Gobena*, 2021 WL 1917132, at *3; *see also Ali*, 2022 WL 16727110, at *1.

Defendants cannot even argue that they made these objections somehow to preserve their rights. The Federal Rules expressly state that "[a]n objection . . . to the competence, relevance, or materiality of testimony . . . is not waived by a failure to make the objection before or during the deposition." Fed. R. Civ. P. 32(d)(3). These objections were only intended to waste valuable deposition time, obscure the record, and potentially coach the witness. To the extent any

---

[4] After receiving Defendants' position, Plaintiff warned Defendants' via letter that instructions not to answer on relevance grounds were improper. *See* Ex. 2 (Letter from K. Behre to J. Branch (Feb. 10, 2023)).

2813086.8

testimony was withheld on the basis of these objections, Mr. Del Rosso must provide it.

        2.      <u>Defendants' Counsel Improperly Objected to Questions on the Basis of Vaguely-Asserted Privilege Claims.</u>

During his deposition, Mr. Del Rosso's counsel remarkably instructed his client not to answer questions approximately 65 times on the basis of privilege. *See, e.g.*, Ex. 1 at 143:1-144:9, 159:1-17, 162:17-21, 191:22-193:17. Defendants cannot categorically refuse to answer questions on the basis of a privilege that only "may" exist and without providing basic information about the alleged privilege. The attorney-client privilege "is not absolute, and [the Fourth Circuit] has noted that it 'is to be strictly confined within the narrowest possible limits[.]'" *Solis v. Food Emps. Lab. Rels. Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011) (quoting *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)). And as the proponent of the privilege and/or work product doctrine, Mr. Del Rosso has the burden to demonstrate its applicability by satisfying "procedural and substantive criteria." *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011); *see also State v. Farook*, 871 S.E.2d 737, 749 (N.C. 2022) ("The party asserting the privilege has the burden of establishing each of the essential elements of the privileged communication[s]."). Procedurally, Mr. Del Rosso must (i) "'expressly make the claim'" and (ii) "'describe the nature of the [information] . . . in a manner that, without

9

2813086.8

revealing information itself privileged or protected, will enable other parties to assess the claim.'" *NLRB*, 637 F.3d at 501 (quoting Fed. R. Civ. P. 26(a)(5)(A)). Substantively, a party must show that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 501-02 (citation omitted); *see also N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 513 (M.D.N.C. 1986) ("[T]he burden of persuasion on each of the elements of the privilege is clearly upon the proponent.").

North Carolina law[5] applies a similar standard:

---

[5] "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. "Under this rule, when, as here, the substantive decision . . . is governed by state law, the state law also determines the privilege of a witness." *Hartsock v. Goodyear Dunlop Tires N. Am. Ltd*, 672 F. App'x 223, 226 (4th Cir. 2016) (cleaned up). In its order on Defendants' motion to dismiss for lack of subject matter jurisdiction, the Court clarified that "it maintains subject matter jurisdiction over Plaintiff's state law claims through diversity[.]" ECF No. 80 at 7. The attorney work product doctrine, on the other hand, is governed by Federal common law. *See Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 605 (M.D.N.C. 1992) ("In matters involving work

10

> A privilege exists if (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated[,] and (5) the client has not waived the privilege.

*Farook*, 871 S.E.2d at 749 (citation omitted); *see also In re Investigation of Miller*, 584 S.E.2d 772, 786 (N.C. 2003) ("If any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged."). Like Federal law, under North Carolina law "[t]he burden is always on the party asserting the privilege to demonstrate each of its essential elements" and "'[t]his burden may not be met by 'mere conclusory or ipse dixit assertions,' or by a 'blanket refusal to testify.'" *Miller*, 584 S.E.2d at 787 (quoting 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges*, § 1.61, at 1-161 (2d ed. 1994)). "'Rather, sufficient evidence must be adduced, usually by means of an affidavit or affidavits, to establish the privilege with respect to each disputed item." *Id.*

Here, not only did Mr. Del Rosso fail to meet this burden, he prevented Plaintiff from assessing the validity of Defendants' privilege claims. Plaintiff has "the right to develop the record" by seeking Mr. Del Rosso's knowledge and, "where an objection is lodged, ask[] the questions that will help determine

---

product protection, as opposed to attorney-client privilege, federal courts apply federal law, even in diversity cases.").

11

2813086.8

whether the privilege is properly asserted." *Chevron*, 2013 WL 1896932, at

*2; *see also* 8A Charles Alan Wright & Arthur Miller, *Federal Practice and*

*Procedure*, § 2113 Conduct of Examination (3d ed.):

> It is clear that there must be some explanation for a privilege
> objection [in a deposition]. Rule 26(b)(5)(A) explicitly requires, as
> to all discovery, that a party who refuses to provide discovery on a
> claim of privilege provide a sufficient specifics to "enable other
> parties to assess the claim." . . . [T]he directive of Rule 26(b)(5)(A)
> does not appear to limit the traditional propriety of inquiry into
> such matters as time, place, persons present, etc., that normally
> attend the assertion of a privilege in a deposition.

Despite Plaintiff's right to develop the record, Mr. Del Rosso's counsel

repeatedly instructed him not to answer questions seeking non-privileged

information. Mr. Del Rosso's counsel instructed him not to answer the

questions seeking information about, among other things, whether his phone

had been imaged to preserve records and whether Mr. Del Rosso received

devices from other individuals involved in the conspiracy against Plaintiff.[6]

None of these questions seek privileged information. They seek facts.

While privilege rules generally protect communications between

attorneys and clients related to legal advice and an attorney's mental

---

[6] Defendants refused to disclose information about devices belonging to
co-conspirators in some instances, but oddly permitted testimony about a
laptop containing co-conspirator Buchanan's data that Del Rosso claims does
not belong to Buchanan but to RAK. The inconsistent application of the
unreasonable "bright lines" Defendants attempted to paint further undermines
their instructions not to answer.

2813086.8

impressions, they do not permit a party to cloak himself in the protection to resist disclosure of underlying facts. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (attorney-client privilege); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 121-22 (D.N.J. 2002) (work product doctrine); *see also* Restatement (Third) of the Law Governing Lawyers § 69 cmt. d (Am. L. Inst. 2000). Most of the questions posed to Mr. Del Rosso were "Yes" or "No" questions regarding specific factual points or were seeking Mr. Del Rosso's general description of a potentially privileged event (the kind of information that Defendants were required to have provided in a privilege log description field based on any claim of privilege). *See, e.g.*, Ex. 1 at 143:1-144:9, 159:1-17, 162:17-21, 191:22-193:17. Defendant Del Rosso nevertheless prevented Plaintiff from obtaining answers to basic facts. This testimony is relevant and discoverable, and Plaintiff is entitled to receive it.

Furthermore, most of the objections purportedly related to a privilege not held by Del Rosso but held by RAK. Del Rosso is not an attorney, and typically "[c]ommunications do not merit the attorney-client privilege when they are made in the presence of a third party." *Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 847 S.E.2d 30, 34 (N.C. 2020); *see also Berens v. Berens*, 785 S.E.2d 733, 740 (N.C. Ct. App. 2016) ("Generally, communications between an attorney and client are not privileged if made in the presence of a third party because those communications are not confidential and because that person's

13

2813086.8

presence constitutes a waiver."); *State v. Murvin*, 284 S.E.2d 289, 294 (N.C. 1981) (holding that presence of friend and aunt destroyed privilege because their presence was not "necessary for the protection of [the client's] interests").

Under Fourth Circuit and North Carolina law, the attorney-client privilege only covers non-lawyers in limited circumstances. For example, the North Carolina Supreme Court held that the attorney-client privilege does not apply to communications between the sole shareholder of a company and the shareholder's financial advisor. *Glob. Textile All.,* 847 S.E.2d 30 (N.C. 2020). In that case, the Court addressed two possible theories for extending the attorney-client privilege: (1) the "functional equivalent test," under which "an individual is the functional equivalent of a company's employee when his communications with counsel 'fell within the scope of his duties' for the company," *id.* at 35 (citation omitted); and (2) the *Kovel* doctrine, under which "communications involving a third party are privileged when the communications are 'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit,'" *id.* at (quoting *United States v. Kovel*, 296 F.2d 918, 921-22 (2d Cir. 1961)). The Court first acknowledged that "[n]either of these specialized applications has been recognized under North Carolina law," but, if they were, neither applied. *Id.* at 34-35. The functional-equivalent test did not apply because the advisor "lacks any sort of agency relationship with [the company]

14

2813086.8

and thus cannot have 'duties' at [the company]." *Id.* at 35. And the *Kovel* doctrine did not apply because the company "d[id] not argue that [the advisor's] presence was necessary for [the company] to communicate with its attorneys; rather, [the company] argues that [the advisor's] presence was highly useful for [the shareholder] to communicate with [the company's] attorneys." *Id.*; *see also Technetics Grp. Daytona, Inc. v. N2 Biomedical, LLC*, No. 17 CVS 22738, 2018 WL 5892737, at *5 (N.C. Super. Ct. Nov. 8, 2018) (holding that, even if the Kovel doctrine applied, the "privilege does not extend to consultation with a third party that is merely useful or convenient").

This Court has also held that a relationship must be more than a "mere 'working relationship'" to "support a finding of agency for the purposes of attorney-client privilege," and "[c]ases finding an agency relationship sufficient to uphold an attorney-client privilege involve relationships with familial or professional aspects." *Atwood v. Burlington Indus. Equity, Inc.*, 908 F. Supp. 319, 323 (M.D.N.C. 1995). This Court further explained that, even if a relationship was "beneficial," the attorney-client privilege would not apply if "the relationship lacks the formal aspects necessary to rise to the level of agency for the purposes of attorney-client privilege." *Id.*

Here, Mr. Del Rosso testified that some of his work involved providing protective services (in other words, bodyguards) to his co-conspirators. Yet his counsel made no effort to carve out that type of work from his instructions to

15

Del Rosso not to answer. Del Rosso made no showing and offered no evidence—much less sworn testimony—about the requisite facts he is required to prove as the proponent of the attorney-client privilege and attorney work product doctrine. Thus, his claims of privilege should be disregarded.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Del Rosso's third motion for protective order and afford Plaintiff any relief the Court deems appropriate to ensure that Plaintiff's rights to discovery within the Rules are protected.

This, the 17th day of February, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
Christopher W. Jones
North Carolina State Bar No. 27265
Jonathon Townsend
North Carolina State Bar No. 51751
555 Fayetteville Street, Suite 1100
Raleigh, N.C. 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email:   ripley.rand@wbd-us.com
             chris.jones@wbd-us.com
             jonathon.townsend@wbd-us.com

-and-

16

2813086.8

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren E. Briggerman (*pro hac vice*)
Joseph Rillotta (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
900 16th Street, NW
Washington, D.C.  20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email:   kbehre@milchev.com
           totoole@milchev.com
           lbriggerman@milchev.com
           jrillotta@milchev.com
           iherbert@milchev.com
           clee@milchev.com
           cmarden@milchev.com

*Counsel for Plaintiff*

2813086.8

## CERTIFICATE OF WORD COUNT

The undersigned certifies compliance with Local Rule 7.3(d) regarding length limitations. This Response contains fewer than 6,250 words. The undersigned has relied on the word count feature of Microsoft Word 365 in making this certification.

/s/ Ripley Rand
Ripley Rand
Counsel for Plaintiff

2813086.8

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>    v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>    Defendants. | **CERTIFICATE OF SERVICE** |

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

Brandon S. Neuman, Esq.
John Branch, III, Esq.
Jeffrey M. Kelly, Esq.
Nathaniel J. Pencook, Esq.
NELSON MULLINS RILEY & SCARBOROUGH, LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
john.branch@nelsonmullins.com
Tel.: 919.329.3800
Fax.: 919.329.3799

2813086.8

Samuel Rosenthal, Esq.
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Tel.: 202-689-2951
Fax: 202-689-2860
sam.rosenthal@nelsonmullins.com

*Counsel for Defendants*

John Charles Quinn, Esq.
Kaplan Hecker & Fink LLP
350 Fifth Avenue
Ste. 63rd Floor
New York, NY 10118
Email: jquinn@kaplanhecker.com
Tel.: 212-763-0883
Fax.: 212-564-0883

Kearns Davis, Esq.
Daniel D. Adams, Esq.
Brooks Pierce McLendon Humphrey & Leonard LLP
PO Box 26000
Greensboro, NC 27420-6000
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com
Tel.:336-373-8850
Fax.: 336-378-1001

*Counsel for Dechert LLP*

Kieran Shanahan, Esq.
Shanahan Law Group
128 East Hargett Street, Suite 300
Raleigh, NC 27601
Tel.: 919-264-7515
Email: kieran@shanahanlawgroup.com

*Counsel for Shanahan Law Group*

- 2 -

2813086.8

Walter Clinton Holton, Jr.
Walter C. Holton, Jr., PLLC
857 W. Fifth Street
Winston-Salem, NC 27101
336-777-3480
Fax: 336-722-3478
Email: wholton@walterholton.com

*Counsel for Christopher Swecker and Christopher Swecker Enterprises, LLC*

This, the 17th day of February, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Ripley Rand*

Ripley Rand
North Carolina State Bar No. 22275
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone:   (919) 755-8125
Facsimile:   (919) 755-6752
Email:      ripley.rand@wbd-us.com

*Counsel for Plaintiff*

- 3 -

2813086.8