UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA, <br><br> Plaintiff, <br><br> v. <br><br> NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC., <br><br> Defendants. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S SUBPOENA TO AMERICAN EXPRESS** |

Once again, Defendants have taken the unusual step of moving to quash a third-party subpoena regarding Plaintiff's subpoena to American Express ("Amex"). This is the third subpoena that Defendants have moved to quash in their overall effort to thwart discovery into relevant, non-privileged financial records held by their financial institutions. *See* ECF No. 154 (Defendants' motion to quash at issue here); *see also* ECF No. 125[1]; ECF No. 163 at 4 (documenting Defendants' discovery obstruction); ECF No. 122 (Defendants' emergency motion to quash two bank subpoenas); ECF No. 130 (Plaintiff forced to file motion to compel in response to Defendants' failure to produce any discovery); ECF No. 167 (Defendants' motion for protective order regarding

---

[1] ECF No. 125 is Plaintiff's response to Defendants' motion to quash third-party subpoenas to two banks seeking records detailing how Defendants passed on the funds it received from Dechert's client, Ras Al Khaimah ("RAK") to third parties. ECF No. 122. The arguments overlap significantly with the issues raised by the Amex subpoena.

1

Defendant Del Rosso's deposition).  Defendants have no standing or basis to oppose this subpoena, and their Motion should be denied.

The subpoena at issue is based, in part, upon an analysis of Defendants' own bank records that Plaintiff obtained pursuant to a third-party subpoena issued to PNC Bank.  Defendant Vital Management Services, Inc. ("VMS") is by Defendants' own account a one-man company, yet its bank records show that RAK and related entities transferred approximately $35 million to VMS over six years.  *See* ECF Nos. 126, 127.  Analysis of these bank records further shows that VMS used those funds to pay out tens of millions of dollars to various entities over the same period, including to entities that Plaintiff believes were involved in the theft and publication of his trade secrets and other data.[2]  Plaintiff issued third-party subpoenas to trace these funds, and that relevant and critical analysis is at the core of Plaintiff's subpoena to Amex.

Defendants' bank records show that Defendants paid over $1.7 million to Amex from at least 2015 through 2021.  These credit card records will likely include discoverable information regarding where Defendant Del Rosso was, what he was doing, and who he was with during relevant times at issue in Plaintiff's claims – critical information for determining the extent of his

---

[2] For example, Plaintiff previously highlighted that Defendants' PNC Bank records show that they made 82 payments to Shanahan Law Group totaling approximately $6.2 million between June 2017 and November 2020, and 5 payments totaling $2.325 million over a one-year period to GH Holding. *See* ECF No. 125 at 2-7.

2

involvement in the misconduct alleged in the complaint. Plaintiff issued a subpoena to Amex to trace the funds paid from Defendants' accounts, to obtain information about where money paid by RAK was transferred and why, and to uncover information relevant to the use of Defendant Del Rosso's personal account in facilitating payments to third parties. These purposes are clearly proper, and the information Plaintiff seeks is relevant to his claims and the defenses in this case, and proportional to the needs of this litigation. The Court should deny the motion to quash as yet another attempt to stifle Plaintiff's legitimate discovery efforts.

I.  **Defendants Continue Their Strategy to Obstruct and Delay Discovery by Seeking to Quash a Subpoena They Have No Standing to Challenge.**

As previously noted in prior filings, Defendants have no standing to quash third-party subpoenas, but they persist in filing unfounded motions seeking to do so.[3] "As a general proposition, a party lacks standing to challenge a third-party subpoena unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *Bryson v. CompuCom Sys., Inc.*, No. 19CV1121, 2021 WL 7184369, at *5 (M.D.N.C. Feb. 10, 2021) (cleaned up). It is settled that account holders possess no right or privilege that would afford them standing to challenge the return of bank records. *See United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007) ("Typically, a party has no

---

[3] This argument was already raised in the context of Defendants' motion to quash subpoenas issued to First National Bank and First Citizens Bank, and Plaintiff incorporates his prior arguments here. *See* ECF No. 125 at 8-11.

standing to challenge a subpoena issued to his or her bank seeking discovery of financial records because bank records are the business records of the bank, in which the party has no personal right.").

Defendants appear to be frantically attempting to prevent the release of any information and documents relevant to the conduct alleged in Plaintiff's complaint. Defendants have now refused to produce a *single document* from their files during discovery, forcing Plaintiff to file a motion to compel (ECF No. 130); filed motions to quash three third-party subpoenas, which they have no basis to challenge (ECF No. 122, 155); and filed *three motions for protective orders* to limit discovery, including a motion to limit the scope of Defendant Del Rosso's deposition (ECF No. 167). Defendants should not be permitted to prevent discovery of relevant, non-privileged documents from Amex here.

## II. Even if Defendants Had Standing to Challenge the Subpoena, Their Arguments for Quashing the Subpoena Lack Merit.

A. <u>Defendants' Attempt to Limit the Temporal Scope of Discovery Misconstrues Prior Court Rulings and is No Basis to Quash a Subpoena.</u>

Defendants retread the same claim that the Court limited discovery to a period from 2018-2019. The Court has issued no such ruling, and Defendants' repeated representations otherwise are disingenuous. Plaintiff will not re-litigate the scope of discovery here, an issue that has now been addressed in multiple filings.

4

The appropriate scope of discovery based on the allegations in the Complaint extends back to 2014. The Court has acknowledged as much when it authorized the issuance of the third-party subpoena to PNC Bank. *See* ECF No. 54 at 38 (authorizing the subpoena to PNC seeking bank records from 2014 since those records "have some bearing on Plaintiff's civil conspiracy claim"). In any event, the temporal scope of discovery is not a basis to quash the subpoena in its entirety.

B. <u>Defendants' Relevance and Burden Arguments Lack Support and Also are No Basis to Quash the Subpoena.</u>

Relevance is not an appropriate reason to quash a third-party subpoena under Rule 45. *See* Fed. R. Civ. P. 45(d)(3). Regardless, the subpoena to Amex is narrowly tailored to target documents relevant to Plaintiff's claims. The subpoena expressly explains the relevance of the requested documents. *See* ECF No. 154-1, Ex. A at 3 ("Evidence suggests that over $1.7 million in credit card payments were made by Defendants from at least 2015 through 2021."). Moreover, the subpoena specifically seeks relevant information: "credit card statements, account opening documents, communications about the accounts or with the account holders, and records of money transfers via wire, SWIFT, check, or other method." *See id.* In sum, the subpoena seeks specific categories of information connected to the almost $2 million paid to Amex, much or most of which likely came directly from RAK in payments that are temporally connected to the conspiracy.

5

Moreover, the subpoena is limited in proportion to Plaintiff's needs. Defendants suggest that the subpoena could be tailored to transactions expressly relevant to Plaintiff's claim, but this would impose an obligation on the producing parties that is both significantly burdensome and improper. *See* Fed. R. Civ. P. 45(d)(1) (subpoenas must "avoid imposing undue burden or expense"). Amex can easily identify the records identified in the subpoena without conducting a burdensome review. Retrieving and producing the monthly credit card statements is a simple and quick task. Amex should not be forced to attempt to sort through those records to determine which transactions may be relevant given its lack of institutional knowledge about the case.

    C.    <u>Defendants' Vague Concern About Disclosure of Undefined "Personal Information" is Insufficiently Articulated and Is No Basis to Withhold Relevant Documents.</u>

While Defendants continue to raise concerns about the confidentiality of the information Plaintiff is seeking from Amex, this argument is not based in the Federal Rules of Civil Procedure, the Local Rules of this Court, or the law. To justify quashing a subpoena because it would reveal confidential information, Defendants were required to show that "'(1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause identifiable harm.'" *Minter v. Wells Fargo Bank, N.A.*, Nos. 07-CV-3442, 08-CV-1642, 2010 WL 5418910, at *8 (D. Md. Dec. 23, 2010) (citation omitted). Defendants have failed to make either

6

showing, or any showing at all. *See, e.g.*, ECF No. 154 at 4 (simply noting Defendants "consider their AMEX account records to be confidential financial records").[4] Without any showing, Defendants' claim of confidentiality should be summarily rejected.

> D. <u>Defendants' Privilege Assertions Over Third-Party Financial Data Lack Legal and Factual Merit.</u>

Defendants vaguely assert that the Amex subpoena "may" seek privileged information. Defendants' privilege arguments are half-hearted, perhaps because bank records contain the sort of financial data that the Fourth Circuit has plainly deemed non-privileged. *See* ECF No. 125 at 15-18 (addressing this argument and citing cases). The attorney-client privilege protects confidential communications between an attorney and their client. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 403 (1976). There is no attorney-client relationship between Defendants and Amex. *See, e.g.*, *Selevan v. SEC*, 482 F. Supp. 3d 90, 93–94 (S.D.N.Y. 2020) (collecting cases) (subpoenaed individual's "attempt to cast the records of his bank account as privileged is, in fact, frivolous"). Even if Defendants' payments to Amex related to legal work, the transaction information Plaintiff is seeking could not possibly reflect legal advice. *See also In re Grand Jury Proc.*, 33 F.3d 342, 354 (4th Cir. 1994) ("The attorney-client

---

[4] In prior briefing, Defendants acknowledged North Carolina district courts have held that a party has "no personal right" in his or her bank records. ECF No. 132 at 6.

privilege normally does not extend to the payment of attorney's fees and expenses."); *In re Grand Jury Subpoena,* 204 F.3d 516, 520 (4th Cir. 2000) ("The identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.") (cleaned up). Possession of privileged material by a third party (here, Amex) would reflect a waiver of any such privilege.

Furthermore, Defendants have failed to meet their burden to articulate their privilege basis with specificity. *See* Fed. R. Civ. P. 45(e)(2) ("A person withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents [in a way that] will enable the parties to assess the claim."); *see also NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501-02 (4th Cir. 2011) ("A party asserting the privilege has the burden of demonstrating its applicability" by "satisfy[ing] procedural and substantive criteria."); *State v. Farook*, 871 S.E.2d 737, 749 (N.C. 2022) ("The party asserting the privilege has the burden of establishing each of the essential elements of the privileged communication[s]."); *In re Investigation of Miller*, 584 S.E.2d 772, 787 (N.C. 2003) ("The burden is always on the party asserting the privilege to demonstrate each of its essential elements" and "[t]his burden may not be met by 'mere conclusory or ipse dixit assertions,' or by a 'blanket refusal to testify.'") ((quoting 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges*, § 1.61,

8

at 1-161 (2d ed. 1994)). "'[S]ufficient evidence must be adduced, usually by means of an affidavit or affidavits, to establish the privilege with respect to each disputed item.'" *In re Miller*, 584 S.E.2d at 787. Defendants have failed to properly assert privilege here and should not be permitted to hide behind the protection to quash a subpoena in its entirety.[5]

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Quash or Motion for a Protective Order.

This, the 21st day of February, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
Christopher W. Jones
North Carolina State Bar No. 27265
Jonathon Townsend
North Carolina State Bar No. 51751
555 Fayetteville Street, Suite 1100
Raleigh, N.C. 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email:  ripley.rand@wbd-us.com
　　　　chris.jones@wbd-us.com
　　　　jonathon.townsend@wbd-us.com

-and-

---

[5] Although there is no reason to believe that these subpoenas implicate privileged information, Plaintiff would of course consent to a reasonable process to treat the information as confidential.

9

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren E. Briggerman (*pro hac vice*)
Joseph Rillotta (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email:   kbehre@milchev.com
　　　　　totoole@milchev.com
　　　　　lbriggerman@milchev.com
　　　　　jrillotta@milchev.com
　　　　　iherbert@milchev.com
　　　　　clee@milchev.com
　　　　　cmarden@milchev.com

*Counsel for Plaintiff*

# CERTIFICATE OF WORD COUNT

The undersigned certifies compliance with Local Rule 7.3(d) regarding length limitations. This brief contains fewer than 6,250 words. The undersigned has relied on the word count feature of Microsoft Word 365 in making this certification.

> */s/ Ripley Rand*
> Ripley Rand
> Counsel for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 20-CV-954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>Defendants. | **CERTIFICATE OF SERVICE** |

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

Brandon S. Neuman, Esq.
John Branch, III, Esq.
Jeffrey M. Kelly, Esq.
Nathaniel J. Pencook, Esq.
NELSON MULLINS RILEY & SCARBOROUGH, LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
john.branch@nelsonmullins.com
Tel.: 919.329.3800
Fax.: 919.329.3799

2813443.8

Samuel Rosenthal, Esq.
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Tel.: 202-689-2951
Fax: 202-689-2860
sam.rosenthal@nelsonmullins.com

*Counsel for Defendants*

John Charles Quinn, Esq.
Kaplan Hecker & Fink LLP
350 Fifth Avenue
Ste. 63rd Floor
New York, NY 10118
Email: jquinn@kaplanhecker.com
Tel.: 212-763-0883
Fax.: 212-564-0883

Kearns Davis, Esq.
Daniel D. Adams, Esq.
Brooks Pierce McLendon Humphrey & Leonard LLP
PO Box 26000
Greensboro, NC 27420-6000
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com
Tel.:336-373-8850
Fax.: 336-378-1001

*Counsel for Dechert LLP*

Kieran Shanahan, Esq.
Shanahan Law Group
128 East Hargett Street, Suite 300
Raleigh, NC 27601
Tel.: 919-264-7515
Email: kieran@shanahanlawgroup.com

*Counsel for Shanahan Law Group*

Walter Clinton Holton, Jr.
Walter C. Holton, Jr., PLLC
857 W. Fifth Street
Winston-Salem, Nc 27101
336-777-3480
Fax: 336-722-3478
Email: wholton@walterholton.com

*Counsel for Christopher Swecker and Christopher Swecker Enterprises, LLC*

This, the 21st day of February, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8125
Facsimile: (919) 755-6752
Email: ripley.rand@wbd-us.com

*Counsel for Plaintiff*