UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S SUBPOENA TO AMERICAN EXPRESS.** |

This Reply Memorandum is submitted in support of Defendants Nicholas Del Rosso and Vital Management Services, Inc. ("Defendants") Motion to Quash and Motion for Protective Order regarding Plaintiff Farhad Azima's ("Plaintiff") subpoena to American Express ("Amex") (D.E. 154) and Plaintiff's Opposition to that Motion (D.E. 171).

## INTRODUCTION

Despite Plaintiff's attempt to paint Defendants' resistance to his sweeping discovery tactics as "unusual," the only thing that is unusual here is Plaintiff's purported need for information well beyond the remaining scope of his case. While Defendants will refrain from a full recitation of their position on the scope of this case, which has been briefed extensively at this point (*see, e.g.,* D.E. 155; D.E. 159), the highlights bear repeating: this Court summarily dismissed all but two of Plaintiff's claims—a North Carolina Misappropriation

1

of Trade Secrets claim (Count VIII) and a dependent North Carolina civil conspiracy claim (Count X) (collectively, the "Remaining Claims"). Furthermore, the Court significantly limited the scope of conduct which could support the Remaining Claims. (D.E. 65, pp.22–24).

Throughout the pendency of this matter, Plaintiff has issued repeated salvos of overbroad and disproportionate subpoenas, all in an effort to discover information for use in his unrelated cases currently pending in other jurisdictions and countries[1]. Recently, Plaintiff's tactics were put on full display when he deposed Defendant Del Rosso for seven hours and did not ask a **single question** about the purported republication of Plaintiff's data. (*See* D.E. 179). This approach is true to form for Plaintiff as, to date, not a single one of his discovery requests have even feigned recognition of the operative claims, facts, or dates in this matter, thus necessitating Defendants' continued opposition to these improper discovery tactics.

Plaintiff's subpoena to Amex (the "Subpoena") is yet another iteration of Plaintiff's discovery strategy. Notwithstanding the Court's admonition that the

---

[1] Plaintiff has multiple other related matters pending in other jurisdictions, including but not limited to *Azima, et al. v. Dechert LLP, et al.*, Case No. 1:22-cv-08728-PGG (S.D.N.Y. filed October 13, 2022) (the "SDNY Matter"), where discovery has yet to commence. On January 18, 2023, the Hon. Paul G. Gardephe stayed discovery in the S.D.N.Y. Matter "pending resolution of Defendants' motions to dismiss." *Azima, et al. v. Dechert LLP, et al.*, Case No. 1:22-cv-08728-PGG, at D.E. 104 (S.D.N.Y. Jan. 18, 2023). Plaintiff should not be allowed to serve discovery here, seeking information unrelated to his Remaining Claims, in what appears to be an end-run around the scheduling in the SDNY Matter.

parties "work cooperatively in discovery regarding disputes on the scope of discovery[.]" (D.E. 93, p.2 & n.1), Plaintiff persists in his efforts to abuse the discovery process. Therefore, Defendants' Motion should be granted, quashing, or modifying the Subpoena, or otherwise entering a protective order commanding the same.

## ARGUMENT

### I. DEFENDANTS HAVE STANDING TO CHALLENGE THE SUBPOENA.

Much like he has done in other instances when Defendants have resisted Plaintiff's attempts to gain unfettered access to accounts and other information without any limits or focus on the remaining claims of the case, Plaintiff devotes a whole section of his response to debating Defendants' standing to challenge the Subpoena. (D.E. 171 pp.3–4; *see also* D.E. 125, pp.8–11). But as previously set out in other similar filings (*see, e.g.,* D.E. 132, pp.6–7), Fourth Circuit courts have held that a party at the least has standing to challenge a third-party subpoena under Rule 26 as irrelevant and overbroad regardless of whether he or she has standing under Rule 45. *See, e.g., Nallapaty v. Nallapati*, 2022 WL 1508885, at *4 (E.D.N.C. May 12, 2022); *Kappel v. Garris*, 2020 WL 707123, at *2 (D.S.C. Feb. 12, 2020); *Brown v. Mountainview Cutters*, LLC, 2016 WL 3045349, at *2 (W.D. Va. May 27, 2016). Plaintiff's arguments otherwise are unavailing.

3

Moreover, this Court is empowered to quash or otherwise limit the Subpoena pursuant to Rule 26(b)(2)(C), which provides that, "[o]n motion or on its own, the court *must* limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added). Thus, pursuant to Rule 26, Defendants are well within their rights to challenge—and the Court is well within its power to quash or otherwise limit—the Subpoena which seeks information well outside the permissible scope of discovery.

## II. PLAINTIFF'S SUBPOENA BEGS A STRAINED READING OF THE REMAINING CLAIMS AND MUST BE QUASHED OR SUBSTANTIALLY NARROWED.

### A. The Subpoena Is Overbroad And Ignores The Scope Of The Remaining Claims In This Matter.

It is well settled that a subpoena must have a relevant subject matter limitation and otherwise be limited to the operative claims and defenses of a case. *Nallapaty v. Nallapati*, 2022 WL 1508885, at *4 (E.D.N.C. May 12, 2022) (citing *Moore v. DAN Holdings, Inc.*, 2013 WL 1833557, at *11 (M.D.N.C. Apr. 30, 2013)). Notably, this includes limiting the subpoena to the "relevant time period" of the case. *See id.* at *5; *Champion Pro Consulting Grp., Inc. v. Impact Sports Football*, LLC, 2014 WL 6686727 (M.D.N.C. Nov. 26, 2014) (citing *Innovative Therapies, Inc. v. Meents*, Civ. A. No. DKC 12–3309, 2014 WL 858651, at *17 (D.Md. Mar. 4, 2014) (unpublished)). On its face, Plaintiff's

4

Subpoena fails in both regards—it is both overbroad in temporal scope and as to subject matter. Yet when Defendants pointed out these deficiencies by reminding Plaintiff of the limited scope of his remaining claims, (D.E. 155, pp.2–4), Plaintiff simply branded Defendants' arguments as "disingenuous." (D.E. 171, p.4). To the contrary, Defendants' position is firmly rooted in the Court's order (D.E. 65), which Plaintiff has apparently chosen to ignore as he continues in his pursuit for information irrelevant in this case, presumably in furtherance of other pending matters in other jurisdictions.

The Subpoena is facially overbroad, not reasonably calculated to lead to the production of admissible evidence and is disproportionate to the remaining claims. Instead of narrowing its focus, Plaintiff continues his broadside approach to discovery by, among other things, seeking information spanning three years before and two years after the expressly stated years for the remaining events at the focus of this matter. (D.E. 155, p.4) (quoting Plaintiff's Subpoena). If that were not enough, Plaintiff goes on to aggregate six years of credit card payments, along with a heavy dose of rounding up—to the tune of hundreds of thousands of dollars—in an attempt to shoehorn this overbroad request into relevant and proper discovery. When Defendants objected to this tactic, Plaintiff only offered baseless accusations without any supporting evidence. (D.E. 171, p.5) ("[A]lmost $2 million paid to Amex, much or most of

5

which likely came directly from RAK in payments that are temporally connected to the conspiracy.").

Moreover, Plaintiff attempts to cite to the Order and Recommendation of United States Magistrate Judge ("Order and Recommendation," D.E. 54) to justify its seeking of bank records spanning back to 2014. (D.E. 171, p.5). However, Plaintiff appears to purposefully not include the <u>full</u> cited sentence, which states: "Such documents may have some bearing on Plaintiff's civil conspiracy claim (for which the undersigned has not recommended dismissal) *insofar as Plaintiff has alleged a conspiracy between Defendants and Dechert LLP.*" (D.E. 54, at p.38) (emphasis added). In the District Court Judge's subsequent Memorandum Opinion and Order (D.E. 65), the Court found these allegations against Dechert LLP to be time-barred. (D.E. 65, at pp.23–24.)

### B. The Subpoena is Not Narrowly Tailored Or Likely to Produce Admissible Evidence.

Not only does the Subpoena fail to focus on the narrow scope of this case, but it also declines to even attempt at restricting itself to potentially relevant inquires. Indeed, the Subpoena neglects to distinguish possible use and payments by Defendants from that of unrelated parties such as Del Rosso's wife and family. As detailed further in the Motion, VMS maintains a business Amex account for payment of business expenses, and Del Rosso and his wife maintain a personal Amex account for their familial expenses. (D.E. 155, pp.8–

6

10). Plaintiff would have the court grant unfettered access into all of this and more, thus permitting Plaintiff an unrestricted fishing expedition into the personal finances of Mr. Del Rosso's family and other non-parties. This is simply improper. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).

Curiously, Plaintiff also claims that narrowing the scope of its Subpoena would somehow increase the burden compliance would impose on Amex, which, Plaintiff states, would presumably bring the request into the scope of Rule 45(d)(1)'s prohibitions. (D.E. 171, p.6). If true, this is more of a reflection upon the overall Subpoena's viability than on Defendants' requested relief. If narrowing a request to comply with the actual operative timeframe and claims of the case would make the Subpoena "significantly burdensome and improper," then it is no solution to instead allow Plaintiff unrestricted access to a wide array of overly broad and irrelevant information. Amex's "lack of institutional knowledge" about the case (D.E. 171, p.6) does not allow Plaintiff a carte blanche excuse to fish through as much of Defendants' information as it chooses, regardless of scope, relevancy, or any other improper purposes Plaintiff desires.

### C. The Overly Broad Subpoena Risks Implicating Complex Issues of Privilege and Other Rights and Protections.

While Plaintiff cries foul on Defendants' assertions that the Subpoena may implicate matters of privilege, he conveniently misses the point. Plaintiff's Subpoena is so massively overbroad and infirm that it runs the very real risk of involving many of these issues. The sheer lack of any subject matter, timeframe, or related limitations renders the Subpoena a clear fishing expedition which the Court should not permit. Defendants are not asserting privilege claims in the entirety of the records themselves, rather, they are pointing out the fact that the all-encompassing request has not limited itself to the narrow focus of the case and thus, privilege issues may arise with certain payments.

### III. PLAINTIFF SHOULD NOT BE PERMITTED TO USE DISCOVERY HERE AS A PROXY TO LITIGATE UNRELATED CLAIMS ELSEWHERE.

Behind the curtain of the Subpoena, and the others which Defendants have similarly objected to, is that Plaintiff is presumably maintaining its course of seeking discovery in other matters, including those where the court has stayed discovery or where discovery has yet to begin. *See, e.g., Azima, et al. v. Dechert LLP, et al.*, Case No. 1:22-cv-08728-PGG, at D.E. 104 (S.D.N.Y. Jan. 18, 2023) (staying discovery "pending resolution of Defendants' motions to dismiss."). Plaintiff should not be permitted to use this matter as a vehicle

to circumvent orders and processes in other courts. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 364 n.17 (1978) (noting that "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied"). Therefore, this Court should quash or otherwise limit the Subpoena as to ensure Plaintiff is focused on *this* matter and its remaining claims alone.

## CONCLUSION

For the reasons discussed herein, Defendants respectfully request that the Court enter an Order quashing or modifying the Subpoena or otherwise enter a Protective Order commanding the same, and for an interim Order directing that any production by Amex pursuant to the Subpoena either be (a) stayed pending resolution of the Motion; or (b) made to the Court—not the Parties—to be held *in camera* until the Motion is decided.

9

Respectfully submitted, this the 28th day of February.

                **NELSON MULLINS RILEY &**
                **SCARBOROUGH LLP**

                By:   */s/ Brandon S. Neuman*
                    Brandon S. Neuman, NCSB# 33590
                    Jeffrey M. Kelly, NCSB# 47269
                    John E. Branch III, NCSB# 32598
                    Nathaniel Pencook, NCSB# 52339
                    Sam A. Rosenthal
                    301 Hillsborough Street, Suite 1400
                    Raleigh, North Carolina 27603
                    Telephone: (919) 329-3800
                    Facsimile: (919) 329-3799
                    brandon.neuman@nelsonmullins.com
                    jeff.kelly@nelsonmullins.com
                    john.branch@nelsonmullins.com
                    nate.pencook@nelsonmullins.com
                    sam.rosenthal@nelsonmullins.com
                    *Counsel for Defendants*

# CERTIFICATE OF SERVICE

      I hereby certify that on this 28th day of February 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    John E. Branch III, NCSB# 32598
    Nathaniel J. Pencook, NCSB# 52339
    Sam A. Rosenthal
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    john.branch@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    *Counsel for Defendants*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 1,905 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 28th day of February, 2023.

    **NELSON MULLINS RILEY & SCARBOROUGH, LLP**

    By: */s/ Brandon S. Neuman*
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    John E. Branch III, NCSB# 32598
    Nathaniel J. Pencook, NCSB# 52339
    Sam A. Rosenthal
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    john.branch@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    *Counsel for Defendants*