# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CASE NO. 1:20-cv-00954-WO-JLW

FARHAD AZIMA,

               Plaintiff,

   v.

NICHOLAS DEL ROSSO and
VITAL MANAGEMENT SERVICES,
INC.,

               Defendants.

**DEFENDANTS' RESPONSE IN
OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL FURTHER
DEPOSITION TESTIMONY**

      Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management

Services, Inc. ("VMS") (collectively "Defendants") submit this Response in

Opposition ("Response") to Plaintiff Farhad Azima's ("Plaintiff" or "Azima")

Motion to Compel Further Deposition Testimony ("Motion to Compel" or

"Motion") (D.E. 188).

## INTRODUCTION

      Del Rosso was deposed over the course of two days for the full seven

hours allowed by Federal Rule of Civil Procedure ("Rule") 30(d). Plaintiff does

not dispute that he improperly used Del Rosso's two-day deposition to develop

information for use in other legal proceedings, (*see, e.g.*, D.E. 179, at pp.3–5, 7),

and to develop facts to support unrelated litigation brought by third parties,

(*see, e.g.*, *id.* at pp.5–6). When it comes to discovery that would have been

proper for this case, Plaintiff did not ask a single question about the operative

allegations in the Complaint concerning WeTransfer or the purported republication of Plaintiff's trade secrets. (*See, e.g., id.* at pp.9–10.)

Having chosen to spend the seven hours to which he was entitled under Rule 30(d) to fish for information in support of other cases, Plaintiff now seeks even more deposition time based on his perceived problems, which to the extent they exist at all, are of his own creation. Plaintiff's second bite at the apple should be denied for several reasons, including:

***First,*** any perceived issues used to demand more deposition time are of Plaintiff's own making. Del Rosso timely sought a protective order and ruling in advance of the deposition as to the scope of the deposition. (*See* D.E. 142). Defendants' counsel also sought to efficiently preserve this objection during Del Rosso's deposition, asking at the start of the deposition for a standing objection on scope as to avoid interrupting the questioning; however, Plaintiff refused and demanded that Defendants' counsel object on a question-by-question basis. (*See* D.E. 182-3, at 7:6–10:13; 41:13–42:22). Although Del Rosso's counsel was forced to repeatedly object to specific overbroad and disproportionate questions, Del Rosso was never instructed to refuse answering questions which were beyond the scope of discovery in this case. Therefore, Plaintiff's arguments on this basis are meritless and should be rejected.

**Second,** while many of the issues regarding privilege pertain to questions that are beyond the scope of Plaintiff's remaining claims, Defendants—as well as third parties—have legitimately objected to Plaintiff's improper attempts to pierce privileged matters. (*See, e.g.*, D.E. 142; D.E. 136) Contrary to Plaintiff's arguments—which are devoid of citations to the record—Del Rosso set forth a legitimate basis for assertion of privilege. (*See, e.g.*, D.E. 182-3, at 14:22–15:12). Plaintiff offers nothing to dispel the fact that: (1) VMS was retained by a law firm, Dechert LLP ("Dechert"), in connection with its attorney-client relationship with its clients, Ras al Khaimah ("RAK") and related entities (collectively, the "RAK Parties"), (*see, e.g., id.* at 13:3–24); (2) as part of that engagement, Defendants received and prepared privileged communications and attorney work product from/for Dechert attorneys, (*see, e.g., id.* at 14:22–15:23); (3) as the ultimate client of Dechert, the RAK Parties prohibited Del Rosso from disclosing their privileged information, (*see* D.E. 182-4); (4) Del Rosso also retained counsel himself to assist in connection with various matters, (*see, e.g.,* D.E. 182-3, at 68:2–24; 99:7–18; 119:21–24); and (5) the answers to the questions posed to Del Rosso would have divulged the instructions, advice, privileged communications, and/or attorney work-product he exchanged with Dechert or his attorneys in connection with those representations, (*see, e.g., id.* at 111:15–113:25; 126:2–25; 162:17–21).

3

Even though the basis for the assertions of privilege were apparent, Plaintiff intentionally avoided asking any questions where the answers would further confirm that Del Rosso was being asked to divulge material protected by the attorney-client privilege and work product doctrine. (*See* D.E. 182-3, at 348:10–349:16). Plaintiff cannot demand further deposition time in order to ask questions he intentionally avoided.

***Finally,*** ordering further deposition time of Del Rosso is unduly burdensome and prejudicial to Defendants. Plaintiff's remaining claims were limited to his false[1] allegations that Defendants worked with CyberRoot Risk Advisory Private Limited ("CyberRoot") to republish Plaintiff's data using WeTransfer in 2018 and 2019. (*See* D.E. 65, at pp.17–18, 23–24). The Court is aware of Del Rosso's health, (*see* D.E. 97, 114), and Plaintiff's overbroad and disproportionate discovery for use in other cases is apparent from the

---

[1] As set forth more fully in Defendants' Response in Opposition to Plaintiff's Motion to Compel Production of Documents, (D.E. 159), Plaintiff's remaining claims that Defendants worked with CyberRoot to republish his data in 2018 and 2019 are based on a false report by his agent, Jonas Rey. (*See, e.g.*, D.E. 159-6, at p.71, ¶ 35 (claiming that Vikash Pandey told Rey that CyberRoot used WeTransfer to upload Plaintiff's data)). However, Vikash Pandey denied speaking with Rey or that Defendants or CyberRoot engaged in wrongdoing. (*See* D.E. 159, at pp.7–8 (summarizing Pandey's rebuttal of Rey's false witness statement)). Pandey also disclosed that Plaintiff's agents and counsel attempted to pressure him—including with a $500,000 "Consultancy Agreement," (D.E. 159-6, at pp.37–48), if he testified for them—and that he "understood that the proposed payments to implicate CyberRoot were intended to frame CyberRoot in the hacking of Azima." (D.E. 159, at pp.8–9 (summarizing Plaintiff's agents' attempts to convince Pandey to implicate CyberRoot). Additionally, bank records produced by Standard Chartered Bank corroborate the fact that Plaintiff and his agents Jonas Rey and Aditya Jain unlawfully obtained CyberRoot's bank statements to create this case. (D.E. 159, at pp.6–7 (summarizing that Plaintiff's agents unlawfully obtained CyberRoot's bank statements)).

incredible activity on this Court's docket. Indeed, Defendants have even had to confront Plaintiff's apparent misuse of confidential information in other proceedings and, tellingly, Plaintiff has not responded in over a month. (*See* D.E. 182-1).

Accordingly, Plaintiff's Motion should be denied in its entirety.

## BACKGROUND[2]

As the Court is aware, Plaintiff has been seeking to use this case to conduct extensive and unrelated discovery since it was filed.[3] After the Court narrowed this case by dismissing nine of Plaintiff's eleven claims, discovery commenced on November 16, 2022. At the hearing on March 7, 2023, on all then-outstanding discovery motions, Plaintiff's counsel conceded that, as a result of the Court's ruling (D.E. 65), Plaintiff is no longer permitted to the discovery that would otherwise have been permitted.

Notwithstanding counsel's admission, Plaintiff has been on notice, since at least the Rule 26(f) conference on November 15, 2022, of the material differences in how the Parties view the scope of discovery in this matter, as

---

[2] Further background on this lawsuit may be found in Defendants' Response In Opposition to Plaintiff's Motion to Compel Production of Documents (D.E. 157, at pp.4–13).
[3] *See, e.g.*, D.E. 7 (Plaintiff's Motion for Leave to Serve Third-Party Subpoenas Before Rule 26(f) Conference); D.E. 26 (Motion to Expedite D.E. 7); D.E. 36 (Plaintiff's Motion to Schedule Initial Pretrial Conference, Issue Order Commencing Discovery); D.E. 52 (Plaintiff's Renewed Motion to Schedule Initial Pretrial Conference, Issue Order Commencing Discovery); D.E 61 (Plaintiff's Emergency Motion for Leave to Commence Discovery); D.E. 66 (Plaintiff's Motion to Schedule Initial Pretrial Conference).

well as the complicated attorney-client privilege and attorney work-product issues implicated by Defendants' work for Dechert/the RAK Parties. Plaintiff moved forward with his discovery efforts regardless of these unresolved issues, serving his first set of Requests for Production of Documents on November 22, 2022, and his first Notice of Deposition of Del Rosso on December 8, 2022. (*See, generally*, D.E. 98). On January 6, 2023, the Court entered a protective order delaying Del Rosso's deposition until on or after February 10, 2023. (D.E. 114). Plaintiff thereafter sought to depose Del Rosso on February 10, 2023, but, after extensive correspondence and negotiations between the Parties, and in the shadow of a forthcoming motion for protective order, Plaintiff ultimately agreed to conduct the deposition over two days on February 13 and 14, 2023, for 3.5 hours per day.

In an effort to resolve any outstanding issues as to scope and privilege/attorney work-product, Del Rosso filed a Motion for Protective Order on February 3, 2023 (D.E. 142, 143), seeking an order limiting Plaintiff's inquiry at Del Rosso's then-upcoming deposition to topics within the scope of Plaintiff's remaining claims, and prohibiting inquiry into topics implicating attorney-client privilege and work-product protections. Still, with Del Rosso's Motion for Protective Order pending, in addition to several other pending

6

motions generally centered on these same issues,[4] Plaintiff proceeded with Del Rosso's deposition on February 13 and 14, 2023, where Del Rosso was on record for the full seven hours.[5]

Shortly after the deposition, on February 17, 2023, Plaintiff responded to Del Rosso's Motion for Protective Order, making what he concedes are the same accusations and arguments which he now brings yet again in his Motion to Compel. (*See* D.E. 167; *see also* D.E. 189, at p.1, n.1 (stating "[t]he arguments in the instant Motion to Compel substantially overlap with Plaintiff's response to Defendant's Motion for Protective Order[.]")). The only difference is that now—after the deposition has taken place—Plaintiff complains that Defendants' counsel "impeded" the deposition by improperly objecting on scope/relevance and privilege grounds (*See* D.E. 167; *see also* D.E. 189)—the very grounds for objection that Defendants tried to avoid by filing Del Rosso's Motion for Protective Order.[6]

Defendants also tried to avoid needless motions practice following Del Rosso's deposition. On February 22, 2023, Plaintiff requested via email a meet-

---

[4] *See, e.g.*, D.E. 122 (Defendants' Motion to Quash/for Protective Order); D.E. 130 (Plaintiff's Motion to Compel Production of Documents); D.E. 133 (Third-Party Shanahan Law Group's Motion to Quash); D.E. 136 (Third-Party Dechert LLP's Motion to Quash); D.E. 144 (Plaintiff's Motion to Compel Third-Party Dechert LLP).

[5] Despite Plaintiff's attempt to hold the deposition open, Del Rosso was on record for a total of seven hours and one minute, as calculated by adding up the "on record" time indicated by the videographer during the deposition. Accordingly, there is no "unused time" as Plaintiff posits. (*See* D.E. 189, at p.3, n.4).

[6] Defendants incorporate herein by reference their arguments made in Del Rosso's reply brief in support of his Motion for Protective Order (D.E. 179).

7

and-confer regarding his "projected motion to compel" seeking further deposition testimony from Del Rosso. (D.E. 188-1). In response to this request, Defendants asked that Plaintiff provide specific questions or, at the very least, particular areas of examination where Plaintiff believes privilege was improperly asserted. (*Id*. at p.4). Rather than attempting to identify *any* specific areas of questioning, Plaintiff responded that privilege was improper "with respect to **any** deposition question" and implied that, due to "time sensitivity," any further discussion on these issues would be futile. (*Id*. at p.2) (emphasis added).

On February 28, 2023, the Court noticed a hearing for March 7, 2023, on all then-pending Motions. (D.E. 184). A day later, on March 1, 2023, Plaintiff filed the present Motion, repackaging his accusations previously brought in his response to Del Rosso's Motion for Protective Order, and requesting that the Court order sanctions and additional deposition testimony. (D.E. 188, 189). Further, Plaintiff requested that the Court expedite briefing, even though he had waited two weeks before filing his Motion, attempting to force Defendants to respond to the Motion in two days such that the Motion could be heard at the March 7, 2023 hearing. At the March 7, 2023 hearing, the Court heard arguments on Plaintiff's Motion to Compel, and directed Defendants to file their responsive brief within ten days of the hearing.

## **ARGUMENT**

Plaintiff's Motion should be denied. Plaintiff was given the full allotment of time required by the Rules to depose Del Rosso. Del Rosso was never instructed to refuse answering questions that were outside the scope of this case and, as to privileged matters, all objections and instructions were made pursuant to properly raised privileges.

The relief Plaintiff now seeks is dependent on three arguments: (1) that Del Rosso's counsel's scope objections were "invalid" and "impede[d] and delay[ed]" the deposition; (2) that "Del Rosso's counsel instructed his client not to answer questions . . . on the basis of privilege without any basis to do so" and (3) that Del Rosso "refused to answer substantive questions" and has further obstructed discovery by not producing more documents prior to his deposition. (D.E. 189, at pp.5–9). As shown below, none of these arguments have merit.

Preliminarily, any review of cases dealing with the specific relief Plaintiff now seeks (*i.e.*, additional testimony and sanctions) shows the baseless nature of his request. The only case he cites is *Cunningham v. Wells Fargo Bank, N.A.*, No. 19-cv-00528, 2022 WL 1177166, at *1 (W.D.N.C. Apr. 20, 2022) (awarding sanctions and additional deposition testimony where *pro se* plaintiff "impeded, delayed, and frustrated" her examination). However, while the actual order in *Cunningham* does not detail the specific underlying

9

conduct that supported its decision, *see id.* at 1–3, a cursory review of the underlying motion that the court granted reveals the egregiousness of the conduct that was at issue. *See Cunningham v. Wells Fargo Bank, N.A.*, No. 18-cv-00528, at D.E. 61 (W.D.N.C. filed Feb. 25, 2022) (detailing, *inter alia*, multiple refusals by *pro se* plaintiff to answer questions at deposition despite multiple court orders directing plaintiff to do so) (***see* Exhibit 1**). By contrast, the conduct at issue in the present matter—where the deponent sat for and fully participated in the entire deposition, only declining to answer questions seeking privileged information—is easily distinguishable from *Cunningham*, and a far cry from the typical instances where courts have afforded the relief that Plaintiff now seeks. *See, e.g., Gardendance, Inc. v. Woodstock Copperworks, Ltd.*, 230 F.R.D. 438 (M.D.N.C. 2005) (involving multiple failures to appear for depositions); *Carter Hughes v. Rsch. Triangle Inst.*, 2014 WL 4384078 (M.D.N.C. Sept. 3, 2014) (involving refusal to make oneself available or participate in depositions or discovery efforts); *see also Green v. John Chatillon & Sons*, 188 F.R.D. 422 (M.D.N.C. 1998), *aff'd*, 165 F.3d 18 (4th Cir. 1998) (noting that multiple refusals to participate in or respond to discovery even when faced with court orders warranted sanctions).

## I. Del Rosso's Counsel's Scope Objections Were Valid And Were Repeated At The Request of Plaintiff's Counsel.

Plaintiff complains that "[t]he repeated litany of unjustified [scope] objections created delay and confusion and eroded Plaintiff's deposition time" and were intended to "waste valuable deposition time, obscure the record, and potentially coach the witness." (D.E. 189, at pp.8–9). This argument is meritless for at least two reasons.

First, while an overstatement, the so-called "repeated litany" of scope objections is a problem of Plaintiff's own making. Defendants offered to use a standing objection at the outset of the deposition to avoid having to interpose objections on a question-by-question basis. (D.E. 182-3, at 7:6–10:13). However, Plaintiff insisted on objections for each individual question, (*id.* at 41:13–42:22), forcing Del Rosso's counsel to interpose individual objections.[7] To be clear, however, Del Rosso was *never* instructed to refuse answering questions solely on the basis of a scope objection. Thus, regardless of Plaintiff's view that Defendants' position on scope is "unjustified," Plaintiff cannot now cry foul after being offered—and declining to accept—a reasonable avenue that would have avoided the need for repeated scope objections. Even so, the

---

[7] For ease of reference, Del Rosso's counsel asked, "[c]an we just agree to have a standing objection that's consistent with the scope objections we've made already in this case so we don't have to do it every time?" (D.E. 182-3, at 41:17–20). In response, Plaintiff's counsel stated: "I think it's best if you have objections, you put them on the record" such that there's "no disagreement" or "no surprises". (*Id.* at 42:6–15).

11

amount of time needed to utter the words "objection to scope" hardly took up three hours of deposition time—the amount of additional time now sought by Plaintiff.

Second, Plaintiff fails to dispute that the questioning of Del Rosso was intended for use in other cases, and in some instances, not even cases filed by Azima, but other "allied" parties. Defendants have briefed that issue extensively. (*See* D.E. 179, at pp.4–7). Plaintiff's focus was clearly on obtaining information to be used in separate actions pending in other jurisdictions where discovery is either unavailable or has been expressly prohibited. (*Id*.)[8] Plaintiff did not deny—because he cannot—that this was his real motivation for numerous areas of questioning.

Nor does Plaintiff dispute that the use of the deposition for other cases is improper. Indeed, "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 364 n.17 (1978). While the Protective Order would ordinarily quell some of these concerns (*see* D.E. 177 (restricting use of confidential information to "this

---

[8] This includes an action pending in the Southern District of New York, *see Azima, et al. v. Dechert LLP, et al.,* Case No. 1:22-cv-08728 (filed Oct. 13, 2022), where discovery has been stayed, *see id.* at D.E. 104; and multiple actions pending in the United Kingdom where Defendants are not named parties, including *RAK Investment Authority v. Azima,* [2020] EWHC 1327 (Ch), and *Stokoe Partnership Solicitors v. Grayson, et al.*, Claim No. QB-2020-002492 EWHC.

Action")), Plaintiff appears to have already engaged in such improper conduct. (*See* D.E. 182-1).

Third, regardless of Plaintiff's conclusory assertions otherwise, Defendants' scope objections *are* justified, as they are rooted firmly in the Court's December 10, 2021, Memorandum Opinion and Order on Defendants' Rule 12(b)(6) Motion to Dismiss (the "Rule 12(b)(6) Order"). (D.E. 65). As further detailed in the several other pending motions on this issue (*see, e.g.*, D.E. 143, at pp.1–6), Defendants repeatedly communicated their position that, as a result of the Rule 12(b)(6) Order, the only relevant conduct remaining in this lawsuit is the "2018-2019 conduct—the only allegations that are not time barred." (D.E. 65, at pp.23–24). More specifically, the allegations that Defendants conspired with CyberRoot to create new blog sites in May 2018, June 2018, and June 2019, and that Defendants used WeTransfer to transfer Azima's data. (*Id.* at 17–18 (citing Complaint, ¶¶16, 19, 22, 24–26)).

Moreover, the number of scope/relevance objections interposed at Del Rosso's deposition was hardly improper, as Plaintiff's counsel did not ask *a single question* about WeTransfer or the purported republication of Plaintiff's data through the blog cites.

Therefore, Del Rosso's counsel's scope objections—made on a question-by-question basis at the request of Plaintiff's counsel—were justified given that Plaintiff's lines of questioning were unrelated to the remaining issues in the

case, and improperly intended for use in other litigation. It was Plaintiff's decision to use the seven hours of Del Rosso's deposition to seek information not related to the remaining claims and, as such, no "additional time" is warranted on this basis.

## II. Del Rosso's Counsel Properly Objected On The Basis Of Privilege.

At the core of Plaintiff's Motion is his argument that Del Rosso was instructed not to answer "on the basis of privilege without any basis to do so." (D.E. 189, at pp.5–7). Plaintiff's brief is striking in its failure to acknowledge or address any of the citations to the record offered previously in support of Del Rosso's Motion for Protective Order, setting forth the grounds for the assertion of privilege. (*See* D.E. 143, at pp.7–8; *see also* D.E. 179, at pp.12–15). Defendants have continuously communicated—and Plaintiff has continuously refused to acknowledge—their basis for the applicability of privilege and work-product protections as they apply to Defendants' work for and communications with Dechert/the RAK Parties. (*See, e.g.*, D.E. 182-3, at 14:22–15:12 (testifying as to privileged relationship between Del Rosso, Dechert, and the RAK)). This despite Plaintiff being provided a letter on behalf of the RAK Parties asserting such privileges/protections. (*See* D.E. 182-4). Indeed, Defendants "do not have the authority to waive the attorney-client privilege between [a third party] and

14

its counsel." *In re NC Swine Farm Nuisance Litig.*, 2017 WL 2313470, at *4 (E.D.N.C. May 26, 2017).

Further, the transcript examples provided by Plaintiff are not convincing. Those citations fail to support his argument that the attorney-client privilege or work-product doctrine was being improperly asserted. (*See* D.E. 189, at pp.5–6). First, Plaintiff identifies questioning where Del Rosso is asked if his attorneys have been in contact with Dechert regarding privilege issues. (*See* D.E. 170, at 143:1–144:9). The only possible way Del Rosso would have known of contact between his lawyers and Dechert regarding any assertion of privilege would have been from Del Rosso's own counsel. Because such information would have been provided specifically for the purposes of providing advice regarding Del Rosso's deposition testimony, such communications fall squarely within the protections afforded by the attorney-client privilege.

Second, Plaintiff identifies several lines of questioning regarding whether Del Rosso received a RAK laptop, and what Del Rosso did with the laptop. (*See* D.E. 170, at 159:1–17; 191:22–193:17; D.E. 188-2, at 365:1–366:6). Contrary to the arguments advanced by Plaintiff, Del Rosso answered those questions. (*See, e.g.,* D.E. 182-3, at 348:7–350:22; 371:5–21).[9]

---

[9] Moreover, privilege and work-product issues aside, the line of questioning regarding a RAK laptop is not at all related to Plaintiff's remaining claims in this case. This line of questioning was clearly seeking information in the unrelated matter pending in London, *Stokoe*

15

Privilege was only asserted when it came to questions asking Del Rosso to divulge what instruction or advice was given by counsel with respect to any examination, analysis or handling of the laptop. As such, that line of questioning calls for privileged information, *see U.S. v. Kovel*, 296 F.2d 918, 921–22 (2d Cir. 1961) ("[T]he privilege must include all the persons who act as the attorney's agents." (internal quotation marks and citation omitted)); *Grand Jury Proc. Under Seal v. U.S.*, 947 F.2d 1188, 1191 (4th Cir. 1991) (applying reasoning in *Kovel*), and information protected by the work-product doctrine, *see U.S. v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012) ("[W]ork product created by non-attorneys can also be protected if it is so intertwined with legal analysis as to warrant protection." (internal quotation and citation omitted)); *Matter of Grand Jury Subpoena Duces Tecum Dated Feb. 18, 1988*, 685 F. Supp. 49, 51 (S.D.N.Y. 1988) (finding subpoena that would "discover . . . details of the steps [an investigation firm] . . . followed in undertaking the investigation" for a law firm "is a clear violation of the attorney's work product privilege.")

Third, Plaintiff relies on questions asking Del Rosso whether Plaintiff's data was ever discussed at Dechert's office. (D.E. 170, at 162:17–21). While phrased as a "yes or no" question, on its face, this question seeks the *content* of

---

*Partnership Solicitors v. Grayson et al.*, Claim No. QB-2020-002492 (EWHC, Queen's Bench Division) (the "Stokoe Proceeding").

16

privileged conversations with Dechert in furtherance of Dechert's representation of RAK. This falls squarely within the attorney-client privilege.

Fourth, Plaintiff identifies several lines of questioning about litigation funding and attorneys' fees. (D.E. 188-2, at 177:2–180:24). As to litigation funding, Del Rosso's counsel properly objected to this line of questioning, as it would, in effect, reveal privileged communications. *See Medtronic Sofamor Danek, Inc. v. Michelson*, 2003 WL 27380973, at *4 (W.D. Tenn. Nov. 6, 2003) (denying motion to compel deposition testimony on litigation funding because it was not relevant and "the identity of the payer of legal fees in this litigation and the fee arrangement are inextricably intertwined with privileged communications"). Moreover, the identity of a litigation funder "is generally irrelevant to proving the claims and defenses in a case" and "mere speculation by the party seeking discovery will not suffice." *V5 Technologies v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019).

But even more fundamentally, the entire predicate for asking questions about payment of fees is meritless. Plaintiff tries to justify this line of questioning on Defendants' demand for attorneys' fees in his Answer to the Complaint. (*See* D.E. 189, at p.6). But this is not a case where Plaintiff needed to question Del Rosso about factual information pertaining to his entitlement of attorney's fees. The "demand" here for attorney's fees or other appropriate relief from the Court is no different than the prayer for relief in virtually every

Case 1:20-cv-00954-WO-JLW   Document 193   Filed 03/17/23   Page 17 of 24

case. To the extent that Del Rosso has been made aware that attorney's fees may be awarded for bad faith litigation under Rule 11, discovery violations under Rule 37, or some other legal basis, his knowledge as to the likelihood or the amount of such an award is derived solely from advice he received from his counsel during the course of his representation. Moreover, any such advice is not only privileged, but is utterly irrelevant to Plaintiff's preparation in this case.

Plaintiff further points out an instance where Del Rosso's counsel used conditional privilege objections, which he claims were used to "guide the witness." (D.E. 189, at p.6, n.6). This is inaccurate. Del Rosso's counsel provided these objections both to inform Plaintiff's counsel of the basis of the objection, and to allow Plaintiff's counsel to question the witness to determine its applicability. When invited by Del Rosso's counsel to ask questions demonstrating whether the privilege applied, Plaintiff's counsel declined to do so. (*See* D.E. 182-3, at 348:10–349:16).

Lastly, at the March 7, 2023 hearing, Plaintiff argued that even if the attorney-client privilege and work-product doctrine apply, the crime/fraud exception applies. Oddly, Plaintiff attempted to support that position by citing at the hearing *Chaudhry v. Gallerizzo,* 174 F.3d 394, 403 (4th Cir. 1999). But that case flatly demonstrates why Plaintiff's argument fails. The Court there denied the request for information about fees, and held that for the crime/fraud

18

exception to apply, Plaintiff's must show that (a) "the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme" and (b) that the privileged materials or communications "bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Id*. (cleaned up). Plaintiff has not attempted to make any of the showing required by *Chaudhry*.

In light of the above, it should hardly be controversial that Del Rosso was instructed not to answer deposition questions seeking disclosure of privileged information.[10] Del Rosso's counsel was substantially justified in objecting to these lines of questioning. *See Elkins v. Broome*, No. 1:02 CV 305, 2004 WL 3249257, at *3 (M.D.N.C. Jan. 12, 2004), *aff'd*, 122 F. App'x 40 (4th Cir. 2005) ("An opposition to the motion (or to discovery) is substantially justified if the opposition raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with discovery." (citations omitted)).[11]

---

[10] To the extent Plaintiff argues that Defendants have not yet provided a privilege log (D.E. 189, at p.6), the Parties are awaiting the Court's determination of the proper scope of discovery in this case. As such, a privilege log would be pre-mature at this juncture. *See In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017) ("[I]nvocation of the protections of the attorney-client privilege and work-product doctrine may be effective without requiring a detailed privilege log. Otherwise, any objection to the scope of a discovery demand would be rendered moot because interposing that objection would trigger the very burdensome obligation to prepare a privilege log that the objection would be intended to avoid.")

[11] As set forth herein, Defendants conduct challenged by Plaintiff was substantially justified. Accordingly, sanctions are not warranted.

19

**III.** **Plaintiff's Purported Frustrations Over Discovery Stem From His Overly Aggressive Approach Rather Than Improper Defense Objections.**

In Plaintiff's final argument in support of his Motion, Plaintiff devotes half a page to an unsubstantiated argument that "Del Rosso refused to answer substantive questions to obstruct discovery," and his contention that Del Rosso "has custody or control over a vast array of responsive documents [to Plaintiff's requests for production] relevant to this case . . . related to a project focused *in part* on Plaintiff." (D.E. 189, at p.8 (emphasis added)). Again, Plaintiff's frustrations are of his own making.

Plaintiff decided to hastily move forward with the deposition on February 13 and 14, 2023 (Del Rosso's medical condition aside), before the Court could rule on any of the pending discovery motions, including Plaintiff's Motion to Compel Production of Documents. Moreover, Plaintiff decided to pursue overly broad discovery, seeking information not relevant to Plaintiff's remaining claims in this case (clearly in furtherance of other lawsuits in other jurisdictions), and information protected by the attorney-client privilege or attorney work-product doctrine. For instance, as recently as in his brief in support the present Motion, Plaintiff gratuitously characterizes documents as "relevant" to this case that—he claims—are merely related to a project that was purportedly "focused in part" on Plaintiff. (D.E. 189, at p.9) Yet Plaintiff

20

has not adequately articulated how this information would be relevant to his claims remaining in *this* lawsuit.

Accordingly, Defendants asserted well-founded objections to the discovery sought by Plaintiff at Del Rosso's deposition, despite Plaintiff's continued attempts to mischaracterize Defendants' mere mounting of a defense as "obstruction." Defendants are well within their rights to object to Plaintiff's seemingly continuous barrage of irrational, disproportionate, and harassing discovery.

## <u>CONCLUSION</u>

For the reasons discussed herein, Defendants respectfully request that Plaintiff's Motion to Compel Further Deposition Testimony be denied in its entirety.

Respectfully submitted, this the 17th day of March, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:    _Brandon S. Neuman_
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel Pencook, NCSB# 52339
Sam A. Rosenthal
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of March 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By:  *Brandon S. Neuman*
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    John E. Branch III, NCSB# 32598
    Nathaniel J. Pencook, NCSB# 52339
    Sam A. Rosenthal
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    john.branch@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    *Counsel for Defendants*

## **WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 4,929 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 17th day of March, 2023.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By:     *Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*