# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>    v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>    Defendants. | **PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY**<br>**(ECF NO. 188)** |

Defendants' Response to Plaintiff's Motion to Compel Further Deposition Testimony deploys numerous inaccuracies, half-truths, and self-victimizations to obfuscate the core issue before the Court: Defendants' obstruction of Del Rosso's deposition and ongoing efforts to thwart all meaningful discovery in this case. Del Rosso should be required to sit for additional deposition time to answer the non-privileged questions he previously refused to answer.

To avoid responsibility for repeatedly blocking testimony, Defendants accused Plaintiff of not asking relevant questions during the deposition. In fact, significant portions of the deposition were questions directly derived from Defendants' very detailed Answer. ECF No. 93 at 1 ("Discovery will be conducted on the operative allegations and claims contained in Plaintiff's complaint, ***the denials and defenses raised in Defendants' Answer*** . . . .") (emphasis added). Counsel for Plaintiff questioned Del Rosso about core issues relevant to supporting Plaintiff's claims and defeating Defendants' potential

defenses. *See infra* at 3-7.[1] Defendants labor mightily to malign Plaintiff, but Del Rosso refused to answer even basic questions about Defendants' own responses to Plaintiff's claims after repeated objections by counsel.

During Del Rosso's deposition, his counsel objected more than 400 times, advanced invalid "scope" objections 150 times, and instructed Del Rosso not to answer 65 different questions. Defendants gloss over these facts because they had no grounds to engage in such a blatant effort to thwart discovery. The Rules do not provide for a deposition objection on the basis of "scope," as Defendants' counsel repeatedly did, or on the basis of privilege when no privileged information was sought or without providing basic information to support the privilege claim. *See* Fed. Civ. P. 26(b)(5)(A)(ii) (requiring a party asserting privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim"). The Court should award further deposition time to remedy Defendants' obstruction. Defendants' stalling needs to end.

---

[1] Defendants' argument that Plaintiff's deposition questions were irrelevant arises from their groundless position that discovery is narrowly limited to a handful of months in 2018-19 when Defendants facilitated disclosure of Plaintiff's hacked data. As argued previously in multiple filings, the scope of discovery must be much broader based on the allegations in Plaintiff's Complaint and the defenses advanced by Defendants.

2

# ARGUMENT

## I. Defendants Have Engaged in a Pattern of Obstruction to Prevent Plaintiff's Reasonable Discovery.

Del Rosso's deposition was part of a much larger effort Defendants have orchestrated to block all discovery in this case. Plaintiff has already detailed this pattern of obstruction to the Court in connection with prior discovery motions, *see, e.g.*, Pl.'s Reply in Supp. of [His] Mot. to Compel [Documents] at 4-8, ECF No. 163. In short:

- Plaintiff served document requests four months ago targeting specific categories of relevant documents, *see* ECF No. 131-1, but Defendants have produced **zero** documents from their own files.

- Defendants and their third-party allies have aggressively objected to and sought to quash subpoenas Plaintiff has issued for relevant and discoverable information and documents, such as financial records, even where their standing to do so was at best questionable.

- Defendants' unreasonable positions on a variety of issues, like the scope of discovery, have forced Plaintiff to engage in extensive motion practice, with nine discovery motions now pending before the Court (including six from Defendants or their allies);

- Defendants sought to push out Del Rosso's deposition for health reasons indefinitely; then, once it was finally held, they repeatedly obstructed Plaintiff's fair examination;

- Defendants have over-designated deposition transcripts and third-party productions as confidential — including basic non-confidential information such as whether Del Rosso was aware of his Fifth Amendment rights, when his work with Dechert ended, who instructed him as part of his work for Project Nariman, what work was done by CyberRoot, and the provenance of data on devices used by Defendants and Jamie Buchanan in relation to the investigation of Plaintiff — which

3

- has forced burdensome motions to seal in connection with simple motions; and

- Defendants have served just one subpoena and no other discovery requests on Plaintiff well into discovery.[2]

The parties are more than halfway through fact discovery and Defendants have refused to participate in the discovery process. Defendants have not produced a single document from their own files—not even documents Del Rosso admitted are relevant and in his possession. *See* ECF No. 163-1 (excerpts of testimony from Del Rosso's deposition reflecting control over a vast array of responsive documents related to the allegations in Plaintiff's Complaint). At Del Rosso's deposition, Defendants prevented Plaintiff from conducting a full and fair examination of *the lead defendant* by repeatedly instructing the witness not to answer questions seeking non-privileged information.

Defendants' argument that they may refuse to provide relevant testimony or produce documents in this case because the information may also be relevant in other cases is baseless. The Federal Rules are clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Carefirst of Md., Inc. v. Carefirst Pregnancy*

---

[2] Despite Defendants' refusal to participate, Plaintiff continues to take all possible steps to conduct discovery and meet the July 1, 2023, fact discovery deadline. *See, e.g.*, ECF No. 93 at 2.

4

*Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (noting discovery under Rule 26, "[d]iscovery . . . is broad in scope and freely permitted"). Furthermore, the Protective Order entered by this Court would protect any sensitive confidential information from unrestricted disclosure in other litigations.[3] *See, e.g.*, Protective Order ¶ 6, ECF No. 177 (restricting access to confidential information). Plaintiff is entitled to discovery on his misappropriation and conspiracy claims and on Defendants' affirmative defenses **<u>in this case</u>**.[4]

That is why Plaintiff posed many questions at Del Rosso's deposition about allegations, responses, and statements directly from Defendants' Answer. *Thompson v. Dep't of Hous. & Urb. Dev.*, 199 F.R.D. 168, 171-72 (D. Md. 2001) ("[T]he most valuable reference to use in implementing the new

---

[3] Defendants allege that Plaintiff inappropriately disclosed nondescript hacking code names in a filing in a different case. Purported "code names" could not possibly meet the Protective Order's standard for what constitutes "Confidential" information. *See* Protective Order ¶ 2, ECF No. 177 ("Confidential" includes "trade secrets," "research or development," "financial information," "health information," etc.). This is just another example of Defendants's attempts to weaponize confidentiality to restrict this litigation and overly burden the Court and Plaintiffs.

[4] Defendants argue that counsel for Plaintiff "conceded" in the March 7, 2023, hearing before the Court that "Plaintiff is no longer permitted to the discovery that otherwise would have been permitted." *See* ECF No. 193 at 5. This argument is at best grossly inaccurate. In response to the Court's questions about the scope of discovery, counsel for Plaintiff informed the Court that, while the number of claims at issue in the case were certainly narrowed, the temporal scope and the facts at issue in the case were not meaningfully different based on the remaining claims.

5

change in the scope of discovery is the pleadings that have been filed . . . .") For example, Plaintiff asked questions about Defendants' work for Dechert LLP and $1 million in payments they received from Dechert (referenced in Defendants' Answer ¶ 28, ECF No. 86), *see* Ex. 1[5] at 22:9-25:19, 88:3-91:23; about CyberRoot and the work it did for Defendants (referenced in Defendants' Answer ¶ 2), at 86:16-87:17, 121:12-124:24; and about NTi, a company that Defendants claim were directly involved in the handling of Plaintiff's stolen data (referenced in Answer ¶¶ 15, 23, 27), and at 109:3-19; *see also* Ex. 2, Defs.' Objections and Responses to Pl. Farhad Azima's First Set of Interrogatories at 3 ("VMS engaged Northern Technology, Inc. ('NTi') in 2016 in connection with VMS's engagement by Dechert."). Even as Plaintiff's questions tracked the assertions in Defendants' Answer, counsel instructed Del Rosso not to answer.[6] Ex. 1 at 127:10-130:5. For instance, Defendants admit in their Answer that they began an "investigation" for Ras Al Khaimah in 2014, which related in substantial part to Plaintiff Azima. *Id.*; *see also id.* at 22:9-25:19. Defendants'

---

[5] To avoid additional motions to seal, Plaintiff has redacted those portions of the transcript still designated Confidential by Defendants.

[6] Counsel for Defendants also shut down questions about payments made to witnesses about payments that were made through a law firm, Ex. 1 at 42:2-23, questions about the code names used to refer to the investigation related to Plaintiff, *id.* at 51:8-52:23, and questions about the legal fees incurred to date when the prayer for relief in Defendants' Answer states that they are going to seek legal fees in this matter, *see* ECF No. 188-2.

6

conspiracy to misappropriate Plaintiffs' trade secrets was part of that investigation, and questions about that project are therefore directly clearly relevant to this matter. Yet Defendants' counsel objected and Del Rosso broadly declined to answer such questions.

Defendants' obstructive tactics are transparent and unacceptable. Defendants are pushing an exceedingly and artificially narrow view of what is relevant and discoverable in this action, and they have stonewalled discovery of any facts outside these self-imposed parameters. For example, Defendants argue that it was inappropriate to ask Del Rosso about a Ras al Khaimah ("RAK") laptop he received and what he did with it. *See* ECF No. 193 at 15-16 n.9. Yet Del Rosso admits these devices included data related to Plaintiff. *See* ECF No. 182-3 at 331:17-334:6. Therefore, questions determining whether the laptop was in Defendants' possession clearly seek relevant information. *See* Fed. R. Civ. P. 26(b)(1) ("Information within th[e] scope of discovery need not be admissible in evidence to be discoverable.").

## II. Defendants' Obstructed Del Rosso's Deposition, and Plaintiff Should be Granted Additional Time.

The Court is empowered to craft whatever relief is necessary to remedy the damage Defendants caused when they impeded and frustrated Plaintiff's fair examination of Del Rosso through repeated improper objections. *See* Fed. R. Civ. P. 30(d)(1); *see also Lawrence v. Tiger Swan, Inc.*, No. 10-CV-379-BO,

7

2012 WL 34221, at *3 (E.D.N.C. Jan. 6, 2012) ("When a deponent fails to answer a question at a deposition, a party may move for an order compelling an answer," and "Plaintiff's refusals to answer clearly warrant the continuation of her deposition, as defendant has requested."). Del Rosso's counsel objected more than 400 times during the deposition. Based on the volume alone, these objections were disruptive and improper and wasted significant time on the record. Counsel also repeatedly interrupted Plaintiff's examination. *See, e.g., Fashion Exch. LLC v. Hybrid Promotions*, LLC, 333 F.R.D. 302, 305-07 (S.D.N.Y. 2019) (ordering new deposition, in part, on the basis of repeated objections that disrupted the deposition). But they were also improper for two other significant reasons.

***First***, Del Rosso's counsel improperly instructed his client not to answer approximately 65 questions on the basis of privilege, even though many questions clearly sought non-privileged information. While confidential legal advice is typically privileged, underlying facts are not. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"); *see also Chevron Corp. v. Donziger*, No. 11-cv-0691, 2013 WL 1896932, at *2 (S.D.N.Y. May 7, 2013). Despite this black letter law, Del Rosso's counsel instructed him not to answer questions about strictly factual information. *See* ECF No. 189

8

at 5-6 (citing examples). Many of these questions carefully came in the form of "Yes" or "No" questions that simply sought to confirm facts. In one example, Del Rosso's counsel instructed him not to answer questions such as "Are you seeking reimbursement or payment of legal fees relating to Nelson Mullins?" It did not call for information protected by privilege and was also relevant to the relief requested in Defendants' Answer. *See* ECF No. 86 at 31. Plaintiff was entitled to develop the record regarding Defendants' privilege claims, *see Chevron*, 2013 WL 1896932, at *2, but he was prevented from doing so.

**Second**, Del Rosso's counsel improperly objected on the basis of "scope" over 150 times during the deposition. These objections were invalid. *See Gobena v. CourierNet Inc.*, No. 20-CV-00290, 2021 WL 1917132, at *3 (W.D.N.C. Feb. 24, 2021), *report and recommendation adopted*, 2022 WL 301536 (W.D.N.C. Feb. 1, 2022) (objections that questions were "outside the scope of the Court's limited discovery Order" were "not valid"); *see also Ali v. WorldWide Language Res., LLC,* No. 20-CV-00638, 2022 WL 16727110, at *1 (E.D.N.C. Nov. 4, 2022). These unjustified objections prevented Plaintiff from obtaining substantive answers to his questions and left the transcript replete with incomprehensible testimony. It also created delay and confusion for both sides and eroded Plaintiff's deposition time.

9

Case 1:20-cv-00954-WO-JLW Document 194 Filed 03/24/23 Page 9 of 19

Accordingly, Plaintiff should be granted more time to depose Del Rosso, and the Court should order Del Rosso to answer the questions to which he refused to respond.

## III. Defendants Cannot Justify the Obstruction of Del Rosso's Deposition.

Defendants' attempts to defend their obstructive conduct are unavailing for at least four reasons.

***First***, Fourth Circuit precedent contradicts Defendants' argument that Del Rosso's deposition is "a far cry from the typical instances where courts have afforded [] relief." ECF No. 193 at 10. Courts have granted relief under Rule 30(d) when a party—like Defendants—refuses to meaningfully participate in discovery. *See Ali*, 2022 WL 16727110, at *4 (authorizing fees under Rule 30(d) "because [the court] finds that the [responding parties'] refusal to meaningfully participate in discovery was unreasonable."); *see also Fashion Exch.*, 333 F.R.D. at 305 (awarding Rule 30(d) relief where "counsel repeatedly made speaking objections, [and] engag[ed] in debates with [opposing] counsel").

***Second***, Defendants' argument that the need for any more deposition time is of "Plaintiff's own making" because Defendants asked for a standing objection on scope,[7] *see* ECF No. 193 at 2, 11-12, ignores that the purported

---

[7] Defendants dispute their scope objections add up to the additional three hours of testimony Plaintiff seeks. To be clear, the requested time is to remedy all the inappropriate objections, including the faulty privilege objections.

10

"scope" objections were invalid and should not have been made in the first place. *Gobena*, 2021 WL 1917132, at *3. Allowing Defendants to rest on a frivolous "standing objection" would have obscured just how inappropriately limited they view the scope of discovery to be; without objections to specific questions, Plaintiff and the Court cannot assess the basis of the objections. Defendants next argue "no harm, no foul," because counsel never instructed Del Rosso not to answer on the basis of scope. ECF No. 193 at 2. This is disingenuous at best: Each "scope" objection in the context of the turmoil counsel created signaled to Del Rosso that his counsel didn't want Del Rosso to answer the question. These objections took up significant time on the record. Furthermore, Defendants filed the motion for a protective order well after Del Rosso's deposition had been noticed and Defendants had agreed to it. If anything, the filing of his motion for a protective order at the eleventh hour raises questions about whether Del Rosso was using the motion as yet another stalling tactic.

**Third**, Defendants' argument that their privilege objections were proper because "Del Rosso set forth a legitimate basis for assertion of privilege," *see* ECF No. 193 at 3, ignore several crucial undisputed facts. Some of the questions posed covered Defendants' conduct after their work for Dechert ended, yet Del Rosso still refused to answer. Even if Del Rosso was engaged to perform work for Dechert and its client, that does not shield Del Rosso from

11

testifying about facts and conduct Defendants undertook pursuant to the engagement. Claims of privilege do not shield facts or general subject matters – only specific confidential communications. *See, e.g.*, *State v. Farook*, 381 N.C. 170, 183 (2022) ("The party asserting the privilege has the burden of establishing each of the essential elements of the privileged communications."); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014) (holding that an individual communication is privileged only if the primary purpose is to obtain or provide legal advice); *accord* Fed. R. Civ. P. 45(e)(2)(A). As an example, Del Rosso was asked whether Plaintiff's data was ever discussed at Dechert's offices. Counsel instructed Del Rosso not to answer because (according to counsel) "this question seeks the *content* of privileged conversations with Dechert." ECF No. 193 at 16-17. This is nonsensical. This is a "Yes" or "No" question simply asking whether a conversation even took place, not the content of that conversation.[8] It is clear, however, that Del Rosso is inappropriately trying to avoid testifying about facts and information that are devastating to him in this case.

---

[8] Defendants also imply Plaintiff intentionally did not ask follow-up questions after Defendants' privilege instructions to avoid testimony that might confirm Del Rosso was being asked to divulge privileged information. ECF No. 193 at 4,18 (citing ECF No. 182-3 at 348:10–349:16). Given that counsel instructed Del Rosso not to answer questions seeking clearly non-privileged information, there was no potential for Plaintiff's counsel to follow up.

***Fourth***, Defendants' argument that additional testimony would be prejudicial because Plaintiff was at fault for "hastily mov[ing] forward" with the deposition while so many discovery motions were pending, *see id.* at 20, fail to excuse or explain Defendants' continued obstruction. Halfway through the discovery period, which ends in July 2023, Defendants have *refused to produce any of their own documents* and *thwarted the only deposition they have permitted to go forward*. Plaintiff should not have to wait while Defendants continue to impede access to information and the discovery clock ticks down. *See* Fed. R. Civ. P. 26(d)(3)(A) ("Unless the parties stipulate or the court orders otherwise . . . methods of discovery may be used in any sequence[.]") In any event, Defendants' contentions ultimately urge the Court to excuse their misconduct at the deposition. If the deposition was impeded or frustrated, the Court "must" allow addition time. Fed. R. Civ. P. 30(d)(1).[9]

---

[9] Defendants also mention Del Rosso's health as a reason that additional time would be prejudicial. *Id.* at 4. Plaintiff has already taken significant steps to accommodate Del Rosso's health issues, and Defendants created this issue by impeding the deposition instead of participating in discovery in good faith.

13

# CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to compel and order Del Rosso to sit for additional deposition testimony to remedy Defendants' obstructive conduct.

This, the 24th day of March, 2023.

        **WOMBLE BOND DICKINSON (US) LLP**

        */s/ Ripley Rand*
        Ripley Rand
        North Carolina State Bar No. 22275
        Christopher W. Jones
        North Carolina State Bar No. 27265
        Jonathon Townsend
        North Carolina State Bar No. 51751
        555 Fayetteville Street, Suite 1100
        Raleigh, North Carolina 27601
        Phone: 919-755-2100
        Fax: 919-755-2150
        Email:  ripley.rand@wbd-us.com
                    chris.jones@wbd-us.com
                    jonathon.townsend@wbd-us.com

-and-

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren E. Briggerman (*pro hac vice*)
Joseph Rillotta (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com
Email: totoole@milchev.com
Email: lbriggerman@milchev.com
Email: jrillotta@milchev.com
Email: iherbert@milchev.com
Email: clee@milchev.com
Email: cmarden@milchev.com

*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

The undersigned certifies compliance with Local Rule 7.3(d) regarding length limitations. This memorandum contains fewer than 3,125 words. The undersigned has relied on the word count feature of Microsoft Word 365 in making this certification.

*/s/ Ripley Rand*
Ripley Rand
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT<br>SERVICES, INC.,<br><br>    Defendants. | **CERTIFICATE OF SERVICE** |

    I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

    Brandon S. Neuman, Esq.
    John Branch, III, Esq.
    Jeffrey M. Kelly, Esq.
    Nathaniel J. Pencook, Esq.
    NELSON MULLINS RILEY & SCARBOROUGH, LLP
    301 Hillsborough Street, Suite 1400
    Raleigh, NC 27603
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    john.branch@nelsonmullins.com
    Tel.: 919.329.3800
    Fax.: 919.329.3799

Samuel Rosenthal
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Tel.: 202-689-2951
Fax: 202-689-2860
sam.rosenthal@nelsonmullins.com

*Counsel for Defendants*

Kieran Shanahan, Esq.
Shanahan Law Group
128 East Hargett Street, Suite 300
Raleigh, NC 27601
Tel.: 919-264-7515
Email: kieran@shanahanlawgroup.com

John Charles Quinn
Kaplan Hecker & Fink LLP
350 Fifth Avenue, Ste. 63rd Floor
New York, NY 10118
Email: jquinn@kaplanhecker.com
Tel.: 212-763-0883
Fax.: 212-564-0883

Kearns Davis
Daniel D. Adams
Brooks Pierce McLendon Humphrey & Leonard LLP
PO Box 26000
Greensboro, NC 27420-6000
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com
Tel.:336-373-8850
Fax.: 336-378-1001

*Counsel for Dechert LLP*

Walter C. Holton, Jr.
Holton Law Firm, PLLC
857 West Fifth Street
Winston-Salem, NC 27101
Email: wholton@walterholton.com
Tel.: 336-777-3480
Fax.: 336-722-3478

*Counsel for Christopher Swecker and Christopher Swecker Enters. LLC*

This, the 24th day of March, 2023.

        **WOMBLE BOND DICKINSON (US) LLP**

        /s/ *Ripley Rand*
        Ripley Rand
        North Carolina State Bar No. 22275
        555 Fayetteville Street, Suite 1100
        Raleigh, NC 27601
        Telephone: (919) 755-8125
        Facsimile: (919) 755-6752
        Email: ripley.rand@wbd-us.com

        *Counsel for Plaintiff*