# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.: 20-CV-954

FARHAD AZIMA,                    )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
NICHOLAS DEL ROSSO and VITAL)
MANAGEMENT SERVICES, INC.,  )
                                 )
          Defendants.       )
_____


DEPOSITION OF NICHOLAS DEL ROSSO

Volume I

Contains Confidential Testimony

_____

2:07 P.M.

Monday, February 13, 2023

_____


By:  Lisa Taylor, RPR

1

1                   A P P E A R A N C E S

2    On behalf of the Plaintiff:

3         MILLER & CHEVALIER CHARTERED
          BY:  KIRBY D. BEHRE, ESQ.
4              IAN HERBERT, ESQ.
          900 16th Street NW
5         Washington, DC 20006
          (202)626-5800
6         kbehre@milchev.com
          iherbert@milchev.com
7
          WOMBLE BOND DICKINSON (US), LLP
8         BY:  CHRISTOPHER W. JONES, ESQ.
          555 Fayetteville Street
9         Suite 1100
          Raleigh, NC 27601
10        (919)755-2100
          chris.jones@wbd-us.com
11

12   On behalf of the Defendants:

13        NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
          BY:  BRANDON S. NEUMAN, ESQ.
14             JOHN BRANCH, III, ESQ.
                - (via videoconference)
15             MATT GORGA, ESQ.
          301 Hillsborough Street
16        Suite 1400
          Raleigh, NC 27603
17        (919)329-3800
          brandon.neuman@nelsonmullins.com
18        john.branch@nelsonmullins.com
          matt.gorga@nelsonmullins.com
19
          NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
20        BY:  SAMUEL ROSENTHAL, ESQ.
          101 Constitution Ave NW
21        Suite 900
          Washington, DC 20001
22        (202)689-2951
          sam.rosenthal@nelsonmullins.com
23

24

25
                                                        2

Case 1:20-cv-00954-WO-JLW   Document 194-1   Filed 03/24/23   Page 3 of 26

1  Q.  When is the last time you corresponded

2  with Mr. Hughes?

3  A.  I have no -- I really have no idea.  I

4  don't remember.

5  Q.  And by correspond, of course I mean

6  text or e-mail or anything other than --

7  A.  Phone call, yeah.  No, I don't

8  remember that.

9  Q.  Caroline Black of Dechert, have you

10  ever spoken to her?

11  A.  I've spoken to her when I first got

12  interviewed in 2014.  That's the last time I spoke

13  to her.

14  Q.  And when you say "interviewed," what

15  are you referring to?

16  A.  They wanted to conduct -- I'm assuming

17  that this is the purpose of it, but I don't know --

18  that they wanted to interview me before retaining

19  me.

20  Q.  And by "they," you mean Dechert?

21  A.  Dechert.

22  Q.  And where did this interview take

23  place?

24  A.  In London.

25  Q.  And where in London?

22

1          A.     At their office.

2          Q.     And by "their," you mean Dechert's

3     office?

4          A.     Dechert's office, yeah.

5          Q.     And was Neil Gerrard present?

6          A.     He wasn't, no.

7          Q.     Caroline Black, you said, was.

8     Anybody else?

9          A.     There was somebody else, but I -- I

10    don't remember their name now, an associate.

11         Q.     And how soon after that meeting were

12    you hired?

13         A.     I don't remember the date of the

14    meeting, but I was -- we came to an agreement

15    sometime in 2014.  August or so was it?  I don't

16    remember the date of that either.

17    ████████████████████████████████████████

18              MR. NEUMAN:  Objection to form.  Calls

19         for information that would be protected by

20         the --

21              THE WITNESS:  (Indiscernible due to

22         overtalking.)

23              MR. NEUMAN:  -- attorney-client

24         privilege.

25    ████████████████████████████████████████

Q.     And was that agreement in writing?

A.     It was, yes.

Q.     And who prepared that writing; you or Dechert or somebody else?

A.     Dechert did.

Q.     And was the agreement executed by both parties?

A.     I don't know.  Well, I signed it.  I don't -- don't remember whether Dechert did.

Q.     Do you still have a copy of that agreement?

A.     I think my lawyers do, yes.  So that's me, I suppose; right?

Q.     What about Linda Goldstein -- have you

24

1  ever spoken to her? -- of Dechert?

2        A.    Yes.

3        Q.    When is the last time you spoke with

4  her?

5        A.    Pretrial.

6        Q.    So would that be 2019?

7        A.    It could be, yeah.  It was -- yeah, I

8  haven't spoken to her since.

9        Q.    And did Ms. Goldstein help prepare you

10  for your testimony at the trial of Farhad Azima?

11        A.    She interviewed me.

12        Q.    And by --

13        A.    If that means preparation, I don't

14  know.

15        Q.    Sorry to interrupt you.  What -- what

16  do you mean by interviewed?

17        A.    She conducted an interview of me to

18  learn what I had -- what I had done in relation to

19  the download of the data from the Internet.

20        Q.    What about Dorothy Cory-Wright?

21              Does that name ring a bell?

22        A.    Excuse me.  I don't know who she is,

23  no.  I don't -- I don't remember the name if I did.

24        Q.    What about Andy Levander?

25        A.    No.  I know he was the -- the head of

25

1   ████████

2           MR. NEUMAN:  Objection to form.  Lacks

3   foundation.  Objection as to scope.

4   Objection on the basis that it may seek

5   information protected by the attorney-client

6   privilege.

7           I'll instruct him not to answer on

8   that basis to the extent that it was within

9   Shanahan Law Group's representation of

10  Mr. Del Rosso and/or Vital Management.

11          MR. BEHRE:  Is that what you're

12  representing it was?

13          MR. NEUMAN:  Yes.

14  BY MR. BEHRE:

15  ████████████████████████████████████

16  ████████████████████████████████████

17          MR. NEUMAN:  Objection.  Same

18  objection.  Instruct him not to answer.

19          It also seeks information that's

20  clearly related to the Southern District

21  matter which is under a discovery stay at the

22  moment.

23          Instruct him not to answer.

24          MR. BEHRE:  Did Mr. -- well, I heard

25  that.

                                                    44

BY MR. BEHRE:

          MR. NEUMAN:  Objection.  I'm going to

     object on the basis that it calls for

     information protected by the attorney-client

     privilege and instruct him not to answer.

          MR. BEHRE:  I'm simply asking what the

     mean -- name means to him.

          MR. NEUMAN:  To extent that the name

     has meaning associated with work that Dechert

     was doing for RAK, then that would be

     privileged, and I'm instructing him not to

     answer.

          MR. BEHRE:  In theory, it would be.

     Are you representing that's the case?

          MR. NEUMAN:  I'm rep- -- I'm

     representing that to the extent it was part

     of Dechert's representation of RAK, it's not

     our privilege to waive.  RAK holds that

     privilege.

```
 1              His work was associated with his --

 2         with Dechert, who was representing RAK, so I

 3         --

 4    BY MR. BEHRE:

 5    ████████████████████████████████████████████████

 6    ████████████████████████████████████████████████

 7              MR. ROSENTHAL:  Same objection.

 8              MR. NEUMAN:  Same objection.

 9              THE WITNESS:  I'm sorry.  I'm lost.

10              MR. NEUMAN:  Same -- same instruction.

11         Same objection.

12              THE WITNESS:  Not to answer?

13              MR. NEUMAN:  Right.

14              THE WITNESS:  Okay.

15    BY MR. BEHRE:

16    ████████████████████████████████████████████████

17    ████████████████████████████████████████████████

18    ████████████████████████████████████████████████

19    ████████████████████████████████████████████████

20    ████████████████████████████████████████████████

21              MR. NEUMAN:  Objection.

22         Instruction -- instruction not to answer

23         based on privilege.

24    BY MR. BEHRE:

25    ████████████████████████████████████████████████
```

                                                            52

1

2

3

4          MR. NEUMAN:  Same objections.

5          THE WITNESS:  Is that a question I

6     answer?

7          MR. NEUMAN:  I can't...

8          THE WITNESS:  You can't tell me that.

9

10

11

12          I'm talking about he was paid

13     handsomely in one lump sum.  That's what I

14     believe.

15     BY MR. BEHRE:

16

17

18          MR. NEUMAN:  Objection.  Lacks

19     foundation.

20

21     BY MR. BEHRE:

22

23

24

25

86

1

2

3              MR. NEUMAN:  Objection.  Lacks

4         foundation.

5

6

7

8  BY MR. BEHRE:

9         Q.    You said you've seen the records, but

10  you haven't looked specifically at those entries; is

11  that what you're saying?

12         A.    I don't know that the entries I saw

13  had any reference on them.

14         Q.    Other than through the PNC Bank

15  between 2016 and '17, is there any other bank that

16  you used to pay CyberRoot?

17         A.    No.  PNC was my only bank.

18         Q.    You indicated that in at least one

19  instance you indicated that you paid -- you received

20  more than a million dollars from Dechert; is that

21  correct?

22              MR. NEUMAN:  Objection.  Scope.

23              THE WITNESS:  I thought that was what

24         was being put to me.  I don't think I -- you

25         know, it's -- it's entirely possible.  I was

                                                        87

1          doing a lot of work.

2     BY MR. BEHRE:

3          Q.     And do you have some explanation,

4     then, why the PNC Bank records don't reflect any

5     payments from Dechert?

6                    MR. NEUMAN:  Objection.  Lacks

7          foundation.  Calls for speculation.  Scope.

8                    THE WITNESS:  I'm not entirely sure

9          what you mean.

10     BY MR. BEHRE:

11    ██████████████████████████████████████████████

12    ██████████████████████████████████████████████

13                    MR. NEUMAN:  Same objections.

14    ██████████████████████████████████████████████

15    ██████████████████████████████████████████████

16     BY MR. BEHRE:

17          Q.     And you've previously represented --

18     and correct me if I'm wrong -- that Dechert paid you

19     at least a million dollars for that work; right?

20    ██████████████████████████████████████████████

21    ██████████████████████████████████████████████

22    ██████████████████████████████████████████████

23    ██████████████████████████████████████████████

24    ██████████████████████████████████████████████

25    ██████████████████████████████████████████████

1

2

3

4                 MR. NEUMAN:  Objection.  Lacks

5         foundation.  Calls for speculation.

6

7   BY MR. BEHRE:

8         Q.    And, of course, you monitor your bank

9   records in realtime; right?  You read the statements

10  when you get them?

11                MR. NEUMAN:  Objection to form.

12                THE WITNESS:  No.

13  BY MR. BEHRE:

14        Q.    Now I want to go back to the retainer

15  agreement questions I asked you because I'm a little

16  bit unclear what you're stating.

17                Did you have a written agreement with

18  Dechert?

19        A.    Yes.

20        Q.    Did you sign that written agreement?

21        A.    I did, yes.

22        Q.    Is there one agreement or more than

23  one?

24        A.    One agreement.

25        Q.    And that was executed in or about

                                                        89

1    2014?

2         A.    To the best of my recollection, yes.

3

4

5

6

7         Q.    Who did you invoice for the work that

8    you did for Dechert during those five years?

9         A.    Dechert, I believe.

10        Q.    And who at Dechert got the -- your

11   invoices?

12        A.    (Indiscernible due to overtalking.)

13        Q.    And how did you --

14        COURT REPORTER:  I'm sorry.  I

15   didn't -- you were talking at the same time.

16        MR. BEHRE:  Sorry.

17        COURT REPORTER:  I didn't get the

18   answer.

19        THE WITNESS:  Neil Gerrard, G-E double

20   R-A-R-D.

21   BY MR. BEHRE:

22        Q.    And how did you send those invoices to

23   Neil Gerrard?

24        A.    E-mail.

25        Q.    And did those e-mails go to his e-mail

90

1    address at the Dechert law firm?

2        A.    Yes.

3        Q.    And did he have an administrative

4    assistant who received those and processed those for

5    you?

6        A.    I -- I don't know what -- what

7    happened to them after I sent them.

8        Q.    Did there ever come a time when you

9    had to follow up or, as they say in the UK, chase

10   for payment of your bill?

11       A.    Well, follow up and chase, yes.

12       Q.    You did follow up and chase?

13       A.    Yes.

14       Q.    Just like most of us; right?

15       A.    Right.

16       Q.    And who did you chase when you had to

17   chase?

18       A.    Neil.

19       Q.    And was he able to assist you in

20   getting payments that might have been behind pay --

21   you know, overdue?

22       A.    I know that I got paid eventually, so

23   he must have, but I don't know what he did.

24       Q.    You're familiar with Jamie Buchanan,

25   you've already testified; right?

                                              91

1          attorney-client privilege.

2     BY MR. BEHRE:

3          Q.     Are you aware that no documents other

4     than what you produced that belongs to Mr. Azima

5     have been produced?

6               MR. NEUMAN:  Asked and answered.

7               THE WITNESS:  Yes.

8     BY MR. BEHRE:

9          Q.     So the only thing you produced so far

10    is a zip file with Mr. Azima's documents.  Can you

11    tell us where you got those documents?

12         A.     They were on the Internet.

13         Q.     Did you take them from the Internet

14    yourself?

15         A.     No.

16         Q.     Who did?

17         A.     A company called NTi, Northern

18    something or other.  Northern Technology or Northern

19    something.

20         Q.     And didn't you get some data directly

21    from Aditya Jain?

22         A.     No.

23               MR. NEUMAN:  Objection.  Lacks

24         foundation.

25

                                                        109

1        A.    I didn't.  I was in hospital when he

2    called me.  I had no interest in taking it.

3        Q.    And did he --

4        A.    Any work.

5        Q.    Sorry.

6              Did he make any reference to matters

7    involving Mr. Azima or Mr. Massaad?

8        A.    No.  Completely unrelated.

9        Q.    Was he aware, to the best of your

10   knowledge, that you had been sued?

11       A.    It never came up in that conversation.

12       Q.    I'd like to talk to you a bit about

13   CyberRoot.  Did you pay CyberRoot more than a

14   million dollars?

15             MR. NEUMAN:  Objection.  Calls for

16        speculation and lacks foundation.

17             THE WITNESS:  I haven't tallied it, so

18        I don't know, but I've read that.

19   BY MR. BEHRE:

20       Q.    Where have you read that?

21       A.    In the pleading, in the filings.

22       Q.    And are you aware that CyberRoot at

23   times worked with the company called BelltroX,

24   B-E-L-L-T-R-O-X?

25       A.    Again, I don't believe that to be the

                                             121

1    case, but I don't know.

2         Q.    Well, can you explain why in your

3    answer, then, you denied that CyberRoot worked with

4    BelltroX if you don't know?

5              MR. NEUMAN:  Objection to form.

6              THE WITNESS:  Are we talking about --

7         which answer -- which answer?  That I've just

8         given you?

9    BY MR. BEHRE:

10        Q.    You just said you don't know --

11        A.    Um-hum.

12        Q.    -- whether CyberRoot worked with

13   BelltroX; correct?

14        A.    Well, I don't know what I don't know,

15   but I don't believe that they've worked with

16   BelltroX.

17        Q.    And what's your basis for saying that?

18             MR. NEUMAN:  You're asking ever or in

19        relation to Farhad Azima's case?

20             THE WITNESS:  What's the basis of me

21        saying that I don't believe they have?

22             MR. BEHRE:  Yes.

23             THE WITNESS:  Because they've denied

24        it.

25

1    BY MR. BEHRE:

2         Q.    Who has?

3         A.    Pandey has denied it.

4         Q.    And --

5         A.    In his witness statements.

6         Q.    Okay.  And so that's your basis for

7    saying they're not -- they weren't affiliated or

8    working together?

9              MR. NEUMAN:  Objection to form.  Lacks

10        foundation.  Calls for speculation.

11             THE WITNESS:  Yes.

12   BY MR. BEHRE:

13        Q.    Any -- any other basis besides

14   Mr. Pandey's alleged statement?

15        A.    Alleged statement?  Did you say

16   alleged statement?

17        Q.    (Nonverbal response.)

18        A.    It's his statement.

19        Q.    Okay.  And where -- where do I find

20   that statement?

21        A.    It got served on you.

22        Q.    Through what?

23        A.    In the --

24             MR. NEUMAN:  I think he's referring to

25        the recent filing.

                                              123

1        THE WITNESS:  Yeah, the objections to

2    the motion to compel.

3        MR. BEHRE:  Okay.

4        THE WITNESS:  It's in there.

5    BY MR. BEHRE:

6        Q.    And you said you haven't talked to

7    Mr. Pandey since when?  2021?

8        A.    I've never spoken to him.

9        Q.    So regarding the work that CyberRoot

10   did for you, how did you communicate with that

11   company and its individuals that worked for it?

12       A.    Well, there's only one individual who

13   I know at the company and that was...

14       Q.    Vijay Bisht?

15       A.    Vijay, yeah, Vijay Bisht.  And it was,

16   I'm sure, a messaging app.

17       Q.    And by messaging app, are you

18   referring to Whatsapp?

19       A.    I've never used Whatsapp, no.

20       Q.    Confide?

21       A.    I don't think so, no.

22       Q.    Signal?

23       A.    Signal is what I've used, yeah,

24   predominantly.

25       Q.    Is that the one you use with

                                              124

BY MR. BEHRE:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

         Q.    Well, you -- you discussed CyberRoot

in your answer in this case; right?

         A.    Which answer?  Which?

         Q.    The answer you filed in this case.

You've -- you've discussed at length CyberRoot;

right?

         MR. NEUMAN:  Objection.  Vague and

         ambiguous.

         THE WITNESS:  I'm not sure which

         answer you're talking about.

BY MR. BEHRE:

         Q.    The -- so --

         A.    The answer --

         Q.    Let me -- let me step back.

         A.    Um-hum.

         Q.    Are you aware that your lawyers filed

                                                        127

1  an answer on your behalf in this case?

2       A.    In answer to what?

3       Q.    The answer to the complaint.

4       A.    Yes.

5       Q.    Okay.  And you read that before it was

6  filed?

7       A.    Yes.

8       Q.    And you approved the content of it?

9       A.    Yes.

10      Q.    And you also filed a witness statement

11  in -- in this matter; right?  Two witness

12  statements, I think.

13      A.    In?

14      Q.    In North Carolina.

15      A.    In North Carolina?  Yes.

16      Q.    And, in fact, your second witness

17  statement in North Carolina discusses CyberRoot;

18  correct?

19           MR. NEUMAN:  Objection.  Calls for

20      speculation.

21           If you're --

22           THE WITNESS:  I can't recall.

23           MR. NEUMAN:  -- going to ask him about

24      it, why don't you put it in front of him.

25           THE WITNESS:  I can't recall.

1          MR. BEHRE:  No need.  You've

2    instructed him not to answer.

3          Now, it's clear that if there was a

4    privilege, he's waived it.  He's talked about

5    it in his answer.  He's talked about it in

6    his witness statement.

7          MR. NEUMAN:  He didn't waive any

8    privilege having anything to do with Dechert

9    work.

10         MR. BEHRE:  I don't know.  You've --

11   if you look -- look at what you said in your

12   answer.  You volunteer a lot of information,

13   but that's up to you.

14         I mean, we're -- we'll -- we have

15   enough issues that will be coming up to the

16   court, so...

17         "Admitted that VMS engaged CyberRoot

18   to provide information technology services

19   related to CyberRoot security, online

20   reputation management, and digital

21   forensics."

22         When I asked him the question, you

23   instructed him not to answer, and it's right

24   in your answer.

25         MR. NEUMAN:  Well, my instruction was

                                                 129

1          based on information that would be related to

2          Dechert's work, work with Dechert, and

3          communication that would divulge

4          attorney-client communication that's related

5          to Dechert's representation of RAK.

6      BY MR. BEHRE:

7      ████████████████████████████████████████████

8      ████████████████████████████████████████████

9      ████████████████████████████████████████████

10             MR. NEUMAN:  You can answer that.

11     ██████████████████████████████████

12     BY MR. BEHRE:

13     ████████████████████████████████████████████

14     ████████████████████████████████████████████

15     ████████████████████████████████████████████

16     ████████████████████████████████████████████

17     ████████████████████████████████████████████

18         Q.      That's it.

19             So the answer says that the work

20     CyberRoot did at -- through its engagement with VMS

21     was precisely that; right?

22         A.      Yes.

23             MR. BEHRE:  Do you want to withdraw

24         your instruction not to answer?

25             MR. NEUMAN:  No.  Because you're not

                                                    130

1                    C E R T I F I C A T E

2          I, Lisa Taylor, Registered Professional
   Reporter and notary public certify:

3

4          That the foregoing deposition of
   Nicholas Del Rosso was taken before me at the time
   and place therein set forth at which time the

5  witness was put under oath by me;

6          That the testimony of the witness and all
   objections made at the time of the deposition were

7  recorded stenographically by me and thereafter
   transcribed;

8

9          That the foregoing deposition is a true
   record of the testimony and of all objections made
   at the time of the deposition.

10

11         I further certify that I am neither
   counsel for nor related to any party to said action,
   nor in any way interested in the outcome thereof.

12

13         My certification as to the accuracy of
   this transcript, if it has been reformatted or
   altered from its original form in any manner, is

14 null and void.

15         In witness whereof, I have subscribed my
   name this 16th day of February 2023.

16

17

18

19 _____

   Lisa Taylor
20 Registered Professional Reporter
   Notary Public

21

22

23

24

25

                                                          212