UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>   Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES, INC.,<br><br>   Defendants. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S SECOND SUBPOENA TO FIRST CITIZENS BANK & TRUST CO.** |

NOW COME Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS") (collectively, "Defendants"), and, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure ("Rule(s)") and M.D.N.C. Local Rule 7.2, hereby submit the following brief in support of their Motion to Quash and for Protective Order Regarding Plaintiff's Second Subpoena to First Citizens Bank & Trust Co.

## INTRODUCTION

The Court stayed production pursuant to Plaintiff Farhad Azima's ("Plaintiff") *first* subpoena to Defendants' bank, First Citizens Bank & Trust Co. ("First Citizens"), on January 23, 2023. Just two months later, with the stay still in place, Plaintiff is now attempting to improperly circumvent the Court's stay order by serving a *second* third-party subpoena on First Citizens (the "Second FCB Subpoena") (*See* **Ex. A** to Motion), dated March 23, 2023,

seeking a subset of the bank records previously requested in his *first* subpoena to First Citizens (the "First FCB Subpoena") (D.E. 122-2) (*see* **Ex. B**. to Motion).

The Second FCB Subpoena is returnable on April 7, 2023, and Defendants were provided notice of Plaintiff's intent to serve this subpoena on March 23, 2023. It is unclear whether, in serving the Second FCB Subpoena, Plaintiff notified First Citizens that the stay of the First FCB Subpoena was still in place, nor is it clear whether Plaintiff informed First Citizens that the Court is still considering Defendants' motion challenging that subpoena.

Finally, aside from being duplicative, Plaintiff's Second FCB Subpoena is no less deficient than his first, seeking a vast swath of Defendants' bank records from an irrelevant time period without any indication of how these records would be relevant or proportionate to his remaining claims.[1]

The Court obviously has an interest in enforcing its orders and preventing a duplicative subpoena to First Citizens as an end-run around the Court's stay order. It is grossly improper for Plaintiff to seek the production of documents or information where the subpoena seeking such information has been stayed, particularly where the discovery was at issue in the Court's March 7, 2023 hearing on all then-pending discovery motions. For the reasons set

---

[1] Defendants' arguments concerning the Second FCB Subpoena's scope and privilege issues are the same as those heard by the Court at the March 7, 2023 hearing. Given that Plaintiff served the Second FCB Subpoena after the March 7, 2023 hearing, though, Defendants summarize these arguments for purposes of their most recent Motion.

forth below, Defendants respectfully request that the Court grant the relief sought and quash Plaintiff's duplicative subpoena, or otherwise enter a Protective Order preventing any production pursuant to the Second FCB Subpoena.

## BACKGROUND

On January 16, 2023, Defendants received notice of Plaintiff's intent to serve a third-party subpoena on First Citizens requesting, in pertinent part: "[a]ll documents and communications" from 2014 to present "relating to accounts held in the name of, owned by, or for the benefit of . . . Nicholas Del Rosso, or Vital Management Services, Inc." (*See* **Ex. B** to Motion).

On January 22, 2023, Defendants filed their Emergency Motion to Quash and for Protective Order (D.E. 122), seeking to quash or modify the First FCB Subpoena, or otherwise enter a Protective Order commanding the same, on the grounds that, *inter alia*,

> Plaintiff d[id] not make *any* effort to limit the documents and communications requested . . . to subject matter relevant to this lawsuit or proportionate to the needs of the case—much less in light of the Court already limiting the relevant subject matter and temporal scope of the Remaining Claims[.]

(D.E. 123, at p. 11 (quoting D.E. 65, at p.24)). Indeed, in support of their arguments, Defendants largely relied on the Court's December 10, 2021 Memorandum Opinion and Order (the "12(b)(6) Order"), which dismissed nine

of Plaintiff's eleven claims, and limited the scope of Plaintiff's remaining claims to the "2018-2019 conduct—the only allegations that are not time-barred." (*Id.*, at pp.23–24). Accordingly, the only allegations remaining in the case are that Defendants conspired with CyberRoot Risk Advisory Private Limited ("CyberRoot") to republish Plaintiff's data using WeTransfer in 2018 and 2019. (*See id.*, at pp.17–18).

On January 23, 2023, the Court ordered that "First National Bank of Pennsylvania and First Citizens Bank & Trust Co. shall stay production pursuant to the subpoenas until the Court rules on Defendants' motion." (*See* Jan. 23, 2023 Text Order). To date, Defendants' Emergency Motion to Quash and for Protective Order remains pending, and production pursuant to the First FCB Subpoena remains stayed.

On March 22, 2023, Defendants received notice of Plaintiff's intent to serve a *second* third-party subpoena on First Citizens, requesting, in pertinent part, "[a]ll Document and Communications from 2021 to present relating to accounts held in the name of, owned by, or for the benefit of Defendants Nicholas Del Rosso or Vital Management Services, Inc." (*See* **Ex. A** to Motion). While not identical to the First FCB Subpoena,[2] and as set forth further below,

---

[2] The First FCB Subpoena also requested the banking records of non-parties GH Holding LLC, and Kristin White Del Rosso. (*See* **Ex. B** to Motion). These banking records are not sought in Plaintiff's Second FCB Subpoena.

4

the Second FCB Subpoena is duplicative in that it seeks a subset of the bank records sought by the First FCB Subpoena.

On March 24, 2023, Defendants requested via email a meet-and-confer regarding the Second FCB Subpoena and communicated to Plaintiff their objections that (1) the Second FCB Subpoena requests a duplicative production of bank records also sought by the First FCB Subpoena, clearly in contravention to the Court's order staying production pursuant to the First FCB Subpoena; and (2) the Second FCB Subpoena is overbroad and seeks records not proportionate to Plaintiff's remaining claims. (*See* **Ex. C** to Motion). Further, Defendants requested that—at the very least—Plaintiff withdraw his Second FCB Subpoena while the Court decides Defendants' pending motion challenging Plaintiff's First FCB Subpoena. To date, over a week later and a days before the return date of the Second FCB Subpoena, Plaintiff has yet to respond to Defendants' meet-and-confer request.

Accordingly, Defendants have filed the present Motion, seeking an Order quashing the Second FCB Subpoena, or otherwise entering a Protective Order commanding the same, in the form of the proposed Protective Order attached as **Exhibit D** to the Motion.[3]

---

[3] First Citizens informed Defendants that it does not intend to produce any responsive documents absent guidance from the Court given the stay ordered entered with respect to the First FCB Subpoena. As such, Defendants are not seeking emergency relief through this Motion, but seek an order stating that the requested discovery not be allowed.

# **LEGAL STANDARD**[4]

This Court has the discretion to quash or modify the Second FCB Subpoena, as it did with the First FCB Subpoena, pursuant to Rule 45(d)(3)(A)(iv) (authorizing quashing or modification of a subpoena which subjects a party to undue burden), as well as under section (B)(i) (authorizing a court to quash or modify a subpoena requiring disclosure of "confidential . . . commercial information[.]"). *See* Fed. R. Civ. P. 45(d)(3)(A)(iv), (B)(i).

Similarly, this Court has discretion under Rule 26(c)(1) to grant the same relief "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Such orders may prescribe, among other measures, "forbidding the disclosure or discovery," or "forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters[.]" *Id.* at (c)(1)(A), (D).

An order quashing or limiting a subpoena is also proper where, as here, Plaintiff has resorted to duplicative discovery, seeking information outside the

---

[4] To the extent Plaintiff again argues that Defendants do not have standing to bring this challenge, Fourth Circuit courts have held that a party has standing to challenge third-party subpoenas under Rule 26 as irrelevant and overbroad regardless of whether standing is proper under Rule 45. *See, e.g., Nallapaty v. Nallapati*, 2022 WL 1508885, at *4 (E.D.N.C. May 12, 2022); *Kappel v. Garris*, 2020 WL 707123, at *2 (D.S.C. Feb. 12, 2020); *Brown v. Mountainview Cutters, LLC*, 2016 WL 3045349, at *2 (W.D. Va. May 27, 2016).

scope of this case, and not proportionate to his remaining claims. Rule 26(b)(2)(C) provides that

> On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id.* at (b)(2)(C)(i), (iii) (emphasis added).

Finally, "[t]he parties and the [C]ourt have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Covil Corp. by & through Protopapas v. U.S. Fid. & Guar. Co.*, 544 F. Supp. 3d 588, 594–95 (M.D.N.C. 2021) (internal quotation and citation omitted). "District courts enjoy nearly unfettered discretion to control the timing and scope of discovery." *Id.* at 595.

## ARGUMENT

### A. The Second FCB Subpoena Is A Transparent End-Run Around the Court's Stay Order.

Dissatisfied with the Court's order staying his First FCB Subpoena, Plaintiff served his *Second* FCB Subpoena two months later, commanding that First Citizens produce bank records duplicative to those requested in Plaintiff's First FCB Subpoena. This comes (1) after the March 7, 2023 hearing at which Defendants' Emergency Motion to Quash and for Protective Order regarding the First FCB Subpoena was heard, but (2) before the Court has entered its

7

decision on the First FCB Subpoena. Notably, the return date on the Second FCB Subpoena makes no mention of the stay order. This Court should quash the Second FCB Subpoena as duplicative, *see* Fed. R. Civ. P. 26(b)(2)(C)(i), and as an improper end-run around the Court's stay order.

To be sure, a responsive production to Plaintiff's First FCB Subpoena would encompass all of the records requested in Plaintiff's Second FCB Subpoena. (*Compare* D.E. 122-2 *to* **Ex. A**). The First FCB Subpoena requests, *inter alia,* "[a]ll documents and communications" **from 2014 to present** "relating to accounts held in the name of, owned by, or for the benefit of . . . Nicholas Del Rosso, or Vital Management Services, Inc." (D.E. 122-2). The Second FCB Subpoena requests "[a]ll Document and Communications **from 2021 to present** relating to accounts held in the name of, owned by, or for the benefit of Defendants Nicholas Del Rosso or Vital Management Services, Inc." (*See* **Ex. A** (emphasis added)).

Accordingly, per the plain language, the Second FCB Subpoena requests a subset of the same documents previously requested in the First FCB Subpoena. "Thus, the two subpoenas have an overlapping effect and are duplicative." *Zahau v. Shacknai*, 2016 WL 4427434, at *2 (S.D. Cal. Feb. 23, 2016) (addressing circumstance where the second subpoena "sought a subset of the evidence initially sought" in the first subpoena).

8

Moreover, this is not a circumstance where Plaintiff has re-issued his subpoena to First Citizens in an effort to properly tailor it to the scope of his remaining claims. Rather, Plaintiff's Second FCB Subpoena appears to purposefully target Defendants' bank records from an irrelevant time period—2021 to present. *See infra.*

Accordingly, the Second FCB Subpoena is deficient in that it is duplicative and a direct contravention of the Court's stay order. Plaintiff's disregard for the Court's stay order, and attempted end-run around the same, has forced Defendants to file the present Motion, resulting in a waste of the Parties' and the Court's resources. Therefore, this Court should quash the Second FCB Subpoena, or otherwise enter a Protective Order commanding the same.

### B. The FCB Subpoena Is Overly Broad And Seeks Information Not Proportionate To The Needs Of The Case.[5]

Although enforcement of the Court's stay order should require no additional argument, even if no such order had been issued, it would be appropriate to quash the Second FCB Subpoena.

Significantly, Plaintiff makes no attempt to limit the Second FCB Subpoena to bank records "relevant" or "proportional" to his two remaining

---

[5] Defendants' scope and proportionality arguments are similar to those brought in Defendants' Emergency Motion to Quash and for Protective Order with regards to Plaintiff's First FCB Subpoena (*see* D.E. 122, at pp. 11–15), and are hereby incorporated by reference.

9

claims. *See* Fed. R. Civ. P. 26(b)(1). It is well-established that subpoenas are overbroad where they "lack a relevant subject matter limitation" or "seek information outside the relevant time period." *Nallapaty v. Nallapati*, 2022 WL 1508885, at *5–6 (E.D.N.C. May 12, 2022); *see also Jiangmen Kinwai Furniture Decoration Co. v. IHFC Props., LLC*, 2015 WL 5098791, at *6 (M.D.N.C. Aug. 31, 2015) ("A subpoena is overbroad if it does not limit the documents requested to subject matter relevant to the claims or defenses" (quoting C*hampion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 2014 WL 6686727, at *4 (M.D.N.C. Nov.26, 2014))). The Court has already limited the scope of Plaintiff's two remaining claims to the "2018-2019 conduct" in its 12(b)(6) Order, which consists of the allegations that Defendants conspired with CyberRoot to republish Plaintiff's data using WeTransfer in 2018 and 2019. (D.E. 65, at pp.17–18, 23–24; *see also* D.E. 80, at p.4).[6] Therefore, the Second FCB Subpoena is deficient as to subject matter and temporal scope: it demands production of Defendants' bank records at First

---

[6] The Court re-iterated the narrowed scope of this lawsuit in its Memorandum Opinion and Order on Defendants' Motion to Dismiss pursuant to Rule 12(b)(1), succinctly stating that only "two of Plaintiff's claims were allowed to proceed: a North Carolina misappropriation of trade secrets claim **arising from the 2018-2019 online posting of new links to Plaintiff's confidential business data** (Count VIII) and a North Carolina civil conspiracy claim **contingent upon the viability of the trade secrets claim** (Count X)." (D.E. 80, at p.4) (emphasis added).

10

Citizens from 2021 to present, without any indication of how all that information relates to the republication of Plaintiff's data in 2018 and 2019.[7]

As a result, the Second FCB Subpoena requests personal, private, and potentially privileged banking information that is irrelevant to this case, creating a high potential to disclose a whole host of confidential business information. *See Elsayed v. Fam. Fare LLC*, 2019 WL 8586708, at *4 (M.D.N.C. Oct. 31, 2019) (stating "[c]ourts have . . . recognized that production of bank records can create a high potential to disclose a whole host of irrelevant and confidential business related information." (cleaned up)). Courts are wary of subpoenas that request an entire file, and frequently conclude that such subpoenas are overbroad and likely to include irrelevant information. *See Jiangmen Kinwai Furniture Decoration Co., LLC*, 2015 WL 5098791 at *6 (granting motion for protective order and quashing "unduly burdensome and unduly expansive" third-party subpoenas of financial and operational records which "were not reasonably calculated to obtain relevant information.").

Moreover, the Second FCB Subpoena—which targets all of Defendants' bank records during a period well after the "2018-2019 conduct" purportedly

---

[7] In a prior filing, Plaintiff argued that "conduct that postdates 2019" is relevant because "as is clear from ECF No. 61, around the filing of this case, Defendants destroyed evidence, instructed hackers to destroy evidence, and fabricated a contract to cover up the fact that Defendants paid an admitted hacker." (D.E. 131-4, at p.5). However, setting aside its blatant inaccuracies, D.E. 61—which is Plaintiff's "Emergency Motion for Leave to File Supplemental Information"—was denied by the Court in its 12(b)(6) Order, and is not part of this case.

11

took place—can only be characterized as yet another improper fishing expedition, *see Elsayed*, 2019 WL 8586708, at *4 (finding that the "reason for requesting these bank statements would be to go on a fishing expedition with the hope of uncovering wrongful actions by defendants"), and an improper attempt at acquiring information in furtherance of Plaintiff's other pending matters in other jurisdictions.[8] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 364 n.17 (1978) (noting that "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied").

Therefore, regardless of Plaintiff's apparent attempt to circumvent the Court's stay order, the Second FCB Subpoena is overbroad and seeks information not proportionate to the needs of the case. The Court should quash the Second FCB Subpoena, or otherwise enter a Protective Order commanding the same.

---

[8] Plaintiff has multiple other related matters pending in other jurisdictions, including but not limited to *Azima, et al. v. Dechert LLP, et al.*, Case No. 1:22-cv-08728-PGG (S.D.N.Y. filed October 13, 2022) (the "SDNY Matter"), where discovery has yet to commence. Indeed, on January 18, 2023, the Honorable Paul G. Gardephe stayed discovery in the S.D.N.Y. Matter "pending resolution of Defendants' motions to dismiss." *Azima, et al. v. Dechert LLP, et al.*, Case No. 1:22-cv-08728-PGG, at D.E. 104 (S.D.N.Y. Jan. 18, 2023). Plaintiff should not be allowed to serve discovery here, seeking information unrelated to his remaining claims, in what appears to be an end-run around the scheduling in the SDNY Matter.

12

## CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court for an Order quashing the FCB Subpoena, or otherwise entering a Protective Order commanding the same, in the form of the proposed Protective Order attached as **Exhibit D** to the Motion. In addition, Defendants' request that, in the interim, production pursuant to the Second FCB Subpoena be stayed pending the Court's resolution of this Motion.

Respectfully submitted, this the 3rd day of April, 2023.

        **NELSON MULLINS RILEY &**
        **SCARBOROUGH LLP**

        By:   *Brandon S. Neuman*
            Brandon S. Neuman, NCSB# 33590
            Jeffrey M. Kelly, NCSB# 47269
            John E. Branch III, NCSB# 32598
            Nathaniel Pencook, NCSB# 52339
            Sam A. Rosenthal
            301 Hillsborough Street, Suite 1400
            Raleigh, North Carolina 27603
            Telephone: (919) 329-3800
            Facsimile: (919) 329-3799
            brandon.neuman@nelsonmullins.com
            jeff.kelly@nelsonmullins.com
            john.branch@nelsonmullins.com
            nate.pencook@nelsonmullins.com
            sam.rosenthal@nelsonmullins.com
            *Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: *Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal (*special appearance*)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

14

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that **Defendants' Memorandum of Law in Support of Motion to Quash and for Protective Order Regarding Plaintiff's Second Subpoena to First Citizens Bank & Trust Co.** contains 2,897 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 3rd day of April, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: *Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal (*special appearance*)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*