# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>          Plaintiff,<br><br>  v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>          Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING A RULING ON MOTIONS SUB JUDICE AND TO PROVIDE JUDICIAL NOTICE OF RULING IN FOREIGN PROCEEDING ON PRIVILEGE** |

### *Expedited Briefing and Relief Requested*

NOW COME Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS") (collectively, "Defendants"), and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure ("Rule(s)"), hereby submit the following memorandum in support of their Motion to Stay Discovery Pending a Ruling on Motions Sub Judice (the "Motion"), requesting that the Court stay all third-party discovery and VMS's upcoming Rule 30(b)(6) deposition pending a ruling on the several discovery motions heard on March 7, 2023. Defendants also respectfully provide judicial notice of a recent decision by the High Court of Justice of England and Wales ("High Court") bearing directly on motions pending before the Court on the assertion of attorney-client privilege and the work-product doctrine as to various discovery requests. Finally, Defendants ask the Court to shorten the briefing deadlines

and issue an expedited ruling on this Motion, prior to the currently scheduled Rule 30(b)(6) deposition of VMS on May 17, 2023.

## INTRODUCTION

Defendants are constrained to file this additional motion in light of Plaintiff Farhad Azima's ("Plaintiff" or "Azima") continuing efforts to use the discovery process to pressure and harass Del Rosso and VMS. Plaintiff has engaged in a concerted effort to circumvent this Court's consideration of several issues which are now pending before the Court. The parties have extensively briefed and argued those issues, which are now *sub judice*.

As the Court is aware, presently pending before the Court are objections by Defendants—and third parties—to Plaintiff's discovery on grounds that it: (1) exceeds the proper scope of discovery in light of this Court's dismissal of 9 of 11 counts of the Complaint, ruling that Plaintiff's substantive and "dependent civil conspiracy claim[s are] limited to the 2018-2019 conduct" involving the republication of Plaintiff's data (*see* D.E. 65 at pp.17–18, 23–25) (the "12(b)(6) Order"); (2) seeks material protected by the attorney-client privilege and/or attorney work-product doctrine, and (3) is improperly being sought for use in other proceedings pending elsewhere. (*See, e.g.*, D.E. 130, 142, 188). The parties' arguments on these issues—raised in several pending discovery motions—were heard by the Court on March 7, 2023.

2

Rather than waiting for the Court to rule on the threshold discovery issues set forth above, since the March 7, 2023 hearing, Plaintiff has (a) served at least 15 third-party subpoenas, *see* **Exhibits A–O[1]**, (b) forecasted an overly broad set of topics which they intend to inquire about during VMS's upcoming Rule 30(b)(6) deposition, which is presently scheduled for May 17, 2023, *see* **Exhibit P**, and (c) continued his harassing tactics of surveilling Del Rosso, as was revealed previously (*see* D.E. 107-1–6).

As to avoid further time and expense on piece-meal challenges to this newly issued and forecasted discovery, which would result in yet another re-hashing of the parties' positions on the three threshold issues noted above, Defendants request that the Court stay all third-party discovery and VMS's upcoming Rule 30(b)(6) deposition until the Court rules on the several pending discovery motions heard on March 7, 2023.

In addition, we write to inform the Court of a decision by the English High Court which bears directly on whether the attorney-client privilege or work product doctrine are properly asserted as to work conducted by, or on behalf of, Dechert LLP ("Dechert") in connection with its representation of Ras al Khaimah ("RAK") and its related entities. *See* **Ex. Q**, *discussed infra.*

---

[1] All exhibits cited herein are attached to the corresponding Motion.

# BACKGROUND

## A. Origins Of This Lawsuit.

This lawsuit is the attenuated byproduct of a 2016 commercial dispute in the High Court between RAK's sovereign wealth fund, the RAK Investment Authority ("RAKIA"), and Azima, captioned *RAK Inv. Auth. v. Azima*, Case No. HC-2016-002798 (filed Sept. 30, 2016) (the "U.K. Proceeding"). In that lawsuit, RAKIA claimed that Azima engaged in wide-ranging fraud and corruption in his business dealings with RAKIA, largely evidenced by information which RAKIA claims it obtained via publicly available internet sources. Azima brought hacking counterclaims in the same action.[2]

A trial was held in the U.K. Proceeding in January and February 2020, and a judgment was given by the High Court on May 22, 2020 (the "Approved Judgement"). In the Approved Judgment, the High Court ruled that Azima

---

[2] Azima first brought his hacking claims against RAKIA in the District of Columbia, alleging that the information RAKIA claimed to have obtained via publicly available resources was actually information that RAKIA obtained through its commissioned hacking of Azima's personal and business laptops from October 2015 to August 2016, and that RAKIA further commissioned the publishing of that information in an effort to "extort[ ] money . . . and inflict[ ] unfair competitive injury" on Azima. *See* Complaint at ¶ 1, *Azima v. RAK Inv. Auth.*, No. 16-cv-1948 (KBJ) (D.D.C. filed Sept. 30, 2016), D.E. 1 (the "D.C. Action"). The D.C. Action was ultimately dismissed in 2019 due a forum selection clause that applied to Azima's claims, located in a 2016 settlement agreement between RAKIA and Azima (the "2016 Settlement Agreement"), designating the courts of England and Wales the exclusive jurisdiction. *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 879 (D.C. Cir. 2019). Thus, Azima was forced to pursue his hacking claims as counterclaims in the U.K. Proceeding.

had been involved in bribery and fraud. *RAK Investment Authority v. Azima* [2020] EWHC 1327 (Ch) [159, 246, 250, 381].

With regard to Azima's hacking counterclaims, the High Court was "not satisfied on the balance of probabilities that RAKIA was responsible for the hacking of Mr Azima's emails" and that even if it had found RAKIA was responsible for the hack, it "would not necessarily have excluded the illicitly obtained evidence as, without it, RAKIA would have been unable to prove its claims and Mr Azima would have been left with the benefit of his seriously fraudulent conduct." *Id.* at ¶¶381, 384.

Nevertheless, on March 12, 2021, the U.K Court of Appeal upheld the fraud and bribery judgment against Azima, but remitted Azima's hacking counterclaims for a retrial. *See RAK Investment Authority v. Azima* [2021] EWCA Civ. 349 [147–148]. Significantly, the U.K. Court of Appeal's decision to remit the hacking claims for retrial was based on the witness statement of Jonas Rey, who alleged that he had been told by a former employee of CyberRoot Risk Advisory Private Ltd. ("CyberRoot"), Vikash Pandey, that CyberRoot was used by Defendants to hack Azima's data. *See RAK Investment Authority v. Azima* [2021] EWCA Civ. 349 [130–147]. Subsequent to that ruling, Pandey submitted a sworn statement indicating that he had made no such statements, and to the contrary, had been offered a lucrative consulting agreement in exchange for his willingness to support Plaintiff's false narrative.

5

(See D.E. 159, at pp.7–9). The retrial of Azima's hacking claims is now scheduled for May 2024.

**B. Azima Pursues His Hacking Claims In Other Jurisdictions.**

Faced with the prospect of a retrial of his hacking claims in the U.K. Proceeding, Plaintiff filed lawsuits against Defendants and others in multiple forums, including the present lawsuit in the Middle District of North Carolina (filed October 15, 2020), and another in the Southern District of New York, *see Azima, et al. v. Dechert LLP, et al.*, No. 22-cv-08728 (S.D.N.Y. filed October 13, 2022) (the "S.D.N.Y. Action"), seeking to discover who hacked his data.

Notably, the S.D.N.Y. Action and the U.K. Proceeding involve a broader range of conduct than the present lawsuit. Those cases generally allege that RAK (1) had engaged in mistreatment of those perceived to be hostile to RAK, (2) targeted Azima after it was unsuccessful in negotiating a settlement with one of those individuals, (3) first hacked Azima's data and then sued him in the U.K, (4) then published that information on the internet in order to harm his reputation, and (5) finally, engaged in a concerted effort to cover-up its hacking scheme by bribing witnesses and creating false documents.

In contrast, here, this Court methodically went through each of Plaintiff's wide-ranging claims and found that they were time-barred, dismissing Azima's hacking claims, and ruling that only his North Carolina misappropriation of trade secrets claim and contingent civil conspiracy claim

could proceed, limited to allegations of Defendants' purported commissioning of a third-party—CyberRoot—to republish Azima's data in 2018 and 2019. (*See* D.E. 65, at 17–18, 23–25).

### C. Plaintiff Initiates A Campaign Of Overbroad And Harassing Discovery In This Matter, In Furtherance Of His Litigation Elsewhere.

Despite the Court's significant narrowing of the issues remaining in this case by way of its 12(b)(6) Order, Plaintiff has initiated a campaign of expansive and harassing discovery into the broader allegations in the S.D.N.Y. Action and the U.K. Proceeding (*see, e.g.,* D.E. 179, at pp.3–7), in addition to individuals and entities completely irrelevant to *any* of Plaintiff's broader allegations, *see, e.g.,* D.E. 199 (Declaration of Craig Evers stating he stopped working with Defendants in "early 2014" and "had never heard of Farhad Azima until [he] received the Subpoenas").[3] In addition, during discovery in this matter, Del Rosso has been subjected to unnecessary and harassing surveillance, (*see* D.E. 107-1–6), which we believe has persisted over the course of the last month.

Defendants—as well as third parties—have repeatedly objected to Plaintiff's aggressive and overbroad discovery in this case, both affirmatively

---

[3] This likely because Plaintiff has been unable to conduct discovery on his broader allegations in the S.D.N.Y. Action, where the court has stayed all discovery pending consideration of the pending motions to dismiss. *See* Order, *Azima, et al. v. Dechert LLP*, et al., No. 1:22-cv-08728 (S.D.N.Y.), D.E. 104.

Case 1:20-cv-00954-WO-JLW   Document 206   Filed 04/21/23   Page 7 of 25

by way of serving motions to quash and/or for protective order, and defensively by way of opposing Plaintiff's motions to compel. (*See, e.g.,* D.E. 122, 142, 159, and 193). As noted above, these motions generally center on three threshold discovery issues: (1) the applicable scope of discovery in this case in light of the Court's 12(b)(6) Order; (2) the applicability of the attorney-client privilege or attorney-work product protections to, principally, Defendants' work for Dechert in furtherance of its representation of RAK and its related entities; and (3) the fact that Plaintiff is improperly seeking discovery for use in litigation pending elsewhere.

On March 7, 2023, this Court heard arguments on 9 pending discovery motions: three filed by Defendants, three filed by Plaintiff, and three filed by subpoenaed third parties (collectively, the "Discovery Motions").[4] During oral argument, Plaintiff's counsel conceded that discovery had in fact been impacted directly by this Court's dismissal of 9 of 11 counts of the Complaint. Specifically, Plaintiff's counsel admitted that "Judge Osteen's order changed the nature of this case" and "the trade secret claim [remaining in the case] is 2018 and 2019." (Audio recording of March 7 Hearing, Part 3, 16:41 – 18:42). Plaintiff's counsel nevertheless claimed at oral argument that Plaintiff needed discovery going back all the way to 2014, covering the period during which the

---

[4] *See* D.E. 122, 130, 133, 136, 142, 144, 150, 154, and 188.

alleged hacking took place, events prior to that period, as well as documents and information post-dating the alleged disclosure of Azima's data. Further, Plaintiff's counsel argued that any assertions of privilege relating to Dechert's representation of RAK was overcome by the crime-fraud exception. As the Court is aware, these Discovery Motions remain pending.

### D. Plaintiff Attempts to Circumvent The Court's Consideration Of The Pending Discovery Motions By Persisting With Overbroad And Harassing Discovery.

Notwithstanding the fact that the proper scope of discovery and the applicability of the attorney-client privilege/work-product doctrine is currently *sub judice*, Plaintiff has served at least 15 third-party subpoenas since the March 7, 2023 hearing without any apparent acknowledgment of the discovery dispute. Defendants—and several third parties—believe that these subpoenas once again seek discovery (1) beyond the scope of this case, (2) protected by the attorney-client privilege and/or work-product doctrine, and (3) in furtherance of Plaintiff's other lawsuits pending in other jurisdictions.

Specifically, Plaintiff has served the following subpoenas on third parties, ***following*** oral argument on March 7, 2023:

- First Citizens Bank & Trust Co. Return date: 4/7/23. Attached as **Exhibit A**.

- Richard T. Garcia. Return date: 4/5/23. Attached as **Exhibit B**.

- NTi/ Philip Renzulli. Return date: 4/5/23. Attached as **Exhibit C**.

9

- NTi.  Return date: 4/5/23.  Attached as **Exhibit D**.

- Branch Metrics, Inc.  Return date: 4/7/23.  Attached as **Exhibit E**.

- Cloudinary, Inc.  Return date: 4/7/23.  Attached as **Exhibit F.**

- KARV Communications, Inc.  Return date: 4/7/23.  Attached as **Exhibit G**.

- Craig Evers (documents).  Return date 4/7/23.  Attached as **Exhibit H**.

- Craig Evers (deposition).  Deposition date: 4/12/23.  Attached as **Exhibit I**.

- Meta Platforms, Inc.  Return date: 4/10/23.  Attached as **Exhibit J**.

- Emirates.  Return date: 4/12/23.  Attached as **Exhibit K**.

- Bank of New Hampshire.  Return date: 4/24/23.  Attached as **Exhibit L**.

- Passumpsic Bank Corporation.  Return date: 4/24/23.  Attached as **Exhibit M**.

- WeTransfer Corporation.  Return date: 4/24/23.  Attached as **Exhibit N**.

- Richard T. Garcia (deposition).  Deposition date: 5/2/23 (rescheduled from 4/25/23).  Attached as **Exhibit O**.

Furthermore, Plaintiff filed an Application for Order Enforcing Subpoena Duces Tecum in the Eastern District of North Carolina (the "Application") on April 17, 2023, seeking enforcement of the subpoena Plaintiff issued to American Express on January 23, 2023, *see Azima v. Del Rosso, et al.,* Case No. 5:23-mc-00016-BO, D.E. 1 (E.D.N.C. filed Apr. 17, 2023), which is

10

subject to Defendants' pending motion to quash and for protective order heard by this Court on March 7, 2023 (*see* D.E. 154). The Application mischaracterizes the motion to quash and for protective order as only a "motion to quash," and provides no notice whatsoever to that court about either (1) the dispute over the scope of discovery; or (2) that this dispute regarding Plaintiff's American Express subpoena has been heard by this Court and is pending decision.

In addition, in an April 5, 2023 letter to Defendants, Plaintiff forecasted a broad set of topics which he intends to inquire about during the upcoming Rule 30(b)(6) deposition of VMS, presently scheduled for May 17, 2023. *See* **Exhibit P** (the "Rule 30(b)(6) Letter"). Indeed, these topics cover every possible factual issue surrounding the broader lawsuits brought by Azima in other forums, namely the S.D.N.Y. Action and the U.K. Proceeding, but fail to include any factual matters surrounding WeTransfer and the alleged conspiracy with CyberRoot to republish Azima's data in 2018 and 2019. *See id.*

### E. Subsequent Authority from the English High Court Bears Directly On The Attorney-Client Privilege And Work-Product Doctrine Issue Here.

Lastly, in another related lawsuit against Dechert brought by Karam Al Sadeq ("Al Sadeq")—the former general counsel of RAKIA—filed in the High Court of Justice of England and Wales, Queen's Bench Division, captioned *Al*

11

*Sadeq v. Dechert LLP, et al.*, Claim No. QB-2020-000322,[5] Dechert asserted the same privilege and work-product protections that Defendants now assert here—namely, that documents relating to Dechert's representation of RAK are governed by applicable attorney-client and litigation privileges, notwithstanding arguments that a crime-fraud exception to these protections applies. The High Court sustained those objections by Dechert and rejected arguments that any such privileges could be overcome by the crime fraud exception. *See Al Sadeq v. Dechert LLP, et al.* [2023] EWHC 795 (KB) [130–131, 137–138, 185–186, 200] (A copy of that opinion issued on April 5, 2023, which is discussed further below, is attached as **Exhibit Q**). That ruling forecloses the identical argument raised by Plaintiff now pending before the Court—namely, that any assertion of privilege by Dechert or RAK fall within the crime-fraud exception.

## LEGAL STANDARD

"This Court has the broad inherent power to stay discovery until preliminary issues are settled" in order to "achieve equity and to ensure the efficient management of its docket." *Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap., LLC*, 2022 WL 16836202, at *1 (M.D.N.C. Sept. 15,

---

[5] In the S.D.N.Y. Action, Azima alleged that Al Sadeq was targeted by RAK, Dechert, and Defendants, as part of a scheme to harm the reputations of any perceived enemies of RAK. *See, e.g.,* Complaint at ¶ 39, *Azima, et al. v. Dechert LLP, et al.*, No. 1:22-cv-08728 (S.D.N.Y. filed October 13, 2022), D.E. 1.

12

2022).  "Rule 26(c) of the Federal Rules of Civil Procedure authorizes the court to issue orders establishing limitations on discovery," and the "[t]he scope and conduct of discovery are in the sound discretion of the trial court." *Smith v. City of Greensboro*, 2020 WL 13646253, at *1 (M.D.N.C. July 2, 2020) (citations omitted); *see also* Fed. R. Civ. P. 26(c).

"In deciding whether to stay discovery pending resolution of a pending motion, the Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988). Where the pending motion is non-dispositive, courts have considered the interests of justice and judicial economy in their analysis. *See, e.g., Wymes v. Lustbader*, No. WDQ-10-1629, 2012 WL 1819836, *5-6 (D. Md. May 16, 2012) (granting motion to stay discovery to prevent "unnecessary litigation expenses").

## ARGUMENT

## I.   THE COURT SHOULD STAY DISCOVERY PENDING A RULING ON THE OUSTANDING DISCOVERY MOTIONS

It has long been recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Corp.*, 299 U.S. 248, 254 (1936).

13

"Courts have identified factors that are relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Mystic Retreat Med Spa & Weight Loss Ctr.*, 2022 WL 16836202, at *1 (cleaned up). "These factors are: (1) the interests of judicial economy; (2) the hardship and equity to the moving party in the absence of a stay; and (3) the potential prejudice to the non-moving party in the event of a stay." *Id.* (cleaned up). All of these factors militate in favor of staying discovery pending a ruling on the Discovery Motions.

## A. Interests of Judicial Economy

There is no reason why the parties or this Court should endure the inevitable motions practice that will result—and has already resulted—as a consequence of the now 15 additional subpoenas Plaintiff has issued since the March 7 hearing, and the expansive deposition topics that Plaintiff forecasts in his Rule 30(b)(6) Letter. Indeed, a ruling on the pending Discovery Motions will largely impact/clarify the parameters of discovery, and the parties' disagreements on the same, and could potentially moot any current and forthcoming challenges to Plaintiff's newly issued discovery. As such, a stay of discovery pending this Court's ruling on the Discovery Motions would eliminate any need for piece-meal challenges to Plaintiff's newly issued and forecasted discovery, avoiding a duplicative re-hashing of the parties' arguments and positions on the three threshold issues already pending before

14

the Court—*i.e.*, (1) the scope of discovery, (2) the applicability of the attorney-client privilege and work-product doctrine, and (3) the propriety of seeking discovery for use in litigation elsewhere. Thus, a temporary stay of discovery here would benefit the Court and the parties, avoiding both an overburden of the Court's docket and exacerbation of the parties' litigation expenses.

To be sure, Plaintiff's latest barrage of discovery implicates the very same issues already pending before the Court. As a clear example, due to Plaintiff's *second* subpoena served on First Citizens Bank & Trust Co. ("First Citizens"), dated March 23, 2023, Defendants were forced to file yet another motion to quash and for a protective order on the same grounds—*i.e.*, overbreadth in light of the Court's Rule 12(b)(6) order effectively limiting the applicable scope of discovery—in addition to notifying the Court that Plaintiff improperly served this second subpoena on First Citizens in contravention of a the Court's order staying production of this same information.[6] (*See* D.E. 196, 197). First Citizens has taken the position that it is waiting until the Court rules on the pending motion before it makes any production; nonetheless, Plaintiff has continued to harass First Citizens, without copying counsel for

---

[6] As the Court is now aware, after the Court stayed production pursuant to Plaintiff's *first* subpoena to First Citizens (pending the Court's decision on Defendants' first motion challenging the same), Plaintiff's response was to serve a *second* subpoena on First Citizens requesting a subset of the same information previously requested from First Citizens, despite the discoverability of that information being an issue that is presently before the Court. (*See* D.E. 197).

Defendants, contending that production should be made prior to the Court's determination of the dispute. *See* **Ex. R**, April 19, 2023 email string between Kristin Caldaro (First Citizens) and Calvin Lee (Counsel for Plaintiff).

As another example, Plaintiff's newly issued subpoenas to Northern Technology, Inc. ("NTi") seek the same documents and information which have been requested from Defendants (*see* D.E. 131-1 (requesting, *inter alia*, all documents related to NTi prepared for Defendants)), where the discoverability of this information is already before the Court. (*See* D.E. 130). Rather than waiting for the Court to rule on the propriety of that request in light of the 12(b)(6) Order and Defendants' arguments on the protected nature of this information (*i.e.*, attorney-client privilege and work-product doctrine), Plaintiff went ahead and subpoenaed the same documents from NTi, as well as its former principals (including a deposition subpoena). *See* **Exs. B–D, O**.

As a last example, Plaintiff's Rule 30(b)(6) Letter forecasts inquiry into matters including all details of Plaintiff's work for Dechert performed in furtherance of Dechert's representation of RAK and its related entities. *See* **Ex. P**, at p.2. Defendants already moved to foreclose inquiry into these matters, primarily on the basis of privilege, *see* D.E. 142, 143, and when asked about these matters during Del Rosso's deposition, counsel for Defendants instructed Del Rosso not to answer, *see* D.E. 179, at pp.12–15. Absent a ruling on this issue—*i.e.*, the applicability of the attorney-client privilege and work-

product protections to Defendants fraud examination work for Dechert in furtherance of Dechert's representation of RAK and its related entities— Defendants will continue asserting these protections, as RAK has prohibited Del Rosso from disclosing this information. *See* 182-4 (Letter from RAK's counsel).

Indeed, as alluded to above, RAK's assertion of privilege and work-product protections to this information is bolstered by the recent opinion issued by the English High Court in the lawsuit brought by Al Sadeq. *See* **Ex. Q**. There, the High Court of Justice, King's Bench Division, ruled on the same issue, namely whether the attorney-client privilege and work product doctrine were being properly asserted by Dechert in connection with documents or information relating to Dechert's representation of RAK. Specifically, referring to Dechert's showing made in support of the assertion of RAK's privilege, the High Court court ruled:

> Mr Edey outlined the nature of Dechert's role for the Dechert Clients in the Investigation in relation to the Alleged Fraud by reference to the 2013 Engagement Letter and the 2014 Engagement Letter. It is clear that the defendants were engaged as lawyers to advise and assist their clients. This included helping their clients to determine what had occurred for the purpose of exploring their legal options to recover these losses. All of this work was undertaken in a relevant legal context and involved advice and assistance as to what its clients might prudently and sensibly do in that context. It was artificial and wrong to attempt to separate the defendants' investigatory work into factual matters from their role as lawyers.

17

**Ex. Q**, at ¶130. The import of that ruling on Plaintiff's outstanding discovery requests is clear, upholding assertions of privilege under U.K. law. Because Del Rosso and VMS were retained by Dechert in connection with that same representation, any such privileges extended also to Defendants' communications and work for Dechert. Plaintiff should not be allowed to use litigation in this Court to circumvent those privileges. It is especially improper for Plaintiff to do so by foisting discovery on third parties before the Court can rule on these issues as presented in the pending Discovery Motions.

Thus, a stay on discovery is warranted here in order to prevent the case docket from becoming unmanageable, to prevent the excess spending of judicial resources, and to prevent unnecessary and duplicative litigation expenses. *Cf. Rullan v. Godan*, No. CCB-12-2412, 2014 WL 5464835, at *2 (D. Md. Oct. 27, 2014) (granting motion to stay discovery where discovery was "extremely contentious," because the parties had filed motions or sought assistance from the court "regarding[] virtually every aspect of discovery thus far," and discovery was affected by ongoing, multiple pending actions, and therefore judicial economy warranted stay in current matter).

**B.     The Burden, Hardship, And Equity To The Moving Party, As Well As The Parties Impacted By The Subpoenas, Militates In Favor Of Granting A Stay.**

In addition to the burden on this Court, courts also consider the hardship and equity to the moving party or those subpoenaed or subject to discovery. *See, e.g.*, *Mystic Retreat supra*.

Here, the hardship and equity to the parties impacted by the subpoenas, as well as the parties to this lawsuit, militates in favor of a stay. Obviously, unless a stay is issued, those third parties subpoenaed for records will be required to review, assemble and produce potentially large quantities of documents, when that entire exercise may be rendered unnecessary based on the Court's ruling on the pending Discovery Motions.

Moreover, absent a stay, Defendants will be tasked with the burden of continuously objecting to Plaintiff's discovery by way of piece-meal motions practice or frequent objections at VMS's Rule 30(b)(6) deposition, asserting the same threshold discovery issues described *supra*, which ultimately may be rendered moot by the Court's ruling on the pending Discovery Motions.

**C. Potential Prejudice To And Plaintiff's Interest In Production Prior To A Ruling On Outstanding Motions.**

The last factor to be considered is the prejudice to Plaintiff if he is temporarily deprived of the documents he is seeking until the Court rules on the outstanding motions. *See Mystic Retreat*, *supra*. The court also considers

19

the "interests served by demanding compliance with the subpoena," which is an inquiry that focuses on "the relevance of the requested information to the underlying litigation, or the lack thereof." Fed. R. Civ. P. 45(d)(3)(A)(iv).

Here, Plaintiff will not be prejudiced by a temporary stay of discovery. Any potential prejudice to Plaintiff is mitigated by the fact that Plaintiff too will be spared the time and expense of re-litigating the same threshold issues before Court. Further, there is no present circumstance, specific event, or issue which mandates immediate production of the discovery Plaintiff seeks, much less, discovery which would justify ignoring the threshold discoverability arguments now being considered by the Court. The Discovery cut-off is months away. (*See* D.E. 93).

## II. THE COURT SHOULD EXPEDITE THE BRIEFING SCHEDULE AND ISSUE A RULING PRIOR TO MAY 17, 2023.

Plaintiff noticed the Rule 30(b)(6) deposition of VMS to take place on May 17, 2023. Since the relief requested in this Motion directly impacts the date of that deposition, Defendants ask that the Court set a briefing schedule which would allow for the Court to decide the Motion prior to May 17, 2023. The briefing schedule proposed by Defendants is ten (10) days for Plaintiff to respond to the Motion, and four (4) days for Defendants to reply. This would allow for briefing on this Motion to close on May 5, 2023, giving the court eleven (11) days to (potentially) decide the Motion prior to May 17, 2023.

20

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court (a) temporarily stay all third-party discovery and VMS's upcoming Rule 30(b)(6) deposition pending a ruling on the Discovery Motions heard on March 7, 2023; and (b) upon a ruling on the Discovery Motions, hold a status conference where the Parties and the Court can address the effect of that ruling on all outstanding discovery.

In addition, in light of the upcoming May 17, 2023 Rule 30(b)(6) deposition of VMS, as well as the several outstanding third-party subpoenas, Defendants request that briefing be expedited such the response is due ten (10) days after the filing of this Motion; and the reply is due five (5) days after the response.

21

Respectfully submitted, this the 21st day of April, 2023.

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: *Brandon S. Neuman*
  Brandon S. Neuman, NCSB# 33590
  Jeffrey M. Kelly, NCSB# 47269
  John E. Branch III, NCSB# 32598
  Nathaniel Pencook, NCSB# 52339
  Sam A. Rosenthal
  301 Hillsborough Street, Suite 1400
  Raleigh, North Carolina 27603
  Telephone: (919) 329-3800
  Facsimile: (919) 329-3799
  brandon.neuman@nelsonmullins.com
  jeff.kelly@nelsonmullins.com
  john.branch@nelsonmullins.com
  nate.pencook@nelsonmullins.com
  sam.rosenthal@nelsonmullins.com
  *Counsel for Defendants*

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of April 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By:    *Brandon S. Neuman*
       Brandon S. Neuman, NCSB# 33590
       Jeffrey M. Kelly, NCSB# 47269
       John E. Branch III, NCSB# 32598
       Nathaniel J. Pencook, NCSB# 52339
       Sam A. Rosenthal (*special appearance*)
       301 Hillsborough Street, Suite 1400
       Raleigh, North Carolina 27603
       Telephone: (919) 329-3800
       Facsimile: (919) 329-3799
       brandon.neuman@nelsonmullins.com
       jeff.kelly@nelsonmullins.com
       john.branch@nelsonmullins.com
       nate.pencook@nelsonmullins.com
       sam.rosenthal@nelsonmullins.com
       *Counsel for Defendants*

23

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ.

P. 11, that the foregoing document contains 4698 words, according to the word

count feature of the word processing system used to prepare the brief.

Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 21st day of April, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:    *Brandon S. Neuman*
         Brandon S. Neuman, NCSB# 33590
         Jeffrey M. Kelly, NCSB# 47269
         John E. Branch III, NCSB# 32598
         Nathaniel J. Pencook, NCSB# 52339
         Sam A. Rosenthal (*special appearance*)
         301 Hillsborough Street, Suite 1400
         Raleigh, North Carolina 27603
         Telephone: (919) 329-3800
         Facsimile: (919) 329-3799
         brandon.neuman@nelsonmullins.com
         jeff.kelly@nelsonmullins.com
         john.branch@nelsonmullins.com
         nate.pencook@nelsonmullins.com
         sam.rosenthal@nelsonmullins.com
         *Counsel for Defendants*

## LOCAL RULE 37.1(a) CERTIFICATION

Pursuant to Local Rule 37.1(a), I hereby certify, subject to Fed. R. Civ. P. 11, and as set out in further detail in Paragraph 9 of the Motion, that after personal consultation and diligent attempts to resolve differences, the parties are unable to reach an accord regarding the relief requested in this Motion.

Respectfully submitted this 21st day of April, 2023.

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By:    *Brandon S. Neuman*
      Brandon S. Neuman, NCSB# 33590
      Jeffrey M. Kelly, NCSB# 47269
      John E. Branch III, NCSB# 32598
      Nathaniel J. Pencook, NCSB# 52339
      Sam A. Rosenthal (*special appearance*)
      301 Hillsborough Street, Suite 1400
      Raleigh, North Carolina 27603
      Telephone: (919) 329-3800
      Facsimile: (919) 329-3799
      brandon.neuman@nelsonmullins.com
      jeff.kelly@nelsonmullins.com
      john.branch@nelsonmullins.com
      nate.pencook@nelsonmullins.com
      sam.rosenthal@nelsonmullins.com
      *Counsel for Defendants*