UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>            Plaintiff,<br><br> v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>            Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S SECOND SUBPOENA TO FIRST CITIZENS BANK & TRUST CO.** |

*Interim Relief Requested*

This Reply Memorandum is submitted in support of Defendants Nicholas Del Rosso and Vital Management Services, Inc. ("Defendants") Motion to Quash and Motion for Protective Order regarding Plaintiff Farhad Azima's ("Plaintiff") Second Subpoena to First Citizens Bank & Trust Co. ("First Citizens") (the "Second Subpoena") (D.E. 196) and responds to Plaintiff's Opposition to that Motion (D.E. 201).

## INTRODUCTION

The facts here are simple; Plaintiff previously issued a subpoena to First Citizens covering the exact same information sought in the Second Subpoena. Despite this Court entering a total stay of production under Plaintiff's January 2023 subpoena to First Citizens (the "First Subpoena") (*see* D.E. 196-2), Plaintiff nonetheless persists in seeking production of those documents. (*See*

Jan. 23, 2023, Text Order ("First National Bank of Pennsylvania and First Citizens Bank & Trust Co. shall stay production pursuant to the subpoenas until the Court rules on Defendants' motion.")). While Plaintiff's response makes creative arguments as to why the discovery sought in the Second Subpoena is not currently foreclosed by the Court's January 23, 2023 order, these arguments conflict with the actual language of the subpoenas and the order and, thus, are unavailing. Even if Plaintiff's two subpoenas to First Citizens mistakenly seek the same documents, the Court's order staying production of the documents sought by Plaintiff's broadly written First Subpoena remain in place.

As a result, Plaintiff's Second Subpoena should be quashed in its entirety. **First**, this Court's unambiguous Order staying <u>all</u> production under the First Subpoena, which on its face encompassed the information now sought in the Second Subpoena, is dispositive of the present motion; the latter is clearly duplicative of the former. Plaintiff should not be allowed to circumvent this Court's Order under the guise of discovery. **Second**, Defendants have standing to challenge the Second Subpoena and, even if they cannot quash it under Rule 45 (which Defendants dispute), Defendants have standing to challenge it under Rule 26, and this Court is well within its power to issue a protective order providing that the requested discovery not be had. Plaintiff does not have the ability to seek unfettered third-party discovery under the

2

Rules.  **Third**, the Second Subpoena is facially overbroad and disproportionate to what remains of Plaintiff's claims, rendering it fatally deficient and subject to quashing or entry of a protective order commanding the same.  **Fourth**, this Court's independent interest in enforcing its own orders, including that which Plaintiff now attempts to circumvent, more than permits an order that the discovery sought in the Second Subpoena not be had.

## BACKGROUND[1]

The Second Subpoena to First Citizens obviously seeks a subset of the documents sought in the First Subpoena.  On January 16, 2023, Plaintiff notified Defendants of his intent to serve his First Subpoena requesting, in pertinent part: "All documents and communications relating to accounts held in the <u>name of</u>, <u>owned by</u>, <u>or for the benefit of</u> . . . Nicholas Del Rosso, or Vital Management Services. (*See* D.E. 196-2, p. 7) (emphasis added). While it is true that the second sentence of Plaintiff's First Subpoena also identified GH

---

[1] While much of this background mirrors what Defendants set forth in their Memorandum of Law in Support of Motion to Quash and For Protective Order Regarding Plaintiff's Second Subpoena to First Citizens Bank & Trust Co. (*see* D.E. 197), it bears repeating in light of Plaintiff's creative efforts to distance the requests made in the Second Subpoena form those made in the First Subpoena.  The issue in the present motion is whether Plaintiff should be allowed to issue a subpoena seeking a subset of documents sought in a previous subpoena, whose production was stayed by court order.  Defendants' other instances of resisting what they believe are Plaintiff's improper discovery efforts are not at issue here. Furthermore, Defendants note that each of those motions speak for themselves and they stand on them accordingly. (*See, e.g.*, D.E. 122, 142, 154).

3

Holdings LLC and Mr. Del Rosso's wife as falling under this subpoena's umbrella, it in no way limited itself solely to accounts or records of the named non-parties. In fact, contrary to the arguments in Plaintiff's response, the plain language of the First Subpoena explicitly states that it was *not* intended to be limited to just those non-parties, providing: "[t]his request includes transfers to and from those accounts, including but not limited to transactions between GH Holdings LLC and Vital Management Services, Inc. . . . ." *Id.* (emphasis added).

With regard to the First Subpoena, Defendants filed an Emergency Motion to Quash and for Protective Order on January 22, 2023, seeking to have the Court quash or modify the First Subpoena (or enter a protective order commanding the same). (D.E. 122). Defendants' Motion was largely premised on the Court's December 10, 2021, Memorandum and Opinion Order (the "12(b)(6) Order"), dismissing nine of Plaintiff's eleven claims with prejudice and otherwise limiting the scope of Plaintiff's two surviving claims to the "2018-2019 conduct—the only allegations that are not time barred." (*See* D.E. 65, pp. 23-24; *see also* D.E. 80, p. 4).

The next day, January 23, 2023, the Court issued a text order staying *all* production pursuant to the First Subpoena until Defendants' underlying motion could be decided. (Jan. 23, 2023, Text Order). Notably, the Order in no way limited or carved out portions of the First Subpoena; it stayed *all*

4

production. *Id.* First Citizens complied with the Order, and stayed all production.

After the Court's Order, Plaintiff spent the following month issuing a large number of subpoenas to third parties seeking the same type of information that Plaintiff knew that Defendants would object, and many of which Defendants and third parties were indeed forced to resist on various grounds. (*See, e.g.*, D.E. 136; D.E. 150; D.E. 154). Considering its growing docket, the Court held a hearing on March 7, 2023, taking all then-pending discovery motions under consideration, including Defendants' Emergency Motion to Quash and for Protective Order regarding the First Subpoena. (D.E. 122). To date, the Court has not issued a ruling regarding the pending motions which were heard at the March 7, 2023 hearing. Therefore, and as Plaintiff recognizes, the stay of production from First Citizens remains in effect.

The production stay notwithstanding, Plaintiff notified Defendants of his intent to serve a second subpoena on First Citizens. The request itself sought, in part: "[a]ll Documents and Communications from 2021 to present <u>relating to accounts</u> held in the name of, owned by, or for the benefit of Nicholas Del Rosso or Vital Management Services, Inc." (*See* D.E. 196-1, p. 12) (emphasis added). This, very clearly, is a request for a subset of the records previously requested by First Subpoena, and production pursuant to the First Subpoena remains stayed.

5

On March 24, 2023, Defendants notified Plaintiff via email of their opposition to this duplicative request and reminded him of the binding Court Order staying production under the entire First Subpoena. Defendants then asked that, at an absolute minimum, Plaintiff retract the Second Subpoena in recognition of the Court's pending ruling on relevant discovery matters. Plaintiff never responded to these requests. Thus, Defendants were forced to bring the present Motion.

Judicial relief is also necessary because Plaintiff continues to seek documents responsive to the Second Subpoena. On April 19, 2023, counsel for Plaintiff emailed First Citizens without copying counsel for Defendants, contending that First Citizens must produce responsive documents and that they are "really only ask[ing] for standard account records that should be readily obtainable." (*See* D.E. 205-18). Kristen Caldero from First Citizens responded, copying counsel for Defendants, noting that "it appears that the courts have not ruled on the Motion to Quash for the 2nd Subpoena[.]" (*Id.*) Expedited interim relief, in lieu of an order staying production sought via the Second Subpoena, should be allowed in light of Plaintiff's efforts to continue seeking production of documents under the Second Subpoena.

# ARGUMENT

## A. The Second Subpoena Is An Obvious Attempt To Bypass This Court's Stay Order.

The plain language of the subpoenas, alongside this Court's unambiguous text order staying all production, precludes production under the Second Subpoena. Plaintiff's claims to the contrary are unconvincing.

Courts regularly find that the plain language of a subpoena controls its interpretation. *See Martin v. Posey*, No. 2:15-CV-2294, 2017 WL 412876, at *7 (S.D. Ohio Jan. 31, 2017) (denying a request because "the plain language of [the] subpoena requests" sought information not available under Rule 45); *Lenox Maclaren Surgical Corp. v. Medtronic, Inc.,* No. 1:10-CV-01239-RPM, 2012 WL 5288788, at *2 (W.D. Tenn. Oct. 24, 2012) (interpreting a subpoena request based upon its plain language). Courts also routinely rebuke attempts to circumvent ongoing court orders, including stays in production or discovery. *See Mortg. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 566-68 (W.D.N.C. 2002) (quashing a subpoena issued after a court-ordered discovery deadline as an attempt to circumvent said order); *Flynn v. Mfrs. & Trades Tr. Co.*, No. 17-CV-04806-WB, 2021 WL 8362649, at *7 (E.D. Pa. Sept. 15, 2021) (finding defendant was well within its rights to move to quash plaintiffs' attempts to serve subpoenas issued in violation of a court order forbidding the discovery sought).

7

Plaintiff offers no support for his contention that he somehow has the unilateral ability to read in between the lines of the Court's Order and find limitations. Curiously, Plaintiff now challenges the language *he* chose to use in the First Subpoena; language which, on its face, clearly encompasses the information now sought in the Second Subpoena. (*Compare* D.E. 196-2 *with* D.E. 196-1).

When confronted with the duplicative nature of the two subpoenas, Plaintiff's response tries to shift the focus away from what the subpoenas say to what the parties purportedly "understood" about the scope of the First Subpoena. Not only is this argument misplaced, but it is contrary to the language Plaintiff himself chose to use. (*See* D.E. 196-2, p. 7 (stating that the request included "but was not limited to" documents relating to the named third parties)). That the request of the Second Subpoena seeks a subset of what was sought in the first subpoena only further proves the overlapping and duplicative nature of Plaintiff's requests. *See Zahau v. Shacknai*, 2016 WL 4427434, at *2 (S.D. Cal. Feb. 23, 2016) (dismissing as duplicative a subpoena that had an "overlapping effect" with one already issued).

Plaintiff's argument that he somehow was unaware of Defendants' account with First Citizens when issuing the First Subpoena does not undo the language used in the First Subpoena and, in any event, is defeated by the fact that (1) Plaintiff issued the First Subpoena, which clearly encompasses the

8

information sought in the Second Subpoena, and (2) Mr. Del Rosso has testified that he did not bank with First Citizens until late 2021 (some two years after the operative claims in this matter allegedly arose). *See* **Exhibit A** (Del Rosso Deposition Transcript Vol. I 200:9-201:21).

If the Court had intended to limit or otherwise premise its order on just production related to any of the named third parties, it could have. Instead, the Court issued a blanket stay of all production pursuant to the First Subpoena. (*See* Jan. 23, 2023, Text Order). Plaintiff cannot now conveniently and retroactively limit the scope of its First Subpoena in an attempt to shoehorn in a second subpoena seeking a subset of facially the same information.

Accordingly, Plaintiff's Second Subpoena seeks documents subject to the Court's stay order, and the discovery sought therein should not be had.

### B. Defendants Have Standing To Challenge The Second Subpoena, And The Court Has The Power To Command The Same.

"[A] defendant has standing to challenge subpoenas under Rule 26, regardless of whether [it has] standing to bring a motion to quash under Rule 45." *Beach Mart, Inc. v. L&L Wings, Inc.*, 2015 WL 13718077, at *1 (E.D.N.C. May 5, 2015). Here, Defendants have standing under both Federal Rules of Civil Procedure 45 and 26 to request the quashing of the Second Subpoena as overbroad, unduly burdensome, and in possible violation of privilege. *See, e.g.,*

*Elsayed v. Fam. Fare LLC*, 2019 WL 8586708, at *4 (M.D.N.C. Oct. 31, 2019) (stating "[courts] have . . . recognized that production of bank records can create a high potential to disclose a whole host of irrelevant and confidential business information."). As Defendants have done in all their other instances of being forced to resist Plaintiff's improper discovery attempts, Defendants maintain that they have standing based upon the cases cited therein.

Furthermore, it is well established that parties to a case have standing and an ongoing interest in enforcing court orders, especially orders such as discovery stays granting relief for a non-party. *See* Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for the party."); *Mortg. Payment Prot., Inc. v. Cynosure Fin., Inc.*, No. 6:08-cv-1212-Orl-22GJK, 2010 U.S. Dist. LEXIS 149606, at *10 (M.D. Fla. Nov. 5, 2010) (collecting cases) (noting that a party "has standing to move to enforce the court's orders and rules."). Because of Plaintiff's bald-faced attempts to circumvent this Court's Order staying production pursuant to the First Subpoena, Defendants clearly have an interest and standing in enforcing the Order.

Lastly, it bears repeating that "[o]n a motion or on its own, the court *must* limit the frequency or extent of discovery" where it is "unreasonably . . . duplicative[.]" Fed. R. Civ. P. 26(b)(2)(C)(1).

## C. The Second Subpoena Is Facially Overbroad In That It Seeks Information Not Proportionate To The Needs Of The Case.

While Defendants note that the Second Subpoena can and should be quashed on the grounds that it is in clear violation of the Court's Stay Order, the Second Subpoena would be subject to quashing or other protection even if no such order were ever issued. Setting aside the clear overlap with the First Subpoena, the Second Subpoena fails to limit itself to the operative dates or claims remaining in this matter.

Courts readily quash subpoenas which lack such limitations. *See Nallapaty v. Nallapati*, 2022 WL 1508885, at *5-6 (E.D.N.C. May 12, 2022); *Jiangmen Kinwai Furniture Decoration Co. v. IHFC Props., LLC*, 2015 WL 5098791, at *6 (M.D.N.C. Aug. 31, 2015); *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 2014 WL 6686727, at *4 (M.D.N.C. Nov. 26, 2014). Courts may also prevent discovery where it is used as vehicle for discovery in separate litigation, much like Plaintiff is presumably attempting to do here. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 364 n.17 (1978).

Plaintiff's failure to tailor the documents sought by the Second Subpoena to his remaining claims further reveals the Second Subpoena's flaws. Protective orders are regularly granted when a subpoena requests information "too distant in time to the events giving rise to [p]laintiff's claims." *G.H. v.*

*Marstiller*, 2020 WL 13228155, at *3 (N.D. Fla. Mar. 24, 2020). In his response, Plaintiff notably fails to identify how these vast swaths of information "from 2021 to present"—after this lawsuit was filed—is relevant and proportional to the "2018-2019 conduct" at issue in this matter. (*See* D.E. 65, pp. 23-24; D.E. 80, p. 4). Plaintiff instead argues that this information is somehow relevant to the alleged conspiracy "to hack, steal, and publish" his data (D.E. 201, at pp.11–12), and ignores the fact that this conduct allegedly occurred well before 2021, much less that this Court already dismissed his hacking claims and limited the scope of this case to the allegations that Defendants conspired with CyberRoot to republish Azima's data in 2018 and 2019. (*See* D.E. 65, at pp.17–18, 23–25).

In furtherance of his arguments, Plaintiff again cites to an incomplete part of the magistrate judge's Order and Recommendation as a basis for the overbreadth of the Second Subpoena. (D.E. 201, p. 11 (citing D.E. 54)). The *full* cited sentence, referring to a similar request for Defendants' bank records, is as follows: "[s]uch documents may have some bearing on Plaintiff's civil conspiracy claims (for which the undersigned has not recommended dismissal) insofar as Plaintiff has alleged a conspiracy between Defendants and Dechert LLP." (D.E. 54, p. 38) (emphasis added). In the District Court's subsequent 12(b)(6) Order, the Court found these allegations against Dechert LLP to be time-barred. (D.E. 65, pp. 23-24 ).

Accordingly, Plaintiff offers no new basis as to how or why the Second Subpoena is relevant or proportionate to the narrow needs of this case, and the Court should order that the discovery sought therein should not be had.

### D. Interim Relief, In The Form Of An Order Staying Production Until The Court Rules On This Motion, Is Warranted.

As discussed *supra*, production pursuant to the First Subpoena has been stayed pending a ruling on Defendants' motion objecting to that subpoena. Here, Defendants have similarly moved to quash and for a protective order regarding the Second Subpoena, noting, *inter alia*, that it is duplicative of the First Subpoena. Nevertheless, Plaintiff has communicated to First Citizens its belief that First Citizens is still obligated to produce the documents requested in the Second Subpoena. Accordingly, interim relief—staying production pursuant to the Second Subpoena until the Court rules on this Motion—is warranted.

### CONCLUSION

For the reasons discussed herein, Defendants respectfully request that the Court enter an Order quashing or modifying Plaintiff's Second Subpoena to First Citizens or otherwise enter a Protective Order commanding the same, and for an interim Order directing that any production by First Citizens pursuant to the Second Subpoena be stayed until the Court rules on this Motion.

Respectfully submitted, this the 24th day of April 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel Pencook, NCSB# 52339
Sam A. Rosenthal
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathon D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

15

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains fewer than 3,125 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 24th day of April, 2023.

          **NELSON MULLINS RILEY & SCARBOROUGH, LLP**

          By: */s/ Brandon S. Neuman*
          Brandon S. Neuman, NCSB# 33590
          Jeffrey M. Kelly, NCSB# 47269
          John E. Branch III, NCSB# 32598
          Nathaniel J. Pencook, NCSB# 52339
          Sam A. Rosenthal
          301 Hillsborough Street, Suite 1400
          Raleigh, North Carolina 27603
          Telephone: (919) 329-3800
          Facsimile: (919) 329-3799
          brandon.neuman@nelsonmullins.com
          jeff.kelly@nelsonmullins.com
          john.branch@nelsonmullins.com
          nate.pencook@nelsonmullins.com
          sam.rosenthal@nelsonmullins.com
          *Counsel for Defendants*