# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# Case No. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>　　Defendants. | **PLAINTIFF'S OPPOSITION TO THE MOTION OF CRAIG EVERS TO QUASH THIRD-PARTY SUBPOENAS** |

　　Unwilling to litigate the merits of Plaintiff's claims, Defendants have gone to great lengths to block all discovery in this matter. Defendants have not produced a single custodial document related to Plaintiff's claims or even their own affirmative defenses. Defendants have attempted to block production from nearly all subpoena recipients, either through obvious coordination with the third parties or by moving to quash subpoenas issued to third parties. The latest antics from Del Rosso confederate Craig Thomas Evers is more of the same.

　　Evers—who is represented by Del Rosso's counsel Kieran Shanahan—admits he worked for Defendants as a private investigator and claims he destroyed all documents relevant to this matter. Yet he refuses to sit for a deposition. Evers filed a frivolous motion to quash and then used the filing of that motion (which was not granted by this Court) as a pretext for not showing

1

up for the deposition – even after Plaintiff agreed to move the deposition to accommodate Evers's schedule and after counsel for Plaintiff traveled to Charlotte for the deposition.  Instead of showing up for his deposition, Evers filed a self-serving declaration that is contradicted by the evidence, including Del Rosso's own testimony and Evers's own LinkedIn profile.

The Court should order Evers to produce all relevant documents and sit for a deposition so that Plaintiff may probe his work for Defendants, his actions related to obtaining Plaintiff Azima's stolen data, his widespread document destruction, and his false affidavit.  Plaintiff Azima also intends to move separately for sanctions and to disqualify Mr. Shanahan for his role in preventing Evers's deposition, which raises questions about whether Shanahan's advice to Evers served Evers's interests, Del Rosso's interests, or Shanahan's own interests.

## FACTUAL BACKGROUND

Defendants' obstruction has been the subject of numerous motions in this matter, but it bears summarizing here.  Defendants' delay started immediately after the Court denied their motion to dismiss in December 2021 (ECF No. 65). Defendants immediately filed not one, but two additional motions to dismiss— one fresh motion to dismiss (ECF No. 67) and one motion for reconsideration (ECF No. 74)—resulting in an additional 10-month delay.  In March 2022, the Court denied Defendants' motion for reconsideration, warned Defendants that

"Federal Rule of Civil Procedure 11(b)(1) requires that every court filing must not be intended to 'cause unnecessary delay,'" and noted that the "propriety" of Defendants' motion for reconsideration was "questionable." ECF No. 79 at 12. Then in September 2022, the Court denied the second motion to dismiss. ECF No. 80. And yet, Defendants and their allies continue to bury this court in motion after motion, seeking only to delay and to avoid the Court adjudicating the merits of Plaintiff's claims.

At the Rule 26(f) conference, Plaintiff put Defendants on notice that he intended to seek discovery for the remaining claims in this action, which included not only a claim for misappropriation of trade secrets but also a conspiracy claim dating back to 2014. ECF No. 91 at 3. Defendants had an opportunity to object and argue about the appropriate scope of discovery at the Rule 16 conference, but they failed to make any objection or argument. Despite failing to argue about scope at that time, Defendants have since engaged in needless motions practice on nearly every subpoena, discovery request served, and deposition noticed by Plaintiff. These actions have wasted valuable judicial resources and significantly delayed the discovery process. Each of the subpoena recipients that is an interested third-party or potential co-conspirator has refused to produce a single document – and many have admitted to widespread document destruction. For independent third parties such as banks who would not take their cue from Defendants, Defendants have

typically filed motions to quash the subpoenas themselves, even in instances where they don't have standing to challenge the subpoenas.[1] The result has been near universal stonewalling of discovery well over halfway through the discovery period.

In part because Plaintiff has been unable to get a single document from Defendants, Plaintiff issued a number of third-party subpoenas for documents and deposition testimony. And still, Defendants have obstructed those subpoenas. Defendants and their affiliates have filed seven motions to quash subpoenas,[2] and have used their mere filing of the motions to quash as pretext

---

[1] One of the few subpoenas that Defendants did not move to quash was a subpoena for bank records from Defendants' bank, PNC. The documents produced in response to that subpoena demonstrate that Defendants – a single individual and the company owned and operated solely by him – were paid a staggering $35 million by the government of Ras Al Khaimah and related entities. Those records also demonstrate that Evers's lawyer, Shanahan, was paid $7 million by Defendants in irregular payments that do not appear to relate to ordinary legal services (often multiple payments in consecutive days, some in round-dollar figures). Shanahan has moved to quash a subpoena for his records but has not explained why he received such irregular payments.

[2] Defendants have moved to quash subpoenas to First National Bank and First Citizens Bank for bank records related to Shanahan Law Group and GH Holding, ECF No. 122; American Express, ECF No. 154; and First Citizens Bank regarding their own bank records, ECF No. 196. In addition, Dechert LLP moved to quash a subpoena for a Rule 30(b)(6) deposition, ECF No. 136; Shanahan Law Group moved to quash a subpoena for bank records, ECF No. 133; Christopher Swecker Enterprises moved to quash a subpoena for documents, ECF No. 150; and now Craig Evers has moved to quash subpoenas for documents and testimony, ECF No. 198.

4

to produce no documents and refuse to sit for depositions until after the Court rules. Craig Evers is using the same playbook. He has produced nothing except a self-serving affidavit and refused to attend a properly noticed deposition (on a date that he agreed to).

This is not how discovery is meant to work. At the start of discovery (after the Court dismissed some of Plaintiff's claims), Defendants agreed that this case should proceed on a "complex" case management track, which allows the parties to notice up to seven depositions without leave of the court. ECF No. 93 at 2. Yet every time Plaintiff notices a deposition, Defendants and their co-conspirators seek to prevent it from proceeding or significantly delay the deposition. This case is four months into the seven-month discovery period and Defendants have successfully prevented almost all discovery in this matter.

With regard to Evers, the evidence shows that he is directly relevant to the publication of Plaintiff's stolen data. Plaintiff believes and has evidence to show that Evers worked for Del Rosso to communicate with hackers who were ordered by Del Rosso to obtain Azima's stolen data. Evers was essentially a middleman, and he was directly responsible for obtaining portions of the stolen data that Defendants are alleged to have published in 2018 and 2019.

Evers submits with his motion a self-serving declaration that confirms he was working as an "investigator" for Defendants around the same time

5

Plaintiffs allege Defendants were working with hackers to obtain Plaintiff's stolen data (though Defendant Vital is not a registered investigator). ECF No. 199. But in his declaration, Evers stated that he has destroyed all his documents and did not work as a private investigator for Del Rosso since "very early in 2014," *id.* ¶ 11, claiming he is now providing janitorial services, *id.* ¶ 7. These statements are undermined by Del Rosso's own testimony and other evidence obtained by Plaintiff Azima. For example, Del Rosso testified at his deposition that Evers worked for him in 2015. Exh. 1. In addition, Evers's LinkedIn page lists him as the Director of Investigations of IBE Incorporated from July 2016 to present and says that "Mr. Evers has over 25 years in law enforcement and investigations, with the past 16 years specializing in IP investigations, Corporate Intelligence and Financial Fraud." Exh. 2 (Evers's LinkedIn Profile). Plaintiff should be question Evers about his involvement in hacking Plaintiff Azima in order to obtain portions of the data that were later published on the internet, as well as the apparent false statements made by Evers in his declaration and his document destruction.

Evers was personally served on March 24, 2023, with subpoenas for documents and testimony. The documents were to be produced by April 7, 2023, and the deposition was noticed for April 12, 2023. ECF No. 199-1, 199-2. On March 29, 2023, Shanahan presented as Evers's lawyer and agreed that he would "work together" with Plaintiff's counsel on a deposition date that worked

6

with his schedule. Exh. 3 at 4. Plaintiff moved the deposition to April 18, 2023, to accommodate Shanahan's schedule and arranged for a court reporter and videographer. ECF No. 199-3. On April 11, Shanahan filed this motion to quash. ECF No. 198. He emailed Plaintiff's counsel to say that he did not "intend" to have his client testify but did not commit not to show up. Exh. 3 at 1. Plaintiff's counsel informed Shanahan that failing to attend a properly noticed deposition on the agreed upon date was unacceptable and made clear that they intended to depose Evers in Charlotte on April 18 as previously agreed. *Id*. Shanahan did not respond until the eve of the deposition.

Following Plaintiff's counsel's correspondence with Shanahan making it clear the deposition would go forward, Defendants' current counsel said they intended to move to stay discovery. Exh. 7. Counsel held a meet-and-confer on April 17 to understand the scope of Defendants' proposal, and during that meet-and-confer, Plaintiff's counsel made it clear that they intended to depose Evers and were already in Charlotte for the deposition. One hour later, Shanahan emailed Plaintiff's counsel, saying that Evers would not "post" for the deposition, a seemingly deliberately attempt to be vague about whether Evers would attend the deposition the next day. Exh. 4. Counsel told Shanahan that was unacceptable and counsel for Plaintiff intended to proceed as discussed the previous week unless the Court ruled on the motion to quash.

2822316.3

*Id*. Evers and Shanahan did not attend the deposition, and no one from Defendants' sizeable legal team attended in person.

Following Evers' failure to appear, Plaintiff's counsel sent Shanahan a letter regarding his improper conduct and informed him that they would make a cross motion for sanctions and disqualification. Exh. 5. Shanahan requested additional time to "investigate" the matter. Exh. 6. Accordingly, this response does not at this time include a cross-motion for sanctions and disqualification.

## ARGUMENT

Under Federal Rule of Civil Procedure 45(d)(3)(A), a court is only directed to quash a subpoena under limited circumstances, such as where a subpoena "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." "District courts are afforded broad discretion with respect to discovery generally, and motions to quash subpoenas specifically." *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012).[3] Under Federal Rule of Civil Procedure 26, counsel bears "an affirmative obligation to engage in pretrial discovery in a *responsible* manner that is *consistent with the spirit and purposes of Rules 26 through 37.*" *Kinetic*

---

[3] Fed. R. Civ. P. 45(d)(3)(B) also permits a court to quash a subpoena in other situations not relevant here.

*Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 242 (M.D.N.C. 2010). "[T]he spirit of the [R]ules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . ." Fed. R. Civ. P. 26, advisory committee's notes to 1983 Amendment.

Evers's only argument is that the subpoenas for documents and a deposition subject him to undue burden. ECF No. 200 at 6.[4] That argument is misplaced. Evers's argument is largely a rehash of Defendants' argument that the proper scope of discovery in this matter should be so vanishingly and artificially small that no relevant party has any discoverable documents. This argument is improper for many reasons already extensively briefed. *See, e.g.*, ECF Nos. 125, 130, 144.

The bottom line is that Evers has information directly related to the publication of Plaintiff's stolen data and there is no valid basis for allowing him to keep that information hidden. Evers admits that he worked as a private investigator for Del Rosso. Plaintiff has evidence that Evers worked for Del

---

[4] Evers could not claim that the time to respond was insufficient since his request to extend the dates for document production and the deposition were both extended at Evers's request. Nor could he argue that the subpoena required him to comply outside the jurisdiction because Plaintiff's counsel actually flew to Evers's home city of Charlotte to take the deposition (for which Evers and his counsel failed to appear). Additionally, Evers could not argue that the subpoenas call for privileged information, both because he does not say that his relationship with Del Rosso was privileged, but also because the subpoenas' requests exclude privileged information.

9

Rosso to communicate with hackers whom Del Rosso directed to obtain Azima's stolen data. That stolen data was then published in 2018 and 2019 as alleged in the Complaint. ECF No. 1 ¶¶ 19-24. Evidence regarding how Defendants obtained the data that they published in 2018 is relevant not only to the remaining conspiracy claim, but also to the motive, opportunity, plan, and intent for the publication Plaintiffs' trade secrets in 2018 and 2019.[5]

Evers argues that the subpoenas pose a significant financial burden on Evers, but he doesn't explain why that is the case beyond the frivolous scope arguments previously discussed. Evers has claimed that he has no documents to review at all (though he hasn't explained what devices, email accounts, and messaging applications he searched), so claiming undue burden with regard to the document subpoena is facially invalid. Regarding the deposition, Plaintiff noticed the deposition for Charlotte, where Evers lives, and traveled to Charlotte to take the deposition. Plaintiff also provided a link so that Evers's counsel could attend remotely. Evers argues that he has no relevant information, but admits that he worked for Del Rosso and that he destroyed all his documents relevant to this matter. Plaintiff should be permitted to

---

[5] This deposition is not a fishing expedition. Plaintiffs have evidence showing Evers's involvement in the hacking of Plaintiff Azima, which led directly to the posting of his trade secrets in 2018 and 2019. Plaintiff would be willing to share this information with the Court *in camera* if necessary, but Evers should not be permitted to use this motion to get a roadmap of the evidence against him prior to the deposition.

10

depose Evers on those issues, as well as his self-serving declaration that is contradicted by other evidence.

Evers also argues that Azima has not shown that he can obtain the information sought from other sources, such as Defendants. This argument is particularly ironic, since Evers, his counsel, and this Court know very well that Defendants have not produced a single custodial document in nearly five months of discovery. Each of the witnesses with relevant information are taking the same approach: saying they won't produce information to Plaintiff until Plaintiff gets it from someone else. The result has been a coordinated, across-the-board obstruction from everyone associated with Defendants. The Court should order Evers to produce documents and sit for a deposition.

This, the 25th day of April, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
Christopher W. Jones
North Carolina State Bar No. 27265
Jonathon Townsend
North Carolina State Bar No. 51751
555 Fayetteville Street, Suite 1100
Raleigh, N.C. 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email: ripley.rand@wbd-us.com
chris.jones@wbd-us.com
jonathon.townsend@wbd-us.com

-and-

11

2822316.3

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren E. Briggerman (*pro hac vice*)
Joseph Rillotta (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email:  kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
jrillotta@milchev.com
iherbert@milchev.com
clee@milchev.com
cmarden@milchev.com

*Counsel for Plaintiff*

# CERTIFICATE OF WORD COUNT

The undersigned certifies compliance with Local Rule 7.3(d) regarding length limitations. This Response brief contains fewer than 6,250 words. The undersigned has relied on the word count feature of Microsoft Word 365 in making this certification.

*/s/ Ripley Rand*
Ripley Rand
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **CERTIFICATE OF SERVICE** |

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

Brandon S. Neuman, Esq.
John Branch, III, Esq.
Jeffrey M. Kelly, Esq.
Nathaniel J. Pencook, Esq.
NELSON MULLINS RILEY & SCARBOROUGH, LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
john.branch@nelsonmullins.com
Tel.: 919.329.3800
Fax.: 919.329.3799

2822316.3

Samuel Rosenthal, Esq.
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Tel.: 202-689-2951
Fax: 202-689-2860
sam.rosenthal@nelsonmullins.com

*Counsel for Defendants*

Kieran Shanahan, Esq.
Shanahan Law Group
128 East Hargett Street, Suite 300
Raleigh, NC 27601
Tel.: 919-264-7515
Email: kieran@shanahanlawgroup.com

*Counsel for Shanahan Law Group and Craig T. Evers*

This, the 25th day of April, 2023.

                              **WOMBLE BOND DICKINSON (US) LLP**

                              /s/ *Ripley Rand*
                              Ripley Rand
                              North Carolina State Bar No. 22275
                              555 Fayetteville Street, Suite 1100
                              Raleigh, NC 27601
                              Telephone: (919) 755-8125
                              Facsimile: (919) 755-6752
                              Email: ripley.rand@wbd-us.com

                              *Counsel for Plaintiff*