## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CASE NO. 1:20-cv-00954-WO-JLW

FARHAD AZIMA,

        Plaintiff,

   v.

NICHOLAS DEL ROSSO and
VITAL MANAGEMENT SERVICES,
INC.,

        Defendants.

**DEFENDANT VITAL MANAGEMENT SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

## ***Pre-Deposition Interim Relief Requested***

NOW COMES Defendant Vital Management Services, Inc.'s ("VMS"), and pursuant to Rule 26 of the Federal Rules of Civil Procedure ("Rule(s)"), hereby submits the following memorandum of law in support of its Motion for Protective Order ("Motion"), seeking a Protective Order forbidding or limiting inquiry into certain matters during VMS's upcoming Rule 30(b)(6) deposition, and an interim order staying VMS's deposition until the Court's decision on this Motion.

## INTRODUCTION

The disputes giving rise to this Motion are set out in detail in Defendants VMS and Nicholas Del Rosso's (collectively, the "Defendants") prior-filed

discovery motions. (*See, e.g.*, D.E. 206, pp.4–12). VMS recites herein background information necessary for the Court's resolution of this Motion.

Plaintiff Farhad Azima ("Plaintiff") initially brought eleven claims against Defendants, containing sprawling allegations of a purported global conspiracy between Defendants and others to hack Plaintiff's data and publish it online, all on behalf of a foreign government, Ras al Khaimah ("RAK"), and its related entities. (*See e.g.,* D.E. 1, ¶¶1–2).

However, on December 10, 2021, in its Memorandum Opinion and Order on Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (the "12(b)(6) Order"), the Court dismissed nine of Plaintiff's eleven claims as time-barred, and only allowed his North Carolina misappropriation of trade secrets claim and contingent North Carolina civil conspiracy claim to proceed (Counts VIII and X), limited to the "2018-2019 conduct—the only allegations that are not time-barred." (D.E. 65, pp.23–25) (hereinafter, the "Remaining Claims").

Thus, Plaintiff's once sprawling Complaint was limited to the legal claims arising out of allegations that Defendants conspired with CyberRoot Risk Advisory Private Ltd. ("CyberRoot") to republish Plaintiff's data in 2018 and 2019 using WeTransfer. (*See id.* at 17–18 (citing to Complaint, D.E. 1, ¶¶16, 19, 22, 24–26)). Indeed, the Court reiterated this narrowed scope in its Memorandum Opinion and Order on Defendants' Motion to Dismiss pursuant to Rule 12(b)(1), stating that only "two of Plaintiff's claims were allowed to

proceed: a North Carolina misappropriation of trade secrets claim arising from the 2018-2019 online posting of new links to Plaintiff's confidential business data (Count VIII) and a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim (Count X)."  (D.E. 80, p.4).

Despite such, Plaintiff commenced discovery into matters irrelevant and disproportionate to his Remaining Claims, in addition to seeking information protected by the attorney-client privilege and/or work-product doctrine.  This has resulted in numerous discovery disputes, nine of which were heard by the Court at a March 7, 2023 hearing, (*see* D.E. 122, 130, 133, 136, 142, 144, 150, 154, 188), and three filed as a result of Plaintiff's continued expansive discovery after the March 7, 2023 hearing, (*see* D.E. 196, 198, 205). (Collectively, the "Discovery Motions").

Now, Plaintiff intends to inquire into an improper range of topics during the Rule 30(b)(6) deposition of VMS, scheduled for May 17, 2023, which (a) are neither relevant nor proportionate to the needs of the case, (b) seek testimony about matters protected by the attorney-client privilege and/or work-product doctrine, and (c) improperly seek testimony for purposes of his litigation elsewhere, including *Azima et al. v. Dechert LLP, et al.*, No. 22-cv-08728 (S.D.N.Y. filed Oct. 13, 2022) (the "S.D.N.Y. Action") and *RAK Inv. Auth. v. Azima*, Case No. HC-2016-002798 (the "U.K. Proceeding").

## STATEMENT OF FACTS

On December 22, 2022, Plaintiff served his Rule 30(b)(6) deposition notice on VMS (the "30(b)(6) Notice"), setting the deposition for January 27, 2023, and listing certain topics of inquiry (the "Topics"). *See* **Ex. A**.[1] On January 13, 2023, Defendants served formal objections to the Topics, primarily on the grounds of scope and privilege/attorney work-product noted above. *See* **Ex. B**.

On January 18, 2023, by way of an amended Rule 30(b)(6) deposition notice, the date set for VMS's 30(b)(6) deposition was changed to May 17, 2023. *See* **Ex. C**. On April 5, 2023, Defendants served substantially the same formal objections to Plaintiff's January 18, 2023 amended notice, with an additional request that the deposition be postponed until after a ruling on the several pending discovery motions. *See* **Ex. D**.

Further, notwithstanding the numerous Discovery Motions that are currently *sub judice*, on April 5, 2023, via letter, Plaintiff refuted Defendants' formal objections, and set forth "Specific Issues Encompassed Within the Noticed Vital Rule 30(b)(6) Deposition Topics," (the "April 5 Letter"), consisting of three pages of "specific matters" which Plaintiff contends Mr. Del Rosso (the

---

[1] Ex. A and all other exhibits cited herein are attached to the accompanying Motion.

4

only viable Rule 30(b)(6) witness for VMS) must be prepared to testify. *See* **Ex. E**.

On April 7, 2023, Defendants responded to Plaintiff's assertions in his April 5 Letter, and objected to the seemingly additional topics set forth in the April 5 Letter. *See* **Ex. F**. Without waiving their objection to scope, Defendants also further noted the impossibility of preparing any individual to testify regarding the amount of information covered in Plaintiff's topics—including, but not limited to, 48 identified entities and individuals, 15 identified projects, and "any litigation involving Plaintiff Azima,"—and asked Plaintiff to identify which projects, entities, and individuals Plaintiff intended to focus on in order to prepare Del Rosso. *See id*. at 3. Defendants also asked Plaintiff to be more specific in time periods for each Topic. *Id*. Plaintiff replied on April 11, 2023, noting he would not respond to any of Defendants' objections or requests in Defendants' April 7, 2023 Letter. *See* **Ex. G**.

## LEGAL STANDARD

Pursuant to Rule 26(c), upon a showing of good cause, a court may issue a protective order "forbidding the disclosure or discovery," "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery into certain matters" in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

5

Additionally, Rule 26(b)(2)(C) provides that "the court must limit the frequency or extent of discovery" if it determines that "the discovery sought is unreasonably cumulative or duplicative" or is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). Rule 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Determination of good cause requires a court to balance the need for the information versus the harm in producing it. *See, e.g., UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) ("In order to obtain a protective order prohibiting a deposition, the proponent must convince the Court that the information sought by the deposition lacks relevance to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information.")

6

## ARGUMENT

## I. THE TOPICS FOR INQUIRY AT VMS'S DEPOSITION SHOULD BE PROHIBITED AND/OR LIMITED.

A party taking a Rule 30(b)(6) deposition "must describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6), which must be limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense and proportional to the needs of the case," *Id*. at 26(b)(1).

Plaintiff's Rule 30(b)(6) Topics—addressed in turn below—should be prohibited and/or limited to topics (a) relevant to Plaintiff's Remaining Claims, and proportionate to the needs of the case, in light of the 12(b)(6) Order dismissing 9 of his 11 claims;[2] (b) not protected by any applicable privilege— namely, the attorney-client privilege and work-product protections applicable to Defendants' work with Dechert in furtherance of Dechert's representation of RAK and its related entities; and (c) intended for use in *this* action, as opposed to topics seeking information in furtherance of Plaintiff's several other actions pending in other jurisdictions, including the S.D.N.Y. Action and U.K. Proceeding.

---

[2] Courts regularly issue protective orders narrowing Rule 30(b)(6) topics which inquire into dismissed claims. *See, e.g., Luken v. Christensen Grp. Inc.*, No. C16-5214 RBL, 2018 WL 1994121, at *3 (W.D. Wash. Apr. 27, 2018); *Food Mkt. Merchandizing, Inc. v. California Milk Processor Bd.*, No. 2:15-CV-1083-TLN-CKD, 2022 WL 1811076, at *8 (E.D. Cal. June 2, 2022); *Ingila v. Dish Network Corp.*, No. 13-CV-00809-MSK-MJW, 2014 WL 1408083, at *3 (D. Colo. Apr. 11, 2014); *Braun v. Medtronic Sofamor Danek, Inc.*, No. 2:10-CV-1283, 2013 WL 1566692, at *5 (D. Utah Apr. 12, 2013).

## A. Topic 1

"All categories of documents requested in Plaintiff's First Request for Production . . . as well as documents produced by [Defendants] in response to Plaintiff's discovery requests."

Topic 1 seeks testimony regarding all documents merely "requested" by Plaintiff, never mind their existence, or the fact that the discoverability of these requested documents is presently before the Court. (*See* D.E. 142).[3] That aside, there is no way that VMS (*i.e.*, Del Rosso) could be expected to be prepared to testify about the breadth of documents "requested" in Plaintiff's first set of requests for production. For example, Plaintiff's first set of requests for production requests—over the course of nearly a decade—all documents and communications related to, *inter alia*, transactions with any person or entity "that performed any work for or provided any services to Defendants," (*See* D.E. 131-2, ¶1), despite the Court significantly narrowing this case to the allegations that Defendants conspired with CyberRoot to, via WeTransfer, republish Plaintiff's data in 2018 and 2019. (*See* D.E. 65, pp.17–18, 23–25).

Indeed, Plaintiff's April 5 Letter, purportedly sent to provide a "list . . . of more specific issues encompassed within the Topics that [Plaintiff] intend[s] to cover," tacitly acknowledges the overbreadth of the Topics. *See* **Ex. E**, p.2. However, the April 5 Letter fairs no better at identifying relevant and non-

---

[3] Defendants incorporate herein their arguments objecting to Plaintiff's first set of requests for production. *See* D.E. 142, 143, and 179.

8

privileged matters or identifying them with particularity such that VMS's preparation to testify is feasible. *See id.* pp.2–6. For example, the April 5 Letter states that Del Rosso should be prepared to testify—on behalf of VMS— about "[a]ll payment references included in records produced by PNC Bank"[4] and "[a]ll payments received by [VMS] from 2014 to present related directly or indirectly to Azima, Dechert, or RAK," as well as what "work was performed" or "what work or project it related to." *See id.* p.3.

Even if all this information were tangentially relevant to Plaintiff's Remaining Claims—which it is not (*see* D.E. 143, 179)—it is in no way proportionate to the needs of the case, and involves information which RAK, as the ultimate client of Dechert for whom VMS was performing this "work," has asserted all applicable privileges. (*See* D.E. 176, p.2, D.E. 162-1; *see also* D.E. 205-17 (*Al Sadeq v. Dechert LLP, et al.* [2023] EWHC 795 (KB) [130–131, 137–138, 185–186, 200]) (sustaining privilege and work-product protection objections by Dechert and rejecting arguments that any such privileges could be overcome by the crime fraud exception)).

Therefore, at the very least, Plaintiff should be required to narrow Topic 1, identifying relevant and non-privileged documents with particularity such that VMS's preparation to testify on these documents is feasible. While

---

[4] Plaintiff subpoenaed PNC Bank for all of Defendants bank records spanning back to 2014.

discovery afforded under the Rules is broad, Plaintiff should not be permitted to impose upon VMS the undue burden of preparing to testify on such a vast amount of information—with no clear indication as to how this information relates to his Remaining Claims, much less how it is proportional to the needs of the case. *See Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs.*, No. 1:13CV651, 2016 WL 4007605, at *2–5 (M.D.N.C. July 26, 2016) (finding Rule 30(b)(6) deponent did not have to be prepared to discuss irrelevant topics, or topics that were relevant but, considering proportionality, were otherwise "overbroad and unduly burdensome").

Further, Plaintiff should not be permitted to pursue this discovery here—where his claims have been explicitly limited to the alleged "2018-2019 conduct"—in an effort to seek information in support of his broader allegations in his litigation pending elsewhere. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 364 n.17 (1978) (noting "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied").

Accordingly, VMS requests Topic 1 be limited to testimony on documents relevant *and proportionate to* the "2018-2019 conduct—the only allegations that are not time-barred." (*See* D.E. 65, pp.23–24). Moreover, Defendants request that VMS not be required to testify on privileged matters or matters protected by the work product doctrine, specifically including Defendants' work

10

with Dechert in furtherance of Dechert's representation of RAK and its related entities.

## B. Topics 2, 3, and 6.

**Topic 2**: "All payments included in Defendants' bank records and related agreements, contracts, invoices, bills, requests for payment, or descriptions of work. In particular, the representative should be prepared to address all work performed by and all payments received from or sent to Dechert, Neil Gerrard, Jamie Buchanan, Buchanan Entities, Ras Al Khaimah Entities, Gravitas International FZE, CyberRoot, Aditya Jain, Jain Entities, Stuart Page, Stuart Page Entities, Amit Forlit, Forlit Entities, KARV Communications, Chris Swecker, Swecker Entities, Patrick Grayson, Grayson + Co., GH Holding LLC, Grayson Entities, Paul Robinson, Robinson Entities, Yuri Koshkin, Koshkin Entities, Nick McCullough, McCullough Entities, Jean Renaud Fayol, Fayol Entities, Northern Technologies Inc., Gary Lowe, Shanahan Law Group, PLLC (and all prior iterations of this entity), Nelson Mullins Riley & Scarborough LLP, or any other Person that performed any work for or provided any services to Defendants, or for whom Defendants provided, attempted to provide, or offered to provide work or services, related to Plaintiff, Plaintiff's Associates, or any business or personal enterprise involving or related to Plaintiff."

**Topic 3**: "Reports, memoranda, summaries, notes, or outlines related to Plaintiff, Plaintiff's Associates, or any personal or business enterprise involved or related to Plaintiff prepared for or by Del Rosso, VMS, or any of the individuals and entities identified in Topic No. 2, including but not limited to so-called "Project Updates," Project Beech reports, and action plans."

**Topic 6**: "Travel Records related to work performed by, at the direction of, or with the involvement of Del Rosso, VMS, or Defendants for or with the individuals and entities identified in Topic No. 2, including but not limited to travel to the Hotel Moosegg, Switzerland; Cyprus; and meetings at Dechert's offices in New York and London."

Topics 2, 3, and 6 seek testimony on essentially every facet of Defendants' business that may relate to an amorphous list of individuals and entities "that performed any work for or provided any services to Defendants" since 2014. Again, to the extent VMS has even interacted with any of the individuals and entities in these Topics, there is no way to prepare Del Rosso to face questioning on every aspect of VMS's business since 2014, and further, there is no justifiable reason for him to do so.

Indeed, these Topics are extraordinarily overbroad and not proportionate when compared to the issues remaining in this case—*i.e.*, whether Defendants conspired with CyberRoot to republish Plaintiff's data via WeTransfer in 2018 and 2019. (*See* D.E. 65, pp.17–18, 23–25). It is unclear how, for example, the travel records of Del Rosso with his counsel, or memoranda pertaining to Defendants' lawful fraud examination work, unrelated to Plaintiff, performed for Dechert/RAK would be at all relevant to Plaintiff's Remaining Claims.

Further, to the extent these Topics actually seek information regarding VMS's work with CyberRoot, Del Rosso has already been questioned regarding CyberRoot, both in this lawsuit and in the U.K. Proceeding, to which Del Rosso has explained that it was "confidential work . . . on behalf of RAK," which is privileged, *see* **Ex. H**, 125:25–126:9, and that this work "did not concern Mr. Azima" and "did not involve any instructions to hack anyone or disseminate material obtained through hacking." (*See* D.E. 132-1).

12

Moreover, this information, even if somehow tangentially related to Plaintiff, is not proportional to the needs of this case. The broad inquiries regarding the individuals and entities listed in Topic 2 is not surprising given most of them are named in Plaintiff's broader allegations in the S.D.N.Y. Action and U.K. Proceeding. Again, Plaintiff should not be permitted to use this lawsuit as a vehicle to conduct discovery in furtherance of his broader allegations in other jurisdictions. *See Oppenheimer Fund, Inc.*, 437 U.S. at 364 n.17.

Accordingly, Topics 2, 3, and 6 should be limited to individuals and entities allegedly involved in the Remaining Claims—and not individuals or entities that Plaintiff alleges are tied to his dismissed hacking claims, or his broader global conspiracy alleged in the S.D.N.Y. Action and U.K. Proceeding. Further, Topics 2, 3, and 6 should be limited to information relevant *and proportional to* his Remaining Claims. Lastly, VMS requests that VMS not be required to testify on privileged matters or matters protected by the work product doctrine, specifically including Defendants' work with Dechert in furtherance of Dechert's representation of RAK and its related entities.

## C. Topics 4 and 5

**Topic 4:** "Acquisition of, retention of, or use of any documents that belonged or belong to Plaintiff."

**Topic 5:** "Any attempt or effort (whether successful or unsuccessful) by Defendants or any Person to conceal the receipt, possession, transfer, or copying of any Document or Communication that belonged or belongs to Plaintiff including, but not limited to, any attempt by Defendants or any Person to destroy or delete any such Documents or Communications."

Aside from their presumptuous nature, Topics 4 and 5 essentially seek testimony regarding any action at any time by any person regarding any documents or communications belonging to Plaintiff. These two topics are vague and overbroad due to Plaintiff's failure to identify, define, or narrow (1) the individuals or entities to whom VMS should be prepared to testify about; (2) the documents or communications that VMS should be prepared to testify about;[5] and (3) the time frame that VMS should be prepared to testify about.

Moreover, these Topics are extraordinarily overbroad and not proportionate when compared to the issues remaining in this case—*i.e.*, whether Defendants conspired with CyberRoot to republish Plaintiff's data via WeTransfer in 2018 and 2019. (*See* D.E. 65, pp.17–18, 23–25). For example, in Topic 4, Plaintiff's use of the term "Acquisition" generally, without assigning

---

[5] Defendants assume the documents are limited to Defendants' production in this case, however, Plaintiff's failure to provide such limitation is concerning. Additionally, Defendants dispute Plaintiff's assertion of ownership over the documents Defendants produced, as the documents were available publicly on the internet, and Plaintiff has not proven ownership.

such conduct to a person or entity, would include inquiry into matters which VMS and Del Rosso have no knowledge. Similarly, in Topic 5, Plaintiff's use of the phrase "[a]ny attempt or effort . . . by . . . any Person" suffers from the same defect, appearing to include inquiry into matters which VMS and Del Rosso have no knowledge. Regardless, Del Rosso has already re-affirmed his prior sworn testimony in the U.K. Proceeding that he (1) "did not hack Mr. Azima's device, cause him to be hacked, [and does not] know who hacked him" and (2) "did not upload his data to the internet, cause his data to be uploaded, [and does not] know who uploaded his data." (D.E. 132-1, ¶7). Thus, Plaintiff should not be permitted to cause Del Rosso (on behalf of VMS) to speculate as to information he has already testified he has no knowledge on.

Additionally, Plaintiff's failure to limit the timeframe of these Topics shows Plaintiff is not only seeking testimony irrespective of whether VMS has knowledge of such, but also shows he is intentionally casting a wide net beyond the operative allegations—*i.e.*, the "2018-2019 conduct[.]" (*See* D.E. 65, pp.23–24). At the very least, these Topics fail to identify their subject matter with reasonable particularity, *see* Fed. R. Civ. P. 30(b)(6), and should be prohibited or limited on that basis. *See, e.g., Parrottino v. Bankers Life & Cas. Co.*, No. 12-cv-13084, 2014 WL 1516195, at *4-6 (E.D. Mich. Apr. 17, 2014) (finding certain deposition topics overly broad because they lacked any limit to relevant scope or time in the matter).

Lastly, Defendants have already set forth in their answer that "VMS assisted Dechert in engaging a suitable digital forensics firm, Northern Technology, Inc., to assist Dechert in retrieval of the data" from "two links on the internet[.]" (*See* D.E. 86, ¶15). Beyond the basic information provided in their Answer, VMS does not have the authority to disclose any further information regarding this work, as the ultimate client of that work—RAK and its related entities—have asserted all applicable privileges. (*See* D.E. 182-4).

Accordingly, VMS requests Topics 4 and 5 be limited to testimony regarding VMS's purported actions regarding matters relevant *and proportionate to* the "2018-2019 conduct—the only allegations that are not time-barred." (*See* D.E. 65, pp.23–24). Further, VMS requests VMS not be required to testify on privileged matters or matters protected by the work product doctrine, specifically including Defendants' and its subcontractors' work with Dechert in furtherance of Dechert's representation of RAK and its related entities.

### D. Topic 7

**Topic 7:** "Meetings with Amir Handjani during Plaintiff's trial in London in January and February 2020, including but not limited to Amir Handjani's meeting with Del Rosso at Del Rosso's son's flat."

Topic 7 seeks testimony irrelevant to this matter. Indeed, these alleged meetings occurred well after the alleged "2018-2019 conduct" supporting

Plaintiff's Remaining Claims. (*See* D.E. 65, pp.17–18, 23–24). Indeed, the focus of this Topic is on an individual central to his broader allegations in the S.D.N.Y. Action and U.K. Proceeding, and Plaintiff should not be permitted to use this lawsuit as a vehicle to conduct discovery in furtherance of his broader allegations in other jurisdictions. *See Oppenheimer Fund, Inc.*, 437 U.S. at 364 n.17.

Therefore, Plaintiff should be prohibited from seeking any testimony on Topic 7. *See Minter v. Wells Fargo Bank, N.A.*, Nos. WMN-07-3442, WMN-08-1642, 2012 WL 13001301, at *3 (D. Md. Mar. 9, 2012) (granting motion for protective order under Rule 26(b) and (c) to limit scope of deposition to prohibit inquiry into matters not relevant to any claim).

### E. Topics 8 and 10

**Topic 8:** "The allegations in Defendants' Answer and Affirmative Defenses."

**Topic 10:** "The contents of Defendants' initial disclosures and any amended or supplemental disclosures."

While on their face not unreasonable topics, VMS is forced to request that, with respect to Topics 8 and 10, the Court prohibit Plaintiff from inquiring into matters protected by the attorney-client privilege and/or work-product doctrine—specifically including Defendants' (including its subcontractors') work for Dechert in furtherance of Dechert's representation of RAK and its related entities. First, despite Plaintiff's knowledge of

17

Defendants' position on privilege going into Del Rosso's individual deposition, Plaintiff inquired into such topics anyway. (*See* D.E. 179, pp.12–15). Second, as alluded to above, Defendants have revealed in their Answer how they came into possession of the data purportedly belonging to Plaintiff. (*See* D.E. 86, ¶15.) As to the details of that lawful subcontracted work—which Plaintiff forecasts inquiry in his April 5 Letter (*see* **Ex. E**, p.5), VMS does not have the authority to disclose this information because of RAK's assertion of all applicable privileges. (*See* D.E. 182-4).

Accordingly, since Plaintiff has forecasted that he will ask specific questions regarding "[t]he allegations in Defendants' Answer and Affirmative Defenses" and "[t]he contents of Defendants' initial disclosures and any amended or supplemental disclosures," and given Plaintiff's repeated disregard of asserted privilege/work-product protections in this matter, (*see, e.g.,* D.E. 122, pp.15-16, D.E. 143, pp.7-8, D.E. 179, pp.12-15), VMS requests, with respect to Topics 8 and 10, that VMS not be required to testify on privileged matters or matters protected by the work product doctrine—specifically including Defendants' and its subcontractors' work with Dechert in furtherance of Dechert's representation of RAK and its related entities.

## F. Topic 9

**Topic 9:** "Pleadings, witness statements, and correspondence related to any litigation involving Plaintiff Azima."

Topic 9 is overly broad because it attempts to shoehorn in inquiry into the significantly broader operative allegations in other litigation "involving" Plaintiff, regardless of whether VMS or Del Rosso are parties to that litigation. Indeed, the litigation brought by or "involving" Plaintiff is extensive, including: (1) the S.D.N.Y. Action; (2) the U.K. Proceeding; (3) *Azima v. Global Impact Services, Inc.*, No. 9:22-mc-81229-JEM (S.D. Fla.) (the "S.D. Fla. Action"); (4) *Azima v. RAK Inv. Auth.*, No. 16-cv-1948 (KBJ) (D.D.C.) (the "D.C. Action"); (5) *Solomon v. Dechert, LLP, et al.*, No. 1:22-cv-03137-JEB (D.C. Cir. 2022) (the "Solomon Action"); (6) *Stokoe Partnership Solicitors v. Grayson, et al.*, Claim No. QB-2020-002492 (High Court of Justice of England and Wales, Queen's Bench Division) (the "Stokoe Action"); (7) *In re: Application of Karam Salah Al Din Awni Al Sadeq and Stokoe Partnership Solicitors*, No. 1:21-mc-6 (M.D.N.C. 2021) (the "Al Sadeq Action"); and (8) *In re: Application of Cameron Findlay*, No. 1:23-mc-5 (M.D.N.C. 2023) (the "Findlay Action"). Thus, in seeking testimony regarding "any litigation involving Plaintiff Azima," this Topic clearly seeks testimony in furtherance of other matters, despite such testimony lacking any relevancy to Plaintiff's Remaining Claims.

19

Indeed, Plaintiff has also already shown that his intent is to seek testimony about matters that are not related to the Remaining Claims in *this* matter. For example, at Del Rosso's individual deposition, Plaintiff inquired into each individual defendants and "Non-Party Co-Conspirator" in the S.D.N.Y. Action, all of whom (aside from one entity) have not been alleged as responsible for the republication of Plaintiff's alleged trade secrets in 2018 or 2019. (*See* D.E. 179, p.5). Further, Plaintiff asked 180 questions regarding the theft of Del Rosso's devices, which is an issue in the Stokoe Action and not related to the present case. (*Id.* at 6). Plaintiff also deposed Del Rosso on witnesses and events in the U.K. Proceeding, which have no relationship to the claims remaining in this case. (*Id.* at 7). Moreover, Plaintiff appears to have already used information produced in this case for other matters, (*see* D.E. 182-1), which is a violation of the Court's Protective Order, (*see* D.E. 177).

Accordingly, Plaintiff should not be allowed to again depose Del Rosso (this time testifying on behalf of VMS) on information regarding the broader allegations in Plaintiff's litigation pending elsewhere, unrelated to his Remaining Claims. *See Oppenheimer Fund, Inc.*, 437 U.S. at 364 n.17; *see also Topline Sols., Inc., v. Sandler Sys., Inc.*, 2017 WL 1230817, at *4-6 (D. Md. Apr. 3, 2017) (denying objection to Magistrate Judge's Order limiting scope of individual 30(b)(6) depositions to enumerated issues in complaint, stating parties may not engage in "fishing expedition[s]" (internal quotation marks

and citation omitted); *S. Film Extruders, Inc., v. Coca-Cola Co.*, 11 F.R.D. 559, 562-63 (M.D.N.C. 1987) (granting motion for protective order to prohibit defendants from engaging "in a broad-ranging deposition" when defendants had advanced that deponents could only offer information relevant to two matters in a proxy statement that were inconsistent with plaintiff's claim, and therefore limiting scope of deposition inquiry to only the two inconsistencies as a matter of policy).

Thus, Topic 9 should be limited to the operative allegations supporting Plaintiff's Remaining Claims in *this* case, and Plaintiff should be prohibited from inquiring into the several other lawsuits "involving" Plaintiff.

### G. Topic 11

> **Topic 11:** "The scope of projects undertaken by VMS, including but not limited to 'Project Nariman,' 'Project Concorde,' 'Project Fallow,' 'Project N2,' 'Project San Remo,' 'Project Endeavor,' 'Wenger Project,' 'Project Eagle' or 'Site Surveys Eagle,' 'Project ORM' or 'Online Reputation Management,' 'Project Two,' 'Project N-Monaco,' 'India Project,' and 'Indonesia Project.' "

Topic 11 seeks testimony regarding projects not relevant to Plaintiff's Remaining Claims and not proportionate to the needs of this case. For example, Del Rosso has already been questioned at his individual deposition about most of these purported "projects," and has already testified that projects "Endeavor," "Concorde," and "ORM" are not related to Defendants' work for RAK, *see* **Ex. H**, 59:21–25; 60:2–3; 306:16–307:14.

The April 5 Letter goes even further, stating that VMS (*i.e.*, Del Rosso) should be prepared to testify about, *inter alia*, "[a]ll projects associated with work performed for Dechert between 2014 and 2019, including the name(s) of each project, the timeframe of the project, the lawyers involved, all subcontractors involved, the scope of the work performed for each project, names of any purported suspects or targets for each project, and any alleged victims associated with the project." **Ex. D**, p.2. Even if this expansive topic did contain some information tangentially relevant to Plaintiff, it is in no way proportionate to the needs of the case and places an undue burden on VMS to attempt to prepare for such broad inquiries.

Additionally, Topic 11 includes inquiry into projects performed for Dechert in furtherance of Dechert's representation of RAK, to which RAK has asserted all applicable privileges. (*See* D.E. 182-4). For example, this Topic (including those listed in the April 5 Letter) forecasts inquiry about "Project Nariman" and "Project BBQ," which Del Rosso was already extensively questioned about at his individual deposition and clearly explained as work performed for Dechert in furtherance of Dechert's representation of RAK. *See* **Ex. H**, 50:22–51:25; 140:1–9. Moreover, Del Rosso already testified that "Project BBQ" did not involve work related to Plaintiff. *See id.* at 140:1–9.

Finally, Defendants have already alerted Plaintiff in their February 15, 2023 Letter, (*see* D.E. 182-1), to their knowledge of Plaintiff's use of

information obtained from Defendants' confidential bank records produced in this case[6] in other matters. Indeed, the briefing in the S.D. Fla. Action confirmed Plaintiff is seeking information on and "the names of various projects [he] apparently believes are related to the U.K. Litigation." (*Id.* at 3 (quotation omitted)). And yet, "other than project 'Beech' or 'Beach,' Azima has not come forward with any evidence to demonstrate that is actually the case." (*Id.* (quotation omitted)). Plaintiff should not be permitted to keep conducting his overly broad and improper discovery efforts, especially when said discovery is sought for use in other matters.

Accordingly, Topic 11 should be limited to inquiry regarding projects related to Plaintiff's Remaining Claims, and VMS should not be required to testify on privileged matters or matters protected by the work product doctrine, specifically including Defendants' and its subcontractors' work with Dechert in furtherance of Dechert's representation of RAK and its related entities.

---

[6] Before the Court entered a Discovery Order, Plaintiff had already served a subpoena on PNC Bank, but did not serve a notice of the same on Defendants pursuant to Rule 45(a)(4). (*See* D.E. 123, p.13).

### H. Topic 12

> **Topic 12:** "Entities VMS made payments to or received payments from, including but not limited to GH Holding LLC, Wheels Up Partners LLC, The White Crush Company LLC, Gravitas International FZE, Trident Group LLC, Karakoram Group, Mackworth Associates, Johannes Alexander Mueller, Elite Security Services, Rosenblatt Limited General, ADM Enterprises, Al Tamimi & Co., Phoenix Digital Services, Reditch Global Solutions, Stratzen, WhiteInk Global, B.J. Lyons, and Abousleiman & Partners."

Topic 12 seeks testimony on any entity that VMS has *ever* made payments to or received payments from, without specifying any specific timeframe for such payments. Requiring Del Rosso (on behalf of VMS) to be prepared to testify on such an overbroad and irrelevant swath of information would be unduly burdensome and not proportionate to the needs of this case. As explained throughout, the scope of discovery in this case is limited to "a North Carolina misappropriation of trade secrets claim arising from the 2018-2019 online posting of new links to Plaintiff's confidential business data (Count VIII) and a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim (Count X)." (D.E. 80, p.4). None of these individuals or entities appear in any pleading in this matter, nor have they been alleged to have been involved in the Remaining Claims. Plaintiff should not be permitted to harass Del Rosso, who is the only person that can testify on behalf of VMS, regarding issues entirely irrelevant to this matter. *See Minter*, 2012 WL 13001301, at *3 (granting motion for protective order under Rule 26(b) and

(c) to limit scope of deposition to prohibit inquiry into deponent's knowledge of defendant entity's business operations and practices because inquiries were not relevant to any claim).

Accordingly, Plaintiff should be prohibited from seeking testimony under Topic 12.

## II. VMS'S DEPOSITION SHOULD BE STAYED UNTIL THE COURT RULES ON THIS MOTION.

As the Court is aware from the briefing on Del Rosso's Motion for Protective Order (D.E. 142) and Plaintiff's Motion to Compel Further Deposition Testimony (D.E. 188), the parties' differing views on the scope of discovery as well as the applicability of certain privileges has already played out during Del Rosso's individual deposition. The result—more motions and briefing before this Court, with Defendants contending that Plaintiff is pursuing irrelevant and disproportionate discovery, and purposefully inquiring into privileged matters, (*see, e.g.,* D.E. 179); and Plaintiff contending that he is entitled to further deposition testimony from Del Rosso due to Del Rosso and his counsel's purported obstruction of the deposition by lodging scope objections and not answering questions on the basis of privilege, (*see, e.g.*, D.E. 189).

The primary points of objection at Del Rosso's individual deposition were lines of questioning that were not relevant or proportionate to his Remaining

Claims, and lines of questioning seeking information protected by the attorney-client privilege and/or work-product doctrine, including Defendants' fraud examination work for Dechert in furtherance of Dechert's representation of RAK and its related entities. (*See* D.E. 179, 193). Now, as forecasted in Plaintiff's Topics and April 5 Letter, Plaintiff intends to again go outside the scope of the remaining claims in the case on yet another fishing expedition. For example, in Plaintiff's April 5 Letter, he forecasts inquiry into "[a]ll projects associated with work performed for Dechert between 2014 and 2019" and associated details of that work. *See* **Ex. D**, p.2. Defendants have already objected to these efforts in the Discovery Motions (*see, e.g.*, D.E. 142, 143), and at Del Rosso's individual deposition, (*see* D.E. 179, pp.11–15).

In order to protect Defendant from further overly broad, burdensome, and harassing questions, the Court should enter an emergency interim order, before May 17, 2023, preventing the deposition from being held on May 17, 2023, and delay it until some reasonable amount of time after it rules on this Motion. VMS notes that Defendants' already-pending motion to stay discovery (D.E. 205) similarly requests, *inter alia*, a stay of VMS's deposition until the Court rules on the several pending discovery motions heard by the Court on March 7, 2023.

VMS also suggests that the Court shorten the briefing time for this motion, making Plaintiff's Response due seven (7) days after its filing, and Defendant's Reply due four (4) days after the Response.

## CONCLUSION

For the foregoing reasons, VMS respectfully requests that this Court enter a Protective Order:

(1) Limiting Topic 1 to testimony on documents relevant and proportionate to the Remaining Claims, and ordering that VMS is not required to testify on privileged matters or matters protected by the work product doctrine, specifically including Defendants' work with Dechert in furtherance of Dechert's representation of RAK and its related entities;

(2) Limiting Topics 2, 3, and 6 to individuals, entities, and information related to Plaintiff's Remaining Claims, and ordering that VMS not be required to testify on privileged matters or matters protected by the work-product doctrine, specifically including Defendants' work with Dechert in furtherance of Dechert's representation of RAK and its related entities;

(3) Limiting Topics 4 and 5 to VMS's purported actions regarding documents relevant and proportionate to the Remaining Claims, and ordering that VMS not be required to testify on privileged matters or matters protected by the work-product doctrine, specifically including Defendants' and its

27

subcontractors' work with Dechert in furtherance of Dechert's representation of RAK and its related entities;

(4) Prohibiting inquiry into Topic No. 7;

(5) With respect to Topics 8 and 10, prohibiting inquiry into privileged matters or matters protected by the work-product doctrine, specifically including Defendants' and its subcontractors' work with Dechert in furtherance of Dechert's representation of RAK and its related entities;

(6) Limiting Topic 9 to the operative allegations supporting Plaintiff's Remaining Claims in *this* case, and prohibiting inquiry into the several other lawsuits "involving" Plaintiff;

(7) Limiting Topic 11 to inquiry regarding projects related to Plaintiff's Remaining Claims, and prohibiting inquiry into privileged matters or matters protected by the work product doctrine, specifically including Defendants' and its subcontractors' work with Dechert in furtherance of Dechert's representation of RAK and its related entities; and

(8) Prohibiting inquiry into Topic No. 12.

VMS also respectfully requests the Court enter an emergency interim order staying VMS's deposition until the Court rules on this Motion. Additionally, in light of Plaintiff's forecast to ask the same questions previously asked of Del Rosso and Plaintiff's intent to use the Rule 30(b)(6) deposition as

a fishing expedition, VMS respectfully requests the deposition be limited to four hours.

Respectfully submitted, this the 27th day of April, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:    *Brandon S. Neuman*
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    John E. Branch III, NCSB# 32598
    Nathaniel Pencook, NCSB# 52339
    Sam A. Rosenthal
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    john.branch@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    *Counsel for Defendants*

29

## CERTIFICATE OF SERVICE

     I hereby certify that on this 27th day of April, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By:   *Brandon S. Neuman*
     Brandon S. Neuman, NCSB# 33590
     Jeffrey M. Kelly, NCSB# 47269
     John E. Branch III, NCSB# 32598
     Nathaniel J. Pencook, NCSB# 52339
     Sam A. Rosenthal (*special appearance*)
     301 Hillsborough Street, Suite 1400
     Raleigh, North Carolina 27603
     Telephone: (919) 329-3800
     Facsimile: (919) 329-3799
     brandon.neuman@nelsonmullins.com
     jeff.kelly@nelsonmullins.com
     john.branch@nelsonmullins.com
     nate.pencook@nelsonmullins.com
     sam.rosenthal@nelsonmullins.com
     *Counsel for Defendants*

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the foregoing document contains 6,221 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 27th day of April, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:   *Brandon S. Neuman*

Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal (*special appearance*)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*