UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>  Plaintiff,<br><br>  v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>  Defendants. | **RESPONSE OF PLAINTIFF FARHAD AZIMA TO DEFENDANTS' MOTION TO STAY DISCOVERY** |

Plaintiff Farhad Azima ("Azima") submits this brief in response and opposition to the Motion of Defendants Vital Management Services, Inc. ("Vital") and Nicholas Del Rosso (collectively, "Defendants") to Stay Discovery (the "Memo."). ECF Nos. 205, 206.

## INTRODUCTION

Fact discovery in this matter ends no later than July 1, 2023, and expert discovery ends on August 1, 2023. ECF No. 93 at 2. Since the outset of discovery, Defendants have delayed and obstructed this case by filing motions about essentially every discovery request from Plaintiff, including motions to quash subpoenas even though they lacked standing to do so, while refusing to respond substantively to interrogatories or produce any documents other than those Defendants and their co-conspirators stole from Azima. *See* ECF Nos. 97, 98, 142, 143, 157, 193. Defendants have also collaborated with affiliated third

1

parties to obstruct Azima's attempts to conduct third-party discovery. *See* ECF Nos. 122, 123, 133, 134, 136, 137, 150, 151, 154, 155, 196, 197, 198, 199. Azima also attempted to depose Mr. Del Rosso and noticed the deposition of his co-defendant, Vital. Defendants opposed both depositions and – after the Court ordered the deposition of Mr. Del Rosso to proceed – counsel for Defendants interfered with Mr. Del Rosso's deposition by lodging unwarranted objections based on relevance and unsubstantiated claims of privilege and attorney work product. Azima has, on the other hand, made every effort to complete discovery in this case in accordance with the Court's schedule, in part by voluntarily producing more than 350,000 documents, including hundreds of documents that were produced before Defendants even made a request.

Defendants now ask the Court to reward their bad faith obstruction and delay tactics by staying all discovery in this case until the Court rules on the numerous outstanding discovery motions. Defendants' request is designed to require the Court to extend its July 1, 2023, fact discovery deadline, which Defendants have not even tried to meet. Defendants are trying to delay the inevitable disclosure of evidence relating to their underlying crimes, and otherwise to compromise the administration of justice in this case.

Time is of the essence. Every day of delay risks further destruction of evidence by third parties, which have already lost relevant documents. In addition, Defendant Del Rosso has terminal cancer. Defendants have refused

2

to provide any update or assurances that Mr. Del Rosso's health will not present additional challenges to the administration of this case. Azima therefore should be permitted to take Vital's Rule 30(b)(6) deposition and receive relevant documents from Defendants and other third parties as soon as possible to ensure that all relevant evidence is preserved and produced. Defendants' motion to stay should be denied, and Defendants should be ordered to take part in discovery in good faith as required by the Federal Rules of Civil Procedure.

## **ARGUMENT**[1]

I. **The Court Should Not Stay Discovery in the Absence of Any Cause in a Case That Has Been Pending Since October 2020.**

Defendants must "justify by clear and convincing circumstances outweighing potential harm" to Azima that a stay of discovery is warranted. *Williford v. Armstrong World Indus., Inc.,* 715 F.2d 124, 127 (4th Cir. 1983). A motion to stay discovery is essentially a disfavored request for a protective order under Rule 26(c). *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 637-38 (M.D.N.C. 1988). Motions to stay discovery are disfavored because "when discovery is delayed or prolonged it can create case management problems

---

[1] In prior filings and in the hearing on many of the pending motions, Azima described his position on the scope of discovery as well as the privilege and attorney work product objections from Defendants and their affiliated third parties. Azima will not rehash those arguments here.

which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Simpson v. Specialty Retail Concepts, Inc.,* 121 F.R.D. 261, 263 (M.D.N.C. 1988); *see also M.P.T. Racing, Inc. v. Bros. Research Corp.*, No. 22-cv-334, 2022 WL 19355619, at *1 (M.D.N.C. Jun. 30, 2022) ("The movant must show good cause and reasonableness."). This Court has aptly described the problems inherent in staying discovery:

> Disruption or prolongation of the discovery schedule is normally in no one's interest. A stay of discovery duplicates costs because counsel must reacquaint themselves with the case once the stay is lifted. Matters of importance may be mislaid or avenues unexplored. A case becomes more of a management problem to the Court when it leaves the normal trial track. While time may heal some disputes, in others it merely permits more opportunity for festering.

*Kron Med. Grp.*, 119 F.R.D. at 638; *see also Wymes v. Lustbader,* No. CIV. WDQ-10-1629, 2012 WL 1819836, at *4 (D. Md. May 16, 2012) (cited by Defendants – *see* ECF No. 206, Memo. at 13).

Unlike in this case, a motion to stay discovery is typically only appropriate if a meritorious dispositive motion is pending that may terminate the case and discovery will not bear on the issues in the dispositive motion. *See S.J. v. Lendlease (US) Pub. P'ship Holdings, LLC*, No. 7:21-CV-188-D, 2022 WL 138689, at *2 (E.D.N.C. Jan. 13, 2022) ("'Factors favoring issuance of a stay include the potential for the dispositive motion to terminate all the claims in the case or all the claims against particular defendants, strong support for

4

the dispositive motion on the merits, and irrelevancy of the discovery at issue to the dispositive motion.'") (cleaned up); *see also M.P.T. Racing, Inc.*, 2022 WL 19355619, at *1 (explaining that courts should "balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery"). Defendants' motion to stay discovery should be denied for several reasons.

First, there is no dispositive motion pending that may terminate any of Azima's remaining claims. Instead, Defendants and third parties have repeatedly moved to limit and narrow discovery while otherwise not participating. Defendants and the subpoenaed parties should at a minimum produce documents and provide testimony that the parties agree is relevant and non-privileged. Azima should be also permitted to take Mr. Del Rosso's deposition as the Rule 30(b)(6) witness for Vital to preserve his testimony for trial given his dire health situation. A blanket stay of discovery is not warranted simply because Defendants and some third parties object to the scope of discovery and continue to press unsupported privilege and attorney work product claims. The fact that Defendants have produced no documents (other than Azima's stolen data) tells the Court all it needs to know: rather than merely seeking a stay of discovery, they are trying to get away with providing no discovery and to delay the trial of this case.

5

Second, Defendants lack standing to oppose, move to quash, or otherwise attempt to delay third-party discovery in this case. *See, e.g., United States v. Idema,* 118 F. App'x 740, 744 (4th Cir. 2005) (per curiam) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena."); *see also* ECF No. 171 at 3-4; ECF No. 201 at 8-9. Defendants' attempts to frustrate discovery by repeatedly interjecting themselves in Plaintiff's third-party discovery efforts does not warrant a blanket stay of discovery.

Third, Defendants have not demonstrated and cannot demonstrate "good cause" to further delay discovery, especially with the July 1, 2023, fact discovery deadline approaching in a case that is more than two years old.[2] *See Kron Med. Grp.*, 119 F.R.D. at 638 (holding that a party moving to stay discovery "must come forward with a specific factual showing that the interests of justice and considerations of prejudice and undue burden to the parties require a protective order and that the benefits of a stay outweigh the costs of delay"); *IMPulse NC, Inc.*, 2005 WL 8159438, at *2 (E.D.N.C. Oct. 17, 2005)

---

[2] In *Rullan v. Goden*, 12-CV-2412, 2014 WL 5464835 (D.Md. Oct. 27, 2014)—a case cited by Defendants, ECF No. 206 at 18—discovery had been delayed by bankruptcy proceedings and the Court granted a stay only until the parties concluded settlement discussions. Defendants are solely responsible for delaying and obstructing discovery in this case and the parties are not currently engaged in any settlement discussions.

6

(denying motion to stay discovery because "defendant has failed to establish any significant undue hardships that might arise from denial of the motion to stay"). Azima is conducting discovery in the ordinary course to meet the Court's July 1, 2023, fact discovery deadline and to prove the merits of his claims. Defendants, on the other hand, have thwarted each of Azima's valid discovery requests and failed to produce a single document other than Azima's own stolen data. Defendants' desire to avoid an adjudication on the merits is not "good cause" to stay discovery and further delay adjudication of this case. If anything, their meritless motion further demonstrates Defendants' bad faith discovery tactics.

Fourth, staying discovery will prejudice Azima by preventing him from developing evidence to support his case and compromise the administration of justice in this case. As the clock ticks, evidence from third parties may be destroyed,[3] and a witness in this case (Mr. Del Rosso) may no longer be available to give testimony. Delaying discovery also will increase costs and allow Defendants to conjure up additional disputes that will continue to thwart the administration of justice in this case. *See Kron Med. Grp.*, 119 F.R.D. at 638 ("A case becomes more of a management problem to the Court when it

---

[3] *See, e.g.*, Exhibit 4 (letter from PNC Bank confirming the destruction of over one year's worth of wire transaction records that Plaintiff had sought via subpoena).

7

leaves the normal trial track"; "[w]hile time may heal some disputes, in others it merely permits more opportunity for festering."). Azima filed this case more than two-and-a-half years ago. ECF No. 1. Defendants' early motions, including a motion for reconsideration that the Court described as "dubious," "skeptical," and "questionable," ECF No. 79 at 5, 6, 12, delayed the case for months. Defendants then refused to participate in discovery by (i) producing only documents that Defendants and their co-conspirators stole from Azima, and (ii) filing numerous motions for protective orders and to quash third-party subpoenas while obstructing Azima's deposition of Mr. Del Rosso. So far, Azima has been unable to conduct meaningful discovery and has yet to receive a single custodial document from Defendants or any interested third party. A blanket stay of discovery will only reward Defendants for their delay tactics and prejudice Azima by preventing Azima from litigating his claims that have been pending for more than two years.

## II. Defendants' Purported Request for "Judicial Notice" Has No Bearing on the Unsubstantiated Privilege and Attorney Work Product Claims by Defendants and Other Third Parties, But a Recent Ruling by this Court Is Instructive.

Defendants claim that a recent order entered in the United Kingdom somehow supports their unsubstantiated claims of privilege in this case. In that order, Dechert claimed the attorney-client privilege applied to documents and confidential communications relating to Dechert's representation of RAK, and the UK Court found that the inequity exception did not obviate the attorney-client privilege in that instance. ECF No. 206 at 12. Neither of the Defendants is mentioned in the order, and the UK Court considered UK privilege law, not US privilege law. Moreover, the UK Court's finding that Dechert's communications with its client RAK are privileged is not relevant to the issue of whether all communications between Defendants, who are not lawyers or a law firm, and other parties may be privileged. Nor does the UK Court's ruling bear on whether a US legal privilege prevents production of other documents that are not communications – such as bank records held by third-party banks, invoices, visitor logs, and calendars, none of which have been produced by Defendants or their co-conspirators.

A recent ruling from Judge Osteen about Mr. Del Rosso in a similar context is instructive; it demonstrates that Mr. Del Rosso's strategy of obstruction is not limited to this matter – and has been rejected by Judge

9

Osteen in other recent litigation. On May 10, 2023, Judge Osteen ordered that Mr. Del Rosso and Vital to sit for depositions in another matter involving the activities of Mr. Del Rosso, Vital, and Dechert. *See In re Application of Karam Salah Al Din Awni Al Sadeq*, 21-mc-6, ECF No. 24 (Exhibit 1). United States Magistrate Judge Patrick Auld permitted the applicant in that matter to serve subpoenas for depositions of Mr. Del Rosso and Vital. *See* ECF No. 7 (Exhibit 2). Mr. Del Rosso and Vital moved to quash, and Judge Auld denied the motion to quash. *See* ECF No. 20 (Exhibit 3). After Mr. Del Rosso and Vital objected to the Judge Auld's order, Judge Osteen denied all of their objections and ordered them to sit for depositions. See Exhibit 1 at 1-2 (recounting procedural history).

In the *Al Sadeq* matter, Mr. Del Rosso and Vital raised some of the same objections that they raise here: (1) that the discovery was being sought for a different proceeding from the one at issue, and (2) that the subpoenas should be limited in temporal scope. *Id.* at 2. First, Del Rosso and Vital claimed that the information sought was not for use in the foreign proceeding because it was "plainly irrelevant" to those proceedings. *Id.* at 10. Judge Osteen rejected this argument, noting that relevancy for discovery is broadly construed. Judge Osteen said that the fact that foreign claims did not specifically raise allegations of hacking did not render discovery about hacking irrelevant as long as the discovery sought had a reasonable relationship to issues that were

10

in or may be in the case. *Id.* at 11. Second, Mr. Del Rosso and Vital argued that "the Magistrate Judge refused to even limit the temporal scope of the discovery to the periods relevant to Stokoe's claims (*i.e.* January to April 2020)" and instead allowed discovery dating back to 2015, which Del Rosso and Vital claimed was irrelevant to the allegations about 2020 conduct. Again, Judge Osteen disagreed, saying that Judge Auld very clearly explained that Mr. Del Rosso's and Vital's work with hacking company CyberRoot from 2015 to 2017 could still be relevant to the later conduct. *Id.* at 12-13.

Mr. Del Rosso and Vital make the same arguments here that they made – and which failed – in the *Al Sadeq* matter. Defendants are attempting to use the same playbook to avoid discovery in any proceeding that might reveal their crimes. Judge Osteen rejected their attempts to do so in the *Al Sadeq* proceeding. Similar reasoning should prevail here, and the Court should order broad discovery in this action so the case may proceed.

## CONCLUSION

For the foregoing reasons, Azima respectfully requests that the Court deny Defendants' motion to stay discovery

This, the 12th day of May, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
Christopher W. Jones
North Carolina State Bar No. 27265
Jonathon Townsend
North Carolina State Bar No. 51751
555 Fayetteville Street, Suite 1100
Raleigh, N.C. 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email:  ripley.rand@wbd-us.com
  chris.jones@wbd-us.com
  jonathon.townsend@wbd-us.com

-and-

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren E. Briggerman (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
clee@milchev.com
cmarden@milchev.com

*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

The undersigned certifies compliance with Local Rule 7.3(d) regarding length limitations. This Response brief contains fewer than 6,250 words. The undersigned has relied on the word count feature of Microsoft Word 365 in making this certification.

*/s/ Ripley Rand*
Ripley Rand
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>  Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>  Defendants. | **CERTIFICATE OF SERVICE** |

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

Brandon S. Neuman, Esq.
John Branch, III, Esq.
Jeffrey M. Kelly, Esq.
Nathaniel J. Pencook, Esq.
NELSON MULLINS RILEY & SCARBOROUGH, LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
john.branch@nelsonmullins.com
Tel.: 919.329.3800
Fax.: 919.329.3799

Samuel Rosenthal, Esq.
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Tel.: 202-689-2951
Fax: 202-689-2860
sam.rosenthal@nelsonmullins.com

*Counsel for Defendants*

This, the 12th day of May, 2023.

        **WOMBLE BOND DICKINSON (US) LLP**

        /s/ *Ripley Rand*
        Ripley Rand
        North Carolina State Bar No. 22275
        555 Fayetteville Street, Suite 1100
        Raleigh, NC 27601
        Telephone: (919) 755-8125
        Facsimile: (919) 755-6752
        Email: ripley.rand@wbd-us.com

        *Counsel for Plaintiff*