# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **DEFENDANT VITAL MANAGEMENT SERVICES, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

This Reply Memorandum is submitted in support of Defendant Vital Management Services, Inc.'s ("VMS") Motion for a Protective Order (D.E. 216) and in Response to Plaintiff's Opposition to that Motion (D.E. 223).

## INTRODUCTION

In this lawsuit, the Court dismissed nearly all of the claims against VMS and Defendant Nicholas Del Rosso ("Del Rosso") (collectively, "Defendants"), and only permitted Plaintiff to pursue a *limited* North Carolina misappropriation of trade secrets claim based on the purported republication of Plaintiff's already-available data using WeTransfer in 2018 and 2019, as well as a civil conspiracy claim which is contingent, and therefore must be directly related, to the North Carolina trade secret claim (Counts VIII and X) (the "Remaining Claims"). (D.E. 65, pp.23–25) (the "12(b)(6) Order"). Despite

1

the express limitations established by this Court and the mounting evidence that Plaintiff invented his case against Defendants and CyberRoot based on confidential bank statements that his agents stole,[1] Plaintiff has continued to pursue disproportionate discovery and has ignored Defendants' invitations for Plaintiff to tailor his discovery requests in order to resolve any discovery disputes. (*See e.g.*, D.E. 219-6).

Plaintiff again tries to avoid even the slightest limitation on discovery. He does so without explaining why—in his counsel's own words—he is entitled to discovery relating to "Plaintiff's claim of civil conspiracy dating back to 2014," (D.E. 223, p.3), despite the ruling from this Court that as "'the statute of limitations for a civil conspiracy claim is governed by the underlying claim,' . . . Plaintiff's dependent civil conspiracy claim is likewise limited to the 2018-2019 conduct – the only allegations that are not time-barred." (D.E. 65, pp.23-24 (quoting <u>Lau v. Constable</u>, No. 16 CVS 4393, 2019 WL 6051554, at *8 (N.C. Super. Ct. Sept. 24, 2019))). Even Plaintiff's counsel admitted at oral argument on earlier motions that discovery was necessarily limited as a result of this Court's ruling. (*See* Audio recording of March 7 Hearing, Part 3, 16:41-18:42).

---

[1] D.E. 159, pp.2-3, 6-9 (explaining how the factual basis of Plaintiff's case is based on a false report by Plaintiff's agent, Jonas Rey); *see also* D.E. 193, p.4 n.1 (explaining how Standard Charter Bank records corroborate the fact that Plaintiff and his agents Jonas Rey and Aditya Jain unlawfully obtained CyberRoot's bank statements to create this case).

Instead of dealing with the above dispositive issue governing the instant motion, Plaintiff's opposition digresses into attacking Defendants' motivations for raising issues relating to the scope, timing, and privileged nature of many of the anticipated questions. Plaintiff takes the position that seeking guidance from this Court is a delay tactic, ignoring critical facts showing that this is the most logical and efficient path forward.

For instance, while claiming that Defendants have failed to make any showing whatsoever that communications between VMS and the law firm that hired it, Dechert LLP ("Dechert"), could possibly be privileged, Plaintiff ignores Dechert's briefing demonstrating the basis for an assertion of privilege, (*see* D.E. 176, p.2, 4, 162-1), as well as Counsel for Defendants' briefing on the same (*see, e.g.*, D.E. 143, pp.7-8; 179, pp.12-15; 193, p.3, 14). Equally important, Plaintiff nowhere mentions that the English High Court recently rejected the very same claims—namely, that the crime-fraud exception vitiated any assertions of privilege or work product doctrine. (*See* D.E. 205-17). Plaintiff cannot argue that a motion for a protective order aimed to avoid inconsistent rulings is done only as a delay tactic.

Much of the remaining argument is directed to the utterly frivolous allegations that Defendants are using Mr. Del Rosso's health to delay the deposition, and that there is an urgent need to immediately depose him. However, counsel for Defendants met and conferred with counsel for Plaintiff

on Friday, May 12, 2023, and provided information regarding Mr. Del Rosso's health. Thereafter, Plaintiff unilaterally cancelled the 30(b)(6) deposition scheduled for this week, and then selected a future date without consulting defense counsel. (*See* D.E. 226).

Finally, Defendants have done everything possible to avoid motions practice by seeking a protective order, rather than waiting until the deposition has occurred. In fact, Plaintiff's own counsel communicated on April 26, 2023, that any additional meet and confer on issues relating to "the temporal or substantive scope in this case . . . seems futile" and the parties would be better served to wait at least until the Court rules on pending discovery motions. (*See* D.E. 219-9). Such an admission supports VMS's position that VMS's upcoming Rule 30(b)(6) Deposition should be stayed until the Court rules on this Motion and resolves the parties' dispute over Plaintiff's proposed topics (the "Topics").

## **ARGUMENT**

Both sides agree that there are certain gate-keeping issues (namely scope and privilege) which will undoubtedly impact the 30(b)(6) examination. The parties take diametrically opposed views on how to deal with that problem. Plaintiff prefers to go forward with the deposition, hoping that it can obtain answers to its far-flung set of questions, which he has failed to dispute are intended for use in other litigation involving Plaintiff, as well as other parties with whom he is coordinating. (*See* D.E. 217, pp. 3, 19-20; *see also* D.E. 179,

4

pp.4-7). Defendants on the other hand, simply want to defer the deposition until all sides can get guidance from the Court.

Under such circumstances, VMS has demonstrated good cause in its Motion, which seeks to forbid or limit inquiry into certain matters during VMS's upcoming Rule 30(b)(6) deposition, as well as an interim order staying the deposition (D.E. 216). Plaintiff has failed yet again to demonstrate how his Topics are relevant and proportionate to his Remaining Claims, and has ignored the privilege protections afforded to Ras al Khaimah ("RAK"), and its related entities, which RAK has invoked. (*See* D.E. 176, p.2, 162-1; *see also* D.E. 205-17 (sustaining privilege and work-product protection objections by Dechert LLP and rejecting arguments that any such privileges could be overcome by the crime fraud exception)). Moreover, Plaintiff has completely failed to address evidence that Defendants have put forth showing Plaintiff is seeking discovery for use in his other cases.

Plaintiff has cited nothing to suggest that the above grounds do not support issuance of a protective order. Defendants have shown that good cause exists to prohibit and/or limit topics (a) relevant to Plaintiff's Remaining Claims, and proportionate to the needs of the case, in light of the order dismissing 9 of his 11 claims; (b) not protected by any applicable privilege—namely, the attorney-client privilege and work-product protections applicable to Defendants' work with Dechert in furtherance of Dechert's representation

5

of RAK and its related entities; and (c) intended for use in this action, as opposed to topics seeking information in furtherance of Plaintiff's several other actions pending in other jurisdictions.

I. **VMS IS NOT ACTIVELY CONCEALING MR. DEL ROSSO'S HEALTH STATUS.**

Counsel for Defendants met and conferred with counsel for Plaintiff on Friday, May 12, 2023, and provided information regarding Mr. Del Rosso's health. It is Defendants' understanding that Plaintiff's concerns regarding Mr. Del Rosso's health have been sufficiently addressed at this time.

II. **PLAINTIFF MAY NOT DEPOSE VMS REGARDING RAK'S PRIVILEGED AND PROTECTED INFORMATION.**

Dechert previously briefed extensively why an assertion by VMS of attorney-client and work product protections are appropriate. (*See* D.E. 176, p.2, 4, 162-1). That position has now been affirmed by the English High Court, which has overruled objections based on the crime-fraud exception to the attorney-client privilege and work product doctrine. (*See* D.E. 205-17 (sustaining privilege and work-product protection objections by Dechert and rejecting arguments that any such privileges could be overcome by the crime fraud exception)).

As argued previously, Plaintiff does not dispute that RAK has invoked its privilege and protections. Nor can Plaintiff dispute that while VMS is not

a law firm, it is still obligated to assert privilege and protections belonging to RAK. *See, e.g., U.S. v. Kovel*, 296 F.2d 918, 921–22 (2nd Cir. 1961); *Grand Jury Proc. Under Seal v. United States*, 947 F.2d 1188, 1190-91 (4th Cir. 1991) ("[I]f the client first consults with a lawyer who retains an [consultant] . . . the privilege applies."); *Liggett Grp., Inc. v. Brown & Williamson Tobacco Corp.*, 116 F.R.D. 205, 210-11 (M.D.N.C. 1986) (privilege applies to an "agent" of the party asserting the privilege); *see also* Fed. R. Civ. P. 26(b)(3)(A) (protecting work product prepared in anticipation of litigation or for trial, including a party's consultants); *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012) ("[A]lthough the doctrine is known as the attorney work-product doctrine, work product created by non-attorneys can also be protected if it is so intertwined with the legal analysis as to warrant protection." (internal quotation and citation omitted)). As such, VMS's corporate designee, Mr. Del Rosso, does not have authority to answer questions seeking privilege or protected information belonging to RAK.

Plaintiff also hints that it will steer clear of privileged information by arguing that VMS seeks to avoid testimony "based on speculation that there might be questions that call privilege or work product into question." (D.E. 223, p.8). Of course, if Plaintiff is not desirous of asking questions calling for privileged information, it will not suffer prejudice if a protective order is issued ensuring that result.

7

In any event, the plain language of Plaintiff's Topics and April 5 Letter show that his arguments are unsound. For example, Topic 1 seeks testimony regarding all documents merely "requested" by Plaintiff, which includes all documents and communications related to, *inter alia*, transactions with any person or entity "that performed any work for or provided any services to Defendants," (*see* D.E. 131-2, ¶1), and therefore would include work done for Dechert/RAK. Additionally, Plaintiff's April 5 Letter states that Mr. Del Rosso should be prepared to testify—on behalf of VMS—about "[a]ll payment references included in records produced by PNC Bank" and "[a]ll payments received by [VMS] from 2014 to present related directly or indirectly to Azima, Dechert, or RAK," as well as what "work was performed" or "what work or project it related to." (D.E. 219-5, p.3). Moreover, VMS individually addressed each Topic that requested privileged and protected information in its Motion for Protective Order and did not conclusively assert that *all* Topics request such information. (*See* D.E. 217).

Further, Plaintiff has already demonstrated that he will not be deterred from seeking information that is privileged and protected. For example, Plaintiff continuously asked questions designed to illicit privileged and protected information during Mr. Del Rosso's individual deposition. (*See* D.E. 179, p.8).

8

Case 1:20-cv-00954-WO-JLW   Document 230   Filed 05/18/23   Page 8 of 17

Thus, VMS's request is not based on speculation, as Plaintiff has forecasted that he will ask questions seeking privileged and protected information. As such, VMS should not be required to testify regarding privileged or protected information.

### III. **<u>PLAINTIFF'S TOPICS ARE NOT RELEVANT OR PROPORTIONAL TO THE NEEDS OF THE CASE.</u>**

Plaintiff's Response does not engage with the issues raised by VMS regarding Plaintiff's Topics. Instead, Plaintiff asserts in conclusory fashion that all of the Topics are relevant to the allegations in his Complaint. (*See* D.E. 223, p.9). Tellingly, Plaintiff does not set forth the allegations in his Complaint that are relevant to the Remaining Claims. As stated above, Plaintiff's conclusory argument is belied by its argument that it is entitled to pursue a conspiracy dating back to 2014. Accordingly, and in light of the number of topics which could be deemed legitimate subjects of inquiry consistent with the needs of the case, Plaintiff again respectfully requests that the Court limit the deposition to four hours.

Indeed, this is not a hacking case, and all claims of hacking have been dismissed; the remaining civil conspiracy claim is not predicated on any hacking claim, but instead on the remaining misappropriation of trade secrets claim. (D.E. 65, pp.23–25). Thus, it is improper for Plaintiff to seek information regarding Plaintiff's allegations of hacking in his Complaint, including

9

"payments to or from the individuals and entities involved in the conspiracy to hack Plaintiff (Topic 2)," and "meetings between Defendants and Amir Handjani, one of the alleged hacking co-conspirators (Topic 7).[2]" (D.E. 223, pp.9-10).[3]

Additionally, despite Plaintiff's citation of case law regarding entitlement to broad discovery, such case law does not entitle Plaintiff to seek discovery outside of the scope of discovery as limited by this Court. The 12(b)(6) Order limited the scope of this matter to Plaintiff's specific conduct alleged in his North Carolina Misappropriation of Trade Secrets claim (Count VIII)—as well as the contingent Civil Conspiracy claim (Count X)—and to only encompass "the 2018–2019 conduct – the only allegations that are not time barred." (D.E. 65, pp.23–24). Moreover, the Court specifically identified the "2018-2019 conduct" as the allegations that Defendants conspired with CyberRoot Risk Advisory Private Limited ("Cyber Root") to create new blog

---

[2] Plaintiff's Topic 7 did not ask for testimony relating to "meetings between Defendants and Amir Handjani , one of the alleged hacking co-conspirators" as Plaintiff asserts in Response in Opposition to this Motion (D.E. 223, p.9), but instead asked for testimony on "[m]eetings with Amir Handjani during Plaintiff's trial in London in January and February 2020, including but not limited to Amir Handjani's meeting with Del Rosso at Del Rosso's son's flat." (D.E. 219-1, ¶7). Regardless, both Topics are improper because Plaintiff's hacking claim has been dismissed and the Remaining Claims are not relevant to conduct subsequent to 2019.

[3] To the extent Plaintiff's Topics regarding "alleged co-conspirators" or "alleged conspiracy" in Topics 6 , 11, and 12 (*see* D.E. 223, pp.9-10) really seek information regarding Plaintiff's dismissed hacking claim, such Topics are improper.

sites in May 2018, June 2018, and June 2019 using WeTransfer. (*Id.* at 17–18 (citing Complaint, ¶¶16, 19, 22, 24–26)).

Topic 11 also demonstrates Plaintiff seeks discovery which is not proportionate to the needs of the case. Plaintiff states in his Response in Opposition to this Motion that he is entitled to ask about the scope of projects "that Plaintiff **believes** are related to the alleged conspiracy." (D.E. 223, pp.9-10) (emphasis added)). But Plaintiff has not shown how Topic 11, which names multiple projects in which Plaintiff seeks testimony regarding work performed for Dechert (*see* D.E. 219-1, ¶11, 219-5, p.2), are related or proportionate to Plaintiff's Remaining Claims. Further, Mr. Del Rosso has already been questioned at his individual deposition about most of these purported "projects," and has already testified that projects "Endeavor," "Concorde," and "ORM" are not related to Defendants' work for RAK. (*See* D.E. 219-8, 59:21–25; 60:2–3; 306:16–307:14).

Nor is Plaintiff entitled to seek discovery subsequent to 2019 on any topic or statement just because Defendants have a right to probe Plaintiff's allegations of an injury "on or about August 28, 2020 following an investigation," (*see* D.E. 1, ¶127), which is the alleged fact that gave rise to his Remaining Claims. Additionally, Plaintiff's refusal to engage with the evidence Defendants have put forth showing that Plaintiff has used information

11

obtained from discovery in this case in other cases (*see* D.E. 217, pp. 20, 22-23) also supports good cause to grant VMS's Motion.

Finally, Plaintiff argues that VMS has failed to show undue burden because it did not submit evidence of a substantial amount of money needed or logistical difficulties encumbered in order for VMS to prepare to answer Plaintiff's Topics. (*See* D.E. 223, pp.11-12). However, Plaintiff's citation of *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 249 (M.D.N.C. 2010) involves this Court examining a request for production of documents, not proposed Rule 30(b)(6) deposition topics. In *Kinetic*, the Court found that the plaintiff's late assertion that they "explained to Defendants, including ConvaTec, numerous times what the burden is in producing all communications with Dr. Zamierowski—the volume of documents acquired during a 15 year business relationship," which did not allege or establish whether "the requested production of documents would cost a substantial amount of money or pose real logistical difficulties," was insufficient to meet the plaintiff's burden to show grounds to withhold documents. *Id.* Here, VMS's Motion is about deposition topics, not requests for production of documents. Additionally, not only did VMS analyze every topic provided by Plaintiff, but it also showed a plethora of case law supporting its position that Plaintiff may not seek (1) discovery regarding dismissed claims (*see* D.E. 217, p.7 n.2); (2) discovery disproportionate to the needs of case, (*see* D.E. 217, pp.10, 15); and

(3) discovery to be used in litigation pending elsewhere, (*see* D.E. 217, pp.10, 13, 17, 20-21, 24-25). Indeed, VMS has met its burden by showing, for example, how preparing Mr. Del Rosso, on behalf of VMS, to answer questions regarding 48 identified entities and individuals, 15 identified projects, and "any litigation involving Plaintiff Azima," (D.E. 219-3), when most of which is not relevant to the Remaining Claims and Plaintiff refuses to specify or narrow, (D.E. 219-6, p.3, 219-7), is unduly burdensome. *See Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs.*, No. 1:13CV651, 2016 WL 4007605, at *2–5 (M.D.N.C. July 26, 2016) (finding Rule 30(b)(6) deponent did not have to be prepared to discuss irrelevant topics, or topics that were relevant but, considering proportionality, were otherwise "overbroad and unduly burdensome").

As such, VMS's motion should be granted.

## IV. **VMS'S DEPOSITION SHOULD BE STAYED UNTIL THE COURT RULES ON THIS MOTION.**

Not only has VMS shown good cause to stay the Rule 30(b)(6) deposition, but Plaintiff's position that the pending discovery disputes require judicial resolution also supports a stay. (*See* D.E. 219-9). Indeed, until the parties receive clarity from the Court regarding the pending discovery motions, any deposition of VMS will likely proceed as the Mr. Del Rosso deposition where both parties were unhappy with the result, as Plaintiff felt Mr. Del Rosso's

13

counsel objections to scope and privilege "impeded the deposition," (*see* D.E. 167, p.1), while Mr. Del Rosso pointed out the impropriety of Plaintiff's questions that were disproportionate and irrelevant to this case, and the fact that Plaintiff did not ask a single question about WeTransfer or the purported republication of Plaintiff's trade secrets through the blog cites, (*see* D.E. 179).

To the extent that Plaintiff is worried about completing discovery by the applicable deadlines, the parties may alleviate such a worry by negotiating a potential extension of the discovery deadlines that is informed by the Court's resolution of the pending discovery disputes.

## CONCLUSION

For all the reasons explained above and in its Memorandum in Support of its Motion for Protective Order, VMS respectfully requests that this Court grant its Motion for Protective Order.

Respectfully submitted, this the 18th day of May, 2023.

        **NELSON MULLINS RILEY & SCARBOROUGH LLP**

        By: *Brandon S. Neuman*
          Brandon S. Neuman, NCSB# 33590
          Jeffrey M. Kelly, NCSB# 47269
          John E. Branch III, NCSB# 32598
          Nathaniel Pencook, NCSB# 52339
          Sam A. Rosenthal
          301 Hillsborough Street, Suite 1400
          Raleigh, North Carolina 27603
          Telephone: (919) 329-3800

Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: *Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal (*special appearance*)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the foregoing document contains 3,084 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 18th day of May, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: *Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal (*special appearance*)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*