UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>        Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>        Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING A RULING ON MOTIONS SUB JUDICE AND TO PROVIDE JUDICIAL NOTICE OF RULING IN FOREIGN PROCEEDING ON PRIVILEGE** |

Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS") (collectively, "Defendants") hereby submit this reply memorandum in support of their Motion to Stay Discovery Pending a Ruling on Motions Sub Judice and to Provide Judicial Notice of Ruling in Foreign Proceeding on Privilege (D.E. 205) (the "Motion") and Plaintiff Farhad Azima's ("Plaintiff") response in opposition to the Motion (D.E. 224) (the "Response").

## INTRODUCTION

On May 16, 2023, the Court entered an order prohibiting the filing of new discovery motions until pending discovery disputes could be resolved. (D.E. 229). Likewise, this Motion sought the partial stay of third-party discovery and of VMS's deposition pursuant to Rule 30(b)(6) of the Federal

Rules of Civil Procedure ("Rule(s)"),[1] (*see* D.E. 205, at p.5), to avoid discovery disputes resulting from Plaintiff's disproportionate and improper discovery.

As has been repeatedly briefed, the Court dismissed nearly all the claims against Defendants and only permitted Plaintiff to pursue a limited North Carolina misappropriation of trade secrets claim based on the purported republication of Plaintiff's already publicly available data using WeTransfer in 2018 and 2019, in addition to a civil conspiracy claim contingent upon the viability of the trade secrets claim (the "Remaining Claims"). (*See* D.E. 65, at pp.23–25). Despite the specificity of the operative conduct in Plaintiff's Remaining Claims, during Mr. Del Rosso's individual deposition, Plaintiff "did not ask a single question about the operative allegations in the Complaint concerning WeTransfer or the purported republication of Plaintiff's trade secrets[,]" (D.E. 193 pp.1–2), and recent third-party discovery received continues to show that Defendants and CyberRoot Risk Advisory Private Ltd. ("CyberRoot") did not use WeTransfer to republish any alleged data. Instead, the evidence is mounting that that Plaintiff invented his case against Defendants and CyberRoot based on confidential bank statements that Plaintiff's agents stole in 2020[2] to pursue information concerning Dechert LLP

---

[1] Defendants note that on March 15, 2023, Defendants unilaterally moved VMS's Rule 30(b)(6) deposition from May 17, 2023 to June 8, 2023. (*See* D.E. 226). This rescheduling of VMS's deposition does not change Defendants' position on any of the relief requested herein.
[2] *See, e.g.*, D.E. 159, pp.2–3, 6–9 (explaining how the factual basis of Plaintiff's case is based on a false report by Plaintiff's agent, Jonas Rey); *see also* D.E. 193, p.4 n.1 (explaining how

("Dechert").[3] By ignoring the limited scope of this case, Plaintiff seeks disproportionate discovery to explore the *entirety* of Defendants' consulting work for Dechert without regard to the unassailable fact that Defendants' work for Dechert was done in furtherance of Dechert's representation of Ras al Khaimah ("RAK") and its entities.[4]

Under these circumstances, Defendants, third parties, and this Court should not be forced to wade through extensive and complicated issues of privilege that are being litigated in other jurisdictions and are significantly disproportionate to the needs of this narrowed case. Therefore, Plaintiff's arguments in opposition fail to provide a compelling reason for why the requested temporary stay is inappropriate.

***First***, it is hardly "bad faith" to urge a procedure which will avoid a continuation of the motions practice which is not only burdensome to litigants, but to the Court and third parties as well. Indeed, resolution of this gatekeeping issue is necessary prior to the testimony and discovery sought by

---

Standard Chartered Bank records corroborate the fact that Plaintiff and his agents Jonas Ray and Aditya Jain unlawfully obtained CyberRoot's bank statements to create this case).

[3] *See, e.g.*, D.E. 159 p.3 (summarizing that "Plaintiff made a deal with a non-party in 2018 to provide information gained concerning [Dechert] in litigation in exchange for money.").

[4] In addition to the relief requested in the Motion, Defendants also provided notice to the Court of a recent judgment on certain related privilege issues from the High Court of Justice of England and Wales ("English High Court"), which—contrary to Plaintiff's argument— holds that Dechert, in connection with its representation of its client, was entitled to assert attorney-client privilege and work product doctrine.

3

Plaintiff being produced, as once the materials have been turned over or testified to in discovery they cannot be taken back.

***Second***, Plaintiff fails to provide a compelling argument that he will be unduly prejudiced by a temporary stay pending resolution of several discovery motions. With respect to Mr. Del Rosso's health, Plaintiff has already deposed Mr. Del Rosso, and Plaintiff has been repeatedly informed that there is no imminent reason why Mr. Del Rosso would be unable to provide evidence (including testimony) in this case, and that if it is anticipated that he will be unable to provide testimony, Defendants' counsel will immediately inform the Court. Indeed, the extensive pressure that Plaintiff is exerting on Defendants through discovery in this matter belies the fact that he is not actually concerned about Mr. Del Rosso's health.

Similarly, through Plaintiff's voluminous third-party subpoena efforts, Plaintiff has certainly provided notice to the subpoenaed third parties of their duties regarding retention of documents, which should alleviate their concerns.

In sum, the protections for Defendants and third parties requested by this Motion remain necessary to mitigate Plaintiff's disproportionate discovery, which is being pursued for use in other cases.[5] Therefore,

---

[5] As previously briefed, Defendants confronted Plaintiff's use of confidential information gained in this case in support of his litigation in other Courts. (*E.g.*, D.E. 179, p.11). Indeed, Plaintiff has not even responded to deny this fact, which was addressed in Defendants' letter dated February 15, 2023. (D.E. 180-1 & 182-1).

Defendants respectfully request that the Court grant their Motion for the further reasons set forth below.

## ARGUMENT

### I. The Ruling from the English High Court Bears Directly On Privilege Issues Before the Court.

Defendants respectfully submitted the April 5, 2023 ruling from the English High Court, *Al Sadeq v. Dechert LLP, et al.* [2023] EWHC 795 (KB) (the "Al Sadeq Lawsuit"), to inform this Court that the English High Court found documents and communications (including investigatory work) associated with Dechert's representation of RAK and its related entities to be privileged, and that the iniquity exception (*i.e.*, U.K. equivalent of the crime/fraud exception) did not apply. *Id.* at [58–115, 130]. This is relevant here because it is undisputed that Defendants were engaged by Dechert to perform fraud examination work with respect to Dechert's same representation of RAK, which was at issue in the Al Sadeq Lawsuit. Accordingly, the very same work claimed by Plaintiff to be relevant here—and subject to discovery under the crime-fraud exception—was found by the English High Court to be privileged and properly withheld.

Plaintiff responds to that ruling by arguing that the laws of the United Kingdom ("U.K.") are not applicable here. But this is not a ruling on some esoteric issue of law which Defendants assert should be followed. It is a ruling

on the very same communications between Dechert and its client, and the same claims being made here by Plaintiff, namely that the crime-fraud exception somehow vitiated applicable privileges. Plaintiff's implicit argument that the Court here should reach a different result ignores principles of comity, and long-standing precepts urging courts to avoid inconsistent rulings. *See, generally*, *Hulley Enterprises Ltd. v. Russian Federation*, 502 F.Supp.3d 144, 157 (D.C. 2020) (Avoiding any decision that "would risk the possibility of inconsistent results in the primary and secondary jurisdictions, which would undermine important international comity interests"); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) ("Generalized searches for information, the disclosure of which is prohibited under foreign law, are discouraged.").

Moreover, consideration of the English High Court's ruling is particularly appropriate in light of the fact that this case is the attenuated byproduct of Plaintiff's still-pending litigation in the UK, for which he is using this case as a discovery tool to prepare for the retrial of his hacking claims in the UK. See *RAK Inv. Auth. v. Azima*, Case No. HC-2016-00279. (See also D.E. 206, at pp.4–8 (discussing origins of this lawsuit)).

## II. THE COURT SHOULD PARTIALLY STAY DISCOVERY PENDING A RULING ON THE DISCOVERY MOTIONS.

The Court should partially stay discovery (*i.e.*, third-party discovery and VMS's Rule 30(b)(6) deposition) until the Court rules on the Discovery Motions. A stay would ensure that no further time and expense is spent on piece-meal and duplicative motions practice rehashing the same three core issues that are presently before the Court in the Discovery Motions—namely, (1) the permissible scope of discovery; (2) the applicability of privilege/attorney work-product doctrine; and (3) whether Plaintiff's discovery is being conducted for an improper purpose (*i.e.*, seeking discovery here in an attempt to advance separate claims pending in other jurisdictions). Moreover, a stay would ensure that these core issues are resolved in advance of VMS's Rule 30(b)(6) deposition, which is in the best interest of *all* parties, as evidenced by the fallout from Mr. Del Rosso's individual deposition, which included a spate of filings and several motions directed to his testimony. (*See, e.g.*, D.E. 167; D.E. 179; 188; D.E. 189; D.E. 193; D.E. 194).

Nevertheless, Plaintiff argues that the Motion should be denied because (1) no dispositive motion is pending that would warrant a stay; (2) Defendants lack standing to "oppose, move to quash, or attempt to delay third-party discovery in this case"; (3) Defendants' have not demonstrated "good cause" for a stay; and (4) a stay will "prejudice Azima by preventing him from developing

7

evidence to support his case[.]" (D.E. 224, at pp.3–8). Each of these arguments fail.

### A. A Pending Dispositive Motion Is Not A Prerequisite To The Court's Entry Of A Stay Of Discovery.

A pending dispositive motion is not prerequisite to the court's ability to stay discovery; rather, courts can and have used their broad discretion in this context to stay discovery pending resolution of a discovery dispute. *See, e.g., In re Subpoena to Wang,* 214 F. Supp. 3d 91, 96 (D.D.C. 2016) (granting motion for protective order staying deposition until underlying "discovery dispute has been resolved and the permissible scope of her deposition clarified," including a "privilege-waiver dispute"); *Springs v. Ally Fin., Inc.,* No. 3:10-CV-311-MOC-DCK, 2014 WL 7778947, at *2 (W.D.N.C. Dec. 2, 2014) (acknowledging that the court previously "stayed the pending Rule 30(b)(6) deposition, pending a ruling on" defendant's motion for protective order), *aff'd*, No. 3:10-CV-00311-MOC-DC, 2015 WL 506471 (W.D.N.C. Feb. 6, 2015), *order vacated in part,* 657 F. App'x 148 (4th Cir. 2016).

Moreover, the Court is afforded broad discretion under Rule 26(c) to enter orders "establishing limitations on discovery" and "[t]he scope and conduct of discovery[.]" *Smith v. City of Greensboro*, 2020 WL 13646253, at *1 (M.D.N.C. July 2, 2020) (citations omitted); *see also* Fed. R. Civ. P. 26(c).

8

Accordingly, the fact that a dispositive motion is not currently pending does not foreclose this Court from, in its discretion, entering a partial stay of discovery pending a ruling on the Discovery Motions.

### B. Defendants Are Well Within Their Rights To Move For A Partial And Temporary Stay Of Discovery.

Plaintiff next argues that Defendants lack standing to move for a stay, citing to an unpublished opinion stating the general rule that a party lacks standing to challenge a third-party subpoena under Rule 45 unless "the party claims some personal right or privilege in the information sought by the subpoena." *See U.S. v. Idema,* 118 F. App'x 740, 744 (4th Cir. 2005). But Defendants are not challenging any subpoenas in this Motion, nor are they moving under Rule 45. Plaintiff has not cited to any authority supporting his novel position. Indeed, Plaintiff's argument is—in essence—that he disagrees with Defendants' standing arguments in some of the Discovery Motions brought by Defendants that challenged third-party subpoenas under Rule 45 *and* Rule 26. (*See, e.g.,* D.E. 125, at pp. 8–11). Defendants have already addressed and refuted these arguments in their prior briefing in the pending Discovery Motions. (*See, e.g.,* D.E. 123, at pp.9–10; D.E. 132, at pp. 6–7). Regardless, these arguments are not at issue in the present Motion, where Defendants, pursuant to Rule 26, seek a stay of third-party discovery and VMS's Rule 30(b)(6) deposition until said Discovery Motions are decided.

9

### C. Good Cause Exists For Entry Of A Partial And Temporary Stay.

Defendants set forth in their opening brief why there is "good cause" for entry of a stay, including a consideration of the interests of justice, the potential for prejudice/undue burden, and weighing of the benefits and costs. (*See* D.E. 206, at pp.13–20). Principally, Defendants pointed out that—absent a stay—further third-party discovery and VMS's Rule 30(b)(6) deposition will inevitably result in *more* piece-meal motions practice (initiated by Plaintiff, Defendants, and third parties) rehashing the same discovery disputes that are already pending before the Court. (*Id.* at pp. 14–15). Moreover, Defendants pointed out that any potential prejudice to Plaintiff is mitigated by the fact that he too will be spared the time and expense of re-litigating the same pending discovery dispute. (*Id.* at 20).

In his Response, Plaintiff disingenuously argues that Defendants *cannot* demonstrate "good cause" for a stay because it would impede Plaintiff in "conducting discovery in the ordinary course to meet the Court's July 1, 2023 fact discovery deadline to prove the merits of his claims." (D.E. 225, at p.7). Further, Plaintiff complains that a stay is unwarranted because Defendants "have thwarted each of Azima's valid discovery requests[.]" (*Id.*)

First, Plaintiff's discovery deadline argument is unconvincing. Just because the discovery deadline is approaching does not somehow defeat

Defendants' scope and privilege concerns—at least until the Court rules on these issues. Moreover, it is worth noting again that aside from the Rule 30(b)(6) deposition of VMS, Defendants' motion does *not* seek a stay of party discovery. Nevertheless, Defendants acknowledge that, depending on how the Court rules on the pending Discovery Motions, the discovery deadlines may have to be revisited.

Second, Plaintiff cannot accurately characterize his discovery thus far as "in the ordinary course . . . to prove the merits of his claims." As Defendants have shown in their briefing on the Discovery Motions, Plaintiff has spent the vast part of his discovery efforts seeking information on Defendants' work for Dechert unrelated to the alleged republication of Plaintiff's trade secrets – thus well beyond the scope of his two remaining claims. (*See, e.g.*, D.E. 179 (arguing, *inter alia*, that at Mr. Del Rosso's individual deposition, "Plaintiff did not ask Del Rosso a single question about WeTransfer or the alleged creation of the blogs in 2018 and 2019.")) If Plaintiff failed to obtain discovery needed to "prove the merits of" his remaining claims, he had ample opportunity to do obtain that discovery.

Third, while Plaintiff mischaracterizes the parties' ongoing discovery dispute as one which has "thwarted" his discovery efforts, Plaintiff's apparent assuredness that he will prevail on the Discovery Motions does nothing to change the fact that this discovery dispute is pending before the Court, and

11

that these issues will continue to "thwart" his discovery until the Court makes a ruling.[6]

Accordingly, good cause exists for this Court to enter a temporary stay of third-party discovery and VMS's Rule 30(b)(6) deposition until the Discovery Motions are decided.

### D. Temporarily And Partially Staying Discovery Will Not Prejudice Plaintiff.

A temporary and partial stay of discovery until the Discovery Motions are decided will not prejudice Plaintiff. As previously stated, allowing the Court to resolve the parties' ongoing discovery before the parties proceed with any further third-party discovery or VMS's Rule 30(b)(6) deposition will allow the parties to pursue meaningful and efficient discovery. Indeed, absent a ruling on the Discovery Motions, the parties will continue to find themselves at an impasse, as Plaintiff's counsel has acknowledged (regarding VMS's Rule 12(b)(6) deposition):

> [Plaintiff] concur[s] with [Defendants] that additional meeting and conferring on issues related to the propriety of Plaintiff's 30b6 notice and/or the temporal or substantive scope of discovery in this case (at least until the Court rules on the many…many pending motions) seems futile.

---

[6] Defendants have explained a number of times that they had no involvement with the republication of Plaintiff's alleged trade secrets. While Plaintiff may be frustrated by Defendants' lack of discoverable information regarding the republication, that is not an indication of avoiding discovery but, rather, evidence that Defendants were not, in fact, involved in the republication.

12

*See* **Ex. A**.  Accordingly, a stay here would not "prevent[ ] [Plaintiff] from developing evidence in support of his case," but rather would allow for certain threshold discovery issues to be ruled upon (*i.e.*, scope, privilege) after which the parties will be aware of the parameters of discovery, and their associated duties to comply with discovery within these parameters.

Plaintiff argues that "as the clock ticks, evidence from third parties may be destroyed," yet he only provides an isolated example from PNC Bank regarding their inadvertent destruction of certain wire transfer records.  Surly Plaintiff does not believe that a reputable financial institution like PNC Bank is part of Defendants' purported scheme to "thwart" discovery in this case. Nevertheless, Plaintiff has not demonstrated any imminent threat to the destruction of evidence from the *many* third parties he has subpoenaed in this case.

Further, Plaintiff argues that a stay would "increase costs and allow Defendants to conjure up additional disputes that will continue to thwart the administration of justice[.]"  (D.E. 224, at p.7). To the contrary, a stay would *decrease* costs, as the inevitable discovery disputes surrounding Plaintiff's continuous third-party discovery efforts and VMS's upcoming Rule 30(b)(6) deposition will be avoided/mooted by way of the Court's ruling on the Discovery Motions.  Moreover, Plaintiff fails to explain how his speculation regarding the

13

potential "conjur[ing] up [of] additional disputes" is a cognizable "prejudice" to Plaintiff, and the Court should not entertain this argument.

Therefore, Plaintiff has not set forth any prejudice to him that outweighs the benefits of the Court entering a temporary stay of all third-party discovery and VMS's upcoming Rule 30(b)(6) deposition until the Court rules on the Discovery Motions.

## III. CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendants request that this Court (a) temporarily stay all third-party discovery and VMS's upcoming Rule 30(b)(6) deposition pending a ruling on the Discovery Motions heard on March 7, 2023; and (b) upon a ruling on the Discovery Motions, hold a status conference where the Parties and the Court can address the effect of that ruling on all outstanding discovery.

Respectfully submitted, this the 19th day of May, 2023.

> **NELSON MULLINS RILEY & SCARBOROUGH LLP**
>
> By: *Brandon S. Neuman*
> Brandon S. Neuman, NCSB# 33590
> Jeffrey M. Kelly, NCSB# 47269
> John E. Branch III, NCSB# 32598
> Nathaniel Pencook, NCSB# 52339
> Sam A. Rosenthal
> 301 Hillsborough Street, Suite 1400
> Raleigh, North Carolina 27603
> Telephone: (919) 329-3800
> Facsimile: (919) 329-3799
> brandon.neuman@nelsonmullins.com
> jeff.kelly@nelsonmullins.com
> john.branch@nelsonmullins.com
> nate.pencook@nelsonmullins.com
> sam.rosenthal@nelsonmullins.com
> *Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:  *Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal (*special appearance*)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the foregoing document contains 3,048 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 19th day of May, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: *Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel J. Pencook, NCSB# 52339
Sam A. Rosenthal (*special appearance*)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*