# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## Case No. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>  Plaintiff,<br><br>  v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>  Defendants. | **PLAINTIFF'S OPPOSITION TO NON-PARTY FIRST CITIZENS BANK & TRUST CO.'S MOTION FOR PROTECTIVE ORDER** |

Plaintiff Farhad Azima ("Azima" or "Plaintiff") hereby opposes the motion of non-party subpoena recipient First Citizens Bank & Trust Co. ("First Citizens") for a protective order related to two subpoenas *duces tecum* issued by Plaintiff to First Citizens in January and March of 2023 (collectively, the "Subpoenas"). *See* ECF No. 122-2 ("January Subpoena"); ECF No. 196-1 ("March Subpoena").

## INTRODUCTION

First Citizens has no basis to refuse to produce documents in response to a validly-served subpoena issued months ago. The bank's objections to the Subpoenas are simply a regurgitation of the repeated, baseless arguments Defendants have made to obstruct discovery in this case. Defendants have attempted to block nearly every subpoena recipient from producing relevant documents, either by moving to quash the subpoenas themselves or by

1

coordinating their arguments with third parties, as they clearly have here. Defendants, for example, previously moved to quash both Subpoenas issued to First Citizens, *see* ECF Nos. 122-23, 196-97, and Plaintiff responded. *See* ECF Nos. 125-26, 201. Discovery ends in approximately one month, and Defendants' stonewalling has worked: to date, Plaintiff has received almost nothing from Defendants and is embroiled in constant motions practice over nearly every third-party subpoena. First Citizens cannot shield itself from its independent subpoena obligations by hiding behind Defendants' failed positions and must produce documents responsive to the March Subpoena forthwith.

***First***, First Citizens incorrectly argues that the Court's January 23, 2023 text order ("January Text Order") staying a different subpoena applies to the March Subpoena. The January Text Order was limited to the January Subpoena, which sought different documents. The March Subpoena also seeks documents about which Plaintiff was not even aware at the time of the January Subpoena (due to Defendants' obstruction).

***Second***, First Citizens parrots Defendants' baseless argument that both Subpoenas are outside the scope of discovery – a rather unusual tact for a third-party bank to be making. The documents the Subpoenas seek are relevant and proportional because they directly target transfers of funds to Defendants' own bank accounts related to Plaintiff's conspiracy claim and

2

Defendants' defenses. The Court has already affirmed this is sufficient in the context of other bank subpoenas.

The Court should deny First Citizens' motion for a protective order related to the January and March Subpoenas.

## BACKGROUND

Plaintiff filed his Complaint on October 15, 2020—more than two and a half years ago. ECF No. 1. Since that time, Defendants have repeatedly filed motions to delay discovery in this matter.

PNC bank records revealed that Defendants used First National Bank to launder the proceeds of crime. Defendants received $35 million from Ras Al Khaimah ("RAK") and related entities and subsequently paid Shanahan Law Group ("Shanahan") $6.2 million through an account at First National Bank and paid GH Holding LLC ("GH Holding") $2.35 million through an account at First Citizens, all in the period relevant to this litigation. Given the substantial payment amounts and uncommon payment patterns, Plaintiff sought records for Shanahan and GH Holding to trace the payments. Plaintiff issued the January Subpoena to First Citizens to obtain GH Holding's records related to Defendants' PNC accounts and separately issued a subpoena to First National Bank to obtain Shanahan's records related to the $6.2 million in payments from Defendants. The January Subpoena specifically referenced the transfers from Defendants' PNC accounts to GH Holding.

3

The January Subpoena targeted the GH Holding bank records. At that time, Plaintiff was unaware that Defendants themselves had accounts at First Citizens because they failed to identify those accounts in an interrogatory that required them to identify all accounts owned, controlled, or utilized by Defendants. *See* Ex. A, Defs.' Resps. to Pls.' First Interrogatories at Interrog. #3 (Jan. 26. 2023). Defendants merely stated that "VMS's bank account with PNC Bank is the only bank account used by Defendants . . . ." *Id.* at 7.

On January 20, 2023, Defendants filed an emergency motion to quash the January Subpoena and the First National Bank subpoena. *See* ECF Nos. 122-23. They did not argue that the subpoenas targeted their own records, but rather that "[t]he [subpoenas] specifically target[ed] the bank records of Mr. Del Rosso's wife and his counsel." ECF No. 123 at 5; *see also id.* at 13. Based on this argument, on January 23, 2023, the Court entered the January Text Order staying production of the January Subpoena "until the Court rule[d] on Defendants' motion." *See* Text Order (Jan. 23, 2023). The Court's stay did not, however, extend beyond Defendants' narrow motion to quash.

Plaintiff deposed Defendant Del Rosso on February 13-14, 2023, and learned for the first time that Defendants banked with First Citizens after their accounts at PNC were closed. In response, on March 23, 2023, Plaintiff issued the March Subpoena to First Citizens requesting Defendants' bank records from 2021 to present, in order to cover the newfound accounts revealed

4

at Del Rosso's deposition. These are not documents that Plaintiff had previously requested through the January Subpoena because Plaintiff was unaware of their existence at that time.

In a continuation of its disruptive litigation practices, Defendants filed a motion to quash the March Subpoena. First Citizens did not file objections to the March Subpoena within the time provided by Federal Rule of Civil Procedure 45(d)(2), but now belatedly files this motion for a protective order.

## **ARGUMENT**[1]

"Protective orders pursuant to Rule 26(c) should be sparingly used and cautiously granted." *Armitage v. Biogen, Inc.*, No. 17-cv-1133, 2019 WL 79037, at *2 (M.D.N.C. Jan. 2, 2019) (cleaned up). Additionally, under Federal Rule of Civil Procedure 45(d)(3)(A), a court is only directed to quash a subpoena under limited circumstances, such as where a subpoena "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."[2] "District courts are afforded broad discretion with

---

[1] Given the obvious overlap, Plaintiff incorporates by reference the arguments from his Oppositions to Defendants' Motions to Quash the January and March Subpoenas. *See* ECF Nos. 125, 201.

[2] Fed. R. Civ. P. 45(d)(3)(B) also permits a court to quash a subpoena in other situations not relevant here.

5

respect to discovery generally, and motions to quash subpoenas specifically." *Cook v. Howard,* 484 F. App'x 805, 812 (4th Cir. 2012).

### I. The Court's January Text Order Does Not Apply to the March Subpoena.

First Citizens argues that the two subpoenas it has received are duplicative and therefore covered by the Court's narrow stay on the January Subpoena. But the March Subpoena requests different documents from the January Subpoena. The subpoena at issue here is based on newly obtained information about Defendants' financial accounts that Plaintiff was unaware of at the time he served the January Subpoena.

The January Subpoena concerned GH Holding, and the $2.35 million Defendants paid to GH Holding's First Citizen account from October 2018 to October 2019. The March Subpoena, in contrast, covers a different time period (2021 to present) and only concerns accounts in the names of Nicholas Del Rosso and Vital Management Services. The Subpoenas, in sum, target entirely different categories of information.

Defendants previously argued that the January Subpoena "target[ed] the bank records of Mr. Del Rosso's wife and his counsel." ECF No. 123 at 5. No such concerns are present with regard to the March Subpoena, which targets Defendants' own accounts. The January Text Order is therefore wholly inapplicable to the March Subpoena.

6

Case 1:20-cv-00954-WO-JLW   Document 236   Filed 06/02/23   Page 6 of 9

## II. The Subpoenas Request Documents that Are Relevant, Discoverable, and Within the Scope of Discovery.

First Citizens argues that both subpoenas seek documents beyond the scope of discovery. The documents sought are relevant and discoverable and such records will show that Defendants paid multiple co-conspirators to further the conspiracy, which is clearly relevant to the claims and defenses in this case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."); *see also* ECF No. 93 (ordering discovery on the operative claims and defenses).

The Court has already recognized the validity of subpoenas to another bank where Defendants hold accounts. *See* ECF No. 54 at 38 (holding that Defendants' bank records from [Defendants' bank account] dating back to 2014 "may have some bearing on Plaintiff's civil conspiracy claim"). The PNC records have demonstrated that RAK paid $35 million to Vital, a one-man company run by Del Rosso, and that Vital paid millions of dollars to hackers, such as CyberRoot. As a result, the documents pertaining to Vital and Del Rosso's bank accounts with First Citizens are likely to contain similarly relevant information. The fact that Defendants went to great efforts to conceal them from Plaintiff and the Court makes it even more likely that the accounts include relevant information.

7

The March Subpoena seeks facially relevant documents from Defendants' own bank records during a two-year period that are directly related to the claims and defenses in this case. The January Subpoena (along with the First National Bank subpoena) seeks documents and communications related to the accounts that received nearly $9 million from Defendants, most (if not all) of which came directly from RAK in payments that are temporally connected to the conspiracy that is the subject of this case.

Finally, though First Citizens makes a cursory argument that the Subpoenas are burdensome, it does not explain why that would be the case. Banks who receive subpoenas for bank records are typically able to quickly and easily produce bank statements and wire information. Plaintiff is willing to work with First Citizens to minimize any potential burden, but First Citizens should be ordered to produce responsive documents forthwith.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny First Citizens' motion.

This, the 2nd day of June, 2023.

       **MILLER & CHEVALIER CHARTERED**

       */s/ Kirby D. Behre*

       Kirby D. Behre (*pro hac vice*)
       Timothy P. O'Toole (*pro hac vice*)
       Lauren E. Briggerman (*pro hac vice*)
       Ian Herbert (*pro hac vice*)
       Calvin Lee (*pro hac vice*)
       Cody Marden (*pro hac vice*)
       900 16th Street, NW
       Washington, D.C. 20006
       Telephone: (202) 626-5800
       Fax: (202) 626-5801
       Email: kbehre@milchev.com
           totoole@milchev.com
           lbriggerman@milchev.com
           iherbert@milchev.com
           clee@milchev.com
           cmarden@milchev.com

       **FITZGERALD HANNA & SULLIVAN**

       /s/ *Douglas W. Hanna*
       Douglas W. Hanna, NCSB #18225
       3737 Glenwood Avenue, Suite 375
       Raleigh, NC 27612
       Telephone: (919) 863-9091
       Email: dhanna@fhslitigation.com
       *L.R. 83.1(d) Counsel for Plaintiff*