# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>  v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>    Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER** |

Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS") (collectively, "Defendants"), and pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure ("Rule(s)") and M.D.N.C. LR 26.1(d), hereby submit the following Response to Plaintiff's Motion to Modify the Scheduling Order.

## INTRODUCTION

Defendants respectfully submit that the 180-day extension for fact-discovery sought by Plaintiff is unrealistic and calculated to prolong a case which should be resolved shortly on a motion for summary judgment, thereby mooting the many discovery motions currently *sub judice*. As explained below, Defendants have recently learned that Plaintiff was aware, even prior to filing

1

this lawsuit, that all of his claims were time-barred, but concealed such facts from Defendants and the Court.

More specifically, Plaintiff alleged in his Complaint in this case that his alleged trade secrets were disclosed in 2016 on blog sites that used BitTorrent peer-to-peer transfers that were unavailable to the general public, (D.E. 1 ¶¶ 20, 21, & 23) and then only in 2018-19 was his data published on new links involving WeTransfer which rendered that data publicly accessible for the first time. (*Id.* ¶¶ 24 & 26). It was based on those allegations that the Court denied the motion to dismiss in part, holding that because the alleged use of WeTransfer rendering the data publicly available for the first time occurred less than three years prior to filing the lawsuit, the statute of limitations had not expired. (D.E. 79 at 11).

Accordingly, and as this Court has observed, the central issue to Plaintiff's remaining claims is whether Defendants instructed CyberRoot to republish his still-unidentified "trade secrets" using WeTransfer in 2018 and 2019. (*See e.g.*, D.E. 65, pp.23–25 (holding that the "2018-2019 conduct—the only allegations that are not time-barred"); D.E. 79, p.11 ("Crucially – from a statute of limitations standpoint – in May 2018, June 2018, and June 2019, the blogs were allegedly updated with links to WeTransfer sites that contained Plaintiff's trade secrets.")).

At the close of discovery in this matter, Defendants independently learned that Plaintiff has known for *years* that it was false to claim, as he did in the Complaint, that the data remained on dark web sites inaccessible to the public until 2018-19, when it was first published using WeTransfer. In fact, the data he alleged was published using WeTransfer in 2018-19 had been available through the same WeTransfer account since ***January 2017, more than three years prior to filing the lawsuit, and thus beyond the statute of limitations***. Although Plaintiff omitted this material – if not dispositive – fact from his pleadings and briefing in this matter, Defendants recently learned that Plaintiff admitted these facts in an undisclosed lawsuit that he brought in the Supreme Court of Brisbane, Australia shortly after filing this lawsuit. Defendants should not be forced to chase Plaintiff around the globe to obtain critical facts that should have been included in his pleadings and, certainly, produced in response to Defendants' basic discovery requests.

The discovery period in this matter, which has now expired, was proportionate to the significantly narrowed claims in this case, namely whether material constituting Plaintiff's trade secrets was published by Defendants using WeTransfer in 2018-19. It is evident that Plaintiff deliberately pled his case to conceal the fact that his purported WeTransfer claims were untimely (in addition to being based on false and stolen evidence). Although a narrow 30-day extension to fact discovery on the republication

3

claims is appropriate, and Defendants concur that an extension of expert discovery is necessary, Defendants oppose the broader relief sought by Plaintiff for the following reasons:

***First***, Defendants have participated in discovery, which should have been proportionate for all parties to pursue, regarding Plaintiff's unfounded allegation that Defendants and CyberRoot used WeTransfer to republish Plaintiff's data. The only reason a short extension of the discovery period is appropriate is because Plaintiff refused to identify his trade secrets, refused to answer basic facts about his case, and refused to sit for his duly-noticed deposition. Indeed, had Plaintiff been willing to be deposed, he would have been forced to admit that he was aware prior to filing this lawsuit that his alleged trade secrets were not published for the first time in 2018-19, as alleged in his complaint, but available publicly on WeTransfer in January 2017, as his expert admitted. There has never been a dispute between the parties as to the appropriateness of discovery on the WeTransfer allegations.

***Second***, Plaintiff's request to nearly double the discovery period is a transparent ploy to continue to use this case for disproportionate discovery in furtherance of other matters. Plaintiff has pursued expansive third-party discovery and taken or noticed depositions exceeding the seven depositions allotted to each party by this Court's order. As previously noted, Plaintiff "did not ask a single question about the operative allegations in the Complaint

4

concerning WeTransfer or the purported republication of Plaintiff's trade secrets[]" during the seven-hour deposition of Mr. del Rosso. (D.E. 193, pp. 9–10). That Plaintiff squandered the discovery period in pursuit of his other cases, instead of the WeTransfer allegations, is at his peril.

***Finally***, the Court should draw adverse inferences from (1) Plaintiff's refusal to respond to Defendants' discovery requests concerning the basic elements of his remaining claims and his refusal to attend his duly-noticed deposition; and (2) Plaintiff's failure to respond or rebut Defendants' substantial evidence that Plaintiff and his co-conspirators stole CyberRoot's bank statements, used that information to create a false story concerning VMS and CyberRoot, and is improperly pursuing excessive discovery for use in other proceedings, including litigation brought by non-parties.

In sum, what should have been a simple case about Plaintiff's data that was re-posted to existing blog sites using WeTransfer ***in January 2017*** has become buried in motions practice necessitated by Plaintiff's improper and excessive discovery for his other cases. There is no reason to grant an extension that would further deluge the Defendants and the Court in motions designed to obscure a simple fact: that this sham case should now be dismissed as time barred. Accordingly, Defendants respectfully request a case management conference concerning Plaintiff's request to modify the Scheduling Order, which Defendants submit should be limited to (i) a 30-day

5

extension of fact discovery focused on the identification of Plaintiff's purported trade secrets and Plaintiff's WeTransfer allegations, including the timeliness of his claim; and (ii) a modified 90-day schedule for expert discovery.

## BACKGROUND

Pursuant to the Scheduling Order entered by this Court on November 11, 2016, "[t]he parties shall designate experts by the close of fact discovery, and expert discovery shall conclude by August 1, 2023." (D.E. 93, p.2). Unless extended by the Court, fact discovery ended on July 1, 2023, and the parties were limited to seven depositions (including of any experts). *See id.* All discovery therefore concluded on August 1, 2023, unless an extension is granted. *Id.* Set forth below is a discussion of discovery conducted to date, as well as evidence bearing on whether an additional 180-day extension is either necessary or appropriate.

### I. Discovery To Date

Neither party disputes that discovery regarding the basic elements of Plaintiff's North Carolina Trade Secrets republication claim and the dependent civil conspiracy claim was proper. In his motion seeking a 180-day extension of the schedule for fact-discovery, Plaintiff has failed to identify any discovery which he still requires, or which Defendants failed to provide previously, bearing on that central issue. As noted previously, when deposed, Defendant

6

Del Rosso was not asked a single question about the use of WeTransfer, or the bogus claim that he or VMS published Plaintiff's data in 2018-19.

By contrast, Plaintiff steadfastly refused to identify his purported trade secrets or provide responses to Defendants' discovery requests regarding his claims, and in particular, any evidence regarding the central issue in this case, namely the use of WeTransfer. Plaintiff initially produced 124 documents, totaling 579 pages as part of his initial disclosures, and then produced a second tranche of 354,588 documents, totaling 1,007,076 pages. Neither production contained anything identifying what trade secrets were at issue in this case, how WeTransfer was used to publish Plaintiff's data, or that CyberRoot used WeTransfer.

Defendants also attempted through targeted discovery requests to obtain information bearing directly on the remaining claims in this case. Defendants served their First Set of Requests for Production on March 31, 2023, and their Second Set of Requests for Production on May 17, 2023, to which Plaintiff submitted responses on May 1, 2023, and June 1, 2023, respectively. Plaintiff's responses were deficient, still failing to address any of the key facts in this case. Plaintiff also represented that production was not complete, but failed to identify which documents remain to be produced and when they would be produced.

7

Because it was not apparent that Plaintiff's disorganized production of documents contained anything constituting a trade secret, Defendants served their First Set of Interrogatories on May 3, 2023. Plaintiff refused to respond to Defendants' First Set of Interrogatories and, accordingly, Defendants sent Plaintiff a letter on June 8, 2023, (*see* Ex. A), confirming that Plaintiff had refused to respond to Defendants' interrogatories and had waived their objections thereto. Defendants also addressed ongoing issues with Plaintiff's incomplete or deficient responses to Defendants' Requests for Production of Documents. While belatedly denying that he had waived any right to object to interrogatories or document requests, Plaintiff still failed to identify his alleged trade secrets, or any evidence regarding the use of WeTransfer. Additionally, based on the legally deficient excuse that because Defendants were challenging the scope of discovery, which was still pending before the Court, Plaintiff refused to sit for his deposition.[1]

---

[1] On June 7, 2023, Plaintiff unilaterally canceled his duly-noticed deposition by Defendants. Plaintiff's stated reason for unilaterally canceling his deposition was in retaliation for unresolved issues with respect to VMS's Rule 30(b)(6) deposition. Plaintiff had unilaterally noticed VMS's Rule 30(b)(6) deposition for January 27, 2023. On May 12, 2023, Plaintiff unilaterally cancelled VMS's Rule 30(b)(6) deposition, citing unresolved issues concerning the scope of discovery in this case. Plaintiff unilaterally re-noticed VMS's Rule 30(b)(6) deposition for June 8, 2023, which was after the hearing that this Court had originally noticed concerning the pending discovery motions. As the Court understandably cancelled the hearing on pending discovery motions, Defendants relied on, *inter alia*, their pending Motion for Protective Order and the unresolved issues cited by Plaintiff when he cancelled VMS's original 30(b)(6) deposition to cancel VMS's unilaterally re-noticed deposition. Notably, unlike Defendants, Plaintiff did not engage in a meet-and-confer process or seek a protective order over his duly-noticed deposition before unilaterally cancelling it.

Although Plaintiff ignored Defendants' ongoing requests with respect to the Requests for Production of Documents, on June 12, 2023, Plaintiff untimely served a document purporting to respond and object to Defendants' First Set of Interrogatories. On June 23, 2023, Defendants wrote to Plaintiff concerning his failure to participate in discovery. (Ex. B). As noted in the June 23, 2023, Letter, Plaintiff untimely issued bad faith "Responses and Objections" to Defendants First Set of Interrogatories, which wholly failed to respond concerning virtually every element of Plaintiff's remaining trade secrets claim. Additionally, the June 23, 2023, Letter noted that Plaintiff refused to attend his duly-noticed deposition.

As this Court is aware from prior motions, Defendants have maintained that Plaintiff is attempting to use discovery in this case for other proceedings which he has brought, and which involve numerous issues irrelevant here. Those concerns were exacerbated when, one week before the close of fact discovery, Plaintiff scheduled two depositions to occur on June 29, 2023, at 10 AM and two depositions to occur on June 30, 2023, at 10 AM.

## II. Evidence Withheld by Plaintiff Bearing on the Statute of Limitations

Notwithstanding the central importance of this issue to this case, Plaintiff has not produced any evidence to date regarding his allegation that

9

data published by Defendants remained concealed from the public on the deep web until 2018-19, when it was first published using WeTransfer.

Defendants recently obtained a filing by Plaintiff in another case in Australia, however, where Plaintiff filed a lawsuit with claims relating to the same data at issue in this case. In support of his claim in Australia, Plaintiff relied on a report by a computer expert, Christopher Tarbell. Significantly, Mr. Tarbell opined on how the same data at issue in both cases was published on the internet, and specifically, the use of WeTransfer to publish that data. But while Plaintiff alleged in this case that the data remained on the dark web until 2018-19, Mr. Tarbell opined:

> The downloadable content, distributed via WeTransfer, appears to have been at least initially uploaded to WeTransfer on or about January 27, 2017. This date is based on the timestamps and the file identification numbers that are available from the source code of the WeTransfer download webpages. The file identification numbers assigned to the upload appears to contain the date/time and the upload time stamp is accompanied with the size of the upload that matches the data.

Tarbell Aff., Dec. 8, 2020, ¶ 117. Mr. Tarbell's affidavits and expert reports were not produced to Defendants in this case, nor was the data that he preserved, notwithstanding the many discovery requests seeking information bearing on Plaintiff's claims and the fact that it was created just two months after Plaintiff filed this lawsuit.

## LEGAL STANDARD

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[T]he touchstone of 'good cause' under [Federal] Rule [of Civil Procedure] 16(b) is diligence." *Alston v. Becton, Dickinson and Co.*, No. 1:12CV452, 2014 WL 338804, at *2 (M.D.N.C. Jan. 30, 2014) (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D. W. Va. 1995)) (alterations in original); *see also id.* ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the *diligenc*e of the party seeking the extension.") (quoting Fed. R. Civ. P. 16 advisory comm.'s note, 1983 Amend., Discussion, Subdiv .(b)) (alterations in original)). Additionally, M.D.N.C. LR 26.1(d) states "[m]otions seeking an extension of the discovery period . . . . must set forth good cause justifying the additional time and will be granted or approved only upon a showing that the parties have diligently pursued discovery."

## ARGUMENT

### I. THE EXTENSION OF EXPERT DISCOVERY FOR NINETY DAYS AND THE EXTENSION OF FACT DISCOVERY BY THIRTY DAYS IS SUPPORTED BY GOOD CAUSE.

To date, Plaintiff has not meaningfully responded to Defendants' June 8, 2023 Letter, or June 23, 2023, letter, which memorialized Plaintiff's repeated refusal to participate in discovery in good faith. As such, Defendants have diligently attempted to seek fact discovery to inform expert discovery needs,

11

but are now unable to meet expert discovery deadlines due to Plaintiff's refusal to provide even basic discovery within the undisputed scope of this case. As explained above, based on Plaintiff's expert reports that he did not disclose, it is evident that Plaintiff and his expert retained data showing that the WeTransfer republication actually took place in January 2017—which is outside the applicable statute of limitations—but withheld this dispositive information to require an extension to the discovery period. Thus, Defendants need additional time to obtain discovery regarding the alleged use of data by WeTransfer and to assess expert needs due to Plaintiff's refusal to produce relevant discovery properly requested by Defendants.[2] *See Thacker v. Brady Servs., Inc.*, 367 F. Supp. 2d 882, 885 (M.D.N.C. 2005) (denying motion to extend discovery because a review of the discovery produced by the non-moving party showed it had not withheld relevant information).

Therefore, Defendants concur in Plaintiff's request to modify the Scheduling Order to extend expert discovery by ninety (90) days following the close of fact discovery, and recommend the disclosure of expert reports thirty (30) days following the close of fact discovery, and the disclosure of rebuttal reports thirty (30) days after receipt of opposing expert reports.

---

[2] There has never been a dispute over the appropriateness of discovery related to Plaintiff's Remaining Claims. As such, Plaintiff does not have a valid ground to withhold producing responses to Defendants' discovery requests and unilaterally cancelling Plaintiff's duly noticed deposition.

12

However, as explained below, an extension of fact discovery by one-hundred and eighty (180) days is not warranted, nor supported by good cause. Instead, Defendants recommend a 30-day extension of fact discovery following the Court's ruling on the scope of discovery. Such a limited extension is supported by good cause, as the parties have been operating under a prohibition on discovery motions, and therefore, despite Defendants' diligence in pursuing discovery, as demonstrated by the multiple letters Defendants have sent to Plaintiff, Defendants have been unable to compel requested discovery from Plaintiffs. Additionally, if for some reason the ruling by the Court on the proper scope of discovery necessitates any further extension of fact discovery, the parties would always be free to address this at a later date.

## II. FACT DISCOVERY SHOULD NOT BE EXTENDED BY ONE-HUNDRED AND EIGHTY DAYS.

Plaintiff has requested a large extension of fact discovery by one-hundred and eighty (180) days without showing good cause for why such an amount is necessary. As such, it appears Plaintiff is requesting an extension in order to continue seeking broad discovery to use in other cases, especially since Plaintiff's request is not informed by the Court's ruling on the proper scope of discovery in this matter, and based on Plaintiff's bad faith participation in discovery as explained above.

13

Furthermore, it appears Plaintiff is seeking a large extension now instead of waiting for the Court to rule on the pending scope issue before Defendants can bring any motion to resolve the Remaining Claims based on information Plaintiff conveniently left out of his complaint. Defendants recently discovered that Plaintiff has always known but did not disclose that the data that was available in 2016 through BitTorrent links was published through WeTransfer in 2017 on the same blog site and has continued to remain publicly available on the same blog site. In other words, the data available through WeTransfer, which is the subject of Plaintiff's Remaining claims, was actually published in January 2017 on the blog site and was maintained through the WeTransfer account that was established in January 2017. Therefore, Defendants have grounds to bring a preliminary summary judgment motion, which could moot all other pending motions.

### III. PLAINTIFF'S REFUSAL TO PARTICIPATE IN DISCOVERY IS UNDERSCORED BY THE UNREBUTTED EVIDENCE OF HIS BAD FAITH TRADE SECRETS CLAIM.

In addition to hiding the fact that WeTransfer was used beginning in 2017, Plaintiff has refused to answer basic questions about his case and how he came to know the facts that he alleged in his Complaint concerning CyberRoot's confidential bank statements. It bears repeating that Plaintiff relied on bank statements that were stolen, and Standard Chartered Bank records show payment to Plaintiff's agents in connection with those leaks. (*See*

14

D.E. 193, p.4 n.1 (explaining how Standard Charter Bank records corroborate the fact that Plaintiff and his agents Jonas Rey and Aditya Jain unlawfully obtained CyberRoot's bank statements to create this case)). Additionally, there is unrebutted evidence that Plaintiff and his attorneys attempted to bribe Pandey to provide false testimony against VMS and CyberRoot, and that Plaintiff entered into an agreement with a non-party in 2018 to provide information gained concerning Dechert LLP in litigation in exchange for money. (*See* D.E. 159, pp. 2-3, 6-9 (explaining how the factual basis of Plaintiff's case is based on a false report by Plaintiff's agent, Jonas Rey)).

## CONCLUSION

For all reasons explained above, Defendants respectfully request a status conference regarding the foregoing and that the Court (1) grant the Parties' request to extend expert discovery by ninety (90) days following the close of fact discovery, with the disclosure of expert reports thirty (30) days following the close of fact discovery, and the disclosure of rebuttal reports thirty (30) days after receipt of opposing expert reports; and (2) deny Plaintiff's request to modify the scheduling order to extend fact discovery by one-hundred and eighty (180) days, and instead order a 30-day extension of fact discovery following a ruling on the pending scope of discovery issue.

15

Respectfully submitted, this the 20th day of July, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: *Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel Pencook, NCSB# 52339
Sam A. Rosenthal *(special appearance)*
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of July 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:   *Brandon S. Neuman*
     Brandon S. Neuman, NCSB# 33590
     Jeffrey M. Kelly, NCSB# 47269
     John E. Branch III, NCSB# 32598
     Nathaniel J. Pencook, NCSB# 52339
     Sam A. Rosenthal (*special appearance*)
     301 Hillsborough Street, Suite 1400
     Raleigh, North Carolina 27603
     Telephone: (919) 329-3800
     Facsimile: (919) 329-3799
     brandon.neuman@nelsonmullins.com
     jeff.kelly@nelsonmullins.com
     john.branch@nelsonmullins.com
     nate.pencook@nelsonmullins.com
     sam.rosenthal@nelsonmullins.com
     *Counsel for Defendants*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the foregoing document contains 3,365 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 20th day of July, 2023.

> **NELSON MULLINS RILEY & SCARBOROUGH LLP**
>
> By: *Brandon S. Neuman*
> Brandon S. Neuman, NCSB# 33590
> Jeffrey M. Kelly, NCSB# 47269
> John E. Branch III, NCSB# 32598
> Nathaniel J. Pencook, NCSB# 52339
> Sam A. Rosenthal (*special appearance*)
> 301 Hillsborough Street, Suite 1400
> Raleigh, North Carolina 27603
> Telephone: (919) 329-3800
> Facsimile: (919) 329-3799
> brandon.neuman@nelsonmullins.com
> jeff.kelly@nelsonmullins.com
> john.branch@nelsonmullins.com
> nate.pencook@nelsonmullins.com
> sam.rosenthal@nelsonmullins.com
> *Counsel for Defendants*