# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FARHAD AZIMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV954 |
| | ) | |
| NICHOLAS DEL ROSSO and VITAL | ) | |
| MANAGEMENT SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

In 2020, Plaintiff Farhad Azima brought eleven state and federal claims against Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, Inc. ("Vital"), alleging that Defendants participated in a scheme to hack and publish Plaintiff's confidential business information online. (*See* Compl., Docket Entry 1.) Originally, Plaintiff raised three federal law claims and eight state law claims. (*See id.* ¶¶ 44-139.) After ruling on Defendants' motion to dismiss, two of Plaintiff's claims were allowed to proceed: a North Carolina misappropriation of trade secrets claim arising from the 2018-2019 online posting of new links to Plaintiff's confidential business data (Count VIII) and a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim (Count X). (*See* Docket Entry 54; Docket Entry 65 at 21-24.)[1] Defendants thereafter sought reconsideration of the partial denial

---

[1] Page numbers in this order refer to the page numbers found at the bottom right-hand corner of the documents as they appear in this Court's CM/ECF system.

of their motion to dismiss (Docket Entry 74) and sought dismissal under Federal Rule of Civil Procedure 12(b)(1), (Docket Entry 67). Both motions were denied, and discovery commenced in November 2022. (*See* Docket Entries 79, 80, 93.)

There are now several discovery motions before the Court: Defendants' Emergency Motion to Quash and for Protective Order Regarding Subpoenas to First National Bank of Pennsylvania ("FNB") and First Citizens Bank & Trust Co. ("FCB&T") (Docket Entry 122); Plaintiff's Motion to Compel Production of Documents by Defendants (Docket Entry 130); Motion of Shanahan Law Group, PLLC ("SLG") to Quash Plaintiff's Subpoena to FNB (Docket Entry 133); Non-Party Dechert LLP's ("Dechert") Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action (Docket Entry 136), Defendant Del Rosso's Motion for Protective Order (Docket Entry 142), Plaintiff's Motion to Compel Production and Testimony from Third-Party Dechert LLP (Docket Entry 144), Non-Party Christopher Swecker and Christopher Swecker Enterprises, LLC's Motion to Quash Plaintiff's Subpoena Duces Tecum (Docket Entry 150), Defendants' Motion to Quash and Motion for Protective Order Regarding Plaintiff's Subpoena to American Express (Docket Entry 154), Plaintiff's Motions to Compel Further Deposition Testimony of Defendant Del Rosso and for an Expedited and Consolidated Hearing and Shortened Response Timeline (Docket Entry 188), Defendants' Motion to Quash and for Protective Order Regarding Plaintiff's Second Subpoena to FCB&T (Docket Entry 196), Non-Party Craig Thomas Evers' Motion to Quash Plaintiff's Subpoena to Produce Documents and Subpoena to Testify at a Deposition and Motion for Protective Order (Docket Entry 198), Defendants' Motion to Stay Discovery

2

Pending a Ruling on Motions Sub Judice and to Provide Judicial Notice of Ruling in Foreign Proceeding on Privilege (Docket Entry 205), Defendant Vital's Motion for Protective Order (Docket Entry 216), Non-Party FCB&T's Motion for Protective Order (Docket Entry 225); and Plaintiff's Motion to Modify the Scheduling Order and to Extend Time (Docket Entry 244).[2]  Also before the Court are several motions to seal.  (Docket Entries 128, 158, 164, 168, 173, 181, 202, 210, 213, 218.)[3]

Discussion

Federal Rule of Civil Procedure 26 provides general rules regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Discovery rules are to be accorded broad and liberal construction. *See Herbert v. Lando,* 441 U.S. 153, 177 (1979); *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). Importantly, "[t]he civil discovery process is to be engaged in cooperatively." *Mills v. E. Gulf Coal Preparation Co., LLC,* 259 F.R.D. 118, 130 (S.D.W. Va. 2009); *see also Wagner v. St. Paul Fire & Marine Ins. Co.,* 238 F.R.D. 418, 422 (N.D.W. Va. 2006) ("Gamesmanship to evade

---

[2] The Court's latest hearing scheduled in late May was canceled; the undersigned finds no further hearing is necessary.

[3] The Court will address the motions to seal by separate order.

3

answering as required [in discovery] is not allowed."); M.D.N.C. LR 26.1(b)(1) ("The Court expects counsel to conduct discovery in good faith and to cooperate and be courteous with each other in all phases of the discovery process."). Yet, "hardball discovery is still a problem in some cases." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) (internal quotation marks, brackets, and ellipsis omitted).

Thus, judicial intervention is sometimes necessary, and district courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995); *Erdmann v. Preferred Research, Inc. of Georgia*, 852 F.2d 788, 792 (4th Cir. 1988). In addition, pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). Protective orders pursuant to Rule 26(c) "should be sparingly used and cautiously granted." *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987). "Not only are protective orders prohibiting depositions rarely granted, but [the movant] has a heavy burden of demonstrating the good cause for such an order." *Id.* at 653 (citation omitted). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (citation omitted). Because a trial court is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery," a

trial court also has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Rule 45 of the Federal Rules of Civil procedure governs subpoenas to third parties and likewise adheres to the scope of discovery under Rule 26. *See* Fed. R. Civ. P. 45; *see also Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No. 1:12CV27, 2014 WL 6686727, at *1 (M.D.N.C. Nov. 26, 2014) (unpublished). Thus, Rule 45(d)(3)(A)(iv) requires the Court to quash a subpoena that "subjects a person to an undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "A subpoena imposes an undue burden on a party when a subpoena is overbroad. A subpoena is overbroad if it does not limit the documents requested to subject matter relevant to the claims or defenses." *Jiangmen Kinwai Furniture Decoration Co.*, 2015 WL 5098791, at *6 (unpublished) (citation omitted). *See also Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) ("Relevance is thus the foundation for any request for production, regardless of the individual to whom a request is made."). Further, according to Rule 45(d)(3), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45 (d)(3)(A)(iii). "Although motions to quash subpoenas generally are brought in the court for the district where compliance is required," Rule 45 "does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No. 1:12CV27, 2014 WL 2559285, at *1 (M.D.N.C. June 6, 2014) (unpublished) (internal quotations and citation omitted).

5

A. <u>Defendants' Emergency Motion to Quash and for Protective Order Regarding Subpoenas to FNB and FCB&T.</u>

Defendants move to quash and for a protective order regarding subpoenas served by Plaintiff to FNB and FCB&T. (Docket Entry 122.) Defendants argue that the subpoenas are overbroad, unduly burdensome, and not proportionate to the needs of this case. (Docket Entry 123 at 10-15.) In addition, they argue that the FNB subpoena raises attorney-client privilege and ethical concerns. (*Id.* at 15-16.) Plaintiff asserts that Defendants have no standing to quash the subpoenas, the subpoenas are narrowly tailored and within the scope of discovery, and that the subpoenas present no privilege or ethical issues. (Docket Entry 125.) Plaintiff relies on his review of Defendant's other bank records showing that Ras Al Khaimah and other entities paid substantial amounts of money to Defendants, while Defendants made substantial payments to others like SLG. (*See* Docket Entry 127.) Plaintiff also contends that a co-conspirator has "signed a sworn witness statement that alleges, among other things, that Defendants made payments to witnesses through Shanahan." (Docket Entry 125 at 7; *see also* Docket Entry 126-2.)

"Before addressing the merits of [Defendants'] Motion, the Court must first determine whether [Defendants] ha[ve] standing to attempt to quash the applicable subpoenas duces tecum." *Singletary v. Sterling Transp. Co.,* 289 F.R.D. 237, 239 (E.D.Va. 2012). "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema,* 118 Fed. Appx. 740, 744 (4th Cir. 2005). Here, the undersigned concludes that Defendants do not have standing to challenge the subpoenas under Rule 45. Defendants

make only vague and conclusory arguments that the FNB subpoena "likely" infringes upon the attorney-client privilege because "it seeks all bank records of and relating to SLG's law firm trust account." (Docket Enty 123 at 15.)[4] Objections based upon privilege must be based upon more than conclusory assertions, *see* Fed. R. Civ. P. 45(e)(2) (requiring a subpoenaed party to "expressly make the claim" of privilege and "describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will enable the parties to assess the claim"); *In re Miller*, 357 N.C. 316, 336, 584 S.E.2d 772, 787 (2003) ("The burden is always on the party asserting the privilege to demonstrate each of its essential elements. This burden may not be met by mere conclusory or ipse dixit assertions[.]") (internal quotations and citation omitted).[5] Beyond Defendants' conclusory statements, "[t]ypically, a party has no

---

[4] In addition, Defendants' arguments regarding Rule 1.6(a) of the North Carolina Rules of Professional Conduct are unpersuasive. "The ethical obligations contained in the rules of professional conduct are not coextensive with the attorney-client privilege nor do they create such a privilege." *In re BK Racing, LLC*, 2023 WL 3331563, at *4 (Bankr. W.D.N.C. May 9, 2023) (unpublished). Rule 1.6(b)(1) provides an exception for disclosure of confidential information in compliance with a court order, *see* N.C. RPC 1.6(b)(1), therefore "the rule does not restrict a lawyer from releasing otherwise confidential information when complying with a lawfully issued subpoena." *In re BK Racing*, 2023 WL 3331563, at *4. *See also Raycap Asset Holdings Ltd. v. Gora LLC*, No. 320CV00363KDBDCK, 2023 WL 2089415, at *2 (W.D.N.C. Feb. 17, 2023) (unpublished) ("An attorney's obligation to protect his client's privileged information is not absolute and uncompromising but must be viewed in light of his simultaneous obligation as an officer of the court to promote the administration of justice and to comply with the court's rules, notices, and orders.").

[5] The attorney-client privilege is governed by state law in diversity cases. *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 285 n.5 (4th Cir. 2000) (citing Fed. R. Evid. 501) ("[I]n a diversity action the availability of an evidentiary privilege is governed by the law of the forum state.") Federal Rule of Evidence 501 states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. *See also Carolina Coupon Clearing, Inc. v. Cardinal Health Managed Care Servs., LLC*, No. 1:16CV412, 2018 WL 11424682, at *2 (M.D.N.C. Aug. 3, 2018) (unpublished) ("Where a federal court has jurisdiction over a case pursuant to § 1332 (diversity jurisdiction), state law governs questions of attorney client privilege.").

standing to challenge a subpoena issued to his or her bank seeking discovery of financial records because bank records are the business records of the bank, in which the party has no personal right." *United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007). *See also Clayton Brokerage Co. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) ("[T]he documents sought here are the business records of the bank, and the issuance of a subpoena requiring the bank to produce its records is not violative of any cognizable privacy right of the defendant."); *In re C & M Invs. of High Point Inc.*, No. 13-10661, 2015 WL 661177, at *2 (Bankr. M.D.N.C. Feb. 11, 2015) (unpublished) ("An individual cannot quash a subpoena issued to his or her bank on the theory that it infringes a privacy right."). Nevertheless, the Court will address Defendants' motion as they also seek a protective order under Rule 26. *See HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) ("Defendant has also made a motion for a protective order under Rule 26; therefore, Defendant has standing to challenge the subpoenas under Rule 26 standards, regardless of whether [it has] standing to bring a motion to quash under Rule 45." (internal citation and quotations omitted)); *Nallapaty v. Nallapati*, No. 5:20-CV-470-BO, 2022 WL 1508885, at *4 (E.D.N.C. May 12, 2022) (unpublished) ("[C]ourts within the Fourth Circuit have construed a motion to quash as one for a protective order where . . . the moving party relied on Rule 26 in arguing issues such as relevance and overbreadth.").

Defendants argue that the subpoenas are overbroad, unduly burdensome, and not proportionate to the needs of this case. (Docket Entry 123 at 10-15.) Defendants' arguments boil down to whether the information requested in the subpoenas are within the scope of

discovery and otherwise relevant to this action.  In fact, a dispute regarding relevancy and the scope of discovery cuts across the majority of the motions before the Court. Relevancy "essentially involves a determination of how substantively the information requested bears on the issues to be tried." *Mills v. East Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 131 (S.D. W. Va. 2009) (internal quotation marks omitted).  Indeed, relevance has been "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Shackleford v. Vivint Solar Dev. LLC*, No. CV ELH-19-954, 2020 WL 3488913, at *5 (D. Md. June 25, 2020) (internal quotation marks and citation omitted).  However, "[e]ven assuming that th[e] information is relevant (in the broadest sense), the simple fact that requested information is discoverable . . . does not mean that discovery must be had.  On its own initiative . . ., a district court may limit [discovery] . . . ." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).

Here, the subpoena to FNB seeks:

> All documents and communications relating to accounts held in the name of, owned by, or for the benefit of Shanahan Law Group, Kieran Shanahan, Nicholas Del Rosso or Vital Management Services, Inc. This request includes transfers to and from those accounts, including but not limited to transactions between Shanahan Law Group and Vital Management Services, Inc., totaling approximately $6.2 million between June 2017 and November 2020. This request includes but is not limited to bank statements, account opening documents, communications about the accounts or with the account holders, and records of money transfers via wire, SWIFT, check, or other method.

(Docket Entry 122-1 at 10.)  The FCB&T subpoena seeks:

> All documents and communications relating to accounts held in the name of, owned by, or for the benefit of GH Holdings LLC,

9

Kristin White Del Rosso, Nicholas Del Rosso, or Vital Management Services, Inc. This request includes transfers to and from those accounts, including but not limited to transactions between GH Holdings LLC and Vital Management Services, Inc., totaling $2.325 million between October 2018 and October 2019. This request includes but is not limited to bank statements, account opening documents, communications about the accounts or with the account holders, and records of money transfers via wire, SWIFT, check, or other method.

(Docket Entry 122-2.) The relevant time period for documents noted on both subpoenas is "August 1, 2014 until now." (Docket Entry 122-1 at 8; Docket Entry 122-2 at 8.)

As previously stated, Plaintiff's two remaining claims are a North Carolina misappropriation of trade secrets claim and a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim. (*See* Docket Entry 54, Docket Entry 65 at 21-24.) "The elements of an action for misappropriation of trade secrets are (1) the defendant knows or should have known of the trade secret and (2) the defendant "has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." *Creative Snacks, Co., LLC v. Hello Delicious Brands LLC*, No. 1:17CV50, 2017 WL 4043564, at *8 (M.D.N.C. Sept. 12, 2017) (citing N.C. Gen. Stat. § 66-155) (unpublished) (internal quotations and brackets omitted). Plaintiff need not rely on direct evidence "to establish a claim for misappropriation of trade secrets; rather, such a claim may be proven through circumstantial evidence." *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 658, 670 S.E.2d 321, 329 (2009). "The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the

10

conspirators; and (4) pursuant to a common scheme." *Privette v. Uni. of N.C.*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989) (citations omitted). There is not a separate civil action for civil conspiracy in North Carolina. *Piraino Bros., LLC v. Atl. Lin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011) (citing *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005)). Instead, "civil conspiracy is premised on the underlying act." *Harris v. Matthews*, 361 N.C. 265, 273, n.2, 643 S.E.2d 566, 571, n.2 (2007).

Considering the motion and based upon the nature of the claims, the undersigned concludes that the information Plaintiff seeks in the subpoenas to FNB and FCB&T is relevant to Plaintiff's remaining claims to the extent that they may reveal the financial trail behind Defendants' alleged misappropriation of Plaintiff's trade secrets and the related conspiracy of such. (*See* Compl. ¶ 114 ("Upon information and belief, Defendants Del Rosso and Vital, who were engaged by Dechert LLP, were paid substantial sums of money by Dechert LLP to conspire to misappropriate Azima's trade secrets."); ¶ 115 ("Del Rosso and Vital paid CyberRoot more than $1 million to conspire to misappropriate Azima's trade secrets."). However, the Court finds that the subpoenas are overbroad with regard to the time period. From a statute of limitations standpoint, the Court has limited Plaintiff's remaining two claims to conduct Defendants allegedly engaged in between 2018 and 2019. (*See* Docket Entry 65 at 17-18, 23-24; Docket Entry 79 at 7-11.) However, when setting the temporal scope of discovery, a Court is not restrained to the limitations period. *See, e.g., Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 (D. Kan. 2004) ("With regard to temporal scope, discovery of information both before and after the liability period ... may be relevant and/or reasonably

11

calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period."). *See also Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217 (D. Del. 1985) ("Particularly where allegations of conspiracy or monopolization are involved, . . . broad discovery may be needed to uncover evidence of invidious design, pattern or intent."); *Williams v. AT&T Servs., Inc.*, No. 3:21-cv-617, 2022 WL 1814630, at *2 (W.D.N.C. June 2, 2022) (unpublished) (Courts "regularly" find that discovery can extend to events "years before the alleged conduct at issue"); *Hum. Rts. Def. Ctr. v. Jeffreys*, No. 18 C 1136, 2022 WL 4386666, at *5 (N.D. Ill. Sept. 22, 2022) (unpublished) ("It is well established that conduct outside the limitation period may still be relevant as background evidence in support of a timely claim.") (internal quotations and citation omitted). Given the allegations that the agreement to attack Plaintiff started back in early 2015, *see* Compl. ¶ 14, and also considering the timing of the alleged significant payments by Defendants to CyberRoot around late July and early August 2016, the undersigned thus concludes that the appropriate time period for the FNB and FCB&T subpoenas, and the general temporal scope of discovery in this case, is March 2015 through October 15, 2020, at the time the Complaint was filed in this action. Further, the subpoenaed records should be produced subject to the parties' confidentiality protective order, which has been approved by the Court. (*See* Docket Entry 177.) Accordingly, the Court declines to quash the FNB and FCB&T subpoenas, but issues a protective order limiting their scope as stated herein. Further, in light of this ruling, the Court grants Defendants' motion to quash and for a protective order regarding the second subpoena (Docket Entry 196) issued to

12

FCB&T dated March 23, 2023 as it seeks a subset of the bank records sought by the first FCB&T Subpoena and is otherwise beyond the temporal scope. (*See* Docket Entry 196-1.)[6]

B. Plaintiff's Motion to Compel Production of Documents by Defendants

Plaintiff moves to compel production of documents by Defendants in response to Plaintiff's First Set of Requests for Production served in November 2022. (Docket Entry 130.) Defendants filed responses and objections to the discovery requests in December 2022, but produced no responsive documents with its responses and objections at that time. (*See* Docket Enty 131-2.) On January 20, 2023, Defendants produced approximately 45 GBs of data and stated in their production cover letter that the data was "previously discussed in the UK matter and in associated testimony." (Docket Entry 131-3.) Plaintiff argues that Defendants have only produced Plaintiff's "own data back to him – data that was previously produced by other parties in another matter and is responsive to just one of the 15 outstanding requests. Defendants have produced no other documents or logs. They have produced none of their own documents or communications." (Docket Entry 131 at 6.) Plaintiff contends that production is warranted because the requests seek relevant information, and Defendants' objections are insufficient and do not otherwise warrant grounds for failing to produce any documents. (*Id.* at 7-12.) Defendants oppose Plaintiff's motion, asserting that the factual basis of Plaintiff's remaining claims against Defendants is false, Plaintiff is pursuing excessive

---

[6] Further, Non-Party FCB&T has filed a late motion for a protective order concerning the subpoenas issued by Plaintiff. (Docket Entry 225.) The Court's order staying production of the first subpoena pending a ruling on Defendants' motion to quash had no bearing on FCB&T's rights to file a motion to quash under Rule 45. In any event, FCB&T's motion is granted in part and denied in part to the extent it shall comply with the first FCB&T Subpoena consistent with the ruling herein on Defendants' motion.

discovery for an improper purpose, and Plaintiff's motion is otherwise facially deficient and premature. (Docket Entry 157.)

The Court will grant Plaintiff's motion, except that the discovery requested will be limited with regard to temporal scope. Again, based upon the two remaining claims in this action, the undersigned finds that the discovery requests are relevant to the claims and defenses in this matter. Defendants oppose Plaintiff's motion partly on the assertion that the factual basis of Plaintiff's remaining claims against Defendants is false. (*See* Docket Entry 157 at 13-14 ("Given that Plaintiff knows that Defendants did not participate in the [remaining claims], it stands to reason that Plaintiff knows that fishing into every aspect of Defendants' business and personal accounts will not yield relevant information.").) However, Defendants' argument touches on the merits of Plaintiff's claim and are thus inappropriate to entertain in a discovery dispute. *See Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 257 (M.D.N.C. 2001) (arguments that claims have no merit are "not the kind of argument that the Court can adequately entertain in a discovery dispute"). Further, the Court has no reason to believe that Plaintiff is pursuing discovery for an improper purpose. Moreover, the Court's entry of the confidentiality protective order should alleviate Defendants' confidentiality concerns. Accordingly, Plaintiff's motion will be granted, except that the discovery requests will be limited to the time period between March 2015 through October 15, 2020 at the time the Complaint was filed in this action.[7]

---

[7] To the extent Plaintiff requests attorney's fees pursuant to Federal Rule of Civil Procedure 37, the undersigned finds that such fees are not warranted in regard to this motion.

C. Motion for SLG to Quash Plaintiff's Subpoena to FNB

       SLG moves to quash the subpoena to FNB. (Docket Entry 133.) Attorney Kieran J. Shanahan and SLG previously represented Defendants in this matter until withdrawing from the case via Court Order on October 14, 2022. (*See* Docket Entries 9, 88.)[8] SLG asserts that Defendants are "among its current clients and has a continuing attorney-client relationship with both Defendants." (Docket Entry 133 at 4.) Like Defendants' motion to quash FNB's subpoena, SLG makes similar arguments regarding scope, proportionality and confidentiality issues, as well as a number of attorney-client privilege, work product doctrine and ethical issues. (*See* Docket Entry 134.) Whether challenged under Rule 45 or Rule 26, SLG's arguments are unpersuasive for the reasons previously articulated in the Court's analysis of Defendants' motion to quash. (*See* supra § A.) The Court has already found that the information sought is relevant, and SLG's conclusory assertions that the bank records may implicate privilege are insufficient. Further, any costs burden is attributed to FNB, not SLG. Therefore, consistent with the findings above, SLG's request to quash the subpoena to FNB will be denied, but the subpoena will be modified with regard to the time period to March 2015 through October 15, 2020.

D. Non-Party Dechert's Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action

       Dechert moves to quash Plaintiff's subpoena which requires it to prepare a corporate representative for a Rule 30(b) deposition on numerous subjects. (Docket Entry 136.)

---

[8] In the motion to withdraw, it was represented that Mr. Shanahan was no longer practicing with Nelson Mullins Riley & Scarborough, LLP. (*See* Docket Entry 84.)

Dechert contends that Plaintiff's subpoena is overbroad, unduly burdensome, and not proportionate to the needs of this case. (Docket Entry 137 at 5-7.) Dechert further argues that the subpoena implicates complex issues of privilege as it seeks information from a law firm and its work on behalf of its clients. (*Id.* at 7-8.) Lastly, Dechert argues that Plaintiff has not attempted to obtain the information it seeks from Defendants themselves in this action. (*Id.* at 8-9.) Plaintiff opposes, contending that the scope is appropriate, any privilege claims are premature, and Dechert's testimony is unique, thus Plaintiff cannot get the information from any other source, including Defendants. (*See* Docket Entry 148.)

Again, the Court declines to quash the subpoena to Dechert. "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979). Extraordinary circumstances are not present here. The Rule 30(b)(6) subpoena to Dechert seeks information relevant to the remaining claims and defenses in this matter. Further, Dechert's arguments that the subpoena is outside the scope of Plaintiff's remaining claims are unpersuasive as it takes a similar position to Defendants that the relevant period for discovery should be limited to a period around 2018 and 2019. As stated above, the Court is not limited to such. As to Dechert's attempts to raise privilege, it's argument amounts to a blanket assertion of privilege which is premature at this time and does not meet its burden under the applicable rules. Dechert's argument relies upon the position that "invocation of the protections of the attorney-client privilege and work-product doctrine may be effective without requiring a detailed privilege log," *In re Application for an Ord. Pursuant to 28 U.S.C. §*

16

*1782 to Conduct Discovery for use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017), in circumstances "when a discovery request demands production of an attorney's records in connection with representation of a client." (*Id.*) However, Dechert has made nothing more than conclusory arguments of not just privilege, but burden, which will not suffice here. *See* Fed. R. Civ. P. 45(e)(2); *In re Miller*, 357 N.C. at 336, 584 S.E.2d at 787; *Meyer v. Bank of Am., N.A.*, No. 2:18-CV-218, 2018 WL 6436268, at *5 (S.D. Ohio Dec. 7, 2018) (unpublished) ("If blanket assertions of privilege are insufficient to quash a subpoena, so too are conclusory statements of burden."). Rather, Dechert's Rule 30(b) representative can, in good faith, lodge privilege objections, and state their specific basis for each objection during questioning at the deposition. *See Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 4 (D.D.C. 2017) ("Defendants can assert the attorney-client privilege or the attorney work-product doctrine if either of them believes in good faith that it applies to the answer to any question."). Further, while "[n]onparties are strangers to the litigation,. . . have no dog in [the] fight," *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (citation and quotations omitted), and while there may be some overlap of information that can be obtained through Defendants, there is information of marginal benefit which Dechert may disclose through its corporate representative that cannot otherwise be discovered through a party-opponent. *See id.* ("The information sought must likely . . . have marginal benefit in litigating important issues. . . . Courts should also consider what information is available to the requesting party from other sources."). Therefore, Dechert's request to quash will be denied. However, for reasons previously articulated, the

undersigned finds that the temporal scope of the subpoena will be limited to the time period between March 2015 through October 15, 2020.

E. Plaintiff's Motion to Compel Production and Testimony from Third-Party Dechert LLP

Related to Dechert's motion to quash, Plaintiff has also filed a motion to compel production of documents and testimony from Dechert. (Docket Entry 144.) Plaintiff asserts that Dechert cannot justify full non-compliance, particularly where it has admitted in a foreign proceeding that it possesses some data belonging to Plaintiff. (Docket Entry 145 at 7; Ex. 2, Docket Entry 144-2 at 5.) Further, Plaintiff asserts that Dechert's general blanket objections are insufficient. (Docket Entry 145 at 9-11.) Dechert has responded, again pointing to undue burden, scope and attorney-client privilege. (Docket Entry 176.)

At the outset, the Court notes that consistent with its ruling on Dechert's motion to quash, Plaintiff's motion to compel testimony is granted for the same reasons. As to the subpoena to Dechert to produce documents the undersigned again concludes that Dechert has made nothing more that conclusory assertions of burden and privilege. The information sought is relevant to the claims and defenses in this action. Dechert should produce all non-privileged documents in response to the subpoena and produce a privilege log identifying any withheld documents and the basis for any appropriate privilege designation. *LLC SPC Stileks v. Republic of Moldova*, No. 14-CV-1921 (CRC), 2023 WL 2610501, at *5 (D.D.C. Mar. 23, 2023) (unpublished) (requiring defendant to "produce all non-privileged responsive documents as well as a privilege log describing any withheld documents and the basis for asserting privilege"). The undersigned also limits any production to the time period between March

18

2015 through October 15, 2020. Further, Dechert should prepare to appear for a Rule 30(b)(6) deposition in response to Plaintiff's subpoenas as addressed in Dechert's motion to quash above.

## F. Non-Party Christopher Swecker and Christopher Swecker Enterprises, LLC's Motion to Quash Plaintiff's Subpoena Duces Tecum

Non-Party Christopher Swecker and Christopher Swecker Enterprises, LLC moves to quash the subpoena issued to them as overbroad and unduly burdensome, as well as requesting privileged information. (Docket Entry 150.) The Court concludes that the information sought in the subpoena is relevant and the arguments otherwise in favor of quashing the subpoena are conclusory, and that Mr. Swecker should produce all non-privileged documents in response to the subpoena and produce a privilege log identifying any withheld documents and the basis for any appropriate privilege designation. To such extent, the request to quash is denied, however the temporal scope of the subpoena should be limited to the time period between March 2015 through October 15, 2020.

## G. Defendants' Motion to Quash and for Protective Order Regarding Plaintiff's Subpoena to American Express

Defendants also move to quash the subpoena issued to American Express, contending that such subpoena (1) seeks overbroad discovery into Defendants' personal and business confidential financial information, (2) they may implicate various other privileges, and (3) they may violate the personal privacy rights to non-parties. (*See* Docket Entries 154, 155.) In a recent order, the Eastern District of North Carolina compelled American Express to comply with the terms of the subpoena or otherwise show-cause why it should not be required to

comply. (*See* Docket Entry 243-1.) In light of that order, Defendants' instant motion is denied. Alternatively, the undersigned concludes that the motion is denied as the subpoena to American Express is relevant as it may have some bearing on Plaintiff's civil conspiracy claim. *See Nallapati*, 2022 WL 274405, at *2 (relevancy is broadly construed). Moreover, Defendants make no more than conclusory arguments. *See U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, No. 5:13-CV-00527-F, 2016 WL 10542367, at *3 (E.D.N.C. Apr. 22, 2016) (unpublished) ("The party seeking protection from responding to discovery must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law.").

H. Motions Regarding the Testimony of Defendant Del Ross

Defendants and Plaintiff have both filed motions regarding the scope of the deposition testimony of Defendant Del Rosso (Docket Entries 142, 188), and Defendant Vital's related motion for a protective order regarding the scope of Vital's Rule 30(b)(6) deposition (Docket Entry 216). Defendants seek to limit the scope of the depositions of Defendant Del Ross individually and in his capacity as the Rule 30(b)(6) deponent for Vital. The Federal Rules of Civil Procedure and local rules of this Court require a deponent to answer all non-privileged questions absent the Court's direction limiting evidence. *See* Fed. R. Civ. P. 30(c)(2); MDNC LR 30.1. The undersigned finds that Defendants' arguments for limiting the scope of the depositions to be unpersuasive, except that the Court concludes that the period of relevancy here is between March 2015 through October 15, 2020. Defendants' objections on other relevancy grounds are otherwise unwarranted. Further, while Defendants seek to exclude

Plaintiff from inquiring into Defendant Del Rosso's work done in furtherance of Dechert's representation on Ras al Khaimah and its related entities, Defendants have made nothing more than conclusory assertions of privilege and assume that all information provided would be subject to the attorney-client privilege. *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *2 (S.D.N.Y. May 7, 2013) (unpublished) ("It cannot be assumed, however, that the only relevant information [an individual] possesses is privileged."). Privilege assertions should be properly lodged during the depositions and not presented in conclusory fashion. *In re Miller*, 357 N.C. at 336; *Window World of Baton Rouge, LLC v. Window World, Inc.*, No. 15 CVS 1, 2019 WL 3995941, at *31 (N.C. Super. Aug. 16, 2019) ("describing a document as 'regarding' or 'related to' 'legal advice' is of no more assistance to a party seeking to test a privilege claim than generally asserting that the document is protected by the attorney-client privilege."), *aff'd*, 2021-NCSC-70, ¶ 119, 377 N.C. 551, 857 S.E.2d 850.

Further, as to the request for a protective order forbidding or limiting the Rule 30(b)(6) deposition of Defendant Del Rosso, the Court only limits the temporal scope to the time period between March 2015 through October 15, 2020. The information in the deposition topics is otherwise relevant to Plaintiff's remaining claims and Defendants' defenses thereto. While Defendants seek blanket privilege and work-product protection regarding any work it has done with "Dechert in furtherance of Dechert's representation of RAK and its related entities," Docket Entry 217 at 7, Defendants have not "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed--and do[ne] so in a manner that, without revealing information itself privileged or protected, w[ould] enable

21

other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also In re Miller*, 357 N.C. at 336. Indeed, "courts have rejected a party's assertion of privilege or work product protection prior to a Rule 30(b)(6) deposition unless the requested topics, on their face, call for testimony invading the attorney-client privilege or attorney work product doctrine." *St. John Haney v. Kavoukjian*, No. CV 2:19-2098-RMG, 2020 WL 12762509, at *3 (D.S.C. Aug. 3, 2020) (unpublished). The Court concludes that the topics, on their face, do not do so. Therefore, the motions will be denied in part and granted in part based on the limitations to the temporal scope, and Defendant Del Rosso shall continue his deposition and answer questions presented, and counsel for Defendant Del Rosso shall appropriately set forth privilege assertions. Further, Plaintiff's request for an expedited hearing is moot.

I. Non-Party Craig Thomas Evers' Motion to Quash Subpoena to Produce Documents and Subpoena to Testify at a Deposition and Motion for Protective Order

Non-Party Craig Evers seeks to quash the subpoenas to testify and produce documents as overbroad, unduly burdensome, not proportionate to this matter, and overall unlikely to lead to the production of admissible evidence. (Docket Entry 198.) Mr. Evers also asserts that he is unfamiliar with individuals and entities for which information is sought, and the information involves time periods that he had no involvement with Defendants. (*Id.* at 1-2; *see also* Craig Evers Declaration, Docket Entry 199.) Mr. Evers further contends he has not worked for Defendants as a personal investigator since "very early in 2014," *see* Evers Decl. ¶ 11, while Defendant Del Rosso indicates that it was 2015 when Mr. Evers parted ways with Defendant Vital. (*See* Docket Entry 215 at 5-6.) A party or non-party cannot produce documents it does not have. *See Thacker v. Brady Servs., Inc.*, 367 F. Supp. 2d 882, 885

(M.D.N.C.) ("The federal rules do not require a party to produce what it does not possess or control."), *aff'd*, 144 F. App'x 328 (4th Cir. 2005); *MetroPCS v. Thomas*, 327 F.R.D. 600, 624 (N.D. Tex. 2018) ("[A] non-party cannot produce what it does not have. And, so, clearly, the court cannot compel a ... non-party to produce non-existent documents.") (internal quotations and brackets omitted). However, Mr. Evers's position that it has no such documents to produce nor testimony to provide is questionable, as his belief of what is *relevant* in this matter is similar to that of Defendants and other non-parties herein. Here, the undersigned concludes that the subpoenas request relevant information based on the remaining claims in this action. The Court further concludes that Mr. Evers's arguments of undue burden are unpersuasive and is outweighed by Plaintiff's need for the relevant discovery sought here. Thus, Plaintiff should be permitted to question Mr. Evers on matters relevant here, and Mr. Evers should produce documents, to the extent he possesses any, in response to the document discovery requests, limited to the time period between March 2015 through October 15, 2020. Mr. Evers's request to quash is thus denied, except as modified by the time period herein.

J. Defendants' Motion to Stay/Plaintiff's Motion to Modify Scheduling Order

Defendants move to stay discovery pending a ruling on other discovery motions discussed herein and to provide judicial notice of a ruling in a foreign proceeding. (Docket Entry 205.) To the extent it seeks a stay, Defendants' motion is moot in light of the Court's ruling herein. Moreover, the Court finds unpersuasive the relevance of any application of the attorney-client privilege applying foreign law to the issue of whether communications and

23

documents involving Defendants may be privileged. (*See* Docket Entry 206 at 11-12; *see also* Docket Entry 205-17.)

As to Plaintiff's motion to modify the scheduling order (Docket Entry 244), the Court recognizes that substantial discovery is outstanding in light of the discovery disputes that have been pending before the Court. For good cause shown, Plaintiff's motion will be granted in part, as set forth in the deadlines below.

<u>Conclusion</u>

For the reasons stated herein, the following motions are **GRANTED IN PART AND DENIED IN PART** as set out above: Defendants' Emergency Motion to Quash and for Protective Order Regarding Subpoenas to First National Bank of Pennsylvania and First Citizens Bank & Trust Co. (Docket Entry 122); Plaintiff's Motion to Compel Production of Documents by Defendants (Docket Entry 130); Motion of Shanahan Law Group, PLLC to Quash Plaintiff's Subpoena to FNB (Docket Entry 133); Non-Party Dechert LLP's Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action (Docket Entry 136); Defendant Del Rosso's Motion for Protective Order (Docket Entry 142); Plaintiff's Motion to Compel Production and Testimony from Third-Party Dechert LLP (Docket Entry 144); Non-Party Christopher Swecker and Christopher Swecker Enterprises, LLC's Motion to Quash Plaintiff's Subpoena Duces Tecum (Docket Entry 150); Plaintiff's Motions to Compel Further Deposition Testimony of Defendant Del Rosso and for an Expedited and Consolidated Hearing and Shortened Response Timeline (Docket Entry 188); Non-Party Craig Thomas Evers' Motion to Quash Plaintiff's Subpoena to Produce Documents and

24

Subpoena to Testify at a Deposition and Motion for Protective Order (Docket Entry 198); Defendant Vital's Motion for Protective Order (Docket Entry 216); Non-Party FCB&T's Motion for Protective Order (Docket Entry 225); and Plaintiff's Motion to Modify the Scheduling Order and to Extend Time (Docket Entry 244).

**FURTHER**, as set forth herein, **IT IS ORDERED** that Defendants' Motion to Quash and Motion for Protective Order Regarding Plaintiff's Subpoena to American Express (Docket Entry 154) is **DENIED**, Defendants' Motion to Quash and for Protective Order Regarding Plaintiff's Second Subpoena to FCB&T (Docket Entry 196), is **GRANTED**, and Defendants' Motion to Stay Discovery Pending a Ruling on Motions Sub Judice and to Provide Judicial Notice of Ruling in Foreign Proceeding on Privilege (Docket Entry 205) is **DENIED IN PART AND MOOTED IN PART**.

**FURTHER**, all outstanding discovery subject to the motions herein shall be produced within fourteen (14) days of this Order, and depositions shall occur within thirty (30) days of this Order. As to all other discovery, fact discovery shall be extended up to and including October 31, 2023, expert reports shall be disclosed by November 7, 2023, and expert discovery (and overall discovery) shall conclude by November 30, 2023. The parties should not anticipate any further extension of the discovery deadlines. The parties shall adhere to the Protective Order with respect to discovery in this matter (*see* Docket Entry 177).

25

Failure to comply with the Court's Order may warrant sanctions or civil contempt under Civil Procedure Rules 37 and 45.

**SO ORDERED**.

_____
/s/  Joe L. Webster
United States Magistrate Judge

July 25, 2023
Durham, North Carolina