# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>　　　　　　　　Defendants. | **NON-PARTY DECHERT LLP'S STATUS REPORT ON DISCOVERY EFFORTS AND MOTION TO EXTEND DEADLINES** |

Non-Party Dechert LLP ("Dechert"), through counsel, reports to the Court on its substantial discovery efforts in this case, including its substantial production of documents in response to Plaintiff's non-party subpoena, and other extensive work to comply with the Court's recent Order (D.E. 248), and respectfully moves the Court, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, Local Rule 6.1, and the Court's inherent authority, for a modest extension of the deadlines to complete additional document productions and conduct a Rule 30(b)(6) deposition of Dechert.

In support of this motion, Dechert shows the Court the following:

1

## Status Report on Discovery Efforts

1. The discovery sought from Dechert in this lawsuit concerns matters that are the subject of multiple related proceedings across domestic and foreign jurisdictions.

2. Most notably, Plaintiff's allegations here previously were used to assert counterclaims against Dechert, Dechert's client Ras al Khaimah Investment Authority (RAKIA), and others in the United Kingdom High Court of Justice in a case captioned *Ras al Khaimah Investment Authority v. Azima*, No. HC-2016-002798 (HCJ filed Sept. 30, 2016) (the "UK Litigation").

3. Plaintiff also has asserted claims against Defendants, Dechert, and others in the United States District Court for the Southern District of New York, in a case captioned *Azima et al. v. Dechert LLP et al.*, No. 1:22-cv-8728-PGG (S.D.N.Y. filed Oct. 13, 2022) (the "SDNY Litigation").[1]

4. Dechert has undertaken substantial efforts over the past 1.5 years to respond to Plaintiff's requests for disclosure (as it is called there) in the UK Litigation, where Dechert is a party.[2]

5. Dechert's disclosure efforts have been taken in close consultation with Plaintiff's UK counsel, Burlingtons Legal LLP, and conducted under the careful supervision of the UK High Court of Justice (the "HCJ").

---

[1] There are additional proceedings, not necessary to discuss here.
[2] Discovery presently is stayed in the SDNY Litigation.

6. Following extensive negotiations between counsel for Dechert and counsel for Mr. Azima (Plaintiff here), on May 27, 2022, the HCJ entered a Judgment specifying a significant number of issues for disclosure in the UK Litigation, [2022] EWHC 1295 (Ch). This figure is currently 43 issues in total. *See* Declaration of John C. Quinn, Ex. A (*Ras al Khaimah Investment Authority v. Azima,* No. HC-2016-002798, Fifth Witness Statement of Edward Allen [hereinafter, "Allen 5"]) ¶ 80.

7. The list of issues for disclosure ("LOID") in the UK Litigation covers all (and also extends beyond) the topics of discovery sought here, as reflected in the chart below, with a few exceptions, addressed below. *See infra*, ¶¶ 32–35; Allen 5, Sched. 3. This is to be expected given the substantial overlap between the cases.

| Topic of Request | MDNC Request No. | UK Litigation LOID No. |
|---|---|---|
| CyberRoot | 1 | 7, 20, 21, 22, 23 |
| Aditya Jain & the Aditya Jain Entities | 2 | 7, 24, 25, 30 |
| Stuart Page, Stuart Page Entities & Majdi Halabi | 3 | 4, 5, 6, 7, 17, 18, 37, 39 |
| Amit Forlit & Amit Forlit Entities | 4 | 4, 5, 7, 17, 18, 29 |
| Northern Technology Inc. | 5 | 19 |
| Farhad Azima | 6 | 3, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 23, 24, 25, 30, 34, 35, 36, 37, 38, 39, 40, 41, 42 |

3

| Topic of Request | MDNC Request No. | UK Litigation LOID No. |
|---|---|---|
| Ras al Khaimah Entities | 6, 6e | 1, 2, 3, 4, 5, 7, 14, 17, 31, 40, 41, 42 |
| Vital Management & Nicholas Del Rosso, including those parties' work for Dechert and billing records related to the same | 6, 6a-d, 7 | 1, 17, 20, 21, 24 |

8. Since well before May 2022, Dechert has expended substantial effort to comply with its disclosure obligations to Mr. Azima.

9. As set forth more fully in the Fifth Witness Statement of Enyo Attorney Edward Allen, attached as Exhibit A to the Declaration of John Quinn, the disclosure effort has been "among the most complex disclosure exercises Dechert's UK counsel has been involved in" due to the complexity of disclosure issues, privilege considerations, and volume of documents involved. Allen 5 ¶ 79. This too is unsurprising, given, among other things, the fact that these issues relate to work that Dechert undertook in the service of a foreign client.

10. In order to fulfill its discovery obligations, Dechert has collected well over one million documents from dozens of databases, mailboxes, devices, and sources belonging to Dechert and sixteen individual custodians. Allen 5 ¶¶ 21, 30-32, 82 & Sched. 4.

11.     Following extensive negotiations with Plaintiff's UK counsel concerning the proper methodology and scope of discovery, Dechert performed five sets of searches, collectively totaling over four hundred search terms, spanning time periods between September 1, 2014 and August 31, 2020. Allen 5 ¶ 39 & Sched. 2.

12.     Each of the sixteen custodians possessed several devices including Blackberries, iPads, iPhones, and Nokias.  Where the data is still available, these devices have been searched. The search also involved the review of 20 USB drives.  Allen 5, Sched. 5.

13.     The searches described above yielded approximately 750,000 documents for potential review. Dechert performed a preliminary assessment of that population and then engaged with Plaintiff in multiple rounds of further negotiations to refine the search term sets to achieve better and more targeted results. Allen 5 ¶¶ 42-47.

14.     Ultimately, Dechert and Plaintiff agreed on sets of search terms and time parameters that yielded approximately 146,000 electronic documents for review. Allen 5 ¶¶ 42-47.

15.     Dechert's UK counsel, Enyo Law LLP, reviewed all 146,000 electronic documents. Allen 5 ¶ 82.

16. Enyo also reviewed more than 58,000 billing entries pertaining to six Dechert engagements determined to be relevant to proceedings involving Mr. Azima. Allen 5 ¶ 72 & Sched. 1.

17. Enyo also reviewed more than 200 boxes of hard copy documents obtained from Dechert and the 16 custodians at issue. Allen 5 ¶¶ 74, 96-98.

18. At its largest, Dechert's UK review team was staffed by fourteen solicitors and junior barristers. Allen 5 ¶ 84.

19. Dechert's review of hundreds of thousands of records required particular scrutiny and care. Allen 5 ¶ 83. Plaintiff seeks records concerning work performed by Dechert, a global law firm, on behalf of its client RAK and related entities. Consequently, a substantial volume of records at issue were protected by the certain privileges, including the legal advice and litigation privileges. Further complicating matters, during the relevant period, Dechert was involved in numerous engagements on behalf of RAK and related entities, the vast majority of which have no connection to Plaintiff or the issues he has raised in this lawsuit or in any of the related proceedings. Thus, the complexity of the facts and privilege determinations that were required rendered the review inappropriate for a third-party document review provider or for delegation to paralegals or contract lawyers. Allen 5 ¶ 83. In short, Dechert dedicated substantial resources to a lengthy, complex, and difficult review.

20. In the UK Litigation, Dechert produced documents to Plaintiff in four tranches, on June 21, 2023, June 30, 2023, July 14, 2023, and July 21, 2023. Allen 5 ¶¶ 14, 15.

21. For a significant number of documents that were only partially privileged, Dechert produced the documents in redacted form and furnished a redaction log. Allen 5 ¶ 118.

22. Disclosure in the UK Litigation is now complete, subject to any challenges made by the Plaintiff and Dechert's continuing duties of disclosure if further disclosable documents are identified and/or come into its possession and/or control.

23. Dechert dedicated significant resources to collecting, reviewing, redacting, and producing records responsive to requests made by Plaintiff in order to comply with its obligations not just in the United Kingdom but also here and, potentially, in the SDNY Litigation.

24. Since the Court's Order on July 25, 2023, Dechert and its US counsel, acting in coordination and consultation with its English counsel, have undertaken additional significant efforts to make relevant discovery available to Plaintiff's US counsel, consistent with the terms of the Court's Order and with Dechert's obligations to its client RAK and related entities, including with respect to the privileges and protections they have asserted.

25. Dechert's legal team has been working through nights and weekends to, among other things, identify responsive documents, determine the location of those documents, platform those documents for review, consider appropriate candidates as a 30(b)(6) designee, and research applicable issues regarding privilege and potential waiver, as raised by correspondence from Plaintiff.

26. Dechert's US counsel also has engaged in numerous conversations with Dechert's UK counsel concerning, among other things, the nature and extent of the overlap in scope between the disclosure produced in the UK Litigation and the discovery sought here; the mechanics and procedures for making disclosure produced in the UK Litigation available to Plaintiff's US counsel; and strategies for addressing any outstanding discovery requests.

27. Dechert's counsel also has engaged extensively with Dechert's clients' US and UK counsel (Patterson Belknap Webb & Tyler LLP and Allen & Overy LLP, respectively) concerning those clients' assertions of privilege and other protection.

28. Finally, Dechert's US counsel has had multiple conversations with Plaintiff's US counsel to discuss topics bearing on discovery, including which body of privilege law applies to the documents at issue and potential efficiencies in the production and review process.

8

29. As a result of all of these efforts, Dechert anticipates making substantial productions to Plaintiff by the August 8, 2023 deadline set by the Court.

30. The production Dechert intends to make by August 8, 2023 includes nearly 10,000 pages of responsive documents.

**Request for Modest Extension of Discovery Deadlines**

31. Notwithstanding the substantial efforts Dechert has undertaken to comply with its disclosure obligations and the significant effort it continues in connection with this lawsuit, Dechert will need additional time to make additional trailing productions in order to fully meet the terms of the Court's Order, given certain relatively minor differences with respect to scope, format, and time period.

32. First, Dechert has not reviewed or produced in the UK Litigation the full range of documents related to Request 5 of the Documents Subpoena, which seeks "All Documents, Communications, Agreements, Reports, Calendar Entries, and Visitor Logs relating to Northern Technology, Inc.," D.E. 140-2, Req. 5, as this Request does not overlap completely with the disclosure requirements in the UK litigation. Dechert estimates that unreviewed documents responsive to this Request number approximately 20,000, and over 50,000 including families. Appropriate searches have already been run and documents identified through those searches are being processed for review,

and additional staffing has been made available to commence and to complete that review as quickly as feasible.

33. Second, Dechert has not collected, reviewed, or produced in the UK Visitor Logs, as that type of information was not responsive to the UK Litigation disclosure requirements. Collection of Visitor Logs, to the extent they exist, will require investigation, collection and review from Dechert's multiple systems for logging visitors. This process too is underway.

34. Third, Dechert has not collected, reviewed, or produced in the UK Litigation any documents created after August 31, 2020, as that date marked the end of the responsive period for purposes of UK Litigation disclosure. *E.g.*, Allen 5 at 49, 51, 53. Yet, here, the Court ordered Dechert to produce responsive records extending just six weeks longer, up through October 15, 2020. D.E. 248 at 19. As with a number of these issues, we attempted to discuss with Plaintiff whether some alignment of the time periods was more practicable. Plaintiff indicated no willingness to compromise or work toward agreement.

35. Fourth, Plaintiff has sought information here that greatly exceeds the scope of disclosure in the UK Litigation and, in Dechert's view, is disproportionate to the needs of this case. Specifically, Plaintiff's document subpoena seeks "[a]ll Agreements, Calendar Entries, and Visitor Logs related to . . . Ras Al Khaimah Entities . . . including, but not limited to: . . . All

10

engagements of Dechert by RAKIA and other RAK entities from 2013 to present . . . ." D.E. 140-2, Req. 6e. As reported above, Dechert has been engaged in numerous matters on behalf of RAK, most of which have nothing at all to do with Plaintiff or Defendants, or with any of the allegations at issue here. Disclosure in the UK Litigation was limited to the six Dechert engagements by RAK determined to be relevant to the matters involving Plaintiff. Allen 5 ¶ 72 & Sched. 1. With respect to these irrelevant engagements, Plaintiff conceded by email earlier this evening that it was "willing to carve out projects that have no relation to Mr. Azima," but proposed an obviously unworkable approach to do so, namely, that Dechert produce the irrelevant information anyway, so that Plaintiff could review the irrelevant information and make responsiveness determinations on behalf of Dechert. As of the time of this filing, we intend to continue to meet and confer with Plaintiff regarding this now-admittedly overbroad request.

36. In view of the "third" and "fourth" issues outline above, Dechert is planning to file a Motion for Clarification or Reconsideration, seeking relief from compelled disclosure of records dating from the six-week period between September 1, 2020 and October 15, 2020 and pertaining to engagements beyond those deemed relevant to the UK Litigation.

37. If that motion is denied, and Dechert is required to produce records dating from that six-week period or concerning dozens of unrelated

engagements, very significant additional discovery effort would be required. Among other things, Dechert would have to (i) perform new collections from the dozens of databases, mailboxes, devices, and sources belonging to Dechert and its sixteen custodians from which it previously collected data; (ii) rerun the numerous search terms it previously employed to identify potentially responsive records; (iii) review the resulting records, if any, for responsiveness and privilege in this action; (iv) confer with Dechert's UK counsel and counsel to Dechert's clients concerning privilege issues; (v) redact any documents that are only partially privileged; (vi) log any documents that are wholly privileged; and (vii) perform the necessary steps to produce responsive, non-privileged records to Plaintiff. Given the number of unrelated engagements, the volume of records pertaining to those engagements, and the number and breadth of the search terms employed, this additional review is likely to be extremely taxing. Even dedicating tremendous resources to the task, those steps take time and cannot be completed within even 30 days following August 8, 2023.

38. Even with respect to documents collected and reviewed in the UK Litigation, Dechert will not be able to complete a privilege log by August 8, 2023. Assertions of privilege in English litigation do not require production of a privilege log in the format customary in US courts. Consequently, it will take time for Dechert to complete a privilege log for the thousands of documents as

to which Dechert's client has asserted privilege. Dechert is working hard on this task, too, but will not be able to complete it by August 8, 2023.

39. Finally, notwithstanding Dechert's best efforts, the process of managing, organizing and executing productions of substantial volumes of documents, in close consultation with multiple layers of counsel on both sides of the Atlantic, including counsel for Dechert's clients, takes time. Dechert requires a modest extension of time to complete its productions of records previously disclosed in the UK Litigation.

40. As reported above, Dechert plans to make a substantial production to Plaintiff by August 8, 2023.

41. Dechert anticipates that it will be able to produce a privilege log concerning documents withheld from disclosure in the UK Litigation on the basis of privilege by September 22, 2023.

42. Consequently, except for discovery concerning engagements unrelated to Plaintiff and of documents created during the September 1, 2020 to October 15, 2020 period, Dechert anticipates that it will be able to complete its document productions by September 22, 2023.

43. If required to perform additional collections and reviews for documents concerning unrelated engagements and created during the September 1, 2020 to October 15, 2020 period, Dechert cannot predict with precision the date when its productions will be complete, but upon the Court's

ruling on this issues, Dechert will meet and confer with Plaintiff and apprise Plaintiff and, as directed, the Court of its best estimates, working, as it has been, to meet its obligations as quickly as possible. At present, Dechert's best estimate is that it would be required to make rolling productions through at least October 9, 2023.

44. Given that the 30(b)(6) Subpoena seeks testimony on, among other things, "All categories of documents requested in Plaintiff's subpoena *duces tecum* . . . as well as documents produced by Dechert LLP in response," D.E. 140-1, Topic 1, Dechert respectfully requests an extension of the deadline to complete the 30(b)(6) deposition until October 23, 2023.

45. Dechert made multiple efforts to meet and confer with Plaintiff regarding this Motion, including by email and through multiple efforts to reach Plaintiff's counsel by phone. Plaintiff did not respond, other than in a lengthy email sent this evening that mischaracterizes the parties' discussions and does not take a clear position with respect to this Motion. In fact, parts of Plaintiff's email suggest that Plaintiff may agree, at least in part, with the requested relief, including because Plaintiff insists that Dechert produce "by August 8" documents that Dechert is already in the process of producing by that date. While Plaintiff's position remains unclear to us, we filed this evening in order to provide the Court sufficient opportunity to consider the Motion in light of the approaching deadline.

14

WHEREFORE, Dechert respectfully moves the Court for an extension of the deadline to complete document discovery to September 22, 2023 (if the Court grants Dechert's Motion for Clarification or Reconsideration) or to October 9, 2023 (if the Court denies Dechert's Motion for Clarification or Reconsideration), and for an extension of the deadline to complete the 30(b)(6) deposition to October 23, 2023.

Respectfully submitted this the 4th day of August 2023.

By:   /s/ John C. Quinn
      John C. Quinn
      Sean Hecker
      David Gopstein
      KAPLAN HECKER & FINK LLP
      350 Fifth Avenue, 63rd Floor
      New York, New York 10118
      Tel: (212) 763-0833
      jquinn@kaplanhecker.com
      shecker@kaplanhecker.com
      dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

/s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
   HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile: (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*

16

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief does not exceed the 6,250-word limitation for such motions, according to the word count feature of the word processing system used to prepare the brief.

Respectfully submitted this the 4th day of August, 2023.

By: /s/ John C. Quinn
John C. Quinn
Sean Hecker
David Gopstein
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0833
jquinn@kaplanhecker.com
shecker@kaplanhecker.com
dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

/s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
 HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile: (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*