

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-cv-954-UA-JLW**

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **PLAINTIFF FARHAD AZIMA'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-15) TO DEFENDANTS NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.** |

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Farhad Azima, by counsel, serves the Defendants with the following Requests for Production, and hereby requests that each Defendant serve written responses to these requests and produce for inspection and copying each of the documents, electronically stored information, and tangible things described below at the offices of Miller & Chevalier Chartered, 900 Sixteenth Street, NW, Washington, D.C. 20006 (attention: Kirby D. Behre) within thirty (30) days of service of these requests.

## INSTRUCTIONS

1. These requests cover all documents, communications, electronically stored information, and tangible things in a party's possession, custody, or control including documents, communications, electronically stored information, and tangible things in the possession, custody, or control of the party's agents, representatives, direct or indirect subsidiaries, persons or entities under the control of the party, entities owned by the party, and, unless privileged, the party's attorneys, and all documents, communications, electronically stored information, and tangible things that may not currently be in the direct custody or control of Defendants but that Defendants have the legal right to obtain or demand.

2. Please produce electronically stored information in accordance with the instructions, data delivery standards, delivery formats, and Adobe PDF file production formats, and with the fields specified, in Exhibit A hereto.

3. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

4. An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

5. The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form the party must state the form or forms it intends to use.

6. A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.

7. If a party withholds any document, electronically stored information, or tangible thing otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or

protected, will enable other parties to assess the claim as required by Federal Rule of Civil Procedure 26(b)(5)(A).

8. Whenever possible, the singular form of a word shall be interpreted in the plural and vice versa.

9. Verb tenses shall be interpreted to include past, present, and future tenses.

10. The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the interrogatory inclusive rather than exclusive.

11. Unless otherwise indicated, these requests require production of all relevant records from August 2014 to present.

12. These requests shall be deemed continuing so as to require further supplementation in accordance with Federal Rule of Civil Procedure 26(e).

## **DEFINITIONS**

The terms in the requests for production below are to be interpreted in accordance with the following definitions:

1. The terms and phrases "Documents," "Communications," "Electronically stored information," "Data," and "Tangible things" shall have the broadest possible meanings permissible under the Federal Rules of Civil Procedure.

2. "Relate to," "Relating to," or "Related to" shall mean and include constituting, discussing, mentioning, containing, embodying, reflecting, identifying, incorporating, referring to, dealing with, or pertaining to in any way.

3. "Communications" shall mean all methods of communication, including letters, e-mails, fax transmissions, SMS text messages, and messaging application records (including but not limited to applications such as Threema, WhatsApp, Signal, and Telegram).

3

4. "Agreements" shall mean any written or oral contract or agreement for services, whether formal or informal.

5. "Wire statements" refer to any transaction records reflecting wire transfers of money or the sending or transfers of or Related to any digital currency (including but not limited to digital currencies such as Bitcoin, Ethereum, and similar currencies).

6. "Financial account statements" refer to any transaction records of monetary transfers, transmittals, or receipts (as to amounts both of legal tender currency and of digital currency, including but not limited to Bitcoin, Ethereum, and similar currencies) into or out of a bank, financial, or other digital currency account over a listed period of time.

7. "Calendar Records" refers to any physical or electronic method for keeping track of meetings or appointments, including but not limited to calendars maintained by Outlook, Google, or any other electronic means of maintaining a calendar, as well as any physical calendars, day planners, or diaries.

8. "Del Rosso" refers to the Defendant Nicholas Del Rosso and any agent, attorney, representative, or other Person representing or acting on behalf of Defendant Del Rosso.

9. "VMS" refers to the Defendant Vital Management Services, Inc., and any of VMS's officers, directors, members, shareholders, executives, owners, employees, attorneys, agents, representatives, as well as any other Person representing or acting on behalf of VMS. This definition shall include all predecessor or successor corporations or legal entities.

10. "Defendants" refers to Del Rosso, VMS, and the individuals listed in Paragraphs 8 and 9 above.

11. "CyberRoot" refers to CyberRoot Risk Advisory Private Limited and all current and former employees, agents, representatives, subsidiaries, affiliates, assignees, or other persons

acting or purporting to act on its behalf, including but not limited to Vibhor Sharma, Vijay Bisht, Vikash Pandey, and Chiranshu Ahuja.

12. "Dechert" refers to Dechert LLP, all of its offices, and all current and former lawyers, employees, agents, representatives, subsidiaries, affiliates, assignees, or other persons acting or purporting to act on its behalf.

13. "KARV" refers to KARV Communications and all current and former employees, agents, representatives, subsidiaries, affiliates, assignees, or other persons acting or purporting to act on its behalf, including but not limited to Andrew Frank and Amir Handjani.

14. "Ras Al Khaimah Entities" refers to the government of Ras Al Khaimah, the Ruler of Ras Al Khaimah, and all current and former entities Related to the government of Ras Al Khaimah, including but not limited to Ras Al Khaimah Investment Authority, RAK Development, and RAK IDO.

15. "Buchanan Entities" refers to all current and former entities Related to James Buchanan, including but not limited to Gravitas International FZA and Buchanan Associates.

16. "Stuart Page Entities" refers to all current and former entities Related to Stuart Page, including but not limited to Page Group ME Ltd.

17. "Forlit Entities" refers to all current and former entities Related to Amit Forlit, including but not limited to Insight Analysis and Research LLC, SDC-Gadot LLC, Insight GSIA, and Gadot Information Services.

18. "Jain Entities" refers to all current and former entities Related to Aditya Jain, including but not limited to Cyber Defence and Analytics and Cyber DNA.

19. "Grayson Entities" refers to all current and former entities Related to Patrick Grayson, including but not limited to Grayson + Co Ltd.

20. "Robinson Entities" refers to all current and former entities Related to Paul Robinson, including but not limited to Company Diligence Ltd. and Company Documents Ltd.

21. "Swecker Entities" refers to all current and former entities Related to Chris Swecker, including but not limited to Chris Swecker Enterprises LLC and Miller & Martin Law.

22. "Koshkin Entities" refers to all current and former entities Related to Yuri Koshkin, including but not limited to Trident Group, YK Express LLC, Idesus Group Ltd, and Adelfi Ventures Ltd.

23. "Fayol Entities" refers to all current and former entities Related to Jean Reaud Fayol, including but not limited to Axis & Co. and Altum & Co.

24. "McCullough Entities" refers to all current and former entities Related to Nick McCullough, including but not limited to Int. Research Ltd.

25. The term "Person" means a natural or artificial person, including (but not limited to) partnerships, corporations, limited liability companies, trusts, proprietorships, unincorporated associations, governmental bodies, or any other legally cognizable entities.

26. The term "Plaintiff" refers to Plaintiff Farhad Azima as well as any agent, representative, attorney, or other Person acting on behalf of Plaintiff Farhad Azima.

27. The term "Plaintiff's Associates" refers to Persons Related to Plaintiffs, including but not limited to Khater Massaad.

## REQUESTS

1. All Documents evidencing or reflecting a request for payment or a payment – including, but not limited to, invoices, bills, requests for payment, or descriptions of work – that Defendants received from or sent to Dechert, Neil Gerrard, Jamie Buchanan, Buchanan Entities, Ras Al Khaimah Entities, CyberRoot, Aditya Jain, Jain Entities, Stuart Page, Stuart Page

6

Entities, Amit Forlit, Forlit Entities, KARV, Chris Swecker, Swecker Entities, Patrick Grayson, Grayson Entities, Paul Robinson, Robinson Entities, Yuri Koshkin, Koshkin Entities, Nick McCullough, McCullough Entities, Jean Renaud Fayol, Fayol Entities, Northern Technologies Inc., Gary Lowe, or any other Person that performed any work for or provided any services to Defendants, or for whom Defendants provided, attempted to provide, or offered to providework, Related to Plaintiff, Plaintiff's Associates, or any business or personal enterprise involving or Related to Plaintiff.

RESPONSE:

2. All Documents evidencing or reflecting any payments or reimbursements (whether of legal tender currency or of digital currency as described above) by Defendants to any Person identified in Request No. 1 for any work or services Related to Plaintiff, Plaintiff's Associates, or any business or personal enterprise involving or Related to Plaintiff. This request includes, but is not limited to, responsive financial account records, financial statements, checks, bank statements, tax records, and accounting recordsas well as all Documents evidencing or Related to the admission that "VMS has been paid more than $1 million by Dechert across its engagements." *See* DE 86 ¶ 28.

RESPONSE:

7

3. All reports, memoranda, summaries, notes, or outlines Related to Plaintiff, Plaintiff's Associates, or any personal or business enterprise involving or Related to Plaintiff prepared for or by Del Rosso, VMS, or any of the individuals and entities identified in Request No. 1, including but not limited to so-called "Project Updates," Project Beech reports, and action plans.

RESPONSE:

4. All Agreements Related to any of the individuals or entities described in Request No. 1.

RESPONSE:

5. All Calendar Records Related to any of the individuals and entities described in Request No. 1.

RESPONSE:

8

6. All Documents that belonged or belong to Plaintiff including, but not limited to, all Documents and Communications retrieved, sent to, or received by Defendants or any Person from any email account, computer system, network, server, or other digital resource owned or controlled by Plaintiff.

RESPONSE:

7. All Documents or Communications Related to any attempt or effort (whether successful or unsuccessful) by Defendants or any Person to conceal the receipt, possession, transfer, or copying of any Document or Communication that belonged or belongs to Plaintiff including, but not limited to, any attempt by Defendants or any Person to destroy or delete any such Documents or Communications.

RESPONSE:

8. All Travel Records Related to work performed by, at the direction of, or with the involvement of Del Rosso, Vital, or Defendants for or with the individuals and entities identified in Request No. 1, including but not limited to travel to the Hotel Moosegg, Cyprus, and meetings at Dechert's offices in New York and London.

RESPONSE:

9. All credit card or other financial account statements reflecting or Related to travel, expenses, or other work done for or with any of the individuals or entities identified in Request No. 1.

RESPONSE:

10. All Documents Related to plans to meet with Amir Handjani during Plaintiff's trial in London in January and February 2020, including but not limited to Amir Handjani's meeting with Del Rosso at Del Rosso's son's flat.

RESPONSE:

11. All Documents and Communications Related to the allegations in Defendants' First Affirmative Defense.

RESPONSE:

12. All Documents and Communications Related to the allegation by Defendants in Defendants' Second Affirmative Defense that Plaintiff has a "practice of accusing several persons not related to Defendants of hacking Plaintiff's devices."

RESPONSE:

13. All Documents and Communications Related to the allegation by Defendants in the Third Affirmative Defense that "the purported trade secrets identified by Plaintiff belong [to] non-parties[.]"

RESPONSE:

14. All Documents and Communications Related to the allegation by Defendants in the Sixth Affirmative Defense that "Plaintiff and his agents illegally obtained and used [information] to create a false narrative concerning Defendants and CyberRoot and for the improper purpose of obtaining party discovery for use in the English Proceeding."

RESPONSE:

15. All Documents identified in the initial disclosures of Defendants or any amended or supplemental disclosures.

RESPONSE:

This, the 22d day of November, 2022.

>Respectfully submitted,
>
>*/s/ Ripley Rand*
>Ripley Rand (N.C. State Bar No. 22275)
>Christopher W. Jones (N.C. State Bar No. 27625)
>Jonathon D. Townsend (N.C. State Bar No. 51751)
>Womble Bond Dickinson (US) LLP
>555 Fayetteville Street, Suite 1100
>Raleigh, North Carolina 27601
>Tel: (919) 755-2100
>Fax: (919) 755-2150
>Email: ripley.rand@wbd-us.com
>
>*/s/ Kirby D. Behre*
>Kirby D. Behre (*pro hac vice* admission)
>Tim O'Toole (*pro hac vice* admission) Ian
>Herbert (*pro hac vice* admission) Calvin
>Lee (*pro hac vice* admission) MILLER &
>CHEVALIER CHARTERED 900
>Sixteenth Street, NW
>Washington, D.C. 20005
>Telephone:    (202) 626-5800
>Facsimile:    (202) 626-5801
>Email: kbehre@milchev.com
>
>*Attorneys for Plaintiff Farhad Azima*

12

# CERTIFICATE OF SERVICE

I hereby certify that on this 2sd day of November, 2022, I caused true and correct copies of the foregoing to be served via First Class Mail and email on the following:

Brandon S. Neuman
Jeffrey M. Kelly
Nelson Mullins Riley & Scarborough, LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Email: brandon.neuman@nelsonmullins.com
Email: jeff.kelly@nelsonmullins.com

*Counsel for Defendants Nicholas Del Rosso and Vital Management Services, Inc.*

　　　　　　　　　　*/s/ Ripley Rand*
Ripley Rand (N.C. State Bar No. 22275)
Christopher W. Jones (N.C. State Bar No. 27625)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel: (919) 755-2100
Fax: (919) 755-2150
Email: ripley.rand@wbd-us.com

*Attorneys for Plaintiff Farhad Azima*

# Exhibit A

**General Instructions:**

Electronic files must be produced in their native format, *i.e.* the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. (Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)

If your production will be de-duplicated it is vital that you
1. preserve any unique metadata associated with the duplicate files, for example, custodian name, and,
2. make that unique metadata part of your production.

**Data Delivery Standards**

General requirements for ALL document productions are:
1. A cover letter should be included with each production and include the following:
   1. Case number
   2. A list of each piece of media included in the production with its unique production volume number
   3. A list of custodians, identifying the Bates range for each custodian.
   4. The time zone in which the emails were standardized during conversion.
2. Productions may be submitted via Secure File Transfer.
3. Alternatively, data can be produced on CD, DVD, thumb drive, hard drive, using the media requiring the least number of deliverables.
4. All submissions must be organized by custodian unless otherwise instructed.
5. All document family groups, *i.e.* email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
6. All load-ready collections should include only one data load file and one image pointer file.
7. All load-ready text must be produced as separate text files.
8. All load-ready collections should account for custodians in the custodian field.
9. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
10. All productions must be produced using industry standard self-extracting encryption software.
11. All productions must be encrypted using a complex, unique password.
12. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
13. All electronic productions should be produced free of computer viruses.

Error! Unknown document property name. 2

Case 1:20-cv-00954-WO-JLW   Document 258-1   Filed 08/08/23   Page 14 of 19

**Delivery Formats**

**I. Concordance® Imaged Productions**
All scanned paper and electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.
   1. Images
      a. Black and white images must be 300 DPI Group IV single-page TIFF files.
      b. Color images must be produced in JPEG format.
      c. File names cannot contain embedded spaces or special characters (including the comma).
      d. Folder names cannot contain embedded spaces or special characters (including the comma).
      e. All TIFF image files must have a unique file name, i.e. Bates number.
      f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
      g. The number of TIFF files per folder should not exceed 1,000 files.
      h. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
      i. AUTOCAD/photograph files should be produced as a single page JPEG file.

   2. Concordance Image® OR Opticon Cross-Reference File
   The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:
   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

   3. Concordance®Data File
   The data file (.DAT) contains all of the fielded information that will be loaded into the Concordance® database.
      a. The first line of the .DAT file must be a header row identifying the field names.
      b. The .DAT file must use the following Concordance® default delimiters:
         Comma ASCII character (020)
         Quote þ ASCII character (254)
      c. Date fields should be provided in the format: mm/dd/yyyy
      d. Date and time fields must be two separate fields.
      e. If the production includes imaged emails and attachments, the attachment range must be included to preserve the parent/child relationship between an email and its attachments.
      f. A TEXT LINK field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the BEGDOC. Do not include the text in the .DAT file.
      g. For productions with native files, a NATIVE LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the BEGDOC.
      h. BEGATT and ENDAT fields must be two separate fields.

   i. A complete list of metadata fields is available as a separate attachment.

 4. Text

Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (TEXT LINK) should be included in the .DAT file. We require document level text files, named per the BEGDOC/Image Key. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

 5. Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.
  a. Native file documents must be named per the BEGDOC number.
  b. The full path of the native file must be provided in the .DAT file for the NATIVE LINK field.
  c. The number of native files per folder should not exceed 1,000 files.

## II. Adobe PDF File Production

With prior approval, Adobe PDF files may be produced in native file format.
1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## III. Field List

| ID | FIELD NAME | FORMAT | FIELD DESCRIPTION |
|---|---|---|---|
| 1 | BEGDOC | Text | The BEGDOC field contains the unique sequential Bates number of the first page of the document. BEGDOC is to be designated the Image Key for each record. |
| 2 | ENDDOC | Text | The ENDDOC field contains the unique sequential Bates number of the last page of the document. |
| 3 | BEGATT | Text | BEGATT is used for records with a parent/child relationship (e.g., an e-mail with a file attachment). BEGATT is the BEGDOC for the parent record. This field is populated |

| | | | for each child record as well as the parent record. |
|---|---|---|---|
| 4 | ENDATT | Text | ENDATT is used for records with a parent/child relationship (e.g., an e-mail with a file attachment). ENDATT is the ENDDOC of the last child record in the parent/child group. This field is populated for each child record as well as the parent record. |
| 5 | FAMILY-RANGE | Text | Range of the family group in the format: BEGATT – ENDATT. This field is populated for each child record as well as the parent record. |
| 6 | FAMILY-DATE | MM/DD/YYYY | Date an e-mail record was sent. This field is populated for each attachment as well as the parent e-mail. This data shall be standardized to UTC, unless otherwise agreed upon. |
| 7 | FAMILY-TIME | HH:MM:SS | Time an e-mail record was sent. This field is populated for each attachment as well as the parent Email. This data shall be standardized to UTC, unless otherwise agreed upon. |
| 8 | PGCOUNT | Integer | The number of pages in a document when scanned or printed to single-page TIFF images. |
| 9 | CUSTODIAN | Text | The custodian of the record, if available. |
| 10 | FROM | Text | Author of the e-mail message. |
| 11 | TO | Text | Primary recipient(s) of the e-mail message. |
| 12 | CC | Text | Recipient(s) of "carbon copies" of the e-mail message. |
| 13 | BCC | Text | Recipient(s) of "blind carbon copies" of the e-mail message. |
| 14 | SUBJECT | Text | Subject of the e-mail message. |
| 15 | DATESENT | MM/DD/YYYY | Date the e-mail message was sent. This data shall be standardized to UTC, unless otherwise agreed upon. |
| 16 | TIMESENT | HH:MM:SS | Time the e-mail message was sent. This data shall be standardized to UTC, unless otherwise agreed upon. |

| | | | |
|---|---|---|---|
| 17 | AUTHOR | Text | Author field value pulled from the metadata of the native file, if available. |
| 18 | INTFILEPATH | Text | Full folder path contained within a mail store, if available. |
| 19 | DATECREATED | MM/DD/YYYY | Date the native file was created. This data shall be standardized to UTC, unless otherwise agreed upon. |
| 20 | TIMECREATED | HH:MM:SS | Time the native file was created. This data shall be standardized to UTC, unless otherwise agreed upon. |
| 21 | DATELASTMOD | MM/DD/YYYY | Date the native file was last modified. This data shall be standardized to UTC, unless otherwise agreed upon. |
| 22 | TIMELASTMOD | HH:MM:SS | Time the native file was last modified. This data shall be standardized to UTC, unless otherwise agreed upon. |
| 23 | DATELASTPRNT | MM/DD/YYYY | Date the native file was last printed (Office documents). This data shall be standardized to UTC, unless otherwise agreed upon. |
| 24 | FILE_PATH | Text | Fully qualified original path to the native document showing where the document was kept in the "ordinary course of business." |
| 25 | FILENAME | Text | Original filename of native file. Contains subject of e-mail message for e-mail records. |
| 26 | FILE_EXTEN | Text | File extension of the native file. |
| 27 | FILE_SIZE | Number | Size of native file document/email in KB |
| 28 | MD5HASH | Text | MD5 hash value of the document, if available. |
| 29 | SHAHASH | Text | SHA1 hash value of the document if available |
| 30 | CONVER_INDEX | Text | Conversation index value for Microsoft Exchange emails, if available. |
| 31 | ENTRYID | Text | Unique identifier of e-mails in mail stores, if available. |
| 32 | INTMSGID | Text | Internet message ID assigned to an email message by the outgoing mail server, if available. |

| | | | |
|---|---|---|---|
| 33 | DOCTYPE | Text | Populate with the type of the document: E-Mail, Attachment, E-Doc, or Hardcopy. Note that embedded messages should be populated as Attachment; only the parent e-mail is populated as E-Mail. |
| 34 | PASSWORD_PROTECTED | Text | If the file is password protected, is a digitally secured email, or comes from a password protected archive, then populate with 'True', otherwise leave blank |
| 35 | PLACEHELD | Text | If the file is slip-sheeted, populate with the reason code: Native Format, Encrypted, Password Protected, Corrupted, Unsupported, Empty File. The Encrypted designation is to be used with digitally secured emails or other items not accessible via password entry. |
| 36 | TIME_ZONE | Text | The time zone in which the emails were standardized during conversion. Email: Time zone<br>Native: (empty) |
| 37 | NATIVE LINK | Text | The relational path and filename to the corresponding native file. |
| 38 | TEXT LINK | Text | The relational path and filename to the corresponding file containing the document's extracted text or OCR text. Extracted text and OCR text shall always be provided in a separate, linked document-level text file. Extracted text and OCR text shall never be embedded directly in a metadata file. |