# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>                       Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>                       Defendants. | **NON-PARTY DECHERT LLP'S BRIEF IN SUPPORT OF MOTION TO CLARIFY OR RECONSIDER IN PART DISCOVERY ORDER** |

## NATURE OF THE MATTER BEFORE THE COURT

This case concerns Plaintiff's allegations that "Defendants participated in a scheme to hack and publish Plaintiff's confidential business information online." DE 248 at 1 (the "Order"). The actionable acts of alleged republication took place in May and June 2018 and June 2019. *Id.*; DE 65 at 18. The Court recently ruled that Plaintiff may obtain discovery from the period between March 2015 and October 15, 2020, when the Complaint was filed in the instant action. Order at 12. And the Court ordered parties and non-parties such as Dechert LLP ("Dechert") to complete discovery promptly. *Id.* at 25.

On August 8, 2023, non-party Dechert made a significant production that substantially completes its discovery obligations. In a motion filed August 4, 2023, Dechert also sought a modest extension of the deadline to complete

discovery with respect to a few discrete categories of information, such as the preparation of a privilege log and the production of visitor logs. *See* DEs 250; 251.

In this motion, Dechert seeks clarification from the Court concerning the meaning and application of its Order with respect to two narrow categories of discovery, constituting one-fifth subpart of a single document request (out of seven), and one of sixteen deposition topics, namely: (1) Dechert engagements by RAK entities having no relation to Plaintiff or Defendants or the claims or issues in this action, and (2) documents and events during the six-week period between September 1, 2020 and October 15, 2020, which postdates Plaintiff's last alleged injury, *see* DE 1 ¶ 127.[1] The former concerns wholly irrelevant engagements between a foreign sovereign entity and its former counsel, including with respect to foreign corporate restructuring advice and negotiation of a foreign joint venture agreement unrelated to the parties or claims here. *See* Declaration of David Gopstein ("Gopstein Decl."), ¶ 11. The latter extends just six weeks beyond the end-date for extensive discovery

---

[1] For the other six and four-fifths of the Document Requests, per the Court's Order, Dechert has produced or will produce all non-privileged documents or produce a privilege log identifying any withheld documents and the basis for any appropriate privilege designation. *See* Order at 18. With respect to the remaining 15 deposition topics, again per the Court's Order, Dechert's 30(b)(6) designee will either testify at the deposition or Dechert will lodge appropriate privilege objections at that time. *See* Order at 17.

2

previously negotiated between Plaintiff and Dechert, and approved by the court, in related proceedings in the United Kingdom involving the same alleged conduct. Though this temporal discrepancy is only six weeks, the mismatch would require Dechert to undergo a significant collection and platforming process from sixteen identified custodians, each with at least five repositories of potentially relevant documents, a process which initially took months to complete in the UK litigation. *Id.* at ¶ 25. Most importantly, neither the unrelated engagements nor documents from a six-week period just before filing are "relevant to the claims or defenses" in this Action. Order at 5 (citing *Jiangmen Kinwai Furniture Decoration Co. v. IHFC Props., LLC*, No. 1:14-CV-689, 2015 WL 5098791, at *6 (M.D.N.C. Aug. 31, 2015)). Indeed, Plaintiff conceded in a meet-and-confer process that there are unrelated engagements that are not properly subject to discovery here, and has not identified any basis for concluding that Dechert would have relevant documents in its possession that are likely to be uncovered by rewinding an enormous discovery machine over a period of six weeks in 2020.

Dechert understands, respects, and is undertaking enormous effort to comply with the Court's order directing discovery concerning the entire alleged "scheme to hack and publish Plaintiff's confidential business information," Order at 1, and all information "relevant to the claims and defenses in this action," *id.* at 18, during the relevant temporal period after the alleged

3

"agreement to attack Plaintiff started," *id.* at 12. Dechert seeks clarification concerning only these two minor categories of discovery that are not relevant and would impose disproportionate and significant burden on a non-party.

## QUESTIONS PRESENTED

1. Whether, in ordering discovery relevant to Plaintiff's allegations concerning an "agreement to attack Plaintiff," Order at 12, the Court intended to permit discovery of "[a]ll engagements of Dechert by RAKIA and other RAK entities from 2013 to present," even the dozens of engagements wholly unrelated to Plaintiff, Defendants, and Plaintiff's claims here.

2. Whether, in limiting the scope of discovery to the period relevant to Plaintiff's allegations concerning an "agreement to attack Plaintiff," Order at 12, the Court intended to permit non-party discovery concerning the six-week period from September 1, 2020 to October 15, 2020—postdating the last date of Plaintiff's alleged injury, *see* DE 1 ¶ 127—where such period falls just outside the scope of disclosure ordered in related proceedings involving the same alleged conduct where both Dechert and Plaintiff are parties and carefully negotiated the discovery period and process for many months.

3. Insofar as the Court's Order may have directed production of irrelevant engagements or a highly burdensome re-collection effort in connection with a six-week period in 2020, whether the Court should reconsider any such determinations because compelling such discovery from a non-party would be unduly burdensome, excessive, and not proportional to the needs of the case.

## RELEVANT FACTS & PROCEDURAL HISTORY

Plaintiff sued Defendants on October 15, 2020, alleging that they oversaw and directed a scheme to hack Plaintiff's computer and publicize Plaintiff's data to further the interests of Dechert and its client Ras al Khaimah

4

Investment Authority ("RAKIA"). DE 1 ¶ 1. Plaintiff alleges that the hacking scheme started in early 2015, *id.* ¶ 14, continued through 2019, *id.* ¶¶ 26, 49, included an attempted coverup in early 2020, *id.* ¶ 34, and caused injuries to Plaintiff to and through August 28, 2020, *id.* ¶ 127. The complaint makes no allegations about conduct or injury that allegedly took place after August 2020.

Plaintiff previously leveled similar allegations against Dechert and RAKIA via counterclaims in related proceedings in the United Kingdom (the "UK Litigation").[2] Gopstein Decl. ¶ 12. The UK Litigation has been pending since 2016, and disclosure (the equivalent of discovery in those proceedings) related to Plaintiff's counterclaims in that case now is complete. Disclosure concerned the time period September 1, 2014 through August 31, 2020, and included information concerning six RAK engagements of Dechert determined to be relevant to Plaintiff and his claims. DE 250-1 ¶¶ 21, 22, 49, 60(5), 74 & Sched. 1. In order to produce documents in the UK Litigation, Dechert underwent an enormous, complex, and time-consuming effort over the course of many months, in consultation with Plaintiff. Gopstein Decl., ¶ 12.

In this case, Plaintiff served non-party document and deposition subpoenas on Dechert on December 19 and 23, 2022, respectively. Gopstein Decl. Exs. A, B. The subpoenas sought evidence that Plaintiff had previously

---

[2] Terms not otherwise defined have the meaning set forth in Dechert's Motion to Clarify or Reconsider in Part.

sought in the UK Litigation, with few exceptions. *See* DE 251 at 3-4. This is not surprising, given the substantial overlap between the two proceedings.

Dechert moved to quash the deposition subpoena on January 31, 2023. DE 136. It likewise objected to the document subpoena, and later opposed Plaintiff's motion to compel production. DEs 162-1; 176. Dechert objected to the subpoenas, among other reasons, because they requested information on topics unrelated to the action and did not have appropriate subject matter or temporal limitations. DE 136 at 2; DE 137 at 5. Of particular relevance here, Dechert objected to requests for information concerning "all engagements by Dechert of RAKIA or other RAK entities from 2013 to the present," DE 137 at 3, and requests that disregarded "discovery and evidentiary limitations in the ongoing U.K. proceeding" in which Dechert was a party, *id.* at 6.

On July 25, 2023, the Court granted in part and denied in part Dechert's Motion to Quash and Plaintiff's Motion to Compel. Order at 15-19. The Court ruled that the substantive scope of discovery included information that "may reveal the financial trail behind Defendants' alleged misappropriation of Plaintiff's trade secrets and the related conspiracy of such." *Id.* at 11. The Court also ruled that the general temporal scope of discovery in this case was from March 2015 (when "the allegations that the agreement to attack Plaintiff started") through October 15, 2020 (when "the Complaint was filed in this action"). *Id.* at 12; *see also id.* at 17-19.

6

## LEGAL STANDARD

The Court has inherent authority to clarify its prior Order. The Court also has plenary power to reconsider interlocutory orders and afford such relief as justice requires at any time prior to the entry of a final judgment. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469, 1473 (4th Cir. 1991); *see* Fed. R. Civ. P. 54(b). This "power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003)). "A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Jiangmen Kinwai Furniture Decoration Co. Ltd v. IHFC Props., LLC*, No. 1:14-CV-689, 2017 WL 3600413, at *6 (M.D.N.C. Aug. 18, 2017), *aff'd in part, vacated in part, remanded*, 780 F. App'x 1 (4th Cir. 2019) (citation omitted).

## ARGUMENT

### I. MOTION FOR CLARIFICATION

The Court ruled that the substantive scope of discovery includes all information "relevant to the claims and defenses in this action," which the

7

Court determined includes information that "may reveal the financial trail behind Defendants' alleged misappropriation of Plaintiff's trade secrets and the related conspiracy of such." Order at 11, 18. The Court also ruled that the temporal scope of discovery begins when the alleged "agreement to attack Plaintiff started," and thus extends beyond the limitations period previously set by the Court. *Id.* at 11-12.

Dechert is complying with the Court's ruling, which sufficiently addresses, and largely deems appropriate, fifteen out of sixteen deposition topics and six and four-fifths of the seven document requests served on Dechert. *Cf. id.* at 16 (noting that the "Rule 30(b)(6) subpoena to Dechert seeks information relevant to the remaining claims and defenses"); *id.* at 18 (finding "information sought is relevant to the claims and defenses in this action"). However, Dechert respectfully seeks clarification concerning the Court's Order as applied to a single deposition topic and a single subpart of a single document request—both seeking information that Dechert's UK and US counsel in good faith determined not to be relevant to Plaintiff's claims, and which UK counsel for Plaintiff did not seek in that action, pursuant to a disclosure plan endorsed by the UK court.

A. **Irrelevant Engagements**

Specifically, Dechert respectfully suggests that the Court's discovery Order did not plainly rule whether Dechert engagements by RAK entities that

8

have no relation to Plaintiff or Defendants are somehow relevant to claims and defenses in this action. In the UK Litigation, Dechert's UK counsel identified six RAK matters that relate to Plaintiff and his claims (the "Related Matters"). Gopstein Decl. ¶ 13.[3] Dechert therefore produced to Plaintiff documents from the firms' electronic client files related to those six Related Matters, subject to appropriate privilege withholdings, including billing records and relevant engagement letters. DE 250-1 ¶¶ 21, 22, 49, 60(5), 74 & Sched. 1.

Here, however Plaintiff seeks information from non-party Dechert related to "*[a]ll* engagements of Dechert by RAKIA and other RAK entities." Gopstein Decl., ¶ 7 (emphasis added). For the Documents Subpoena, Plaintiff demands "all agreements, calendar entries and visitor logs" related to all such matters; the Deposition Notice calls for "information," without any limitation, regarding "all engagements by RAKIA and RAK entities from 2013 to present." Beyond the six Related Matters, however, Dechert has represented RAKIA and other RAK entities in dozens of matters wholly unrelated to Plaintiff and the conduct at issue here. Gopstein Decl. ¶ 10. Those other engagements are various and diverse, and have included matters in Europe, Asia, and the

---

[3] One of those matters predates the temporal scope of discovery ordered by the Court here. *Id.*; Order at 12. The six Related Matters are described in more detail in the Gopstein Declaration. *Id.* ¶ 12. For the avoidance of doubt, Dechert's counsel did not limit their review of related matters to only those which explicitly name Plaintiff; rather, it reviewed all of the matters involving RAK Entities to determine which matters were relevant to Plaintiff's claims.

9

Middle East, related to corporate restructuring advice, corporate acquisition advice, negotiation of a joint venture agreement, and review of tender documents. Gopstein Decl. ¶ 11.

The Order did not specifically address Dechert's objection that Plaintiff's request for information on "all engagements by Dechert of RAKIA or other [related] entities from 2013 to the present" exceeded the proper scope of discovery. DE 137 at 3. And the Order plainly did not supplant Rule 26's requirement that discovery relate to claims and defenses. In light of Dechert's counsel's good faith determination, the lack of opposition by the Plaintiff's UK counsel and the endorsement by the UK court that the only RAK engagements relevant to Plaintiff's accusations are the Related Matters, and in view of Plaintiff's apparent agreement here that irrelevant engagements are not subject to discovery, Dechert respectfully requests that the Court clarify whether discovery of RAK engagements in this case likewise should be limited.

During attempts to meet and confer on the instant Motion, Plaintiff's counsel said that they were "willing to carve out projects that have no relation to Mr. Azima," conceding that such irrelevant "projects" are not subject to discovery here. Gopstein Decl. ¶ 18. This concession goes a long way toward resolving this instant motion. Indeed, Dechert and Plaintiff appear to agree that the irrelevant engagements are not properly subject to discovery. However, to effectuate that agreement, Plaintiff's counsel has proposed an

10

unworkable solution: that Dechert provide them a "list of such engagements," thereby disclosing the very information Plaintiff concedes is not relevant or subject to discovery.[4] On further meet and confers, Plaintiff's counsel has taken the view that even substantively irrelevant engagements might be subject to discovery if any of the custodians identified here billed time to them—despite the fact that attorneys may of course work on numerous unrelated matters—and so Plaintiff insisted that Dechert collect documents from dozens of attorneys related to the substantively irrelevant matters to run certain search terms that Plaintiff might request. *Id.* This is far beyond the scope of proportional discovery, particularly where it implicates sensitive matters of client representation and potential privilege, and would require Dechert, a non-party, to undergo an extraordinarily time-consuming and labor-intensive collection process.

Furthermore, the request for information related to irrelevant engagements is a red herring. Dechert collected documents—including email inboxes, workspaces, and local drives—of all sixteen relevant custodians, ran search terms related to the issues relevant here, and produced or withheld documents based on a relevance review. That review was not limited to the six

---

[4] Dechert remains open to a workable solution on this issue, and is continuing to meet and confer with Plaintiff on this issue. However, given the Court-ordered deadline, Dechert is bringing this request to the Court now to ensure sufficient time for consideration of its motion.

Related Matters—regardless of what matter the custodian was working on, if the document was relevant to Plaintiff's claims, it was produced (or withheld on the basis of privilege). Thus Plaintiff has or will have in his possession all documents related to their claims (or a privilege log otherwise), and information related to irrelevant matters—including "agreements, visitor logs and calendar entries"—is purely extraneous.

### B. Six-Week Date Range Mismatch

Dechert also respectfully submits that the Court's discovery Order did not specifically address why conduct occurring during the six-week period between Plaintiff's last-alleged injury and the filing of this Complaint is relevant to claims and defenses in the case. That time period was not deemed relevant in the UK Litigation, and disclosure in the UK Litigation—again, with Plaintiff's active participation—was limited to the time period ending August 31, 2020. Dechert thus respectfully requests that the Court clarify whether conduct between September 1, 2020 and October 15, 2020 is relevant and proportional here.

## II. MOTION FOR RECONSIDERATION

Alternatively, Dechert respectfully asks the Court to reconsider, in very limited part, its discovery Order with respect to RAK engagements unrelated to Plaintiff or Defendant and conduct occurring after Plaintiff's last-alleged injury.

12

Dechert moved to quash the deposition subpoena and objected to the documents subpoena, among other reasons, because they requested testimony and information on topics unrelated to the Action. *See, e.g.*, DE 136 at 2. Dechert argued that the subpoenas sought "information about Dechert's legal work without meaningful subject matter or temporal limitations" and disregarded "discovery and evidentiary limitations in the ongoing U.K. Proceeding." DE 137 at 5-6; *see also* DE 162-1 at 1-2 (noting "serious concerns" about documents subpoena's "unreasonable scope" and request for records pertaining to entities "with no subject-matter limitations"). Dechert specifically noted that the subpoenas sought information about "all engagements by Dechert of RAKIA or other [related] entities from 2013 to the present." DE 137 at 3 (quoting DE 140-1).[5]

Dechert's argument that the subpoenas lacked subject matter and temporal limitations was not confined to an argument that the "relevant period for discovery should be limited to a period around 2018 and 2019," as the Court's Order suggested. Order at 16. Rather, Dechert argued that the deposition subpoena should be quashed because it "lack[ed] a relevant subject

---

[5] *See also id.* (objecting that documents subpoena "requested an extensive set of documents related to Dechert's legal work on behalf of clients—namely, the Ras al Khaimah Investment Authority ('RAKIA') and other RAK entities—that it represented, including in multiple litigations, over and beyond the eight-year time period listed in the instructions").

13

matter limitation" and sought information "unrelated to the claims and defenses asserted in [the] case." DE 137 at 6 (citation omitted); *see also* DE 162 at 3 ("Plaintiff's Subpoena does not limit its requests to information that is 'relevant' to the existing claims or 'proportional to the needs of the case' as it stands." (citation omitted)).

Dechert engagements by RAK entities that do not relate in any way to Plaintiff, Defendants, or the hacking scheme at issue are irrelevant to the subject matter of this litigation and claims and defenses asserted in it. Insofar as the Court's ruling may have suggested otherwise, Dechert respectfully requests that the Court reconsider that aspect of its ruling. More specifically, Dechert respectfully requests that the Court order that discovery of Dechert engagements by RAK is limited to the six Related Matters identified in good faith by Dechert's UK and US counsel, which Plaintiff's UK counsel have not objected to in the UK Litigation.

Likewise, Dechert's argument that the subpoenas sought "information outside the relevant time period," DE 137 at 6, was not just an argument that discovery should be confined to the 2018-2019 limitations period identified by the Court in its ruling on the motion to dismiss, *cf.* Order at 16, but also included the argument that discovery should not extend into periods unrelated to the parties' remaining claims and defenses, particularly where doing so would impose significant burden on a non-party. DE 137 at 6-7 (objecting that

14

deposition subpoena sought information "without any time limitation or indication of how all of that information relates to the online posting of Plaintiff's data"); DE 162 at 3; DE 176 at 4 (objecting that documents subpoena covered "time period that includes four years before *and three years after* the time period of Plaintiff's surviving claims: 2018-2019" (emphasis added)).

Conduct occurring during the six-week period between September 1, 2020 and October 15, 2020 is not relevant to the parties' claims and defenses. Plaintiff's Complaint alleges that "Plaintiff discovered that Defendants committed unfair and deceptive acts or practices that injured him on or about **August 28, 2020** following an investigation." DE 1 ¶ 127 (emphasis added). Plaintiff alleges no injuries (or any other events or conduct) following that date. The fact that he filed his Complaint six weeks later, rather than two weeks or two years later, is a matter of happenstance. The six-week period between the last-alleged injury and the filing of the Complaint post-dates the hacking at issue by four years, the posting and reposting at issue by two and one years, and the alleged coverup at the UK trial by eight months.

During the meet and confer process on the instant motion, Plaintiff's counsel asserted that the six-week period should be brought within the scope of Dechert's discovery obligations here because during the fall of 2020, Defendant Del Rosso allegedly instructed a third party named Aditya Jain to delete documents. However, Plaintiff has provided no articulable basis why

15

non-party *Dechert* would be in possession of any documents reflecting Defendant's discussions with that third party. As Plaintiff's counsel is aware, Dechert has already stated in a signed filing in the UK Litigation that Aditya Jain "is not known to Dechert." *See* Gopstein Decl., ¶ 27 (citing Re-Amended Defence to Counterclaim on Behalf of Dechert LLP, Case No. HC-2016-002789, ¶ 32.1.) For the five-plus year period between March 2015 and August 2020 for which documents have been collected and reviewed, not a single document was located in Dechert's possession related to Mr. Jain; there is no reason to believe such a document would exist during this six-week period either. Gopstein Decl. ¶ 28.

It is for the above reasons, in part, that the parties to the UK Litigation—including Plaintiff here—set the disclosure period in the UK Litigation between September 1, 2014 and August 31, 2020, a timeframe that was endorsed by the UK court. DE 250-1 ¶ 39 & Sched. 2. Insofar as the Court's order here directed otherwise, Dechert respectfully requests that the Court reconsider that aspect of its ruling and order that the relevant temporal period of discovery continues only through August 31, 2020, as adopted in the UK Litigation.

Reconsideration on these two limited points further is appropriate because compelled non-party disclosure of "[a]ll engagements of Dechert by RAKIA and the other RAK entities from 2013 to present" and of information

16

from the six-week period between September 1, 2020 and October 15, 2020 would be unduly burdensome and disproportionate to the needs of the case. Fed. R. Civ. P. 26; Fed. R. Civ. P. 45. Requiring the compilation of information related to scores of wholly irrelevant, foreign engagements between a sovereign entity and its former global law firm would be a laborious and time-consuming task, and implicate complex issues of confidentiality and privilege. Gopstein Decl., ¶ 17. With respect to the six-week period post-dating Plaintiff's last alleged injury, the fact that time period is comprised of only a few weeks would not mitigate the enormity of the task at hand: undergoing a significant collection, search and platforming process, from over a dozen different custodians and dozens of document repositories would be unnecessarily time-consuming, labor-intensive, and burdensome, particularly where the considerable effort is unlikely to yield many, if any, documents relevant to this matter. Gopstein Decl. ¶¶ 25-7.

## CONCLUSION

For the foregoing reasons, Dechert respectfully moves the Court to clarify and/or reconsider and order that non-party discovery from Dechert does not include information concerning (i) Dechert engagements by RAK entities unrelated to Plaintiff or Defendants and (ii) documents and events during the six-week period between September 1, 2020 and October 15, 2020.

17

Respectfully submitted this the 8th day of August 2023.

By:   /s/ John C. Quinn
John C. Quinn
Sean Hecker
David Gopstein
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0833
jquinn@kaplanhecker.com
shecker@kaplanhecker.com
dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

/s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
 HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile: (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*

18

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief does not exceed the 6,250-word limitation for such motions, according to the word count feature of the word processing system used to prepare the brief.

Respectfully submitted this the 8th day of August 2023.

By:   /s/ John C. Quinn
      John C. Quinn
      Sean Hecker
      David Gopstein
      KAPLAN HECKER & FINK LLP
      350 Fifth Avenue, 63rd Floor
      New York, New York 10118
      Tel: (212) 763-0833
      jquinn@kaplanhecker.com
      shecker@kaplanhecker.com
      dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

  /s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
 HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile: (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*