UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FARHAD AZIMA,<br><br>                Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>                Defendants. | No. 1:20-cv-00954-WO-JLW |

## DECLARATION OF DAVID GOPSTEIN

I, DAVID GOPSTEIN, hereby declare as follows:

1. I am an attorney with the law firm of Kaplan Hecker & Fink, counsel for non-party Dechert LLP ("Dechert"). I submit this declaration in support of Dechert's Motion for Clarification or Reconsideration pursuant to Fed. R. Civ. P. 54 (the "Motion").

2. Attached hereto as Exhibit A is a true and correct copy of the Subpoena to Testify at a Deposition in a Civil Action (the "Deposition Subpoena"), dated December 23, 2022.

3. Attached hereto as Exhibit B is a true and correct copy of the subpoena duces tecum (the "Documents Subpoena"), dated December 19, 2022.

4. The Deposition Subpoena includes, as one of its sixteen (16) topics, the following:

> All engagements of Dechert by RAKIA and other RAK entities from 2103 to present, including but not limited to engagements referenced in letters dated June 5, 2013, October 12, 2014, October 14, 2016, and November 16, 2016. We understand that Dechert alleged that it opened various client matters under the "umbrella of such engagement letters."

Ex. A at 9 (the "RAK Deposition Request").

    5.    The Documents Subpoena includes, as one sub-part of one of its seven topics:

> All Agreements, Calendar Entries, and Visitor Logs, related to Plaintiff Farhad Azima, Ras Al Khaimah Entities or Defendants, including but not limited to … (e) [a]ll engagements of Dechert by RAKIA and the other RAK entities from 2013 to present, including but not limited to the engagements referenced in letters dated June 5, 2013, October 12, 2014, October 14, 2016, and November 16, 2016. We understand that Dechert alleged that it opened various client matters under the "umbrella of such engagement letters."

Ex. B at 8 (the "RAK Document Request").

    6.    In turn, "Ras Al Khaimah Entities" (or "RAK Entities") is defined by the Document Subpoena as "the government of Ras Al Khaimah, the Ruler of Ras Al Khaimah, and all current and former entities Related to the government of Ras Al Khaimah, including but not limited to Ras Al Khaimah Investment Authority, RAK Development LLC, RAK Petroleum, RAK Gas LLC, and RAK IDO." Ex. B at 7.

7. Neither the RAK Deposition Request nor the RAK Document Request is limited in scope to relevance to Plaintiff Farhad Azima, Defendant Nicholas Del Rosso, or the remaining claims in the instant matter. Rather, they call for information related to "[a]ll engagements of Dechert by RAKIA and the other RAK entities from 2013 to present."

8. Dechert is a global law firm with hundreds of attorneys and offices across the world, including London, Hong Kong, and New York.

9. Ras Al Khaimah, or "RAK," is one of the seven emirates of the United Arab Emirates. A large number of entities constitute "RAK Entities" by Plaintiff's definition.

10. RAK and/or RAK Entities have engaged Dechert going back more than a decade for a wide variety of Dechert's legal services, including corporate and regulatory advice, investigations, and representations in litigation. This has included dozens of matters, the vast majority of which bear no relevance whatsoever to Plaintiff, let alone the claims in the instant matter, and are by and large focused on foreign business transactions.

11. Wholly irrelevant engagements include matters in Europe, Asia and the Middle East, related to the following:

    a. Corporate and restructuring advice;

    b. Corporate acquisition advice;

    c. Negotiation of a joint venture agreement; and

d. Review of tender documents.

12. Plaintiff previously leveled similar allegations against Dechert and RAKIA via counterclaims in related proceedings in the concurrent and significantly related litigation in the UK, *Ras al Khaimah Inv. Auth. v. Azima*, No. HC-2016-002798 (the "UK Litigation"). The UK Litigation has been pending since 2016, and disclosure (the equivalent of discovery in those proceedings) related to Plaintiff's counterclaims in that case is now complete. In order to produce documents in the UK Litigation, Dechert underwent an enormous, complex, and time-consuming effort over the course of many months, in consultation with Plaintiff.

13. As part of its disclosure process, UK counsel for Dechert conducted a good faith review of all RAK Entity-related matters, and identified six matters (the "Relevant Matters") which relate to Plaintiff and/or his claims:

   a. Matter 129727

      i. Client: RAK Investment & Development Office

      ii. Opened: October 6, 2013

      iii. Description: an investigation into certain historical transactions carried out by subsidiary companies controlled by RAKIA on the instruction of Dr Khater Massaad.

4

b. Matter 137547

    i. Client: RAK Development LLC

    ii. Opened: September 21, 2014

    iii. Description: Advice and assistance to the RAK government in relation to criminal cases.

c. Matter 137564

    i. Client: RAK Development LLC

    ii. Opened: September 21, 2014

    iii. Description: Litigation work in relation to civil cases in Georgia and ancillary proceedings.

d. Matter 149798

    i. Client: RAK Development LLC

    ii. Opened: September 21, 2014

    iii. Description: Advice and investigation work in relation to former employees of the RAK Government.

e. Matter 149798

    i. Client: RAKIA

    ii. Opened: October 22, 2016

    iii. Description: Representing RAKIA in US proceedings related to Plaintiff Azima.

      f. Matter 149555

          i. Client: RAKIA

          ii. Opened: October 10, 2016

          iii. Description: Representing RAKIA in English proceedings related to Plaintiff Azima.

14. The Relevant Matters are included within the four engagement letters specifically identified by Plaintiff in the Deposition Subpoena and Documents Subpoena. *See* Ex. A. at 9; Ex. B. at 8.

15. The Relevant Matters were previously identified, on April 5, 2022, as relevant to Plaintiff and his claims in the UK Litigation. Plaintiff's UK counsel has not challenged the relevance of those six matters, and those six matters alone, through the present day, and have been endorsed by the UK court.

16. To produce records related to the non-Relevant Matters would not only be outside of the scope of relevancy of the instant proceeding, it would be enormously burdensome.

17. Given the dozens of matters between RAK Entities and Dechert, and the five-year time period determined by the Court as relevant, there have been dozens of attorneys who have contributed and billed time in those matters. The Document Subpoena calls for "[a]ll Agreements, Calendar Entries, and Visitor Logs" for each of these matters; the Deposition Subpoena

asks broadly about "[a]ll engagements." Collecting calendar entries and visitor logs for each attorney within each matter over the course of years would require a vast effort likely to take weeks, if not months, even prior to review thereof. Similarly, preparing a 30(b)(6) designee to answer questions related to "all engagements" by RAK Entities of Dechert would prove enormously complex, time consuming, and labor intensive.

18. During attempts to meet and confer on the instant Motion, Plaintiff's counsel said that they were "willing to carve out projects that have no relation to Mr. Azima," conceding that such irrelevant "projects" are not subject to discovery here. However, to effectuate that agreement, Plaintiff's counsel has proposed an unworkable solution: that Dechert provide them a "list of such engagements," thereby disclosing the very information Plaintiff concedes is not relevant or subject to discovery.[1] On further meet and confers, Plaintiff's counsel has taken the view that even substantively irrelevant engagements might be subject to discovery if any of the custodians identified here billed time to them—despite the fact that attorneys may of course work on numerous unrelated matters—and so Plaintiff insisted that Dechert collect

---

[1] Dechert remains open to a workable solution on this issue, and is continuing to meet and confer with Plaintiff on this issue. However, given the Court-ordered deadline, Dechert is bringing this request to the Court now to ensure sufficient time for consideration of its motion.

7

documents from dozens of attorneys related to the substantively irrelevant matters to run certain search terms that Plaintiff might request.

\* \* \*

19. In the Court's Order dated July 25, 2023, the Court determined "that the discovery requests will be limited to the time period between March 2015 through October 15, 2020 at the time the Complaint was filed in this action." DE 248 at 14.

20. As described in detail in the Declaration of John Quinn in Support of the Motion for an Extension, and Exhibit A thereto (the Fifth Witness Statement of Edward Allen or "Allen 5"), DE 250, extraordinary efforts were exerted in collecting relevant documents from sixteen custodians across dozens of repositories of potentially relevant documents. The process of collection is time consuming and labor intensive.

21. For example, for each of sixteen custodians, Dechert collected the active mailbox, the archived mailbox, the back-up copy of the archived mailbox, locally-saved documents, and personal folders allocated to each custodian. Dechert also collected documents from workspaces, shared drive folders, and cloud storage folders. *See* Allen 5, ¶ 21.

22. Dechert additionally searched over 200 boxes of hard copy documents, as well as 20 USB drives, for relevant documents. *See* Allen 5, ¶¶ 27, 74.

23. In the UK Litigation, the relevant time period was determined to have ended on August 31, 2020. Thus, documents collected, platformed and searched from each device and custodian were limited by that end date.

24. The Court's Order here sets the end relevancy date at October 15, 2020, or six weeks after the relevant end date in the UK Litigation. Under the current Order, Dechert would be required to undergo a significant collection and platforming process from the sixteen identified custodians, each with at least five repositories of potentially relevant documents, a process which initially took months to complete.

25. Re-collecting, searching and platforming documents for that period would likely take many weeks, given the number of custodians, devices, and workspaces.

26. During the meet and confer process, Plaintiff's counsel asserted that the six-week period is relevant because during the fall of 2020, Defendant Del Rosso allegedly instructed a third party named Aditya Jain to delete documents, but has provided no articulable basis why non-party Dechert would be in possession of any documents reflecting Defendant's discussions with that third party.

27. In a signed filing submitted in the UK Litigation, Dechert has already stated that Aditya Jain "is not known to Dechert." *See* Re-Amended Defence to Counterclaim on Behalf of Dechert LLP, Case No. HC-2016-002789.

28. Furthermore, for the five-plus-year period between March 2015 and August 2020 for which documents have been collected and reviewed, not a single document was located in Dechert's possession related to Mr. Jain.

Respectfully submitted, this the 8th day of August 2023.

Dated: August 8, 2023
    New York, New York

By: /s/ David Gopstein

David Gopstein
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0833
dgopstein@kaplanhecker.com