# EXHIBIT A

(Defendants' First Requests for Production
Served 3/31/23)

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 1:20-cv-00954-UA-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>  Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>  Defendants. | **DEFENDANTS NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS") (collectively, "Defendants"), hereby serve the following First Set of Requests for Production (the "Requests") to Plaintiff Farhad Azima ("Plaintiff"), and request that Plaintiff serve written responses to the Requests and produce for inspection and copying each of the documents, electronically stored information, and tangible things described below at the offices of Nelson Mullins Riley & Scarborough LLP, 301 Hillsborough Street, Suite 1400, Raleigh, North Carolina 27603 (attn: Brandon Neuman) within thirty (30) days of service of these Requests.

## DEFINITIONS

In responding to these Requests, with the exception of the terms and phrases defined below, each term and phrase should be given its usual meaning.

1.  The term "Complaint" means the operative complaint in the above-captioned action filed in the Middle District of North Carolina on October 15, 2020.

(*See* D.E. 1), as modified by the Court's Order on Defendants' Motion to Dismiss, (D.E. 65).

2. "You," "Your" or "Plaintiff" means Farhad Azima and includes all Mr. Azima's present or former agents, employees, representatives, or any other person acting on his behalf, including his attorneys. Mr. Azima's attorneys specifically include but are not limited to, the law firms: Miller & Chevalier Chartered; Womble Bond Dickinson LLP; Burlingtons LLP; and Brick Court Chambers.

3. "Defendants" refers to Nicholas Del Rosso and Vital Management Services, Inc., and includes any of Mr. Del Rosso's agents, representatives, attorneys, and any other Persons acting or purporting to act on his behalf, and any of Vital Management Services, Inc.'s current and former employees, agents, representatives, subsidiaries, affiliates, assignees, or other Persons acting or purporting to act on its behalf.

4. "CyberRoot" refers to CyberRoot Risk Advisory Private Limited and all current and former employees, agents, representatives, attorneys, subsidiaries, affiliates, assignees, or other Persons acting or purporting to act on its behalf.

5. "Person" means any natural person, corporation, partnership, trust, trustee, unincorporated association, business association, trade or professional organization, group, public or governmental body, agency, department, division, company, or any other individual or collection of individuals organized or associated for any purpose.

6. "And" and "or" shall be construed disjunctively or conjunctively as necessary to include all information and documents that might otherwise be construed as outside the scope of each individual Request. Singular and plural, as well as masculine and feminine, language shall be considered interchangeable as necessary to include all information and documents that might otherwise be construed as outside the scope of each individual Request.

7. "Concerning" means any fact, document, or communication that supports, evidences, refutes, contradicts, relates, or refers to any fact or allegation.

8. "Relate to," "relating to," "related to," or "evidence" means and includes constituting, discussing, mentioning, containing, embodying, reflecting, identifying, incorporating, referring to, dealing with, pertaining to, or being in any way logically or factually connected with the matter being inquired about.

9. "Document" or "Documents" shall have its customary, broad sense to include written or graphic matter of every kind and description, whether printed or reproduced by any process, written, or produced by hand; draft or final; original or reproduction; including but not limited to the following categories: letters, correspondence, emails, text messages, memoranda of telephone or personal conversations, microfilm, microfiche, telegrams, books, magazines, newspapers, advertisements, periodicals, bulletins, circulars, brochures, pamphlets, statements, notices, advertising layouts, trade letters, press releases, reports, rules, regulations, directives, discs, video tapes, audio tapes, movie tapes, records, digital audio or video files, teletype or telefax messages, minutes or records of meetings, interoffice

communications, memoranda, financial statements, ledgers, books of account, proposals, prospectuses, offers, orders, receipts, working papers, desk calendars, appointment books, diaries, routing slips, time sheets, logs, drawings, blueprints, sketches, plans, guidelines, graphics, charts, photographs, data processing printouts and computation (both in existence and stored in memory), .pdf files, notes, transcripts of oral statements or testimony, tangible things, and any and all other data compilations or information resources from which information can be obtained or translated, if necessary, through detection devices into a reasonably usable form. "Document" includes the original of any document, in its native form and in whatever medium it may exist, and any copy of such original differing in any way from the original.

"Document" or "Documents" also includes all metadata of any kind and all electronic documents, which is all information about a particular electronic document or data set that is available electronically, including information relating to how, when, and by whom it was collected, created, sent, copied, received, accessed, or modified; and how it is formatted, including data demographics such as size, location, storage requirements, and media information.

10. "Communications" means all methods of communication, including letters, e-mails, fax transmissions, SMS text messages, and messaging application records (including but not limited to applications such as Threema, WhatsApp, Signal, and Telegram).

4

11. The term "agreements" shall mean any written or oral contract or agreement for services, whether formal or informal.

12. The term "wire statements" refers to any transaction records reflecting wire transfers of money or the sending or transfer of or related to any digital currency (including but not limited to digital currencies such as Bitcoin, Ethereum, and similar currencies).

13. The term "financial account statements" refers to any transaction records of monetary transfers, transmittals, or receipts (as to amounts of both legal tender currency and of digital currency, including but not limited to Bitcoin, Ethereum, and similar currencies) into or out of a bank, financial, or other digital currency account.

14. The term "calendar records" refers to any physical or electronic method for keeping track of meetings or appointments, including but not limited to calendars maintained by Outlook, Google, or any other electronic means of maintaining a calendar, as well as any physical calendars, day planners, or diaries.

15. "Trade Secret(s)" shall refer to all business or technical information included in the definition for "trade secret" used in N.C. Gen. Stat. § 66-152(3). This definition shall not operate as an admission that the categories or information alleged as trade secrets in the Complaint are protectable as such under North Carolina law or that Plaintiff's trade secrets are sufficiently alleged.

16. "Transaction" means any planned, proposed, contemplated and/or executed deal, bargain, enterprise, venture, affair, arrangement, or other exchange

5

of monetary or other consideration in return for the supply of goods, services, assistance, data, information or knowledge.

## INSTRUCTIONS

1. These Requests call for the production of all responsive documents in Plaintiff's possession, custody or control, or in the possession, custody or control of Plaintiff's attorneys, employees, related entities, predecessors, successors, parents, subsidiaries, divisions, affiliates, partners, joint venturers, brokers, accountants, financial advisors, representatives, and agents or other Persons acting on Plaintiff's behalf, without regard to the physical location of such documents.

2. All documents are to be produced as they are kept in the usual course of business including any labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein. If there are no documents in response to a particular Request, or if you withhold any responsive documents or categories of documents based on any objections, Plaintiff shall state so in writing.

3. Electronically stored information should be produced in an appropriate format that does not impose an undue burden or expense upon Defendants.

4. Each Request contemplates production of all documents in their entirety. If only a portion of a document is responsive to one or more Requests, the document shall be produced in its entirety.

5. If any document was, but no longer is, in Plaintiff's possession, subject to Plaintiff's control, or in existence, include a statement:

a. identifying the document;

b. describing where the document is now;

c. identifying who has control of the document;

d. describing how the document became lost or destroyed or was transferred; and

e. identifying each of those persons responsible for or having knowledge of the loss, destruction, or transfer of the document from Plaintiff's possession, custody, or control.

6. To the extent that any Request herein requires the production of documents or things that are already being produced in response to a different Request, identify the specific Request to which the response refers.

7. If Plaintiff withholds from production any document based on a claim of privilege or work product immunity, provide the following information on a privilege log which identifies each such document and the basis for the claim of privilege or work product immunity, including the:

a. date of preparation;

b. author's name and address;

c. name and address of addressee and all recipient(s) of the document;

d. general characteristics and general subject matter of the document (*e.g.*, number of pages, subject matter, communication format); and

e. the factual and legal basis upon which Plaintiff bases his claim that the document is privileged or immune from discovery.

7

8. If Plaintiff objects to, or otherwise decline to answer any portion of any Request, provide all information called for by that portion of the Request which Plaintiff does not object or which Plaintiff does not decline to answer. If Plaintiff objects to any Request on the ground that it is too broad, provide such information that is concededly relevant.

9. To the extent that Plaintiff objects or responds that any responsive documents to these requests are already in the possession, custody, or control of Defendants, Plaintiff must identify each and every responsive document with sufficient specificity to allow Defendants to identify and segregate such responsive documents from other documents and information in the possession of Defendants. For example, vaguely identifying groups of documents (i.e. "Plaintiff's hacked data" or the like) would be insufficient for Defendants to identify specific responsive documents to the respective request. Instead, Plaintiff must identify such documents by listing the file name, folder in which the file is located, and location in the file tree in which the folder is located.

10. These requests are continuing, and Plaintiff's response to these requests must be promptly supplemented when appropriate or necessary in accordance with Federal Rule of Civil Procedure 26(e).

**REQUESTS FOR PRODUCTION**

1. Produce all documents which you contend constitute "confidential internal pricing lists relating to food transport for U.S. troops in Afghanistan," as alleged in paragraph 18 of the Complaint, which you contend Defendants published or republished.

**RESPONSE**:

2. Produce all documents which you contend constitute "highly confidential business plans and proposals," as alleged in paragraph 102 of the Complaint, which you contend Defendants published or republished.

**RESPONSE**:

3. Produce all documents reflecting proposed Transactions pertaining to the "business plans and proposals" to which the Complaint refers in paragraph 102.

**RESPONSE:**

4. Produce all documents concerning any profit or revenue earned from any of the business plans and/or proposals to which the Complaint refers in paragraph 102.

**RESPONSE:**

5. Produce all documents concerning any profit or revenue anticipated from any of the business plans and/or proposals to which the Complaint refers in paragraph 102.

**RESPONSE:**

6. Produce all documents concerning any profit or revenue lost or adversely impacted in any way as a result of the disclosure of any of the business plans and/or proposals to which the Complaint refers in paragraph 102.

**RESPONSE:**

10

7. For the period of January 1, 2008, to present, produce all documents concerning any profit or revenue, whether earned, anticipated, lost, or impacted in any way, from the business plans referenced in paragraph 102 of the Complaint, or other purported trade secrets to which the Complaint refers

**RESPONSE:**

8. Produce any Communications with any Person, including any partner, buyer, seller, lender, consultant, advisor, who performed or were expected to perform any role or take any actions concerning the business plans or proposals to which the Complaint refers in paragraph 102.

**RESPONSE:**

9. Produce any Communications with any Person, including any entity, who had any role, or took any action, in connection with the preparation, development, modification and/or implementation of any of the business plans or proposals to which the Complaint refers in paragraph 102.

**RESPONSE:**

11

10. Produce all documents which you contend constitute "research supporting those [highly confidential business] plans and proposals (including costs and service productions)," as alleged in paragraph 102 of the Complaint, which you contend Defendants published or republished.

**RESPONSE**:

11. Produce all documents which you contend constitute "information concerning business strategies and opportunities," as alleged in paragraph 102 of the Complaint, which you contend Defendants published or republished.

**RESPONSE**:

12. Produce all documents which you contend constitute "contacts for important business relationships[,]" as alleged in paragraph 102 of the Complaint, which you contend Defendants published or republished.

**RESPONSE**:

13. Produce all documents which you contend constitute, refer, or relate to "confidential internal price lists and confidential spreadsheets connected to contracts with the United States government to supply troops in Afghanistan[,]" as alleged in paragraph 108 of the Complaint, which you contend Defendants published or republished.

**RESPONSE**:

14. To the extent not previously produced in response to Requests 1 to 7, produce all documents which you contend constitutes a trade secret within the meaning of N.C. Gen. Stat. § 66-152, which you contend Defendants published or republished.

**RESPONSE**:

15. Produce all documents concerning your allegations in the Complaint that the Trade Secrets referenced in the Complaint had "independent actual and potential economic value."

**RESPONSE:**

13

16. Produce all documents that You, Your Attorneys, or Your Agents downloaded from the WeTransfer links which you contend were modified in May 2018 and "contained copies of Azima's stolen data[,]" as alleged in paragraph 24 of the Complaint.

**RESPONSE**:

17. Produce all documents concerning those documents that You, Your Attorneys, or Your Agents downloaded from the WeTransfer links which you contend were modified in June 2018 and "contained copies of Azima's stolen data[,]" as alleged in paragraph 24 of the Complaint.

**RESPONSE**:

18. Produce all documents concerning those documents that You, Your Attorneys, or Your Agents downloaded from the WeTransfer links which you contend were modified in June 2019 and contained "some of Azima's stolen data[,]" as alleged in paragraph 26 of the Complaint.

**RESPONSE**:

14

19. Produce all documents, communications, and information concerning or supporting your allegation or belief that "CyberRoot regularly used WeTransfer links to transfer data to Vital[,]" as alleged in paragraph 24 of the Complaint.

**RESPONSE**:

20. Produce all documents, communications, and information concerning those documents supporting your allegation or belief that "CyberRoot set up the WeTransfer account using the email account an_james@protonmail.ch[,]" as alleged in paragraph 25 of the Complaint.

**RESPONSE:**

21. Produce all documents concerning communication and information supporting your allegation or belief that Defendants' payments to CyberRoot were used to pay for "the distribution of Azima's stolen data[,]" as alleged in paragraph 30 of the Complaint.

**RESPONSE**:

15

22. Produce all documents concerning any communications by You, Your Attorneys, Your Agents, Aditya Jain, and/or Jonas Rey with Belltrox, concerning or supporting your allegation or belief that Belltrox was involved in the publication or republication of your data, as alleged throughout the Complaint, including in paragraphs 3, 4, 20, 16, 17, and 20.

**RESPONSE:**

23. Produce all documents concerning any communications by You, Your Attorneys, Your Agents, Aditya Jain, and/or Jonas Rey with CyberRoot, including but not limited to Vikash Pandey, Vijay Bisht, the "whistleblower" to which the Stokoe Law Firm referred on page 15 of the Memorandum in Support of its application pursuant to 28 U.S.C. §1782, and/or the "anonymous" source referenced on page 9 of the Memorandum in Support of the 28 U.S.C. § 1782 Application of Cameron Findlay; concerning your allegation or belief that CyberRoot was involved in the publication or republication of your data, as alleged throughout the Complaint, including in paragraphs 2-6, 16-22, and 29-33.

**RESPONSE:**

24. Produce all documents concerning any communications by You, Your Attorneys, Your Agents, Aditya Jain, and/or Jonas Rey reflecting actual, promised, or offered payments, remuneration, reimbursement for expenses or disbursements, consulting agreement(s) or consideration of any type, in connection with requests or transmittal of information concerning your allegation or belief that CyberRoot was involved in the publication or republication of your data, as alleged throughout the Complaint, including in paragraphs 2-6, 16-22, 29-33.

**RESPONSE:**

25. Produce all documents which evidence, refer, or relate to any economic or other damages, harm, or injury that You claim You sustained as a result of any and all acts alleged in the Complaint.

**RESPONSE:**

Respectfully submitted, this the 31st day of March, 2023.

                                         **NELSON MULLINS RILEY &**
                                         **SCARBOROUGH LLP**

By: _____
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    John E. Branch III, NCSB# 32598
    Nathaniel Pencook, NCSB# 52339
    Sam A. Rosenthal
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    john.branch@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    *Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that I have this 31st day of March, 2023 served a true copy of the foregoing **DEFENDANTS NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION** upon all parties to this matter via electronic mail as follows:

Jonathon D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Calvin Lee
Ian Herbert
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
kbehre@milchv.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Brandon S. Neuman
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel Pencook, NCSB# 52339
Sam A. Rosenthal
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*