# EXHIBIT D

(Defendants' First Set of Interrogatories
Dated 5/3/23)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:20-cv-00954-UA-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>               Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>               Defendants. | **DEFENDANTS NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1–12)** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS") (collectively, "Defendants"), by and through its attorneys, hereby serve the following First Set of Interrogatories (the "ROGS") to Plaintiff Farhad Azima ("Plaintiff"), and request that Plaintiff serve written and verified responses to these ROGS upon the undersigned attorneys within thirty (30) days of service.

## DEFINITIONS

In responding to these ROGS, with the exception of the terms and phrases defined below, each term and phrase should be given its usual meaning.

1. The term "Complaint" means the operative complaint in the above-captioned action filed in the Middle District of North Carolina on October 15, 2020. (*See* D.E. 1), as modified by the Court's Order on Defendants' Motion to Dismiss, (D.E. 65).

2. "You," "Your" or "Plaintiff" means Farhad Azima and includes all Mr. Azima's present or former agents, employees, representatives, or any other Person

acting on his behalf, including his attorneys. Mr. Azima's attorneys specifically include but are not limited to, the law firms: Miller & Chevalier Chartered; Womble Bond Dickinson LLP; Burlingtons LLP; and Brick Court Chambers.

3. "Defendants" refers to Nicholas Del Rosso and Vital Management Services, Inc., and includes any of Mr. Del Rosso's agents, representatives, attorneys, and any other Persons acting or purporting to act on his behalf, and any of Vital Management Services, Inc.'s current and former employees, agents, representatives, subsidiaries, affiliates, assignees, or other Persons acting or purporting to act on its behalf.

4. "CyberRoot" refers to CyberRoot Risk Advisory Private Limited and all current and former employees, agents, representatives, attorneys, subsidiaries, affiliates, assignees, or other Persons acting or purporting to act on its behalf.

5. "Person" means any natural person, corporation, partnership, trust, trustee, unincorporated association, business association, trade or professional organization, group, public or governmental body, agency, department, division, company, or any other individual or collection of individuals organized or associated for any purpose.

6. "And" and "or" shall be construed disjunctively or conjunctively as necessary to include all information and documents that might otherwise be construed as outside the scope of each individual Request. Singular and plural, as well as masculine and feminine, language shall be considered interchangeable as

necessary to include all information and documents that might otherwise be construed as outside the scope of each individual Request.

7. "Concerning" means any fact, document, or communication that supports, evidences, refutes, contradicts, relates, or refers to any fact or allegation.

8. "Relate to," "relating to," "related to," or "evidence" means and includes constituting, discussing, mentioning, containing, embodying, reflecting, identifying, incorporating, referring to, dealing with, pertaining to, or being in any way logically or factually connected with the matter being inquired about.

9. "Document" or "Documents" shall have its customary, broad sense to include written or graphic matter of every kind and description, whether printed or reproduced by any process, written, or produced by hand; draft or final; original or reproduction; including but not limited to the following categories: letters, correspondence, emails, text messages, memoranda of telephone or personal conversations, microfilm, microfiche, telegrams, books, magazines, newspapers, advertisements, periodicals, bulletins, circulars, brochures, pamphlets, statements, notices, advertising layouts, trade letters, press releases, reports, rules, regulations, directives, discs, video tapes, audio tapes, movie tapes, records, digital audio or video files, teletype or telefax messages, minutes or records of meetings, interoffice communications, memoranda, financial statements, ledgers, books of account, proposals, prospectuses, offers, orders, receipts, working papers, desk calendars, appointment books, diaries, routing slips, time sheets, logs, drawings, blueprints, sketches, plans, guidelines, graphics, charts, photographs, data processing printouts

and computation (both in existence and stored in memory), .pdf files, notes, transcripts of oral statements or testimony, tangible things, and any and all other data compilations or information resources from which information can be obtained or translated, if necessary, through detection devices into a reasonably usable form. "Document" includes the original of any document, in its native form and in whatever medium it may exist, and any copy of such original differing in any way from the original.

"Document" or "Documents" also includes all metadata of any kind and all electronic documents, which is all information about a particular electronic document or data set that is available electronically, including information relating to how, when, and by whom it was collected, created, sent, copied, received, accessed, or modified; and how it is formatted, including data demographics such as size, location, storage requirements, and media information.

10. "Communications" means all methods of communication, including letters, e-mails, fax transmissions, SMS text messages, and messaging application records (including but not limited to applications such as Threema, WhatsApp, Signal, and Telegram).

11. The term "agreements" shall mean any written or oral contract or agreement for services, whether formal or informal.

12. The term "wire statements" refers to any transaction records reflecting wire transfers of money or the sending or transfer of or related to any digital currency

4

Case 1:20-cv-00954-WO-JLW   Document 269-4   Filed 08/16/23   Page 5 of 16

(including but not limited to digital currencies such as Bitcoin, Ethereum, and similar currencies).

14. The term "financial account statements" refers to any transaction records of monetary transfers, transmittals, or receipts (as to amounts of both legal tender currency and of digital currency, including but not limited to Bitcoin, Ethereum, and similar currencies) into or out of a bank, financial, or other digital currency account.

14. The term "calendar records" refers to any physical or electronic method for keeping track of meetings or appointments, including but not limited to calendars maintained by Outlook, Google, or any other electronic means of maintaining a calendar, as well as any physical calendars, day planners, or diaries.

15. "Trade Secret(s)" shall refer to all business or technical information included in the definition for "trade secret" used in N.C. Gen. Stat. § 66-152(3). This definition shall not operate as an admission that the categories or information alleged as trade secrets in the Complaint are protectable as such under North Carolina law or that Plaintiff's purported trade secrets are sufficiently alleged.

16. "Transaction" means any planned, proposed, contemplated and/or executed deal, bargain, enterprise, venture, affair, arrangement, or other exchange of monetary or other consideration in return for the supply of goods, services, assistance, data, information or knowledge.

## INSTRUCTIONS

1. In responding to these ROGS, Plaintiff is required to obtain and provide all responsive information and data known by and available to Plaintiff or any of Plaintiff's attorneys, employees, related entities, predecessors, successors, parents, subsidiaries, divisions, affiliates, partners, joint venturers, brokers, accountants, financial advisors, representatives, and agents or other Persons acting on Plaintiff's behalf.

2. Each ROG seeking information or data relating to communications to, from, or within a business or corporate entity shall be construed to include all communications by or between representatives, employees, agents, brokers, servants or attorneys of the business or corporate entity at issue.

3. In lieu of identifying a document in response to each ROG, Plaintiff may choose to produce the document. Plaintiff must produce such documents as they are kept in the normal course of business or must organize and label them to correspond to the categories in the ROG to which they primarily respond. Where required, documents produced shall be further segregated and identified as indicated by a particular ROG. Electronically stored information should be produced in an appropriate format that does not impose an undue burden or expense upon Defendants. Plaintiff need not produce the same electronically stored information in more than one form.

4. If Plaintiff objects to part of a ROG, Plaintiff shall provide information and data that responds to the parts of the ROG that are not objected to.

5. If Plaintiff plans to assert that a privilege, immunity, or confidentiality or protective order precludes it from producing any information or document, Plaintiff must provide the following:

    a. the nature of the information or document (*e.g.*, whether it is an oral communication, letter, memo, etc.);

    b. the nature of the privilege claimed, including the legal and factual basis upon which the information or document is considered to be privileged or protected from discovery;

    c. the date of the document, and its subject matter; and

    d. all authors or recipients of the document, and any Person with knowledge of the circumstances of the document's preparation.

6. Documents or tangible objects Plaintiff produces in response to these ROGS should include all original attachments and enclosures.

7. Whenever these ROGS request information or data that is not available to Plaintiff in the form requested, but is available in another form or can be obtained elsewhere, Plaintiff should either: (1) so state; (2) supply the information or data requested in the form in which it is available; or (3) supply information or data from which the requested information or data can be obtained.

8. Plaintiff is under a continuing duty to timely supplement its responses to these ROGS with any responsive information or data discovered, learned, or discerned after it prepares and serves its initial responses.

7

Case 1:20-cv-00954-WO-JLW   Document 269-4   Filed 08/16/23   Page 8 of 16

9. Where Plaintiff cannot provide exact information or data, Plaintiff should estimate such information to the extent possible. If estimation is used, it should be so indicated, and Plaintiff should explain why it used estimation and why it cannot provide exact information or data.

10. For the convenience of all Parties, Plaintiff should restate in full the ROG to which each response relates. Counsel for Defendants will provide a word processing version of this document upon request.

11. The above definitions and instructions are hereby incorporated into each and every ROG by reference.

# INTERROGATORIES

**INTERROGATORY NO. 1:** Describe in detail, and identify all Persons with knowledge of, the complete factual and legal basis for your contention that Defendants hired CyberRoot (assisted by BellTroX) to publish Plaintiff's data in 2018 and 2019 (*See* Compl. ¶¶ 16, 19, 22).

**RESPONSE**:


**INTERROGATORY NO. 2**: Describe in detail, and identify all Persons with knowledge of, the complete factual and legal basis for your contention that Defendants and/or CyberRoot used WeTransfer to transfer and publish Plaintiff's data in 2018 and 2019. (*See* Compl. ¶¶ 24–26).

**RESPONSE**:


**INTERROGATORY NO. 3:** In an April 5, 2023 cover letter to Plaintiff's first response to Defendants' First Set of Requests for Production, Plaintiff explained that the enclosed production includes "documents published on WeTransfer, including Plaintiff's [purported] trade secrets." Within said production, identify by Bates number and describe in detail each alleged Trade Secret that Plaintiff contends that Defendants have misappropriated or unlawfully used or disclosed by purportedly publishing this information, including in May and June of 2018 and June 2019, as alleged in the Complaint.

**RESPONSE**:

9

**INTERROGATORY NO. 4**: To the extent not included in response to Interrogatory No. 3, identify and describe in detail all other alleged Trade Secrets that Plaintiff contends that Defendants have misappropriated or unlawfully used or disclosed by purportedly publishing this information, including in May and June of 2018 and June 2019, as alleged in the Complaint.

    **RESPONSE**:

**INTERROGATORY NO. 5**: For each alleged Trade Secret identified in Your response to ROG Nos. 3 and 4, identify and describe all facts supporting Farhad Azima's ownership of *each* alleged Trade Secret, including all other Persons with knowledge of or an interest in each alleged Trade Secret.

    **RESPONSE:**

**INTERROGATORY NO. 6**: For each alleged Trade Secret identified in Your response to ROG Nos. 3 and 4, explain and describe all facts regarding how *each* alleged Trade Secret derives independent, actual, or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by Persons who can obtain economic value from its disclosure or use.

    **RESPONSE**:

10

**INTERROGATORY NO. 7:** For each alleged Trade Secret identified and described in Your responses to ROG Nos. 3 and 4, describe in detail all measures taken by Plaintiff to preserve the secrecy and confidentiality of *each* alleged Trade Secret.

**RESPONSE**:

**INTERROGATORY NO. 8:** For each alleged Trade Secret identified in Your response to ROG Nos. 3 and 4, describe in detail the complete factual basis for Your contention that Defendants misappropriated (*i.e.*, acquired, disclosed, or used) *each* alleged Trade Secret, and identify all Persons with knowledge thereof.

**RESPONSE**:

**INTERROGATORY NO. 9**: Describe in detail Your communications with journalists, media outlets, or reporters, including Thomson Reuters, on matters related to Defendants, BellTroX, CyberRoot, WeTransfer, or the subject matter of this lawsuit.

**RESPONSE**:

**INTERROGATORY NO. 10:** State the amount of monetary damages You seek in this proceeding, describing in detail each element of damages included in this amount, the method of calculation or formula for each element and category of damages, the factual basis and legal theories of liability You contend entitle You to recovery, and the amount of damages You contend is attributable to each of Your two remaining claims for relief.

    **RESPONSE**:


**INTERROGATORY NO. 11:** Identify each of the witnesses whom Your counsel stated during the November 15, 2022 case management conference would provide testimony, witness statements, or other information supporting Your allegation that Defendants were involved in hacking Your devices or republishing Your data in 2018 or 2019. For each Person identified, state with specificity the date on which such information was provided, the Person to whom such information was provided, and the method of communicating any and all such information.

    **RESPONSE**:

12

**INTERROGATORY NO. 11:** Describe in detail how You obtained information supporting Your representation in Paragraph 115 of the Complaint that Defendants "paid CyberRoot more than $1 million[,]" including the date on which You were told or otherwise informed about any payments by Defendants to CyberRoot, the identity of the Person or Persons who provided You with that information, the substance of their information, the identification of any documents delivered in communicating that information, and the substance of the information provided to You.

    **RESPONSE**:


**INTERROGATORY NO. 12**: In Plaintiff's Opposition to the Motion of Craig Evers to Quash Third-Party Subpoenas, You state that "Plaintiff has evidence that Evers worked for Del Rosso to communicate with hackers whom Del Rosso directed to obtain Azima's stolen data." (*See* D.E. 212, at pp. 8–9). Identify and describe in detail the "evidence" that forms the basis for this contention, including all Persons with knowledge of this "evidence", and all facts and legal bases for your contention that "Del Rosso directed [hackers] to obtain Azima's stolen data."

    **RESPONSE**:

13

This the 3rd day of May, 2023.

                **NELSON MULLINS RILEY &**
                **SCARBOROUGH LLP**

By: _____
       Brandon S. Neuman, NCSB# 33590
       Jeffrey M. Kelly, NCSB# 47269
       John E. Branch III, NCSB# 32598
       Nathaniel Pencook, NCSB# 52339
       Sam A. Rosenthal
       301 Hillsborough Street, Suite 1400
       Raleigh, North Carolina 27603
       Telephone: (919) 329-3800
       Facsimile: (919) 329-3799
       brandon.neuman@nelsonmullins.com
       jeff.kelly@nelsonmullins.com
       john.branch@nelsonmullins.com
       nate.pencook@nelsonmullins.com
       sam.rosenthal@nelsonmullins.com
       *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2023, I served the foregoing document upon all parties to this matter via electronic mail as follows:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Joseph Rillotta
Kirby D. Behre
Timothy O'Toole
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
jrillotta@milchev.com
kbehre@milchev.com
totoole@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ 
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Nathaniel Pencook, NCSB# 52339
Sam A. Rosenthal
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
nate.pencook@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
*Counsel for Defendants*