# EXHIBIT G

(Marden's 6/23/23 letter to John Branch)

# Miller & Chevalier

**Cody Marden**
Senior Associate
(202) 626-1495
cmarden@milchev.com

June 23, 2023

<u>Via Email</u>

John E. Branch III
Nelson Mullins Riley & Scarborough LLP
301 Hillsborough Street
Suite 1400
Raleigh, NC 27603

  Re: *Azima v. Del Rosso*, 1:20-cv-954 (M.D.N.C.); Response to
     Defendants' June 8, 2023 Discovery Letter

Dear Mr. Branch:

  We write in response to your June 8, 2023 discovery letter ("Defendants' letter"), which is a transparent attempt to rewrite the history of discovery in this case to divert attention away from Defendants' own discovery deficiencies and the underlying criminal misconduct. We address each of Defendants' claims below and correct some of the numerous inaccuracies.

  ***First***, Plaintiff served answers to Defendants' interrogatories on June 12, 2023, so Defendants' first complaint is moot. Plaintiff did not waive any objections, as Defendants' claim. *See, e.g.*, *Westdale Recap Properties, Ltd. v. NP/I & G Wakefield Commons, LLC.*, No. 5:11-CV-659-D, 2013 WL 5424844, at *5 (E.D.N.C. Sept. 26, 2013) (no waiver where requesting parties did "not demonstrate[] any prejudice from the delay in service of [a discovery] response . . ., particularly in light of the overall pace of discovery in this case").

  ***Second***, on June 5, 2023, Defendants' unilaterally canceled Vital's Rule 30(b)(6) deposition, which was agreed to months earlier and was set for June 8, 2023. Well before that, on April 5, 2023 Defendants lodged so many objections to the 30(b)(6) notice that it was clear that Defendant would not meaningfully sit for the deposition anyway. And Defendants have never produced responsive documents that would be relevant to that deposition. Given this course of events, it is preposterous to argue that Plaintiff must sit for a deposition when Defendant Vital has refused to do so. This is particularly true given the fact that Defendants have refused to produce any documents other than those they stole from Plaintiff. It is clear that Defendants intended to sandbag Plaintiff at the deposition with documents it has failed to produce to date in discovery.

Miller & Chevalier Chartered . 900 16th Street NW . Black Lives Matter Plaza . Washington, DC 20006
T 202.626.5800 . millerchevalier.com

Case 1:20-cv-00954-WO-JLW Document 269-7 Filed 08/16/23 Page 2 of 4

Defendants cannot have it both ways by refusing to sit for a deposition while feigning outrage that Plaintiff sit for his.[1]

***Third***, Defendants admit that Plaintiff has voluntarily produced thousands of relevant documents.[2] Defendants' letter is a backdoor attempt to obtain information about the documents that should properly be elicited through interrogatories or deposition testimony and not under the guise of a discovery deficiency letter. Plaintiff is not required to identify to which request each document is responsive, what documents remain to be produced, if any, and when they will be produced. Nor have Defendants cited any legal authority to support their request for this information.[3]

Indeed, Defendants' complaints about Plaintiff's discovery are completely disingenuous given Defendants' wholesale obstruction of the discovery process. It is not just that Defendants have refused to participate in discovery themselves, producing essentially no documents, refusing to sit for a deposition until ordered by the court, obstructing the Rule 30(b)(6) deposition, and answering interrogatories untruthfully to avoid further discovery. Defendants have also taken the extraordinary step of attempting to prevent essentially all third-party discovery. They have moved to quash four third-party subpoenas, even when they had no standing to do so, and seemingly coordinated with third parties on another four motions to quash, many of which were based on frivolous arguments.

\* \* \*

Finally, we are in receipt of your letter from earlier today regarding Plaintiff's interrogatory responses, which also reiterates many of the same claims addressed above. Needless to say, we continue to strongly disagree with your inaccurate characterizations of the discovery process. We are reviewing your letter and will respond in due course.

---

[1] Defendants refused to produce a witness for VMS's deposition purportedly because of the parties' dispute related to the scope of discovery, yet Defendants' letter argues the same issue would somehow not impact Mr. Azima's deposition.

[2] Defendants falsely contend that the "entirety of the second production should be considered as privileged." That is not true. As explained in Plaintiff's production cover letter, the production contains privileged communications that were posted online by Defendants. Production of the documents that Defendants stole and posted online was not a waiver of privilege and Plaintiff reserves the right to claim privilege under North Carolina law.

[3] Defendants also demand that Plaintiff identify his purported trade secrets by Bates number, but this request is likewise inappropriate and premature. This issue is best reserved for summary judgment, after discovery is complete. *See, e.g.*, *Computer Design & Integration, LLC v. Brown*, No. 16-cv-11847, 2018 WL 6609014, at *13 (N.C. Super. Dec. 10, 2018) (resolving identification of trade secrets at summary judgment after considering "documents, e-mails, affidavits, and deposition testimony"); *accord Panos v. Timco Engine Ctr., Inc.*, 197 N.C. App. 510, 519, 677 S.E.2d 868, 875 (2009) ("Summary judgment should be granted upon the nonmovant's failure to identify that information which it claims to be a trade secret that was misappropriated.").

Sincerely,

Cody Marden