UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **NON-PARTY DECHERT LLP'S REPLY IN SUPPORT OF MOTION TO EXTEND DEADLINES** |

Immediately following the issuance of the Court's Order (the "Order") on July 25, 2023, Dechert undertook an extensive effort to comply with the Order's directives. *See* Non-Party Dechert's Status Report on Discovery Efforts and Motion to Extend Deadlines (the "Motion"), DE 251, at 1–6. Dechert has already produced nearly 10,000 pages of discovery to Plaintiff, and continues to review documents for imminent rolling productions. Given the scope of Plaintiff's subpoena, the number of devices and repositories requiring collection, and the complexity of the privilege review given Dechert's role as a law firm to its foreign client, Dechert requested in the Motion a modest extension of time from the Court to complete its production, while making clear that it would continue to work diligently pending resolution of the Motion. *Id.*

1

The Opposition is almost entirely unresponsive to the question before the Court, i.e., the complexity of the production process requiring additional time. To the contrary, Plaintiff's position appears to be that the remaining production process is even *more* complex. *See* DE 271 ("Opposition") at 4 (demanding additional custodians). Rather than address the need for additional time, the Opposition sounds more like an unrelated, preemptive motion to compel, complaining about the content of the trailing production and privilege log still to come. *Id.* at 5. If Plaintiff ultimately takes issue with the content of the production or with privilege designations, he can raise those disputes in accordance with the Court's rules and applicable process. But on the issue actually before the Court—that the production of a remaining subset of documents requested from Dechert requires more time—there appears to be no real dispute. The Motion should be granted.

In this Reply, we provide the Court with an update on the status of the discovery, and briefly clarify the record, as Plaintiff makes a number of false statements about the parties' discussions to date. Two misstatements demand immediate correction. First, Plaintiff asserts Dechert "has doubled down by taking the position that it will not produce any more documents unless and until the Court rules on its Motion for Clarification." Opposition at 11. This is false, and Plaintiff knows it is false. While Dechert has filed a Motion for Clarification or Reconsideration with respect to two discrete areas of Plaintiff's

2

subpoena—namely, information regarding RAK's unrelated engagements with Dechert and documents from the six-week period between September 1, 2020 and October 15, 2020—Dechert is continuing rolling productions with respect to the remaining disclosable documents responsive to Plaintiff's subpoena. Indeed, during a meet-and-confer on August 8, 2023, Plaintiff asked whether Dechert was awaiting the Court's order on its Motion for Clarification before producing additional documents, and was explicitly told that Dechert was not awaiting that resolution. Nevertheless, in Plaintiff's apparent zeal to paint Dechert in a negative light, Plaintiff tells this Court the opposite—a knowing falsehood. The Court should grant the necessary (and effectively undisputed) Motion for a modest extension of time to complete the remaining production.

Second, Plaintiff asserts that Dechert "essentially admitted that the crime fraud exception applies to documents it previously considered privilege and has produced those documents in that case." Opposition at 5. That too is false. The reality is that Dechert produced certain documents to Plaintiff in the U.K. Litigation—which involve essentially the identical claims brought here—subject to a U.K. doctrine referred to as the iniquity exception. The iniquity exception has a different standard than the U.S. crime-fraud exception and was applied, in any event, to communications and documents that further two potentially iniquitous purposes through the activities of certain individuals not including Mr. Del Rosso, the Defendant here. Dechert

3

reproduced those same documents in this proceeding (because they fell within the scope of Plaintiff's subpoena) on the basis that documents already produced in the U.K. for any reason, including the iniquity exception, could not subsequently be withheld on the basis of a privilege assertion—essentially, a waiver determination predicated on their prior production. No determination or admission has been made that either the iniquity, crime-fraud, or any other exception applies or has any bearing on the productions or parties here. Again, the Court should disregard Plaintiff's tactical misrepresentations. Dechert is making all reasonable efforts to comply with the Court's Order. It should be permitted a reasonable amount of time to do so.

## ARGUMENT

### I. Additional Time is Warranted to Complete Productions

Plaintiff does not appear to dispute that additional time is necessary to complete productions here. Indeed, Plaintiff asserts that the production is of even greater complexity, and demands an even greater number of documents and custodians. It is not clear what Plaintiff expects Dechert to do beyond what it is already doing: the diligent and expeditious collection and review of documents. In the normal course, parties to a production in these circumstances agree to the type of modest extension Dechert has requested, particularly as Dechert's efforts further benefit Plaintiff. Plaintiff's tactics have led him to a different posture here.

4

As background, Plaintiff served Dechert, a non-party, with an extraordinarily broad document subpoena and notice of 30(b)(6) deposition in December 2022. *See* Decl. of David Gopstein, DE 263, ¶¶ 2-3. Soon thereafter, the parties to this case began disputing the scope of discovery, including with respect to the impact of the Court's earlier Order dismissing most of Plaintiff's claims and narrowing the scope of this case. *See, e.g.*, DE 123 (Def.'s Mot. to Quash Subpoena); DE 126 (Pltf.'s Mot. to Compel Production). In light of the overbreadth of the subpoena, Dechert filed a Motion to Quash (DE 137), and opposed Plaintiff's Motion to Compel, noting that Plaintiff "should resolve its dispute with Defendants about the appropriate scope of discovery" before undertaking the enormously burdensome task of responding to every aspect of the overly broad subpoena. DE176.

Meanwhile, despite Plaintiff's mischaracterization that Dechert "fail[ed] to take any steps to comply with the subpoena," Opp. at 3, Dechert was undergoing an enormously complex review and production process in the nearly-identical U.K. Litigation, in which Plaintiff brings very similar claims that his emails were unlawfully hacked and disclosed. *See* Mot. a 3–8. That process involved the collection of over one million documents from dozens of databases, mailboxes, devices, and sources belong to Dechert and sixteen individual custodians. *Id.* at 4. Dechert's counsel reviewed 146,000 documents, over 58,000 billing entries, and more than 200 boxes of hard copy

5

documents, resulting in the ultimate production of nearly 10,000 pages of responsive documents. *Id.* at 5–6. Given the overlap, it was reasonable for Dechert to expect, as has come to pass, that if the Court ultimately required Dechert to produce documents here, the work on the document productions in the U.K. Litigation would put Dechert in a position to largely satisfy Plaintiff's subpoena requests here. Indeed, despite his protestations to the contrary now, Plaintiff specifically demanded of Dechert, following the Court's Order, that it make the U.K. production available to Plaintiff in this proceeding. And Dechert has done just that, subject to an appropriate re-review and effort to conform the production to the date range specified by the Court in its Order here.

Despite demanding that Dechert prioritize the re-production of the materials produced in the U.K. Litigation, Plaintiff now insists that this case involves "different issues, different parties, different custodians, different search terms, and different rules of procedure and privilege." Opp. at 4. But Plaintiff fails to identify a single different issue, let alone search term. By contrast, in the Motion, Dechert specifically identified the overlapping issues (and provided a table demonstrating as much). Mot. at 3-4. Plaintiff's scattershot, largely non-responsive opposition fails to dispute any aspect of that overlap. Plaintiff's complaints are vague, premature, and miss the point.

6

All that said, Dechert agrees, as it stated in the Motion, that the document subpoena, as construed by the Court, calls for some additional documents than those produced in the U.K. litigation. It is for this precise reason that Dechert currently is undertaking an enormous effort to review and either produce or withhold those documents. As Dechert explained in its Motion, that is exactly what requires the additional time Dechert seeks. *See* Mot. at 4-9. Plaintiff's insistence that much more be done but no additional time be taken to do it is nothing more than bluster.

## II.     Status of Discovery

By way of update, and in spite of Plaintiff's mischaracterizations to the contrary, Dechert has diligently continued the collection, review, and production process since the Court's Order was issued. As noted, the Subpoena calls for certain documents not produced in the U.K. Litigation. One difference is that it requests "[a]ll Documents, Communications, Agreements, Reports, Calendar Entries, and Visitor Logs relating to Northern Technology, Inc." Mot. at 9. Consequently, Dechert has identified and segregated a universe of potentially responsive documents, totaling 35,000 documents with families, and undertaken the review process for responsiveness and privilege. A modest amount of additional time is necessary to complete that review, production, and logging for privilege.

7

An additional difference is that the subpoena calls for visitor logs to Dechert's many global offices. Mot. at 10. There are several challenges to collecting visitor logs, which exist in various formats across Dechert's offices in various countries. Dechert has initiated that process, globally, collected relevant (and voluminous) logs from several of those offices, and begun the review of the same.

Beyond those two scope differences, the privilege review in this case is extremely complex, particularly in light of the fact that Dechert is itself a law firm that formerly advised a client, overseas, whose documents are the subject of Plaintiff's subpoena. Though the document production in the U.K. included the withholding of privileged documents, U.K. procedure does not customarily require the production of a privilege log. Thus, Dechert has undertaken the intricate task of re-reviewing all previously withheld documents for the creation of a privilege log, *on top of* the new reviews for privilege necessitated by the additional categories of documents described above (namely, the NTI documents and the visitor logs).

Finally, as noted above, Dechert has moved for clarification or reconsideration on the relevant time frame at issue here. DE 262 at 2. Specifically, Plaintiff's last injury alleged in the Complaint dates August 28, 2020. Compl. ¶ 127. In the U.K. Litigation, the relevant period of discovery agreed to by the parties ended at August 31, 2020. DE 262 at 5. Here, the

8

Order set the relevant time frame as ending October 15, 2020, six weeks later. Despite the brevity of that difference, re-collecting, reviewing, and processing documents from over a dozen custodians and repositories is an enormous task, and unlikely to yield any responsive documents, given the lack of relevance of that period. However, and again despite Plaintiff's misstatements to the contrary, Dechert has already initiated steps in order to undergo that process in the event the Court ultimately denies Dechert's motion.

In short, document collection, review, and production are underway, all reasonable efforts are being made, and a modest extension of time to complete that production and privilege log is a standard, reasonable and warranted request. The Opposition provides no basis to find otherwise.

### III. Plaintiff's Misstatements with regard to Dechert's Production

Plaintiff's Opposition is riddled with false statements about the documents Dechert produced, those it continues to review and produce, and Dechert's positions with regard to various questions implicated by this production. As noted above, Plaintiff's assertions largely sound in a hypothetical motion to compel that is not before the Court, and therefore need not be addressed here; Dechert will address those (erroneous) contentions if

and when they are properly before the Court.[1] Dechert briefly responds to a few of those misstatements in an effort to correct the record, while reserving all rights with respect to the remainder.

### A. Crime Fraud Exception

Plaintiff claims that Dechert "essentially admitted that the crime fraud exception applies to documents it previously considered privilege and has produced those documents in that case." Opposition at 5. That is false. As Plaintiff is aware given his participation in the U.K. Litigation, Dechert previously produced (to him) documents, including those deemed not privileged pursuant to the iniquity exception—a U.K. doctrine that provides that "communications in furtherance of an iniquitous purpose… negate[] the necessary confidentiality and therefore the privilege," DE 250-1 ¶ 131—a wholly different standard than the crime fraud exception in the U.S. Dechert has produced those same documents in this litigation not pursuant to the crime-fraud exception, but because their prior production to Plaintiff rendered claims to privilege no longer available in this proceeding. Dechert has never "admitted" that the crime-fraud exception applies.

---

[1] This includes Plaintiff's assertions that "Dechert has failed to collect from custodians relevant to Azima's subpoena," DE at 9-10; that Dechert "has violated the Protective Order by attempting to cloak its entire production in improper confidentiality protections," DE at 8-9; and that Dechert has "failed to collect documents from third parties operating at Dechert's instructions whose documents are in its custody and control," DE at 10-11.

10

Even if the crime fraud exception did align with the application of the iniquity exception—and it does not—Plaintiff misstates the scope of the application of that exception as relates to the parties in this case. For one thing, while Dechert has produced documents relating to certain activities of another private investigator (Stuart Page and his associates) and the narrative presented to the U.K. Court about RAKIA's "discovery" of Azima's hacked data pursuant to the iniquity exception, it has not done the same for Defendants Del Rosso and Vital Management Services. Accordingly, Plaintiff's statement that Dechert has given an "essential admission that the crime fraud exception applies to conduct involving Del Rosso," Opposition at 2, is incorrect. Moreover, only communications "in furtherance of an iniquitous purpose" are subject to the iniquity exception; "it is not sufficient for the document merely to be relevant to, or to evidence the existence of, the iniquitous purpose." DE 250-1 ¶ 132. Plaintiff thus is mistaken that production of certain documents in the U.K. Litigation subject to the iniquity exception now requires production here of "any internal Dechert communications, or communications with its client and/or agents, that relate to the hacking of Azima or misleading the court or Azima about how it obtained Azima's hacked data." Opposition at 6. Specific documents relating to certain activities of specific individuals were produced under the iniquity exception in the U.K. Litigation, and all of those materials have been re-produced here. There is nothing more to the issue.

11

*B. Privilege Waiver*

Plaintiff asserts that "Dechert has no right to invoke [its former client] RAK's privilege" and so "should be ordered immediately to produce all responsive documents, including those over which RAK is the alleged privilege holder." Opposition at 8. Plaintiff is wrong.

To start, again, this issue is not before the Court; indeed, Plaintiff does not even have a privilege log. But as the Fourth Circuit has said, "[i]t is well established that if the client may invoke attorney-client privilege to protect confidential communications, then the client's attorney also may [] do so on the client's behalf." *In re Grand Jury Subpoena #£06-1*, 724 Fed. App'x 306, at *5, n.3 (4th Cir. 2008). That principle has also been expressly stated by the Supreme Court of North Carolina in the context of an attorney's representation of a former client: "an attorney may assert the privilege when necessary to protect the interests of the client." *In re Miller*, 357 N.C. 316, 338 (N.C. 2003) (holding that the attorney-client privilege survives even the death of the client); *see also Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976) ("It is universally accepted that the attorney-client privilege may be raised by the attorney") (collecting cases). Indeed, attorneys are ethically *obligated* not to disclose confidential information gleaned during representation of a former client. *See* N.C. Rule of Prof. Conduct 1.6 ("A lawyer shall not reveal information acquired during the professional relationship with a client unless

12

the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).").

Here, Dechert's client expressly directed and authorized Dechert to assert its applicable privileges and protections in this proceeding, including in respect of any documents or information in Dechert's possession. *See* Exhibit A (Allen & Overy LLP Letter to Kaplan Hecker & Fink LLP, dated Feb. 13, 2023). Dechert is thus required—not just permitted—to assert attorney-client privilege on RAK's behalf.

Moreover, despite Plaintiff's assertion that "the privilege is held by the client, RAK, not by Dechert," Opposition at 7, some documents have been withheld pursuant to Dechert's own privilege. *See* DE 250-1 ¶ 38. Those include, among others, communications and documents passing between Dechert and its lawyers, "created for the purpose of giving or receiving legal advice," and communications and documents "made for the dominant purpose of conducting litigation which is pending, reasonably in prospect or existing." *Id.* There can be no debate that Dechert has the right to assert its own privilege. In all events, again, these issues are not raised in Dechert's Motion or properly before the Court. Dechert's Motion simply seeks additional time to fully comply with the Court's Order, and Plaintiff's eager demands that more be done seem to acknowledge that such time is necessary.

13

Respectfully submitted this the 25th day of August, 2023.

> By: /s/ John C. Quinn
> John C. Quinn
> Sean Hecker
> David Gopstein
> Mark Weiner
> KAPLAN HECKER & FINK LLP
> 350 Fifth Avenue, 63rd Floor
> New York, New York 10118
> Tel: (212) 763-0833
> jquinn@kaplanhecker.com
> shecker@kaplanhecker.com
> dgopstein@kaplanhecker.com
>
> *Counsel for Non-Party Dechert LLP*
>
> /s/ Daniel Adams
> Kearns Davis
> N.C. State Bar No. 22014
> Daniel Adams
> N.C. State Bar No. 51806
> BROOKS, PIERCE, McLENDON,
>   HUMPHREY & LEONARD, LLP
> P.O. Box 26000
> Greensboro, NC 27420
> Telephone: (336) 271-3174
> Facsimile: (336) 232-9174
> Email: kdavis@brookspierce.com
> Email: dadams@brookspierce.com
>
> *Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief does not exceed the 3,125-word limitation for such briefs, according to the word count feature of the word processing system used to prepare the brief.

Respectfully submitted this the 25th day of August, 2023.

By:   /s/ John C. Quinn
John C. Quinn
Sean Hecker
David Gopstein
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0833
jquinn@kaplanhecker.com
shecker@kaplanhecker.com
dgopstein@kaplanhecker.com

*Counsel for Non-Party Dechert LLP*

/s/ Daniel Adams
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
BROOKS, PIERCE, McLENDON,
   HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3174
Facsimile: (336) 232-9174
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com

*Local Civil Rule 83.1(d) Counsel for Non-Party Dechert LLP*