## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## Case No. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>        Plaintiff,<br><br>    v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>        Defendants. | **PLAINTIFF'S RESPONSE TO MOTIONS FOR CLARIFICATION BY DEFENDANTS (ECF NO. 256) AND DECHERT (ECF NO. 261) AND MEMORANDUM IN SUPPORT OF MOTION TO SHOW CAUSE** |

Defendants Nicholas Del Rosso and Vital Management Services, Inc. ("Defendants") and non-party Dechert LLP have spent more than eight months preventing and delaying discovery, culminating in refusing to comply with this Court's July 25, 2023, Order (the "Order") requiring Defendants and Dechert (and other third parties) to produce documents by August 8, 2023, and submit to depositions by August 24, 2023. Defendants and Dechert feign befuddlement regarding the Court's Order and style their motions as seeking clarification. In fact, their motions are more properly viewed as motions to reconsider. Regardless of what title is given to these motions, they are frivolous and transparent attempts to delay and obstruct discovery, and force the Court, its staff, and Plaintiff to use time and resources wading through their verbose pleadings. These motions should be summarily denied, and sanctions should be imposed.

For approximately seven months before the Court's July 25 Order, neither Defendants nor Dechert had produced a single relevant, custodial document. Following the Court's Order, their stonewalling has continued. Defendants refuse to engage in even the most basic forms of discovery. For example, they want to avoid searching a laptop in their possession that they admit contains relevant data and exclude data related to key individuals and entities. Dechert has taken the same approach. It has only produced a subset of what was produced in a different matter, with different parties, different issues, and different discovery procedures. It refuses to search for responsive documents involving relevant custodians or to craft search terms based upon the subpoena. And it has not even produced a privilege log.

Not only have Defendants and Dechert willfully violated the Court's Order regarding document production, but that violation has resulted in their failure to meet the deadline set by the Court for depositions: August 24. As the Court recognized in its Order when it scheduled the depositions following the document production, those depositions cannot go forward without the document productions. Defendants and Dechert have once again successfully ground discovery to a halt.

The Court's Order could not have been more clear: "all outstanding discovery subject to the motions herein shall be produced" by August 8 and "depositions shall occur" by August 24. The Court said that the "parties should

2

not anticipate any further extension of the discovery deadlines" and concluded that "[f]ailure to comply with the Court's order may warrant sanctions or civil contempt under Civil Procedure Rules 37 and 45." ECF No. 248 at 26.

Despite the Court's clear statement disallowing further extensions, Defendants and Dechert have sought just that – more time to respond. Under the guise of motions for "clarification" – motions that are not authorized by the Federal Rules or Local Rules – both Defendants and Dechert sought (on the last day of document production) changes to the Order that the Court carefully considered and clearly drafted. Defendants and Dechert both used their purported motions for "clarification" as a reason not to comply with the Court's Order and a reason not to produce all responsive documents by the Court's August 8 deadline, which necessarily prevented the depositions that were scheduled for August 22-24.

The Court should reject both motions for clarification as more delay tactics and order production of all responsive documents immediately. The Court should not permit Defendants to "exclude" relevant documents from their searches and should not allow Defendants and Dechert to relitigate the same issues that have been endlessly litigated in this Court for months. The Court should impose sanctions and hold Defendants and Dechert in civil contempt under Federal Rules of Civil Procedures 37 and 45 for their disregard of the Court's Order. Because of Dechert's failure to perfect any privilege

3

assertions, including its failure to produce a privilege log at all, the Court should also order it to produce all responsive documents immediately.

## ARGUMENT

"[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (citation omitted). Indeed, an extension of Court ordered deadlines should only occur where the moving party can show "good cause," *see* Fed. R. Civ. P. 6(b), but even then, "eleventh hour extension [requests] and consistent disregard of discovery deadlines" manifest "bad faith." *Zornes v. Specialty Indus., Inc.*, No. 97-2337, 166 F.3d 1212 (table case), 1998 WL 886997, at *6 (4th Cir. Dec. 21, 1998) (unpublished). As Judge Osteen warned Defendants earlier in these proceedings: "Federal Rule of Civil Procedure 11(b)(1) requires that every court filing must not be intended to cause unnecessary delay." ECF No. 79 at 12 (quotations omitted).

Under Federal Rule 37(b), failure "to obey an order to provide or permit discovery" may result in sanctions, including designating facts as established, prohibiting the disobedient party from supporting or opposing designated claims or defenses, preventing the non-compliant party from introducing designated matters in evidence, and holding the disobedient party in contempt. Fed. R. Civ. P. 37(b)(2)(A). And under Rule 45, the Court "may hold in contempt a person who, having been served, fails without adequate excuse to

4

obey the subpoena or an order related to it." Fed R. Civ. P. 45(g). "Although, some courts require a showing of bad faith before imposing sanctions, the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of sanctions." *Liu v. Eaton Corp.*, No. 20-CV-255, 2023 WL 3441598, at *3 (E.D.N.C. Mar. 7, 2023) (citation omitted), *report and recommendation adopted*, 2023 WL 3437804 (E.D.N.C. May 12, 2023). The law in this context is clear:

> A party receiving a discovery request who asserts a privilege or work product protection but fails to disclose the nature of that claim and provide a description is at risk of waiving the privilege or protection. Courts consistently have held that such a party is required to produce a document index or privilege log, and that the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege or work product claim.

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2464 (3d ed. 2011); *see also* Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules – 1991 Amendment (a party who fails to disclose a claim of privilege "is at risk of waiving the privilege or protection").

I. **DEFENDANTS' MOTION FOR "CLARIFICATION" AND REQUEST FOR A STAY OF DISCOVERY SHOULD BE REJECTED.**

Defendants style their motion for delay as one for clarification, saying it is "unclear" whether the Court addressed the arguments Defendants made in their prior motions regarding scope and burden. Using that sleight of hand,

Defendants then proceed to reargue points directly addressed in the Order. The Court already considered all of Defendants' arguments, rejected Defendants' objections, and found that Plaintiff's discovery requests were all "relevant to the claims and defenses in this matter." ECF No. 248 at 14; *see also id.* at 11, 18, 21. The Court rejected all arguments that Plaintiffs' subpoenas were overbroad, unduly burdensome, or not proportionate to the needs of this case. *Id.* at 16. The Court found there was "no reason to believe that Plaintiff is pursuing discovery for an improper purpose." *Id.* at 14. There is nothing about the Court's Order that requires "clarification."

Defendants nevertheless argue that the Court should "clarify" its Order, arguing that Plaintiff's document requests are not "proportional to the needs of the case." ECF No. 257 at 3. This is the same argument the Defendants previously made. *See* ECF No. 157 at 22 (arguing that the requests were not "proportionate to the Republication Claims"). The Court rejected this argument when it found that the discovery requests were all "relevant to the claims and defenses in this matter." ECF No. 248 at 14. Defendants should not be able to waste the time of the Court (and the parties) by endlessly

relitigating and attempting to reframe the same arguments the Court has already rejected.[1]

### A. Defendants should be ordered to produce documents and communications related to the entities, individuals, and projects identified in the document requests.

Defendants ask the Court to "clarify" whether they have to produce documents and information related to the entities, individuals, and projects listed in Plaintiff's requests for production. The Court already considered this issue and ruled "the discovery requests are relevant to the claims and defenses in this matter." ECF No. 248 at 14. Each of the individuals and entities listed are alleged to be part of or connected to the conspiracy at the heart of this case. For example, the requests for production seek documents and communications related to CyberRoot, a company that the Complaint alleges was engaged by Defendants to hack Azima, ECF No. 1 ¶¶ 1, 6, 16-19, and publish his hacked data on WeTransfer. *Id.* ¶¶ 19-26, 49, 98, 110. Defendants admit in their Answer that they hired CyberRoot and paid them more than $1 million. ECF No. 86 ¶ 29. Yet, since the Court's Order, Defendants have produced <u>no communications</u> with CyberRoot. Plaintiff is entitled to seek discovery about

---

[1] Further demonstrating that their motion is designed for delay, Defendants attach to their motion new affidavits and raise baseless points that have nothing to do with the Court's Order. If any of the issues become relevant in the future, Plaintiff will address them, but he does not intend to waste time and judicial resources addressing matters with no relevance to the Order.

the entities, individuals, and projects related to this matter, the Court has ruled that Plaintiff may seek this discovery, and Defendants cannot avoid discovery by claiming, without evidence, that all such work was unrelated to Plaintiff.

In addition to producing essentially no documents related to CyberRoot, Defendants seek to exclude documents related to Aditya Jain, who Del Rosso admitted to hiring for cyber-related work (*see* Ex. 1, Excerpts of Nicholas Del Rosso Dep. Tr. at 84, 288 (Feb. 13-14, 2023)); or Patrick Grayson, who Del Rosso testified worked on Project Nariman, the project that included the targeting of Azima. *Id.* at 136. And Defendants have also unilaterally excluded from their searches documents related to Khater Massaad, even though Del Rosso testified that Massaad was one of the key targets of the Dechert investigation that is the subject of this litigation. *Id.* at 144.[2]

---

2 Individuals associated with the hacking of Azima have similarly attempted to avoid providing information on the basis that their work related to Khater Massaad, not Azima. *See, e.g.*, Amit Forlit Dep. Tr., *Azima v. Insight Analysis and Research, et al.*, No. 22-20707, at 15:14-16:7 (S.D. Fla. Aug. 9, 2022), ECF No. 47-1 (distinguishing between an investigation of Massaad and an investigation of Azima). These assertions are despite the fact that reports containing hacked data include hacked data from both Massaad and Azima. *Id.* at 56:12-24 (claiming that Azima was mentioned in his reports "not as the subject of an investigation, but as someone whose name came up in the investigation").

8

Defendants' arguments that these documents are all unrelated to this litigation rings hollow because Defendants produced essentially no documents for eight months based upon an exceedingly narrow view of Plaintiff's claims. At a hearing in March, Defendants' counsel represented that they had "searched our client's record for responsive information consistent with our understanding of the scope of the case," Mot. Hr'g Tr. at 122:6-12 (Mar. 7, 2023); *see also id.* at 59:6-17 (claiming "the notion that we haven't produced anything or we haven't searched, that's just not true") – yet they produced nothing at that time except Plaintiff's own stolen data. Now that Defendants have begun to produce documents, it is clear that they withheld documents that are clearly relevant. For example, they have now produced more than 850 documents from 2018 and 2019 (the time period that they always claimed was relevant), including more than 30 that specifically mention Azima, (*e.g.*, Ex. 2, examples of correspondence from 2018 and 2019 about Plaintiff, including for example emails from Gerrard to Del Rosso sharing drafts of witness statements from Stuart Page and Majdi Halabi regarding Plaintiff's hacked data), as well as a dozen invoices for Project Nariman during that timeframe (*e.g.,* Ex. 3).

As the Court has already ruled, Plaintiff's requests seek relevant documents and Defendants should be ordered to produce all responsive

documents immediately. The Court should impose appropriate sanctions for Defendants' failure to comply, including holding Defendants in civil contempt.

**B.  Defendants should not be permitted to "exclude" a laptop in their custody and control that they admit holds relevant documents.**

Defendants raise a new issue relating to discovery and seek to "[e]xclude" a laptop belonging to Del Rosso from their search and production obligations. Again, this is not a point of "clarification" – it is an attempt to shoehorn into this motion a request for a protective order under Rule 26, which this Court already said "should be sparingly used and cautiously granted." ECF No. 248 at 4 (citing *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987)). Regardless, the laptop at issue was the computer Del Rosso "used for work," Ex. 1 at 358, and should clearly be searched for relevant data. There is no basis to "exclude" it from discovery, and the fact that Defendants would even attempt to exclude a device with relevant information is indicative of their approach to discovery in this matter.

**C.  The Court should reject Defendants' attempt to disregard the Court's Order to avoid Del Rosso's deposition.**

Defendants have chosen to ignore the Court's Order requiring Del Rosso to complete his deposition, instead asking the Court to reconsider that ruling. Defendants admit that the Court's Order "may be read as granting the motion

10

to depose Mr. del Rosso for an additional three hours,"[3] but they "request that no further deposition be conducted of Mr. del Rosso in his individual capacity." ECF No. 257 at 26-27. Again, this is not a request for clarification; it is an improper motion for protective order to get around what the Court already ruled. Indeed, Defendants' request admits that the Court already ruled that "Defendant Del Rosso shall continue his deposition and answer questions presented." ECF No. 248 at 22 (granting in relevant part Plaintiff's motion for further deposition examination of Del Rosso).

Defendants express concern that Plaintiff may seek to depose Del Rosso on topics prior to March 2015 for more than three hours. Plaintiff will comply with the Court's Order as to the deposition issues, and Defendants are free to address anything at the deposition that they reasonably believe falls outside compliance with the Court's Order. Asking the Court to give an advisory opinion on issues that may not even come up is not contemplated by the Rules or an effective use of the Court's or the parties' time.

---

[3] Prior to filing their motion for "clarification," Defendants agreed that Del Rosso could testify for three hours, before later reversing course. Ex. 4, Email from Brandon Neuman to Plaintiff's Counsel (Aug. 1, 2023, 8:21 AM).

## II.    DECHERT'S STATUS REPORT AND MOTION TO CLARIFY DO NOT JUSTIFY ITS FAILURE TO FOLLOW THE COURT'S ORDER.

Like Defendants, Dechert has not complied with the Court's Order and seeks to disguise its non-compliance with a long-winded "status report" and a motion to "clarify." ECF Nos. 249, 261. Of course, like Defendants, Dechert is not actually seeking to clarify any aspect of the Court's Order, which was clear on its face; rather, Dechert is simply asking the Court to reconsider the rulings the Court has already made so that Dechert can feign compliance by producing documents that were already produced to Azima in a different proceeding in the U.K. and continue to delay this case. The Court should once again deny this argument.

Dechert received Plaintiff's subpoenas eight months ago. It is now clear that Dechert took no action during the last eight months to specifically collect documents relevant *to these subpoenas*, to prepare documents for production, to identify and prepare a witness for the required Rule 30(b)(6) deposition, or to do anything to address Plaintiff's discovery requests. After the Court's Order, Dechert simply produced some of the documents it had already produced in another matter. ECF No. 262 at 1. Dechert has not undertaken an independent document collection, review, or production for the subpoenas at issue in this proceeding, nor has it produced a privilege log even though it claims it is withholding a significant number of privileged documents. As with

12

Defendants, the Court should not allow Dechert to benefit from its belated attempts to avoid compliance.

**A. Dechert Cannot Merely Rely Upon Its Production in a Different Proceeding in the U.K. to Satisfy the Court's Order.**

Dechert spends half of its "Status Report" describing its extensive efforts to produce documents in the U.K. Proceeding, which is an entirely different case with different parties, issues, and governing law. *See* ECF No. 249 ¶¶ 1-23. Indeed, Dechert does not even begin talking about its efforts to comply with the subpoenas in this case until the seventh page of its filing. *Id.* at 7. Whatever efforts Dechert has undertaken to produce documents in the U.K. are irrelevant to what it has done to meet its obligations in <u>*this case*</u>. Any subpoena recipient must conduct a search, review, and production in response to a federal subpoena rather than simply dump on Plaintiff whatever it happened to produce in a different lawsuit. This dismissive and arrogant response is unacceptable from any subpoena recipient, let alone a large, global law firm that advertises its litigation expertise, like Dechert. Dechert's prior collections and searches were specific to that case and allowing it to simply reproduce its U.K. documents without further consideration as to the particular issues here does not represent compliance with the Court's Order.

Dechert has limited its search to the 16 custodians that it identified for the U.K. litigation, and it has refused to collect data from other witnesses

13

within its custody and control who likely have data relevant to Plaintiff's misappropriation and conspiracy claims. Among others, Dechert did not collect from:

- Caroline Black: A former Dechert partner who Mr. Del Rosso admitted interviewed him before he was retained by Dechert and was the only Dechert partner Del Rosso could recall attending key meetings. *See* Ex. 1 (Del Rosso Dep. at 22:9-24; 150:4-22). Ms. Black was also a known associate of Mr. Gerrard. *See Dechert Partner Named in Neil Gerrard Case Leaves Firm,* Law.com (Feb. 20, 2023) https://www.law.com/international-edition/2023/02/20/dechert-partner-named-in-neil-gerrard-cases-leaves-firm/. Dechert only produced four emails that were sent to Caroline Black, but they demonstrate that she was involved from the beginning in the targeting of Plaintiff. *See* Ex. 5 (correspondence from 2015 to disgraced PR firm Bell Pottinger providing links to websites regarding Azima and correspondence from Gerrard in 2015 to admitted hacker Stuart Page and other Dechert partners regarding a report prepared by Page and Dechert's relationship with Page and Del Rosso).

- James Croock: Dechert's former general counsel worked with Stuart Page, one of the hackers who misappropriated Plaintiff's data. Compl. ¶¶ 2, 7-8, 14-15, 18, 22, 34-35. A U.K. court already found that Mr. Page lied about how he obtained Azima's stolen data. *Id.* ¶ 34. Mr. Croock established a "party line" that Dechert and Gerrard had done nothing wrong in connection with their representation of a former client; a U.K. court later firmly rejected this notion. Dechert only produced one email sent to Croock, but it showed him meeting with admitted hacker Stuart Page. *See* Ex. 6 (correspondence from Gerrard to Croock and others regarding logistics of meeting with Stuart Page in November 2016).

- Andrew Levander: A current Dechert partner who took over Dechert's representation of Ras Al Khaimah ("RAK") after RAK apparently fired Neil Gerrard in 2019. In that role, Levander sustained many of the same falsehoods that characterized Gerrard's representation of RAK, including writing a threatening letter to a newspaper regarding the allegations that Gerrard and his team had illegally hacked Azima

14

and others. Dechert did not produce any documents to or from Levander.

Compounding Dechert's failure to search documents belonging to the relevant custodians is the fact that Dechert did not craft search terms relevant to the claims and defenses in this litigation. Applying Dechert's U.K.-specific search terms for a different case with different issues will inappropriately exclude documents relevant to this litigation's conspiracy and misappropriation claims. "Search terms, while helpful, must be carefully crafted." *Raine Grp. LLC v. Reign Cap., LLC*, No. 21-CV-1898, 2022 WL 538336, at *3 (S.D.N.Y. Feb. 22, 2022).

The search terms Dechert used were agreed upon in April 2022, before discovery even started in this proceeding, and before key information was identified. For example, the search terms were identified before it was revealed that Del Rosso referred to his work for Dechert as Project Nariman, so "Nariman" and "Nari" are not search terms. Other projects for related work, including Project ORM, Project Oak, Project San Remo, Project BBQ, Project Sphinx, Project Warrior, and Project Wigwam, are not included as search terms. Neither are basic terms related to this case such as "Vital Management," "Shanahan," and "Neuman." This is not an exhaustive set of search terms that should have been run by Dechert, but it is indicative of the

15

fact that Dechert cannot merely rely upon its production in another case to satisfy its discovery obligations here.

The Court should order Dechert to collect from all relevant custodians and either order Dechert to revise its search terms to suit the subpoenas, or otherwise use its discretionary authority to institute appropriate terms. *Accord Hernandez v. NHR Human Res., LLC*, No. 20-CV-3109, 2021 WL 2535534, at *20 (S.D.N.Y. Jun. 18, 2021) (highlighting that judges "overseeing discovery [are] granted broad discretion to manage the discovery process, including determinations regarding which search terms a party should apply."). The Court should also hold Dechert in contempt for its failure to comply with the Court's Order. Its conduct is, at this point, egregious.

**B.    The Court should not reconsider its Order to align it with the work Dechert has already done in a different matter.**

In Dechert's motion to "clarify" the Court's Order, the firm seeks to relitigate two other issues that the Court already resolved.

*First*, Dechert asks the Court to reconsider the temporal scope of discovery. This is not a request for clarification. The temporal scope of discovery was the subject of extensive briefing and argument, and the Court's Order says *eight times* that the scope of discovery is "March 2015 through October 15, 2020." ECF No. 248 at 12, 14-15, 18-21, 23.

16

Even though Dechert already presented arguments about the scope of discovery in prior briefing, *see* ECF Nos. 136, 176, it now argues for the first time that the scope of discovery that the Court has ordered would cause Dechert substantial burden because Dechert never collected data from September 1, 2020, to October 15, 2020. Dechert gives no adequate explanation why it failed to collect documents after it received Plaintiff's subpoena in December 2022. Dechert complains that, in order to review and produce relevant documents from this six-week period, it would have to collect data from its custodians, run search terms to identify responsive records, review the results, consider privilege, and produce any responsive documents. *See* ECF No. 249 at 11-12. Of course, this is true as it is for every subpoena recipient. Dechert has not identified any "burden" beyond the necessary activities connected with responding to a subpoena – activities that they could and should have undertaken months ago. Dechert's failure to collect documents at the time the subpoena was issued is not a sufficient reason to relitigate the temporal scope that the Court has already carefully considered.

<u>Second</u>, Dechert argues that one of Plaintiff's requests would cause it to produce what it now argues are documents unrelated to Azima. This is of course an argument it could have raised in the extensive briefing previously, but it failed to do so with any particularity. Plaintiff seeks documents related to "Ras Al Khaimah Entities . . . including, but not limited to: . . . [a]ll

17

engagements of Dechert by RAKIA and other RAK entities from 2013 to present . . . ." ECF No. 140-2, Req. 6. The Court already ruled that this request (along with Plaintiff's other requests) "is relevant to the claims and defenses in this action." ECF No. 248 at 10-11. The Order was clear.

Though the Court has rejected Dechert's objections in this regard as well, Plaintiff (in the interest of judicial efficiency) offered Dechert a compromise: If Dechert could show that the engagements were not related to Plaintiff, Defendants, or the issues in this litigation, Plaintiff would agree to limit the subpoena. Plaintiff asked Dechert to provide a list of the allegedly unrelated engagements. When Dechert refused, Plaintiff asked Dechert to confirm that the key Dechert lawyers involved in this conspiracy were not also involved in the other engagements, and asked Dechert to confirm that none of the relevant project names were used for the engagements that Dechert claims are unrelated to this litigation. Dechert again refused. *See* ECF No. 261.

The Court should reject Dechert's request that the Court "clarify" its Order. Dechert should be ordered – again – to produce all documents sought by the subpoenas. The Court should also impose appropriate sanctions, including holding Dechert in civil contempt for its failure to comply.

## C. Dechert cannot withhold documents based on U.K. privilege and U.K. procedural rules.

Dechert next attempts to delay its duties under the subpoena by arguing that U.K. privilege law should apply to its productions. As noted above, Dechert has only reproduced documents that were previously produced in the U.K. Proceeding, where (of course) the documents were governed by English privilege standards.[4] Dechert argues that English privilege law must apply here as well. This position, however, ignores North Carolina law, which governs both Dechert's productions as well as this Court's analysis.

"[I]n a diversity action the availability of an evidentiary privilege is governed by the law of the forum state." *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 285 n.5 (4th Cir. 2000); Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). This is because, "[u]nder North Carolina's traditional approach to conflict of law rules, 'remedial or procedural rights are determined by *lex fori*, the law of the forum.'" *Stack v. Abbott Lab'ys, Inc.*, No. 12-CV-148, 2016 WL 6884936, at *4 (M.D.N.C. Jun. 8, 2016) (quoting *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988)) (finding question of privilege was "procedural"); *see also Tenn. Carolina Transp., Inc. v. Strick Corp.*, 196 S.E.2d 711, 720 (N.C.

---

[4] Dechert also appears to have used U.K. court procedures for redactions, redacting individual words of emails and invoices that would not normally be redacted under U.S. law.

Case 1:20-cv-00954-WO-JLW   Document 277   Filed 08/29/23   Page 19 of 30

1973) ("[Q]uestions of the admission and exclusion of evidence are generally considered procedural and governed by the *lex fori*"). Thus, it should be clear that North Carolina's privilege law applies to Dechert's production. Indeed, the Court said in its Order: "the Court finds unpersuasive the relevance of any application of the attorney-client privilege applying foreign law to the issue of whether communications and documents involving Defendants may be privileged." ECF No. 248 at 23-24.

The Supreme Court of North Carolina recently rejected an attempt to categorically shield communications related to an internal investigation between a client and their outside law firm in favor of a more nuanced, document-by-document inspection to determine whether privilege applies. *See generally Buckley, LLP v. Series 1 of Oxford Ins. Co.*, 382 N.C. 55 (2022). But as the Supreme Court admonished, "communications made in [] investigations are not necessarily 'made in the course of giving or seeking legal advice for a proper purpose.'" *Id.* at 56 (quoting *In re Miller*, 357 N.C. 316, 335 (2003)); *see also In re Allen*, 106 F.3d 582, 602 (4th Cir. 1997) (same). Often such communications "contain intertwined business and legal advice," which require "courts [to] consider whether the 'primary purpose' of the communication was to seek or provide legal advice." *Buckley, LLP*, 382 N.C. at 56. (citation omitted). Where "the investigation was initiated and pursued in the ordinary course of [the client's] business," "the fact that [the client] hired

20

a prominent outside law firm to conduct the investigation does not change [the] fact" that a law firm's communications are not necessarily privileged. *Buckley LLP v. Series 1 of Oxford Ins. Co. NC LLC*, No. 19-CV-21128, 2020 WL 6696138, at *8 (N.C. Super. Nov. 9, 2020), *aff'd*, 382 N.C. 55 (2022).

In addition, there are significant differences between North Carolina privilege law and English privilege law and procedure. For example, Dechert has not provided a privilege log in the U.K. Proceeding. As a result, the parties to the U.K. Proceeding have not undertaken the document-by-document privilege explanation mandated by North Carolina law. The Court should not let Dechert ignore the law in this jurisdiction just because it is convenient to Dechert.

### D. The Court should order Dechert to produce any responsive documents not logged by the Court-imposed discovery deadline.

Dechert claims that its document review implicates "potential privilege," and it has redacted portions of the documents that it has produced – but Dechert did not produce a privilege log by the date ordered by the Court and still has not logged a single document it claims is privileged. Tellingly, Dechert has at the same time produced 73 documents bearing a privileged legend (and

21

Defendants have produced another 70 documents bearing a privileged legend), which raises questions regarding the crime fraud exception.[5]

"'A party simply cannot claim privilege and refuse to provide a privilege log; indeed, some courts have found that doing so results in waiver of the privilege.'" *Oppenheimer v. Episcopal Communicators, Inc.*, No. 19-CV-00282, 2020 WL 4732238, at \*5 (W.D.N.C. Aug. 14, 2020) (citation omitted); *Clean & Sober Media, LLC v. Renew Counseling Ctr. of NC, LLC*, No. 20-CV-00252, 2021 WL 5114654, at \*4 (E.D.N.C. Sept. 1, 2021) (requiring a party to provide a privilege log and emphasizing that "[f]ailure to provide an adequate privilege log will lead to a waiver of the claimed privilege or the work-product doctrine"); *Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (affirming the Second Circuit's holding that a third party "waived its claim to privilege" when it "'fail[ed] to provide a complete privilege log demonstrating sufficient grounds for taking the privilege'") (citation omitted).

A privilege log is particularly important in this case because Dechert has admitted in the U.K. case that the analogue to the crime fraud exception applies to at least some of the documents that are purportedly privileged.  ECF

---

[5] Many of these documents are likely only available from Dechert.  In course of serving third-party subpoenas, Plaintiff has learned that outside counsel for RAK has been telling third parties with potentially relevant information to delete all data belonging to RAK.  *See* Ex. 7 (emails and proposal regarding deletion of 27 TB of data while litigation was pending).

No. 250-1 ¶¶ 122-136. Dechert has produced 73 documents that were previously labeled privileged. In a recent filing, Dechert argues that its production was not a complete waiver of privilege, but it has not explained during the past eight months what engagements are relevant to its privilege claims here or what if any privilege Dechert alleges remains following their determination that privilege did not apply to a significant number of documents labeled privileged. Dechert's refusal to produce even the most basic information about the engagements and privileges at issue prevent the Court and the parties from addressing these issues in any kind of informed way. It is critical to obtain this information immediately so the Court has the opportunity to determine the scope of Dechert's privilege waiver and make any necessary subsequent orders to Defendants and other third parties to produce documents over which privilege is improperly asserted.

The Court ordered document production by August 8, 2023. Dechert did not even attempt to comply with the Court's Order. The Court should sanction Dechert for their discovery misconduct. And, because Dechert has not logged any purportedly privileged documents, the Court should find that any purported privilege is waived and order that all responsive documents not logged should be produced.

### E. Dechert cannot delay its Rule 30(b)(6) deposition until immediately before the close of discovery.

The Court unambiguously "decline[d] to quash" the subpoena seeking 30(b)(6) testimony from Dechert. ECF No. 248 at 16. Dechert has relevant testimony that it can provide "through its corporate representative that cannot otherwise be discovered [from Defendants']." *Id.* at 17. Nevertheless, Dechert argues that, because <u>one</u> of Plaintiff's topics for examination seeks testimony on "[a]ll categories of documents requested in Plaintiff's [document subpoena] . . . as well as documents produced by Dechert LLP in response," it cannot produce a witness to provide testimony on any of Plaintiff's topics for examination until October 23, 2023, just prior to the Court-ordered end of fact discovery. ECF No. 249 at 14 (quoting ECF No. 140-1, Topic 1).[6] This is simply another delay tactic.

As before, "Dechert has made nothing more than conclusory arguments of not just privilege, but burden, which will not suffice here." Order at 17. Dechert cannot refuse to make adequate productions on the timeline identified by the Court and then use that same delay as an excuse to forestall its deposition. That would give Dechert the benefit of its obstruction. Here, the Court granted an extension of discovery from July 25 to October 31 and warned

---

[6] In addition, Dechert effectively delayed its deposition by failing to produce all responsive documents and a privilege log by the Court's ordered deadline.

24

that "the parties should not anticipate any further extension of the discovery deadlines." *Id.* at 25. Dechert seeks to use almost all of that additional time to stave off its deposition, leaving Plaintiff no ability to follow up on any information Dechert's corporate representative provides.

## CONCLUSION

Defendants' and Dechert's Motions for Clarification should be denied. The Court should order production immediately of all documents responsive to Plaintiff's subpoenas and document requests. Plaintiff also respectfully requests that the Court enter an Order compelling Defendants and Dechert to show cause why the Court should not impose sanctions and hold Defendants and Dechert in contempt for their failure to abide by the Court's July 25 Order.

This, the 29th day of August, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
Christopher W. Jones
North Carolina State Bar No. 27265
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email:    ripley.rand@wbd-us.com
             chris.jones@wbd-us.com

-and-

25

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren Briggerman (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
900 16th Street, NW
Washington, D.C.  20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com

*Counsel for Plaintiff*

26

## CERTIFICATE OF WORD COUNT

The undersigned certifies compliance with Local Rule 7.3(d) regarding length limitations. This memorandum contains fewer than 6,250 words. The undersigned has relied on the word count feature of Microsoft Word 365 in making this certification.

/s/   *Ripley Rand*
Ripley Rand
Counsel for Plaintiff

Case 1:20-cv-00954-WO-JLW   Document 277   Filed 08/29/23   Page 27 of 30

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CASE NO. 20-CV-954-WO-JLW

|  |  |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT<br>SERVICES, INC.,<br><br>    Defendants. | **CERTIFICATE OF SERVICE** |

    I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

    Brandon S. Neuman, Esq.
    John Branch, III, Esq.
    Jeffrey M. Kelly, Esq.
    Nathaniel J. Pencook, Esq.
    NELSON MULLINS RILEY & SCARBOROUGH, LLP
    301 Hillsborough Street, Suite 1400
    Raleigh, NC 27603
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    nate.pencook@nelsonmullins.com
    john.branch@nelsonmullins.com
    Tel.: 919.329.3800
    Fax.: 919.329.3799

Samuel Rosenthal
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Tel.: 202-689-2951
Fax: 202-689-2860
sam.rosenthal@nelsonmullins.com

*Counsel for Defendants*

John C. Quinn
Sean Hecker
David Gopstein
Mark Weiner
Kaplan Hecker & Fink LLP
350 Fifth Avenue, Suite 63rd Floor
New York, NY 10118
212-763-0883
Fax: 212-564-0883
Email: jquinn@kaplanhecker.com
Email: shecker@kaplanhecker.com
Email: dgopstein@kaplanhecker.com
Email: mweiner@kaplanhecker.com

Kearns Davis
Daniel D. Adams
Brooks Pierce McLendon Humphrey & Leonard LLP
P.O. Box 26000
Greensboro, NC 27420-6000
Email: kdavis@brookspierce.com
Email: dadams@brookspierce.com
Tel.:336-373-8850
Fax.: 336-378-1001

*Counsel for Dechert LLP*

This, the 29th day of August, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8125
Facsimile: (919) 755-6752
Email:     ripley.rand@wbd-us.com

*Counsel for Plaintiff*
