**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Case No. 20-CV-954-WO-JLW**

FARHAD AZIMA,

     Plaintiff,

     v.

NICHOLAS DEL ROSSO and VITAL
MANAGEMENT SERVICES, INC.,

     Defendants.

**SPECIAL DISCOVERY MASTER'S**
**REPORT AND DECISION #1**

       Pursuant to the Court's Order of December 29, 2023 [Doc. 313] and the provisions of Rule 53 of the Federal Rules of Civil Procedure, Alice C. Richey, as the appointed Special Master, submits this Special Discovery Master's Report and Decision #1.

       This report addresses six motions submitted to the Special Master as follows:

       1.     Plaintiff's Motion to Compel Defendants to Search Their Laptop and Other Sources for Responsive Information (the "Laptop Motion").

       2.     Plaintiff's Motion to Compel Defendants to Produce Documents Relating to CyberRoot (the "CyberRoot Motion").

       3.     Plaintiff's Motion to Compel Defendants to Produce Information Improperly Withheld for Privilege (the "Privilege Motion").

       4.     Plaintiff's Emergency Motion to Preserve Defendant Del Rosso's Testimony for Trial (the "Deposition Motion").

       5.     Defendant's Motion to Compel Plaintiff to Identify His Trade Secrets (the "Trade Secret Motion").

       6.     Plaintiff's Motion to Compel Defendants to Fully Respond to Plaintiff's Third Set of Interrogatories (the "Third Interrogatories Motion").

The Motions have been briefed by all Parties, and on January 16, 2024, the Special Master held a hearing via Zoom regarding Motions 1 – 5 (the "Hearing"). The Parties engaged a court reporter to transcribe the Hearing. At the Hearing, the Special Master requested additional briefing by the Parties on several issues and that briefing has been submitted and considered, along with supplemental briefing by the Parties. Following the Hearing, Plaintiff submitted the Third Interrogatories Motion, and it also has been fully briefed and considered.

With respect to each Motion, the Special Master makes the following report and determination:

1. **The Laptop Motion**

1.1.  <u>The Laptop</u>: Plaintiff asserts that a personal laptop belonging to Defendant Del Rosso (the "Laptop") is in the possession of Mr. Del Rosso or his attorneys, contains relevant information, and should be searched. Defendants agree that the information on the Laptop could be relevant and agree that the Laptop will be searched for this matter once it is available. Defendants disagree that the Laptop is in the possession of Mr. Del Rosso or his attorneys. Defendants state that the Laptop is subject to a process set forth in an order submitted in proceedings in the United Kingdom, specifically, the "Del Rosso Proceedings (Claim No. KB-2023-0028)" (the "UK Proceedings"), and is currently not in the possession of Mr. Del Rosso or his attorneys in this matter.

The Defendants provided a written Order (the "UK Order") from the UK Proceedings, which is dated October 9, 2023. That UK Order refers to a *ex tempore* judgment handed down at a July 31, 2023 hearing, a copy of which has also been provided to the Special Master. Those documents set forth a process for searching the Laptop in connection with the retrieval and handling of certain information on the Laptop. It is not clear whether the process set

2

forth in the UK Order has been completed, such that the Laptop (or a forensic image as outlined in Section 1.1.F. below) can be provided to Mr. Del Rosso's North Carolina counsel.

The Special Master agrees with the Parties that the Laptop could have relevant information on it and should be searched by Mr. Del Rosso's North Carolina counsel in this matter. Therefore, the Special Master directs the following:

A. On or before February 12, 2024, Mr. Del Rosso or his North Carolina counsel shall communicate in writing to Mr. Del Rosso's counsel in the UK Proceedings and inquire as to the status of compliance with the UK Order. This communication should advise the UK counsel that the Laptop is the subject of discovery proceedings in a federal court action pending in North Carolina and that Mr. Del Rosso has been directed in that action to inquire about the status of compliance with the UK Order.

B. The communication shall direct Mr. Del Rosso's UK counsel that if the UK Order has not been complied with, UK Counsel should secure compliance with the Order.

C. The communication shall also instruct the UK counsel to take all necessary steps, in addition to compliance with the UK Order as necessary, to have the Laptop (or a forensic image, as appropriate) returned to Mr. Del Rosso.

D. For all of these requests, Mr. Del Rosso shall advise his UK counsel that time is of the essence.

E. On or before February 16, 2024, counsel for Defendants shall advise the Special Master and Plaintiff of the status of compliance with the UK Order and the expected timing of the return of the Laptop (or a forensic image, as appropriate).

F. If it is determined that the Laptop itself cannot be returned to Mr. Del Rosso's North Carolina counsel within a reasonable time (to be discussed with the Special

3

Master), then, subject to any contrary order in the UK Proceedings, a forensic image shall be made of the Laptop and sent to Mr. Del Rosso's North Carolina counsel. Prior to a forensic image being taken, the Parties shall agree to the imaging and custody process to be used.

1.2. <u>Other Sources of Information</u>. Plaintiff asserts that Defendants have failed to search other sources of information for documents responsive to Plaintiff's discovery requests. Plaintiffs cite seven potential sources of responsive information: A) an iPhone used by Mr. Del Rosso; B) at least six email accounts; C) banker's boxes; D) other Vital Management Services, Inc. ("VMS") employees' emails, text messages, and other documents; E) Dropbox or other document sharing sites used by Mr. Del Rosso to upload or download work documents; F) external hard drives and thumb drives; and G) other computer files for responsive documents. Defendants respond that either the potential sources have been searched and yielded no responsive documents or that the sources do not contain responsive documents. With respect to these potential sources of information, the Special Master directs the following:

A. <u>iPhone</u>: Defendants shall supplement their written responses to Plaintiff's discovery requests and state affirmatively that i.) they have searched Mr. Del Rosso's electronic devices, VMS's electronic devices and both Defendants' iCloud accounts for responsive documents; and ii.) either additional responsive documents will be produced, all responsive documents contained therein have been produced, or there are no responsive documents to produce.

B. <u>Email accounts</u>: Defendants shall supplement their written responses to Plaintiff's documents requests and state affirmatively that i.) they have searched all email accounts used by Mr. Del Rosso or VMS (including any employee or member of VMS) for responsive documents; and ii.) either additional responsive documents

4

will be produced, all responsive documents contained therein have been produced, or there are no responsive documents to produce.

C. <u>Banker's boxes</u>: Defendants shall supplement their written responses to Plaintiff's document requests and state affirmatively that i.) they have searched for all hard copies of responsive documents (including specifically the banker's boxes referred to in the Deposition of Nicholas Del Rosso taken on February 13 and 14, 2023 (the "February 2023 Deposition") at pp. 244:5-25; 245:1-8); and ii.) either additional responsive documents will be produced, all responsive documents contained therein have been produced, or there are no responsive documents to produce.

D. <u>Other VMS employees' emails, text messages, and other documents</u>: Defendants shall produce the emails referred to in the February 2023 Deposition at pp. 114:24-25 and 115:1-4, to the extent not already produced. Defendants state in their response that there are only two employees of VMS — Mr. Del Rosso and his wife — and that Mr. Del Rosso was the only employee who "*performed work related to Plaintiff.*" Defendants shall supplement their written responses to Plaintiff's document requests and state affirmatively that: i.) they have searched all email accounts, documents, and text messages of any VMS employee who *performed work on behalf of Mr. Del Rosso or VMS* for responsive documents; and ii.) either additional responsive documents will be produced, all responsive documents contained therein have been produced, or there are no responsive documents to produce.

E. <u>Dropbox or other document sharing sites used by Mr. Del Rosso to upload or download work documents</u>: Defendants shall supplement their written responses to Plaintiff's document requests and state affirmatively that i.) they have searched

5

all Dropbox or other document sharing sites used by Mr. Del Rosso to upload or download work documents; and ii.) either additional responsive documents will be produced, all responsive documents contained therein have been produced, or there are no responsive documents to produce.

F. <u>External hard drives and thumb drives</u>: Defendants shall supplement their written responses to Plaintiff's document requests and state affirmatively that i.) they have searched all external hard drives and thumb drives; and ii.) either additional responsive documents will be produced, all responsive documents contained therein have been produced, or there are no responsive documents to produce.

G. <u>Other computer files for responsive documents</u>: Defendants shall supplement their written responses to Plaintiff's document requests and state affirmatively that i.) they have searched all computer files belonging to Mr. Del Rosso and VMS (other than those contained on the Laptop); and ii.) either additional responsive documents will be produced, all responsive documents contained therein have been produced, or there are no responsive documents to produce.

1.3. <u>Specific documents and data</u>: Plaintiff asserts that Mr. Del Rosso referred to various documents in the February 2023 Deposition that were requested in Plaintiff's First Set of Requests for Production of Documents (the "Plaintiff's First RFP") (as limited by the Court's July 25, 2023 Order [Doc. 248] (the "July 2023 Order")) and which Plaintiff says have not been produced, specifically: A) responsive bank records; B) agreements related to work Mr. Del Rosso performed for Dechert and Ras al Khaimah ("RAK"); C) travel records and notes related to meetings with Dechert; D) copies of reports prepared for Dechert; E) receipts for invoices expensed to Dechert; F) appointments and calendar entries for the relevant time

6

period; G) files for "Project Nariman"; H) emails related to the retention of Northern Technologies, Inc. ("Nti"); and I) data related to Jamie Buchanan. Defendants respond that either Plaintiff already has the information in his possession, that the temporal scope sought by Plaintiff is too broad, or that the information is not relevant. In the July 2023 Order, the Court found that "the [Plaintiff's First RFP] requests are relevant to the claims and defenses in this matter."[1] The temporal scope of the requests was limited to March 2015 through October 15, 2020. *Therefore, no documents requested in the Plaintiff's First RFP should be withheld by Defendants on the basis of relevancy, broadness, or temporal scope (the temporal scope already having been limited by the Court).*

   A. <u>Responsive bank records</u>. Plaintiff cites two exchanges in the February 2023 Deposition. The first is at p.104:8-10, where Mr. Del Rosso is asked whether he has his "own copies of bank records regarding the operation of Vital?" The second is at p. 235:20-24 when he is asked whether he has "banking and accounting records regarding receipt of the [payments from Dechert]." These documents were requested in the Plaintiff's First RFP and should be produced.[2]

---

[1] In determining relevancy for all discovery requests, the Special Master has considered the claims and defenses, the prior rulings from the Court as to the relevancy of the Plaintiff's First RFP and the 30(b)(6) topics originally submitted to VMS [Doc. 248], and the Court's statements at the September 29, 2023 hearing regarding the breadth of discovery ("I'm going to give the Plaintiff some latitude because you're working backwards to establish as an evidentiary matter the hacking…So it's a much more complicated case than simply saying over and over again, well, it's one claim, and the hacking stuff has been, you know, dismissed. There's overlap in my mind, without a doubt, regardless of whether the hacking claim is in the case or not as opposed to just a one-count trade secret or two-count trade secrets case…[The Plaintiff] should ask questions that are clear and clearly relevant to the case.")[Transcript of Status Conference, September 29, 2023].

[2] These records are also sought in Plaintiff's Fourth RFP, No. 40, which is discussed at page 12 below.

B. <u>Agreements related to work Mr. Del Rosso performed for Dechert and RAK</u>:
Plaintiff cites to testimony in the February 2023 Deposition at pp. 71:23-72:3 to
suggest that Mr. Del Rosso had agreements related to work he performed for
Dechert and RAK, some of which was related to Plaintiff. That testimony refers
to Project Nariman and Mr. Del Rosso seems to be testifying that his involvement
in the discovery of Plaintiff's data on the internet was part of Project Nariman.
This exchange does not indicate that he had an agreement related to the Project
Nariman work. Nevertheless, if Defendants have such agreements they should
produce them in response to the Plaintiff's First RFP.

C. <u>Travel records and notes related to meetings with Dechert</u>: Plaintiff cites to
testimony in the February 2023 Deposition at pp. 151:6-9 and 241:19-242:13. In
the first cited testimony, Mr. Del Rosso states that he would have travel records
that would show his travel to New York for "those meetings." The Special Master
was not provided with the preceding testimony, so cannot determine whether the
records refer to meetings with Dechert. If they do, such documents were sought in
the Plaintiff's First RFP and should be produced. The second cited testimony refers
to contemporaneous notes that Mr. Del Rosso "probably" took during the course of
meetings regarding his work for Dechert. It is of concern to the Special Master
that Mr. Del Rosso testified he had not looked for those records (February 2023
Deposition, p. 242:7-10). Mr. Del Rosso also stated that he "turned over what I
have to my lawyers, yes." These documents were requested in the Plaintiff's First
RFP and should be produced.

D. <u>Copies of reports prepared for Dechert</u>: Plaintiff cites to testimony in the February
2023 Deposition at pp. 314:25-315:1. Mr. Del Rosso was asked whether he had

copies of "those reports" and he responded that they "are in my data somewhere, yes." The reports appear to refer to the "VMS reports" referred to at p. 314:14. Reports made by Mr. Del Rosso or VMS were requested in the Plaintiff's First RFP and should be produced.

E. <u>Receipts for invoices expensed to Dechert</u>: Plaintiff cites testimony in the February 2023 Deposition at pp. 239:19-240:3 in which Mr. Del Rosso is asked about the backup for work billed to Dechert. With respect to the "backup," he stated that "I have them anyway" and at some point he sent the backup to Dechert. Documents regarding requests for payment or payment from Dechert were requested in the Plaintiff's First RFP and should be produced.

F. <u>Appointments and calendar entries for the relevant time period</u>: Plaintiff cites to testimony in the February 2023 Deposition at p. 237:10-238:1 where Mr. Del Rosso testified that his Outlook calendar has appointments and calendar entries regarding his work from 2014 to the present and that the calendar is "still available today." Calendar records were requested in the Plaintiff's First RFP and should be produced.

G. <u>Files for "Project Nariman"</u>: Plaintiff cites to testimony in the February 2023 Deposition at pp. 242:21-243:5 in which Mr. Del Rosso testified that notes of his meetings with Dechert were saved "in a project file." Such notes were requested in the Plaintiff's First RFP and should be produced.

H. <u>Emails related to the retention of NTi</u>: Plaintiff cites testimony in the February 2023 Deposition at pp. 114:22-115:4 where Mr. Del Rosso testified that he had emails regarding the retention of Nti through Mr. Swecker. Certain information regarding NTi was requested in the Plaintiff's First RFP and should be produced.

I. <u>Data related to Jamie Buchanan</u>: Plaintiff cites testimony in the February 2023 Deposition at p. 158:6-11 where Mr. Del Rosso testified that he had come into possession of Mr. Buchanan's data either on a laptop or in a storage device. Certain information regarding Mr. Buchanan was requested in the Plaintiff's First RFP; therefore, this data should be searched by Defendants to determine if it contains any responsive documents.

Defendants shall supplement their written responses to Plaintiff's First RFP, and produce all responsive documents, subject to the General Instructions below.

1.4. <u>Additional Discovery Requests</u>: Plaintiff lists a number of other discovery requests which it maintains have not been adequately responded to by Defendants.

A. <u>Plaintiff's First RFP</u>: This set of discovery requests has already been addressed above.

B. <u>Plaintiff's Third RFP: 19, 21</u>.

i. RFP 19 seeks documents relating to WeTransfer. The Special Master finds that this request is relevant to the claims and defenses, subject to the Relevance Limitation (see page 25 below). Defendants responded that they searched for responsive documents and had no non-privileged documents "evidencing or relating to the use of WeTransfer in 2019 to 2019 by either Defendant." However, the request does not seek documents regarding the Defendants' use of WeTransfer. Rather, it seeks documents "relating" or "regarding" WeTransfer and those referencing or containing the term "WeTransfer." Defendants shall supplement their response to RFP 19 in accordance with the General Instructions, and not limit production to Defendants' "use of WeTransfer."

ii. RFP 21 seeks documents relating to instructions to preserve or destroy documents from 2014 to the present. The Special Master finds that this request is relevant to the claims and defenses, subject to the Relevance Limitation. Defendants objected and refused to produce any documents in response to this request. Among other objections, Defendants objected on the ground that the discovery was sought for improper purposes. As noted in the July 2023 Order, "the Court has no reason to believe that Plaintiff is pursuing discovery for an improper purpose." The Special Master has no reason to believe differently. Defendants shall supplement their response to RFP 21 in accordance with the General Instructions.

C. Plaintiff's Fourth RFP: 22 – 29, 31, 33, 34, 36 – 41, 45.

i. RFP 22 – 26, 29, 31, 33, 36, 38, 45: The Special Master finds that these requests are relevant to the claims and defenses, subject to the Relevance Limitation. Defendants responded that, subject to objections, they were not in possession, custody, or control of any documents (or additional responsive documents). Defendants shall supplement their responses to these requests in accordance with the General Instructions.

ii. RFP 27, 28: Defendants responded that the requested documents were subject to the privilege asserted by RAK, in addition to other objections, and refused to produce any documents. The Special Master finds these requests to be relevant to the claims and defenses. Defendants shall supplement their responses to these requests in accordance with the General Instructions.

iii. RFP 34, 37: Defendants responded that all responsive documents were accounted for in a privilege log. If that log is not compliant with the General Instructions, it should be amended. The Special Master finds that these requests

11

are relevant to the claims and defenses, subject to the Relevance Limitation. Defendants shall supplement their responses to these requests in accordance with the General Instructions.

iv. <u>RFP 39, 41</u>: Defendant objected on several grounds, including privilege, and refused to produce any documents. The Special Master finds that these requests are relevant to the claims and defenses, subject to the Relevance Limitation. Defendants shall supplement their responses to these requests in accordance with the General Instructions.

v. <u>RFP 40</u>: This request appears to seek the same information sought in the Laptop Motion relating to banker's boxes (see Section 1.2.C. above) and the Special Master finds it is relevant to the claims and defenses, particularly in light of the February 2023 Deposition testimony of Mr. Del Rosso. Defendants responded by referring Plaintiff to Defendants' response to Interrogatory 15, to which Defendants objected, and subject to the objections, stated that the banker's boxes had been reviewed. Defendants shall supplement their response to this request in accordance with the General Instructions and state affirmatively that i.) they have searched the banker's boxes for all responsive documents, and ii.) either additional responsive documents will be produced, all responsive documents contained therein have been produced, or there are no responsive documents to produce.

D. <u>Plaintiff's Sixth RFP: 54 – 60, 63 – 66, 69 – 80</u>.

i. <u>RFP 54 – 60, 63 – 65, 69 – 80.</u>: For each of these requests, Defendants responded that, either, subject to objections, they were not in possession, custody, or control of any documents or that, subject to objections, they were not in possession, custody or control of any documents not previously produced or logged.

The Special Master finds that these requests are relevant to the claims and defenses, subject to the Relevance Limitation. Defendants shall supplement their responses in accordance with the General Instructions.

ii. RFP 66: For this request, Defendants responded that, subject to objections, they are not in possession, custody, or control of responsive documents. The Special Master finds that this request is relevant to the claims and defenses. Defendants shall supplement their responses in accordance with the General Instructions.

E. Plaintiff's Interrogatories 1 – 6, 9, 11 – 14, 16.

i. ROGS 1, 2, 5, 16: The Special Master finds that the information sought is relevant to the claims and defenses. Defendants shall supplement their responses, as necessary, in accordance with the General Instructions.

ii. ROGS 3, 4, 6, 9, 11, 12, 13, 14: The Special Master finds that the information sought is relevant to the claims and defenses, subject to the Relevance Limitation. Defendants shall supplement their responses, as necessary, in accordance with the General Instructions.

**2. The CyberRoot Motion**

Plaintiff asserts that Defendants' production regarding CyberRoot is insufficient, that Defendants have only produced a few invoices relating to CyberRoot, and the privilege log contains no mention of CyberRoot. Plaintiff seeks a full production of all documents and data relating to CyberRoot. Defendants respond that Plaintiff has CyberRoot invoices, and three years of VMS PNC Bank records showing payments to CyberRoot. At the Hearing, counsel for Defendants stated that a complete search was made regarding CyberRoot and no additional documents were located. Documents relating to CyberRoot were requested in the

13

Plaintiff's First RFP and the Plaintiff's Fourth RFP. Defendants shall supplement their responses to the Plaintiff's First RFP and to the Plaintiff's Fourth RFP, Nos. 22, 23, 25, and 26, as noted above.

### 3. <u>The Privilege Motion</u>

Plaintiff asserts that Defendants have improperly withheld information on account of privilege. Defendants have asserted the privilege on behalf of RAK.[3] Plaintiff argues that Defendant lacks standing to assert RAK's privilege and that the privilege has been waived due to prior disclosures.

3.1    <u>Standing</u>: Following the Hearing, the Parties were asked to provide additional caselaw regarding the right of Defendants, as third parties, to assert RAK's privileges. Plaintiff cites *Gibbs v. Stinson*, No. 18-cv-676, 2021 WL 4853575 (E.D. Va. Oct. 17, 2021) for the proposition that only the privilege holder has standing to assert privilege. The *Gibbs* defendants, former officers and directors of a company, sought to assert the company's privilege. The court held that the defendants could not assert the privilege, despite that the company had "advised Defendants that it 'is not waiving its attorney-client privilege' and has instructed them not 'to do something different than what [the company] wants to do with respect to its privilege.'" *Id.* at *8.

Defendants assert that an authorized party in "proper possession" of privileged and protected documents may assert the privilege on behalf of the privilege holder, citing several cases in support. Cases cited by Defendants address the right or obligation of an attorney to assert a privilege on behalf of the attorney's client[4] or affirm that the privilege can only be

---

[3] It is not clear to the Special Master whether Defendants also assert privileges belonging to them.

[4] *See e.g., Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019); *In re Grand Jury Subpoena # 06-01*, 274 F.App'x

asserted by the client (or, with respect to work product, the attorney) or one "authorized to do so" by the client.[5] However, no cases directly address when and how a third-party may be properly authorized to assert a privilege belonging to another.[6]

Defendants point to two letters (attached as Exhibit A to their "Opposition to Plaintiff's Motion to Compel Defendants to Produce Information Improperly Withheld for Privilege") as providing express authorization and direction from RAK to assert its privilege. The first letter, dated February 13, 2023, is from Allen & Overy, LLP, Legal Consultants, which advises that it acts for RAK (and related entities), and notes that Mr. Del Rosso and VMS may have either privileged documents or information "belonging or related to the RAK Parties." The letter further states that "the RAK Parties assert, and do not waive, all such applicable privileges or protections, including in respect of any documents or information [in Defendants' possession, custody, or control] and that [Defendants] do not have authority to waive privilege when responding to subpoena requests for oral or documentary evidence, or

---

306, 309 n.3 (4th Cir. 2008); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1354-55 (4th Cir. 1984); *In re Miller*, 357 N.C. 316, 338 (2003).

[5] *United States v. Martoma*, 962 F.Supp.2d 602, 604 (S.D.N.Y. 2013). In *Martoma*, the Government sought to assert the privilege of a cooperating witness. The court found that the Government lacked standing to assert the privilege, because it "'can be asserted only by the client (or one authorized to do so on the client's behalf).'" Id. (cites omitted). The court noted that although the privilege holder had "expressed a desire to preserve the confidentiality of the communications," such expression did not authorize the Government to act.; *Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304, 306 (E.D. Va. 2004). In *Green*, a plaintiff sought to assert a work product privilege over a report prepared by a worker's compensation carrier. The court found that the plaintiff had no standing to assert the privilege because it did not request the report or prepare it.

[6] Another issue raised by Defendants' motion, but not fully addressed by either party, is whether the Defendants are within the scope of persons who can receive privileged information without waiver of the privilege. The Defendants assert that they are in "proper possession" of RAK's privileged documents and information, but there is an insufficient record at this time to make that determination.

at any other time." The second letter, dated July 19, 2023, is from Patterson Belknap Webb & Tyler, LLP, "confirming RAK's assertion of all applicable privileges and protections over any confidential information or documents in [Defendants' possession, custody, or control]." Addressing the Laptop specifically, the letter notes that while "RAK has no knowledge of what materials may have been saved on Mr. Del Rosso's laptop or what materials still exist on that computer…RAK is concerned [that certain information relating to Defendants' work for RAK] are likely to be subject to the legal advice privilege and/or litigation privilege under English law and the attorney-client privilege and/or work product protection under U.S. law." RAK, through counsel, therefore "asserts, and does not waive, all applicable privileges and protections as to any documents or information in your clients' possession, custody or control" including any documents relating to VMS's services on the Laptop. RAK's counsel specifically states that VMS does not have the authority to waive any privileges or protections.

These letters each make the same three points: 1.) Defendants may have privileged information belonging to RAK in their possession, custody, or control; 2.) RAK does not waive any applicable privileges; and, 3.) Defendants have no authority to waive such privileges. However, the letters do not authorize Defendants to assert RAK's privileges/protections; instead, they are similar to the situation of the *Gibbs* defendants where the court found they were "'not authorized to assert [the company's] privilege merely because [the company] has expressed a desire to preserve the confidentiality of the communications at issue.'" *Gibbs v. Stinson*, No. 18-cv-676, 2021 WL 4853575 at *8 (quoting *United States v. Martoma*, 962 F. Supp. 2d 602, 605 (S.D.N.Y. 2013)). Moreover, even if intended to provide authorization, the letters contain no more than conclusory assertions of privilege, with no guidance to Defendants as to which specific documents are considered by RAK to be privileged. Indeed, with respect to the Laptop, RAK does not even know what documents or information are

16

contained on that computer. This makes it difficult for the Plaintiff, and as necessary, the Court, to challenge any privilege assertions.

The Special Master concludes that Defendants are not authorized to assert any privileges belonging to RAK (or related parties) and directs the following:

A. Defendants shall prepare a privilege log which consists only of those responsive documents which Defendants believe are subject to a privilege owned by RAK (or any of the RAK Parties as identified in the letters referenced above, hereafter the "RAK Parties") (the "RAK Privilege Log"). The RAK Privilege Log shall be prepared in accordance with the General Instructions. On or before February 27, 2024, Defendants will provide the RAK Privilege Log to Plaintiff and to the RAK Parties, and advise the RAK Parties that they have 20 days from February 27, 2024 to appear before the Court to assert any privileges.

B. Instructions regarding the assertion of the RAK Parties' privileges at the deposition are set forth in Section 4 below, and instructions regarding the production of documents previously withheld on the basis of the RAK Parties' privileges are set forth in the General Instructions.

3.2 <u>Waiver:</u> Plaintiff asserts that the RAK Parties have waived any privilege through evidence and testimony presented in the UK Proceeding. As with the issue outlined in footnote 6 above, the record is insufficient for the Special Master determine whether a waiver has occurred and, therefore, cannot consider this argument.[7] The Privilege Motion as to waiver is denied without prejudice.

---

[7] Waiver has also been raised by Plaintiff in connection with its motions to compel non-parties Christopher Swecker and Dechert LLP to produce certain information withheld for privilege. This Report does not address these motions.

4. **The Deposition Motion**

Plaintiff seeks an emergency motion to preserve Mr. Del Rosso's Testimony for Trial. Plaintiff asserts that Mr. Del Rosso's health has worsened and that at his last deposition (December 7, 2023), he was often sleepy and sometime unable to answer basic questions due to his impairment from pain narcotics. Plaintiff wants Mr. Del Rosso to sit for an additional individual deposition and also for a Rule 30(b)(6) deposition. Defendants respond that there is no emergency requiring an immediate deposition, Plaintiff has had a sufficient amount of deposition time of Mr. Del Rosso, a 30(b)(6) deposition will only overlap the individual deposition, Plaintiff should sufficiently identify his trade secrets before further depositions, and there should be limitations (such as time) on any such depositions.

Defendants provided an updated letter from Mr. Del Rosso's physician, Dr. Samuel Rubinstein, who noted, among other things, that Mr. Del Rosso continues to experience significant pain and that protracted periods of sitting will likely exacerbate that pain. Dr. Rubinstein stated that Mr. Del Rosso needs to take his full complement of pain medications as prescribed, which includes narcotics. Dr. Rubinstein stated further that Mr. Del Rosso should not be required to sit for periods of time in excess of three hours, in order not to exacerbate his pain such that "meaningful participation in the questioning would be challenging."

At the Hearing, it was determined by the Special Master that Mr. Del Rosso shall sit for an additional six hours of deposition taken over two days, to be divided in Plaintiff's discretion between his individual testimony and his 30(b)(6) testimony. The Parties were instructed to meet and confer regarding the deposition dates and additional topics. They did so and have reported the following:

18

A. The Parties agreed that Mr. Del Rosso will be deposed for three hours on the afternoon of February 15, 2024, and three hours on the morning of February 16, 2024.[8]

B. Plaintiff will provide the anticipated breakdown of time between the individual and 30(b)(6) deposition.

C. The Parties have also discussed the 30(b)(6) topics, including the subject matter, temporal scope, and privilege assertions, with an agreement to have another conference on these topics prior to the depositions. With respect to the temporal scope, the Plaintiff has agreed to use that set forth by the Court – March 2015 to October 15, 2020.

D. The Parties have differing positions as to the application of the attorney-client privilege with respect to the deposition. Defendants' position is that RAK has asserted the attorney-client privilege and work product protections over the work Defendants did for RAK (through Dechert). Defendants will agree to provide a brief summary of each RAK project, but no details. Plaintiff asserts that Defendants must provide testimony about all of the work done for RAK/Dechert.

E. The Parties have differing positions as to the subject matter scope of the depositions. Plaintiff contends that the alleged conspiracy includes a number of victims other than Plaintiff and that they are entitled to discovery as to those other alleged victims. Defendants contend that the discovery should have some relation to Plaintiff and that allegations of a conspiracy involving other victims are

---

[8] The Defendants' email to the Special Master gave the dates as the afternoons of February 14th and 15th. If the Parties have not in fact agreed on the afternoon of the 15th and the morning of the 16th, they should advise the Special Master immediately and a conference will be held to resolve.

insufficient to justify discovery about those persons or entities. The Parties have agreed to re-evaluate their respective positions prior to the depositions to see if a compromise can be reached.

F.  Plaintiff asserts that if Defendants take the position that Mr. Del Rosso's testimony during the December 7, 2023 deposition was not competent, then Plaintiff reserves the right to seek additional deposition time for Mr. Del Rosso's personal deposition.

After consideration of the Parties' report of their meet and confer, the Parties' respective briefing regarding the Del Rosso deposition, and the arguments made at the Hearing, the Special Master makes the following determinations:

A.  On or before February 9, 2024, the Parties will advise the Special Master whether they have reached an agreement regarding the subject matter scope. The Special Master reminds the Parties that the Court has already concluded that the deposition topics in the original 30(b)(6) notice [Doc. 216-1] were relevant [Doc. 248], and of the Court's statements at the September 29, 2023 hearing regarding the breadth of discovery: "I'm going to give the Plaintiff some latitude because you're working backwards to establish as an evidentiary matter the hacking…So it's a much more complicated case than simply saying over and over again, well, it's one claim, and the hacking stuff has been, you know, dismissed. There's overlap in my mind, without a doubt, regardless of whether the hacking claim is in the case or not as opposed to just a one-count trade secret or two-count trade secrets case…[and the Plaintiff] should ask questions that are clear and clearly relevant to the case." [Transcript of Status Conference, September 29, 2023]. If

the Parties cannot agree to the subject matter scope, the Special Master will hold a conference on or before February 13, 2024 to determine the scope.

B. While Plaintiff should advise Defendants of the anticipated breakdown of time between the individual and 30(b)(6) depositions, the Plaintiff may modify this breakdown at his discretion without prior notice to Defendants.

C. Plaintiff is limited to an additional six hours of testimony from Mr. Del Rosso. Requests for additional time will only be considered following the completion of the depositions. With respect to whether Mr. Del Rosso was competent at the December 7, 2023 deposition, the Special Master notes that a basis of Plaintiff's motion to compel additional deposition time was that both counsel for Mr. Del Rosso and Mr. Del Rosso himself expressed their respective opinions during the deposition that he was not competent to testify.

D. If Mr. Del Rosso asserts any privilege at the deposition, those assertions will be considered after the transcript is available and any necessary briefing. If the Special Master or the Court determines that a privilege is not available with respect to a question, additional deposition time will be permitted to get a complete answer to the question. Additionally, given the determination herein regarding the assertion of the RAK Parties' privileges, Mr. Del Rosso may refuse to answer a question based on the RAK Parties' anticipated intervention, subject to a later determination that the privilege is not applicable.

**5. <u>The Trade Secrets Motion</u>**

Defendants assert that Plaintiff has not sufficiently identified his alleged trade secrets as required by North Carolina law, and specifically has not fully responded to requests 1 – 16 of Defendants' First Set of Requests for Production of Documents (the "Def. First RFP")

21

and or to interrogatories 3 – 8, and 10 of Defendants' First Set of Interrogatories (the "Def. First ROGS").[9]  Plaintiff responds that he has identified his trade secrets multiple times, including the production of all document and communications collected from WeTransfer and BitTorrent sites, the production of a culled set of trade secret examples, and the production of excels reflecting his rolodex information. The Special Master determines that the Defendants' cited discovery seeks information relevant to the elements of misappropriation of trade secrets as set forth in the North Carolina Trade Secrets Protection Act ( N.C. Gen. Stat. §66-153 *et seq*.) and relevant to North Carolina case law requiring the identification of trade secrets by a Plaintiff (*see, e.g.*, *Washburn v. Yadkin Valley Bank & Tr. Co*., 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008)). Further, the discovery requests from Defendants are otherwise relevant to the claims and defenses.

Therefore, Plaintiff shall supplement his responses to RFP 1 – 16, and ROGS 3 – 8, and 10.  In doing so, Plaintiff shall identify by Bates number the previously produced documents he stated are responsive to certain requests, produce any additional responsive documents, and otherwise comply with the General Instructions. With respect to the Plaintiff's trade secrets, they shall be identified by specific Bates numbered pages.  Bates ranges are only acceptable if each page within the Bates range contains trade secrets. Further, where a particular trade secret constitutes only a portion of the content on a particular Bates numbered page, the trade secret shall be further identified by highlighting or circling the trade secret on the particular page, unless the trade secret asserted is a compilation as recognized by North Carolina law (N.C. Gen. Stat. §66-152(3); *Sunbelt*

---

[9] Defendants also assert that Plaintiff waived his right to object to the Def. First ROGs because its responses were not timely. The Special Master has considered Plaintiff's objections.

*Rentals, Inc. v. Head Engquist Equip.*, LLC, 620 S.E.2d 222, 227-228 (2005)). Finally, with respect to Plaintiff's statement in his prior responses that he will conduct a "reasonable" search for documents, a search by either Party for responsive documents is reasonable only if it meets the requirements of Federal Rules of Civil Procedure 26 and 34.

6. **<u>Third Interrogatories Motion</u>**:

Plaintiff asserts that Defendants have not adequately responded to the Plaintiff's Third Set of Interrogatories, specifically Interrogatory Nos. 10, 12, 14 – 18.   Defendants respond that they intend to supplement their response to Interrogatory 10, that they have adequately responded to Interrogatory Nos. 12, 14, and 15, and have no obligation to respond to the remaining interrogatories because they exceed the permitted number pursuant to the Scheduling Order [Doc. 93]. The Scheduling Order states that "the parties shall serve no more than 25 interrogatories…per party…without leave from the Court." Plaintiff's First Set of Interrogatories, consisting of Interrogatories 1 – 4, were directed to both Defendants. Plaintiff's Second Set of Interrogatories, consisting of Interrogatories 11 – 18, were directed to both Defendants. Plaintiff's Third Set of Interrogatories, consisting of ten interrogatories numbered 9 – 18, were also directed to both Defendants.[10] Defendants objected and responded to Interrogatories 9, 10, 11, and 13.  Defendants objected and did not respond to Interrogatories 12, and 14 – 18 .

The Special Master agrees with the Defendants that the Plaintiff is limited to a total of 25 interrogatories served. The Scheduling Order puts a limit on the total number of interrogatories a party may serve. *See also*, M.D.N.C. L.R. 26.1(a)(2) (interrogatories are presumptively limited to 25 in number by each party). Reading the order differently would

---

[10] Even if Plaintiff's interpretation of the Scheduling Order was correct, Plaintiffs have directed all interrogatories to both Defendants.

permit the Plaintiff to serve 50 interrogatories. After reviewing the Parties' submissions and the relevant Pleadings, the Special Master directs the following:

    A. Defendants shall supplement their written responses to Interrogatories 10 and 12, and provide the requested information without objection, other than any appropriate privilege objections.

    B. Defendants' objections to Interrogatories 14 and 15 are sustained.

    C. Defendants are not obligated to respond to Interrogatories 16 – 18.

**7. <u>General Instructions for all Parties</u>**: With respect to the discovery responses addressed above, the following instructions shall apply:

    A. <u>General Production</u>: Each response to a document request or interrogatory to which objections are asserted shall state that either no documents or information were withheld on the basis of such objections or that documents or information were withheld on the basis of such objections. Where the Special Master has noted that a particular request is relevant, no documents or information shall be withheld based on an objection as to relevance or overbreadth.

    B. <u>Privilege</u>: If a Party asserts a privilege with respect to any discovery request, the Party should prepare a privilege log that satisfies the requirements of FRCP 26(b)(1) and includes at least the following information: the specific request to which the document is responsive; the nature of the claimed privilege/protection; the document date; the document type; the author(s) and recipient(s) of the document; and the subject matter of the document. Defendants should update their privilege logs to include only the privileges that belong to Defendants. Further, given the determinations made herein regarding the RAK Parties, this report does not compel the production at this time of any documents withheld on

the basis of the RAK Parties' privileges. Any production of such documents will be determined following the timely assertion of privilege by the RAK Parties.

C. <u>Deadlines to Produce/Supplement</u>: Other than the search of the Laptop, all supplemental written responses and production shall occur no later than February 27, 2024. Any privilege logs shall be provided at the same time as the responses. With respect to the search of the Laptop, once the steps set forth in Section 1.1 above have been taken, the Parties and the Special Master will determine dates for any production related to the Laptop.

D. <u>Temporal Limitations</u>: All discovery requests will have the temporal limitation imposed on the Plaintiff's First RFP by the Court, March 2015 – October 15, 2020.

8. **Relevance Limitation**: Where noted by the Special Master, a discovery request from Plaintiff shall be limited to information or documents relating to i.) Plaintiff and Plaintiff's Associates, as defined in the Definitions in Plaintiff's First RFP; ii.) any personal or business enterprise or financial transaction, involving or related to Plaintiff or Plaintiff's Associates; or, iii.) any documents, communications, or data that belonged or belong to Plaintiff or any company in which Plaintiff holds an ownership interest.

This the 6th day of February, 2024.

_____
Alice C. Richey
Special Master