# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Case No. 20-CV-954-WO-JLW

|  |  |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>    Defendants. | **DEFENDANTS' OBJECTIONS TO OR APPEAL OF SPECIAL MASTER'S REPORT AND DECISION #1** |

Pursuant to Fed. R. Civ. P. 53(f)(2) and the Court's December 29, 2023 Order for the Appointment of Special Discovery Master, (D.E. 313 ¶¶ 13–14) (the "Appointment Order"), Defendants Nicholas Del Rosso and Vital Management Services, Inc. respectfully submit these Objections to the portion of the Special Master's February 6, 2024 Report and Decision #1 (the "Report", D.E. 316) specifically dealing with the assertion of privilege and concluding that (1) Defendants were "not authorized to assert any privileges" belonging to non-party Government of Ras Al Khaimah and its related instrumentalities ("RAK"), and (2) that RAK must "appear before the Court to assert any privileges." Report at 17. Defendants further request a partial stay of the Report pending the Court's consideration of and ruling on their Objections.

## PRELIMINARY STATEMENT

Defendants were engaged by Dechert LLP ("Dechert")—counsel for RAK—to facilitate the representation and provision of legal advice to RAK in connection with actual or contemplated litigation outside of the United States. As part of that engagement, Defendants came to possess privileged attorney-client communications and attorney work product belonging to RAK. In discovery in this proceeding, with RAK's express authorization and at RAK's direction, Defendants withheld or otherwise redacted RAK's privileged information in response to Plaintiff's discovery requests. Undeterred, and as part of Plaintiff's ongoing efforts to pierce the protections of RAK's privileges, Plaintiff filed a motion to compel before the Special Master arguing, among other things, that Defendants lack "standing" to assert RAK's privilege on RAK's behalf.

For the reasons explained herein, Plaintiff's position is baseless. The Special Master nonetheless agreed with Plaintiff, concluding that "Defendants are not authorized to assert any privileges belonging to RAK (or related parties)" and directing Defendants to advise RAK—a foreign sovereign that is not a party to this litigation or subject to the Court's jurisdiction—to "appear before the Court" by March 18, 2024 in order to assert any privileges. Report at 17. This extraordinary ruling rests on errors of both fact and law and must be reversed.

2

There is no question that in asserting privilege, Defendants were honoring the explicit directions of the client in the representation, namely RAK. In fact, RAK, through counsel, repeatedly authorized and directed Defendants to assert RAK's privilege over each document withheld or redacted on the basis of RAK's privilege and that are listed in Defendants' privilege log. Those clear and express authorizations to Defendants—investigative consultants hired by RAK's counsel and party to the attorney-client relationship—are sufficient as a matter of law to permit Defendants to assert RAK's privilege in this matter on RAK's behalf. Defendants would have violated their ethical and professional obligations by ignoring those directions.

The Special Master's Report cites no authority whatsoever for the proposition that a duly authorized agent party to the attorney-client relationship lacks standing to assert privilege on the client's behalf. Accordingly, this portion of the Report must be reversed. Pending the Court's consideration of Defendants' Objections, Defendants request that the Court stay compliance with the portion of the Report directing that RAK "appear before the Court" by March 18, 2024 to assert its privileges.

## **PROCEDURAL BACKGROUND**

On January 5, 2024, Plaintiff filed a motion with the Special Master seeking to compel Defendants to produce documents that had been withheld or

redacted in discovery on the basis of RAK's privilege. *See* Exhibit 2 (Declaration of John E. Branch III ("Branch Decl.")), Ex. A (Jan. 5, 2024 Plaintiff Motion ("Motion")).  Plaintiff argued, among other things, that "Defendants cannot assert RAK's privilege" and that "[o]nly the privilege holder has standing to assert privilege."  Motion at 3 (citing *Gibbs v. Stinson*, No. 18-cv-676, 2021 U.S. Dist. LEXIS 200198 (E.D. Va. Oct. 17, 2021)).  As to whether Defendants had, in fact, been authorized to assert RAK's privilege, Plaintiff contended only that Defendants' "secondhand statements" to that effect "cannot be taken at face value" and insisted that RAK "intervene" to make any assertions itself.  *Id.*

On January 10, 2024, Defendants filed an opposition to Plaintiff's motion, limited to 700 words based on the terms of the Special Master's Appointment.  *See* Branch Decl., Ex. C (Jan. 10, 2024 Defendants Opposition ("Opp.")).  Defendants confirmed that RAK had in fact authorized and directed them to assert RAK's privilege, and included as exhibits (1) a February 13, 2023 letter from RAK's counsel, Allen & Overy LLP, based in the United Arab Emirates; and (2) a July 19, 2023 letter from RAK's counsel in the United States, Patterson Belknap Webb & Tyler LLP—both of which reiterated that RAK "asserts, and does not waive, all applicable privileges and protections as to any documents or information in [Defendants'] possession, custody, or control," and directed Defendants that they "do[] not have authority to waive

4

such privileges or protections when responding" to discovery requests. *See* Opp. at 2 & Ex. A thereto. Defendants also cited authority for the proposition that, even apart from attorney-client privilege, Defendants "are competent to assert protections over their own work product." *Id.* at 2 (citing *Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304, 306 (E.D. Va. 2004)). In view of the 700 words allotted for their response, Defendants focused the remaining portion of their opposition to responding to Plaintiff's legal arguments.

On January 16, 2024, the Special Master heard argument on Plaintiff's motion to compel. With respect to Defendants' authorization to assert RAK's privilege, Defendants confirmed for the Special Master that the February 2023 and July 2023 letters were "not the only aspect that has occurred in the privilege process here." Branch Decl., Ex. D (Excerpt of Jan. 16, 2024 Special Master Argument Transcript ("Transcript")) at 61. Defendants served a lengthy and detailed privilege log, "[t]hree pages of which are documents that [Defendants] asserted their attorney-client privilege over" (hereinafter, "Defendants-Specific Privilege Log"), and "[t]he balance of [which] . . . has privilege designations by RAK" (hereinafter, "RAK-Specific Privilege Log"). *Id.* at 61-62; *see also* Exhibit 1 (Declaration of Daniel S. Ruzumna ("Ruzumna Decl.")), Ex. D. With respect to the RAK-Specific Privilege Log, Defendants explained to the Special Master that the documents "***were identified, reviewed and approved by counsel for RAK***" and that counsel for RAK

"*selected the documents that they are asserting the privilege over*."
Transcript at 62 (emphasis added). Defendants therefore informed the Special
Master that, to the extent she had any concern about "non-specific letter[s]"
received from RAK, Defendants actually had "provid[ed] a detailed privilege
log that has been signed off on by the end client." *Id.* at 62-63. Adding to this
record, an excerpted copy of the RAK-Specific Privilege Log appeared in
Exhibit E to Plaintiff's motion; each page of that excerpt stated at the top that
"RAK has **authorized and directed** counsel for Mr. Del Rosso and Vital
Management **to assert RAK's privileges and work product protection
over the below-listed materials**." Branch Decl., Ex. B at 2-7 (emphasis
added).

The Special Master issued her Report on February 6, 2024. As to
Plaintiff's motion to compel production of privileged materials, the Special
Master concluded that "Defendants are not authorized to assert any privileges
belonging to RAK." Report at 17. In determining whether Defendants, as a
factual matter, had been authorized or directed by RAK to assert privilege on
its behalf, the Special Master focused solely on the two letters that had been
appended to Defendants' opposition papers. *See id.* at 15-17. The Special
Master found that those letters "contain no more than conclusory assertions of
privilege, with no guidance to Defendants as to which specific documents are
considered by RAK to be privileged." *Id.* at 16. The Special Master observed

that at the time the second letter was sent, on July 19, 2023, RAK acknowledged it "d[id] not even know what documents or information" were in Defendants' possession. *Id.* The Report, however, made no reference to the excerpts of the RAK-Specific Privilege Log that had been submitted as an exhibit to Plaintiff's motion—including the express language memorializing RAK's direction to assert privilege over each of the documents contained therein. Nor did the Special Master address Defendants' representations at the hearing concerning RAK's involvement in the review of each document withheld or redacted for privilege.[1]

As to the law, the Special Master agreed that the cases cited by Defendants "affirm that the [attorney-client] privilege can only be asserted by the client . . . or one 'authorized to do so' by the client." *Id.* at 14-15 (citing *United States v. Martoma*, 962 F.Supp.2d 602, 604 (S.D.N.Y. 2013)). In a footnote, however, the Special Master questioned—but did not decide—whether Defendants, even if authorized by RAK to assert RAK's privilege, "are within the scope of persons who can receive privileged information without waiver of the privilege." *Id.* at 15 n.6. The Report also did not address

---

[1] In a footnote, the Special Master added that "[i]t is not clear to the Special Master whether Defendants also assert privileges belonging to them." Report at 14 n.3. For the avoidance of doubt, as explained at the January 16 argument, Defendants provided Plaintiff with a log, the first three pages of which reflect Defendants-Specific Privilege Log identifying documents withheld or redacted on the basis of Defendants' privileges and protections. *See* Transcript at 61-62; Ruzumna Decl., Ex. D. The remaining portion of the log reflects the RAK-Specific Privilege Log.

7

Defendants' standing to assert work product protections over documents they prepared in the course of performing the investigative services for which they had been retained by Dechert.

The Special Master concluded by directing Defendants to "advise" RAK that it must "appear before the Court" by March 18, 2024 "to assert any privileges." *Id.* at 17.

## STANDARD OF REVIEW

The Court reviews *de novo* all objections to findings of fact or conclusions of law made by the Special Master. Appointment Order ¶ 14; Fed. R. Civ. P. 53(f)(3), (4). In reviewing and ruling on such objections, the Court is authorized to receive additional evidence bearing on the arguments presented. *See* Appointment Order ¶ 13; Fed. R. Civ. P. 53(f)(1).

## ARGUMENT

The portion of the Special Master's Report concluding that Defendants lack standing to assert RAK's privilege rests on factual and legal errors and must be reversed. *First*, the Special Master failed to appreciate evidence proving, as a factual matter, that RAK expressly authorized and directed Defendants to assert RAK's privilege over each specific document in the RAK-Specific Privilege Log that was withheld or redacted on the basis of RAK's

8

privilege.[2]  *Second*, the Special Master erred insofar as she determined that Defendants are not "within the scope of persons who can receive privileged information," and to the extent she did not address Defendants' standing to assert work product protections.   Defendants—investigative consultants engaged by RAK's counsel to facilitate the provision of legal advice to RAK— are members of the attorney-client privilege relationship and fully capable of asserting RAK's privilege and work product protections.  *Third*, as a non-party with no presence, operations, or assets in this jurisdiction, RAK is not subject to the Court's jurisdiction, and should not have to appear when Defendants have been expressly authorized to assert privilege on its behalf.

## I.   The Special Master Erred in Finding That Defendants Are Not Authorized to Assert Any Privileges Belonging to RAK

The Special Master failed to appreciate evidence proving that, as a factual matter, RAK expressly authorized and directed Defendants to assert privilege over each document withheld or redacted in the RAK-Specific Privilege Log.

---

[2] For the avoidance of doubt, Defendants do not mean to assign fault to the Special Master for overlooking this critical evidence.  Though the RAK-Specific Privilege Log was attached to Plaintiff's motion, Defendants' opposition focused its 700 permissible words on rebutting Plaintiff's argument that a third party cannot legally assert another's privilege.  Because Plaintiff challenged the ***ability*** of Defendants to assert RAK's privileges rather that RAK's authorization of Defendants to do so, Defendants did not discuss with the Special Master the specific language within the RAK-Specific Privilege Log.

The Special Master's ruling relies solely on two letters sent to Defendants by counsel for RAK—one on February 13, 2023 from Allen & Overy LLP, and another on July 19, 2023 from Patterson Belknap Webb & Tyler LLP. Report at 15-17. According to the Special Master, each letter stated that "1.) Defendants may have privileged information belonging to RAK in their possession, custody, or control; 2.) RAK does not waive any applicable privileges; and 3.) Defendants have no authority to waive such privileges." *Id.* at 16. The Special Master found that the letters "do not authorize Defendants to assert RAK's privileges/protections" because the letters "contain no more than conclusory assertions of privilege, with no guidance to Defendants as to which specific documents are considered by RAK to be privileged." *Id.* This finding is misplaced, however, because it fails to appreciate, *first*, that RAK's counsel drafted the letters before the scope of responsive discovery had been determined and therefore could not be more specific, and *second*, that other evidence before the Special Master expressly referred both to the authority given to Defendants and the specificity with which the authority was given.

First, although the Special Master criticizes RAK's letters for providing "no guidance" to Defendants as to which specific documents RAK considered to be privileged, the letters' silence as to those details stems from the fact that the letters were sent **before** RAK knew what documents Defendants had in their possession, custody, or control and, moreover, which of those documents

10

were responsive to Plaintiff's document requests. *See* Ruzumna Decl. ¶ 14; *see also* Report at 16-17 (acknowledging that RAK expressly disavowed "know[ing] what documents or information are contained" in Defendants' files). Indeed, at the time RAK's counsel prepared and sent the letters, the relevance of Plaintiff's document requests and the appropriate scope of discovery still were the subject of dispute before the Magistrate Judge—disputes that were not resolved until July 29, 2023, ***after*** the letters had been sent. Ruzumna Decl. ¶¶ 7-10, 15-16. Until that time, and without information about the scope of responsive documents to be produced in response to Plaintiff's document requests, RAK "could not provide more particularized guidance in [its] letter[s] about privilege determinations over specific documents in Defendants' possession." *Id.* ¶ 14. Instead, from RAK's perspective, the "purpose" of the letters was "to document in writing RAK's authorization and direction to Defendants to take all necessary and appropriate steps to protect and not waive RAK's privileges," and "to ensure that Defendants consulted RAK about any potential production of documents . . . so that RAK could weigh in on privilege determinations." *Id.*

That is precisely what happened. Following the Magistrate Judge's July 29, 2023 ruling on matters of relevance and scope, Defendants reviewed and identified the corpus of responsive documents to be produced in response to Plaintiff's document requests. *Id.* ¶ 16. Defendants made an initial production

11

of responsive, non-privileged documents on August 8, 2023. *Id.* ¶ 18. Consistent with the obligations set forth in RAK's February 13, 2023 and July 19, 2023 letters, Defendants withheld from production all documents potentially implicating RAK's privilege and requiring review and more specific guidance from RAK's counsel. *Id.* That same day, Defendants served Plaintiff with a privilege log that—at RAK's direction—contained the following language repeated at the top of every page listing documents withheld on the basis of RAK's privilege:

> RAK has communicated to counsel for Mr. Del Rosso and Vital Management that any materials in Mr. Del Rosso's or Vital Management's possession, custody, or control subject to RAK's privileges or work product protection must be withheld from discovery. Counsel for Mr. Del Rosso and Vital Management have reviewed the following documents and determined that they appear to reflect legal advice or work product and as such, ***must be first screened by RAK and its counsel prior to production in order to avoid any inadvertent waiver of privilege***, which is consistent with the Court's Order (D.E. 248).

*Id.* ¶ 18 & Ex. C (emphasis added).

The Special Master overlooked critical facts in concluding that no specific direction had been given to Defendants regarding assertion of RAK's privilege. Over the course of two weeks, counsel for RAK reviewed each responsive document that had been preliminarily determined to be potentially privileged by Defendants and, therefore, withheld by Defendants pending RAK's privilege review. *Id.* ¶¶ 16, 19. For each document determined to be protected by RAK's

12

privilege, RAK's counsel specifically authorized and directed Defendants either to withhold the document or produce it in redacted form; for each document determined not to be protected by RAK's privilege, RAK's counsel directed Defendants to remove the document from the log and produce the document unless Defendants determined any other ground for withholding applied. *Id.* ¶ 19. During this period, Defendants had regular oral communications with counsel for RAK, and counsel for RAK repeatedly made clear that Defendants were authorized and instructed to assert RAK's privilege over the documents that had been identified. *Id.* ¶¶ 12, 16-21.

On August 22, 2023, Defendants made a supplemental production of documents withheld previously that either required redaction only or were not subject to RAK's privilege. *Id.* ¶ 20. Defendants also served Plaintiff with the RAK-Specific Privilege Log that—at RAK's direction—contained the following language repeated at the top of every page listing documents withheld or redacted on the basis of RAK's privilege:

> RAK has ***authorized and directed*** counsel for Mr. Del Rosso and Vital Management ***to assert RAK's privileges and work product protection over the below-listed materials*** in Mr. Del Rosso's or Vital Management's possession, custody, or control.

*Id.* ¶ 20 & Ex. D (emphasis added). This language memorialized the authorization and direction Defendants received from RAK's counsel, and

made clear that such authorization and direction was specific to "below-listed materials."

In short, RAK did not provide Defendants with "conclusory assertions of privilege" and certainly did not leave Defendants without "guidance" as to "which specific documents are considered by RAK to be privileged." To the contrary, counsel for RAK conducted a document-by-document review of each document withheld or redacted by Defendants on the basis of RAK's privilege, and expressly authorized and directed Defendants to assert such privilege in the RAK-Specific Privilege Log. Defendants memorialized this instruction in the RAK-Specific Privilege Log itself. *See id.* During oral argument before the Special Master, Defendants advised the Special Master of RAK's involvement in the privilege review, explaining that "[t]h[e] privilege log designations were identified, reviewed, and approved by counsel for RAK. . . . [and that counsel for RAK] selected the documents that they are asserting the privilege over." Transcript at 61-62. Accordingly, the factual record plainly shows that RAK authorized and directed Defendants to assert RAK's privilege over specifically identified documents, and the Special Master erred in finding otherwise.

## II.   RAK's Authorization Is Sufficient as a Matter of Law to Permit Defendants to Assert Privilege on Behalf of RAK

The law indisputably provides that a third party may assert privilege on behalf of the privilege holder when "authorized to do so on the client's behalf."

14

*Martoma*, 962 F. Supp. 2d at 604; *see also* Report at 14-15 (accepting that "privilege can only be asserted by the client . . . or one 'authorized to do so' by the client").

This comes up most commonly in the context of attorneys, who may be authorized to assert privilege on their clients' behalf. *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976) (describing proposition that attorney may assert attorney-client privilege on behalf of client as "universally accepted"); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1354-55 (4th Cir. 1984) (recognizing that "an attorney . . . is entitled to raise [attorney-client] privilege on behalf of his alleged client" in connection with opposing a subpoena seeking the attorney's testimony); *In re Grand Jury Subpoena # 06-1*, 274 F. App'x 306, 309 n.3 (4th Cir. 2008) ("It is well established that if the client may invoke attorney-client privilege to protect confidential communications, then the client's attorney may also do so on the client's behalf."); *In re Miller*, 584 S.E.2d 772, 788 (N.C. 2003) ("an attorney may assert the privilege when necessary to protect the interests of the client"). The principle applies with equal force where, as here, the client has expressly authorized one whose sole function was to assist counsel, and who was therefore a member of the attorney-client relationship, to assert privilege on its behalf.

With respect to this point, the Special Master questioned—but did not decide—whether Defendants "are within the scope of persons who can receive privileged information without waiver of the privilege" so as to be "properly authorized" by RAK to assert and protect RAK's privilege. Report at 15 n.6. The question is easily answered in the affirmative. Here, Defendants were engaged by Dechert (at the time, counsel for RAK) to facilitate the representation and provision of legal advice to RAK in connection with actual or contemplated litigation. Ruzumna Decl. ¶ 6. The services provided by Defendants to RAK's counsel included asset tracing, background checks, and fraud examination. *Id.* Documents and communications prepared, sent, or received by Defendants in the course of this work for Dechert on RAK's behalf—to the extent "necessary, or at least highly useful, for the effective consultation between the client and the lawyer"—are entitled to attorney-client privilege just as if such documents and communications had been prepared, sent, or received by Dechert. *United States v. Kovel*, 296 F.2d 918, 921-23 (2d Cir. 1961); *see also United States v. Bornstein*, 977 F.2d 112, 116 (4th Cir. 1992) (explaining that, in deciding whether attorney-client privilege applies, court must determine whether third party's "services performed ancillary to legal advice"); *Liggett Grp., Inc. v. Brown & Williamson Tobacco Corp.*, 116 F.R.D. 205, 210 (M.D.N.C. 1986) ( "If the proponent of the privilege can show . . . that the third party present during the communications was an

'agent' of the proponent, the privilege may remain intact"); *Berens v. Berens*, 785 S.E.2d 733, 740 (N.C. Ct. App. 2016) (explaining that while communications between attorney and client are generally not privileged if made in presence of a third party, "the privilege still applies if the third party is an agent of either party").[3]

In other words, for investigative consultants like Defendants engaged by counsel to facilitate the provision of legal advice to the client, privilege over documents and communications in their possession, custody, or control is derivative of privilege that exists between attorney (*i.e.*, Dechert) and client (*i.e.*, RAK.). *See, e.g., In re Grand Jury Proceedings,* 947 F.2d 1188, 1191 (4th Cir. 1991) (protecting communications between accountant and attorney for purpose of assisting rendition of legal services to client); *MLC Auto., LLC v. Town of S. Pines*, 2007 WL 128945, at *4 (M.D.N.C. Jan. 11, 2007) (protecting communications between attorneys and third-party engineer where engineer was "acting as [plaintiff's] agent" and communications were made "to facilitate or assist in the rendition of legal services, or to provide the consultants legal

---

[3] In *Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 375 N.C. 72, 77 (2020), the Court noted *Kovel* and believed it was an open question under North Carolina law, but declined to reach issue, and resolved the case on other grounds. Additionally, in a recent decision involving one of Plaintiff's alleged associates, the English Court of Appeal confirmed that English-law "litigation privilege" (which covers confidential communications made for the dominant purpose of existing or contemplated litigation) can apply to communications with any third parties. *See Al Sadeq v. Dechert LLP* [2024] EWCA Civ 28.

17

advice and strategies formulated by counsel so that the consultant can carry out related tasks on behalf of the client"); *Atwood v. Burlington Indus. Equity, Inc.*, 908 F. Supp. 319, 322 (M.D.N.C. 1995) ("Cases finding an agency relationship sufficient to uphold an attorney-client privilege involve relationships with familial or professional aspects").

Moreover, as members of the attorney-client privilege relationship, investigative consultants like Defendants are in the same position as an attorney with respect to asserting the client's privilege over materials in their possession. In concluding that an attorney may assert attorney-client privilege on behalf of the client, the Supreme Court has reasoned that to hold otherwise would discourage the free flow of information between the attorney and the client and make it more difficult to obtain fully informed legal advice, thereby undermining the primary purpose of the privilege. *Fisher*, 425 U.S. at 403-05 ("As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice."). This rationale applies with equal force to investigative consultants, like Defendants, who are retained by counsel to facilitate the representation and whose work is "necessary or at least highly useful" to the provision of fully informed legal advice to the client. *Kovel*, 296 F.2d at 921-23. Concluding

otherwise would precipitate the very outcome that the Supreme Court sought to avoid in *Fisher*, undermining the purpose of the attorney-client privilege by instilling reluctance in the client to confide or discuss information for fear that such information "could more readily be obtained" from investigative consultants supporting counsel than would otherwise be the case "in the absence of disclosure." *Fisher*, 425 U.S. at 403-05.

Defendants are not aware of any decisional law that requires treating non-attorney investigative consultants differently than attorneys with respect to whether they may properly assert privilege on behalf of their clients. The sole case cited by Plaintiff in support of his motion to compel does not require such a ruling. That case, *Gibbs v. Stinson*, No. 18-cv-676, 2021 U.S. Dist. LEXIS 200198 (E.D. Va. Oct. 17, 2021), stands for the unremarkable position that individuals who were not party to the attorney-client relationship and who have not been authorized to assert privilege cannot assert privilege on behalf of a third-party client.[4] Unlike *Gibbs*, however, Defendants were an integral part of the attorney-client relationship and were expressly authorized by RAK to assert its privilege in this matter.

---

[4] Plaintiff conceded to the Special Master that, apart from *Gibbs*, he is aware of no other decision that he contends supports his position. *See* Branch Decl., Ex. E (Jan. 18, 2024 Plaintiff Email to Special Master).

19

## III. Defendants Are Independently Entitled to Assert Protections for Work Product Created in Anticipation of Litigation

In addition to attorney-client privilege, the RAK-Specific Privilege Log asserts work production protections. *See* Ruzumna Decl., Ex. D. The law protects documents prepared in anticipation of litigation by a party or, as here, "its representative (including the . . . party's attorney, consultant, . . . or agent)." Fed. R. Civ. P. 26(b)(3)(A); *see also Ring v. Com. Union Ins. Co.*, 159 F.R.D. 653, 657 (M.D.N.C. 1995) (investigator's documents and communications prepared in anticipation of litigation constitute protected work product). Documents generated by Defendants in the course of performing the investigative services for which they were engaged by Dechert are plainly protectible as work product. Defendants themselves—as the parties responsible for preparing such work product—are fully capable of asserting those work product protections in this proceeding. *See Green*, 223 F.R.D. at 306 ("[T]he only two parties entitled to assert [work product] privilege over this document—and thus to maintain a motion to protect it—are [the party] which created the [r]eport; and [the party] for which the [r]eport was created"); *cf. Under Seal 1 v. United States (In re Grand Jury 2021 Subpoenas)*, 87 F.4th 229, 255 (4th Cir. 2023) ("[T]he ability to protect work product normally extends to both clients and attorneys . . . ."). Defendants raised this argument in briefing to the Special Master, but the Special Master

did not address it in her Report. This omission provides further grounds for reversal.

## IV. The Court Should Not Require RAK to Appear in Order to Protect Its Privilege Where Defendants Have Been Authorized to Assert Privilege

In an extraordinary ruling, the Special Master directed that RAK—a foreign sovereign that is not a party to this litigation and which conducts no business, has no operations, and holds no property or interests in this District, *see* Ruzumna Decl. ¶ 4—must "appear before the Court to assert any privileges." Report at 17. This part of the Report, too, should be rejected. For the reasons set forth above, RAK has expressly authorized and directed Defendants to assert RAK's privilege behalf over documents in Defendants' possession. There is no reason RAK should be hauled into this litigation in order to assert privilege when its U.S.-based agents—who are party to the attorney-client relationship, properly in possession of privileged documents, and have specific instructions and authority from RAK to maintain privilege over those documents—can and have been authorized to assert privilege on RAK's behalf.

This case is a trade secrets case arising under North Carolina law. Yet, despite being over three years into this litigation, Plaintiff has thus far refused to identify the specific trade secrets he claims were misappropriated causing him specified damages. *See* Report at 22 (directing Plaintiff to identify "by

specific Bates numbered pages" the trade secrets forming the basis of his claims). Notwithstanding Plaintiff's refusal to provide this basic information, Plaintiff has employed aggressive discovery tactics against Defendants and non-parties alike, much of which seek information having little apparent relevance to Plaintiff's trade secrets claims. Since November 20, 2023 alone, for example, Plaintiff has served 30 non-party subpoenas and filed nine motions before the Special Master (including some against non-parties). In that time, Plaintiff deposed Defendant Del Rosso (for a third time, and now seeks a fourth deposition), deposed nonparties, and has noticed the deposition of a current FBI agent, presumably in service of his recent fixation on alleged misstatements supposedly made about him to the FBI—an issue of no conceivable relevance to his trade secrets claims here.[5]

Plaintiff's present challenge to Defendants' clear authorization to assert RAK's privilege is nothing more than a transparent attempt to bring RAK—a non-party outside of the Court's jurisdictional reach—before the Court, for the sole purpose of trying to add RAK to the growing list of non-parties against which Plaintiff continues to employ abusive discovery tactics. *See, e.g.*, Branch

---

[5] While not relevant here, Plaintiff's allegations concerning false statements to the FBI feature prominently in a separate case pending in the Southern District of New York, where Plaintiff has asserted civil RICO claims against Defendants and others. *See Azima v. Dechert*, No. 22 Civ. 8728 (S.D.N.Y.). Notably, discovery in that matter has been stayed pending briefing and decision on Defendants' motion to dismiss. Yet Plaintiff has repeatedly attempted to use discovery in this litigation in service of those RICO claims as well as claims he pursues elsewhere.

Decl. ¶ 11 (motion filed one day after Special Master's ruling on standing, demanding "evidentiary hearing involving RAK").

## V. The Court Should Stay Compliance with the Report Pending Decision

The Court may in its discretion stay portions of a Special Master's report pending decision on a party's objections to that report. *See, e.g.*, *In re Firstenergy Corp. Sec. Litig.*, 2023 U.S. Dist. LEXIS 233377, at *14 (S.D. Ohio Nov. 28, 2023). For the foregoing reasons, good cause exists here to stay compliance with that portion of the Report finding Defendants lack authorization to assert RAK's privilege and directing RAK to "appear before the Court" by March 18, 2024 in order to assert its privileges. A brief and partial stay of the relevant portion of the Report pending the Court's decision on Defendants' objections is necessary and will not prejudice Plaintiff.

## CONCLUSION

For the reasons set forth above, the Court should stay compliance with the Special Master's Report insofar as it directs RAK to "appeal before the Court to assert any privileges," and ultimately reverse the Special Master's ruling that Defendants cannot assert RAK's privilege.

Respectfully submitted, this the 13th day of February, 2024.

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By:  */s/Brandon S. Neuman*
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    John E. Branch III, NCSB# 32598
    Samuel Rosenthal (special appearance)
    Justin Kaplan (special appearance
    forthcoming)
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    john.branch@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    justin.kaplan@nelsonmullins.com
    *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of February 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Ripley Rand
Christopher W. Jones
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
ripley.rand@wbd-us.com
chris.jones@wbd-us.com

Calvin Lee
Ian Herbert
Kirby D. Behre
Lauren Briggerman
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
kbehre@milchev.com
lbriggerman@milchev.com
*Counsel for Plaintiff*

This, the 13th day of February, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance forthcoming)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
*Counsel for Defendants*

25

## **WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the foregoing brief contains fewer than 6,250 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250-word limitation.

This, the 13th day of February, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
John E. Branch III, NCSB# 32598
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance forthcoming)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
john.branch@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
*Counsel for Defendants*