UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-cv-954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTIONS TO OR APPEAL OF SPECIAL MASTER'S REPORT AND DECISION #1** |

Plaintiff opposes Defendants' February 13, 2024, Objections to or Appeal of Special Master's Report and Decision #1 ("Defendants' Objections") (ECF No. 320). Three-and-a-half years into this litigation, Defendants continue to withhold thousands of relevant documents based on a privilege they do not hold. The purported privilege holder, Ras Al Khaimah ("RAK"), has refused to appear in this case to properly assert privilege, instead hiding in the background so as not to subject itself to the Court's jurisdiction and rulings on privilege. Ironically, RAK has now injected itself into this case by submitting a nine-page declaration via its counsel. RAK should be required to formally appear, having done so informally. In submitting this sworn statement, RAK has now opened the door to a waiver of any sovereign immunity arguments it may have had.

Defendants' Objections and request for a stay are their latest delay tactics to prevent Plaintiff from challenging baseless privilege assertions and from receiving discovery. Defendants attempt to supplement the record before the Special Master by attaching for the first time a declaration from a RAK representative, only after receiving an adverse ruling from the Special Master. Even that declaration does not include sufficient specificity to allow Defendants to assert RAK's privilege. The Special Master's decision identified the proper procedure for the purported privilege holder to make any privilege claims and allowed RAK more than five weeks to appear to do so. It was well-reasoned and correct as to the law and was issued after review of briefings, oral arguments, and supplemental submissions. That decision should not be overturned, and Plaintiff should be awarded with attorneys' fees relating to this Motion.

## BACKGROUND

Defendants' privilege log, which was initially produced August 8, 2023, and amended August 22, withholds or redacts thousands of responsive documents pursuant to a privilege Defendants do not hold. Defendants purport to summarily assert RAK's "attorney-client and litigation privileges under English and North Carolina law and/or . . . work product under U.S. federal law." ECF No. 320-2, Decl. of Daniel S. Ruzumna, Ex. 1D (Excerpt of VMS Revised Privilege Log (Aug. 22, 2023)). These invocations are deficient on their

2

face, as they contain no specifics about the privilege being asserted beyond this vague refrain. And a private investigator (Defendants) hired by a third party (Dechert) cannot properly invoke privilege belonging to the client of that third party.

RAK has not appeared in this case to assert any privilege. Defendants rely on two, short, conclusory letters simply stating that Defendants do not have authority to "waive" RAK's privilege. *Id.*, Exs. 1A and 1B. The letters do not explain the basis for RAK's purported privilege assertion on a document-by-document basis or even describe the scope of the purportedly privileged relationship, leaving Plaintiff without any recourse for challenging the designations. The Special Master rightly agreed. ECF No. 316, Special Discovery Master's Report & Decision #1 (Report & Decision) at 16-17 ("the letters contain no more than conclusory assertions of privilege, with no guidance to Defendants as to which specific documents are considered by RAK to be privileged. . . . This makes it difficult for the Plaintiff, and as necessary, the Court, to challenge any privilege assertions.").

For almost six months, the parties have engaged in substantial correspondence on this issue without resolution. Plaintiff wrote to Defendants in August and September 2023 stating that Defendants lack standing to assert privilege on RAK's behalf. *See* Ex. 1 (Aug. 16, 2023 Letter to Defs.); Ex. 2 (Sept. 28, 2023 Letter to Defs.) Defendants disagreed, and RAK still has not surfaced

3

to defend its privilege designations. Plaintiff sought to resolve this issue via additional correspondence and meet and confer discussion with Defendants, and eventually filed the Privilege Motion on January 5, 2024.

Following a full briefing (during which Defendants had an opportunity to provide any additional documents they deemed necessary to resolve the issue) (ECF No. 320-3, Pl.'s Mot. to Compel Defs. to Produce Info. Improperly Withheld for Privilege), a three-hour oral argument (*see* Ex. 3, Special Master Motions Hearing, Jan. 16, 2024, Tr. 66:22-67:15, 75:25-76:3), and review of supplemental submissions on caselaw requested by the Special Master following the hearing (*see* Ex. 4, Pl.'s Suppl. Submission), the Special Master issued her first Report & Decision in this matter (ECF No. 316). The Special Master concluded that Defendants "are not authorized to assert any privileges belonging to RAK (or related parties)," and directed that (1) Defendants shall prepare a privilege log containing only documents Defendants believe are subject to a privilege owned by RAK or related parties (the "RAK Privilege Log"), and (2) by February 27, 2024, Defendants shall provide the RAK Privilege Log to the RAK parties and advise that the RAK parties have 20 days from February 27 "to appear before the Court to assert any privileges." *Id.* at 17.

**STANDARD OF REVIEW**

The Court reviews *de novo* all objections to findings of fact or conclusions of law made by the Special Master. ECF No. 313, Appointment Order ¶ 14.

The parties' Joint Agreement Regarding Special Master (the "Joint Agreement") identifies the standard for issuance of a stay: "[s]tays are disfavored and the presumption during any appeal is that the Special Master's ruling will not be stayed and discovery will be produced in accordance with the Special Master's ruling." ECF No. 312-1, Joint Agreement at 3. The Agreement allows for stays in "limited circumstances where enforcement of the Special Master's order will result in substantial prejudice to a Party." *Id.*

In the event that a party appeals a decision of the Special Master and loses that appeal, the Joint Agreement notes that the Court may order the appealing party to pay reasonable costs and attorneys' fees associated with the appeal. *Id.* The Court has also indicated that it would consider awarding attorneys' fees to the prevailing party. ECF No. 304, Sept. 29, 2023, Tr. 10:14-16.

**ARGUMENT**

**I.  Defendants Have No Standing to Raise These Objections.**

As an initial matter, Defendants have no standing to object to the portion of the Special Master decision that is the subject of this motion. The decision describes a process by which Defendants have to give notice to RAK of

5

documents withheld based upon a RAK privilege so that RAK can decide whether to intervene and assert privilege. Defendants object, but this portion of the decision does not impose any requirements upon Defendants (other than informing RAK of their obligations, which Defendants have already done, *see* Decl. of Daniel S. Ruzumna ("Ruzumna Decl.") (ECF No. 320-2)). Defendants have deflected all inquiries about RAK's purported privilege to RAK, claiming that RAK has required them to withhold documents; they cannot now object when the Special Master calls upon RAK to enter an appearance to assert this privilege.

## II. Defendants May Not Assert RAK's Privilege.[1]

Defendants may not assert RAK's privilege because only the privilege holder has standing to assert privilege. *See Gibbs v. Stinson*, No. 18-cv-676, 2021 WL 4853575, *8 (E.D. Va. Oct. 17, 2021). If the privilege holder is not a party to the litigation, the holder must formally intervene to assert privilege or risk a waiver. *See id.* (ordering production of all documents over which a

---

[1] Defendants argue that they are competent to invoke work product privilege over documents they have created. However, Defendants did not invoke their own work product privilege on the portion of the privilege log asserting Defendants' (as opposed to RAK's) privilege in their August 22 privilege log – only RAK's work product privilege. *See* ECF No. 320-2, Ruzumna Decl., Ex. 1D. Defendants cannot have it both ways – they cannot withhold documents exclusively on the basis of RAK's privileges for six months and now attempt to invoke their own work product privilege after the Special Master's determination that they are not authorized to invoke on RAK's behalf.

6

third party improperly invoked privilege unless the purported client intervened within seven days). RAK has had knowledge of this case and communicated with Defendants regarding its privilege assertions, but to date has refused to appear.

Defendants do not have proper authority to assert RAK's privilege, and even if they did, RAK's conclusory and blanket instruction is not sufficient to assert any privilege. Defendants' purported authority is primarily based on two vague and conclusory letters from RAK counsel dated February 13, 2023, and July 19, 2023. These letters contain no specific basis for privilege claims over the documents Plaintiff seeks, do not describe the scope of any purportedly privileged relationship, and merely state that RAK asserts and does not waive "all applicable privileges or protections." *See* ECF No. 320-2 (Ruzumna Decl., Exs. 1A and 1B). Defendants argue that the letters are necessarily general because they were written before Defendants had determined what documents were responsive to Plaintiff's discovery requests. *See* Defs.' Objections at 10-12. But that is precisely why the letters are deficient. They do not give any "guidance to Defendants as to which specific documents are considered by RAK to be privileged" and "make[] it difficult for the Plaintiff, and as necessary, the Court, to challenge any privilege assertions." Report & Decision at 16-17.

As the Special Master appropriately concluded, the letters "contain no more than conclusory assertions of privilege, with no guidance to Defendants

7

as to which specific documents are considered by RAK to be privileged." *Id.* at 16. Judge Webster also made clear in his July 25, 2023, Order that parties asserting privilege must "state their specific basis," cannot rely on "conclusory assertions," and should "produce a privilege log identifying any withheld documents and the basis for any appropriate privilege designation." *See* ECF No. 248 at 17-18. It is particularly important for RAK to appear and assert privilege in this case. RAK has said that it "may have been the victims of dishonest and unscrupulous former third-party advisors who have taken steps to advance their own interests for their own gains." *See* Ex. 5. The Court, Special Master, and Plaintiff cannot rely upon the representations of RAK's third-party advisors to assert privilege.

To date, Defendants have yet to provide any evidence of specific instruction or a description of the scope of the purportedly privileged work conducted by Defendants. At the eleventh hour, as a last-ditch effort to assert privilege over the thousands of documents withheld or redacted based on RAK's purported privilege, Defendants have now provided a sworn declaration from Daniel S. Ruzumna, partner at Patterson Belknap Webb & Tyler LLP, and counsel to RAK. *See* Defs.' Objs., Ex. 1.[2] By filing this declaration, RAK has

---

[2] The Ruzumna Declaration and the related entry on Defendants' exhibit index are incorrectly dated February 13, 2023. The declaration was filed on February 13, 2024, and includes references to the Special Master's February 6, 2024, Report and Decision.

injected itself into this case, and should now formally appear and face inquiry regarding the scope and confines of the asserted privilege. Even this new declaration, which was held back from Plaintiff and the Special Master, does not properly explain the basis for RAK's claim of privilege. The declarant seemingly has no first-hand knowledge of the engagement of Defendants; rather, his description of Defendants' engagement is "[b]ased on documents that I have reviewed" (none of which were included with the declaration). In addition, the declaration states that, "Services provided by Defendants included asset tracing, background checks, and fraud examination." *Id.* ¶ 6. But the declaration does not describe the subjects of that purported work, such as the assets being traced, the individuals about whom background checks were conducted, or the scope of the purported fraud examination, that would allow Plaintiff, the Special Master, or the Court to determine whether withheld documents were within the scope of that work.

Similarly vague and conclusory assertions of privilege failed in *Gibbs*. In that case, the former agents of the privilege holder claimed to have received instructions to invoke privilege that the court expressly found insufficient. The instructions there sound like those here: a third-party privilege-holder advised its former agents "that it 'is not waiving its attorney-client privilege'" and "instructed them not 'to do something different than what [the company] wants to do with respect to its privilege.'" *Gibbs*, 2021 WL 4853575, *8. The *Gibbs*

9

court held that the defendants were "'not authorized to assert [the company's] privilege merely because [the company] has expressed a desire to preserve the confidentiality of communications at issue.'" *Id.* (citation omitted).

Defendants claim that their August 22, 2023, privilege log is sufficient to invoke privilege on RAK's behalf. However, the language contained in the privilege log is also conclusory and vague, and fails to state the privilege basis with specificity – stating repeatedly in rote fashion:

> RAK has asserted and continues to assert attorney-client and litigation privileges and work product protection over all documents reflecting attorney-client communications with its counsel, all documents reflecting Dechert's or other RAK attorneys' communications with Vital Management personnel for the purpose of assisting in the provision of legal advice to RAK, and all work product prepared by Dechert, other RAK attorneys or by Vital Management at counsel's direction in anticipation of litigation.

Defs.' Objs., Ex. 1D (Excerpt of VMS Revised Privilege Log (Aug. 22, 2023)). This language does not state any basis for the authority or the scope of any asserted privilege; it merely asserts that the privilege exists.

Without a basis, Defendants also assert that the Special Master "failed to appreciate" certain evidence regarding RAK's oral direction of Defendants to assert privilege over the withheld and redacted documents. *See* Def's Objs. at 9-10; *see also id.* at 12 (stating that the Special Master "overlooked critical facts" and citing to the Ruzumna Declaration). This criticism is unfounded,

particularly since Defendants failed to present the Ruzumna Declaration to the Special Master. Regardless, the RAK-Specific Privilege Log was attached to Plaintiff's motion, and thus before the Special Master, and Defendants' counsel made representations to the Special Master at oral argument that RAK was involved in the privilege review. *See* Defs.' Objs. at 14. Defendants also asserted RAK's involvement in the document review in their supplemental submission to the Special Master regarding caselaw. *See* Ex. 6 at 7 (Defs.' Suppl. to Opp'n to Mot. to Compel). That the Special Master was not compelled by this evidence does not suggest she did not consider it. None of this information describes the scope of any purported privilege that RAK wishes to assert.

For months now, Defendants and RAK have refused to provide information regarding the scope of any purported privileged relationships and have sought to avoid any official involvement by RAK in these proceedings to assert that privilege. Only after the Special Master's Order, which outlined a procedure that RAK must follow to assert any privilege, RAK belatedly tried to correct its deficiencies with a declaration. Even that declaration falls short of what is required to assert privilege.

11

## III. Defendants' Request for a Stay Is Outside the Scope of the Special Master Agreement.

Defendants ask the Court to "stay compliance with the Special Master's Report insofar as it directs RAK to 'appea[r] before the Court to assert any privileges.'" Defs.' Objs. at 23.[3]

The Joint Agreement reflects the parties' agreement that "stays are disfavored and the presumption during any appeal is that the Special Master's ruling will not be stayed and discovery will be produced in accordance with the Special Master's ruling." Joint Agreement at 3. The Joint Agreement allows for the granting of stays "in limited circumstances where enforcement of the Special Master's order will result in substantial prejudice to a Party." *Id.*

Defendants do not identify any prejudice, much less a "substantial prejudice" that they would experience if the Special Master's order were enforced. *See* Defs.' Objs. at 23. This is because there is no prejudice to Defendants. The relevant portion of the Special Master decision concerns a privilege purportedly held by RAK. The decision merely provides notice to RAK of the opportunity to appear and assert any privileges. *See* Report & Decision at 17. This portion of the decision does not require Defendants to waive any privileges or even produce any documents at this time – at most, it requires

---

[3] We note again that RAK belatedly in effect has already tacitly appeared via the Ruzumna Declaration. Having opened the door to participation in this matter, Mr. Ruzumna must now be subject to further inquiry.

Defendants to advise the RAK parties of the deadline by which they can appear to assert any applicable privilege. *See id.* Defendants have no standing to seek a stay of this deadline on behalf of the RAK parties, and regardless, there is no prejudice in requiring RAK to appear to assert any applicable privileges.

Rather than assert any prejudice to justify their request for a stay, Defendants assert that "[a] brief and partial stay of the relevant portion of Report . . . will not prejudice Plaintiff." Defs.' Objs. at 23. Under the Joint Agreement, this is not the appropriate standard for issuing a stay. Further, it is inaccurate. Plaintiff is prejudiced by Defendants' continued efforts to delay Plaintiff's ability to litigate the privilege designations of the thousands of documents on Defendants' privilege log. Plaintiff has attempted to resolve this and other discovery issues since the September 29, 2023, status conference ordered by the Court. However, Defendants have not produced a single document since that Court-ordered conference. Plaintiff has been required to move forward with depositions and preparation for trial without access to a still-to-be-determined number of relevant documents improperly withheld by Defendants.

## IV. Plaintiff is Entitled to Costs if Plaintiff Prevails.

The Special Master was appointed in this case after the Court recognized the need to "move this case to resolution through trial in a just, speedy, and inexpensive manner" and avoid further "delaying and obstructing" of the

13

process. ECF No. 282, Order at 4. Defendants' Objections seek to disrupt the purpose of the Special Master. The parties negotiated and agreed upon the process by which proceedings before the Special Master would be conducted – including the streamlining of motions to 700 words and agreeing that parties would not be entitled to a hearing on any issue. Joint Agreement at 2. Defendants filed their objections claiming that the Special Master "overlook[ed] key evidence," which Defendants blame on the narrow focus of the "700 permissible words" of their opposition motion. However, Defendants could have attached any declarations to their opposition filed with the Special Master. Additionally, Defendants not only had the opportunity to be heard during a three-hour oral argument, but also submitted a more than 1,400-word supplement, after the Special Master provided an additional opportunity for the parties to submit caselaw to facilitate her reasoned decision. Instead, they waited until this appeal to file a declaration from RAK, and even that declaration does not sufficiently assert privilege. If the Court denies Defendants' appeal, it should award Plaintiff his associated costs as envisioned by both this Court and the parties' Joint Agreement. *Id.* at 3; ECF No. 304, Sept. 29, 2023 Tr. 10:14-16.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Objections to or Appeal of Special Master's Report and Decision #1, and deny Defendants' stay request. Further, should the Court deny Defendants' Objections or Appeal, Plaintiff requests that, pursuant to the Joint Agreement, the Court order Defendants to pay reasonable costs and attorneys' fees associated with their appeal.

This, the 20th day of February, 2024.

Respectfully submitted,

*/s/ Ripley Rand*
Ripley Rand (N.C. State Bar No. 22275)
Christopher W. Jones (N.C. State Bar No. 27625)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel: (919) 755-2100
Fax: (919) 755-2150
Email:　　ripley.rand@wbd-us.com
　　　　　chris.jones@wbd-us.com

Kirby D. Behre (*pro hac vice* admission)
Tim O'Toole (*pro hac vice* admission)
Lauren Briggerman (*pro hac vice* admission)
Ian Herbert (*pro hac vice* admission)
Calvin Lee (*pro hac vice* admission)
Cody Marden (*pro hac vice* admission)
MILLER & CHEVALIER CHARTERED
900 Sixteenth Street, NW
Washington, D.C. 20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email:    kbehre@milchev.com
          totoole@milchev.com
          lbriggerman@miolchev.com
          iherbert@milchev.com
          clee@milchev.com
          cmarden@milchev.com

*Attorneys for Plaintiff Farhad Azima*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February, 2024, I caused true and correct copies of the foregoing to be served via the CM/ECF System on the following:

Brandon S. Neuman
Jeffrey M. Kelly
John E. Branch, III
Nelson Mullins Riley & Scarborough LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Email: brandon.neuman@nelsonmullins.com
Email: jeff.kelly@nelsonmullins.com
Email: john.branch@nelsonmullins.com

Samuel Rosenthal
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Email: sam.rosenthal@nelsonmullins.com

*Counsel for Defendants Nicholas Del Rosso and Vital Management Services, Inc.*

/s/ Ripley Rand
Ripley Rand (N.C. State Bar No. 22275)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel: (919) 755-2100
Fax: (919) 755-2150
Email: ripley.rand@wbd-us.com

*Attorneys for Plaintiff Farhad Azima*