# Exhibit 2

**Miller & Chevalier**

**Lauren Briggerman**
Member
(202) 626-5966
lbriggerman@milchev.com

September 28, 2023

<u>Via Email</u>

Brandon S. Neuman
Samuel Rosenthal
John Branch
Jeffrey Kelly
Matthew Gorga
Nathaniel Pencook
Nelson Mullins Riley & Scarborough LLP
301 Hillsborough Street
Suite 1400
Raleigh, NC 27603

   Re: *Azima v. Del Rosso*, 1:20-cv-954 (M.D.N.C.): Outstanding Discovery Issues

Dear Counsel:

  We write again regarding the pending motions related to Magistrate Judge Webster's July 25 Order, which the Court has asked that we attempt to resolve without further Court intervention. Below we summarize the positions of the parties in advance of the Court's September 29 hearing.

**I.** **<u>Defendants' Motion to Clarify the Court's July 25, 2023 Order (ECF 256)/Plaintiff's Motion to Show Cause (ECF 276)</u>**

  Defendants' Motion to Clarify asks the Court to reconsider two issues ruled upon in the July 25 Order: (1) the scope of Defendants' document production obligations and (2) the continuation of Mr. Del Rosso's deposition. In addition, your Motion seeks to exclude from your document collection and production obligations any information contained in Mr. Del Rosso's laptop. Plaintiff's Motion to Show Cause seeks to compel Defendants to comply with the Court's July 25 Order and seeks sanctions for Defendants' non-compliance. Unfortunately, Defendants still have not complied with the Court's July 25 Order, and accordingly, Plaintiff is not in a position to withdraw his motion at this time.

Miller & Chevalier Chartered . 900 16th Street NW . Black Lives Matter Plaza . Washington, DC 20006
**T** 202.626.5800 . millerchevalier.com

Case 1:20-cv-00954-WO-JLW Document 322-2 Filed 02/20/24 Page 2 of 6

1. <u>Defendants' Document Production Obligations</u>

The Court's July 25 Order followed multiple discovery motions that Plaintiffs were forced to file, ruled on and rejected each of your objections regarding the scope of our document requests, and held that all of Plaintiff's "discovery requests are relevant to the claims and defenses in this matter." ECF 248 at 14. In particular, the Court recognized the broad scope of discovery and ruled that Defendants' objection merely disputing Plaintiff's allegations "touches on the merits of Plaintiff's claim and are thus inappropriate to entertain in a discovery dispute." *Id.* The Court ordered production of <u>all</u> responsive documents by August 8. *Id.* at 25.

Plaintiff's Complaint alleges claims of misappropriation of trade secrets and conspiracy. Plaintiff alleges that in early 2015, co-conspirators Neil Gerrard, Stuart Page, James Buchanan, and others agreed to attack Plaintiff Azima. ECF 1, Compl. ¶ 14. Dechert, through its partner, Gerrard, hired Defendants to assist in the hacking conspiracy. *Id.* ¶ 15. Defendants then hired a hack-for-hire-firm, CyberRoot, to hack Plaintiff's systems. *Id.* at ¶16. This allowed Defendants and other hacking conspirators to obtain numerous protected trade secrets. They published this information online in at least 2016, 2018, and 2019, *id.* ¶¶ 19-26, causing Plaintiff damages. *Id.* ¶ 53.

Plaintiff's First Set of Requests for Production (First RFPs), served in November 2022, seek documents plainly relevant to Plaintiff's claims. Plaintiff's First RFPs seek information regarding payments to or from the individuals and entities involved in the conspiracy to hack Plaintiff, including CyberRoot, Dechert and Dechert partner Neil Gerrard, and other co-conspirators (Nos. 1-2); reports, memoranda, summaries, notes, or outlines related to Plaintiff (No. 3); Defendants' agreements with the hacking co-conspirators (No. 4); calendar records reflecting meetings with the hacking co-conspirators (Nos. 5); documents that belong to Plaintiff (No. 6); documents reflecting any efforts to cover up the misconduct (No. 7); Defendants' travel records related to meetings with the hacking conspirators (No. 8); account statements reflecting travel, expenses, or work done for the hacking conspirators (No. 9); and documents regarding a specific meeting between Defendant Del Rosso and Amir Handjani, one of the hacking conspirators (No. 10).[1]

Defendants have admitted the relevance of CyberRoot and other hacking co-conspirators to Plaintiff's claims. Defendants admit that Defendant Vital Management Services (VMS) "engaged CyberRoot to provide information technology services related to cyber security, online reputation management, and digital forensics." ECF No. 86, Answer at ¶ 29. Defendants also admitted that VMS paid CyberRoot over $1 million over multiple years, *id.*, including in August and September 2016, *id.* ¶ 32. When Defendants proposed the scope of discovery to this Court in its Rule 26(f) Report, Defendants argued that "[t]he alleged conspiracy in this matter was between Defendants and CyberRoot Risk Advisory Pte. Ltd." ECF No. 90 at 2. Furthermore, CyberRoot was one of only two witnesses (aside from the parties) that Defendants identified in their initial disclosures as having information relevant to Plaintiff's claims. Dec. 21, 2022 Defs.' Initial Disclosures at 2.

---

[1] Plaintiff's First RFPs also requested documents relevant to Defendants' affirmative defenses and initial disclosures (No. 11-15), which the Court also ruled relevant. ECF 248 at 14.

Mr. Del Rosso has also admitted that he possesses documents and data that, on their face, are responsive to Plaintiff's First RFPs. During his deposition, Mr. Del Rosso admitted that he has bank records, N. Del Rosso Dep. Tr. 104:8-10, 235:20-24; agreements related to Dechert, Tr. 104:11-15; travel records and notes related to meetings with Dechert, Tr. at 151:6-9, 241:19-242:13; copies of reports prepared for Dechert, Tr. 314:25-315:1; receipts for invoices expensed to Dechert, Tr. at 239:19-240:3; appointments and calendar entries for the relevant time period, Tr. at 237:10-238:1; files for "Project Nariman," work Mr. Del Rosso admits he performed for Dechert related to Plaintiff, Tr. at 242:21-243:5; emails related to the retention of co-conspirator Northern Technologies, Inc. (NTI), Tr. at 114:22-115:4; and data related to co-conspirator Jamie Buchanan, Tr. at 158:6-11. He also admits that he possesses numerous documents sources, including multiple email addresses, bankers' boxes full of hard copy documents, and multiple electronic devices. Tr. at 181:14-182:2, 182:10-22, 183:11-18, 186:13-15, 188:14-16, 188:19-20, 190:6-10, 235:3-14, Tr. at 244:16-24.

Notwithstanding Defendants' admissions, Defendants have failed to comply with the Court's July 25 Order and produce <u>all</u> documents responsive to Plaintiff's First RFPs. Between the commencement of discovery in November 2022 and the Court-ordered close of discovery, Defendants had only produced a handful of custodial documents. Since that deadline, Defendants have only made two small productions consisting of approximately 1,300 new documents. By contrast, Plaintiff has produced approximately 10,000 documents both voluntarily and in response to Defendants' requests for documents, as well as approximately 4,000 documents received through third-party subpoenas. Defendants have noticeably failed to produce: any communications with key co-conspirators, such as CyberRoot; any calendar entries for meetings with co-conspirators; and any bank records reflecting payments to co-conspirators; any scanned, hard copy files; any documents from his laptop; any of Buchanan's data in their possession; the file for Project Nariman; invoices for the vast majority of the hacking co-conspirators.

To the extent that Defendants claim privilege over responsive documents in its privilege log, that privilege has been waived.[2] First, the rules of privilege are clear – only the privilege holder, the client, has standing to assert the privilege. *See Gibbs v. Stinson*, No. 18cv676, 2021 U.S. Dist. LEXIS 200198, at*21 (E.D. Va. Oct. 17, 2021). If the client is not a party to the litigation, the client must formally seek to intervene in the matter under Federal Rule of Civil Procedure 24 in order to properly assert privilege or otherwise risk a privilege waiver. *See id.* at 22-23 (ordering production of all documents over which a third party improperly invoked privilege unless the purported client intervened within seven days). RAK, the ultimate client on behalf of whom Defendants seek to invoke privilege, has had knowledge of this case and even communicated with your firm regarding the privilege issue, but failed to effectively assert privilege. Furthermore, Mr. Del Rosso has made numerous witness statements in other proceedings related to Plaintiff's claims here, and as such, those statements constitute subject matter privilege waivers.

Defendants' Motion for Clarification seeks to relitigate the Court's ruling and walk back Defendants' own admissions that Plaintiff's discovery requests are relevant to Plaintiff's claims.

---

[2] Plaintiff reserves all rights to challenge Defendants' privilege designations in their privilege log.

Even during the meet and confer process, your position has been, and continues to be, that you will only produce documents that relate to the posting of Mr. Azima's trade secrets.[3] You remain unwilling to even search for documents related to the co-conspirators identified in Plaintiff's First RFPs, including CyberRoot. Following months of unnecessary and forced motion practice in which you took similar positions, the Court predictably rejected this narrow view of discovery in its July 25 Order. ECF 248 at 14 (finding that Plaintiff's discovery requests were "relevant to the claims and defenses in this matter."). Accordingly, we are at an impasse regarding Defendants' refusal to comply with the Court's July 25 Order.

2. Mr. Del Rosso's Laptop

In your Motion to Clarify, you raised for the first time the idea of excluding from your document production any data contained on Mr. Del Rosso's laptop. You have maintained that position during our meet and confer discussions. As we have emphasized, it is a basic tenet of discovery that a party's electronic devices and data storage media are fair grounds for discovery, and the position you take that Defendants should be exempt from that basic duty simply because the laptop is currently in the U.K. is not acceptable to us. Defendants' counsel has repeatedly declined to make any commitment to search Mr. Del Rosso's laptop for documents responsive in this case or to withdraw Defendants' Motion for Clarification seeking to prevent review of the laptop. If you cannot confirm that you will commit to searching Mr. Del Rosso's laptop for documents responsive to the RFPs in this matter, we are at an impasse. Accordingly, our suggestion to the Court will be that since we have a Protective Order in this case (on which Defendants have heavily relied), Defendants should have the laptop forensically copied and search the forensic copy for responsive documents in accordance with the Court's July 25 Order.

3. Mr. Del Rosso's Deposition

Your Motion to Clarify seeks to vacate the Court's July 25 Order compelling Mr. Del Rosso to continue his deposition and answer all non-privileged questions substantively. ECF 248 at 20-21, 24. The Court found Mr. Del Rosso's relevance and privilege arguments unpersuasive and granted in relevant part Plaintiff's Motion to Compel further deposition testimony of Mr. Del Rosso. *Id.* During our meet and confer discussions, we have offered to limit Mr. Del Rosso's deposition to three hours with the understanding that he would answer all non-privileged questions substantively, and make any privilege objections with specificity, as the Court ordered. Unfortunately, you are unwilling to agree to this proposal.

---

[3] In your letter of September 25, you claim that the dispute has been limited to just three requests. That is not our understanding of the posture. We understand your position to be that you would not produce any documents responsive to any of the RFPs unless the documents are, in your mind, related to the posting of Mr. Azima's trade secrets. That appears to be confirmed by your production, which does not include the documents sought, as described above. If you are in fact producing all documents in Requests Nos. 4-15, please confirm that, communicate the search parameters that have been performed, and produce the outstanding documents immediately.

## II. Defendants' Motion to Compel (ECF 269)

Regarding your Motion to Compel relating to trade secrets, we supplemented Plaintiff's responses to Defendants' interrogatories on September 13 and also identified more than 8,000 trade secrets-related documents that we have produced. *See* ECF 281 at 3. In addition, we produced additional documents on September 21, including additional documents in response to Defendants' Third Set of Requests for Production, even though those requests are not subject to a pending Motion to Compel. Accordingly, we have satisfied our obligations and ask that you withdraw your Motion to Compel.

\*        \*        \*

Finally, on September 26, you contacted us by email for the first time regarding a joint outreach to Judge Gale to mediate these issues. A few hours later, you sent us a letter that takes the position that a special master should decide these issues. We believe that a magistrate judge would be most effective to assist the parties in connection with the pending motions—and most notably regarding adherence to the Court's order. Though a special master may have been helpful earlier in discovery to avoid the unnecessary and lengthy motion practice this year, our view is that appointment of a special master now and in connection with the pending motions would be inefficient and is unnecessary. That said, insofar as numerous privilege disputes (numbering in at least the thousands) are on the horizon, we concur that it would be helpful and most efficient to the Court to migrate those issues off of the docket, and we are amenable to appointment of a special master for the discrete purpose of assisting the parties in deciding disputed privilege assertions. However, we can consent only if we can also achieve certainty that appointment of a special master can be effective to achieve efficiency and ensure against the special master merely becoming an advisor only to have the issues return to the Court's docket and result in additional motion practice and delay. Accordingly, we will consider consenting to a special master appointment on disputed privilege issues if both parties agree that the decision made by the special master will be regarded as final and not subject to review or appeal. In our view, anything less will fail to achieve the end that the Court would expect.

Sincerely,

Lauren E. Briggerman