UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-CV-954-WO-JLW

FARHAD AZIMA,

    Plaintiff,

v.

NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,

    Defendants.

**SPECIAL DISCOVERY MASTER'S REPORT AND DECISION #8**

Pursuant to the Court's Order of December 29, 2023 [Doc. 313] and the provisions of Rule 53 of the Federal Rules of Civil Procedure, Alice C. Richey, as the appointed Special Master, submits this Special Discovery Master's Report and Decision #8 (the "Report").

This Report addresses Defendants' Motion for Relief Based on Plaintiff's Failure to Comply with Special Master Decision Nos. 1 and 6 (the "Motion").

## Arguments

Defendants assert that Plaintiff has failed to "fully and finally" identify the trade secrets alleged to have been misappropriated by Defendants, despite his obligation to do so and two earlier decisions by the Special Master.[1] Specifically, Defendants state that at the Deposition of Ray Adams ("Adams") on May 9, 2024, Adams was shown two binders "represented [by Plaintiff] to contain the [Plaintiff's] trade secrets" (the "Deposition Binders"). Defendants state that most of the documents in the Deposition Binders contained Bates numbers different from those in Plaintiff's identified trade secrets (the "Identified

---

[1] Plaintiff's identification of trade secrets has been the subject of two earlier motions by Defendants. The first was Defendants' Motion to Compel Plaintiff to Identify His Trade Secrets which motion was resolved in the Special Discovery Master's Report and Decision #1 ("Report #1"). The second was Defendants' Motion for Sanctions which was resolved in the Special Discovery Master's Report and Decision #6 ("Report #6").

1

Trade Secrets"). Additionally, Defendants provide several documents from the Deposition Binders which Defendants state "differ materially" from the Identified Trade Secrets. Defendants also note that none of the Deposition Binders' documents contain the highlighting called for in Report #1. Defendants assert that because Adams testified that the documents in the Deposition Binders were Plaintiff's trade secrets, rather than referring to the Identified Trade Secrets, and because the Deposition Binders' documents are in some instances materially different from the Identified Trade Secrets, Plaintiff has produced new trade secrets documents. Defendants seek an order that Plaintiff be precluded from introducing "testimony in violation of [Report #1 and Report #6], or alternatively, submit to additional questioning about those exhibits."

Plaintiff responds that Adams "identified 38 trade secrets [that were] in Defendants' possession," and that Plaintiff is entitled to use Defendants' documents to prove his claims. As for the differences in the Deposition Binders' documents and the Identified Trade Secrets, Plaintiff argues those differences are either irrelevant, trivial, or nonexistent. Plaintiff states that there "are numerous versions" of each Identified Trade Secret in Defendants' documents, in documents downloaded from WeTransfer, and in documents sent by Defendants to the FBI. But while the version may be different, "the trade secret is the same" and Plaintiff must show only that Defendants' "misappropriated the same confidential information" not that they "misappropriated the specific document identified in the [Identified Trade Secrets]."

## Report and Decision of Special Master

Plaintiff represents that the Deposition Binders contain the same trade secrets as the Identified Trade Secrets, but that the documents containing those trade secrets came from Defendants' production rather than Plaintiff's production. Indeed, the Bates numbers on the documents submitted by Defendants to support the Motion all contain the Defendants'

2

unique Bates prefix.[2] Part of Plaintiff's burden is to show that Defendants' misappropriated the claimed trade secrets. Using Defendants' documents to show possession of Plaintiff's trade secrets is permissible and expected. From the excerpts of Adams' testimony provided to the Special Master, it appears Plaintiff was using this witness to prove several elements of his claim, including that a document contained a trade secret, that it was in Defendants' possession, that it was valuable to the Plaintiff, and that it was kept confidential. Other than as to the element of Defendants' possession of a trade secret, Plaintiff could certainly have used its Identified Trade Secrets (containing Plaintiff's unique Bates prefix) in the Adams Deposition. But the Plaintiff's choice to use Defendants' documents is a deposition strategy choice, not a re-identification of his trade secrets. Plaintiff is correct that a claimed trade secret may appear in several versions, including the versions produced by Defendants. Plaintiff is also correct that his burden is to show that Defendants misappropriated a trade secret, not that Defendants misappropriated the version of that trade secret maintained by Plaintiff.

Defendants are concerned that several of the Deposition Binder documents have differences from the Identified Trade Secrets. These differences are shown in Defendants' Exhibits C(1-2), D(1-2), E(1-2), F(1-2), and G(1-2), all documents apparently produced at Tab 32 of the Deposition Binder, and which correlate to Identified Trade Secret #32.[3]

---

[2] Defendants refer to Tab 32 as the "newly produced Trade Secret 32." Plaintiff states that the documents at Tab 32 are the same documents as those in Identified Trade Secret #32 using the same file names. Plaintiff attached to its response to the Motion a "complete version of Tab 32, including a native version of the attached excel file." The differences noted by Defendants do not appear in the native excel files.

[3] Defendants also note that the Deposition Binder documents do not contain the highlighting required by Report #1 and Report #6. The requirement of highlighting was solely in connection with the Plaintiff's identification of trade secrets in his discovery responses; where a trade secret constituted only a portion of a document, Plaintiff was to highlight that portion. This highlighting would of course not be present in documents from Defendants' production

3

Exhibits C-1 and C-2: Exhibit C1 is a document from Defendants' production which is titled "Table of Content (*sic*)." Other than some brief information below the title, there is no content to this document.[4] Exhibit C-2 is a document from Plaintiff's production titled, "Table of Content (*sic*)." Unlike C-1, this document does contain an actual table of contents. The fact that Defendant's "Table of Content" has no meaningful information while Plaintiff's "Table of Content" does, is not an indication that Plaintiff has identified a new trade secret. First, it constrains reason that a document with the information on C-1 is a trade secret. If Adams testified that C-1 is a trade secret, Defendants had the opportunity to address that with him at his disposition, can address it in a Motion in Limine, or can address it through trial testimony; it does not warrant a further deposition. Second, the substantive information contained in C-2 (and all of the identified exhibits in this Motion) was produced as part of the Plaintiff's Identified Trade Secrets, and Defendants had access to that information at all times prior to the deposition and presumably during it, as well as access to its own documents, including C-1. But the differences between the two documents, and the testimony regarding C-1, is an evidentiary issue, not a discovery issue, and does not warrant additional deposition time with this witness.

Exhibits D-1 and D-2: Exhibit D-1 is a document from Plaintiff's production, while D-2 is from Defendants' production. Both are portions of a spreadsheet included in Plaintiff's Identified Trade Secrets as a native file (the "Spreadsheet"). The documents are nearly identical, except for five spreadsheet lines at the end of D-1, starting with the word "Statistics." These five lines are not included in D-2. If Adams testified that D-2 is a trade

---

and the lack of highlighting in the Deposition Binders' documents does not warrant the relief sought in the Motion.

[4] Below the title in C-1 is listed: [TOC\O "1-3"]. "TOC" is the identifier for the table of contents field in Microsoft Word and the other information gives Word instructions about headings.

secret, the fact that it does not include those five lines does not create a new trade secret. It might mean Plaintiff will need witness testimony other than that of Adams to prove the entirety of that portion of Identified Trade Secret #32. But this is not a discovery issue and does not warrant additional deposition time with this witness.

Exhibits E-1 and E-2: These exhibits are similar to Exhibits D-1 and D-2, in that there is information on the Plaintiff's document (E-1) that is not present on the Defendants' document (E-2). Both exhibits appear to be portions of the Spreadsheet, with five spreadsheet lines on E-1 that are not on E-2. As with Exhibits C-1 and C-2, and D-1 and D-2, the absence of certain information on the Defendants' produced version of part of the Spreadsheet is not a discovery issue. The entirety of the Spreadsheet is in the native file, which Plaintiff suggests was provided to Defendants in the Identified Trade Secrets.[5]

Exhibits F-1 and F-2: These exhibits are a bit more complicated to sort out, but with a similar result. F-1 is a document from Defendants' production and is a portion of the Spreadsheet, while F-2 is a document from Plaintiff's production and is both a portion of F-1, while also containing additional information from the Spreadsheet not present on F-1. The portions do appear to contain some of the alleged trade secrets, but not all. However, that does not mean they are "new" trade secrets; it simply means that the Defendants' document contains less of the Spreadsheet information than the Plaintiff's document.

Exhibits G-1 and G-2: These exhibits are emails with similarities and differences. G-1 is a cover email from Plaintiff's production dated September 18, 2011, attaching a financial forecast. G-2, from Defendants' production, contains the same cover email, but also includes two subsequent emails which appear to respond to the cover email. Plaintiff states that the underlying financial forecast is the same, meaning that "the trade secret is the same." G-1

---

[5] If Defendants did not receive the native file, they should advise the Special Master.

was included in Plaintiff's Identified Trade Secrets, as was the attachment. If Adams testified that the responding emails were also trade secrets, that is an issue to address through a motion in limine or otherwise at trial, and not a discovery issue warranting additional time with Adams.

The use by Plaintiff of Defendants' documents in the Adams' deposition, and the differences between them, does not warrant the relief sought by Defendants in the Motion.

This, the 31st day of May, 2024.

_____
Alice C. Richey
Special Master