IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S APPEAL OF SPECIAL MASTER'S REPORT AND DECISION NO. 7** |

Defendants Nicholas del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS"), (collectively "Defendants"), hereby respond to Plaintiff's Appeal of Special Master's Report and Decision No. 7 ("Decision 7") (D.E. 361). Specifically, the Special Master's Report and Decision No. 1 is not relevant to Decision 7, Plaintiff's challenge to a lack of evidentiary hearing should be rejected as meritless, and the Special Master correctly found Plaintiff failed to make a prima facie showing that the crime-fraud exception applies and therefore, the Decision No. 7 was correct and should be affirmed.

## BACKGROUND

On December 29, 2023, the Court granted the Parties' Consent Motion for Appointment of Special Discovery Master. (D.E. 313). The terms of the Order were jointly proposed by the parties, including that "[t]he Parties are

1

not entitled to a hearing before the special master on any issue," but the Special Master has discretion to "call for a short telephone conference or video conference" if she "deems it necessary to the resolution of the matter." (D.E. 312-1, p. 2) (*emphasis added*). The Court Order appointing the Special Master adopted the Parties' joint agreement. (*See* D.E. 313, p. 2).

On February 7, 2024, Plaintiff filed a motion asking the Special Master to compel the disclosure of certain documents pursuant to the crime-fraud exception from Defendants regarding communication with their attorneys, Shanahan Law Group and Christopher Swecker ("Swecker"), and communication with Dechert LLP ("Dechert"). (D.E. 361-3). Defendants submitted a response to Plaintiff's Motion (*see* Exhibit 1), which included a comprehensive Declaration from Defendant Del Rosso. Swecker and Dechert submitted responses as well, and on May 29, 2024, the Special Master correctly issued her Decision No. 7 denying Plaintiff's Motion and holding that Plaintiff failed to meet his burden of proof for the crime-fraud exception to apply. (D.E. 355, pp. 23-34, 39).

## STANDARD OF REVIEW

The Court reviews de novo all objections to findings of fact or conclusions of law made by the Special Master. (D.E. 313, Appointment Order, ¶14). In the event that a party appeals a decision of the Special Master and loses that appeal, the Joint Agreement notes that the Court may order the appealing

2

party to pay reasonable costs and attorneys' fees associated with the appeal. (D.E. 312-1, Joint Agreement, p. 3). The Court has also indicated that it would consider awarding attorneys' fees to the prevailing party. (D.E. 304, Sept. 29, 2023, Tr. 10:14-16).

## ARGUMENT

### I. THE SPECIAL MASTER'S REPORT AND DECISION NO. 1 IS NOT RELEVANT TO THE SPECIAL MASTER'S REPORT AND DECISION NO. 7.

Plaintiff begins his appeal with a mischaracterization of the Special Master's Report and Decision No. 1 ("Decision 1"), and then attempts to use that mischaracterization to claim that the Special Master erred with her denials of Plaintiff's various motions to compel in Decision 7. Specifically, Plaintiff argues that, in Decision 1, the Special Master held that "only RAK, and not third parties, could assert RAK's purported privilege." (D.E. 361, p. 4.) He then proceeds to argue that the Special Master "fail[ed] to address whether the privileges underlying the documents at issue in this Ruling [Decision 7] belong to RAK, in which case any such privilege has been waived." *Id.* at 7. That is simply not correct.

Initially, Decision 1 dealt solely with Defendants, not third parties, and was premised on the Special Master's mistaken finding that RAK had not authorized Defendants to assert privilege on its behalf. The Special Master made no findings with respect to the crime-fraud exception in Decision 1, and

3

that Decision expressly has no application to Dechert, Christopher Swecker, or any other third party. The Special Master made clear that "[t]his report does not address" Plaintiff's motions to compel Dechert or Swecker to produce documents based on alleged waiver. (*See* D.E. 316, p. 17 n.7).

Further, Defendants have objected to and appealed Decision 1 to the Court, explaining that the Special Master failed to appreciate that RAK had properly authorized Defendants to assert privilege on its behalf and did so on a document-by-document basis. [1] (*See* D.E. 320). Decision 1 has no relevance to the issues addressed in Decision 7, and Defendants respectfully submit that Decision 1 should be overturned.

## II. PLAINTIFF'S CHALLENGE TO THE PROCESSES HE PROPOSED AND AGREED TO SHOULD BE REJECTED.

Plaintiff asserts that Decision 7 was issued "without adequate opportunity to be heard or analysis to support its decision," and that such "lack of due process . . . invalidates" the Special Master's carefully reasoned decision. (D.E. 361, pp. 12-14). Specifically, Plaintiff argues that the Special Master should have held an evidentiary hearing, requested supplemental briefing, or requested oral argument. *See id.*

---

[1] Defendants requested a stay of Decision 1's order insofar as it found Defendants lacked authorization to assert RAK's privilege and directed RAK to appear before the Court by March 18, 2024 in order to assert its privileges. (D.E. 320, p. 23). This request remains pending.

4

Plaintiff's process arguments are meritless; he jointly proposed these very procedures to this Court. The Parties' joint agreement regarding the Special Master appointment lays out the "Process for resolving disputes," which makes clear that a Party seeking a ruling from the Special Master is entitled to a "memorandum no longer than 700 words," to which the opposing Party "may respond with a responsive memorandum no longer than 700 words," but that there "shall be no reply memoranda." (D.E. 312-1, p. 2).

The joint agreement is explicit that: "The Parties are not entitled to a hearing before the special master on any issue," but the Special Master has discretion to "call for a short telephone conference or video conference" if she "deems it necessary to the resolution of the matter." *Id.* (emphasis added). The Court Order appointing the Special Master adopted the Parties' joint agreement, including these procedures. (*See* D.E. 313, p. 2). With respect to supplemental briefing, the Court vested the Special Master with discretion to request such briefing, but provided the Parties no right to it. *Id.* at 6.

To the extent Azima also mounts a procedural due process legal challenge to the procedures followed by the Special Master in issuing Ruling 7, that argument is meritless. First, Plaintiff does not—as he must—point to a constitutionally-protected interest of which the Special Master's Report allegedly deprived him. *See Rockville Cars, LLC v. City of Rockville, Maryland*, 891 F.3d 141, 146 (4th Cir. 2018). Second, even if Plaintiff had properly

5

formulated a due process argument, he was given fair and appropriate process; indeed, he "expressly consented to the [] powers bestowed upon the Special Master through the [Agreement and Order]." *Hofmann v. EMI Resorts, Inc.*, 689 F. Supp. 2d 1361, 1372 (S.D. Fla. 2010) (rejecting due process argument about Special Master ruling where parties consented to Special Master's appointment and procedure).

### III. THE SPECIAL MASTER CORRECTLY FOUND PLAINTIFF FAILED TO MAKE A PRIMA FACIE SHOWING OF THE CRIME-FRAUD EXCEPTION.

Here, Plaintiff fails to make a "prima facie showing" that (1) Defendants were "engaged in or planning a criminal or fraudulent scheme when [they] sought the advice of counsel to further the scheme," or (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Grand Jury Proc. #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005). Thus, this Court should affirm the Special Master's Report and Decision regarding the crime-fraud exception.

#### a. Preponderance of the Evidence is the Correct Burden of Proof to Establish a Prima Facie Showing for the Crime-Fraud Exception.

The Special Master correctly held that, to invoke the crime fraud exception, Plaintiff must prove its application by a preponderance of the evidence. (D.E. 355, pp. 26-27). However, Plaintiff argues that the burden of

6

proof regarding his prima facie showing should be lower. (*See* D.E. 361, p. 18). Plaintiff alleges that the Special Master should not have relied on a North Carolina civil case, but instead should have relied on a Fourth Circuit case addressing *criminal matters* with a purportedly lower "prima facie standard." *See id.* at 18-19 (citing *In re Grand Jury Proceedings*, 401 F.3d at 247, 251 (4th Cir. 2005)).

However, because Plaintiff's only remaining claims are his North Carolina Misappropriation of Trade Secrets claim (Count VIII), as well as the contingent North Carolina Civil Conspiracy claim (Count X), (*see* D.E. 65, Memorandum Opinion and Order on Defendants' Rule 12(b)(6) Motion to Dismiss, pp.23–24), Plaintiff argued and the Special Master found that "North Carolina law applies to the application of the attorney-client privilege in this case." (D.E. 355, pp. 4, 26); *see also MCI Constr., LLC. v. Hazen & Sawyer, P.C.*, 213 F.R.D. 268, 270 (M.D.N.C. 2003) ("The Court must examine the issue of attorney-client privilege by looking to North Carolina law" in diversity actions) (citation omitted); Fed. R. Evid. 501 ("with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law").

Therefore, under North Carolina law, as the Special Master correctly held, the burden of proof to make a prima facie showing of the crime-fraud

7

exception is "by a ponderance of the evidence that the opposing party was committing or intending to commit a crime or fraud and that the attorney-client communications were used in further of the alleged crime or fraud." *Window World of Baton Rouge, LLC v. Window World, Inc.*, No. 15 CVS 1, 2019 WL 3995941, at *18 (N.C. Super. Aug. 16, 2019), *aff'd*, 377 N.C. 551, 857 S.E.2d 850.

Plaintiff's contrary argument is predicated on the "prima facie standard" necessarily being a lower burden of proof than a preponderance standard. This is incorrect, and his reliance on a Fourth Circuit case applying federal privilege law in the criminal context highlights his error. The *Window World* court recognized that federal courts generally agree parties are required to make a "prima facie" showing to invoke the crime fraud exception, but they "are divided as to the appropriate quantum of proof necessary to make a prima facie showing." *Window World*, 2019 WL 3995941, at *17 (quoting *In re Grand Jury*, 705 F.3d 133, 151-53 (3d Cir. 2012)).

In interpreting what a "prima facie" showing requires, courts recognize a distinction between the different interests in the civil context and criminal. *See id.* (citing *UMG Recording, Inc. v. Bertelsmann AG (In re Napster Copyright Litig.)*, 479 F.3d 1078, 1094-96 (9th Cir. 2007) (adopting a "preponderance of the evidence" standard in a civil case and noting that a lower "reasonable cause" standard is appropriate in the grand jury context). The

8

Case 1:20-cv-00954-WO-JLW   Document 363   Filed 06/12/24   Page 8 of 18

*Window World* court found this distinction meaningful in concluding "that a preponderance of the evidence standard is appropriate in the *civil context*" given the "dangers associated with invoking exceptions" to the attorney-client privilege. *Id.* at *18 (citations omitted) (emphasis added).

North Carolina suits continue to uphold the preponderance standard in the civil context. *See, e.g., Potts v. Kel, LLC*, No. 16 CVS 2877, 2024 NCBC LEXIS 10, at *11 (N.C. Super. Jan. 12, 2024) (quoting *Window World's* "preponderance of the evidence" standard in denying party's application for crime fraud exception); *Ford v. Jurgens*, No. 20 CVS 4896, 2021 WL 4595673, at *8 (N.C. Super. Oct. 5, 2021) ("Given the importance of the attorney-client privilege to North Carolina's jurisprudence and the resulting scrutiny that should be applied to any exceptions, parties advancing the crime-fraud exception must prove the prima facie case by a preponderance of the evidence." (internal citations omitted)).

Thus, the Special Master correctly held the crime fraud exception is subject to a preponderance of the evidence showing.

### b. Plaintiff Fails to Make a Prima Facie Showing of the Crime Fraud Exception Regarding VMS's Communications with Shanahan Law Group.

The Special Master did not err in finding that Plaintiff failed to show that VMS's communications with its lawyers, Shanahan Law Group ("SLG"), are discoverable under the crime-fraud exception. As support for the exception,

9

Plaintiff essentially relies on SLG's payments, upon Defendants' direction, to Defendants' subcontractor Patrick Grayson. (D.E. 361, p. 20, 22). Plaintiff claims the Special Master "discounted the fact that SLG paid Grayson for work done on behalf of Del Rosso rather than SLG." (*Id.* at 22 n.10).

SLG acted as outside general counsel for VMS. *See* Exhibit 2, Declaration of Nicholas del Rosso ("Del Rosso Decl."), ¶¶10–12. SLG's bank records reflect payments for SLG's work in the normal course of its representation of Del Rosso and VMS, as well as payments to certain contractors performing work for VMS. *Id.* ¶11. There was nothing unusual or improper in Del Rosso reviewing invoices for accuracy and instructing SLG to effectuate payment. *Id.* ¶12. The subcontractors hired to perform work for VMS historically performed lawful activities, making it unremarkable that Defendants worked with and paid them. *See id.* ¶¶15-17, 24-29. Further, as the Special Master duly noted, a law firm paying third-party service providers on behalf of a client is an event that occurs frequently within law firms.

Regarding Patrick Grayson ("Grayson"), VMS retained Grayson to work as a contractor, and Grayson worked on various VMS projects, some related to RAK/Dechert and some not. *Id.* ¶¶24-17. VMS's engagement of Grayson and payments to Grayson were not for the purpose of conducting illegal or fraudulent activity. *Id.* ¶27.

10

Further, regarding an individual named J.R. Fayol ("Fayol"), while Grayson introduced Del Rosso to Fayol, Del Rosso does not recall instructing Fayol on any work related to Plaintiff. *Id.* ¶28. Any payment made to Mr. Fayol was for lawful research in an unrelated project located in a former French territory of Africa. *Id.* ¶¶28-29.

Here, there is no allegation that Grayson communicated to SLG an intent to use those payments for purposes of a crime or fraud. Further, Plaintiff has not offered evidence that Defendants communications with its counsel, SLG, were in furtherance of a crime or fraud to justify a privilege waiver. Moreover, as pointed by the Special Master, "[t]he Grayson statement does not discuss hacking at all." (D.E. 355, p. 27). Thus, Plaintiff has failed to carry his burden of proof regarding a prima facie showing of the crime-fraud exception related to communications with SLG, and the Special Master's Report and Decision should not be overturned.

### c. Plaintiff Fails to Make a Prima Facie Showing of the Crime-Fraud Exception Regarding Defendants' Communications with Christopher Swecker.

The Special Master did not err in finding that Plaintiff failed to make a prima facie showing that the crime-fraud exception applies to Defendants communications with its attorney, Christopher Swecker. Plaintiff argues the crime-fraud exception applies because "Del Rosso did not have permission to assess or possess Azima's confidential information but nevertheless provided

11

stolen documents to Swecker to pass on to the FBI." (D.E. 361, pp. 22-23 n.11). Plaintiff further argues that the Special Master erred in concluding Plaintiff had not presented evidence that Swecker did not have knowledge that "Azima's data (or reports analyzing that data) had been hacked, or that he was lying to law enforcement about the origin of the data," because Swecker's lack of knowledge regarding the alleged hacking is immaterial to the crime-fraud exception. (*Id.*). However, Plaintiff fails to show a connection between Swecker communicating with the FBI about Plaintiff's criminal conduct and Defendants seeking legal advice and "engag[ing] in or planning a criminal or fraudulent scheme when [they] sought the advice of counsel to further the scheme." *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d at 251. As pointed out by the Special Master, "[i]t is not per se criminal or fraudulent to provide law enforcement with truthful information, whether in response to a subpoena or not." (D.E. 355, p. 30). Indeed, there is no evidence that Defendants were directing Swecker to engage the FBI in order to perpetuate a crime or fraud. Moreover, any argument that Swecker lied by omission by not disclosing the purportedly stolen nature of the documents fails as a matter of law. *See United States v. Richeson*, 825 F.2d 17, 20 (4th Cir. 1987) ("a defendant may not be convicted of concealment unless the defendant had a duty to disclose"). Thus, Plaintiff has failed to carry their burden of proof, and the Special Master's Report and Decision should not be overturned.

12

### d. Dechert's Limited Application of the U.K. "Iniquity Exception" Has No Relevance to Discovery.

The Special Master correctly held Dechert's limited application of the "iniquity exception" in separate English proceedings is irrelevant to whether the crime fraud exception applies to unrelated documents here. (D.E. 355, p. 32).

The U.K. iniquity exception provides that a document created in furtherance of an iniquitous purpose (i.e., fraud or other equivalently illicit conduct) is not entitled to privilege. To Defendants' knowledge, all documents produced by Dechert in the English proceedings pursuant to the iniquity exception have been disclosed here, to the extent responsive to Plaintiff's discovery requests, on the grounds that, once disclosed, those documents are no longer entitled to privilege protection. As the Special Master found, that is the end of the iniquity exception's relevance in this matter.

In the separate English proceedings, Dechert's productions under the iniquity exception related to (1) whether an investigator, Stuart Page, or his subcontractors hacked or otherwise obtained information unlawfully; and (2) alleged attempts to mislead the Plaintiff and the English court regarding how Plaintiff's data was discovered on the internet in August 2016. Critically, Dechert did not apply the iniquity exception to any communications relating to Defendants' services in support of Dechert's legal representation of RAK,

13

and Defendants deny engaging in any unlawful or "iniquitous" conduct. The Special Master relied on the sworn witness statement of Edward Allen, who represents Dechert in the English proceedings, explaining that the iniquity exception was unrelated to Defendants. (*See* D.E. 250-1). The Special Master found that the production of non-privileged documents, as the iniquitous documents were, did not effectuate a waiver of privileged documents. (*See* D.E. 355, p. 32).

Lacking any evidence that Dechert's production of documents in the English proceedings had anything to do with Defendants, Plaintiff baldly asserts "there is no distinction between Page's involvement in obtaining Azima's stolen data and Del Rosso's in this conspiracy case." (D.E. 361, p. 20). But there is—Dechert concluded that the test for the U.K. iniquity exception was met in relation to certain activities of Page and his associates, but not in relation to Defendants. As discussed previously, and as the Special Master held, this is fatal to Plaintiff's argument because "[t]he fact of the iniquity exception production in the U.K. Proceeding does not substitute for Plaintiff's separate obligation in this matter to make his prima facie showing that the exception should be applied to documents unrelated to the 'iniquitous purposes' set forth in the Allen Statement." (D.E. 355, p. 32).

The Court should affirm the Special Master's ruling that Dechert's production of documents pursuant to the iniquity exception in separate

14

proceedings is irrelevant to whether the crime fraud exception should be applied against Defendants in this matter.

### e. RAK's default in U.K. Proceedings Has No Bearing on the Application of the Crime-Fraud Exception.

The Special Master found that RAK's default in the U.K. proceedings did not justify application of the crime-fraud exception (D.E. 355, p. 33), and there is no basis for that ruling to be overturned. The English court's administrative default judgment against RAK does not support a presumption that Defendants, Dechert, or RAK were involved in illegal behavior. The judgment against RAK explicitly said that it was "not a judgment on the merits" and could not be used against other defendants to Plaintiff's claims. *Ras al Khaimah Inv. Auth. v. Azima*, No. HC-2016-002798 [2023] EWHC 2108 (Ch) [48], ¶48 (attached as Exhibit 3). There is no support for Plaintiff's conclusory assertion that the judgment warrants any presumption about the propriety of Defendants' actions.

## CONCLUSION

For all the reasons discussed herein, the Special Master's Report and Decision No. 7 should be affirmed. Further, Defendants request that, pursuant to the Joint Agreement, the Court order Plaintiff to pay reasonable costs and attorneys' fees associated with his appeal.

Respectfully submitted, this the 12th day of June, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Brandon S. Neuman*
 Brandon S. Neuman, NCSB# 33590
 Jeffrey M. Kelly, NCSB# 47269
 Samuel Rosenthal (special appearance)
 Justin Kaplan (special appearance)
 George C. Mahfood (special appearance)
 301 Hillsborough Street, Suite 1400
 Raleigh, North Carolina 27603
 Telephone: (919) 329-3800
 Facsimile: (919) 329-3799
 brandon.neuman@nelsonmullins.com
 jeff.kelly@nelsonmullins.com
 sam.rosenthal@nelsonmullins.com
 justin.kaplan@nelsonmullins.com
 george.mahfood@nelsonmullins.com

 *Counsel for Defendants*

16

# CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Kirby D. Behre
Lauren E. Briggerman
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
kbehre@milchev.com
lbriggerman@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance)
George Mahfood (special appearance)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
George.mahfood@nelsonmullins.com

*Counsel for Defendants*

17

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that **Defendants' Response to Plaintiff's Appeal of Special Master's Report and Decision No. 7** contains 3,360 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted this 12th day of June, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance)
George Mahfood (special appearance)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
George.mahfood@nelsonmullins.com

*Counsel for Defendants*