UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 20-cv-954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **PLAINTIFF'S APPEAL OF SPECIAL MASTER'S REPORT AND DECISION NO. 9** |

Plaintiff Farhad Azima ("Azima") appeals the Special Master's June 19, 2024, Report and Decision #9 ("Ruling 9" or "the Ruling"), *see* Ex. 1, that authorized significant redactions to an expert report regarding Defendants' destruction of relevant documents and his possession of stolen documents, including stolen documents protected by the attorney-client privilege. The report at issue, which was prepared by Defendants' own independent forensic expert, Alvarez & Marsal, analyzed the personal laptop of Defendant Nicholas Del Rosso ("Del Rosso") and concluded that he intentionally deleted a massive quantity of documents the day before he testified against Mr. Azima in a trial in the U.K. (the "A&M Report" or the "Report"). *See* Ex. 2. The Special Master correctly determined that the Report is relevant and responsive but her decision to heavily redact the Report is in error.

1

## PROCEDURAL HISTORY

### I. THE A&M REPORT CONCLUDES THAT DEL ROSSO HACKED OTHER VICTIMS AND DESTROYED EVIDENCE TO COVER HIS TRACKS.

Del Rosso has testified under oath that the laptop the A&M Report analyzes (the "Laptop") likely contains discoverable information. *See, e.g.*, Ex. 3 ¶¶ 16-24. Nevertheless, Defendants sought to prevent access to information about the Laptop and failed to review it for responsive material. It has now been revealed that Del Rosso's Laptop contained hacked, stolen material belonging to Scott Moore, a U.S. lawyer representing another Del Rosso victim, and that Del Rosso stored that stolen data on the Laptop.

A U.K. court ordered Del Rosso's U.K. legal team to provide the Laptop to an independent forensic analysis firm, Alvarez & Marsal, to determine whether it contained stolen data and produce a report on the same. The same U.K. court ruled in February 2024 (the "February 2024 U.K. Order") that Del Rosso's Laptop did indeed contain Scott Moore's stolen data.[1] *See* Ex. 4. The same conclusion was also reached by plaintiffs in U.K. proceedings that have also seen the unredacted report. Ex. 5 ¶ 38A.

---

[1] That order was in response to a motion for an injunction to prevent Del Rosso from destroying a previously undisclosed device, a "Fortress" hard drive to which he transferred data from his Laptop. Del Rosso had not disclosed the Fortress device to Mr. Azima prior to its revelation in the U.K.

According to the redacted A&M Report produced to Plaintiff, Del Rosso installed and used "CCleaner," a file deletion application, on January 31, 2020. Ex. 2 ¶¶ 8.2.1., 8.2.4. "CCleaner can erase traces of user activities; therefore, it is possible that artefacts which were previously stored on the Laptop that would have been relevant to my analysis are no longer present on the Laptop . . . ." *Id.* ¶ 8.2.9. Pleadings in the U.K. allege that the Report concluded that Del Rosso deleted almost 110,000 files from his computer using CCleaner. Ex. 5, ¶ 38A. This happened the day before Del Rosso testified against Azima in a trial in the U.K. *Id.*

The Laptop does not contain Mr. Moore's stolen data anymore because it was deleted by Del Rosso. But it is likely that the redacted portions of the Report provide detail on what was deleted. For example, the redacted A&M Report shows that Del Rosso downloaded an archive file containing Mr. Moore's data but provides no other information whatsoever regarding the content of that file or how it was obtained. The unredacted portions of the A&M Report are therefore necessary to provide full context surrounding the other acts of hacking.

The February 2024 U.K. Order also found that Del Rosso lied regarding his involvement in the hacking of Scott Moore and destruction of data. The UK court found that "there is a considerable bank of evidence before this Court underlying the assertions that [Mr. Del Rosso] has been untruthful in various

3

actions and is being evasive in this and other actions." Ex. 4 ¶ 12. The court also concluded that Del Rosso, "the day before he was due to [testify], downloaded information from the internet . . . and then transferred it to a . . . storage device [before] delet[ing] the [same] information" from his Laptop. *Id.* ¶ 7. "He then deleted lots of other files." *Id.* This is consistent with pleadings in the U.K., which analyzed the full, unredacted Report and concluded that Del Rosso made eleven (11) false statements under oath that are inconsistent with the Report's conclusions. Ex. 5 at Schedule A.

## II. THE SPECIAL MASTER'S RULING 9 ERRONEOUSLY AUTHORIZED REDACTIONS TO THE HIGHLY RELEVANT REPORT.

For many months Defendants have fought having to produce the A&M Report at every turn. Plaintiff filed a motion to compel documents relating Del Rosso's Laptop, including the A&M Report, arguing that the Report contained evidence of Defendants' prior bad acts under Fed. R. Evid. 404(b)(2), that the Report showed that Defendants had failed to preserve documents enough though they had an obligation to preserve documents related to the hack and use of Azima's data years before this litigation was filed, and that the Report went to the issue of spoliation because it showed files had been deleted. *See generally* ECF No. 349 at 19. Defendants opposed the motion.

In her Report and Decision #6, the Special Master concluded that the "A&M Report . . . is responsive to the Plaintiff's discovery requests." *Id.* at 22-

4

23. She did not, however, order Defendants to produce the Report because Defendants argued that U.K. law or court orders might prohibit disclosing the A&M Report in this litigation. *Id.* The Special Master therefore asked the parties to provide additional information to address those concerns before ordering production. *Id.* at 23.

Defendants' concerns were addressed in subsequent submissions, and the Special Master held a status conference on April 24, 2024, to discuss production of the A&M Report, and issued a ruling the following day. *See* Ex. 6. There, she reiterated that "the A&M Report may have relevant information that is responsive to Plaintiff's discovery requests" to the extent it shows Defendants "undertook efforts to conceal or destroy information." *Id.* She continued that "to the extent the Report contains other information about the Laptop or its contents, such information is only relevant if it is otherwise responsive to Plaintiff's discovery requests and is different from what a traditional search of the Laptop for responsive information would reveal." *Id.* (emphasis changed from original).[2]

On May 3, 2024, Defendants violated the Special Master's ruling by producing an almost entirely redacted version of the Report to Plaintiff. Other

---

[2] Plaintiff's discovery requests sought all documents concerning: any attempts to conceal Plaintiff's hacked material (RFP No. 7); Defendants' document policies, practices, and procedures (RFP No. 20); and any instructions to destroy, purge, or otherwise get rid of documents (RFP No. 21). *See* Ex. 1 at 4 n.4.

5

than background and administrative information, such as the table of contents and expert qualifications, there was little of substance in the obliterated version they produced. The version Defendants turned over notably included none of the A&M Report's analysis and substantive conclusions – including those about Del Rosso's wholesale deletion of stolen data. Plaintiff filed a renewed motion to compel asking the Special Master to conduct an *in camera* review of the redacted material and for an order compelling Defendants turn over substantive analysis and conclusions in the A&M Report. An additional status conference was held on May 10, 2024, and the Special Master agreed to conduct an *in camera* review following the conference.

The Special Master thereafter issued Ruling 9, which concluded that the Report contains information regarding Defendants document retention practices and their "efforts to transfer or delete information from the Laptop," and that some of Defendants' redactions were therefore improper. *See* Ex. 1 at 4-5. The Special Master therefore ordered Defendants to produce a less redacted version of the Report that uncovered certain sections, but allowed most of Defendants' redactions to stand, leaving Plaintiff with a dramatically incomplete version of the Report. More than half of the Report remains redacted.

## STANDARD OF REVIEW

The Court reviews de novo all objections to findings of fact or conclusions of law made by the Special Master. Appointment Order ¶ 14 (ECF No. 313); Fed. R. Civ. P. 53(f)(3), (4). In reviewing and ruling on such objections, the Court is authorized to receive additional evidence bearing on the arguments presented. *See* Appointment Order ¶ 13; Fed. R. Civ. P. 53(f)(1).

## ARGUMENT

The Special Master's Ruling is erroneous for two main reasons: (1) although it acknowledges the Report is relevant and responsive, it inappropriately allows Defendants to redact portions based on relevance or responsiveness, which is not permitted under the Federal Rules; and (2) it authorizes the redaction of material that appears to be directly relevant to this litigation.

### I. THE SPECIAL MASTER'S RULING ERRONEOUSLY AUTHORIZES THE HEAVY REDACTION OF A HIGHLY RELEVANT DOCUMENT.

Defendant deleted relevant data in order to hide the fact that he was involved in another illegal hack – that of attorney Scott Moore. The relevance is obvious, and the report by Defendant's own expert apparently catalogues those efforts. The Special Master has already ruled that portions of the Report are relevant and responsive. In this context, any redaction is erroneous.

Courts have regularly rejected the redaction of allegedly irrelevant material from otherwise relevant documents. "Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request" because "[i]t is rare that a document contains only relevant information." *Bartholomew v. Avalon Capital Grp., Inc.* 278 F.R.D. 441, 451 (D. Minn. 2011); *see also In re Marriott Int'l Customer Data Sec. Breach Litig.,* No. 19-md-2879, 2020 WL 5525043, at *2 (D. Md. Sept. 14, 2020) ("[T]he worse that can happen, if there is no redaction, is that the opposing party and counsel will see irrelevant information. There is a significant disproportion between the nature of that harm (if there is any) prevented by the redaction and the effort then demanded of all counsel and the court to determine the redactions' legitimacy."). Throughout this litigation, as in all litigation, the parties have produced documents that contain irrelevant information as long as part of the document is relevant and responsive, which the Report is.

***First***, the Federal Rules of Civil Procedure prohibit relevancy redactions. "[F]ederal courts have concluded that the Federal Rules of Civil Procedure do not permit a party to redact information, claimed to be irrelevant, from the documents it produces." *In re Marriott Int'l,* 2020 WL 5525043, at *1. Such relevancy redactions violate the obligation under Fed. R. Civ. P. 34 to produce documents in the usual course of business. Under Rule 34, courts view

8

"documents" as relevant or irrelevant and "do not as a matter of practice, weigh the relevance of particular pictures, graphics, paragraphs, sentences, or words, except to the extent that if one part of a document is relevant then the entire document is relevant for the purposes of Fed. R. Civ. P. 34. This is the only interpretation of Fed. R. Civ. P. 34 that yields 'just, speedy, and inexpensive determination[s] of every action and proceeding.'" *Bartholomew*, 278 F.R.D. at 452 (quoting Fed. R. Civ. P. 1); *see also Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 05-cv-555, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008) (holding that, under Rule 34, "[i]t is at least implicit that the duty to 'produce documents as they are kept in the usual course of business' includes the substantive contents of those documents. . . . There is no express or implied support for the insertion of another step in the process (with its attendant expense and delay) in which a party would scrub responsive documents of non-responsive information.") (citation omitted).

**Second**, the Special Master has no basis to treat "irrelevant" information in that A&M Report differently from other discovery materials produced in this case. The parties' consistent practice in this case has been to produce responsive documents with redactions only for privilege and work product protections. In the limited cases where courts have allowed relevancy-based redactions, the redacting party has been required to provide a persuasive reason for the redactions. *See, e.g., In re: Takata Airbag Prods. Liab. Litig.*,

9

No. 14-cv-24009, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (permitting some limited relevancy redactions where Defendants provided "a persuasive reason . . . that disclosing such information could provide its competitors with competitively sensitive information to the ultimate detriment of each Defendant."). Courts have routinely rejected relevancy redactions where the redacting party fails to provide such justification. *See, e.g., IDC Fin. Publ'g Inc. v. Bonddesk Grp. LLC*, No. 15-cv-1085, 2017 WL 4863202, at *3 (E.D. Wis. Oct. 26, 2017) (rejecting relevancy redactions where the redacting party failed to provide a "compelling reason" for the redactions, and rejecting the protection of competitively sensitive materials where a protective order was in place). No reason for the redactions has been provided here. Instead, Defendants' obstruction and misrepresentations have been rewarded by allowing redactions to remain without any valid basis.

**Third,** oftentimes, "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information." *Bartholomew*, 278 F.R.D. at 451. Redactions to an otherwise irrelevant document violate the Rule of Completeness embodied in Federal Rule of Evidence 106. Where a document is responsive, a producing party must produce the entire document to comply with the "completeness" requirement. Rule 106 "favor[s] the *complete* production of non-privileged evidence if some portion of the evidence is deemed responsive." *See Karnoski*

10

*v. Trump,* No. C17-1297, 2020 WL 2736961, at *1 (W.D. Wash. Mar. 4, 2020). The redacted material here appears to provide context relevant to Plaintiff's case and to the understanding of the portions of the Report already produced. Courts have recognized context as a basis to avoid redactions. *Bartholomew*, 278 F.R.D. at 451; *see also Eshelman v. Puma Biotechnology, Inc.*, No. 16-cv-18, 2018 WL 327559, at *3 (E.D.N.C. Jan. 18, 2018) ("'The fact that a document contains both relevant and irrelevant information is by no means extraordinary . . . . Relevance-based redactions are disfavored, because they 'breed suspicions, and they may deprive the reader of context.'") (internal citations omitted).

## II. DECISION 9 ERRONEOUSLY FINDS REDACTED PORTIONS OF THE A&M REPORT IRRELEVANT.

The Special Master found that the A&M Report is relevant, yet then allowed roughly half of the Report to remain redacted. The Special Master's finding that the still-redacted material is non-responsive is erroneous.

***First***, according to public filings in the U.K., the Report contains expert findings that Del Rosso possessed hacked documents. Plaintiff is entitled to discovery of Defendants' prior bad acts of hacking. Civil Rule 26(b)(1) plainly permits discovery of Rule 404(b)(2) evidence, even if not necessarily admissible at trial. *See Smith v. City of Greensboro*, No. 19-cv-386, 2021 WL 10280232, at *4 (M.D.N.C. Apr. 28, 2021). The Report concludes that the Laptop contained

11

Case 1:20-cv-00954-WO-JLW Document 371 Filed 06/26/24 Page 11 of 17

stolen data belonging to the attorney for another Del Rosso target. Ex. 4 (Feb. 2024 U.K. Order). Evidence of other hacking demonstrates that Defendants possessed at least the relevant "motive, opportunity, intent . . . , plan, [and] knowledge" under Rule 404(b)(2) to hack and steal Plaintiff's trade secrets.

The conclusion that Del Rosso engaged in other acts of hacking is consistent with Plaintiff's allegations here. As the Court already knows, Plaintiff alleges that Defendants obtained "privileged and confidential legal communications" when they hacked and misappropriated Plaintiff Azima's data. *See* Compl. ¶ 18. Indeed, Defendants admitted they possessed Plaintiff's communications with counsel by producing those communications as part of discovery in this action. The presence of another lawyer's stolen data on Del Rosso's Laptop is therefore highly relevant to Plaintiff's claims because it shows other acts of hacking.

**Second**, the Ruling authorized the redaction of sections of the Report that discuss the content of Del Rosso's Laptop. The Special Master allowed these sections to be redacted on the basis that "the Report is not the original source of information on the Laptop that is responsive to the Plaintiff's discovery requests." Ex. 1 at 2. But the Laptop was wiped, and Plaintiff cannot be sure whether important information was deleted. Discovery is also not subject to an original source requirement. The Special Master inappropriately applied an admissibility argument to a document discovery dispute. Indeed,

12

the Special Master specifically noted that such evidentiary issues are appropriately reserved for the Court. Ex. 1 at 4 n.5. These sections are likewise relevant.

## CONCLUSION

For the reasons stated above, the Special Master's Ruling 9 erred in ordering the production of the A&M Report with redactions. The full, unredacted Report must be produced.

This, the 26th day of June, 2024.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Ripley Rand*
Ripley Rand (N.C. State Bar No. 22275)
Christopher W. Jones (N.C. State Bar No. 27265)
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2100
Facsimile: (919) 755-2150
Email:  ripley.rand@wbd-us.com
         chris.jones@wbd-us.com

-and-

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren Briggerman (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
900 Sixteenth Street, NW
Washington, D.C. 20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
clee@milchev.com
cmarden@milchev.com

*Attorneys for Plaintiff Farhad Azima*

## CERTIFICATE OF WORD COUNT

I hereby certify under LR 7.3(d)(1) that the body of this Memorandum, including any headings and footnotes together, contains fewer than 6,250 words, as reported by the word count feature in Microsoft Word.

This, the 26th day of June, 2024.

                **WOMBLE BOND DICKINSON (US) LLP**

                /s/ *Ripley Rand*
                Ripley Rand
                North Carolina State Bar No. 22275
                555 Fayetteville Street, Suite 1100
                Raleigh, NC 27601
                Telephone: (919) 755-8125
                Facsimile: (919) 755-6752
                Email:     ripley.rand@wbd-us.com

                *Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-CV-954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>　　Defendants. | **CERTIFICATE OF SERVICE** |

　　I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

　　Brandon S. Neuman, Esq.
　　Jeffrey M. Kelly, Esq.
　　NELSON MULLINS RILEY & SCARBOROUGH, LLP
　　301 Hillsborough Street, Suite 1400
　　Raleigh, NC 27603
　　brandon.neuman@nelsonmullins.com
　　jeff.kelly@nelsonmullins.com

　　Samuel Rosenthal
　　NELSON MULLINS RILEY & SCARBOROUGH, LLP
　　101 Constitution Ave. NW, Suite 900
　　Washington, DC 20001
　　sam.rosenthal@nelsonmullins.com

Justin B. Kaplan
George C. Mahfood
NELSON MULLINS RILEY & SCARBOROUGH, LLP
2 South Biscayne Blvd., 21st Floor
Miami, FL 33131
Email: justin.kaplan@nelsonmullins.com
Email: george.mahfood@nelsonullins.com

*Counsel for Defendants*

Richard S. Glaser
Parker Poe Adams & Bernstein LLP
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Email: rickglaser@parkerpoe.com

Nana Asante-Smith
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
Email: nanaasantesmith@parkerpoe.com

*Counsel for Christopher Swecker and Christopher Swecker Enters. LLC*

This, the 26th day of June, 2024.

                                      **WOMBLE BOND DICKINSON (US) LLP**

                                      /s/ *Ripley Rand*
                                      Ripley Rand
                                      North Carolina State Bar No. 22275
                                      555 Fayetteville Street, Suite 1100
                                      Raleigh, NC 27601
                                      Telephone: (919) 755-8125
                                      Facsimile: (919) 755-6752
                                      Email: ripley.rand@wbd-us.com

                                      *Counsel for Plaintiff*

17

Case 1:20-cv-00954-WO-JLW  Document 371  Filed 06/26/24  Page 17 of 17