IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S APPEAL OF SPECIAL MASTER'S REPORT AND DECISION NO. 9** |

Defendants Nicholas del Rosso ("Del Rosso") and Vital Management Services, Inc. ("VMS"), (collectively "Defendants"), hereby respond to Plaintiff's Appeal of Special Master's Report and Decision No. 9 ("Decision 9") (D.E. 372). Plaintiff's appeal should be denied and this Court should affirm the Special Master's decision.

## BACKGROUND

On December 29, 2023, the Court granted the Parties' Consent Motion for Appointment of Special Discovery Master. (D.E. 313). The Court Order appointing the Special Master adopted the Parties' joint agreement. (*See* D.E. 313, p. 2).

Decision 9 is the culmination of a prior decision by the Special Master, several conferences, and an *in camera* review of the A&M Report. The A&M

1

Report is a limited analysis of a laptop that the UK Court ordered the Stokoe Law Firm to return to Del Rosso, which Del Rosso contends was stolen from him and improperly accessed by the Stokoe Law Firm[1] and others for approximately a year. The analysis conducted by Phil Beckett of Alverez & Marsal Disputes & Investigations LLP was limited to answering questions set forth by the UK Court, and was not undertaken to be a complete forensic analysis of the UK laptop. (*See* Dkt. 349, p.18, 21-23). The Special Master determined that—although Defendants were not involved in a UK court hearing leading to an order Plaintiff is relying on to argue the relevance of the A&M Report—the Report might be responsive to some of Plaintiff's discovery. (*Id*.) Given concerns about the ongoing UK litigation cases and whether the A&M Report could be shared with parties like Plaintiff who was not a party to the order to creating the report, the parties continued discussions with the Special Master. (*See* Dkt. 372, p.2).

---

[1] As the Court may recall, the Stokoe Law Firm filed a § 1782 application against Defendants and publicly filed confidential bank statements belonging to CyberRoot. *See In re Karam Salah al Din Awni al Sadeq, et al.*, No. 1:21-MC-00006-WO-LPA (M.D.N.C.). Since that initial filing, Defendants developed and submitted substantial evidence that it was agents of Azima who stole CyberRoot's bank statements (which Azima also sought through expedited discovery) and that the Stokoe Law Firm submitted that evidence under false pretenses. *See, e.g.*, *In re Al Sadeq*, Dkt. 25-28 (compiling police reports, witness statements, and supplemental briefing in support of Defendants' Motion for Reconsideration); *see also In re Al Sadeq*, Dkt. 37, p.4 ("While there is merit to the argument that the new bank records and the CyberRoot Declarations bolster Respondents' allegations that Azima and his co-conspirators stole the CyberRoot bank records, this type of evidence does not warrant reconsideration of a § 1782 Application." (citation omitted)).

And on April 25, 2024, the Special Master sought to resolve concerns and balance the needs of Plaintiff to review relevant information against Defendants' desire to not run afoul of any litigation in the UK. (Dkt. 372, p.2). The Special Master asked that Defendants produce the report subject to redactions of "non-relevant information" as laid out in her decision:

> Specifically, the report stated that "[i]f the A&M Report in fact reveals that a Defendant undertook efforts to conceal or destroy information, that fact could be relevant to the claims and defenses in this matter and could trigger additional actions." Because the Report includes a forensic analysis of the Laptop, the only unique information in it relevant here is information that only a forensic analysis would reveal – that is information regarding the removal, transfer, deletion, or destruction of data from the Laptop. Thus, to the extent the Report contains other information about the Laptop or its contents, such information is only relevant if it is otherwise responsive to Plaintiff's discovery requests and is different from what a traditional search of the Laptop for responsive information would reveal. In other words, the Report is not the original source of information on the Laptop that is responsive to the Plaintiff's discovery requests, except as it relates to any efforts (whether successful or not) to remove, transfer, delete, or destroy any data.

(Dkt. 372, p.2).

No party even asked the Special Master to formalize her decision into an order from the April 25, 2024 email. Within seven days of April 25, <u>neither party appealed nor took objection with (a) the Special Master's determination of what aspects of the Report were relevant or (b) that nonresponsive material would be redacted</u>. (Dkt. 372).

Defendants produced a redacted version of the A&M Report; Plaintiff argued the redactions were too broad; and the Special Master reviewed the issues raised with an *in camera* review of the A&M Report. That dispute about the *breadth* of the redactions under her prior decisions led to the Special Master issuing Decision 9 after an *in camera* review of the A&M Report. (*See* Dkt. 372).

## STANDARD OF REVIEW

The Court reviews de novo all *objections to findings of fact* or conclusions of law made by the Special Master. (D.E. 313, Appointment Order, ¶14); *see also City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2020 WL 4589716, at *3 (S.D.W. Va. Aug. 10, 2020) ("As provided in Rule 53(f)(4) and (5), the court shall decide de novo all objections to conclusions of law made or recommended by the Special Master; and the court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion."). In the event that a party appeals a decision of the Special Master and loses that appeal, the Joint Agreement notes that the Court may order the appealing party to pay reasonable costs and attorneys' fees associated with the appeal. (D.E. 312-1, Joint Agreement, p. 3). The Court has also indicated that it would consider awarding attorneys' fees to the prevailing party. (D.E. 304, Sept. 29, 2023, Tr. 10:14-16).

4

## ARGUMENT

### I. PLAINTIFF'S MISCHARACTERIZATIONS OF EVIDENCE SHOULD BE REJECTED BY THIS COURT.

Plaintiff begins his appeal with a mischaracterization of the evidence. Plaintiff's first point is that the A&M Report *shows* Del Rosso hacked others and deleted material to hide his tracks. It does not. The Report examines a laptop that the UK Court ordered the Stokoe Law Firm to return to Del Rosso after Del Rosso contended that it was stolen and improperly accessed by adverse parties. As Plaintiff has seen, the examiner found evidence a cleaning tool had been used, but cannot tell what was cleaned and does not reach any conclusions about who was operating the stolen laptop. There appears to be no answer to the question of how the data at issue arrived on the UK laptop. And no forensic examination is going to assess motivation of the computer's owner or operator. The A&M Report is no exception; the Report was not even designed to determine what, if anything, was deleted from the UK laptop. Instead, the examination (and thus the Report) was designed to see if Scott Michael Moore's data existed on the UK laptop and whether passwords for other devices could be found.[2] (Dkt. 371-2, pp.7-8). The Special Master

---

[2] Scott Micheal Moore is or was an attorney for Oussama El Omari. In a case that was recently dismissed with prejudice by the Southern District of New York, *El Omari v. Dechert LLP, et. al.*, No. 23-CV-4607, Mr. Omari alleged that Del Rosso hacked and intended to expose Omari's data at the behest of RAK and Dechert. (*El Omari*, Dkt. 1) After considering similar arguments and supplemental filings as those offered by Plaintiff, the District Court dismissed Mr. Omari's case for failure to state

5

previously determined that Moore is not related to or an affiliate of Azima and Moore has no relevance to this case. Thus, the A&M Report, as the Special Master found in Decision 6 and her April 25, 2024 determination, has only limited relevance to issues in this litigation because the crux of the report was not designed to answer anything at issue in this litigation. The contents of the A&M Report are only relevant to the extent that it indicated there was evidence of deletion because items no longer on the UK laptop would not show up in a review of the UK laptop, which Defendants agreed to undertake coming out of Decision 1 of the Special Master.

Plaintiff also blends determination in UK proceedings with a discussion of the Report to skew what else might be in the Report. For instance, Plaintiff appears to argue that the equivalent in the United States of verified allegations in an amended complaint are something more than just averments. (*See* Dkt. 371 p.4) (arguing "pleadings" say Del Rosso lied and citing to exhibit 5).[3] The Special Master did not bite on that bait in this fishing expedition, and neither should this Court.

---

a claim on June 24, 2024, which affirmed the magistrate's recommendation to dismiss the matter with prejudice (*El Omari*, Dkt. 81).
[3] The citation of UK "pleadings" that allegedly already discuss the entirety of the A&M Report begs the question why Plaintiff needs to see the unredacted portions in this Middle District North Carolina case.

6

## II. PLAINTIFF'S ARGUMENTS ABOUT REDACTIONS IN DISCOVERY ARE UNTIMELY AND MISS THE MARK.

Plaintiff makes two arguments on appeal: that the Special Master inappropriately allowed redactions and, despite an *in camera* review, erred in allowing just the aspects of the A&M Report she did to be discovered by Plaintiff in this case. Each one of these arguments fails.

First, Plaintiff has missed his chance to appeal the decision to provide redactions of the Report. The Special Master's April 25, 2024 decision notes that "Defendants should produce the A&M Report <u>redacting all non-relevant information</u>." (Dkt. 372, p.2). That conclusion was not a new conclusion in the Special Master's Decision 9. Decision 9 bolsters some of Defendants' previous arguments, but ultimately just chalks a different—and closely examined—line for what should be redacted than Defendants did on their own. Thus, Plaintiffs are untimely raising an issue that the Report should be produced without redactions.

Second, Plaintiff's arguments regarding courts hesitation to permit redaction of nonresponsive or irrelevant material is when that is done *unilaterally by the parties*. The very first case Plaintiff cites, *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011), discusses the Court reviewing the propriety of unilateral redactions made by one party in discovery. The same unilateral redaction issue is in cases like *In re Marriott*

7

*Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 5525043 (D. Md. Sept. 14, 2020) and *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 05-cv-555, 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008) cited by Plaintiff.

But as noted in *Bartholomew*, "a party seeking the power to unilaterally redact documents for relevance should request leave to redact those portions that the party contends are irrelevant." *Bartholomew*, 278 F.R.D. at 452. "Channeling a dispute over whether information should be redacted into a motion practice where both parties can be heard before the redaction is made is preferable to a party resorting to self-help and redacting whatever it pleases." *In re Marriott Int'l Customer Data Sec. Breach Litig.*, 2020 WL 5525043, at *3. That, as apposed to unilateral redaction, is exactly what happened here. Defendants requested leave to withhold the entire A&M Report, arguing its irrelevance and uncertain ability to disclose the Report under UK orders. And it was by instruction of the Special Master that the redactions were allowed. Thus, Plaintiff's cases, and his argument about redactions, are inapposite to the situation here. The Special Master found that redacting irrelevant portions of an order subject to disclosure concerns under a United Kingdom proceeding struck an appropriate balance. *See, e.g., In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) ("Court finds Defendants have provided a persuasive

reason for allowing them to redact certain irrelevant information[.]"). That same concern is not present in other aspects of the discovery in this case and thus redactions have not been broadly permitted throughout other aspects of discovery.

### III. PLAINTIFF'S ARGUMENT THAT THE SPECIAL MASTER, KNOWING THE SCOPE OF WHAT WAS RELEVANT TO THIS CASE FROM HER OWN DECISIONS, STILL LEFT RELEVANT MATERIAL REDACTED IS ABSURD.

Plaintiff last argues that because "public filings" by his cohorts in the United Kingdom have alleged the A&M Report "contains expert findings that Del Rosso possessed hacked documents" this Report is relevant to Plaintiff's theme of "once a hacker, always a hacker" and therefore a hacker of Azima. Putting aside whether "hacking" is relevant to any claim or defense in this case—and Plaintiff's use of the word at least 7 times over about a page does not make it relevant—the Special Master determined that references to *deletion of data* on a laptop that was stolen from Del Rosso in the Report may be relevant to a portion of one of Plaintiff's discovery requests.

> Defendants are correct that the A&M Report does not contain responsive information to RFPs 7 and 21, and that it does not contain information relating to the "Defendants' document retention policies", as requested in RFP 20. However, RFP 20 also seeks information about the Defendants' document retention "practices" from 2014 to the present and the report does contain information regarding those practices. Further, the report also reveals information relating to efforts to transfer or delete

9

> information from the Laptop, which might be admissible and relevant to Plaintiff's claims.

(Dkt. 372, p.4). She did not determine references to hacking were relevant. Therefore, Plaintiff's whole argument about hacking is based on speculation and conjecture, in contrast to the Special Master's decision of what to redact and not, which was based on a her role as a court appointed trier of fact reading the Report against the discovery actually requested.

Plaintiff also argues that the Special Master errantly allowed him to view certain sections of the A&M Report but not others. Plaintiff bases this on his theory that the UK Laptop was wiped and this A&M Report answers the questions of what, if anything, was wiped. That is implausible even without *in camera* review and frankly insulting knowing the Report was reviewed by the Special Master.

Plaintiff is aware the Report was not designed to do anything other than answer the questions of the UK Court—and those questions are visible in the A&M Report. There was no prompt from the Court to find out what was deleted. A section of the Report (Section 8.2) discussing use of a cleaning program was presented to Plaintiff. Based on the visible text the expert states "It is not possible to determine the original file and folder names of the files and folders that have been wiped." (Dkt. 371-2, p.27). This acknowledgement of impossibility by the A&M Report author suggests that there is no other

10

aspect of the Report that would discuss what was wiped. And Plaintiff's belief that the Special Master somehow overlooked the discussion of the impossible in a redacted section of the report is absurd.

## **CONCLUSION**

In short, this Court should affirm the determination of the Special Master, who meticulously reviewed the A&M Report *in camera* and determined the redactions that should apply to balance Plaintiff's need for discoverable information against Defendants' concerns that the Report should not be shared with Plaintiff and his counsel. Further, Defendants request that, pursuant to the Joint Agreement, the Court order Plaintiff to pay reasonable costs and attorneys' fees associated with his appeal.

Respectfully submitted, this the 3rd day of July, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance)
George C. Mahfood (special appearance)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
george.mahfood@nelsonmullins.com

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

| | |
|---|---|
| Jonathan D. Townsend | Ian A. Herbert |
| Christopher W. Jones | Kirby D. Behre |
| Ripley Rand | Lauren E. Briggerman |
| Womble Bond Dickinson (US) LLP | Cody Marden |
| 555 Fayetteville Street, Suite 1100 | Calvin Lee |
| Raleigh, NC 27601 | Miller & Chevalier Chartered |
| jonathon.townsend@wbd-us.com | 900 16th Street, N.W. |
| chris.jones@wbd-us.com | Washington, D.C. 20006 |
| ripley.rand@wbd-us.com | iherbert@milchev.com |
| | kbehre@milchev.com |
| | lbriggerman@milchev.com |
| | cmarden@milchev.com |
| | clee@milchev.com |

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/Brandon S. Neuman*
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    Samuel Rosenthal (special appearance)
    Justin Kaplan (special appearance)
    George Mahfood (special appearance)
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    justin.kaplan@nelsonmullins.com
    George.mahfood@nelsonmullins.com

*Counsel for Defendants*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that **Defendants' Response to Plaintiff's Appeal of Special Master's Report and Decision No. 9** contains 2,564 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the word limitation.

Respectfully submitted, this 3rd day of July, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance)
George Mahfood (special appearance)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
George.mahfood@nelsonmullins.com

*Counsel for Defendants*