# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Case No. 20-CV-954-WO-JLW

FARHAD AZIMA,

    Plaintiff,

    v.

NICHOLAS DEL ROSSO and VITAL
MANAGEMENT SERVICES, INC.,

    Defendants.

**SPECIAL DISCOVERY MASTER'S
REPORT AND DECISION #10**

Pursuant to the Court's Order of December 29, 2023 [Doc. 313] and the provisions of Rule 53 of the Federal Rules of Civil Procedure, Alice C. Richey, as the appointed Special Master, submits this Special Discovery Master's Report and Decision #10 (the "Report"). This Report addresses the following motions:

    1.    Plaintiff's Motion to Compel Defendants' Compliance with Discovery Orders (the "Compliance Motion");

    2.    Defendants' Motion to Compel Compliance with Subpoena (the "ALG Documents Motion"); and

    3.    Defendants' Motion to Compel Testimony From ALG's 30(b)(6) Witness (the "ALG Deposition Motion")

## 1. **The Compliance Motion**

### A. Background and Arguments

Plaintiff maintains that Defendants have not complied with the Court's July 25, 2023 Order [Doc. 248], Special Discovery Master Report and Decision #1 ("Report #1), and Special Discovery Master Report and Decision #6 ("Report #6). Specifically, Plaintiff argues that Defendants should be compelled to produce documents in three categories: i) Documents

Case 1:20-cv-00954-WO-JLW   Document 378   Filed 07/12/24   Page 1 of 21

relating to "Plaintiff's Associates," particularly documents relating to Khater Massaad; ii) Documents related to CyberRoot; and iii) Documents which Defendants have admitted exist but failed to produce, specifically reports from Northern Technologies, Inc. ("NTi").[1]

      i.    <u>Documents relating to "Plaintiff's Associates"</u>

In Report #1, certain discovery requests from Plaintiff were limited by a "Relevance Limitation" which limited the requests to information and documents relating to a) Plaintiff and Plaintiff's Associates, as defined in the Definitions in Plaintiff's First Request for Production of Documents ("First RFP"); b) any personal or business enterprise or financial transaction, involving or related to Plaintiff or Plaintiff's Associates; and c) any documents, communications, or data that belonged or belong to Plaintiff or any company in which Plaintiff holds an ownership interest. In response to a dispute between the parties regarding the definition of Plaintiff's Associates, the Special Master determined via email dated February 25, 2024, that an associate is an employee, consultant, or others who assisted with (or had an ownership or other equity interest in) the work of Plaintiff's businesses or other enterprises, business or personal. However, if the only connection to Plaintiff is that the person was an alleged RAK target, the person is not an associate. In response, Plaintiff provided details on certain individuals he deemed associates within the definition provided by the Special Master. This included Dr. Khater Massaad, whom Plaintiff says was a business partner in various ventures. *See* Exhibit 2, Compliance Motion.

---

[1] As one support for the Motion, Plaintiff cites to an "Amended Particular of Claim" filed in a UK proceeding styled "Gela Mikadze, Khater Massaad and Dechert LLP, James Buchanan, Nicholas Del Rosso, and Vital Management Services" (Claim No. KB-2023-001231). This document appears to have been filed by counsel for the Claimants and includes a statement by Claimants' counsel that "Claimants believes [sic] that the facts stated in these Amended Particulars of Claims are true." The Special Master has reviewed this document, but has not considered it in support of the Motion, as it is only statements of claims, not judicial findings or conclusions.

In the Motion, Plaintiff states that Defendants have produced no documents related to Massaad or any of the other associates included in Exhibit 2. Plaintiff cites Defendants' assertion in their Brief in Support of Motion for Clarification and Limited Stay Relating to Document Production and Depositions [Doc. 357], at note 2, that they adopted the definitions used by Plaintiff in the First RFP, except as they applied to Massaad. Plaintiff states that "these are the same documents [Defendants] continue to refuse to produce in the face of the Special Master's order on the same subject."[2]

Defendants respond that the reason they have produced no documents related to Plaintiff's Associates is because there are no additional documents to produce. Specific to Massaad, Defendants note their continued questioning of the relevance of information relating to Massaad, but state that they have only withheld documents relating to Massaad on privilege grounds, and they are included in privilege logs.

ii.   <u>Documents Related to CyberRoot</u>

CyberRoot documents have been previously addressed in Report #1, which required Defendants to supplement their responses to the First RFP and to the Plaintiff's Fourth RFP. Plaintiff states that Defendants have "failed to produce any documents reflecting the work CyberRoot did for them, and only sketchy information about the financial relationship with that firm." Plaintiff cites to his Exhibit 3, which appears to be a text exchange between two persons not identified to the Special Master. This may be the "sketchy information" Plaintiff refers to in the Motion. Finally, Plaintiff complains that "Defendants have refused to produce their engagement letter(s) with CyberRoot, despite Mr. Del Rosso's testimony that it exists," citing to portions of the transcript of the Rule 30(b)(6) Deposition of Vital Management

---

[2] Defendants also state at note 3 in their Motion to Stay brief, that documents relating to Massaad are not relevant to Plaintiff's allegation in this matter.

Services, Inc. (the "VMS Deposition"). *See* Exhibit 4 to the Compliance Motion.[3] Plaintiff notes that Dechert engaged Defendants in September 2014, and that Defendants then engaged CyberRoot in 2014. Plaintiff wonders if the failure to produce engagement letters is because of the Temporal Limitation imposed in Report #1. This limitation imposed on discovery requests a temporal scope of March 2015 – October 15, 2020. Plaintiff correctly notes that the Temporal Limitation has not been imposed on all requests.[4]

Defendants respond that Plaintiff is speculating as to the existence of additional CyberRoot documents. Defendants note that the engagement letters referred to in the VMS Deposition were not improperly withheld, citing Plaintiff's RFP 22 which seeks "all Documents and Communications with or from CyberRoot Risk Advisory" and any of its officers or employees. Defendants correctly note that Report #1 applied the Temporal Limitation and Relevance Limitation to RFP 22, and that they withheld engagement letters with CyberRoot based on those limitations. Finally, Defendants state that other than the withheld engagement letters, Defendants are not in possession of or control of any additional documents relating to CyberRoot.

    iii.   <u>NTi Reports</u>

---

[3] In the VMS Deposition, Del Rosso stated that he was "pretty sure" there was a written engagement letter with CyberRoot "somewhere" and that "if it exists, and I have very strong suspicion that it does, it will be with my lawyers, yes." VMS Deposition, p. 98:9-25. He also stated that VMS retained CyberRoot in 2014. *Id.*, 161:17-19; 94:14-18.

[4] Plaintiff cites to Special Discovery Master Report and Decision #5 (determining that if any trade secret document identified by Plaintiff referred to a creation date outside of the temporal scope, discovery could be had outside the scope); Report #6 (determining that the Temporal Limitation was not intended to prevent relevant discovery and where Plaintiff claimed that a document predating March 2015 was a trade secret, the Defendant could inquire as to information or documents outside the scope, and that in some instances discovery outside the scope may be necessary to provide a relevant historical context); and an April 25, 2024, email determination (requiring Defendants to produce relevant information from the A&M Report, even though that report was created outside the temporal scope).

4

Plaintiff states that Defendants have not produced NTi reports "analyzing Mr. Azima's stolen data." Citing the VMS Deposition at 49:12-51:5, Plaintiff states that Del Rosso testified he "received dozens" of the reports yet Defendants have only logged and claimed privilege over one.

Defendants respond that they have logged for privilege over 60 NTi reports (asserting RAK's privilege).

### B. Special Master's Report and Decision

#### i. Documents Relating to Plaintiff's Associates

Plaintiff notes Defendants' earlier objections to the relevance of documents relating to Massaad and concludes that because Defendants have produced no documents relating to Massaad following Report #1 and the additional determinations regarding Plaintiff's Associates, Defendants are "refusing to produce documents related to any of Plaintiff's Associates." Defendants state affirmatively in their response that they "produced *zero* documents related to Plaintiff's Associates *because there are no additional documents to produce*" (emphasis in original). Particular to Mr. Massaad, Defendants noted their earlier and continued questioning as to the relevance of documents relating to him, but stated that "other than documents withheld on privilege grounds and logged…no documents were withheld from production." Based on these affirmations from counsel for Defendants, there is no basis for any further action from the Special Master.

#### ii. Documents Related to CyberRoot

With respect to the CyberRoot engagement letters, the Special Master finds that although they may be outside the temporal scope (i.e., before March 2015), they are related to the work done by CyberRoot on behalf of Defendants, which both the Court and the Special Master have determined is relevant to the claims and defenses. Importantly, they relate to the historical context of the relationship between Defendants and VMS, both in terms of

5

timing and substance. Therefore, Report #1 is modified to remove the Temporal Limitation from RFP 22, and as to the engagement letters only, the Relevance Limitation. Defendants should produce any additional responsive documents.

iii.    NTi Reports

A review of the privilege logs provided by Defendants shows that numerous NTi reports were logged, rather than just the one cited by Plaintiff. If there are any other disputes regarding the NTi report production, the Parties shall meet and confer and, if not resolved, bring them to the attention of the Special Master.

2.  **The ALG Documents Motion**

A.    Background and Arguments

Special Master Report and Decision #5 ("Report #5") addressed Defendants' two subpoenas to ALG Transportation, Inc. ("ALG"): a subpoena for the production of documents (the "Document Subpoena") and a subpoena for a 30(b)(6) deposition and production of documents (the "Deposition Subpoena"). Report #5 required ALG to produce certain documents requested through the Document Subpoena and certain documents requested through the Deposition Subpoena (the "Revised Requests"). Defendants' motion seeks to compel Plaintiff and ALG to produce additional documents pursuant to the Document Subpoena. Defendants state that in response to Report #5, ALG produced 126 documents, all "derived from Plaintiff's or Ray Adams' (an ALG officer) computer and publicly available biennial registration reports." Defendants state that the corporate representative identified multiple custodians who might possess responsive documents, yet the representative testified that "he did not search for responsive documents other than to look for annual corporate reports."

Defendants state that ALG only produced documents helpful to Plaintiff and "withheld damaging evidence." As an example, Defendant cites an alleged trade secret

6

identified by Plaintiff that is a proposal ALG made to South Sudan, noting that ALG withheld a document showing that "the proposal was a copy of another that unrelated entity had created with the names changed and a minor additional detail." The "withheld" document was produced by Plaintiff, but not by ALG. Defendants also cite an alleged trade secret that was "disclosed to a Jamaican official." According to Defendants, the ALG 30(b)(6) deponent, Ray Adams ("Adams") testified that the Jamaican recipient would keep the information confidential; however, ALG withheld other documents "showing it disseminated proposals to third parties containing the same alleged confidential information but without any request for confidentiality or secrecy."

Defendants also complain that ALG failed to identify publicly available sources from which it "admits" certain trade secrets relating to a facility in Tbilisi, Georgia were derived and that ALG did not produce the documents from those sources "that ALG copied to create its so-called trade secrets." Defendants assert that ALG has failed to cooperate with the Document Subpoena and that the 30(b)(6) deponent testified ALG "barely even tried to do so."

Defendants seek an order that Plaintiff and ALG produce:

i.      all source material used in preparing any of the alleged ALG trade secrets;

ii.      any work performed by Plaintiff, ALG, or their agents, in connection with each alleged trade secret;

iii.      records of all instances of those trade secrets being disclosed to third parties;

iv.      all documents showing any value each alleged trade secret had; and

v.      documents showing whether each alleged trade secret was capable of being reproduced by third parties.

Finally, Defendants want Plaintiff and ALG to obtain and produce documents from "all sources."

Plaintiff responds on his behalf and ALG's, that ALG has fully complied with the subpoenas, as modified by Report #5. Plaintiff says ALG collected documents "from the appropriate sources" – Farhad Azima, Chairman, CEO, and sole owner and board member of ALG, and Ray Adams, who is the President and CFO of ALG." Plaintiff states that ALG conducted "reasonable searches related to those trade secrets, and has produced all non-privileged, responsive documents as required," citing Rule 45's protection of third parties from undue burden or expense. Repeating that ALG "conducted a reasonable search," Plaintiff states that "[a]nything more would be unduly burdensome and beyond the scope of ALG's obligations in responding to the subpoena." With respect to Defendants' complaint that certain documents produced by Plaintiff were not also produced by ALG, Plaintiff asserts that this claim is unreasonable because Defendants have the documents "from Plaintiff's productions" along with the other ALG related information produced by ALG and through the ALG 30(b)(6) deposition (the "ALG Deposition") and the individual deposition of Adams. Plaintiff also notes that he cannot be compelled to produce documents responsive to a subpoena to ALG and that the Defendants are simply trying to compel the production of documents beyond what was permitted in Report #5.

B. <u>Special Master's Report and Decision</u>

Report #5 stated that Defendants were entitled to information from ALG to assist in their defenses to Plaintiff's claims, including how ALG obtained the information, to whom it disclosed the information, and under what circumstances. Additionally, the report determined that Defendants were entitled to probe whether a claimed trade secret is one belonging to Plaintiff or belonging to ALG. Report #5 [Doc. 343, p. 8]. Further, it determined that Defendants were entitled to seek documents directly from ALG, even if those documents had been previously produced by Plaintiff. Plaintiff is correct, that he cannot be compelled to produce documents in response to a subpoena directed to ALG. However, ALG cannot

8

assert Plaintiff's production as a substitute for its own. Nor does it matter that Defendants may have received the same information from Adams or the ALG Deposition. As determined in Report #5, Defendants are entitled to learn what responsive documents are in the possession of ALG.

Plaintiff states twice that "ALG conducted [a] reasonable search." As noted in other Special Master reports (Report #1, Report #6), a search for responsive documents by either party (or in this instance, by ALG) is reasonable only if it meets the requirements of Federal Rules of Civil Procedure 26 and 34, and also as to ALG, Rule 45. Plaintiff asserts that "[a]nything more would be unduly burdensome and beyond the scope" of Rule 45, without setting forth any facts to demonstrate how responding to the subpoena was "unduly burdensome" to ALG. Report #5, through the Revised Requests, has already narrowed the range of documents to be produced and no "undue" burden has been shown.

Further, any burden on ALG must be considered in the context of the threshold issue in this lawsuit, which is Plaintiff's trade secrets. Report #5 determined that the Document Subpoena sought information relevant to the remaining claims and defenses in this matter. Certain trade secrets identified by Plaintiff contain information about ALG, and certain of those documents indicate that ALG had possession of the trade secrets. Given that context, it is reasonable for ALG to search all potential custodians for responsive documents and to produce all responsive documents possessed by ALG, even if already produced by Plaintiff. The ownership or possession of Plaintiff's trade secrets and whether they are protectible are not tangential issues, but determinative ones.

With respect to the searches performed by ALG in responding to the subpoena, Plaintiff also asserts that it is sufficient for ALG to have searched two custodians – Azima and Adams – referring to them as the "appropriate sources." A subpoena directed to an entity, rather than an individual, seeks information from the entity itself, which includes all persons within

9

or associated with the entity who have custody of responsive information. The corporate representative identified other potential custodians who might possess responsive documents. ALG should search all potential custodians for responsive documents and supplement as necessary. The depth and breadth of that search shall comply in all respects with Rules 26 and 45. It is not permissible for ALG not to produce a responsive document because that document may also have been produced by Plaintiff or any other third party.

With respect to Defendants' specific requests in the ALG Documents Motion:

i. <u>All source material used in preparing any of the alleged ALG trade secrets</u>. Revised Request 8 seeks all documents relating to any contention of ALG that the Trade Secrets (as defined therein) derive value "from not being generally known…" If any third-party source material was used to create or prepare any claimed trade secret information in an ALG Document (as defined in the ALG Deposition topics), that material should be produced.

ii. <u>Any work performed by Plaintiff, ALG, or their agents, in connection with each alleged trade secret</u>. This category of documents was not sought in the Document Subpoena and was specifically carved out of the Deposition Subpoena topics. No additional production is required of ALG.

iii. <u>Records of all instances of those trade secrets being disclosed to third parties</u>. Revised Request 9 permits discovery of any agreements with third parties requiring the confidentiality of any trade secret, and such documents should be produced by ALG.

iv. <u>All documents showing any value each alleged trade secret had</u>. This category of documents was excluded from the Revised Requests. No additional production is required of ALG.

v. <u>Documents showing whether each alleged trade secret was capable of being reproduced by third parties</u>. Revised Request 8 seeks documents relating to any contention

of ALG that any trade secret "was readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use." All responsive documents should be produced by ALG.

3. **The ALG Deposition Motion**

    A. <u>Background and Arguments</u>

Report #5 required ALG to submit to a Rule 30(b)(6) deposition on specified topics. That deposition occurred on April 30, 2024, with Adams appearing as ALG's corporate representative. Defendants seek an order compelling ALG to submit to a second deposition. First, Defendants argue that because Adams did not conduct an adequate search for documents, they were prevented from questioning ALG about the unproduced documents. Second, Defendants argue that counsel for ALG prevented the witness from answering certain questions about Plaintiff's trade secrets, including how and from whom the information was obtained by ALG, the confidentiality of that information, and whether ALG was damaged by publication of the information. Defendants also complain that Adams was not permitted to testify as to any documents not containing a Bates stamp and was directed not to testify about whom he was referring to when testifying about harm to ALG when its competitors obtained ALG trade secrets. Third, Defendants state that Adams was not adequately prepared; stating for example, that he could not testify specifically as to what sources were used to prepare a trade secret, admitted to having made no effort to search for or review documents that might contain such information, and could not testify whether third parties involved in the drafting of trade secrets or who had received trade secrets, were required to sign confidentiality agreements. Fourth, Defendants state that Adams testified as to "obviously relevant documents" which were not produced. Lastly, Defendants complain that Adams "was unable to identify all trade secrets belonging to ALG unless a document was put in front of him."

ALG responds that the topics Defendants seek testimony on are topics deemed "improper" in Report #5, pointing to the Special Master's redlining of the Defendants' proposed deposition topics (the "Permitted Topics"). ALG also states that the corporate representative was "more than adequately prepared," noting preparation time of 30 hours. ALG argues that Defendants are using "out-of-context" examples to suggest the witness was unprepared, citing for example, Adams' lack of knowledge regarding the number of drafts of a document he recognized and knew had undergone revisions.

    B.    <u>Special Master's Report and Decision</u>

    i.    <u>Inadequate document search</u>. The issue of whether ALG responded fully to the Document Subpoena is addressed separately in this Report.[5]

    ii.    <u>Instructions not to answer</u>. Defendants state that ALG's counsel instructed the witness not to answer questions 56 times, providing seven examples:[6]

    a.    <u>Exhibit A-1: ALG Deposition Page 59:10-14.</u> The witness was asked whether any information used in an ALG proposal was "identical to the information provided [to a third party]." Permitted Topics 9 (d) and (e) address the use by ALG and third parties of information contained in any ALG Document (as defined in Topic 9), as that use relates to ALG's efforts to protect the secrecy of an alleged trade secret. Topic 10 addresses the publication of any ALG Documents prior to October 15, 2020, and permits inquiry into the circumstances of the publication and the party participating in the publication, among other aspects. Defendants are permitted to inquire as to the use of any

---

[5] *See also,* 3.B.iii.c below.

[6] In addition to the deposition portions submitted by the Parties, the Special Master reviewed the entire transcript to assist with context and other details necessary to consider these motions.

trade secret information in an ALG Document in a proposal to a third party insofar as that use reflects or relates to ALG's efforts (or lack of efforts) to protect the secrecy of any trade secret. [7]

b.  <u>Exhibit A-2: ALG Deposition Pages 57-58.</u> The witness was asked whether General Motors was a past client of ALG, and he responded as to ALG's general work for General Motors and Ford Motor Company.  He was then asked whether Continental Airlines was an ALG "past client in November 2013." 58:9-10.  ALG counsel instructed the witness not to answer because the question was beyond the scope of the Permitted Topics. Defendants assert that the purpose of this question was to determine whether information contained in the alleged trade secrets (a list of clients or customers) "was even accurate or true." No Permitted Topic allows Defendants to inquire as to the veracity of the alleged trade secrets information.

c.  <u>Exhibit A-3: ALG Deposition Pages 23-27.</u> The witness was asked a series of questions regarding ALG's "relationship" with other third-party entities, specifically Alpha Avia FZC, ALG (UK), Caucus International, LLC, Azra, LLC, Georgian, LLC, and Penta Aviation. The witness was instructed not to answer most of these relationship questions. Report #5 addressed Defendants' contention that they were "entitled to seek discovery regarding ALG's 'relationship with several other associated entities that appear in the

---

[7] Report #5 noted that "[i]t is reasonable for Defendants to obtain certain information from ALG regarding any alleged trade secret claimed by Plaintiff that is either an ALG generated document or one that contains information regarding ALG and its activities, including development, ownership, and use of the alleged trade secret. It is also reasonable for Defendants to probe whether an alleged trade secret is one that belongs to ALG solely or jointly with Plaintiff, and to what extent Plaintiff's alleged trade secrets are incorporated in any ALG documents, including the derivation of their inclusion."

Plaintiff's trade secret documents'" and specifically permitted Defendants to "ask questions of ALG regarding the legal structure and relationship between ALG and the entities listed at FA_MDNC_01011804." The entities listed above are included at FA_MDNC_01011804. Defendants are entitled to inquire as to the legal structure and relationship between ALG and the listed entities.

The witness was asked whether certain third-party entities owned any trade secrets and whether Plaintiff was contending that any trade secrets of these entities are at issue in this lawsuit. These questions are outside the Permitted Topics and not otherwise allowed by Report #5.

The witness was asked as to certain third-party entities, whether any information from them was provided to ALG for the purposes of creating a trade secret. Report #5 stated that it was "reasonable for Defendants to obtain certain information from ALG regarding any alleged trade secret claimed by Plaintiff that is either an ALG generated document or one that contains information regarding ALG and its activities, including development, ownership, and use of the alleged trade secret." Topic 9(a) permits the discovery of the "person responsible for providing the information contained in each ALG Document." This would include whether a third-party entity provided any of the information to ALG. Defendants can inquire as to whether any third-party provided any alleged trade secret information contained in an ALG Document.

d. <u>Exhibit A-4: Pages 38-39</u>. The witness was asked about the relationship "between your corporation" and ALG, and additional questions regarding the witness's corporation. Report #5 stated that the ALG Deposition was limited to information within the corporate knowledge of ALG only and that the

14

witness was appearing only as the corporate representative and not individually. However, if the witness's corporation referred to is listed on FA_MDNC_01011804, inquiries can be made as to the corporation as set forth in B.ii.c. above. Additionally, Defendants can inquire whether his corporation provided any alleged trade secret information contained in an ALG Document. <u>Exhibit A-5: Pages 23-24.</u> This was addressed in 3.B.ii.c. above.

e.   <u>Exhibit A-6: Pages129-131</u>. The witness was asked to identify certain individuals (Fadi Abuhamdeh, Bob Rau, Alan Baird, George Molodinashvili, and Georgie Machutadze). The witness was instructed not to answer unless counsel for Defendants could "tie this to what you've been authorized to depose him on." Defendants suggest in the Deposition Motion that these individuals were "named in trade secrets." To the extent any of these individuals are named in an ALG Document (as defined in Topic 9), Defendants are permitted to inquire as to their general relationship with ALG, their participation in the development or use of any trade secrets, and their participation in any efforts or lack of efforts by ALG to maintain the secrecy of any trade secret, including whether or not they had any non-disclosure agreements or other agreements regarding the confidentiality of ALG's trade secrets.

f.   <u>Exhibit A-7: Pages 104-105</u>. The witness was asked how ALG had been harmed by the disclosure of certain pricing information. He responded that ALG's "competitors now have that information." He was then asked the identities of the competitors who had the information. After responding, "I couldn't tell you," he was instructed not to answer. He was then asked to name or identify "any way in which a competitor has used that information" and the witness was instructed not to answer. In response to the question of whether ALG had

15

"any proof that any competitor obtained that information," the witness responded "No." ALG counsel correctly noted that Report #5 had deleted the topic of "ALG's customers and competitors, including any work, sales or other transactions concerning ALG's customers." However, Permitted Topic 11 allows inquiry into "how any value relating to any purported trade secrets in each ALG Document was impacted by the alleged publication and/or disclosure of that information by Defendants(s)." The witness testified that ALG was harmed by the publication of certain information and the harm was specifically related to competitors having the information. Defendants are entitled to probe the specific harm to ALG, as permitted by Topic 11, which because of the witness's answer, includes the identification of the specific competitors and how they might make use of the information to the detriment of ALG.

g. <u>Exhibit 8: Page 61</u>. Regarding Deposition Exhibit ALG 6, counsel for ALG instructed the witness not to answer questions regarding the document because it had not been produced to the Plaintiff (the presumption being that it was not produced because it did not contain a Bates number). This is no basis for the witness not to answer.

iii. <u>Preparation of Witness</u>. Adams testified that he had two two-hour Zoom sessions with ALG's counsel and three eight to ten hours in person sessions with ALG's counsel in preparation for the ALG Deposition. However, the amount of time is not by itself indicative of an adequate preparation. ALG cites two cases for the proposition that a corporate designee is not required to "speak with encyclopedic authority" and must only "make a good-faith effort to learn sufficient information to address" the identified topics. *See CM Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 361 (N.D. Iowa 2017) and *McKay v. Experis US Inc.*, No. 20-cv-00139, 2021 WL 6200171, at *1 (E.D.N.C. Nov. 17, 2021). While

16

*McKay* does note the obligation of a designee without personal knowledge of certain topics to make a good-faith effort to learn sufficient information about the topics, it also states that this obligation includes consulting "documents, present or past employees, or other sources" if the "matters are reasonably available." *See id.*

Rule 30(b)(6) requires an entity to prepare its designee "so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *See United States v. Taylor*, 166 F.R.D. 356, 360-61 (M.D.N.C. 1996) (citing *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)); *see also, McKay*, 2021 WL 6200171, at *1 (witness must be prepared to "'fully and unevasively answer questions about the designated subject matter.'") (citation omitted). That preparation can include making a "good-faith effort to learn sufficient information" to respond to the designated topics, including the consultation of "'documents, present or past employees, or other sources.'" *Id.* (citation omitted). If the witness cannot adequately address all questions, the organization must "'substitute another person'" once the deficiency is known during the course of the deposition. *Marker,* 125 F.R.D. at 126 (citations omitted). Like an individual, a corporation "may plead lack of memory." *United States*, 166 F.R.D. at 361. However, if the corporation states it has no knowledge or position as to a set of alleged facts or area of inquiry at a Rule 30(b)(6) deposition," it cannot argue for a contrary position at trial without introducing evidence explaining the reasons for the change." *Id.* at 362.

Defendants' examples of alleged inadequate preparation are examined within the above framework.

    a. <u>Exhibit B: Page 84</u>. Regarding ALG Deposition Exhibit ALG 9, the witness was asked how many drafts he went through before preparing the document. He could not recall but did state that he "would have circulated it to our team, our

operations team, our maintenance team [and] to Mr. Azima," all of whom "would have [] had input." When asked whether there were any documents reflecting that input, he "guess[ed]" that there would be email correspondence and that he had not reviewed such correspondence. Permitted Topic 9(a) seeks the person responsible for providing information contained in each ALG Document, while 9(b) seeks the person responsible for preparing each ALG Document. The witness testified that he prepared Deposition Exhibit ALG 9, but did seek input from others in the ALG organization ("our operations team, our maintenance team") and Azima (the owner of ALG). Defendants' complaint is that the witness was not familiar with documents reflecting that input and had not looked for such documents. The Permitted Topics do not cover how many drafts were prepared for any particular AGL Document or familiarity with the specific input to an ALG Document coming from within ALG. It is sufficient that the witness identifies the ALG persons who provided information included in the document. However, the inquiry is different with respect to third parties. Permitted Topic 7 addresses "[c]onfidential information which ALG believes to be ALG's trade secret information…" Permitted Topic 9 (e) addresses the use by any person or entity of any information contained in any ALG Document, as that use related to ALG's efforts (or lack thereof) to protect the secrecy of an alleged trade secret. These topics are relevant both to the ownership of a trade secret and whether it has been maintained in confidence. If the answer to these questions requires a review of documents, the witness should review and be prepared to respond.

b. Exhibit D: Page 133. The witness was asked whether he had seen any agreement with Alan Baird, and he said he had not. He was then asked about the "terms of [Baird's] consulting relationship" and the witness replied that he had not seen an

agreement. Finally, he was asked whether Baird was ever under a nondisclosure agreement with ALG, and he said he did not know. The witness stated on page 131 that Baird did work for ALG and that he was listed in a proposal that is part of the ALG Documents. On page 152, he stated that Baird gave input into certain parts of ALG 13. Permitted Topic 4 is "[a]ny non-disclosure or confidentiality agreements executed by ALG related to the Trade Secrets." The witness should have been prepared to respond to questions about any non-disclosure or confidentiality agreement between ALG and Baird, or the lack of any such agreement.

c. <u>Exhibit E-1: Page 66; Exhibit E-2: Page 127; Exhibit E-3: 165-166.</u> Defendants assert that the testimony on these pages related to "obviously relevant documents, which have not been produced despite being requested." The document referenced at E-1 is a proposal to Air Jamaica that was subsequent to the one contained in ALG Dep. Exhibit ALG 5. The Special Master is not privy to the unproduced document. If the document is responsive to any of the Revised Requests, ALG should produce it. Exhibit E-2 discusses a document that appears to have a job description in it and also contained nondisclosure language. Employee-related documents containing nondisclosure language would be responsive to Revised Requests 2, 9 and 11. If the document is responsive to any of the Revised Requests, ALG should produce it. Exhibit E-3 relates to cited sources for information in an ALG document. Sources of ALG trade secret information are addressed at 2.B.i. above.

d. <u>Exhibit F: Pages 226-237.</u> The witness testified that he was aware of "seven ALG trade secrets," but could only recall four of them. He agreed that he was to testify about ALG's trade secrets, but stated that he could not remember the details "off

19

the top of [his] head." As to the remaining three, he could not recall whether they were based on publicly available information, whether they were shown widely to third parties, and in response to the question of whether he could recall anything about them, he asked to see the documents. When shown ALG Dep. Exhibit ALG 2, the witness was unable to delineate in that list of claimed trade secrets which were ALG trade secrets. A review of the entire ALG Deposition transcript shows that the witness had previously identified all seven ALG-related alleged trade secrets and answered questions with respect to all of them. That he could not identify them from memory later in the deposition or not locate them in Plaintiff's list of trade secrets is not indicative of inadequate preparation. At that point, counsel for Defendants could have provided the already identified exhibits to the witness to assist in his recall.

## **General Instructions**

1.    Any additional productions to be made pursuant to this Report shall be made on or before July 31, 2024.

2.    Defendants shall be permitted up to 90 minutes of additional ALG deposition time. The resumed deposition shall occur only after ALG has made the appropriate supplemental production, as required by this Report. The resumed deposition may be conducted virtually.

3.    The Permitted Topics, as explicated herein, are still in place and no topics beyond them can be explored in the resumed deposition. Additionally, only the questions/topics addressed in this Report may be explored in the resumed deposition.

4.    If the Parties have any questions about the interpretation of this Report, a conference with the Special Master can be convened prior to the resumed deposition.

This, the 10th day of July, 2024.

_____

Alice C. Richey
Special Master