## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CASE NO. 20-cv-954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>    v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>    Defendants. | **PLAINTIFF FARHAD AZIMA'S THIRD SUPPLEMENTAL RESPONSES AND OBJECTIONS TO THE FIRST SET OF INTERROGATORIES FROM DEFENDANTS NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC. (NOS. 1-12)** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and in satisfaction of the Special Master's Report and Decision #6 issued on April 15, 2024, Plaintiff Farhad Azima ("Plaintiff" or "Azima") serves the following supplemental responses and objections (the "Supplemental Responses") to the First Set of Interrogatories served by Defendants Nicholas Del Rosso and Vital Management Services, Inc. (the "Interrogatories").

### GENERAL OBJECTIONS

Azima maintains his General Objections, and restates them here:

1.      Azima objects to the Interrogatories to the extent they contradict or seek to impose obligations on Azima that exceed the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, an order of the Court, or any other applicable law or rule.

2.      Azima objects to the Interrogatories to the extent they purport to require Azima to provide information that is subject to or protected by the attorney-client

privilege, attorney work product doctrine, joint defense or common interest privilege, or any other applicable claim of privilege or related protective doctrine.

3.      Azima objects to the Interrogatories to the extent they seek information that are not in Azima's possession, custody, or control.

4.      Azima objects to the Interrogatories to the extent they seek information that is irrelevant to any party's claims or defenses and disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

5.      Azima objects to the Interrogatories to the extent they seek information that is outside the scope of discovery that Defendants have used to govern discovery in this matter.

6.      Azima objects to the Interrogatories to the extent they improperly impose a continuing obligation on Azima to supplement his discovery responses that is greater than the duty of supplementation established by Rule 26(e) of the Federal Rules of Civil Procedure.  Azima will supplement his responses and objections as required by the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, or other applicable Court orders, rules or laws.

7.      Azima objects to the Interrogatories to the extent they seek information that Defendants have already had ample opportunity to obtain through discovery in this action.

8. Subject to General Objection 6, discovery in this matter is ongoing and Azima reserves the right to supplement his responses as necessary. Azima's responses are made without waiving, in any way, the right to object on any proper grounds to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or in any other action, or on any grounds, at any time, to any other Requests or Interrogatories or proceeding involving or relating to the subject matter of these disclosures.

**OBJECTIONS TO SPECIFIC DEFINITIONS OR INSTRUCTIONS**

Azima maintains his Objections to Specific Definitions and Instructions, and restates them here:

1. Azima objects to the definition of "Plaintiff" as overbroad because it defines those terms as any "present or former agents, employees, representatives, or any other person action his [Azima's] behalf, including attorneys." Azima has been involved in international and domestic business for several decades and thus he has employed many agents, employees, representatives, and attorneys who have no connection to this case and performed no act related to the claims and defenses in this case. Azima also objects to this definition to the extent it seeks information, documents, or communications protected by the attorney-client privilege, joint defense or common interest privilege, attorney work product doctrine, or any other applicable privilege. Based on and subject to these objections, Azima will interpret the term "Plaintiff" to mean Mr. Farhad Azima and his counsel of record in this matter.

3

2. Azima objects to the definitions of "Document," "Documents," and "Communications" to the extent those definitions contradict or expand the definition of those terms under applicable law. Azima further objects to the definition of metadata to the extent it contradicts the definition of metadata in the Federal Rules of Civil Procedure or applicable law or imposes obligations on Azima that exceed the obligations of the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, or any other applicable law.

3. Azima objects to the definitions of "wire statements" and "financial account statements" to the extent those definitions contradict or expand the definitions of those terms under applicable law. Azima further objects to these definitions to the extent they purport to require Azima to produce burdensome and/or duplicative records. Azima further objects to these definitions to the extent they impose obligations on Azima that exceed the obligations of the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, or any other applicable law.

4. Azima objects to the definition of "calendar records" to the extent it requires Azima to produce disproportionate, burdensome, and/or duplicative records in violation of Federal Rule of Civil Procedure 26. Azima further objects to this definition to the extent it imposes obligations on Azima that exceed the obligations of the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, or any other applicable law.

Case 1:20-cv-00954-WO-JLW   Document 379-2   Filed 07/15/24   Page 4 of 55

5. Azima objects to the definition of "Transaction" to the extent it contradicts or expands the definition of this term under applicable law. Azima further objects to this definition to the extent it to refers to "planned, proposed, [or] contemplated" Transactions that are outside the scope of discovery in Federal Rule of Civil Procedure 26. Azima further objects to this definition to the extent it imposes obligations on Azima that exceed the obligations of the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, or any other applicable law.

6. Azima objects to Instruction 1 to the extent it requires Azima to provide information from entities or individuals outside of his possession, custody, or control. Azima further objects to this instruction to the extent it imposes additional obligations on Azima other than the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, or any other applicable law.

7. Azima objects to Instructions 2-7 to the extent they impose additional obligations on Azima other than the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, or any other applicable law.

8. Azima objects to Instruction 9 to the extent it imposes additional obligations on Azima other than the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules for the Middle District of North Carolina, or any other applicable law.

## SECOND SUPPLEMENTAL RESPONSES

Azima maintains his Specific Objections to Defendants' Interrogatories and incorporates them into each Supplemental Response. Azima does not restate each of those objections here.

**INTERROGATORY NO. 3**: **In an April 5, 2023 cover letter to Plaintiff's first response to Defendants' First Set of Requests for Production, Plaintiff explained that the enclosed production includes "documents published on WeTransfer, including Plaintiff's [purported] trade secrets." Within said production, identify by Bates number and describe in detail each alleged Trade Secret that Plaintiff contends that Defendants have misappropriated or unlawfully used or disclosed by purportedly publishing this information, including in May and June of 2018 and June 2019, as alleged in the Complaint.**

**SUPPLEMENTAL RESPONSE**: Subject to the foregoing general objections and without waiving his initial specific objections, Plaintiff supplements his response to this Interrogatory as follows:

On April 1, 2024, in compliance with the Special Master's Report and Decision #1, Plaintiff provided Defendants a chart updating Plaintiff's identification of his trade secrets (hereinafter, "Trade Secret Identification Chart"). As explained at that time, and again now, Plaintiff's Trade Secret Identification Chart replaces any prior identification Plaintiff has made. It is attached hereto as **Exhibit 1**.

The Trade Secret Identification Chart identifies the trade secret number in the first column. In the second column, it identifies the entire bates range of the trade secret. The vast majority of Plaintiff's trade secrets are compilations of information, consisting of multiple documents that, when combined as a whole, constitute a trade secret because they reflect his unique knowledge and experience in his business and give him a competitive advantage. To assist Defendants, Plaintiff has also identified

6

the bates ranges of each individual document that makes up trade secrets that are compilations of information, such as the bates range of a cover email and the bates range of the attachment.

In the third column, the Trade Secret Identification Chart provides more information describing the trade secret. If a trade secret is a compilation of information, it so states. If a document by itself is a trade secret, it has been identified as such. If only a portion of a document is a trade secret, that portion is highlighted and so indicated. And finally, for some trade secrets that constitute compilations of information, they also contain unique trade secrets within those compilations. For those, we have highlighted the individual trade secrets that exist within compilations of trade secrets.[1]

For trade secrets that are compilations of information, Plaintiff has ensured that all components of that trade secret (i.e., attachments and cover emails) are properly included. To assist Defendants in understanding any differences from the previous set of documents we identified as trade secrets, Plaintiff has bolded those previously identified in his March 1st submission and left un-bolded any new parent or child attachments.

**INTERROGATORY NO. 5: For each alleged Trade Secret identified in Your response to ROG Nos. 3 and 4, identify and describe all facts supporting**

---

[1] There had previously been confusion regarding highlighting in a document Bates stamped as FA_MDNC_01027231. To be clear, this highlighting was not added by Plaintiff and appears in the native version of the document.

Case 1:20-cv-00954-WO-JLW   Document 379-2   Filed 07/15/24   Page 7 of 55

**Farhad Azima's ownership of *each* alleged Trade Secret, including all other Persons with knowledge of or an interest in each alleged Trade Secret.**

**SUPPLEMENTAL RESPONSE**: Subject to the foregoing general objections and without waiving his initial specific objections, Plaintiff supplements his response to this Interrogatory as follows:

***Trade Secret No. 1*** — Plaintiff is an owner of this trade secret. It is a financial forecast related to one of Plaintiff's companies, HeavyLift International. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

***Trade Secret No. 2*** — Plaintiff is an owner of this trade secret. It is a financial forecast related to one of Plaintiff's companies, HeavyLift International. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

***Trade Secret No. 3*** — Plaintiff is an owner of this trade secret. It is a financial forecast related to one of Plaintiff's companies, Brownies Global Logistics (BGL). Plaintiff partially owns JFJ International Logistics, LLC, which in turn, partially owns BGL. Plaintiff owns all documents and information generated by his

8

companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

***Trade Secret No. 4*** — Plaintiff is an owner of this trade secret. It is a financial forecast related to one of Plaintiff's companies, Smokehouse BBQ. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

***Trade Secret No. 5*** — Withdrawn.

***Trade Secret No. 6*** — Plaintiff is an owner of this trade secret. It is a summary of forecasted financial performance for one of Plaintiff's companies, AeroTech, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

***Trade Secret No. 7*** — Plaintiff is an owner of this trade secret. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. Plaintiff owns all documents and

Case 1:20-cv-00954-WO-JLW   Document 379-2   Filed 07/15/24   Page 9 of 55

information generated by his companies. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 8* — Plaintiff is an owner of this trade secret. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. Plaintiff owns all documents and information generated by his companies. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 9* — Plaintiff is an owner of this trade secret. It is an email attaching a proposal for re-launching an airline related to one of Plaintiff's companies, ALG Transportation, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 10* — Plaintiff is an owner of this trade secret. It is an email attaching an excel of target aircraft and clients for a maintenance, repair, and operations (MRO) project related to one of Plaintiff's companies, ALG Transportation, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction. These individuals had to exercise unique judgment and experience to identify and catalog

10

the information related in this trade secret. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

***Trade Secret No. 11*** — Plaintiff is an owner of this trade secret. It is an email attaching a forecast and financial statements for an MRO project related to one of Plaintiff's companies, ALG Transportation, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

***Trade Secret No. 12*** — Plaintiff is an owner of this trade secret. It is an email attaching a joint proposal for a USAID project by one of Plaintiff's companies, HeavyLift International, Inc., and another company, MG Services Limited RAKFTZ. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

***Trade Secret No. 13*** — Plaintiff is an owner of this trade secret. It is an email attaching a confidential presentation and attaching a feasibility study and business plan for a proposed expansion related to one of Plaintiff's companies, HeavyLift

11

International, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction. The business plan bears a watermark for "Mach Two," which "[p]repared [the business plan] for HeavyLift International." Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 14* — Plaintiff is an owner of this trade secret. It is an email attaching an MRO business plan related to one of Plaintiff's companies, HeavyLift International, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 15* — Plaintiff is an owner of this trade secret. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, HeavyLift International, Inc. Plaintiff owns all documents and information generated by his companies. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 16* — Plaintiff is an owner of this trade secret. It is an email attaching a proposal for a new airline related to one of Plaintiff's companies,

12

HeavyLift International, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**Trade Secret No. 17** — Plaintiff is an owner of this trade secret. It is an email attaching an expansion plan and associated forecast related to one of Plaintiff's companies, HeavyLift International, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**Trade Secret No. 18** — Plaintiff is an owner of this trade secret. It is a financial forecast related to the performance of one of Plaintiff's companies, Shollar Bottling Co. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. This trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**Trade Secret No. 19** — Plaintiff is an owner of this trade secret. It is an email attaching a teaser, management presentation, and investor list related to one of

Plaintiff's companies, HeavyLift International, Inc.  Plaintiff owns all documents and information generated by his companies.  This trade secret was prepared by individuals working under Mr. Azima's direction.  The proprietary teaser is watermarked "Keynote," and was sent by an individual at "H.C. Wainwright."  These companies acted at HeavyLift's direction.  Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 20* — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

*Trade Secret No. 21* — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

*Trade Secret No. 22* — Plaintiff is an owner of this trade secret.  It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC.  Plaintiff owns all documents and information generated by his companies.  Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 23* — Plaintiff is an owner of this trade secret.  It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC.  Plaintiff owns all documents and information generated by his companies.  Independent of Plaintiff's ownership

14

interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 24* — Plaintiff is an owner of this trade secret. It is an email attaching a presentation and management presentation related to one of Plaintiff's companies, HeavyLift International, Inc. The Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction. The presentation is watermarked "Cantor Fitzgerald," but it was prepared for HeavyLift and reflects its confidential information. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 25* — Plaintiff is an owner of this trade secret. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. Plaintiff owns all documents and information generated by his companies. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 26* — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

*Trade Secret No. 27* — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

15

**Trade Secret No. 28** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

**Trade Secret No. 29** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

**Trade Secret No. 30** — Plaintiff is an owner of this trade secret. It is forecast related to an Intelligence, Surveillance, and Reconnaissance (ISR) project related to one of Plaintiff's companies, ALG Transportation, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**Trade Secret No. 31** — Plaintiff is an owner of this trade secret. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. Plaintiff owns all documents and information generated by his companies. This trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**Trade Secret No. 32** — Plaintiff is an owner of this trade secret. It is a financial forecast and business plan for an MRO related to one of Plaintiff's companies, ALG Transportation, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working

16

under Mr. Azima's direction. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 33* — Plaintiff is an owner of this trade secret. It is proposal for an ISR project related to one of Plaintiff's companies, ALG Transportation, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction. The proposal is watermarked "Global Defense Services," which worked with ALG on the proposal. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 34* — Plaintiff is an owner of this trade secret. It is an email attaching a financial forecast related to one of Plaintiff's companies, HeavyLift International, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's direction, including Ray Adams. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

*Trade Secret No. 35* — Plaintiff is an owner of this trade secret. It is an email attaching a fleet study related to one of Plaintiff's companies, HeavyLift International, Inc. Plaintiff owns all documents and information generated by his companies. This trade secret was prepared by individuals working under Mr. Azima's

17

direction. It was prepared by Bombardier for HeavyLift International, Inc. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**Trade Secret No. 36** — Plaintiff is an owner of this trade secret. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. Plaintiff owns all documents and information generated by his companies. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**Trade Secret No. 37** — Plaintiff is an owner of this trade secret. It is a price quote for a government contract related to one of Plaintiff's companies, Shollar Bottling Co. Plaintiff owns all documents and information generated by his companies. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**Trade Secret No. 38** — Plaintiff is an owner of this trade secret. It is an email related to one of Plaintiff's companies, Shollar Bottling Co., reflecting internal company assumptions. Plaintiff owns all documents and information generated by his companies. Independent of Plaintiff's ownership interest in the document itself, this trade secret reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

Case 1:20-cv-00954-WO-JLW   Document 379-2   Filed 07/15/24   Page 18 of 55

***Trade Secret No. 39*** — Plaintiff is an owner of this trade secret. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. Plaintiff owns all documents and information generated by his companies. Independent of Plaintiff's ownership interest in the document itself, this trade secret is a compilation that reflects Plaintiff's experience and knowledge, which is unique to and owned by Mr. Azima.

**INTERROGATORY NO. 6: For each alleged Trade Secret identified in Your response to ROG Nos. 3 and 4, explain and describe all facts regarding how *each* alleged Trade Secret derives independent, actual, or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by Persons who can obtain economic value from its disclosure or use.**

**SUPPLEMENTAL RESPONSE**: Subject to the foregoing general objections and without waiving his initial specific objections, Plaintiff supplements his original response to this Interrogatory as follows:

***Trade Secret No. 1*** — Plaintiff's trade secret is valuable. It is a financial forecast related to one of Plaintiff's companies, HeavyLift International. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model similar financial information, which would allow them to gain a competitive edge.

***Trade Secret No. 2*** — Plaintiff's trade secret is valuable. It is a financial forecast related to one of Plaintiff's companies, HeavyLift International. Plaintiff

19

owns all documents and information generated by his companies. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model similar financial information, which would allow them to gain a competitive edge.

*Trade Secret No. 3* — Plaintiff's trade secret is valuable. It is a financial forecast related to one of Plaintiff's companies, Brownies Global Logistics (BGL). Plaintiff partially owns JFJ International Logistics, LLC, which in turn, partially owns BGL. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics industry to model similar financial information, which would allow them to gain a competitive edge.

*Trade Secret No. 4* — Plaintiff's trade secret is valuable. It is a financial forecast related to one of Plaintiff's companies, Smokehouse BBQ. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has

20

value. This information would be also valuable to Plaintiff's competitors to model similar financial information, which would allow them to gain a competitive edge.

***Trade Secret No. 5*** — Withdrawn.

***Trade Secret No. 6*** — Plaintiff's trade secret is valuable. It is a summary of forecasted financial performance for one of Plaintiff's companies, AeroTech, Inc. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model similar financial information, which would allow them to gain a competitive edge.

***Trade Secret No. 7*** — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It reflects confidential contractor information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposal, which would allow them to gain a competitive edge.

***Trade Secret No. 8*** — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It reflects confidential contractor information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate

revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposals, which would allow them to gain a competitive edge.

**Trade Secret No. 9** — Plaintiff's trade secret is valuable. It is an email attaching a proposal for re-launching an airline related to one of Plaintiff's companies, ALG Transportation, Inc. It reflects a unique aspects of Plaintiff's business model and information about company capabilities. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and present similar projects, which would allow them to gain a competitive edge.

**Trade Secret No. 10** — Plaintiff's trade secret is valuable. It is an email attaching an excel of target aircraft and clients for a maintenance, repair, and operations (MRO) project related to one of Plaintiff's companies, ALG Transportation, Inc. It reflects a curated and unique list of target aircraft and clients for a maintenance, repair, and operations (MRO) project, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

***Trade Secret No. 11*** — Plaintiff's trade secret is valuable. It is an email attaching a forecast and financial statements for an MRO project related to one of Plaintiff's companies, ALG Transportation, Inc. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

***Trade Secret No. 12*** — Plaintiff's trade secret is valuable. It is an email attaching a joint proposal for a USAID project by one of Plaintiff's companies, HeavyLift International, Inc., and another company, MG Services Limited RAKFTZ. It reflects a unique business model, pricing information, and information about company capabilities. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the government contracting industry in submitting competing or new proposals, which would allow them to gain a competitive edge.

***Trade Secret No. 13*** — Plaintiff's trade secret is valuable. It is an email attaching a confidential presentation and attaching a feasibility study and business plan for a proposed expansion related to one of Plaintiff's companies, HeavyLift International, Inc. It reflects a unique aspects of Plaintiff's business model, pricing information, and information about company capabilities. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has

Case 1:20-cv-00954-WO-JLW   Document 379-2   Filed 07/15/24   Page 23 of 55

value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

***Trade Secret No. 14*** — Plaintiff's trade secret is valuable. It is an email attaching an MRO business plan related to one of Plaintiff's companies, HeavyLift International, Inc. It reflects unique aspects of Plaintiff's business model, pricing information, and information about company capabilities. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

***Trade Secret No. 15*** — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, HeavyLift International, Inc. It reflects internal contractor and pricing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposals, which would allow them to gain a competitive edge.

***Trade Secret No. 16*** — Plaintiff's trade secret is valuable. It is an email attaching a proposal for a new airline related to one of Plaintiff's companies,

24

HeavyLift International, Inc. It reflects unique aspects of Plaintiff's business model, pricing information, and information about company capabilities. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

*Trade Secret No. 17* — Plaintiff's trade secret is valuable. It is an email attaching an expansion plan and associated forecast related to one of Plaintiff's companies, HeavyLift International, Inc. It reflects unique aspects of Plaintiff's business model, pricing information, and information about company capabilities. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

*Trade Secret No. 18* — Plaintiff's trade secret is valuable. It is a forecast related to one of Plaintiff's companies, Shollar Bottling Co. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics industry to model similar financial information, which would allow them to gain a competitive edge.

***Trade Secret No. 19*** — Plaintiff's trade secret is valuable. It is an email attaching a teaser, management presentation, and investor list related to one of Plaintiff's companies, HeavyLift International, Inc. It reflects unique aspects of Plaintiff's business model, pricing information, and information about company capabilities. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

***Trade Secret No. 20*** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

***Trade Secret No. 21*** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

***Trade Secret No. 22*** — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It reflects internal contractor and pricing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposals, which would allow them to gain a competitive edge.

***Trade Secret No. 23*** — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It reflects internal contractor and pricing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposals, which would allow them to gain a competitive edge.

***Trade Secret No. 24*** — Plaintiff's trade secret is valuable. It is an email attaching a presentation and management presentation related to one of Plaintiff's companies, HeavyLift International, Inc. It reflects unique aspects of Plaintiff's business model, pricing information, and information about company capabilities. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

***Trade Secret No. 25*** — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It reflects internal contractor and pricing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him

generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposals, which would allow them to gain a competitive edge.

***Trade Secret No. 26*** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

***Trade Secret No. 27*** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

***Trade Secret No. 28*** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

***Trade Secret No. 29*** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

***Trade Secret No. 30*** — Plaintiff's trade secret is valuable. It is forecast related to an Intelligence, Surveillance, and Reconnaissance (ISR) project related to one of Plaintiff's companies, ALG Transportation, Inc. Plaintiff owns all documents and information generated by his companies. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model similar financial information, which would allow them to gain a competitive edge.

28

***Trade Secret No. 31*** — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It reflects internal contractor and pricing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposals, which would allow them to gain a competitive edge.

***Trade Secret No. 32*** — Plaintiff's trade secret is valuable. It is a financial forecast and business plan for an MRO related to one of Plaintiff's companies, ALG Transportation, Inc. It reflects a unique list of target aircraft and clients for a maintenance, repair, and operations (MRO) project, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

***Trade Secret No. 33*** — Plaintiff's trade secret is valuable. It is proposal for an ISR project related to one of Plaintiff's companies, ALG Transportation, Inc. It reflects confidential company information and assumptions regarding project, among other confidential information necessary to Plaintiff's business interests. This

information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

*Trade Secret No. 34* — Plaintiff's trade secret is valuable. It is an email attaching a financial forecast related to one of Plaintiff's companies, HeavyLift International, Inc. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

*Trade Secret No. 35* — Plaintiff's trade secret is valuable. It is an email attaching a fleet study related to one of Plaintiff's companies, HeavyLift International, Inc. It reflects confidential information about company capabilities and economics, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the aviation industry to model and price similar projects, which would allow them to gain a competitive edge.

*Trade Secret No. 36* — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of

Plaintiff's companies, Caucas International LLC. It reflects internal contractor and pricing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposals, which would allow them to gain a competitive edge.

*Trade Secret No. 37* — Plaintiff's trade secret is valuable. It is a price quote for a government contract related to one of Plaintiff's companies, Shollar Bottling Co. It reflects internal assumptions, financial modeling, and financing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics industry to model similar financial information, which would allow them to gain a competitive edge.

*Trade Secret No. 38* — Plaintiff's trade secret is valuable. It is an email related to one of Plaintiff's companies, Shollar Bottling Co., reflecting internal company assumptions. It reflects internal assumptions, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics industry

31

to model and price similar projects, which would allow them to gain a competitive edge.

*Trade Secret No. 39* — Plaintiff's trade secret is valuable. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It reflects internal contractor and pricing information, among other confidential information necessary to Plaintiff's business interests. This information furthered Plaintiff's business and helped him generate revenue; therefore, it has value. This information would be also valuable to Plaintiff's competitors in the logistics and government contracting industries in submitting competing or new proposals, which would allow them to gain a competitive edge.

**INTERROGATORY NO. 7: For each alleged Trade Secret identified and described in Your responses to ROG Nos. 3 and 4, describe in detail all measures taken by Plaintiff to preserve the secrecy and confidentiality of *each* alleged Trade Secret.**

**SUPPLEMENTAL RESPONSE:** Subject to the foregoing general objections and without waiving his initial specific objections, Plaintiff supplements his response to this Interrogatory as follows:

*Trade Secret No. 1* — Plaintiff's trade secret was kept confidential. It is a financial forecast related to one of Plaintiff's companies, HeavyLift International. It is marked "Strictly Confidential," showing Plaintiff intended to preserve its confidentiality. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was

intended to be kept confidential.  It contains information that was not publicly available.

*Trade Secret No. 2* — Plaintiff's trade secret was kept confidential.  It is a financial forecast related to one of Plaintiff's companies, HeavyLift International.  It is marked "Strictly Confidential," showing Plaintiff intended to preserve its confidentiality.  It was stored on Plaintiff's computer systems, which were username and password protected.  It was sent to individuals who understood that it was intended to be kept confidential.  It contains information that was not publicly available.

*Trade Secret No. 3* — Plaintiff's trade secret was kept confidential.  It is a financial forecast related to one of Plaintiff's companies, Brownies Global Logistics (BGL).  Plaintiff partially owns JFJ International Logistics, LLC, which in turn, partially owns BGL.  It was stored on Plaintiff's computer systems, which were username and password protected.  It was sent to individuals who understood that it was intended to be kept confidential.  It contains information that was not publicly available.

*Trade Secret No. 4* — Plaintiff's trade secret was kept confidential.  It is a financial forecast related to one of Plaintiff's companies, Smokehouse BBQ.  It is marked "Strictly Confidential," showing Plaintiff intended to preserve its confidentiality.  It was stored on Plaintiff's computer systems, which were username and password protected.  It was sent to individuals who understood that it was

intended to be kept confidential. It contains information that was not publicly available.

**Trade Secret No. 5** — Withdrawn.

**Trade Secret No. 6** — Plaintiff's trade secret was kept confidential. It is a summary of forecasted financial performance for one of Plaintiff's companies, AeroTech, Inc. It is a summary of forecasted financial performance for one of Plaintiff's companies, AeroTech, Inc. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**Trade Secret No. 7** — Plaintiff's trade secret was kept confidential. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**Trade Secret No. 8** — Plaintiff's trade secret was kept confidential. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

34

***Trade Secret No. 9*** — Plaintiff's trade secret was kept confidential. It is an email attaching a proposal for re-launching an airline related to one of Plaintiff's companies, ALG Transportation, Inc. It was sent in email containing a footer indicating that it was "privileged and confidential and is intended only for the use of the person (s) to whom it is addressed." It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

***Trade Secret No. 10*** — Plaintiff's trade secret was kept confidential. It is an email attaching an excel of target aircraft and clients for a maintenance, repair, and operations (MRO) project related to one of Plaintiff's companies, ALG Transportation, Inc. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It reflects the result of confidential assumptions and expertise, which were not publicly available.

***Trade Secret No. 11*** — Plaintiff's trade secret was kept confidential. It is an email attaching a forecast and financial statements for an MRO project related to one of Plaintiff's companies, ALG Transportation, Inc. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

*Trade Secret No. 12* — Plaintiff's trade secret was kept confidential. It is an email attaching a joint proposal for a USAID project by one of Plaintiff's companies, HeavyLift International, Inc., and another company, MG Services Limited RAKFTZ. The proposals are marked "Confidential," showing Plaintiff intended to preserve its confidentiality. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

*Trade Secret No. 13* — Plaintiff's trade secret was kept confidential. It is an email attaching a confidential presentation and attaching a feasibility study and business plan for a proposed expansion related to one of Plaintiff's companies, HeavyLift International, Inc. The presentation is marked "Privileged and Confidential," showing Plaintiff intended to preserve its confidentiality. The trade secret was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

*Trade Secret No. 14* — Plaintiff's trade secret was kept confidential. It is an email attaching an MRO business plan related to one of Plaintiff's companies, HeavyLift International, Inc. It was sent in email containing a footer indicating that it was "privileged and confidential and is intended only for the use of the person (s) to whom it is addressed." It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it

36

was intended to be kept confidential. It contains information that was not publicly available.

**_Trade Secret No. 15_** — Plaintiff's trade secret was kept confidential. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, HeavyLift International, Inc. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**_Trade Secret No. 16_** — Plaintiff's trade secret was kept confidential. It is an email attaching a proposal for a new airline related to one of Plaintiff's companies, HeavyLift International, Inc. It was provided on a "strictly confidential basis," showing Plaintiff intended to preserve its confidentiality. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**_Trade Secret No. 17_** — Plaintiff's trade secret was kept confidential. It is an email attaching an expansion plan and associated forecast related to one of Plaintiff's companies, HeavyLift International, Inc. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

***Trade Secret No. 18*** — Plaintiff's trade secret was kept confidential. It is a forecast related to one of Plaintiff's companies, Shollar Bottling Co. It is marked "Strictly Confidential," showing Plaintiff intended to preserve its confidentiality. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

***Trade Secret No. 19*** — Plaintiff is an owner of this trade secret. It is an email attaching a teaser, management presentation, and investor list related to one of Plaintiff's companies, HeavyLift International, Inc. The memorandum was titled "Confidential Information Memorandum," and was marked "Strictly Private and Confidential," showing Plaintiff intended to preserve its confidentiality. The trade secret was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

***Trade Secret No. 20*** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

***Trade Secret No. 21*** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

***Trade Secret No. 22*** — Plaintiff's trade secret was kept confidential. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to

38

individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**Trade Secret No. 23** — Plaintiff's trade secret was kept confidential. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**Trade Secret No. 24** — Plaintiff's trade secret was kept confidential. It is an email attaching a presentation and management presentation related to one of Plaintiff's companies, HeavyLift International, Inc. It was sent in email containing a footer indicating that it was "privileged and confidential and is intended only for the use of the person (s) to whom it is addressed." The management presentation is marked "Strictly Private and Confidential," showing Plaintiff intended to preserve its confidentiality. The trade secret was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**Trade Secret No. 25** — Plaintiff's trade secret was kept confidential. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to

individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**Trade Secret No. 26** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

**Trade Secret No. 27** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

**Trade Secret No. 28** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

**Trade Secret No. 29** — Plaintiff incorporates his Second Supplemental Response to this Interrogatory regarding his rolodex trade secret.

**Trade Secret No. 30** — Plaintiff's trade secret was kept confidential. It is forecast related to an Intelligence, Surveillance, and Reconnaissance (ISR) project related to one of Plaintiff's companies, ALG Transportation, Inc. It is marked "Strictly Confidential," showing Plaintiff intended to preserve its confidentiality. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**Trade Secret No. 31** — Plaintiff's trade secret was kept confidential. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to

Case 1:20-cv-00954-WO-JLW   Document 379-2   Filed 07/15/24   Page 40 of 55

individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**_Trade Secret No. 32_** — Plaintiff's trade secret was kept confidential. It is a financial forecast and business plan for an MRO related to one of Plaintiff's companies, ALG Transportation, Inc. The business plan contained a "Confidentiality Statement," showing Plaintiff intended to preserve its confidentiality. The trade secret was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**_Trade Secret No. 33_** — Plaintiff's trade secret was kept confidential. It is proposal for an ISR project related to one of Plaintiff's companies, ALG Transportation, Inc. The proposal states that: "This letter and all discussion and documents will remain confidential between the parties." This trade secret was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

**_Trade Secret No. 34_** — Plaintiff's trade secret was kept confidential. It is an email attaching a financial forecast related to one of Plaintiff's companies, HeavyLift International, Inc. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

41

***Trade Secret No. 35*** — Plaintiff's trade secret was kept confidential. It is an email attaching a fleet study related to one of Plaintiff's companies, HeavyLift International, Inc. It is marked "Confidential," showing Plaintiff intended to preserve its confidentiality. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

***Trade Secret No. 36*** — Plaintiff's trade secret was kept confidential. It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

***Trade Secret No. 37*** — Plaintiff's trade secret was kept confidential. It is a price quote for a government contract related to one of Plaintiff's companies, Shollar Bottling Co. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it was intended to be kept confidential. It contains information that was not publicly available.

***Trade Secret No. 38*** — Plaintiff's trade secret was kept confidential. It is an email related to one of Plaintiff's companies, Shollar Bottling Co., reflecting internal company assumptions. It was stored on Plaintiff's computer systems, which were username and password protected. It was sent to individuals who understood that it

was intended to be kept confidential.  It contains information that was not publicly available.

*Trade Secret No. 39* — Plaintiff's trade secret was kept confidential.  It is an email attaching confidential information used for government contracting by one of Plaintiff's companies, Caucas International LLC.  It was stored on Plaintiff's computer systems, which were username and password protected.  It was sent to individuals who understood that it was intended to be kept confidential.  It contains information that was not publicly available.

**INTERROGATORY NO. 10**: **State the amount of monetary damages You seek in this proceeding, describing in detail each element of damages included in this amount, the method of calculation or formula for each element and category of damages, the factual basis and legal theories of liability You contend entitle You to recovery, and the amount of damages You contend is attributable to each of Your two remaining claims for relief.**

**SUPPLEMENTAL RESPONSE**:  Subject to the foregoing general objections and without waiving his initial specific objections, Plaintiff supplements his response to this Interrogatory as follows:

Plaintiff seeks as economic damages the disgorgement of at least $35 million in proceeds that Defendants received from RAK as ill-gotten gains and financial inducement for Defendants, their agents, and co-conspirators to misappropriate Plaintiff's trade secrets and further the civil conspiracy to misappropriate Plaintiff's trade secrets.  N.C. Gen. Stat. § 66-154(b) permits the recovery of "unjust enrichment caused by misappropriation of a trade secret" as damages.  Plaintiff also seeks disgorgement of the ill-gotten gains and financial inducement of Defendants and their co-conspirators as remedy for acts undertaken in furtherance of the conspiracy

43

against Plaintiff. North Carolina courts permit the recovery of damages caused by wrongful acts committed by any co-conspirator in furtherance of that conspiracy. *See Fox v. City of Greensboro*, 279 N.C. App. 301, 321 (2021). North Carolina courts have also held that all co-conspirators are jointly and severally liable for harmful acts in furtherance of the conspiracy. *See Muse v. Morrison*, 234 N.C. 195, 198 (1951).

From as early as March 2015 and as recently as 2023, Defendants and their co-conspirators engaged in harmful acts furthering the conspiracy to unlawfully acquire and disclose without permission Plaintiff's confidential trade secrets to the general public and law enforcement authorities. *See* Compl. ¶ 14. These acts included the receipt of funds by Defendants, CyberRoot, NTi, and others for the purpose of hacking and disclosing Plaintiff's trade secrets to both the general public and law enforcement, as well as the disclosures themselves. Bank records obtained by Plaintiff in discovery reveal that Defendants and their co-conspirators received at least $35 million from RAK to fund acts in furtherance of their conspiracy, including to steal Plaintiff's trade secrets and weaponize them against Plaintiff to harm him financially and reputationally.

In the alternative, Plaintiff will seek compensatory damages for economic losses sustained by Plaintiff as a consequence of Defendants' misappropriation of trade secrets and from harmful acts undertaken by Defendants and their co-conspirators in furtherance of the conspiracy to misappropriate trade secrets. The economic losses include the loss of Plaintiff's ability to obtain government contracts, Plaintiff's loss of opportunities in his long-standing business of creating airlines in

underserved markets, damage inflicted on Plaintiff's relationships with banks and commercial lenders, and quantifiable harm to Plaintiff's reputation.

Finally, Plaintiff also intends to seek punitive damages for Defendants' willful and malicious misappropriation as part of an organized conspiracy, as well as all other damages Plaintiff is entitled to under statute.

Dated:  May 3, 2024

Respectfully submitted,

 /s/ Kirby D. Behre
Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren Briggerman (*pro hac vice*)
Ian Herbert (*pro hac vice*)
Calvin Lee (*pro hac vice*)
Cody Marden (*pro hac vice*)
MILLER & CHEVALIER CHARTERED
900 Sixteenth Street, NW
Washington, D.C.  20005
Telephone:  (202) 626-5800
Facsimile:  (202) 626-5801
Email:      kbehre@milchev.com
            totoole@milchev.com
            lbriggerman@milchev.com
            iherbert@milchev.com
            clee@milchev.com
            cmarden@milchev.com


Ripley Rand (N.C. State Bar No. 22275)
Christopher W. Jones (N.C. State Bar No. 27265)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel:  (919) 755-2100
Fax:  (919) 755-2150
Email:      ripley.rand@wbd-us.com
            chris.jones@wbd-us.com


*Attorneys for Plaintiff Farhad Azima*

46

## CERTIFICATE OF SERVICE

I hereby certify that on this 3st day of May, 2024, I caused true and correct

copies of the foregoing to be served email on the following:

Brandon S. Neuman
Jeffrey M. Kelly
John E. Branch, III
Nelson Mullins Riley & Scarborough, LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Email: brandon.neuman@nelsonmullins.com
Email: jeff.kelly@nelsonmullins.com
Email: john.branch@nelsonmullins.com

Sam A. Rosenthal
Nelson Mullins Riley & Scarborough, LLP
101 Constitution Avenue NW, Suite 900
Washington, D.C. 20001
Email: sam.rosenthal@nelsonmullins.com

Justin B. Kaplan
George G. Mahfood
Nelson Mullins Riley & Scarborough LLP
2 South Biscayne Blvd., 21st Floor
Miami, FL 33131
Email: justin.kaplan@nelsonmullins.com
Email: george.mahfood@nelsonmullins.com

*Counsel for Defendants Nicholas Del Rosso and Vital Management Services, Inc.*

 /s/ Cody Marden
Cody Marden (*pro hac vice*)
MILLER & CHEVALIER CHARTERED
900 Sixteenth Street, NW
Washington, D.C.  20005
Telephone:   (202) 626-5800
Facsimile:   (202) 626-5801
Email:      cmarden@milchev.com

*Attorney for Plaintiff Farhad Azima*

# EXHIBIT 1

Exhibit 1 - Trade Secret Identification Chart
Azima v. Del Rosso, 20-cv-954 (M.D.N.C.)

Confidential

| TRADE SECRET # | BATES RANGE | DESCRIPTION |
|---|---|---|
| 1 | Bates Range of Trade Secret: FA_MDNC_01011626 to FA_MDNC_01011627<br>Excel: **FA_MDNC_01011626 to FA_MDNC_01011626**<br>Attachment: FA_MDNC_01011627 to FA_MDNC_01011627 | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of an excel and its related attachment, identified in their entirety from FA_MDNC_01011626 to FA_MDNC_01011627. |
| 2 | Bates Range of Trade Secret: FA_MDNC_01011628 to FA_MDNC_01011629<br>**Excel: FA_MDNC_01011628 to FA_MDNC_01011628**<br>Attachment: FA_MDNC_01011629 to FA_MDNC_01011629 | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of an excel and its related attachment, identified in their entirety from FA_MDNC_01011628 to FA_MDNC_01011629. |
| 3 | Bates Range of Trade Secret: **FA_MDNC_01011630 to FA_MDNC_01011630** | Excel document is a trade secret; identified in its entirety from FA_MDNC_01011630 to FA_MDNC_01011630. |
| 4 | Bates Range of Trade Secret: **FA_MDNC_01011631 to FA_MDNC_01011635** | PDF is a trade secret; identified in its entirety from FA_MDNC_01011631 to FA_MDNC_01011635. |
| 5 | Withdrawn | Withdrawn |
| 6 | Bates Range of Trade Secret: FA_MDNC_01011647 to FA_MDNC_01011652<br>Cover Email: FA_MDNC_01011647 to FA_MDNC_01011647<br>Attachment: **FA_MDNC_01011648 to FA_MDNC_01011652** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01011647 to FA_MDNC_01011652. |
| 7 | Bates Range of Trade Secret:  FA_MDNC_01011680 to FA_MDNC_01011759<br>Cover Email: FA_MDNC_01011680 to FA_MDNC_01011680<br>Attachment: **FA_MDNC_01011681 to FA_MDNC_01011682**<br>Attachment: FA_MDNC_01011683 to FA_MDNC_01011683<br>Attachment: **FA_MDNC_01011684 to FA_MDNC_01011684**<br>Attachment: FA_MDNC_01011685 to FA_MDNC_01011691<br>Attachment: **FA_MDNC_01011692 to FA_MDNC_01011698**<br>Attachment: FA_MDNC_01011699 to FA_MDNC_01011737<br>Attachment: **FA_MDNC_01011738 to FA_MDNC_01011745**<br>Attachment: FA_MDNC_01011746 to FA_MDNC_01011751<br>Attachment: **FA_MDNC_01011752 to FA_MDNC_01011759** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01011680 to FA_MDNC_01011759. |
| 8 | Bates Range of Trade Secret: FA_MDNC_01011760 to FA_MDNC_01011798<br>Cover Email: FA_MDNC_01011760 to FA_MDNC_01011762<br>Attachment: **FA_MDNC_01011763 to FA_MDNC_01011763**<br>Attachment: FA_MDNC_01011764 to FA_MDNC_01011764<br>Attachment: **FA_MDNC_01011765 to FA_MDNC_01011766**<br>Attachment: FA_MDNC_01011767 to FA_MDNC_01011773<br>Attachment: **FA_MDNC_01011774 to FA_MDNC_01011774**<br>Attachment: FA_MDNC_01011775 to FA_MDNC_01011775<br>Attachment: FA_MDNC_01011776 to FA_MDNC_01011776<br>Attachment: FA_MDNC_01011777 to FA_MDNC_01011777 | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01011760 to FA_MDNC_01011798. |

Exhibit 1 - Trade Secret Identification Chart
Azima v. Del Rosso, 20-cv-954 (M.D.N.C.)

Confidential

| TRADE SECRET # | BATES RANGE | DESCRIPTION |
|---|---|---|
| | Attachment: FA_MDNC_01011778 to FA_MDNC_01011778<br>Attachment: FA_MDNC_01011779 to FA_MDNC_01011779<br>Attachment: FA_MDNC_01011780 to FA_MDNC_01011780<br>Attachment: FA_MDNC_01011781 to FA_MDNC_01011781<br>Attachment: FA_MDNC_01011782 to FA_MDNC_01011782<br>Attachment: FA_MDNC_01011783 to FA_MDNC_01011783<br>Attachment: FA_MDNC_01011784 to FA_MDNC_01011784<br>Attachment: FA_MDNC_01011785 to FA_MDNC_01011785<br>Attachment: FA_MDNC_01011786 to FA_MDNC_01011786<br>Attachment: FA_MDNC_01011787 to FA_MDNC_01011787<br>Attachment: FA_MDNC_01011788 to FA_MDNC_01011788<br>Attachment: FA_MDNC_01011789 to FA_MDNC_01011789<br>Attachment: FA_MDNC_01011790 to FA_MDNC_01011790<br>Attachment: FA_MDNC_01011791 to FA_MDNC_01011791<br>Attachment: FA_MDNC_01011792 to FA_MDNC_01011792<br>Attachment: FA_MDNC_01011793 to FA_MDNC_01011793<br>Attachment: FA_MDNC_01011794 to FA_MDNC_01011794<br>Attachment: FA_MDNC_01011795 to FA_MDNC_01011795<br>Attachment: FA_MDNC_01011796 to FA_MDNC_01011796<br>Attachment: FA_MDNC_01011797 to FA_MDNC_01011797<br>Attachment: FA_MDNC_01011798 to FA_MDNC_01011798 | |
| 9 | Bates Range of Trade Secret: FA_MDNC_01011799 to FA_MDNC_01011815<br>Cover Email: FA_MDNC_01011799 to FA_MDNC_01011799<br>Attachment: **FA_MDNC_01011800 to FA_MDNC_01011815** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01011799 to FA_MDNC_01011815. |
| 10 | Bates Range of Trade Secret: FA_MDNC_01011816 to FA_MDNC_01011817<br>Cover Email: FA_MDNC_01011816 to FA_MDNC_01011816<br>Attachment: **FA_MDNC_01011817 to FA_MDNC_01011817** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01011816 to FA_MDNC_01011817. |
| 11 | Bates Range of Trade Secret: FA_MDNC_01011818 to FA_MDNC_01011823<br>Cover Email: FA_MDNC_01011818 to FA_MDNC_01011819<br>Attachment: **FA_MDNC_01011820 to FA_MDNC_01011820**<br>Attachment: **FA_MDNC_01011821 to FA_MDNC_01011821**<br>Attachment: **FA_MDNC_01011822 to FA_MDNC_01011822**<br>Attachment: **FA_MDNC_01011823 to FA_MDNC_01011823** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01011818 to FA_MDNC_01011823. |
| 12 | Bates Range of Trade Secret: FA_MDNC_01012043 to FA_MDNC_01012128<br>Cover Email: FA_MDNC_01012043 to FA_MDNC_01012043<br>Attachment: **FA_MDNC_01012044 to FA_MDNC_01012098**<br>Attachment: **FA_MDNC_01012099 to FA_MDNC_01012128** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01012043 to FA_MDNC_01012128. |
| 13 | Bates Range of Trade Secret: FA_MDNC_01012129 to FA_MDNC_01012218<br>Cover Email: FA_MDNC_01012129 to FA_MDNC_01012129<br>Attachment: **FA_MDNC_01012130 to FA_MDNC_01012153**<br>Attachment: **FA_MDNC_01012154 to FA_MDNC_01012218** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01012129 to FA_MDNC_01012218. |

Exhibit 1 - Trade Secret Identification Chart
Azima v. Del Rosso, 20-cv-954 (M.D.N.C.)

Confidential

| TRADE SECRET # | BATES RANGE | DESCRIPTION |
|---|---|---|
| 14 | Bates Range of Trade Secret: FA_MDNC_01012219 to FA_MDNC_01012263<br>    Cover Email: FA_MDNC_01012219 to FA_MDNC_01012219<br>    Attachment: **FA_MDNC_01012220 to FA_MDNC_01012263** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01012219 to FA_MDNC_01012263. |
| 15 | Bates Range of Trade Secret: FA_MDNC_01012264 to FA_MDNC_01012294<br>    Cover Email: FA_MDNC_01012264 to FA_MDNC_01012265<br>    Attachment: **FA_MDNC_01012266 to FA_MDNC_01012267**<br>    Attachment: **FA_MDNC_01012268 to FA_MDNC_01012270**<br>    Attachment: **FA_MDNC_01012271 to FA_MDNC_01012294** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01012264 to FA_MDNC_01012294. |
| 16 | Bates Range of Trade Secret: FA_MDNC_01012295 to FA_MDNC_01012302<br>    Cover Email: FA_MDNC_01012295 to FA_MDNC_01012295<br>    Attachment: **FA_MDNC_01012296 to FA_MDNC_01012302** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01012295 to FA_MDNC_01012302. |
| 17 | Bates Range of Trade Secret: FA_MDNC_01012303 to FA_MDNC_01012306<br>    Cover Email: FA_MDNC_01012303 to FA_MDNC_01012303<br>    Attachment: **FA_MDNC_01012304 to FA_MDNC_01012304**<br>    Attachment: **FA_MDNC_01012305 to FA_MDNC_01012306** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01012303 to FA_MDNC_01012306. |
| 18 | Bates Range of Trade Secret: FA_MDNC_01012307 to FA_MDNC_01012308<br>    Cover Email: FA_MDNC_01012307 to FA_MDNC_01012307<br>    Attachment: **FA_MDNC_01012308 to FA_MDNC_01012308** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01012307 to FA_MDNC_01012308. |
| 19 | Bates Range of Trade Secret: FA_MDNC_01012312 to FA_MDNC_01012381<br>    Cover Email: FA_MDNC_01012312 to FA_MDNC_01012312<br>    Attachment: **FA_MDNC_01012313 to FA_MDNC_01012318**<br>    Attachment: **FA_MDNC_01012319 to FA_MDNC_01012380**<br>    Attachment: FA_MDNC_01012381 to FA_MDNC_01012381 | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01012312 to FA_MDNC_01012381. |
| 20 | Bates Range of Trade Secret: **FA_MDNC_01012382 to FA_MDNC_01012382** | Trade secret is a compilation of information. The document in its entirety, as combined, is a trade secret. The trade secret consists of an excel, identified in its entirety from FA_MDNC_01012382 to FA_MDNC_01012382. |

Exhibit 1 - Trade Secret Identification Chart
Azima v. Del Rosso, 20-cv-954 (M.D.N.C.)

Confidential

| TRADE SECRET # | BATES RANGE | DESCRIPTION |
|---|---|---|
| 21 | Bates Range of Trade Secret: **FA_MDNC_01012383 to FA_MDNC_01012383** | Trade secret is a compilation of information. The document in its entirety, as combined, is a trade secret. The trade secret consists of an excel, identified in its entirety from FA_MDNC_01012383 to FA_MDNC_01012383. |
| 22 | Bates Range of Trade Secret: FA_MDNC_01012384 to FA_MDNC_01012395<br>Cover Email: FA_MDNC_01012384 to FA_MDNC_01012384<br>**Attachment: FA_MDNC_01012385 to FA_MDNC_01012385**<br>Attachment: FA_MDNC_01012386 to FA_MDNC_01012391<br>Attachment: FA_MDNC_01012392 to FA_MDNC_01012395 | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01012384 to FA_MDNC_01012395. |
| 23 | Bates Range of Trade Secret: FA_MDNC_01012408 to FA_MDNC_01012411<br>Cover Email: FA_MDNC_01012408 to FA_MDNC_01012408<br>**Attachment: FA_MDNC_01012409 to FA_MDNC_01012409**<br>**Attachment: FA_MDNC_01012410 to FA_MDNC_01012410**<br>**Attachment: FA_MDNC_01012411 to FA_MDNC_01012411** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01012408 to FA_MDNC_01012411. |
| 24 | Bates Range of Trade Secret: FA_MDNC_01012423 to FA_MDNC_01012458<br>Cover Email: FA_MDNC_01012423 to FA_MDNC_01012423<br>**Attachment: FA_MDNC_01012424 to FA_MDNC_01012429**<br>**Attachment: FA_MDNC_01012430 to FA_MDNC_01012458** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01012423 to FA_MDNC_01012458. |
| 25 | Bates Range of Trade Secret: FA_MDNC_01012461 to FA_MDNC_01012467<br>Cover Email: FA_MDNC_01012461 to FA_MDNC_01012466<br>**Attachment: FA_MDNC_01012467 to FA_MDNC_01012467** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01012461 to FA_MDNC_01012467. |
| 26 | **FA_MDNC_01012510 to FA_MDNC_01012510** | Trade secret is a compilation of information. The document in its entirety, as combined, is a trade secret. The trade secret consists of an excel, identified in its entirety from FA_MDNC_01012510 to FA_MDNC_01012510. |
| 27 | **FA_MDNC_01012511 to FA_MDNC_01012511** | Trade secret is a compilation of information. The document in its entirety, as combined, is a trade secret. The trade secret consists of an excel, identified in its entirety from FA_MDNC_01012511 to FA_MDNC_01012511. |
| 28 | **FA_MDNC_01012512 to FA_MDNC_01012512** | Trade secret is a compilation of information. The document in its entirety, as combined, is a trade secret. The trade secret consists of an excel, identified in its entirety from FA_MDNC_01012512 to FA_MDNC_01012512. |

Exhibit 1 - Trade Secret Identification Chart
Azima v. Del Rosso, 20-cv-954 (M.D.N.C.)

Confidential

| TRADE SECRET # | BATES RANGE | DESCRIPTION |
|---|---|---|
| 29 | **FA_MDNC_01012513 to FA_MDNC_01012513** | Trade secret is a compilation of information. The document in its entirety, as combined, is a trade secret. The trade secret consists of an excel, identified in its entirety from FA_MDNC_01012513 to FA_MDNC_01012513. |
| 30 | Bates Range of Trade Secret: FA_MDNC_01026845 to FA_MDNC_01026846<br>    Excel: **FA_MDNC_01026845 to FA_MDNC_01026845**<br>    Attachment: FA_MDNC_01026846 to FA_MDNC_01026846 | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of an excel and its related attachment, identified in their entirety from FA_MDNC_01026845 to FA_MDNC_01026846. |
| 31 | Bates Range of Trade Secret: FA_MDNC_01026847 to FA_MDNC_01026873<br>    Cover Email: **FA_MDNC_01026847 to FA_MDNC_01026847**<br>    Attachment: **FA_MDNC_01026848 to FA_MDNC_01026848**<br>    Attachment: **FA_MDNC_01026849 to FA_MDNC_01026849**<br>    Attachment: **FA_MDNC_01026850 to FA_MDNC_01026873** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01026847 to FA_MDNC_01026873. Within the compilation of information that itself is a trade secret, additional individual trade secrets are highlighted at FA_MDNC_01026847. |
| 32 | Bates Range of Trade Secret: FA_MDNC_01026874 to FA_MDNC_01027092<br>    Cover Email: **FA_MDNC_01026874 to FA_MDNC_01026874**<br>    Attachment: **FA_MDNC_01026875 to FA_MDNC_01027091**<br>    Attachment: **FA_MDNC_01027092 to FA_MDNC_01027092** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01026874 to FA_MDNC_01027092. Within the compilation of information that itself is a trade secret, additional individual trade secrets are highlighted at  FA_MDNC_01026874. |
| 33 | Bates Range of Trade Secret: FA_MDNC_01027098 to FA_MDNC_01027113<br>    Cover Email: FA_MDNC_01027098 to FA_MDNC_01027098<br>    Attachment: **FA_MDNC_01027099 to FA_MDNC_01027113** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01027098 to FA_MDNC_01027113. |
| 34 | Bates Range of Trade Secret: FA_MDNC_01027114 to FA_MDNC_01027116<br>    Cover Email: **FA_MDNC_01027114 to FA_MDNC_01027114**<br>    Attachment: **FA_MDNC_01027115 to FA_MDNC_01027116** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01027114 to FA_MDNC_01027116.  Within the compilation of information that itself is a trade secret, additional individual trade secrets are highlighted at FA_MDNC_01027114. |
| 35 | Bates Range of Trade Secret: FA_MDNC_01027167 to FA_MDNC_01027178<br>    Cover Email: **FA_MDNC_01027167 to FA_MDNC_01027167** | Trade secret is a compilation of information. The documents in their entirety, as combined, |

Exhibit 1 - Trade Secret Identification Chart
Azima v. Del Rosso, 20-cv-954 (M.D.N.C.)

Confidential

| TRADE SECRET # | BATES RANGE | DESCRIPTION |
|---|---|---|
| | Attachment: **FA_MDNC_01027168 to FA_MDNC_01027178** | are a trade secret. The trade secret consists of a parent email and attachment, which run from FA_MDNC_01027167 to FA_MDNC_01027178.  Within the compilation of information that itself is a trade secret, additional individual trade secrets are highlighted at FA_MDNC_01027167. |
| 36 | Bates Range of Trade Secret: FA_MDNC_01027179 to FA_MDNC_01027183<br>  Cover Email: **FA_MDNC_01027179 to FA_MDNC_01027180**<br>  Attachment: **FA_MDNC_01027181 to FA_MDNC_01027181**<br>  Attachment: **FA_MDNC_01027182 to FA_MDNC_01027182**<br>  Attachment: **FA_MDNC_01027183 to FA_MDNC_01027183** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01027179 to FA_MDNC_01027183.  Within the compilation of information that itself is a trade secret, additional individual trade secrets are highlighted at FA_MDNC_01027179. |
| 37 | Bates Range of Trade Secret: FA_MDNC_01027184 to FA_MDNC_01027189<br>  Cover Email: **FA_MDNC_01027184 to FA_MDNC_01027184**<br>  Attachment: **FA_MDNC_01027185 to FA_MDNC_01027185**<br>  Attachment: **FA_MDNC_01027186 to FA_MDNC_01027186**<br>  Attachment: **FA_MDNC_01027187 to FA_MDNC_01027187**<br>  Attachment: **FA_MDNC_01027188 to FA_MDNC_01027188**<br>  Attachment: **FA_MDNC_01027189 to FA_MDNC_01027189** | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01027184 to FA_MDNC_01027189.  Within the compilation of information that itself is a trade secret, additional individual trade secrets are highlighted at FA_MDNC_01027184. |
| 38 | Bates Range of Trade Secret: **FA_MDNC_01027190 to FA_MDNC_01027191** | Email containing trade secrets. Specific trade secret information highlighted at FA_MDNC_01027190. |
| 39 | Bates Range of Trade Secret: FA_MDNC_01027192 to FA_MDNC_01027233<br>  Cover Email **FA_MDNC_01027192 to FA_MDNC_01027197**<br>  Attachment: **FA_MDNC_01027198 to FA_MDNC_01027198**<br>  Attachment: **FA_MDNC_01027199 to FA_MDNC_01027199**<br>  Attachment: **FA_MDNC_01027200 to FA_MDNC_01027229**<br>  Attachment: FA_MDNC_01027230 to FA_MDNC_01027230<br>  Attachment: FA_MDNC_01027231 to FA_MDNC_01027231<br>  Attachment: FA_MDNC_01027232 to FA_MDNC_01027232<br>  Attachment: FA_MDNC_01027233 to FA_MDNC_01027233 | Trade secret is a compilation of information. The documents in their entirety, as combined, are a trade secret. The trade secret consists of a parent email and attachments, which run from FA_MDNC_01027192 to FA_MDNC_01027233.  Within the compilation of information that itself is a trade secret, additional individual trade secrets are highlighted at FA_MDNC_01027192. |

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I hereby declare, under the penalty of perjury, that the factual information contained in the foregoing *Plaintiff Farhad Azima's Third Supplemental Responses and Objections to the First Set of Interrogatories from Defendants Nicholas Del Rosso and Vital Management Services, Inc. (Nos. 1-12)* are true and correct based on my personal knowledge, information and belief, or on information and documents gathered by, or presently available to me.

PLAINTIFF FARHAD AZIMA

Executed on May 3, 2024                    By: _____
                                                Farhad Azima