UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

_____

FARHAD AZIMA,                          )

        Plaintiff,        )        CASE NO.

                      )

        v.                     )

                      )  20-CV-954-UA-JLW

NICHOLAS DEL ROSSO and VITAL )

MANAGEMENT SERVICES, INC.,    )

        Defendants          )

_____)

VIDEOTAPED DEPOSITION

OF

FARHAD AZIMA

WASHINGTON, D.C.

TUESDAY, MAY 21, 2024

Reported Stenographically by:

ANNETTE ARLEQUIN, CCR/CSR, RPR, CRR, RSA

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

**EXHIBIT**

**F**

1                    May 21, 2024

2                     9:07 a.m.

3

4          Videotaped deposition of FARHAD

5     AZIMA, held at the offices of NELSON

6     MULLINS RILEY & SCARBOROUGH LLP, 101

7     Constitution Avenue, N.W, Suite 900,

8     Washington, D.C.  20001, pursuant to

9     Notice, before Annette Arlequin, a

10    Certified Court Reporter, a Registered

11    Professional Reporter, a Certified

12    Realtime Reporter, and a Realtime

13    Systems Administrator and a Notary

14    Public.

15

16

17

18

19

20

21

22

1　A P P E A R A N C E S:

2　MILLER CHEVALIER

3　Attorneys for Plaintiff

4　　　900 16TH Street, NW

5　　　Washington, D.C.　20006

6　BY: KIRBY D. BEHRE, ESQ.

7　　　Kbehre@milchev.com

8　BY: IAN A. HERBERT, ESQ.

9　　　Iherbert@milchev.com

10

11　NELSON MULLINS RILEY & SCARBOROUGH LLP

12　Attorneys for Defendants

13　　　301 Hillsborough Street, Suite 1400

14　　　Raleigh, North Carolina　27603

15　BY: JUSTIN KAPLAN, ESQ.

16　　　justin.kaplan@nelsonmullins.com

17　BY: SAM A. ROSENTHAL, ESQ.

18　　　sam.rosenthal@nelsonmullins.com

19　BY: ALEX BRADLEY, ESQ.

　　　Alex.bradley@nelsonmullins.com

20

21　ALSO PRESENT:

22　KIM JOHNSON, Legal Videographer

1

2              IT IS HEREBY STIPULATED AND

3       AGREED by and between the attorneys for

4       the respective parties herein, that

5       filing and sealing be and the same are

6       hereby waived;

7              IT IS FURTHER STIPULATED AND

8       AGREED that all objections, except as

9       to the form of the question, shall be

10      reserved to the time of the trial;

11             IT IS FURTHER STIPULATED AND

12      AGREED that the within deposition may

13      be sworn to and signed before any

14      officer authorized to administer an

15      oath, with the same force and effect as

16      if signed and sworn to before the

17      Court.

18

19                  - o0o -

20

21

22

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 4 of 578

Page 5

1                    I N D E X

2      WITNESS: FARHAD AZIMA                  PAGE

3         BY MR. KAPLAN                       8, 462

4         BY MR. HERBERT                      430

5

6         QUESTIONS INSTRUCTED NOT TO ANSWER

7                    Page     Line

8                    415   13

9                    478   12

10

11        I N D E X   O F   E X H I B I T S

12     DESCRIPTION                           PAGE

13     Defendants' Exhibit 40, Plaintiff       12

14     Farhad Azima's Third Supplemental

15     Responses and Objections to the

16     First Set of Interrogatories from

17     Defendants Nicolas Del Rosso and

18     Vital Management Services, Inc.

19     (Nos. 1-12)

20

21     Defendants' Exhibit 20, Rolodex         293

22     printout, Bates-stamped FA_MDNC_01012382

1     I N D E X   O F   E X H I B I T S(Cont'd.)

2    DESCRIPTION                          PAGE

3    Defendants' Exhibit 21, Rolodex          296

4    printout, Bates-stamped FA_MDNC_01012383

5

6    Defendants' Exhibit 45, EMA              372

7    document Bates-stamped

8    FA_MDNC_00210426-10455

9

10   Defendants' Exhibit 46,                  389

11   Declaration of Chiranshu Ahuja

12

13   Defendants' Exhibit 47,                  407

14   Declaration of Vikash K. Pandey

15

16   Defendants' Exhibit 48, Email            410

17   dated 2/17/2015 from Kirby Behre

18   to HH@fathers.church, not Bates-stamped

19

20   Defendants' Exhibit 49, Miler            412

21   Chevalier document titled

     "Project Clay - Action Plan,"

22   Kirby Behre, 2/14/2015, not Bates-stamped

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 7

1          THE VIDEOGRAPHER:  This begins

2      the video-recorded deposition of Farhad

3      Azima taken in the matter of Farhad

4      Azima versus Nicholas Del Rosso and

5      Vital Management Services in the U.S.

6      District Court for the Middle District

7      of North Carolina, Case No.

8      20-CV-954-UA-JLW.

9          Today's date is May 21st, 2024.

10      This deposition is being held at 101

11      Constitution -- I forgot to tell the

12      time.  The time is 9:07.

13          This deposition is being held at

14      101 Constitution Avenue, Washington,

15      D.C.

16          The court reporter is Annette

17      Arlequin.  The video camera operator is

18      Kim Johnson.  Both are on behalf of

19      Digital Evidence Group.

20          Will counsel please introduce

21      yourselves and state whom you

22      represent.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 7 of 578

1           MR. BEHRE:  Kirby Behre on behalf

2       of the plaintiff.

3           MR. HERBERT:  Ian Herbert on

4       behalf of the plaintiff.

5           MR. KAPLAN:  Justin Kaplan and

6       Sam Rosenthal on behalf of the

7       plaintiff -- or the defendant.  I'm

8       sorry.

9           THE VIDEOGRAPHER:  Thank you.

10          Would the court reporter please

11      swear in the witness.

12

13          F A R H A D   A Z I M A,

14    called as a witness, having been duly

15    sworn/affirmed testified as follows:

16         - - - - - - - -

17           EXAMINATION

18  BY MR. KAPLAN:

19    Q.   Thank you.

20          Mr. Azima, I assume you have had

21  your deposition taken before?

22    A.   Decades ago, maybe.

1          Q.    Let me go over some instructions

2     again.

3               I'm going to ask questions.

4     You'll have to respond unless your lawyer

5     instructs you not to answer.  Your lawyer

6     will be making objections.  I would ask

7     that you give him a second to do it so that

8     we're not talking over each other.  It's

9     harmful for the court reporter.

10              Also, please let me finish my

11     question before answering.  If you don't

12     fully understand the question, just ask me.

13     I'm not trying to play "gotcha."  I want to

14     know the answer.  And if you don't

15     understand what I'm saying, that's okay.

16     I'll try to do better.

17              You have to say "yes" or "no."

18     Nodding your head is not going to work

19     because it doesn't show up on the

20     transcript.  So out of courtesy to the

21     court reporter, I would ask that you just

22     say "yes" or "no," if that's going to be

1    your answer, okay?

2       A.    Yeah.   Yes.

3       Q.    Are you on any medications today

4    that might affect your memory?

5       A.    No, not that I know.

6       Q.    Okay.   Decades ago when you gave

7    a deposition that you recall, do you

8    remember what it was about?

9       A.    It was in the early '80s.

10       Q.    And do you remember what the

11    substance of your testimony was?

12       A.    Yes.

13       Q.    What was it?

14       A.    Union dispute.

15       Q.    You didn't give a deposition in

16    connection with when you were sued by

17    Brownies Logistics?

18       A.    I'm not even aware that I was

19    sued by Brownies Logistics.

20       Q.    Okay.   How about Michael

21    Carmichael?

22       A.    I'm not aware whether I was sued.

1    Maybe the company has been sued, but I

2    don't remember.  No, I don't remember.  I

3    did not give any deposition.

4         Q.   Okay.

5         A.   If it was, I'm -- I was not a

6    factor of it, nor was I involved.  First

7    time I hear I was sued.

8              Was I personally sued or the

9    company?

10        Q.   You do make a distinction between

11   individuals and companies, right?

12        A.   A company, I am one of the

13   shareholders, that obviously that is --

14   somewhat relates, but that is not a

15   personal.  I wasn't running the company.  I

16   was a shareholder.

17        Q.   Okay.  So merely in your mind

18   being a shareholder is different than the

19   company?

20        A.   Unless you run a company as a

21   director or as an executive, some sort of

22   management position, I think the company

1    has the responsibility for managing the

2    lawsuit or the claims.  So I'm not very

3    much -- I wasn't involved on a day-to-day

4    of the company.

5         Q.    Brownies Logistics you're

6    referring to when you say that you weren't

7    involved --

8         A.    I did not own that company.

9         Q.    Okay.  I'm going to show you what

10   we're marking as Exhibit 40.

11             (Defendants' Exhibit 40,

12             Plaintiff Farhad Azima's Third

13             Supplemental Responses and Objections

14             to the First Set of Interrogatories

15             from Defendants Nicolas Del Rosso and

16             Vital Management Services, Inc. (Nos.

17             1-12), marked for identification, as of

18             this date.)

19        A.    All right.

20        Q.    Mr. Azima, have you seen this

21   document before?

22        A.    A few years ago.  A long time

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 13

1    ago.

2         Q.   Okay.  Why don't you turn to the

3    last page.

4              (Witness complies.)

5         Q.   The absolutely last page.  No,

6    literally the last page.

7         A.   Yes.

8         Q.   Is that your signature?

9         A.   That is my signature.

10        Q.   So did you sign this document on

11   May 3rd, 2024?

12        A.   May 3rd, 2024...

13             It's my signature.  I signed it.

14        Q.   So May of this year is not years

15   ago, right?

16        A.   No.  Originally when this

17   document -- when the complaint was filed, I

18   understand -- my understanding is that you

19   asked me to do that, that when this was --

20   when I read that first, that was my

21   understanding.

22        Q.   All right.  Why don't we look at

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 14

1    the title of this particular document.

2    This is plaintiff Farhad Azima --

3              That is you, right?

4        A.    That is me.

5        Q.    -- third supplemental responses

6    and objections to the first set of

7    interrogatories from defendants Nicholas

8    Del Rosso and Vital Management Services

9    Inc., correct?

10       A.    Correct.

11       Q.    Do you understand what

12   interrogatories are in the context of

13   litigation?

14       A.    What is it?

15       Q.    You don't know what it is?

16       A.    Let me remind you, Counsel,

17   English is my third language.  You have to

18   be a bit more clear in usage of your big

19   words.  So please explain to me what you

20   have in mind by those words.

21       Q.    Okay.  Why don't we turn, if you

22   don't mind, to page 6.

```
 1              (Document review.)

 2        Q.    Do you see Interrogatory No. 3?

 3              (Document review.)

 4        A.    What does Bates number means?

 5        Q.    I don't know, okay?  I have a

 6   question pending, all right?

 7        A.    But I don't know what does it

 8   mean, so I can answer.

 9        Q.    Okay.  I didn't ask you a

10   question, sir?

11        A.    Sorry?

12        Q.    There is nothing to answer

13   because I haven't asked you a question.

14        A.    I'm trying to understand what I'm

15   reading is.

16        Q.    Okay.  I'm just trying to

17   determine if you understand in the context

18   of the lawsuit that you filed whether you

19   understand how an interrogatory works.

20        A.    I'm trying to understand the

21   meaning of a Bates number.

22        Q.    That is not my question, sir.
```

1      A.   Well, that is not my answer

2   either.

3      Q.   Okay.  Good.  So we are on the

4   same page.

5      A.   All right.

6      Q.   Do you understand that in the

7   course of litigation in the United States

8   of America where you have lived for 50-plus

9   years --

10     A.   60-plus years.

11     Q.   -- and have been involved in

12   multiple lawsuits, that a litigant is

13   entitled to ask written questions known as

14   interrogatories and then the other party

15   has to respond in writing.

16          Do you understand that?

17     A.   You just said it.

18     Q.   I'm asking whether you understand

19   that to be the case.

20     A.   I mean, I can understand what

21   you're saying, yes.

22     Q.   Great.

1　　　　　　　This particular document, which

2　　you signed under oath on the last page on

3　　May 3rd, 2024, as being true was prepared

4　　by whom?

5　　　　　A.　　By my counsel.

6　　　　　Q.　　Did you read it before you signed

7　　it?

8　　　　　A.　　Obviously, I have gone through

9　　it.

10　　　　　Q.　　Is that a "yes"?

11　　　　　A.　　I mean, if you ask me to go

12　　through every page, you know, I skimmed

13　　through it.

14　　　　　Q.　　Okay.　Let's go back to the last

15　　page.　Go back to the last page.

16　　　　　　　Okay.　You signed last month --

17　　this month, quote, "Pursuant to 28 U.S.C.

18　　Section 1746, I," meaning Farhad Azima,

19　　"Hereby declare under the penalty of

20　　perjury that the factual information

21　　contained in the foregoing are true and

22　　correct based on my personal knowledge,

1　information and belief or on information

2　and documents gathered by or presently

3　available to me."

4　　　　A.　Correct.

5　　　　Q.　Okay.  So you signed under

6　penalty of perjury that all of the

7　responses, included in this document are in

8　fact true, correct?

9　　　　A.　I -- my counsel to advise me this

10　is the case.  And based on that, I signed.

11　　　　Q.　So you did not review any of your

12　answers to determine whether, in fact, they

13　are true?

14　　　　　　MR. BEHRE:  Objection,

15　　　　mischaracterizes the testimony.

16　　　　　　MR. KAPLAN:  Well, he can

17　　　　clarify.

18　BY MR. KAPLAN:

19　　　　Q.　Did you read it before you

20　testified that everything in here was true

21　or no?

22　　　　A.　I just told you I went through it

1    page by page.  I skimmed it.

2            Do you understand that?

3        Q.   I do.

4        A.   The lawyer read them.

5        Q.   Did your lawyers explain any of

6    it to you?

7            MR. BEHRE:  Objection, calls for

8        privilege.

9            MR. KAPLAN:  I'm not asking what

10       you told him.  I'm asking whether you

11       did.

12       A.   In general, yes.

13       Q.   Okay.  Do you believe anything in

14   this document that you signed under penalty

15   of perjury as being true is incorrect?

16       A.   I did not see anything which is

17   incorrect.

18       Q.   Great.

19           So now do you understand that

20   Interrogatory No. 3 asked you to identify

21   every single trade secret that you are

22   suing my clients for misappropriating?

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 20

```
 1              MR. BEHRE:  Objection,

 2        mischaracterizes the request.

 3              THE WITNESS:  What does that

 4        mean?

 5              MR. BEHRE:  You can answer.

 6        A.   Yes.

 7        Q.   Yes.  Okay.

 8              And let's turn to almost the last

 9    page.  You'll see in Exhibit 1 for the

10    chart, okay?  And then you identify 39

11    trade secrets?

12        A.   Yes.

13        Q.   Okay.  Are these trade secrets

14    the full extent of those which you are

15    suing my clients for in this lawsuit?

16              MR. BEHRE:  Objection, vague and

17        ambiguous.

18    BY MR. KAPLAN:

19        Q.   Are you suing my clients --

20        A.   I am suing your clients.

21        Q.   Right.

22              Are you suing them for
```

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 20 of 578

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 21

1    misappropriating any other trade secrets

2    other than those which are identified in

3    Exhibit 1 to this document?

4         A.    That's the problem, your clients

5    are stealing my documents, is that what

6    you're telling me?

7         Q.    That's what I'm saying, yes.

8         A.    Yes, they are stolen documents.

9         Q.    Okay.  Are there any others that

10   you are suing my client for other those

11   identified in Exhibit 1 to this document?

12        A.    I am not aware of it.

13        Q.    Okay.  You're not aware of it?

14        A.    I am not aware of it.

15        Q.    Okay.  So that means that these

16   are the only trade secrets for which you

17   are suing my clients for stealing, correct?

18        A.    On this base, I have sued your

19   clients, yes.

20        Q.    Okay.  Let me ask it again,

21   because I want to make sure it's clear.

22               Other than the trade secrets

1 identified, that you identified in

2 Exhibit 1 to this document, are there any

3 other trade secrets that you are suing my

4 client for allegedly stealing?

5   A. To the best of my knowledge,

6 these are the only trade secrets that your

7 client has stolen from me.

8   Q. Okay.  But that's not what I

9 asked.

10   A. Well, what you did you ask me?

11   Q. I'm asking if you're suing them

12 for any other trade secrets.

13   A. I said I am not aware of it.

14   Q. That's not my question.

15   A. Well, that's not my -- that is my

16 answer.  I'm not aware of it.

17   Counsel, if my counsel has sued

18 and I have missed it, the answer is

19 obvious.  But to the best of my knowledge,

20 the answer is no.

21   Q. Okay.  Let's turn to page 7, if

22 you don't mind.  You see on the bottom in

1    bold, it asked you for each alleged trade

2    secret identified in response to

3    interrogatories numbers 3 and 4.  "Identify

4    and describe all facts supporting your

5    knowledge of each alleged trade secret

6    including all other persons with knowledge

7    or interest."

8              Do you see that?

9        A.   I do.

10       Q.   Okay.  So over the next several

11   pages, for each of those 39 trade secrets

12   that you identified, you answered, correct?

13       A.   Yes.

14       Q.   Okay.  Now the answers are

15   relatively the same for every single trade

16   secret.

17       A.   Yes.

18       Q.   Yes?

19             Let's go through that.

20       A.   All right.

21       Q.   All right.  And you said to every

22   single one, "Plaintiff" -- that would be

1    you.

2            Do you understand that to be you?

3        A.    Correct.

4        Q.    "Plaintiff is an owner of this

5    trade secret."

6            Right?

7        A.    Right.

8        Q.    Okay.  And you answer the same to

9    everybody -- I'm sorry, to every single

10    trade secret, correct?

11        A.    Correct.

12            MR. BEHRE:  You need to look at

13        the document.

14    BY MR. KAPLAN:

15        Q.    Your answer is the same for every

16    single answer.

17            (Document review.)

18        Q.    It differs by company, right, but

19    you see it says, "Plaintiff is an owner of

20    this trade secret."

21            It is related to, you know, one

22    of your companies, right?

1    A.   Obviously.

2    Q.   Okay.  So let's go back.

3    MR. BEHRE:  Well, objection.  It

4    mischaracterizes the request.  Page 14,

5    number 20 doesn't say that.  Page 14

6    number 21 doesn't say that.  So not all

7    of them say it.  So that misstates the

8    document.

9    MR. KAPLAN:  You're right.

10    Except for the Rolodexes, 20, 21, 26,

11    27, 28 and 29.  I'll qualify that.

12  BY MR. KAPLAN:

13    Q.   Now Mr. Azima, if you look at

14  trade secret number 1, you referenced

15  HeavyLift International.  That's on page 8.

16    (Document review.)

17    Q.   Correct?

18    A.   Yes.

19    Q.   Okay.  You reference HeavyLift

20  International in response with regard to

21  trade secret number 2, right?

22    A.   Correct.

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 26

1      Q.    Now turn to page 11, if you don't

2    mind.

3         Okay. With regards to trade

4    secret number 12, you refer to HeavyLift

5    International, Inc., correct?

6      A.    I don't recall the --

7      Q.    Well, it says is it right there

8    (indicating).

9         MR. BEHRE: Let him finish his

10      answer, okay?

11      A.    I don't recall being Inc. May be

12    a mistake. I don't know that.

13      Q.    Okay. So let me ask you this:

14    In these particular responses that you

15    signed under oath, when you refer to

16    HeavyLift, HeavyLift International or

17    HeavyLift Inc., it's a single company to

18    which you are referring, right?

19      A.    Yes.

20      Q.    Okay. And it's either HeavyLift

21    International FZE or FZC?

22      A.    Collectively, they're known as

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 26 of 578

1    HeavyLift.

2         Q.    What is "they"?  What's

3    collectively known as HeavyLift?

4         A.    HeavyLift is a company who

5    operates airlines.

6         Q.    Okay.  And are you referring to

7    the entity that was owned at one point by

8    RAK?

9         A.    I'm referring to entity that it

10   was owned by me or my companies, and then

11   HeavyLift acquired 51 percent.  And later

12   on, I give the other 49 percent to them.

13        Q.    I'm not sure I follow.

14              HeavyLift acquired 51 percent of

15   what?

16        A.    Not HeavyLift.  RAK acquired to

17   one of the special purpose companies 51

18   percent of HeavyLift with the promises that

19   they are going to give me schedule

20   authority.

21        Q.    Okay.

22        A.    But that did not happen, but they

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 28

1    ended up having 51 percent.  And later on,

2    I give them the other 49 percent in lack of

3    schedule service availability.

4              (Reporter clarification.)

5         A.   HeavyLift, I give that to

6    transfer that to RAK because of the

7    inability to give the schedule service

8    authority.

9         Q.   Okay.  Let me understand.  Let me

10   see if I can understand a little bit better

11   and clarify it.

12             RAK purchased 51 percent of

13   HeavyLift, right?

14        A.   In the beginning.

15        Q.   Okay.  And just so that we're

16   clear, in your Interrogatory responses that

17   we've been looking at, and you're referring

18   to a single company, right?

19        A.   I am referring to RAK acquired 51

20   percent of the HeavyLift International

21   Airline FZE company.

22        Q.   Okay.  And then you gave the

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 28 of 578

1    other 49 percent of that company.

2              When?  When did you do that?

3         A.   Well, at the end, I transferred

4    the rest of them to them.  The company was

5    transferred to the RAK entity.

6         Q.   When?

7         A.   It was a long time ago.  Either

8    '12 or -- 2012 or something like this.  I

9    don't recall the exact date.

10        Q.   But are you certain that it was

11   before 2016?

12        A.   It was before 2016.

13        Q.   I'm going to show you what's been

14   previously marked as Exhibit 1C.

15             You can put those interrogatories

16   to the side.  We'll come back to those.

17             (Witness complies.)

18        A.   You have some question of a long

19   time ago.  I have to refresh my memories.

20   If you have any documents that I can look

21   at it and give you a straight answer, I

22   will do that.

1          Q.    Okay.  So if you turn to page 2,

2      this is a document titled, "Share Purchase

3      and Shareholders Agreement, RAK Trans

4      Farhad Azima and HeavyLift International

5      Airlines FZE."

6              Do you see that?  And on page 2,

7      it's made on December 6th, 2009, between

8      RAK Trans Holdings FZ LLC and HeavyLift

9      International Airlines FCE and you.

10             MR. BEHRE:  Take a look at the

11         exhibit first and get familiar with it.

12             (Document review.)

13     BY MR. KAPLAN:

14         Q.    Do you understand this to be the

15     document by which you sold 51 percent of

16     HeavyLift to RAK?

17         A.    Obviously.

18         Q.    Okay.  That was in December of

19     2009, right?

20         A.    Right.

21         Q.    So you had no ownership -- I'm

22     sorry -- no control over RAK Trans Holdings

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 31

1   FZ, correct?

2       MR. BEHRE: Objection, vague and

3     ambiguous.

4   BY MR. KAPLAN:

5       Q. Okay. Did you own any portion of

6   RAK Trans Holdings FZ ever?

7       A. I'm sorry, was that the entity

8   that they bought HeavyLift?

9       Q. Correct.

10      A. That was not my company.

11      Q. Okay. Now pursuant to this

12   agreement, if you look at paragraph 4.3,

13   sorry, Section 4.3, which you'll find on

14   page 7, it says, "Each shareholder shall be

15   entitled to receive the following from the

16   manager: Quarterly financial statements of

17   the company within 30 days of the end of

18   each quarter, audited financial statements

19   within 120 days of the close of each fiscal

20   year; and any information regarding the

21   state of affairs of the company as

22   shareholder may reasonably request,"

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 32

1    correct?

2      A.   Right.

3      Q.   So as a 51 percent shareholder,

4   RAK had access to all of the company's

5   information, right?

6      A.   Indeed, yes.

7      Q.   And all the information regarding

8   the company, right?

9      A.   Indeed, yes.

10     Q.   Okay.   Did you or HeavyLift

11   International Airlines have any

12   confidentiality agreements with RAK?

13      A.   As a matter of general rules,

14   when we deal with governments, our company

15   does not require confidentiality.

16     Q.   You never required it?

17      MR. BEHRE:   Objection,

18      mischaracterizes the testimony.

19      A.   If you are dealing with the

20   government, we do not require

21   confidentiality.

22     Q.   Okay.   So that would be with the

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 33

1    government of RAK, Ras Al Khaimah?

2        A.   In general governments, I said.

3        Q.   Okay.  Does that also include the

4    government of Georgia?

5        A.   In general governments.

6        Q.   Okay.

7        A.   We assume when you are dealing

8    with the governments, the information is

9    confidential and that will not be

10   distributed and are kept confidential at

11   all time.

12        Q.   Okay.

13        A.   That is the assumption under

14   which our company do business with

15   governments.

16        Q.   Okay.  So the answer is no,

17   correct?

18        A.   I just said that, yes.

19        Q.   Okay.  And that would be the same

20   for the country of Jamaica, right?

21        A.   That's correct.

22        Q.   And South Sudan, correct?

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 33 of 578

1        A.   We did not do business with South

2    Sudan.   That was just a broker.

3        Q.   Okay.  Now when you say that you

4    gave RAK the other 49 percent, were those

5    two separate transactions?

6        A.   Correct.

7        Q.   Okay.  And the second transaction

8    would have been at some point before 2016,

9    right?

10        A.   Correct.

11        Q.   Okay.  When did HeavyLift cease

12    operations, to your knowledge?

13        A.   That coincided with the -- when

14    Afghan conflict was over, more or less.  So

15    it must have been around 2011, '12,

16    something like this.

17        Q.   Okay.  So am I to understand that

18    because when the Afghan conflict ended, all

19    the business that HeavyLift was doing

20    evaporated?

21        A.   Not all of them, but there was a

22    significant part of it.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 35

1        Q.    All right.

2        A.    If you want to understand that,

3    the reason that HeavyLift sold 51 percent

4    to Ras Al Khaimah was based on the

5    information and based on the agreement that

6    we had with the Sheikh, the ruler, that

7    they will grant us schedule service

8    authority so we can continue operation

9    after the contract with Afghanistan and

10   Iraq's war zone.

11            But then he couldn't do that.  So

12   at that point, there was no reason for us

13   to keep it, so we transferred the other 49

14   percent to them.

15       Q.    Okay.  Now when you referred to

16   Brownies Global Logistics, do you mean

17   Brownies Global Logistics LLC?

18       A.    I did not do this directly with

19   the company.  So we had the management do

20   it.  I was just a shareholder.

21       Q.    You were an indirect shareholder

22   through a company called JFJ International

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 36

1    Logistics LLC, right?

2         A.    The same thing.  I have a third

3    -- in JFJ, I was a third shareholder.

4         Q.    Okay.  Now Brownies Global

5    Logistics is a marine logistics company,

6    right?

7         A.    Yes.

8         Q.    Okay.  It provides vessels,

9    equipment and services for ocean

10   exploration, research and commercial

11   projects, right?

12        A.    Among other things.

13        Q.    Okay.  Is that what it did back

14   in 2015 and '16?

15        A.    To the best of my knowledge.

16        Q.    Okay.  Do you know who the other

17   two -- or the other owners of JFJ

18   International Logistics were?

19        A.    Yes.

20        Q.    Who were they?

21        A.    One was Dawayne Lepper.  Another

22   one, Jim Jacobs.

1      Q.   Did you each all own a third?

2      A.   Yes.

3      Q.   Okay.  So you owned -- you had a

4   one-third interest in JFJ, which then owned

5   what percentage of Brownies Global

6   Logistics?

7      A.   I do not know that.

8      Q.   Okay.  Was it a majority

9   shareholder?

10     A.   I don't remember that.

11     Q.   Are you aware that JFJ

12   International Logistics' interest in

13   Brownies Global Logistics was terminated on

14   January 4th, 2017, as a result of a final

15   judgment that was entered in Florida?

16     A.   No, I am not aware of it.

17     Q.   When you refer to Smokehouse

18   Barbecue, does that refer to Smokehouse

19   Barbecue Inc.?

20     A.   I don't know the name of the

21   legal entity, but I know it's Smokehouse

22   Barbecue.  It's a company that I have

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 38

1    interest in it.

2         Q.   Still?

3         A.   Yes.

4         Q.   You sure you didn't divest in

5    January of 2013?

6         A.   I mean, I might have given it to

7    my wife or a member of family.

8         Q.   But that doesn't mean that you

9    own it, right?

10              MR. BEHRE:  Objection,

11         argumentative.

12        A.   You heard the counsel say

13   objection.  It was argumentative.

14        Q.   You still have to answer.

15        A.   What do you want me to answer?

16        Q.   I want an answer.

17             If your wife owns something, does

18   that mean you own it, in your mind?

19             MR. BEHRE:  Objection, relevance.

20        A.   I'm not going to get into marital

21   ownership here.

22        Q.   I just want to know whether

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 38 of 578

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 39

1    you --

2         A.   You asked me my state of mind.  I

3    said that I'm not going to get involved in

4    a marital ownership, who owns what between

5    me and my wife.

6         Q.   Okay.  What about with companies?

7         A.   With companies --

8              MR. BEHRE:  Hold on.  I need to

9         get my objection in before you respond.

10             MR. KAPLAN:  I haven't asked a

11        question.  There is nothing to object

12        to.  I haven't asked a question.

13             MR. BEHRE:  There was.

14   BY MR. KAPLAN:

15        Q.   With regards to --

16             MR. BEHRE:  What -- you asked --

17        what about the companies was your

18        question.

19             MR. KAPLAN:  Okay.

20             MR. BEHRE:  And what I'm

21        objecting to is it's vague.

22             So you need to slow down and you

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 40

1          need to slow down so I can get my

2          objections in.

3                    MR. KAPLAN:  And you need to get

4          off your pedestal.  There was no

5          question pending.

6                    MR. BEHRE:  Look at the

7          transcript.

8                    Sir, what about companies,

9          question.

10                   THE WITNESS:  Well, I just got

11          mad that I'm called "sir" now.

12                   (Reporter clarification.)

13                   THE WITNESS:  He called me sir.

14          I was just knighted, I thought.

15     BY MR. KAPLAN:

16          Q.   With regards to companies, much

17     like if you transferred your interest to

18     your wife, you don't want to get into it,

19     will you get into your views on ownership

20     of company assets?

21          A.   When the company asset is

22     transferred, that means company owns it.

1      Q.   Okay.  What about when an

2    individual who owns the company transfers

3    an asset to the company, who owns it then?

4          MR. BEHRE:  Objection, vague.

5          Slow down.

6          Objection, vague, relevance.

7      A.   There is a difference

8    transferring this computer to a company or

9    the intellectual property or the rights and

10   the knowledge.

11      Q.   What is the difference?

12      A.   A big difference.

13      Q.   Explain to me the difference.

14      A.   Because one is the intellectual

15   property, your knowledge is yours.  Other

16   one is an asset that you transfer.  So it's

17   a big difference.

18      Q.   Are you telling me that in your

19   mind, you don't give knowledge to

20   companies?

21          MR. BEHRE:  Objection,

22        mischaracterizes the testimony.

1      A.   When you sell an asset, it's an

2   asset transfer.  But when you're dealing

3   with the knowledge, that knowledge is

4   yours.

5      Q.   Okay.  That's fair.

6         What about documents that are

7   created based upon that knowledge on behalf

8   of a company?

9         MR. BEHRE:  Objection, vague and

10       ambiguous, relevance.

11      A.   I don't quite understand what

12   your question means.

13      Q.   Well, if somebody owns a company,

14   right, somebody theoretically can give them

15   a computer using your example, right?

16      A.   Right.

17      Q.   And then that computer becomes

18   the company's, right?

19      A.   Right.

20      Q.   Somebody has knowledge, somebody

21   gives the knowledge to the company so the

22   company can create documents using that

1    knowledge.

2          A.    Right.

3          Q.    If the company creates the

4    document, you would agree with me that the

5    company owns the document, right?

6                MR. BEHRE:  Objection, calls --

7                (Simultaneous speaking.)

8                MR. BEHRE:  You have to let me

9          get my objection in.

10               Calls for a legal conclusion and

11         speculation.

12               Now you can answer.

13         A.    Would you repeat your question

14   one more time?

15         Q.    If someone -- if a company uses

16   someone else's knowledge in order to create

17   its own documents, in your mind, who owns

18   the document, the company or the person?

19               MR. BEHRE:  Same objections.

20         A.    I'm not sure what you're saying

21   even.  I don't understand what you're

22   trying to ask me.

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 44

1     Q.   I'm trying to ask you if I own a

2   company --

3     A.   Right.

4     Q.   -- or you own a company, okay --

5     A.   Um-hmm.

6     Q.   -- let's say you own it 100

7   percent.

8     A.   Right.

9     Q.   Okay.  That company has assets.

10          Do you agree with me?

11     A.   Yes.

12     Q.   That company creates things,

13   including its own intellectual property,

14   right?

15     A.   Right.

16     Q.   Okay.  The company would own the

17   intellectual property that it creates,

18   correct?

19          MR. BEHRE:  Same objections.

20     Calls for a legal conclusion and

21     speculation.

22     A.   I just cannot -- I just cannot

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 44 of 578

1　comprehend.

2　　　　　　If I own a company --

3　　Q.　Yeah.

4　　A.　-- if there is a computer or

5　there is this -- whatever I transferred to

6　you, it's transferred.  But if it's my

7　knowledge, because I own the company, that

8　is synonymous with this.

9　　Q.　Okay.

10　　　　　　What business was Smokehouse

11　Barbecue in?

12　　A.　I'm sure you have had barbecue

13　before.  The name describes the nature of

14　its business.

15　　Q.　Now when you did own a portion of

16　this company, there were other

17　shareholders, correct?

18　　A.　There was a personal shareholder,

19　another minority shareholder.

20　　Q.　Okay.  And were you related to

21　that minority shareholder?

22　　A.　I am that.

1          Q.    When you -- Smokehouse Barbecue

2     owed you money, right?

3          A.    A lot of companies owe me money.

4          Q.    Okay.  They paid you back some of

5     the money they owed you, correct?

6          A.    I got accountants to do that.  I

7     don't keep track of it.

8          Q.    Okay.  Are you familiar with

9     AeroTech Inc.?

10          A.    I am.

11          Q.    Is that different than AeroTech

12     Services?

13          A.    I don't recall.  I don't know the

14     answer.

15          Q.    So you don't know whether that's

16     also a different company that AZRA LLC?

17          A.    AZRA LLC that is a company that

18     -- I know that company.

19          Q.    Is that the same as AeroTech

20     Inc.?

21          A.    I don't remember that, the

22     structure of the company.

1          Q.    Okay.  What did AeroTech do?

2          A.    How much do you know about

3     aviation?  How much -- I want to explain

4     the way that will make sense to you.

5          Q.    Sure.

6          A.    How much do you know about

7     aviation?

8          Q.    I'm not answering questions, sir.

9     You are the one answering questions.

10          A.    Then how much time do you have?

11          Q.    Seven hours.

12          A.    Good.

13          Q.    Probably longer.

14          A.    If you recall, price of the fuel

15     has gone up and all the airlines were

16     scrambling how they're going to save money

17     on fuel.  There was a company, AeroTech or

18     the AeroTech Services, that they came to us

19     creating a device.  That device and the

20     procedures, which I have input in it, that

21     would save 3 to 5 percent of the fuel.

22     That device would be installed on back --

1    on the aircraft, on the flaps, the wings.

2    And the procedure would be followed by the

3    crew, by the captain and the first officer.

4    When they are takeoff and approach, the

5    flap setting will save 3 to 5 percent fuel.

6         Q.   Okay.  So AeroTech sold the

7    device that would save fuel?

8         A.   Created and sold.

9         Q.   Created and sold.

10            Okay.  Did you personally create

11   that device?

12        A.   I'm sorry?

13        Q.   Did you create the device?

14        A.   The company that we bought this

15   through, but I had input in it.

16        Q.   Okay.  Have you ever created a

17   device for an aircraft before?

18            MR. BEHRE:  Objection, vague and

19        ambiguous, relevance, temporal scope.

20        A.   Can you explain what do you mean

21   by creation?  Build it physically?

22        Q.   Yeah.

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 49

1      A.    No, I have not built physically,

2    but I have been involved in creation of,

3    not physical creation, of a hush kit to

4    reduce the noise, and also conversion of

5    the passenger aircraft to cargo and other

6    modification.

7      Q.    Is AeroTech still operating

8    today?

9      A.    No.

10      Q.    Do you know when it ceased

11    operations?

12      A.    I don't remember.

13      Q.    Do you know why it went out of

14    business?

15      A.    Fuel prices came down and they

16    couldn't sell.

17      Q.    You sure it didn't have to do

18    with Bob Rau dying?

19      A.    No.  Bob Rau died long after

20    that.

21      Q.    Okay.  Do you know when AeroTech

22    ceased operations?

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 49 of 578

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 50

1        A.   I do not remember.

2        Q.   Was it before 2016?

3        A.   I really don't remember.

4        Q.   You were not the sole shareholder

5   of Aerotech, were you?

6        A.   I was not.

7        Q.   What percentage did you own?

8        A.   In the beginning -- I don't

9   remember, but there was also another

10  shareholder came in.  My share was reduced.

11       Q.   It was you and Bob Rau?

12       A.   In the beginning.

13       Q.   All right.  And then there were

14  two other shareholders after that, right?

15       A.   Right.

16       Q.   And you don't recall who they

17  were?

18       A.   I recall one of them.

19       Q.   Who was that?

20       A.   That was my nephew.

21       Q.   What is his name?

22       A.   Farhad.

Page 51

```
 1        Q.    Farhad Azima?

 2        A.    Yes.

 3        Q.    How about Caucas International --

 4        A.    Yes.

 5        Q.    -- LLC?

 6        A.    Yes.

 7        Q.    What was its business?

 8        A.    Logistics.

 9        Q.    Where?

10        A.    Afghanistan.

11        Q.    Okay.  Did it have employees?

12        A.    Either employees or contractors.

13        Q.    Okay.  It had officers and

14   directors other than yourself?

15        A.    Two other people.

16        Q.    Fadi --

17        A.    -- and Rami Abuhamdeh.

18        Q.    Are you related to them?

19        A.    I'm not related to them.

20        Q.    Okay.  Is Caucas International

21   LLC still operating?

22        A.    They are not operating.
```

1      Q.   Do you know when it ceased

2   operations?

3      A.   A few years ago.  I don't exactly

4   remember.

5      Q.   Before 2016?

6      A.   I do not remember.  I cannot

7   recall.

8      Q.   Do you know why it ceased

9   operations?

10     A.   There was no business.

11     Q.   No more business in Afghanistan?

12     A.   Correct.

13     Q.   What percentage ownership did

14   Fadi and Rami Abuhamdeh and yourself own?

15     A.   Fadi and Rami each owned 33

16   percent.  And I owned 34 percent.  You

17   couldn't divide 1 by 3.

18     Q.   You're familiar with Shollar

19   Bottling Company, right?

20     A.   Indeed, I am.

21     Q.   And what did it do?

22     A.   They bottled water.

1   Q. In Azerbaijan?

2   A. That's right.

3   Q. It had many employees, I assume?

4   A. It did, yes.

5   Q. It had officers and directors

6 other than yourself?

7   A. It has a -- it was -- the entity

8 was Azerbaijan entity. It has employees.

9 Sorry -- the entity was an Azerbaijan

10 entity.  It has employees.

11   Q. Okay.  Is it still operating?

12   A. It is not, no.

13   Q. Do you know when it ceased

14 operations?

15   A. I think it was around maybe

16 someplace between '12 and '14.

17   Q. 2012 and 2014?

18   A. In that range, yes.

19   Q. Okay.  Do you know why it ceased

20 operations?

21   A. Lack of management.  We don't

22 have people to run it.

1      Q.    Okay.   Did you own any portion of

2    that company?

3      A.    Majority.

4      Q.    Okay.   But you have other

5    shareholders?

6      A.    Two minority.   Both have 5

7    percent.   There are two other shareholders.

8    One had 5 percent, one 10 percent.

9      Q.    Do you recall the names of the

10    other shareholders?

11      A.    One -- the 10 percent owner, his

12    name was Pirouz, P-i-r-o-u-z.   Last name,

13    Khanlou, K-h-a-n-l-o-u.

14      Q.    Okay.   You weren't managing the

15    company, right?

16      A.    No.

17      Q.    Are you familiar with ALG

18    Transportation Inc.?

19      A.    I am.

20      Q.    Okay.   And that's a different

21    company than ALG Aviation LLC, correct?

22      A.    That company has been existing

1    for 40-plus years.  I don't know whether

2    one took over the other one or one became

3    one.  But the company right now is -- I

4    believe it's a Subchapter S corporation.

5         Q.   All right.  And that is ALG

6    Transportation Inc.?

7         A.   Yes.

8         Q.   Okay.  So when we refer to ALG,

9    we're referring to ALG Transportation Inc.

10   in the context of this litigation, correct?

11        A.   Correct.

12        Q.   Now for ALG, you're the sole

13   shareholder, right?  Or am I wrong?

14        A.   I never say you're wrong.  I

15   might say you're not right, but I'm too

16   polite to say you're wrong.

17        Q.   Okay.  Am I incorrect to saying

18   you are the sold shareholder of ALG

19   Transportation?

20        A.   I believe I am.

21        Q.   What leads you to not be certain?

22        A.   Because I have not seen the

1    ownership document for years.

2          Q.   Well, did you start the company?

3          A.   Yes, I did.

4          Q.   Did you sell a piece of the

5    company to anybody?

6          A.   Did I sell a piece of the company

7    to anybody?

8               I am not sure in the beginning,

9    there that was just me.  There were others.

10   I don't even recall that.  At present time,

11   I own 100 percent of the company.

12         Q.   Okay.  So can we --

13         A.   44 years ago, I don't remember

14   for all those years.

15         Q.   All right.  But this century,

16   you've owned all of it?

17         A.   This century?

18         Q.   Yes.  Since 2000?

19         A.   Yes.

20         Q.   Okay.

21         A.   I'm older.  I didn't realize --

22   you start mentioning by century, my age.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 57

1        Q.    Okay.  Do you have the ownership

2   documents for all of these entities that

3   I've asked you about?

4        A.    In my pocket?

5        Q.    No.

6        A.    I'm sure that my office has it.

7        Q.    Now ALG had officers other than

8   yourself between 2009 and 2016, correct?

9        A.    Yes.

10       Q.    And it had numerous employees,

11  right?

12       A.    Yes.

13       Q.    Okay.  Now its sole business

14  right now is leasing a Hawker XP -- 400XP,

15  right?

16       A.    And manages the other businesses.

17       Q.    Okay.  What other business does

18  it manage?

19       A.    Just the general other businesses

20  that I have, they manage.

21       Q.    Okay.  That currently exist?

22       A.    Yeah.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 57 of 578

5/21/2024　　　Farhad Azima v. Nicholas Del Rosso et al.　　　Farhad Azima

Page 58

1　　　Q.　Are you familiar with EMA

2　Logistics Services Company?

3　　　A.　Yes, I am.

4　　　Q.　Okay.  Now you didn't own any

5　piece of that company?

6　　　A.　I did not.

7　　　Q.　You did not.

8　　　　　And you were not an officer or

9　director of that company between 2008 and

10　2017, were you?

11　　　A.　I was not.

12　　　Q.　Did you have any confidentiality

13　agreements with EMA Logistics Services, you

14　personally?

15　　　A.　EMA was a joint venture partner

16　with Caucas, I'm talking, a operation in

17　Afghanistan.  And if there was a

18　confidentiality -- we normally don't

19　require confidentiality with the partners

20　if we know and we trust.  I am not sure its

21　existence.  If it was, I am not aware of

22　it.

1        Q.   Okay.  But you usually don't

2    require them with your partners?

3        A.   It depends if I know them

4    personally or if I -- in general, we

5    require with people that we don't know.

6        Q.   Okay.  But you knew EMA?

7             MR. BEHRE:  Objection, vague and

8        ambiguous.

9        A.   My partners know well EMA.

10       Q.   Okay.  And that would be Fadi and

11   Rami Abuhamdeh?

12       A.   Fadi and Rami Abuhamdeh.

13       Q.   So you don't have any

14   confidentiality agreements between yourself

15   and Fadi Abuhamdeh because you knew them,

16   right?

17       A.   Very well.

18       Q.   Okay.  You didn't have one with

19   RAK because you knew them?

20       A.   They were government.

21       Q.   Because they were government,

22   right.

1          You didn't have one with the

2     government of Georgia?

3          A.    They are government.

4          Q.    You didn't have one with the

5     government of Jamaica?

6          A.    They are government.

7          Q.    You didn't have one with the

8     government of South Sudan?

9          A.    I didn't do business with the

10    government of South Sudan.

11         Q.    Okay.  And you did not have

12    confidentiality agreements with ANHAM

13    because Rami and Fadi knew them well as

14    well?

15         A.    No, that is not the case.  ANHAM

16    was a prime contractor with DLA, Defense

17    Logistics Agency.

18              (Reporter clarification.)

19         A.    ANHAM was a prime vendor, p/v, to

20    the Department of Defense -- Defense

21    Logistic Agency, DLA.  And in so doing

22    business it's assumed that you're doing

1    business with government.

2          Q.    Okay.  So I just want to make

3    sure I understand.

4                When you're doing business with a

5    prime contractor like ANHAM, who does

6    business with a different government, you

7    treated it as if you were doing business

8    with the government and therefore did not

9    require any confidentiality agreements?

10               MR. BEHRE:  Objection,

11         mischaracterizes the testimony.

12         A.    That is not what I said.

13         Q.    Okay.  So please help me

14   understand.

15         A.    You're governed by certain rules

16   and regulations when you're doing business

17   with government as a contractor or a

18   subcontractor or with a prime vendor.  So

19   those rules are pretty strict.  Those rules

20   are very much very strict.  They're narrow.

21         Q.    So you didn't require -- you

22   personally did not have a confidentiality

1    agreement with ANHAM either?

2         A.    I did not do personal business

3    with ANHAM.  The company did.

4         Q.    Okay.  But the company didn't

5    require it because it was a prime vendor of

6    DLA?

7         A.    I do not know the answer to that.

8         Q.    Okay.

9         A.    I was not a managing partner of

10   the company.

11        Q.    Okay.  Did you own any part of

12   ANHAM?

13        A.    No.

14        Q.    Were you an officer or director

15   of that company between 2008 and 2017?

16        A.    No.

17        Q.    Are you familiar with the company

18   called Gilan Gabala Canning Factory LLC?

19        A.    I've seen the quote to us, but

20   I'm not familiar with it.  They have made

21   some quotation to Caucas, but I am not

22   familiar with the company.

1     Q.   Are you sure it was Caucas?  Or

2   Shollar Bottling?

3     A.   I think they were doing a project

4   together jointly, but I am not -- that was

5   not my -- I did not handle the project.

6     Q.   Okay.  You also didn't own any

7   part of that company?

8     A.   No.

9     Q.   You weren't a director or officer

10   of that company between 2008 and 2017

11   either?

12     A.   Which company again one more

13   time?

14     Q.   Gilan Gabala Canning Factory.

15     A.   No, none.

16     Q.   And of course you didn't have any

17   confidentiality agreements or nondisclosure

18   agreements with that company?

19     A.   When -- I did not, but I believe

20   Caucas, when they entered the court, they

21   have some arrangements.  I'm not -- I don't

22   remember that.

1      Q.   But you're not certain?

2      A.   Sorry?

3      Q.   You don't know?

4      A.   I don't remember that.

5      Q.   Okay.  Are you familiar with a

6    company called Pahlad Food MMC?

7      A.   The same.

8           These are all trying to put the

9    proposal together for the supply through

10   the northern road to Afghanistan, and they

11   did not materialize.

12     Q.   Okay.  So you had no

13   confidentiality agreement with that company

14   either?

15     A.   I did not run that company.  I do

16   not know whether they existed or not.

17     Q.   Okay.  You did not own a portion

18   of Pahlad Food either, right?

19     A.   I did not.

20     Q.   And you were not an officer or

21   director of the company between 2008 and

22   2017, correct?

1          A.    At no time I was officer or

2     director of that company.

3          Q.    Okay.  Are you familiar with a

4     company called UniTrans.

5          A.    I know the company UniTrans.

6          Q.    Okay.  What is its connection

7     with EMA?

8              MR. BEHRE:  Objection, vague and

9          ambiguous.

10          A.    I don't exactly know, but they

11     were all part of the ANHAM group.

12          Q.    All right.  And you didn't own

13     any part of UniTrans?

14          A.    I did not.

15          Q.    And you weren't an officer or

16     director between 2008 and 2017?

17          A.    I was not.

18          Q.    You also didn't have any

19     confidentiality agreement or nondisclosure

20     agreement with UniTrans?

21          A.    I did not run that company.

22          Q.    Is that a "no"?

1          A.    I said I don't know.

2          Q.    No, I'm asking about you

3    personally.

4          A.    Personally, I did not have

5    directly involvement with them.  The answer

6    is no.

7          Q.    Are you familiar with a company

8    named TRAKS LLC?

9          A.    I've seen their name, but I don't

10   have familiarity with them.  I am not

11   familiar.

12         Q.    Okay.

13         A.    Long time ago.

14         Q.    You obviously you didn't own any

15   part of that company?

16         A.    I did not.

17         Q.    You weren't a director or an

18   officer of that company between 2008 and

19   2017?

20         A.    I was not.

21         Q.    Are you familiar with Lider

22   International Logistics?

1      A.   How do you spell that?

2      Q.   L-i-d-e-r.

3      A.   Is that an Azerbaijan company?

4      Q.   I don't know.

5      A.   I vaguely remember that.  Yes, I

6   remember the name.

7      Q.   Okay.  But you didn't own a part

8   of it?

9      A.   I did not.

10     Q.   You weren't an officer or

11   director between 2008 and 2017?

12     A.   I was not.

13     Q.   And you personally did not have

14   any nondisclosure agreement or

15   confidentiality agreement with that

16   company?

17     A.   I did not.

18     Q.   Okay.  Are you familiar with a

19   company called Habaab Co.?

20     A.   The same answer.

21     Q.   What about Iveco, I-v-e-c-o?

22     A.   I don't recall the name.

1      Q.   What about Linder & Fisher.

2      A.   I don't recall the name.

3      Q.   Do you know who Umed Juraev is,

4  J-u-r-a-e-v?

5      A.   How do you spell the first name?

6      Q.   Umed, U-m-e-d.

7      A.   Vaguely.

8      Q.   Okay.

9      A.   I don't exactly remember that.

10  Vaguely, I know the name.

11      Q.   Okay.  Do you know who Mehrdad

12  Khonsari is?

13      A.   I do.

14      Q.   Who is he?

15      A.   He was a principal of EMA.

16      Q.   Okay.  And he didn't work for you

17  or any of your companies --

18      A.   No.

19      Q.   Okay.  Ever?

20      A.   No.

21      Q.   Okay.  Do you know who Ganesh

22  Inkhiya is?

1          A.    I do.

2          Q.    Who is he?

3          A.    He was general manager of one of

4     my hotels.  Later on, general manager of

5     Shollar.

6          Q.    So he was the one running the

7     company, right?

8          A.    At some point.

9          Q.    Which hotel was he the GM at?

10          A.    Grand Europe.

11          Q.    Where is that located?

12          A.    Baku, Azerbaijan.  That was the

13     first five-star hotel built in Azerbaijan.

14          Q.    Okay.  Let's go back to Exhibit

15     40, which are those are your answers, your

16     sworn answers.

17              MR. BEHRE:  It's this one right

18          here (indicating).

19     BY MR. KAPLAN:

20          Q.    Okay.  Turn to page -- we're

21     going to go back to page 8, if you don't

22     mind.

1          So if you remember, earlier, we

2     went through this and you agreed with me

3     that the answer, this particular statement

4     is the same for every single one of the 39?

5          MR. BEHRE:  Objection,

6          mischaracterizes the testimony.

7     BY MR. KAPLAN:

8          Q.   Which is "Plaintiff is an owner

9     of this trade secret."

10          Right?  That is your answer as to

11     each of the trade secrets identified?

12          MR. BEHRE:  Objection.  That is

13          not his answer.

14     BY MR. KAPLAN:

15          Q.   Is that not your answer?

16          A.   It is my answer.

17          Q.   Okay.  But you write or your

18     lawyers wrote on your behalf --

19          A.   Right.

20          Q.   -- but you signed as being true

21     that you are an owner.

22          Does that mean there are other

1    owners of any of these trade secrets?

2         A.    It could be my company and I.

3         Q.    Okay.  So if that's the case,

4    does your ownership --

5         A.    I said it could be.  I didn't say

6    always the case.

7         Q.    I understand that.  And we'll go

8    through them.

9              But to the extent that is the

10   case, does that mean that your ownership

11   derives from being an owner of the company?

12   Is that what that means?

13        A.    Or the vice versa.

14        Q.    How would it operate vice versa?

15        A.    It depends what the -- if it was

16   intellectual property or it is asset.

17        Q.    Well, we are talking about trade

18   secrets specifically.

19        A.    Well, which trade secrets are you

20   talking about?

21        Q.    Just in general.

22              Let me go back.

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 72

1       A.    There is no general in this case.

2       Q.    Yeah, but there is.

3             So let me go back and try it this

4    way, okay?

5             You answered as to every single

6    one of your trade secrets that -- your

7    alleged trade secrets, that you are an

8    owner.  And I asked you, okay, does that

9    mean there's others?  And you say there

10   could be.  It could be you and your

11   company.

12      A.    Correct.

13      Q.    And then you said or vice versa?

14      A.    Right.

15      Q.    So I want to understand what you

16   mean generally by "vice versa."

17            MR. BEHRE:  Objection,

18       mischaracterizes the testimony in

19       regard to at least trade secret 20, 21,

20       26, 27, 28, 29, and I think that's it.

21            MR. KAPLAN:  That's fair.  I'll

22       withdraw as to those particular trade

1          secrets.

2          A.    If my Rolodex --

3          Q.    I'm not talking about Rolodexes.

4     Your lawyer just objected about those.  So

5     let's forget about the Rolodexes, okay?

6          A.    All right.

7          Q.    When you say that you are an

8     owner of the trade secret --

9          A.    Right.

10          Q.    Not Rolodex.

11          A.    Right.

12          Q.    Right?

13                And you say, well, it could also

14     be -- your company could also own it?

15          A.    If I acquire the company --

16          Q.    Yeah.

17          A.    -- then those trade secrets are

18     mine.

19          Q.    Okay.

20          A.    I acquired them.

21          Q.    Okay.

22          A.    If it is my company I formed or I

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 74

1   have created and that's mine.  So this is a

2   two-way relation there.

3        Q.   Okay.

4             Now you have -- aside from, what

5   is it, 20, 21, 26, 27, 28 and 29, you have

6   stated that each of these interrogatories

7   relate to one of your companies.  That

8   would be either HeavyLift, Brownies,

9   Smokehouse, Aerotech, Caucas, ALG or

10  Shollar, right?

11       A.   Brownies is not my company.

12       Q.   Okay.  Well, why don't you look

13  at the bottom of page 8.

14       A.   I'm sorry?

15       Q.   Would you read your answer for

16  trade secret number 3, starting at the

17  bottom of page 8.  And then I'd like to

18  talk to you about it.

19            (Document review.)

20       A.   I did read that.

21       Q.   Well, you say that you owned JFJ,

22  which partially owns BGL.  And then you go

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 75

1    on to say, "Plaintiff owns all documents

2    and information generated by his

3    companies."

4              You're not referring to BGL

5    there, correct?

6         A.   I'm referring to the nature of a

7    business that involved these companies.  If

8    it is prepared under my direction, if it

9    was prepared with my input and used my

10   knowledge in the industry, then that I

11   considered to be trade secret.

12        Q.   Okay.  Now so that would mean

13   each of the entities, including Brownies

14   Global Logistics, that are referenced in

15   your interrogatories; again, I'll go

16   through them HeavyLift, Brownies,

17   Smokehouse, Aerotech, Caucas, ALG and

18   Shollar, each of those companies used your

19   trade secrets, right?

20        A.   To the extent that I had my input

21   and they were prepared under my direction,

22   yes.

1      Q.    Okay.  Each one of those entities

2   had access to the trade secrets that

3   related to them, right?

4      A.    The companies inherently own

5   their own or I owned them.  But the

6   question of my ownership interest in the

7   company, if it was proprietary under my

8   direction, they were mine.

9      Q.    That's not what I asked.

10     A.    What did you ask?

11     Q.    What I asked was whether these

12  entities, HeavyLift, Brownies, Smokehouse,

13  Aerotech, Caucas, ALG Transportation Inc.

14  and Shollar had access to your trade

15  secrets which related to them?

16        MR. BEHRE:  Objection, calls for

17     a legal conclusion, compound question,

18     vague and ambiguous.

19     A.    The ownership relating to

20  intellectual property, my knowledge, my

21  formation, my creation of those belonged to

22  me.

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 77

1          Q.    That's not my question.   I

2     recognize that that is your position.

3          A.    Yeah.

4          Q.    All right.

5          A.    So what is the question?

6          Q.    The question is whether the

7     companies that used or for whom you created

8     trade secrets, they had access to them,

9     right?

10          A.    Not without my permission.

11          Q.    Okay.   That's fair.

12                But then that is, yes, they all

13     had access?

14          A.    Not necessarily.

15          Q.    Okay.   So you're telling me that

16     Brownies Global Logistics didn't have

17     access to the trade secret that you

18     referenced as trade secret number 3?

19          A.    Brownies had a very -- my company

20     to JFJ had a very small part of that.

21          Q.    Okay.   But they had -- you have

22     alleged and you have stated under oath that

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 78

1     there was a trade secret belonging to you

2     that --

3          A.     That is the formation -- sorry

4     for the interruption.

5          Q.     That relates to Brownies Global

6     Logistics.

7                 Is it your position that Brownies

8     Global Logistics never had access to those

9     trade secrets?

10         A.     The financials prepared under my

11    direction, they were my trade secrets.  The

12    projection, financial cost, evaluation,

13    personnel, they were all trade secrets.

14         Q.     Okay.  But Brownies had access to

15    them, right?

16                MR. BEHRE:  Objection, vague as

17         to "them."

18         A.     I did not engage with Brownies

19    directly.  I don't know the answer to that.

20         Q.     You don't know?

21         A.     The management of the company,

22    the management of JFJ, which I was not a

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 79

1    managing partner, they handled it.

2         Q.   Okay.  So JFJ had access to your

3    trade secrets?

4         A.   JFJ had access to -- yes, that

5    was a part of my company.

6         Q.   Okay.  And you don't know whether

7    JFJ gave those trade secrets to be used by

8    Brownies?

9         A.   JFJ did not give anything to

10   Brownies.  Brownies, from my understanding,

11   was a joint venture partner in preparation

12   of the contract that we did.  Therefore the

13   -- and that contract was with the U.S.

14   government.  So it was -- I presume it was

15   protected.

16        Q.   Okay. Do you have any

17   nondisclosure agreement with your partners

18   at JFJ?

19        A.   I don't know.  I don't know that.

20        Q.   Okay.  What steps did you

21   personally undertake to maintain the

22   secrecy of your trade secrets with regards

1    to those provided to JFJ?

2         A.   JFJ was formed with the three

3    people that -- in addition to me, there

4    were two other people.  One was a naval

5    officer that who just retired.  And another

6    business associate, I've known him for 34

7    years at that time, at least for 30 years,

8    so I did not require any confidentiality.

9    But they required with others

10   confidentiality.

11        Q.   You're certain?

12        A.   I assume so.

13        Q.   Okay.  So HeavyLift, HeavyLift

14   used your trade secrets, right?

15        A.   Yes.

16        Q.   The trade secrets that you have

17   identified, some of at least --

18        A.   Right.

19        Q.   -- as those that my client

20   allegedly misappropriated, correct?

21        A.   Stole.

22        Q.   I'm sorry, stole.

1       A.    Right.

2       Q.    Okay.  So HeavyLift had access to

3    your trade secrets, right?

4       A.    HeavyLift did not have access to

5    my brain?

6       Q.    So all the trade secrets are your

7    brain?

8       A.    I didn't say all of them.  You're

9    putting words in my mouth.

10       Q.    I'm asking you.

11           MR. BEHRE:  Mischaracterizes the

12       testimony.

13    BY MR. KAPLAN:

14       Q.    Well, let's talk about HeavyLift.

15       A.    Right.  Let's talk about

16    HeavyLift.

17       Q.    Okay.

18       A.    What do you know about HeavyLift?

19       Q.    I don't know anything.

20       A.    Good.

21       Q.    Let's talk about it.

22       A.    Let's talk about it.

1          Q.    You're going to educate me.

2          A.    I haven't got enough time nor

3     that many years left in my life.

4          Q.    You have alleged that HeavyLift

5     -- let's look at trade secret number 1.

6     These are your own words, sir.

7               Trade secret number 1, and we'll

8     get into it, but it's, "Plaintiff is an

9     owner of this trade secret.  It is a

10     financial forecast related to one of

11     plaintiff's companies, HeavyLift

12     International.  Plaintiff owns all

13     documents and information generated by his

14     companies."

15               Right?

16          A.    Fair.

17          Q.    Okay.  So with regard to the

18     trade secrets that you are alleging that my

19     client stole related to HeavyLift, did

20     HeavyLift have access to those trade

21     secrets?

22               Of course they did.  They used

1    it.

2              MR. BEHRE:  Well, is that your

3         question or did you just answer your

4         own question?

5    BY MR. KAPLAN:

6         Q.   Am I wrong?

7         A.   I said I'd never say you're

8    wrong.

9         Q.   Am I not right?

10        A.   No, I didn't say that either.

11        Q.   Okay.

12        A.   I'm just thinking -- this is a

13   riddle or a question and answer?

14        Q.   I think it's a riddle.

15        A.   It is a riddle.

16        Q.   But it's your own riddle, so I'm

17   trying to figure out the answer.

18        A.   Good luck.

19        Q.   That's why we're here, right?

20             You've got trade secrets in your

21   head.

22        A.   Right.

1      Q.   HeavyLift, at least with regards

2  to a substantial number of the trade

3  secrets that you have alleged my client

4  stole, you have alleged the following --

5  well, you have stated under oath that of

6  the 39 you identified on your chart, which

7  is the exhibit we looked at, number 1, 2,

8  12, 13, 14, 15, 16, 17, 19, 24, 34 and 35,

9  all, quote, relate to one of your companies

10  HeavyLift International, okay?

11      A.   Okay.

12      Q.   My question becomes:  Didn't

13  HeavyLift have access to your trade

14  secrets, those particular trade secrets?

15      A.   You're trying to hold back from

16  laughing.  I'm doing the same thing.

17      Q.   I'm actually not.

18      A.   In that case, then repeat your

19  question one more time.

20      Q.   Let me try it a different way.

21      Your trade secrets in your brain

22  were put on paper, correct?

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 85

1          A.   At the time, yes.

2          Q.   Okay.  And those trade secrets

3     which were put on paper --

4          A.   Right.

5          Q.   -- a certain number of those?

6          A.   Right.

7          Q.   -- relate to HeavyLift?

8          A.   Correct.

9          Q.   Okay.  And those would be trade

10    secret numbers 1, 2, 12, 13, 14, 15, 16,

11    17, 19, 24, 34 and 35 as identified in

12    Exhibit 1 to your Interrogatory responses

13    that we've been looking at?

14              MR. BEHRE:  Objection.

15              Before you answer, you need to

16         look at the document.  This isn't a

17         memory test.

18          A.   The question, let me look at one

19    more time.

20          Q.   Look at number 1, the answer to

21    number 1?

22          A.   What page?  Page 8?

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 85 of 578

1        Q.    Why don't we go off the record

2    while you're looking.  I don't want to

3    waste more time.  We're burning daylight

4    here.

5             THE VIDEOGRAPHER:  Off the record

6        at 10:19.

7             (Recess is taken.)

8             THE VIDEOGRAPHER:  Back on the

9        record at 10:33.

10   BY MR. KAPLAN:

11       Q.    Okay.  Mr. Azima, let's look at

12   trade secret number 1 on page 8 of your

13   interrogatories.

14             You say it's a financial forecast

15   related to one of plaintiff's companies,

16   HeavyLift International, right?

17       A.    Let me read that, please.

18             (Document review.)

19       Q.    It's literally one sentence.

20       A.    I have read it.

21       Q.    Okay.  Now do I understand --

22   this was a -- trade secret number 1 was a

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 87

1   financial forecast for HeavyLift.

2          Was that my understanding?

3      A.   They have financial forecast for

4   HeavyLift.

5      Q.   And those financial forecasts

6   were reduced into a document form, correct?

7          MR. BEHRE:  Objection, vague and

8      ambiguous.

9   BY MR. KAPLAN:

10     Q.   Correct?

11     A.   They are produced -- the forecast

12  of that document.

13     Q.   Right.

14          And HeavyLift International used

15  that document?

16          MR. BEHRE:  Objection, vague and

17     ambiguous.

18  BY MR. KAPLAN:

19     Q.   Correct?

20     A.   HeavyLift used the forecast

21  obviously for the purpose.

22     Q.   Right.

1              So it obviously had access to it,

2    right, to use it?

3              Would you agree?

4         A.   With my permission.

5         Q.   Okay.  But also this was the same

6    company that was owned by RAK, right?

7         A.   Not all the time.

8         Q.   Okay.  Well, at this point in

9    time -- well, let me back up.

10             HeavyLift International had --

11   was allowed to use it with your permission?

12             What did you do to restrict

13   HeavyLift from disclosing these forecasts?

14             MR. BEHRE:  Objection, vague and

15         ambiguous as to "it" and "these

16         forecasts."  If you want to show him a

17         forecast, show him.

18             MR. KAPLAN:  I will.  Thank you.

19        A.   HeavyLift's business was highly

20   compartmentalized.  Not all documents were

21   available to everybody.

22        Q.   Who was -- who were the financial

1    forecasts available to?

2         MR. BEHRE:  Objection, vague and

3         ambiguous as to "the financial

4         forecast."

5         A.   Can you tell me which forecasts.

6    All forecasts are not the same.

7         Q.   Sure.  We'll go through it.

8              Now you go on to say, "Plaintiff

9    owns all documents and information

10   generated by his companies," right?

11             That's your position?

12        A.   If the company generates the

13   documents, obviously it owns it.

14        Q.   The company owns it?

15        A.   The company or those who authored

16   it owns it.

17        Q.   What is the position -- well, I'm

18   sorry.

19             What is the basis for your

20   position that the person who authored a

21   document on behalf of a company owns it?

22        A.   40, 50 years of experience in the

1    industry; knowledge; relation, who do you

2    know; and years of experience in operating

3    airlines; and the relation that you have

4    throughout the world.

5         Q.   Okay.  And I don't think that was

6    the question that I asked, however --

7         A.   Maybe I did not understand.  You

8    asked what gives the ownership, what

9    creates the ownership of those trade

10   secrets or the documents, financial

11   forecasts.

12        Q.   Let me try again, okay?

13        A.   Please.

14        Q.   I'm quoting your own words, here,

15   okay?

16             "Plaintiff owns..." that will be

17   you.

18             We understand that?

19        A.   Yes.

20        Q.   "Plaintiff owns all documents and

21   information generated by his companies."

22             Do you have any other basis,

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 91

1    other than what you just testified to, to

2    support that position?

3         A.    Under who -- under my direction,

4    yes.

5         Q.    Okay.  So the only --

6         A.    My input, my knowledge creates

7    those documents.

8         Q.    Right.

9               And so your position is that

10   because your knowledge and input created

11   those documents, you own them even though

12   they were generated by a company?

13              MR. BEHRE:  Objection, calls for

14         a legal conclusion, vague and

15         ambiguous.

16        A.    The projections, the forecasts

17   comes from evaluation and a base of

18   knowledge.  That base of knowledge is mine.

19        Q.    Okay.  And didn't you give that

20   base of knowledge to the company so that it

21   could create documents?

22        A.    It created the document with my

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 91 of 578

1    knowledge and for the purpose for which it

2    was intended, not to be stolen and not to

3    be taken away by somebody else against my

4    will.

5          Q.    Okay.  Do you have any other

6    basis to support your contention that you

7    own all documents and information generated

8    by your companies?

9          A.    Would you --

10         Q.    Is there any other basis

11   whatsoever, other than what you just

12   testified to, to support your statement

13   that you own all documents and information

14   generated by your companies?

15              MR. BEHRE:  Objection.

16              Are you asking him about trade

17         secret 1 from which you're reading?

18              MR. KAPLAN:  I'm asking him,

19         period, if he has -- if he has any

20         other basis for the statement, period,

21         that he owns all documents and all

22         information generated by his companies,

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 93

1      plural, as he swore to under oath.

2           MR. BEHRE:  You're reading from

3      trade secret number 1.

4           MR. KAPLAN:  I'm reading from

5      every single trade secret except for

6      20, 21 --

7           MR. BEHRE:  Okay.  Objection,

8      compound.

9           MR. KAPLAN:  Great.

10           MR. BEHRE:  If you want to show

11      him a trade secret, show it to him.

12      But --

13           MR. KAPLAN:  I'm showing him a

14      statement.

15   BY MR. KAPLAN:

16      Q.   You made the statement under oath

17   that you own all documents and information

18   generated by all of your companies,

19   correct?

20      A.   Those who are under my direction.

21      Q.   Just bear with me.

22           You swore under oath that you own

1    all documents and information generated by

2    your companies, correct?

3          MR. BEHRE:  Objection,

4       mischaracterizes the document you're

5       reading from.  You read from trade

6       secret 1.  Otherwise, compound.

7    BY MR. KAPLAN:

8       Q.   Okay.  Do you take the position

9    that you own all documents and information

10   generated by all of your companies?

11      A.   I am taking a position that if it

12   was provided under my direction, with my

13   input and my knowledge, I own them.

14      Q.   I don't think that was quite

15   responsive, but thank you.

16          Is there any company that you own

17   that you can think of that generated

18   documents that you don't own or the

19   information contained therein --

20      A.   Can I show you --

21      Q.   I'm not done.

22          -- to the extent they contain

1   your trade secrets?

2         MR. BEHRE:  Objection, vague and

3       ambiguous.

4       A.   Could I see that document you're

5   referring to?

6       Q.   We'll go through it later, but

7   you made a statement, sir --

8         MR. BEHRE:  No.  The witness

9       asked for the exhibit.  Give him the

10      exhibit.

11       A.   I just don't know what you're

12  talking about.  That is the problem.

13        MR. BEHRE:  Yes, this is turning

14      into gamesmanship.  If you're going to

15      show him a document, show it to him.

16        MR. KAPLAN:  Oh, boy, that's

17      rich, Kirby.  That's great.

18        MR. BEHRE:  Okay.  He asked to

19      see a document.

20        MR. KAPLAN:  Sir, why don't we go

21      off the record and do me a favor.  In

22      fact, I'll highlight it for you.  I'll

5/21/2024 Farhad Azima v. Nicholas Del Rosso et al. Farhad Azima

Page 96

1       show you where you testified under oath

2       as to every single trade secret

3       identified in response to Interrogatory

4       No. 5, all right?  You can take all the

5       time you want.  We'll go off the

6       record.

7            MR. BEHRE:  No, we are not going

8       to go off the record.

9            MR. KAPLAN:  Yeah, we are.

10           MR. BEHRE:  You can go off the

11      record, but he ain't reading unless

12      he's on the record.  If you want him to

13      synthesize evidence for you --

14           MR. KAPLAN:  I don't.

15           MR. BEHRE:  -- he does -- well,

16      that's what you're asking him to do.

17  BY MR. KAPLAN:

18      Q.  Sir, I would like to go off the

19  record, and I'd like for you to read your

20  answers --

21           MR. BEHRE:  He won't do that.

22      Q.  -- to Interrogatory No. 5.

5/21/2024 Farhad Azima v. Nicholas Del Rosso et al. Farhad Azima

Page 97

1      A.   You heard what the man said.

2      Q.   Yes, I heard that --

3      A.   Okay.

4      Q.   -- and I'm ignoring it, okay?

5      A.   Then I'm not answering you.  If

6  you want to be on the record, I will -- you

7  don't want to go off the record --

8      Q.   I have got an idea.  I would like

9  to go off the record.  And give me

10  Exhibit 40.

11      A.   I'm sorry?

12      Q.   I would like to go off the

13  record.  And then please hand me

14  Exhibit 40.

15      A.   On the record or off the record?

16      Q.   Off the record.

17      A.   I'm not going to answer off the

18  record.

19      Q.   I'm not asking you anything.  I'd

20  like for you to hand me --

21          MR. BEHRE:  He wants to go

22          highlight it and give you his

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 98

1        highlights.

2                MR. KAPLAN:   Thank you.   We'll go

3        off.

4                THE VIDEOGRAPHER:   Off the record

5        at 10:42.

6                (Recess is taken.)

7                THE VIDEOGRAPHER:   Back on the

8        record at 10:59.

9    BY MR. KAPLAN:

10       Q.   Okay.   Mr. Azima, I've handed you

11   back Exhibit 40, and I've highlighted a

12   specific sentence with regards to each

13   trade secret that you identified in

14   response to Interrogatory No. 5 except for

15   numbers 5, 20, 21, 22, 26, 27, 28 and 29,

16   okay?

17           Would you go through that and

18   confirm for me that the highlighted

19   sentence is the same as to each?

20               MR. BEHRE:   Do you have a copy

21       for us?

22       A.   For the first one --

5/21/2024                Farhad Azima v. Nicholas Del Rosso et al.                Farhad Azima

Page 99

1          Q.    Just the sentence.

2          A.    I can't read the sentence without

3     knowing the whole context.

4          Q.    That is not the issue.

5                I want to solely -- we'll deal

6     with the content later.  I just want you to

7     confirm for me right now that the sentence

8     which is highlighted is the exact same

9     words as to each.  That's all I want

10    you to --

11         A.    I can do it that way.

12         Q.    Go for it.

13               MR. BEHRE:  What page?

14               MR. KAPLAN:  Starting on page 8.

15               (Document review.)

16         A.    All are the same.

17         Q.    They are the exact same sentences

18    as to each, correct?

19         A.    Correct.

20         Q.    Okay.  Please read that

21    highlighted sentence for me.

22         A.    "Plaintiff owns all documents and

1    information generated by his companies."

2         Q.   Right.

3              So you would agree with me that

4    you didn't restrict that sentence to a

5    specific company, correct?

6         A.   It says by companies.

7         Q.   Right.

8              So your position is that you own

9    all documents and information generated by

10   your companies, right?

11             MR. BEHRE:  Are you asking about

12        a specific trade secret?

13        A.   I don't know which one you're

14   talking about.

15        Q.   I'm not.

16             You wrote the exact same thing.

17   You swore under oath, period.  You didn't

18   qualify it.  You simply said that I own all

19   of the documents and information generated

20   by my companies.

21             MR. BEHRE:  Let me make an

22        objection.

1              MR. KAPLAN:  Just say

2         "objection."  It's fine.

3              MR. BEHRE:  I object to the way

4         you're treating this document.  Each

5         of those --

6              MR. KAPLAN:  I'm not treating the

7         document --

8              MR. BEHRE:  Hold on.

9              Let me finish my objection.

10             Each sentence that you're reading

11        from relates to a specific trade

12        secret.  If you want to show him the

13        trade secret, do so.  But this is

14        inappropriate and it's unfair to the

15        witness.

16    BY MR. KAPLAN:

17        Q.   So each of the trade secrets that

18    you have identified relates to certain

19    companies, correct?

20        A.   Right.

21        Q.   Okay.  That would be HeavyLift,

22    Brownies, Smokehouse, Aerotech, Caucas, ALG

1    Transportation or Shollar Bottling,

2    correct?

3         A.    How many companies are there?

4         Q.    One, two, three, four, five, six

5    -- seven.

6         A.    There are seven different types

7    of trade secrets, and I'm not going to

8    generalize them --

9         Q.    Okay.  So --

10        A.    -- unless I see it.

11        Q.    Sure.

12              So it's not your position, then,

13   that all of the documents and information

14   generated by HeavyLift are owned by you,

15   correct?

16        A.    Did I say that?

17        Q.    You did actually.

18        A.    No, I did not say that.  I said

19   each one of -- generalizing this as all the

20   same is not accurate.  Show me each one and

21   I will talk about it.

22        Q.    Okay.  Understood.

1          I'll show you what has been

2     marked as Exhibit 1.  Actually, let me go

3     back for a second.

4          Do you know who Alan Baird is?

5     A.   Yes, I do.

6     Q.   Who is he?

7     A.   He was formerly general manager

8     and director of DHL in Bahrain.

9     Q.   DHL?

10    A.   DHL.

11    Q.   Like the courier --

12    A.   Courier company, yes.

13    Q.   Okay.  When did he cease being in

14    that role?

15    A.   I don't recall the date.

16    Q.   Was it before 2016?

17         MR. BEHRE:  Objection, relevance.

18    A.   I don't recall the dates.

19    Q.   Okay.  Did you have any

20    confidentiality agreements ever in place

21    with Mr. Baird?

22         MR. BEHRE:  Objection, no

1        foundation.

2        A.    I don't recall.

3        Q.    Did you have any -- did you ever

4   have any confidentiality agreements in

5   place with Fadi Abuhamdeh?

6             MR. BEHRE:  Asked and answered.

7        A.    I'm sorry?

8             You asked that question before in

9   relation to Caucas, and I said that they

10  were business partners and I did not

11  require it.

12       Q.    Okay.  Same answer with regards

13  to Rami Abuhamdeh?

14       A.    The same answer to Rami

15  Abuhamdeh, yes.  They are business partners

16  of mine.  They were.

17       Q.    Did you personally have any

18  confidentiality agreements in place with

19  Caucas International?

20            MR. BEHRE:  Objection to the

21       extent it asks questions outside of the

22       scope of this deposition which are the

1       trade secrets.  If your question is

2       limited to the trade secrets, no

3       objection.

4    BY MR. KAPLAN:

5       Q.   Do you have any agreements with

6    Caucas International Inc. that would

7    restrict its use of any of your trade

8    secrets to the extent that it came into

9    possession --

10      A.   It was understood that -- by the

11   partners doing business with each other

12   then they will not use it for anything

13   else.

14      Q.   Okay.  And what is the basis for

15   your testimony that it was understood?

16      A.   I know these people for years and

17   I trust them.

18      Q.   Okay.  Anything else?

19      A.   And the corporate agreement that

20   we have signed as governing the relation,

21   it will, I believe -- I don't recall

22   exactly, but I think we will not compete

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 106

1    with each other or something like this.

2          Q.    Okay.

3          A.    It was a long time ago.  I need

4    to see documents.  You're asking me

5    something about 10 or 15 years ago and I

6    don't remember that.

7          Q.    Okay.  Well, do you know whether

8    that document to which you are referring

9    has been produced?

10          A.    The corporate documents of what,

11    the formation of the Caucas?  I have no

12    idea.

13          Q.    Okay.  Do you know which -- what

14    is the name of the document you're

15    referring to for Caucas?

16          A.    The formation of LLC probably

17    have some restrictions.  I don't know that.

18    I don't recall that.  It was a long time

19    ago.

20          Q.    Okay.  Do you have any agreements

21    with ALG Transportation Inc. that would

22    require it to maintain the secrecy of your

Case 1:20-cv-00954-WO-JLW  Document 379-7  Filed 07/15/24  Page 106 of 578

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 107

1   trade secrets to the possession that it

2   came into contact with it?

3       A.   ALG Transportation Inc. is a

4   company I own 100 percent, and I do not

5   recall confidentiality for myself.

6       Q.   Okay.  What about with any of

7   ALG's employees?

8       A.   We have a confidentiality with

9   some and we have a nondisclosure with some.

10      Q.   Okay.  Do you have one with Ray

11  Adams?

12      A.   For God's sake, I've known him

13  for 44 years.  He worked for me.  Why would

14  I do that?  He's my group CFO.

15      Q.   Okay.  Do you know whether those

16  documents to which you are referring have

17  been produced?

18          MR. BEHRE:  Objection, vague and

19      ambiguous as to the documents he's

20      referring.

21      A.   What document are you referring

22  to?

1      Q.   You just told me you have NDAs

2    for some employees of ALG and

3    confidentiality agreements for others.

4              MR. BEHRE:  Objection, misstates

5         the testimony.

6    BY MR. KAPLAN:

7      Q.   "We have confidentiality with

8    some and we have nondisclosure with some."

9              Those are the documents I'm

10   referring to.

11     A.   Over the years in the past, yes.

12     Q.   Okay.  Have you produced them?

13     A.   I don't know.

14     Q.   Okay.  Did you give them to your

15   lawyers?

16     A.   I don't know if they have asked

17   for it either.  You're talking about years

18   ago.  You're talking about 40 years of

19   history and you expect me to remember

20   those?

21     Q.   To the extent that anybody that

22   worked for Caucas International Inc. came

1    into possession of your trade secrets, what

2    measures did you take to maintain their

3    secrecy in those other persons' possession?

4         A.    The company preserved and guarded

5    anything that was -- belonged to the

6    company.

7         Q.    How?

8         A.    In their premises.

9         Q.    I am not sure what that means.

10        A.    Premises.

11             MR. BEHRE:    In the premises, in

12        the building.

13        A.    In the offices, premises.

14        Q.    Okay.  And how did it protect the

15   information in the premises?

16        A.    Normally, we had the files which

17   locked, fireproof, and any confidential

18   information goes there.

19        Q.    Okay.  Were there any

20   restrictions put in place within Caucas

21   International as to who can see documents

22   containing your trade secrets?

1          A.     Only Fadi and Rami.

2          Q.     Okay.  Did anyone other than Fadi

3     and Rami work on creating the documents

4     containing your alleged trade secrets?

5               (Reporter clarification.)

6          Q.     Did anybody other than Fadi and

7     Rami Abuhamdeh at Caucas International ever

8     contribute to documents that you allege

9     contained your trade secrets?

10               MR. BEHRE:  Objection, improper

11          question without showing him the

12          document.  It's vague and ambiguous

13          without a document in front of him.

14          A.     I don't know which document

15     specifically you're referring to.

16          Q.     Who was on the operations team at

17     ALG Transportation Inc. between 2007 and

18     2016?

19          A.     Between?

20          Q.     2007 and 2016?

21          A.     A lot of people.

22          Q.     A lot of people.

1          Who was on the maintenance team

2      at ALG?

3          A.    Joe Boini, Dave Hostetler.   I

4      can't remember all the names.   A lot of

5      people.

6          Q.    The folks on the operations team,

7      were they required to sign NDAs or

8      confidentiality agreements?

9          A.    Yes.

10          Q.    Do you know whether they've been

11      produced?

12          A.    In the setting of Ras Al Khaimah,

13      whatever was signed by HeavyLift or by NDA

14      related to that, they are in the offices of

15      Ras Al Khaimah ALG or -- ALG or HeavyLift

16      offices in emirates of Ras Al Khaimah in

17      United Arab Emirates.

18          Q.    I do not understand what you're

19      saying.   I'm sorry.

20          A.    You asked a question if any of

21      those NDAs have been produced.

22          Q.    No, I'm asking specifically with

1    regard to the NDAs that the members of the

2    operations team at ALG were required to

3    execute.

4         A.    Those who related to the

5    operation in the Middle East, or office in

6    the Middle East, those involved in the

7    operation probably remained.  I don't

8    recall that exactly.  But normally if a new

9    person comes, the company required NDA or

10   the confidentiality NDA, nondisclosure,

11   some of those things.

12        Q.    When did ALG Transportation Inc.

13   begin requiring that?

14        A.    When we do sensitive work.

15        Q.    No, what date?

16        A.    I don't remember dates.

17             MR. KAPLAN:  Kirby, did you

18        produce these NDAs and confidentiality

19        agreements that he's testified to with

20        regards to HeavyLift and ALG and

21        Caucas?

22             MR. BEHRE:  Is it your position

1          they are within the temporal scope?

2               MR. KAPLAN:  Yes, of course they

3          are.

4               MR. BEHRE:  From -- what years?

5          Maybe I'm misunderstanding.

6               MR. KAPLAN:  That's fine.  Will

7          you agree not to produce them at trial

8          if you won't produce them now.

9               MR. BEHRE:  I want to know what

10          "it" is.

11               MR. KAPLAN:  He just testified

12          that there is NDAs and confis with

13          Caucas, with ALG, with HeavyLift, with

14          all the employees.

15          A.   No, I didn't say all the

16     employees.

17          Q.   Sorry.

18               MR. KAPLAN:  With the operations

19          team.

20          A.   Maybe with some.  I said there

21     were some.

22               MR. KAPLAN:  Let me say --

1        MR. BEHRE:  We are not going to

2     do this on the record.

3        MR. KAPLAN:  We are.

4        To the extent the confidentiality

5     agreements or nondisclosure agreements

6     exist between either ALG Transportation

7     Inc., HeavyLift or Caucas International

8     Inc. and any of its officers or

9     employees, are you refusing to produce

10    them?

11        MR. BEHRE:  I'm not taking any

12    position.

13        MR. KAPLAN:  Okay.

14        THE WITNESS:  Kirby --

15    A.    Counsel, I did not say with all

16  the company.  You're talking about ALG.

17    Q.    Okay.  What companies don't have

18  NDAs or confidentiality agreements?

19    A.    If there is any and you don't put

20  a document before me, I can comment.

21    Q.    I don't have any.  That's what

22  I'm trying to get at.

1              MR. BEHRE:  That is enough

2        arguing, all right?

3   BY MR. KAPLAN:

4        Q.   Mr. Azima, here is my problem --

5              MR. BEHRE:  No.  Hold on.  Stop

6        arguing.

7              MR. KAPLAN:  There is not a

8        question pending, sir.  There's nothing

9        for you to --

10             MR. BEHRE:  Stop arguing with the

11       witness.

12  BY MR. KAPLAN:

13       Q.   Mr. Azima, maybe we can figure

14  this out together, seriously, because I am

15  at a loss because I am little confused.

16             You've told me now that you

17  believe -- and, listen, it was a long time

18  ago, so your memory may not be entirely

19  correct, it happens.

20             You believe that there were

21  confidentiality agreements or nondisclosure

22  agreements that ALG required of certain

1    employees, right?

2         A.    At some point.

3         Q.    At some point.  And you don't

4    remember when.  And I don't have any.

5         A.    I don't believe you noted what I

6    said.

7         Q.    That's what I'm saying.  Maybe

8    I'm confused.

9         A.    I said some of those, if it was

10   in relation to operation in the Middle

11   East, 2002 to 2012, they were left behind

12   at the offices of either HeavyLift or ALG

13   at Ras Al Khaimah.

14        Q.    Okay.  So that I'm clear, to the

15   extent that confidentiality agreements or

16   nondisclosure agreements were required to

17   be executed by any employees of ALG or

18   HeavyLift, you don't have those anymore?

19             MR. BEHRE:  Hold on.

20             Objection, mischaracterizes the

21        testimony.  And this has been repeated

22        where you mischaracterized what he

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 117

1        says.

2        A.    That is not what I said.

3        Q.    Okay.  What did you say?

4        A.    I said that in some employees, at

5    some point, sometimes, if there was some --

6    if they were confidentiality or NDA, it was

7    signed, they are still left in our Ras Al

8    Khaimah office in the Middle East, in Ras

9    Al Khaimah office of ALG or HeavyLift.

10        Q.    Okay.  Can you name a single

11    employee at either HeavyLift or ALG that

12    was required to sign an NDA?

13            MR. BEHRE:  Objection as to

14        relevance to the extent they don't

15        relate to the trade secrets at issue.

16        A.    I don't recall that.

17        Q.    Okay.  Did you have any

18    agreements in place with Aerotech Inc.

19    requiring, to the extent that it came into

20    possession of your trade secrets, that it

21    was required to maintain the secrecy?

22            MR. BEHRE:  Objection as to

1          relevance to the extent it doesn't

2          relate to the trade secrets at issue.

3          A.    I don't recall whether Aerotech

4     was acquired by AZRA.  If it was acquired

5     by AZRA, it would become in-house.

6          Q.    Explain, please.

7          A.    Aerotech was a company I believe

8     AZRA purchased.  Is that the company we

9     acquired?  I don't recall.

10          You don't show me any document.

11     You want me to remember these things.  I

12     don't.

13          Q.    Well, I just want to know what

14     you did to maintain the secrecy of your

15     trade secrets --

16          A.    But I don't know which one you're

17     tack talking about.

18          Q.    Let me ask you this:  Did you

19     take different measures depending on

20     different trade secrets?

21          MR. BEHRE:  No, you know, this is

22          objectionable.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 119

1          A.    You are not getting anywhere.

2                MR. BEHRE:  And you're

3          deliberately not showing the witness

4          the exhibits.  You're making a

5          confusing record.  It's unclear what

6          you're asking about.  And you are

7          beyond the scope.

8     BY MR. KAPLAN:

9          Q.    Mr. Azima, did you have an

10    ownership interest in AZRA LLC?

11         A.    Yes, I did.

12         Q.    How much?

13         A.    I don't recall that.

14         Q.    Majority?

15         A.    No.

16         Q.    Okay.

17         A.    No.  At no time was majority.

18         Q.    Okay.

19         A.    Nor was I the managing partner.

20    And I didn't run it day to day.

21         Q.    You did not?

22         A.    No.

1          Q.    Did you have any agreements in

2      place with Brownies Global Logistics

3      requiring to the extent that it came into

4      possession of your trade secrets, that it

5      was required to maintain its secrecy?

6              MR. BEHRE:  Same objection.  If

7          it's limited to the trade secrets at

8          issue, fine.  If not, objection.

9          A.   I testified before that I did not

10     run the companies, nor I had any ownership

11     of it.

12         Q.   Sir, did Brownies Global

13     Logistics come into possession of any of

14     the trade secrets that you contend my

15     client stole from you in this lawsuit?

16         A.   Show me which one you're talking

17     about.

18         Q.   Just in general.  I'm asking --

19         A.   I don't do generality.

20         Q.   Did HeavyLift come into

21     possession of any of the trade secrets that

22     you allege my client stole in this lawsuit?

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 121

1       A.   I don't know which one you are

2   talking about.  HeavyLift did business for

3   many, many years, and it was in the Middle

4   East.  It was all over the world.

5       Show me what you're talking about

6   so I can comment on that.  You're testing

7   my memory.  I'm 83 years young and I don't

8   remember everything.

9       Q.   Did Smokehouse Barbecue come into

10   possession of any of your trade secrets?

11       A.   I don't make barbecue sauce.

12       Q.   Okay.

13       A.   I do financials.

14       Q.   Did Aerotech come into possession

15   of any of your trade secrets that you

16   allege my client stole from you in this

17   lawsuit?

18       MR. BEHRE:  Objection,

19      foundation, vague and ambiguous.

20       A.   I testified that I was not

21   managing neither AZRA nor Aerotech.

22       Q.   Okay.  So is that a no, Aerotech

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 122

1    never came into possession of any of your

2    trade secrets that you believe my client

3    stole from you?

4              MR. BEHRE:   Same objection.

5         A.    I don't know how to answer your

6    question because you're going around the

7    weather.  And I stated very carefully, if

8    you have a document, if you want me to look

9    at it, read, comment, please put it

10   forward.

11        Q.    Did Shollar Bottling come into

12   possession of any of the trade secrets that

13   you allege --

14        A.    The same answer.

15        Q.    Okay.  The same thing for ALG

16   Transportation Inc.?

17        A.    I need to know piece by piece the

18   document that you're talking about.  Unless

19   you put a document before me -- this is not

20   a memory test.  This is a deposition.

21              Show me document, I can deal with

22   it.  Otherwise, we're going to sit here all

1      day and that is going to be an unproductive

2      day.

3          Q.    I think today has been quite

4      productive so far.

5          A.    I'm happy to hear it.

6          Q.    I'm going to show you what was

7      marked as Exhibit 1, which are the numbered

8      pages consistent with what you have

9      identified as trade secret number 1 in the

10     chart attached to your interrogatories.

11             MR. KAPLAN:  Kirby, they're the

12         same ones.

13             MR. BEHRE:  Highlighting yours?

14             MR. HERBERT:  Do you want them

15         highlighted?

16             MR. BEHRE:  They're all

17         highlighted.

18             MR. KAPLAN:  Yeah, no, that's

19         fine.  That's okay.  It's the exact

20         same exhibits as before.

21             MR. ROSENTHAL:  I don't think so.

22             MR. HERBERT:  No.

1          MR. KAPLAN:  Well, they should

2      have been.  We'll substitute for

3      non-highlighted versions because I'm

4      not going into it anyway.

5  BY MR. KAPLAN:

6      Q.    This document contains your trade

7  secrets, right?

8          MR. BEHRE:  Let the witness look

9      at it.

10     A.    It says very clearly --

11         MR. BEHRE:  Look at the exhibit

12     first before you talk about it --

13     A.    Let me make the statement and

14  then I'll look at it.

15         With my limited English, I can

16  read it says "Strictly confidential.  For

17  discussion purposes only."

18         By definition it's confidential.

19     Q.    Okay.  That might be, but does

20  this not contain your trade secrets?

21     A.    If it does, it's confidential.

22     Q.    That's not my question.  I just

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 125

1    want to know whether in fact it does

2    contain your trade secrets?

3         A.    That is my answer.  If it is, it

4    contains my confidential information and if

5    it's my trade secret, it's confidential.

6    Because it says here clearly.

7         Q.    Okay.  What in that particular

8    document is your trade secret?

9              MR. BEHRE:  Take the rubber band

10        off and look at the document.

11             THE WITNESS:  Let me just try to

12        take the band off first, Counselor.

13             MR. BEHRE:  Please do.

14             (Document review.)

15        A.    Surely I don't have time to read

16    all this.

17        Q.    Sir, you have identified that

18    entire document as a trade secret that

19    belongs to you.

20        A.    This is confidential.

21        Q.    Okay.  Let's do it this way.

22             Do you agree with me that that

5/21/2024            Farhad Azima v. Nicholas Del Rosso et al.            Farhad Azima

Page 126

1    document is your trade secret?

2         A.    It says -- yes.  It is our seven

3    years financial forecasts.

4         Q.    Okay.

5         A.    And it is confidential.

6         Q.    Okay.

7         A.    And your clients stole it.

8         Q.    I recognize that.

9              How do you know that my clients

10   stole that document?

11        A.    Well, the whole world knows that.

12        Q.    How?  What is your proof?

13        A.    What is my proof?  We'll show it

14   in court.

15        Q.    You're refusing to tell me right

16   now why it is that you believe why my

17   clients stole that particular document --

18        A.    They did it.

19        Q.    How do you know he did it?

20        A.    Well, that's not the reason why I

21   am here.

22        Q.    Well, no, but it is the reason

1    you are here.  You are here to prove your

2    case.  I am here to find out whether you

3    have any support for your allegations.

4              You have alleged in this lawsuit

5    that my client stole that document.

6         A.   I saw the documents was in

7    possession of your client.  Yes or no?

8         Q.   No, I don't know.

9         A.   You said you produced that.

10        Q.   So --

11        A.   That means your client had it.

12        Q.   Okay.  That's different than

13   stealing it, isn't it?

14        A.   Well, how did he come into

15   possession of it?

16        Q.   You tell me.

17        A.   No, you tell me.

18        Q.   Okay.  Let's get back to the

19   actual document.  I'm telling you, unless

20   you disagree with me, that you have

21   identified that entire document as your

22   trade secret?

1      A.   It is entire document is

2   confidential strictly.

3      Q.   Okay.  Is it your trade secret?

4      A.   You want me to read it one by one

5   and tell you?

6      Q.   No, I'm telling you that you have

7   identified that entire document as your

8   trade secret.

9      A.   I'm not going to --

10      Q.   No, no, no, there is no

11   question --

12      A.   Without looking at it, I don't

13   know if there is financial --

14         MR. BEHRE:  Take your time and

15         look through the document before you

16         answer the question.

17      A.   It's the responsibility --

18         (Simultaneous speaking.)

19         MR. KAPLAN:  Guys, there is no

20         pending question.  Stop arguing with

21         me, please.

22      A.   You lower your goddamn voice.  Is

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 129

1    that clear?  Don't scream at me.

2       Q.   Why are you so angry, sir?

3       A.   I'm not angry.  You're screaming

4    for no reason.

5       Q.   Sir --

6         MR. BEHRE:  Yeah, no, this is

7         inappropriate.  You're badgering the

8         witness.  You're yelling at him.  And

9         you're not even letting him look at the

10        document.  So stop the games.

11        MR. KAPLAN:  Will you not

12        stipulate that is the trade secret that

13        you identified on his behalf that he

14        swore?

15        MR. BEHRE:  It is.

16        MR. KAPLAN:  Great.

17   BY MR. KAPLAN:

18       Q.   So Mr. Azima, I am telling you --

19        MR. BEHRE:  Give him time to look

20        at it.

21        MR. KAPLAN:  I don't have a

22        pending question, okay?

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 129 of 578

1    BY MR. KAPLAN:

2        Q.    Okay.   The seven-year financial

3    forecast, what year is that?

4             MR. BEHRE:   Take your time.   Look

5         through the document.

6             MR. KAPLAN:   It's right on the

7         front page.

8             MR. BEHRE:   No, it doesn't

9         matter.   He's going to look at the

10        exhibit in its entirety.

11   BY MR. KAPLAN:

12        Q.    Sir, the front -- excuse me, sir.

13   Please go back to the front page.

14             MR. BEHRE:   No.   Look at the

15        exhibit --

16             MR. KAPLAN:   I'll withdraw my

17        question.   Kirby --

18             MR. BEHRE:   No, I don't care.

19             MR. KAPLAN:   Stop.

20             MR. BEHRE:   Get her on the phone.

21             MR. ROSENTHAL:   Let's go off the

22        record.

1          THE VIDEOGRAPHER:  Going off the

2          record at 11:26.

3              (Recess is taken.)

4              THE VIDEOGRAPHER:  Back on the

5          record at 11:31.

6    BY MR. KAPLAN:

7          Q.   Mr. Azima, Exhibit 1 is dated

8    August 5th, 2010, correct?

9          A.   Yes, I see that.

10         Q.   Okay.  Now RAK had already

11    acquired 51 percent of HeavyLift, correct?

12         A.   I don't know the date, but I --

13         Q.   Well, look at Exhibit 1C --

14             MR. BEHRE:  Can he finish his

15         answer?

16             (Document review.)

17    BY MR. KAPLAN:

18         Q.   It's on the first page, right at

19    the top.  The next page.  Next page.

20             It's December of 2009, right?

21         A.   In that case, yes.

22         Q.   So RAK had access to this

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 132

1   document, right?

2        MR. BEHRE:  Objection,

3      foundation, calls for speculation.

4    A.  No.

5    Q.  Why not?

6    A.  RAK did not have any operational

7   control over the aircraft -- I mean for the

8   airline, nor was it involved in its

9   business because of its nature.

10    Q.  Well, didn't they appoint the

11  majority of the board members?

12    A.  No.

13    Q.  They didn't?

14    A.  There were only two board

15  members.

16    Q.  Let's go to Exhibit 1C.

17    A.  Is this a deposition on behalf of

18  Mr. Del Rosso or RAK?  Which one?

19    Q.  If you turn to Section 4.4 of the

20  shareholder agreement that you signed with

21  RAK, all right?

22    A.  Yes, I can.

1      Q.   Let's do that.

2           There's four -- I'm sorry, five

3    board members, not two, right?

4      A.   Which page?

5      Q.   It's on page 8.

6      A.   Page 8?

7      Q.  Um-hmm.

8           (Document review.)

9      A.   Yes.

10     Q.   So 4.4.1, consists of five

11   members, three of whom shall be appointed

12   by RAK Trans.

13     A.   But they did not.

14     Q.   I'm sorry, they didn't ever

15   appoint anybody?

16     A.   There was only one appointment.

17   There was only one director.

18     Q.   And who is that?

19     A.   Dr. Massaad.

20     Q.   Okay.  So did he have access?

21     A.   No.

22     Q.   You restricted Dr. Massaad --

1          A.    They never came.  And they allow

2     -- they left me alone to run the operation

3     and the company.

4          Q.    But had they asked, they would

5     have been entitled to this, right?

6               MR. BEHRE:  Objection, calls for

7          speculation.  No foundation.

8     BY MR. KAPLAN:

9          Q.    Would you have restricted them

10    from seeing these forecasts of their own

11    company --

12              MR. BEHRE:  Objection, calls for

13         speculation --

14         Q.    -- in 2010?

15              MR. BEHRE:  -- no foundation.

16         A.    It depends which document you are

17    asking.

18         Q.    Exhibit 1.  The forecast for

19    HeavyLift, a seven-year financial forecasts

20    for the company that they own 51 percent

21    of.

22         A.    Correct.

1     Q.   Okay.  You didn't restrict them

2   from having access to this information, did

3   you?

4          MR. BEHRE:  Objection, vague as

5      to who "they" is?

6          MR. KAPLAN:  RAK.  Sorry.

7   BY MR. KAPLAN:

8     Q.   You didn't restrict RAK from

9   having access to the seven-year financial

10   forecast of the company that they were a

11   majority owner of, correct?

12         MR. BEHRE:  Objection,

13      foundation.  It's a different entity.

14         MR. KAPLAN:  I'm sorry.

15     A.   I think there is a bit --

16     Q.   Sure.

17         HeavyLift International Airlines

18   is different than HeavyLift International

19   Airlines FZE?

20     A.   That's the -- HeavyLift

21   International Airline was -- I don't know

22   -- recall the legal structure of it was

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 136

1   set, but HeavyLift International Airline,

2   one was set in Sharjah, I believe.  It was

3   set up in Sharjah, United Emirates.  But

4   this is approaching 20 years ago.  2004 it

5   was formed.  So I don't remember the

6   details of it.

7       Q.   Okay.  Well, I asked you early on

8   when we were referring to HeavyLift

9   International or HeavyLift International

10  Airlines, remember we went through that

11  whole thing and you said that it all

12  referred to this company HeavyLift

13  International Airlines FZE?

14         MR. BEHRE:  Objection,

15      mischaracterizes testimony.

16  BY MR. KAPLAN:

17       Q.   Or am I mischaracterizing your

18  testimony?

19         MR. BEHRE:  Objection.

20       A.   No, you're not mischaracterizing.

21  What you're doing is testing my memory, and

22  I don't remember 20 years ago what

1   happened, which company was it.

2          Q.   Oh, okay.

3               So you don't know who this was

4   provided to then?

5               MR. BEHRE:  What is "this"?

6               MR. KAPLAN:  Exhibit 1.

7   BY MR. KAPLAN:

8          Q.   If you don't know which company

9   it was, how can you know which employees of

10  what company had access to it?

11              MR. BEHRE:  Objection,

12       mischaracterizes the testimony.

13         A.   HeavyLift International Airlines,

14  it was an operating company in UAE in

15  Sharjah.  Then RAK acquired 51 percent and

16  they moved the company to Ras Al Khaimah.

17  Whether there was any change in the

18  structure of the company, I don't remember

19  that.

20         Q.   Well, I'm a little confused

21  because you say that RAK bought 51 percent.

22         A.   Right, of the shares.

1        Q.   Of the shares.  So they owned the

2   company.

3             Wherever it's located, does that

4   change the company?

5        A.   I'm sorry?

6        Q.   Let me ask you this:  Is it your

7   position that HeavyLift International

8   Airlines is different than HeavyLift

9   International Airlines FZE?

10       A.   FZ is the free zone company,

11   okay?

12       Q.   Okay.

13       A.   It originally started in Sharjah

14   and then when they acquired the shares of

15   51 percent, they moved the company to Ras

16   Al Khaimah from one Emirate to another

17   Emirate.

18       Q.   And it became FZC?

19       A.   I don't remember that.

20       Q.   Okay.  Let's look back at this

21   agreement.

22       A.   I don't have the first agreement

1    to look at the difference.

2          Q.    The first agreement with whom?

3          A.    I don't know when you say the

4    HeavyLift International Airlines, I don't

5    know whether it was Sharjah company -- what

6    was the formation --

7          Q.    All right.  I recognize --

8          A.    -- and the legal entity of

9    Sharjah company and later on became that

10   company.  I don't remember that.

11         Q.    Well, maybe I can refresh your

12   recollection.

13               Turn to page 2 of the share

14   purchase and shareholders agreement, if you

15   don't mind.

16         A.    Page 2.

17         Q.    Number 2, "HeavyLift

18   International Airlines FZE, a free zone

19   establishment, incorporated and licensed at

20   the Sharjah Airport International, free

21   zone UAE." *

22         A.    Right.  That's why I said that.

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 140

1      Q.   Then go to paragraph 3 towards

2   the bottom. Do you see where it says, "The

3   company shall convert from a free zone

4   establishment to a free zone company"?

5      A.   That's what I said. They moved

6   the company there, yes.

7      Q.   Okay.

8      A.   That's what I said.

9      Q.   What I'm trying to understand

10   here is, this Exhibit 1C references a share

11   purchase and shareholders agreement for

12   HeavyLift International Airlines.

13          Exhibit 1 --

14          MR. BEHRE: Objection,

15       mischaracterizes the document. The

16       document is for FZE.

17   BY MR. KAPLAN:

18      Q.   And then it got converted to FZE,

19   correct?

20      A.   If it says it.

21      Q.   Right.

22          Exhibit 1 refers to HeavyLift

1   International Airlines?

2      A.   Right.

3      Q.   So what I'm asking you is -- and

4   by the way, Exhibit C was signed in 2009.

5   The seven-year financial forecast reflected

6   in Exhibit 1 was from 2010.

7         In 2010, were there multiple

8   HeavyLift International Airlines?

9      A.   HeavyLift International Airlines

10   was a name used for trade purposes.  So

11   nobody looked at it with FZE, FZC

12   corporation or LLC.  That was not the case.

13      Q.   Okay.

14      A.   So this is the trademark of

15   HeavyLift.

16      Q.   Okay.  Take a look at the second

17   highlighted portion on Exhibit 1.  On the

18   right-hand side.

19      A.   Of this one (indicating)?

20      Q.   Yes -- no, no.  The first page.

21   Do you see the second highlighted portion?

22



5     A.    Right.

6     Q.    Okay.  And if you recall under

7   the purchase and shareholders agreement in

8   paragraph 3 under the "whereas," HeavyLift

9   International Airlines FZE was converted to

10   FZC, correct?

11     A.    So that's what the document says.

12     Q.    Okay.  So Exhibit 1 is a

13   seven-year financial forecast for HeavyLift

14   International Airlines FZC, correct?

15     A.    I don't know that.

16     Q.    So why would there be reference

17   to HeavyLift International FZC?

18     A.    I don't know the answer.

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 143



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 144



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 144 of 578



11     Q.   But the company went out of

12   business?

13     A.   Which one?

14     Q.   HeavyLift.

15     A.   That was later than that.

16     Q.   Okay.  But it was before 2016?

17     A.   Yes, because the schedule service

18   did not forth come and then there was no

19   more business in Afghanistan.

20     Q.   Okay.

21     A.   So if you remember that, I

22   mentioned that before, sir, that

1     HeavyLift's primary business went there to

2     start providing services because the

3     U.S.-registered aircraft could not go in

4     the aerospace of Afghanistan and Iraq.  So

5     when they blocked all the shipment whether

6     to UAE, Bahrain, Kuwait or other countries

7     in the Middle East we did tranship.

8     Tranship.  In other words, we picked up the

9     cargo and take it to the next destination

10    which nonU.S.-registered aircraft could

11    fly.

12              HeavyLift operated UAE-registered

13    aircraft, and therefore we served the

14    purpose to be able to supply our troops and

15    be able to provide what U.S.-registered

16    aircraft could not go.  We filled that

17    role.  That was our mission.

18         Q.   Okay.

19         A.   After Afghanistan came to an end,

20    obviously we had no other businesses.

21    Either we had to go to schedule service or

22    there was no business.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 147

1          Q.    Okay.  So it's not like somebody

2     could compete with HeavyLift after it went

3     out of business obviously?

4               MR. BEHRE:  Objection, calls for

5          speculation.

6          A.    HeavyLift's value was its

7     license.  It was only at the time, it was

8     the only UAE aircraft, 100 percent owned by

9     US citizen.

10         Q.    So what happened to HeavyLift's

11    license after it went out of business?

12         A.    When you stop operating it, the

13    certificate becomes dormant.  And after a

14    period of time, it then becomes gone.  And

15    we give that to HeavyLift -- we give that

16    to RAK at the time.

17         Q.    Okay.  So RAK -- when RAK wound

18    up obtaining the other 49 percent of

19    HeavyLift, it came to own all of

20    HeavyLift's assets, correct?

21         A.    When HeavyLift ended up owning

22    100 percent of the aircraft, we transferred

1    it.  By then the -- we transferred the

2    remaining 49 percent to HeavyLift.

3         Q.   So this forecast, once it was

4    transferred to you, the forecast in 2010 --

5         A.   But that time, I don't believe

6    the airline was operating.  When we

7    transferred, there was no operating left.

8         Q.   What did they obtain by getting

9    100 percent of HeavyLift's FZE?

10        A.   Just the aircraft basically.

11        Q.   Okay.

12        A.   The aircraft owned by -- the

13   aircraft owned by HeavyLift, they ended up

14   owning it.  We transferred the aircraft to

15   them.

16        Q.   They also got all of HeavyLift's

17   documents and information?

18        A.   They got HeavyLift's -- the

19   officers of the HeavyLift in Ras Al Khaimah

20   was taken over by them.

21        Q.   When RAK took control of the

22   company?

1        A.    No.   When RAK -- when we had the

2    company in Ras Al Khaimah at their request,

3    then all the documents, to the extent that

4    was not compartmentalized, was left behind.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 150



13          MR. BEHRE:  Objection,

14     mischaracterizes.

Page 151



18         MR. BEHRE:  Objection,

19     mischaracterize his testimony.

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 152



Case 1:20-cv-00954-WO-JLW Document 379-7 Filed 07/15/24 Page 152 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 153



5/21/2024　　　Farhad Azima v. Nicholas Del Rosso et al.　　　Farhad Azima

Page 154



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 155



17    MR. BEHRE:  Objection, vague,

18        ambiguous, compound.

Page 156



      MR. BEHRE:  Objection, vague and
ambiguous as to "normal cost of doing
business."

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 156 of 578

Page 157



1
2
3
4
5
6
7
8
9
10          (Reporter clarification.)
11
12
13
14
15
16
17
18
19
20
21
22

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 158



10     Q.    Okay.   Now I'm showing you what

11    is Exhibit 2.

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 159

1

2

3

4

5      Q.    Okay.   I'm showing you what has

6    been marked as Exhibit 2.

7      A.    This one (indicating)?

8

9

10

11      MR. BEHRE:   Take a minute and

12      look through it.

13      And I would note this is a

14      different Exhibit 2 than we used

15      previously because it's highlighted,

16      not just on the first page, but there's

17      highlights --

18      (Simultaneous speaking.)

19      THE WITNESS:   I'm sorry.   Can you

20      speak a bit louder?

21      MR. BEHRE:   Sorry.

22      THE WITNESS:   What did you say?

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 160

1        MR. BEHRE: I just said that some

2     of this is highlighted. And when we

3     used it last time, none of it was. At

4     least that's my memory.

5        MR. KAPLAN: Kirby, I don't

6     recall, but we'll sub in if that's the

7     case.

8   BY MR. KAPLAN:

9

10

11

12

13

14

15

16

17

18

19

20

21

22      Q. Do you understand that this

5/21/2024                    Farhad Azima v. Nicholas Del Rosso et al.                    Farhad Azima

Page 161

1    document -- strike that.

7         Q.   Okay.  Well, RAK owned 51 percent

8    of HeavyLift International FZC?

9         A.   Let me look at the date.

10        Q.   It came to own in 2009.

11        A.   This is a December 2009.  At this

12   time, it was not owned.

13        Q.   Okay.  But they came to own it

14   later, RAK?

15             MR. BEHRE:  Objection as to --

16        vague and ambiguous as to "they" are.

17   BY MR. KAPLAN:

18        Q.   RAK came to own it later after

19   2008?

20        A.   I don't know --

21             MR. BEHRE:  Objection, vague as

22        to what "it" is.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 162

1      A.   Either it is the same company or

2   the company was formed later on.  I don't

3   know which one it is.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      Q.   Okay.  But there was no HeavyLift

19   International Airlines?

20      A.   No.

21      Q.   Okay.  That's what I was getting

22   at.

Page 163



15          (Discussion off the record.)

16     BY MR. KAPLAN:

17

18

19          MR. BEHRE:  Objection, vague and

20     ambiguous.

21

22

5/21/2024  Farhad Azima v. Nicholas Del Rosso et al.  Farhad Azima

Page 164





16     Q.   Well, you've sold pieces of your

17   companies before, right?

18     A.   Not really.

19     Q.   Excuse me?

20     A.   Not really. I don't remember if

21   I have, but I normally don't sell things.

22     Q.   Okay. Well, you've hired

1    investment bankers like H.C. Wainwright or

2    Cantor Fitzgerald, right?

3       A.   Yes.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



9      Q.    Did HeavyLift International seek

10   to obtain investments from others besides

11   RAK between 2008 and 2010?

12      A.    I think -- HeavyLift has

13   discussed investments by the others, but

14   I'm not sure to what extent it materialized

15   or not.

22      MR. BEHRE:  Too fast.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 168

1                (Reporter clarification.)

2        BY MR. KAPLAN:

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19             MR. BEHRE:  Objection, vague and

20        ambiguous, calls for a legal

21        conclusion.

22        BY MR. KAPLAN:

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 169



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 169 of 578

5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 170



Page 171



12      Q.   Who is New York General Trading

13   LLC?

14      A.   It was a company in UAE.

15      Q.   Okay.  Did it ever enter into an

16   agreement to buy an interest in HeavyLift?

17      A.   Entered the agreement to buy and

18   then defaulted.

19      Q.   Okay.  Were similar spreadsheets

20   provided to New York General Trading?

21      A.   No.

22      Q.   Okay.  They didn't want to look

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 171 of 578

1    at financial forecasts before determining

2    whether to invest?

3         A.    No.   The purpose of buying was,

4    they're trying to use the HeavyLift to form

5    an airline in Georgia, and all they want to

6    do is the usage of the airlines's

7    management, capability and the licenses to

8    have a satellite operation in Georgia and

9    they had no interest on that.   And the

10   interest was in passenger, not cargo.

11

12

13

14

15

16

17

18

19

20

21

22

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 173

1                    (Reporter clarification.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 173 of 578

Page 174



11    MR. KAPLAN:  You want to take

12  lunch?  It's 12:15.

13    MR. ROSENTHAL:  All right.

14    MR. KAPLAN:  Off the record.

15    THE VIDEOGRAPHER:  Off the record

16  at 12:14.

17    (Recess is taken.)

18

19

20

21

22

1          A F T E R N O O N   S E S S I O N

2               (Time noted:  1:25 p.m.)

3               THE VIDEOGRAPHER:  Back on the

4          record at 1:25.

5                    *       *       *

6               F A R H A D   A Z I M A,

7           resumed and testified as follows:

8     EXAMINATION BY (Cont'd.)

9     MR. KAPLAN:

10          Q.   Mr. Azima, do you believe all of

11    your confidential information is a trade

12    secret?

13               MR. BEHRE:  Objection, vague and

14          ambiguous, calls for a legal

15          conclusion.

16          A.   My financial information where

17    they are a byproduct of my knowledge,

18    they're confidential.

19          Q.   I recognize that.

20               Do you believe that all of your

21    confidential information is also a trade

22    secret?

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 176

1            MR. BEHRE:  Objection, calls for

2       a legal conclusion.

3       A.   I have confidential information

4   on the family.  I have confidential

5   information on the business.  I have

6   confidential information in everything.  I

7   don't know which -- all my confidential

8   information cannot be business secrets.

9       Q.   Okay.  Is all of your

10  confidential information related to your

11  business is a trade secret, in your mind?

12            MR. BEHRE:  Same objections.

13      A.   To the extent that it relates to

14  my input, to the extent that it relates to

15  my businesses that I have had input in it,

16  they are.

17      Q.   I'm showing you what has been

18  marked as Exhibit 3, which is --

19  corresponds with what you have identified

20  as trade secret number 3 in your response,

21  third supplemental response to the

22  interrogatories.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 177

1          Do you recognize this document?

2     A.   I have to look at it first.

3          (Document review.)

21         (Document review.)

12     Q.   Okay.   Did you have prior

13   experience in the submarine industry?

14     A.   I have -- this is --

15      THE WITNESS:   Kirby, how am I

16     going to answer this?

17      MR. BEHRE:   If you're worried

18     about confidentiality or some other

19     government restriction, you should so

20     state.

21   BY MR. KAPLAN:

22     Q.   I just want to know, yes or no,

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

                                                        Page 179

1    if you have prior experience prior to 2015

2    related to submersibles.  I don't want to

3    know with whom or why.

4          A.   No.

5

6

7

8

9

10

11

12

13

14

15

16          MR. BEHRE:  Objection, vague and

17       ambiguous --

18    BY MR. KAPLAN:

19          Q.   If you know.

20          MR. BEHRE:  -- as to "outside."

21

22

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 180



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 180 of 578

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 181

1          MR. BEHRE:  Objection, vague and

2          ambiguous.

3

4

5

6

7          Q.   That's not what I'm asking, sir.

8          MR. BEHRE:  Well, let him finish

9          the answer.  He's still speaking.

10          MR. KAPLAN:  Well, he's not being

11          nonresponsive.

12          MR. BEHRE:  It doesn't mean you

13          can interrupt him.  Let him finish the

14          answer.

15     BY MR. KAPLAN:

16          Q.   Mr. Azima --

17          MR. BEHRE:  Were you finished,

18          Farhad?

19     BY MR. KAPLAN:

20          Q.   I'm specifically asking you --

21     it's not about acquisition of assets for

22     the company or contracts.  It's about --

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 181 of 578

1    you contend that your knowledge, your trade

2    secrets are part of Exhibit 3, right?

3          A.    Correct.

4          Q.    That knowledge, that's your trade

5    secret, correct?

6          A.    Yes.

7

8

9          MR. BEHRE:  Same objection.

10          If you understand the question.

11

12

13

14

15

16

17

18

19

20

21

22



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 183



18       MR. BEHRE: Objection, vague and

19       ambiguous.

Page 184



10        MR. BEHRE:  Objection, vague and

11      ambiguous.

Case 1:20-cv-00954-WO-JLW    Document 379-7    Filed 07/15/24    Page 184 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 185



```
 1
 2
 3
 4
 5
 6
 7
 8
 9      A.    Can I see that, please?
10      Q.    It's right in front of you.
11            (Document review.)
12      Q.    It's the same document we have
13   been referring to.
14            MR. BEHRE:  I note for the record
15       the witness hasn't been referring to
16       it.
17            MR. KAPLAN:  I'm sorry.
18            MR. BEHRE:  I note for the record
19       the witness has not been referring to
20       it.  And I'd also note for the record
21       that the pagination on this document is
22       screwed up.  It goes from page 45 to
```

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 186

1       page 5.  So it's missing pages 1

2       through 4.



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 186 of 578



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18            (Reporter clarification.)

19

20

21

22



21     Q.   I'm going to show you what I'm

22   marking as Exhibit 4, or what has been

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 189

1    marked as Exhibit 4, which has been

2    identified as trade secret number 4 in your

3    interrogatories.  And it is a Smokehouse

4    Barbecue, Inc. forecasted wages.

5         A.    Right.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 190





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15          (Document review.)
16
17
18
19
20
21
22          MR. KAPLAN:  Why is everything

1        highlighted?

2   BY MR. KAPLAN:

3        Q.   I'm showing you what has been

4   marked as Exhibit 6, which is an email from

5   Ray Adams to Bob Rau and yourself.  It

6   appears to include a 30-month forecast for

7   Aerotech and has been identified as trade

8   secret number 36 in your response to

9   interrogatories.

10            MR. BEHRE:  I note for the record

11        that this copy of the exhibit has

12        highlighting that I don't believe was

13        on the last Exhibit 6.

14            MR. KAPLAN:  We'll sub in.

15            MR. BEHRE:  And then we all have

16        to go back and check and see if they're

17        all identical, right?

18            It looks like somebody did this

19        by hand.  These are not system

20        highlights.

21            MR. KAPLAN:  Guys, it's fine.

22        We'll go by Bates numbers.  It's okay.

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 193

1    BY MR. KAPLAN:

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 194



Page 195



10          MR. BEHRE:  Objection, vague and

11     ambiguous.

16          MR. BEHRE:  Objection.

18          MR. BEHRE:  Vague and ambiguous.

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 196



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 196 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 197



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 197 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 198



18          MR. BEHRE:  Objection, vague and

19      ambiguous.  And when he identifies a

20      document, you need to put it in front

21      of you --

22

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 199



3          (Document review.)

4          MR. BEHRE:  Maybe you can make a

5    stack of them.

6          THE WITNESS:  I need my assistant

7    here.

8          That's one.

9          (Document review.)

10   A.   That's 6.

11   Q.   3 is right in front of you, sir.

12   A.   Okay.

13          (Document review.)

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 200



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 201



9       Q.    How were you harmed by the

10   disclosure in 2017 or '18 of Exhibit 6?

11       A.    Exhibit 6 is --

12       Q.    It's from 2011.

13            So six years later, when that was

14   released to the public, how was Farhad

15   Azima harmed?

16       A.    It's not a matter was Farhad

17   Azima harmed particularly that year and

18   that date.  My entire world become public.

19   That's why I was harmed.

20       Q.    When did that occur?

21       A.    In 2016 or whenever the hell they

22   put everything on there.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 201 of 578

1          Q.    Okay.  So in 2016, your entire

2     world becomes public and that's when you

3     were harmed?

4          A.    Yes.

5          Q.    And the reason you were harmed

6     was because your life became public, not

7     because a competitor got ahold of any of

8     your particular trade secrets?

9          A.    Well, how would you compare -- if

10    my life becomes public, all this is in the

11    public arena, then competitor will get

12    ahold of it.

13         Q.    Okay.  Can you identify a single

14    competitor that has gotten ahold of any of

15    your trade secrets?

16         A.    I cannot because I don't know who

17    did it or what.  But I just know my

18    business died up completely.

19         Q.    Okay.

20         A.    I know the business disappeared,

21    but what caused it and all those things,

22    why the publication was stolen, documents,

1    people lost confidence on being able to

2    keep their confidential information private

3    and all this.  It's not just one factor.

4    Everything got together in a fashion that I

5    ended up losing all my business.

6         Q.   Okay.  So you cannot quantify the

7    economic losses --

8         A.   On each individual project?

9         Q.   Yes.

10        A.   No, I can't?

11        Q.   Okay.  And that would include

12   Exhibit No. 6, the disclosure of Exhibit

13   No. 6 in 2017?

14             You're looking at 3.

15

16

17

18

19

20

21

22

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 204



17      Q.    As a result of Exhibit 6 being

18    published in 2017?   That was after --

19          (Simultaneous speaking.)

20      A.    That's not what I said.

21      Q.    So I'm trying to understand.

22      A.    No, you're telling me something

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 204 of 578

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 205

1    that I didn't say.



1     ███████████████

2          Q.    Okay.   Mr. Azima, I showed you

3     what has been marked as Exhibit 7, which

4     corresponds with what you have identified

5     as trade secret number 7 in your

6     supplemental Answers to Interrogatories in

7     which you state is "an email attaching

8     confidential information used for

9     government contracting by one of

10    plaintiff's companies, Caucas

11    International."

12              MR. BEHRE:  I would note for the

13         record that this document is

14         highlighted as well --

15              MR. KAPLAN:  We'll supplement --

16              MR. BEHRE:  -- which is different

17         than the exhibit before.  It looks like

18         it's George's highlighting.

19              MR. KAPLAN:  I don't know why

20         this came out this way, but we'll

21         obviously supplement by Bates number.

22              MR. BEHRE:  I think it's George's

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 207

1          work product.

2    BY MR. KAPLAN:

3          Q.    Mr. Azima, this is -- the

4    attachments are -- is information forwarded

5    by Sara [sic] Maarouf, correct?

6          A.    Is that what it says?

7          Q.    On December 27th, 2012.

8                MR. BEHRE:  Just to be clear,

9          it's Salah.

10               MR. KAPLAN:  Sorry.  You're

11         right.  Salah.

12         A.    Yes, Salah.

13         Q.    Salah worked for Adam, right?

14         A.    He used to.

15         Q.    He got indicted by the U.S.

16   government, didn't he?

17         A.    I do not have any idea.

18         Q.    Okay.  So all of the --

19               (Simultaneous speaking.)

20         A.    Please, go ahead.

21         Q.    All of the information that is

22   attached to Exhibit 7 came from

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 208

1    Mr. Maarouf, correct?

2        A.   I'm not sure who it came from,

3    but this is just a proposal that was being

4    put together by incorporation of various

5    vendors to be submitted, and I don't know

6    whether it was submitted or not.

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 209



5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 210





18        Q.    Okay.   I'm going to show you what

19    has been marked as Exhibit 8, which is an

20    email from Umed Juraev to Rami Abuhamdeh,

21    right?

22        A.    Right.

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 212



3    A.    Let me look at it, please.

4         (Document review.)

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 213



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 213 of 578

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 214

1

2

3        Q.    How is your business now?

4        A.    Excellent.

5        Q.    How did you recover?

6              MR. BEHRE:  Objection, relevance,

7        outside the temporal scope.

8        A.    By persistence.

9        Q.    Are you aware of how troop levels

10   in Afghanistan declined over the last ten

11   years?

12       A.    Yes.

13       Q.    Last five years?

14       A.    Yes.

15       Q.    Okay.  And that had something to

16   do with not getting business?

17       A.    Obviously when the troop level

18   declines, business declines.  Obviously,

19   the facts that affects the DLA's budget and

20   DLA's ability to give us contracts.

21             I was involved -- I am still

22   involved in a university that we built is

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 215

1    the only hallmark that America left behind,

2    America Afghan university which I am a

3    member of the board of trustee and I

4    chaired the security committee of the

5    university.

6              After the disastrous evacuation

7    of 2022, all those businesses disappeared

8    and we had no more business in Afghanistan.

9         Q.   I show you --

10        A.   We had no more prisoners in

11   Afghanistan, I should say.

12        Q.   I show you what was marked as

13   Exhibit 9, which corresponds with trade

14   secret 9 as identified in your answers to

15   the third supplemental interrogatories

16   which you state that it is an email

17   attaching a proposal for relaunching an

18   airline related to one of plaintiff's

19   companies, ALG Transportation Inc.?

20        A.   Right.

21

22

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 215 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 216



5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 217



Case 1:20-cv-00954-WO-JLW    Document 379-7    Filed 07/15/24    Page 217 of 578

Page 218



15          The airline business --

16      Q.   Do you --

17          MR. BEHRE:   He was answering.

18   BY MR. KAPLAN:

19      Q.   I'm sorry.   I apologize.

20      A.   Not at all.

21          The airline business, as you

22   know, is a very small club.   On the top,

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 218 of 578

1    people know each other, they have a

2    relation, and you don't betray.  When

3    somebody does go out of the wagon and loses

4    the business.  It's a very small club on

5    the top.

6        Q.   Okay.  So I'm showing you what

7    has been marked as Exhibit 10.  This is an

8    email to Alan Baird in 2014 --

9        A.   Right.

10        Q.   -- for an MRO in the country of

11    Georgia, right?

12        A.   Right.

13        Q.   And that was never created?

14        MR. BEHRE:  Can you look at the

15        exhibit?

16        THE WITNESS:  Can I just

17        scratch --

18        MR. BEHRE:  No, there is no

19        scratching.  Not allowed.

20    BY MR. KAPLAN:

21        Q.   Now Exhibit 10 corresponds with

22    what you have identified as what's known as

5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 220

```
1    trade secret 10 in Interrogatory responses

2    which you say is, quote, "an email

3    attaching an Excel of target aircraft and

4    clients for a maintenance repair and

5    operations project related to one of

6    plaintiff's companies, ALG Transportation

7    Inc."

8              Okay?

9        A.    Okay.
```



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 221



Page 222



12            MR. ROSENTHAL:  You want a piece

13       of paper?

14   BY MR. KAPLAN:

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 222 of 578

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 223



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 223 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 224



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 224 of 578

Page 225

1  Q. Okay.  So this was 2014 --

2  A. Right.

3  Q. -- right?



5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 226



2　　　　　　MR. BEHRE:　What page are you

3　　　reading from?

4　　　　　　MR. KAPLAN:　Number 2.

5　　BY MR. KAPLAN:

15　　　　　　MR. BEHRE:　Objection.

5/21/2024　　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　　Farhad Azima

Page 227



Case 1:20-cv-00954-WO-JLW　Document 379-7　Filed 07/15/24　Page 227 of 578

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 228

1
2
3
4
5
6
7

8        Q.    How about Mr. Baird, why was he

9    sending this information to him?

10       A.    Mr. Baird was hired to put the

11   MRO business plan together and assist on a

12   lot of the work.  He was going to be the

13   general manager.

14       Q.    Who hired him?

15       A.    ALG.

16       Q.    Do you know whether ALG had a

17   confidentiality agreement with Mr. Baird or

18   an NDA?

19       A.    Well, he was coming in as an

20   employee.  He was running the project. It

21   was not necessary.  He was coming in to run

22   the company and as an employee and possibly

1    acquire the interest, so we did not require

2    it.

3          Q.    Now I'm showing you -- when you

4    say coming in, you were considering?

5          A.    Yes.  We hired him temporarily as

6    a consultant to do this work with -- we

7    hired him as a consultant to put the

8    project together as a lead person and with

9    the understanding that if we moved forward,

10   we will hire him as a general manager to

11   run the business.

12         Q.    Was he paid?

13         A.    Yes.

14         Q.    By whom?

15         A.    By ALG.

16         Q.    Okay.  Now in front of you is

17   Exhibit 11, which corresponds with what you

18   have identified as trade secret number 11

19   in your third supplemental response to

20   interrogatories and which you state is "an

21   email attaching a forecast and financial

22   statement for an MRO project related to one

1    of plaintiffs companies ALG Transportation

2    Inc."

3              Correct?

4    A.    Let me look at it, please.

5              (Document review.)

6              MR. BEHRE:  Good luck.  Mine is

7         illegible.  Page 3 is just a drawing.

8              (Document review.)

9              THE WITNESS:  This one

10        (indicating)?

11   A.    You must be joking.

12             MR. BEHRE:  Read the top line.

13             (Document review.)

14   BY MR. KAPLAN:

15   Q.    Who is --

16             MR. BEHRE:  Well, let him finish

17        reading it or whatever you call it.

18             MR. KAPLAN:  I don't need him to

19        for right now.

20             MR. BEHRE:  Well, he's going to.

21        You show him a document, he's entitled

22        to look at it, particularly when

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 231

1      they're illegible.

2        MR. KAPLAN:  I'm not asking

3      questions about that particular

4      portion.

5   BY MR. KAPLAN:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 232



5     (Simultaneous speaking.)

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 233



5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 234



6          Q.   And I'll show you now what's been

7     marked as Exhibit 12.

8                MR. KAPLAN:   Kirby, you can state

9          your objection for the record and we'll

10         switch it out by Bates number.

11    BY MR. KAPLAN:

12         Q.   Mr. Azima, this is Exhibit 12

13    which has been identified -- which you have

14    identified in your interrogatories it

15    corresponds with trade secret number 12,

16    which you state is "an email attaching a

17    joint proposal for U.S. AID projects by one

18    of plaintiff's companies, HeavyLift

19    International Inc."

20              Right?

21         A.   Yes.

22

Page 235



1

2

3

4

5

6

7

8

9

10    Q.    Okay.

11    A.    It's the richest republic in the

12  federation.

13    Q.    It's in the Caucas, right?

14    A.    It's the northern Caucas, yes,

15  and it is an oil rich country.  Teknaf, you

16  probably have heard.

17

18

19

20

21

22

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 235 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 236



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 236 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 237



Page 238



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15　　　　　　　(Reporter clarification.)

16

17

18

19　　　Q.　　Okay.

20　　　　　MR. BEHRE:　That's not what the

21　　　witness said, but...

22　　BY MR. KAPLAN:

Case 1:20-cv-00954-WO-JLW　Document 379-7　Filed 07/15/24　Page 238 of 578

1      Q.    Is that what you said?

2      A.    That's what I said.

3         MR. BEHRE:   He said

4  ███████████████

5         MR. KAPLAN:   He just said that's

6     what he said.

7  ████████████████████████

8  ████████████████████████

9      Q.    Okay.

10        MR. KAPLAN:   I mean, Kirby, he

11    was agreeing with me.

12        MR. BEHRE:   Let the witness

13    clarify what he says himself.

14        MR. ROSENTHAL:   Can we move on?

15    The record is clear.

16 BY MR. KAPLAN:

17     Q.    The record is clear.

18        This particular -- the proposal

19 that is attached to Exhibit 12, it was

20 created by numerous individuals, correct?

21     A.    Which one, sir?

22     Q.    12, the one in front of you.

Page 240

1             MR. KAPLAN:  The bid proposal.

2     A.   Yes.

3     Q.   All right.  So can you identify

4  what input specifically you had?

5     A.   I cannot understand.  I have to

6  read it.

7     Q.   Well, would it be anything other

8  than --

9             MR. BEHRE:  The witness is

10       reading.  You asked him a question.  He

11       said he'd look at it.

12           MR. KAPLAN:  Let me address it a

13       different way.

14  BY MR. KAPLAN:

15

16

17

18

19

20           MR. BEHRE:  Objection, calls for

21       speculation.  The witness asked to look

22       at the exhibit and then he was then

1　　　　denied an opportunity to do so.



2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19　　　　　　MR. BEHRE:  Objection, vague as

20　　　　to "your."

21　　BY MR. KAPLAN:

22

1 █████████████████████████████████

2        MR. KAPLAN:  Correct.

3        (Document review.)

4 █████████████████████████████████

5 █████████████████████████████████

6 █████████████████████████████████

7 █████████████████████████████████

8 █████████████████████████████████

9 █████████████████████████████████

10 █████████████████████████████████

11 █████████████████████████████████

12 █████████████████████████████████

13 █████████████████████████████████

14 █████████████████████████████████

15 █████████████████████████████████

16 █████████████████████████████████

17 █████████████████████████████████

18 █████████████████████████████████

19        (Reporter clarification.)

20 █████████████████████████████████

21 █████████████████████████████████

22 █████████████████████████████████



9      Q.   Okay.  Let me show you what's

10   been marked as Exhibit 12A.  Maybe that

11   will refresh your recollection.  Let me

12   know.

13           (Document review.)

14      A.   What is your question, sir?

1

2

3

4

5       Q.    Okay.  I show you what has been

6    marked as Exhibit No. 13, which

7    corresponds --

8       A.    May I give that back to you, sir?

9       Q.    No. It's yours?

10      A.    It goes with which one?

11      Q.    It's its own thing.  You can put

12   all the other -- 12 and 12A you can put to

13   the side.

14            I'm going to show you what has

15   been marked Exhibit 13, which corresponds

16   with what you have identified as trade

17   secret number 13 and state is "an email

18   attaching a confidential presentation and

19   attaching a feasibility study and a

20   business plan for a proposed expansion

21   related to one of plaintiff's companies,

22   HeavyLift International Inc."

5/21/2024　　　Farhad Azima v. Nicholas Del Rosso et al.　　　Farhad Azima

Page 245

1　　　　　　And this is from August of 2008

2　　to Scott Hartzell.

3　　　　　　MR. BEHRE:  I note that this

4　　　exhibit also has highlighting and stars

5　　　and circles and highlight and --

6　　　　　　(Simultaneous speaking.)

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 246



5/21/2024                Farhad Azima v. Nicholas Del Rosso et al.                Farhad Azima

Page 247



5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 248



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 249



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 250



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 250 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 251



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 252



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 252 of 578

Page 253



11          (Simultaneous speaking.)

12          (Reporter clarification.)

17      Q.   And you can't quantify your

18   economic losses as a result of the

19   disclosure of Exhibit 13 in 2017 or 2018?

20      A.   In totality, by then, our

21   business has dried up.

22      Q.   Okay. Would you consider the

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 253 of 578

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 254

1    information attached to the email which is

2    Exhibit 13 to be an ALG Transportation Inc.

3    trade secret?

4         A.    I'm sorry.  One more time,

5    please.

6         Q.    Would you consider the

7    information contained in the attachments to

8    Exhibit, the email in Exhibit 13 to be an

9    ALG trade secret, considering they are the

10   ones that paid third parties to put it all

11   together.

12            No, no, no, the one in front of

13   you.

14        A.    This is 13?

15        Q.    Yes, 13.

16            (Document review.)

17   ███████████████████████████████████████

18   ███████████████████████████████████████

19   ███████████████████████████████████████

20        Q.    Okay.  Let's take a look -- does

21   that mean it's a HeavyLift trade secret?

22        A.    I don't know the answer.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 254 of 578

1      Q.   Okay.   Let's take a look at

2   Exhibit 14, which corresponds with trade

3   secret number 14 that you identified in

4   your Interrogatory answers in which you

5   state is "an email attaching an MRO

6   business plan related to one of plaintiff's

7   companies, HeavyLift International Inc."

8

9

10

11

12

13

14

15

16      Q.   Okay.

17      A.   The company was not one-man show.

18   We had a lot of people.

19        MR. KAPLAN:   Why don't we break.

20        THE VIDEOGRAPHER:   Off the record

21    at 2:45.

22        (Recess is taken.)

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 256

```
 1              THE VIDEOGRAPHER:  We are back on

 2       the record at 3:05.

 3   BY MR. KAPLAN:

 4       Q.   Mr. Azima, I'm showing you what

 5   has been marked as Exhibit 15.  We'll note

 6   Mr. Behre's objection on the record

 7   regarding highlighting and we'll substitute

 8   by Bates number.

 9              So this is Exhibit 15 which you

10   identified corresponds with trade secret

11   number 15 and as you state is "an email

12   attaching confidential information used for

13   government contracting by one of

14   plaintiff's," quote "companies HeavyLift

15   International."

16              Correct?

17       A.   Yes.

18

19

20

21

22
```

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 257



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 257 of 578

Page 258



19          MR. BEHRE:  Objection, calls for

20      a legal conclusion.

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 259



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11          MR. BEHRE:  Objection, calls for
12     a legal conclusion.
13
14
15
16
17
18
19          MR. BEHRE:  Objection, vague and
20     ambiguous.
21          If you want to direct him to
22     Bates numbers, do it.
```

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 259 of 578

Page 260



```
 5           MR. BEHRE:  Objection, calls for

 6        a legal conclusion.

 8           MR. BEHRE:  Calls for

 9        speculation.

10           You have to let me finish.

11           Let me get my objection.

12           MR. KAPLAN:  Get your objection

13        out.

14           MR. BEHRE:  Very cute.

15           Calls for speculation.  And the

16        record will be clear what the

17        objections are.

18     BY MR. KAPLAN:
```

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 261



11        MR. BEHRE:  Objection, calls for

12    a legal conclusion.

13        MR. KAPLAN:  I just want to

14    understand on the record if I ask him

15    to identify why he's considering

16    something a trade secret, you're not

17    thinking he can answer it without

18    making a legal conclusion.

19        MR. BEHRE:  You're using a legal

20    term --

21        MR. KAPLAN:  Sure.

22        MR. BEHRE:  -- that is the

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 261 of 578

1          ultimate issue in this case, trade

2          secrets.  If you want to ask him what

3          is confidential and what's been

4          designated as trade secrets, you're

5          free to do so.  But you're asking him

6          for a legal conclusion.

7     BY MR. KAPLAN:

8

9

10



11          MR. BEHRE:  Objection.

12

13

14

15

16

17

18

19

20

21

22

1              (Document review.)

14              MR. BEHRE:  Objection,

15         mischaracterizes the testimony.

5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 264



4　　　　MR. BEHRE:  Objection.  Same

5　　objections.

6　　　　THE WITNESS:  Kirby, finish.

7　　　　MR. BEHRE:  Objection, calls for

8　　a legal conclusion.

18　　　Q.　Okay.  Let's go to Exhibit 16.

19　　　A.　Go to 16, you said?

20　　　Q.　I'm going to show you what's been

21　　marked as Exhibit 16, which corresponds to

22　　trade secret 16 as identified in your

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 264 of 578

Page 265

1　　Answers to Interrogatories which you state

2　　is, quote, "an email attaching a proposal

3　　for a new airline related to one of

4　　plaintiff's companies, HeavyLift

5　　International."

6　　　　　　　Right?

7　　　　　　　This is in September of 2009

8　　after RAK owned 51 percent of HeavyLift,

9　　right?

10

11

12

13

14

15

16

17

18

19

20

21

22



Page 266



```
14        MR. BEHRE:  Objection, vague and
15     ambiguous, unintelligible.
```



```
21     Q.   Okay.  I'm going to show you what
22  has been marked as Exhibit 17.  And it
```

Page 267

1    corresponds to trade secret number 17 that

2    you have identified in your response to

3    interrogatories which you state is, quote,

4    "an email attaching an expansion plan and

5    associated forecast related to one of

6    plaintiff's companies, HeavyLift

7    International Inc."

8              Yes?

9       A.   Yes.

10      Q.   From March of 2011?

11      A.   Correct.

12      Q.   HeavyLift went out of business

13   within two years after that, correct?

14      A.   After November, I believe.



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 267 of 578

Page 268



5　　　　　　(Reporter clarification.)

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 269

1 

2 

3 

4 

5      Q.   Did Ray Adams work for HeavyLift?

6      A.   Ray Adams had the title of a

7  HeavyLift CFO.

8      Q.   Was he paid by HeavyLift?

9      A.   I don't remember who was paid --

10  whether his pay goes from different

11  companies back and forth.

12      Q.   Okay.  Did he have his own

13  entity?

14      A.   Yes.

15      Q.   All right.  And it was the entity

16  that got paid, right?

17      A.   I believe so.

18      Q.   Okay.  So was he sort of a

19  consultant for all your companies?

20      A.   Sort of.

21      Q.   Do you remember the name of the

22  entity?

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 270

1          A.     Tasman.

2          Q.     Tasman LLC?

3          A.     Yes, I believe so.

4          Q.     Do you know what state --

5          A.     I'm sorry.

6          Q.     Do you know what state it was

7     located?

8          A.     No.

9          Q.     T-a-z-m-a-n?

10         A.     I don't know.

11         Q.     T-a-s-m-a-n?

12         A.     Something like that.  I don't

13    know.

14         Q.     Did Farhad Azima have any

15    confidentiality agreements with Tasman?

16         A.     Tasman was Ray Adams, basically.

17         Q.     Yeah.

18         A.     So it was not deemed necessary to

19    do that.  He was my right-hand man at some

20    point.  My right-hand person, Ray Adams.

21         Q.     Okay.  So with regards to trade

22    secret number 17, you stated that you "own

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 270 of 578

1     all documents and information generated by

2     his companies."  I assume you're

3     referring --

4          A.   I did not say that at all.

5          Q.   You sure you didn't say that?

6          A.   By his companies generated --

7          Q.   "Plaintiff owns all documents and

8     information generated by his companies."

9          A.   By whose companies?

10         Q.   Why don't you go back to Exhibit

11    1 or 40.  Exhibit 40.

12         A.   40?

13         Q.   Yes, it should be on the bottom.

14    It's right there.  4-0?  Nope, the green

15    one.  Turn to page 13.

16              (Witness complies.)

17         Q.   See where it says trade secret

18    17?

19         A.   14 and goes to 15.

20         Q.   1-3?

21         A.   Oh, 1-3.  Okay.

22         Q.   Do you see where it says trade

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 272

1   secret 17?

2          A.   Yes.

3          Q.   "Plaintiff is an owner of this

4   trade secret.  It is an email attaching an

5   expansion plan and associated forecast

6   related to one of plaintiff's companies,

7   HeavyLift International Inc.  Plaintiff

8   owns all documents and information

9   generated by his companies."

10         A.   By companies, meaning by my

11  companies.

12         Q.   Yeah.

13         A.   But Tasman is not my company.

14         Q.   Okay.  But HeavyLift is, right?

15         A.   HeavyLift is.

16

17

18

19

20         Q.   But at this point in time, RAK

21  owned 51 percent of HeavyLift, correct?

22         A.   I believe I clarified that they

1    had no involvement in operation of the

2    company.

3          Q.    That's not my question.

4                You would agree with me that in

5    March of 2011, RAK owned a majority

6    ownership interest in HeavyLift, okay?

7    We've already established that.

8          A.    Technically, yes.

9          Q.    So by what basis do you contend

10   that you own documents created by HeavyLift

11   International?

12         A.    Because he never would have

13   participated in the airline, never took

14   part in management.  And for them, it was

15   -- for the reason to buy the interest in

16   HeavyLift was entirely non-commercial.

17         Q.    Do you have any other basis?

18         A.    Why they bought HeavyLift?

19         Q.    Why it is that you contend that

20   you own all documents and information

21   generated by HeavyLift?

22         A.    Because they just bought it and

1    walked away.  They didn't do anything with

2    it.

3         Q.    Isn't it sitting in their office

4    in the Emirates, all the documents?

5         A.    It is --

6               MR. BEHRE:  Objection.

7         A.    It is in HeavyLift's office.

8         Q.    Right.

9               And they own 100 percent of

10   HeavyLift, meaning RAK?

11        A.    They own 100 percent, the papers

12   in the HeavyLift, yes.

13        Q.    Okay.

14        A.    But you know what the paper is

15   worth?  Nothing.  It was useless.

16        Q.    Okay.

17        A.    They have no interest in

18   HeavyLift.  They just bought it for their

19   own reason.

20        Q.    Do you know why Mr. Adams was

21   paid through an entity rather than for his

22   personal services?

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 275

1       A.   I do not.  He requested it and we

2    honored it.

3       Q.   Let me show you what we're

4    marking as Exhibit 18, which corresponds to

5    trade secret number 18 that you identified

6    in response to Interrogatory answers and

7    which you state is a financial forecast

8    related to the performance of one of

9    plaintiff's companies, Shollar Bottling

10   Company, right?

11      A.   Um-hmm.

12

13

14

15

16

17

18

19

20

21

22

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 276



5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 277

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



Page 278



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11          MR. BEHRE:  Objection, vague,
12       calls for a legal conclusion.
13
14
15
16
17
18          MR. BEHRE:  Objection, relevance.
19    BY MR. KAPLAN:
20
21
22
```

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 278 of 578

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 279

1  ████████████████████████████

2  ████████████████████████████

3          Q.    Let me ask you a question.

4  ██████████████████████

5          Q.    Let's use Shollar Bottling

6  Company.  Let's assume that you are a

7  minority shareholder.

8          A.    Um-hmm.

9          Q.    Would you still contend that you

10  would own all documents and information

11  generated by Shollar Bottling Company?

12              MR. BEHRE:  Objection, calls for

13          speculation.

14  BY MR. KAPLAN:

15          Q.    Let's use HeavyLift.

16              You were a minority owner of

17  HeavyLift as of December 6th, 2009.

18              After December 6th, 2009, do you

19  contend that you owned all documents and

20  information generated by HeavyLift?

21              MR. BEHRE:  Objection, beyond the

22          scope of the trade secrets.

1          A.     HeavyLift was a special case.

2          Q.     What about Brownies Global

3     Logistics?

4          A.     As I had indicated before, I did

5     not have a direct role in the management.

6     My involvement was providing my knowledge,

7     financing, and the overall capabilities

8     that I had inputted and doing business with

9     the various governments.

10          Q.     All right.  But then it would be

11     the same situation where you didn't own all

12     of Brownies -- all the documents and

13     information generated by Brownies Global

14     Logistics either?

15          A.     To the extent it was related to

16     me, I owned it.  To the extent it wasn't

17     related to me, obviously not.

18          Q.     Okay.  You just testified that

19     HeavyLift was a special situation.

20               What made it special?

21          A.     HeavyLift was special because of

22     the nature of its business.

1          Q.    In what respect?

2          A.    Well, its purpose was providing

3    logistics and transportation for

4    Afghanistan and Iraq and some other places.

5          Q.    That's the only reason it was

6    special?

7                MR. BEHRE:  Objection,

8          mischaracterizes the testimony.

9          A.    The unique capability that

10   HeavyLift had, it was special.  The UAE

11   airline owned 100 percent by U.S. citizen.

12         Q.    Got it.

13         A.    The UAE airline owned 100 percent

14   by U.S. citizen puts it in a very special

15   category.  All our aircraft was not U.S.

16   registered and it was owned by -- the

17   airline was owned 100 percent by U.S.

18   citizen, which is me.

19         Q.    Are you aware of any bribes that

20   Shollar paid at any time?

21         A.    I am not.

22         Q.    I'm showing you what has been

1    marked as Exhibit 19, which corresponds

2    with trade secret 19 as you identified in

3    your response to interrogatories, which you

4    contend is "an email attaching a teaser

5    management presentation and investor list

6    related to one of plaintiff's companies,

7    HeavyLift International."

8              Correct?

9       A.    I'm sorry, one more time, please.

10

11

12

13

14

15

16             MR. BEHRE:  Are you reading from

17        a document?

18   BY MR. KAPLAN:

19       Q.    "Plaintiff is an owner of this

20   trade secret.  It is an email attaching a

21   teaser management presentation and investor

22   list related to one of plaintiff's

1    companies, HeavyLift International."

2              MR. BEHRE:  I think the confusion

3         is he's reading --

4              MR. KAPLAN:  I understand.

5              MR. BEHRE:  He's reading the

6         exhibit you gave him and --

7              MR. KAPLAN:  I got it.

8              MR. BEHRE:  No, hold on.

9              And you're reading from a

10        different document.

11             MR. KAPLAN:  I know that.

12             MR. BEHRE:  So if you could just

13        put in the record what you're reading

14        from so we could get it in front of us,

15        that would be helpful.

16   BY MR. KAPLAN:

17        Q.   Sir --

18        A.   Could I see the one -- is that

19   this one?

20        Q.   It's 40.  You've used all the

21   same language as to everything.  You can

22   look at page -- the bottom of page 13 to

1    14.

2          A.    13 or 14, sir?

3          Q.    It's number 19, which is found at

4    the bottom of 13.

5          A.    Okay.

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 285



Page 286



13          MR. BEHRE:  What is "it"?

14          MR. KAPLAN:  Exhibit 19.

15    BY MR. KAPLAN:

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 286 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 287

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 288



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22        Q.   Okay.  So now again, by 2017,

1      HeavyLift is no longer in business?

2          A.   By 2017, HeavyLift is no longer

3      in business.

4          Q.   So how was Farhad Azima harmed by

5      the public release of Exhibit 19?

6          A.    In my documents, my life was put

7      on the worldwide net. (Inaudible) It became

8      public.  At that time, people quit doing

9      business with me.  Banks moved in

10      immediately and they closed my bank

11      accounts.  Four banks closed my bank

12      accounts.  That is a harm that was done in

13      2018 or about then.

14          Q.   Did you lose all of that money or

15      did you get it back?

16          A.    I said closed the account.  I

17      didn't say confiscated my money.

18          Q.   Oh, okay.

19              Where did you put the money once

20      those on accounts were closed?  In

21      different banks?

22              MR. BEHRE:  Objection, relevance.

1          A.    I have two U.S. banks remaining

2     and I use those banks.

3          Q.    Okay.

4          A.    But international banks, such as

5     Nat Wes, after 40-plus years, they closed

6     my account.  HSBC closed my account.  And

7     two big U.S. banks opened my accounts --

8     closed my accounts.

9          Q.    So in addition to the 38 trade

10    secrets for which you are suing my client

11    for having stolen, when you say, as you say

12    your life was made public, there many other

13    documents that were put out there, right?

14         A.    I said that my emails, my albums,

15    my Rolodex, and et cetera, they all was put

16    into the public.

17         Q.    So the harm was caused by those

18    other documents and materials being

19    disclosed as well?

20              MR. BEHRE:  Objection, vague and

21         ambiguous, "other documents."

22         A.    Not necessarily, no.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 291

1          Q.   Okay.  So your position is that

2     of all your emails and despite your emails

3     and despite your family albums and despite

4     your Rolodexes and despite other materials,

5     you were only harmed because of the

6     disclosure in 2017 or '18 of the 38

7     identified trade secrets?

8               MR. BEHRE:  Objection,

9          mischaracterizes the testimony,

10          argumentative.

11          A.   I am stating that when my entire

12     business life was put forward, my business

13     dried up.  Nobody would do business with me

14     again.  That's what I'm saying.

15          Q.   Okay.  But it's not because

16     somebody got ahold of your proprietary

17     information and started competing.  It's

18     because banks and lenders and people you

19     were trying to do business with were scared

20     because your information was public, all

21     your information, not just your trade

22     secrets, right?

1        A.    That is not the point.   The point

2    is that when your client stole my documents

3    and they made it public throughout the

4    world, people lost confidence in my ability

5    to maintain confidentiality, and,

6    therefore, they withdraw businesses.

7        Q.    Okay.

8        A.    So I just lost all of my

9    business.

10       Q.    So that is the issue.   The issue

11   -- and this makes a lot of sense.   I get

12   this, right, because I'm trying to figure

13   this out.

14             HeavyLift was out of business.

15   Brownies, out of business, right?

16             EMA was no longer doing business.

17   By the time all of your alleged trade

18   secrets were disclosed, most of them

19   related to projects or businesses that had

20   ceased in operation, right, years prior?

21   So the real issue is people lost confidence

22   in your ability to maintain things as

1    secret, right?

2        A.   My ability to maintain

3    confidentiality, the trade secrets,

4    proprietary information was no longer

5    there.  I mean, it was made public.

6        Q.   I'm going to show you what was

7    marked as Exhibit 20.  It's the Rolodex

8    back there.  In fact, get 21 also.

9            I'm going to show you what's been

10   marked as Exhibit No. 20.

11       A.   I'm sorry, I cannot read this.

12           (Defendants' Exhibit 20, Rolodex

13       printout, Bates-stamped

14       FA_MDNC_01012382, marked for

15       identification, as of this date.)

16   BY MR. KAPLAN:

17       Q.   All right.  So this document that

18   you have identified as Exhibit 20 --

19       A.   Um-hmm.

20       Q.   -- as trade secret number 20 and

21   you refer to it as your Rolodexes.

22           MR. BEHRE:  I note for the record

1        there is no Bates number on this.

2              MR. KAPLAN:  Because it's the

3        native, and the Bates number is on the

4        front.

5              MR. BEHRE:  You're free to

6        represent that.

7     BY MR. KAPLAN:

8

9

10

11

12

13

14

15

16

17

18

19              MR. BEHRE:  Objection.

20     BY MR. KAPLAN:

21

22

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 295

1

2

3

4

5

6

7

8

9

10

11

12

13

14          MR. BEHRE:  I'd ask that the

15     witness read the exhibit before --

16          THE WITNESS:  I can't read the

17     damn thing.  How can you read that?

18  BY MR. KAPLAN:

19     Q.   But it either exists or it

20  doesn't, right?

21          MR. BEHRE:  Objection to the word

22     "it."

1          THE WITNESS:  Sorry?

2          MR. BEHRE:  Object to the word

3     "it."  I don't even know what that

4     question was.

5          MR. KAPLAN:  That's because you

6     don't pay attention.  He knew.

7  BY MR. KAPLAN:

8     Q.   I'll show you what we will mark

9  as Exhibit 21.

10          (Defendants' Exhibit 21, Rolodex

11     printout, Bates-stamped

12     FA_MDNC_01012383, marked for

13     identification, as of this date.)

14          MR. BEHRE:  Slow it down.  Slow

15     it down.

16          MR. KAPLAN:  I can't.  I gotta --

17     you're running out the clock.

18          MR. BEHRE:  No.

19          MR. KAPLAN:  I've got to go.

20          MR. BEHRE:  Slow it down.  The

21     witness needs to look at the exhibits.

22     A.   I can wait till the cows come

1    home.  I cannot read this.

2       Q.   Okay.  That's fair.  I don't want

3    to waste time with it.

4

5

6

7

8

9

10

11       MR. BEHRE:  Objection.

12       Foundation.  He said he can't read the

13       exhibit.  Neither can we.

14       MR. KAPLAN:  Okay.

15       A.   Unless you show me, I can't read

16    it.

17       Q.   I'm asking you, your Rolodexes

18    you contend were released to the public?

19       A.   Right.

20       Q.   And that it harmed you?

21       A.   Right.

22       Q.   Okay.  And you have taken the

1    position that your Rolodex is a trade

2    secret?

3        A.    That is right.

4        Q.    Okay.  You've identified five

5    specific documents that you consider to be

6    Rolodexes and that contain your trade

7    secrets, right?

8        A.    Correct.

9        Q.    Okay.  What is it about those

10    documents -- which are all relatively the

11    same.  I mean, they're your contacts list?

12        A.    Right.

13        Q.    What is it about them, in your

14    mind, that makes them trade secrets?

15

16

17

18

19

20

21

22

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 299



```
6            MR. BEHRE:  Objection, vague,

7       unintelligible.
```

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 300



```
17        Q.    Okay.  Do you know who Chris

18   Turner is?

19        A.    Yes.

20        Q.    Who is he?

21        A.    Chris Turner worked for me off

22   and on for many years.
```

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 300 of 578

1     Q.   When you say worked for you, did

2   he work for Farhad Azima or companies that

3   you owned?

4     A.   Both.

5     Q.   Did you pay him personally ever?

6     MR. BEHRE:   Objection, relevance.

7     A.   In some cases, yes.

8     Q.   Did he ever work for Caucas

9   International?

10     A.   Maybe he's advised Caucas, but

11   not directly employee.

12     Q.   Okay.   So I show you what has

13   been marked as Exhibit 23, which is a --

14   which corresponds to trade secret number 23

15   that you have identified, which you contend

16   is "an email attaching confidential

17   information used for government contracting

18   by one of plaintiff's companies, Caucas

19   International."

20 ████████████████████████████████

21 ████████████████████████████████

22 ████████████████████████████████



13      Q.   When did he leave your company?

14      A.   I don't know exact dates.  Mid

15  teens.

16      Q.   So he was working for whom in

17  December of 2012?

18      A.   I don't remember the date.

19  Either HeavyLift -- probably HeavyLift.

20  Probably.

21      Q.   Did HeavyLift have any

22  confidentiality agreements with Chris

1      Turner?

2           A.   He was director of security.

3           Q.   So that's no?

4           A.   The answer is no.

5           Q.   Okay.  And Caucas International

6      didn't have any confidentiality agreements

7      that it required Chris Turner to sign?

8           A.   He was not an employee of Caucas.

9           Q.   Okay.  Did Farhad Azima require

10     Mr. Turner to sign any confidentiality

11     agreements?

12          A.   No, I did not, because I know him

13     quite well.  He's a trusted person.  He

14     saved many lives.

15

16

17

18

19

20

21

22

Page 304

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17          (Reporter clarification.)

18
19
20
21
22

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 304 of 578

Page 305



5　　　　　MR. BEHRE:　What page was that?

6　　　　　MR. KAPLAN:　Page 2.

7　　BY MR. KAPLAN:

5/21/2024  Farhad Azima v. Nicholas Del Rosso et al.  Farhad Azima

Page 306

7    (Document review.)

Page 307



1
2
3
4
5
6
7
8
9
10
11
12
13          MR. BEHRE:  Objection, calls for
14     a legal conclusion.
15
16
17
18
19
20          Q.   I show you what's been marked as
21     Exhibit 24.
22

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 308



5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 309

1          Q.   I'm sorry.  And this is an ALG --

2     why is Ray Adams -- I'm sorry.  I take it

3     back.

4               All of the business plan, the

5     future of the business and how you do

6     business and operate in the region, that

7     was all ultimately disclosed to RAK,

8     correct?

9          A.   They asked for it.

10         Q.   You didn't provide them -- sorry.

11    You didn't provide them any -- you didn't

12    provide them a business plan before they

13    bought 51 percent of company?

14              MR. BEHRE:  Objection,

15         foundation.

16         A.   They just want to buy the

17    company.  We would be providing some

18    document, but I don't not exactly what.

19    Their purpose, they had the reason to buy

20    it which is non-commercial.

21    ████████████████████████████████████████

22    ████████████████████████████████████████



19     Q.   When did you cease doing the

20   airline business?

21     A.   I ceased -- the last airline I

22   operated in the United States was in the

1    '90s.  And the last airline in the Middle

2    East was, I think, in 2010 or '12,

3    something like this.

4              But let me say that aviation --

5    you spoke about aviation, not the airlines.

6    At one time, we owned 140, 150 aircraft;

7    large, heavy transport jets, passenger and

8    cargo too.  Lease to all the airlines,

9    American Airlines, Delta, Virgin, just all

10   over the world.  We had 30 some-odd

11   clients.

12             The nature of the leasing, the

13   leasing company, we buy aircraft, we put

14   equity, we borrow money, we markup and

15   lease it to airline and then airline lease

16   pays for it.

17             What happened in the -- soon

18   after the 2008, the big boys decided to get

19   in this business, the banks, G casters.

20   They got in this business.  They have no

21   cost of fund.  They print their own money.

22   So a company with 150 aircraft, we couldn't

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 312

1    be in business because, you know, we

2    couldn't be competible [sic].  This

3    business becomes business point business

4    for them.

5          Q.   Okay.  So you exited the airline

6    and aviation businesses by 2012 or 2014?

7               MR. BEHRE:  Objection,

8          mischaracterizes the testimony.

9          A.   I did not say that I existed.  I

10   said the leasing company and the airline.

11   I didn't say in business.

12         Q.   Okay.  Do you know who S&J

13   Enterprises is?

14         A.   Who?

15         Q.   S&J Enterprises?

16         A.   I'm not sure, but it must be

17   related to Ray Adams.

18         Q.   Did you ever authorize anyone to

19   discuss anything about any of your

20   businesses with S&J Enterprise?

21         A.   I don't know that, this SJ.  Is

22   this a real company or just Ray's company?

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 313

1     I don't --

2          Q.   You don't know.

3               So you don't know if he would

4     have done anything to protect the secrecy

5     of any of your business information --

6          A.   If it was --

7               (Simultaneous speaking.)

8          Q.   -- the secrecy of your business

9     information in the hands of S&J Enterprise?

10         A.   If S&J was Ray Adams's company,

11    then I did not require this.

12         Q.   I show you what's been marked as

13    Exhibit 25, which you have identified.  It

14    corresponds to trade secret number 25 as

15    identified in your Answers to

16    Interrogatories, which you state is "an

17    email attaching confidential information

18    used for government contracting and by one

19    of plaintiff's companies, Caucas

20    International."

21    ████████████████████████████████████████

22    ████████████████████████████████████████

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 314

Page 315



19          MR. KAPLAN:  Let's take a break.

20          THE VIDEOGRAPHER:  Off the record

21      at 4:02.

22          (Recess is taken.)

Page 316

1　　　　　　　THE VIDEOGRAPHER:　Back on the

2　　　　record at 4:17.

3　BY MR. KAPLAN:

4　　　　Q.　　I'm going to show you what's been

5　marked as Exhibit 30, which corresponds to

6　what you have identified as trade secret 30

7　in your Answers to Interrogatories in which

8　you identify is "a forecast related to an

9　intelligence surveillance and

10　reconnaissance ISR project related to one

11　of plaintiff's companies, ALG

12　Transportation Inc.," correct?

13　　　　A.　　Correct.

14　　　　Q.　　Okay.

15

16

17

18

19

20

21



22　　　　　　　MR. BEHRE:　Let the witness

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 316 of 578

1      finish his --

2        MR. KAPLAN:  I would like to show

3      him and point him.

4        MR. BEHRE:  Well, that's fine,

5      but he's mid-sentence.

6    BY MR. KAPLAN:

7

8

9

10      A.   Let me finish it, please.

11      Q.   Sure.

12        (Document review.)

13      A.   Okay.

14

15

16

17

18

19

20

21

22

5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 318



11    Q.    All right.  Now with regards to

12    HeavyLift, once RAK owned 51 percent, it

13    had a right to all of HeavyLift's documents

14    and information, right?

15    A.    As I said before, that was a

16    special case.  They never participated, nor

17    they cared.  It was just for them, they

18    just want to say they owned it.  They

19    didn't do anything about it.

20    Q.    Okay.  But they had a right to

21    it?

22    A.    Theoretically.

1          Q.   Okay.

2          A.   But never participated, never

3     acted, never came, never participated.

4          Q.   Well, didn't they ask for certain

5     documents in 2016?

6          A.   I do not remember.

7          Q.   You don't remember providing them

8     documents regarding a DC8 simulator?

9          A.   The settlement, during the

10    settlement discussion, they asked for

11    document.

12         Q.   All right.  And you provided

13    those documents?

14         A.   If --

15              MR. BEHRE:  Objection, relevance.

16         A.   Let me say that I did not

17    remember -- I don't remember what document

18    they asked, what we had provided.

19         Q.   Okay.

20         A.   But this is the document.

21    Obviously your client had it.

22         Q.   Okay.  And when we've been

1       referring to RAK this whole time --

2               A.    Right.

3               Q.    -- do you mean the government or

4       the fund?

5               MR. BEHRE:  Objection, vague and

6               ambiguous.

7               A.    When I talk to RAK, I'm talking

8       to the entity of Ras Al Khaimah, whether

9       it's the RAK Investment Authority or the

10      various companies they have set up or the

11      Sheikh.  I categorize them all together as

12      one entity.

13              Q.    Okay.  Even though they may not

14      be?

15              MR. BEHRE:  Objection,

16              argumentative.

17              A.    To me, they are dealt as one

18      entity.

19              Q.    Okay.  And in 2016, I assume that

20      when you had this meeting regarding

21      settlement, you didn't think that RAK was

22      acting fairly or honestly with you?

1                    MR. BEHRE:  Objection, relevance.

2          A.    I see that I'm confused that -- I

3     never heard Mr. Del Rosso's name.

4                    So this is RAK's deposition or

5     Mr. Del Rosso's deposition?

6          Q.    I'm showing you what I'm marking

7     as Exhibit 31.

8                    I don't care about the answer.

9                    Do you believe that RAK could be

10    trusted to keep information, your

11    information confidential?

12                   MR. BEHRE:  Objection,

13         foundation, relevance.

14         A.    Before that question, please let

15    the record state that I asked a question

16    whether this is Mr. Del Rosso's deposition

17    or RAK's and that was unanswered.

18         Q.    You'll make a good lawyer one

19    day.

20         A.    Really?

21         Q.    I hope for your sake, you don't

22    have to be.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 323

1          A.    Thank you.

2                So now your question, please?

3          Q.    Okay.   This is another email in

4     2012.   It corresponds with what you have

5     identified as trade secret number 31 --

6          A.    Um-hmm.

7          Q.    -- in your Answers to

8     Interrogatories which you state is "an

9     email attaching confidential information

10    used for government contracting by one of

11    plaintiffs companies, Caucas International

12    LLC."

13

14

15

16

17

18

19

20

21

22

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 324



Page 325



19          MR. BEHRE:  Let him finish

20      answering the question.

21   BY MR. KAPLAN:

22         Q.   I apologize, Mr. Azima.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 325 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 326



5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 327



18          MR. BEHRE:  Objection,

19          foundation.

Page 328



1

2

3

4          MR. BEHRE:  Objection, calls for

5          a legal conclusion.

6

7

8

9

10

11          MR. BEHRE:  Objection,

12          foundation, same other objections.

13

14

15          MR. KAPLAN:  Are those

16          objections?

17          MR. BEHRE:  Prior objections.

18          MR. KAPLAN:  Okay.

19          MR. BEHRE:  You want me to

20          restate them?  I'm happy to do it.

21          MR. KAPLAN:  No.

22          MR. BEHRE:  Would you like that?

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 329

1          MR. KAPLAN:  I would not.

2          MR. BEHRE:  Okay.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     Q.   Can I stop you there for a

19   second.

20          MR. KAPLAN:  Kirby, I know your

21      objection is noted.

22          MR. BEHRE:  The witness --

Page 330

1     BY MR. KAPLAN:

2          Q.   What I've asked very simply --

3               MR. BEHRE:  Hold on.  The witness

4          was in the middle of an answer --

5               MR. KAPLAN:  I know.

6               MR. BEHRE:  -- and you've cut him

7          off.

8               MR. KAPLAN:  I appreciate that.

9               It was not responsive.  Thank

10         you.

11    BY MR. KAPLAN:

12         Q.   What I simply want to know is

13    whether the mere fact --

14              MR. BEHRE:  Don't bully the

15         witness, okay?

16              MR. KAPLAN:  I really just want

17         to know --

18              THE WITNESS:  It's hard to bully

19         me.  Don't worry about it.

20              MR. KAPLAN:  Yeah, I don't think

21         he can be bullied.

22              MR. BEHRE:  He is attempting to.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 331

1              MR. KAPLAN:  No, I'm not.

2              MR. BEHRE:  He interrupted you

3         midsentence.

4     BY MR. KAPLAN:



16              MR. BEHRE:  Objection,

17         foundation.

Page 332



7           MR. BEHRE:  Is that two questions

8    or one?

22           Let's move on to Exhibit --

1      A.    You are not interested to know

2    how we saved American lives, no?

3      Q.    Not today.  I would like to talk

4    to you at another time, yes, but not right

5    now.

6            Do you know who Giorgi Machutadze

7    is?  M-a-c-h-u-t-a-d-z-e.

8      A.    Yes.

9      Q.    Who is that?

10     A.    Somebody in Georgia.  I don't

11   know.

12     Q.    You don't -- he's just somebody?

13     A.    Somebody I know in Georgia.

14     Q.    How do you know him?

15            MR. BEHRE:  Objection, relevance.

16     A.    I met him in Georgia.

17     Q.    That is the extent of your

18   relationship?

19     A.    No.  I had some dealing with him.

20   I can't remember exactly what.

21     Q.    Well, in your dealings with him,

22   did you require him to sign a

1    confidentiality or nondisclosure agreement

2    before any of your confidential information

3    was provided?

4         A.   Do you have a document that I can

5    refer to?

6         Q.   I'm just asking you whether in

7    general.

8         A.   I don't remember this.

9         Q.   Sure.

10            Let me show you what I have

11   marked as Exhibit 32, which corresponds to

12   what you have identified as trade secret

13   327 and which you state is "a financial

14   forecast and business plan for an MRO

15   related to one of plaintiff's companies,

16   ALG Transportation Inc."

17

18

19

20

21

22

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 335



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 336



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 337



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 337 of 578

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 338



Case 1:20-cv-00954-WO-JLW    Document 379-7    Filed 07/15/24    Page 338 of 578

Page 339



 2          Q.    It's fine.  I'll pass on that.

 3                Let me show you what's been

 4     marked as Exhibit 33.

 5                Now Exhibit 33 corresponds with

 6     what you have identified as trade secret 33

 7     in your Answers to Interrogatories in which

 8     you state is "an email attaching a fleet

 9     study related to one of plaintiff's

10     companies, HeavyLift International."

5/21/2024　　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　　Farhad Azima

Page 340



Page 341



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22       MR. BEHRE:  Objection.  Ask for



10          MR. BEHRE:  Objection as to

11       relevance.

12          MR. KAPLAN:  His answer?  The

13       whole line --

14   BY MR. KAPLAN:

15       Q.   It's very simple.

16          MR. BEHRE:  The whole line of

17       questioning.

18   BY MR. KAPLAN:

19       Q.   At what the point in time did you

20   cease trusting RAK?

21       A.   I never told you I trust them.

22       Q.   You never did?

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 342 of 578

1      A.   No.

2      Q.   It makes sense.

3          All right.  I'm going to show you

4  what has been marked as Exhibit 34, which

5  corresponds to --

6          MR. ROSENTHAL:  It hasn't been

7      marked, I believe.

8          MR. KAPLAN:  Well, it's

9      premarked.  I'll deal with it later.

10  BY MR. KAPLAN:

11      Q.   This corresponds to what you've

12  identified as trade secret 34, which you

13  state is "an email attaching a financial

14  forecast related to one of plaintiff's

15  companies, HeavyLift International Inc."

16

17

18

19

20

21

22

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 344



5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 345



Case 1:20-cv-00954-WO-JLW　Document 379-7　Filed 07/15/24　Page 345 of 578

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 346

1              Do you know who Vijay Arumbakkam

2    is?

3         A.   Yes, I do.

4         Q.   Who is he?

5         A.   Vijay was RAK's point person.  At

6    one point, was a deputy of Dr. Massaad.  He

7    was a point person assigned to HeavyLift

8    during the negotiation and stayed in

9    contact with us.

10             And then he start interfering in

11   the company's affairs.  He was immediately

12   dismissed by RAK.  He start entering a

13   classified area asking questions and he was

14   dismissed by RAK.

15        Q.   Okay.  Let me show you what has

16   been marked as Exhibit 35, which

17   corresponds with what you have identified

18   as trade secret 35 and which you state is

19   "an email attaching a fleet study related

20   to one of plaintiff's companies, HeavyLift

21   International."

22   ████████████████████████████████████

5/21/2024 Farhad Azima v. Nicholas Del Rosso et al. Farhad Azima

Page 347



5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 348



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 349



22        Q.    Let me show you what has been

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 349 of 578

1 marked as Exhibit 36, which corresponds

2 with what you have identified as trade

3 secret number 36 in which you state is,

4 quote, "an email attaching confidential

5 information used for government contracting

6 by one of plaintiff's companies, Caucas

7 International."

8    And let's talk about the

9 highlighted part.

10  A. Um-hmm.

11

12

13

14

15

16

17

18

19

20

21

22    MR. BEHRE:  You didn't read the

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 350 of 578

1          entirety of the highlighted portion.

2     BY MR. KAPLAN:

3          Q.    That particular sentence.

4          A.    Would you allow me please to read

5     it?

6          Q.    Sure.

7               (Document review.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21               MR. BEHRE:  Objection, calls for

22          a legal conclusion.

5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 352

14　　Justin or Mr. --

15　　　　Q.　I don't have a preference.

16　　Whatever you feel comfortable with, it's

17　　okay.　Just don't call me Jason like most

18　　people do.

19　　　　A.　I don't forget names.

20　　　　Q.　I appreciate that.

21　　　　That's what I'm trying to get at,

22　　right?　It's -- there is confidential

1    information --

2         A.   Right.

3         Q.   -- which you don't want people to

4    know --

5         A.   Right.

6         Q.   -- but it may not necessarily be

7    a trade secret.

8         A.   Well, as I said --

9              MR. BEHRE:  Objection, calls for

10        a legal conclusion.

11             There is no question pending.

12   BY MR. KAPLAN:

13        Q.   Can you -- are you able to make a

14   distinction between merely confidential

15   information and trade secrets?

16             MR. BEHRE:  Objection, calls for

17        a legal conclusion.

18   BY MR. KAPLAN:

19        Q.   Do you believe that you can make

20   a distinction between what you consider to

21   be non-trade secret confidential

22   information and trade secrets?

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 354

1              MR. BEHRE:  Objection, vague and

2        ambiguous, calls for a legal

3        conclusion.

4        A.    If my information is confidential

5   and they are part of trade secrets, they

6   are trade secrets.

7        Q.    Okay.  So it's your belief, then,

8   and I know you're not a lawyer, so I don't

9   want the legal definition, but I just want

10  to know, do you believe that there's no

11  distinction between your business's

12  confidential information and your trade

13  secrets?

14       A.    I didn't say that at all.

15       Q.    Okay, so then help me understand.

16  Because what you said was if my information

17  is confidential, and then they're part of

18  my trade secrets.

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  ████████████████████████████████████████

22  ████████████████████████████████████████

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 355



16      Q.    Well, that's what I'm trying to

17    get to, right? So you're telling me that a

18    competitor can't just take one of these

19    particular trade secrets that you have

20    identified and use it to their advantage

21    unfairly?

22      A.    No, I didn't say --

1     MR. BEHRE:  Objection, calls for

2  speculation, no foundation.

3  A. I know what you're trying to get.

4  Q. Clarity.

5  A. Sorry?

6  Q. Clarity.

7  A. Clarity.

8     But that is not the answer.  The

9 answer is that the totality of business is

10 confidential.  As part of my trade secrets,

11 all are intertwined together.  I don't have

12 to dissect -- I cannot dissect them

13 together.

14  Q. Okay.  I'm going to show you

15 what's been marked as Exhibit 37, which

16 corresponds with what you've identified as

17 trade secret number 37 and which you state

18 is "a price quote for a government contract

19 related to one of plaintiff's companies,

20 Shollar Bottling Company," correct?

21  A. Yes.

22 ████████████████████████████

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 357



Case 1:20-cv-00954-WO-JLW    Document 379-7    Filed 07/15/24    Page 357 of 578

Page 358



5　　　　　　MR. BEHRE:  Objection, vague and

6　　　ambiguous.

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 359



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 359 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 360



5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 361



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 361 of 578

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 362



5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 363



Page 364



16          MR. ROSENTHAL:  You need to

17     change the tape?

18          THE VIDEOGRAPHER:  I didn't get

19     the question.

20          MR. KAPLAN:  Mid question?

21          MR. ROSENTHAL:  Do you need to

22     change the tape?

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 365

1            THE VIDEOGRAPHER:  Only when the

2       light is on is when I need to.

3   BY MR. KAPLAN:



9            MR. BEHRE:  Objection, calls for

10      speculation.

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 366



5        Q.    I'm going to show you what has

6    been marked as Exhibit 39, which

7    corresponds to trade secret number 39 that

8    you have identified and which you state is

9    "an email attaching confidential

10   information used for government contracting

11   by one of plaintiff's companies, Caucas

12   International."

13            Correct?

Page 367



6          (Document review.)

Page 368



13             MR. BEHRE:  Objection,

14     foundation.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 368 of 578

Page 369



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16             (Reporter clarification.)
17
18
19
20
21
22

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 370



          MR. BEHRE:   Objection,

     foundation.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 370 of 578

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 371



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 372

1

2

     3      Q.    I'm going to show you what I've

     4   marked as Exhibit 45.

     5          (Defendants' Exhibit 45, EMA

     6          document Bates-stamped FA_MDNC_00210426

     7          through 10455, marked for

     8          identification, as of this date.)

     9          MR. KAPLAN:   Do you have copies

   10          for them?

   11          MR. ROSENTHAL:   You just gave him

   12          the whole package.

   13          MR. KAPLAN:   Oh, I'm sorry.

   14          (Handing.)

   15   BY MR. KAPLAN:

   16      Q.    So this is a document that you

   17   provided from EMA that appears to contain

   18   the same information as was put in the

   19   spreadsheet.

   20          Do you disagree?

   21      A.    I have not compared them yet.

   22      Q.    Go ahead.

5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 373

1　　　　　　　　MR. KAPLAN:  We'll go off for a

2　　　　second.  I have to use the restroom.

3　　　　　　　　THE VIDEOGRAPHER:  Off the record

4　　　　at 5:12.

5　　　　　　　　(Recess is taken.)

6　　　　　　　　THE VIDEOGRAPHER:  Back on the

7　　　　record at 5:31.

8　　BY MR. KAPLAN:

9　　　　Q.  Mr. Azima, Exhibit 45, that would

10　　be -- have you had a chance to review it?

11　　　　A.  I just glanced it while you

12　　weren't here, yes.

13　　　　　　　That's just the permission to

14　　different destinations for different types

15　　of trucks that we provided the service.

16　　　　Q.  That's right.

17

18

19

20

21

22

1
2
3
4
5
6

7        Q.    Now you've alleged that Nicholas

8   Del Rosso and Vital Management Services

9   Inc. "improperly acquired, disclosed or

10  used Azima's trade secrets."

11        Right?

12        A.    Correct.

13        Q.    Do you contend that Nick

14  Del Rosso used your trade secrets?

15        MR. BEHRE:  Objection, vague and

16        ambiguous.

17        A.    He acquired them on behalf of

18  somebody else, to the best of my knowledge.

19        Q.    You don't know whether he used

20  them for any purpose?

21        MR. BEHRE:  Objection, vague as

22        to "used."

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 375

1     A.   Except RAK, nobody else used my

2  information.

3     Q.   And how did RAK use your

4  information?

5     A.   To begin to start a litigation.

6     Q.   Do you care to explain?

7     A.   Yeah.  Look at the nonsense

8  lawsuit that they have filed and then their

9  perjury school that they conducted and they

10  went to court and then lied, all the

11  witnesses -- with the witnesses, they lied

12  in the court.  And they deceived and they

13  defrauded the English court, including me.

14     Q.   Okay.  That's the court where the

15  court in London found you not to be

16  credible, correct?

17          Is that the lawsuit that --

18     A.   Based on --

19     Q.   Let me finish, please.

20          Is that the lawsuit that you're

21  referring to?

22     A.   Yes.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 375 of 578

1        Q.    Okay.

2        A.    Based on the wall-to-wall

3    witnesses that they conspired to lie and

4    cheat and defrauded the court and then they

5    got a judgment.  That loan was reversed, as

6    you know.

7              (Reporter clarification.)

8        A.    Their decision was set aside.

9        Q.    How do you contend that either

10    Nicholas Del Rosso or Vital Management

11    Services improperly acquired your trade

12    secrets?

13        A.    How do I imply?

14        Q.    How do you contend that they

15    improperly acquired your trade secrets?

16        A.    They received tens of millions of

17    dollars to just do that.

18        Q.    Okay.  What proof do you have

19    that they received tens of millions of

20    dollars specifically to acquire your trade

21    secrets?

22        A.    I cannot answer that at this

1    time.

2        Q.   Why not?

3        A.   Because I don't have the data

4    before me.

5        Q.   Who has the data?

6        A.   The legal team.

7        Q.   Your lawyers?

8        A.   Yes.

9        Q.   They shared it with you?

10       MR. BEHRE:  Objection to the

11       extent it calls for privileged

12       information.

13   BY MR. KAPLAN:

14       Q.   Have they shared the proof?

15       A.   That is privileged information he

16   said.

17       Q.   He said to the extent.

18       So I just -- very simply, have

19   your lawyers shown you any proof that my

20   clients are the ones that acquired your

21   trade secrets?

22       A.   The perpetrators of the crime

1     against me, including your client,

2     collectively they did that.  And they were

3     actually hackers.  They met with my legal

4     team in Tokyo and they admitted they have

5     hacked me at the direction of

6     Mr. Del Rosso.

7          Q.   Okay.  Who are you referring to

8     when you say "they"?  They met with your

9     lawyers.

10         A.   The CyberRoot.

11         Q.   You don't know the names of the

12    individuals?

13         A.   No, I do not.

14         Q.   Okay.  Is there any other

15    information to which you have been privy

16    other than these individuals from CyberRoot

17    that leads you to believe that it was Nick

18    Del Rosso and Vital Management Services?

19              MR. BEHRE:  Objection if it calls

20         for --

21    BY MR. KAPLAN:

22         Q.   Listen, I don't want to know any

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 379

1      -- the substance of any communications

2      between you and your lawyers.

3            I just want to know whether

4      you've seen any other proof, other than

5      what you just testified to, whatsoever,

6      that it was Vital Management Services or

7      Nick Del Rosso who improperly acquired your

8      trade secrets.

9      A.   I consider that, my conversation

10     with my lawyers, privileged, and I am not

11     going to answer that.

12     Q.   I don't want to know what they

13     told you.  I want to know whether you have

14     seen any documents whatsoever other than

15     what your lawyers told you certain

16     individuals said which would lead you to

17     believe that Vital Management Services or

18     Nick Del Rosso are the ones that improperly

19     acquired your trade secrets.

20           MR. BEHRE:  Same objection to the

21           extent it calls for privileged

22           information, and that includes showing

1          of documents by your lawyers.

2          A.    You heard the man.

3               MR. KAPLAN:  I'm sorry, you're

4          contending the mere fact that you

5          showed unspecified documents is

6          privileged?

7               MR. BEHRE:  If it happened.

8               MR. KAPLAN:  If it did.  I'm

9          asking whether it happened.

10              MR. BEHRE:  Yes.

11              MR. KAPLAN:  So let's be very

12         clear.  I want to be very clear.

13              MR. BEHRE:  Attorney work

14         product, yes.

15     BY MR. KAPLAN:

16         Q.    Okay.  I'm not asking you to

17     disclose any particular documents that your

18     lawyers created.

19              I'm asking you whether you have

20     seen any documents that has led you to

21     believe that Nick Del Rosso or Vital

22     Management Services are the ones that

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 381

1    improperly acquired your trade secrets.

2              MR. BEHRE:  Same objections.

3         Same instruction.

4              MR. KAPLAN:  Are you instructing

5         him not to answer?

6              MR. BEHRE:  If you can answer

7         without violating attorney-client

8         privileged, then you can answer.

9         A.   I cannot answer that.

10        Q.   I don't want you to tell me what

11   they said to you, your lawyers.  I just

12   want to come to what you've seen.

13             Have you seen any documents that

14   would lead you --

15        A.   I've seen thousands of documents.

16   I cannot remember which ones.

17        Q.   Okay.  What types of these

18   thousands of documents has led you to

19   believe that it was Vital Management

20   Services or Nick Del Rosso that improperly

21   acquired your trade secrets?

22        A.   I did not say that.  I said --

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 382

1  you -- what kind of document have you seen?

2  I said I've seen thousands of documents.

3      Q.  Okay.  I want to know if you have

4  seen any documents that have led you to

5  believe that it was Nick Del Rosso or Vital

6  Management Services that are the ones that

7  improperly acquired your trade secrets.

8          MR. BEHRE:  Other than what

9      counsel has told you --

10      A.  Other than what counsel told me,

11  nothing.

12      Q.  Okay.  You haven't seen any

13  document -- did counsel provide you with

14  any documents?

15          MR. BEHRE:  You can answer that

16      "yes" or "no."

17      A.  One more time.

18      Q.  Did counsel provide you with any

19  documents that you reviewed?

20      A.  No.

21      Q.  None?

22          So all you know is what your

1     lawyers told you about -- which has led you

2     to believe that Nick Del Rosso and Vital

3     Management Services are the ones that

4     acquired -- or improperly acquired your

5     trade secrets?

6          A.    Correct.

7          Q.    Okay.  Including what they told

8     you about meetings with CyberRoot folks in

9     Tokyo?

10         A.    Correct.

11         Q.    And I guess the answers would be

12    the same with regards to what proof you

13    have that Nick Del Rosso and Vital

14    Management Services are the ones that

15    disclosed your trade secrets?

16              MR. BEHRE:  Same objections.

17         Same instruction.

18         A.    One more time.

19         Q.    What proof do you have that Nick

20    Del Rosso or Vital Management Services

21    disclosed your trade secrets?

22         A.    Nothing other than my lawyers

1    have told me.

2        Q.    Okay.  You allege that the

3    defendants, quote, "instructed CyberRoot to

4    hack Azima, steal copies of his data,

5    including trade secrets and distribute the

6    data through BitTorrent and we transferred

7    links on blogs created by CyberRoot."

8            What proof do you have to support

9    that allegation?

10        A.    My --

11            MR. BEHRE:  Hold on.

12            What are we reading from?

13            Is that the complaint?

14            MR. KAPLAN:  Yes.

15        A.    My legal team has told me what I

16    know.  I have not seen documents.

17        Q.    Okay.  Now when you speak about

18    the meeting in Tokyo, was that with a

19    gentleman by the name of Ahuja?

20        A.    I do not know the name.

21        Q.    Okay.  Do you know somebody by

22    the name of Vijay Bisht?

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 385

1       A.   I've heard the name, but I do not

2    know.

3       Q.   Okay.  So you have no idea who

4    they met with in Tokyo in 2021?

5       A.   I don't remember what they told

6    me.  They met with them and they had

7    dinner --

8            MR. BEHRE:  Don't get into what

9       we told you.

10   BY MR. KAPLAN:

11      Q.   Okay.  Do you know Vikash Pandey?

12      A.   These are the names I have a

13   heard.  I do not know them.

14      Q.   Did you instruct -- well, let me

15   ask you this:  Are you aware of any

16   evidence that the Miller & Chevalier firm

17   undertook actions on your behalf without

18   being authorized to do so?

19           MR. BEHRE:  Objection, vague and

20       ambiguous.

21      A.   They've always acted in my best

22   interest.

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 386

1      Q.   Okay.  So you've authorized all

2   of their actions that you're aware of?

3          MR. BEHRE:  Objection, vague and

4      ambiguous.

5      A.   They have acted always in my best

6   interest.

7      Q.   Okay.  Are there any actions of

8   which you are aware that were purportedly

9   taken on your behalf that you did not

10  authorize?

11         MR. BEHRE:  Objection, vague and

12     ambiguous.

13     A.   I would never question the

14  integrity of my lawyers.

15     Q.   Okay.  And that would include the

16  Burlington firm in the U.K. as well,

17  correct?

18     A.   I said my lawyers, they have

19  acted in my best interest.

20     Q.   That's not my question.  And

21  maybe they did.

22         But are you aware of any actions

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 387

1      taken either by lawyers at the Miller &

2      Chevalier firm or the Burlington firm in

3      London that were not authorized by you?

4              MR. BEHRE:  Objection, relevance.

5          It doesn't relate to trade secrets.  If

6          you want to proffer it, you can.

7          Otherwise, I'll shut it down.

8          A.   You heard the man.

9              MR. BEHRE:  You can answer that

10         one question.  Go ahead.

11         A.   What is the answer -- what is the

12     question?

13         Q.   I'm not getting into it yet.

14     I'll proffer before.

15              Are you aware of any actions

16     purportedly taken on your behalf by either

17     the Burlington law firm or Miller &

18     Chevalier that you did not authorize?

19         A.   I am not aware of it.

20         Q.   Okay.  Now are you aware that

21     whether -- are you aware Mr. Behre sought

22     to get CyberRoot and others to enter into a

1    settlement agreement with you?

2          MR. BEHRE:  Objection to the

3       extent it calls for privileged

4       information.

5          A.   If it is privileged, I cannot

6    answer.

7          Q.   No, no, no.  I just want to know

8    whether Mr. Behre, acting on your behalf,

9    attempted to get CyberRoot and others to

10   enter into a settlement agreement with you?

11          MR. BEHRE:  Same objection.

12          Don't disclose privileged

13       information.

14          MR. KAPLAN:  I think --

15          MR. BEHRE:  If you can answer

16       without that, you can.

17   BY MR. KAPLAN:

18          Q.   Let me see if I can clarify.

19   Okay.  I just want to know whether you are

20   aware of something, not what your lawyer

21   told you.

22          A.   I'm sorry, I don't have that

1    information.

2          Q.    You don't know?

3          A.    I don't have that information.

4                (Defendants' Exhibit 46,

5          Declaration of Chiranshu Ahuja, marked

6          for identification, as of this date.)

7    BY MR. KAPLAN:

8          Q.    Okay.  Let me show you what I'm

9    marking as Exhibit 46, which is a

10   declaration, a sworn statement, filed in

11   this case by a gentleman by the name of

12   Chiranshu Ahuja.

13         A.    Um-hmm.

14         Q.    Mr. Ahuja takes the position that

15   a witness statement filed in this action by

16   Ian Herbert is not true and that -- let's

17   turn to page 2, paragraph 4.

18         A.    Paragraph 4.

19         Q.    Mr. Ahuja, who is the director of

20   CyberRoot, Risk Advisory Private Limited

21   says, quote, "Since late 2020, CyberRoot

22   and its employees have been subject to

1    considerable false accusations by

2    Mr. Farhad Azima."

3              Have you seen this declaration

4    before?

5         A.   No, I have not.

6         Q.   Are you aware that CyberRoot is

7    taking the position --

8         A.   No, I'm not.

9         Q.   I didn't finish, but you're not

10   aware --

11        A.   You just asked me the question

12   and you stopped, so I answered.

13        Q.   Are you aware -- let's go to

14   paragraph 5.

15             Mr. Ahuja says, "Based on the

16   apparent connection between Mr. Azima and

17   the unlawful acts committed against

18   CyberRoot, I contacted Messrs. Kirby, Behre

19   and Dominic Holden by email on February 26,

20   2023.  The purpose of my outreach to

21   Mr. Azima's counsel was to address the

22   considerable reputational harm and attacks

1    caused to CyberRoot by Mr. Azima unlawful

2    acts and false allegations."

3           He goes on to say, "During my

4    calls with Mr. Behre, I have raised the

5    damage that has been caused to CyberRoot by

6    the theft of its bank records and

7    Mr. Azima's false allegations, but

8    Mr. Behre was unwilling to discuss a

9    potential settlement unless CyberRoot

10   accepted that it hacked Mr. Azima, which we

11   have denied and continued to deny."

12       A.   This question is so --

13       MR. BEHRE:  There is no

14    question --

15       THE WITNESS:  Let me say what I

16    want to say.

17       A.   I want to say that even a baked

18   chicken would laugh at.

19       Q.   Why?  Why?

20       A.   I won't discuss it.

21       Q.   Well, I would like to discuss it.

22   Why do you find --

Page 392

1          A.   Why do you that? Ian is going to

2     lie?  Do you think --

3               MR. BEHRE:  Mr. Farhad, there is

4          no question.

5               MR. KAPLAN:  There is a question.

6          I would like to know --

7               MR. BEHRE:  There is no question.

8               MR. KAPLAN:  There is a question.

9     BY MR. KAPLAN:

10         Q.   My question is:  Why do you find

11    Mr. Ahuja's statement that denying having

12    hacked you to be laughable?

13         A.   CyberRoot is a hack-for-hire firm

14    just to begin with.

15         Q.   Okay.  How do you know that to be

16    the case?

17         A.   They're all over the world.  I

18    don't have the information in my Rolodex,

19    but you just read everything.  That's what

20    their business is.

21         Q.   Anything else?

22         A.   That's enough.

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 393

1        Q.    Okay.  So putting that aside, why

2    is it laughable that Mr. Ahuja and

3    CyberRoot has denied hacking you?  Why do

4    you find that to be laughable?

5        A.    That's humorous.  It's more than

6    laughable.

7        Q.    Why do you find it humorous?

8        A.    Because Ian is not going to go to

9    Tokyo and have dinner with them and then

10    these guys lie about it.

11            If you're ready believe any

12    reasonable person, do you believe Ian and

13    Kirby are two known hackers, liars, who

14    would you believe?

15        Q.    That's fair.

16            So the sole basis for why you

17    find it laughable is that you believe your

18    lawyers and not the people denying that

19    they did something, right?

20        A.    The sole purpose is that my

21    lawyers, they are honorable people.  They

22    were in Tokyo.  They have evidence.  They

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 394

1    had dinner with them.  And they talked

2    about it because they want to extract $50

3    million from my lawyers, or some stupid

4    number like this, so they can cooperate.

5        Q.    Okay.  Well, are you aware that

6    Mr. Behre provided a settlement agreement

7    to CyberRoot and Mr. Ahuja in 2023?

8        A.    I am not.

9        Q.    Okay.  Well, why don't we turn to

10   Exhibit 4 to that document in front of you.

11       A.    Exhibit 4?

12       Q.    Yeah.

13       A.    What is it?  Is it Exhibit 2?

14       Q.    You have to flip.  It's after the

15   text messages.

16           MR. ROSENTHAL:  The document is

17       in the back.

18   BY MR. KAPLAN:

19       Q.    You're looking for this document

20   (indicating).

21       A.    What page is that?  Exhibit 4.

22   Okay.  The post-settlement agreement.  I

1    haven't seen that before.

2         Q.   All right.  So Mr. Ahuja claims

3    that on July 5th, 2023, Mr. Behre sent him

4    this particular document.

5         A.   Um-hmm.

6         Q.   And he also states that "The

7    settlement agreement included allegations

8    that CyberRoot was involved in the hacking

9    and leaking of Mr. Azima's data on Torrent,

10   so I responded that we are not on the same

11   page and that we would have to reconsider

12   later."

13        A.   I've never seen that before and I

14   cannot comment.

15        Q.   Okay.

16             MR. BEHRE:  There is no question

17        pending.

18   BY MR. KAPLAN:

19        Q.   Look at the third "whereas"

20   clause.

21             Do you see that?

22             MR. BEHRE:  What page?

```
 1              MR. KAPLAN:  Page 1.

 2    BY MR. KAPLAN:

 3         Q.   "Whereas the parties directly" --

 4              MR. BEHRE:  Are you representing

 5         this is the PACER version?  There is no

 6         PACER legend on this.

 7              MR. KAPLAN:  I don't know the

 8         answer to that.

 9              MR. BEHRE:  So this could be

10         different than what you filed in court?

11              MR. KAPLAN:  No.  If it is, you

12         can move to strike if I file it for

13         something.

14              MR. BEHRE:  That's weird.

15              MR. KAPLAN:  Yeah.  By the way,

16         for what it's worth, I asked for the

17         file-stamped copy.

18    BY MR. KAPLAN:

19         Q.   Do you see where it says, "The

20    parties directly or through their counsel

21    met for two days in Tokyo on June 20 and

22    21, and during those meetings, the
```

1  CyberRoot parties confirmed that Nicholas

2  Del Rosso hired CyberRoot to hack Azima and

3  others and published Azima's hacked data

4  online."

5       A.  I can read that.

6       Q.  You see that?

7       A.  Yes.

8       Q.  You understand that CyberRoot and

9  Vibhor Sharma and Vijay Bisht and Chiranshu

10  has refused to sign this on the grounds

11  that it's not true?

12       A.  I have not seen this document

13  before.

14       Q.  Okay.  But you understand that to

15  be the case?

16       A.  I haven't seen the document.

17       Q.  Did you authorize Mr. Behre to

18  send this document that you haven't seen

19  before to CyberRoot?

20       A.  Mr. Behre is my legal counsel.

21  He doesn't need to -- case-to-case

22  authorization from me.

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 398

1          Q.   He doesn't need authorization to

2     make settlement offers on your behalf?

3               MR. BEHRE:  Objection.  That's

4          misstating what he just said.

5     BY MR. KAPLAN:

6          Q.   Does he need authorization to

7     make settlement offers on your behalf?

8               MR. BEHRE:  Objection, calls for

9          speculation.

10         A.   Mr. Behre is my legal counsel.

11    He and his peers, they have representative

12    me for more than 50 years.  I have a total

13    trust and confidence in them, and they can

14    do whatever is my best interest.

15         Q.   Without getting express

16    authorization from you?

17              MR. BEHRE:  Objection.

18         A.   When I just stated that they are

19    my trusted confidant and lawyers, that

20    doesn't -- that means that they don't need

21    to ask for every time that they do

22    something.

1      Q.   Okay.  So let me make sure that I

2    understand this.

3           You did not review the terms of

4    this settlement agreement before Mr. Behre

5    sent it to Mr. Ahuja, correct?

6      A.   I just stated this is the first

7    time I have seen this.

8      Q.   Right.

9           So he sent a settlement offer on

10   your behalf without even letting you review

11   it first?

12          MR. BEHRE:  Objection as to

13       relevance.  This is getting into --

14       this is getting into privileged.

15          (Simultaneous speaking.)

16          MR. BEHRE:  Hold on.  Let me get

17       my objection out.

18          This is getting into privileged

19       communications, so tread carefully.

20          MR. KAPLAN:  I hear you.

21   BY MR. KAPLAN:

22      Q.   Are you aware of any agreement

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 400

1    between Miller & Chevalier and CyberRoot?

2         A.    I'm not.

3         Q.    Are you aware of any agreement

4    between Miller & Chevalier and Mr. Ahuja?

5         A.    I don't know who Mr. Ahuja is.

6         Q.    How about Vijay Bisht?

7         A.    I heard the name.  I don't know

8    who he is.

9         Q.    Okay.  Turn to the next exhibit

10   which went along with this settlement

11   agreement.

12        A.    That's the Chevalier, is that the

13   one you're talking about?

14        Q.    It's an email sent by Mr. Behre.

15   It's a letter that accompanied the

16   settlement agreement --

17        A.    Right.

18        Q.    -- where Miller & Chevalier is

19   offering to pay Chiranshu Ahuja and Vibhor

20   Sharma and CyberRoot Risk Advisory Limited.

21             MR. BEHRE:  What page?

22        A.    I was just -- I was under the

1    impression that you just said that these

2    people said that they never met them in

3    Tokyo.  All at once they never --

4         Q.   That's not true.  They've met

5    him.  I think that they said that they met

6    him.

7         A.   You said they're --

8              MR. BEHRE:  It's stipulated.

9              MR. KAPLAN:  I've not stipulated.

10             MR. BEHRE:  You just said it.

11             MR. KAPLAN:  No.  I didn't --

12        excuse me.  I did not say that they met

13        him.  That is not true.

14             MR. BEHRE:  Could the reporter

15        read back what you just said, please?

16   BY MR. KAPLAN:

17        Q.   What I said was that along with

18   this settlement agreement, that Mr. Behre

19   sent a letter offering to pay --

20        A.   But before that, you said that

21   mister whatever the hell his name is said

22   that they never met.

1        Q.    I don't know what they said.

2    Whatever --

3        A.    If they never met, if they didn't

4    meet --

5        Q.    I don't know.  I wasn't there to

6    the extent there --

7        A.    I wasn't there either.

8        Q.    Great.

9              So whatever he says in his sworn

10   declaration is what it is, okay, that we're

11   referring to right now.

12             So --

13       A.    But if they deny even having met

14   them and having dinner with them --

15       Q.    I don't know the answer.  I'm not

16   asking you about that.

17             What I'm asking about is whether

18   you knew that your lawyers offered to pay

19   Vijay Bisht, Chiranshu Ahuja, and Vibhor

20   Sharma and CyberRoot.

21       A.    For what purpose?

22       Q.    Let's look at that.  Go to page 1

1    where it says "Engagement:  Provide

2    information and assistance to Miller,"

3    which is Miller & Chevalier, "related to

4    the litigation as directed by counsel,

5    including by assisting in preparation for

6    depositions, submitting to informal

7    interviews and the preparation of sworn

8    affidavits, declarations" --

9         A.   What page are you?

10        Q.   Page 1.

11        A.   Page 1 of what?

12        Q.   Of the letter.

13        A.   Um-hmm.

14        Q.   -- "witness statements and all

15   presentation of evidence in court."

16        A.   What does that mean?

17        Q.   I don't know.  Your lawyers

18   offered that on your behalf.

19             MR. BEHRE:  There is no question

20        pending.

21             THE WITNESS:  Sorry?

22             MR. BEHRE:  There is no question

1          pending.  He's reading it to you, but

2          he's not asking you a question.

3               (Simultaneous speaking.)

4     BY MR. KAPLAN:

5          Q.   What do you believe oral

6     presentation of evidence in court means,

7     since it was offered to these individuals

8     on your behalf?

9               MR. BEHRE:  Objection,

10          foundation.  The witness said he hasn't

11          seen it.

12          A.   I've never seen this before.  I

13     haven't.

14          Q.   Do you have any reason to believe

15     that Mr. Behre did not provide this to --

16               MR. BEHRE:  That is really

17          inappropriate.

18          Q.   -- Mr. Ahuja?

19          A.   This is the first time I've seen

20     that and I have no -- I have no reason to

21     disbelieve my lawyers because I never have.

22          Q.   Okay.  So your lawyers sent this

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 405

1    letter, we assume, on your behalf to

2    CyberRoot offering to compensate CyberRoot?

3            MR. BEHRE:  For the record, it is

4        a draft letter.

5            THE WITNESS:  Is it signed?

6            MR. BEHRE:  No.

7    BY MR. KAPLAN:

8        Q.   No.  They wouldn't sign it?

9            MR. BEHRE:  There is not even a

10       date on it.  Come on, don't

11       misrepresent.

12           MR. KAPLAN:  Are you taking the

13       position that you didn't send this?

14       That someone created this document and

15       sent it on your behalf?

16           MR. BEHRE:  I am only following

17       your exhibit.

18           MR. KAPLAN:  I am asking.

19           MR. BEHRE:  Look at your exhibit.

20           MR. KAPLAN:  I see the exhibit.

21       I just want to know what your

22       position is.

1         MR. BEHRE: I'm so glad you

2     confirmed that the presence of your two

3     paid-off witnesses in Tokyo. You guys

4     have been fighting that for months.

5     Sam has been denying it for months.

6     And just here today, you disclosed it.

7     Thank you.

8         MR. KAPLAN: I didn't disclose

9     anything but I don't know. You can say

10    whatever you want, but I've got no

11    idea.

12        MR. BEHRE: Your representation

13    is good with me.

14        MR. KAPLAN: I don't believe I

15    represented that. But if I did, it's

16    baseless because I really have

17    absolutely no clue.

18   BY MR. KAPLAN:

19     Q. Let me show you what I'm marking

20   as Exhibit 46.

21        MR. ROSENTHAL: Exhibit 46 or 47?

22        MR. KAPLAN: What number is the

1　　　　last one?

2　　　　　　　THE WITNESS:  This is 46.

3　　　　　　　MR. KAPLAN:  We'll go to 47.

4　　　　　　　(Defendants' Exhibit 47,

5　　　　Declaration of Vikash K. Pandey, marked

6　　　　for identification, as of this date.)

7　　BY MR. KAPLAN:

8　　　　Q.　Okay.  You don't know who Vikash

9　　Pandey is, right?

10　　　　A.　No.

11　　　　Q.　Do you understand that Mr. Pandey

12　　is a former employee of CyberRoot?

13　　　　A.　I do not know.

14　　　　Q.　Okay.  Do you understand that he

15　　says that in paragraph 2 of his sworn

16　　declaration?

17　　　　A.　Let me read that first.

18　　　　Q.　Sure.

19　　　　　　(Document review.)

20　　　　A.　So they were employed by the

21　　hacking company.

22　　　　Q.　Read paragraph 3.

1                (Witness complies.)

2          A.    I did read it.

3          Q.    So you understand that Mr. Pandey

4     also denies being involved, right?

5                MR. BEHRE:  Objection.

6          A.    I read it, but I don't understand

7     it.

8          Q.    Okay.  Now turn to Exhibit A of

9     this particular agreement, which is an

10    August 20th, 2020, letter from Mr. Dominic

11    Holden at Burlingtons.

12         A.    Where is Exhibit A?

13         Q.    Keep going.  That's it.

14         A.    This one (indicating)?

15         Q.    No, go back.  That is Exhibit B.

16    Go backwards.

17                (Document review.)

18         A.    Exhibit A.

19         Q.    Okay.  Did you authorize

20    Mr. Burlingtons to send this letter to

21    Vikash Pandey?

22                MR. BEHRE:  Hold on.

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 409

1          Objection, foundation.

2          If you want to read it, read it.

3     A.   I was just going to ask some time

4   to read it.

5          (Document review.)

6     A.   Are you referring to a contract

7   here?

8     Q.   Excuse me?

9          No, I'm referring to the letter.

10          (Document review.)

11     A.   This that I read?

12     Q.   Correct.

13     A.   They asked for Farhad Azima.  A

14   lot of people asked for me.

15     Q.   But these were your lawyers,

16   right?

17     A.   I have a lot of lawyers.

18     Q.   Okay.  Was Burlingtons -- was

19   Dominic Holden at Burlingtons your lawyer

20   in August of 2020?

21     A.   Yes.

22     Q.   Okay.  And did you authorize him

1     to send this letter to Mr. Pandey along

2     with the attached settlement agreement?

3         A.    This is the first time I've seen

4     this.

5         Q.    Okay.  Are you aware of any

6     agreements today as we sit here between

7     Mr. Pandey and anybody acting on your

8     behalf?

9         A.    I am not aware of it.

10        Q.    Now I'm going to mark as

11    Exhibit 47 an email between from Kirby

12    Behre.

13            MR. HERBERT:  I thought we were

14        on 48.

15            (Defendants' Exhibit 48, Email

16        dated 2/17/2015 from Kirby Behre to

17        HH@fathers.church, not Bates-stamped,

18        marked for identification, as of this

19        date.)

20    BY MR. KAPLAN:

21        Q.    48, dated February 17th, 2015 to

22    HH@fathers.church.

1              Are you familiar with that

2     particular email address?  Is it an email

3     address that you used in 2015?

4              (Document review.)

5              MR. BEHRE:  Objection, outside

6          the temporal scope.  Object to the

7          extent it calls for privileged

8          information.

9     BY MR. KAPLAN:

10         Q.   Mr. Azima?

11         A.   Sir?

12         Q.   Did you use the email address,

13    HH@fathers.church in 2015?

14         A.   Yes, I have.

15         Q.   Okay.  Now Mr. Behre is saying to

16    you, "We have a new source, a lawyer who

17    works for our adversary."

18             Do you know what that is in

19    reference to?

20         A.   No, I do not.

21             MR. BEHRE:  Objection.

22             You have got to wait.

1          Privileged.

2     BY MR. KAPLAN:

3          Q.   I show you what I'm marking as

4     Exhibit 49.

5               (Defendants' Exhibit 49, Miler

6          Chevalier document titled "Project Clay

7          - Action Plan," Kirby Behre, 2/14/2015,

8          not Bates-stamped, marked for

9          identification, as of this date.)

10              MR. BEHRE:  And where is the

11         Bates on this?

12    BY MR. KAPLAN:

13         Q.   Mr. Azima, are you aware of any

14    lawyer that --

15              MR. BEHRE:  For the record, why

16         isn't there a Bates number on this?

17              MR. KAPLAN:  I don't know.

18              MR. BEHRE:  Well, is your client

19         going to produce this to us?

20              MR. KAPLAN:  I don't know whether

21         it's been produced or not.  I don't

22         know whether it's responsive to any

1          particular document request.  We can

2          deal with that later.

3              MR. BEHRE:  Well, you have

4          privileged emails, and I would think

5          you would know.

6              MR. KAPLAN:  I personally do not

7          know.

8              MR. ROSENTHAL:  I do know.  It's

9          one that you produced.  We can give you

10         the Bates number later.

11             MR. BEHRE:  But if we produced

12         it, it would have a Bates number,

13         right?  Right, Sam?

14             MR. KAPLAN:  Yes.  We'll deal

15         with that later.

16             MR. BEHRE:  You took it off?

17         Come on.

18     BY MR. KAPLAN:

19         Q.   Mr. Azima, are you aware of any

20     lawyers that do not represent you which are

21     cooperating with either the Miller &

22     Chevalier firm or the Burlingtons firm?

1        A.    Am I aware of any lawyers who is

2    not working for me and cooperating with

3    Miller & Chevalier or -- no, I'm not.

4        Q.    I'm showing you what I marked as

5    Exhibit 49, Project Clay Action Plan.

6            Do you know what Project Clay

7    refers to?

8            MR. BEHRE:  Objection, outside

9        the temporal scope, privileged.  It's

10        labeled as such.

11            You're instructed not to answer.

12        A.    I'm still confused.  This is

13    Mr. Del Rosso, RAK's deposition.

14        Q.    Okay.  Do you see --

15        A.    Nobody wants to answer that?

16        Q.    You -- this document was produced

17    by your lawyers.

18        A.    Which one?

19        Q.    The document that is Exhibit 49.

20        A.    I haven't seen 49 yet.

21        Q.    It's right here (indicating).

22            Okay.  This was produced by you

1   to my clients in this litigation.  So I

2   don't know where the claim for privilege

3   occurs --

4         MR. BEHRE:  It was stolen by your

5      client.  We have the stolen data that

6      your client stole, and he stole

7      privileged information.

8         He's not going to answer any

9      questions about a privileged document.

10   BY MR. KAPLAN:

11      Q.   Have you ever seen this document

12   sir?

13         MR. BEHRE:  Don't answer.  Don't

14      answer.

15      A.   You heard the man.  He said don't

16   answer.

17      Q.   Mr. Azima, all of your trade

18   secrets were stored on your computer

19   system, right?

20      A.   I don't use computer.  I have

21   iPads.

22      Q.   They were stored on your iPads?

Page 416

1          A.   Not necessarily.

2          Q.   Okay.  Well, if there was --

3     where was it stored, then, if not

4     necessarily on your iPads?

5          A.   My -- I don't quite understand.

6          Q.   From where was your information

7     hacked?

8          A.   From my data which was made

9     public.

10          Q.   But where did the hackers get

11     your data?

12          A.   From Internet.

13          Q.   Okay.  Where was it on the

14     Internet?  Where were you storing all of

15     this information?

16          A.   At the time, computer, not only

17     iPad, iPhone, everything.

18          Q.   Okay.  You had computers in --

19     when are you referring to?

20          A.   I quit using computers a few

21     years ago.  But the company and the various

22     people that were hacked, they had computer

1    then.

2         Q.    Okay.  Is there any company that

3    was hacked, are you aware of any data

4    policies that its employees were required

5    to follow?

6              MR. BEHRE:  Objection, vague and

7         ambiguous.

8         A.    I don't understand the question.

9         Q.    Okay.  So what companies were

10   hacked of yours?

11             MR. BEHRE:  Companies?

12             MR. KAPLAN:  That's what he's

13        saying.

14        A.    I said --

15        Q.    Let me back up.  Let me try this

16   a different way.

17             You said that your data -- my

18   clients caused somebody to hack, to obtain

19   your data.  And I'm asking you from where

20   did the hackers get your data?

21             It was online, right?

22        A.    I'm sorry?

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 418

1        Q.   It was online somewhere, correct?

2        A.   Yes.  And then it was in my

3   computer, there was two live, what do you

4   call that, the worm there, so we had it

5   removed.  So it was actually in my

6   computer, two of them.  They had a

7   real-time access to all my information.

8        Q.   I recognize that.

9             Now your computer, prior to the

10  hacking, your position is that all of the

11  trade secrets were on this -- your one

12  single computer?  That can't be.

13       A.   My trade secrets were either on

14  my computer or the company's computers.

15       Q.   Okay.  Which company's?

16       A.   ALG.

17       Q.   Okay.  What data, privacy

18  policies does ALG -- did ALG have between

19  2007 and 2017?

20       A.   I have to refer to my staff.  I

21  don't know exactly.

22       Q.   Okay.  Who would be able to

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 418 of 578

1    answer that?

2         A.    Probably the company could answer

3    this.

4         Q.    It's a third-party company that

5    ALG hired to handle its IT needs?

6         A.    If it's been done, it's outside

7    of my knowledge.

8         Q.    Okay.  Who had the knowledge?

9         A.    Probably they is one of them, but

10   there may be others.

11        Q.    But you can't name them?

12        A.    I don't know who.

13        Q.    Okay.  And you are unaware of any

14   policies regarding the handling of

15   sensitive information that every single

16   employee of ALG Transportation Inc. was

17   required to follow?

18        A.    We have confidentiality with a

19   lot of people.  We have a lot of

20   confidentiality and the NDA they sign.

21        Q.    With who?

22        A.    With employees.

Page 420

1       Q.    Every single one?

2       A.    Currently, with every single one.

3       Q.    Okay.  Did you back in 2007?

4       A.    I don't remember that.

5       Q.    2008?

6       A.    I don't remember that.

7       Q.    2009?

8       A.    I don't remember that.

9       Q.    Do you remember any single human

10   being that signed an NDA that works for ALG

11   Transportation prior to 2017?

12      A.    I don't remember.

13      Q.    Did you have a password on your

14   computer --

15      A.    Yes.

16      Q.    -- at the time it was hacked?

17      A.    Would you like to have it?

18      Q.    Yes.  What is it?

19            MR. BEHRE:  No --

20      Q.    Is it the same?

21            MR. BEHRE:  -- we are not giving

22      out passwords.

Page 421

1          Q.    Did you change your password

2     since?

3          A.    Yes.

4          Q.    Okay.

5          A.    I change it routinely.

6          Q.    Do you recall what the password

7     was that you used in 2016?

8          A.    I don't remember.

9          Q.    Do you remember when you changed

10    your password?

11         A.    As I said, I change my password

12    routinely.

13         Q.    Do you know whether ALG Inc. used

14    antivirus software?

15         A.    Yes.

16         Q.    Okay.  Between 2016 and 2018?

17         A.    Yes.

18         Q.    Okay.  Do you know what -- the

19    name of it?

20         A.    Was that something with a yellow

21    marking.

22         Q.    That's all you know?

1        A.    Yeah.  I can't remember the name.

2        Q.    Who would know?

3        A.    My assistant or -- they would

4    know that.  They would know it.

5        Q.    Okay.  Did you personally have

6    antivirus software installed on your

7    computer in 2016?

8        A.    Yes.

9        Q.    Do you know what software it was?

10        A.    It was the same one that was used

11    systemwide.

12        Q.    Did you use the same password in

13    2014 or 2015 and 2016 --

14            MR. BEHRE:  Objection.

15    BY MR. KAPLAN:

16        Q.    -- or were you always continually

17    changing it?

18        A.    It depends which email we are

19    talking about because I don't remember

20    those.  But I had more than one email

21    address.

22        Q.    Not just emails, but your actual

1    data.

2          A.    On what?

3          Q.    To get into your computer.

4                Was your computer

5    password-protected?

6          A.    My computer was

7    password-protected.

8          Q.    Okay.  Did you change the

9    password regularly for your computer?

10         A.    To access it?

11         Q.    Yes.

12         A.    It was in my home.

13         Q.    So you did?

14         A.    Yes, I did.

15         Q.    Okay.  It was in your home, so

16   you regularly changed the password --

17         A.    I change it from time to time.

18         Q.    How often?

19         A.    I don't know.  It depends who was

20   around.

21         Q.    Were you aware prior to 2016 of

22   any efforts to hack into your data?

1    A.   Yes.

2    Q.   Who?

3    A.   I do not know.

4    Q.   When?

5    A.   Well, it was when all the

6    websites started coming out Farhad Azima

7    this and that.  That was in 2015, I

8    believe --

9    Q.   Okay.

10   A.   -- or '16.  I don't know exact

11   date.

12   Q.   Okay.  So did you begin changing

13   your password to access your computer

14   systems afterwards regularly?

15   A.   I have IT company that do all

16   these things.

17   Q.   Okay.  But you don't know what

18   the company is?

19   A.   No.

20   Q.   Did you change any of your data

21   storage policies, either personally or for

22   any of your companies, after you started

1    believing that people were trying to hack

2    you?

3         A.   We took every precautions

4    possible.

5         Q.   That's not my question.  I want

6    to know if you changed your conduct.

7         A.   My personal conduct, yes.

8         Q.   Okay.  What did you do to change?

9         A.   Double verification system.

10        Q.   When did you start that?

11        A.   I don't remember that.

12        Q.   Okay.  Who set that up for you?

13        A.   I don't recall who set it up, but

14   I asked people.  But I have

15   double-verification system.

16        Q.   For your emails or --

17        A.   Yes, as well as my telephone.

18        Q.   Okay.  What about access to your

19   home computer?

20        A.   I don't have anymore home

21   computer.

22        Q.   No, I am talking about back in

1 2015 when you first learned or assumed that

2 people were trying to hack your

3 information.

4   A. After that -- I said that there

5 was worm installed in my computer.  After

6 that, I never used computers.

7   Q. After 2015?

8   A. Whenever I discovered the worm.

9 I don't remember the date.

10   Q. Are you aware of any money being

11 paid to Patrick Gracian to cooperate with

12 you in this particular lawsuit?

13    MR. BEHRE:  Objection,

14   foundation.

15   A. By who?

16   Q. Anybody.

17   A. I am aware of it.

18   Q. Are you aware of any agreements

19 between Patrick Gracian and anyone acting

20 on your behalf to cooperate with you in

21 prosecuting this lawsuit?

22    MR. BEHRE:  Objection to the

1        extent it calls for information outside

2        of this case.

3             If you can answer --

4        A.   I don't know the answer.

5        Q.   Okay.  Are you aware of any

6   agreements between anyone acting on your

7   behalf and Patrick Gracian to cooperate

8   with the Stocco partnership?

9             MR. BEHRE:  Objection, relevance,

10        outside the scope of this case.

11       A.   I'm not aware of it.

12       Q.   Are you aware of Stuart Page

13  being paid any money to cooperate with you

14  in this particular litigation?

15       A.   I'm not aware of it.

16       Q.   Are you aware of any agreements

17  made between Stuart Page and anyone account

18  acting on your behalf to cooperate with you

19  in this litigation?

20       A.   I'm not aware of it.

21       Q.   Are you aware of any agreements

22  with Stuart Page to cooperate with the

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 428

1     Stocco partnership?

2          MR. BEHRE:  Objection, relevance.

3     A.    What would I do with Stocco?  Why

4     don't you ask Stocco that?

5     Q.    Are you aware of any money being

6     paid to Paul Robinson to cooperate with you

7     in this litigation?

8     A.    Who is Paul Robinson?

9     Q.    I guess that's your answer.

10          Are you aware of any money being

11    paid to Steve McIntire?

12    A.    Who is Steve McIntire?

13    Q.    Okay.  You are not aware of any

14    money being paid to Vikash Pandey to

15    cooperate with you in this particular

16    litigation?

17    A.    I am not.

18    Q.    And you're not aware of any

19    agreements that Vikash Pandey executed with

20    anybody acting on your behalf?

21    A.    Who executed -- killed somebody?

22    Q.    Signed.

Page 429

1          A.    What was the question?

2          Q.    Are you aware of any agreements

3     between Vikash Pandey and anyone acting on

4     your behalf?

5          A.    I am not aware of it.

6          Q.    Are you aware of any agreements

7     between Chiranshu Ahuja and anyone working

8     on your behalf?

9          A.    I don't know who Mr. Ahuja is.

10         Q.    How about Vijay Bisht?

11              MR. BEHRE:  Object to the extent

12         it doesn't relate to this case.

13    BY MR. KAPLAN:

14         Q.    Are you aware of any agreements

15    between anyone acting on your behalf and

16    Vijay Bisht?

17              MR. BEHRE:  Same objection.

18         A.    I've never -- I don't know who he

19    is.  I am not aware of any agreement

20    either.

21              MR. KAPLAN:  Let's take five

22         minutes.

Page 430

1                    THE WITNESS:  How much time do

2        you have?

3                    THE VIDEOGRAPHER:  Off the record

4        at 6:18.

5                    (Recess is taken.)

6                    THE VIDEOGRAPHER:  Back on the

7        record at 6:36.

8                    MR. HERBERT:  You're done?

9                    MR. KAPLAN:  I'm reserving.

10                    EXAMINATION

11      BY MR. HERBERT:

12        Q.    Mr. Azima, you've been repeatedly

13      asked today whether something is a trade

14      secret?

15        A.    Correct.

16        Q.    Do you know the legal elements of

17      a trade secret?

18        A.    Please enlighten me.

19        Q.    Is that a "no"?

20        A.    Sorry?

21        Q.    Do you know them off the top of

22      your head?

1          A.     Not the legal definition.

2          Q.     Right.

3                 Are you a lawyer?

4          A.     For God's help, no.

5          Q.     Did you review the documents that

6     have been identified as trade secrets in

7     this litigation?

8          A.     The one that -- the 39 or

9     something document?

10         Q.     Yes.

11         A.     I looked at them, yes.

12         Q.     So do those documents that have

13    been identified as trade secrets reflect

14    your confidential information?

15         A.     Yes.

16                MR. KAPLAN:  Objection, leading.

17    BY MR. HERBERT:

18         Q.     Do those documents reflect your

19    unique knowledge and experience in the

20    industry?

21                MR. KAPLAN:  Objection, leading.

22         A.     In totality, yes.

1       Q.   How much experience do you have

2   in the aviation industry?

3            MR. KAPLAN:  Objection, vague.

4       A.   About 50 years or so.

5       Q.   And did you call upon that

6   experience when providing input for each of

7   these documents?

8            MR. KAPLAN:  Objection, leading.

9       Objection, vague.

10      A.   Yes, I have.

11      Q.   And so is that experience in the

12  aviation industry reflected in these

13  documents that have been identified as your

14  trade secret?

15           MR. KAPLAN:  Objection, leading.

16      Objection, vague.  Objection, assumes

17      facts not in evidence, and other

18      objections, like Kirby.

19           MR. HERBERT:  I didn't think you

20      would do the speaking objections.

21           MR. KAPLAN:  Well, what is good

22      for the goose is good for the gander at

1          this point.

2          A.    And then some.

3                Yes.

4          Q.    Did you take steps to keep these

5     documents confidential?

6          A.    Yes.

7                MR. KAPLAN:  Objection, vague.

8                Which trade secrets?

9                MR. HERBERT:  We're talking about

10         all of them.

11               MR. BEHRE:  What's good for the

12         goose.

13    BY MR. HERBERT:

14         Q.    Were some of them stored in your

15    computers?

16               MR. KAPLAN:  Objection, leading.

17         And objection, vague as to which

18         computer.

19         A.    Yes.

20         Q.    And were your computers

21    password-protected?

22         A.    Yes.

Page 434

1                 MR. KAPLAN:  Objection, leading.

2                 Sir, give me a chance to make my

3          objections, okay?

4                 THE WITNESS:  Most certainly,

5          sir.

6                 MR. KAPLAN:  It's more for her

7          than me.

8                 THE WITNESS:  Most certainly.

9                 MR. KAPLAN:  I appreciate that.

10    BY MR. HERBERT:

11         Q.   For some of the trade secrets

12    that you looked at today, you sent them --

13    you or someone else sent them to third

14    parties over email, correct?

15                MR. KAPLAN:  Objection, vague.

16         A.   Yes.

17                MR. KAPLAN:  And leading.

18         A.   Yes.

19         Q.   Were your emails

20    password-protected?

21                THE WITNESS:  No objection?

22                MR. KAPLAN:  Not this one.

1  A. Yes.

2  Q. When you sent documents over

3 email -- when you sent confidential

4 documents over email to third parties, did

5 you believe those third parties would treat

6 them as confidential?

7   MR. KAPLAN: Objection, leading.

8  A. By "you," me or my staff and my

9 companies? Could you --

10  Q. I'm talking about you, if you

11 sent them over email.

12  A. Would you repeat the question

13 again?

14  Q. If you sent -- when you sent

15 documents to -- confidential documents to

16 third parties over emails, did you believe

17 that those third parties would treat them

18 as confidential?

19  A. Yes.

20   MR. KAPLAN: Objection.

21 BY MR. HERBERT:

22  Q. When you sent documents to third

1      parties over email, confidential documents

2      to third parties over email, were you ever

3      worried that those third parties would

4      distribute the documents to the public?

5              MR. KAPLAN:  Object to form.

6         A.   I did not have any concern till

7      this hacking my email started.  I didn't

8      have a concern before.

9         Q.   Other than RAK, R-A-K, do you

10     have any reason to believe that any of the

11     other people that you sent documents to

12     that you have seen today passed them along

13     to anyone who is not supposed to have them?

14             MR. KAPLAN:  Object to form.

15        A.   Except RAK and the current

16     coconspirators, nobody else ever took

17     advantage of the stolen documents.  They

18     used it, only RAK and its coconspirators.

19        Q.   Did you authorize RAK to provide

20     any documents to Mr. Del Rosso?

21        A.   No.

22        Q.   Did you ever authorize

1    Mr. Del Rosso to read any of your

2    documents?

3        A.   No.

4        Q.   Did you authorize Mr. Del Rosso

5    to post any of your documents online?

6        A.   No.

7        MR. KAPLAN:  Objection.

8    BY MR. HERBERT:

9        Q.   The industries you worked in, is

10   it fair to say that they're inherently

11   confidential?

12        MR. KAPLAN:  Objection to form.

13       A.   Not only confidential, but it's

14   based on trust.  People trust each other.

15        Q.   Within the industry, was it

16   understood that documents exchanged would

17   be kept confidential?

18        MR. KAPLAN:  Object to form.

19       A.   Yes.

20        Q.   Ray Adams worked for you,

21   correct?

22        MR. KAPLAN:  Objection.

Page 438

1          A.     Correct.

2          Q.     And so when Ray Adams was

3     preparing documents for your companies, was

4     he doing that at your direction?

5               MR. KAPLAN:  Objection to form.

6          A.     Yes.

7          Q.     And did Mr. Adams typically

8     prepare those documents with your input?

9               MR. KAPLAN:  Objection, vague,

10          ambiguous, leading.

11         A.     With my input and in many

12    revisions, he revised them, sent them back,

13    I give him my input over and over.  And

14    many times, it was revised until such time

15    the form -- he was producing a form that

16    was acceptable to me.

17         Q.     So you're saying it's an

18    iterative process --

19              MR. KAPLAN:  Objection.

20         A.     Right.

21         Q.     -- between you and Mr. Adams?

22         A.     Yes.

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 439

```
 1              MR. KAPLAN:  Objection.

 2       A.   As you have seen, many of the

 3   revisions, they have four or five revisions

 4   at the time.

 5       Q.   Right.  Right.

 6              You said multiple times today

 7   that your businesses were harmed and you

 8   were harmed when your data was published on

 9   the Internet; is that correct?

10       A.   Correct.

11       Q.   And that happened in 2018,

12   correct?

13              MR. KAPLAN:  Objection.

14       A.   Earlier than that started.

15       Q.   So there were websites that were

16   created in 2016, correct?

17       A.   Yes.

18              MR. KAPLAN:  Objection, leading.

19              Are you going to lead the entire

20       time?

21              MR. HERBERT:  Maybe.

22              MR. KAPLAN:  Okay.
```

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 439 of 578

1     BY MR. HERBERT:

2          Q.    Do you recall those websites?

3                MR. KAPLAN:  Objection.

4          A.    Some of them, yes.

5          Q.    And did any of those websites

6     have links to the dark web?

7                MR. KAPLAN:  Objection, vague and

8          ambiguous.

9          Q.    Any of the websites that you saw

10    have links to the dark web?

11               MR. KAPLAN:  Objection, vague and

12         ambiguous.

13         A.    I'm not that technically

14    inclined, I mean, up to date.  I was born

15    before computer.  So some of them did, I'm

16    told.

17               MR. KAPLAN:  I was born before

18         computers too.

19               THE WITNESS:  No. But you don't

20         look like it.

21               How old are you?

22               MR. KAPLAN:  I am in my 40s.

1           THE WITNESS:  I have suits older

2      than that.  I'm twice your age.

3           MR. KAPLAN:  I should be so

4      lucky.

5           THE WITNESS:  You live to be 110

6      years.

7    BY MR. HERBERT:

8      Q.   Were you able to download your

9    documents from the links that were posted

10   on those websites in 2016?

11     A.   No.

12     Q.   Do you know if anybody on your

13   behalf was able to?

14          MR. KAPLAN:  Objection.

15     A.   Some staff but not the entire

16   team.

17     Q.   Do you know if anybody at all,

18   not working on your behalf, was able to

19   access those documents?

20          MR. KAPLAN:  Objection.

21     A.   I do not know the answer.

22     Q.   Was Dechert able to access your

1    documents?

2            MR. KAPLAN:  Objection.

3       A.   Obviously there wasn't -- there

4    -- what do you call it?  What do you call

5    the damned thing, storage, server -- what

6    do you call it, the one that you store all

7    the emails there?

8       Q.   Server?

9       A.   The servers, yeah.

10      Q.   The documents were on Dechert's

11   servers?

12           MR. KAPLAN:  Objection.

13      A.   Yes.

14      Q.   Were you or anyone acting on your

15   behalf able to access the documents prior

16   to 2018?

17           MR. KAPLAN:  Objection.

18      A.   Dechert basically and its cronies

19   did that.  Dechert and its cronies, its

20   agents, the conspirators, they are the

21   ones.  Dechert was the ringleader of this

22   whole conspiracy.

1        Q.    So Dechert wasn't acting on your

2        behalf, right?

3        A.    I'm sorry?

4        Q.    Dechert was not acting on your

5        behalf?

6        A.    For God's sake, no.

7        Q.    Was anyone acting on your behalf

8        able to access the documents prior to 2018?

9              MR. KAPLAN:   Object to form.

10       BY MR. HERBERT:

11       Q.    To your knowledge?

12             MR. KAPLAN:   Objection.

13       A.    Not that I know.

14       Q.    So if I understand the testimony

15       correctly, Dechert weaponized your

16       documents in 2016, but they were not

17       publicly available to you until 2018?

18             MR. KAPLAN:   Objection.

19       A.    They weaponized it in the most

20       harmful way.  Dechert weaponized it.

21       Q.    Were you harmed after 2018?

22       A.    I'm still harmed.  I'm still

1     being harmed.

2          Q.   Did you have contracts that were

3     cancelled after 2018?

4               MR. KAPLAN:   Objection.

5          A.   I didn't have much business after

6     2018 because I had no bank or no

7     facilities.  And basically they had done

8     all the damage and it was continued

9     damages.

10         Q.   And is that because of the

11    publication of your documents?

12              MR. KAPLAN:   Objection.

13         A.   Not only the publication of the

14    documents, but the lack of confidentiality.

15         Q.   Did bank accounts -- banks close

16    your accounts after 2018?

17              MR. KAPLAN:   Objection.

18         A.   I don't know exact dates, but the

19    various times, they closed my accounts.

20         Q.   And was that because of the

21    publication of your documents?

22              MR. KAPLAN:   Objection.

1      A.   Yes.

2      Q.   I think you said previously that

3  you were not in the airline operations

4  business in 2018 --

5      A.   Yes.

6      Q.   -- is that correct?

7      MR. KAPLAN:  Objection.

8  BY MR. HERBERT:

9      Q.   What did you mean by that?

10      A.   I said I am not -- what I meant

11  to say and I'm saying is I am not operating

12  an airline.  I'm not an airline operator at

13  this time.  But that doesn't mean that I'm

14  not in the aviation business.

15      Q.   Were you still in the aviation

16  business in 2018?

17      A.   Yes.

18      MR. KAPLAN:  Objection.

19  BY MR. HERBERT:

20      Q.   Are you --

21      A.   There are a lot of people in the

22  aviation business, but they are not airline

1    operators.

2         Q.   You were asked how Mr. Del Rosso

3    used your trade secrets.

4              Do you remember that?

5              MR. KAPLAN:  Objection.

6         A.   A lot of questions was asked.

7         Q.   Are you aware of a company called

8    NTI, Northern Technologies Inc.?

9         A.   I've heard the name.

10        Q.   Who did they work for?

11             MR. KAPLAN:  Objection.

12        A.   I believed they worked for the --

13   either Del Rosso or Dechert.

14        Q.   Are you aware that they prepared

15   reports using your data?

16             MR. KAPLAN:  Objection.

17        A.   Yes.

18        Q.   And are you aware that they

19   disclosed your data to the FBI?

20        A.   Yes.

21             MR. KAPLAN:  Objection.

22        A.   Not really the FBI.  Every agency

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 447

1    that is government, and they shopped it all

2    over, everywhere.

3         Q.    So they used your data to try to

4    instigate an investigation?

5         A.    Yes, they did.

6              MR. KAPLAN:   Objection.

7         A.    And they were successful.

8         Q.    And the data that they provided

9    to the FBI and others, that included your

10   trade secrets?

11             MR. KAPLAN:   Objection.

12        A.    Entirely.   And they waste the

13   taxpayers' money going all the over the

14   world, all over the United States to find

15   something and it wasn't there.   I have

16   always conducted myself in accordance with

17   law.

18        Q.    You also asked about proof that

19   Vital acquired your trade secrets.

20             Do you recall that?

21        A.    You mean they bought it from me?

22             What do you mean by "acquired"?

1         Q.   Acquired.

2         A.   Against my will?

3         Q.   In any way.

4         A.   Any way acquired?  Just speak to

5    me in English.

6              You mean they stole it?

7         Q.   Did they steal it?

8         A.   Obviously I didn't give it to

9    them.

10        Q.   Have you seen copies of your

11   trade secrets that were produced by

12   defendants in this case?

13             MR. KAPLAN:  Objection.

14        A.   Yes.

15        Q.   Copies that had Bates numbers

16   that started DEFS?

17        A.   Correct.

18        Q.   So do you understand that

19   defendants had copies --

20        A.   In their possession a long time,

21   yes.

22        Q.   Are you aware that defendants

1    have admitted to paying CyberRoot more than

2    a million dollars?

3          MR. KAPLAN:  Objection.

4      A.   I've read it in the papers, yes.

5      Q.   I think you said that it's your

6    belief that CyberRoot is a hack-for-higher

7    company?

8      A.   Correct.

9          MR. KAPLAN:  Objection.

10   BY MR. HERBERT:

11     Q.   Are you aware that Meta, the

12   company formerly known as Facebook, has

13   found CyberRoot to be a hack-for-hire

14   company?

15         MR. KAPLAN:  Objection.

16     A.   I've heard it, yeah.

17     Q.   Are you aware that Mr. Del Rosso

18   was accused of hacking prior to this case?

19     A.   Yes, I've heard that.

20     Q.   And Dechert knew of that when

21   they hired him, correct?

22         MR. KAPLAN:  Objection.  How

1        could he know what Dechert knew?

2        A.    I've heard of that, but I --

3             MR. KAPLAN:   I learned from you,

4        Dad.

5             MR. BEHRE:   Read in today's

6        filing.

7   BY MR. HERBERT:

8        Q.    Can you look at Exhibit 2 that's

9   sitting in front of you?  I put them in

10   this stack here (indicating).

11        A.    Um-hmm.

12

13

14

15

16

17

18

19

20

21

22

Page 451

1

2          MR. KAPLAN:  Objection.

3

4

5

6

7

8          (Document review.)

9

10

11

12          MR. KAPLAN:  Objection.

13

14

15

16

17          MR. KAPLAN:  Objection.

18

19

20

21          MR. KAPLAN:  Objection.

22

Page 452



5     Q.    Can you look at number

6    Exhibit 10?   It's this one (indicating).

7     A.    10?   All right.

17      MR. Kaplan: Objection

20      MR. KAPLAN:   Public information,

21      he said.

Page 453

1  

2          MR. KAPLAN:  Objection.

3

4

5

6

7

8          MR. KAPLAN:  Objection.

9

10

11

12

13

14      Q.   Okay.  Can you look at Exhibit

15   14, please?

16          MR. KAPLAN:  14?

17          MR. HERBERT:  14.

18          (Document review.)

19   BY MR. HERBERT:

20

21

22

Page 454



8          MR. KAPLAN:  Objection.

12          MR. KAPLAN:  Objection.

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 454 of 578

Page 455



6      MR. KAPLAN:   Objection.

10      MR. KAPLAN:   Objection.

Page 456



1

2

3

4

5

6

7

8

9          MR. KAPLAN:  Objection.

10

11

12          MR. KAPLAN:  Objection.

13

14

15

16

17          MR. KAPLAN:  Objection.

18

19

20

21

22          (Reporter clarification.)

Page 457



11          MR. KAPLAN:  Objection.

12      BY MR. HERBERT:

19          MR. KAPLAN:  Objection.

20      BY MR. HERBERT:

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 457 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 458



Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 458 of 578

Page 459



7          MR. KAPLAN:  Objection.

8     BY MR. HERBERT:

17          MR. KAPLAN:  Objection.

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 460

1            MR. KAPLAN:   Objection.



7            MR. KAPLAN:   Objection.

10       Q.    Do you have Exhibit 11?

11       A.    You know, past the time, I charge

12   overtime.

13       Q.    What do you have on your left?

14   Do you have 11?   36?

15       A.    No, I don't have it.

16            What are you looking for?   Maybe

17   I ate it.

18       Q.    I'm showing you Exhibit 35.

Page 461



```
12              MR. KAPLAN:  Objection.

13      BY MR. HERBERT:
```



```
17              MR. KAPLAN:  Objection.

18      BY MR. HERBERT:
```

1          MR. KAPLAN: Objection.

2    BY MR. HERBERT:

3

4

5

6

7

8

9

10          MR. KAPLAN: Objection.

11

12          MR. HERBERT: That's all I have.

13          THE VIDEOGRAPHER: Off the

14    record, at 7:07.

15          (Recess is taken.)

16          THE VIDEOGRAPHER: Back on the

17    record at 7:20.

18          FURTHER EXAMINATION

19    BY MR. KAPLAN:

20      Q. Mr. Azima, when your complaint in

21    this lawsuit was filed in October of 2020,

22    did you have an understanding of the

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 463

1    meaning of the word "trade secrets" as used

2    in that complaint?

3         A.   The lawsuit was filed for the

4    hacking.

5         Q.   Okay.

6         A.   The one that we filed.

7         Q.   The one that we are here for

8    today, did you understand what the term

9    "trade secrets" meant at the time that that

10   was filed in --

11        A.   So --

12        Q.   I'm not done.

13        A.   Sorry.

14        Q.   -- the time that you filed your

15   complaint and made reference to trade

16   secrets having been misappropriated by my

17   clients, yes or no?

18        A.   Did I understand that my trade

19   secret was stolen?

20        Q.   No, what the word "trade secret"

21   means.

22        A.   Of course I did.

1          Q.    Okay.   And when you signed your

2      Answers to Interrogatories in this case,

3      under penalty of perjury, the third

4      supplement that we marked as Exhibit 40

5      today, did you understand what the term

6      "trade secret" means as used in that

7      document?

8          A.    Trade secret for me is --

9          Q.    Yes or no?

10         MR. HERBERT:   Objection.   Let him

11      answer.

12         MR. KAPLAN:   It's not a response.

13     BY MR. KAPLAN:

14         Q.    Just yes or no, when you signed

15     that document, did you understand what the

16     term "trade secret" meant as used in

17     Exhibit 40?

18         A.    I cannot be forced to answer

19     something without giving explanation.

20             The trade secret in my vocabulary

21     may be different than what the legal

22     definition trade secret is under -- my

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 465

1    understanding was yes.  But if you think

2    there is a different meaning, I am not

3    aware of it.

4        Q.   Okay.  As you and I were

5    discussing trade secrets today, did you

6    understand what I meant by the term "trade

7    secret" at this deposition?

8        A.   No.

9        Q.   No?

10        A.   At the time you were talking one

11    way, then another document, you're talking

12    another way.

13        Q.   When I have asked you about your

14    positions about your trade secrets --

15        A.   My trade secrets are the

16    proprietary information that we accumulated

17    over decades and I have applied to various

18    businesses.

19        Q.   Okay.  I just want to know

20    whether you understood the questions I was

21    asking you today regarding your trade

22    secrets.

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 466

1     A.   And my answer is the same.  My

2   trade secrets is an accumulation of decades

3   of being in business and I have applied

4   that to various businesses that I have.

5     Q.   So in today's deposition when I

6   used the term "trade secrets," you

7   responded consistent with what your

8   understanding of the word "trade secret"

9   means?

10     A.   I've said yes.

11     Q.   Okay.  Now you were asked

12   multiple questions by Mr. Herbert with

13   certain specific trade secrets that you've

14   identified and also generally whether you

15   believe that when you sent that information

16   to third parties, the quote was, "Did you

17   believe that those third parties would

18   treat them as confidential?"

19       Do you remember the questions

20   Mr. Herbert asked you?

21     A.   Yes.

22     MR. HERBERT:  Objection,

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 467

1      compound.

2          A.   When Mr. Herbert asked the

3      documents that he referred to, to the

4      people that I sent, I trusted them and I

5      did not have a question in mind.  I did not

6      question that they would go and

7      misappropriate those.

8          Q.   Okay.  So is it safe to say,

9      then, that you did not take any specific

10     steps to maintain the secrecy of your trade

11     secrets as a result of that trust?

12          MR. HERBERT:  Objection,

13          argumentative, mischaracterizes the

14          testimony.

15          A.   That question is -- the documents

16     that I sent often had a confidentiality

17     statement on it.

18          Q.   Okay.  But aside from that, what

19     I'm hearing, and tell me if I'm not right

20     because I know I'm not wrong, what I'm

21     hearing is that when -- in response to

22     Mr. Herbert's question where he asked you,

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 468

1    you know, whether you believed that the

2    third parties to whom your trade secrets

3    were sent would treat them as confidential,

4    you trusted them?

5    A.   Yes.

6    Q.   Right?

7    So if you didn't trust these

8    people, would you have taken other steps to

9    maintain the secrecy of your trade secrets?

10    MR. BEHRE:  Objection,

11    speculation.

12    A.   I probably wouldn't send it to

13    them.  I don't know the answer.

14    Q.   Okay.

15    A.   If I wouldn't trust somebody, I

16    don't know whether I would want to do

17    business with them.

18    Q.   That's fair.

19    Okay.  But because you trusted

20    them, you didn't feel that you needed --

21    A.   That is correct.

22    Q.   -- to do anything else to

1    maintain the secrecy of your trade secrets,

2    correct?

3         A.    That's correct, sir.

4         Q.    Okay.  You testified when -- in

5    response to Mr. Hubert's -- one of

6    Mr. Herbert's questions, that Ray Adams

7    created documents for your companies?

8         A.    Yes.

9         Q.    Does that include any of the 38

10   trade secrets that you have identified as

11   being misappropriated by my clients?

12        A.    I need to go to all 38 of them to

13   look at them one by one.

14        Q.    Let me ask you this:  To the

15   extent that Mr. Adams did create those

16   documents, they would have been created for

17   the specific companies, correct?

18        A.    Correct.

19        Q.    Okay.  Mr. Herbert asked you

20   about the sites on which your trade secrets

21   were published.  And he asked you whether

22   anyone, either yourself or anyone acting on

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 470

1   your behalf, was able to access your

2   information on those websites in 2016.  And

3   I believe your answer was some sites but

4   not the entirety or some trade secrets but

5   not the entirety.

6              Am I remember that correctly?

7        A.   I didn't use the word "trade

8   secrets."  I said that my emails, the one

9   on the Torrents, BitTorrents, and all the

10  other dark webs that were put, some were

11  accessible and some not.

12       Q.   Okay.  Well, the emails that were

13  accessible, did any of those contain any of

14  the 38 trade secrets on which you are suing

15  my clients?

16       A.   I do not know.

17       Q.   So you don't know what was or

18  what wasn't available --

19       A.   I don't know.

20       Q.   -- in 2016?

21       A.   I do not know who accessed what.

22       Q.   Okay.  But my question is whether

5/21/2024　　　Farhad Azima v. Nicholas Del Rosso et al.　　　Farhad Azima

Page 471

1　you know what was or was not available in

2　2016 as compared to --

3　　　　A.　I did not have access nor I was

4　able to download the dark web, so I don't

5　know whether it was there.

6　　　　Q.　Are you aware whether any of your

7　trade secrets were downloaded and available

8　in 2016?

9　　　　A.　I did not download, nor I was

10　able to download those dark webs, so I

11　wouldn't know that.

12　　　　Q.　Okay.  Well, were you or anyone

13　acting on your behalf able to access the

14　documents containing your trade secrets

15　prior to 2018 from any of the particular

16　websites on which you have allegedly were

17　published?

18　　　　A.　Except Dechert and all the bad

19　actors, I don't think so.

20　　　　Q.　But you don't know?

21　　　　A.　The answer is yes.

22　　　　Q.　Okay.  You testified that, quote,

1    "Dechert weaponized my documents in 2016,"

2    end quote, but also that they were, quote,

3    "not available," end quote, to you until

4    2018, correct?

5         A.   Correct.

6         Q.   Okay.  How did Dechert weaponize

7    your documents in 2016?

8         A.   Obviously they were mastermind of

9    hacking, so they had access to it.  And

10   they used that by going to various

11   government agencies to launch an

12   investigation.  They send that to the

13   banks.  They send it to press.  And they

14   put the data and they start sending it to

15   news, to the press and the media trying to

16   get them interested to write derogatory

17   articles about me.  And they used those --

18   whatever they had, they shopped around to

19   various news media, including "Wall Street

20   Journal" which caused Jay Solomon to be

21   fired.

22        Q.   Does that include any of the 38

1    trade secrets that you have identified?

2          MR. HERBERT:  Objection, vague as

3       to "that."

4       A.   Included all my data.  I don't

5    particularly know which ones.

6       Q.   Okay.  So it's your position that

7    in 2016, when you say that Dechert

8    weaponized your data, they shopped all of

9    your data around?

10      A.   I don't know what they shopped

11   because I was not in the shopping list.

12      Q.   Okay.  You were asked whether you

13   had any contracts cancelled after 2018 and

14   the answer was no, correct?

15         MR. HERBERT:  Objection,

16      mischaracterizes the testimony.

17   BY MR. KAPLAN:

18      Q.   Did I mischaracterize your

19   testimony, sir?

20      A.   Did I have any contracts

21   cancelled?

22      Q.   Yeah.

1          A.    As a result of what?

2          Q.    Just any contracts cancelled

3     after 2018.

4                MR. HERBERT:  Are you asking him

5          what his testimony was or are you

6          asking the question?

7     BY MR. KAPLAN:

8          Q.    I'm asking do you remember saying

9     that you did not have any contracts

10    cancelled after 2018?

11               MR. HERBERT:  You want to show

12         him the transcript?

13               MR. KAPLAN:  No, it's okay.

14         A.    I don't remember.

15         Q.    Let me ask it a different way.

16               Did you have any -- did Farhad

17    Azima have any contracts cancelled in 2016?

18         A.    I can't -- I don't remember.

19         Q.    Did Farhad Azima have any

20    contracts cancelled in 2017?

21         A.    If there is a contract that is

22    cancelled, show me and I can tell you

1    because I don't --

2         Q.    I don't know, that's why I'm

3    asking.

4         A.    I don't know the answer.

5         Q.    Are you aware of any contracts

6    that either you had or any of your

7    companies had that were cancelled

8    specifically because of the publication of

9    any of the 38 trade secrets identified in

10   response to Interrogatory No. 5?  3, sorry.

11        A.    Sir, the cancellation of a

12   contract is not an issue.  What happens

13   after that, I did not get any more

14   business.  Nobody did business with me

15   because of lack of confidentiality and all

16   my business was on the public information.

17   So I didn't get a business.  There was not

18   a question of cancellation.

19        Q.    Can you identify a specific

20   opportunity that you didn't get as a result

21   of the publication of your data that you

22   just referenced?

1            MR. HERBERT:  Objection.  You

2        just said that he said the opposite

3        before.  Why are you badgering?

4    BY MR. KAPLAN:

5        Q.  Can you identify a specific

6    identity -- sorry.  Can you identify a

7    specific opportunity that you did not get

8    as a result of the publication of your

9    data?

10            MR. HERBERT:  Same objection and

11        objection, vague.

12        A.  What year?

13        Q.  Any year.

14        A.  Well, there's, you know, that

15    goes up 50 years.

16        Q.  No, no, no.

17            A specific opportunity that you

18    did not get which you had but you didn't

19    get it because of the publication of your

20    data, can you identify one?

21            MR. HERBERT:  Objection,

22        argumentative.

1          A.    JFJ contract was cancelled.

2          Q.    With who?

3          A.    With U.S. Navy.

4          Q.    Okay.

5          A.    It was a joint venture with us.

6     We had a contract with U.S. Navy.  That was

7     cancelled.

8          Q.    Any other one that you can

9     identify?

10         A.    I don't remember all the details.

11         Q.    Okay.

12         A.    But we just didn't get any new

13    business.

14         Q.    Okay.  Now by 2018, you were

15    already out of the airline business, but

16    you remained --

17              MR. HERBERT:  Objection.

18         A.    Airline operations business.

19         Q.    Airline operations business, but

20    you remained in the aviation business?

21         A.    Right.

22         Q.    Okay.  What were you specifically

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 478

1      doing in the aviation business in 2017 and

2      '18?

3          A.   I can't remember exactly.  I was

4      involved too much -- like most of my time

5      was taken by litigation.

6          Q.   You entered into a settlement

7      agreement with RAK, Dechert and Jamie

8      Buchanan, correct?

9              MR. HERBERT:  Objection.  Outside

10         the scope of the redirect.

11             You don't need to answer that.

12             MR. KAPLAN:  That's fair.

13     BY MR. KAPLAN:

14         Q.   When you were asked --

15     Mr. Herbert asked you about Exhibit 10, and

16     you testified that the information which

17     constitutes Exhibit 10 was obtained from

18     airline companies.

19             Do you recall that?

20         A.   Let me see that, please, before I

21     can answer that.

22         Q.   You should have it in front of

1    you, number 10.

2              MR. HERBERT:  I believe this is

3         my copy.

4              (Handing.)

5         A.    This is publicly available

6    information, yes.

7         Q.    Okay.  Who obtained the publicly

8    available information?

9         A.    The people that I have hired to

10   put this together.

11        Q.    You don't know who that is?

12        A.    One is that -- Alan Baird is one

13   of them.  And there were other people.  I

14   can't remember all the people involved.

15        Q.    And you used that information to

16   reach conclusions after the fact, correct?

17        A.    I'm not following you.

18        Q.    You used the publicly available

19   information that was compiled to be --

20        A.    To be able to deliver the basis

21   for us to drive the information that we

22   needed for our purpose.

Page 480

1          Q.   Understood.

2               Now you testified that -- well,

3     not testified, but you have alleged that in

4     May and June of 2018, the blog sites

5     containing your information were modified?

6               MR. HERBERT:  Objection.  What

7          are you referencing?

8               MR. KAPLAN:  His complaint.

9     BY MR. KAPLAN:

10         Q.   Do you understand -- your trade

11    secrets were on the dark web in 2016,

12    right?

13         A.   I'm told, yes.

14         Q.   Okay.  But your position is that

15    they weren't publicly available until

16    later, right?

17         A.   I don't know the answer.  How do

18    I know how to answer to that?

19         Q.   I don't know.  You tell me.

20         A.   Well, I don't know if I know how

21    to answer that.

22         Q.   Okay.  Were your trade secrets

Page 481

1    publicly available in 2016?

2        A.   They were on dark web.  I don't

3    know who could access it and who couldn't.

4    I couldn't certainly.

5        Q.   Okay.  Were they publically

6    available in 2017?

7        A.   I do not -- the same answer.  I

8    don't know.

9        Q.   Do you have any idea how the blog

10   sites referenced in your complaint were

11   modified in May of 2018?

12       A.   I'm not an IT person.  I don't.

13       Q.   Who would that be?  Chris

14   Tarbell?  **

15       A.   People that we have hired.

16       Q.   Okay.  Who did you hire?

17       A.   I did not hire.  My legal team

18   hired.

19       Q.   Now you also alleged that in June

20   of 2019, the links on the blog sites

21   containing your trade secrets were again

22   modified, the new links?

1          A.   As I said, my legal team hired

2     people.  I'm not very much aware of IT.

3          Q.   So you don't know how it was

4     modified?

5          A.   No.

6          Q.   Now do you remember Mr. Herbert

7     asking you about the Meta report which

8     claimed CyberRoot to be hackers?

9          A.   He mentioned that.

10          Q.   How were you made aware of that

11     report?

12          A.   He just told me that.

13          Q.   No, initially when you first saw

14     the report, how were you made aware of its

15     existence?

16          A.   From my lawyers.

17               MR. HERBERT:  Objection also.  I

18          think it mischaracterizes his

19          testimony.

20     BY MR. KAPLAN:

21          Q.   Were you aware of the existence

22     of the report prior to Mr. Herbert asking

Page 483

1    you about it today?

2        A.    You know, there is so much data,

3    it's hard to ** which one was, which one

4    was never.

5        Q.    Did your lawyers tell you about

6    the existence of a Meta report claiming

7    that CyberRoot are hackers?

8        A.    Yes.

9        Q.    Do you know whether your

10   attorneys provided information regarding

11   CyberRoot to Meta?

12        MR. HERBERT:  Objection.

13        Privileged.

14        A.    I do not know.

15        MR. HERBERT:  Objection.

16        Don't -- okay.

17        Q.    As we sit here today, can you

18   quantify your economic losses as a result

19   of the disclosure of the 38 trade secrets

20   that you allege my client stole from you?

21        MR. HERBERT:  Objection.  It's

22        outside the scope of the redirect.

1            You don't have to answer.

2            MR. ROSENTHAL:  He went into

3      that.

4            MR. KAPLAN:  You absolutely did

5      about how he was harmed.  Okay?  This

6      is part of how he was harmed.

7  BY MR. KAPLAN:

8      Q.   So Mr. Azima, can you quantify

9  your economic losses as a result of the

10  alleged misappropriation by my clients of

11  your trade secrets?

12            THE WITNESS:  Answer, yes or no?

13      Do I answer that or not?

14            MR. HERBERT:  You can answer

15      that.

16      A.   If you look at my income after

17  2016, it dropped drastically.

18      Q.   Okay.  And it's your contention

19  it specifically dropped as a result of the

20  publication of your 38 alleged trade

21  secrets?

22      A.   Including.

1        Q.    Okay.  What other reasons?

2        A.    I mean, there was all -- my life

3    was public information.  Nobody wanted to

4    do business with me.

5        Q.    Okay.  How were you deriving

6    revenue prior to 2018 that you were

7    prohibited from deriving revenue after?

8        A.    I had no banks.  I was unable to

9    do business.

10        Q.    So the banks don't provide you

11    with revenue.

12        A.    Of course they provided me

13    capital that I can do business with.

14        Q.    How much income did you make in

15    2015?

16        A.    I don't remember --

17            MR. BEHRE:  Objection, relevance.

18        Q.    How about in 2016?

19            MR. HERBERT:  Same objection.

20        A.    Considerably less.

21        Q.    In 2016?

22        A.    Less than '15.

1     Q.   Okay.  And what about -- what was

2     your income in 2017?

3     A.   I don't remember my income.

4     Q.   Was it higher or lower than 2016?

5     A.   I don't remember that.  My tax

6     accountants know that.

7     Q.   Okay.  And what about in 2018?

8     A.   The same answer.  I don't.

9     Q.   What deals were you not able to

10    close on because you couldn't get financing

11    in 2018 or after?

12         MR. HERBERT:  Objection.

13    BY MR. KAPLAN:

14    Q.   Can you identify any?

15         MR. HERBERT:  Objection.  Asked

16    and answered.

17    A.   After my entire life was public

18    and my banks closed my account, there was

19    no reason for me to -- because I was told

20    don't ask business because they are not

21    giving it to you.

22    Q.   Okay.  So you voluntarily

1    stopped --

2              MR. HERBERT:  Objection.

3              (Simultaneous speaking.)

4    BY MR. KAPLAN:

5         Q.   Did you voluntarily cease looking

6    for financing for deals beginning in 2018?

7         A.   It was force majeure that I was

8    unable to do it.

9         Q.   Okay.  Is that a "yes," you

10   stopped?

11        A.   No. I said it was a force

12   majeure.  I was forced not to be able to do

13   business for lack of financing.

14        Q.   Okay.  From whom did you seek

15   financing in 2018 that rejected you?

16        A.   From my existing banks which I

17   have done business for years.

18        Q.   Okay.  So I assume you submitted

19   applications for loans?

20        A.   My staff has done for me, yes.

21        Q.   Probably, but you're not sure?

22        A.   No, I'm positive.

1      Q.   Which business that you owned

2   would have needed financing in 2018 and was

3   unable to obtain it?

4      A.   Well, there was a project that I

5   was doing with real estate.  The bank

6   committed.  And after my information was

7   public and all those things, they declined

8   to do that.  That was Great Western Bank.

9      Q.   In 2016?

10     A.   I don't know the exact date.

11     Q.   Okay.  Did they tell you why?

12     A.   Yes.

13     Q.   Okay.  Who told you?

14     A.   The senior vice president of the

15   bank in charge of the commercial loans.

16     Q.   Okay.  Was it in writing?

17     A.   He came to my home and he told me

18   that.

19     Q.   Do you know his name?

20     A.   Yes.

21     Q.   What is his name?

22     A.   His name escapes me.

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 489

1      Q.   Where was the project?

2      A.   Real estate.

3      Q.   Where?

4      A.   Kansas City.

5      Q.   What was the address of the

6  project?

7         MR. HERBERT:  Make sure you take

8      your time, so I can get an objection

9      out, okay?

10      Objection, vague.

11  BY MR. KAPLAN:

12      Q.  The project we are referring to,

13  where in Kansas City was it?

14      A.  It was a number of projects, but

15  one of them was 3260 Main Street.

16      Q.  How much money did you lose as a

17  result of not being able to purchase that

18  property?

19         MR. HERBERT:  Objection, vague.

20      Objection.

21         THE WITNESS:  May I answer it or

22      not?

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 489 of 578

1              MR. HERBERT:  Sure.

2         A.   All the soft costs were a

3    million, two or so.

4         Q.   That you put in?

5         A.   Yes.

6              Another one that I remember,

7    building --

8              MR. HERBERT:  There is no

9         question pending.

10             MR. KAPLAN:  I would like to know

11        what he's remembering.

12   BY MR. KAPLAN:

13        Q.   What else do you remember?

14             MR. HERBERT:  Objection, vague.

15        A.   It was a ceramic factory.

16        Q.   Salami?

17        A.   No, ceramic --

18        Q.   Ceramic.  Okay.

19        A.   -- factory.

20        Q.   Where was that located?

21        A.   Oklahoma -- the three of them,

22   Oklahoma, Tennessee and Missouri.

1        Q.   Did you have all three of the

2    factories under contract?

3        A.   I did not have it under contract.

4    We talked to the states and see what

5    economic consideration they give, how much

6    incentive, as to what that would be.

7        Q.   Do you know who Christopher

8    Tarbell is?

9            MR. HERBERT:  Sorry.

10           MR. KAPLAN:  We have two minutes.

11   BY MR. KAPLAN:

12       Q.   Do you know who Christopher

13   Tarbell is?

14       A.   Christopher Tarbell is the IT

15   person, I believe.

16       Q.   Okay.  Do you know when he was

17   hired?

18           MR. HERBERT:  Objection, outside

19       the scope.  It's also privileged.

20           MR. KAPLAN:  When he was hired?

21   BY MR. KAPLAN:

22       Q.   Can you ballpark --

1          MR. HERBERT:  It's outside the

2     scope.

3  BY MR. KAPLAN:

4          Q.   Can you ballpark how much money

5  you made in 2015, just an estimate?

6          A.   I dare don't.

7          Q.   And you can't estimate 2016, but

8  you know it was substantially lower

9  starting then?

10          MR. HERBERT:  He didn't answer.

11  BY MR. KAPLAN:

12          Q.   Is that yes?

13          A.   Which one?

14          Q.   With Christopher Tarbell.

15          MR. HERBERT:  Wait, no.  That's

16     not the question.

17  BY MR. KAPLAN:

18          Q.   You can't estimate -- you cannot

19  estimate what you made in 2016, but you

20  know that it was substantially lower than

21  2015 --

22          A.   Correct.

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 493

1     Q.   -- as a result of your hacking?

2     A.   Correct.

3     Q.   Okay.  Now Exhibit 15, please

4  turn to it.

5         MR. KAPLAN:  As your colleague

6       fumbles through the document.

7         MR. HERBERT:  Is it in that

8       stack?  I don't know where it is.

9         MR. KAPLAN:  Can we go off for a

10      second to locate it.  Thank you.

11      THE VIDEOGRAPHER:  Off the record

12      at 7:46.

13       (Off the record.)

14      THE VIDEOGRAPHER:  Back on the

15      record at 7:47.

16  BY MR. KAPLAN:

17

18

19

20

21

22

Page 494



7          MR. HERBERT:  Objection,

8     misstates the testimony, argumentative.

9  BY MR. KAPLAN:

12          MR. HERBERT:  Objection,

13     argumentative.

14  BY MR. KAPLAN:

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 495

1

2

3           MR. KAPLAN:  I just want to make

4       sure that the deposition remains open

5       because there are documents that we

6       have asked about and that he claims to

7       have had which should have been

8       produced but have not.

9           THE VIDEOGRAPHER:  And we are off

10      the record at 7:48.

11          (Time noted:  7:48 p.m.)

12

13

14

15

16

17

18

19

20

21

22

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 495 of 578

1                C E R T I F I C A T E

2     STATE OF FLORIDA          )

3                          : ss.

4     COUNTY OF PALM BEACH    )

5              I, ANNETTE ARLEQUIN, a Notary

6          Public within and for the State of

7          Florida and New York do hereby certify:

8              That FARHAD AZIMA, whose deposition

9          is hereinbefore set forth, was duly

10         sworn by me, and that the transcript of

11         such depositions is a true record of

12         the testimony given by such witness.

13             I further certify that I am not

14         related to any of the parties to this

15         action by blood or marriage; and that I

16         am in no way interested in the outcome

17         of this matter.

18             IN WITNESS WHEREOF, I have hereunto

19         set my hand this 23rd day of MAY 2024.

20              *Annette Arlequin*

21         _____

22         ANNETTE ARLEQUIN, CCR #30XI00145000

Page 497

```
1        Farhad Azima, c/o

         MILLER CHEVALIER

2        900 16TH Street, NW

         Washington, D.C.  20006

3

         Case: Farhad Azima v. Nicholas Del Rosso et al.

4        Date of deposition: May 9, 2024

         Deponent: Farhad Azima

5

6        Please be advised that the transcript in the above

         referenced matter is now complete and ready for signature.

7        The deponent may come to this office to sign the transcript,

8        a copy may be purchased for the witness to review and sign,

9        or the deponent and/or counsel may waive the option of

10       signing. Please advise us of the option selected.

11       Please forward the errata sheet and the original signed

12       signature page to counsel noticing the deposition, noting the

13       applicable time period allowed for such by the governing

14       Rules of Procedure. If you have any questions, please do

15       not hesitate to call our office at (202)-232-0646.

16

17

18       Sincerely,

19       Digital Evidence Group

20       Copyright 2024 Digital Evidence Group

21       Copying is forbidden, including electronically, absent

22       express written consent.
```

Page 498

```
 1     Digital Evidence Group, L.L.C.
       1730 M Street, NW, Suite 812
 2     Washington, D.C. 20036
       (202) 232-0646
 3
 4     SIGNATURE PAGE
       Case: Farhad Azima v. Nicholas Del Rosso et al.
 5     Witness Name: Farhad Azima
       Deposition Date: May 21, 2024
 6
       I do hereby acknowledge that I have read
 7     and examined the foregoing pages
       of the transcript of my deposition and that:
 8
 9     (Check appropriate box):
       (  ) The same is a true, correct and
10     complete transcription of the answers given by
       me to the questions therein recorded.
11     (  ) Except for the changes noted in the
       attached Errata Sheet, the same is a true,
12     correct and complete transcription of the
13     answers given by me to the questions therein
14     recorded.
15
16     _____          _____
17      DATE                     WITNESS SIGNATURE
18
19
20
21     _____          _____
22      DATE                           NOTARY
```

1     Digital Evidence Group, LLC

2     1730 M Street, NW, Suite 812

3     Washington, D.C.  20036

4     (202)232-0646

5

6                        ERRATA SHEET

7

8     Case: Farhad Azima v. Nicholas Del Rosso et al.

9     Witness Name: Farhad Azima

10    Deposition Date: May 21, 2024

11    Page No.    Line No.      Change

12

13

14

15

16

17

18

19

20

21    _____        _____

22         Signature                              Date

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 1

**A**

**a.m** 2:2
**Abboud** 242:13
  339:21
**ABC** 268:19
**abide** 459:20
  461:15
**ability** 214:20
  263:2,22
  268:10 292:4
  292:22 293:2
**able** 146:14,15
  194:1 203:1
  212:13 221:6
  242:7 262:19
  326:3 349:8,8
  349:11 353:13
  418:22 441:8
  441:13,18,22
  442:15 443:8
  470:1 471:4,10
  471:13 479:20
  486:9 487:12
  489:17
**absent** 259:8
  497:21
**absolutely** 13:5
  246:18 341:13
  406:17 461:22
  484:4
**Abu** 318:21,21
**Abubaka** 287:13
**Abuhamdeh**
  51:17 52:14
  59:11,12,15
  104:5,13,15
  110:7 210:8
  211:20 256:19
  256:21 257:1,2
  314:2 323:22
  326:11,12
  350:12 357:1
  366:18
**Abuhamdeh's**
  350:20
**accept** 328:6
**acceptable**

438:16
**accepted** 391:10
**access** 32:4 76:2
  76:14 77:8,13
  77:17 78:8,14
  79:2,4 81:2,4
  82:20 84:13
  88:1 131:22
  133:20 135:2,9
  137:10 164:6
  164:18,22
  165:4,5 418:7
  423:10 424:13
  425:18 441:19
  441:22 442:15
  443:8 470:1
  471:3,13 472:9
  481:3
**accessed** 470:21
**accessible** 470:11
  470:13
**accompanied**
  400:15
**account** 289:16
  290:6,6 427:17
  486:18
**accountable**
  144:5,6,12
**accountants** 46:6
  486:6
**accounts** 289:11
  289:12,20
  290:7,8 444:15
  444:16,19
**accumulate**
  299:5
**accumulated**
  299:2 465:16
**accumulating**
  299:9
**accumulation**
  466:2
**accurate** 102:20
**accusations**
  390:1
**accused** 449:18
**ACIM** 259:1

344:3 345:12
**acknowledge**
  498:6
**acknowledged**
  336:7
**ACMI** 258:4,7
  344:12 345:3,6
  345:18
**acquire** 73:15
  229:1 277:4
  326:4 376:20
**acquired** 27:11
  27:14,16 28:19
  73:20 118:4,4,9
  131:11 137:15
  138:14 181:4
  182:17 184:4
  189:16 227:10
  227:13 236:7
  347:4 361:19
  374:9,17
  376:11,15
  377:20 379:7
  379:19 381:1
  381:21 382:7
  383:4,4 447:19
  447:22 448:1,4
**acquiring** 196:11
**acquisition**
  181:21 288:16
  325:9 454:14
**act** 174:1 262:14
  263:2 328:14
**acted** 320:3
  385:21 386:5
  386:19
**acting** 321:22
  388:8 410:7
  426:19 427:6
  427:18 428:20
  429:3,15
  442:14 443:1,4
  443:7 469:22
  471:13
**action** 6:21
  389:15 412:7
  414:5 496:15

**actions** 385:17
  386:2,7,22
  387:15
**actors** 471:19
**acts** 390:17 391:2
**actual** 127:19
  171:3 201:3
  325:13 422:22
**Adam** 207:13
**Adams** 107:11
  143:7 144:18
  163:5 192:5
  193:3 195:5
  210:8 255:9,12
  256:18 257:22
  261:6 267:16
  267:22 269:5,6
  270:16,20
  272:17 274:20
  301:21 309:2
  312:17 318:8
  343:17 344:5
  345:14 361:7
  437:20 438:2,7
  438:21 469:6
  469:15
**Adams's** 313:10
  345:18
**added** 300:11,12
**adding** 362:4
**addition** 80:3
  144:17 290:9
**additional** 258:3
**address** 232:3,6
  240:12 297:7,8
  390:21 411:2,3
  411:12 422:21
  489:5
**addressed** 215:22
  365:20
**addresses** 295:4
  295:5
**administer** 4:14
**Administrator**
  2:13
**admitted** 378:4
  449:1

**advantage**
  355:20 436:17
**adversary** 411:17
**advise** 18:9
  497:10
**advised** 301:10
  497:6
**Advisory** 389:20
  400:20
**aerospace** 146:4
  157:16
**AeroTech** 46:9
  46:11,19 47:1
  47:17,18 48:6
  49:7,21 50:5
  74:9 75:17
  76:13 101:22
  117:18 118:3,7
  121:14,21,22
  192:7 194:14
  194:16 203:21
  204:2,4,15
**Aerotech's**
  194:13
**affairs** 31:21
  346:11 458:21
**affect** 10:4
**affidavits** 403:8
**Afghan** 34:14,18
  215:2 305:19
  306:10,12
**Afghanistan** 35:9
  51:10 52:11
  58:17 64:10
  145:19 146:4
  146:19 208:15
  214:10 215:8
  215:11 237:8
  241:7,7,11
  265:18 281:4
  302:9,11
  304:22 306:13
  314:14,18
  327:4 362:5
**Africa** 251:1
**age** 56:22 220:20
  441:2

5/21/2024                  Farhad Azima v. Nicholas Del Rosso et al.                  Farhad Azima

Page 2

aged 225:7
agencies 458:17
  472:11
agency 60:17,21
  213:7 446:22
agents 442:20
Aging 227:1
ago 8:22 10:6
  12:22 13:1,15
  29:7,19 52:3
  56:13 66:13
  106:3,5,19
  108:18 115:18
  136:4,22
  165:15 216:10
  416:21
agree 43:4 44:10
  88:3 100:3
  113:7 125:22
  260:22 273:4
  458:14
agreed 4:3,8,12
  70:2
agreeing 239:11
agreement 30:3
  31:12 35:5 62:1
  64:13 65:19,20
  67:14,15 79:17
  105:19 132:20
  138:21,22
  139:2,14
  140:11 142:7
  162:8 171:16
  171:17 217:13
  228:17 231:11
  231:12 261:5
  315:8,17 319:1
  319:3 334:1
  368:3,12 388:1
  388:10 394:6
  394:22 395:7
  399:4,22 400:3
  400:11,16
  401:18 408:9
  410:2 429:19
  454:18 458:19
  478:7

agreements
  32:12 58:13
  59:14 60:12
  61:9 63:17,18
  103:20 104:4
  104:18 105:5
  106:20 108:3
  111:8 112:19
  114:5,5,18
  115:21,22
  116:15,16
  117:18 120:1
  143:22 144:1
  193:13 270:15
  302:22 303:6
  303:11 410:6
  426:18 427:6
  427:16,21
  428:19 429:2,6
  429:14
Ah 304:10 345:9
ahead 168:8
  207:20 372:22
  387:10
ahold 169:15
  202:7,12,14
  291:16
Ahuja 6:11
  384:19 389:5
  389:12,14,19
  390:15 393:2
  394:7 395:2
  399:5 400:4,5
  400:19 402:19
  404:18 429:7,9
Ahuja's 392:11
AID 234:17
  242:13,15,16
  243:19
ain't 96:11
air 216:6,16,20
  216:20 223:21
  251:6 456:19
  456:20 457:4
Airbus 220:22
  349:20
aircraft 48:1,17

49:5 132:7
  144:21 146:3
  146:10,13,16
  147:8,22
  148:10,12,13
  148:14 156:19
  180:16,17
  194:18,21
  220:3,18,20,22
  221:7,15 222:2
  222:3 223:17
  223:19 224:7,8
  225:8,10,20
  226:10,19,19
  227:1 236:6,11
  236:13,15,22
  242:17 243:6
  247:16,19
  248:3 249:20
  250:3,6,7
  251:13,15,20
  268:6 281:15
  311:6,13,22
  347:4,9,10
  349:6,18,19
  452:9,13
  456:14 457:6
  493:20,22
  494:3,18,21,21
aircrafts 222:19
Airlift 306:11,12
airline 28:21
  132:8 135:21
  136:1 144:4,5
  148:6 153:6
  154:4,13
  155:13 156:15
  158:12,13
  166:22 170:10
  172:5 215:18
  217:3,7,14
  218:15,21
  236:5,9,17
  245:13,15
  246:6,16 247:4
  247:17 248:2
  248:19,19

249:5,12,13,15
  249:17 250:9
  250:11,12
  251:13,14,18
  251:19 265:3
  273:13 281:11
  281:13,17
  310:16,20,21
  311:1,15,15
  312:5,10 445:3
  445:12,12,22
  477:15,18,19
  478:18
airlines 27:5 30:5
  30:9 32:11
  47:15 90:3
  135:17,19
  136:10,13
  137:13 138:8,9
  139:4,18
  140:12 141:1,8
  141:9 142:9,14
  155:6 156:7,9
  156:10,12,19
  157:17 160:11
  160:14,19
  162:6,19 164:5
  196:11,12
  250:14 251:2
  251:10 258:12
  311:5,8,9
  338:17
airlines's 172:6
airport 139:20
  249:11
al 33:1 35:4
  111:12,15,16
  116:13 117:7,9
  137:16 138:16
  148:19 149:2
  258:1 260:20
  317:22 321:8
  324:4 369:10
  455:16,21
  497:3 498:4
  499:8
Alami 258:1

260:20 455:16
  455:21
Alan 103:4 219:8
  479:12
albums 173:4
  290:14 291:3
ALEX 3:19
Alex.bradley@...
  3:19
Alexander 236:2
ALG 54:17,21
  55:5,8,9,12,18
  57:7 74:9 75:17
  76:13 101:22
  106:21 107:3
  108:2 110:17
  111:2,15,15
  112:2,12,20
  113:13 114:6
  114:16 115:22
  116:12,17
  117:9,11
  122:15 215:19
  220:6,10 222:1
  223:6 228:15
  228:16 229:15
  230:1 231:9,10
  232:3 245:21
  253:15 254:2,9
  309:1 316:11
  317:9,16
  334:16 336:11
  336:17 338:4,5
  418:16,18,18
  419:5,16
  420:10 421:13
ALG's 107:7
  242:1 334:19
  336:13,16
algkc.com 232:6
all-Russian
  236:20
allegation 384:9
allegations 127:3
  391:2,7 395:7
allege 110:8
  120:22 121:16

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 3

122:13 384:2
483:20
**alleged** 23:1,5
72:7 77:22 82:4
84:3,4 110:4
127:4 232:21
292:17 374:7
480:3 481:19
484:10,20
**allegedly** 22:4
80:20 471:16
**alleging** 82:18
**allow** 134:1 351:4
**allowed** 88:11
152:6 219:19
250:21 497:13
**alphabetical**
300:2,4
**ambassador**
265:11,17
266:3,5,16
**ambiguous** 20:17
31:3 42:10
48:19 59:8 65:9
76:18 87:8,17
88:15 89:3
91:15 95:3
107:19 110:12
121:19 155:18
156:5 161:16
163:20 168:20
170:5 175:14
179:17 181:2
183:19 184:11
195:11,18
198:19 259:20
266:15 290:21
321:6 354:2
358:6 374:16
385:20 386:4
386:12 417:7
438:10 440:8
440:12
**America** 16:8
193:14 215:1,2
**American** 193:5
193:7,10,16

247:17 275:15
275:19,20
277:18 311:9
333:2
**amount** 196:9
222:3 305:13
**amounts** 158:19
**analysis** 224:15
**analyzed** 453:10
**and/or** 326:4
497:9
**angry** 129:2,3
**ANHAM** 60:12
60:15,19 61:5
62:1,3,12 65:11
210:15,17
357:13,20,21
358:8,11,13
367:8,11,15
368:4,12,20
**Annette** 1:18 2:9
7:16 496:5,22
**annotate** 295:10
**annotations**
295:1 297:5
**answer** 5:6 9:5
9:14 10:1 15:8
15:12 16:1 20:5
22:16,18,20
24:8,15,16
26:10 29:21
33:16 38:14,15
38:16 43:12
46:14 62:7 66:5
67:20 70:3,10
70:13,15,16
74:15 78:19
83:3,13,17
85:15,20 97:17
104:12,14
122:5,14 125:3
128:16 131:15
142:18 163:21
165:13 174:3
178:16 181:9
181:14 185:7
254:22 261:17

264:17 303:4
322:8 330:4
331:10 342:12
356:8,9 358:8
360:4 363:19
372:2 376:22
379:11 381:5,6
381:8,9 382:15
387:9,11 388:6
388:15 396:8
402:15 414:11
414:15 415:8
415:13,14,16
419:1,2 427:3,4
428:9 441:21
451:18 464:11
464:18 466:1
468:13 470:3
471:21 473:14
475:4 478:11
478:21 480:17
480:18,21
481:7 484:1,12
484:13,14
486:8 489:21
492:10
**answered** 23:12
72:5 104:6
205:14 390:12
486:16
**answering** 9:11
47:8,9 97:5
218:17 325:20
**answers** 18:12
23:14 69:15,16
96:20 206:6
215:14 255:4
265:1 275:6
313:15 316:7
323:7 339:7
383:11 464:2
498:10,13
**antivirus** 421:14
422:6
**Anya** 231:8
**anybody** 56:5,7
108:21 110:6

133:15 174:8
184:15 246:20
251:8 300:9
335:12 349:21
351:15 410:7
426:16 428:20
441:12,17
**anymore** 116:18
425:20
**anyway** 124:4
300:6
**apologize** 153:17
218:19 325:22
**apparent** 232:20
390:16
**apparently**
276:22
**appears** 159:8
189:9 192:6
245:11 323:13
334:17 372:17
**Appendix** 306:20
**appetite** 284:11
**applicable** 452:2
497:13
**application**
170:11 205:4
494:20,22
**applications**
487:19
**applied** 223:5
453:12 465:17
466:3
**apply** 222:9,11
223:2 224:9
304:19 347:13
**appoint** 132:10
133:15
**appointed** 133:11
335:15
**appointment**
133:16
**appreciate**
157:20 330:8
352:20 434:9
**approach** 48:4
**approaching**

136:4
**appropriate**
498:9
**approved** 288:5
**approximately**
204:12
**April** 450:14
**Arab** 111:17
**area** 191:21
208:18 220:19
223:16 346:13
**areas** 209:6
**arena** 202:11
**arguing** 115:2,6
115:10 128:20
**argument** 345:1
**argumentative**
38:11,13
291:10 321:16
467:13 476:22
494:8,13
**Arlequin** 1:18
2:9 7:17 496:5
496:22
**armed** 360:1
**Army** 327:5
**arrangement**
261:6
**arrangements**
63:21
**arrive** 155:14
**articles** 472:17
**artist** 341:15
**Arumbakkam**
346:1
**aside** 74:4 158:15
232:19 365:18
376:8 393:1
467:18
**asked** 13:19
15:13 19:20
22:9 23:1 39:2
39:10,12,16
57:3 72:8 76:9
76:11 90:6,8
95:9,18 104:6,8
108:16 111:20

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 502 of 578

5/21/2024                Farhad Azima v. Nicholas Del Rosso et al.               Farhad Azima

Page 4

134:4 136:7
165:6 240:10
240:21 259:7
309:9 320:10
320:18 322:15
330:2 338:13
351:11 360:8
390:11 396:16
409:13,14
425:14 430:13
446:2,6 447:18
452:8 453:9
459:4 460:19
460:20 465:13
466:11,20
467:2,22
469:19,21
473:12 478:14
478:15 486:15
495:6
**asking** 16:18
19:9,10 22:11
66:2 81:10
92:16,18 96:16
97:19 100:11
106:4 111:22
119:6 120:18
134:17 141:3
151:21 181:7
181:20 183:2
185:4 188:15
231:2 249:1
262:5 276:19
297:17 334:6
346:13 352:5
371:13,14
380:9,16,19
402:16,17
404:2 405:18
417:19 465:21
474:4,6,8 475:3
482:7,22
**asks** 104:21
**aspect** 288:21
**asset** 40:21 41:3
41:16 42:1,2
71:16

**assets** 40:20 44:9
147:20 181:21
**assigned** 346:7
**assist** 228:11
**assistance** 403:2
**assistant** 199:6
319:1 326:14
422:3
**assisting** 403:5
**associate** 80:6
**associated** 267:5
272:5
**assume** 8:20 33:7
53:3 80:12
163:1 166:11
167:16 187:16
257:8 271:2
279:6 294:17
318:5 321:19
332:5 405:1
487:18
**assumed** 60:22
238:6 426:1
**assumes** 432:16
**assumption**
33:13 165:12
166:17
**assumptions**
142:2 160:18
170:22 267:15
**assured** 286:8
**ate** 460:17
**Atlas** 153:6,7
**attached** 123:10
194:2 207:22
208:12 211:7
212:17 232:15
239:19 246:3
254:1 257:21
284:20 286:16
301:22 370:12
371:22 410:2
455:15 498:11
**attaches** 212:1
339:12
**attaching** 206:7
215:17 220:3

229:21 234:16
244:18,19
255:5 256:12
265:2 267:4
272:4 282:4,11
282:20 301:16
313:17 323:9
339:8 343:13
346:19 350:4
366:9
**attachment**
224:6 225:17
268:13 275:18
276:20 284:20
303:17 310:1
344:8 370:1
373:18,22
459:10
**attachments**
207:4 254:7
325:6,14
366:22 370:3
**attacks** 390:22
**attempted** 388:9
**attempting** 223:6
237:17 330:22
**attend** 318:17
**attending** 282:10
**attention** 296:6
**Attorney** 380:13
**attorney-client**
381:7
**attorneys** 3:3,12
4:3 483:10
**audited** 31:18
**audits** 178:8
**August** 131:8
144:9 245:1
408:10 409:20
**authored** 89:15
89:20
**authority** 27:20
28:8 35:8 216:8
216:9 321:9
**authorization**
397:22 398:1,6
398:16

**authorize** 312:18
386:10 387:18
397:17 408:19
409:22 436:19
436:22 437:4
**authorized** 4:14
385:18 386:1
387:3
**automation**
362:3
**availability** 28:3
225:16 349:5
**available** 18:3
88:21 89:1
164:13 221:5
223:21,22
248:3 361:11
362:20 371:17
443:17 470:18
471:1,7 472:3
479:5,8,18
480:15 481:1,6
**Avenue** 2:7 7:14
**average** 225:10
**aviation** 47:3,7
54:21 157:16
157:17 236:21
262:16 311:4,5
312:6 432:2,12
445:14,15,22
451:11 454:20
477:20 478:1
**award** 157:14
**aware** 10:18,22
21:12,13,14
22:13,16 37:11
37:16 58:21
144:3 162:4
166:4 172:11
172:16 194:1
208:22 214:9
237:22 281:19
385:15 386:2,8
386:22 387:15
387:19,20,21
388:20 390:6
390:10,13

394:5 399:22
400:3 410:5,9
412:13 413:19
414:1 417:3
423:21 426:10
426:17,18
427:5,11,12,15
427:16,20,21
428:5,10,13,18
429:2,5,6,14,19
446:7,14,18
448:22 449:11
449:17 465:3
471:6 475:5
482:2,10,14,21
**Azerbaijan** 53:1
53:8,9 67:3
69:12,13
208:18 251:20
359:14
**Azima** 1:3,13 2:5
5:2 7:3,4 8:20
12:20 14:2
17:18 25:13
30:4 51:1 86:11
98:10 115:4,13
119:9 129:18
131:7 175:10
181:16 193:2
198:8,9 200:21
201:15,17
205:10 206:2
207:3 211:5
225:17 227:8
232:13 234:12
240:15 252:22
253:7,13 256:4
270:14 286:3
289:4 301:2
303:9 310:1
314:8 325:15
325:17,22
328:13 329:3
331:5 332:2
349:12 352:3
358:9 369:22
370:6 373:9

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 5

384:4 390:2,16
391:1,10 397:2
409:13 411:10
412:13 413:19
415:17 424:6
430:12 459:12
462:20 474:17
474:19 484:8
493:17 496:8
497:1,3,4 498:4
498:5 499:8,9
**Azima's** 5:14
12:12 208:9
241:22 258:9
261:9 262:9
263:11 306:16
315:15 327:7
328:2,9 332:16
349:3 351:14
351:18 362:9
363:6 365:8
366:2 368:18
374:10 390:21
391:7 395:9
397:3
**AZRA** 46:16,17
118:4,5,8
119:10 121:21

**B**

**B** 5:11 6:1 408:15
**back** 17:14,15
25:2 29:16
36:13 46:4
47:22 69:14,21
71:22 72:3
84:15 86:8 88:9
98:7,11 103:3
127:18 130:13
131:4 138:20
175:3 192:16
196:18 215:21
217:7 244:8
256:1 269:11
271:10 285:9
289:15 293:8
309:3 316:1

344:18,18
347:18 373:6
394:17 401:15
408:15 417:15
420:3 425:22
430:6 438:12
454:4 462:16
493:14
**background**
154:13 157:2
216:16 252:13
**backwards**
408:16
**bad** 471:18
**badgering** 129:7
476:3
**bag** 305:20
**Bahamas** 201:7
**Bahrain** 103:8
146:6
**Baird** 103:4,21
219:8 228:8,10
228:17 479:12
**baked** 391:17
**Baku** 69:12
**ballpark** 491:22
492:4
**band** 125:9,12
**bandwidth** 190:4
**bank** 150:1 193:5
193:7,10,14,16
275:15,20
277:15,18
289:10,11
391:6 444:6,15
488:5,8,15
**banker** 152:21
**bankers** 149:13
149:17 150:8
166:1,5
**banking** 145:10
245:22 286:7
**banks** 289:9,11
289:21 290:1,2
290:4,7 291:18
311:19 444:15
472:13 485:8

485:10 486:18
487:16
**barbecue** 37:18
37:19,22 45:11
45:12 46:1
121:9,11 189:4
189:7,17
190:22 191:10
197:13
**barbecues**
189:22
**bark** 286:2
**base** 21:18 91:17
91:18,20
156:14 201:5
**based** 17:22
18:10 35:4,5
42:7 142:1
160:16 220:21
221:1,5 224:2,5
224:7,7 235:7
335:21,21
348:7,7 369:14
369:18,20
371:16 375:18
376:2 390:15
437:14 451:10
455:8 456:11
456:13,15
**baseless** 406:16
**basic** 183:22
**basically** 148:10
149:7 173:9
213:22 242:10
252:5 270:16
442:18 444:7
**basis** 89:19 90:22
92:6,10,20
105:14 153:21
167:16 168:3,9
195:12 273:9
273:17 278:9
278:13 305:2
326:17 369:2
393:16 479:20
**Bates** 15:4,21
192:22 206:21

234:10 256:8
259:22 294:1,3
412:11,16
413:10,12
448:15
**Bates-stamped**
5:22 6:4,7,18
6:22 293:13
296:11 372:6
410:17 412:8
**BEACH** 496:4
**bear** 93:21
**beginning** 28:14
50:8,12 56:8
179:21 342:5
487:6
**begins** 7:1
**behalf** 7:18 8:1,4
8:6 42:7 70:18
89:21 129:3
132:17 149:14
149:15 238:5
335:7 339:20
374:17 385:17
386:9 387:16
388:8 398:2,7
399:10 403:18
404:8 405:1,15
410:8 426:20
427:7,18
428:20 429:4,8
429:15 441:13
441:18 442:15
443:2,5,7 470:1
471:13
**Behre** 3:6 6:17
6:22 8:1,1
18:14 19:7 20:1
20:5,16 24:12
25:3 26:9 30:10
31:2 32:17
38:10,19 39:8
39:13,16,20
40:6 41:4,21
42:9 43:6,8,19
44:19 48:18
59:7 61:10 65:8

69:17 70:5,12
72:17 76:16
78:16 81:11
83:2 85:14 87:7
87:16 88:14
89:2 91:13
92:15 93:2,7,10
94:3 95:2,8,13
95:18 96:7,10
96:15,21 97:21
98:20 99:13
100:11,21
101:3,8 103:17
103:22 104:6
104:20 107:18
108:4 109:11
110:10 112:22
113:4,9 114:1
114:11 115:1,5
115:10 116:19
117:13,22
118:21 119:2
120:6 121:18
122:4 123:13
123:16 124:8
124:11 125:9
125:13 128:14
129:6,15,19
130:4,8,14,18
130:20 131:14
132:2 134:6,12
134:15 135:4
135:12 136:14
136:19 137:5
137:11 140:14
147:4 150:13
151:18 154:11
155:17 156:4
159:11,21
160:1 161:15
161:21 162:9
162:14 163:19
167:22 168:19
170:4 175:13
176:1,12
178:17 179:16
179:20 181:1,8

Case 1:20-cv-00954-WO-JLW    Document 379-7    Filed 07/15/24    Page 504 of 578

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 6

181:12,17
182:9 183:18
184:10 185:14
185:18 192:10
192:15 195:10
195:16,18
198:18 199:4
204:10 206:12
206:16,22
207:8 214:6
218:17 219:14
219:18 226:2
226:15 230:6
230:12,16,20
238:20 239:3
239:12 240:9
240:20 241:19
242:1 245:3
258:19 259:11
259:19 260:5,8
260:14 261:11
261:19,22
262:11 263:14
264:4,7 266:14
274:6 278:11
278:18 279:12
279:21 281:7
282:16 283:2,5
283:8,12
286:13 289:22
290:20 291:8
293:22 294:5
294:19 295:14
295:21 296:2
296:14,18,20
297:11 299:6
301:6 305:5
307:13 309:14
312:7 316:22
317:4 320:15
321:5,15 322:1
322:12 325:19
327:18 328:4
328:11,17,19
328:22 329:2
329:22 330:3,6
330:14,22

331:2,16 332:7
333:15 340:5
341:22 342:10
342:16 350:22
351:21 353:9
353:16 354:1
356:1 358:5
365:9 368:13
370:4 374:15
374:21 377:10
378:19 379:20
380:7,10,13
381:2,6 382:8
382:15 383:16
384:11 385:8
385:19 386:3
386:11 387:4,9
387:21 388:2,8
388:11,15
390:18 391:4,8
391:13 392:3,7
394:6 395:3,16
395:22 396:4,9
396:14 397:17
397:20 398:3,8
398:10,17
399:4,12,16
400:14,21
401:8,10,14,18
403:19,22
404:9,15,16
405:3,6,9,16,19
406:1,12 408:5
408:22 410:12
410:16 411:5
411:15,21
412:7,10,15,18
413:3,11,16
414:8 415:4,13
417:6,11
420:19,21
422:14 426:13
426:22 427:9
428:2 429:11
429:17 433:11
450:5 468:10
485:17

**Behre's** 256:6
**belief** 18:1 354:7
  449:6
**beliefs** 142:2
  160:18
**believe** 19:13
  55:4,20 63:19
  105:21 115:17
  115:20 116:5
  118:7 122:2
  126:16 136:2
  148:5 163:17
  175:10,20
  192:12 203:19
  266:11 267:14
  269:17 270:3
  272:22 278:21
  322:9 324:3
  336:11 339:19
  340:2 343:7
  349:17 351:8
  353:19 354:10
  363:21 378:17
  379:17 380:21
  381:19 382:5
  383:2 393:11
  393:12,14,17
  404:5,14
  406:14 424:8
  435:5,16
  436:10 459:19
  460:4 461:14
  466:15,17
  470:3 479:2
  491:15
**believed** 266:13
  446:12 468:1
**believing** 425:1
**belong** 158:3
  169:5
**belonged** 76:21
  109:5
**belonging** 78:1
**belongs** 125:19
  152:5 169:4
  268:15 336:19
  347:15

**beneficial** 299:17
**benefit** 247:2
**best** 22:5,19
  36:15 374:18
  385:21 386:5
  386:19 398:14
**betray** 218:9,13
  219:2
**better** 9:16 28:10
  221:11 272:19
**beyond** 119:7
  279:21
**BGL** 74:22 75:4
  177:4 188:17
  188:19,20
  199:19 200:20
**bid** 200:13
  234:22 235:2
  240:1,18 241:3
  242:15
**big** 14:18 41:12
  41:17 290:7
  311:18 352:7,8
**bigger** 145:5
**bilateral** 268:11
**billing** 350:12,14
**billion** 251:20
**billions** 251:12
  251:12
**Bimini** 201:6
**Bisht** 384:22
  397:9 400:6
  402:19 429:10
  429:16
**bit** 14:18 28:10
  135:15 159:20
  179:21 197:15
  304:10
**BitTorrent** 384:6
**BitTorrents**
  470:9
**block** 456:2,4
**block-hour** 456:2
**blocked** 146:5
**blog** 480:4 481:9
  481:20
**blogs** 384:7

**blood** 496:15
**board** 132:11,14
  133:3 215:3
**Bob** 49:18,19
  50:11 192:5
  195:4
**Boeing** 220:22
  251:10,11,22
  349:18,18,19
**Boini** 111:3
  200:8
**bold** 23:1
**Bombardier**
  221:1 236:6
  347:1,5,8,11,20
  348:4,10,16,21
  349:11,13,20
  460:19 461:14
  462:4,8
**Bombardier's**
  348:2
**born** 440:14,17
**borrow** 276:14
  311:14
**bottled** 52:22
  359:14
**Bottling** 52:19
  63:2 102:1
  122:11 275:9
  278:4 279:5,11
  356:20 360:15
**bottom** 22:22
  74:13,17 140:2
  271:13 283:22
  284:4 337:15
  360:17 458:7
**bought** 31:8
  48:14 137:15
  201:2,3 236:15
  273:18,22
  274:18 288:18
  309:13 362:2,2
  447:21
**box** 498:9
**boy** 95:16
**boys** 311:18
**BRADLEY** 3:19

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 505 of 578

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 7

**brain** 81:5,7
84:21 154:5
**bread** 226:21
227:1
**break** 255:19
315:19
**bribes** 281:19
**bring** 249:19
**broker** 34:2
**brought** 247:21
**Brownies** 10:17
10:19 12:5
35:16,17 36:4
37:5,13 74:8,11
75:13,16 76:12
77:16,19 78:5,7
78:14,18 79:8
79:10,10
101:22 120:2
120:12 177:7
177:11 185:1,5
186:9 196:17
200:4 205:18
280:2,12,13
292:15
**Buchanan**
339:14,16
341:5 478:8
**buckets** 299:16
**budget** 177:4
178:5 188:4
196:18 214:19
**build** 48:21
224:21 236:4
247:17,18
248:2,18 249:5
249:16 250:11
250:13 251:10
304:20 454:14
454:20
**building** 109:12
196:11 236:12
248:19 250:9
251:18 490:7
**built** 49:1 69:13
156:17 214:22
227:9 236:9,14

246:20 251:1
251:14,21
337:20
**bullied** 330:21
**bully** 330:14,18
**bunch** 149:20
212:1
**Burlington**
386:16 387:2
387:17
**Burlingtons**
408:11,20
409:18,19
413:22
**burning** 86:3
**business** 33:14
34:1,19 45:10
45:14 49:14
51:7 52:10,11
57:13,17 60:9
60:22 61:1,4,6
61:7,16 62:2
75:7 80:6 88:19
104:10,15
105:11 121:2
132:9 145:12
145:19 146:1
146:22 147:3
147:11 151:11
153:12 154:4
154:10 156:2,6
157:19 158:7,9
170:12 171:7
173:5,8,12,15
173:19 174:5,9
176:5,8,11
179:13 180:6
180:13 182:21
182:22 183:1
183:20 186:13
187:14 191:4
193:15 196:19
197:5,6,7,20
202:18,20
203:5,15 204:4
204:14 205:6
205:16 211:11

214:1,2,3,16,18
215:8 218:1,15
218:21 219:4
228:11 229:11
231:18 233:11
244:20 245:11
245:13,16
246:11 247:3
253:3,21 255:6
267:12 268:18
268:20 269:1
280:8,22 289:1
289:3,9 291:12
291:12,13,19
292:9,14,15,16
298:18 299:3
307:15 308:20
308:21,21
309:4,5,6,12,22
310:2,17,20
311:19,20
312:1,3,3,3,11
313:5,8 325:8
334:14,19
335:5 343:17
352:9 356:9
357:19 358:1
362:4,13,15
363:2 364:9
367:15 369:5
371:18 392:20
444:5 445:4,14
445:16,22
453:11,13
458:21 466:3
468:17 475:14
475:14,16,17
477:13,15,18
477:19,20
478:1 485:4,9
485:13 486:20
487:13,17
488:1
**business's** 354:11
**businesses** 57:16
57:19 146:20
176:15 184:6

215:7 292:6,19
299:18 312:6
312:20 439:7
465:18 466:4
**butter** 226:21
227:2
**buy** 171:16,17
194:19 273:15
286:1 309:16
309:19 311:13
349:17,19
**buying** 166:21
172:3
**byproduct**
175:17

_____

### C

**C** 3:1 141:4 496:1
496:1
**c/o** 497:1
**calculate** 223:18
259:2
**calendar** 189:10
**call** 173:10 196:2
230:17 352:13
352:17 418:4
432:5 442:4,4,6
497:15
**called** 8:14 35:22
40:11,13 62:18
64:6 65:4 67:19
252:17 446:7
**calls** 19:7 43:6,10
44:20 76:16
91:13 132:3
134:6,12 147:4
157:7 168:20
170:5 175:14
176:1 204:11
240:20 258:19
259:11 260:5,8
260:15 261:11
264:7 278:12
279:12 307:13
328:4 351:21
353:9,16 354:2
356:1 365:9

377:11 378:19
379:21 388:3
391:4 398:8
411:7 427:1
**camera** 7:17
**can't** 99:2 111:4
143:18 152:22
203:10,20
204:7 213:12
228:7 253:17
295:16 296:16
297:15 333:20
338:12 364:14
365:4 419:11
422:1 474:18
478:3 479:14
492:7,18
**cancel** 205:20
**cancellation**
475:11,18
**cancelled** 203:18
444:3 473:13
473:21 474:2
474:10,17,20
474:22 475:7
477:1,7
**Canning** 62:18
63:14
**Cantor** 152:22
166:2 307:22
**Cantor's** 308:16
**capabilities**
263:5 280:7
362:19
**capability** 172:7
227:20 248:16
262:12 264:10
268:2 281:9
327:22
**capable** 224:19
**capital** 456:19,19
456:20 457:3
485:13
**captain** 48:3
**capture** 252:4
**care** 130:18
304:12 322:8

Case 1:20-cv-00954-WO-JLW    Document 379-7    Filed 07/15/24    Page 506 of 578

5/21/2024　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　Farhad Azima

Page 8

375:6
**cared** 319:17
**career** 167:21
168:7 195:15
**carefully** 122:7
399:19
**cargo** 49:5 146:9
172:10 245:12
268:8 311:8
**Caribbean** 217:3
217:14
**Carmichael**
10:21
**Carolina** 1:2
3:14 7:7
**carrier** 217:5
**case** 1:4 7:7
16:19 18:10
60:15 71:3,6,10
72:1 84:18
127:2 131:21
141:12 160:7
198:6 262:1
280:1 288:18
319:16 389:11
392:16 397:15
427:2,10
429:12 448:12
449:18 464:2
497:3 498:4
499:8
**case-to-case**
397:21
**cases** 301:7
**cash** 345:17
**casters** 311:19
**categorize**
321:11
**category** 281:15
**Caucas** 51:3,20
58:16 62:21
63:1,20 74:9
75:17 76:13
101:22 104:9
104:19 105:6
106:11,15
108:22 109:20

110:7 112:21
113:13 114:7
206:10 210:2
211:1 212:20
235:13,14
301:8,10,18
303:5,8 305:13
306:5 313:19
315:9,12,17,18
323:11 326:8,9
326:10 332:9
350:6 364:4
366:11 368:12
370:13,14,16
371:1,5,15,21
**Caucus's** 351:9
**caused** 172:18
197:1,15
202:21 290:17
391:1,5 417:18
472:20
**CCR** 496:22
**CCR/CSR** 1:18
**cease** 34:11
103:13 310:19
314:22 342:20
487:5
**ceased** 49:10,22
52:1,8 53:13,19
292:20 310:21
314:15,17
365:15
**center** 337:19
**centers** 156:18
**century** 56:15,17
56:22
**CEO** 216:6
348:17,20
**ceramic** 490:15
490:17,18
**certain** 29:10
55:21 61:15
64:1 80:11 85:5
101:18 115:22
299:16 320:4
379:15 466:13
**certainly** 177:15

178:2 434:4,8
481:4
**certificate** 147:13
**certified** 2:10,11
236:12
**certify** 496:7,13
**cetera** 200:11
248:4 268:11
290:15 298:21
368:22
**CFO** 107:14
269:7
**chaired** 215:4
**chairman** 156:8
193:17 348:16
348:20 457:2
**chance** 361:4
373:10 434:2
**change** 137:17
138:4 216:18
225:7 263:3
350:19 364:17
364:22 421:1,5
421:11 423:8
423:17 424:20
425:8 499:11
**changed** 225:5
227:14 374:3
421:9 423:16
425:6
**changes** 329:9
498:11
**changing** 422:17
424:12
**charge** 304:14
460:11 488:15
**charged** 306:4
**charging** 305:14
**chart** 20:10 84:6
123:10
**cheat** 376:4
**check** 192:16
498:9
**checked** 171:2
**Chevalier** 3:2
6:21 385:16
387:2,18 400:1

400:4,12,18
403:3 412:6
413:22 414:3
497:1
**chicken** 391:18
**chief** 156:9
339:17 457:2
**Chiranshu** 6:11
389:5,12 397:9
400:19 402:19
429:7
**choose** 355:10,15
**Chris** 300:17,21
302:1,5,6,22
303:7 306:22
323:15,17,18
323:19 481:13
**Christopher**
491:7,12,14
492:14
**Cielo** 157:8,11
**circles** 180:18
245:5
**circulated** 193:4
**citizen** 147:9
247:12,13
281:11,14,18
**citizenship**
338:15
**City** 489:4,13
**civil** 298:20
454:20
**civilian** 184:3
**claim** 196:8
341:8 415:2
**claimed** 482:8
**claiming** 483:6
**claims** 12:2 395:2
495:6
**clarification** 28:4
40:12 60:18
110:5 157:10
168:1 173:1
187:18 218:11
227:12 238:15
242:19 253:12
268:5 304:17

342:1 369:16
376:7 456:22
**clarified** 272:22
**clarify** 18:17
28:11 239:13
263:19 388:18
**Clarity** 356:4,6,7
**classified** 346:13
**clause** 203:19
395:20
**Clay** 6:21 412:6
414:5,6
**clear** 14:18 21:21
28:16 116:14
129:1 207:8
227:3 239:15
239:17 260:16
266:5 380:12
380:12
**clearly** 124:10
125:6 191:2
194:4 232:17
**client** 21:10 22:4
22:7 80:19
82:19 84:3
120:15,22
121:16 122:2
127:5,7,11
172:15 243:21
243:22 290:10
292:2 320:21
357:6,9 361:12
378:1 412:18
415:5,6 483:20
**client's** 458:20
**clients** 19:22
20:15,19,20
21:4,17,19
126:7,9,17
220:4 222:20
311:11 377:20
415:1 417:18
463:17 469:11
470:15 484:10
**clock** 296:17
**close** 31:19
348:17,21

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 9

444:15 486:10
**closed** 289:10,11
  289:16,20
  290:5,6,8
  444:19 486:18
**club** 218:22
  219:4
**clue** 198:14
  255:11 406:17
**coconspirators**
  436:16,18
**coincided** 34:13
**cold** 340:10
  341:2,3 342:3
**colleague** 493:5
**collectively** 26:22
  27:3 378:2
**column** 306:2
**combined** 209:3
**come** 29:16
  120:13,20
  121:9,14
  122:11 127:14
  145:18 217:7
  237:14 294:10
  296:22 304:19
  325:14 381:12
  405:10 413:17
  456:6 497:7
**comes** 91:17
  112:9 157:1
  171:10 233:9
  262:16 347:7
  347:10,20
**comfortable**
  352:16
**coming** 228:19
  228:21 229:4
  424:6
**comment** 114:20
  121:6 122:9
  162:17 298:16
  395:14
**comments** 367:7
**commercial**
  36:10 167:1
  488:15

**commission**
  345:10
**committed**
  390:17 488:6
**committee** 215:4
**communications**
  379:1 399:19
**companies** 11:11
  24:22 27:10,17
  39:6,7,17 40:8
  40:16 41:20
  46:3 68:17 74:7
  75:3,7,18 76:4
  77:7 82:11,14
  84:9 86:15
  89:10 90:21
  92:8,14,22
  93:18 94:2,10
  100:1,6,10,20
  101:19 102:3
  114:17 120:10
  165:17 177:7
  178:9 206:10
  209:18 210:4
  215:19 220:6
  230:1 234:18
  244:21 255:7
  256:14 258:14
  263:22 265:4
  267:6 269:11
  269:19 271:2,6
  271:8,9 272:6,9
  272:10,11
  275:9 282:6
  283:1 288:10
  301:2,18
  313:19 316:11
  321:10 323:11
  324:15 334:15
  336:20 339:10
  343:15 346:20
  350:6 356:19
  358:11 359:11
  360:15 366:11
  417:9,11
  424:22 435:9
  438:3 469:7,17

  475:7 478:18
**company** 11:1,9
  11:12,15,19,20
  11:22 12:4,8
  24:18 26:17
  27:4 28:18,21
  29:1,4 31:10,17
  31:21 32:8,14
  33:14 35:19,22
  36:5 37:22
  40:20,21,22
  41:2,3,8 42:8
  42:13,21,22
  43:3,5,15,18
  44:2,4,9,12,16
  45:2,7,16 46:16
  46:17,18,22
  47:17 48:14
  52:19 54:2,15
  54:21,22 55:3
  56:2,5,6,11
  58:2,5,9 62:3,4
  62:10,15,17,22
  63:7,10,12,18
  64:6,13,15,21
  65:2,4,5,21
  66:7,15,18 67:3
  67:16,19 69:7
  71:2,11 72:11
  73:14,15,22
  74:11 76:7
  77:19 78:21
  79:5 88:6 89:12
  89:14,15,21
  91:12,20 94:16
  100:5 103:12
  107:4 109:4,6
  112:9 114:16
  118:7,8 134:3
  134:11,20
  135:10 136:12
  137:1,8,10,14
  137:16,18
  138:2,4,10,15
  139:5,9,10
  140:3,4,6 144:2
  144:7 145:1,3,5

  145:9,11
  148:22 149:2
  149:15 150:12
  152:19,20
  153:2 156:18
  161:3 162:1,2
  164:14 169:4
  169:11 171:14
  177:9,15 181:6
  181:22 184:21
  186:6 187:5
  188:5 189:18
  189:19 191:3
  193:10,16,19
  196:12 197:17
  198:5 199:19
  200:17 201:4
  205:8 228:22
  235:7,17,18
  242:6 249:8
  252:16 253:2
  255:17 258:10
  264:10 272:13
  273:2 275:10
  275:16,19,20
  276:7,9,9,11
  277:2,5,18
  278:4,13,14
  279:6,11
  282:13 288:19
  288:21 302:12
  302:13 309:13
  309:17 310:3
  311:13,22
  312:10,22,22
  313:10 315:9
  336:4,6,10
  337:13,21
  338:1,3,8,20
  339:1 348:13
  348:17 356:20
  360:7,15
  361:19 362:2
  363:9 364:3,10
  364:12 369:14
  369:19 407:21
  416:21 417:2

  419:2,4 424:15
  424:18 446:7
  449:7,12,14
  456:21 457:4
**company's** 32:4
  42:18 242:5
  346:11 418:14
  418:15
**compare** 202:9
**compared** 372:21
  471:2
**compartmenta...**
  88:20 149:4
**compensate**
  405:2
**compete** 105:22
  147:2
**competible** 312:2
**competing**
  291:17
**competition**
  217:15
**competitor**
  169:15 170:6
  202:7,11,14
  352:2 355:18
**competitors**
  169:18 170:2
  250:16,20
  251:5 363:6,14
  365:8 366:2
  457:9
**compilation**
  212:8,22
**compile** 252:3
  294:10 453:1
**compiled** 210:21
  212:9,11
  220:13 223:10
  325:16 326:2,6
  370:11,15
  371:16 452:12
  452:14 458:1
  479:19
**compiling** 370:1
  370:7
**complaint** 13:17

Case 1:20-cv-00954-WO-JLW     Document 379-7     Filed 07/15/24     Page 508 of 578

5/21/2024                Farhad Azima v. Nicholas Del Rosso et al.                Farhad Azima

Page 10

384:13 462:20
463:2,15 480:8
481:10
**complete** 497:6
498:10,12
**completely**
202:18
**complicated**
197:18
**complies** 13:4
29:17 271:16
408:1
**compound** 76:17
93:8 94:6
155:18 467:1
**comprehend**
45:1
**computer** 41:8
42:15,17 45:4
299:21 345:21
415:18,20
416:16,22
418:3,6,9,12,14
420:14 422:7
423:3,4,6,9
424:13 425:19
425:21 426:5
433:18 440:15
**computers**
171:10 416:18
416:20 418:14
426:6 433:15
433:20 440:18
**con** 341:15
**concede** 223:4
**concept** 452:3
**concern** 436:6,8
**concerned** 462:3
**conclusion** 43:10
44:20 76:17
91:14 168:21
175:15 176:2
204:11 258:20
259:12 260:6
261:12,18
262:6 264:8
278:12 307:14

328:5 351:22
353:10,17
354:3 453:11
**conclusions**
479:16
**conduct** 369:5
425:6,7
**conducted** 201:7
348:5 375:9
447:16
**confidant** 398:19
**confidence** 174:5
203:1 218:12
292:4,21
398:13 454:21
**confidential** 33:9
33:10 109:17
124:16,18,21
125:4,5,20
126:5 128:2
150:2 152:5
169:3 175:11
175:18,21
176:3,4,6,7,10
178:3 187:17
187:21 191:6
197:3 203:2
206:8 218:5,10
232:18 239:4
244:18 245:7
256:12 262:3
266:20 301:16
313:17 316:15
322:11 323:9
327:8 328:10
332:16,20
334:2 335:2
347:16 350:4
350:21 351:14
352:9,22
353:14,21
354:4,12,17,21
356:10 357:20
358:1,12
362:13,16
364:8 365:13
366:9,20

431:14 433:5
435:3,6,15,18
436:1 437:11
437:13,17
450:22 458:16
459:6,13
460:21,22
461:7,20,21
462:5 466:18
468:3
**confidentiality**
32:12,15,21
58:12,18,19
59:14 60:12
61:9,22 63:17
64:13 65:19
67:15 80:8,10
103:20 104:4
104:18 107:5,8
108:3,7 111:8
112:10,18
114:4,18
115:21 116:15
117:6 143:22
178:18 187:16
187:19 193:13
218:14 228:17
231:11 232:15
238:14,16,17
239:8 261:7
266:7 270:15
277:17 287:18
292:5 293:3
302:22 303:6
303:10 315:10
334:1,22 336:1
338:21 355:13
357:17 369:20
419:18,20
444:14 458:9
467:16 475:15
**confidentially**
217:21
**confirm** 98:18
99:7
**confirmed** 397:1
406:2

**confis** 113:12
**confiscated**
289:17
**conflict** 34:14,18
**confused** 115:15
116:8 137:20
322:2 414:12
**confusing** 119:5
**confusion** 283:2
**conglomerate**
199:20
**conjunction**
177:14 212:19
**connection** 10:16
65:6 390:16
**Conquerors**
157:8,12
**Conquistador**
157:5,7,11,13
348:18
**Conquistadors**
157:4
**consent** 497:22
**consider** 189:14
194:12 195:8
218:2 246:3
253:22 254:6
258:16 262:8
268:15 297:10
298:5 353:20
369:3 379:9
**considerable**
390:1,22
**Considerably**
485:20
**consideration**
145:8 491:5
**considered** 75:11
194:22 218:5
264:11 307:17
335:16 337:1
352:9 362:13
362:16,17
**considering**
166:11 229:4
254:9 261:15
454:6

**consistent** 123:8
466:7
**consists** 133:10
**consolidated**
209:3,20
**conspiracy**
442:22
**conspirators**
442:20
**conspired** 376:3
**constitute** 362:9
**constitutes**
478:17
**Constitution** 2:7
7:11,14
**construction**
227:16 228:5
**consultant** 143:9
143:10 163:9
229:6,7 269:19
**consultants**
144:18 163:8
**consulting**
252:17 253:2
**Cont'd** 175:8
**contact** 107:2
294:11,17
297:9 299:9,11
346:9
**contacted** 390:18
**contacts** 294:22
295:2 298:11
299:5,13,16
**contain** 94:22
124:20 125:2
169:17 297:5
298:6 372:17
470:13
**contained** 17:21
94:19 110:9
141:22 153:14
155:5 160:16
171:5 172:13
173:22 186:15
187:4 191:14
195:9 197:1
209:11 211:15

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 11

213:9 232:22
238:2 254:7
278:6 288:8
294:10 298:21
303:16 310:7
310:14 347:7
363:11 365:21
367:4 371:2,6
458:19
**container** 371:12
**containing**
109:22 110:4
471:14 480:5
481:21
**contains** 124:6
125:4 167:19
168:4,10 258:3
284:6 298:17
**contend** 120:14
158:2,21
168:10 169:1
182:1 273:9,19
279:9,19 282:4
297:18 301:15
332:13 349:2
350:18 362:9
363:13 365:7
365:22 368:18
374:13 376:9
376:14
**contending** 380:4
**content** 99:6
171:9 258:18
258:22 259:1
355:11 452:3
**contention** 92:6
168:3 288:6
484:18
**context** 14:12
15:17 55:10
99:3
**continually**
422:16
**continue** 35:8
355:12
**continued** 391:11
444:8

**continues** 458:10
**continuous** 368:6
**continuously**
368:6
**contract** 35:9
79:12,13
180:14 188:7
188:11,16
199:14,15,17
199:22 200:3
200:14,20
203:18 205:20
213:16 232:7,8
242:7 258:5,7,8
258:11,13,17
259:9,16 260:1
356:18 368:9
369:21 409:6
474:21 475:12
477:1,6 491:2,3
**contracting**
206:9 242:14
256:13 301:17
313:18 323:10
350:5 366:10
**contractor** 60:16
61:5,17 231:22
232:4 368:21
**contractors**
51:12
**contracts** 181:22
203:17 214:20
287:10,12
304:21 326:5
444:2 459:2
473:13,20
474:2,9,17,20
475:5
**contrary** 225:6
**contribute** 110:8
454:7 455:1
**contributed**
168:14 179:8
184:9 195:2
**contribution**
191:18 221:22
**control** 30:22

132:7 148:21
361:3 456:19
457:1
**convenience**
203:19
**conversation**
319:5 379:9
**conversion** 49:4
**convert** 140:3
**converted** 140:18
142:9 162:12
268:7
**cooperate** 394:4
426:11,20
427:7,13,18,22
428:6,15
**cooperating**
413:21 414:2
**copied** 323:22
**copies** 149:17
150:6 170:3
188:1 190:18
372:9 384:4
448:10,15,19
**copy** 98:20 167:5
192:11 396:17
479:3 497:8
**Copying** 497:21
**Copyright**
497:20
**corporate** 105:19
106:10
**corporation** 55:4
141:12
**correct** 14:9,10
17:22 18:4,8
21:17 23:12
24:3,10,11
25:17,22 26:5
31:1,9 32:1
33:17,21,22
34:6,10 44:18
45:17 46:5
52:12 54:21
55:10,11 57:8
64:22 72:12
75:5 80:20

84:22 85:8 87:6
87:10,19 93:19
94:2 99:18,19
100:5 101:19
102:2,15
115:19 131:8
131:11 134:22
135:11 140:19
142:10,14
147:20 149:6
152:7 160:12
160:20,21
164:8 168:18
182:3,5 183:5
184:7 189:7
200:5,22
205:19 207:5
208:1 210:5,9
212:2,18
213:20 223:12
225:5 230:3
239:20 242:2
242:13 244:3
245:13 246:17
252:20,21
256:16 257:15
258:6 259:10
265:14,15,19
267:11,13,17
272:21 275:19
275:21 282:8
282:12 285:7
286:12,18
298:8 302:6
305:14 306:5
307:12 308:1,5
308:9,11 309:8
314:5,16
316:12,13
318:9 324:7
325:15 327:8
335:5 337:6
343:18 344:14
356:20 357:5
365:17 366:13
366:16,19
367:12,13

374:12 375:16
383:6,10
386:17 399:5
409:12 418:1
430:15 434:14
437:21 438:1
439:9,10,12,16
445:6 448:17
449:8,21
450:19,22
451:1,13 455:4
455:7 456:5
458:11,12
468:21 469:2,3
469:17,18
472:4,5 473:14
478:8 479:16
492:22 493:2
494:1,4,6,18
498:9,12
**correctly** 443:15
470:6
**corresponds**
176:19 206:4
215:13 219:21
229:17 234:15
244:7,15 255:2
256:10 264:21
267:1 275:4
282:1 301:14
313:14 316:5
323:4 334:11
339:5 343:5,11
346:17 350:1
356:16 360:11
366:7
**cost** 78:12 156:1
156:5 223:20
248:2 311:21
344:3,13 345:3
**cost-plus** 188:6
188:11,16
**costing** 456:3
457:14
**costs** 345:19
490:2
**couldn't** 35:11

5/21/2024                Farhad Azima v. Nicholas Del Rosso et al.                Farhad Azima

                                                                                    Page 12

counsel 7:20
  14:16 17:5 18:9
  22:17,17 38:12
  114:15 318:16
  382:9,10,13,18
  390:21 396:20
  397:20 398:10
  403:4 497:9,12
Counselor
  125:12
counterparts
  340:8
countries 146:6
  241:7,9 243:5
  251:19
country 33:20
  219:10 231:15
  231:19 232:10
  235:15 248:15
counts 355:6
COUNTY 496:4
couple 455:3
courier 103:11
  103:12
course 16:7
  63:16 82:22
  113:2 150:10
  152:14 154:9
  167:20 168:7
  170:21 179:12
  191:21 195:15
  247:15 307:7
  310:6 348:15
  357:3 461:16
  463:22 485:12
court 1:1 2:10
  4:17 7:6,16
  8:10 9:9,21
  63:20 126:14
  375:10,12,13
  375:14,15
  376:4 396:10
  403:15 404:6
courtesy 9:20
cover 261:9
cows 296:22
create 42:22

43:16 48:10,13
  91:21 152:3
  170:10 171:1
  179:15 180:13
  183:10 212:6
  223:6 247:3
  277:21 278:7
  366:15 469:15
created 42:7 48:8
  48:9,16 74:1
  77:7 91:10,22
  142:19 149:5
  150:12 156:12
  164:7 177:12
  177:14,14
  182:22 189:7
  189:11 191:11
  219:13 220:11
  224:14 239:20
  258:11 272:16
  273:10 276:2,7
  276:8 286:11
  286:17 317:14
  318:8 324:21
  343:18 380:18
  384:7 405:14
  439:16 451:16
  469:7,16
creates 43:3
  44:12,17 90:9
  91:6 344:5
  364:5
creating 47:19
  110:3
creation 48:21
  49:2,3 76:21
  209:10 246:5
  308:16
credible 375:16
crew 48:3 249:20
  250:2
crime 377:22
CRJ900 343:17
  344:2
CRJ900s 236:6
  268:6
CRJs 268:3

cronies 442:18
  442:19
CRR 1:18
crunch 186:22
current 329:4
  436:15
currently 57:21
  235:20 420:2
customers
  294:13 458:21
cut 330:6
cute 260:14
CyberRoot
  378:10,16
  383:8 384:3,7
  387:22 388:9
  389:20,21
  390:6,18 391:1
  391:5,9 392:13
  393:3 394:7
  395:8 397:1,2,8
  397:19 400:1
  400:20 402:20
  405:2,2 407:12
  449:1,6,13
  482:8 483:7,11

─────────────
          D
─────────────
D 3:6 5:1,11 6:1
  8:13 175:6
D.C 1:14,21 2:8
  3:5 7:15 497:2
  498:2 499:3
Dad 450:4
damage 172:18
  391:5 444:8
damages 444:9
damn 295:17
damned 442:5
danger 218:3
dare 492:6
dark 440:6,10
  470:10 471:4
  471:10 480:11
  481:2
data 246:7 377:3
  377:5 384:4,6

395:9 397:3
  415:5 416:8,11
  417:3,17,19,20
  418:17 423:1
  423:22 424:20
  439:8 446:15
  446:19 447:3,8
  472:14 473:4,8
  473:9 475:21
  476:9,20 483:2
database 452:16
date 7:9 12:18
  29:9 103:15
  112:15 131:12
  161:9 201:18
  213:18 237:21
  243:8,17,18
  293:15 296:13
  302:18 315:6
  326:3 361:19
  372:8 389:6
  405:10 407:6
  410:19 412:9
  424:11 426:9
  440:14 450:12
  488:10 497:4
  498:5,17,22
  499:10,22
dated 6:17 131:7
  410:16,21
  451:14
dates 103:18
  112:16 162:17
  302:14 367:17
  444:18
Dave 111:3
Dawayne 36:21
  184:14
day 119:20,20
  123:1,2 322:19
  496:19
day-to-day 12:3
  144:7 158:15
  184:21 200:16
  326:17
daylight 86:3
days 31:17,19

361:5 396:21
DC8 320:8 344:2
  493:19,22
  494:3,17,21
DC8s 457:5
  494:16
de 157:7,11
dead 243:7
deal 32:14 99:5
  122:21 243:7
  343:9 370:20
  413:2,14
dealing 32:19
  33:7 42:2
  333:19
dealings 333:21
  367:15
deals 166:5 486:9
  487:6
dealt 321:17
Dear 301:21
debt 155:8
decades 8:22
  10:6 196:1,10
  264:11 294:12
  299:2 300:12
  456:14 465:17
  466:2
deceived 375:12
December 30:7
  30:18 131:20
  161:11 207:7
  279:17,18
  302:17 332:1,4
  332:15 339:12
  339:13 340:4
  340:14,18,20
  340:22 341:1,2
Dechert 441:22
  442:18,19,21
  443:1,4,15,20
  446:13 449:20
  450:1 471:18
  472:1,6 473:7
  478:7
Dechert's 442:10
decided 216:21

227:15 302:10
311:18 344:20
**decision** 225:16
326:4 345:2,5,8
376:8
**decisions** 155:3
**declaration** 6:11
6:14 389:5,10
390:3 402:10
407:5,16
**declarations**
403:8
**declare** 17:19
**decline** 242:16,20
**declined** 204:6
213:20 214:10
237:19 242:15
243:1,15 488:7
**declines** 214:18
214:18
**declining** 243:19
**deemed** 270:18
**deep** 157:18
**defaulted** 171:18
**defendant** 8:7
**defendants** 1:8
3:12 5:17 12:15
14:7 384:3
448:12,19,22
451:3
**Defendants'** 5:13
5:21 6:3,6,10
6:13,16,20
12:11 293:12
296:10 372:5
389:4 407:4
410:15 412:5
**defense** 60:16,20
60:20 184:3
213:6
**definition** 124:18
231:19 306:13
354:9 431:1
464:22
**defrauded**
375:13 376:4
**DEFS** 448:16

**Del** 1:7 5:17 7:4
12:15 14:8
132:18 322:3,5
322:16 374:8
374:14 376:10
378:6,18 379:7
379:18 380:21
381:20 382:5
383:2,13,20
397:2 414:13
436:20 437:1,4
446:2,13
449:17 497:3
498:4 499:8
**deliberately**
119:3
**Delio** 347:1
**deliver** 479:20
**Delta** 311:9
**denied** 241:1
391:11 393:3
**denies** 408:4
**deny** 391:11
402:13
**denying** 392:11
393:18 406:5
**department**
60:20 143:3,3
143:15,19,21
144:19 163:2
163:10 164:2
318:22
**depending**
118:19
**depends** 59:3
71:15 134:16
170:6,17,18
247:15 260:7
422:18 423:19
**deployment**
250:10 262:12
264:9 327:21
**deponent** 497:4,7
497:9
**deposing** 249:1
**deposition** 1:11
2:4 4:12 7:2,10

7:13 8:21 10:7
10:15 11:3
104:22 122:20
132:17 322:4,5
322:16 414:13
465:7 466:5
495:4 496:8
497:4,12 498:5
498:7 499:10
**depositions** 403:6
496:11
**deputy** 346:6
**deregulation**
158:13
**derived** 155:11
183:16 240:18
**derives** 71:11
**deriving** 485:5,7
**derogatory**
472:16
**describe** 23:4
**describes** 45:13
**DESCRIPTION**
5:12 6:2
**designated** 262:4
286:9
**despite** 291:2,3,3
291:4
**destination** 146:9
**destinations**
371:9 373:14
**detail** 200:12
**details** 136:6
453:6 477:10
**determine** 15:17
18:12 221:2,5
221:20
**determining**
172:1
**develop** 153:13
159:1 179:7
180:7,20
**developed** 154:8
264:11
**developing** 158:1
158:20 179:14
195:7

**device** 47:19,19
47:22 48:7,11
48:13,17 205:5
**devices** 196:4
205:4 329:15
**devoted** 157:16
**Dhabi** 318:21,21
**DHL** 103:8,9,10
**diagram** 308:4
**didn't** 15:9 56:21
60:9 71:5 81:8
83:10 113:15
150:15,17
151:20 182:13
184:20 186:22
188:13 218:2
263:16 264:16
276:6 288:1
289:17 312:11
352:6 354:14
364:18 390:9
406:8 432:19
436:7 444:5
448:8 470:7
475:17
**died** 49:19
202:18
**difference** 41:7
41:11,12,13,17
139:1 364:1
**different** 11:18
46:11,16 54:20
61:6 84:20
102:6 118:19
118:20 127:12
135:13,18
138:8 155:1
159:14 164:1
197:11 206:16
210:3 226:6,9
240:13 258:14
269:10 283:10
289:21 299:16
299:18 373:14
373:14 374:2
396:10 417:16
464:21 465:2

474:15 495:1
**differs** 24:18
**Digital** 1:20 7:19
497:19,20
498:1 499:1
**dimes** 360:1
**dinner** 385:7
393:9 394:1
402:14
**diplomat** 266:6
**direct** 168:12,13
178:11 259:21
276:13 280:5
326:12
**directed** 403:4
**direction** 75:8,21
76:8 78:11 91:3
93:20 94:12
142:20 145:6
169:7,10
186:16,22
254:19 326:3,7
336:22 370:8
378:5 438:4
458:2
**directly** 35:18
66:5 78:19
301:11 370:7
396:3,20
456:10
**director** 11:21
58:9 62:14 63:9
64:21 65:2,16
66:17 67:11
103:8 133:17
287:20,21
288:2,3,4 302:8
303:2 389:19
**directors** 51:14
53:5
**dirty** 251:3
**disagree** 127:20
372:20
**disappeared**
202:20 215:7
**disastrous** 215:6
**disbelieve** 404:21

Case 1:20-cv-00954-WO-JLW Document 379-7 Filed 07/15/24 Page 512 of 578

5/21/2024　　　　　Farhad Azima v. Nicholas Del Rosso et al.　　　　　Farhad Azima

Page 14

**disclose** 277:6
　380:17 388:12
　406:8 458:15
**disclosed** 205:11
　213:14 290:19
　292:18 309:7
　323:20 374:9
　383:15,21
　406:6 446:19
**disclosing** 88:13
**disclosure** 172:19
　201:10 203:12
　253:19 291:6
　483:19
**discontinue**
　228:1
**discovered** 426:8
**discretion** 190:3
**discuss** 209:15
　312:19 391:8
　391:20,21
**discussed** 167:13
　191:18 240:17
　325:9
**discussing** 465:5
**discussion**
　124:17 163:15
　166:15 316:16
　320:10 325:12
**disguise** 341:7
**disintegrated**
　249:11
**dismissed** 346:12
　346:14
**dispute** 10:14
**dissect** 356:12,12
**disseminated**
　163:18 190:14
**disseminating**
　217:20
**dissemination**
　238:2
**distinction** 11:10
　353:14,20
　354:11
**distribute** 384:5
　436:4 462:4

**distributed** 33:10
**District** 1:1,2 7:6
　7:6
**divest** 38:4
**divide** 52:17
**DLA** 60:16,21
　62:6 213:6,10
　242:11
**DLA's** 214:19,20
**document** 6:7,21
　12:21 13:10,17
　14:1 15:1,3
　17:1 18:7 19:14
　21:3,11 22:2
　24:13,17 25:8
　25:16 30:2,12
　30:15 43:4,5,18
　56:1 74:19
　85:16 86:18
　87:6,12,15
　89:21 91:22
　94:4 95:4,15,19
　99:15 101:4,7
　106:8,14
　107:21 110:12
　110:13,14
　114:20 118:10
　122:8,18,19,21
　124:6 125:8,10
　125:14,18
　126:1,10,17
　127:5,19,21
　128:1,7,15
　129:10 130:5
　131:16 132:1
　133:8 134:16
　140:15,16
　142:11,19
　151:17 152:4
　152:12 161:1,2
　162:15 163:17
　164:7 168:17
　173:3 177:1,3
　177:12,18,21
　184:22 185:11
　185:12,21
　186:7,10,17,18

187:10,11,13
189:6,12,14
190:6,22 191:5
191:10,15
194:12 195:3
195:19 198:20
198:22 199:3,9
199:13 205:14
206:13 212:4
216:12 220:11
223:1,9 230:5,8
230:13,21
233:20 241:16
242:3,8 243:13
246:14 254:16
257:4 262:10
263:1 267:22
268:12 269:3
277:21 278:6
282:17 283:10
284:11 286:5
286:16 288:7
288:15 293:17
306:7 309:18
315:14 317:12
318:3,9 320:11
320:17,20
324:9 334:4
335:10 336:5
336:14,16,19
336:21 337:3
344:6 347:18
351:7 358:8
365:11 367:6
372:6,16 374:1
382:1,13
394:10,16,19
395:4 397:12
397:16,18
405:14 407:19
408:17 409:5
409:10 411:4
412:6 413:1
414:16,19
415:9,11 431:9
450:13 451:7,8
451:14 453:18

454:2,6,7,10
458:5 459:5,11
459:16,20
460:21 461:6
461:10 464:7
464:15 465:11
493:6
**documents** 18:2
　21:5,8 29:20
　42:6,22 43:17
　57:2 75:1 82:13
　88:20 89:9,13
　90:10,20 91:7
　91:11,21 92:7
　92:13,21 93:17
　94:1,9,18 99:22
　100:9,19
　102:13 106:4
　106:10 107:16
　107:19 108:9
　109:21 110:3,8
　127:6 148:17
　149:3 168:14
　172:21 173:3,4
　185:2 202:22
　209:10,15
　222:18 233:4
　246:3 271:1,7
　272:8 273:10
　273:20 274:4
　279:10,19
　280:12 288:9
　289:6 290:13
　290:18,21
　292:2 298:5,10
　308:17 319:13
　320:5,8,13
　358:3 379:14
　380:1,5,17,20
　381:13,15,18
　382:2,4,14,19
　384:16 431:5
　431:12,18
　432:7,13 433:5
　435:2,4,15,15
　435:22 436:1,4
　436:11,17,20

437:2,5,16
438:3,8 441:9
441:19 442:1
442:10,15
443:8,16
444:11,14,21
451:5 467:3,15
469:7,16
471:14 472:1,7
495:5
**dog** 286:1
**doing** 34:19
　60:21,22 61:4,7
　61:16 63:3
　84:16 105:11
　136:21 155:12
　156:1,5,22
　158:14 197:5
　200:18 218:8
　224:19 236:4
　238:5 251:2,6
　280:8 289:8
　292:16 310:19
　318:14 367:21
　368:2 438:4
　478:1 488:5
**dollars** 198:6
　236:16 251:12
　376:17,20
　449:2
**Dominic** 390:19
　408:10 409:19
**don't** 11:2 37:10
　42:11 43:21
　46:7 52:3 56:10
　56:13 63:21
　65:10 66:9 86:2
　94:14 96:14
　103:15 105:21
　114:21 117:16
　118:9,12
　119:13 120:19
　121:11 123:21
　129:21 130:18
　136:5 138:19
　138:22 139:10
　148:5 150:7

Case 1:20-cv-00954-WO-JLW　　Document 379-7　　Filed 07/15/24　　Page 513 of 578

5/21/2024                Farhad Azima v. Nicholas Del Rosso et al.                Farhad Azima

Page 15

154:20 160:5
165:20 173:10
200:12 230:18
235:4 253:9
296:3 297:2
299:8 306:8
310:17 315:5
341:4 348:2
352:15,19
354:8 377:3
378:22 379:12
381:10 388:22
408:6 415:20
416:5 417:8
422:19 425:13
425:20 426:9
460:15 471:19
473:4 474:14
481:12 486:8
**dormant** 147:13
**Double** 425:9
**double-verifica...**
242:4
425:15
**download** 441:8
471:4,9,10
**downloaded**
471:7
**dozen** 251:1
**dozens** 156:12
456:21
**Dr** 133:19,22
346:6
**draft** 405:4
**drastically**
484:17
**drawing** 230:7
**dried** 173:5,16,19
174:10 197:6
253:21 291:13
**drive** 479:21
**driver** 305:16,18
305:19,19
**dropped** 484:17
484:19
**dry** 371:11
**Dubai** 454:14,20
**dull** 214:1

**duly** 8:14 496:9
**duplication**
242:4
**dwindling** 314:18
**dying** 49:18
**dynamic** 452:1

**E**

**E** 3:1,1 5:1,11,11
6:1,1 175:1,1
496:1,1
**Eagle** 157:14,14
**earlier** 70:1
155:9 159:8
228:6 337:4
439:14
**early** 10:9 136:7
**East** 112:5,6
116:11 117:8
121:4 146:7
156:11 190:1
190:10 191:5
311:2 317:15
**economic** 203:7
204:8 205:9
213:13 234:2
253:18 483:18
484:9 491:5
**educate** 82:1
154:21 331:9
**education** 249:2
**educational**
252:13
**effect** 4:15
**effectively**
262:15
**efforts** 228:2
266:2 423:22
**EGF** 268:19
**eight** 329:5
**EIM** 257:9,11
**either** 16:2 26:20
29:7 51:12 62:1
63:11 64:14,18
74:8 83:10
108:17 114:6
116:12 117:11

146:21 162:1
170:3 246:2
253:15 280:14
295:19 302:19
307:3 376:9
387:1,16 402:7
413:21 418:13
424:21 429:20
446:13 469:22
475:6
**electronically**
497:21
**elements** 430:16
**else's** 43:16
**EMA** 6:6 58:1,13
58:15 59:6,9
65:7 68:15
212:2,16,19
292:16 306:15
306:17 307:2,3
307:8 315:12
315:15 324:18
327:3,20,20
328:1,7 331:15
332:3,5,9,14
372:1,5,17
**EMA's** 213:14
324:6
**email** 6:16 192:4
206:7 211:20
212:18 215:16
219:8 220:2
229:21 232:3,6
234:16 244:17
254:1,8 255:5,8
256:11 265:2
267:4 272:4
282:4,10,20
286:16 295:4
297:8 301:16
313:17 323:3,9
339:8 341:11
343:13 346:19
347:19 350:4
352:11 356:22
360:13 364:12
366:9,15,21,22

390:19 400:14
410:11,15
411:2,2,12
422:18,20
434:14 435:3,4
435:11 436:1,2
436:7
**emails** 173:2
290:14 291:2,2
348:3 413:4
422:22 425:16
434:19 435:16
442:7 470:8,12
**Embraer** 221:1
**Emirate** 138:16
138:17
**emirates** 111:16
111:17 136:3
274:4 318:19
**employed** 231:21
407:20
**employee** 117:11
228:20,22
231:9 232:1,8
232:10 257:10
301:11 303:8
407:12 419:16
**employees** 51:11
51:12 53:3,8,10
57:10 107:7
108:2 113:14
113:16 114:9
116:1,17 117:4
137:9 198:2
324:4 389:22
417:4 419:22
**endangered**
209:5
**endeavor** 250:17
**ended** 28:1 34:18
147:21 148:13
203:5
**enemies** 173:11
294:15,16,17
**engage** 78:18
319:4
**Engagement**

403:1
**England** 156:17
**English** 14:17
124:15 375:13
448:5
**Enkiya** 276:4
361:7
**enlighten** 430:18
**ensure** 266:2
286:4 335:3
358:10
**enter** 171:15
317:18 387:22
388:10
**entered** 37:15
63:20 171:17
317:17 329:7
478:6
**entering** 346:12
**Enterprise**
312:20 313:9
**Enterprises**
312:13,15
**entire** 125:18
127:21 128:1,7
174:4 180:16
193:18 201:18
202:1 211:10
231:18 291:11
329:18 352:8
362:12,15
439:19 441:15
486:17
**entirely** 115:18
273:16 447:12
**entirety** 130:10
268:17 351:1
451:22 470:4,5
**entities** 57:2
75:13 76:1,12
339:18
**entitled** 16:13
31:15 134:5
177:4 230:21
450:15 462:9
**entity** 27:7,9 29:5
31:7 37:21 53:7

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 514 of 578

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 16

53:8,9,10
135:13 139:8
172:12 269:13
269:15,22
274:21 321:8
321:12,18
**environment**
209:5 494:19
**equipment** 36:9
181:5 251:11
347:13 362:3
**equity** 155:7
311:14
**errata** 497:11
498:11 499:6
**escalate** 345:3
**escalated** 344:3
344:12
**escalation** 345:18
**escapes** 488:22
**especially** 197:5
**ESQ** 3:6,8,15,17
3:19
**essentially**
248:15 310:8
**establish** 189:22
208:17 237:6
242:21
**established**
195:22 273:7
**establishing**
241:14
**establishment**
139:19 140:4
**estate** 488:5
489:2
**estimate** 492:5,7
492:18,19
**et** 200:11 248:3
268:11 290:15
298:20 368:21
497:3 498:4
499:8
**Europe** 69:10
156:11
**evacuation** 215:6
**evaluate** 164:14

221:2 225:15
**evaluation** 78:12
91:17 221:13
224:1,5 243:21
244:1
**evaporated** 34:20
**everybody** 24:9
88:21
**evidence** 1:20
7:19 96:13
385:16 393:22
403:15 404:6
432:17 497:19
497:20 498:1
499:1
**exact** 29:9 99:8
99:17 100:16
123:19 243:17
302:14 315:5
361:19 370:18
424:10 444:18
488:10
**exactly** 52:3
65:10 68:9
105:22 112:8
200:8 309:18
315:1 333:20
371:18 418:21
478:3
**EXAMINATI...**
8:17 175:8
430:10 462:18
**examined** 498:7
**example** 42:15
155:16 194:20
198:3 299:17
**Excel** 220:3
**Excellent** 214:4
**exception** 369:1
**exchanged**
277:17 437:16
**excuse** 130:12
165:19 357:7
401:12 409:8
**execute** 112:3
**executed** 116:17
428:19,21

**executive** 11:21
156:9 339:17
455:2 457:2
**exhibit** 5:13,21
6:3,6,10,13,16
6:20 12:10,11
20:9 21:3,11
22:2 29:14
30:11 69:14
84:7 85:12 95:9
95:10 97:10,14
98:11 103:2
123:7 124:11
130:10,15
131:7,13
132:16 134:18
137:6 140:10
140:13,22
141:4,6,17
142:12 149:5
149:17 150:2
150:21 151:17
152:1 153:14
155:5,10 156:3
158:3,11,21
159:6,14 161:5
162:8,9,10
163:1,18 167:5
167:17 168:4
168:10,17
169:2,16,16
170:3,3 172:19
176:18 179:8
179:15 180:8
180:22 182:2
182:19 183:5
183:17 184:9
185:4 186:15
186:20 187:4
188:1,2 189:1
190:14,19
191:14 192:4
192:11,13
194:3 195:9
196:8 197:1
198:12,16
199:1,2 201:10

201:11 203:12
203:12 204:3,9
204:17 205:11
206:3,17
207:22 208:12
209:11 211:7
211:15,19
212:18 213:9
215:13 216:13
217:20 219:7
219:15,21
220:12 222:1
222:10 223:9
224:6,10
225:18 227:5
229:17 232:16
232:22 233:16
234:1,3,7,12
237:13 238:3
239:19 240:22
243:10 244:6
244:15 245:4
252:14 253:19
254:2,8,8 255:2
256:5,9 262:18
264:14,18,21
265:20 266:22
271:10,11
272:16 275:4
276:20,20
277:22 282:1
283:6 284:20
286:14,17
289:5 293:7,10
293:12,18
294:9 295:15
296:9,10 297:4
297:13 301:13
303:17 307:21
310:1 313:13
316:5 322:7
325:6 332:22
334:11 335:13
339:4,5 343:4
344:9 346:16
349:2 350:1
355:1 356:15

360:11 362:8
363:13,21
364:15 365:6
365:22 366:6
367:5 368:17
369:8 370:3,12
372:1,4,5 373:9
373:19,21
389:4,9 394:10
394:11,13,21
400:9 405:17
405:19,20
406:20,21
407:4 408:8,12
408:15,18
410:11,15
412:4,5 414:5
414:19 450:8
452:6 453:14
455:12 460:10
460:18 464:4
464:17 478:15
478:17 493:3
**exhibits** 119:4
123:20 172:13
173:22 233:22
296:21 370:2
**exist** 57:21 114:6
310:10,11
314:15 359:8
363:9 365:15
**existed** 64:16
310:9 312:9
358:18
**existence** 58:21
482:15,21
483:6
**existing** 54:22
245:15 487:16
**exists** 295:19
357:17
**exited** 312:5
**expansion** 190:10
191:20 194:6
244:20 246:6
267:4,19 272:5
277:4

5/21/2024					Farhad Azima v. Nicholas Del Rosso et al.					Farhad Azima

Page 17

expect 108:19
  340:11
expectation
  314:7
expectations
  142:2 160:17
expend 156:1
  179:6 246:8
expended 153:11
  195:7
experience 89:22
  90:2 151:10
  158:6 178:13
  179:1 183:14
  208:20 327:12
  327:16 431:19
  432:1,6,11
  451:11 454:11
  455:9 456:16
expertise 246:7
  454:11
explain 14:19
  19:5 41:13 47:3
  48:20 118:6
  222:16 249:4
  262:13 295:9
  304:12 375:6
explanation
  464:19
exploration
  36:10
exported 251:12
express 398:15
  497:22
extended 368:7
extending 368:7
extension 367:20
  367:21 368:3
extensive 221:19
  455:9 457:5
  493:21
extent 20:14 71:9
  75:20 94:22
  104:21 105:8
  108:21 114:4
  116:15 117:14
  117:19 118:1

120:3 149:3
167:14 176:13
176:14 179:6
187:22 201:4
280:15,16
297:4 333:17
335:2 377:11
377:17 379:21
388:3 402:6
411:7 427:1
429:11 469:15
external 152:16
extract 394:2

---

**F**

F 5:11 6:1 8:13
  175:1,6 496:1
FA_MDNC_00...
  372:6
FA_MDNC_00...
  6:8
FA_MDNC_01...
  5:22 293:14
FA_MDNC_01...
  6:4 296:12
Facebook 449:12
facilities 444:7
fact 18:8,12
  95:22 125:1
  145:9 210:16
  242:12 247:3
  257:18 262:18
  293:8 308:12
  327:3,11,15
  328:1,6,8
  330:13 332:13
  365:19 380:4
  479:16
factor 11:6 203:3
factories 491:2
factory 62:18
  63:14 490:15
  490:19
facts 23:4 214:19
  369:14 432:17
factual 17:20
Fadi 51:16 52:14

52:15 59:10,12
59:15 60:13
104:5 110:1,2,6
210:8 211:4
256:21 257:1,5
301:21 323:22
326:11 357:1
366:18
Fadill 257:5,6,9
  323:22
fadill@eim.ae
  256:20
failed 173:12,13
  173:17 319:5
fair 42:5 72:21
  77:11 82:16
  196:15 209:8
  246:22,22
  297:2 324:14
  332:21 393:15
  437:10 468:18
  478:12
fairly 321:22
falls 191:20
false 390:1 391:2
  391:7
familiar 30:11
  46:8 52:18
  54:17 58:1
  62:17,20,22
  64:5 65:3 66:7
  66:11,21 67:18
  184:19 411:1
familiarity 66:10
family 38:7 173:4
  176:4 291:3
  298:18
far 123:4 221:18
Farhad 1:3,13
  2:4 5:2,14 7:2,3
  12:12 14:2
  17:18 30:4
  50:22 51:1
  181:18 198:8,9
  200:21 201:14
  201:16 205:10
  208:9 211:5

227:7 232:13
241:22 252:22
253:7,13 258:8
261:9 262:9
263:11 270:14
286:3 289:4
301:2 303:9
306:15 310:1
314:7 315:15
325:15,17
327:7 328:2,9
328:13 329:3
332:2,16 349:3
351:13,18
352:3 358:9
362:9 363:5
365:7 366:2
368:18 369:22
370:6 390:2
392:3 409:13
424:6 474:16
474:19 496:8
497:1,3,4 498:4
498:5 499:8,9
fashion 203:4
fast 167:22
  250:14 252:3
favor 95:21
FBI 446:19,22
  447:9
FCE 30:9
feasibility 244:19
February 225:18
  319:8 390:19
  410:21
federation 235:9
  235:12,21
  237:1
feel 352:16
  468:20
fell 341:15
fellow 348:18
ferry 223:19
fighting 406:4
figure 83:17
  115:13 292:12
file 396:12

file-stamped
  396:17
filed 13:17 15:18
  375:8 389:10
  389:15 396:10
  462:21 463:3,6
  463:10,14
files 109:16
filing 4:5 450:6
filled 146:16
final 37:14
  267:15
finance 143:2,3,7
  143:15,19,20
  144:18 163:2
  163:10 164:1
  180:14
financed 194:5
finances 181:4
financial 31:16
  31:18 78:12
  82:10 86:14
  87:1,3,5 88:22
  89:3 90:10
  126:3 128:13
  130:2 134:19
  135:9 141:5
  142:13 144:16
  149:7 159:9
  160:10 164:22
  165:8 166:6,13
  170:20 172:1
  175:16 177:6
  229:21 268:1,2
  275:7 279:1,2
  334:13 343:13
  450:18
financials 78:10
  121:13 150:5
  350:13 453:22
financing 145:2
  149:11 155:8
  178:8,9,10
  200:10 208:10
  208:14 209:13
  209:15 277:4,8
  280:7 486:10

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 18

487:6,13,15
488:2
**find** 31:13 127:2
170:12 187:11
262:17 264:15
301:22 391:22
392:10 393:4,7
393:17 447:14
**fine** 101:2 113:6
120:8 123:19
192:21 248:11
317:4 339:2
**finish** 9:10 26:9
101:9 131:14
181:8,13
230:16 260:10
264:6 317:1,10
325:19 375:19
390:9
**finished** 181:17
351:10
**fired** 472:21
**fireproof** 109:17
**firm** 145:10
245:22 286:7
385:16 386:16
387:2,2,17
392:13 413:22
413:22
**first** 5:16 11:6
12:14 13:20
14:6 30:11 48:3
68:5 69:13
98:22 124:12
125:12 131:18
138:22 139:2
141:20 158:12
158:13 159:16
160:9 177:2,19
220:18 231:6
284:12 316:19
329:13 361:10
373:21 399:6
399:11 404:19
407:17 410:3
426:1 453:21
454:13,17

455:3 459:9
482:13
**fiscal** 31:19 189:9
**Fisher** 68:1
**fit** 221:21
**Fitzgerald**
152:22 166:2
308:1
**five** 102:4 133:2
133:10 214:13
221:3 298:4
344:1 345:17
429:21 439:3
**five-star** 69:13
**flag** 247:16
**flap** 48:5
**flaps** 48:1
**flavors** 360:21
**fleet** 216:19
224:8 328:2
339:8 346:19
348:5
**flies** 183:21
**flight** 248:3
**flip** 394:14
457:16 458:3
**floats** 183:22
**Florida** 37:15
496:2,7
**flow** 345:17
**flown** 225:12
**fly** 146:11 225:10
249:22 347:15
**FOBs** 305:1
**focus** 221:15
**folks** 111:6 383:8
**follow** 27:13
417:5 419:17
460:3,5
**followed** 48:2
**following** 31:15
84:4 405:16
479:17
**follows** 8:15
175:7
**Food** 64:6,18
**forbidden** 497:21

**force** 4:15 221:6
221:8 223:22
225:15 241:6
241:10 487:7
487:11
**forced** 464:18
487:12
**forces** 360:2
**forecast** 82:10
86:14 87:1,3,11
87:20 88:17
89:4 130:3
134:18 135:10
141:5 142:13
144:16 148:3,4
159:9 160:10
165:8 166:14
169:21 170:20
177:6 192:6
193:2 194:2
229:21 267:5
272:5 275:7
316:8 317:14
334:14 343:14
450:16,18
455:5
**forecasted** 189:4
197:14
**forecasting**
360:13
**forecasts** 87:5
88:13,16 89:1,5
89:6 90:11
91:16 126:3
134:10,19
164:22 166:6
169:18 172:1
**foregoing** 17:21
498:7
**foreign** 305:19
**forget** 73:5
352:19
**forgot** 7:11
**form** 4:9 87:6
153:16 172:4
259:6,16,17
436:5,14

437:12,18
438:5,15,15
443:9
**formation** 76:21
78:3 106:11,16
139:6 180:1
**formed** 73:22
80:2 136:5
158:12,13
162:2 189:18
**former** 200:16
235:18 249:9
265:16 407:12
**formerly** 103:7
449:12
**formula** 304:19
**forth** 145:18
269:11 306:19
344:18,18
371:22 496:9
**forward** 122:10
191:19 229:9
291:12 305:2
318:12,15
497:11
**forwarded** 207:4
**forwards** 210:7
**found** 158:2,21
183:3,16 284:3
325:5 375:15
449:13
**foundation** 104:1
121:19 132:3
134:7,15
135:13 297:12
309:15 322:13
327:19 328:12
331:17 356:2
368:14 370:5
404:10 409:1
426:14
**four** 102:4 133:2
197:10 250:11
289:11 329:10
439:3
**frame** 363:16
**France** 251:6

**Frank** 275:14,15
**free** 138:10
139:18,20
140:3,4 262:5
294:5
**freighter** 251:21
**friend** 265:14
266:7 348:18
**friends** 294:14
348:22
**front** 110:13
130:7,12,13
185:10 198:20
199:11 229:16
239:22 254:12
283:14 294:4
327:1 394:10
450:9 478:22
**fruition** 237:14
**fuel** 47:14,17,21
48:5,7 49:15
204:5 205:3
259:13 305:18
**fuel-saving** 205:5
205:6
**fulfilled** 241:11
**full** 20:14 335:2
**fully** 9:12
**fumbles** 493:6
**function** 345:18
345:20
**fund** 311:21
321:4
**fundamental**
184:1
**further** 4:7,11
462:18 496:13
**future** 245:17
308:20 309:5
453:12
**FZ** 30:8 31:1,6
138:10
**FZC** 26:21
138:18 141:11
142:4,10,14,17
159:9 160:19
161:8 162:6,10

Case 1:20-cv-00954-WO-JLW    Document 379-7    Filed 07/15/24    Page 517 of 578

5/21/2024   Farhad Azima v. Nicholas Del Rosso et al.   Farhad Azima

Page 19

162:13
**FZE** 26:21 28:21
30:5 135:19
136:13 138:9
139:18 140:16
140:18 141:11
142:9 148:9
162:10,16

**G**

**G** 311:19
**G-i-o-r-g-i**
338:11
**Gabala** 62:18
63:14
**gain** 361:22
**gained** 494:15
**games** 129:10
**gamesmanship**
95:14
**gander** 432:22
**Ganesh** 68:21
276:3 277:2
**Ganesh's** 276:22
**gathered** 18:2
**general** 19:12
32:13 33:2,5
57:19 59:4 69:3
69:4 71:21 72:1
103:7 120:18
144:2 157:17
171:12,20
173:9 228:13
229:10 334:7
**generality** 120:19
**generalize** 102:8
**generalizing**
102:19
**generally** 72:16
349:14 466:14
**generated** 75:2
82:13 89:10
90:21 91:12
92:7,14,22
93:18 94:1,10
94:17 100:1,9
100:19 102:14

171:7 184:22
185:3,5 186:10
186:11 222:2
269:2 271:1,6,8
272:9 273:21
279:11,20
280:13 288:10
**generates** 89:12
**gentleman**
384:19 389:11
**geographical**
220:19
**George** 231:14
**George's** 206:18
206:22
**Georgia** 33:4
60:2 172:5,8
219:11 221:21
223:15,19
227:10 228:2
231:16,19
232:10 233:17
333:10,13,16
335:9 337:20
**Georgian** 223:7
338:1,3,8
**Gerrard** 341:6
**getting** 119:1
148:8 162:21
214:16 387:13
398:15 399:13
399:14,18
**Gilan** 62:18
63:14
**Giorgi** 333:6
334:20 338:11
**give** 9:7 10:15
11:3 27:12,19
28:2,5,7 29:21
41:19 42:14
79:9 91:19 95:9
97:9,22 108:14
129:19 147:15
147:15 170:13
174:5 190:22
214:20 227:15
228:4 236:22

244:8 262:21
331:10 413:9
434:2 438:13
448:8 491:5
**given** 38:6 145:7
172:15 187:20
193:4 262:15
339:19 496:12
498:10,13
**gives** 42:21 90:8
**giving** 420:21
464:19 486:21
**glad** 406:1
**glanced** 373:11
**Global** 35:16,17
36:4 37:5,13
75:14 77:16
78:5,8 120:2,12
177:8,11 185:1
185:5 186:9
196:18 200:4
205:19 280:2
280:13
**Globally** 248:6
**GM** 69:9
**gmail.com** 232:3
**go** 9:1 17:11,14
17:15 23:19
25:2 69:14,21
71:7,22 72:3
74:22 75:15
86:1 89:7,8
95:6,20 96:5,8
96:10,18 97:7,9
97:12,21 98:2
98:17 99:12
103:2 130:13
130:21 132:16
140:1 145:1,4
146:3,16,21
152:12 153:1
155:6,7 160:14
168:8 182:13
192:16,22
207:20 208:17
209:16 216:21
217:14 219:3

225:15 245:22
247:18 249:14
264:18,19
271:10 296:19
316:21 318:12
326:20 349:9
360:16 361:1
372:22 373:1
373:21 387:10
390:13 393:8
402:22 407:3
408:15,16
467:6 469:12
493:9
**God** 246:18
**God's** 107:12
431:4 443:6
**goddamn** 128:22
**goes** 109:18
185:22 216:3
244:10 247:16
269:10 271:19
391:3 476:15
**going** 9:3,18,22
12:9 27:19
29:13 38:20
39:3 47:16
69:21 82:1
95:14 96:7
97:17 102:7
114:1 122:6,22
123:1,6 124:4
128:9 130:9
131:1 152:12
153:22 154:21
170:9,11
178:16 188:21
208:16 211:18
225:10,14,14
228:12 230:20
244:14 246:8
249:18 264:20
266:21 276:14
276:15 285:10
293:6,9 305:13
306:3 316:4
338:1 343:3

345:10 356:14
362:4 366:5
372:3 379:11
392:1 393:8
408:13 409:3
410:10 412:19
415:8 439:19
447:13 472:10
**going-forward**
221:3
**Golden** 157:14
157:14
**good** 16:3 47:12
81:20 83:18
226:16 230:6
322:18 406:13
432:21,22
433:11
**goods** 371:11
**goose** 432:22
433:12
**gotcha** 9:13
**gotta** 296:16
**gotten** 202:14
**governed** 61:15
**governing** 105:20
497:13
**government**
32:20 33:1,4
59:20,21 60:2,3
60:5,6,8,10
61:1,6,8,17
79:14 178:19
187:8,15
196:20 197:6,8
199:16 206:9
207:16 216:15
216:18,22
217:10 218:1
223:7 227:14
232:9,11 233:9
233:11 236:11
238:5 256:13
287:10,12,13
287:15 288:5
298:20 301:17
313:18 318:18

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 20

318:19,20
319:2,2 321:3
323:10 335:7,9
335:15,17,20
350:5 356:18
358:14,16
359:21 366:10
447:1 472:11
**government-to...**
319:3
**governmental**
239:7 458:17
**governments**
32:14 33:2,5,8
33:15 280:9
**Gracian** 426:11
426:19 427:7
**gradual** 314:21
**Graham** 256:19
**Grand** 69:10
**grant** 35:7
**granted** 454:16
**great** 16:22 19:18
93:9 95:17
129:16 331:7
354:22 402:8
488:8
**green** 271:14
**grounds** 397:10
**group** 1:20 7:19
65:11 107:14
497:19,20
498:1 499:1
**grouped** 263:21
**guarantee** 456:2
**guarantees** 317:8
**guarded** 109:4
**guess** 245:9
305:13 323:21
383:11 428:9
**guys** 128:19
192:21 340:4,6
393:10 406:3

─────────
**H**
─────────
**H** 5:11 6:1 8:13
175:6

**H.C** 166:1
**Habaab** 67:19
**hack** 384:4 397:2
417:18 423:22
425:1 426:2
**hack-for-higher**
449:6
**hack-for-hire**
392:13 449:13
**hacked** 173:2
378:5 391:10
392:12 397:3
416:7,22 417:3
417:10 420:16
**hackers** 378:3
393:13 416:10
417:20 482:8
483:7
**hacking** 172:20
174:2 393:13
395:8 407:21
418:10 436:7
449:18 463:4
472:9 493:1
**half** 251:1
**hallmark** 215:1
**hallmarks** 263:5
263:21
**Hamad** 454:19
**hand** 97:13,20
192:19 268:7
496:19
**handed** 98:10
**handful** 248:10
248:14
**Handing** 372:14
479:4
**handle** 63:5
419:5
**handled** 79:1
**handling** 419:14
**hands** 313:9
366:1
**happen** 27:22
153:3,9 217:16
218:6 359:13
**happened** 137:1

147:10 225:7
242:17 311:17
380:7,9 439:11
**happens** 115:19
178:11 475:12
**happy** 123:5
304:4 328:20
**hard** 268:18
330:18 483:3
**harm** 211:12
289:12 290:17
364:11 390:22
**harmed** 196:16
197:12 201:9
201:15,17,19
202:3,5 211:5
227:8 289:4
291:5 297:20
364:13 439:7,8
443:21,22
444:1 484:5,6
**harmful** 9:9
366:1 443:20
**Hart** 217:9,9
**Hartzell** 245:2
284:22 286:12
286:18
**Hawker** 57:14
**he's** 265:16
344:11
**head** 9:18 83:21
216:7 236:20
430:22 454:19
**headache** 197:15
**hear** 11:7 123:5
399:20
**heard** 38:12 97:1
97:2 235:16
322:3 349:21
380:2 385:1,13
387:8 400:7
415:15 446:9
449:16,19
450:2
**hearing** 467:19
467:21
**heavy** 311:7

**HeavyLift** 25:15
25:19 26:4,16
26:16,17,20
27:1,3,4,11,14
27:16,18 28:5
28:13,20 30:4,8
30:16 31:8
32:10 34:11,19
35:3 74:8 75:16
76:12 80:13,13
81:2,4,14,16,18
82:4,11,19,20
84:1,10,13 85:7
86:16 87:1,4,14
87:20 88:10,13
101:21 102:14
111:13,15
112:20 113:13
114:7 116:12
116:18 117:9
117:11 120:20
121:2 131:11
134:19 135:17
135:18,20
136:1,8,9,12
137:13 138:7,8
139:4,17
140:12,22
141:8,9,15
142:3,8,13,17
143:4,8 144:19
145:14 146:12
147:2,15,19,21
148:2,13,19
152:6,8,11
153:14 159:9
160:10,13,19
161:8 162:5,18
163:3 164:5
165:1,3 166:12
167:9,12
171:16 172:4
234:18 237:16
244:22 245:12
245:15 246:10
246:10 253:15
254:18,21

255:7 256:14
257:22 263:2
263:12,20,21
265:4,8 267:6
267:12 268:7
268:21,22
269:2,5,7,8
272:7,14,15,16
272:18,21
273:6,10,16,18
273:21 274:10
274:12,18
279:15,17,20
280:1,19,21
281:10 282:7
282:13,15
283:1 287:1,3
287:16,19
288:11,14
289:1,2 292:14
302:8,19,19,21
308:7,12,14
310:9,10
319:12 339:10
343:15 346:7
346:20 347:16
348:6,13
349:10,12
457:3
**HeavyLift's**
88:19 146:1
147:6,10,20
148:9,16,18
163:10 254:18
258:8 269:1
274:7 319:13
**held** 2:5 7:10,13
456:21 457:4
**hell** 201:21
401:21
**help** 61:13
354:15 370:18
431:4
**helped** 143:13
**helpful** 283:15
**Henke** 275:15
**Herbert** 3:8 5:4

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 21

8:3,3 123:14,22
389:16 410:13
430:8,11
431:17 432:19
433:9,13
434:10 435:21
437:8 439:21
440:1 441:7
443:10 445:8
445:19 449:10
450:7 453:17
453:19 457:12
457:20 459:8
461:13,18
462:2,12
464:10 466:12
466:20,22
467:2,12
469:19 473:2
473:15 474:4
474:11 476:1
476:10,21
477:17 478:9
478:15 479:2
480:6 482:6,17
482:22 483:12
483:15,21
484:14 485:19
486:12,15
487:2 489:7,19
490:1,8,14
491:9,18 492:1
492:10,15
493:7 494:7,12
**Herbert's** 467:22
469:6
**hereinbefore**
496:9
**hereto** 458:14
**hereunto** 496:18
**hesitate** 497:15
**hesitation** 266:18
**HH@fathers.c...**
6:18 410:17,22
411:13
**higher** 486:4
**highjack** 170:13

**highlight** 95:22
97:22 245:5
**highlighted**
98:11,18 99:8
99:21 123:15
123:17 141:17
141:21 159:15
160:2,15 192:1
206:14 316:18
326:19 327:1
343:20 350:9
351:1 362:8
363:12 365:6
367:4
**highlighting**
123:13 192:12
206:18 245:4
256:7
**highlights** 98:1
159:17 192:20
**highly** 88:19
**Highness** 454:19
**Hillsborough**
3:13
**hire** 229:10
481:16,17
**hired** 145:9
165:22 228:10
228:14 229:5,7
245:19,20,20
245:21,21
253:3 286:8
397:2 419:5
449:21 479:9
481:15,18
482:1 491:17
491:20
**history** 108:19
**hold** 39:8 84:15
101:8 115:5
116:19 283:8
330:3 384:11
399:16 408:22
**Holden** 390:19
408:11 409:19
**Holdings** 30:8,22
31:6

**home** 297:1
423:12,15
425:19,20
488:17
**honestly** 321:22
**honorable**
393:21
**honored** 275:2
**hope** 250:6
322:21
**Hostetler** 111:3
**hostile** 209:5
**hotel** 69:9,13
**hotels** 69:4
**hour** 345:6,12
456:4
**hours** 47:11
159:3 225:11
225:11,12
456:2
**HSBC** 290:6
**Hubert's** 469:5
**human** 420:9
**humorous** 393:5
393:7
**hundred** 285:9
285:11
**hush** 49:3
**Hylton** 216:1,2,4
216:5,12,14
217:9,19,22
218:5,6,9,13
**identifies** 198:19
**identify** 19:20
20:10 23:3
157:22 158:5
158:18 167:7
180:19 195:6
202:13 240:3
241:17 261:15
268:18 287:11
316:8 363:20
364:14 365:4
367:2 368:16
475:19 476:5,6
476:20 477:9
486:14
**identity** 217:4,4

**I**

**I-v-e-c-o** 67:21
**Ian** 3:8 8:3
389:16 392:1
393:8,12
**idea** 97:8 106:12
207:17 255:12
359:18 385:3
406:11 481:9
**identical** 192:17
**identification**
12:17 293:15
296:13 372:8
389:6 407:6

410:18 412:9
**identified** 21:2
21:11 22:1,1
23:2,12 70:11
80:17 84:6
85:11 96:3
98:13 101:18
123:9 125:17
127:21 128:7
129:13 176:19
183:4 189:2
192:7 206:4
215:14 219:22
229:18 234:13
234:14 244:16
255:3 256:10
264:22 267:2
275:5 282:2
291:7 293:18
298:4 301:15
309:22 313:13
313:15 316:6
323:5 334:12
339:6 343:12
346:17 350:2
355:20 356:16
360:12 362:17
366:8 431:6,13
432:13 466:14
469:10 473:1
475:9

476:6
**ignoring** 97:4
**Iherbert@milc...**
3:9
**illegible** 230:7
231:1
**immediately**
289:10 346:11
**implemented**
329:12 332:19
**implied** 316:19
**imply** 376:13
**implying** 276:18
**important**
171:11
**impossible**
196:13
**impression** 401:1
**improper** 110:10
**improperly**
374:9 376:11
376:15 379:7
379:18 381:1
381:20 382:7
383:4
**in-house** 118:5
**in-transit** 329:14
**inability** 28:7
**inappropriate**
101:14 129:7
404:17
**Inaudible** 289:7
**Inc.'s** 197:13
**incentive** 491:6
**incident** 211:9
**inclined** 440:14
**include** 33:3
192:6 203:11
350:14 386:15
469:9 472:22
**included** 18:7
196:8 259:6
325:14 373:18
395:7 447:9
473:4
**includes** 305:16
308:3 379:22

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 22

**including** 23:6
44:13 75:13
194:20 288:10
288:21 375:13
378:1 383:7
384:5 403:5
472:19 484:22
497:21
**inclusive** 352:10
**income** 484:16
485:14 486:2,3
**incorporated**
139:19
**incorporation**
208:4
**incorrect** 19:15
19:17 55:17
**increase** 345:6,11
360:20
**increased** 362:3
**increases** 362:5
**indicated** 280:4
362:11
**indicating** 26:8
69:18 141:19
159:7 230:10
394:20 408:14
414:21 450:10
452:6 459:11
**indicted** 207:15
**indirect** 35:21
**individual** 41:2
203:8
**individual's**
297:7
**individually**
364:11
**individuals** 11:11
143:20 163:11
186:16 239:20
285:19 378:12
378:16 379:16
404:7
**industries** 437:9
**industry** 75:10
90:1 154:13
155:13 157:3

172:22 178:13
184:2 194:17
195:22 196:11
431:20 432:2
432:12 437:15
451:11 454:15
455:9 456:16
**infamous** 180:18
**informal** 403:6
**information**
17:20 18:1,1
31:20 32:5,7
33:8 35:5 75:2
82:13 89:9
90:21 92:7,13
92:22 93:17
94:1,9,19 100:1
100:9,19
102:13 109:15
109:18 125:4
135:2 148:17
151:1 152:3,7
153:13 155:4,5
164:9,11,18,20
165:2,7,9 166:7
167:19 169:13
169:17 170:7
172:13 173:22
174:6 175:11
175:16,21
176:3,5,6,8,10
179:7,14 188:8
191:6,14 195:8
196:22 197:4
203:2 206:8
207:4,21 208:8
208:12 210:17
210:22 211:11
211:14,16
212:2,7,11,17
213:8,14 222:7
222:8 223:11
224:2 225:4,6
228:9 232:15
232:18,22
237:3 238:2
245:7 247:22

252:20 254:1,7
254:17 256:12
257:18 258:4
259:5,8,18
266:3,19 271:1
271:8 272:8
273:20 277:7
277:13 279:10
279:20 280:13
285:10 288:9
291:17,20,21
293:4 294:10
294:18 295:2
295:10 297:6
298:17 301:17
301:22 302:4
303:16,21
305:11 310:7
310:14 313:5,9
313:17 314:9
315:16 319:14
322:10,11
323:9,14 324:6
324:22 325:5,7
325:13 327:8,9
328:10 331:15
332:16 334:2
341:21 347:7
349:2,12 350:5
350:21 351:14
352:3 353:1,15
353:22 354:4
354:12,16
357:5 358:10
359:10 361:11
361:15 362:7
363:4,11 364:2
364:8,15 365:5
365:21 366:10
367:3,10
368:17 369:8
370:12,15
371:2,6,9,14,15
371:17,21
372:18 373:17
375:2,4 377:12
377:15 378:15

379:22 388:4
388:13 389:1,3
392:18 403:2
411:8 415:7
416:6,15 418:7
419:15 426:3
427:1 431:14
452:18,20
453:9 456:6
457:8,14,18
458:18,19,20
460:20 461:21
462:5,8 465:16
466:15 470:2
475:16 478:16
479:6,8,15,19
479:21 480:5
483:10 485:3
488:6
**infused** 242:6
**inherently** 76:4
437:10
**initially** 482:13
**initiated** 329:16
**Inkhiya** 68:22
**input** 47:20
48:15 75:9,20
91:6,10 94:13
144:15,17,20
151:11 152:4
157:1 163:2
168:12,13
169:7 171:11
176:14,15
177:16,18
178:11 180:2,4
180:8 186:3,5
186:12 190:16
209:9 212:12
220:15,17
240:4 254:19
267:21 268:9
268:14 269:4,4
276:13,21
277:21 278:7,8
278:22 286:19
304:7,8 307:16

308:15,19
318:10 345:13
347:22 348:7,9
367:3 432:6
438:8,11,13
451:7,10
457:17
**inputs** 248:2
**inputted** 186:6
280:8 300:12
**inside** 163:9
**installed** 47:22
422:6 426:5
**installing** 329:13
**instigate** 447:4
**instruct** 385:14
**instructed** 5:6
384:3 414:11
**instructing** 381:4
**instruction** 381:3
383:17
**instructions** 9:1
**instructs** 9:5
**instrumental**
216:17
**insurance** 236:3
249:20
**Integra** 306:10
306:12
**integrity** 386:14
**intellectual** 41:9
41:14 44:13,17
71:16 76:20
**intelligence**
316:9
**intended** 92:2
152:10 163:18
180:11 213:9
245:18 260:3
261:1,2 265:21
284:13
**intent** 210:10,19
212:21 242:8
275:17 277:3,6
318:6
**intention** 173:10
318:14

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 23

**intentions** 142:1
  160:17
**interest** 23:7 37:4
  37:12 38:1
  40:17 76:6
  119:10 165:11
  166:12 171:16
  172:9,10
  177:10 189:16
  205:22 218:10
  229:1 273:6,15
  274:17 365:12
  385:22 386:6
  386:19 398:14
  456:20 457:1
**interested** 333:1
  472:16 496:16
**interfering**
  346:10
**internal** 152:16
  152:19 190:8
  190:13,15
  242:6 344:22
  351:16
**international**
  25:15,20 26:5
  26:16,21 28:20
  30:4,9 32:11
  35:22 36:18
  37:12 51:3,20
  66:22 82:12
  84:10 86:16
  87:14 88:10
  104:19 105:6
  108:22 109:21
  110:7 114:7
  135:17,18,21
  136:1,9,9,13
  137:13 138:7,9
  139:4,18,20
  140:12 141:1,8
  141:9 142:3,9
  142:14,17
  160:11,14,19
  161:8 162:5,19
  164:5 166:13
  167:9 189:18

191:19 206:11
  210:2 234:19
  241:6,10
  244:22 255:7
  256:15 265:5
  267:7 272:7
  273:11 282:7
  283:1 290:4
  301:9,19 303:5
  306:5 313:20
  323:11 339:10
  343:15 346:21
  350:7 366:12
**Internet** 416:12
  416:14 439:9
**interrogatories**
  5:16 12:14 14:7
  14:12 16:14
  23:3 29:15 74:6
  75:15 86:13
  123:10 176:22
  189:3 192:9
  206:6 215:15
  229:20 233:15
  234:14 265:1
  267:3 282:3
  313:16 316:7
  323:8 339:7
  464:2
**interrogatory**
  15:2,19 19:20
  28:16 85:12
  96:3,22 98:14
  177:5 220:1
  255:4 275:6
  475:10
**interrupt** 181:13
**interrupted**
  331:2
**interruption** 78:4
**intertwined**
  356:11
**interviews** 403:7
**introduce** 7:20
**introduced**
  335:19
**invented** 252:5

**invest** 172:2
**invested** 236:17
**investigation**
  447:4 472:12
**investment**
  145:10 149:13
  149:16 150:1,8
  152:21 166:1,5
  245:22 286:7
  321:9
**investments**
  167:10,13
**investor** 282:5,12
  282:21 285:13
**investors** 149:19
  150:9 308:8,13
**involved** 11:6
  12:3,7 16:11
  39:3 49:2 75:7
  112:6 132:8
  143:4,7 197:18
  200:9,10 209:6
  214:21,22
  318:21 324:13
  324:21 325:12
  329:4 395:8
  408:4 478:4
  479:14
**involvement** 66:5
  273:1 280:6
**iPad** 416:17
**iPads** 415:21,22
  416:4
**iPhone** 416:17
**Iraq** 146:4
  265:18 281:4
**Iraq's** 35:10
**ISF** 241:4
**island** 201:6
**isolate** 352:6
**isolated** 355:14
**ISR** 316:10
  317:15 318:11
**issue** 99:4 117:15
  118:2 120:8
  154:14,15
  262:1 292:10

292:10,21
  338:14 364:6
  475:12
**it's** 26:20 101:14
  125:5 288:6
  301:20 324:6
  484:18
**iterative** 438:18
**ITV** 329:13
**Ivanoff** 236:20
**Iveco** 67:21
**Iyer** 255:9,10,13

**J**

**J-u-r-a-e-v** 68:4
**Jacobs** 36:22
  184:16
**Jamaica** 33:20
  60:5 216:6,7,16
  216:20,21
  217:8 218:2
**Jamie** 339:13,16
  341:5 478:7
**January** 37:14
  38:5 243:16
**Jason** 352:17
**Jay** 472:20
**jet** 236:14
**jets** 311:7
**JFJ** 35:22 36:3
  36:17 37:4,11
  74:21 77:20
  78:22 79:2,4,7
  79:9,18 80:1,2
  177:9 184:19
  185:3 186:4,5
  186:12,13
  199:19 200:21
  201:3 205:21
  364:4 477:1
**Jim** 36:22 184:16
**job** 221:11
**Joe** 111:3 200:8
**Johnson** 3:22
  7:18
**joint** 58:15 79:11
  200:6 234:17

314:10,11
  315:7 317:16
  317:20 318:12
  324:17 337:5,7
  337:9,21 338:3
  477:5
**jointly** 63:4
**joking** 230:11
**Jonathan** 242:13
**Journal** 472:20
**judgment** 37:15
  376:5
**juice** 360:5
**July** 313:21
  395:3
**June** 396:21
  480:4 481:19
**Juraev** 68:3
  211:20
**jurisdictions**
  349:7
**justified** 352:11
**Justin** 3:15 8:5
  352:14
**justin.kaplan...**
  3:16

**K**

**K** 6:14 407:5
**K-h-a-n-l-o-u**
  54:13
**Kansas** 489:4,13
**Kaplan** 3:15 5:3
  8:5,5,18 18:16
  18:18 19:9
  20:18 24:14
  25:9,12 30:13
  31:4 39:10,14
  39:19 40:3,15
  69:19 70:7,14
  72:21 81:13
  83:5 86:10 87:9
  87:18 88:18
  92:18 93:4,9,13
  93:15 94:7
  95:16,20 96:9
  96:14,17 98:2,9

Case 1:20-cv-00954-WO-JLW    Document 379-7    Filed 07/15/24    Page 522 of 578

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 24

| | | | | |
|---|---|---|---|---|
| 99:14 101:1,6 | 315:19 316:3 | 442:2,12,17 | **Khaimah** 33:1 | 59:5,9 62:7 |
| 101:16 105:4 | 317:2,6 325:21 | 443:9,12,18 | 35:4 111:12,15 | 64:3,16 65:5,10 |
| 108:6 112:17 | 328:15,18,21 | 444:4,12,17,22 | 111:16 116:13 | 66:1 67:4 68:3 |
| 113:2,6,11,18 | 329:1,20 330:1 | 445:7,18 446:5 | 117:8,9 137:16 | 68:10,11,21 |
| 113:22 114:3 | 330:5,8,11,16 | 446:11,16,21 | 138:16 148:19 | 78:19,20 79:6 |
| 114:13 115:3,7 | 330:20 331:1,4 | 447:6,11 | 149:2 317:22 | 79:19,19 81:18 |
| 115:12 119:8 | 331:18 340:7 | 448:13 449:3,9 | 321:8 324:4 | 81:19 90:2 |
| 123:11,18 | 342:4,12,14,18 | 449:15,22 | 369:10 | 95:11 100:13 |
| 124:1,5 128:19 | 343:8,10 351:2 | 450:3 451:2,12 | **Khalilzad** 265:12 | 103:4 105:16 |
| 129:11,16,17 | 352:1 353:12 | 451:17,21 | 266:5,17 | 106:7,13,17 |
| 129:21 130:1,6 | 353:18 364:20 | 452:17,20 | **Khanlou** 54:13 | 107:15 108:13 |
| 130:11,16,19 | 365:3 372:9,13 | 453:2,8,16 | **Khonsari** 68:12 | 108:16 110:14 |
| 131:6,17 134:8 | 372:15 373:1,8 | 454:8,12 455:6 | **killed** 428:21 | 111:10 113:9 |
| 135:6,7,14 | 377:13 378:21 | 455:10,18 | **Kim** 3:22 7:18 | 118:13,16,21 |
| 136:16 137:6,7 | 380:3,8,11,15 | 456:9,12,17 | **kind** 305:20 | 121:1 122:5,17 |
| 140:17 160:5,8 | 381:4 384:14 | 457:11,19 | 382:1 | 125:1 126:9,19 |
| 161:17 162:11 | 385:10 388:14 | 459:7,17 460:1 | **kinds** 304:15 | 127:8 128:13 |
| 163:16 168:2 | 388:17 389:7 | 460:7 461:12 | **Kingdom** 247:19 | 131:12 135:21 |
| 168:22 174:11 | 392:5,8,9 | 461:17 462:1 | **Kirby** 3:6 6:17 | 137:3,8,9 139:3 |
| 174:14 175:9 | 394:18 395:18 | 462:10,19 | 6:22 8:1 95:17 | 139:5 142:15 |
| 178:21 179:18 | 396:1,2,7,11,15 | 464:12,13 | 112:17 114:14 | 142:18 143:14 |
| 181:10,15,19 | 396:18 398:5 | 473:17 474:7 | 123:11 130:17 | 144:3 149:16 |
| 185:17 191:22 | 399:20,21 | 474:13 476:4 | 160:5 162:11 | 149:22 154:12 |
| 192:2,14,21 | 401:9,11,16 | 478:12,13 | 178:15 234:8 | 154:17 155:7 |
| 193:1 200:2 | 404:4 405:7,12 | 480:8,9 482:20 | 239:10 264:6 | 157:3,3,18 |
| 206:15,19 | 405:18,20 | 484:4,7 486:13 | 329:20 390:18 | 161:2,20 162:3 |
| 207:2,10 | 406:8,14,18,22 | 487:4 489:11 | 393:13 410:11 | 162:16 163:21 |
| 218:18 219:20 | 407:3,7 410:20 | 490:10,12 | 410:16 412:7 | 164:10,19 |
| 222:14 226:4,5 | 411:9 412:2,12 | 491:10,11,20 | 432:18 | 165:13 167:4 |
| 230:14,18 | 412:17,20 | 491:21 492:3 | **kit** 49:3 | 169:20 170:15 |
| 231:2,5 234:8 | 413:6,14,18 | 492:11,17 | **knew** 59:6,15,19 | 170:16 173:20 |
| 234:11 238:22 | 415:10 417:12 | 493:5,9,16 | 60:13 152:11 | 176:7 177:13 |
| 239:5,10,16 | 422:15 429:13 | 494:9,14 495:3 | 252:10 296:6 | 178:22 179:3 |
| 240:1,12,14 | 429:21 430:9 | **Kazan** 235:9 | 332:3,5 371:15 | 179:19 184:8 |
| 241:21 242:2 | 431:16,21 | **Kbehre@milc...** | 402:18 449:20 | 185:7 186:11 |
| 255:19 256:3 | 432:3,8,15,21 | 3:7 | 450:1 | 187:22 190:13 |
| 258:21 260:12 | 433:7,16 434:1 | **keep** 35:13 46:7 | **knighted** 40:14 | 190:17 193:6 |
| 260:18 261:13 | 434:6,9,15,17 | 203:2 266:3 | **know** 9:14 10:5 | 193:17,18 |
| 261:21 262:7 | 434:22 435:7 | 314:8 315:15 | 14:15 15:5,7 | 195:2,12 |
| 278:19 279:14 | 435:20 436:5 | 322:10 340:11 | 17:12 24:21 | 196:21 199:21 |
| 282:18 283:4,7 | 436:14 437:7 | 408:13 433:4 | 26:12 36:16 | 200:8,9 201:1,4 |
| 283:11,16 | 437:12,18,22 | 458:16 459:5 | 37:7,20,21 | 202:16,17,20 |
| 286:14,15 | 438:5,9,19 | 460:20 461:20 | 38:22 46:13,15 | 206:19 208:5 |
| 293:16 294:2,7 | 439:1,13,18,22 | **keeps** 153:7 | 46:18 47:2,6 | 210:21 218:4,6 |
| 294:20 295:18 | 440:3,7,11,17 | **kept** 33:10 191:6 | 49:10,13,21 | 218:22 219:1 |
| 296:5,7,16,19 | 440:22 441:3 | 260:4 261:2 | 52:1,8 53:13,19 | 225:13 228:16 |
| 297:14 305:6,7 | 441:14,20 | 368:7 437:17 | 55:1 58:20 59:3 | 235:3,22 |

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 523 of 578

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 25

236:16 237:2
238:6,7,9,9,12
241:8 243:8,12
243:17 248:6
248:18,20,21
248:22 250:7
251:8 254:22
256:22 257:7
257:11 261:5
263:7 264:17
267:18 270:4,6
270:10,13
274:14,20
283:11 284:7
286:1 296:3
300:17 302:14
303:12,19
304:1 306:9,17
312:1,12,21
313:2,3 314:20
315:1,5 318:11
323:18 326:15
329:20 330:5
330:12,17
331:6 333:1,6
333:11,13,14
336:9 341:14
346:1 351:15
353:4 354:8,10
356:3 359:13
361:18 366:3
370:14,18
371:1,5,18
372:2 374:4,19
376:6 378:11
378:22 379:3
379:12,13
382:3,22
384:16,20,21
385:2,11,13
388:7,19 389:2
392:6,15 396:7
400:5,7 402:1,5
402:15 403:17
405:21 406:9
407:8,13
411:18 412:17

412:20,22
413:5,7,8 414:6
415:2 418:21
419:12 421:13
421:18,22
422:2,4,4,9
423:19 424:3
424:10,17
425:6 427:4
429:9,18
430:16,21
441:12,17,21
443:13 444:18
450:1 452:11
452:15 453:6
454:16 457:21
460:11 465:19
467:20 468:1
468:13,16
470:16,17,19
470:21 471:1,5
471:11,20
473:5,10 475:2
475:4 476:14
479:11 480:17
480:18,19,20
480:20 481:3,8
482:3 483:2,9
483:14 486:6
488:10,19
490:10 491:7
491:12,16
492:8,20 493:8
**knowing** 99:3
285:20
**knowledge** 17:22
22:5,19 23:5,6
34:12 36:15
41:10,15,19
42:3,3,7,20,21
43:1,16 45:7
75:10 76:20
90:1 91:6,10,18
91:18,20 92:1
94:13 151:3,10
151:12 154:5,8
155:11,15

156:2,21 159:2
159:2 167:20
168:6 169:8,13
170:7 171:6
175:17 180:7
180:20 182:1,4
182:8,17,20,21
183:3,9,10,11
183:16 184:5
194:16 196:7
223:3,5 240:15
246:9 247:22
252:3 276:17
280:6 369:18
374:18 419:7,8
431:19 443:11
452:3 456:15
462:7 493:20
494:6,15
**known** 16:13
26:22 27:3 80:6
107:12 219:22
277:15 393:13
449:12
**knows** 126:11
227:21 263:6
**Kuwait** 146:6

---

**L**

**L** 306:2
**L-i-d-e-r** 67:2
**L.L.C** 498:1
**labeled** 414:10
**labor** 221:6,8
223:21 225:15
**lack** 28:2 53:21
364:6 444:14
475:15 487:13
**land** 227:10,13
454:14
**land-sea** 180:16
**language** 14:17
283:21 459:1
**large** 156:15
311:7
**largest** 252:1
**late** 340:4 389:21

**laugh** 391:18
**laughable** 392:12
393:2,4,6,17
**laughing** 84:16
**launch** 472:11
**law** 387:17
447:17
**lawsuit** 12:2
15:18 20:15
120:15,22
121:17 127:4
375:8,17,20
426:12,21
462:21 463:3
**lawsuits** 16:12
**lawyer** 9:4,5 19:4
73:4 153:22
322:18 341:10
354:8 388:20
409:19 411:16
412:14 431:3
**lawyers** 19:5
70:18 108:15
377:7,19 378:9
379:2,10,15
380:1,18
381:11 383:1
383:22 386:14
386:18 387:1
393:18,21
394:3 398:19
402:18 403:17
404:21,22
409:15,17
413:20 414:1
414:17 482:16
483:5
**lead** 229:8
379:16 381:14
439:19
**leadership**
186:21
**leading** 431:16
431:21 432:8
432:15 433:16
434:1,17 435:7
438:10 439:18

**leads** 55:21
378:17
**leaking** 395:9
**learn** 182:13
183:11
**learned** 173:21
183:14 426:1
450:3
**lease** 156:19
250:7 311:8,15
311:15
**leash** 368:8,10
**leasing** 57:14
156:18 196:12
311:12,13
312:10 364:3
**leave** 302:13
**led** 380:20
381:18 382:4
383:1
**left** 82:3 116:11
117:7 134:2
148:7 149:4
215:1 302:11
351:11 460:13
**legal** 3:22 37:21
43:10 44:20
76:17 91:14
135:22 139:8
168:20 175:14
176:2 204:11
258:20 259:12
260:6 261:12
261:18,19
262:6 264:8
278:12 307:14
328:5 351:22
353:10,17
354:2,9 377:6
378:3 384:15
397:20 398:10
430:16 431:1
464:21 481:17
482:1
**legend** 396:6
**Leggett** 236:1,3
237:2

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 26

**lenders** 291:18
  294:13
**Lepper** 36:21
  184:14
**let's** 69:14 73:5
  81:22 133:1
  254:20 255:1
  315:19 402:22
  429:21
**let's** 17:14 20:8
  22:21 23:19
  25:2 44:6 81:14
  81:15,21 82:5
  86:11 125:21
  127:18 130:21
  132:16 138:20
  225:8 251:4
  264:18 279:5,6
  279:15 305:3
  316:21 331:13
  332:22 336:1
  350:8 352:12
  380:11 389:16
  390:13
**letter** 243:19,22
  257:21 260:19
  261:4,9 264:16
  339:13 400:15
  401:19 403:12
  405:1,4 408:10
  408:20 409:9
  410:1 455:14
  457:13 493:19
**letting** 129:9
  399:10
**level** 186:21
  214:17
**levels** 214:9
**liaison** 335:16
**liars** 393:13
**license** 147:7,11
**licensed** 139:19
**licenses** 172:7
**Lider** 66:21
**lie** 376:3 392:2
  393:10
**lied** 375:10,11

**life** 82:3 157:15
  158:9 159:1
  174:4,9 202:6
  202:10 214:1
  289:6 290:12
  291:12 299:10
  329:9 485:2
  486:17
**light** 365:2
**limited** 105:2
  120:7 124:15
  248:15,16
  389:20 400:20
**Linder** 68:1
**line** 5:7 225:21
  227:21 230:12
  342:13,16
  499:11
**links** 384:7 440:6
  440:10 441:9
  481:20,22
**list** 222:19
  223:10,14
  282:5,12,22
  285:8,14
  294:11 297:9
  298:11 299:9
  304:9 307:1,8,9
  307:10 359:3
  452:9 473:11
**listed** 222:5
**listen** 115:17
  378:22
**liter** 362:18
**literally** 13:6
  86:19
**litigant** 16:12
**litigation** 14:13
  16:7 55:10
  375:5 403:4
  415:1 427:14
  427:19 428:7
  428:16 431:7
  478:5
**little** 28:10
  115:15 137:20
**live** 418:3 441:5

**lived** 16:8
**lives** 303:14
  333:2
**LLC** 30:8 35:17
  36:1 46:16,17
  51:5,21 54:21
  62:18 66:8
  106:16 119:10
  141:12 171:13
  270:2 305:9
  323:12 499:1
**LLP** 2:6 3:11
**loan** 376:5
**loans** 487:19
  488:15
**local** 143:12
**locate** 493:10
**located** 69:11
  138:3 270:7
  490:20
**locked** 109:17
**logistic** 60:21
  184:2 196:18
  213:6 216:8
**logistics** 10:17,19
  12:5 35:16,17
  36:1,5,5,18
  37:6,13 51:8
  58:2,13 60:17
  66:22 75:14
  77:16 78:6,8
  120:2,13 177:8
  177:12 185:1,6
  186:10 200:4
  205:19 209:12
  242:10 257:14
  280:3,14 281:3
**Logistics'** 37:12
**London** 375:15
  387:3
**long** 12:22 29:7
  29:18 49:19
  66:13 106:3,18
  115:17 156:22
  157:1 165:14
  246:7 448:20
**longer** 47:13

205:7 289:1,2
  292:16 293:4
  310:9,16
**look** 13:22 24:12
  25:13 29:20
  30:10 31:12
  40:6 74:12 82:5
  85:16,18,20
  86:11 122:8
  124:8,11,14
  125:10 128:15
  129:9,19 130:4
  130:9,14
  131:13 138:20
  139:1 141:16
  149:6 159:12
  161:9 167:7
  171:22 177:2
  177:19 212:3
  213:1 219:14
  223:14 230:4
  230:22 231:6
  233:18 240:11
  240:21 241:17
  252:13 254:20
  255:1 260:19
  283:22 285:17
  296:21 304:4
  324:8 352:12
  366:22 373:21
  375:7 395:19
  402:22 405:19
  440:20 450:8
  452:5 453:14
  453:20,21,21
  453:22 455:12
  455:14,22
  459:3,9,14
  461:5 469:13
  484:16
**looked** 84:7
  141:11 189:21
  231:18 431:11
  434:12 454:3
**looking** 28:17
  85:13 86:2
  128:12 203:14

352:7 359:22
  394:19 453:7
  458:4 460:16
  487:5
**looks** 192:18
  206:17
**lose** 198:11,15
  289:14 489:16
**loses** 219:3
**losing** 203:5
  329:5
**loss** 115:15
  227:18,22
**losses** 203:7
  204:8 205:9
  213:13 234:2
  253:18 483:18
  484:9
**lost** 199:14,18,22
  203:1 204:13
  216:22 217:3,4
  292:4,8,21
  329:10
**lot** 46:3 110:21
  110:22 111:4
  142:21 143:16
  216:22 217:16
  221:13,14
  228:12 255:18
  292:11 327:12
  327:16 409:14
  409:17 419:19
  419:19 445:21
  446:6
**lots** 210:3 246:19
**louder** 159:20
**low** 362:6
**lowboy** 371:12
**lower** 128:22
  486:4 492:8,20
**luck** 83:18 230:6
**lucky** 441:4
**Lufthansa**
  194:20
**lunch** 174:12

———————
**M**

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 525 of 578

5/21/2024       Farhad Azima v. Nicholas Del Rosso et al.       Farhad Azima

Page 27

**M** 1:21 8:13
175:6 498:1
499:2
**M-a-c-h-u-t-a-...**
333:7
**Maarouf** 207:5
208:1,21 210:7
357:1,2,11,13
357:20
**Maarouf's** 357:4
**Mach** 252:17,19
253:7,14
254:17
**Machutadze**
333:6 335:4,6
338:10
**macro** 186:21
**mad** 40:11
**Main** 489:15
**maintain** 79:21
106:22 109:2
117:21 118:14
120:5 150:2
187:3 221:7
232:14,21
233:8 266:12
292:5,22 293:2
341:20 467:10
468:9 469:1
**maintained**
286:6
**maintenance**
111:1 156:14
156:15 157:17
220:4,20 221:4
222:4 225:13
226:20 249:20
287:8,8 337:19
**majeure** 487:7
487:12
**major** 180:17
193:18 329:9
**majority** 37:8
54:3 119:14,17
132:11 135:11
194:21 273:5
278:20

**making** 9:6 119:4
261:18 268:17
**man** 97:1 270:19
380:2 387:8
415:15
**manage** 57:18,20
184:20
**management** 1:7
5:18 7:5 11:22
12:16 14:8
35:19 53:21
78:21,22 142:3
143:6 160:18
172:7 190:1,4
190:13,16,18
242:5 249:21
250:2 252:17
273:14 278:1
280:5 282:5,11
282:21 285:6
299:12 310:7
310:14 370:21
374:8 376:10
378:18 379:6
379:17 380:22
381:19 382:6
383:3,14,20
**manager** 31:16
69:3,4 103:7
144:3,6,6
228:13 229:10
231:15,20
**manager's** 144:8
**managers** 144:13
**manages** 57:16
**managing** 12:1
54:14 62:9 79:1
119:19 121:21
**manufacturer**
225:19 347:12
**manufacturers**
452:13 453:3
**manufacturing**
251:14
**March** 267:10
273:5 287:6
**marine** 36:5

**marital** 38:20
39:4
**mark** 296:8
410:10
**marked** 12:17
29:14 103:2
123:7 159:6
176:18 189:1
192:4 206:3
211:19 215:12
219:7 234:7
243:10 244:6
244:15 256:5
264:21 266:22
282:1 293:7,10
293:14 296:12
301:13 307:20
313:12 316:5
334:11 339:4
343:4,7 346:16
350:1 356:15
360:11 366:6
372:4,7 389:5
407:5 410:18
412:8 414:4
464:4
**market** 144:22
149:8 152:13
194:17 252:4
349:6,9 359:14
**marketing** 287:9
**marking** 12:10
188:22 275:4
322:6 389:9
406:19 412:3
421:21 459:21
461:15
**markup** 311:14
**marriage** 496:15
**Marshall** 236:20
**Massaad** 133:19
133:22 346:6
**mastermind**
472:8
**materialize** 64:11
**materialized**
167:14

**materials** 290:18
291:4
**matter** 7:3 32:13
130:9 171:4
172:20 201:16
233:11 496:17
497:6
**McIntire** 428:11
428:12
**mean** 15:8 16:20
17:11 20:4
35:16 38:6,8,18
48:20 70:22
71:10 72:9,16
75:12 132:7
155:20 169:9
181:12 231:17
239:10 245:19
248:17,21,22
251:13 254:21
293:5 298:11
306:11 321:3
323:17 358:7
403:16 440:14
445:9,13
447:21,22
448:6 452:1
485:2
**meaning** 15:21
17:18 272:10
274:10 355:1
463:1 465:2
**meaningless**
331:11
**means** 15:4 21:15
40:22 42:12
71:12 109:9
127:11 251:17
398:20 404:6
463:21 464:6
466:9
**meant** 445:10
463:9 464:16
465:6
**measurable**
196:3
**measure** 195:13

196:6,9
**measures** 109:2
118:19 335:3
**mechanical**
196:3
**media** 472:15,19
**medications** 10:3
**meet** 402:4
**meeting** 318:15
321:20 384:18
**meetings** 318:17
383:8 396:22
**Mehrdad** 68:11
**member** 38:7
215:3
**members** 112:1
132:11,15
133:3,11
217:10
**memories** 29:19
**memory** 10:4
85:17 115:18
121:7 122:20
136:21 160:4
337:22
**mentioned**
145:22 482:9
**mentioning**
56:22
**mere** 330:13
332:13 365:18
380:4
**merely** 11:17
353:14
**merged** 217:2,13
**mess** 198:5
**messages** 394:15
**Messrs** 390:18
**messy** 197:19
**met** 179:9 216:14
217:8 333:16
378:3,8 385:4,6
396:21 401:2,4
401:5,12,22
402:3,13
**Meta** 449:11
482:7 483:6,11

5/21/2024             Farhad Azima v. Nicholas Del Rosso et al.             Farhad Azima

Page 28

Michael 10:20
Mid 302:14
  364:20
mid-sentence
  317:5
middle 1:2 7:6
  112:5,6 116:10
  117:8 121:3
  146:7 156:11
  190:1,10 191:4
  311:1 317:15
  330:4 461:8
midsentence
  331:3
Miler 6:20 412:5
miles 223:17
military 184:3
  236:21 298:20
Miller 3:2 385:16
  387:1,17 400:1
  400:4,18 403:2
  403:3 413:21
  414:3 497:1
million 198:6
  236:16 394:3
  449:2 490:3
millions 376:16
  376:19
mind 11:17 14:20
  14:22 22:22
  26:2 38:18 39:2
  41:19 43:17
  69:22 139:15
  155:2 176:11
  231:7 298:14
  467:5
mine 73:18 74:1
  76:8 91:18
  104:16 230:6
  266:8 337:1
  348:19
minister 238:8,8
  238:12
Minnikhanov
  238:12
minority 45:19
  45:21 54:6

278:22 279:7
  279:16
Mintimer 238:11
minute 159:11
  262:21
minutes 249:4
  429:22 491:10
misappropriate
  467:7
misappropriated
  80:20 463:16
  469:11
misappropriati...
  19:22 21:1
misappropriati...
  484:10
mischaracterize
  151:19 473:18
mischaracteriz...
  116:22
mischaracterizes
  18:15 20:2 25:4
  32:18 41:22
  61:11 70:6
  72:18 81:11
  94:4 116:20
  136:15 137:12
  140:15 150:14
  263:15 281:8
  291:9 312:8
  467:13 473:16
  482:18
mischaracteriz...
  136:17,20
miserably 173:12
misrepresent
  405:11
missed 22:18
missing 186:1
mission 146:17
  302:10 359:20
missions 327:4
Missouri 490:22
misstates 25:7
  108:4 494:8
misstating 398:4
mistake 26:12

217:6
mister 401:21
misunderstand...
  113:5
mixed 305:20
MMC 64:6
mobilize 327:12
  327:17
model 221:21
  224:21 454:21
models 156:15
  223:21
modest 361:22
modification
  49:6
modified 480:5
  481:11,22
  482:4
Mohib 313:22
Molodinashvili
  231:14 232:14
money 46:2,3,5
  47:16 155:22
  158:1 180:19
  182:7,12 196:6
  196:10 198:11
  198:15 204:13
  205:7 217:1
  227:18 253:7
  253:13 276:14
  289:14,17,19
  299:4,8 311:14
  311:21 319:9
  351:10,12
  426:10 427:13
  428:5,10,14
  447:13 489:16
  492:4
month 17:16,17
  329:6,8,10
months 159:3
  250:4,12 406:4
  406:5
motion 452:1
mouth 81:9
move 191:19
  239:14 249:14

252:4,12
  318:15 332:22
  396:12
moved 137:16
  138:15 140:5
  229:9 289:9
  329:16
MRO 219:10
  223:6 227:2
  228:2,5,11
  229:22 233:14
  255:5 334:14
  334:20 337:2,3
  337:19 453:12
  454:15
MULLINS 2:6
  3:11
multiple 16:12
  141:7 439:6
  466:12 494:16
  494:18
mutual 232:20

**N**

N 3:1 5:1,11 6:1
  175:1,1,1
N.W 2:7
Najas 324:1
name 37:20
  45:13 50:21
  54:12,12 66:9
  67:6,22 68:2,5
  68:10 106:14
  117:10 141:10
  143:17 144:8
  172:21 216:2
  249:21 269:21
  277:20 287:14
  297:7 322:3
  384:19,20,22
  385:1 389:11
  400:7 401:21
  419:11 421:19
  422:1 446:9
  488:19,21,22
  498:5 499:9
named 66:8

323:19 324:1
names 54:9 111:4
  336:4 352:19
  378:11 385:12
narrow 61:20
Naseri 313:22
  314:4,8
Naseri's 315:9
Nat 290:5 304:22
national 217:5
  304:22
Nations 265:17
native 294:3
nature 45:13
  75:6 132:9
  171:6 280:22
  295:12 299:1
  307:15 311:12
  332:18 358:2
naval 80:4
Navy 178:2 187:8
  188:3,5,12,17
  199:16 200:4
  200:16,21
  203:17 205:20
  477:3,6
NDA 111:13
  112:9,10 117:6
  117:12 150:3
  150:11 228:18
  286:9 349:18
  349:21 419:20
  420:10
NDAs 108:1
  111:7,21 112:1
  112:18 113:12
  114:18 193:13
necessarily 77:14
  226:12,13
  263:8,9 290:22
  295:6,8 324:10
  353:6 416:1,4
necessary 228:21
  270:18 326:1
need 24:12 39:8
  39:22 40:1,3
  85:15 106:3

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 29

122:17 153:19
177:19 186:17
198:20 199:6
212:13 221:15
224:22 230:18
318:18,20
361:2 364:16
364:21 365:2
397:21 398:1,6
398:20 469:12
478:11
**needed** 468:20
479:22 488:2
**needs** 296:21
419:5
**negotiated**
339:20
**negotiating** 153:5
369:10,11
**negotiation** 165:5
346:8 367:8
369:9
**negotiations**
367:11,19
**Neil** 341:6
**neither** 121:21
297:13 341:10
**NELSON** 2:5
3:11
**nephew** 50:20
**net** 289:7 345:16
**never** 32:16
55:14 78:8 83:7
122:1 134:1
196:19 219:13
227:11 273:12
273:13 277:16
288:18,20
319:16 320:2,2
320:3,3 322:3
342:21,22
349:21 386:13
395:13 401:2,3
401:22 402:3
404:12,21
426:6 429:18
483:4

**new** 112:8 171:12
171:20 224:21
226:19,19
236:6 265:3
308:8,13
318:16 411:16
477:12 481:22
496:7
**news** 472:15,19
**nice** 223:3
**Nicholas** 1:7 7:4
14:7 374:7
376:10 397:1
497:3 498:4
499:8
**Nick** 374:13
378:17 379:7
379:18 380:21
381:20 382:5
383:2,13,19
**nickels** 359:22
**Nicolas** 5:17
12:15
**Nodding** 9:18
**Noel** 215:22
216:2,4,5
**noise** 49:4
**non-commercial**
273:16 309:20
**non-highlighted**
124:3
**non-tipping**
198:1
**non-trade** 353:21
**nondisclosure**
63:17 65:19
67:14 79:17
107:9 108:8
112:10 114:5
115:21 116:16
143:22 231:12
334:1
**nonresponsive**
181:11
**nonsense** 375:7
**nonU.S.-regist...**
146:10

**Nope** 271:14
**normal** 154:9
156:1,5 179:12
180:6
**normally** 58:18
109:16 112:8
165:21
**North** 1:2 3:14
7:7
**northern** 64:10
208:17 235:14
237:7 241:14
242:21 446:8
**Nos** 5:19 12:16
**Notary** 2:13
496:5 498:22
**notation** 298:22
**note** 159:13
185:14,18,20
192:10 206:12
245:3 256:5
293:22 360:19
**noted** 116:5
175:2 329:21
495:11 498:11
**Notice** 2:9
**noticing** 497:12
**notified** 319:4
**noting** 497:12
**November**
267:14
**NTI** 446:8
**number** 15:4,21
25:5,6,14,21
26:4 74:16
77:18 82:5,7
84:2,7 85:5,20
85:21 86:12,22
93:3 123:9
139:17 149:19
172:13,14
173:22 176:20
189:2 192:8
206:5,21
217:15 223:16
223:16 225:21
225:21 226:4

229:18 234:10
234:15 244:17
255:3 256:8,11
267:1 268:2,3
270:22 275:5
284:3 293:20
294:1,3 297:8
300:14 301:14
313:14 323:5
350:3 356:17
362:18 366:7
370:22 394:4
406:22 412:16
413:10,12
452:5 479:1
489:14
**numbered** 123:7
**numbers** 23:3
85:10 98:15
171:9,10 187:1
192:22 253:2
259:22 267:16
295:4 306:2,3
337:14 448:15
454:1 458:4
**numerous** 57:10
239:20
**Nuravia** 235:7,17
236:5 237:3
238:1,4
**nuravia06@nu...**
235:6
**NW** 1:21 3:4
497:2 498:1
499:2

--------

**O**

**O** 5:11 6:1 175:1
175:1,1
**o0o** 4:19
**oath** 4:15 17:2
26:15 77:22
84:5 93:1,16,22
96:1 100:17
**object** 39:11
101:3 153:22
296:2 411:6

429:11 436:5
436:14 437:18
443:9
**objected** 73:4
**objecting** 39:21
**objection** 18:14
19:7 20:1,16
25:3 31:2 32:17
38:10,13,19
39:9 41:4,6,21
42:9 43:6,9
48:18 59:7
61:10 65:8 70:5
70:12 72:17
76:16 78:16
85:14 87:7,16
88:14 89:2
91:13 92:15
93:7 94:3 95:2
100:22 101:2,9
103:17,22
104:20 105:3
107:18 108:4
110:10 116:20
117:13,22
120:6,8 121:18
122:4 132:2
134:6,12 135:4
135:12 136:14
136:19 137:11
140:14 147:4
150:13 151:18
154:11 155:17
156:4 161:15
161:21 162:9
163:19 168:19
170:4 175:13
176:1 179:16
181:1 182:9
183:18 184:10
195:10,16
198:4,18
204:10 214:6
226:15 234:9
240:20 241:19
256:6 258:19
259:11,19

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 30

260:5,11,12
261:11 262:11
263:14 264:4,7
266:14 274:6
278:11,18
279:12,21
281:7 289:22
290:20 291:8
294:19 295:21
297:11 299:6
301:6 307:13
309:14 312:7
320:15 321:5
321:15 322:1
322:12 327:18
328:4,11
329:21 331:16
333:15 340:5
341:22 342:10
351:21 353:9
353:16 354:1
356:1 358:5
365:9 368:13
370:4 374:15
374:21 377:10
378:19 379:20
385:19 386:3
386:11 387:4
388:2,11 398:3
398:8,17
399:12,17
404:9 408:5
409:1 411:5,21
414:8 417:6
422:14 426:13
426:22 427:9
428:2 429:17
431:16,21
432:3,8,9,15,16
432:16 433:7
433:16,17
434:1,15,21
435:7,20 437:7
437:12,22
438:5,9,19
439:1,13,18
440:3,7,11

441:14,20
442:2,12,17
443:12,18
444:4,12,17,22
445:7,18 446:5
446:11,16,21
447:6,11
448:13 449:3,9
449:15,22
451:2,12,17,21
452:17 453:2,8
454:8,12 455:6
455:10 456:9
456:12,17
457:11,19
459:7,17 460:1
460:7 461:12
461:17 462:1
462:10 464:10
466:22 467:12
468:10 473:2
473:15 476:1
476:10,11,21
477:17 478:9
480:6 482:17
483:12,15,21
485:17,19
486:12,15
487:2 489:8,10
489:19,20
490:14 491:18
494:7,12
**objectionable**
118:22
**objections** 4:8
5:15 9:6 12:13
14:6 40:2 43:19
44:19 176:12
260:17 264:5
328:12,16,17
381:2 383:16
432:18,20
434:3
**obligates** 187:11
**obligation** 287:19
**obtain** 148:8
149:11 156:2

167:10 170:2
180:14 182:8
277:7 308:12
371:21 417:18
488:3
**obtained** 167:20
168:6 169:18
371:1,5,15
478:17 479:7
493:20 494:17
**obtaining** 147:18
196:7 308:8
**obvious** 22:19
**obviously** 11:13
17:8 25:1 30:17
66:14 87:21
88:1 89:13
146:20 147:3
163:4,6 164:9
182:20 196:5
206:21 208:21
214:17,18
246:6 280:17
286:20 288:2
320:21 323:20
345:16 347:19
354:20 357:16
359:9 369:19
442:3 448:8
455:11 459:22
472:8
**occur** 201:20
213:17
**occurred** 195:14
**occurs** 415:3
**ocean** 36:9
**October** 462:21
**OEM** 347:11
**OEMs** 349:14
**offer** 399:9
**offered** 402:18
403:18 404:7
**offering** 400:19
401:19 405:2
**offers** 398:2,7
**office** 57:6 112:5
117:8,9 274:3,7

497:7,15
**officer** 4:14 48:3
58:8 62:14 63:9
64:20 65:1,15
66:18 67:10
80:5 156:9
200:17 242:14
339:18 457:3
**officers** 51:13
53:5 57:7 114:8
148:19
**offices** 2:5 109:13
111:14,16
116:12
**official** 216:15
**Oh** 95:16 137:2
149:12 271:21
289:18 372:13
**oil** 235:15
**okay** 9:15 10:1,6
10:20 11:4,17
12:9 13:2 14:21
15:5,9,16 16:3
17:14,16 18:5
19:13 20:7,10
20:13 21:9,13
21:15,20 22:8
22:21 23:10,14
24:8 25:2,19
26:3,10,13,20
27:6,21 28:9,15
28:22 30:1,18
31:5,11 32:10
32:22 33:3,6,12
33:16,19 34:3,7
34:11,17 35:15
36:4,8,13,16
37:3,8 39:6,19
41:1 42:5 44:4
44:9,16 45:9,20
46:4,8 47:1
48:6,10,16
49:21 51:11,13
51:20 53:11,19
54:1,4,14,20
55:8,17 56:12
56:20 57:1,13

57:17,21 58:4
59:1,6,10,18
60:11 61:2,13
62:4,8,11 63:6
64:5,12,17 65:3
65:6 66:12 67:7
67:18 68:8,11
68:16,19,21
69:14,20 70:17
71:3 72:4,8
73:5,19,21 74:3
74:12 75:12
76:1 77:11,15
77:21 78:14
79:2,6,16,20
80:13 81:2,17
82:17 83:11
84:10,11 85:2,9
86:11,21 88:5,8
90:5,12,15 91:5
91:19 92:5 93:7
94:8 95:18 97:3
97:4 98:10,16
99:20 101:21
102:9,22
103:13,19
104:12 105:14
105:18 106:2,7
106:13,20
107:6,10,15
108:12,14
109:14,19
110:2 114:13
114:17 116:14
117:3,10,17
119:16,18
121:12,22
122:15 123:19
124:19 125:7
125:21 126:4,6
127:12,18
128:3 129:22
130:2 131:10
133:20 135:1
136:7 137:2
138:11,12,20
140:7 141:13

5/21/2024　　　Farhad Azima v. Nicholas Del Rosso et al.　　　Farhad Azima

Page 31

141:16 142:6
142:12 143:1,5
143:10,18
144:11 145:16
145:20 146:18
147:1,17
148:11 149:5
149:22 150:10
150:16,19
152:9,15 153:4
153:10 154:17
157:20 158:10
158:15 159:5
161:7,13
162:18,21
163:11 165:22
166:10 167:2
168:9,16
169:15 170:8
171:15,19,22
172:17 173:20
174:7 176:9
177:11,17
178:4,12 179:5
180:12 184:4,8
184:17 185:8
186:3 187:2
188:9,15 189:6
189:13 190:12
191:13 192:22
193:12,22
194:8 196:21
198:7 199:12
199:21 200:13
202:1,13,19
203:6,11 204:2
205:9 206:2
207:18 208:7
208:11,13,21
209:14,19,22
210:10,13,19
211:2,18
212:16 213:8
213:19 214:15
216:4 218:4
219:6 220:8,9
221:22 222:10

222:22 223:13
223:18 224:17
225:1 226:9,22
227:3 228:1
229:16 231:8
231:10,21
232:2,19 233:3
233:6,13,22
234:22 235:5
235:10 236:8
237:9,12
238:19 239:9
241:13 242:12
243:9 244:2,5
247:13 248:13
249:8 251:4,7,9
251:16 252:12
252:19 253:5
253:22 254:20
255:1,8,16
257:13,17
261:8 263:17
264:18 266:1
266:21 268:12
269:2,12,18
270:21 271:21
272:14 273:6
274:13,16
275:12,17
276:2,8,12,16
277:12,19
278:9,15
280:18 284:5
284:13,19
286:3,10 287:2
287:11 288:6
288:13,22
289:18 290:3
291:1,15 292:7
294:8 295:7,13
297:2,14,22
298:4,9 299:11
299:15 300:1,9
300:17 301:12
303:5,9,15,20
304:5,8 305:3
305:12 306:9

306:14,22
308:15,19
309:21 312:5
312:12 313:21
315:7 316:14
316:17 317:13
317:20 318:8
318:11 319:7
319:20 320:1
320:19,22
321:13,19
323:3 324:11
324:14,19
325:4,13
326:18 327:15
328:1,18 329:2
330:15 332:11
335:1,8 336:8
337:16 338:7
338:19 339:22
340:3 343:20
344:5,16,19
345:2,9,13,16
346:15,22
347:6,17 348:9
348:14 349:1
349:16 350:18
351:13,18
352:17 354:7
354:15,22
355:3 356:14
356:22 357:10
358:3,9,20,22
359:9 360:4,10
362:7,21 363:1
364:14 365:4
365:18 366:18
366:21 367:14
367:22 368:16
369:2 370:9,11
370:19 371:19
375:14 376:1
376:18 378:7
378:14 380:16
381:17 382:3
382:12 383:7
384:2,17,21

385:3,11 386:1
386:7,15
387:20 388:19
389:8 392:15
393:1 394:5,9
394:22 395:15
397:14 399:1
400:9 402:10
404:22 407:8
407:14 408:8
408:19 409:18
409:22 410:5
411:15 414:14
414:22 416:2
416:13,18
417:2,9 418:15
418:17,22
419:8,13 420:3
421:4,16,18
422:5 423:8,15
424:9,12,17
425:8,12,18
427:5 428:13
434:3 439:22
453:14 463:5
464:1 465:4,19
466:11 467:8
467:18 468:14
468:19 469:4
469:19 470:12
470:22 471:12
471:22 472:6
473:6,12
474:13 477:4
477:11,14,22
479:7 480:14
480:22 481:5
481:16 483:16
484:5,18 485:1
485:5 486:1,7
486:22 487:9
487:14,18
488:11,13,16
489:9 490:18
491:16 493:3
494:2 495:2
**Oklahoma**

193:11,14
275:22 490:21
490:22
**old** 440:21
**older** 56:21 441:1
**once** 148:3 201:6
289:19 319:2
319:12 349:12
401:3
**one-man** 255:17
**one-third** 37:4
**ones** 123:12
254:10 377:20
379:18 380:22
381:16 382:6
383:3,14
442:21 473:5
**online** 397:4
417:21 418:1
437:5
**open** 495:4
**opened** 290:7
**opening** 198:3
**operate** 71:14
236:19 237:1
309:6 349:7
**operated** 146:12
310:22 328:7,8
331:15 332:3,6
332:9,14,14
369:15 456:21
457:5 494:20
**operates** 27:5
144:5 220:18
**operating** 49:7
51:21,22 53:11
90:2 137:14
144:22 147:12
148:6,7 208:20
305:2 325:10
349:8 369:19
369:21 371:8
445:11 456:13
**operation** 35:8
58:16 112:5,7
116:10 134:2
144:7 171:8

Case 1:20-cv-00954-WO-JLW　Document 379-7　Filed 07/15/24　Page 530 of 578

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 32

172:8 178:1,8
178:10 179:22
180:15,17
201:7 204:1
205:6 245:16
268:4,8 273:1
288:21 292:20
306:13 307:5
308:22 314:13
314:17,18,22
325:3 329:4,5,8
332:18 347:9
347:13 351:10
359:20
**operational**
132:6 236:17
329:16
**operations** 34:12
49:11,22 52:2,9
53:14,20
110:16 111:6
112:2 113:18
180:7 220:5
287:7,9 445:3
477:18,19
**operator** 7:17
445:12
**operators** 446:1
495:1
**opinion** 266:16
**opponents**
173:11
**opportunity**
241:1 475:20
476:7,17
**opposed** 194:13
276:21
**opposite** 476:2
**option** 497:9,10
**oral** 404:5
**order** 43:16
149:10 153:12
156:2 277:7
300:2,4 461:1
**organization**
156:16
**organize** 299:13

**original** 347:11
347:12 368:3
497:11
**originally** 13:16
138:13
**outcome** 496:16
**outreach** 390:20
**outside** 104:21
143:8,10
144:17 156:1
163:8 179:12
179:20 180:5
184:18 214:7
223:6 247:14
251:21 411:5
414:8 419:6
427:1,10 478:9
483:22 491:18
492:1
**overall** 144:21
145:6 280:7
344:3
**overflew** 243:6
**Overflies** 243:2
**overhaul** 337:19
**overhead** 344:12
345:3,19
**overtime** 460:12
**Overview** 337:13
**owe** 46:3
**owed** 46:2,5
319:9
**owned** 27:7,10
37:3,4 52:15,16
56:16 74:21
76:5 88:6
102:14 138:1
147:8 148:12
148:13 150:11
150:22 151:4
161:7,12
189:20 194:22
205:21 216:19
258:12 265:8
272:21 273:5
276:10 279:19
280:16 281:11

281:13,16,17
301:3 306:17
311:6 319:12
319:18 328:7
338:7,9 488:1
**owner** 24:4,19
54:11 70:8,21
71:11 72:8 73:8
82:9 135:11
191:3 272:3
279:16 282:19
**owners** 36:17
71:1 278:15
**ownership** 30:21
38:21 39:4
40:19 52:13
56:1 57:1 71:4
71:10 76:6,19
90:8,9 119:10
120:10 205:21
273:6 278:17
365:12
**owning** 147:21
148:14 325:11
**owns** 38:17 39:4
40:22 41:2,3
42:13 43:5,17
74:22 75:1
82:12 89:9,13
89:14,16,21
90:16,20 92:21
99:22 271:7
272:8 276:9
306:15

---

**P**

**P** 3:1,1
**P-i-r-o-u-z** 54:12
**p.m** 175:2 495:11
**p/v** 60:19
**PACER** 396:5,6
**package** 372:12
**page** 5:2,7,12 6:2
13:3,5,6 14:22
16:4 17:2,12,15
17:15 19:1,1
20:9 22:21 25:4

25:5,15 26:1
30:1,6 31:14
69:20,21 74:13
74:17 85:22,22
86:12 99:13,14
130:7,13
131:18,19,19
133:4,5,6
139:13,16
141:20 159:16
160:9 162:13
185:22 186:1
226:2 230:7
231:7 265:10
271:15 283:22
283:22 305:4,5
305:6 306:3
327:1 337:10
337:11,15,16
358:22 359:9,9
359:10 370:9
370:22 389:17
394:21 395:11
395:22 396:1
400:21 402:22
403:9,10,11
427:12,17,22
454:1,1 457:16
458:3,7,11
459:9,10,15
461:5 493:19
497:12 498:4
499:11
**pages** 23:11
123:8 186:1
454:4 455:3
461:10 498:7
**pagination**
185:21
**Pahlad** 64:6,18
**paid** 46:4 155:15
155:20 182:14
227:13 229:12
253:15,16
254:10 269:8,9
269:16 274:21
281:20 299:13

426:11 427:13
428:6,11,14
**paid-off** 406:3
**PALM** 496:4
**Pandey** 6:14
385:11 407:5,9
407:11 408:3
408:21 410:1,7
428:14,19
429:3
**paper** 84:22 85:3
151:8 222:13
274:14 338:9
**papers** 151:6,7
274:11 449:4
**paragraph** 31:12
140:1 142:8
370:2 389:17
389:18 390:14
407:15,22
456:1
**paraphrasing**
153:21 493:18
**part** 34:22 62:11
63:7 65:11,13
66:15 67:7
77:20 79:5
168:6 177:17
180:21 182:2
182:18 186:5
186:13 189:13
194:11 198:9
235:8 249:9
273:14 288:15
323:15 335:17
335:18 350:9
352:10,12
354:5,17,19
355:12 356:10
357:13,21
453:21 461:2
484:6
**partially** 74:22
**participated**
273:13 288:19
288:20 319:16
320:2,3 325:2

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 33

participation
  279:4
particular 14:1
  17:1 26:14 70:3
  72:22 84:14
  125:7 126:17
  168:17 171:1
  173:8 182:8
  189:14 194:12
  195:7,19
  200:14 202:8
  205:14 220:11
  222:16 223:1,9
  227:19,22
  231:3 235:18
  237:12,17
  239:18 241:16
  246:4 259:6
  268:12 269:3
  275:18 285:18
  286:5 288:7
  309:21 310:2
  318:9 349:1,4
  351:3 355:19
  380:17 395:4
  408:9 411:2
  413:1 426:12
  427:14 428:15
  471:15
particularly
  201:17 211:12
  230:22 261:8
  473:5
parties 4:4
  254:10 359:2
  396:3,20 397:1
  434:14 435:4,5
  435:16,17
  436:1,2,3
  458:14 462:5
  466:16,17
  468:2 496:14
partner 58:15
  62:9 79:1,11
  119:19 314:11
partners 58:19
  59:2,9 79:17

104:10,15
  105:11 326:11
  351:17
partnership
  427:8 428:1
party 16:14
  306:4 458:16
  458:22
pass 339:2
passed 216:10
  436:12
passenger 49:5
  172:10 268:8
  311:7 457:7
passengers
  251:22
password 420:13
  421:1,6,10,11
  422:12 423:9
  423:16 424:13
password-prot...
  423:5,7 433:21
  434:20
passwords
  420:22
Patrick 426:11
  426:19 427:7
Paul 428:6,8
pay 197:21,22
  198:5 253:7,9
  253:14 269:10
  296:6 300:9
  301:5 400:19
  401:19 402:18
paying 197:16,17
  449:1
payload 371:9
pays 305:17
  311:16
Pearce 256:19
pedestal 40:4
peers 398:11
penalty 17:19
  18:6 19:14
  464:3
pending 15:6
  40:5 115:8

128:20 129:22
  353:11 395:17
  403:20 404:1
  490:9
people 51:15
  53:22 59:5 80:3
  80:4 105:16
  110:21,22
  111:5 142:22
  143:12,16
  164:1,3 203:1
  216:13 219:1
  221:11,16
  224:18 236:4
  242:5 247:1
  248:5,20
  249:14 250:5,5
  252:9 255:18
  278:2 285:11
  285:12,14,21
  286:4 289:8
  291:18 292:4
  292:21 307:9
  329:6,11 332:2
  352:18 353:3
  361:4 370:17
  370:17 393:18
  393:21 401:2
  409:14 416:22
  419:19 425:1
  425:14 426:2
  436:11 437:14
  445:21 454:16
  459:19 460:5
  467:4 468:8
  479:9,13,14
  481:15 482:2
percent 27:11,12
  27:14,18 28:1,2
  28:12,20 29:1
  30:15 32:3 34:4
  35:3,14 44:7
  47:21 48:5
  52:16,16 54:7,8
  54:8,11 56:11
  107:4 131:11
  134:20 137:15

137:21 138:15
  147:8,18,22
  148:2,9 161:7
  164:5 189:19
  189:20 216:19
  257:20 265:8
  272:21 274:9
  274:11 276:10
  278:14,16,16
  278:21 281:11
  281:13,17
  288:14 304:2
  309:13 314:10
  319:12 336:12
  344:3,13,15,15
  344:20,21
  345:4,11
percentage 37:5
  50:7 52:13
performance
  275:8 347:10
performed 171:8
period 92:19,20
  100:17 144:13
  147:14 198:1
  342:1 349:15
  497:13
perjury 17:20
  18:6 19:15
  375:9 464:3
permission 77:10
  88:4,11 236:22
  305:9 373:13
permit 227:15
  228:5 249:3
permits 349:8
permitted 243:3
perpetrators
  377:22
persistence 214:8
person 43:18
  89:20 112:9
  142:21 172:11
  187:7 216:10
  229:8 266:17
  270:20 277:1
  287:15 288:3

303:13 305:17
  305:17 335:14
  335:16,20
  346:5,7 348:18
  393:12 454:13
  481:12 491:15
personal 11:15
  17:22 45:18
  62:2 181:4
  274:22 348:19
  348:21 425:7
personally 11:8
  48:10 58:14
  59:4 61:22 66:3
  66:4 67:13
  79:21 104:17
  155:22 211:2
  268:16 301:5
  315:13 351:12
  413:6 422:5
  424:21
personnel 78:13
persons 23:6
  285:9
persons' 109:3
Petohieb 347:1
phase 250:4,5
phone 130:20
  196:1,2 295:4
  299:21 300:14
physical 49:3
physically 48:21
  49:1
pick 196:1
  355:10
picked 146:8
picture 329:7
  352:7,8
piece 56:4,6 58:5
  122:17,17
  212:14,14
  222:12 349:1
  364:12
pieces 165:16
pilot 156:17
Pirouz 54:12
pitching 166:5

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 34

**place** 103:20
  104:5,18
  109:20 117:18
  120:2
**placed** 238:1
  357:4
**places** 281:4
**plaintiff** 1:4 3:3
  5:13 8:2,4,7
  12:12 14:2
  23:22 24:4,19
  70:8 75:1 82:8
  82:12 89:8
  90:16,20 99:22
  271:7 272:3,7
  282:19
**plaintiff's** 82:11
  86:15 177:7
  206:10 215:18
  220:6 234:18
  244:21 255:6
  256:14 265:4
  267:6 272:6
  275:9 282:6,22
  301:18 313:19
  316:11 334:15
  339:9 343:14
  346:20 350:6
  356:19 360:14
  366:11
**plaintiffs** 230:1
  323:11
**plan** 6:21 228:11
  244:20 245:12
  245:13,16
  247:3 253:3
  255:6 267:4,19
  272:5 308:20
  309:4,12,22
  310:2 334:14
  334:20 335:5
  343:17 344:2
  412:7 414:5
  453:11
**plans** 142:1
  160:17
**plant** 361:4

**play** 9:13
**please** 7:20 8:10
  9:10 14:19
  61:13 86:17
  90:13 97:13
  99:20 118:6
  122:9 125:13
  128:21 130:13
  153:15 185:9
  207:20 212:3
  230:4 233:18
  254:5 262:21
  282:9 301:22
  317:10 322:14
  323:2 351:4
  375:19 401:15
  430:18 453:15
  455:20 456:1
  459:3 478:20
  493:3 497:6,10
  497:11,14
**plural** 93:1
**plus** 370:17
**pocket** 57:4
**point** 27:7 34:8
  35:12 69:8 88:8
  116:2,3 117:5
  222:15 270:20
  272:20 284:16
  292:1,1 294:21
  312:3 317:3
  335:11 341:19
  342:19 346:5,6
  346:7 347:6,17
  363:18 364:10
  367:15 433:1
**policies** 329:12
  417:4 418:18
  419:14 424:21
**policy** 233:12
**polite** 55:16
**politics** 236:10
**portion** 31:5
  45:15 54:1
  64:17 141:17
  141:21 160:15
  231:4 316:18

326:19,22
  343:21 351:1
**portions** 362:8
  363:12 365:6
  367:5
**position** 11:22
  77:2 78:7 89:11
  89:17,20 91:2,9
  94:8,11 100:8
  102:12 112:22
  114:12 138:7
  150:20 151:16
  151:22 152:2
  154:2 167:17
  188:10 263:10
  278:5 288:4,12
  291:1 298:1
  302:7 389:14
  390:7 405:13
  405:22 418:10
  473:6 480:14
**positions** 465:14
**positive** 487:22
**possession** 105:9
  107:1 109:1,3
  117:20 120:4
  120:13,21
  121:10,14
  122:1,12 127:7
  127:15 357:8
  361:16 448:20
  451:4
**possible** 425:4
**possibly** 211:17
  228:22
**post** 437:5
**post-settlement**
  394:22
**posted** 441:9
**potential** 194:18
  197:21 391:9
**precautions**
  425:3
**preference**
  352:15
**preferred** 284:16
**preliminary**

343:16 344:1
**premarked** 343:9
**premises** 109:8
  109:10,11,13
  109:15
**preparation**
  79:11 403:5,7
**prepare** 438:8
**prepared** 17:3
  75:8,9,21 78:10
  161:3 166:14
  186:15 265:11
  275:13 278:3
  284:22 285:2
  446:14
**preparing** 438:3
**presence** 406:2
**present** 3:21
  56:10 242:7
  262:20
**presentation**
  165:6 244:18
  245:14 282:5
  282:11,21
  285:6 310:8,15
  403:15 404:6
**presented** 241:3
  284:14
**presently** 18:2
**preserved** 109:4
**president** 193:17
  216:5 238:7,9
  238:10 488:14
**press** 472:13,15
**presume** 79:14
**presumed** 238:4
**pretty** 61:19
**previously** 29:14
  159:15 164:7
  323:16 445:2
**price** 47:14 204:5
  205:3 259:13
  356:18 359:1,3
  359:14 360:5
  456:4
**prices** 49:15
  359:5 374:2,3

**pricing** 304:9
**primary** 146:1
**prime** 60:16,19
  61:5,18 62:5
  210:12 238:8,8
  238:11 357:15
  358:13,17
  359:3 367:9
  368:8
**principal** 68:15
  183:20 326:10
**principally**
  151:15
**print** 151:9
  311:21
**printout** 5:22 6:4
  293:13 296:11
**prior** 178:12
  179:1,1 180:4,5
  213:19 228:2
  292:20 328:17
  367:19 418:9
  420:11 423:21
  442:15 443:8
  449:18 471:15
  482:22 485:6
**prisoners** 215:10
**privacy** 418:17
**private** 145:3
  153:7 155:6,7
  203:2 216:21
  297:6 298:20
  389:20
**privilege** 19:8
  415:2 454:17
**privileged** 377:11
  377:15 379:10
  379:21 380:6
  381:8 388:3,5
  388:12 399:14
  399:18 411:7
  412:1 413:4
  414:9 415:7,9
  483:13 491:19
**privy** 378:15
**probably** 47:13
  106:16 112:7

5/21/2024        Farhad Azima v. Nicholas Del Rosso et al.        Farhad Azima

Page 35

235:16 302:19
302:20 342:9
419:2,9 468:12
487:21
**problem** 21:4
95:12 115:4
**procedure** 48:2
205:5 497:14
**procedures** 47:20
329:13
**proceed** 190:5
**process** 438:18
**produce** 112:18
113:7,8 114:9
145:7 169:12
186:6 412:19
**produced** 87:11
106:9 107:17
108:12 111:11
111:21 127:9
151:4,9,11
152:18 412:21
413:9,11
414:16,22
448:11 495:8
**producing**
438:15
**product** 168:5
207:1 208:15
209:2,3 299:10
336:4 380:14
**production**
362:22
**productive** 123:4
**products** 359:6
**Professional** 2:11
**proffer** 387:6,14
**prohibited** 485:7
**project** 6:21 63:3
63:5 203:8
218:8 220:5
227:16,19,20
228:20 229:8
229:22 237:10
237:13,17
243:15 316:10
412:6 414:5,6

488:4 489:1,6
489:12
**projection** 78:12
171:5,8 361:20
**projections** 91:16
141:22 160:16
316:20 317:8
360:17 361:2,8
**projects** 36:11
234:17 292:19
489:14
**promises** 27:18
**promptly** 262:14
**proof** 126:12,13
304:5 376:18
377:14,19
379:4 383:12
383:19 384:8
447:18
**property** 41:9,15
44:13,17 71:16
76:20 336:6
489:18
**proposal** 64:9
208:3 209:17
215:17 234:17
239:18 240:1
255:15 257:13
260:2 261:1
265:2 307:22
317:19 339:22
340:12,16
455:3
**proposals** 209:1
209:16 210:3
211:6 240:18
260:3 459:2
**proposed** 244:20
317:21 318:17
336:22
**proprietary** 76:7
150:22 152:3
156:21 195:1
249:5 259:14
259:15 291:16
293:4 465:16
**prosecuting**

426:21
**prospective**
150:8
**protect** 109:14
313:4
**protected** 79:15
174:6
**protective** 461:1
**prove** 127:1
**proves** 304:3
**provide** 146:15
150:4 151:5
166:7 177:18
187:6,20 188:7
191:13 210:11
210:17 212:22
241:9 263:4
265:21 266:18
275:18 295:1
304:1,8 309:10
309:11,12
325:4 326:3
335:4 359:20
360:3 362:19
382:13,18
403:1 404:15
436:19 453:4,5
462:8 485:10
**provided** 80:1
94:12 137:4
149:17 152:3,8
152:20 153:8
156:3 164:10
164:11,13
165:2,6,7,10
166:16 169:6
169:14 171:1
171:20 178:5
179:15 180:8
180:21 186:4,4
186:22 188:1,5
190:2,7,8 191:9
193:3 194:9
209:17 213:10
242:9 245:8
246:8 254:17
254:19 261:3

302:5 303:18
307:3,9 318:3
320:12,18
323:14 325:7
334:3 340:1
348:9 349:13
357:11 358:10
359:10 360:18
361:8 367:11
372:17 373:15
394:6 447:8
483:10 485:12
**provides** 36:8
**providing** 146:2
168:14 182:21
280:6 281:2
305:1 309:17
320:7 325:3
335:6,12
369:12 432:6
**public** 2:14 145:4
145:9 153:2
155:7 173:5
174:4,9 197:1,4
198:12,16
201:14,18
202:2,6,10,11
205:11,16
211:11,15
222:6,8,9
223:11 245:19
263:6,7 284:14
289:5,8 290:12
290:16 291:20
292:3 293:5
297:18 327:9
331:14 362:20
364:3,7,10
365:19 416:9
436:4 452:18
452:20 475:16
485:3 486:17
488:7 496:6
**publically** 456:20
481:5
**publication**
196:17 197:13

202:22 204:9
234:3 444:11
444:13,21
475:8,21 476:8
476:19 484:20
**publicly** 213:15
443:17 457:4
479:5,7,18
480:15 481:1
**published** 204:18
397:3 439:8
469:21 471:17
**purchase** 30:2
139:14 140:11
142:7 162:7
489:17
**purchased** 28:12
118:8 164:16
288:13 497:8
**purchasing**
165:11 166:12
**purely** 166:22
**purportedly**
386:8 387:16
**purpose** 27:17
87:21 92:1
146:14 166:21
172:3 194:10
246:13 267:18
276:15 281:2
284:17 309:19
374:20 390:20
393:20 402:21
479:22
**purposes** 124:17
141:10 152:10
152:16,17,19
166:15 180:11
190:9 316:16
**pursuant** 2:8
17:17 31:11
460:22
**put** 29:15 64:8
84:22 85:3
109:20 114:19
122:9,19 159:3
173:5,11,18

5/21/2024   Farhad Azima v. Nicholas Del Rosso et al.   Farhad Azima

Page 36

180:5 198:20
201:22 203:18
205:8 208:4
209:1 212:13
212:14,20
228:10 229:7
237:17 244:11
244:12 249:21
252:20 254:10
259:18 262:19
277:3 283:13
289:6,19
290:13,15
291:12 294:21
311:13 344:15
347:14 357:12
360:8 372:18
450:9 470:10
472:14 479:10
490:4
**puts** 212:16
281:14
**putting** 81:9
180:4 267:19
393:1
**Puzankova** 231:8
334:17,18

────────

**Q**

**qualify** 25:11
100:18
**quantify** 172:17
203:6 204:7,12
234:2 253:6,17
483:18 484:8
**quantities** 362:22
**quarter** 31:18
**Quarterly** 31:16
**question** 4:9 9:11
9:12 15:6,10,13
15:22 22:14
29:18 39:11,12
39:18 40:5,9
42:12 43:13
76:6,17 77:1,5
77:6 83:3,4,13
84:12,19 85:18

90:6 104:8
105:1 110:11
111:20 115:8
122:6 124:22
128:11,16,20
129:22 130:17
150:19 153:16
154:1 179:10
180:3,9 182:10
205:18 224:21
226:16 240:10
242:18 243:14
245:10 259:7
266:8,10 273:3
276:18 279:3
296:4 304:13
306:1 322:14
322:15 323:2
325:20 353:11
364:19,20
365:14 386:13
386:20 387:10
387:12 390:11
391:12,14
392:4,5,7,8,10
395:16 403:19
403:22 404:2
417:8 425:5
429:1 435:12
467:5,6,15,22
470:22 474:6
475:18 490:9
492:16
**questioning**
342:17
**questions** 5:6 9:3
16:13 47:8,9
104:21 231:3
332:7 346:13
415:9 446:6
465:20 466:12
466:19 469:6
497:14 498:10
498:13
**quick** 250:9
264:10
**quickly** 262:14

262:19 263:3
263:13 327:12
327:17
**quit** 289:8 416:20
**quite** 42:11 94:14
123:3 179:21
208:19,19
216:9 238:9,13
303:13 304:10
416:5
**quotation** 62:21
**quote** 17:17
62:19 84:9
213:2,4,5 220:2
256:14 265:2
267:3 350:4
356:18 359:1
360:9 384:3
389:21 466:16
471:22 472:2,2
472:3
**quoted** 223:15
**quoting** 90:14

────────

**R**

**R** 3:1 8:13 175:1
175:6 496:1
**R-A-K** 436:9
**raised** 391:4
**RAK** 27:8,16
28:6,12,19 29:5
30:3,8,16,22
31:6 32:4,12
33:1 34:4 59:19
88:6 131:10,22
132:6,18,21
133:12 135:6,8
137:15,21
147:16,17,17
148:21 149:1
150:10 161:7
161:14,18
164:4,10,21
166:11 167:11
265:8 272:20
273:5 274:10
288:13,17

308:13 309:7
318:1,4,13,18
319:8,12 321:1
321:7,9,21
322:9 339:18
339:18,20
340:4,6,8,9
341:8 342:20
346:12,14
375:1,3 436:9
436:15,18,19
478:7
**RAK's** 166:21
322:4,17 346:5
414:13
**Raleigh** 3:14
**Rami** 51:17
52:14,15 59:11
59:12 60:13
104:13,14
110:1,3,7
211:20 256:19
257:2 301:22
314:2 326:12
350:12,20
351:11
**range** 53:18
**rapid** 250:10
263:4,22 264:9
327:21
**Ras** 33:1 35:4
111:12,15,16
116:13 117:7,8
137:16 138:15
148:19 149:2
317:22 321:8
**rate** 197:21,22
259:2,3,3 305:9
345:12 362:22
**rates** 197:16
304:15,18
305:15 347:14
**Rau** 49:18,19
50:11 192:5
195:4
**Ray** 107:10 143:6
163:5 190:16

192:5 195:5
210:8 255:9
256:18 257:22
267:16 269:5,6
270:16,20
272:17 275:12
301:21 309:2
312:17 313:10
318:8 343:17
344:5 345:14
345:18 437:20
438:2 469:6
**Ray's** 312:22
**reach** 479:16
**reached** 217:6
285:14 453:10
**react** 263:12
**read** 13:20 17:6
18:19 19:4
74:15,20 86:17
86:20 94:5
96:19 99:2,20
122:9 124:16
125:15 128:4
230:12 240:6
282:14 293:11
295:15,16,17
297:1,12,15
298:15 336:1
350:22 351:4
392:19 397:5
401:15 407:17
407:22 408:2,6
409:2,2,4,11
437:1 449:4
450:5 458:13
460:2 498:6
**reading** 15:15
92:17 93:2,4
94:5 96:11
101:10 162:14
226:3 230:17
240:10 282:16
283:3,5,9,13
343:22 384:12
404:1
**ready** 393:11

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 37

497:6
**real** 292:21
  312:22 488:5
  489:2
**real-time** 418:7
**realistic** 361:2
**realize** 56:21
**realized** 217:6
**really** 50:3
  152:15 165:18
  165:20 169:17
  171:8 182:11
  322:20 330:16
  331:5 359:22
  404:16 406:16
  446:22
**Realtime** 2:12,12
**reason** 35:3,12
  126:20,22
  129:4 189:16
  202:5 266:8,10
  266:11 273:15
  274:19 277:16
  281:5 299:1
  300:2 309:19
  404:14,20
  436:10 460:4,8
  486:19
**reasonable**
  166:10,17
  393:12
**reasonably** 31:22
**reasons** 203:16
  248:13 485:1
**rebuild** 217:7
**recall** 10:7 26:6
  26:11 29:9
  46:13 47:14
  50:16,18 52:7
  54:9 56:10
  67:22 68:2
  103:15,18
  104:2 105:21
  106:18 107:5
  112:8 117:16
  118:3,9 119:13
  135:22 142:6

160:6 161:6
179:6 191:16
200:15 216:16
253:16 267:20
306:8 315:5
341:4 367:17
368:1,2,5 421:6
425:13 440:2
447:20 451:6
478:19
**receive** 31:15
  285:10
**received** 167:4,8
  190:18 286:5
  302:1 376:16
  376:19
**receiving** 197:22
**Recess** 86:7 98:6
  131:3 174:17
  255:22 315:22
  373:5 430:5
  462:15
**recipient** 157:13
**recipients** 150:1
  277:13
**recognize** 77:2
  126:8 139:7
  175:19 177:1
  217:18 418:8
**recollect** 223:3
**recollection**
  139:12 243:11
**reconnaissance**
  316:10
**reconsider**
  395:11
**record** 86:1,5,9
  95:21 96:6,8,11
  96:12,19 97:6,7
  97:9,13,15,15
  97:16,18 98:4,8
  114:2 119:5
  130:22 131:2,5
  163:15 174:14
  174:15 175:4
  185:14,18,20
  192:10 197:4

206:13 234:9
239:15,17
255:20 256:2,6
260:16 261:14
283:13 293:22
315:20 316:2
322:15 373:3,7
405:3 412:15
430:3,7 462:14
462:17 493:11
493:13,15
495:10 496:11
**recorded** 498:10
  498:14
**records** 391:6
**recover** 214:5
**red** 337:10,14
  370:22 454:1
  458:4
**redirect** 478:10
  483:22
**reduce** 49:4
**reduced** 50:10
  87:6 351:12
**reefer** 371:10
**refer** 26:4,15
  37:17,18 55:8
  286:21 293:21
  334:5 418:20
**reference** 25:19
  142:16 233:14
  295:11 411:19
  463:15 493:18
**referenced** 25:14
  75:14 77:18
  237:13 475:22
  481:10 497:6
**references**
  140:10 335:22
  337:12
**referencing**
  223:8 480:7
**referred** 35:15
  136:12 236:1
  243:20 287:13
  336:4,9 338:20
  467:3

**referring** 12:6
  26:18 27:6,9
  28:17,19 55:9
  75:4,6 95:5
  106:8,15
  107:16,20,21
  108:10 110:15
  136:8 161:4
  185:13,15,19
  193:6 204:2
  236:1 271:3
  321:1 324:19
  350:11 375:21
  378:7 402:11
  409:6,9 416:19
  489:12
**refers** 140:22
  160:13 241:2
  337:2,3 414:7
**refill** 305:10
**reflect** 431:13,18
  454:10
**reflected** 141:5
  162:7 306:2
  432:12
**reflects** 276:21
**refresh** 29:19
  139:11 243:11
**refrigerated**
  371:11
**refused** 228:4
  397:10
**refusing** 114:9
  126:15
**regard** 25:20
  72:19 82:17
  112:1 238:1
  297:6
**regarding** 31:20
  32:7 240:17
  256:7 320:8
  321:20 419:14
  458:20 465:21
  483:10
**regards** 26:3
  39:15 40:16
  79:22 84:1

98:12 104:12
112:20 155:4
161:4 233:16
234:1 270:21
319:11 360:5
383:12
**region** 221:16
  222:3,20 224:9
  224:11,14
  226:10 308:22
  309:6
**registered** 2:10
  281:16
**registration**
  225:20
**regularly** 423:9
  423:16 424:14
**regulations** 61:16
**rejected** 487:15
**relate** 74:7 84:9
  85:7 117:15
  118:2 387:5
  429:12
**related** 24:21
  45:20 51:18,19
  76:3,15 82:10
  82:19 86:15
  111:14 112:4
  165:1 176:10
  177:6 179:2
  184:2 212:2
  215:18 220:5
  227:19 229:22
  244:21 255:6
  265:3 267:5
  272:6 275:8
  280:15,17
  282:6,22
  292:19 295:2
  312:17 316:8
  316:10 325:8
  334:15 339:9
  343:14 346:19
  356:19 360:14
  403:3 496:14
**relates** 11:14
  78:5 101:11,18

5/21/2024    Farhad Azima v. Nicholas Del Rosso et al.    Farhad Azima

Page 38

176:13,14
177:22 178:7
**relating** 76:19
**relation** 74:2
90:1,3 104:9
105:20 116:10
157:2 159:1
194:19 195:21
219:2 317:15
319:10 348:16
348:19,19
351:16 358:16
364:1 368:20
369:4 454:15
**relations** 168:13
287:15 298:19
**relationship**
299:12 319:7
333:18 340:3
**relatively** 23:15
298:10 361:21
**relaunching**
215:17
**release** 211:6
227:8 289:5
**released** 201:14
227:5 297:18
**relevance** 38:19
41:6 42:10
48:19 103:17
117:14 118:1
214:6 278:18
289:22 301:6
320:15 322:1
322:13 333:15
342:11 387:4
399:13 427:9
428:2 485:17
**relied** 358:15
**remain** 187:17
266:19 451:19
**remained** 112:7
358:12 452:4
477:16,20
**remaining** 148:2
290:1
**remains** 183:21

495:4
**remember** 10:8
10:10 11:2,2
37:10 46:21
49:12 50:1,3,9
52:4,6 56:13
63:22 64:4 67:5
67:6 68:9 70:1
106:6 108:19
111:4 112:16
116:4 118:11
121:8 136:5,10
136:22 137:18
138:19 139:1
143:11,17
144:10,11,14
145:21 153:1
165:20 181:3
200:12 203:20
210:18 213:18
213:21 224:3
228:7 235:4
237:21 247:8
253:9 269:9,21
278:1 287:14
302:18 320:6,7
320:17,17
333:20 334:8
338:12 355:5
368:15 381:16
385:5 420:4,6,8
420:9,12 421:8
421:9 422:1,19
425:11 426:9
446:4 456:18
466:19 470:6
474:8,14,18
477:10 478:3
479:14 482:6
485:16 486:3,5
490:6,13
**remembering**
490:11
**remind** 14:16
**removed** 418:5
**repair** 220:4
337:19

**repeat** 43:13
84:18 153:15
435:12
**repeated** 116:21
**repeatedly**
430:12
**report** 482:7,11
482:14,22
483:6
**Reported** 1:17
**reporter** 2:10,11
2:12 7:16 8:10
9:9,21 28:4
40:12 60:18
110:5 157:10
168:1 173:1
187:18 218:11
227:12 238:15
242:19 253:12
268:5 304:17
369:16 376:7
401:14 456:22
**reports** 446:15
**represent** 7:22
294:6 413:20
**representation**
406:12
**representative**
398:11
**represented**
406:15
**representing**
396:4
**republic** 235:8
235:11,19
249:9,10
**reputational**
390:22
**request** 20:2 25:4
31:22 149:2
213:2,3,4 413:1
**requested** 275:1
**require** 32:15,20
58:19 59:2,5
61:9,21 62:5
80:8 104:11
106:22 193:19

193:20 225:14
226:20 229:1
231:10 232:13
238:14 239:7
303:9 313:11
333:22
**required** 32:16
80:9 111:7
112:2,9 115:22
116:16 117:12
117:21 120:5
143:21 145:3
150:1 195:12
221:6 303:7
307:16 315:15
358:4 417:4
419:17
**requirement**
348:8 360:1
**requirements**
263:3 315:10
**requiring** 112:13
117:19 120:3
**research** 36:10
**reserved** 4:10
**reserving** 430:9
**respect** 157:6
250:15 281:1
341:17
**respective** 4:4
**respond** 9:4
16:15 39:9
**responded**
395:10 466:7
**responding** 361:6
**response** 23:2
25:20 96:3
98:14 176:20
176:21 177:5
192:8 229:19
263:4 264:1,10
267:2 275:6
282:3 360:17
464:12 467:21
469:5 475:10
**responses** 5:15
12:13 14:5 18:7

26:14 28:16
85:12 220:1
**responsibility**
12:1 128:17
187:6,10
**responsive** 94:15
330:9 412:22
**rest** 29:4 319:5
461:9
**restate** 328:20
**restaurant**
197:20
**restrict** 88:12
100:4 105:7
135:1,8 164:21
190:21 216:11
217:19 349:10
**restricted** 133:22
134:9 164:17
335:11
**restriction**
178:19 357:12
**restrictions**
106:17 109:20
194:1 237:22
277:12 357:4
**restroom** 373:2
**result** 37:14
154:5 184:5
198:12,16
204:8,13,17
205:10 213:13
234:3 253:18
467:11 474:1
475:20 476:8
483:18 484:9
484:19 489:17
493:1
**resumed** 175:7
**retaining** 221:9
**retired** 80:5
**returned** 196:2
**revenue** 171:7
345:6 485:6,7
485:11
**reversed** 376:5
**review** 15:1,3

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 537 of 578

5/21/2024　　Farhad Azima v. Nicholas Del Rosso et al.　　Farhad Azima

Page 39

18:11 24:17
25:16 30:12
74:19 86:18
99:15 125:14
131:16 133:8
177:3,21
185:11 191:15
199:3,9,13
212:4 230:5,8
230:13 233:20
242:3 243:13
254:16 257:4
263:1 306:7
317:12 324:9
351:7 361:4
367:1,6 373:10
374:1 399:3,10
407:19 408:17
409:5,10 411:4
431:5 451:8
453:18 454:2
458:5 497:8
**reviewed** 190:2
382:19
**revised** 344:17
438:12,14
**revisions** 438:12
439:3,3
**revitalize** 217:11
**revitalizing**
216:17
**RFQ** 213:4
**rhyme** 300:1
**rich** 95:17 235:15
**richest** 235:11
**riddle** 83:13,14
83:15,16
**right** 11:11 12:19
13:15,22 14:3
15:6 16:5 20:21
23:20,21 24:6,7
24:18,22 25:9
25:21 26:7,18
28:13,18 30:19
30:20 32:2,5,8
33:20 34:9 35:1
36:1,6,11 38:9

42:14,15,16,18
42:19 43:2,5
44:3,8,14,15
46:2 50:13,14
50:15 52:19
53:2 54:15 55:3
55:5,13,15
56:15 57:11,14
57:15 59:16,22
64:18 65:12
69:7,17 70:10
70:19 72:14
73:6,9,11,12
74:10 75:19
76:3 77:4,9
78:15 80:14,18
81:1,3,15 82:15
83:9,19,22 85:4
85:6 86:16
87:13,22 88:2,6
89:10 91:8 96:4
99:7 100:2,7,10
101:20 115:2
116:1 124:7
126:15 130:6
131:18,20
132:1,21 133:3
134:5 137:22
139:7,22
140:21 141:2
142:5 149:9
150:12,18
154:6,10 155:2
155:10,16
158:17 159:10
160:11 163:5,8
163:14 164:15
165:17 166:2,8
171:3 174:2,13
177:12 182:2
182:19 183:8
185:1,10 186:8
189:5 191:9
192:17 199:11
207:11,13
209:1 210:1,6
210:16 211:16

211:21,22
212:21 213:11
215:20 219:9
219:11,12
220:14 222:21
224:12,16
225:2,3 226:1
226:11,17
227:6 228:3
230:19 234:4
234:20 235:13
235:19 240:3
243:16 246:11
247:4,16 248:4
248:15 249:19
250:15 252:6
258:1,5,8,16
259:18 263:7
265:6,9,13,20
265:21 268:21
269:3,15,16
271:14 272:14
274:8 275:10
276:1,5 280:10
285:4,6,22
290:13 291:22
292:12,15,20
293:1,17 295:5
295:20 297:19
297:21 298:3,7
298:12 299:20
299:21,22
300:3,8 302:2
303:18 307:8
308:4,8 314:6
317:8 318:2
319:11,13,14
319:20 320:12
321:2 324:2,5
327:6,10,13
332:6,12 333:4
336:13 337:18
338:21 339:14
341:12 343:3
344:7,8,13
345:19 347:1,3
347:20 348:6

352:22 353:2,5
355:17 357:14
359:2,11 363:2
363:10 366:18
369:12 373:16
374:11 393:19
395:2 399:8
400:17 402:11
407:9 408:4
409:16 413:13
413:13 414:21
415:19 417:21
431:2 438:20
439:5,5 443:2
450:17,20
452:7 461:8
467:19 468:6
477:21 480:12
480:16 493:22
**right-hand**
141:18 270:19
270:20
**rights** 41:9
259:15 268:10
458:18
**RILEY** 2:6 3:11
**ringleader**
442:21
**Risk** 389:20
400:20
**road** 64:10
183:22 308:3
**Robinson** 428:6,8
**role** 103:14
146:17 280:5
**Rolodex** 5:21 6:3
73:2,10 173:4
290:15 293:7
293:12 294:8
296:10 298:1
298:17 392:18
**Rolodexes** 25:10
73:3,5 291:4
293:21 297:17
298:6
**root** 456:3
457:14

**Rosen** 255:9,9
**Rosenthal** 3:17
8:6 123:21
130:21 174:13
222:12 239:14
343:6 364:16
364:21 372:11
394:16 406:21
413:8 484:2
**Rosso** 1:7 5:17
7:4 12:15 14:8
132:18 374:8
374:14 376:10
378:6,18 379:7
379:18 380:21
381:20 382:5
383:2,13,20
397:2 414:13
436:20 437:1,4
446:2,13
449:17 497:3
498:4 499:8
**Rosso's** 322:3,5
322:16
**route** 208:17
237:7 241:15
242:22 349:5
**routes** 242:20
248:3
**routinely** 421:5
421:12
**RPR** 1:18
**RSA** 1:18
**rubber** 125:9
**ruler** 35:6
**rules** 32:13 61:15
61:19,19
497:14
**run** 11:20 53:22
64:15 65:21
119:20 120:10
134:2 156:7,14
170:20 180:15
200:15 228:21
229:11
**running** 11:15
69:6 180:9

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 40

184:5 188:20
201:3 228:20
250:12 296:17
359:19
**runs** 144:6
**Rupert** 236:1,3
**Russia** 236:14
**Russian** 235:20
236:10 237:1
249:12
**Russians** 243:4
**Rustam** 238:12

---

**S**

**S** 3:1 5:11 55:4
175:1,1,1
**S&J** 312:12,15
312:20 313:9
313:10
**S(Cont'd** 6:1
**Sa'ad** 257:22
260:20 455:16
**safe** 467:8
**sake** 107:12
322:21 443:6
**Salah** 207:9,11
207:12,13
210:7 357:1
**Salah@fiic.com**
324:1
**Salami** 261:3
455:19,20
490:16
**salaries** 191:17
**Sam** 3:17 8:6
406:5 413:13
**sam.rosenthal...**
3:18
**Sara** 207:5
**satellite** 172:8
**sauce** 121:11
**save** 47:16,21
48:5,7 458:16
**saved** 303:14
333:2
**saves** 329:9
**saw** 127:6 440:9

482:13
**saying** 9:15 16:21
21:7 43:20
55:17 111:19
116:7 193:3
205:2 248:9
275:13 291:14
335:1 350:13
361:10,14,17
411:15 417:13
438:17 445:11
474:8
**says** 24:19 26:7
31:14 100:6
117:1 124:10
124:16 125:6
126:2 140:2,20
141:22 142:11
160:15 207:6
239:13 265:11
265:22,22
271:17,22
285:13 301:21
305:8,9 317:7
334:21 337:13
337:18 389:21
390:15 396:19
402:9 403:1
407:15 450:21
455:18
**SCARBOROU...**
2:6 3:11
**scared** 291:19
**schedule** 27:19
28:3,7 35:7
145:17 146:21
153:8 263:3
285:18 457:6
**scheduled** 145:1
**school** 182:13
375:9
**scope** 48:19
104:22 113:1
119:7 180:6
214:7 279:22
411:6 414:9
427:10 478:10

483:22 491:19
492:2
**Scott** 245:2
284:22 286:11
286:17
**scrambling** 47:16
**scratch** 219:17
**scratching**
219:19
**scream** 129:1
**screaming** 129:3
**screwed** 185:22
**se** 242:16
**sealing** 4:5
**second** 9:7 34:7
103:3 141:16
141:21 160:15
316:17 329:19
373:2 459:10
493:10
**secrecy** 79:22
106:22 109:3
117:21 118:14
120:5 187:3
232:21 233:8
266:12 286:6
313:4,8 341:20
467:10 468:9
469:1
**secret** 19:21 23:2
23:5,16 24:5,10
24:20 25:14,21
26:4 70:9 72:19
73:8 74:16
75:11 77:17,18
78:1 82:5,7,9
85:10 86:12,22
92:17 93:3,5,11
94:6 96:2 98:13
100:12 101:12
101:13 123:9
125:5,8,18
126:1 127:22
128:3,8 129:12
154:6 167:18
167:18 175:12
175:22 176:11

176:20 182:5
189:2,15 192:8
194:13 195:9
206:5 208:9
215:14 220:1
229:18 234:15
241:18,22
244:17 246:4
254:3,9,21
255:3,14
256:10 258:17
259:10,17
260:4 261:2,10
261:16 263:11
263:11 264:3
264:12,22
266:4,19 267:1
268:15 270:22
271:17 272:1,4
275:5 282:2,20
293:1,20
294:18 297:10
298:2 301:14
307:11,18
313:14 314:9
315:16 316:6
323:5 328:3
334:12 339:6
340:12 343:12
346:18 349:3
350:3 351:19
353:7,21
355:10 356:17
360:12 362:14
362:17 365:13
366:7 368:22
369:3,20
430:14,17
432:14 463:19
463:20 464:6,8
464:16,20,22
465:7 466:8
493:21
**secrets** 20:11,13
21:1,16,22 22:3
22:6,12 23:11
70:11 71:1,18

71:19 72:6,7
73:1,17 75:19
76:2,15 77:8
78:9,11,13 79:3
79:7,22 80:14
80:16 81:3,6
82:18,21 83:20
84:3,14,14,21
85:2 90:10 95:1
101:17 102:7
105:1,2,8 107:1
109:1,22 110:4
110:9 117:15
117:20 118:2
118:15,20
120:4,7,14,21
121:10,15
122:2,12 124:7
124:20 125:2
158:2,20 168:4
168:11 176:8
182:2 186:14
186:15 187:3
202:8,15
255:13 262:2,4
262:9 278:5,17
279:22 288:8
290:10 291:7
291:22 292:18
293:3 298:7,14
306:16 352:10
353:15,22
354:5,6,13,18
354:20 355:13
355:19 356:10
362:10 364:9,9
368:19 369:12
369:13,17
374:10,14
376:12,15,21
377:21 379:8
379:19 381:1
381:21 382:7
383:5,15,21
384:5 387:5
415:18 418:11
418:13 431:6

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 41

431:13 433:8
434:11 446:3
447:10,19
448:11 463:1,9
463:16 465:5
465:14,15,22
466:2,6,13
467:11 468:2,9
469:1,10,20
470:4,8,14
471:7,14 473:1
475:9 480:11
480:22 481:21
483:19 484:11
484:21
**section** 17:18
31:13 132:19
337:13 458:7
458:10
**security** 215:4
241:6,10
287:20,21
288:2,3,4 302:8
303:2 305:10
305:16
**see** 15:2 19:16
20:9 22:22 23:8
24:19 28:10
30:6 95:4,19
102:10 106:4
109:21 131:9
140:2 141:21
177:19 185:9
186:17 192:16
194:2 201:5
222:17,18
271:17,22
283:18 305:8
316:17 317:7
322:2 326:18
326:22 336:3
337:14 341:6
342:7,8 350:16
388:18 395:21
396:19 397:6
405:20 414:14
478:20 491:4

**seeing** 134:10
247:2
**seek** 155:7 167:9
487:14
**seen** 12:20 55:22
62:19 66:9
373:20 379:4
379:14 380:20
381:12,13,15
382:1,2,4,12
384:16 390:3
395:1,13
397:12,16,18
399:7 404:11
404:12,19
410:3 414:20
415:11 436:12
439:2 448:10
**selected** 497:10
**sell** 42:1 49:16
56:4,6 145:4
153:5 165:21
**selling** 359:6
**send** 250:1,2
284:11 397:18
405:13 408:20
410:1 468:12
472:12,13
**sending** 216:12
228:9 237:3
255:13 267:22
275:12 334:19
472:14
**senior** 370:20
488:14
**sense** 47:4 292:11
343:2
**sensitive** 112:14
419:15
**sent** 215:22
243:22 256:18
257:14,18,22
285:3,21 286:9
301:20 302:9
313:22 314:1,4
323:21 334:21
346:22 359:1

395:3 399:5,9
400:14 401:19
404:22 405:15
434:12,13
435:2,3,11,14
435:14,22
436:11 438:12
459:20 460:6
466:15 467:4
467:16 468:3
**sentence** 86:19
98:12,19 99:1,2
99:7,21 100:4
101:10 336:3
351:3
**sentences** 99:17
**separate** 34:5
**separated** 299:15
**September** 265:7
**serial** 225:21
**serious** 145:8
**seriously** 115:14
**served** 146:13
156:8 457:2
**server** 442:5,8
**servers** 442:9,11
**serves** 337:22
**service** 28:3,7
35:7 145:2,17
146:21 153:8
300:10 360:3
373:15 457:6
**services** 1:7 5:18
7:5 12:16 14:8
36:9 46:12
47:18 58:2,13
146:2 257:14
274:22 350:15
359:21 374:8
376:11 378:18
379:6,17
380:22 381:20
382:6 383:3,14
383:20
**set** 5:16 12:14
14:6 136:1,2,3
306:19 321:10

329:17 361:2
371:22 376:8
425:12,13
496:9,19
**setting** 48:5
111:12
**settle** 198:6 341:7
**settlement** 320:9
320:10 321:21
388:1,10 391:9
394:6 395:7
398:2,7 399:4,9
400:10,16
401:18 410:2
478:6
**seven** 47:11
102:5,6 126:2
169:21
**seven-year** 130:2
134:19 135:9
141:5 142:13
144:16 450:16
**Shaimiev** 238:11
**share** 30:2 50:10
139:13 140:10
162:7 350:15
350:21 351:11
**shared** 377:9,14
**shareholder**
11:16,18 31:14
31:22 32:3
35:20,21 36:3
37:9 45:18,19
45:21 50:4,10
55:13,18
132:20 279:7
**shareholders**
11:13 30:3
45:17 50:14
54:5,7,10
139:14 140:11
142:7 162:8
193:18
**shares** 137:22
138:1,14
**Sharjah** 136:2,3
137:15 138:13

139:5,9,20
**Sharma** 397:9
400:20 402:20
**sheet** 259:3
497:11 498:11
499:6
**Sheikh** 35:6
321:11 339:21
454:19
**shipment** 146:5
**Shollar** 52:18
63:2 69:5 74:10
75:18 76:14
102:1 122:11
275:9 278:4
279:5,11
281:20 356:20
359:6,8 360:15
363:1 365:12
365:15
**shopped** 447:1
472:18 473:8
473:10
**shopping** 473:11
**short** 368:8,10
**show** 9:19 12:9
29:13 88:16,17
93:10,11 94:20
95:15,15 96:1
101:12 102:20
103:1 118:10
120:16 121:5
122:21 123:6
126:13 167:8
188:9,21
211:18 215:9
215:12 222:11
230:21 234:6
243:9 244:5,14
255:17 264:20
266:21 275:3
293:6,9 296:8
297:15 301:12
307:20 308:3
313:12 316:4
317:2 334:10
339:3 343:3

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 540 of 578

5/21/2024          Farhad Azima v. Nicholas Del Rosso et al.          Farhad Azima

Page 42

346:15 349:22
355:3 356:14
360:10,19
366:5 372:3
389:8 406:19
412:3 474:11
474:22
**showed** 206:2
361:21 380:5
454:22
**showing** 93:13
110:11 119:3
158:10 159:5
176:17 192:3
219:6 229:3
256:4 281:22
322:6 379:22
414:4 460:18
**shown** 377:19
**shut** 387:7
**sic** 207:5 261:3
312:2
**side** 29:16 141:18
244:13
**sign** 13:10 111:7
117:12 143:21
231:11 261:4
303:7,10
333:22 349:20
358:7 397:10
405:8 419:20
497:7,8
**signature** 13:8,9
13:13 497:6,12
498:4,17
499:22
**signed** 4:13,16
13:13 17:2,6,16
18:5,10 19:14
26:15 70:20
105:20 111:13
117:7 132:20
141:4 150:3,11
217:12 233:1,2
233:4 315:14
405:5 420:10
428:22 454:13

454:18 464:1
464:14 497:11
**significant** 34:22
153:11
**signing** 349:21
497:10
**signs** 349:18
**similar** 171:19
247:22
**simple** 153:16
306:1 342:15
**simply** 100:18
191:7 222:18
223:10 225:18
330:2,12
350:11 377:18
494:16
**simulator** 320:8
**Simultaneous**
43:7 128:18
159:18 163:13
204:19 207:19
232:5 245:6
253:11 313:7
399:15 404:3
487:3
**Sincerely** 497:18
**single** 19:21
23:15,22 24:9
24:16 26:17
28:18 70:4 72:5
93:5 96:2
117:10 202:13
418:12 419:15
420:1,2,9
**sir** 15:10,22 40:8
40:11,13 47:8
82:6 95:7,20
96:18 115:8
120:12 125:17
129:2,5 130:12
130:12 145:22
181:7 199:1,11
205:13 210:18
212:5 231:6
239:21 243:14
244:8 245:10

250:18 276:18
283:17 284:2,7
349:14 411:11
415:12 434:2,5
469:3 473:19
475:11
**sit** 122:22 410:6
483:17
**sites** 469:20
470:3 480:4
481:10,20
**sitting** 274:3
450:9
**situation** 262:15
280:11,19
**six** 102:4 201:13
250:12 360:21
**SJ** 312:21
**Skies** 157:8,12
**skimmed** 17:12
19:1
**slow** 39:22 40:1
41:5 296:14,14
296:20
**small** 77:20
218:22 219:4
**smearing** 172:21
**Smokehouse**
37:17,18,21
45:10 46:1 74:9
75:17 76:12
101:22 121:9
189:3,7,11,17
189:20 190:14
190:15,18,21
191:10,12
197:13 198:7
198:10
**soft** 490:2
**software** 299:12
421:14 422:6,9
**sold** 30:15 35:3
48:6,8,9 55:18
165:16
**sole** 50:4 55:12
57:13 393:16
393:20

**solely** 99:5 168:5
**Solomon** 472:20
**solution** 250:10
**some-odd** 311:10
**somebody** 42:13
42:14,20,20
92:3 147:1
170:13 172:16
173:21 174:8
192:18 217:22
219:3 291:16
323:19 324:1
333:10,12,13
338:13 374:18
384:21 417:18
428:21 468:15
**somebody's**
284:11
**someplace** 53:16
**somewhat** 11:14
**soon** 311:17
**sorry** 8:8 15:11
24:9 30:22 31:7
31:13 48:12
53:9 64:2 74:14
78:3 80:22
89:18 97:11
104:7 111:19
113:17 133:2
133:14 135:6
135:14 138:5
159:19,21
182:11 185:17
190:6 207:10
211:4 218:19
254:4 270:5
282:9 293:11
296:1 305:22
309:1,2,10
323:18 356:5
370:2 371:4
372:13 380:3
388:22 403:21
417:22 430:20
443:3 453:20
454:1 457:3,22
459:12 463:13

475:10 476:6
491:9
**sort** 11:21 178:1
269:18,20
453:6 454:3
455:2
**sought** 387:21
**source** 183:15
411:16
**South** 33:22 34:1
60:8,10
**Soviet** 235:19
**speak** 159:20
384:17 448:4
**speaking** 43:7
128:18 159:18
163:13 181:9
204:19 207:19
232:5 233:16
245:6 253:11
313:7 399:15
404:3 432:20
487:3
**speaks** 223:1
**special** 27:17
280:1,19,20,21
281:6,10,14
288:18 319:16
**specific** 98:12
100:5,12
101:11 158:18
180:20 183:15
213:13 295:1
297:6 298:5,16
355:6 364:15
365:5,21 367:2
368:17 369:7
466:13 467:9
469:17 475:19
476:5,7,17
**specifically** 71:18
110:15 111:22
181:20 191:17
211:10 220:16
223:8 240:4
268:13 285:2
294:9 348:15

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 541 of 578

5/21/2024                Farhad Azima v. Nicholas Del Rosso et al.                Farhad Azima

Page 43

362:15 376:20
475:8 477:22
484:19
speculate 170:14
366:4
speculating
368:4
speculation
43:11 44:21
132:3 134:7,13
147:5 170:5
240:21 260:9
260:15 279:13
356:2 365:10
398:9 468:11
spell 67:1 68:5
spend 179:13
182:7 299:4,8
370:1
spent 158:1,8,9
158:19,22
180:20 182:12
196:6,10
spoke 311:5
spoken 337:4
spreadsheet
171:2 183:4
371:3,7 372:19
spreadsheets
171:19 371:22
ss 496:3
stack 199:5
450:10 493:8
staff 142:21
195:4 242:5
418:20 435:8
441:15 487:20
standard 258:4
459:1
stans 249:10,12
stars 245:4
start 56:2,22
146:2 198:4
250:19 346:10
346:12 375:5
425:10 472:14
started 138:13

236:18 246:16
291:17 314:18
332:19 424:6
424:22 436:7
439:14 448:16
starting 74:16
99:14 454:4
492:9
state 7:21 31:21
39:2 178:20
206:7 215:16
229:20 234:8
234:16 244:17
255:5 256:11
265:1 267:3
270:4,6 275:7
313:16 318:22
322:15 323:8
334:13 339:8
343:13 346:18
350:3 356:17
366:8 496:2,6
stated 74:6 77:22
84:5 122:7
162:13 177:6
270:22 335:13
362:12 398:18
399:6
statement 70:3
92:12,20 93:14
93:16 95:7
124:13 229:22
336:2 338:21
355:11 389:10
389:15 392:11
467:17
statements 31:16
31:18 403:14
states 1:1 16:7
156:8,10,16
160:9 188:12
188:17 194:7
225:18 247:14
247:18 265:16
310:22 358:14
395:6 447:14
491:4

stating 291:11
325:1
status 157:15
220:20 222:4
225:22 226:6
statutory 458:18
stay 145:3 221:17
stayed 346:8
stays 302:11
steal 384:4 448:7
stealing 21:5,17
22:4 127:13
Stenographically
1:17
steps 79:20
266:12 433:4
467:10 468:8
Steve 428:11,12
stipulate 129:12
stipulated 4:2,7
4:11 401:8,9
Stocco 427:8
428:1,3,4
stole 80:21,22
82:19 84:4
120:15,22
121:16 122:3
126:7,10,17
127:5 292:2
415:6,6 448:6
483:20
stolen 21:8 22:7
92:2 172:21
173:5 202:22
290:11 415:4,5
436:17 451:5
463:19
stop 115:5,10
128:20 129:10
130:19 147:12
237:16 329:18
stopped 236:19
390:12 487:1
487:10
storage 424:21
442:5
store 442:6

stored 300:6
415:18,22
416:3 433:14
storing 416:14
story 221:10
straight 29:21
strategy 144:21
Street 1:21 3:4
3:13 472:19
489:15 497:2
498:1 499:2
strict 61:19,20
strictly 124:16
128:2 450:21
459:13
strike 161:1
396:12
structure 46:22
135:22 137:18
201:1
structuring
308:7
Stuart 427:12,17
427:22
study 155:15
244:19 253:14
339:9 346:19
348:5 349:5
stuff 183:13
stupid 394:3
sub 160:6 192:14
Subchapter 55:4
subcontractor
61:18 324:13
325:2 358:18
368:9
subcontractors
324:16,21
368:21
subject 366:19
389:22
submarine
177:22 178:13
180:10 204:1
submarines
181:5 200:11
201:2

submersible
180:15
submersibles
178:7 179:2
submission
209:21
submit 212:13
235:2
submitted 187:7
208:5,6 235:3
340:16 487:18
submitting 403:6
substance 10:11
379:1
substantial 84:2
substantially
362:6 492:8,20
substitute 124:2
256:7
succeeded 173:18
173:19
successful 447:7
Sudan 33:22 34:2
60:8,10
sued 10:16,19,22
11:1,7,8 21:18
22:17
suffer 205:10
suggesting
182:16
suing 19:22
20:15,19,20,22
21:10,17 22:3
22:11 290:10
470:14
suit 246:7
Suite 1:21 2:7
3:13 498:1
499:2
suits 441:1
summary 343:17
455:2
sums 168:15
super 236:14
supervision
370:10
supplement

5/21/2024                             Farhad Azima v. Nicholas Del Rosso et al.                      Farhad Azima

Page 44

206:15,21
464:4
**supplemental**
5:14 12:13 14:5
176:21 206:6
215:15 229:19
**supply** 64:9
146:14 241:15
**support** 91:2
92:6,12 127:3
237:7 384:8
**supporting** 23:4
217:1
**supposed** 337:4,8
436:13
**sure** 21:21 27:13
38:4 43:20
45:12 47:5
49:17 56:8 57:6
58:20 61:3 63:1
89:7 102:11
109:9 135:16
155:19,21
164:14 167:14
194:15 208:2
209:22 223:5
224:4 233:19
247:14 249:7
257:20 261:21
262:22 271:5
304:11 312:16
317:11 331:22
334:9 336:12
336:18 338:16
338:22 345:22
351:6 399:1
407:18 487:21
489:7 490:1
495:4
**Surely** 125:15
**surprised** 360:19
**surveillance**
316:9
**survive** 216:22
**swear** 8:11
**switch** 234:10
**swore** 93:1,22

100:17 129:14
**sworn** 4:13,16
69:16 389:10
402:9 403:7
407:15 496:10
**sworn/affirmed**
8:15
**synonymous** 45:8
**synthesize** 96:13
**system** 192:19
300:13 329:17
329:17 415:19
425:9,15
**systems** 2:13
424:14
**systemwide**
422:11

--------

**T**
**T** 5:11 6:1 175:1
496:1,1
**T-a-s-m-a-n**
270:11
**T-a-z-m-a-n**
270:9
**TAA** 318:22
**tack** 118:17
**take** 30:10 94:8
96:4 109:2
118:19 125:9
125:12 128:14
130:4 141:16
146:9 151:22
153:2 159:11
174:11 189:17
250:11 254:20
255:1 309:2
315:19 355:18
366:22 429:21
433:4 467:9
489:7
**taken** 7:3 8:21
86:7 92:3 98:6
131:3 148:20
173:8 174:17
255:22 297:22
315:22 350:15

350:20 373:5
386:9 387:1,16
430:5 462:15
468:8 478:5
**takeoff** 48:4
**takes** 252:2
389:14
**talk** 74:18 81:14
81:15,21,22
102:21 124:12
321:7 333:3
350:8
**talked** 394:1
491:4
**talking** 9:8 58:16
71:17,20 73:3
95:12 100:14
108:17,18
114:16 118:17
120:16 121:2,5
122:18 185:2
186:19 195:17
203:22 321:7
342:2 357:10
363:15 400:13
422:19 425:22
433:9 435:10
461:4 465:10
465:11
**talks** 456:1,3,3
**tape** 364:17,22
**tapered** 179:22
**Tarbell** 481:14
491:8,13,14
492:14
**target** 220:3
222:19 452:9
**targets** 285:15
**Tasman** 270:1,2
270:15,16
272:13
**Tatarstan** 235:8
236:5 238:10
**tax** 486:5
**taxpayers'**
447:13
**Tbilisi** 223:7,15

334:20 337:20
**team** 110:16
111:1,6 112:2
113:19 143:7
277:2,3 287:1,3
287:7,9,12
304:20 377:6
378:4 384:15
441:16 481:17
482:1
**teaser** 282:4,11
282:21 284:7,7
284:19
**technical** 195:4
319:1
**technically** 273:8
440:13
**Technologies**
446:8
**tedious** 224:3
**teens** 302:15
**Teknaf** 235:15
**telephone** 297:8
425:17
**tell** 7:11 89:5
126:15 127:16
127:17 128:5
143:18 154:18
158:22 205:13
213:12 341:14
381:10 467:19
474:22 480:19
483:5 488:11
**telling** 21:6 41:18
77:15 127:19
128:6 129:18
204:22 248:7
344:11 355:17
**temporal** 48:19
113:1 214:7
411:6 414:9
**temporarily**
229:5
**ten** 214:10 221:3
310:15 329:5
**Tennessee**
490:22

**tens** 376:16,19
**term** 261:20
463:8 464:5,16
465:6 466:6
**terminated** 37:13
203:15
**terms** 248:1
308:7 399:3
**test** 85:17 122:20
**testified** 8:15
18:20 91:1
92:12 96:1
112:19 113:11
120:9 121:20
153:20 155:9
175:7 280:18
288:17 379:5
469:4 471:22
478:16 480:2,3
493:17
**testimony** 10:11
18:15 32:18
41:22 61:11
70:6 72:18
81:12 105:15
108:5 116:21
136:15,18
137:12 151:19
263:15 281:8
291:9 312:8
443:14 467:14
473:16,19
474:5 482:19
494:8 496:12
**testing** 121:6
136:21
**text** 347:19
394:15
**thank** 8:9,19
88:18 94:15
98:2 253:5
323:1 330:9
406:7 493:10
**theft** 391:6
**theme** 349:4
**theoretically**
42:14 319:22

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 45

100:16 122:15
136:11 208:10
209:7 221:9
244:11 285:5
295:17 352:6
355:7 364:5
442:5
**things** 36:12
44:12 112:11
118:11 155:9
155:12 165:21
196:13 202:21
205:15 208:13
246:1 268:14
292:22 310:18
338:18 355:9
364:4 424:16
488:7
**think** 11:22
53:15 63:3
72:20 83:14
90:5 94:14,17
105:22 123:3
123:21 135:15
166:18 167:12
168:15 186:3
206:22 240:16
257:10 283:2
311:2 321:21
330:20 336:17
388:14 392:2
401:5 413:4
432:19 445:2
449:5 465:1
471:19 482:18
**thinking** 83:12
165:10 261:17
**third** 5:14 12:12
14:5,17 36:2,3
37:1 176:21
215:15 229:19
254:10 306:4
395:19 434:13
435:4,5,16,17
435:22 436:2,3
455:22 458:15
462:5 464:3

466:16,17
468:2
**third-party**
253:1 419:6
**thought** 40:14
410:13
**thousands**
381:15,18
382:2
**three** 80:2 102:4
133:11 156:7,9
225:9 226:6,10
227:4 249:4
251:22 351:16
490:21 491:1
**till** 296:22 436:6
**time** 4:10 7:12,12
11:7 12:22 29:7
29:19 33:11
43:14 47:10
56:10 63:13
65:1 66:13 80:7
82:2 84:19 85:1
85:19 86:3 88:7
88:9 96:5 106:3
106:18 115:17
119:17 125:15
128:14 129:19
130:4 147:7,14
147:16 148:5
153:7,11,16
157:1 158:5,8
158:19 160:3
161:12 165:14
173:18 175:2
179:5,11,13
180:5 195:5,6
197:18 200:18
210:15 216:19
221:10 227:17
238:7 250:18
252:2 254:4
263:12 272:20
281:20 282:9
284:15,16
287:4,12 289:8
292:17 297:3

311:6 319:8
321:1 326:21
331:20,21
333:4 338:14
340:12,19
341:19 342:1
342:19 358:15
359:19 361:18
363:16 364:1
367:16 369:10
369:22 371:4
371:20 377:1
382:17 383:18
398:21 399:7
404:19 409:3
410:3 416:16
420:16 423:17
423:17 430:1
438:14 439:4
439:20 445:13
448:20 451:15
452:1 456:18
460:11 463:9
463:14 465:10
478:4 489:8
495:11 497:13
**times** 144:13
153:20 252:7
344:18 438:14
439:6 444:19
**tip** 197:22
**tired** 457:22
**title** 14:1 269:6
**titled** 6:21 30:2
412:6
**today** 10:3 49:8
123:3 333:3
406:6 410:6
430:13 434:12
436:12 439:6
463:8 464:5
465:5,21 483:1
483:17
**today's** 7:9 450:5
466:5
**Tokyo** 378:4
383:9 384:18

385:4 393:9,22
396:21 401:3
406:3
**told** 18:22 19:10
108:1 115:16
150:3 169:11
218:7 342:21
344:14,20
379:13,15
382:9,10 383:1
383:7 384:1,15
385:5,9 388:21
440:16 480:13
482:12 486:19
488:13,17
**Tony** 215:22
216:3 217:9
**tool** 299:3
**top** 131:19
218:22 219:5
230:12 257:3
337:18 430:21
458:11
**Torrent** 395:9
**Torrents** 470:9
**total** 164:12
218:9,12
248:16 266:17
398:12
**totality** 205:15
253:20 268:20
352:13 355:6
356:9 364:5,13
365:11 431:22
**totally** 194:5
**track** 46:7
**TRACKS** 257:14
257:19 258:1
261:3 305:8,14
305:15,16
**trade** 19:21
20:11,13 21:1
21:16,22 22:3,6
22:12 23:1,5,11
23:15 24:5,10
24:20 25:14,21
26:3 70:9,11

71:1,17,19 72:6
72:7,19,22 73:8
73:17 74:16
75:11,19 76:2
76:14 77:8,17
77:18 78:1,9,11
78:13 79:3,7,22
80:14,16 81:3,6
82:5,7,9,18,20
83:20 84:2,13
84:14,21 85:2,9
86:12,22 90:9
92:16 93:3,5,11
94:5 95:1 96:2
98:13 100:12
101:11,13,17
102:7 105:1,2,7
107:1 109:1,22
110:4,9 117:15
117:20 118:2
118:15,20
120:4,7,14,21
121:10,15
122:2,12 123:9
124:6,20 125:2
125:5,8,18
126:1 127:22
128:3,8 129:12
141:10 154:6
158:1,20
167:17,18
168:4,11
175:11,21
176:11,20
182:1,4 186:14
186:14 187:3
189:2,15 192:7
194:13 195:8
202:8,15 206:5
208:9 215:13
220:1 229:18
234:15 241:18
241:22 244:16
246:4 254:3,9
254:21 255:2
255:13,14
256:10 258:17

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 46

259:9,17 261:9
261:16 262:1,4
262:9 263:11
263:11 264:3
264:12,22
267:1 268:15
270:21 271:17
271:22 272:4
275:5 278:5,17
279:22 282:2
282:20 288:8
290:9 291:7,21
292:17 293:3
293:20 294:18
297:10 298:1,6
298:14 301:14
306:16 307:11
307:18 313:14
316:6 323:5
328:3 334:12
339:6 343:12
346:18 349:3
350:2 351:19
352:10 353:7
353:15,22
354:5,6,12,18
354:19 355:9
355:13,19
356:10,17
360:12 362:9
362:14,17
365:13 366:7
368:18,22
369:3,12,13,17
374:10,14
376:11,15,20
377:21 379:8
379:19 381:1
381:21 382:7
383:5,15,21
384:5 387:5
415:17 418:11
418:13 430:13
430:17 431:6
431:13 432:14
433:8 434:11
446:3 447:10

447:19 448:11
463:1,9,15,18
463:20 464:6,8
464:16,20,22
465:5,6,14,15
465:21 466:2,6
466:8,13
467:10 468:2,9
469:1,10,20
470:4,7,14
471:7,14 473:1
475:9 480:10
480:22 481:21
483:19 484:11
484:20 493:21
**trademark**
141:14
**trademarks**
336:5
**Trading** 171:12
171:20
**traffic** 268:10
**train** 221:10
**training** 156:17
178:1 180:10
221:8
**TRAKS** 66:8
**Trans** 30:3,8,22
31:6 133:12
**transaction** 34:7
**transactions** 34:5
**transcript** 9:20
40:7 474:12
496:10 497:6,7
498:7
**transcription**
498:10,12
**transfer** 28:6
41:16 42:2
**transferred** 29:3
29:5 35:13
40:17,22 45:5,6
147:22 148:1,4
148:7,14 384:4
**transferring** 41:8
**transfers** 41:2
**tranship** 146:7,8

**transparency**
164:12
**transport** 304:22
311:7
**transportation**
54:18 55:6,9,19
76:13 102:1
106:21 107:3
110:17 112:12
114:6 122:16
184:1 209:12
215:19 216:7,8
220:6,10 222:1
230:1 254:2
281:3 316:12
317:9,16
334:16 419:16
420:11
**tread** 399:19
**treat** 187:21
435:5,17
466:18 468:3
**treated** 61:7
217:21
**treating** 101:4,6
**trial** 4:10 113:7
**trick** 318:13
**tried** 153:2
**troop** 214:9,17
**troops** 146:14
**truck** 329:15
371:11
**trucking** 314:13
**trucks** 304:18
307:10 325:3
325:10 328:2,9
329:14 331:15
332:3,6,15
371:10 373:15
**trucks'** 304:15
**true** 17:3,21 18:8
18:13,20 19:15
70:20 389:16
397:11 401:4
401:13 496:11
498:9,11
**trust** 58:20

105:17 174:8
193:10,16
218:9,14
233:10,10
275:16,19,20
277:18 341:9
341:19 342:21
358:18 364:6
398:13 437:14
437:14 467:11
468:7,15
**trusted** 194:5
288:3 303:13
322:10 335:14
335:20,21
349:15 358:15
398:19 467:4
468:4,19
**trustee** 215:3
**trusting** 342:20
**trustworthy**
266:17
**try** 9:16 72:3
84:20 90:12
125:11 155:1
170:12 331:13
417:15 447:3
**trying** 9:13 15:14
15:16,20 43:22
44:1 64:8 83:17
84:15 114:22
140:9 172:4
191:4 204:21
237:6 242:21
284:10 291:19
292:12 331:9
352:21 355:16
356:3 425:1
426:2 472:15
**Tucker** 323:15
323:19
**TUESDAY** 1:15
**tuition** 182:14
**Tulsa** 193:11,14
275:22
**turn** 13:2 14:21
20:8 22:21 26:1

30:1 69:20
132:19 139:13
265:10 271:15
305:3 337:10
337:15 358:22
370:9,22
389:17 394:9
400:9 408:8
493:4
**Turner** 300:18
300:21 302:1,5
302:6 303:1,7
303:10,15,22
304:2 306:22
323:17,18
**turning** 95:13
**twice** 441:2
**two** 34:5 36:17
50:14 51:15
54:6,7 80:4
102:4 132:14
133:3 156:10
156:14 208:13
211:9 246:2
251:21 252:17
252:19 253:8
253:14 254:18
267:13 268:3
290:1,7 304:21
308:16 326:10
332:7 344:2,2
370:16 393:13
396:21 406:2
418:3,6 490:3
491:10
**two-way** 74:2
**type** 166:6
220:21 221:14
222:2 225:19
242:17 295:9
371:10 456:13
457:5
**types** 102:6 155:8
373:14 381:17
**typically** 438:7

**U**

5/21/2024　　　Farhad Azima v. Nicholas Del Rosso et al.　　　Farhad Azima

Page 47

**U-m-e-d** 68:6
**U.K** 386:16
**U.S** 7:5 79:13
　187:7,8,15
　188:3,5 207:15
　234:17 242:13
　242:15,16
　243:19 247:12
　247:13 251:11
　251:14 281:11
　281:14,15,17
　290:1,7 358:16
　477:3,6
**U.S.-registered**
　146:3,15
**U.S.C** 17:17
**UAE** 137:14
　139:21 146:6
　147:8 171:14
　247:9 281:10
　281:13 288:5
**UAE-registered**
　146:12
**ultimate** 262:1
**ultimately** 309:7
**Um-hmm** 44:5
　133:7 258:2
　275:11 279:8
　293:19 323:6
　344:10 350:10
　389:13 395:5
　403:13 450:11
　457:15
**Umed** 68:3,6
　211:20
**unable** 485:8
　487:8 488:3
**unanswered**
　322:17
**unaware** 419:13
**unclear** 119:5
**undergoing**
　180:1
**Underneath**
　257:2
**understand** 9:12
　9:15 13:18

14:11 15:14,17
15:19,20 16:6
16:16,18,20
19:2,19 24:2
28:9,10 30:14
34:17 35:2
42:11 43:21
61:3,14 71:7
72:15 86:21
90:7,18 111:18
140:9 155:19
160:22 182:10
204:21 210:1
233:13 240:5
247:20 257:17
261:14 283:4
331:12 338:22
354:15 355:8
397:8,14 399:2
407:11,14
408:3,6 416:5
417:8 443:14
448:18 463:8
463:18 464:5
464:15 465:6
480:10
**understanding**
13:18,21 79:10
87:2 157:18
229:9 232:20
233:7 305:21
461:19 462:22
465:1 466:8
**understands**
266:6
**understood**
102:22 105:10
105:15 191:2,7
194:4 205:17
232:17 264:13
277:19 286:10
310:12 437:16
465:20 480:1
**undertake** 79:21
266:2,12
**undertaken**
335:3

**undertook**
385:17
**underwater**
180:10
**underwriting**
200:11
**unfair** 101:14
**unfairly** 355:21
**unfettered** 165:4
**unidentified**
163:7
**unintelligible**
266:15 299:7
**Union** 10:14
**unique** 196:7
281:9 431:19
454:11 494:11
**United** 1:1 16:7
111:17 136:3
156:8,10,16
188:12,17
194:6 247:14
247:18,19
265:16,17
310:22 327:5
358:14 447:14
**UniTrans** 65:4,5
65:13,20
**units** 360:20
**university** 214:22
215:2,5
**unlawful** 390:17
391:1
**unlimited** 165:3
**unproductive**
123:1
**unrealistic**
196:14
**unreliable** 361:9
**unspecified**
380:5
**unwilling** 391:8
**update** 268:10
**usage** 14:18
172:6
**use** 88:2,11 105:7
105:12 149:10

152:6,12 155:6
170:7,9,11,18
172:4 198:2
224:20 238:1
268:3 277:14
279:5,15 290:2
295:10 310:13
349:11 352:2
355:20 357:4
373:2 375:3
411:12 415:20
422:12 470:7
493:21
**useless** 274:15
**uses** 43:15
**USG** 327:5
**USSR** 249:9,11
**usually** 59:1

_____
**V**
_____

**v** 1:5 497:3 498:4
499:8
**vague** 20:16 31:2
39:21 41:4,6
42:9 48:18 59:7
65:8 76:18
78:16 87:7,16
88:14 89:2
91:14 95:2
107:18 110:12
121:19 135:4
155:17 156:4
161:16,21
163:19 168:19
170:4 175:13
179:16 181:1
183:18 184:10
195:10,18
198:18 204:10
241:19 259:19
266:14 278:11
290:20 299:6
321:5 340:5
354:1 358:5
374:15,21
385:19 386:3
386:11 417:6

432:3,9,16
433:7,17
434:15 438:9
440:7,11 473:2
476:11 489:10
489:19 490:14
**vaguely** 67:5
68:7,10
**valuable** 363:13
363:22 365:7
451:15,19
457:9
**value** 147:6
170:1 247:20
247:21 363:5
**variant** 225:20
**varies** 259:2,4
494:22
**variety** 203:16
298:18
**various** 144:13
196:12 208:4
209:18 241:9
243:5 251:18
258:12,14
280:9 321:10
370:17 416:21
444:19 452:12
453:3 465:17
466:4 472:10
472:19
**vehicle** 304:9
**vehicles** 306:14
306:19
**vendor** 60:19
61:18 62:5
210:12 357:15
358:13,17
359:4 367:9
368:8
**vendors** 208:5,8
**venture** 58:15
79:11 200:6
314:11 315:8
317:16,21
318:12 337:5,7
337:9,21 338:3

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 48

477:5
**ventures** 324:17
**verification**
  425:9
**verify** 167:8
  253:2
**versa** 71:13,14
  72:13,16
**version** 396:5
**versions** 124:3
**versus** 7:4
**vessels** 36:8
**viable** 190:9,10
  205:7
**Vibhor** 397:9
  400:19 402:19
**vice** 71:13,14
  72:13,16
  488:14
**video** 7:17
**video-recorded**
  7:2
**Videographer**
  3:22 7:1 8:9
  86:5,8 98:4,7
  131:1,4 174:15
  175:3 255:20
  256:1 315:20
  316:1 364:18
  365:1 373:3,6
  430:3,6 462:13
  462:16 493:11
  493:14 495:9
**Videotaped** 1:11
  2:4
**views** 40:19
**Vijay** 346:1,5
  384:22 397:9
  400:6 402:19
  429:10,16
**Vikash** 6:14
  385:11 407:5,8
  408:21 428:14
  428:19 429:3
**violating** 381:7
**Virgin** 311:9
**visibility** 329:14

**vital** 1:7 5:18 7:5
  12:16 14:8
  359:21 374:8
  376:10 378:18
  379:6,17
  380:21 381:19
  382:5 383:2,13
  383:20 447:19
**vocabulary**
  464:20
**voice** 128:22
**voluntarily**
  486:22 487:5

---

**W**

**wages** 189:4
  191:17 197:14
**wagon** 219:3
**Wainwright**
  152:20,22
  166:1 245:8
**wait** 296:22
  411:22 492:15
**waive** 497:9
**waived** 4:6
**walked** 274:1
**Wall** 472:19
**wall-to-wall**
  376:2
**want** 9:13 21:21
  35:2 38:15,16
  38:22 40:18
  47:3 61:2 72:15
  86:2 88:16
  93:10 96:5,12
  97:6,7 99:5,6,9
  101:12 113:9
  118:11,13
  122:8 123:14
  125:1 128:4
  171:22 172:5
  173:10 174:11
  178:22 179:2
  189:17 222:12
  222:15 225:12
  236:11 248:20
  259:21 261:13

262:2 263:6
297:2 309:16
319:18 328:19
330:12,16
331:5 351:15
353:3 354:9,9
378:22 379:3
379:12,13
380:12 381:10
381:12 382:3
387:6 388:7,19
391:16,17
394:2 405:21
406:10 409:2
425:5 465:19
468:16 474:11
495:3
**wanted** 189:22
  251:3 253:1
  285:22 485:3
**wants** 97:21
  170:6,18
  414:15
**war** 35:10 209:5
**Washington** 1:14
  1:21 2:8 3:5
  7:14 497:2
  498:2 499:3
**wasn't** 11:15 12:3
  149:12 155:14
  188:19 232:9
  371:13 402:5,7
  442:3 443:1
  470:18
**wasn't** 152:15
  164:17 227:9
  233:1 280:16
  374:5 447:15
**waste** 86:3 297:3
  447:12
**water** 52:22
  359:14 360:20
  364:3
**way** 47:4 72:4
  84:20 99:11
  101:3 125:21
  141:4 155:2

165:13 191:1
206:20 240:13
272:19 285:20
288:5 315:4
331:13 360:2
364:2 396:15
417:16 443:20
448:3,4 465:11
465:12 474:15
496:16
**we'll** 29:16 82:7
  89:7 95:6 96:5
  98:2 99:5 124:2
  126:13 160:6
  192:14,22
  206:15,20
  256:5 373:1
  407:3 413:14
**we're** 9:8 12:10
  28:15 55:9
  69:20 83:19
  86:3 122:22
  169:22 208:16
  275:3 276:14
  361:3 369:21
  402:10 433:9
**we've** 28:17
  85:13 162:11
  273:7 285:14
  320:22 361:3
  365:19
**we'll** 71:7 234:9
  256:7
**wealth** 154:4
  159:2
**weaponize** 472:6
**weaponized**
  443:15,19,20
  472:1 473:8
**weather** 122:7
  342:2,3
**web** 440:6,10
  471:4 480:11
  481:2
**webs** 470:10
  471:10
**websites** 424:6

439:15 440:2,5
440:9 441:10
470:2 471:16
**week** 285:15,16
**weird** 396:14
**well-known**
  216:9
**went** 18:22 49:13
  70:2 136:10
  145:11 146:1
  147:2,11 155:9
  169:19,21
  201:5 217:8
  242:12 267:12
  360:2 375:10
  400:10 484:2
**weren't** 12:6
  54:14 63:9
  66:17 67:10
  373:12 480:15
**weren't** 65:15
**Wes** 290:5
**Western** 488:8
**whatsoever**
  92:11 193:21
  288:20 379:5
  379:14 462:6
**WHEREOF**
  496:18
**whet** 284:10
**wife** 38:7,17 39:5
  40:18
**wings** 48:1
**withdraw** 72:22
  130:16 292:6
**witness** 5:2 8:11
  8:14 13:4 20:3
  29:17 40:10,13
  95:8 101:15
  114:14 115:11
  119:3 124:8
  125:11 129:8
  159:19,22
  178:15 185:15
  185:19 199:6
  219:16 230:9
  238:21 239:12

5/21/2024     Farhad Azima v. Nicholas Del Rosso et al.     Farhad Azima

Page 49

240:9,21 264:6
271:16 295:15
295:16 296:1
296:21 316:22
329:22 330:3
330:15,18
342:2 389:15
391:15 403:14
403:21 404:10
405:5 407:2
408:1 430:1
434:4,8,21
440:19 441:1,5
484:12 489:21
496:12,18
497:8 498:5,17
499:9
**witnesses** 375:11
375:11 376:3
406:3
**word** 295:21
296:2 306:10
463:1,20 466:8
470:7
**words** 14:19,20
81:9 82:6 90:14
99:9 146:8
227:9 282:14
494:10
**work** 9:18 68:16
110:3 112:14
158:16 197:19
207:1 217:16
221:4,14,19
223:22 224:3
228:12 229:6
269:5 287:16
295:3 297:9
301:2,8 380:13
446:10
**worked** 107:13
108:22 143:20
207:13 232:11
300:21 301:1
302:6 326:13
326:15 437:9
437:20 446:12

**worker** 232:7
**working** 186:16
237:11 272:17
302:16 414:2
429:7 441:18
**works** 15:19
144:4 411:17
420:10
**world** 90:4 121:4
126:11 156:13
157:9 201:18
202:2 227:21
248:1 252:10
292:4 311:10
392:17 447:14
457:7
**world's** 252:1
**worldwide** 153:6
224:8 289:7
**worm** 418:4
426:5,8
**worn** 341:4
**worried** 178:17
436:3
**worry** 330:19
**worth** 274:15
396:16
**worthless** 310:8
**wouldn't** 150:10
405:8 460:9
468:12,15
471:11
**wound** 147:17
366:1
**write** 70:17
264:16 348:2
360:16,18
472:16
**writing** 16:15
347:22 488:16
**written** 16:13
368:11 497:22
**wrong** 55:13,14
55:16 83:6,8
150:16,17
467:20
**wrote** 70:18

100:16
**ws** 268:19

**X**
**X** 5:1,11,11 6:1,1
249:8
**XP** 57:14

**Y**
**yeah** 10:2 45:3
48:22 57:22
72:2 73:16 77:3
96:9 123:18
129:6 153:17
157:21 224:18
238:18 248:12
252:16 270:17
272:12 330:20
337:12,17
342:9 355:2
375:7 394:12
396:15 422:1
442:9 449:16
456:18 459:13
473:22
**year** 13:14 31:20
130:3 169:20
189:8,9,10
199:21 201:17
225:11 287:4
344:4 345:4,7
476:12,13
**year-end** 350:13
**yearly** 188:4
**years** 12:22
13:14 16:9,10
52:3 55:1 56:1
56:13,14 80:7,7
82:3 89:22 90:2
105:16 106:5
107:13 108:11
108:17,18
113:4 121:3,7
126:3 136:4,22
151:10 153:12
154:3,9 155:13
156:20 158:6

159:4 169:21
183:14 187:14
193:17 197:10
201:13 208:19
208:19 214:11
214:13 216:10
216:20 217:15
218:2 221:3,4
225:9 226:7,10
227:4 246:16
250:11 267:13
290:5 292:20
300:22 310:15
344:1 345:17
360:22 398:12
416:21 432:4
441:6 476:15
487:17 494:16
494:18
**yelling** 129:8
**yellow** 421:20
**yogurt** 360:6
**York** 171:12,20
318:16 496:7
**you're** 129:9
283:9 428:18
**you've** 330:6
**young** 121:7

**Z**
**Z** 8:13 175:6
**Zalmay** 265:12
**zone** 35:10
138:10 139:18
139:21 140:3,4
209:5

**0**

**1**
**1** 20:9 21:3,11
22:2 25:14
52:17 82:5,7
84:7 85:10,12
85:20,21 86:12
86:22 92:17
93:3 94:6 103:2
123:7,9 131:7

134:18 137:6
140:13,22
141:6,17
142:12 149:5
149:17 150:2
150:21 151:17
152:1 153:14
155:5,10 156:3
158:3,21 161:5
169:16 170:3
172:13,19
173:22 186:1
271:11 396:1
402:22 403:10
403:11
**1-12** 5:19 12:17
**1-3** 271:20,21
**1:25** 175:2,4
**10** 54:8,11 106:5
219:7,21 220:11
220:12 222:1
222:10 223:9
224:6,10
225:18 227:5
233:16,22
452:6,7 478:15
478:17 479:1
**10:19** 86:6
**10:33** 86:9
**10:42** 98:5
**10:59** 98:8
**100** 44:6 56:11
107:4 147:8,22
148:9 257:20
274:9,11
281:11,13,17
304:2 336:12
456:1
**100-seat** 236:11
236:13,22
**101** 2:6 7:10,14
**104** 157:9
**10455** 372:7
**11** 26:1 229:17,18
232:16,22
233:22 234:1,3
460:10,14

5/21/2024      Farhad Azima v. Nicholas Del Rosso et al.      Farhad Azima

Page 50

**11:26** 131:2
**11:31** 131:5
**110** 441:5
**1120.00** 305:10
**12** 5:9,13 26:4
  29:8 34:15
  53:16 84:8
  85:10 234:7,12
  234:15 237:13
  238:3 239:19
  239:22 244:12
  250:4 311:2
**12:14** 174:16
**12:15** 174:12
**120** 31:19 456:2
**12A** 243:10
  244:12
**13** 5:8 84:8 85:10
  244:6,15,17
  252:15,16
  253:19 254:2,8
  254:14,15
  271:15 283:22
  284:2,4
**14** 25:4,5 53:16
  84:8 85:10
  255:2,3 271:19
  284:1,2 453:15
  453:16,17
**140** 311:6
**1400** 3:13
**15** 84:8 85:10
  106:5 256:5,9
  256:11 262:18
  264:14 271:19
  278:16,16,21
  342:8,9,9 361:5
  455:12 485:22
  493:3
**15,000** 350:19
**15,590** 350:14
**150** 311:6,22
  345:6,12
**15th** 313:21
**16** 36:14 84:8
  85:10 264:18
  264:19,21,22

265:20 424:10
**16TH** 3:4 497:2
**17** 84:8 85:11
  266:22 267:1
  270:22 271:18
  272:1,16 310:6
**1730** 1:21 498:1
  499:2
**1746** 17:18
**17th** 410:21
**18** 196:17 197:14
  198:13,17
  201:10 204:9
  205:12 234:4
  250:4 275:4,5
  276:20 277:22
  285:12,14
  291:6 459:3
  478:2
**19** 84:8 85:11
  282:1,2 284:3
  284:20 286:14
  286:17 289:5
**1976** 158:14
**1980** 216:18
  277:16
**1C** 29:14 131:13
  132:16 140:10
  162:8,10

      **2**

**2** 25:21 30:1,6
  84:7 85:10
  139:13,16,17
  158:11 159:6
  159:14 162:9
  162:13 163:1
  163:18 167:5
  167:17 168:4
  168:10,17
  169:2,16 170:3
  172:14 174:1
  226:4 265:10
  276:20 305:6
  306:3 358:22
  389:17 394:13
  407:15 450:8

493:19
**2.1** 337:13
**2/14/2015** 6:22
  412:7
**2/17/2015** 6:17
  410:16
**2:45** 255:21
**20** 5:21 25:5,10
  72:19 74:5 93:6
  98:15 136:4,22
  189:20,22
  293:7,10,12,18
  293:20 294:9
  297:4 396:21
**20-** 251:20
**20-CV-954-UA...**
  1:6 7:8
**20-foot** 305:10
  371:12
**200** 225:11
**200,000** 360:20
  360:21
**2000** 56:18
**20001** 2:8
**20006** 3:5 497:2
**2002** 116:11
**20036** 1:21 498:2
  499:3
**2004** 136:4
**2007** 110:17,20
  308:10 310:15
  418:19 420:3
**2008** 58:9 62:15
  63:10 64:21
  65:16 66:18
  67:11 159:10
  160:10 161:19
  163:22 164:6
  166:13 167:11
  169:19,20
  245:1 246:12
  255:8 311:18
  420:5 450:14
  451:14
**2009** 30:7,19 57:8
  131:20 141:4
  161:10,11

257:21 265:7
  279:17,18
  287:6 308:13
  420:7
**2010** 131:8
  134:14 141:6,7
  144:9,9 148:4
  163:22 167:11
  169:19,20
  243:7,16 311:2
**2011** 34:15
  201:12 267:10
  273:5 275:13
  343:16 357:11
  359:7 360:13
  361:13
**2012** 29:8 53:17
  116:11 189:10
  197:14 207:7
  211:6 301:20
  302:17 312:6
  323:4 331:19
  332:1,4,15
**2013** 38:5 215:21
  313:22 366:14
**2014** 53:17 219:8
  225:1,8,19
  312:6 340:13
  350:15 422:13
**2015** 36:14 177:4
  178:6 179:1
  188:18 196:18
  339:12,13
  340:4,14,18,22
  341:3 342:5
  410:21 411:3
  411:13 422:13
  424:7 426:1,7
  485:15 492:5
  492:21
**2016** 29:11,12
  34:8 50:2 52:5
  57:8 103:16
  110:18,20
  145:16 172:12
  188:2 201:21
  202:1 213:22

251:4 252:6
  310:6 317:15
  319:8 320:5
  321:19 342:6,8
  421:7,16 422:7
  422:13 423:21
  439:16 441:10
  443:16 470:2
  470:20 471:2,8
  472:1,7 473:7
  474:17 480:11
  481:1 484:17
  485:18,21
  486:4 488:9
  492:7,19
**2017** 37:14 58:10
  62:15 63:10
  64:22 65:16
  66:19 67:11
  169:22 196:17
  197:14 198:13
  198:17 201:10
  203:13 204:9
  204:18 205:12
  211:5 213:15
  213:19 225:5,9
  227:7 234:4
  244:3 253:19
  288:22 289:2
  291:6 314:15
  315:2,3 359:5,8
  359:15,16
  360:6 363:2,6,7
  363:14 365:8
  365:16 418:19
  420:11 474:20
  478:1 481:6
  486:2
**2018** 211:6
  213:15 227:7
  228:3 253:19
  289:13 421:16
  439:11 442:16
  443:8,17,21
  444:3,6,16
  445:4,16
  451:20 471:15

5/21/2024                Farhad Azima v. Nicholas Del Rosso et al.                Farhad Azima

Page 51

472:4 473:13
474:3,10
477:14 480:4
481:11 485:6
486:7,11 487:6
487:15 488:2
**2019** 481:20
**202** 1:22 498:2
**202)-232-0646**
497:15
**202)232-0646**
499:4
**2020** 389:21
408:10 409:20
462:21
**2021** 385:4
**2022** 215:7
**2023** 390:20
394:7 395:3
**2024** 1:15 2:1 7:9
13:11,12 17:3
496:19 497:4
497:20 498:5
499:10
**20th** 408:10
**21** 1:15 2:1 6:3
25:6,10 72:19
74:5 93:6 98:15
293:8 296:9,10
396:22 498:5
499:10
**21st** 7:9
**22** 98:15
**23** 301:13,14
303:17
**232-0646** 1:22
498:2
**23rd** 496:19
**24** 84:8 85:11
307:21 310:1
**25** 313:13,14
450:14 458:8
**25th** 225:19
**26** 25:10 72:20
74:5 98:15
332:1 390:19
458:3

**26th** 332:4,15
**27** 25:11 72:20
74:5 98:15
458:11
**27603** 3:14
**27th** 207:7
**28** 17:17 25:11
72:20 74:5
98:15 339:13
**28th** 340:15,18
340:22 341:1,3
**29** 25:11 72:20
74:5 98:15
**293** 5:21
**296** 6:3
**297** 285:18

_____
**3**
**3** 15:2 19:20 23:3
47:21 48:5
52:17 74:16
77:18 140:1
142:8 176:18
176:20 179:8
179:15 180:8
180:22 182:2
182:19 183:5
183:17 184:9
185:5 186:15
186:20 187:4
188:1 197:1
198:16 199:1,2
199:11 203:14
230:7 344:14
344:20 359:9
407:22 461:5
475:10
**3:05** 256:2
**30** 31:17 80:7
251:20 311:10
316:5,6
**30-month** 192:6
194:2
**300** 223:17
**301** 3:13
**30X100145000**
496:22

**31** 322:7 323:5
325:6 454:1,4
**32** 334:11 335:13
**3260** 489:15
**327** 334:13
**33** 52:15 339:4,5
339:6
**34** 52:16 80:6
84:8 85:11
343:4,12 344:9
**35** 84:8 85:11
346:16,18
349:2 460:18
**36** 192:8 350:1,3
355:1 460:14
**37** 356:15,17
**372** 6:6
**38** 290:9 291:6
360:11,12
362:8 363:13
363:21 364:15
365:6,22 469:9
469:12 470:14
472:22 475:9
483:19 484:20
**389** 6:10
**39** 20:10 23:11
70:4 84:6 329:8
366:6,7 367:5
368:17 369:8
370:3,12 372:1
373:19,21
431:8
**39th** 329:10
**3rd** 13:11,12 17:3

_____
**4**
**4** 23:3 186:2
188:22 189:1,2
190:14,19
191:14 198:12
359:10 389:17
389:18 394:10
394:11,21
**4-0** 271:14
**4.3** 31:12,13
**4.4** 132:19

**4.4.1** 133:10
**4:02** 315:21
**4:17** 316:2
**40** 5:13 12:10,11
69:15 89:22
97:10,14 98:11
108:18 154:3
155:13 183:14
271:11,11,12
283:20 464:4
464:17
**40-foot** 371:12
**40-plus** 55:1
290:5
**400XP** 57:14
**407** 6:13
**40s** 440:22
**410** 6:16
**412** 6:20
**415** 5:8
**430** 5:4
**44** 56:13 107:13
193:16
**45** 6:6 185:22
372:4,5 373:9
**46** 6:10 389:4,9
406:20,21
407:2
**462** 5:3
**47** 6:13 406:21
407:3,4 410:11
**478** 5:9
**48** 6:16 410:14,15
410:21
**49** 6:20 27:12
28:2 29:1 34:4
35:13 147:18
148:2 412:4,5
414:5,19,20
**4th** 37:14

_____
**5**
**5** 47:21 48:5 54:6
54:8 96:4,22
98:14,15 177:5
186:1 344:3,13
344:15,20

345:3,11
359:10 390:14
475:10
**5:12** 373:4
**5:31** 373:7
**50** 89:22 151:10
153:12 154:3,9
155:13 314:10
394:2 398:12
432:4 476:15
**50-plus** 16:8
**500** 223:17
**51** 27:11,14,17
28:1,12,19
30:15 32:3 35:3
131:11 134:20
137:15,21
138:15 161:7
164:4 265:8
272:21 288:13
309:13 319:12
**5th** 131:8 395:3

_____
**6**
**6** 14:22 192:4,13
194:3 195:9
196:8 199:10
201:10,11
203:12,13
204:3,9,17
205:11
**6,000** 225:11,12
**6:18** 430:4
**6:36** 430:7
**60** 236:16 246:16
**60-plus** 16:10
**60,000** 327:4
**6th** 30:7 279:17
279:18

_____
**7**
**7** 22:21 31:14
206:3,5 207:22
209:11 211:7
211:15 337:10
337:11,15,16
370:22,22

# Share Purchase & Shareholders Agreement

RAK Trans, Farhad Azima
& HeavyLift International
Airlines FZE





DEFENDANTS'
EXHIBIT
001C

**DEFS' EX. 001C-001**

FA_MDNC_00388886

**THIS SHAREHOLDERS' AGREEMENT** (the "Agreement") is made and entered into this 12 day of December, 2009 by and between:

1. **RAK TRANS HOLDING FZ LLC**, a company incorporated under the laws of the Ras Al Khaimah Investment Authority (RAKIA) Free Zone (License Number RAKIA 60 FZ3 03 09 1738) having its registered office at P.O. Box 31291, Ras Al Khaimah, United Arab Emirates. Herein after referred to as "RAK Trans";

2. **HEAVYLIFT INTERNATIONAL AIRLINES FZE**, a Free Zone Establishment incorporated and licensed at the Sharjah Airport International Free (SAIF) Zone, United Arab Emirates, with its registered office at Executive Suite Z-14, P.O. Box 9061, Sharjah, United Arab Emirates), hereinafter referred to as "Company" or "HeavyLift" ; and

3. **FARHAD AZIMA,** a US citizen (passport number 423045237), residing at 43 Fountain House, Park Street, London W1.

**WHEREAS:**

1. The Company, is a Free Zone Establishment incorporated in the Sharjah Airport International Free Zone ('SAIF'). As of the date of this Agreement, the Company has a total share capital of AED 150,000 (one hundred fifty thousand Dirhams), comprised of one (1) share with a par value of AED 150,000 (one hundred fifty thousand Dirhams) in the name of Farhad Azima.

2. The Company is engaged in the business of operating cargo flights from Sharjah International Airport and other Airports to various destinations across Europe, Africa and Asia.

3. The company shall convert from a Free Zone Establishment to a Free Zone company, based on RAK Trans agreeing to subscribe in cash for shares in the capital of the new SAIF Free Zone Company and the Company has agreed to allot and issue shares in the capital of the Company to RAK Trans on, and subject to, the terms of this Agreement.

4. Farhad Azima has agreed to sell his shares in the company to RAK Trans on, and subject to the terms of this agreement.

5. RAK Trans has agreed to contribute AED 10,487,517 (Ten Million Four Hundred Eighty-Seven Thousand Five Hundred Seventeen Dirhams) to the Company on, and subject to the terms of this agreement.

**DEFS' EX. 001C-002**

FA_MDNC_00388887

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 552 of 578

6. On Completion, the issued share capital of the Company will be legally and beneficially owned by the Parties in the proportions set out in section 3.2 of this agreement.

7. The Parties have agreed to enter into this Agreement for the purpose of regulating their relationship with each other and certain aspects of the affairs of, and their dealings with, the Company.

8. The Company has agreed with the Parties that it will comply with the terms and conditions of this Agreement insofar as they relate to the Company.

**1.    RECITALS:**

1.1    The foregoing recitals and any signed or entitled annexes shall constitute an integral part of this Agreement.

**2.    DEFINITIONS:**

2.1    **"Accountable Manager"** means Farhad Azima

2.2    "**Affiliate**" means: (a) with respect to a company or partnership, any company or partnership which controls, is controlled by or is under common control with such company or partnership, or any individual and/or such individual's spouse, parents and/or children ("Relations") who control(s) such company or partnership, and (b) with respect to an individual, the Relations of such individual or a company or partnership controlled by such individual and/or his Relations; it being understood that a company shall be deemed to be under the control of a person or entity if he or it owns, directly or indirectly, more than fifty percent (50%) of the voting securities, or if he or it has the power to elect more than one half of the directors of such company.

2.3    "**Agreement**" means this Shareholders' Agreement as amended or supplemented from time to time;

2.4    "**Annual Budget**" means the annual budget of the Company forming part of the Business Plan;

2.5    "**Audit Committee**" has the meaning set forth in Section (4.4.2) of Article (4) of this Agreement.

2.6    "**Board**" means the board of directors of the Company;

2.7    "**Brand**" means the "HeavyLift" brand.

2.8    "**Business Day**" means a day other than a Friday or a Saturday or a public holiday in the United Arab Emirates;

2.9    "**Business Plan**" means the Company's business plan, to be prepared by the Chief Financial Officer of the Company and approved by the Board,

**DEFS' EX. 001C-003**

FA_MDNC_00388888

including, among other things, the company's estimated total capital expenditure, the total required financing, HeavyLift Management's recommendation as to the optimum capital structure (i.e. the optimum equity vs. debt mix) and the expected return on investment (i.e. the Project IRR and Equity IRR);

2.10 **"Completion"** means the occurrence of actions as mentioned in Appendix A;

2.11 "**Company**" has the meaning set forth in the recitals to this Agreement.

2.12 "**Companies Law**" means the United Arab Emirates Companies Law in force as of the Effective Date and thereafter as amended from time to time;

2.13 **"Coercive practice"** means impairing or harming, or threatening to impair or harm, directly or indirectly, any party or the property of the party to influence improperly the actions of a party;

2.14 **"Collusive practice"** means an arrangement between two or more parties designed to achieve an improper purpose, including influencing improperly the actions of another party;

2.15 **"Corrupt practice"** means the offering, giving, receiving, or soliciting, directly or indirectly, anything of value to influence improperly the actions of another party;

2.16 **"Fraudulent practice"** means any act or omission, including a misrepresentation, that knowingly or recklessly misleads, or attempts to mislead, a party to obtain a financial or other benefit or to avoid an obligation.

2.17 "**Director**" means a member of the Board of the Company;

2.18 "**Effective Date**" means the date of this Agreement;

2.19 "**Fiscal Year**" means the annual accounting period of the Company, which is twelve (12) months ending on December 31st of each year, except for the first Fiscal year which shall start on the Effective Date and end on the 31st of December 2009.

2.20 "**General Assembly**" means the general assembly of the Company's shareholders;

2.21 "**IFRS**" or **"International Financial Reporting Standards"** means the international accounting standards issued by the International Accounting standards Committee as supplemented and/or modified from time to time;



**DEFS' EX. 001C-004**

FA_MDNC_00388889

2.22 **"KPMG Report"** means the enterprise value study undertaken by KPMG and the indicative business valuation prepared on the basis thereof, dated 12 October 2009. The enterprise value was based on the below mentioned financial performance projections (amongst other mentioned in the report) made by Farhad Azima and Ray Adams of HeavyLift International Airlines FZE:

| YEAR | Revenue (in USD millions) | Gross Profit Margin | EBITDA Margin | Net Profit Margin |
|------|---------------------------|---------------------|---------------|-------------------|
| 2009 | 13.7 | 17% | 2% | -5% |
| 2010 | 34.8 | 15% | 10% | 7% |
| 2011 | 33.9 | 16% | 11% | 6% |

"**Material Amount**" meaning an amount that is greater than 917,500 AED (Nine Hundred and Seventeen Thousand Five Hundred Dirhams);

2.23 **"Chief Financial Officer" means Mr. Ray Adams;**

2.24 **"Memorandum and Articles of Association"** means the Memorandum of Association and the related Articles of Association of the Company, as amended to reflect the relevant provisions of this Agreement;

2.25 **"Reserved Matters"** has the meaning set forth in Section (5.2) of Article (5) of this Agreement;

2.26 **"Right of Pre Emption"** means each and any of the rights of Pre Emption mentioned in Article 8 of this Agreement;

2.27 **"SAIF"** shall mean Sharjah Airport International Free Zone

2.28 **"Shares"** means the all shares in the capital of the Company having a par value of one UAE Dirham (1 AED) each with equal rights and obligations and **"Share"** shall be construed accordingly;

2.29 **"Transfer"** means the sale, conveyance, assignment, disposal of or any other form of transfer of the Company's shares.



**DEFS' EX. 001C-005**

FA_MDNC_00388890

**3.** **SHAREHOLDING:**

3.1 Memorandum and Articles of Association: As promptly as practicable after the Effective Date, but in no event later than the milestone date mentioned in Appendix A of this agreement, the company shall adopt a new Memorandum and Articles of Association reflective of the clauses in this agreement and duly approved by SAIF as part of the converting HeavyLift from a Free Zone Establishment to a Free Zone Company in accordance with the SAIF regulations.

*Rb*

*of CERTAIN*

3.1.1 In the event of any ambiguity or discrepancy between the provisions of this Agreement and the Memorandum and Articles of Association, the provisions of this Agreement shall prevail. Accordingly, the Shareholders shall act in accordance with this Agreement and shall further, if necessary, procure any required amendment to the Memorandum and Articles of Association.

3.2 The Shareholders hereby agree that, following the completion of the steps detailed in Appendix A, each shareholder shall hold the percentage of the Company's share capital listed in the table below.

| Shareholder | Percentage of the Company's Share Capital |
|---|---|
| RAK Trans | 51% |
| Farhad Azima | 49% |

3.3 It is hereby understood and agreed that as soon as practicable after the Effective Date, but in no event later than the milestone date specified in Appendix A of the agreement, the Chief Financial Officer of HeavyLift shall present to the Board of Directors its Business Plan for business expansion.

*RA*

**DEFS' EX. 001C-006**

FA_MDNC_00388891

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 556 of 578

3.4 Based on the approval of the Board on the Business Plan & Budget *(RAK Trans's infusion of equity in the company is not dependent on the approval of the budget by the board of Directors. However, the budget shall be prepared and managed by the company only to the extent of RAK Trans's infusion of Cash/Capital as stated in Appendix A)* the Shareholders and/or management of the Company shall cause the Company to secure the additional equity and/or debt financing (other than the equity called for under this Agreement) necessary to execute the business plan. It is hereby agreed between the parties, that neither party shall be under compulsion to contribute to any further contribution in cash or in kind for, for the expansion of the Company and nor is any cash or in kind contribution by either party into the Company expected to change the shareholding structure as stated in section (3.2) of Article (3), until such time that this Agreement is cancelled or there is mutual written consent on the matter by both the parties hereto.

3.5 **Statutory Auditor**: Subject to Section (4.4.2) of Article (4) of this Agreement, the Audit Committee of the company shall be responsible for the approval of a firm of international repute that shall act as the Company's statutory auditor.

## 4. **CONDUCT OF COMPANY'S AFFAIRS**:

4.1 **General Assembly Meetings**: The Shareholders shall receive notice of each General Assembly Meeting at least fifteen (15) Business Days before the scheduled date of such Meeting. The Company shall have at least one (1) General Assembly Meeting each Fiscal year. Such Meeting will take place at such time and place as is determined by the Board.

4.2 **Notice, Quorum, Proxies and Majority**: The notice periods, quorum and proxy rules required by the Companies Law shall apply with respect to the General Assembly Meetings of the Company, as well as with respect to the conduct of such Meetings, unless otherwise provided in the Memorandum and Articles of Association.

4.3 **Shareholders' Right to Information**: Each Shareholder shall be entitled to receive the following from the Manager:

4.3.1 Quarterly financial statements of the Company within thirty (30) days of the end of each quarter; ONE HUNRED TWENTY

4.3.2 Audited financial statements within ninety (120) days of the close of each Fiscal Year;

*Ra*

*Ra*

*Ra*

**DEFS' EX. 001C-007**

FA_MDNC_00388892

4.3.3 Any information regarding the state of affairs of the Company, as such Shareholder may reasonably request.

4.4 **Board of Directors**: The business and affairs of the Company shall be managed by the Board of Directors and the Accountable Manager, who together shall have all power and authority to manage and direct the business affairs of the Company in accordance with the provisions of this Agreement, the Memorandum and Articles of Association and applicable law.

    4.4.1 Structure of the Board: Commencing from the Effective Date, The Board shall consist of five (5) members, three (3) of whom shall be appointed by RAK Trans, including the Chairman of the Board, and *FARWAS AEIMA* two (2) of whom shall be appointed by ~~HeavyLift~~. Each member shall serve until (i) his successor is designated by the Shareholder that appointed him, or (ii) his earlier resignation, death or inability to serve. Each Shareholder shall designate its respective Directors by delivering a written notice of such designation to the Company and the other Shareholders. *Ra*

    4.4.2 Audit Committee: The Board shall appoint an Audit Committee with three (3) members, two of whom represents RAK Trans, while one represents ~~HeavyLift~~. *FARWAS AZAMA* *R~*

    4.4.3 It is understood and agreed that the Audit Committee shall report directly to the Board of Directors, and be responsible for, the review of the Company's financial and accounting policies, and its interim and annual reports prior to their submission to the Board. The Audit Committee shall also serve as directed by the Board of Directors and for the benefit of the Company.

4.5 **Removal and Reappointment of the Directors**: Any Director may be removed for cause in accordance with applicable law. In addition, each Shareholder having the right to appoint a Director pursuant to this Agreement shall also have the right, in its sole discretion, to remove such Director at any time by delivering written notice of such removal to the Company and to the other Shareholders, in which event the Shareholder which appointed the Director in question shall cause such Director to deliver a written resignation to the Company. In the case of a vacancy in the position of a Director for any reason (including removal pursuant to the preceding sentence), the vacancy shall be filled by the Shareholder that appointed the member previously holding the vacant position which is then vacant. Appointment of a Director shall be effective upon receipt of

*R~*

**DEFS' EX. 001C-008**

FA_MDNC_00388893

notice by the Company and the other Shareholders from the Shareholder taking such action, which action must be taken within a period not to exceed thirty (30) Business Days following the vacancy.

4.7 **Meetings of the Board of Directors**: Subject to the Companies Law, the Shareholders agree that (i) a meeting of the Board shall be held at such times and locations as the Board shall determine; (ii) at least four (4) meetings of the Board will take place each Fiscal Year; (iii) additional meetings of the Board will be convened at the written request of any Director; and (iv) meetings of the Board may be conducted by telephonic conference or any similar means of communication which enables all participants to hear and be heard. The meetings of the Board of Directors shall be called by the secretary of the Board of Directors on instructions of the Chairman, and each meeting shall be held at such place and time as shall be specified in the notice thereof.

4.7.1 Notice of Meetings: Written notice of each Board meeting (a "Meeting Notice") shall be delivered not less than fifteen (15) Business Days in advance of the meeting date, which fifteen (15) Business Day-period may be shortened if each Director either (a) grants a written waiver of notice of such meeting; or (b) actually attends such meeting without objection. All Meeting Notices shall include a proposed agenda listing the items to be discussed at such Board meeting. The Meeting Notice as above provided shall be considered due, legal and personal notice to such Director.

4.7.2 Board Quorum:

4.7.2.1 Without prejudice to Section (5.2) of Article (5) of this Agreement, the quorum necessary for the transaction of any business of the Board shall be three (3) Directors, provided that at least one member representing HeavyLift is present

4.7.2.2 Any action required or permitted to be taken by the Board may be taken by circulation without meeting by way of a resolution in writing signed by all of the Directors. Any such resolution may be executed in counterparts and copies of such resolutions transmitted by facsimile shall have the same effect as the originals



**DEFS' EX. 001C-009**

FA_MDNC_00388894

4.8 **Chairman of the Board**: As stated in Section 4.4.1, during the period commencing from the Effective Date, the Chairman of the Board shall be chosen by RAK Trans.

4.9 **Maintenance of Accounting Records**: The Shareholders and the Manager of the company shall cause the Company to conduct its business at all times in accordance with the highest standards of business ethics and maintain full and accurate books, records and accounts which will, in reasonable detail, accurately and fairly reflect all transactions of the Company in accordance with **International Financial Reporting Standards** ('IFRS') and applicable Laws of the United Arab Emirates.

4.10 **Management of the Company:** The Board of Directors shall have the right to nominate and appoint the Accountable Manager and the Chief Financial Officer of the Company, who shall report to the Board and be responsible for executing the policies prescribed by the Board. Further the Shareholders agree that:

4.10.1 Mr. Farhad Azima will be the **Accountable Manager** of the Company for a period of at least two (2) years from the effective date, for the purposes of maintaining valid licenses issued by the relevant aviation regulatory authorities;

4.10.2 Mr. Ray Adams will the **Chief Financial Officer** of the company responsible for The day to day operations of the company for a period of at least Two (2) years; and

4.10.3 Both Mr. Farhad Azima and Mr. Ray Adams shall retain their respective positions of Accountable Manager and Chief Financial Officer, until the board of directors by way of a simple majority (at least 3 out of the 5 members of the board of directors), decide otherwise.

4.11 **Authority of the Accountable Manager & Chief Financial Officer**: The **Accountable Manager** shall manage the day to day operations of the Company.

4.12 **Duties of the Accountable Manager & Chief Financial Officer**: Without limiting the breadth of Section (4.11) the powers and duties of the Accountable Manager and Chief Financial Officer shall include, without limitation, the following powers and duties, as well as such other powers and duties as may be granted by the Board of Directors from time to time:

4.12.1 Oversight of the development and execution of the Business plan, execution schedule and Annual Budget;

**DEFS' EX. 001C-010**

FA_MDNC_00388895

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 560 of 578

4.12.2 On request by any director of the company, provide them with the relevant records and/or documents pertaining to the financial and operational aspects of the company within 5 business days of receiving the request.

4.12.3 Hiring a cost-efficient administrative staff to assist in the day-to-day management of the Company's affairs; and

4.12.4 Submission of regular progress reports with respect to the company's business to the Board of Directors;

**DEFS' EX. 001C-011**

FA_MDNC_00388896

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 561 of 578

**5.    VOTING AMONG THE DIRECTORS:**

5.1    **Voting**: Each Director shall cast one vote on each resolution to be voted upon. Except for matters set out in Section (5.2) below, in the event that there is a deadlock among the Directors, the Chairman of the Board shall be empowered to cast the deciding vote. Except for those matters detailed in section 5.2 all decisions of the board of directors will be by way of a simple majority of the board of directors (at least 3 out of the 5 members of the board of directors, including the Chairman).

5.2    **Reserved Matters:** Decisions pertaining to the following matters shall require the approval of both Farhad Azima's and RAK Trans's representative(s) on the board of directors: :

5.2.1    Any recommendation to the Shareholders in respect of any matter requiring, under the Companies Law, the approval of representatives of not less than three-fourths of the Company's issued and subscribed share capital, who are present at a General Assembly Meeting duly and properly convened, in accordance with the Companies Law and the Memorandum and Articles of Association;

5.2.2    Altering the Company's name, and/or the establishment and announcement of the Project's brand name;

5.2.3    Any material changes in the Company's accounting policies other than changes necessary to conform to IFRS and the applicable laws of the United Arab Emirates;

5.2.4    Any borrowing by the Company in excess of 917,500 AED (Nine Hundred and Seventeen Thousand Five Hundred Dirhams) in any single instance or in the aggregate in any Fiscal Year;

5.2.5    Entering into any guarantees or executing any instruments creating liens which are in excess of 917,500 AED (Nine Hundred and Seventeen Thousand Five Hundred Dirhams) in any single instance or in the aggregate in any Fiscal Year;

5.2.6    Entering into a transaction in connection with the acquisition or disposal of any capital asset or other expenditure (including financial leases) not authorized in the Business Plan and which is in excess of 917,500 AED (Nine Hundred and Seventeen Thousand Five Hundred Dirhams) in any single instance or in the aggregate in any Fiscal Year;

5.2.7    Entering into any contract, commitment or transaction (or series of related transactions) by the Company or the waiver, termination,

**DEFS' EX. 001C-012**

FA_MDNC_00388897

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 562 of 578

modification or amendment of its rights in connection therewith, if such contract, commitment or transaction (or series of related transactions) either (a) by its terms, requires payments or other consideration with an aggregate value in excess of 917,500 AED (Nine Hundred and Seventeen Thousand Five Hundred Dirhams); or (b) obligates the Company to purchase movable or immovable assets or equipment from any one or more suppliers on an exclusive basis;

5.2.8   Any agreement whereby the Company shall guarantee any debt or obligation of any third party;

5.2.9   Entering into any agreement by the Company having the effect of materially restricting the business or activities which the Company may conduct;

**DEFS' EX. 001C-013**

FA_MDNC_00388898

## 6. DEALING WITH SHARES

Initial prohibition on transfers of Shares

6.1 No Share or any interest therein may be Transferred (other than pursuant to a Default Transfer Notice) by any Shareholder until three (3) years after the date of this Agreement (the "Lock-up Period") without the prior written consent of all Shareholders.  For the avoidance of doubt nothing in this Clause 6.1 shall limit the right of the Shareholders to grant or permit to exist an Encumbrance over Shares registered in their names to raise finance for the purposes of the business of the Company provided always any such Encumbrance shall be subject to the consents and undertakings referred to at Clauses 6.5 and 6.6.

6.2 General Restrictions: Each of the Shareholders undertakes to each of the other Shareholders and to the Company that, unless otherwise agreed by each Shareholder, it shall not at any time Transfer any Shares otherwise than in accordance with this Agreement.

6.3 Deed of Accession: No Share may be transferred unless and until the transferee (if it is not already a Shareholder) first executes a deed of accession in a form mutually agreed by the Parties (acting reasonably) under which the transferee agrees to be bound by the terms of this Agreement.

6.4 Effecting Share Transfers: The Parties must do whatever is reasonably necessary to comply with any procedures relating to the Transfer of Shares as per the terms of this agreement.

6.5 A Shareholder may not create an Encumbrance over any Shares unless it has obtained the prior written consent of all the other Shareholders and the person proposing to benefit from the Encumbrance has confirmed in writing its acceptance of the provisions of Clause 6.6.

6.6 The holder of an Encumbrance over Shares must undertake to the Shareholders not to Transfer any Share or procure the Transfer of any Shares without first offering such Shares to the other Shareholders in accordance with Clause 7.

6.7 Transfers or issues contrary to this Agreement: Any purported Transfer, issue or allotment of shares otherwise than in compliance with this Agreement will be ineffective and the Parties agree to take all steps necessary to cancel and/or reverse such Transfer, issue or allotment.



DEFS' EX. 001C-014

FA_MDNC_00388899

6.8     Permitted Transfers: For the purposes of Clause 6.9:

        6.8.1 "Transferor" means a person (other than a Transferee) which has
              transferred or proposes to transfer Shares (and in the case of a
              series of transfers the relevant Transferor for the purposes of
              determining whether any person shall be or shall have ceased to be
              an Affiliate shall be the first transferor in such series); and

        6.8.2 "Transferee" means a person holding Shares in consequence,
              directly or indirectly, of a transfer or series of transfers of Shares
              pursuant to Clause 6.9.

6.9     Subject to the consent of the Board, which consent shall not be
        unreasonably withheld, Shares may be transferred without the giving of a
        notice under Clause 7.1 where it is demonstrated to the reasonable
        satisfaction of the Board that such transfer is to an Affiliate.  If at any time
        the Transferee ceases to be an Affiliate of the Transferor, it shall be the
        duty of the Transferee and the Transferor to retransfer such Shares to the
        Transferor.

6.10    For the avoidance of doubt, nothing in this Clause 6 shall operate to
        prevent a Transfer or transfer carried out pursuant to the Applicable Laws.

7.      **PRE-EMPTIVE RIGHTS**

7.1     Pre-emptive Rights: Subject to Clause 6.1, if a Shareholder (the "Selling
        Shareholder") proposes to Transfer any Shares (the "Sale Shares"), such
        Selling Shareholder must give written notice of its intention (a "Transfer
        Notice") to the other Shareholders (each an "Offeree") setting out such
        information as is referred to at Clause 7.3.

7.2     The Selling Shareholder shall, by virtue of a Transfer Notice, offer the Sale
        Shares to the Offerees on the terms set out in the Transfer Notice and
        each Offeree shall be entitled to accept such offer in respect of some or all
        of the Sale Shares.

7.3     Transfer Notice: A Transfer Notice must state:

        7.3.1 the total number of Sale Shares;

        7.3.2 the price per Share (which must be in cash) (the "Sale Price") and
              any other terms of the proposed Transfer;

        7.3.3 the period for which the offer is open to the Offerees (the "Offer
              Period"), which may not be less than forty-five (45) days unless
              agreed by all Shareholders in writing;



**DEFS' EX. 001C-015**

FA_MDNC_00388900

7.3.4  the settlement date for completion of the sale, which (unless otherwise agreed) may not be less than ten (10) or more than thirty (30) days after the last day of the Offer Period; and

7.3.5  the name of any person to whom the Sale Shares are proposed to be transferred.

7.4  Notification of Purchasers: If the Offerees (each person called a "Purchaser") shall agree to purchase the Sale Shares or any of them and give notice in writing thereof to the Selling Shareholder, the Selling Shareholder shall be bound, against payment of the Sale Price, to transfer such of the Sale Shares to the respective Purchasers. The purchases shall be completed as soon as reasonably practicable at a place and time to be appointed by the Board when, against payment of the Sale Price, the Selling Shareholder shall deliver transfers in favour of the Purchasers together with the share certificates in respect of the relevant Sale Shares.

7.5  In the case of competition from the Purchaser in respect of the Sale Shares, they shall be allocated to each Purchaser in proportion (as nearly as possible, without involving fractions or increasing the number sold to the Purchaser beyond that applied for by him) to their existing Shareholdings.

7.6  Purchasers not found: If the Offerees do not accept the offer of all of the Sale Shares under Clause 7.1 within the Offer Period, the Selling Shareholder shall be at liberty for a period of thirty (30) days to transfer the remaining Sale Shares to any person named in the Transfer Notice by way of a bona fide sale at any price not being less than the Sale Price and otherwise on the terms set out in the Transfer Notice.

7.7  Procedures for Transfers : Where there is to be a Transfer pursuant to this Clause 7:

7.7.1  there will be an unconditional, irrevocable, valid and binding agreement for the sale and purchase of the Sale Shares and a binding agreement to transfer the legal and beneficial ownership of the Sale Shares from the transferor to the transferee, subject only to the payment of the Sale Price;

7.7.2  completion of the Transfer of Sale Shares in accordance with this Clause 7 shall occur through the procedures in place from time to time; and

7.7.3  in consideration of each other Shareholder entering into this Agreement, the Selling Shareholder irrevocably appoints as its attorney the transferee and, where relevant, each director for the

DEFS' EX. 001C-016

FA_MDNC_00388901

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 566 of 578

time being of that transferee jointly and severally to be its attorney for the purposes of executing and delivering to the transferee, in the name of the Selling Shareholder and on its behalf, all documents required to be executed and delivered by that Selling Shareholder to give effect to the Transfer of any Sale Shares.

**8.    Drag Along Option**

8.1    If at any time a Shareholder holding at least fifty per cent (50%) of the Shares in the Company (the "**Selling Shareholder**") wishes to Transfer all of its interest in the Shares ("**Sale Shares**") to a bona fide arm's length purchaser ("**Proposed Buyer**"), the Selling Shareholder may require the other Shareholder ("**Called Shareholder**") to sell and Transfer all of its Shares to the Proposed Buyer (or as the Proposed Buyer directs) in accordance with the provisions of this Clause ("**Drag Along Option**").

8.2    Exercise: The Selling Shareholder may exercise the Drag Along Option by giving written notice to that effect ("**Drag Along Notice**") at any time before the Transfer of the Sale Shares to the Proposed Buyer. The Drag Along Notice shall specify:

8.2.1    that the Called Shareholder is required to Transfer all of its Shares ("**Called Shares**") pursuant to this Clause 8;

8.2.2    the person to whom the Called Shares are to be Transferred;

8.2.3    the consideration payable for the Called Shares which shall, for each Called Share, be an amount [at least] equal to the price per share offered by the Proposed Buyer for the Sale Shares; and

8.2.4    the proposed date of the Transfer.

8.3    Once issued, a Drag Along Notice shall be irrevocable. However, a Drag Along Notice shall lapse if, for any reason, the Selling Shareholder has not sold the Sale Shares to the Proposed Buyer within 60 Business Days of serving the Drag Along Notice. The Selling Shareholder may serve further Drag Along Notices following the lapse of any particular Drag Along Notice.

8.4    No Drag Along Notice shall require a Called Shareholder to agree to any terms except those specifically set out in this Clause 8.

8.5    Completion of the sale of the Called Shares shall take place on the Completion Date. Completion Date means the date proposed for completion of the sale of the Sale Shares unless:

**DEFS' EX. 001C-017**

FA_MDNC_00388902

8.5.1 the Called Shareholder and the Selling Shareholder agree otherwise, in which case the Completion Date shall be the date agreed in writing by the Called Shareholder and the Selling Shareholder; or

8.5.2 that date is less than 60 Business Days after the date on which the Drag Along Notice is served, in which case the Completion Date shall be the 31st Business Day after service of the Drag Along Notice.

8.7 Within 60 Business Days of the Selling Shareholder serving a Drag Along Notice on the Called Shareholder, the Called Shareholder shall deliver stock transfer forms for the Called Shares, together with the relevant share certificates (or a suitable indemnity for any lost share certificates) to the Company. On the Completion Date, the Company shall pay the Called Shareholder, on behalf of the Proposed Buyer, the amount due for its Shares pursuant to Clause **8.2.3** to the extent that the Proposed Buyer has put the Company in the requisite funds. The Company shall hold the amount due to the Called Shareholder pursuant to Clause **8.2.3** in trust for the Called Shareholder without any obligation to pay interest.

8.8 To the extent that the Proposed Buyer has not, on the Completion Date, put the Company in funds to pay the consideration due pursuant to Clause 8.2.2, the Called Shareholder shall be entitled to the return of the stock transfer forms and share certificates (or suitable indemnity) for the relevant Called Shares, and the Called Shareholder shall have no further rights or obligations under this Clause 8 in respect of its Shares.

8.9 If the Called Shareholder does not, on completion of the sale of the Called Shares, execute Transfer(s) in respect of all of the Called Shares held by it, the Called Shareholder shall be deemed to have irrevocably appointed any person nominated for the purpose by the Selling Shareholder to be his agent and attorney to execute all necessary Transfer(s) on his behalf, against receipt by the Company (on trust for the Called Shareholder) of the consideration payable for the Called Shares, to deliver such Transfer(s) to the Proposed Buyer (or as they may direct) as the holder thereof. After the Proposed Buyer (or its nominee) has been registered as the holder, the validity of such proceedings shall not be questioned by any such person. Failure to produce a share certificate shall not impede the registration of Shares under this Clause 8.

**DEFS' EX. 001C-018**

FA_MDNC_00388903

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 568 of 578

*Ra*

**9.0 TAG ALONG RIGHTS**

**9.1 Tag Along:** Any Shareholder (the "**Seller**") shall ~~use its reasonable endeavours to~~ procure that a Transfer Notice given by it pursuant to Clause 7 in respect of all of the Seller's Shares shall be accompanied by an offer to the other Shareholder (the "**Continuing Party**") from the prospective purchaser of the Seller's Shares to purchase all the Shares held by the Continuing Party on terms (including price per Share) at least as favourable to the Continuing Party as those set out in the Transfer Notice are to the Seller. Any such offer shall be expressed to be (i) irrevocable, (ii) governed by English law, and (iii) open for acceptance by the Continuing Party during the Offer Period (as defined in Clause 7).

**9.2 Exercise of offer:** The offer shall be given by written notice ("**Offer Notice**"), at least 30 Business Days before the proposed sale date ("**Sale Date**"). To the extent not described in any accompanying documents, the Offer Notice shall set out:

> 9.2.1 the identity of the Buyer;
>
> 9.2.2 the purchase price and other terms and conditions of payment;
>
> 9.2.3 the Sale Date; and
>
> 9.2.4 the number of Shares proposed to be purchased by the Buyer ("**Offer Shares**").

9.3 If the Buyer fails to make the Offer to the Continuing Party in accordance with Clauses 9.1, the Seller shall not be entitled to complete the proposed Transfer and the Company shall not register any Transfer of Shares effected in accordance with the proposed Transfer.9.4 If the Offer is accepted by the other Shareholder ("**Accepting Shareholder**") within the Offer Period, the completion of the proposed Transfer shall be conditional on completion of the purchase of all the Offer Shares held by the Accepting Shareholder.

9.5 The proposed Transfer is subject to the pre-emption provisions of Clause 7, but the purchase of Offer Shares from the Accepting Shareholder shall not be subject to those

*Ra*

**DEFS' EX. 001C-019**

FA_MDNC_00388904

**10. COVENANTS, REPRESENTAIONS AND WARRANTIES:**

10.1 Compliance with Applicable Law: Each Shareholder shall comply with all applicable laws, regulations, rules and orders of governmental authorities the non compliance with which could have a material adverse effect on the business affairs or financial condition of the Company.

10.2 Organization: Each Shareholder represents and warrants that, on and as of the Effective Date, it is duly organized and existing under the laws of its jurisdiction of organization, that it has the corporate power and authority to enter into this Agreement and to consummate the transactions contemplated hereby.

10.3 Reputation of the Company: Each Shareholder shall use all reasonable and proper means in its power to maintain, improve and extend the business of the Company and to further the reputation and interests of the Company.

10.4 Compliance by Directors and Shareholders: To the extent permitted by applicable law and unless the interests of the Company do not require otherwise, each Shareholder shall cause its representatives on the Board to act or refrain from acting, in their capacity as Directors, so as to observe, comply with and give effect to the provisions of this Agreement.

10.5 Litigation: There are no material (i.e., Greater than the Material Amount) actions, suits or proceedings pending, or, to such Shareholder's knowledge, threatened, against each Shareholder before any court or governmental agency that questions such Shareholder's right to enter into or perform its obligations under this Agreement, or which question the validity of this Agreement.

10.6 Farhad Azima and the Company represents to RAK Trans that, as of November 30, 2009 the Company has not incurred or suffered any additional liability or obligation not in the ordinary course of business.

10.7 Further, Farhad Azima and the Company represents and warrants to RAKTrans that HeavyLift's contracts with those customers existing, as of the KPMG Report date ("June 30, 2009") remain unchanged and as of the Effective Date there are no material changes to HeavyLift's existing revenue.



DEFS' EX. 001C-020

FA_MDNC_00388905

**10.8 Corporate Governance:**

10.8.1 The Company shall put in place a code of conduct and framework requiring that its employees do not engage in corrupt, fraudulent, collusive, coercive or other prohibited practices;

10.8.2 The company will not, directly or through an authorized agent, engage in corrupt, fraudulent, collusive, coercive or other prohibited practices in performing any activities pursuant to this Agreement or in the discharge of its obligations;

10.9 During the Lock-up Period, and for a period of two (2) years thereafter, neither the Farhad Azima [nor any company owned of managed by the Existing Shareholder] may, without the prior written consent of RAK Trans:

10.9.1 Engage, directly or indirectly, in any business which competes with the business of the Company in the United Arab Emirates; provided, however, that such restriction shall not apply to the buying, selling or trading of aircraft;

10.9.2 Offer employment to, enter into a contract for the services of, or attempt to entice away, any employees of the Company; or

10.9.3 Deal with, or seek the custom of, any customers of the Company;

10.9.4 Solicit or entice away any suppliers of the Company.

10.10 The Parties consider the restrictions contained in Clause 10 are fair and reasonable and necessary for the protection of the interests of the Company.

**DEFS' EX. 001C-021**

FA_MDNC_00388906

**11.   TERM AND TERMINATION**:

11.1   Term: This Agreement becomes effective as of the Effective Date and shall continue in full force unless terminated in its entirety at the earliest of:

11.1.1   The mutual agreement of all the Shareholders;

11.1.2   The liquidation, dissolution or indefinite cessation of the business operations of the Company;

11.1.3   The execution by the Company of a general assignment for the benefit of creditors;

11.1.4   The filing of a petition under applicable bankruptcy laws with respect to the Company; and/or

11.1.5   Any one party holds more than 75% of the Company's Shares (If the agreement was terminated for this clause, clauses 4 and 5 in relation to the BOD structure and the reserved matters shall survive such termination).

**12.   MISCELLANEOUS**:

12.1   Governing Law: This Agreement and the rights and liabilities of the Shareholders hereunder shall be governed by and construed in accordance with the laws of England and Wales in the United Kingdom.

12.2   Arbitration: The two Parties undertake, in the event a dispute arises out of or in connection with this Agreement, to make a good faith effort to resolve such dispute amicably.  If the Parties fail to reach an amicable settlement or their dispute within sixty (60) days from the date of notification by one of the Parties to the other of such dispute or if the Parties fail to meet within twenty (20) days as from such notice, the Parties shall refer such dispute to arbitration in Paris, France under the ICC Arbitration Rules.

12.3   Headings: Headings contained in this Agreement are inserted only as matter of convenience and in no way define, limit, extend, or describe the scope of this Agreement or the intent of any provision hereof.

12.4   Severability:   In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be illegal, unenforceable or invalid, such illegality, unenforceability or invalidity shall not affect any other provision of this Agreement, but this Agreement shall be reformed and construed as if such illegal or unenforceable or invalid provision had never been contained herein and such provision shall be reformed so that it would be legal, enforceable and valid to the maximum extent permitted by law.



**DEFS' EX. 001C-022**

FA_MDNC_00388907

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 572 of 578

12.5 Assignment: Neither Party may assign or delegate any of its rights or obligations hereunder. Any assignment or delegation in derogation of this Section (12.5) shall be null and void. Subject to the limitations and transferability rights contained herein, each and all of the covenants, terms and provisions shall be binding upon and inure to the benefit of successors and assigns of the respective Shareholders hereto.

12.6 Counterparts: This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.7 Amendment: Any amendment to this Agreement shall require the written consent or affirmative vote of every Shareholder.

12.8 Notices and other Communications: Any and all notices, requests, demands and other communications required or otherwise contemplated to be made under this Agreement shall be in writing and shall be deemed to have been duly given (a) if delivered personally, when received; (b) if transmitted by facsimile, upon receipt of a transmittal confirmation; or (c) if sent by registered airmail, or prepaid postage, on the seventh (7th) Business Day following the date of deposit in the mail. All such notices, requests, demands and other communications shall be addressed as follows:

**If to RAK Trans:**

RAK Trans
PO. Box: 31291, Jazeera Al Hamra, RAKIA Office
Ras Al Khaimah, United Arab Emirates
Email: Vijay.Arumbakkam@rakinvestmentauthority.com
Fax: + 671 01 / 14f20.

**If to HeavyLift International Airlines FZC:**

Ray Adams
Chief Financial Officer
P.O. Box 9061, SAIF Zone
Sharjah, UAE
Email: Ray.Adams@hl-cargo.com
Fax: +1 (816) 222-0468

**DEFS' EX. 001C-023**

FA_MDNC_00388908

12.9 <u>Non-Waiver</u>: In the event that a Party waives any particular provision(s) hereof, it is understood and agreed that such a waiver shall not be deemed to constitute a waiver in the future of the same or any other provision of this Agreement.

12.10 <u>New Investors</u>: Each Person to whom the Company may after the Closing Date issue, allot or transfer shares shall as a condition to such allotment, issuance or the effectiveness of such transfer be required to execute an Adherence Deed in the format set out in Appendix B to this Agreement, which Adherence Deed shall contain a written acknowledgement of the existence of this Agreement, a consent to become a Party to this Agreement, as well as concurrence to be bound by the terms and conditions of this Agreement. The Company shall not issue, allot or transfer any shares until it has received an Adherence Deed from the Person to whom such shares are to be issued, allotted or transferred.

12.11 <u>Press Announcements</u>: No Party shall make any press releases or announcements without obtaining the prior written approval of the other Parties. The Parties shall cause the Company to either designate a spokesperson, or appoint a renowned, well reputed public relations firm to handle all communications with the media on behalf of the Company.

12.12 <u>Action by the Company</u>: Wherever in this Agreement it is stated that any action is to be taken by the Company, it shall mean that the Parties to this Agreement shall endeavor to use all reasonable efforts as Shareholders of the Company to cause the Company to take such action as herein described.

12.13 <u>Appendices</u>: Appendices (A) and (B) are attached to this Agreement and are incorporated herein by reference as if set forth herein in full. The parties shall use their best endeavors to complete the milestones outlined in Appendix A as soon as possible.

12.14 <u>Entire Agreement:</u> This Agreement comprises the entire agreement between the Shareholders in relation to its subject matter and no earlier agreement, understanding or representation, whether oral or in writing, in relation to any matter dealt with in this Agreement will have any effect from the date of this Agreement.



DEFS' EX. 001C-024

FA_MDNC_00388909

**IN WITNESS WHEREOF**, the undersigned have each executed or caused this Agreement to be executed as of the Effective Date.

**For RAK Trans**

Signature

Date

Name     Dr. Khater Massaad

Title     Chief Executive Officer

**Farhad Azima**

Signature

Date Dec. 7,09

Name     Farhad Azima

Title     Accountable Manager HeavyLift International Airlines, FZE

**For HeavyLift International Airlines, FZE**

Signature

Date

7 DECEMBER 2009

Name     Ray Adams

Title     Chief Financial Officer

DEFS' EX. 001C-025

FA_MDNC_00388910

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 575 of 578

APPENDIX A

| Step | Action (Actioning Party) | Initiation Date | Output (Actioning Party) | Milestone Date | RAKIA Payment | | Farhad Azima Payment (receipt) | | HeavyLift Cash/Capital Infusion | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | USD | AED | USD | AED | USD | AED |
| 1 | A Spin off of Heavy Lift Training Academy (HeavyLift and Farhad Azima) | On or Before December 7, 2009 | A Presentation of documents by HeavyLift to the effect of Heavy Lift spinning of HeavyLift Training Academy to RAK Trans | On or Before December 7, 2009 | | | | | | |
| 2 | A RAK Trans, transfers AED 184,117.65 to HeavyLift's Bank Account (RAK Trans) | On or Before December 11, 2009 | A Presentation of Share certificates, duly approved by SAIF, (by HeavyLift to RAK Trans), in the name of RAK Trans showing 49 % ownership in HeavyLift Airlines whose paid up Capital is AED 184,117.65 to RAK Trans | On or Before December 15, 2009 | 19,744.66 | 146,117.65 | | | 39,266.66 | 146,117.65 |
| 3 | A Constitution of a New Board of Directors and SAIF approval on relevant Articles and Memorandum with SAIF approval reflecting RAK Titani's 3 directors, including Chairman & Farhad Azima's two directors (HeavyLift) | On or Before December 15, 2009 | A Presentation of SAIF approval (by HeavyLift to RAK Trans) on the new board of directors and the relevant Article and Memorandum of Association reflecting the terms of the agreement, to RAK Trans | On or Before December 17, 2009 | | | | • | | |
| 4 | A RAK Trans infusion of Cash into HeavyLift for Business Expansion, Tranche 1 - RAK Trans to transfer AED 3,827,057 into the Bank Account of HeavyLift (RAK Trans) | On Or Before Dec 28, 2009 | A Accounting Entry by HeavyLift to reflect the infusion of Cash by RAKIA into the company (HeavyLift) | | 1,042,199.74 | 3,827,057.98 | | | 1,042,199.74 | 3,827,057.98 |
| 5 | A RAK Trans Transfers Tranche 1 of the total consideration amounting to AED 1,310,939 into the Bank Account of Farhad Azima (RAK Trans) | On Or Before Dec 28, 2009 | A Presentation of Share certificates (by HeavyLift or Farhad Azima to RAK Trans), duly approved by SAIF, in the name of RAK Trans showing RAK Trans's 51 % ownership in HeavyLift Airlines whose paid up Capital is AED 294,117.65 | On or Before December 29, 2009 | 356,999.95 | 1,310,939.52 | 356,999.95 | 1,310,939.52 | | |
| 6 | A HeavyLift Business Plan and Budget based on infusion of RAK Trans Function 1 tranches (HeavyLift). Aprx. 1.50 / 8 million Budget for 2010 to all Directors (HeavyLift) | On or Before December 29, 2009 | 6 Approval by Board of Directors (RAK Trans and Farhad Azima) | On or Before December 29, 2009 | | | | | | |
| 7 | A RAK Trans Infusion of Cash into HeavyLift for Business Expansion, Tranche 2. RAK Trans to transfer AED 2,689,280 into the Bank Account of HeavyLift (RAK Trans) | On or Before May 30, 2010 | A Accounting Entry by HeavyLift to reflect the infusion of Cash by RAKIA into the company (HeavyLift) | | 732,355.87 | 2,689,288.99 | | | 732,355.87 | 2,689,288.99 |
| 8 | A RAK Trans Transfers Tranche 2 of the total consideration amounting to AED 655,469.25 into the Bank Account of Farhad Azima (RAK Trans) | On or Before May 30, 2010 | A Confirmation on receipt of payment by Farhad Azima to RAK Trans | On or Before June 2, 2010 | 178,499.88 | 655,469.25 | 178,499.88 | 655,469.25 | | |
| 9 | A RAK Trans Infusion of Cash into HeavyLift for Business Expansion, Tranche 2. RAK Trans to transfer AED 3,827,057 into the Bank Account of HeavyLift (RAK Trans) | On or before Sept 30, 2010 | A Accounting Entry by HeavyLift to reflect the infusion of Cash by RAKIA into the company (HeavyLift) | | 1,042,199.74 | 3,827,057.98 | | | 1,042,199.74 | 3,827,057.98 |
| 10 | A RAK Trans Transfers Tranche 3 of the total consideration amounting to AED 655,469.25 into the Bank Account of Farhad Azima (RAK Trans) | On or Before September 30, 2010 | A Confirmation on receipt of payment by Farhad Azima to RAK Trans | On or Before October 2, 2010 | 178,499.88 | 655,469.25 | 178,499.88 | 655,469.25 | | |
| | | | | TOTAL | 3,569,999.62 | 13,109,395.60 | 713,999.62 | 2,621,878.00 | 2,856,000.00 | 10,487,517.60 |



DEFS' EX. 001C-026

FA_MDNC_00388911

**Appendix B:** Form of Adherence Deed

This Deed of Adherence is made by [NAME AND ADDRESS OF NEW INVESTOR] (the "New Investor") and is considered supplemental to the Shareholders' Agreement dated [_____] made between Farhad Azima, HeavyLift International Airlines FZE and RAK Trans LLC. (the "Shareholders' Agreement").

The New Investor hereby acknowledges the existence of the Shareholders' Agreement and voluntarily agrees to the following terms:

(1) The New Investor hereby confirms that [he/she/it] has received a copy of the Shareholders' Agreement and in accordance with Section (13.9) of Article (13) thereof, has agreed to enter into this Adherence Deed.

(2) The New Investor wishes to be allotted to (him/her/it)       shares (the "Shares") in the Company, which is a private shareholding company existing under the laws of the United Arab Emirates;

(3) The New Investor hereby covenants to be bound by all the terms and conditions of the Shareholders' Agreement which shall apply to the New Investor to the effect that the New Investor shall be deemed with immediate effect from the date on which the Shares are registered in [his/her/its] name to be a Party to the Shareholders' Agreement as if named as a Party to that Agreement.

(4) The Shareholders' Agreement can be enforced against the New Investor.

(5) This Adherence Deed shall be governed by the laws of the United Arab Emirates.

IN WITNESS WHEREOF the New Investor has executed this Adherence Deed on the date first above written.

Signature:
Name:
Date:



**DEFS' EX. 001C-027**

FA_MDNC_00388912

Case 1:20-cv-00954-WO-JLW   Document 379-7   Filed 07/15/24   Page 577 of 578