# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

## CASE NO. 1:20-cv-00954-WO-JLW

FARHAD AZIMA,

               Plaintiff,

v.

NICHOLAS DEL ROSSO and
VITAL MANAGEMENT SERVICES,
INC.,

               Defendants.

**DEFENDANTS' BRIEF IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

Defendants, Nicholas Del Rosso and Vital Management Services, Inc. (collectively, "**Defendants**"), through counsel and pursuant to Fed. R. Civ. P. 56(a), serves this Brief in Support of Motion for Summary Judgment, and state:

## I.  <u>INTRODUCTION</u>

According to Plaintiff, "[t]he lawsuit was filed for the hacking." This Court, however, dismissed all but his claims for violating the North Carolina Trade Secrets Protection Act ("**NCTSPA**") and conspiracy, as well as limited them to "2018-2019 conduct" occurring years later.

The misappropriated information are not protectable trade secrets. Moreover, Plaintiff's claims accrued beyond the limitations period on in 2017— not in 2018 or 2019.

## II. UNDERLINE{UNDISPUTED MATERIAL FACTS}

### A. Procedural History.

Defendants allegedly "oversaw and directed the hacking of Plaintiff" and disclosed his data on blogs in 2016. Complaint ("**Compl.**") at ¶¶1, 14-32. His data, however, was allegedly not public until "May and June 2018" when "the blog sites were modified to include new links to WeTransfer sites that contained copies of [his] stolen data." *Id.* at ¶¶23-24. Plaintiff further alleges that in "June 2019, the links on the blog sites were modified to include new WeTransfer links containing some of [his] stolen data." *Id.* at ¶26.

The Court dismissed all of Plaintiff's original claims on limitations grounds except those for violating the NCTSPA and conspiracy because each posting of a "new link" to Plaintiff's data in 2018 and 2019 "gives rise to multiple, discrete claims corresponding to each act of misappropriation[.]" D.E. 65 at 22. The Court, however, limited them to Defendants' alleged "2018-2019 conduct." *Id.* at ¶¶ 22-24

### B. Plaintiff's "Trade Secrets."

Plaintiff refused to identify his trade secrets for years and only identified thirty-nine documents allegedly containing his misappropriated trade secrets ("**Identified Documents**")[1] twelve days before the close of fact discovery after

---

[1] Defendants refer to each identified trade secret as "T.S. No. __."

2

multiple successful motions to compel and orders granting same. *See, e.g.,* D.E. 316, 349; *see also* Ex. A at 6-7; Ex. B. Plaintiff withdrew T.S. No. 5 after discovery revealed he had simply copied a document created by another person. *See* Ex. A at 9; Ex. D, Transcript of ALG Transportation, Inc.'s Deposition ("**ALG Dep.**") at 85:7-103:5.

Plaintiff describes six of them—T.S. Nos. 20-21, and 26-29—as "curated compilation[s] of annotated business contacts" (the "**Rolodexes**"). *See* Ex. C at 12-14. They are instead spreadsheets that Plaintiff created *for use in this litigation* by extracting <u>all</u> his contacts from personal devices containing only basic, publicly available information.[2] *See* Ex. E at ¶77; *see* Ex. B at T.S. 20-21, 26-29.

Plaintiff created none of the other Identified Documents. Many were created by independent companies *and contain their business information*. *See, e.g.,* Ex. F, Transcript of Plaintiff's Deposition ("**Azima Dep.**") at 208:21-211:3, 322:6-332:21, 347:17-349:9, 359:9-12. The rest were created by or for entities in which he owned an interest. *See* Ex. A at pp. 7-19.

- T.S. Nos. 1, 2, 12-17, 19, and 34-35 (collectively, "**HeavyLift Trade Secrets**"), were created for or on behalf of HeavyLift International ("**HeavyLift**"), a company which ceased operations

---

[2] Among Plaintiff's "contacts" is *orders@amazon.com* and his housekeeper's phone number. *See* Ex. B at T.S. 20, Row 353; T.S. 21, Row 1098.

in 2012. *See* Ex. A at pp. 8, 11-14, 17-18; Azima Dep. at 27:2-31:10, 34:11-35:14; Ex. G, Transcript of Ray Adams' Deposition ("**Adams Dep.**") at 29:21-33:13.

- T.S. Nos. 7, 8, 22, 23, 25, 31, 36, and 39 (the "**Caucas Trade Secrets**") relate to Caucas International, LLC ("**Caucas**"), a company that ceased operations well before 2017. *See* Ex. A at pp. 9-10, 14-16, 18-19; Azima Dep. at 51:3-52:17, 314:17-315:6; Adams Dep. at 22:19-23:4.

- T.S. Nos. 9, 11, 30, 32, and 33 (the "**ALG Trade Secrets**") are all failed business proposals prepared for or on behalf of ALG Transportation, Inc. ("**ALG**"). *See* Ex. A at pp. 10-11, 16-17; Azima Dep. at 216:11-217:17; 228:1-5; 317:14-319:6.

- T.S. Nos. 18, 38 (the "**Shollar Trade Secrets**") were created for or on behalf of Shollar Bottling Co. ("**Shollar**"), an entity that Plaintiff owned until 2012. *See* Ex. A at pp. 18, 38; Azima Dep. at 52:18-54:16; Adams Dep. at 36:6-18.

- T.S. No. 3 (the "**Brownies Trade Secret**") was created for Brownies Global Logistics ("**Brownies**"), a company in which Plaintiff held an indirect ownership interest until 2017. *See* Ex. A at 8-9; Azima Dep. at 35:15-37:16, 77:15-79:1.

4

- T.S. No. 6 (the "**AeroTech Trade Secret**") was created for AeroTech, Inc. ("**AeroTech**"), a failed start-up in which Plaintiff indirectly owned an interest. *See* Ex. A at 9; Azima Dep. at 47:1-48:8, 49:7-51:2, 119:9-22, 192:3-11, 204:2-16; Adams Dep. at 25:2-16, 26:14-20.

- T.S. No. 4 (the "**Smokehouse Trade Secret**") are forecasted wages for a restaurant chain in which Plaintiff owned an interest until 2013. Adams Dep. at 401:14-21; Azima Dep. at 37:17-38:7.

Plaintiff nonetheless claims that he "owns all documents and information generated by his companies" and that the Identified Documents reflect his "experience and knowledge, which is unique to and owned by [him]"—all of which he considers to be his trade secrets. *See* Ex. A at pp. 7-19.

## III. <u>ARGUMENT</u>

### A. <u>Standard on Motion for Summary Judgment</u>.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those facts necessary to establish the elements of a party's cause of action." *Bell v. Shinseki*, No. 1:12CV57, 2013 WL 3157569, at *4 (M.D.N.C. June 20, 2013). "A dispute is only genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (internal quotation omitted).

5

"The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact." *Id.* (citation omitted). "[T]he burden [then] shifts to the plaintiff to set forth specific facts showing that there is a genuine issue for trial." *Parks v. Poole*, No. 1:20CV898, 2022 WL 4622264, at *2 (M.D.N.C. Sept. 30, 2022) (cleaned up). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Long v. Libertywood Nursing Center*, No. 1:13CV315, 2015 WL 777717, at *6 (M.D.N.C. Feb. 24, 2015) (quotation omitted).

## B. <u>Plaintiff's Claims are Barred by the Statute of Limitations</u>.

Plaintiff's claims "must be commenced within three years after the misappropriation complained of is or reasonably should have been discovered." N.C.G.S. § 66-157. Because Defendants raised a statute of limitations defense and have "direct[ed] the court's attention to this admissible record evidence,", Plaintiff "bears the burden at trial of proving that [his] action was timely filed." *Wilson v. C.R. Bard, Inc.*, No. 5:19-cv-00567-M, 2020 WL 2574652, at *4-5 (E.D.N.C. May 21, 2020). "The question therefore becomes whether Plaintiff has forecast evidence of [his] own sufficient to convince the court that upon the record taken as a whole a rational trier of fact could find in Plaintiff's favor in spite of the evidence cited by Defendant[s]." *Id.* at *5.

"[B]are allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." *Barbagallo v. Potter*, No.

6

1:04CV00839, 2005 WL 2460725, at *1 (M.D.N.C. Oct. 4, 2005) (quotation omitted). "[E]vidence proffered by the nonmovant that is 'merely colorable' or 'not significantly probative' of the issues will not defeat an otherwise-meritorious motion for summary judgment." *Wilson*, 2020 WL 2574652 at *3 (internal quotation omitted). Withdrawing "the case from the jury [is required] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.* (internal quotation omitted).

Plaintiff proffers only speculation and conjecture. He alleges that blogs were created in 2016 with links containing his "stolen data" to "create the impression that the [data was] available to anyone who used the internet;" but that the data was not publicly available at that time. Compl. at ¶¶20-21, 23. Plaintiff also alleges: "In May and June 2018, the blog sites were modified to include **new** links to WeTransfer[3] sites that contained copies of [his] stolen data" and that in "June 2019, the blog sites were [again] modified to include **new** WeTransfer links containing some of [Plaintiff's] stolen data." *Id.* at ¶¶24, 26 (emphasis added). The "stolen data" contained Plaintiff's trade secrets; and Plaintiff's claims arise from their disclosure via *"new"* WeTransfer links on blog sites in 2018 and 2019. *See* D.E. 65 at 17-18, 22-24; Compl. at ¶¶19, 22,

---

[3] WeTransfer is an online platform that allows persons to transfer files to other users on the Internet.

Case 1:20-cv-00954-WO-JLW   Document 380   Filed 07/15/24   Page 7 of 34

24-26, 110. But Plaintiff lacks "significantly probative" evidence that any blog was modified in 2018 to include new WeTransfer links to his data.

His data was uploaded to WeTransfer on January 27, 2017. *See* Ex. H at ¶117; Ex. J[4] at ¶8. The WeTransfer links to this data were created the same day. *See* Ex. E at ¶¶22-24; Ex. I at Ex. 1, ¶¶54-61; Ex. K, Transcript of Christopher Tarbell's Deposition ("**Tarbell Dep.**") at 46:6-54:6. The blog sites were modified to include these WeTransfer links *that same day* in 2017. *See* Ex. I at Ex. 1, ¶¶58-69, 80.

Contrary to Plaintiff's allegations in his Complaint but consistent with the foregoing, Plaintiff's expert, *on Plaintiff's behalf in another lawsuit Plaintiff filed well before initiating this action,* previously opined that "access to the data through ordinary Internet sites . . . was established . . . in January 2017." *See* Ex. H at ¶ 124. Plaintiff also admitted in another proceeding that his data was first made publicly available in 2017 and that he was damaged by his data's public disclosure in 2017. *See* Ex. L at Ex. 1, p.29 ¶ 99, Ex. 2, p. 12 ¶ 18, Table 1; Azima Dep. at 201:13-203:10, 213:12-214:8, 253:17-21. The only evidence-based conclusion is that the WeTransfer links were originally posted on the blogs at the time they were created in January 2017.

_____

[4] Defendants reserve the right to challenge the propriety of the Supplemental Report. *See, e.g., Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 190 (S.D. Cal. 2020) (prohibition against introducing new opinions after disclosure deadline under the guise of a "supplement").

Plaintiff's expert now contends that he cannot determine if Plaintiff's data was available before 2018. See Ex. H at ¶ 124; Tarbell Dep. at 101:5-102:14, 192:4-193:16. Plaintiff nonetheless claims—based on pure conjecture—that the WeTransfer links were modified between January 2017 (when the links were created) and July 2018 (when his expert first observed them). *See id.* at 46:3-19; Ex. E at ¶¶ 49, 55, 66. Summary judgment is thus appropriate with regards to the 2018 links because Plaintiff lacks "significantly probative" evidence that is not "merely colorable" to support his allegation that the blogs were modified to include "new" links in 2018. *Wilson,* 2020 WL 2574652, at *3.

That a "new" link *may* have been established in 2019 is immaterial. While Plaintiff's expert cannot determine what information was accessible through that link, the analysis would not change even if he could. *See* Tarbell Dep. at 197:5-198:20.

There is no evidence of any Defendant using any of Plaintiff's alleged trade secrets. Plaintiff instead alleges three distinct instances of <u>disclosure</u> in 2018 and 2019. *See* Compl. At ¶¶ 24, 26. As set forth above, the record evidence establishes, however, that Plaintiff's data was first disclosed in 2017 and that, at best, <u>the</u> <u>same</u> <u>data</u> *may have been redisclosed* in *2018 and 2019.*

"[W]here misappropriation is viewed as a continuing tort," as it is in North Carolina, "and the misappropriator keeps the secret confidential, the continued use of trade secrets gives rise to successive causes of action." *Bates*

9

*v. Cook, Inc.*, 615 F. Supp. 662, 681 (M.D. Fla. 1984). "However, if the trade secrets are disclosed or published," as Plaintiff alleges, "then the misappropriator becomes liable to the trade secret owner upon disclosure or publication and the tort is no longer continuing." *Id.* Unlike successive trespasses or repeated utilization of misappropriated trade secrets, a trade secret's confidentiality is impaired before redisclosure occurs. Thus: "If a defendant misappropriates and discloses a trade secret, he becomes liable to plaintiff upon disclosure" and the cause of action has accrued. *Lemelson v. Carolina Enterprises, Inc.*, 541 F. Supp. 645, 659 (S.D.N.Y. 1982). Plaintiff's claims are thus barred by the statute of limitations because he lacks evidence to establish accrual after 2017.

## C. Plaintiff's Claim for Misappropriation of Trade Secrets Fails on the Merits.

Summary judgment in Defendants' favor is appropriate for numerous other reasons.[5]

### 1. Plaintiff Admits T.S. Nos. 14 and 36 are Not Trade Secrets.

According to Plaintiff, T.S. No. 14 is "not a trade secret" and that T.S. No. 36 is "not part of the trade secrets, obviously." Azima Dep. at 255:1-18, 354:19-355:2. Summary judgment as to T.S. Nos. 15 and 36 is thus proper.

---

[5] Exhibit M contains a chart identifying the grounds for summary judgment as to each alleged trade secret.

## 2. Plaintiff Lacks Evidence That T.S. Nos. 1, 2, 4, 20, 21, or 26 through 30 Were Made Public.

Plaintiff's expert witness admits that T.S. Nos. 1, 2, 4, 20, 21, and 26-30 were not published via WeTransfer as Plaintiff alleges.[6] *See* Ex. E at ¶¶ 76-77. Summary judgment is thus also proper as those trade secrets because Plaintiff cannot establish their disclosure in 2018 and 2019.

## 3. T.S. Nos. 7, 8, 22, 23, 31, 35, and 37 are Not Plaintiff's.

The NCTSPA limits private rights of action to the "owner of a trade secret." N.C. Gen. Stat. § 66-153. However, T.S. Nos. 7, 8, 22, 23, 31, 35, and 37 were created by others and concern *their businesses*—not Plaintiff's. Plaintiff cannot establish any proprietary interest in that information. To wit:

- T.S. No. 7 is an email forwarding others' pricing and related information. *See* Ex. B at T.S. No. 7; Azima Dep. at 207:21-208:6, 209:9-211:17.

- T.S. No. 8 is in an email sent *to Plaintiff* and others containing another company's business information for further disclosure. *See* Ex. B at T.S. No 8; Azima Dep at 211:18-213:11.

---

[6] Plaintiff is only able to identify information *similar* (but not identical) to T.S. Nos. 1 and 2 that was disclosed after 2016. *See* Ex. E at ¶78.

11

- T.S. No. 22 is a third party's pricing information that was also forwarded *to Plaintiff* and others from a third party. *See* Ex. B at T.S. 22.

- T.S. No 23 was also forwarded *to HeavyLift* and contains information provided by others. *See* Ex. B at T.S. 23*;* Azima Dep. at 301:12-304:4, 306:22-307:7. Plaintiff's sole claim to "ownership" of the alleged trade secret is that "the nature of the business requires [his] input." *Id.* at 307:8-19.

- T.S. No. 35 is also contained in a document *provided to Plaintiff* from an aircraft manufacturer. *See* Ex. B at T.S. No. 35; Azima Dep. at 346:15-349:4.

- T.S. No. 37 is also third parties' pricing information to one of Plaintiff's companies. *See* Ex. B at T.S. No. 37; Azima Dep. at 356:14-360:9.

Summary judgment is thus appropriate as to T.S. Nos. 7, 8, 22, 23, 31, 35, 37 because the Identified Documents in which Plaintiff's trade secrets are alleged to be found contain business information created by and belonging to others—not to Plaintiff or Plaintiff's Companies.

### 4. None of the Identified Documents Contain Trade Secrets.

"The threshold question in any misappropriation of trade secrets case is whether the information obtained constitutes a trade secret." *Williamson v.*

12

*Prime Sports Mktg., LLC*, No. 1:19CV593, 2022 WL 2802611, at *5 (M.D.N.C. July 18, 2022) (citation omitted). "Not all confidential business information is a trade secret." *Found. Bldg. Materials, LLC v. Conking & Calabrese Co., Inc.*, 23 CVS 9285, 2023 WL 4561583, at *8 (N.C. Super. July 7, 2023); *accord. Glaxo Inc. v. Novopharm Ltd.*, 931 F. Supp. 1280, 1302 n.23 (E.D.N.C. 1996).

Trade secrets are instead "business or technical information" that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C.G.S. § 66-152(3). "North Carolina courts also look to a six-factor test to assist in the determination of whether materials constitute trade secrets." *Eli Research, Inc. v. United Communications Grp., LLC,* 312 F. Supp. 2d 748, 756 (M.D.N.C. 2004). They include: "(1) the extent to which the information is known outside the business; (2) the extent it is known to those within the business; (3) the measures taken to guard its secrecy; (4) the value of the information to the business and its competitors; (5) the amount of time and money spent to develop the information; and (6) the ease or difficulty of properly acquiring or developing the information by others." *Id.* at 756-57. Plaintiff cannot demonstrate any.

13

a. Plaintiff did Not Expend Any Quantifiable Time or Money to Develop his Trade Secrets.

Plaintiff did not expend "any significant amount of effort or money in developing the information, outside of the cost of doing business." *Edgewater Servs., Inc. v. Epic Logistics, Inc.*, No. 05 CVS 1971, 2009 WL 2456868, at \*5 (N.C. Super. Aug. 11, 2009). Each alleged trade secret is merely knowledge Plaintiff gained throughout his career. *See* Azima Dep. at 150:20-151:12, 155:22-157:5, 157:22-158:9, 180:3-180:18, 181:19-184:7, 244:14-253:16, 299:4-22, 369:22-370:10, 431:18-433:3, 453:14-457:7. And each simply "reflects Plaintiff's experience and knowledge. . ." that is "an accumulation of decades of being in business[.]" *See* Ex. A at pp. 8-19; Azima Dep. at 465:13-466:4.

b. Plaintiff's Trade Secrets Lacked Value When Disclosed.

All of Plaintiff's trade secrets lacked "independent actual or potential commercial value" at the time of disclosure in 2018 and 2019. *See* N.C.G.S. § 66-152(3)(a). As set for the below, every one relates to a company which was either defunct or to a business venture which failed; and none had any value to any competitor when disclosed. Even Plaintiff cannot identify each alleged trade secret's value:

14

```
2          Q.    How would a competitor use that

3     information against Farhad Azima?

4          A.    Did I say that?

5          Q.    I'm asking you.   Would it?

6          A.    I didn't isolate one thing rather

7     than having -- looking at big picture.

8     Because the big picture is that my entire

9     business is confidential, considered to be

10    part or all inclusive of the trade secrets.

11             One email is not justified to say

12    that this is the part.  Let's look at the

13    totality of it.
```

Azima Dep. at 352:2-13. He also proffers no fact or opinion evidence of their

value in 2018 or 2019.

In fact, each lacked independent actual or potential commercial value by

then:[7]

- The HeavyLift Trade Secrets are 2008-2011 financial forecasts and

  proposals generated by a company that ceased operations in 2012.

---

[7] As set forth above, the Rolodexes lack the specific information required to
constitute a trade secret. *See e.g., Found. Bldg. Materials, LLC v. Conking &
Calabrese, Co.*, 23 CVS 9285, 2023 WL 4561583, at \*9 (N.C. Super. July 7,
2023).

15

*See* Azima Dep. at 34:11-35:14. That information was "worthless" by 2018. *See* Ex. N at Ex. 1, pp. 3, 6-8, 12-13.

- The Caucas Trade Secrets became useless after Caucas ceased operations "way before" 2017. *See* Azima Dep. at 51:3-52:17, 314:7-315:6; Adams Dep at 22:19-23:4; Ex. N at Ex. 1, pp. 4-5, 9-11, 13-14.

- The Shollar Trade Secrets are 2011 financial forecasts for a company that ceased operations around 2012 and thus lacked value by 2018. *See* Azima Dep. at 52:18-54:15; Adams Dep. at 36:6-18; Ex. N at Ex. 1, pp. 8, 13.

- The AeroTech Trade Secret is a 2011 financial forecast for another company that failed well-prior to 2018, rendering the information stale seven years later. *See* Azima Dep. at 47:1-48:8, 49:7-51:2, 119:9-22, 193:2-11, 204:2-205:16; Adams Dep. at 26:14-20; Ex. N at Ex. 1, p. 4.

- The Brownies Trade Secret is a 2015 financial forecast that had become stale by 2018. *See* Azima Dep. at 35:15-37:7, 77:15-78:19, 37:11-16; Ex. N at Ex. 1, p. 3.

- The Smokehouse Trade Secret contains a 2012 forecasted wages for employees of restaurants that lacked commercial value when

16

created and that in any event had become stale by 2018. *See* Azima Dep. at 37:17-38:7; Adams Dep. at 401:14-21; Ex. N at Ex. 1, p. 4.

- All of the projects or proposals that constitute the ALG Trade Secrets had been abandoned years before publication and also lacked commercial value by 2018. *See* Azima Dep. at 57:7-20, 215:12-217:17, 227:3-22, 316: 4-319:10; Ex. N at Ex. 1, pp. 5-6, 10-12.

Such "stale" information cannot constitute trade secrets. *See Philips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 723 n.11 (M.D.N.C. 2009) (excluding information without "any current confidential or proprietary information" in its trade secret analysis); *Merck & Co. Inc. v. Lyon*, 941 F. Supp. 1443, 1461 (M.D.N.C. 1996) ("business information, while important, [was] not of critical value and, in any event, [was] time-dated"); *Health Care Facilities Partners, LLC v. Diamond*, No. 5:21-CV-1070, 2023 WL 3847289, at *16 (N.D. Ohio June 5, 2023) (two-year-old "financial performance information" not worth of trade secret protection); *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 554-57 (E.D. Va. 2009) (nine-year-old confidential document outlining competitive strategy no longer a trade secret); *UTStarcom, Inc. v. Starent Networks, Corp.*, 675 F. Supp. 2d 854, 871 (N.D. Ill. 2009) (denying request to designate stale competitive analyses, pricing, marketing data, and revenue projections as trade secrets).

17

c. <u>Plaintiff Made Virtually no Effort to Maintain Secrecy</u>.

"The 'proprietary aspect' of a trade secret flows, not from the knowledge itself, but from its secrecy. It is the secret aspect of the knowledge that provides value to the person having the knowledge." *DTM Rsch., L.L.C. v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001). "Even if information was initially secret and the claimant intended that trade secret information be confidential, trade secret protection can be lost if adequate measures were not taken to insure that the information was, in fact, kept confidential." *Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, No. 13 CVS 1037, 2015 WL 1880769, at *10 (N.C. Super. Apr. 23, 2015); *accord Am. Air Filter Co., Inc. v. Price*, 16 CVS 13610, 2018 WL 3466952, at *7 (N.C. Super. July 10, 2018) (disclosure absent measures to maintain confidentiality destroys trade secret protections). "While the information forming the basis of a trade secret can be transferred. . . its continuing secrecy provides the value, and any general disclosure destroys the value." *DTM Rsch., L.L.C.,* 245 F. 3d at 332.

Thus: "It is well established that no trade secret will be found if there is no evidence indicating that the plaintiff undertook efforts to ensure the information's secrecy." *Campbell Sales Grp., Inc. v. Niroflex by Jiufeng Furniture, LLC*, 19CVS 865, 2022 WL 17413381, at *8 (N.C. Super. Dec. 5, 2022) (cleaned up). "Although the reasonableness of measures taken to protect the confidentiality of information claimed to be a trade secret is often

18

appropriate for resolution by a jury, the absence of evidence of such measures can result in the dismissal of the claim as a matter of law." *Id.*

Rolodexes aside, Plaintiff's "trade secrets" were all disclosed to others in the normal course of his business. Yet Plaintiff undertook virtually no measures to maintain their secrecy in Plaintiff's Companies' possession or require Plaintiff's Companies to obligate recipients of his trade secrets to maintain their confidentiality.

According to Plaintiff, his trade secrets are stored in his brain. *See* Azima Dep. at 83:19-83:22. He admits that each of Plaintiff's Companies used those trade secrets; that they are in the Identified Documents; and that those documents are owned by the companies which generated them. *Id.* at 75:12-75:22, 89:8-92:4; Ex. A at pp. 7-32.

It is a "basic tenet of American corporate law that the corporation and its shareholders are distinct entities." *Pioneer Int'l (USA), Inc. v. Reid*, No. 2:07-cv-84-FtM-34DNF, 2007 WL 9718721, at *7 (M.D. Fla. Oct. 9, 2007) (cleaned up). "A necessary corollary of this basic tenet is that an individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets." *Id.* (internal quotation omitted). Plaintiff nonetheless claims to own the trade secrets contained in the Identified Documents. *See* Azima Dep. at 75:6-75:11, 76:1-76:8. But he did not require Plaintiff's Companies to maintain their secrecy internally or when disseminating them

19

to others. "At most, [Plaintiff] has shown evidence of inconsistent, haphazard protection of [his] alleged trade secrets. . . that simply does not constitute the taking of reasonable measures to protect [his] confidential information." *Campbell Sales Grp., Inc.*, 2022 WL 17413381, at *10.

### i. Rolodexes

The only protective measures taken to guard the information in the Rolodexes is that Plaintiff's "iPhone, iPad, and email account" were "protected by usernames and passwords, in addition to other cybersecurity measures."[8] *See* Ex. C at 15. "If a basic computer-login password were enough," however, "then every document stored on a company device would potentially be protectable." *Prairie Field Servs., LLC v. Welsh,* 497 F. Supp. 3d 381, 396-97 (D. Minn. 2020); *accord Safety Test & Equip. Co.*, 2015 WL 1880769, at *10; *McKee v. James*, No. 09 CVS 3031, 2013 WL 3893430, at *13 (N.C. Super. July 24, 2013).

### ii. HeavyLift Trade Secrets

HeavyLift employees (including its CFO who participated in creating most of the Identified Documents) were not required to sign confidentiality or non-disclosure agreements. *See* Azima Dep. at 106:20-107:14, 115:13-117:16, 269:5-270:20. Plaintiff also sold 51% of HeavyLift in 2009 to RAK Trans

---

[8] Plaintiff cannot identify these "other cybersecurity measures."

Holdings FZ, LLC ("**RAK**")—a company whose owners he claims to have never trusted. *See* Azima Dep. at Exhibit 1C; *id*. at 29:13-30:20, 342:19-343:1. RAK had21ocss to all HeavyLift's documents and information as a result. *Id.* at 32:3-9. Further, Plaintiff sold the remaining 49% of HeavyLift to RAK before Defendants' alleged misappropriation; and RAK thereafter possessed all of the company's documents and information. *See id.* at 28:22-29:12, 148:8-149:4.

Yet Plaintiff undertook no measures to maintain the secrecy of the HeavyLift Trade Secrets to which RAK had access. *Id.* at 32:10-33:18. He simply *assumed* that RAK would maintain confidentiality. *Id.*

Merely assuming or expecting the recipient of a trade secret to maintain confidentiality is legally insufficient. *Krawiec v. Manly*, 370 N.C. 602, 612, 811 S.E.2d 542, 549 (2018); *Campbell Sales Grp., Inc.*, 2022 WL 17413381 at *10 (noting failure to require confidentiality agreements when entering summary judgment). "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S. Ct. 2862, 2872, 81 L. Ed. 2d 815 (1984).

   *iii. Caucas Trade Secrets*

Plaintiff owned Caucas together with two others. *See* Azima Dep. at 51:20-52:12. He did nothing to maintain secrecy in Caucas or its co-owners'

possession because "it was understood that—by the partners doing business with each other then they will not use [Plaintiff's information] for anything else;" and because he had "known these people for years and [ ] trust[ed] them." *Id.* at 104:3-105:17. As set forth above, trust alone is legally insufficient. *See Ruckelshaus*, 467 U.S. at 1002, 104 S. Ct. at 2872; *Krawiec*, 370 N.C. at 612, 811 S.E.2d at 549; *Campbell Sales Grp., Inc.*, 2022 WL 17413381, at *10.

### iv. ALG Trade Secrets

Plaintiff did not require ALG to sign a confidentiality agreement to use his trade secrets because he is its sole owner. *See* Azima Dep. at 106:20-107:5. While he thinks that ALG required "some" employees to sign confidentiality or non-disclosure agreements, he cannot recall any that did or produce even one in discovery; and he did not require ALG's CFO to sign one simply because they have known each other for years. *Id.* at 106:20-108:20, 114:17-117:16, 229:16-233:12, 419:13-420:12.

### v. Shollar Trade Secrets

Plaintiff allowed Shollar to use his alleged trade secrets; but the only measures he took to ensure their secrecy was to store the trade secrets "on Plaintiff's computer systems, which were username and password protected." *See* Ex. A at pp. 38, 42. As set forth above, however, that alone is insufficient as a matter of law. *See Safety Test & Equip. Co.*, 2015 WL 1880769, at *10;

22

*McKee*, 2013 WL 3893430, at *13; *Prairie Field Servs., LLC,* 497 F. Supp. 3d at 396-97.

### vi. *Brownies Trade Secret*

Plaintiff claims to have provided his input to the document containing T.S. No. 3 through JFJ International Logistics LLC ("**JFJ**"), which he co-owned with others. *See* Azima Dep. at 35:15-37:7, 176:17-177:16, 184:22-186:13. JFJ, in turn, provided his and others' input to Brownies to create the document containing T.S. No. 3. *Id.* at 186:3-13. Plaintiff did not, however, take any measures whatsoever to maintain the secrecy of his trade secrets in the hands of JFJ, Brownies, or their respective owners and employees. *See id.* at 187:2-187:21. In fact, Plaintiff does not even know to whom T.S. No. 3 was disclosed prior to 2016. *See id.* at 187:22-188:20.

### vii. *Smokehouse Trade Secret*

T.S. No. 4 is contained within a document that Plaintiff did not create. *Id.* at 188:21-189:12. He does not know which Smokehouse personnel received the document and Plaintiff admits he undertook no measures to maintain T.S. No. 3's secrecy. *See id.* at 190:6-191:12. He instead claims that it was simply "understood" that the document would be kept confidential. *Id.* at 190:21-191:8. Such "understandings" are legally insufficient. *See Ruckelshaus*, 467 U.S. at 1002, 104 S. Ct. at 2872; *Krawiec*, 370 N.C. at 612, 811 S.E.2d at 549; *Campbell Sales Grp., Inc.*, 2022 WL 17413381 at *10.

23

*viii.    AeroTech Trade Secret*

T.S. No. 6 is contained in a document provided *to Plaintiff* and was intended to be further disseminated. *See* Azima Dep. at 50:4-51:2, 192:3-193:11. Plaintiff purposefully failed to undertake any measures to maintain its secrecy because he "trusted" the intended recipient and that the requirement to maintain secrecy "was clearly understood." *Id.* at 193:12-194:7. Nor is there any record that Plaintiff undertook any measures to maintain the secrecy of his alleged trade secret in his co-owner's possession or Ray Adams, who created the24ocumentt, because "it was not deemed necessary." *Id.* at 106:20-107:14; 269:5-270:20.

Plaintiff's disclosed "his" trade secrets to various companies in which he owned a direct or indirect interest. As set forth above, he did not require that those companies maintain the secrecy of Plaintiff's alleged trade secrets. This is fatal. *See DTM Rsch., L.L.C.,* 245 F. 3d, at 332.

### d. Plaintiff Permitted Third-Party Disclosure Without Requiring Continued Secrecy.

In addition to disclosing his "trade secrets" to Plaintiff's Companies without obligating them to maintain confidentiality, Plaintiff also permitted third-party disclosure of T.S. Nos. 1-3, 6-8, 12-17, 19, 22-23, 25, 31, 34-36, and 39 with only a subjective expectation of continued confidentiality.  *See, e.g.,* Ex. A at pp. 32-43; Ex. B, at T.S. Nos. 1-3, 6-8, 12-17, 19, 22-23, 25, 31, 34-36,

and 39; Azima Dep. at 58:1-62:13, 65:3-66:6, 142:12-144:14 (T.S. 1); 163:1-164:16 (T.S. No. 2); 187:2-21 (T.S. No. 3); 192:3-194:10 (T.S. No. 6); 206:2-210:20 (T.S. No. 7); 211:18-213:11 (T.S. No. 8); 237:2-239:8 (T.S. No. 12); 252:12-253:16 (T.S. No. 13); 255:1-255:16 (T.S. No. 14); 256:9-261:7 (T.S. 15); 264:20-266:20 (T.S. No. 16); 271:22-274:19 (T.S. No. 17); 284:19-288:5 (T.S. No. 19); 301:12-304:4 (T.S. No. 23); 313:12-315:18 (T.S. 25); 322:6-324:4, 333:6-334:9 (T.S No. 31); 343:11-346: 14 (T.S. No. 34); 349:1-21 (T.S. No. 35); 349:22-350:18 (T.S. No. 36); 366:5-367:13 (T.S. No. 39); Adams Dep. at 241:10-15.

He relied on either his trust that the recipients would not make further disclosure or an alleged "understanding" that they would not when doing so. *See id.* at 466:11-469:3 . At most, Plaintiff relied on basic confidentiality stamps on a few. *See id.* at 83:15-84:8, 224:12-16. None of the foregoing, however, constitute reasonable measures to maintain secrecy as a matter of law. *See Ruckelshaus*, 467 U.S. at 1002, 104 S. Ct. at 2872; *Krawiec*, 370 N.C. 602, 612, 811 S.E.2d 542, 549 (2018); *Campbell Sales Grp., Inc.*, 2022 WL 17413381, at *10; *Computer Design & Integration, LLC v. Brown*, 16 CVS 11847, 2017 WL 442691, at *9 (N.C. Super. Jan. 27, 2017) (marking documents confidential without requiring confidentiality insufficient). Plaintiff's "minimal efforts . . . to protect the secrecy of the information at issue do not constitute 'sufficient safeguards, protocols, or procedures in place to protect the secrecy' of said

25

information." *Campbell Sales Grp., Inc.*, 2022 WL 17413381 at *10 (quotation omitted).

D. **Plaintiff Cannot Establish Damages**.

"A plaintiff who succeeds in proving a claim of misappropriation of trade secrets may recover actual damages measured by the greater of economic loss suffered by the plaintiff, or unjust enrichment enjoyed by the defendant as a result of the misappropriation." *Safety Test & Equip Co., Inc. v. Am. Safety Util. Corp.*, 13 CVS 1037, 2016 WL 7380675, at *3 (N.C. Super. Dec. 16, 2016) (citing N.C.G.S. § 65-154(b)). Plaintiff's damages, however, cannot be speculative and must have been proximately caused by the conduct from which his claim arises. *See id.* (causation); *Grout Doctor Global Franchise Corp. v. Groutman, Inc.*, No. 7:14-CV-105-BO,2015 WL 2353698, at *5 (E.D.N.C. May 15, 2015) (speculation).

1. **Defendants' Alleged 2018 or 2019 Conduct Did Not Proximately Cause Plaintiff's Damages.**

"[A] plaintiff may recover actual damages that were *caused by misappropriation." 360 Mortg. Grp., LLC v. Home Point Fin. Corp.,* 740 Fed. App'x 263, 267 (4th Cir. 2018) (quotation omitted) (emphasis in original). "Conversely, a plaintiff may not recover damages for misappropriation if a defendant's use of a trade secret had no adverse economic effect upon the owner

of the trade secret." *Id.* (cleaned up). Plaintiff must "present evidence that the misappropriation was a proximate cause of those damages." *Id.*

"In a long line of decisions in this circuit, the Fourth Circuit has emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder." *See RLM Commc'ns, Inc. v. Tuschen*, 66 F. Supp. 3d 681, 698 (E.D.N.C. 2014) (cleaned up). At best, Plaintiff presents only the "possibility" that Defendants' 2018 and/or 2019 conduct caused his damages.

Plaintiff claims that he was harmed because his "entire world became public." Azima Dep. at 201:13-19, 291:1-293:5. Plaintiff admits, however, that the harm occurred prior to any actionable conduct here:

```
1        Q.   Okay.  So in 2016, your entire

2    world becomes public and that's when you

3    were harmed?

4        A.   Yes.
```

*Id.* at 202:1-4. Accordingly, Defendants' 2018 and 2019 conduct could not have proximately caused Plaintiff's economic loss.

Plaintiff's damages expert nonetheless concludes that unjust enrichment damages are between $35,724,902 and $41.8 Million. *See* Ex. O, Transcript of

27

Jimmy Pappas' Deposition ("**Pappas Dep.**") at 50:24-51:4. But he makes no attempt to quantify Defendants' unjust enrichment solely from their alleged "2018-2019 conduct;" assuming instead—based on Plaintiff's instructions— that the gross proceeds received *for both the alleged hacking and misappropriation* without distinguishing between payments received in furtherance of hacking and those received for disseminating that information is the proper method of calculation. *See id.* at 88:17-88:22, 91:5-92:8, 151:17-151:25. Plaintiff's damages expert similarly failed to limit his analysis (and thus his conclusion) to payments received for conduct occurring in 2018 or 2019 only. *Id.* at 102:7-102:23. In fact, Plaintiff did not even advise him of the conduct and time limitations this Court has imposed. *Id.* at 98:1-104:3. He was simply asked to calculate the gross proceeds that Defendants received from certain parties between 2014 and 2021. *Id.* at 54:23-55:10, 102:17-23, 144:3-9. Summary judgment is accordingly appropriate because Plaintiff fails to establish his damages were the result of Defendants' "2018-2019 conduct." *See RLM Commc'ns, Inc.*, 66 F. Supp. 3d at 699-700.

## 2. Plaintiff's Damages are Speculative.

Plaintiff "bears the burden of showing that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Grout Doctor Global Franchise Corp.*, 2015 WL 2353698 at *5 (E.D. N.C. May 15, 2015). But Plaintiff is unable to

28

quantify his economic losses. *See* Azima Dep. at 172:20-173:12, 202:13-205:16, 484:8-491:6, 492:18-493:2.

Quantifying Defendants unjust enrichment is no less speculative. Plaintiff calculates unjust enrichment by adding the gross revenue that Plaintiffs allege (without sufficient evidence) that Defendants received for hacking Plaintiff in 2016 as well as publishing his data online in 2018 and 2019. *See* Pappas Dep. at 69:18-69:25. "North Carolina law makes plain, however, that Plaintiff's evidence of Defendants' revenues. . . but not their profits, is too speculative to provide evidence of Plaintiff's alleged damages on its misappropriation claim to a reasonable certainty." *Next Advisor Continued, Inc. v. LendingTree, Inc.*, 15 CVS 21379, 2017 WL 2590777, at *6 (N.C. Super. June 14, 2017).

Plaintiff may argue that gross revenue is the proper measure because all the otherwise deductible costs consist of payments to "co-conspirators."[9] Pappas Dep. at 24:10-25:12. Even if the Court were to entertain this theory, Plaintiff must forecast evidence of each alleged co-conspirator's participation in the conspiracy related to Defendants' alleged 2018-2019 conduct *and* that <u>all</u> payments Defendants made to each was made in furtherance of Defendants'

---

[9] Plaintiff notably includes payments Defendants made to undersigned counsel of record *during this litigation* as a non-deductible payment. *See* Ex. P, Expert Report of Jimmy Pappas without exhibits.

29

alleged 2018-219 conduct only. *See Parks,* 2022 WL 4622264, at *2. Anything less renders Plaintiff's claimed unjust enrichment damages entirely speculative. *See Next Advisor Continued, Inc.,* 2017 WL 2590777, at *6.

### E. <u>Plaintiff's Civil Conspiracy Claim Fails as a Matter of Law</u>

"A claim for conspiracy cannot succeed without a successful underlying claim." *Swain v. Elfland,* 145 N.C. App. 383, 387, 550 S.E.2d 530, 534 (2001) (cleaned up). Because Plaintiff's underlying claim for misappropriation of trade secrets fails, his dependent civil conspiracy claim necessarily also fails. *See RLM Commc'ns, Inc.,* 66 F. Supp. 3d, at 701.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter summary judgment in their favor and dismiss Plaintiff's claims with prejudice.

This the 15th day of July, 2024.

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: */s/ Brandon S. Neuman*
      Brandon S. Neuman, NCSB# 33590
      Jeffrey M. Kelly, NCSB# 47269
      Samuel Rosenthal (special appearance)
      Justin Kaplan (special appearance)
      George Mahfood (special appearance)
      301 Hillsborough Street, Suite 1400
      Raleigh, North Carolina 27603
      Telephone: (919) 329-3800

30

Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
George.mahfood@nelsonmullins.com

*Counsel for Defendants*

31

# CERTIFICATE OF SERVICE

    I hereby certify that on this the 15th day of July, 2024, I served via e-mail the foregoing document on the persons listed below as follows:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Kirby D. Behre
Lauren E. Briggerman
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
kbehre@milchev.com
lbriggerman@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    Samuel Rosenthal (special appearance)
    Justin Kaplan (special appearance)
    George Mahfood (special appearance)
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    justin.kaplan@nelsonmullins.com
    George.mahfood@nelsonmullins.com

*Counsel for Defendants*

33

## CERTIFICATE OF WORD COUNT COMPLIANCE

I hereby certify that this document complies with the applicable word limit provided under MDNC Local Rule 7.3(d)(1) as it does not exceed 6,250 words as indicated by the word count generated by the word processing software used in preparing this document.

Respectfully submitted, this the 15th day of July, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Brandon S. Neuman

Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance)
George Mahfood (special appearance)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
George.mahfood@nelsonmullins.com

*Counsel for Defendants*