UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 20-CV-954-WO-JLW

FARHAD AZIMA,

    Plaintiff,

v.

NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,

    Defendants.

**SPECIAL DISCOVERY MASTER'S REPORT AND DECISION #11**

Pursuant to the Court's Order of December 29, 2023 [Doc. 313] and the provisions of Rule 53 of the Federal Rules of Civil Procedure, Alice C. Richey, as the appointed Special Master, submits this Special Discovery Master's Report and Decision #11 (the "Report"). This Report addresses the following motions:

    1.    Defendants' Motion For Determination of Privilege (the "Privilege Motion") and;

    2.    Plaintiff's Motion to Continue Defendants' Depositions and Motion for Costs (the "Deposition Motions").

**1. The Privilege Motion**

    A.  Arguments

The Privilege Motion concerns communications between Plaintiff's counsel and Berkeley Research Group, Inc. ("BRG").[1] Both motions arise out of two subpoenas issued by Defendants: i.) A subpoena issued to BRG (the "BRG Subpoena") seeking documents relating to an expert report published in the Supreme Court of Queensland, Australia in the matter

---

[1] Defendants' Motion to Compel Production of Material Relating to BGR was addressed in Report #6.

1

of *"Farhad Azima v. Didtheyreadit.com and Readnotify.com"* (BS 13611/20); and ii.) a subpoena seeking the same documents issued on December 11, 2023 to Christopher W. Tarbell ("Tarbell"), a former BRG employee who authored that expert report (the "Tarbell Subpoena").

Both BRG and Tarbell initially responded that they lacked responsive documents. Thereafter, BRG contacted defense counsel and "disclosed that it had located previously unproduced but responsive materials after Tarbell advised it where" they were located. BRG's Associate General Counsel forwarded to defense counsel certain emails between BRG and Plaintiff's counsel to explain the newly found responsive documents (the "Disputed Emails") and they are the subject of the Privilege Motion, with Plaintiff asserting privilege over them and Defendants arguing that they are either not privileged, or if so, the privilege was waived.

B. Special Master's Report and Decision

BRG responded to the BRG Subpoena on August 25, 2023, by simply stating "None" with respect to the requested documents. It is not known to the Special Master whether Tarbell responded to the Tarbell Subpoena, but Defendants advise that neither initially produced any information in response to the subpoenas. Meanwhile, Tarbell was identified by Plaintiff's counsel as an expert in this matter on December 12, 2023, shortly after BRG and Tarbell were subpoenaed by Defendants. The Tarbell Subpoena was not sent to BRG, but instead served on him personally. Plaintiff's counsel noted in an email to Defendants' counsel on March 22, 2024, that Tarbell "was previously at BRG and is now at a different firm." *See* Exhibit 2 to Plaintiff's Opposition to the Privilege Motion.

The Disputed Emails concern BRG's response to the BRG subpoena as well as Tarbell's efforts to retrieve data to assist him with his expert report for this matter. Most of them appear to be during a time when BRG was no longer engaged by Plaintiff because Tarbell

2

had left that firm, and the engagement went with him. With a few exceptions, none of them relate to drafts of any expert report or disclosure or to any communications between Plaintiff's attorneys and any witness required to provide a report under Rule 26. *See* Federal Rule of Civil Procedure, 26(b)(4)(B) and (C) which set forth the protections afforded such documents and communications. Thus, there is no Rule 26 protection of the Disputed Emails, except for the following:

- a.) All emails prior to the date that BRG ceased performing any expert services for Plaintiff in this matter. Expert services do not include responding to the BRG Subpoena;
- b.) Email dated December 4, 2023 at 3:29 PM[2] from Ian Herbert to Kate Koppenhoefer;
- c.) Email dated December 13 at 2:27 PM from Ian Herbert to Kate Koppenhoefer;
- d.) Email dated December 18, 2023 at 10:55 AM from Kate Koppenhoefer to Ian Herbert;
- e.) Email dated January 3, 2024 at 5:11 PM from Ian Herbert to Kate Koppenhoefer;
- f.) Email dated January 17, 2024 at 4:14 PM from Kate Koppenhoefer to Lauren Briggerman;
- g.) Email dated January 17, 2024 at 12:44 PM from Lauren Briggerman to Kate Koppenhoefer; and,
- h.) Email dated January 18, 2024 at 12:57 PM from Lauren Briggerman to Kate Koppenhoefer.

---

[2] Depending on the source of the produced email, the sent time may change due to time zone differences. If the time zone is the only difference, then the email is included in the list above.

On or before August 30, 2024, Plaintiff shall identify for Defendants which specific emails fall under a.) above and Defendants shall be prohibited from using or referring to those emails, as well as those listed in b.) – h.). Defendants shall also take reasonable steps to destroy all copies of these emails, including the deletion of electronic copies.

## 2. The Deposition Motions

A. <u>Arguments</u>

Plaintiff asserts that two "newly produced" documents support the reopening of the depositions of Defendants. The documents are both engagement letters (collectively, the "Engagement Letters"): i.) an engagement letter between Defendants and CyberRoot, produced by Defendant; and ii.) an engagement letter between Christopher Swecker ("Swecker") and Defendants, produced by Swecker. Swecker had previously produced a redacted version of the letter, but pursuant to Special Master Report and Decision #7, he produced a version which, according to Plaintiff, is "largely unredacted." Plaintiff argues that the Engagement Letters are new evidence which "contradict Del Rosso's sworn testimony" and which should have been produced prior to his depositions. Plaintiff asserts that the CyberRoot letter contradicts Del Rosso's testimony that CyberRoot performed no work related to Azima and that the Swecker letter contradicts Del Rosso's testimony regarding Swecker's work in instigating criminal investigations of Azima.

Defendants first state the Plaintiff's motion is untimely because it was not made before the close of discovery.[3] Defendants then state that the Engagement Letters do not provide any new information because Plaintiff was aware of the engagements which the letters confirm prior to the Defendants' depositions and Plaintiff questioned Defendants

---

[3] Given the timing of Report #10, the Special Master does not consider the Deposition Motion untimely.

about the engagements. Defendants also state that the Engagement Letters do not contradict prior testimony. Finally, in response to Plaintiff's assertion that Defendants have not confirmed whether they have produced all engagement letters with CyberRoot, Defendants confirm that they have produced their only engagement letter with CyberRoot pursuant to Special Master's Report and Decision #10.

B. <u>Special Master's Report and Decision</u>

Del Rosso testified at his personal deposition as to the scope of work performed by CyberRoot and specifically noted that CyberRoot performed no work relating to Plaintiff. Nothing in the CyberRoot letter contradicts this testimony. Plaintiff has had ample opportunity to question Defendants regarding the work performed by CyberRoot on their behalf and specifically, how/if that work related to Plaintiff.

With respect to Swecker's work, Del Rosso testified that he did not direct Swecker to meet with law enforcement, a statement also made by Swecker at his deposition. While the Swecker engagement letter does mention representation regarding the "investigation and reporting of possible international and domestic criminal or civil violations on the part of Farhad Azima," it does not contradict the testimony that Swecker's contact with the FBI was not at Del Rosso's direction.

Plaintiff has not provided a sufficient reason to reopen the Defendants' depositions.

This, the 14th day of August, 2024.

_____
Alice C. Richey
Special Master