IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Case No. 1:20CV954

| | |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.,<br><br>    Defendants. | **[AMENDED] NON-PARTY WITNESSES CHRISTOPHER SWECKER AND CHRISTOPHER SWECKER, LLC's MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS** |

Non-Party Witnesses Christopher Swecker ("Mr. Swecker") and Christopher Swecker, LLC (collectively, "Swecker"), by and through counsel, submit this Memorandum of Law in Support of this Motion for Attorneys' Fees and Sanctions. This relief is appropriate because Swecker has incurred substantial attorneys' fees and associated costs totaling $209,996.48[1] in responding to Plaintiff Farhad Azima's ("Plaintiff") Subpoena to Produce Documents ("Subpoena").

## FACTS

Non-Party Witness Christopher Swecker has been a member in good standing of the North Carolina State Bar since 1981. Mr. Swecker earned his Bachelor of Arts degree from Appalachian State University before earning his juris doctor degree from Wake Forest University School of Law in 1981. Mr. Swecker opened his solo law practice, Chris Swecker, Attorney at Law, in January of 2009. At all times relevant to this action, Mr. Swecker served as legal counsel, through his

---

[1] Work on this matter continues and will continue into the foreseeable future so this current figure of $209,996.48 is literally only accurate the day of this filing.

solo practice, for defendants Nicholas del Rosso ("del Rosso") and Vital Management Services, Inc. ("VMS").

On January 24, 2023, Plaintiff issued the Subpoena to Swecker. On February 7, 2023, Swecker, by and through legal counsel at the time, Walter Holton, filed a Motion to Quash the Subpoena. Initially, the relevant time period for production of responsive documents was August 1, 2014 to present. On July 25, 2023, in response to the aforementioned Motion to Quash, Judge Joe L. Webster issued an Order requiring the production of documents responsive to the Subpoena by August 8, 2023. Judge Webster also limited the Subpoena's expansive temporal scope to March 1, 2015 through October 15, 2020. Undersigned counsel each entered a Notice of Attorney Appearance on August 7, 2023. On that day, undersigned counsel also filed a Motion for Extension of Time to Respond to Subpoena on August 8, 2023, until and through September 22, 2023. This motion was largely induced by the overwhelming volume of potentially responsive documents. Swecker later sought further relief from the burden of the discovery process and notified Plaintiff's counsel of the need for an additional, informal extension. Since that time, Swecker has delivered four document productions, including a production of over 1,000 non-privileged text messages on September 29, 2023 and an accompanying privilege log on October 9, 2023. Swecker subsequently delivered another production of 1,327 documents and an accompanying privilege log on October 27, 2023. Swecker also delivered a supplemental production of over 550 documents on August 6, 2024 and August 8, 2024, in addition to a revised privilege log in response to Special Master Alice Richey's May 29, 2024 Order.

In addition to the aforementioned document productions, Swecker has filed necessary responses to pleadings including, but not limited to, Plaintiff's Motion to Compel, submitted by Plaintiff on January 30, 2024. Swecker swiftly and timely responded on February 2, 2024. Swecker also conducted research for, drafted, and submitted responses to inquiries by the Special Master on March 27, 2024 and April 26, 2024. Furthermore, Swecker filed a Motion to Quash or Modify on March 27, 2024 in response to Plaintiff's Subpoena Duces Tecum to Wells Fargo & Company. Swecker was forced to replicate and refile his Motion to Quash or Modify on May 1, 2024 after Plaintiff reissued the aforementioned subpoena to Wells Fargo Bank, National Association. Swecker's responsive pleadings, in both instances, were necessary to protect his interests against the overbroad Subpoena that unjustifiably seeks information irrelevant to this action.

## ARGUMENT

**I.  Plaintiff must incur the costs and fees associated with Swecker's compliance with the subpoena.**

Rule 45 of the Federal Rules of Civil Procedure require the protection of "a subpoena recipient from undue burden or expense." *Volt Power, LLC v. Butts*, No. 7:19-CV-00149-BO, 2021 WL 4188428, at *1 (E.D.N.C. Aug. 17, 2021). Section (d)(2)(B)(ii) specifically provides that a subpoena "must protect a person who is neither a party or a non-party's officer from significant expense resulting from compliance." Furthermore, "given that the Rule uses the word 'must,' the Court has to shift the cost of compliance to the requesting party if the responding party has incurred significant expenses.'" *Volt* citing *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (explaining that the rule "requires the district Court to

3

shift a non-party's costs of compliance with a subpoena, if those costs are significant."); *Linder v. Calero–Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) ("The rule is susceptible of no other interpretation" other than that Courts are required to shift significant expenses to the requesting party). Rule 45(d)(1) also provides that, "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."

### a. The process of Swecker's compliance with the Subpoena was unduly burdensome.

With respect to the undue burden analysis in the context of Rule 45 of the Federal Rules of Civil Procedure, the Fourth Circuit has explained that "[a]s under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient [of the subpoena]," however, "Courts must give the recipient's non-party status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Va. Dep't of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *see also Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005) ("A Court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance."). Considerations for the analysis include, but are not limited to: the relevance of the information sought, the requesting party's need for the information, availability of the information through other sources, "the dollars-and-cents costs associated with a large and demanding

document production," invasions of privacy or confidentiality, implications for non-parties beyond the recipient of the subpoena, and overbreadth of a subpoena. *Jordan*, 921 F.3d at 189–190.

Rule 1.6(a) of the North Carolina Rules of Professional Conduct requires that "[a] lawyer shall not reveal information acquired during the professional relationship with a client unless the client gives informed consent," except under certain enumerated circumstances. Rule 1.6(b)(1) permits disclosure "to comply with the Rules of Professional conduct, the law or Court order." Regarding an attorney's obligation to resist disclosing privileged information in a Court proceeding, Comment [14] to Rule 1.6 explains:

> Paragraph (b)(1) . . . permits compliance with a Court order requiring a lawyer to disclose information relating to a client's representation. If a lawyer is called as a witness to give testimony concerning a client or is otherwise ordered to reveal information relating to the client's representation, however, the lawyer must, absent informed consent of the client to do otherwise, assert on behalf of the client all nonfrivolous claims that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal. See Rule 1.4. Unless review is sought, however, paragraph (b)(1) permits the lawyer to comply with the Court's order.

5

For over a year, Plaintiff has insisted that the documents sought from non-party witness Swecker are relevant to the subject matter of the pending litigation and necessary to obtain relevant information. While Judge Webster issued a ruling on that narrow matter, Plaintiff's contention about the need for the information and the inability to procure this information through other sources, such as Defendants, is debatable. Plaintiff has litigated this lawsuit, and multiple others concerning the same matter, for years. Plaintiff has litigated these numerous lawsuits in both the United Kingdom and multiple courts in the United States. Within the United States, Plaintiff has litigated related lawsuits in the Middle District of North Carolina, the Southern District of New York, and the District of Columbia. Presumably, documents produced throughout these lengthy and onerous litigation proceedings should have satisfied Plaintiff's discovery needs, yet Plaintiff suggests that it has not. Nevertheless, to date, Swecker has produced approximately 3,000 documents, several of which were documents previously produced to Plaintiff through other sources.

Furthermore, while Plaintiff was aware of the complexity, nuances, and number of parties necessary to engage in this discovery exercise, these realities were not readily apparent to Swecker. Arguably, these realities were also not anticipated in Judge Webster's July 25, 2023 order, which denied Swecker's Motion to Quash, but limited the temporal scope of the subpoena. At that time, Swecker was unaware, thus did not convey to the Court, that the volume of potentially relevant documents would require the use of a discovery hosting platform, Relativity, to manage this information. The initial universe of potentially responsive documents included approximately 474,166 text messages and emails. After a strategic and concerted

6

effort to narrow the scope of that universe, 1,500 text messages, 7,500 electronic documents and families, and 391 hard copy documents remained. To initiate the document review process, counsel for Swecker conducted a first pass review to identify responsive documents and make preliminary privilege determinations in order to narrow the universe of documents to be produced. Swecker, a single person and not an entity, has been inundated by the burden of engaging in a time-consuming, multi-layered process to identify and produce non-privileged documents. Ultimately, counsel for Swecker collectively spent over 50 hours analyzing documents for responsiveness, attorney-client privilege, work product, and other relevant designations. This process required numerous communications between counsel and Swecker to identify topics distinctly related to the above-referenced matter. In addition to an electronic review of documents, this process required deciphering well over 100 pages of handwritten notes, several years old.

This process was also tedious regarding privilege determinations, given the nuanced relationships—both direct and indirect—Swecker has with multiple parties related to the ongoing lawsuit. For example, Swecker serves as legal counsel for Defendants del Rosso and VMS. del Rosso, a security consultant, was hired by Dechert LLP, a law firm, in the course of their representation of Ras Al Khaimah Investment Authority ("RAKIA"), a sovereign wealth fund. Swecker was hired to assist with that ongoing matter, at which time he facilitated the hiring of Northern Technologies Inc. ("NTI") to provide expertise on cybersecurity-related issues. As a result of these intersecting relationships, relevant to the ongoing litigation for which Swecker is a non-party witness, a meaningful review of the documents in Swecker's

possession, custody, and control, required the participation of the above-referenced parties, related parties, and their counsel. This determination and a proper designation of responsibilities required extensive communication between counsel and Swecker in addition to numerous video and telephone conferences with all parties, individually and collectively. Furthermore, this process required Swecker's counsel to develop a thorough understanding of what had already transpired in this three year old lawsuit, including previous document productions involving English (United Kingdom) law and legal counsel. Considering the above information, a fulsome and diligent review required Swecker's counsel to do the following: separate and organize documents according to parties or entities; develop and revise review protocol; develop distinct tagging fields according to party or entity; communicate extensively with HaystackID, the e-Discovery company hired to manage Relativity; ensure proper management of Relativity and multiple workspaces; facilitate access to the review database and workspaces; implement and execute quality control procedures for the review; maintain regular communication with legal counsel in the United States and the United Kingdom; and troubleshoot a host of technical and substantive document review issues. This due diligence has also demanded over 400 hours of attorney time to manage, sift through, discuss, tag, and analyze documents that Plaintiff could have otherwise obtained from Defendants, for whom the burden of production would have been more appropriate. The voluminous number of documents generated through this process comparison to the scope of the Subpoena is further evidence of the undue burden forced upon Swecker.

8

Furthermore, Swecker's Subpoena response has been complicated by his position as legal counsel for Defendants del Rosso and VMS. In addition to the due diligence required of a Subpoena recipient, Swecker navigated the demands of the North Carolina Rules of Professional conduct governing the revelation of information related to his representation of Defendants del Rosso and VMS. This additional and sensitive obligation has undoubtedly compounded upon the arduous nature of Swecker's Subpoena compliance.

### b. Swecker has incurred significant expense to comply with the Subpoena.

It is generally accepted that Rule 45(d)(2)(B)(ii) requires costs be shifted from a non-party recipient of a subpoena to the party seeking discovery to avoid "significant expense from compliance." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (citing *Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001)); *see also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2463 n.14 (3d ed.) (collecting cases addressing cost shifting under Rule 45). However, to take advantage of the Rule 45(d)(2) cost-shifting provision, a non-party must object to a subpoena and should not produce discovery until the Court issues a protective order (although "[t]he fact that the responding party may have already undertaken internal efforts to comply with the subpoena before the order was issued does not impact the party's eligibility for this avenue of protection; the action at issue is whether the contested information was voluntarily turned over to the serving party without an intervening Court order directing that action"). *In re Am. Kidney Fund, Inc.*, No. 17-CV-1787, 2019 WL 1894248, at *4 (D. Md. Apr. 29, 2019) (citing *In re Modern Plastics Corp.*, 890 F.3d 244, 252 (6th Cir. 2018)); *see also Angell*

*v. Kelly*, 234 F.R.D. 135, 138 (M.D.N.C. 2006) ("Because the BTCM Firm did not wait for a Court order, its production of the documents does not fall within Rule 45; nor, does it have a right to seek reimbursement post-production based on Rule 45").

Regarding mandatory "significant expense" shifting under Rule 45(d)(2), there is no published Fourth Circuit authority addressing how to assess costs and fees incurred by a third party in complying with a subpoena, or how much should be shifted. Turning to district Court practice within the Fourth Circuit, when confronted with a question of cost shifting, there is no consensus on how to evaluate what constitutes a "significant expense" that should be shifted under Rule 45(d)(2). However, at least one district Court in North Carolina has determined that the mandatory language of Rule 45(d)(2) "eliminated the discretion that Courts previously had to require payment of compliance-related costs by the requesting party" and that therefore the "main question the Court must answer is whether incurring [a certain dollar amount] in fees and costs to comply with a subpoena qualifies as significant." *Volt Power, LLC v. Butts*, No. 19-CV-149, 2021 WL 4188428, at *1 (E.D.N.C. Aug. 17, 2021) (having "no trouble concluding that more than $20,000 is 'significant'").

Here, the expense associated with Swecker's compliance has been significant at minimum and can be more aptly described as exorbitant, through no fault of Swecker. Following the Court's decision on the Motion to Quash, Swecker immediately began preparing for the document production. Given the volume of potentially relevant documents and messages, Swecker sought and secured the use of Relativity. The cost of doing so continues to include a monthly user fee, per user;

10

PPAB 10505857v1

Case 1:20-cv-00954-WO-JLW    Document 405    Filed 08/28/24    Page 10 of 15

a hosting fee determined by the total size of hosted files; a monthly live hosting fee dictated by the total size of hosted files; and an hourly project management fee. Since August of 2023, Swecker has incurred $55,440.98 in costs necessary to maintain and use the review database for the production process. *See* **Ex. A**. Most of the costs Swecker has incurred associated with the use of Relativity have been unavoidable; the breadth and depth of the documents Plaintiff demanded is far from negligible. In an effort to comply with Plaintiff's subpoena, Swecker has been forced to unreasonably bear the significant and unavoidable costs associated with diligently reviewing, tagging and applying privilege or work product designations to a five-figure universe of documents. The imposed complications of Plaintiff's lawsuit have also left Swecker no choice but to engage with multiple law firms and entities, whose clients have an ethical and legal stake in this pending matter, to participate in the document review decision-making process. Thus, the participation of these parties has required them to also access and use the database, further increasing the expense Swecker has had to bear.

This demanding, sensitive, and multi-layered process has also forced Swecker to incur a whopping $154,555.50 in attorneys' fees for the legal services previously described, despite all genuine efforts to mitigate this avalanche of a financial investment. *See* **Ex. B**. The rates billed for work on this case have been deeply discounted for each of Swecker's attorneys and are substantially lower than the rates charged to similarly situated clients. Both Swecker's Relativity costs and attorneys' fees are well in excess of the $20,000 the Court in *Volt* "had no trouble" concluding was significant. The monetary inconvenience and burden imposed by Plaintiff's

11

subpoena has been objectively enormous. Swecker continues to incur attorneys' fees and related costs and will continue to do so if there are any challenges to privilege or work product assertions in the future. Furthermore, the burden on Mr. Swecker and his solo practice as an attorney has been immeasurable. As a result of the work and demands of responding to Plaintiff's subpoena, the scope of Mr. Swecker's legal practice has become materially limited. This is yet another example of the undue burden and significant expense Swecker has suffered as a result of this process.

## CONCLUSION

Plaintiff's Subpoena has imposed an undue burden and significant expense on Swecker. Thus, this Court must shift the costs of Swecker's compliance to Plaintiff, not only to align with Rule 45, but also because such a remedy is in the interest of justice. Plaintiff's actions and that of his counsel have been unreasonable and without regard for the undue burden placed on Swecker. Their blatant disregard for the duty imposed upon them by the rule of the law can only be remedied by shifting the fees and costs of Swecker's compliance to Plaintiff and Plaintiff alone. For the foregoing reasons, Swecker respectfully requests that this Court enter an order taxing Plaintiff and his counsel with Swecker's attorneys' fees in the amount of incurred to date of $154,555.50 and associated costs in the amount of $55,440.98, totaling $209.996.48, and grant other such relief, including future fees and costs to be determined at a later date, as this Court deems just and proper.

Respectfully submitted this 28th day of August, 2024.

PARKER POE ADAMS & BERNSTEIN LLP

By: */s/ Richard S. Glaser*

12

Richard S. Glaser (N.C. Bar No. 13998)
Nana Asante-Smith (N.C. Bar No. 51569)

**PARKER POE ADAMS & BERNSTEIN LLP**
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
rickglaser@parkerpoe.com
nanaasantesmith@parkerpoe.com

Counsel *for Non-Party Witnesses Christopher Swecker and Christopher Swecker Enterprises, LLC*

# CERTIFICATE OF SERVICE

I certify that on August 28, 2024, I electronically filed the foregoing document and that it is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system, except for as noted below:

Respectfully submitted this 28th day of August, 2024.

/s/ Richard S. Glaser
Richard S. Glaser (N.C. Bar No. 13998)
Nana Asante-Smith (N.C. Bar No. 51569)

**PARKER POE ADAMS & BERNSTEIN LLP**
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
rickglaser@parkerpoe.com
nanaasantesmith@parkerpoe.com

*Counsel for Non-Party Witnesses Christopher Swecker and Christopher Swecker Enterprises, LLC*

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief does not exceed the 6,250-word limitation for such motions, according to the word count feature of the word processing system used to prepare the brief.

Respectfully submitted this the 28th day of August, 2024.

By: */s/Richard S. Glaser*
Richard S. Glaser (N.C. Bar No. 13998)
Nana Asante-Smith (N.C. Bar No. 51569)
**PARKER POE ADAMS & BERNSTEIN LLP**
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
rickglaser@parkerpoe.com
nanaasantesmith@parkerpoe.com

*Counsel for Non-Party Witnesses Christopher Swecker and Christopher Swecker Enterprises, LLC*