# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CASE NO. 1:20-cv-00954-WO-JLW

| | |
|---|---|
| FARHAD AZIMA,<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>    Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendants serve this Reply in Support of Motion for Summary Judgment, and state:

## I. INTRODUCTION

Defendants demonstrated that Plaintiff's claims are time-barred and that he cannot establish that Defendants published any actual trade secrets on WeTransfer as he alleges. In response, Plaintiff largely interjects irrelevant facts to distract the Court from these discrete issues rather than establish any genuine issues of material fact.

## II. ARGUMENT[1]

### A. Plaintiff's Claims Are Time-Barred.

#### 1. Plaintiff's "Law of the Case" Argument is Misplaced.

"Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration and do not constitute law of the case." *Plotkin v. Lehman,* 1999 WL 259669, *1 (4th Cir. Apr. 30, 1999) (quotation omitted). Defendants' arguments can "be renewed on a more developed record in a fully briefed motion for summary judgment." *Krembel v. United States*, 837 F. App'x 943, 950 (4th Cir. 2020) (quotation omitted). Defendants do just that.

#### 2. Plaintiff Cannot Establish his Claims Were Timely Filed.

Plaintiff's effort to avoid the statute of limitations requires evidence supporting his allegations that his trade secrets were first made public in 2018 when blogsites were modified to include WeTransfer links to his data. *See* Compl. at ¶¶22-24; D.E. 65 at 17-18, 22-24. But Plaintiff admitted in another proceeding that his trade secrets became publicly available in January 2017; and his own expert similarly concluded that Plaintiff's data was publicly accessible in January 2017. *See* Ex. L at Ex. 1, p.29 ¶ 99, Ex. 2, p. 12 ¶ 18, Table 1; Ex. H at ¶ 124. Defendants' expert reached the same conclusion.

---

[1] Defendants refer herein to Exhibits A through P attached to their initial Motion, D.E. 379. An appendix is attached as **Exhibit 1** defining these exhibits and noting their corresponding docket entry numbers.

2

Plaintiff does not rebut his prior admissions, refute his own expert's prior opinion, or refute Defendant's expert's conclusions that Plaintiff's data was publicly available on WeTransfer in January 2017. Nor can he, as the code accompanying the subject blogs reflects that when the data was uploaded to the WeTransfer links, the data downloadable without a password then. *See* Ex. I at Ex. 1, ¶¶43-71, 80. Plaintiff instead disingenuously argues that his expert never "concluded that the links to [Plaintiff's] data were publicly available in 2017" while ignoring the expert's unambiguous conclusion that "**access** to the data through ordinary Internet sites (ie, the WeTransfer sites, which are not peer-to-peer or torrent sites) was subsequently established, in January 2017." Ex. H at ¶ 124 (emphasis added).

Plaintiff attempts to salvage his claims by arguing that he first discovered the publication in July 2018. *See* Opposition at 13. His claims are nonetheless barred if they "[were] or reasonably should have been discovered" before the limitations period expired. N.C.G.S. § 66-157.

Plaintiff testified that his "entire world bec[a]me public," that "basically after 2016, we didn't get any more business," and that by 2017, "our business ha[d] dried up" because of his data's disclosure. Ex. F at 201:19-202:4, 213:19-214:2; 253:17-21. And this Court *already found* that "by 2016 Plaintiff had discovered the conduct underlying" his claims. D.E. 65 at 9.

Plaintiff argues that websites disparaging [Plaintiff] were updated to include links on or about July 2018" and that a new WeTransfer link in 2019 saves his claims. *See* Opposition at 13-14. That, however, is immaterial given the unrefuted evidence of a 2017 disclosure. *See Bates,* 615 F. Supp. at 681.

Though misappropriation of trade secrets is a continuing tort, "if the trade secrets are disclosed or published, then . . . the tort is no longer continuing." *Bates v. Cook, Inc.,* 615 F. Supp. 662, 681 (M.D. Fla. 1984); *accord Lamelson v. Carolina Enterprises, Inc.,* 541 F. Supp. 645, 659 (S.D.N.Y. 1982). This Court thus need only adjudicate whether Plaintiff's trade secrets became publicly available via WeTransfer before October 15, 2017. As Plaintiff and his expert admitted—and Defendants' expert concluded—they were.

Further, there is no record evidence that any of Plaintiff's trade secrets were published either in 2018 or 2019. Plaintiff's only supporting evidence of when links were included on blogsites in 2018 is his that expert first *observed* them on July 13, 2018. *See* Opposition at 13-14.; Ex. K at 46:3-8. But that only establishes that Plaintiff's expert was unaware of the publication until then.

Though it is his burden to do so, Plaintiff also lacks evidence establishing that which of his alleged 38 trade secrets, if any, were accessible through the 2019 links. *Wilson,* 2020 WL 2574652 at *5. He relies instead on Defendants' inability to disprove his unsupported allegation that the 2019 links contained his trade secrets. Plaintiff, however, "may not rest upon the mere allegations

4

or denials of his pleading. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

### 3. Plaintiff's FBI Disclosure Argument is a Red Herring.

Plaintiff pivots to a new theory absent from his Complaint: Law enforcement disclosure. *See* Opposition at 14-15. Plaintiff, however, is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint." *Pak v. Unifund CCR Partners,* 2014 WL 238543, *8 (E.D.N.C. Jan. 22, 2014); *Rouse v. Duke Univ.,* 869 F. Supp. 2d 674, 679 (M.D.N.C. 2012) (allegations in pleadings govern).

Moreover, data allegedly hacked from Plaintiff was provided to the FBI on January 23, 2017. Any claim based on that conduct is similarly time-barred. *See* Ex. E, at ¶ 30.

### B. Plaintiff Fails to Rebut Defendants' Merit-Based Arguments.

1. **Plaintiff Lacks Evidence He Expended Any Time or Money Developing his Trade Secrets Outside the Costs of Doing Business.**

To establish the existence of a trade secret, Plaintiff must have expended effort or money to develop it "outside the cost of doing business." *Edgewater Servs., Inc. v. Epic Logistics,* Inc., 2009 WL 2456868, at *5 (N.C. Super. Aug. 11, 2009), *aff'd*, 217 N.C. App. 399, 720 S.E.2d 30 (2011). He does not argue that he did. *See* Opposition at 17. Nor does Plaintiff proffer evidence

establishing <u>any</u> quantifiable amounts of time or money expended developing his trade secrets other than having worked in a particular industry for decades. *Id.*

Moreover, Plaintiff's cited evidence does not address T.S. Nos. 4, 6–9, 11–12, 14–19, 22–25, 30–31, and 33–39; and he did not even create his "Rolodexes" (T.S. Nos. 20, 21, 26-29). *See* Ex. E at ¶77. Plaintiff accordingly fails to "set forth specific facts showing that there is a genuine issue for trial" on this point. *Parks v. Poole,* 2022 WL 4322264, at *2 (M.D.N.C. Sept. 30, 2022).

**2. Plaintiff Fails to Establish Commercial Value.**

"Sweeping conclusions untethered to specific shared characteristics of a group of trade secrets that show that each has independent economic value" are insufficient. *Synopsys, Inc v. Risk Based Sec., Inc.*, 70 F.4th 759, 775 (4th Cir. 2023). Further, "a party's self-serving opinion cannot, absent objective corroboration, defeat summary judgment," however. *CTB, Inc. v. Hog Slat, Inc.,* 65 F. 3d 647, 658 (4th Cir. 2020) (cleaned up). That is all Plaintiff offers. "[B]eyond cursorily alleging that these secrets have value, [Plaintiff] has not adduced sufficient evidence of such value." *Applied Predictive Techs., Inc. v. MarketDial, Inc.,* 2024 WL 3759894, at *16 (D. Utah Aug. 12, 2024).

Plaintiff cannot establish through competent (or any) evidence how or why his "trade secrets" have any value. Nor could he differentiate the value of any "trade secret" apart from the rest of his confidential data that was

6

disclosed, which included non-trade secrets. Ex. F at 352:2-13. Failing to proffer any particularized evidence of value is fatal. *See Synopsys, Inc,* 70 F.4th at 771-75 (no particularized evidence of each trade secrets' value); *Health Care Facilities Partners, LLC v. Diamond,* 2023 WL 3847289, at *12 (N.D. Ohio June 5, 2023) (conclusory affidavit lacked specific evidence how the trade secret retained value from not being readily ascertainable); *Found. Bldg. Materials, LLC v. Conking & Calabrese, Co.*, 2023 WL 4561583, at *9 (N.C. Super. July 7, 2023) (setting forth information necessary for compiled contact list to be protectable trade secret).

Even Plaintiff's legal argument lacks any semblance of specificity. He relies on one case for the proposition "that historical data can have value and qualify as a trade secret." Opposition at 17-18. Unlike here, that case involved a situation where "someone with access to [the confidential information] could use the information to underbid plaintiff on any of its contracts." *Byrd's Lawn & Landscaping, Inc. v. Smith,* 142 N.C. App. 371, 376, 542 S.E.2d 689, 692 (N.C. Ct. App. 2001). As set forth in Defendants' Brief in Support of Motion for Summary Judgment ("Brief"), all but one of the companies to which Plaintiff's alleged trade secrets relate had long ceased operating before disclosure; and the one that was viable then had abandoned all the projects to which its confidential information related. *See* D.E. 380 at 3-5. It is accordingly not

7

surprising that no competitor or third party has attempted to use Plaintiff's "trade secrets" in the years since disclosure. *See* Ex. F at 202:13-18.

Plaintiff similarly fails to establish through competent (or any) evidence how the following had any commercial value in 2018: (a) 2008-2011 financial forecasts and proposals related to a company that went out of business in 2012 (the HeavyLift Trade Secrets); (b) confidential information related to bidding on projects for military operations in Afghanistan by a company that ceased operations before the alleged misappropriation (the Caucus Trade Secrets); (c) 2011 financial forecasts for a company that ceased operations in 2012 (the Shollar Trade Secrets); (d) a financial forecast for another company that ceased operations well-prior to 2012 (the AeroTech Trade Secret); (e) a 2015 financial forecast (the Brownies Trade Secret); (f) a 2012 forecasted wages statement (the Smokehouse Trade Secret); (g) proposals for projects that had long been abandoned (the ALG Trade Secrets); and (h) mere portions of contact lists. He thus fails to establish that any of his trade secrets had commercial value when misappropriated despite it being his burden to do so.

### 3. Plaintiff's Secrecy Efforts are Legally Insufficient.

Plaintiff's reliance on basic password protection, antivirus software, and physical locks are meaningless because he *voluntarily disclosed* his trade secrets to companies in which he owned an interest and their employees, as well as permitted their further disclosure externally—all without measures to

ensure their secrecy as set forth in pages 19 through 25 of Defendants' Brief. *See* D.E. 380 at pp. 19–25. Doing so while relying on mere "trust" is insufficient as a matter of law. *See Aym Techs., LLC v. Rodgers*, 2019 WL 5257950, at *9 (N.C. Super. Oct. 16, 2019) (summary judgment appropriate where record established third-party disclosure without further restrictions).

The lone case Plaintiff cites to support his argument that password protection alone can be sufficient is distinguishable. There, the plaintiff had shown "other demonstrated efforts" including the requirement that "all employees . . . sign employment agreements that contain a confidentiality provision[.]" *Am. Circuits, Inc. v. Bayatronics, LLC,* 2023 WL 8597896, at *9-10 (N. C. Super. Ct. Dec. 8, 2023). The record here shows that Plaintiff required no such agreements—only speculation that they might exist. *See* Ex. F at 111:10-117:16.

At best, *some* documents containing Plaintiff's trade secrets contained boilerplate confidentiality stamps. *See* Opposition at 19. But this does not make Plaintiff's "measures" reasonable. *See, e.g., Hill Holliday Connors Cosmopulos, Inc. v. Greenfield,* 433 F. App'x 207, 215 (4th Cir. 2011) (summary judgment appropriate where documents only confidentiality notices on some materials). Further, Plaintiff's right-hand man admitted that he routinely

9

places confidentiality stamps on all his communications, regardless of their content. *See* **Exhibit 2** hereto at 69:16-20.

Plaintiff's claim that he only shared information to those "within [his] circle of trust" or "with the U.S. government, which applied strict confidentiality" fares no better. He proffers no evidence that the U.S. government "applied strict confidentiality" and ignores disclosure to other governments. *See* Ex. F at 187:2-21, 351:10-358-19. Nor does he cite any law condoning disclosure to those within his "circle of trust" as legally sufficient. And even his claimed "circle of trust" is dubious—as among those he voluntarily disclosed 11 trade secrets to an entity Plaintiff claims to have never trusted. *See id.* at 342:19-343:1.

### 4. Plaintiff Cannot Prove he owns T.S. Nos. 7, 8, 22, 23, 31, 35, or 37.

T.S. Nos. 8, 22, 23, 31, and 35 were provided *to* Plaintiff *from* third-party companies Plaintiff neither owned nor controlled and reflects *those entities* business information. *See* Ex. B at T.S. No 8, 22, 23, 31, and 35; Ex. F at 211:18-213:11, 301:12-304:4, 306:22-307:19, 346:15-349:4. T.S. Nos. 7 and 37 similarly contain other businesses' pricing information. *See* Ex. B at T.S. Nos. 7 and 37; Ex. F at 207:21-208:6, 209:9-211:17, 356:14-360:9.

In rebuttal, Plaintiff proffers only self-serving testimony that those documents reflect his input. He proffers no evidence establishing his *ownership*

10

*or even an interest in* those alleged trade secrets, however. *See* Opposition at 21-22. Nor does he specifically identify his input or why having done so makes him the trade secrets' owner. *See id.* And he proffers no evidence whatsoever concerning his involvement in creating T.S. Nos. 22 or 37. *See id.* Plaintiff thus fails to meet his burden establishing that he owns those trade secrets.

### 5. Plaintiff Fails to Establish Defendants' Disclosure of T.S. Nos. 1, 2, 4, 20, 21, or 26 through 30.

Plaintiff's claim is predicated on allegations that his trade secrets were published via WeTransfer. His own expert, however, opined that T.S. Nos. 1, 2, 4, 20, 21, and 26–30 were not, in fact, published via WeTransfer. *See* Opposition at 23. He does not even address T.S. Nos. 4 or 30. *See id.* He argues that T.S. Nos. 20, 21, and 26-29 (all "Rolodexes") were given to the FBI, which cannot support his claim for the reasons set forth above. And though Plaintiff argues that "portions" of those rolodexes were published on WeTransfer, his expert located only a "small number of vCards" (individual contact data)—not the "curated compilation[s]" Plaintiff identified as his trade secrets. *See* Ex. E at ¶ 77; Ex. K at 210:18-211:8; 213:4-217:1, 229:18-230:6; Ex. C at p.12.

Moreover, Plaintiff does not address Defendants' argument that "the Rolodexes lack the specific information required to constitute a trade secret." Brief at p. 15 n.7; *see also Found. Bldg. Materials, LLC, Co.*, 2023 WL 4561583 at *9 (collecting cases). By failing to do so, Plaintiff "essentially concedes that

11

summary judgment in favor of [Defendants] is appropriate." *Harris v. hhgregg, Inc.,* 2013 WL 1331166, at *4 (M.D.N.C. March 29, 2013) (Osteen, J.).

### 6. Plaintiff Admitted T.S. Nos. 14 and 36 are Not Trade Secrets.

When asked why one of his employees sent T.S. No. 14 to a third-party, Plaintiff gratuitously offered: "It was not a trade secret, it was a proposal." Ex. F at 255:12-15. He was similarly clear when stating without solicitation that T.S. No. 36 "is not part of the trade secrets, obviously." *Id.* at 354:19-21. Plaintiff's only counterevidence are unspecific interrogatory answers and testimony elicited over Defendants' objections to his attorney's leading questions. *See* Opposition at 23-24. Such "evidence" is insufficient.

## C. <u>Plaintiff's Cannot Establish Proximate Cause And His Damages Are Speculative.</u>

### 1. Plaintiff Cannot Establish Proximate Cause

Plaintiff must establish that his economic losses or Defendants' unjust enrichment were proximately caused by the publication or use of his trade secrets. *See Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (N.C. 1984). He does neither.

A "proximate cause" is one "without which the injuries would not have occurred." *Id.* Plaintiff proffers no evidence linking his damages to any *trade* secret, claiming instead that he was harmed by disclosure of *all* his "confidential data" *and* private details of his life when his "entire world"

12

became public. Ex. F at 201:16-19, 291:1-293:5. This Court already dismissed Plaintiff's causes of action arising from that harm, however. *See* D.E. 65.

Nor has Plaintiff established any economic loss. He cannot identify a single banking partner that closed his accounts after 2018, any that pulled out of any deals in 2018, or that terminated their relationship with him in 2018 or thereafter. Ex. F at 443:21-445:1. He cannot identify a single deal that fell through. *Id*. at 486:9-21. Plaintiff instead relies solely on uncorroborated self-serving, vague testimony which is insufficient. *See CTB, Inc.,* 65 F. 3d at 658. Given Plaintiff's lack of fact-specific evidence, he fails to establish damages caused by any misappropriation, requiring summary judgment. *See 360 Mortg. Grp., LLC v. Home Point Fin. Corp.,* 740 F. App'x 263, 269 (4th Cir. 2018).

### 2. Plaintiff's Unjust Enrichment Damages are Speculative.

Plaintiff misapprehends its own burden and Defendant's argument. Whether Defendants can prove that they did not earn a profit from "Project Nariman" is immaterial. Plaintiff admits that he must provide "a reasonable approximation of the amount to be disgorged." Opposition at 26. He also admits being unable to reasonably approximate the amount Defendants allegedly received for publication of his alleged trade secrets or for hacking. *See id*. at 27. But this Court expressly limited Plaintiff's claims to misappropriation of trade secrets through publication in 2018 and 2019. D.E. 65 at 22. Plaintiff **must** therefore limit his unjust enrichment damages derived from that

13

conduct. He does not. Ex. O at 88:17-88:22, 91:5-92:8, 151:17-151:25. "A damages model based on a false assumption is not reliable." *Polyzen, Inc. v. Radiadyne, LLC,* 2016 WL 53260576, at *12 (E.D.N.C. Sept. 23, 2016).

Plaintiff tries to avoid the Court's ruling by arguing that the "payments leading up to the 2018 and 2019 misappropriations are, at a minimum, recoverable as proceeds of the conspiracy." Opposition at 26. But this Court's dismissal of all but two of Plaintiff's claims and limited them to "2018-2019 conduct" was *with prejudice. See Hammocks, LLC v. Harleysville Mut. Ins. Co.,* 2011 WL 3421415, at *3 (W.D.N.C. Aug. 4, 2011). Plaintiff "may not amend his complaint through Argument in opposition to defendant's motion for summary judgment." *Tyler v. Sapper,* 2023 WL 8603004, at *11 (E.D.N.C. Dec. 12, 2023). Permitting recovery of damages potentially arising from alleged acts of hacking occurring before 2018 would essentially permit Plaintiff to improperly revive his dismissed claims. *See id.*

Plaintiff's admission that "at least some" of what Defendants received can be attributed to misappropriation underscores the speculative nature of his damages. *See* Opposition at 27. "At least some" is hardly the "reasonable certainty" required to avoid summary judgment. *See Grout Doctor Global Franchise Corp. v. Groutman, Inc.,* 2015 WL 2353698, at *5 (E.D.N.C. May 15, 2015).

14

### III. CONCLUSION

For the foregoing reasons, Defendants request that this Court enter summary judgment against Plaintiff dismissing his claims with prejudice.

This the 28th day of August, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/Brandon S. Neuman*
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance)
George Mahfood (special appearance)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
George.mahfood@nelsonmullins.com

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this the 28th day of August, 2024, I served via e-mail the foregoing document on the persons listed below as follows:

Jonathan D. Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
jonathon.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Ian A. Herbert
Kirby D. Behre
Lauren E. Briggerman
Cody Marden
Calvin Lee
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
iherbert@milchev.com
kbehre@milchev.com
lbriggerman@milchev.com
cmarden@milchev.com
clee@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/Brandon S. Neuman*
    Brandon S. Neuman, NCSB# 33590
    Jeffrey M. Kelly, NCSB# 47269
    Samuel Rosenthal (special appearance)
    Justin Kaplan (special appearance)
    George Mahfood (special appearance)
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Telephone: (919) 329-3800
    Facsimile: (919) 329-3799
    brandon.neuman@nelsonmullins.com
    jeff.kelly@nelsonmullins.com
    sam.rosenthal@nelsonmullins.com
    justin.kaplan@nelsonmullins.com
    George.mahfood@nelsonmullins.com
    *Counsel for Defendants*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I hereby certify that this document complies with the applicable word limit provided under MDNC Local Rule 7.3(d)(1) and 56.1(c) as it does not exceed 3,125 words as indicated by the word count generated by the word processing software used in preparing this document.

Respectfully submitted, this the 28th day of August, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ *Brandon S. Neuman*

Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Samuel Rosenthal (special appearance)
Justin Kaplan (special appearance)
George Mahfood (special appearance)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
sam.rosenthal@nelsonmullins.com
justin.kaplan@nelsonmullins.com
George.mahfood@nelsonmullins.com

*Counsel for Defendants*