IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
FARHAD AZIMA,                    )
                                 )
        Plaintiff,               )
                                 )
    v.                           )     1:20-cv-954
                                 )
NICHOLAS DEL ROSSO and VITAL     )
MANAGEMENT SERVICES, INC.,       )
                                 )
        Defendants.              )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is Defendants' Objections to or Appeal of Special Master's Report and Decision #1. (Doc. 320.) For the reasons stated herein, the appeal is denied.

**PROCEDURAL HISTORY**

On December 29, 2023, this court ordered the appointment of a Special Master pursuant to Federal Rule of Civil Procedure 53. (Doc. 313.) The Special Master was appointed specifically to "assist the parties to regulate discovery for the remainder of this case." (Id. at 1.)[1] The court's order stated that "[a]ny

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

appeals from the rulings of the Special Master will be taken in accordance with the Joint Agreement of the Parties." (Id. at 6.)

The parties' Joint Agreement provides that "[e]ither party may, within seven calendar days of a decision of the special master, appeal that decision" to this court. (Doc. 312-1 at 2.) The Special Master filed her Report and Decision #1 ("Report #1"), (Doc. 316), on February 8, 2024. Defendants Nicholas Del Rosso and Vital Management Services, Inc. filed an appeal of Report #1 on February 13, 2024, (Defs.' Objs. to or Appeal of Special Master's Report and Decision #1 ("Def.'s Objs.") Doc. 320), and Plaintiff Farhad Azima filed a response to the appeal on February 20, 2024, (Doc. 322). The court heard oral argument on the appeal on August 15, 2024, and took the matter under advisement. At a motions hearing on January 23, 2025, this court issued its oral ruling overruling Defendants' objections and adopting the finding of the Special Master.

**STANDARD OF REVIEW**

"When reviewing a party's timely objection to a special master's report and recommendation, the Court must decide de novo any objections to the Special Master's factual finding(s)." Daedalus Blue, LLC v. Microstrategy Inc., No. 2:20-cv-551, 2023 WL 5337826, at *2 (E.D. Va. Aug. 18, 2023) (citing Fed. R. Civ. P. 53(f)). "Similarly, the Court must decide de novo any

objections to conclusions of law recommended by the Special Master." Id. However, as set forth in the Order appointing the Special Master in this case, the court will set aside the Special Master's rulings on procedural matters only for abuse of discretion. See Fed. R. Civ. P. 53(f)(5); (Doc. 313 at 7). "In acting on a master's order . . . the court . . . may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

**ANALYSIS**

Defendants appeal the portions of Report #1 "concluding that (1) Defendants were 'not authorized to assert any privileges' belonging to non-party Government of Ras Al Khaimah and its related instrumentalities ('RAK'), and (2) that RAK must 'appear before the Court to assert any privileges.'" (Def.'s Objs. (Doc. 320) at 1 (quoting Report #1 (Doc. 316) at 17).) Defendants argue that they can assert RAK's attorney-client privilege[2] because Defendants "were engaged by Dechert LLP ('Dechert')—counsel for RAK—to facilitate the representation and provision of legal advice to RAK," and so "with RAK's express

---

[2] Separately, Defendants assert that "even apart from attorney-client privilege, Defendants 'are competent to assert protections over their own work product.'" (Defs.' Objs. (Doc. 320) at 5.) It does not appear that Plaintiff disputes this argument or that it was addressed by the Special Master in Report #1.

- 3 -

authorization and at RAK's direction, Defendants withheld or otherwise redacted RAK's privileged information in response to Plaintiff's discovery requests." (Defs.' Objs. (Doc. 320) at 2.)

Certain relevant facts are not disputed. RAK engaged Dechert LLP to provide some type of legal services. Dechert, in turn, engaged Defendants "in connection with and to facilitate legal advice provided by Dechert to RAK." (Defs.' Ex. 1, Ruzumna Decl. (Doc. 320-2) ¶ 6.) Plaintiff has propounded discovery to Defendants which Defendants contend is privileged by virtue of the relationship between RAK and Dechert as attorney and client. Notably, RAK has not appeared nor intervened in this action to assert privilege following the declaration of privilege by Defendants. Dechert has not intervened to assert privilege, although it has appeared as a non-party to object to discovery propounded by Plaintiff directly to Dechert. No evidence has been presented as to the specific responsibilities of Defendants to Dechert, nor have Dechert or RAK provided any details as to the full terms of engagement between Dechert and Defendants.

Defendants provided the following evidence of RAK's alleged authorization to Defendants for Defendant's use in asserting RAK's privilege on its behalf to the Special Master:

> (1) a February 13, 2023 letter from RAK's counsel, Allen & Overy LLP, based in the United Arab Emirates; and (2) a July 19, 2023 letter from RAK's counsel in the United States, Patterson Belknap Webb & Tyler

> LLP—both of which reiterated that RAK "asserts, and does not waive, all applicable privileges and protections as to any documents or information in [Defendants'] possession, custody, or control," and directed Defendants that they "do[] not have authority to waive such privileges or protections when responding" to discovery requests.

(Defs.' Objs. (Doc. 320) at 4–5.) Defendants also provided "a lengthy and detailed privilege log" cataloging documents that "were identified, reviewed and approved by counsel for RAK," and explained that "counsel for RAK selected the documents that they are asserting the privilege over." (Id. at 5–6 (quotations omitted).)

On appeal, Defendants offer the Declaration of Daniel Ruzumna, attorney for RAK, who states that "Defendants have in their possession, custody, or control documents reflecting confidential communications and other documents created in connection with their support of Dechert's legal representation" of RAK. (Defs.' Ex. 1, Ruzumna Decl. (Doc. 320-2) ¶ 6.) "Accordingly, with respect to documents redacted or withheld by Defendants for RAK's privilege, RAK's counsel expressly authorized and instructed those assertions on multiple occasions, orally and in writing, starting with generalized authorizations and instructions in February 2023 and July 2023 before the scope of responsive documents had been determined,

and concluding with a document-by-document review by RAK's counsel for privilege." (Id. ¶ 21.)

After evaluating the evidence presented to her alongside the limited case law available, see, e.g., Gibbs v. Stinson, No. 3:18-cv-676, 2021 WL 4853575 (E.D. Va. Oct. 17, 2021), the Special Master concluded that "Defendants are not authorized to assert any privileges belonging to RAK (or related parties)," and directed Defendants to "advise the RAK Parties that they have 20 days from February 27, 2024 to appear before the Court to assert any privileges." (Doc. 316 at 17.) It is this conclusion and direction which Defendants appeal to this court.

"[U]nder normal circumstances, an attorney's advice provided to a client, and the communications between attorney and client are protected by the attorney-client privilege." Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc., 63 F. Supp. 3d 558, 567 (E.D.N.C. 2014) (quoting In re Grand Jury Proceedings, 102 F.3d 748, 750 (4th Cir. 1996)). "Protection 'may . . . be extended to protect communications by a lawyer to his client, agents or superiors, or to other lawyers in the case of joint representation if those communications reveal confidential client communications.'" Id. (quoting United States v. (Under Seal), 748 F.2d 871, 874 (4th Cir. 1984)). Similarly, "North Carolina law recognizes that privileged information can

- 6 -

be shared with the agent of an attorney or client without vitiating the privilege." U.S. Tobacco Coop., Inc. v. Certain Underwriters at Lloyd's, No. 5:19-cv-430, 2021 WL 1341360, at *11 (E.D.N.C. Apr. 9, 2021) (citing State v. Murvin, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981)).

Importantly, if attorney-client privilege is established, "[t]he party claiming the privilege must be a client who has sought legal advice." Williams v. Big Picture Loans, LLC, 303 F. Supp. 3d 434, 444 (E.D. Va. 2018) (citing N.L.R.B. v. Interbake Foods, LLC, 637 F.3d 492, 501-02 (4th Cir. 2011)). See also Bethune-Hill v. Va. State Bd. of Elections, 114 F. Supp. 3d 323, 346 (E.D. Va. 2015) ("[T]he attorney-client privilege must be asserted and established by the privilege holder."). In the alternative, "it is universally accepted that the attorney-client privilege may be raised by the attorney" on the client's behalf. Fisher v. United States, 425 U.S. 391, 402 n.8 (1976); see also In re Grand Jury Proceedings, 727 F.2d 1352, 1354–55 (4th Cir. 1984).

Here, the Special Master correctly determined that Defendants do not have standing to assert RAK's attorney-client privilege on its behalf. Defendants "were engaged by Dechert LLP ('Dechert')—counsel for RAK—to facilitate the representation and provision of legal advice to RAK in connection with actual or

contemplated litigation outside of the United States." (Defs.' Objs. (Doc. 320) at 2.) Defendants do not provide further detail as to the nature and circumstances of this engagement beyond the assertion that Defendants were "investigative consultants hired by RAK's counsel" and, as a result, are "party to the attorney-client relationship." (Defs.' Objs. (Doc. 320) at 3.) While Defendants may have contributed to Dechert's provision of legal services to RAK, Defendants can point to no legal authority indicating that an "investigative consultant" hired by an attorney is a party to the attorney-client relationship who can assert attorney-client privilege on the client's behalf. Rather, Defendants repeatedly insist that they are a party to this relationship in a conclusory fashion based on documentation that RAK has authorized Defendants to assert its privilege. RAK's authorization, however, cannot circumvent the legal requirement that the party asserting attorney-client privilege be either the attorney or the client. As the Special Master correctly determined, Defendants have not demonstrated that their investigative consultant services render them eligible to assert RAK's privilege as the "attorney" party to the attorney-client relationship.

Relatedly, this court finds that this process within which Defendants assert privilege on behalf of another, that is on

- 8 -

Case 1:20-cv-00954-WO-JLW   Document 431   Filed 01/27/25   Page 8 of 11

behalf of RAK and Dechert, in the absence of RAK and Dechert, deprives the court of a reasonable ability to conduct an inquiry to determine whether the exercise of privilege is appropriate. It is not at all clear what an investigative consultant is or what it means to facilitate the representation and provision of legal advice to RAK in connection with actual or contemplated litigation outside of the United States. "Facilitate" is subject to a number of different interpretations.

## IV. RAK's OPPORTUNITY TO APPEAR

In Report #1, the Special Master directed Defendants to prepare a privilege log and provide that log to the Plaintiff and the RAK Parties. (Doc. 316 at 17.) The Special Master further directed Defendants to "advise the RAK Parties that they have 20 days from February 27, 2024 to appear before the Court to assert any privileges." (Id.) Defendants apparently prepared the privilege log as directed; however, RAK did not appear as directed.

Report #1 was filed on February 8, 2024, and Defendants' Objections to or Appeal of Special Master's Report and Decision #1 and Request for Stay was filed on February 13, 2024. (Doc. 320.) Defendants also filed a Notice of Defendants' Objections to or Appeal of Special Master's Report and Decision #1 and Request for Stay that same day. (Doc. 319.) This court did not

- 9 -

Case 1:20-cv-00954-WO-JLW   Document 431   Filed 01/27/25   Page 9 of 11

stay Report #1, and on March 18, 2024, the time frame for RAK to appear ended without an appearance by RAK. RAK has still not appeared in this case in any fashion. Although this court believes there are grounds to find RAK has waived any further right to appear, to avoid any confusion this court will grant one additional time period within which RAK may appear. This court will direct Defendants to notify RAK of this order and the opportunity to appear. Defendants shall file a certificate with this court demonstrating notification to RAK of this order.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Objections to or Appeal of Special Master's Report and Decision #1, (Doc. 320), are **OVERRULED** and the Special Master's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that RAK must appear before this court to assert its attorney-client privilege, if it so desires, no later than February 19, 2025, by filing a motion and brief explaining its assertion of privilege.

**IT IS FURTHER ORDERED** that Defendants shall notify RAK of this order and serve a copy of this order on RAK. Following completion of service, Defendants shall file proof of notification and service with this court.

This the 27th day of January, 2025.

                                                 /s/ William L. Osteen, Jr.
                                              United States District Judge