IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
FARHAD AZIMA,                       )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    1:20-cv-954
                                    )
NICHOLAS DEL ROSSO and VITAL        )
MANAGEMENT SERVICES, INC.,          )
                                    )
          Defendants.               )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is Plaintiff's Appeal of Special Master's Report and Decision No. 7. (Doc. 358.) For the reasons stated herein, Plaintiff's motion will be denied.

I.  **PROCEDURAL HISTORY**

On December 29, 2023, this court ordered the appointment of a Special Master pursuant to Federal Rule of Civil Procedure 53. (Doc. 313.) The Special Master was appointed specifically to "assist the parties to regulate discovery for the remainder of this case." (Id. at 1.)[1] This court's order stated that "[a]ny

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

appeals from the rulings of the Special Master will be taken in accordance with the Joint Agreement of the Parties." (Id. at 6.)

The parties' Joint Agreement provides that "[e]ither party may, within seven calendar days of a decision of the special master, appeal that decision" to this court. (Doc. 312-1 at 2.) The Special Master filed her Special Discovery Master's Report and Decision #7 ("Report #7") under seal on May 31, 2024. (Doc. 354.) She also filed a minimally redacted version of Report #7 on the same date. (Doc. 355.) Plaintiff filed his appeal of Report #7 on June 5, 2024, (Doc. 358), and Defendants responded on June 12, 2024, (Doc. 363). Non-parties Christopher Swecker and Christopher Swecker, LLC ("Swecker"), (Doc. 364), and Dechert, LLP ("Dechert"), (Doc. 365), also filed responses to the appeal.

## II. STANDARD OF REVIEW

"When reviewing a party's timely objection to a special master's report and recommendation, the Court must decide de novo any objections to the Special Master's factual finding(s)." Daedalus Blue, LLC v. Microstrategy Inc., No. 2:20-cv-551, 2023 WL 5337826, at *2 (E.D. Va. Aug. 18, 2023) (citing Fed. R. Civ. P. 53(f)). "Similarly, the Court must decide de novo any objections to conclusions of law recommended by the Special Master." Id. However, as set forth in the Order appointing the

Special Master in this case, the court will set aside the Special Master's rulings on procedural matters only for abuse of discretion. See Fed. R. Civ. P. 53(f)(5); (Doc. 313 at 7). "In acting on a master's order . . . the court . . . may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

III. **ANALYSIS**

Plaintiff appeals the Special Master's resolution of four discovery motions which were resolved by Report #7:

1. the Motion to Compel Christopher Swecker and Christopher Swecker Enterprises to Produce Information Improperly Withheld for Privilege ("Swecker Privilege Motion");

2. the Motion to Compel Dechert LLP to Produce Information Improperly Withheld for Privilege ("Dechert Privilege Motion," together with the Swecker Privilege Motion, the "Privilege Motions");

3. the Motion to Compel the Production of Documents Pursuant to the Crime-Fraud Exception ("Crime-Fraud Motion"); and

4. the Motion to Compel Dechert LLP to Produce Documents Relating to Prior Allegations of Hacking ("Hacking Motion").

(Doc. 361 at 1–2.) Plaintiff urges the court to overrule the Special Master's denial of these motions because Report #7

> (1) fails to apply a critical prior ruling on privilege [(the ruling in Report #1 that Defendants cannot assert RAK's privilege on its behalf)] that renders Ruling 7, at best, premature; (2) misapplies the law as to privilege waiver and the crime-fraud exception; and (3) denies the motion without full opportunity to be heard and a thorough examination of the facts.

(Doc. 358 at 6.)

Plaintiff asks the court to "hold an evidentiary hearing and/or conduct an in camera review of documents in order to resolve these critical privilege issues," and "order Dechert to produce all withheld documents related to allegations of prior hacking" against Defendants. (Id.)

### A. Effect of Report #1 on RAK's Privilege

In Special Discovery Master's Report and Decision #1 ("Report #1"), the Special Master determined that Defendants could not assert RAK's privilege on its behalf because, at most, Defendants were third-party consultants working for Dechert in Dechert's capacity as attorneys for RAK.[2] (See Doc. 316 at 17.) As a result, the Special Master directed that RAK must appear in this case to assert its attorney-client privilege over the documents Defendants have withheld on the basis that the

---

[2] Separately, it appears that Dechert has appropriately asserted attorney-client privilege on RAK's behalf.

- 4 -

documents are subject to RAK's attorney-client privilege. (Id.) RAK has not made this appearance. Defendants appealed this part of Report #1, but, as the court explained in its Memorandum Opinion and Order addressing Defendants' appeal, the Special Master's determination that Defendants do not have standing to assert RAK's attorney-client privilege was correct. (See Doc. 431 at 7.)

Plaintiff argues that Report #7 erroneously "fails to address the Special Master's prior ruling on privilege, which conflicts with Ruling 7." (Doc. 358 at 6.) It appears that Plaintiff argues Dechert and Swecker "cannot assert privilege over many of the documents at issue" in this case because Report #1 held that "third parties cannot assert privilege over any documents whose privilege is purportedly held by RAK." (Id. at 7.) But Report #1 did not sweep so broadly. Instead, it held only that Defendants, as a third-party consultant hired by Dechert for its representation of RAK, could not assert RAK's attorney-client privilege. (See Doc. 316 at 17.) Both Dechert and Swecker, as attorneys for RAK and Defendants, respectively, are capable of asserting the attorney-client privilege on their clients' behalf. This portion of Plaintiff's appeal is denied.

## B. Privilege Designations of NTi Reports

Plaintiff next argues that Report #7 "misapplied privilege law regarding NTi hacking reports that Defendants and their agents turned over to the FBI." (Doc. 358 at 7.) Plaintiff alleges that Defendants "commissioned and paid for reports that were written by NTi and contained and analyzed Azima's stolen data. NTi prepared dozens of those reports, and voluntarily provided them to the FBI and federal prosecutors in order to create legal jeopardy for Azima." (Id. at 7–8.) Plaintiff argues that any potential privilege was waived by providing the NTi reports to third parties. (Id. at 8 (citing Fed. Election Comm'n v. Christian Coal., 178 F.R.D. 61, 67 (E.D. Va. 1998).)

In Report #7, the Special Master determined that production of the NTi reports to the FBI did not waive any privilege over those reports because, though they "appear to contain work product information[,] . . . waiver of work product requires that the disclosure must enable an adversary to get hold of the information." (Doc. 355 at 11 (citing Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 480 (S.D.N.Y. 1993).) Plaintiff argues this conclusion was erroneous.

As another court in this district has explained, "[b]ecause the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an

adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine. Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information." United States v. Duke Energy Corp., 214 F.R.D. 383, 387 (quoting Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1427–28 (3d Cir. 1991)). "The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a confidential relationship[.]" Fed. Elec. Comm'n v. Christian Coal., 178 F.R.D. 61, 76 (E.D. Va. 1998) (quoting United States v. Am. Tel. and Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

Plaintiff argues that the FBI was adverse to Dechert, Swecker, and NTi because the FBI agent who received the reports "knew that Dechert's client had been accused of stealing the data contained in the Reports and seemed to suggest that Dechert's client was the subject of the government's investigation." (Doc. 358 at 9 (citing Pl.'s Ex. 8, Dep. of Paul Zukas ("Zukas Dep.") (Doc. 358-8)). But the Zukas Deposition states only that Zukas "was aware that there was litigation ongoing between the parties. . . . I wasn't aware nor were we really concerned, necessarily, with who was filing the lawsuit . . . . We were concerned with our investigation in chief." (Zukas

Dep. (Doc. 358-8) at 3.) Zukas testified he became aware that Azima was suing RAK for hacking him during the investigation. (Id. at 3-4.) Zukas later stated that "Farhad Azima and RAK are basically synonymous with each other," (id. at 9), but this page of the deposition and the other excerpts provided by Plaintiff as Exhibit 8 to his appeal lack context and do not demonstrate to the court that the FBI was adverse to Dechert, Swecker, or NTi at the time the reports were disclosed.

On appeal, Plaintiff relies on a Southern District of New York case which held that "where the third party to whom the disclosure is made is not allied in interest with the disclosing party or does not have litigation objectives in common, the protection of the [work product] doctrine will be waived." (Doc. 358 at 9 (quoting Medinol, Ltd. v. Bos. Sci. Corp., 214 F.R.D. 113, 115 (S.D.N.Y. 2002) (holding that legally-required disclosures by a company to an external auditor waived work product protection).) Though Agent Zukas testified that he still conducted his own investigation and did not rely solely on the NTi reports for information, (see Zukas Dep. (Doc. 358-8) at 6), this does not place Agent Zukas or the FBI in a position adversarial to Dechert, Swecker, or NTi.

The court cannot conclude from the evidence presented that the FBI was adverse to Dechert, Swecker, or NTi such that their

- 8 -

production of the NTi reports to the FBI waived work product privilege over those reports. Thus, the Special Master's determination that "[t]here is nothing to suggest that the FBI was adverse to Dechert or Swecker, or any of their clients or agents" was appropriate, given the evidence. (See Report #7 (Doc. 355 at 11.) Plaintiff does not demonstrate that the FBI and Dechert, Swecker, or NTi were not allied in interest or that the FBI was adverse to Dechert, Swecker, or NTi in a position analogous to a company and its external auditor. Accordingly, this portion of Plaintiff's appeal must be denied.

### C. Crime-Fraud Motion

Next, Plaintiff argues that the Special Master "fail[ed] to apply correct legal standards" when evaluating the crime-fraud exception's potential application to certain documents. (Doc. 358 at 17.) This claim is based on the fact that certain documents regarding how Dechert obtained Plaintiff's data, and Dechert's statements about how they obtained the data, were subject to the "iniquity exception" in the aforementioned UK litigation. (Id.) The iniquity exception, "like the crime-fraud exception, provides that privilege does not attach to communications for an iniquitous purpose." (Report #7 (Doc. 355) at 6.)

Plaintiff argues that the Special Master's reliance on Window World of Baton Rouge, LLC v. Window World, Inc., Nos. 15-cvs-1, 15-cvs-2, 2019 WL 3995941, at *18 (N.C. Super. Ct. Aug. 16, 2019) and its "preponderance of the evidence" standard for evaluating the applicability of the crime-fraud exception was misplaced. (Doc. 358 at 18-19.) Plaintiff instead urges that the Special Master should have applied only a prima facie standard as set forth in In re Grand Jury Proceedings #5 Empanelled January 28, 2004, 401 F.3d 247, 251 (4th Cir. 2005). (Id.)

As the Special Master has previously stated, North Carolina law applies to discovery disputes in this case because Plaintiff brings state law claims against Defendants. Window World's preponderance of the evidence standard was set forth by the Superior Court of North Carolina and was later affirmed per curiam by the North Carolina Supreme Court. See 377 N.C. 551, 857 S.E.2d 850 (N.C. 2021). Accordingly, Window World governs the standard applicable to Plaintiff's crime-fraud exception motion.

Acknowledging In re Grand Jury Proceedings #5, the Window World court explained that "[f]ederal decisions hold that the party invoking the crime-fraud exception must make a prima facie showing that otherwise privileged communications fall within the exception." 2019 WL 3995941, at *17 (citing In re Grand Jury

- 10 -

Proc. #5, 401 F.3d at 251)). The party seeking to invoke the exception

> must show that "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." "Prong one of this test is satisfied by a prima facie showing of evidence that, if believed by a trier of fact, would established the elements of some violation that was ongoing or about to be committed." "Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity."

Id. (quoting In re Grand Jury Proceedings #5, 401 F.3d at 251) (internal citations omitted).

The Window World court explained that courts "are divided as to the appropriate quantum of proof necessary to make a prima facie showing." Id. (quoting In re Grand Jury, 705 F.3d 133, 151–53 (3d Cir. 2012)). The court then determined that, in North Carolina, "a preponderance of the evidence standard is appropriate in the civil context," emphasizing that "under North Carolina Rule of Evidence 104(a), preliminary questions of fact concerning privileges must be established by a preponderance of the evidence." Id. at *18 (citing State v. McGrady, 368 N.C. 880, 892, 787 S.E.2d 1, 10 (2016)). Accordingly, the court concluded

> that a party seeking to invoke the crime-fraud
> exception to defeat the attorney-client privilege in
> a civil case[3] must bear the burden of showing by a
> preponderance of the evidence that the opposing party
> was committing or intending to commit a crime or fraud
> and that the attorney-client communications were used
> in furtherance of the alleged crime or fraud.

Id. at *18.

Based on the court's review of the Special Master's resolution of Plaintiff's crime-fraud motion, she first determined that North Carolina law applies to the dispute, then applied Window World's preponderance of the evidence standard. This was a correct application of North Carolina law, and this portion of Plaintiff's appeal must be denied.

D.  **Procedural Objections**

Finally, Plaintiff argues that Report #7 was produced "without adequate opportunity to be heard or analysis to support its decision." (Doc. 358 at 12.) First, Plaintiff states repeatedly that Report #7 "contains minimal and inadequate analysis of the facts and law." (Id. at 13.) Even a cursory review of Report #7 confirms otherwise. Rather, it is more than clear that the Special Master was thorough in her examination of

---

[3] As Dechert points out, the Window World court examined In re Grand Jury Proceedings #5 and then "explicitly concluded that the burden of proof should be higher for civil cases under North Carolina law than the burden applied to federal grand jury cases." (Doc. 367 at 16-17.)

- 12 -

the evidence before her and the applicable law when making the determinations published in Report #7.

Second, Plaintiff asserts Report #7 was produced without providing him an opportunity to be heard or to present supplemental briefing. (Id. at 12.) Plaintiff argues that the court should overrule Report #7 in light of these "procedural deficiencies and lack of analysis." (Doc. 358 at 15.) However, Plaintiff consented to the terms governing procedure before the Special Master in this case. (See Doc. 312-1.) These terms include that the parties are not entitled to hearings, but the Special Master has discretion to conduct conferences if she deems it necessary. (Id. at 2.) Plaintiff has not asserted that he asked for an evidentiary hearing, the opportunity to submit supplemental briefing, or to participate in oral argument. (Doc. 358 at 14.) Rather, Plaintiff argues the Special Master erroneously "failed to conduct an evidentiary hearing, solicit supplemental briefing, or request oral argument." (Id.) Plaintiff now asks this court for an evidentiary hearing, (id. at 17), which it appears he did not ask the Special Master for, but this court finds that Report #7 is sufficiently thorough and demonstrates appropriate consideration of all the evidence before the Special Master. Plaintiff does not demonstrate that

- 13 -

any procedural deficiencies occurred, so this portion of Plaintiff's appeal is denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Plaintiff's Appeal of Special Master's Report and Decision No. 7, (Doc. 358), is **DENIED**.

This the 27th day of January, 2025.

_William L. Osteen, Jr._
United States District Judge

- 14 -

Case 1:20-cv-00954-WO-JLW   Document 433   Filed 01/27/25   Page 14 of 14