# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# Case No. 20-cv-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC.,<br><br>Defendants. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO SWECKER'S MOTION FOR SANCTIONS** |

Plaintiff respectfully opposes the Motion of Christopher Swecker and Chris Swecker Enterprises (collectively, "Swecker") for Contempt and Sanctions (ECF No. 458, the "Motion"). Newly-obtained bank records that this Court ordered produced reveal that Swecker gave money to private investigator group ▇▇▇▇▇▇▇▇▇,[1] at the same time he was feeding Plaintiff's stolen data, including trade secret information, to the FBI in an effort to instigate a baseless criminal investigation into Azima. The payments to ▇▇▇▇▇▇▇▇▇ included a reference to the name of an Associated Press reporter who wrote negative stories about Azima during the same time

---

[1] Plaintiff submits that nothing in this filing is confidential under the Protective Order. Given Swecker's litigation tactics, however, and to avoid another baseless sanctions motion from Swecker, Plaintiff has redacted the name of the private investigator group that received the payments from Swecker and the references included on those payments.

1

frame. Those stories included information about Azima's stolen documents. Azima is entitled to pursue those leads to determine whether Swecker was involved in planting false press stories that negatively portrayed Azima, using his stolen documents. Plaintiff sent a letter to ████████████████, a company that Swecker is publicly affiliated with, requesting information regarding the payments it received from Swecker. Swecker's response to that letter was to file a motion for sanctions in this matter. This is just the latest of his efforts to obstruct discovery through baseless motions.

Swecker claims that Plaintiff violated the Protective Order in this case but fails to state precisely how the order was violated. The Protective Order governs documents, and Swecker makes no claim that documents were distributed improperly. Rather, Swecker's latest motion seeks to prevent Plaintiff from uncovering evidence regarding the breadth and scope of the conspiracy and "obstructs the fact-finding process," much like RAK, Dechert, and Defendants have done. *See* ECF No. 444 at 6. In essence, Swecker argues that Plaintiff cannot pursue leads derived from lawfully obtained documents without violating the Protective Order. His argument does not come close to meeting the high bar of proving by clear and convincing evidence not only that Plaintiff violated an order but also that any of Plaintiff's actions actually caused harm to Swecker. Indeed, he does not even attempt to claim that he was harmed by Plaintiff's letter to ████████████████, and he can't because

2

Plaintiff's letter did not include any confidential documents and only provided information that ▮▮▮▮▮▮▮▮▮▮, already knew. His motion should be denied.[2]

### FACTUAL BACKGROUND

Swecker represented Defendants and was actively involved in the improper use of Plaintiff's stolen documents. Working on behalf of Dechert and the Emirate of Ras al Khaimah, Swecker used Plaintiff's stolen documents, including his trade secrets, to harm Plaintiff and his business interests. Dechert hired Defendants, knowing that Defendants had previously been accused of hacking to aid a law firm in civil litigation. Ex. A, DECNC-00063452. Dechert also hired the hack-for-hire firm CyberRoot and paid them more than $1 million through Defendants. *See, e.g.*, Ex. B, DECNC-00002348. A Dechert partner has admitted that he received documents that were "hacked or otherwise obtained illegally." Ex. C, Excerpt of Fourth Witness Statement of David Neil Gerrard, ¶ 99 (Dec. 21, 2023). That Dechert partner and a RAK official also discussed whether the hacked emails were "suitable as evidence,"

---

[2] Swecker filed his motion without even providing notice to counsel for Azima about his intent to seek sanctions. If asked, Plaintiff would have told him that none of the bank records were provided to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (which Swecker likely knows since it appears he discussed his motion with ▮▮▮▮▮▮▮▮, before filing it) and that Plaintiff's correspondence revealed no new information that ▮▮▮▮▮▮▮▮▮▮, did not already know.

suggesting "a plan to launder the evidence utilizing a US PR firm." Ex. D at 8, DECNC-00004090.

Defendants received more than $35 million for their work for Dechert and RAK, and they hired Swecker to assist with that work. Swecker set up and attended numerous meetings between Dechert and members of law enforcement in jurisdictions throughout the country in an attempt to instigate a criminal investigation of Azima. *See, e.g.*, Ex. E, SWECKER_00000014, SWECKER_00000015, SWECKER_00000627, SWECKER_00005401. At those meetings, neither Swecker nor Dechert revealed to law enforcement that the documents were hacked. Dechert, Defendants, and Swecker used Plaintiff's stolen documents to prepare detailed and often false reports about Plaintiff, and they provided these reports to law enforcement as part of their attempt to gin up a fraudulent investigation. *See, e.g.*, Ex. F, SWECKER_00003142. They developed a close relationship with FBI agent Paul Zukas, who traveled around the world based on the information provided by Swecker, Defendants, and Dechert. *See, e.g.*, Ex. G, SWECKER_00001621.

At the same time, Dechert, Defendants, and Swecker sought to plant false press stories about Plaintiff based upon the documents they stole, which included Plaintiff's trade secrets. One of the reporters who wrote stories about Plaintiff was ███████ at ███████████. ███████ stories cover topics that overlap with topics in the reports prepared by Defendants and their

4

co-conspirators, and the stories had a negative tone about Azima. Moreover, ▇▇▇ stories were published at a time when Plaintiff's data was not publicly available, meaning Dechert, Defendants, Swecker or others provided the stolen data to ▇▇▇.

Swecker's bank records establish that Swecker paid ▇▇▇ in 2018 and 2019, during the same time frame when Swecker was being paid by Defendants to distribute Azima's stolen data. Those payment records include references to ▇▇▇, the ▇▇▇ who wrote negative stories about Azima. Because the payments were made during the same time frame as the news stories written by ▇▇▇ Plaintiff sought to determine whether those payments related to the reporter that wrote the negative stories based upon Plaintiff's stolen documents.

This is not the only time that Gambrell's name has come up in the documents Swecker produced. In an email produced by Swecker, a co-conspirator comments on and provides a copy of an article from Gambrell smearing Plaintiff and writes: "This is the piece we have been waiting for." Ex. H, SWECKER_00005387. The reasonable inference is that Swecker and his team were "waiting" for the article because it was bought and paid for. Plaintiff is free to pursue that lead by asking ▇▇▇, if it had a role in planting that false and negative story.

# ARGUMENT

## I. The Protective Order allows the parties to follow the evidence revealed in discovery.

Writing a letter to ▮▮▮▮▮▮▮▮▮▮, to follow up on leads learned in discovery is wholly consistent with the Protective Order. First, the Protective Order governs the <u>documents</u> produced in discovery, and it is undisputed that Plaintiff did not disclose any documents covered by the Protective Order. Here, the Protective Order governs certain documents produced in discovery and restricts disclosure of those documents, or summaries or extracts of those documents. The Protective Order covers "documents, electronic information in any form, discovery responses and other information, including all copies, excerpts, and summaries thereof." ECF No. 177, ¶ 1. Under the Protective Order, the Parties cannot disclose the documents—or copies, excerpts or summaries of those documents—that are designated confidential, but the Protective Order does not prevent Plaintiff from pursuing leads for additional evidence that arise from the documents produced. *See Bruno v. Equifax Info. Servs. LLC*, No. 1:18-CV-774, 2020 WL 10051742, at *3 (W.D. Tex. Mar. 12, 2020), *report and recommendation adopted*, No. 1:18-CV-774, 2020 WL 10051733 (W.D. Tex. Mar. 30, 2020) (finding that use of protected information in the tailoring of subpoenas did not violate a protective order because "the use of classified information does not equal the disclosure of classified information."). "A protective order should be

6

read in a reasonable and common sense manner so that its prohibitions are connected to its purpose." *Banga v. Equifax Info. Servs. LLC*, No. 14-CV-03038-WHO, 2016 WL 741963, at *5 (N.D. Cal. Feb. 25, 2016) (citation omitted). Swecker distorts the Protective Order in an effort to prohibit the parties from following up on any leads that come out of the discovery. That is inconsistent both with a plain reading of the Protective Order and with common sense.

Indeed, both Parties have repeatedly used information learned in discovery to follow up on leads and seek additional evidence. For example, Defendants used information contained in Plaintiff's confidential trade secrets to subpoena other entities associated with those trade secrets, including Caucas and Anham. *See* Ex. I, Notice of Subpoena to Caucas International LLC (Nov. 10, 2023); Ex. J, Notice of Subpoenas to Anham USA, Inc. (Mar. 18, 2024). Defendants issued subpoenas that referred to information contained in Plaintiff's confidential documents and sought additional documents related to that information.

Second, the limited information in Plaintiff's letter was not new to ▉ ▉—it had information about the payments it received from Swecker already. Thus, Swecker's motion must also fail because he cannot prove by clear and convincing evidence that "the moving party suffered harm from the violation." ECF No. 460 at 5 (quoting *CFPB v. Klop*, 957 F.3d 454, 461 (4th Cir. 2020)). Swecker does not claim that he suffered any harm by

7

Plaintiff following the evidence, and asking ▆▆▆▆▆▆, about the payments that it already knew about could not have caused any harm to Swecker. Furthermore, Swecker's bio is linked on the ▆▆▆▆▆▆, website, so the fact that he is connected to ▆▆▆▆▆▆, is public information. *See* ▆▆▆▆▆▆.

## II. Plaintiff reasonably pursued a lead from Swecker's bank records.

Swecker argues that Plaintiff should have figured out that his payments to ▆▆▆▆▆▆, were unrelated to ▆▆▆▆▆▆. Swecker does not argue that this is a violation of a court order or explain why this would be a basis for sanctions, and it is not.

Plaintiff was entitled to pursue investigative leads to determine whether Swecker paid ▆▆▆▆▆▆ to plant negative stories about Azima with his stolen data. Swecker's bank records showed thousands of dollars in payments from Swecker to ▆▆▆▆▆▆, in 2018 and 2019, which was when Swecker was leading the effort to use Plaintiff's stolen data, including his trade secrets, with law enforcement and the press in an attempt to harm Plaintiff. In addition, the payment records include references to "▆▆▆▆▆▆," and ▆▆▆▆▆▆ wrote at least three articles about Plaintiff during the relevant timeframe. The ▆▆▆▆▆▆ articles include information about Plaintiff's stolen documents, which were only accessible to Defendants and their co-conspirators, including Swecker, for portions of that

8

time, suggesting that ▮▮▮▮ received the stolen documents from Defendants or their co-conspirators. And Swecker and his co-conspirators discussed one of the ▮▮▮▮ articles when it was published, saying "This is the piece we have been waiting for," implying that they were involved in planting the article. In addition, recently produced documents include reports prepared by Defendants and their co-conspirators analyzing Plaintiff's stolen data. Those reports cover topics that overlap with the articles that ▮▮▮▮ wrote for ▮▮▮▮▮▮▮▮.

For all these reasons, it was reasonable for Plaintiff to inquire into whether the payments from Swecker to ▮▮▮▮▮▮▮▮ with records including references to ▮▮▮▮, related to the articles written by ▮▮▮▮ smearing Azima using his stolen documents, which Swecker was simultaneously using to smear Plaintiff.[3]

### III. **Plaintiff wrote ▮▮▮▮▮▮▮▮, a letter and served no formal discovery requests.**

Swecker claims that because discovery is closed Plaintiff is somehow prohibited from contacting third parties informally to obtain information for trial. Swecker offers no support for such a claim and there is none. Parties are free to pursue leads and seek information until and during trial. The Court's

---

[3] Regardless of how Swecker feels about the strength of the lead, he does not suggest, nor could he, that following a lead is a violation of a Court order.

scheduling order sets an end date for "discovery," not all communications with individuals who may have relevant information.

## CONCLUSION

For the foregoing reasons, Swecker's motion should be denied.

This, the 16th day of May, 2025.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ripley Rand*
Ripley Rand
North Carolina Bar No. 22275
Christopher W. Jones
North Carolina Bar No. 27625
555 Fayetteville Street, Suite 1100
Raleigh, N.C. 27601
Phone: 919-755-2100
Fax: 919-755-2150
Email:  ripley.rand@wbd-us.com
           chris.jones@wbd-us.com

-and-

**MILLER & CHEVALIER CHARTERED**

Kirby D. Behre (*pro hac vice*)
Timothy P. O'Toole (*pro hac vice*)
Lauren E. Briggerman (pro hac vice)
Ian A. Herbert (*pro hac vice*)
Cody F. Marden (*pro hac vice*)
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email:   kbehre@milchev.com
         totoole@milchev.com
         lbriggerman@milchev.com
         iherbert@milchev.com
         cmarden@milchev.com

*Counsel for Plaintiff*

# CERTIFICATE OF WORD COUNT

I hereby certify under LR 7.3(d)(1) that the body of this Response, including any headings and footnotes together, contains fewer than 6,250 words, as reported by the word count feature in Microsoft Word.

This, the 16th day of May, 2025.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Ripley Rand*
Ripley Rand
North Carolina State Bar No. 22275
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8125
Facsimile: (919) 755-6752
Email: ripley.rand@wbd-us.com

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 20-CV-954

| | |
|---|---|
| FARHAD AZIMA,<br><br>　Plaintiff,<br><br>　v.<br><br>NICHOLAS DEL ROSSO and<br>VITAL MANAGEMENT SERVICES,<br>INC.,<br><br>　Defendants. | **CERTIFICATE OF SERVICE** |

　I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of this Notice to the following attorneys:

　Brandon S. Neuman, Esq.
　Jeffrey M. Kelly, Esq.
　NELSON MULLINS RILEY & SCARBOROUGH, LLP
　301 Hillsborough Street, Suite 1400
　Raleigh, NC 27603
　brandon.neuman@nelsonmullins.com
　jeff.kelly@nelsonmullins.com
　Tel.: 919.329.3800
　Fax.: 919.329.3799

　Samuel Rosenthal
　Nelson Mullins Riley & Scarborough LLP
　101 Constitution Ave NW, Suite 900
　Washington, DC 20001
　Tel.: 202-689-2951
　Fax: 202-689-2860
　sam.rosenthal@nelsonmullins.com

Justin B. Kaplan
George C. Mahfood
Nelson Mullins Riley & Scarborough LLP
2 South Biscayne Blvd., 21st Floor
Miami, FL 33131
Telephone: (305) 373-9400
Email: justin.kaplan@nelsonmullins.com
Email: george.mahfood@nelsonullins.com

*Counsel for Defendants*

Richard S. Glaser
Parker Poe Adams & Bernstein LLP
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Tel. (704) 372-9000
Fax. (704) 334-4706
Email:  rickglaser@parkerpoe.com

Nana Asante-Smith
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
Tel: 919.828.0564
Fax: 919.834.4564
Email:  nanaasantesmith@parkerpoe.com

*Counsel for Christopher Swecker and Chris Swecker Enterprises, LLC*

This, the 16th day of May, 2025.

>  **WOMBLE BOND DICKINSON (US) LLP**
>
> /s/ *Ripley Rand*
> Ripley Rand
> North Carolina State Bar No. 22275
> 555 Fayetteville Street, Suite 1100
> Raleigh, NC 27601
> Telephone:  (919) 755-8125
> Facsimile:   (919) 755-6752
> Email:       ripley.rand@wbd-us.com
>
> *Counsel for Plaintiff*